Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
dleonard@altber.com
bchisholm@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org

*Attorneys for Plaintiffs*

[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | **DECLARATION OF VERONICA BOBBITT** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

### DECLARATION OF VERONICA BOBBITT

I, Veronica Bobbitt, declare as follows:

1.       I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief. I am providing this declaration in my capacity as a union officer.

2.       I am the Regional Vice President for Region V of the American Federation of Government Employees ("AFGE") Council 222 ("Council 222"), which is comprised of all AFGE local unions representing U.S. Department of Housing and Urban Development ("HUD") employees throughout the country. Council 222 is the exclusive representative of approximately 4,750 bargaining unit employees at HUD. There are approximately 2,900 dues-paying members in the Council.

3.       I am also the Local President of AFGE Local 911 ("Local 911" or "Union"). I have been in a leadership position in the Union since 2017 and previously served as the Treasurer. Local 911 represents a bargaining unit of approximately 280 civil servants who work for HUD in the Chicago Regional Office and Cleveland and Columbus Field Offices. These employees include housing specialists, program analysts, underwriters, account executives, and fair housing investigators. They work in many different offices and programs within HUD, including the Office of Field Policy and Management, Public Housing Program, Office of Fair Housing and Equal Opportunity, Office of Community Planning and Development, and Office of Public and Indian Housing. These bargaining unit members provide services to the public, other federal agencies, state and local governments, and Indian reservations to promote fair and affordable housing, homeownership, and community development.

4.       The common mission of Council 222 and Local 911 is to advocate for and promote the interests of bargaining unit members in their federal employment. As the exclusive bargaining representatives of these workers, the Council and Union provide many services to all bargaining unit members. Core functions include collective bargaining with HUD to obtain a fair and reasonable collective bargaining agreement ("CBA"); filing and negotiating grievances against the agency to enforce the terms and conditions of the CBA; pursuing arbitrations on behalf of workers

to enforce the CBA; and providing other support, guidance, and resources to bargaining unit employees.

5.    I am a Troubled Asset Specialist at the Office of Multifamily Housing Programs in the Chicago Regional Office of HUD. I have worked for HUD for 10 years. Before this, I worked at the U.S. Postal Service for 15 years.

6.    HUD administers programs that promote affordable housing, homeownership, and community development, and enforces fair housing laws. The agency implements its programs through 10 Regional Offices that are spread across the country. I am based in the Chicago Regional Office, which coordinates the delivery of HUD services in Illinois, Indiana, Michigan. Minnesota, Ohio, and Wisconsin. HUD also has 65 local Field Offices that report to the Regional Offices and provide services in each State.

7.    In my current role, I manage Federal Housing Administration loans, underwriting, and asset management for multifamily rental housing properties in the areas served by the Chicago Regional Office. This work aims to increase access to affordable multifamily housing for workers, low-income families, seniors, and people with disabilities.

8.    AFGE Council 222 first became aware of President Trump's plan to conduct large-scale Reductions in Force ("RIFs") through the February 11, 2025, Executive Order. No one from HUD had said anything about large-scale RIFs to the Council prior to that Order.

9.    On February 21, AP News reported that HUD was planning to cut half of its staff, resulting in the termination of more than 4,000 positions. A true and correct copy of the article, which can also be found at https://apnews.com/article/doge-hud-trump-turner-affordable-housing-musk-0176c8539fa9b5959198c351c97b8652, is attached hereto as Exhibit A. HUD has not communicated plans for these drastic cuts to Council 222. According to the article, HUD plans to terminate 84% of staff at the Office of Community Planning and Development, which would drastically restrict HUD's ability to provide support and services for disaster relief and homelessness. Ex. A, p. 4. HUD also expects to cut 50% of the employees at the Office of Public and Indian Housing, which provides rental assistance to more than 3.5 million households and supports public housing for approximately 1 million households. Ex. A, pp. 4-5. In addition, HUD

plans to cut 44% of staff in the Office of Housing, which provides mortgage insurance and support for first-time homebuyers, and 77% of the staff in the Office of Fair Housing and Equal Opportunity, which investigates housing discrimination complaints. Ex. A, pp. 5-6.

10.     Without 50 percent of HUD's staff, individuals and communities across the country will not be able to access funding and support for disaster relief, community development, rental assistance, homeownership, homelessness, and housing discrimination complaints.

11.     I read another news article, published by Bloomberg News on March 5, which reported that HUD is planning to "close dozens of field offices across the US, leaving most states without sites or staff to underwrite mortgages and potentially violating current federal law" reqiring HUD to have a field office in every state. A true and correct copy of the article, which can also be found at https://www.bloomberg.com/news/articles/2025-03-05/hud-plans-to-eliminate-dozens-of-state-and-local-field-offices, is attached hereto as Exhibit B.  As the article explains, HUD's Field Offices "process [loan and] mortgage insurance for single-family homes, affordable apartment buildings, [and] hospitals and nursing facilities;" "assist[] landlords, tenants and municipalities with both privately owned and publicly assisted properties"; and address fair housing and other housing-related issues within local communities.  Ex. B, pp. 2-3.  The article also reports that a HUD employee in the Columbus Field Office, who is represented by Local 911, received notice that they will be reassigned to the Chicago Regional Office.  Ex. B, p. 3.

12.     Asa result of the termination or relocation of employees at HUD's local Field Offices, HUD will lose capacity for underwriting mortgages.  Many individuals and communities will also lose access to HUD offices located within their States, which will limit their access to HUD's programs and services.

13.     HUD has already started implementing its plan to conduct large-scale RIFs and reorganization.  On February 24, 2025, Council 222 received a RIF notice from HUD Secretary Scott Turner, stating that the agency was planning to terminate all positions at the GS-13 level and below in HUD's Office of Field Policy and Management ("FPM") throughout the country, effective May 18, 2025.  A true and correct copy of the RIF notice is attached hereto as Exhibit C. This means HUD will terminate all positions, other than top-level technical and supervisory

positions at the GS-14 and GS-15 levels, in FPM. This will effectively eliminate FPM, which serves as the first point of contact for all HUD and housing-related qestions, connects different HUD offices with each other and other governmental and community partners to promote affordable housing and community development, conducts public outreach and public relations for the agency, and ensures that HUD programs comply with federal labor standards and prevailing wage reqirements.

14.     The RIF notice included a spreadsheet attachment of every employee who is subject to the RIF. A true and correct copy of the spreadsheet, redacted to protect the privacy of employees subject to the RIF, is attached hereto as Exhibit D. I have reviewed the attachment, and it lists 146 employees throughout the country in HUD's FPM. Consistent with the RIF notice, the attachment shows that employees from all positions, other than top-level technical and supervisory positions at the GS-14 and GS-15 levels, are subject to the RIF. These positions include management analysts, program analysts, customer service representatives, and labor standards specialists.

15.     The RIF notice provides that "[t]he reason[] for the RIF" is "Compliance with the Executive Order *Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative,* dated February 11, 2025." Ex. C, p. 1. According to the notice, "[t]he competitive area is not mandated by statute, therefore, in accordance with the Executive Order, it should be prioritized for the Department's RIF." Ex. C, p. 1.

16.     My understanding is that a RIF notice is usually directed at specific positions within an Office and provides specific reasons for eliminating those positions. For example, a RIF notice might explain that HUD is terminating GS-13 Troubled Asset Specialists at the Office of Multifamily Housing Programs in the Chicago Regional Office due to a decline in the Office's asset management portfolio.

