Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
dleonard@altber.com
bchisholm@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org

*Attorneys for Plaintiffs*

[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **DECLARATION OF LARHONDA D. GAMBLE** |

**DECLARATION OF LARHONDA D. GAMBLE**

I, LaRhonda D. Gamble, declare as follows:

1.    I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2.    I am the President of Local 12 of the American Federation of Government Employees ("AFGE" or "Union").  Local 12 represents employees at the Department of Labor ("DOL" or "Agency") who are assigned to work at DOL Headquarters located in Washington, D.C.  As of January 2025, there were approximately 3,976 bargaining unit employees covered by the collective bargaining agreement ("CBA") that Local 12 negotiates with the DOL.  There were approximately 1,020 dues paying members in Local 12.  The DOL has not provided us with recent information, so we do not know the current number of employees in our bargaining unit, or how many members are still employed at the DOL.

3.    I have worked at the DOL since 2014.  I have only worked in DOL Headquarters.  I became an Unemployment Insurance Program Specialist.  Then in 2017, I went on full-time release, where the DOL pays my salary and I assist full-time with labor relations functions between DOL and Local 12.  Under our CBA, there are 3.5 full-time equivalent bargaining unit positions that serve in this role: me as the President, our Executive Vice President, our Chief Steward, and the Secretary-Treasurer is on a .5 release, meaning they spend only half time on labor relations functions.  Due to the DOL's reorganization that I will discuss in this declaration, our Chief Steward and Secretary-Treasurer selected the early retirement option, so the Union currently only has 2 people serving in these labor relations roles.

4.    The DOL has nine different subagencies: (1) Bureau of Labor Statistics ("BLS"); (2) Employee & Training Administration ("ETA"); (3) Employee Benefits Security Administration ("EBSA")/ Office of Workers' Compensation Programs ("OWCP"); (4) Mine Safety & Health Administration ("MSHA"); (5) Occupational Safety and Health Administration ("OSHA"); (6) Office of the Assistant Secretary for Administration and Management ("OASAM"); (7) Office of Federal Contracts Compliance Program ("OFCCP")/Office of Labor-Management Standards ("OLMS")/Wage and Hour Division ("WHD"); (8) Office of the Solicitor

("SOL"); and (9) Office of Secretary (OSEC), with 14 combined subagencies, including the Women's Bureau, International Labor Affairs Bureau ("ILAB"), and Office of Public Affairs ("OPA").  AFGE Local 12 represents employees who work in all of these subagencies.

5.      AFGE Local 12's mission is to advocate for and promote the interests of bargaining unit members in their employment at the DOL in Headquarters. As the exclusive bargaining representative of these workers, the Union provides many services to all bargaining unit members. Core functions of the Union include collective bargaining with the agency to obtain a fair and reasonable CBA; discussing workplace concerns with DOL leadership and working out solutions; filing and negotiating grievances against the DOL to enforce the terms and conditions of the CBA; pursuing arbitrations to enforce the CBA; and providing other support, guidance, and resources to bargaining unit employees.  During my time on full-time release since 2017, I have worked with five Secretaries of Labor, including Thomas Perez, Alexander Acosta, Eugene Scalia, Martin Walsh, and Julie Su, before the current Secretary of Labor Lori Chavez-DeRemer.  All of these prior Secretaries of Labor have been willing to meet with Local 12 and discuss concerns. Secretary Chavez-DeRemer, however, has not responded to Local 12's requests for information and has otherwise been uncommunicative with the Union in an unprecedented manner.  This has been a problem under the current administration.

6.      AFGE Local 12 first became aware of President Trump's plan to conducts "large-scale" Reductions In Force ("RIFs") and agency reorganization through the February 11, 2025 Executive Order ("EO"), which called for each agency to submit an Agency Reduction-in-Force (RIF) and Reorganization Plan ("ARRP").  No one from the DOL had said anything about large-scale RIFs or agency reorganization to the union prior to that EO.