17.     But the February 24 RIF notice eliminated almost all positions at FPM throughout the country and provided only the February 11 Executive Order as a reason.

18.     The RIF notice also stated that HUD did not develop retention registers because "all positions at the GS-13 level and below are being abolished." Ex. C, p. 2. During a RIF, an

1   agency usually develops a retention register, which ranks employees within a competitive level, to

2   determine the order in which employees should be released from the agency.

3          19.    On March 11, AFGE Council 222 submitted an information reqest to HUD

4   regarding the RIF. A true and correct copy of the information reqest is attached hereto as Exhibit

5   E. Specifically, the Council reqested information regarding the retention register, analysis and

6   studies supporting the RIF decision, a list of positions and employees affected by the RIF, the

7   timeline and implementation plan for the RIF, communication sent to employees regarding the

8   RIF, and Congressional approval documentation for the transfer of statutorily mandated

9   responsibilities under the Davis-Bacon and Related Acts.

10          20.    On March 31, the Council asked HUD for "a summary of all actions considered or

11   adopted prior to deciding to conduct a Reduction in Force for the Office of Field Policy

12   Management." A redacted copy of the email is attached hereto as Exhibit F. In response, the

13   agency explained: "Under President Trump's [February 11] Executive Order . . . agencies were

14   *required* to engage in severe cost cutting measures including the directive that 'Agency Heads

15   *shall* promptly undertake preparations to initiate large-scale reductions in force ("RIFs"),

16   consistent with applicable law.' HUD offered employees the opportunity to participate in the

17   Deferred Resignation program, launched the Deferred Resignation Program 2.0 and reqested

18   VERA for HUD employees to lessen the need for RIFs." Ex. F, p. 1 (emphasis added).

19          21.    On April 7, HUD responded to the Council's information reqest. A true and

20   correct copy of the response is attached hereto as Exhibit G. HUD stated that it had provided the

21   Council with a list of the employees who will be affected by the RIF and a timeline for

22   implementation. But it claimed that "[t]here is no responsive information" regarding the retention

23   register, analysis and studies supporting the RIF decision, communication sent to employees

24   regarding the RIF, or Congressional approval documentation for the transfer of statutorily

25   mandated responsibilities under the Davis-Bacon and Related Acts. Ex. G, pp. 1-2.

26          22.    The Council then asked for clarification regarding HUD's response. A redacted

27   copy of the reqest for clarification is attached hereto as Exhibit H. The Council asked whether

28   the reqested information exists and who in HUD approved the agency's response to the Council.

1    The agency explained that the response "was vetted through leadership and legal" but would not

2    provide further details. Ex. H, p. 3.

3         23.    The Council has not been informed of whether any individual RIF notices have

4    been sent out to employees in FPM.

5         24.    FPM has many different functions that affect all aspects of HUD, including serving

6    as the primary point of contact for HUD and housing-related questions; coordinating different

7    HUD program areas, engaging with state and local governments, and partnering with nonprofit

8    organizations to promote affordable housing and community development; conducting public

9    outreach and public relations for HUD; and ensuring that HUD programs comply with federal

10    labor standards and prevailing wage requirements. The termination of almost all FPM employees

11    would drastically curtail HUD's ability to promote affordable housing, homeownership, and

12    community development. That, in turn, would have significant negative impacts on other federal

13    agencies, state and local governments, and most importantly, the American people.

14         25.    FPM serves as the primary point of contact for HUD and housing-related questions

15    and concerns within a community.

16         26.    In the Chicago Regional Office, for example, FPM is HUD's only public-facing

17    program area. Many people who have difficulty accessing HUD's online portal, such as seniors

18    and people with disabilities, visit the Regional Office in person to access HUD's services. FPM

19    employees receive those visitors and connect them to the relevant resources at HUD. Without

20    FPM, many of those individuals would not be able to access HUD's services.

21         27.    In addition, elected officials often contact FPM when their constituents have a

22    housing-related problem—for example, if there is no heat or hot water in an apartment building or

23    unsafe living conditions. The elected official might not know who to contact about the building's

24    issues and would provide FPM with a property address for the building. FPM can often provide

25    the elected official with information on who owns or subsidizes the building and connect the

26    official with resources to address the issue, even when HUD does not subsidize the housing and is

27    not responsible for resolving the issue. FPM is able to rely on its relationships with state and local

28    governments, nonprofit organizations, and other community partners to resolve a range of

1  housing-related issues.  Without FPM, there would be no point of contact for addressing those

2  issues.

3       28.    Because it receives complaints and inqiries nationwide, FPM can also provide

4  other parts of HUD with insights into housing-related issues that cut across different geographic

5  areas.  FPM might, for example, receive housing discrimination complaints from tenants

6  throughout the country who live in properties owned by the same company.  FPM would then pass

7  on that information to HUD's Office of Fair Housing and Eqal Opportunity, which would initiate

8  an investigation.  Without the birds eye view provided by FPM, other HUD employees will not

9  be able to effectively carry out their responsibilities in promoting fair and affordable housing.

10      29.    FPM also serves as the hub for coordinating HUD's programs, governmental and

11 nonprofit organizations, and other partners in housing and community development efforts.

12 Because many of HUD's offices work independently of each other, FPM plays a critical role in

13 connecting the different offices.

14      30.    For example, FPM is coordinating efforts to revitalize the city of Rockford, Illinois.

15 The departure of major employers, catastrophic weather events, and the 2008 recession left much

16 of the housing in Rockford blighted and the community in need of redevelopment.

17      31.    To address those issues, FPM brought together offices across HUD (Office of Fair

18 Housing and Eqal Opportunity, Office of Community Planning and Development, Office of

19 Multifamily Housing, and Office of General Counsel), the State of Illinois, the City of Rockford,

20 Rockford Housing Authority, nonprofit organizations, and other partners. Together, HUD and

21 these organizations funded and worked on projects to improve the city's infrastructure, housing,

22 schools, and public buildings; abate lead in homes; and eliminate hazardous materials from parks.

23      32.    Without FPM, the project to revitalize Rockford would not have occurred. FPM

24 facilitated many important aspects of the project, including using its relationships with HUD's

25 headqarters to secure funding for the project and its relationships with state and municipal

26 agencies to carry out parts of the project that HUD could not do.

27      33.    Likewise, FPM has orchestrated efforts to address the housing needs of specific

28 populations, such as homeless veterans in the Chicago area. As with the Rockford revitalization

1  project, FPM coordinated the work of different HUD offices, federal agencies such as the

2  Department of Veterans Affairs, state and local governments, and nonprofit organizations like the

3  Catholic Charities of the Archdiocese of Chicago. Without FPM to facilitate these relationships,

4  HUD will not be able to effectively address the housing needs of many different populations.

5      34.    FPM is also responsible for public outreach and public relations for HUD. FPM

6  issues press releases regarding HUD's work and coordinates the logistics and press coverage when

7  the HUD Secretary or another official visits the Regional Office. There will be no one to do this

8  work when the employees in FPM are terminated.

9      35.    In addition, FPM employees administer and enforce federal labor standards and

10  federal prevailing wage requirements in HUD programs. These responsibilities are statutorily

11  mandated by the Davis Bacon and Related Acts. According to the February 24 RIF notice, the

12  employees responsible for this work will be terminated, and there will no longer be any employees

13  within HUD to ensure compliance of HUD programs with these federal labor requirements.