7.      On February 20, 2025, I sent Dawn Wilkie, DOL Human Resources Specialist, a Request for Information that included: "Any and all documents relating to the administration of any reduction in force to take place between January 20, 2025 and October 1, 2025[.]"  A true and correct copy of the February 20 information request is attached hereto as Exhibit A.  On March 11, 2025, I sent Vincent Micone, Acting Labor Secretary, a demand to bargain regarding DOL RIFs,

Declaration of LaRhonda D. Gamble

including requesting information about the "scope and rationale of the RIF." A true and correct copy of the March 11 information request is attached hereto as Exhibit B.

8.     The Department was already understaffed in key areas, impacting the Department's ability to properly function for the EO was announced. For example, the Wage and Hour Division (WHD), which enforces federal laws on minimum wage, overtime and child labor protections, was already down to 650 employees, the fewest employees for WHD since 2007.

9.     On April 4, 2025, the DOL announced that DOL employees had until April 18 to opt into early retirement or deferred resignation programs under the threat that RIF plans "should be expected" in the coming weeks. But employees, including those rank-and-file workers represented by the Union, for ILAB, OFCCP, the Women's Bureau and OPA had only until April 14 to decide whether they wanted to take a resignation option. Those areas have been particularly hard hit by resignations. The Union does not know the exact numbers because management will not share that information with me, despite the Union's multiple requests for it.

10.     On April 16, the Union received an email from DOL Human Resources that all employees in the Enforcement Division of OFCCP would be placed on administrative leave effective the prior evening, April 15. On April 16, I sent an Information Request to Secretary Chavez-DeRemer, asking among other things which employees were placed on leave. A true and correct copy of my email is attached hereto as Exhibit C. I requested the information be provided by April 21. The DOL has not provided any information in response to the Union's information requests and has refused to meet to bargain over these actions.

11.     The Union estimates based on conversations with bargaining unit employees in ILAB and OFCCP that those whole units have lost more than 90% of their employees. According to DOL's website, complaints filed with OFCCP on behalf of veterans and disabled workers "are statutory and remain in effect[,]" but with 90% or more of the OFCCP staff on administrative leave based due to the various resignation programs and administrative leaves in advance of RIF notices, there is not staff to conduct audits and ensure statutes are enforced. A true and correct copy of DOL website's landing page for OFCCP, which is also available at https://www.dol.gov/agencies/ofccp, is attached hereto as Exhibit D.

12.    Although the DOL has not made public or informed the Union of the content of the ARRP or yet sent notices of any RIF, management have said internally that they are trying to cut the Agency's headquarters staff of 3,976 employees by 70 percent, and this is to occur by August 2025.  While certain offices will have even higher reductions, such as OFCCP and ILAB, all departments will experience drastic cuts to staff.   When the 70 percent figure has been stated by management, the Union has asked Division Chiefs and career administrators where the cuts will occur, they have said they do not know.  From those responses, it is my understanding that DOL management is not involved in planning the reorganization or RIFs.

13.    I still have not spoken with Secretary Chavez-DeRemer.  By this far into the past five Labor Secretaries' tenure, the Local 12 President had already met with the sitting Secretary of Labor on behalf of the Union and we had discussed issues of concern to the Union.  Secretary Chavez-DeRemer still has not met with me and has not responded to my outreach.

14.    Just this week, I saw a news article publicly reporting on April 22, 2025 that 20% of the DOL staff across the nation had already resigned, citing "more than 2,700 of the DOL's 14,578 employees agreed to take the exit offer[.]"  A true and correct copy of the April 22 Bloomberg article is attached hereto as Exhibit E.

15.    The uncertainty of whether DOL staff will continue to have employment and the need to get work done with significantly fewer people is overwhelming the staff who remain at DOL.  I have already seen an increase in bargaining unit employees requesting accommodations due to anxiety and depression from the current situation.  Not even the Union knows what is happening.  Generally, when someone leaves the bargaining unit, we receive an 1188 Form that says dues deduction has been cancelled for that person because they left the job.  We have not received any notification or 1188 forms, but we know people are leaving the bargaining unit and dues payments have stopped for them.  Because we have not received the standard form, we are not able to track with precision who is leaving, nor are we receiving information about they are leaving.  When we have asked for information about how many people and who have taken the resignation options, the DOL has not provided that information to the Union.  We therefore do not know the true magnitude of the current cuts.  We also know that supervisors have been taking the

1  resignation options and so there are many DOL employees who do not currently have supervisors

2  due to the mass departures.  DOL administration has not replaced those departed supervisors.