14      36.    I have worked in the federal government since 1999 and have experienced prior

15  government shutdowns in October 2013 and December 2018-January 2019. During the December

16  2018-January 2019 shutdown, many employees at HUD, including me, were furloughed. After we

17  went back to work, there was a backlog of work that needed to be completed. For example, during

18  the time we were not working, HUD-funded buildings and projects were not being inspected

19  timely, no one ensured that payments for HUD loans were being made, and very few managers

20  working to field questions or concerns about housing-related issues from tenants. Even this

21  temporary suspension of work affected HUD's operations. The plan to permanently terminate 50%

22  of HUD's staff would severely limit its ability to provide housing and community development

23  services.

24      37.    The reorganization and large-scale RIFs are having an immediate adverse effect on

25  the ability of Council 222 and Local 911 to provide core services to their members and to

26  accomplish their mission. Other than the February 24 RIF notice, the Council and Union have not

27  received any information regarding HUD's plans to cut 50% of its staff. Understandably, many

28  members are concerned about the prospect of losing their employment, health insurance, and other

benefits. Responding to all the qestions and trying to reassure members takes a lot of time, and the diversion of time toward those efforts threatens the ability of the Council and Union to provide core services to bargaining unit members and to accomplish their mission. For example, at the local union level, I receive inqiries from members regarding the RIFs every day and spend up to eight hours a week responding to the qestions on top of my full-time Council and Union duties.

38.    The staff and activities of the local unions that comprise Council 222 are funded through members' voluntary dues, most of which are paid through payroll deductions. If the unions no longer receive dues from the 146 members who are subject to the RIF notice and the many other members who are expected to be terminated, that will make it significantly more difficult for the unions and the Council to continue to function and to provide the services and protection to bargaining units identified here.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed April *pfy*, 2025, in Chicago, Illinois.

Veronica Bobbitt

Veronica Bobbitt

Exhibit A

ADVERTISEMENT



**LIVE:** Pope Francis    Conclave    Kashmir attack    Sarah Palin    Student loan collections

U.S. NEWS

## Trump administration looks to slash HUD workers tackling the housing crisis



Housing and Urban Development Secretary Scott Turner, walks towards the West Wing following a TV interview at the White House, Wednesday, Feb. 19, 2025, in Washington. (AP Photo/Manuel Balce Ceneta, File)

BY SALLY HO AND JESSE BEDAYN
Updated 8:42 AM PDT, February 21, 2025

The Trump administration's proposal to cut half of federal workers at the nation's housing agency is targeting employees who support disaster recovery, rental subsidies, discrimination investigations and first-time homebuyers, according to two documents obtained by The Associated Press.

More than a dozen programs within the Department of Housing and Urban Development's portfolio would be affected by the loss of some 4,000 positions detailed in the documents, raising concerns among former HUD officials and housing advocates who say a skeletal staff could slow or even stall the department's critical work.

Case 3:25-cv-03698-SI   Document 37-7   Filed 05/01/25   Page 13 of 44

HUD spokesperson Kasey Lovett on Thursday said the leaked documents "should not be taken as final" as staffing is evaluated throughout the agency. The documents, which aren't clearly dated but were circulated this week, include total staffing numbers, expected resignations, as well as a projected "Day 120 Headcount" and reduction percentage of staff at individual HUD offices.

ADVERTISEMENT

Such dramatic staffing cuts are in line with the administration's broader push to gut government spending, with HUD Secretary Scott Turner in recent days touting his new Department of Government Efficiency task force inspired by billionaire Elon Musk while also announcing $1.9 billion in "misplaced funds" as well as $260 million identified as "wasteful contracts."

**RELATED STORIES**



**60,000 could risk eviction if Emergency Housing Vouchers program isn't funded**

Leaked documents show that in the thousands of HUD workers may be cut across programs | AP News



**Bernice King reflects on the Fair Housing Act, made law after her father's killing**



**DOGE's cuts tear through Kansas City, Missouri, a federal worker hub**

"HUD is following direction from the administration while also ensuring the department continues to deliver on its critical functions, mission to serve rural, tribal and urban communities and statutory responsibilities," Lovett said in a statement.

Here's a look at some of the significant staffing cuts under consideration and how it could impact HUD's most wide-reaching work:

ADVERTISEMENT



Sealy California King
Mattress | Posturepedic
Hybrid | Firm | Ashurst II"

~~$1,399.99~~
**$599.77**

Shop Now

## Disaster relief

The Office of Community Planning and Development — which the documents propose cutting by 84% of its staff — is the arm of HUD that helps repair homes and infrastructure after natural disasters, administering $1.65 billion sent to North Carolina after Hurricane Helene.

It also oversees homelessness initiatives and the Community Development Block Grant that funnels billions of federal dollars to local governments for community development programs, such as libraries or affordable housing.

Staff across HUD offices also answer questions, offer guidance and technical support, helping communities navigate federal rules and plan, develop and manage projects.

The proposed cuts outlined in the documents would reduce the office from 936 employees to just 150.

"That would lead to significant delays in funding getting out to communities nationwide," said Ann Oliva, who worked as a HUD official for a decade and is now CEO of the National Alliance to End Homelessness.

"We've already heard from programs that have said, 'We are going to go ahead and pause taking new folks for right now until we understand what's happening to our funding,'" Oliva said.

Lovett said "disaster relief efforts will not be impacted" in an email, but did not elaborate.

ADVERTISEMENT

## Rental assistance

At the Office of Public and Indian Housing, which facilitates rental assistance subsidies for more than 3.5 million households and supports public housing for roughly 1 million, the headcount could be slashed by half in the coming months, from 1,529 employees to 765 people, according to the documents.

Georgi Banna, general counsel for the National Association of Housing and Redevelopment Officials, said there's been lots of questions but little information from the administration on how exactly any reduction in staff will be carried out and what the plan will be for HUD's work if there are mass layoffs.

Case 3:25-cv-03698-SI   Document 37-7   Filed 05/01/25   Page 16 of 44

Banna said cuts to Public and Indian Housing staff could slow down payments for the Section 8 vouchers program that provides rental assistance to millions of low-income people.

The tenants themselves have protections as long as they pay their portion of the rent to the landlord per their lease agreements, but they could ultimately be displaced if landlords quit the voucher program altogether over any breach of contract.

"This program only works well when landlords are involved," Banna said. "Without landlords, this program can't exist."

ADVERTISEMENT



## First-time homebuyers

The Office of Housing, which could face a 44% cut in staff, provides counseling for first-time homebuyers and mortgage insurance, which makes it easier for middle- and lower-income Americans to qualify for a home loan through the Federal Housing Administration.



ADVERTISEMENT

The loss of over 1,000 employees could slow down those opportunities for homeownership, said Antonio Gaines, who's worked at the department for over two decades and is president of AFGE National Council 222, which represents HUD workers.

"There are going to be consequences all the way across the board," Gaines said.

On X, the department said it will prioritize "the critical role FHA plays in the mortgage market."

ADVERTISEMENT

4/23/25, 12:24 AM
Case 3:25-cv-03698-SI   Document 37-7   Filed 05/01/25   Page 17 of 44
Leaked documents show cuts to the thousands of HUD workers may be cut across programs | AP News

ADVERTISEMENT

## Housing discrimination

As the enforcer of the nation's fair housing laws, HUD's Office of Fair Housing and Equal Opportunity could see hundreds of employees eliminated, including the administrative staff that investigates discrimination complaints.

"They are struggling to do some of the basic functions of the agency," said Shamus Roller, executive director of the National Housing Law Project.