3      16.    The Union has no reason to doubt management reports that the plan is to cut DOL

4  headquarters staff by 70 percent, a drastic reduction in staffing that would be devasting for the

5  Agency.  For example, it would be impossible to continue to conduct OSHA workplace safety

6  inspections and MSHA mine inspections at current levels with a 70% reduced staff.  Even with the

7  current overall decrease of around 20% in staffing, these important inspections are likely to

8  decrease by at least 20%.  Without safety inspections, after safety violations are reported to OSHA

9  and MSHA, preventable workplace deaths and injuries are more likely to occur.  At OFCCP, the

10  cuts in staffing will mean that veterans facing employment discrimination in the hiring or

11  promotion process wll not be able to count on OFCCP's intervention and assistance.  OFCCP's

12  deterrent effect will be over.

13      17.    The Union's staff and activities are funded through members' voluntary dues, most

14  of which are paid through payroll deduction from their pay. The Union has already impacted by

15  the dues lost from the employees who have left, but a further 70% or similarly large cut in staffing

16  would mean a corresponding drastic drop in dues, making it significantly more difficult for the

17  Union to continue to function and to provide the services and protection to bargaining units

18  identified here.

19      I declare under penalty of perjury under the laws of the United States that the foregoing is

20  true and correct.  Executed May 1, 2025, in Washington, D.C.

21

22                                        *LaRhonda D. Gamble*

23                                        LaRhonda D. Gamble

24

25

26

27

28

Exhibit A



**American Federation of Government Employees**
**Local No. 12, AFL-CIO**

February 20, 2025

LaRhonda Gamble
President, AFGE Local 12
200 Constitution Avenue, N.W.
Room- N1503
Washington, D.C. 20210
███████████████████@dol.gov
██████████████

Dawn Wilkie
Human Resources Specialist
Labor Relations, DELMR, OHR, OASAM, DOL
████████@dol.gov

**Subject: AFGE Local 12 Response to DOL Denial of Request for Information**

      Please accept this letter as the formal response of the American Federation of Government Employees (AFGE), Local 12 to the Department of Labor's February 3, 2025, denial of AFGE Local 12's request for evidence. The Agency denied AFGE Local 12's request for information on the basis that the request failed to show a "particularized need" for the information relating to its necessity for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining. The Agency also asserts that the disclosure of the information sought by the AFGE Local 12 is prohibited by law. AFGE Local 12 respectfully disagrees with the Agency's denial and renews its request for information.

      AFGE Local 12 now requests the following information pursuant to 5 U.S.C. § 7114(b)(4):

1. The names of all employees and probationary employees under AFGE Local 12's jurisdiction who have been placed on administrative leave or terminated due to matters related to Executive Order 13985.

2. The dates on which these employees were placed on administrative leave or terminated.



3.  Any additional relevant details, including but not limited to the roles, positions, and duty statuses of the affected employees.

4.  Copies of any notices, memoranda, or directive issued regarding the termination or placement of these employees on administrative leave.

5.  The names of all probationary employees under AFGE Local 12's jurisdiction who have been terminated relating to the implementation of Executive Order 13985.

6.  Any and all documents relating to the administration of any reduction in force to take place between January 20, 2025 and October 1, 2025, pursuant to Article 30.1(c) and Article 30.6 of the collective bargaining agreement.

Pursuant to the Federal Service Labor-Management Relations Statute (5 U.S.C. § 7114(b)(4)), the Agency is obligated to provide information upon request information which is (1) normally maintained by the agency in the regular course of business; (2) reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining; and (3) does not constitute guidance, advice, counsel, or training provided for management officials or supervisors, relating to collective bargaining.