The proposal to trim the department from 572 employees down to 134 people would mean a nearly 77% reduction to the program — the type of bone-deep cut that many housing advocates had long expected as part of the Trump administration's crusade against diversity, equity and inclusion initiatives.

Though Turner has previously committed to upholding the Fair Housing Act, which includes a statutory mandate for HUD to fight discrimination, his administration can remake how the agency carries out the spirit of the law. On Thursday, Turner said on X that HUD had cancelled $4 million in DEI contracts.

———

Associated Press Staff Writer Michael Casey in Boston contributed to this report.

———

Bedayn is a corps member for the Associated Press/Report for America Statehouse News Initiative. Report for America is a nonprofit national service program that places journalists in local newsrooms to report on undercovered issues.



**SALLY HO**
Ho is an investigative and business news reporter for The Associated Press. She's filed public records requests in all 50 U.S. states and covered a range of major world events.





**JESSE BEDAYN**
Bedayn is a statehouse reporter for The Associated Press based in Denver. He is a Report for America corps member.

ADVERTISEMENT

Exhibit B

CityLab | Housing

# Trump Administration Plans to Eliminate Dozens of Housing Offices

A looming reorganization of HUD would leave 34 states without offices that process mortgage insurance, despite a law requiring offices in every state.



The US Department of Housing and Urban Development (HUD) headquarters in Washington, DC. *Photographer: Al Drago/Bloomberg*

By Kriston Capps
March 5, 2025 at 12:03 PM PST

✦ **Takeaways**  NEW                                                                                                                          Hide ⌃

| The US Department of Housing and Urban Development plans to close dozens of field offices across the US, potentially violating current federal law. | The closures would leave most states without sites or staff to underwrite mortgages, and could affect the agency's ability to process mortgage insurance for single-family homes, affordable apartment buildings, and more. | The plan would close all field offices in 34 states plus the District of Columbia, and leave only six field offices open, with regional offices remaining in seven cities. | **Watch**  Scaramucci on Importance of CEOs Voicing Concern for the Administration's Economic Policies |
| --- | --- | --- | --- |
| Summary by Bloomberg AI | Summary by Bloomberg AI | Summary by Bloomberg AI | |

‹   ›

The US Department of Housing and Urban Development plans to close dozens of field offices across the US, leaving most states without sites or staff to underwrite mortgages and potentially violating current federal law, according to staff at the department as well as a union that represents federal workers.

Federal law requires the agency to maintain at least one field office in every state in order to process applications for mortgage insurance. It's one of HUD's most important functions: Each year a division known as the Federal Housing Administration underwrites mortgage insurance for hundreds of thousands of buyers, generating billions of dollars annually for the Treasury.

## Bloomberg CityLab

**DOJ Lawyers Doubted Trump Agency Tactic Over NYC Congestion Toll**

**DC Loses Its Aaa Credit Rating From Moody's Amid DOGE Job Cuts**

**Pride Groups Scramble to Fundraise as Corporate Sponsors Lag**

**Gateway Program Expected to Give Economy $445 Billion Boost**

"They're required to have a field office in every state," says Antonio Gaines, president of the American Federation of Government Employees (AFGE) National Council 222, which represents some 5,300 employees at HUD. "If they decide not to do that, they're supposed to ask for a waiver. They're supposed to go to Congress."



3:05

Musk Orders Federal Workers to Justify Their Jobs

The Trump administration's plans to close all field offices in 34 states plus the District of Columbia, along with efforts to slash headcount at the FHA, raise questions about the agency's ability to process mortgage insurance for single-family homes, affordable apartment buildings, hospitals and nursing facilities, and more, according to the staffers, who did not want to use their names for fear of retaliation.

"No decisions have been finalized, however the department is exploring consolidation while continuing to prioritize service," said a HUD spokesperson.

Two staffers at HUD say the agency is expected to close its regional hub in Seattle, which would leave three states – Idaho, Oregon and Washington – without any local presence. Of the department's 65 local branches, only six field offices would remain open, the staffers said.

Gaines says he was told by managers at the federal agency about the offices to be closed. He added that the San Francisco regional office was on the chopping block as well, which would reduce the number of HUD's regional hubs from 10 to eight and leave California with only one office to facilitate federal housing programs across the state.

One HUD employee at the field office in Columbus, Ohio, said that they received notice they will be reassigned to the Chicago regional office because the office closures would leave Ohio without any field offices statewide.

Staffers at HUD fear that the office closures mean they'll either be asked to relocate to a different state, or be terminated altogether. As with prior decisions involving the Department of Government Efficiency about terminating staff, Gaines said, HUD has not given AFGE formal notice about its plans to shutters these locations or reassign or fire staff.

Under the law, HUD must maintain at least one office in every state "in order to ensure the adequate processing of applications for insurance of loans and mortgages." Closing a field office won't necessarily interrupt loans for borrowers or lenders in affected states. But a major disruption to local offices or federal staffers could affect the capacity of the FHA and other federal housing agencies to do business.

Underwriting loans is just one of the functions of regional and field offices. Dan Burke, former HUD director of multifamily for the Midwest region, says that his office assists landlords, tenants and municipalities with both privately owned and publicly assisted properties. His former portfolio at the Chicago office includes about 6,300 HUD-insured and HUD-assisted properties across six states, a large proportion of which are for the elderly, Burke said.

"Each of the offices has a production staff that know their local markets, that ensure loans within their states. The loss of the insurance function will adversely impact the supply of affordable housing," Burke says. "You need mortgage capital to flow to construct housing."

Local governments work with field offices when they need attention from HUD. These offices also address fair housing claims and other issues. "There will be a real loss of people who can handle fair housing complaints," says Shamus Roller, executive director of the nonprofit National Housing Law Project.



Some HUD offices represent nodes for specialized work that isn't done at other locations. For example, the field office in Tulsa, Oklahoma – one of the many slated to be shut down – employs key staff for the FHA's Home Equity Conversion Mortgage program, which processes reverse mortgages. If Tulsa staff are offered the chance to relocate, the nearest office is nearly five hours away, in Fort Worth.

"There is no evidence of an overarching strategic plan or any clarity or transparency about the criteria used to eliminate staff positions or field and regional offices," says Julia Gordon, former assistant secretary for housing and FHA commissioner.

Another federal law states that the reorganization of any regional or field office at HUD can only proceed 90 days after the government has released a cost-benefit analysis of closing the office, including a study of the impact on the local economy.

4/24/25, 11:09 AM
Case 3:25-cv-03698-SI   Document 37-7   Filed 05/01/25   Page 22 of 44
HUD Plans to Eliminate Dozens of State and Local Field Offices - Bloomberg

No such analysis has been published in the *Federal Register* since President Donald Trump came into office.

"This process is unprecedented, ignoring statutory requirements and contractual obligations each agency has signed with union partners," Gaines says. "They're refusing to adhere to any norm or process and it needs to be reined in."

Under the plan, regional offices would remain open in Atlanta, Boston, Chicago, Denver, Fort Worth and Philadelphia as well as Kansas City, Kansas. Field office closures would leave Arizona, Michigan, Ohio and 31 other states plus the District of Columbia without any local HUD office.

The six field offices that would be left open are those in Anchorage, Alaska; Greensboro, North Carolina; Honolulu; Jacksonville, Florida; Los Angeles; and San Juan, Puerto Rico.

How easy or hard was it to use Bloomberg.com today?
**Share feedback** ⧉

©2025 Bloomberg L.P. All Rights Reserved.