A union establishes particularized need for information it has requested by explaining its interest in the disclosure of the information with some support further than a bare assertion but need not be so specific as to describe the exact nature of any alleged misapplication or violation of policy, procedure, law or regulation by the agency. *See Health Care Fin. Admin.*, 56 FLRA 156, 162 (2000) ("To require the Union to describe the exact nature of the alleged irregularities is asking too much of the Union.").

Here, the requested information is clearly necessary for the proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining because the Agency must provide this very information pursuant to Article 39 and Article 24.2 of the collective bargaining agreement. *See NLRB v. FLRA*, 952 F.2d 523, 533 (D.C. Cir. 1992) (explaining that a union "has a particularized need to know whether the agency has complied with the collective bargaining agreement"). AFGE Local 12 will use the requested information to carry out a range of representational responsibilities such as contract administration, determining whether to file a grievance or ULP, and representing the interests employees affected by Agency action. *See FAA*, 55 FLRA 254, 259-60 (1999). As stated in AFGE Local 12's initial request for information,

This information is essential for AFGE Local 12 to ensure transparency, advocate for the fair treatment of affected employees, and fulfill our statutory obligations as their exclusive

# 12^

*American Federation of Government Employees*
*Local No. 12, AFL-CIO*

representative. The requested information is critical for assessing potential impacts on our members and ensuring that any personnel actions taken are in compliance with applicable laws, regulations, and collective bargaining agreements.

AFGE Local 12's stated need for the information and intended purpose is far more than a bare assertion and directly links the information sought by the union to its statutory responsibilities as the exclusive bargaining representative. The Union seeks the exchange of information the parties bargained for in the contract. As such, AFGE Local 12's request for information has sufficiently articulated a particularized need for the information.

Further, the disclosure of the information sought by AFGE Local 12 is not prohibited by the Privacy Act because it is subject to the routine use exception. Under Article 39.1(b), the Agency is to provide on a routine basis "[l]ists of new employees (appointments by type and term), transfers, promotions, and separation by type (monthly)." Article 24.2(d) provides that the Agency will "notify Local 12 of the separation of a probationary employee and their Agency."

Here, the information sought by AFGE Local 12 is undeniably traceable to and inextricably connected to the administration of the contract and the Union's understanding of the Agency's compliance. Article 39 and Article 24 of the CBA reflect the Agency's agreement to provide this very information in part because it is squarely and exclusively under the Agency's control with no adequate alternative sources for AFGE Local 12 to obtain the information. The union merely requests information that the Agency already contracted to provide the union under the CBA. As such, the requested information falls under the routine use exception to the Privacy Act and does not prevent the Agency from providing the information pursuant to Federal Service Labor-Management Relations Statute (5 U.S.C. § 7114(b)(4)).

This request for information is intended to be an ongoing request that renews upon the Agency's receipt of any new information or documents responsive to the request. Any such responsive information should be promptly provided to AFGE Local 12 in a supplemental response by the Agency. Thank you for your attention to this matter.

Sincerely,

*LaRhonda D. Gamble*

LaRhonda D. Gamble
President
AFGE Local 12

cc:    Gregory Green, Executive Vice President of AFGE Local 12

Exhibit B



**American Federation of Government Employees**
**Local No. 12, AFL-CIO**

LaRhonda Gamble
President
AFGE Local 12
200 Constitution Avenue, N.W.
Room- N1503
Washington, DC 20210
████████████████@dol.gov
████████████

March 11, 2025

Vincent Micone
Acting Labor Secretary
U.S. Department of Labor
200 Constitution Ave, NW
Washington, DC 20210

**Subject:** Demand to Bargain & Employee Protections Regarding RIF Implementation at DOL

American Federal Government Employees (AFGE), Local 12 formally requests **full justification** for the proposed **Reduction in Force (RIF)** at the U.S. Department of Labor (DOL). Given the Department's critical role in **enforcing labor laws, workplace protections, and economic security programs**, any staffing reductions raise serious concerns about the continued ability to fulfill these responsibilities.