Exhibit C



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-3000

February 24, 2025

MEMORANDUM FOR:        AFGE Union Officials

FROM:                            Scott Turner
                                        Secretary
                                        U.S. Department of Housing and Urban Development

SUBJECT:                       Article 33 Reduction In Force (RIF) Notice

In accordance with Article 33 of the Collective Bargaining Agreement (CBA) between HUD and AFGE, this memorandum serves as notification to the union that management will be instituting a Reduction in Force (RIF) of GS-13 and below employees in the Office of Field Policy and Management (FPM), as listed in the attached spreadsheet.  Information required by Section 33.05(4) of the CBA is as follows:

(a)  The reasons for the RIF:

Compliance with the Executive Order *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative*, dated February 11, 2025. The competitive area is not mandated by statute; therefore, in accordance with the Executive Order, it should be prioritized for the Department's RIF.

(b)  The number and work location of employees involved:

Please see attached spreadsheet.

(c)  A reminder of the competitive areas and the competitive levels approved by OPM.

The competitive area is

- All Locations (Headquarters and Field Offices)
- All FPM Offices/ Positions

The competitive level is

- All FPM Positions at the GS-13 level and below.

(d)  The criteria for developing the retention registers that were created for the RIF; and

- N/A – Retention registers were not developed since all positions at the GS-13 level and below are being abolished.

(e) The proposed effective date of the action

May 18, 2025

Exhibit D

FPM RIF NOTICE - AFGE

| EMPLOYEE NAME | PROGRAM OFFICE | ORG CODE LEVEL 8 | DUTY STATION CITY | DUTY STATION STATE | PAY PLAN | SERIES | GRADE | OFFICIAL TITLE | BUS CODE | UNION NAME |
|---|---|---|---|---|---|---|---|---|---|---|
| | FPM | FPM REGION 4 - ATLANTA REGIONAL OFC | ATLANTA | GA | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | NEW YORK | NY | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, FPMR4, MIAMI FIELD OFC | MIAMI | FL | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | WASHINGTON | DC | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 8 - DENVER REGIONAL OFC | DENVER | CO | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR6, LITTLE ROCK FIELD OFC | LITTLE ROCK | AR | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR4, NASHVILLE FIELD OFC | NASHVILLE | TN | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMRCRO, MINNEAPOLIS FIELD OFC | MINNEAPOLIS | MN | | | | MGMT ANAL | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | HARTFORD | CT | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 2 - NEW YORK REGIONAL OFC | NEW YORK | NY | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR3, BALTIMORE FIELD OFC | BALTIMORE | MD | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 6 - FORT WORTH REGIONAL OFC | FORT WORTH | TX | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 8 - DENVER REGIONAL OFC | DENVER | CO | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR1, BURLINGTON FIELD OFC | BURLINGTON | VT | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR3, CHARLESTON FIELD OFC | CHARLESTON | WV | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | INDIANAPOLIS | IN | | | | PROG ASST OA | 1120 | AFGE |
| | FPM | FPM REGION 7 - KANSAS REGIONAL OFC | KANSAS CITY | KS | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | WASHINGTON | DC | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR4, JACKSONVILLE FIELD OFC | JACKSONVILLE | FL | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR7, DES MOINES FIELD OFC | DES MOINES | IA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | NASHVILLE | TN | | | | CUSTOMER SERVICE REPRESENTATIVE OA | 1120 | AFGE |
| | FPM | FPM, FPMR7, OMAHA FIELD OFCD OFC | OMAHA | NE | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 10 - SEATTLE REGIONAL OFC | SEATTLE | WA | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | NEW YORK | NY | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM REGION 8 - DENVER REGIONAL OFC | DENVER | CO | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 2 - NEW YORK REGIONAL OFC | NEW YORK | NY | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 3 - PHILADELPHIA REGIONAL OFC | PHILADELPHIA | PA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 6 - FORT WORTH REGIONAL OFC | FORT WORTH | TX | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR4, SAN JUAN FIELD OFC | SAN JUAN | PR | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 5 - CHICAGO REGIONAL OFC | CHICAGO | IL | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 10 - SEATTLE REGIONAL OFC | SEATTLE | WA | | | | MGMT ANAL | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | CHICAGO | IL | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | ATLANTA | GA | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | ATLANTA | GA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR4, COLUMBIA FIELD OFC | COLUMBIA | SC | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMRCRO, INDIANAPOLIS FIELD OFC | INDIANAPOLIS | IN | | | | MANAGEMENT ANALYST (COMMUNITY INITIATI | 1120 | AFGE |
| | FPM | FPM, FPMR1, BANGOR FIELD OFC | BANGOR | ME | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR3, RICHMOND FIELD OFC | RICHMOND | VA | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR2, NEWARK FIELD OFC | NEWARK | NJ | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 5 - CHICAGO REGIONAL OFC | CHICAGO | IL | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | DENVER | CO | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, FPMR4, JACKSON FIELD OFC | JACKSON | MS | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | WASHINGTON | DC | | | | Office Administrator | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | COLUMBIA | SC | | | | CUSTMR SRVC REPR | 1120 | AFGE |
| | FPM | FPM, FPMR2, NEWARK FIELD OFC | NEWARK | NJ | | | | CUSTMR SRVC REPR | 1120 | AFGE |
| | FPM | FPM, FPMR4, MIAMI FIELD OFC | MIAMI | FL | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | CHICAGO | IL | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | HONOLULU | HI | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | CHICAGO | IL | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, FPMR4, MIAMI FIELD OFC | MIAMI | FL | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR4, SAN JUAN FIELD OFC | SAN JUAN | PR | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR2, BUFFALO FIELD OFC | BUFFALO | NY | | | | PROGRAM ANALYST | 1120 | AFGE |