In accordance with **5 U.S.C. Chapter 71 (Federal Labor-Management Relations Statute)** and the **Collective Bargaining Agreement (CBA)**, AFGE Local 12 requests to negotiate the impact and implementation of this RIF, including but not limited to:

- The **scope and rationale** of the RIF.

- Consideration of **alternative cost-saving measures** before involuntary separations.

- **Fair and transparent application** of RIF regulations and procedures.

To protect employee rights and ensure lawful implementation, the Department must comply with **5 CFR Part 351** and applicable collective bargaining agreements. Specifically, RIF actions must be based on:

- **Tenure & Seniority Protections** – Career employees must be prioritized over temporary or probationary staff.

- **Veterans' Preference Rights** – Proper placement in the retention order must be ensured.

- **Bumping & Retreat Rights** – Eligible employees must be properly reassigned when applicable.

- **Performance Ratings** – Ratings used in RIF decisions must be **fair, up to date, and properly applied**.

Before implementing a RIF, the Department must fully explore **alternative solutions** to avoid involuntary separations, such as:

- **Voluntary Early Retirement Authority (VERA) & Voluntary Separation Incentive Payments (VSIP)** to reduce the workforce through attrition.

- **Hiring freezes or workforce reshuffling** to balance staffing needs.

- **Temporary reassignments or details** to other agencies in need of personnel.

Given the serious impact of this RIF on employees and public services, AFGE Local 12 **demands full transparency** in the following areas:

1. **Budgetary Rationale** – Provide detailed financial data justifying the need for the RIF, including alternative cost-saving measures that were considered and rejected.

2. **Selection Criteria** – Release **clear documentation** on how employees are ranked and selected for separation or reassignment.

3. **Retention Registers** – Ensure that retention registers are **accurate, up to date, and fairly applied**, with full access for affected employees to review their placement.

4. **Use of Contractors** – Disclose whether **contractors or non-career employees** are being retained while career employees are subject to layoffs.

5. **Impact Assessments** – Conduct and share an **impact analysis** on how the RIF will affect DOL programs, employee workloads, and public services.

6. **Future Workforce Plans** – Provide information on whether **additional RIFs or hiring freezes** are anticipated in the near future.

The DOL is responsible for **protecting American workers, enforcing wage laws, administering unemployment benefits, and ensuring safe workplaces**. A reduction in the workforce must not undermine these essential functions. AFGE Local 12 seeks assurances that:

- Critical services will not be disrupted.

- The remaining employees will not face unreasonable workloads.

- Workers' rights and protections will continue to be enforced effectively.

## 6. Request for Immediate Discussion

Given the significant impact of this proposed RIF, AFGE Local 12 requests an immediate meeting with DOL leadership to discuss **the justification, alternatives, and fair implementation of the RIF**. Please provide available dates for negotiations within **five business days** of this notice.

Sincerely,


LaRhonda D. Gamble
President
AFGE Local 12

Exhibit C



**American Federation of Government Employees**
**Local No. 12, AFL-CIO**

April 16, 2025


LaRhonda D. Gamble
President, American Federation of Government Employees (AFGE), Local 12
200 Constitution Avenue, NW, Room N1503
Washington, DC 20210
███████████████████████@dol.gov


Secretary Lori Chavez-DeRemer
United States Department of Labor
200 Constitution Avenue, NW
Washington, DC, 20210

Kimberly Amaya
Acting Director, Employee and Labor Management Relations
United States Department of Labor
200 Constitution Avenue, NW
Washington, DC, 20210


**Subject:** *Formal Information Request Concerning Administrative Leave Actions within OFCCP Enforcement Division*

Dear Secretary Lori Chavez-DeRemer and Acting Director Amaya,

On behalf of AFGE, Local 12, we are submitting this formal request for information under 5 U.S.C. § 7114(b)(4) and all other applicable laws and collective bargaining provisions.

On April 16, 2025, we received an email from the Office of Human Resources indicating that employees in the Enforcement Division of the Office of Federal Contract Compliance Programs (OFCCP) would be placed on administrative leave effective *the evening of April 15, 2025*. This retroactive effective date raises serious concerns about whether the Department complied with its obligation to provide timely notification to the Union.