| EMPLOYEE NAME | PROGRAM OFFICE | ORG CODE LEVEL 8 | DUTY STATION CITY | DUTY STATION STATE | PAY PLAN | SERIES | GRADE | OFFICIAL TITLE | BUS CODE | UNION NAME |
|---|---|---|---|---|---|---|---|---|---|---|
| | FPM | FPM REGION 5 - CHICAGO REGIONAL OFC | CHICAGO | IL | | | | STUDENT TRAINEE (MGMT & PROG ANALYSIS) | 1120 | AFGE |
| | FPM | FPMRCRO, MILWAUKEE FIELD OFC | MILWAUKEE | WI | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMR3, RICHMOND FIELD OFC | RICHMOND | VA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 7 - KANSAS REGIONAL OFC | KANSAS CITY | KS | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | SEATTLE | WA | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | FORT WORTH | TX | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | ST LOUIS | MO | | | | MANAGEMENT AND PROGRAM ASSISTANT | 1120 | AFGE |
| | FPM | FPMR1, HARTFORD FIELD OFC | COLUMBIA | SC | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | GREENSBORO | NC | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMR7, ST. LOUIS FIELD OFC | ST LOUIS | MO | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | HOUSTON | TX | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPMR3, PITTSBURGH FIELD OFC | WILMINGTON | DE | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMR6, SAN ANTONIO FIELD OFC | SAN ANTONIO | TX | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | FORT WORTH | TX | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPMR1, PROVIDENCE FIELD OFC | PROVIDENCE | RI | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 7 - KANSAS REGIONAL OFC | KANSAS CITY | KS | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 4 - ATLANTA REGIONAL OFC | ATLANTA | GA | | | | MANAGEMENT ANALYST (COMMUNITY INITIATI | 1120 | AFGE |
| | FPM | FPM REGION 8 - DENVER REGIONAL OFC | DENVER | CO | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 8 - DENVER REGIONAL OFC | DENVER | CO | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMRCRO, COLUMBUS FIELD OFC | COLUMBUS | OH | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPMR6, SAN ANTONIO FIELD OFC | SAN ANTONIO | TX | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMR6, SAN ANTONIO FIELD OFC | SAN ANTONIO | TX | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPMR1, BANGOR FIELD OFC | BANGOR | ME | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | SAN ANTONIO | TX | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPMR7, OMAHA FIELD OFCD OFC | OMAHA | NE | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPMR10, ANCHORAGE FIELD OFC | ANCHORAGE | AK | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 1 - BOSTON REGIONAL OFC | BOSTON | MA | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | WASHINGTON | DC | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMR8, CASPER FIELD OFC | CASPER | WY | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 5 - CHICAGO REGIONAL OFC | CHICAGO | IL | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 10 - SEATTLE REGIONAL OFC | SEATTLE | WA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 3 - PHILADELPHIA REGIONAL OFC | PHILADELPHIA | PA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMR9, HAWAII FIELD OFC | HONOLULU | HI | | | | MGMT ANAL | 1120 | AFGE |
| | FPM | FPM REGION 3 - PHILADELPHIA REGIONAL OFC | PHILADELPHIA | PA | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPMRCRO, CLEVELAND FIELD OFC | CLEVELAND | OH | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 7 - KANSAS REGIONAL OFC | KANSAS CITY | KS | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMR1, BURLINGTON FIELD OFC | BURLINGTON | VT | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 10 - SEATTLE REGIONAL OFC | SEATTLE | WA | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPMR6, HOUSTON FIELD OFC | HOUSTON | TX | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR4, LOUISVILLE FIELD OFC | LOUISVILLE | KY | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMR6, HOUSTON FIELD OFC | HOUSTON | TX | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMR1, MANCHESTER FIELD OFC | MANCHESTER | NH | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | ATLANTA | GA | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | WASHINGTON | DC | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMR3, RICHMOND FIELD OFC | RICHMOND | VA | | | | BUDG ANAL | 1120 | AFGE |
| | FPM | FPMR8, FARGO FIELD OFC | FARGO | ND | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPMR6, NEW ORLEANS FIELD OFC | NEW ORLEANS | LA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | LOUISVILLE | KY | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPMR6, OKLAHOMA CITY FIELD OFC | OKLAHOMA CITY | OK | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | SAN ANTONIO | TX | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMR4, LOUISVILLE FIELD OFC | LOUISVILLE | KY | | | | MGMT ANAL | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | FORT WORTH | TX | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPMR10, PORTLAND FIELD OFC | PORTLAND | OR | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPMR3, WASHINGTON, DC FIELD OFC | BIRMINGHAM | AL | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | NEW YORK | NY | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |

| EMPLOYEE NAME | PROGRAM OFFICE | ORG CODE LEVEL 8 | DUTY STATION CITY | DUTY STATION STATE | PAY PLAN | SERIES | GRADE | OFFICIAL TITLE | BUS CODE | UNION NAME |
|---|---|---|---|---|---|---|---|---|---|---|
| | FPM | FPM REGION 2 - NEW YORK REGIONAL OFC | NEW YORK | NY | | | | MGMT ANAL | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | COLUMBUS | OH | | | | MGMT ANAL | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | WASHINGTON | DC | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 3 - PHILADELPHIA REGIONAL OFC | PHILADELPHIA | PA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR1, MANCHESTER FIELD OFC | ATLANTA | GA | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR4, SAN JUAN FIELD OFC | SAN JUAN | PR | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR1, HARTFORD FIELD OFC | HARTFORD | CT | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR10, PORTLAND FIELD OFC | PORTLAND | OR | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | BALTIMORE | MD | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM REGION 4 - ATLANTA REGIONAL OFC | ATLANTA | GA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR3, WASHINGTON, DC FIELD OFC | WASHINGTON | DC | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMRCRO, INDIANAPOLIS FIELD OFC | INDIANAPOLIS | IN | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 2 - NEW YORK REGIONAL OFC | NEW YORK | NY | | | | MGMT ANAL | 1120 | AFGE |
| | FPM | FPM, FPMR4, JACKSONVILLE FIELD OFC | JACKSONVILLE | FL | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMRCRO, CLEVELAND FIELD OFC | CLEVELAND | OH | | | | MGMT ANAL | 1120 | AFGE |
| | FPM | FPM, FPMR6, SAN ANTONIO FIELD OFC | SAN ANTONIO | TX | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, FPMR3, PITTSBURGH FIELD OFC | PITTSBURGH | PA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR6, ALBUQUERQUE FIELD OFC | ALBUQUERQUE | NM | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 10 - SEATTLE REGIONAL OFC | SEATTLE | WA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | ATLANTA | GA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR2, NEWARK FIELD OFC | NEWARK | NJ | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | MINNEAPOLIS | MN | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, FPMR6, OKLAHOMA CITY FIELD OFC | OKLAHOMA CITY | OK | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | STOCKBRIDGE | GA | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM REGION 2 - NEW YORK REGIONAL OFC | NEW YORK | NY | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | KANSAS CITY | KS | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, OFC OF FIELD POLICY AND MGMT | WASHINGTON | DC | | | | Staff Assistant | 1120 | AFGE |
| | FPM | FPM, FPMR7, DES MOINES FIELD OFC | DES MOINES | IA | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 2 - NEW YORK REGIONAL OFC | NEW YORK | NY | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM, FPMR8, FARGO FIELD OFC | FARGO | ND | | | | MANAGEMENT ANALYST | 1120 | AFGE |
| | FPM | FPM, LABOR STANDARDS ENFORCEMENT OFC | ATLANTA | GA | | | | LABOR STANDARDS SPECIALIST | 1120 | AFGE |
| | FPM | FPM REGION 7 - KANSAS REGIONAL OFC | ATLANTA | GA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM REGION 1 - BOSTON REGIONAL OFC | BOSTON | MA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR4, BIRMINGHAM FIELD OFC | BIRMINGHAM | AL | | | | MGMT ANAL | 1120 | AFGE |
| | FPM | FPM REGION 1 - BOSTON REGIONAL OFC | BOSTON | MA | | | | PROGRAM ANALYST | 1120 | AFGE |
| | FPM | FPM, FPMR2, BUFFALO FIELD OFC | BUFFALO | NY | | | | MGMT ANAL | 1120 | AFGE |

Exhibit E

American Federation of Government Employees
National Council of HUD Locals 222

*Affiliated with AFL-CIO*

451 7th Street, SW, Suite 3240
Washington, DC 20410

Phone: ████████████
E-mail: ████████████



Antonio Gaines
President

March 11, 2025

MEMORANDUM FOR:    Ginger Burnett, Acting Director
                   Employee and Labor Relations Division

FROM:              Ashaki Robinson, PhD Regional Vice President (Headquarters)
                   Sal Viola, Regional Vice President (Region 2)
                   AFGE Council 222

SUBJECT:           7114(b)(4) Request for Information – Field Policy and
                   Management Reduction in Force

The Union submits this information request pursuant to 5 U.S.C. § 7114(b)(4), which requires the Department of Housing and Urban Development (HUD or "the Agency") to provide the exclusive representative—AFGE Council 222 ("the Union")—with reasonably available data that is necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining.