This concern is further compounded by the fact that AFGE, Local 12, filed a grievance on April 15, 2025, asserting that the Department failed to notify the Union in accordance

with the requirements set forth in the Local 12 Collective Bargaining Agreement (CBA). The timing of the OHR notice strongly suggests that the Department may have withheld the communication until after the Union exercised its representational rights.

Additionally, the email stated that certain employees in the affected office who opted into the Deferred Resignation Program will be placed on administrative leave effective Friday, April 17, 2025. The Union has yet to receive any formal notification of these actions, and we have not been provided with the required lists necessary to verify that the Department is following the appropriate bump and retreat procedures as mandated by applicable laws, regulations, and our negotiated agreement.

We believe these actions may constitute violations of the Local 12 CBA and potentially other statutory or regulatory requirements, including but not limited to:

- Failure to provide timely notice of proposed personnel actions;
- Failure to provide information necessary for the Union to discharge its representational duties;
- Failure to comply with RIF/TOF notice procedures and employee rights under 5 CFR Part 351.

Accordingly, we respectfully request the following information:

1. A list of all employees placed on administrative leave effective April 15, 2025, including full names, position titles, and organizational assignments.
2. A list of all employees scheduled to be placed on administrative leave effective April 17, 2025, including those in the Deferred Resignation Program.
3. The total number of employees who opted into the Deferred Resignation Program, broken down by office and job series.
4. Copies of all notices, memos, or communications sent to affected employees regarding administrative leave or separation.
5. A copy of any guidance, directives, or decision memos from DOL leadership regarding the administrative leave action or the Deferred Resignation Program.
6. The rationale and criteria used to determine which employees were selected for administrative leave.
7. All documents and correspondence related to potential RIF or TOF planning within OFCCP, particularly as it relates to the Enforcement Division.
8. Confirmation as to whether a RIF/TOF is anticipated, and if so, when official notification to the Union will be provided.
9. A copy of the current retention registers for the affected competitive areas and a listing of bump and retreat rights for potentially impacted employees.
10. Identification of any contractors or non-bargaining unit employees performing duties similar to those of the impacted bargaining unit employees.

Please consider this a time-sensitive request, as we require this information to fulfill our statutory obligations and to ensure that employee rights are protected in the face of these adverse personnel actions.

We request that the information be provided electronically no later than **close of business April 21, 2025**, or alternatively, please advise immediately if you anticipate any delay in responding.

Should you have any questions regarding this request, please contact us directly.

Respectfully,

LaRhonda D. Gamble
President
AFGE, Local 12

cc:

- Gregory B. Green II, ILAB Acting Agency Vice President, AFGE Local 12
- George E. Jordan, Head Steward, AFGE Local 12
- Ottis Johnson, Jr., National Vice President, AFGE District 14
- Carlton Gullab, National Representative, AFGE District 14

*Electronically Filed: April 16, 2025*

Exhibit D

**U.S. DEPARTMENT OF LABOR**

**Office of Federal Contract Compliance Programs**



## New Executive Order 14173: Ending Illegal Discrimination and Restoring Merit-Based Opportunity

**Read the Executive Order**

On January 21, 2025, the White House and President Donald Trump issued an Executive Order: "Ending Illegal Discrimination and Restoring Merit-Based Opportunity", which revoked Executive Order 11246. For 90 days from the date of this order, Federal contractors *may* continue to comply with the regulatory scheme in effect on January 20, 2025. Requirements under Section 503 of the Rehabilitation Act, 29 U.S.C. 793, and the Vietnam Era Veterans' Readjustment Assistance Act (VEVRAA), 38 U.S.C. 4212, both enforced by OFCCP, are statutory and remain in effect.

OFCCP is updating the website to bring the information into compliance with the new executive order. Please check back for updates and further guidance. If you have any questions, please submit an online inquiry to the OFCCP Customer Service Helpdesk or call 1-800-397-6251. For TTY-Based Telecommunications Relay Service, dial 7-1-1. To file a Section 503 or VEVRAA complaint, please use the OFCCP complaint form.