## I.    <u>Statement of Particularized Need</u>

In its role as the exclusive representative under the Statute, the Union seeks to respond to HUD's February 24, 2025, notification of its intent to implement a Reduction in Force (RIF) affecting GS-13 and below employees in the Office of Field Policy Management (FPM).

This notification has triggered bargaining under Article 33.29 and Article 49.02 of the HUD/AFGE Collective Bargaining Agreement (CBA). The requested data/information is essential for the Union to:

- Develop and propose additional bargaining positions regarding the FPM RIF.

- Determine whether HUD's actions comply with applicable laws, rules, and regulations related to the RIF process.

Accordingly, the Union formally requests the following data/information:

## II.    <u>Request for Information</u>

The Union requests that HUD provide the information identified below pursuant to 5 U.S.C.§7114 (b)(4) regarding recent RIF notice issued on February 24, 2025.

*Committed to improving the workplace*

1. **Retention Registers and Competitive Area and Competitive Level Determinations**

   a. *Discussion:* The Agency claims that it does not need to provide a retention register when abolishing all GS-13 and below positions. However, this statement is incorrect. According to **5 C.F.R. § 351.601**, every agency is required to establish a separate retention register for each competitive level.

   b. *Particularized Need:* The Union requires this information to verify that the RIF procedures comply with **Merit System Principles, 5 CFR Part 351 and the CBA** and to effectively represent affected employees.

2. **Cost-Benefit Analysis or Financial Assessments Supporting the RIF Decision**

   a. *Discussion:* Under **42 U.S.C. § 3535(p)**, the Agency is required to conduct a **cost-benefit analysis** assessing the impact of any reorganization plan on affected offices. This analysis must include, at a minimum:

      i. An estimate of **cost savings**, supported by background information detailing the source and justification for the savings.
      ii. An estimate of **additional costs** resulting from the reorganization.
      iii. A **study of the impact** on the local economy.
      iv. An **assessment of how the reorganization will affect** the availability, accessibility, and quality of services provided to recipients.

   b. *Particularized Need:* The Union requests a copy of the **cost-benefit analysis** outlined above. This information is essential to evaluate the financial justification for the RIF

3. **List of Positions and Employees Affected by the RIF, Including Series, Grade, and Duty Locations**

   a. *Particularized Need:* The Union requires this information to identify impacted members, provide them with appropriate representation, explore potential reassignment or retraining opportunities and verify that the Agency is complying with merit system principles, **5 CFR Part 351** and the **CBA**.

4. **Timeline and Implementation Plan for the RIF**

   a. *Particularized Need:* Understanding the schedule and steps of the RIF process is crucial for the Union to offer timely support to affected employees and to negotiate mitigation strategies.

5. **Communication Sent to Employees Regarding the RIF**

   a. *Particularized Need:* Reviewing these communications allows the Union to ensure that information provided to employees is accurate, complete, and in compliance with the CBA and statutory requirements.

6. **Any Studies or Reports Relied Upon in Deciding to Implement the RIF**

   a. *Particularized Need:* The Union seeks these documents to understand the underlying factors influencing the RIF decision and to address any potential discrepancies or concerns during bargaining sessions.

7. **Any Congressional Approval Documentation for the Transfer of Davis-Bacon Responsibilities**

   a. *Particularized Need:* The Office of Davis-Bacon and Labor Standards (DBLS) oversees HUD's compliance with Federal prevailing wage requirements for HUD-assisted and insured housing and community development programs under the Davis-Bacon and Related Acts.

      As the Agency plans to implement a Reduction in Force (RIF) affecting all FPM GS-13 and below, this includes employees responsible for administering Federal prevailing wage requirements for maintenance workers in public housing agencies and Tribally Designated Housing Entities.

      The requested information is necessary to confirm whether HUD is transferring DBLS functions to another HUD office or Federal entity and to ensure compliance with legal and procedural requirements.

      All of the requested information is in the exclusive control of the Agency and is requested in order to perform our representational responsibilities under the Statute.

The Union requests this data be furnished no later than seven (7) calendar days after the receipt of this request electronic format. If HUD cannot provide any of the information requested within seven (7) calendar days from receipt of this letter, please contact the Union immediately to discuss feasible alternatives.

If this request is denied, in whole or in part, please provide the specific reason(s) for the denial, countervailing interests, and authority relied upon. If you have any questions or concerns about this request, please contact me.

In respect to the mid-term negotiations, the Union believes our bargaining establishes our right to the information described. This request is consistent with the guidance established by FLRA General Counsel guidelines. The Union has shown the necessity for this information and has established the Union's right to such information to fulfill its representational duties towards bargaining unit employees.

Exhibit F

**Bobbitt, Veronica S**

| | |
|---|---|
| **From:** | Burnett, Ginger S |
| **Sent:** | Tuesday, April 1, 2025 3:29 PM |
| **To:** | Robinson, Ashaki |
| **Cc:** | Bobbitt, Veronica S; ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ |
| **Subject:** | RE: Alternative Considerations - FPM Reduction in Force |

Thank you, Ashaki.  Please see the agency's response in accordance with Section 33.04 below:

Under President Trump's Executive Order *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative,* agencies were required to engage in severe cost cutting measures including the directive that "Agency Heads shall promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law".  HUD offered employees the opportunity to participate in the Deferred Resignation program, launched the Deferred Resignation Program 2.0 and requested VERA for HUD employees to lessen the need for RIFs.

Thank you very much,

Ginger

**From:** Robinson, Ashaki ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
**Sent:** Monday, March 31, 2025 1:18 PM
**To:** Burnett, Ginger S ▇▇▇▇▇▇▇▇▇▇@hud.gov>
**Cc:** Robinson, Ashaki ▇▇▇▇▇▇▇▇▇▇▇▇ Bobbitt, Veronica S ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
**Subject:** Alternative Considerations - FPM Reduction in Force

This email is sent on behalf of Chief Negotiator ▇▇▇▇▇▇▇▇

Ginger,

In accordance with 33.04 of the HUD/AFGE Collective Bargaining Agreement, the Union is requesting a summary of all actions considered or adopted prior to deciding to conduct a Reduction in Force for the Office of Field Policy Management.

Please provide this information NLT Friday April 4, 2025.

**Ashaki Robinson, PhD**
Regional Vice President,
Headquarters
AFGE Council 222

**Phone**: █████████
**Email**:
████████████████
████████████████
█████████████

**www.afge476.org**

Exhibit G



**U.S. Department of Housing and Urban Development**
Office of the Chief Human Capital Officer

**DATE:** April 7, 2025

**MEMORANDUM FOR:** Ashaki Robinson, PhD, President, AFGE Council 222

**FROM:** Angela Ubrey, Labor Relations Advisor, ELRD        *Angela M. Ubrey*

**SUBJECT:** Response to Particularized Need Request, Request for Information (RFI) filed under
5 U.S.C. 7114(b)(4) on March 11, 2025, referencing Field Policy and
Management (FPM) Reduction In Force (RIF).

I have reviewed the particularized needs request in reference to probationary employees and the
Labor-Management Relations Statute for guidance on the agency's duty to furnish information
under Section 7114(b)(4).  Agency responses in bold below.

1. AFGE has requested the agency provide a separate retention roster in accordance with
   **5 C.F.R. § 351.601** and collective bargaining agreement.

   **There is no responsive information.**

2. AFGE has requested a cost-benefit analysis or financial assessment supporting the RIF decision.

   **There is no responsive information.**

3. AFGE has requested a list of positions and employees affected by the RIF to include
   series, grade, and duty station.