## What's New

Executive Order Ending Illegal Discrimination and Restoring Merit-Based Opportunity

OFCCP Stakeholder Message on New Executive Order

## Quick Links

Freedom of Information Act

Freedom of Information Act Library

Freedom of Information Act (FOIA) Frequently Asked Questions

Submit Feedback

Agencies    Forms    About Us    News    Contact Us

**Office of Federal Contract Compliance Programs**

An agency within the U.S. Department of Labor

200 Constitution Ave NW
Washington, DC 20210

1-800-397-6251

www.dol.gov

**FEDERAL GOVERNMENT** ⊞

White House

Disaster Recovery Assistance

DisasterAssistance.gov

USA.gov

No Fear Act Data

U.S. Office of Special Counsel

**LABOR DEPARTMENT** ⊞

About DOL

Guidance Search

Español

Office of Inspector General

Subscribe to the DOL Newsletter

Read the DOL Newsletter

Emergency Accountability Status Link

A to Z Index

**ABOUT THE SITE** ⊞

Disclaimers

Plug-Ins Used on DOL.gov

Accessibility Statement

Connect With DOL



Site Map | Important Website Notices | Privacy & Security Statement

Submit Feedback

Exhibit E

Daily Labor Report ®
April 22, 2025, 12:15 PM PDT; Updated: April 22, 2025, 2:01 PM PDT
**Labor Department to Lose 20% of Staff to Resignation Offers (1)**
Exclusive

- **Nearly 3,000 DOL workers agree to leave agency later this year**
- **Move comes after two rounds of exit offers to employees**

Nearly one in five workers at the US Department of Labor opted to leave their jobs later this year as part of the Trump administration's deferred resignation program, according to two DOL employees briefed on the matter.

More than 2,700 of the DOL's 14,578 employees agreed to voluntarily separate from the agency under the exit offer, which allows federal employees to receive pay and benefits through September if they resign, the employees said.

Labor Secretary Lori Chavez-DeRemer reopened the program for DOL staff earlier this month after it was first launched in January, warning that reductions in force at the agency were forthcoming.

"My goal is to provide as many options and as much information as possible to enable informed decision-making regarding your career and your future," Chavez-DeRemer said in the email at the time.

Between the January and April voluntary exit offers, close to 20% of all DOL employees decided to take part in the program, agency staffers were told in multiple meetings.

Worker advocates and employment attorneys have warnedthat any cuts to DOL staff could hurt the agency's ability to enforce child labor, minimum wage, family leave, or other worker protections, resulting in fewer inspections and fines for businesses covered by the agency.

The deferred resignation program, which was sent to all federal employees in an email infamously titled "Fork in the Road," is part of President Donald Trump's efforts to reduce the size of the federal workforce and was initially opened up to federal employees shortly after he took office.

But in recent weeks, workers at multiple federal agencies, including the Labor, Defense, Transportation, Agriculture, and Energy departments, received renewed buyout offers requesting that staff opt-in by various deadlines in April.

Unions representing federal workers have challenged the program in federal court. The American Federation of Government Employees and two other unions amended their February lawsuit against the initial buyout program to include the new offer sent out to multiple agencies in late March and early April. The federal judge overseeing the case previously allowed the Trump administration to continue implementing the program, after finding that the unions failed to show standing to sue.

The mass exodus of staff at the DOL follows earlier efforts by the Trump administration to terminate probationary employees at the DOL's Women's Bureau, Employment and Training Administration, Office of Disability Employment Policy, Mine Safety and Health Administration, Employee Benefits Security Administration, and the Bureau of International Labor Affairs. Many of those employees were reinstated in March following a separate lawsuit filed by unions representing government workers.

(Updated with more context and background throughout)

To contact the reporter on this story: Rebecca Rainey in Washington at rrainey@bloombergindustry.com

To contact the editor responsible for this story: Alex Ruoff at aruoff@bloombergindustry.com

© 2025 Bloomberg Industry Group, Inc.   All Rights Reserved