   **On February 24, 2025, HUD provided AFGE with a list of FPM GS 13 and below
   employees that are to be affected by the RIF. On March 22, 2025, HUD provided
   AFGE with an updated list of FPM GS 13 and below employees that are to be
   affected by the RIF.**

4.  AFGE has requested a timeline and implementation plan for the RIF.

    **In the February 24, 2025 memorandum, HUD provided AFGE with notification of the RIF procedures for FPM GS 13 and below employees, which was to be implemented as of May 18, 2025.  On March 24, 2025, HUD issued AFGE an update to the timeline information, which provided, "Management will provide the Union with an updated timeline in accordance with Section 33.05 (5)."**
    **The FPM RIF will follow the timelines outlined in Article 33 of the AFGE collective bargaining agreement.**

5.  AFGE has requested any communications sent to employees regarding the RIF.

    **There is no responsive information.**

6.  AFGE has requested any studies or reports relied upon to decide on the FPM RIF.

    **There is no responsive information.**

7.  AFGE has requested any Congressional approval documentation relating to the transfer of Davis-Bacon Responsibilities.

    **There is no responsive information.**

Exhibit H

**Bobbitt, Veronica S**

| | |
|---|---|
| **From:** | Robinson, Ashaki |
| **Sent:** | Friday, April 18, 2025 12:20 PM |
| **To:** | Ubrey, Angela M |
| **Cc:** | ████████████████ Bobbitt, Veronica S; ████████████ |
| | ████████████████████ |
| **Subject:** | RE: AFGE Council 222 Request for Information - 7114(b)(4) Request for Information – Field Policy and Management Reduction in Force |

Good afternoon Angela,

I am following up because there are still unresolved questions that demand direct and immediate answers.

1. **Who within OGC and OCHCO specifically approved the messaging in this email?**

   Vague references to "teams" or "leadership" are not acceptable. I expect names, titles, and dates of approval.

2. **Who authored or conceptualized the original response in the email?**

   Again, I'm asking for a specific individual or individuals who were responsible for developing the content of the message that was sent out.

3. **Most importantly—does the information referenced in the communication actually exist?**

   This is not a rhetorical question, and I'm no longer interested in deflections. Does the information exist, yes or no? If yes, provide it. If not, state that explicitly.

This level of opacity and evasion is unacceptable. We are beyond the point of vague reassurances. Transparency, accountability, and professionalism are expected from all parties. Provide direct answers to these questions without delay.



**Ashaki Robinson, PhD**
Regional Vice President,
Headquarters
AFGE Council 222
**Phone**: ████████████
**Email**:
████████████████
██████████████
████████████
**https://afgecouncil222.com/**

---

**From:** Ubrey, Angela M <████████@hud.gov>
**Sent:** Friday, April 18, 2025 9:27 AM
**To:** Robinson, Ashaki ████████████████
**Cc:** ██████████████████████████████████ Bobbitt, Veronica S
<████████████████ ██████████████████████████
████████████████

**Subject:** RE: AFGE Council 222 Request for Information - 7114(b)(4) Request for Information – Field Policy and Management Reduction in Force

Good Morning,

This information response was approved by OGC and the OCHCO front office.  Please let me know if you have any further questions.

*Angela M Ubrey*
*Senior Labor Relations Advisor - Headquarters*
*U.S. Dept. of HUD*
████████████████████████
*Phone:* ██████████
████████ *@hud.gov*

*This message is intended for designated recipients only.  If you have received this message in error, please delete the original and all copies and notify the sender immediately.  Federal law prohibits the disclosure or other use of this information.*

---

**From:** Robinson, Ashaki ███████████████
**Sent:** Thursday, April 17, 2025 6:18 PM
**To:** Ubrey, Angela M <████████████@hud.gov>
**Cc:** ████████████████████████████████████ Bobbitt, Veronica S
███████████ ██████████████████████████████████████
**Subject:** Re: AFGE Council 222 Request for Information - 7114(b)(4) Request for Information – Field Policy and Management Reduction in Force

Thank you for your response.

Can you please inform the Union who approved the final language?

---

**From:** Ubrey, Angela M <████████████@hud.gov>
**Sent:** Thursday, April 17, 2025 6:08:25 PM
**To:** Robinson, Ashaki ███████████████
**Cc:** ████████████████████████████████ Bobbitt, Veronica S
<████████████████████ █████████████████████████
████████████████████████████████████████
████████████████████████████████
**Subject:** RE: AFGE Council 222 Request for Information - 7114(b)(4) Request for Information – Field Policy and Management Reduction in Force

Good Afternoon,

Thank you for your email and patience while the request was processed. The information response was vetted through leadership and legal. The language contain in the information response is the final approved language.

Have a nice day. Please note I have accepted the DRP2 and my last day is fast approaching (FYI).

*Angela M Ubrey*
**Senior Labor Relations Advisor - Headquarters**
**U.S. Dept. of HUD**
███████████████████████████
**Phone:** ████████████████
████████████ **@hud.gov**

*This message is intended for designated recipients only. If you have received this message in error, please delete the original and all copies and notify the sender immediately. Federal law prohibits the disclosure or other use of this information.*

---

**From:** Robinson, Ashaki ████████████████████████████
**Sent:** Thursday, April 17, 2025 12:46 PM
**To:** Ubrey, Angela M <████████████@hud.gov>
**Cc:** ████████████████████████████████████ Bobbitt, Veronica S
████████████████████████████████████████████████
██████████████████████████████████████████
**Subject:** RE: AFGE Council 222 Request for Information - 7114(b)(4) Request for Information – Field Policy and Management Reduction in Force

Good afternoon Angela,

Thank you for your response.

For the sake of clarity, is the Agency stating that the information requested by the Union does not exist?



**Ashaki Robinson, PhD**
Regional Vice President,
Headquarters
AFGE Council 222
**Phone**: ████████████████
**Email**: ████████████████@hud.gov
████████████████████
**https://afgecouncil222.com/**

---

**From:** Ubrey, Angela M <████████████@hud.gov>
**Sent:** Monday, April 7, 2025 4:46 PM
**To:** Robinson, Ashaki ████████████████
**Cc:** ████████████████████████████████ Bobbitt, Veronica S
<██████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████

**Subject:** RE: AFGE Council 222 Request for Information - 7114(b)(4) Request for Information – Field Policy and Management Reduction in Force

Greetings,

Please find the response to this information request.



*Angela M Ubrey*
**Senior Labor Relations Advisor - Headquarters**
**U.S. Dept. of HUD**
██████████████████
**Phone:** ██████
████████ @hud.gov

*This message is intended for designated recipients only. If you have received this message in error, please delete the original and all copies and notify the sender immediately. Federal law prohibits the disclosure or other use of this information.*

---

**From:** Robinson, Ashaki ████████████████
**Sent:** Tuesday, March 11, 2025 1:59 PM
**To:** Burnett, Ginger S <████████████ @hud.gov>
**Cc:** ████████████████████████████ Bobbitt, Veronica S ████████████████████████████████████████ ████████████████████████████████
**Subject:** AFGE Council 222 Request for Information - 7114(b)(4) Request for Information – Field Policy and Management Reduction in Force

Good afternoon

Attached is a 7114(b)(4) information request on behalf of AFGE Council 222.



**Ashaki Robinson, PhD**
Regional Vice President,
Headquarters
AFGE Council 222

**Phone:** ████████
**Email:**
████████████ @hud.gov
████████████
**www.afge476.org**