Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
dleonard@altber.com
bchisholm@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org

*Attorneys for Plaintiffs*

[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | **DECLARATION OF ALIYAH LEVIN** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

### DECLARATION OF ALIYAH LEVIN

I, Aliyah Levin, declare as follows:

1.     I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2.     I have worked at the U.S. Department of Labor ("DOL" or "Agency") for more than 16 years, starting in 2009 as an Equal Opportunity Specialist in the Office of Federal Contract Compliance Programs ("OFCCP") in the district office located in Los Angeles, California.  During the Biden Administration, the Department converted all of the Equal Opportunity Specialist positions in OFCCP into the investigation job series and my job title became Investigator, but my job duties were the same.  That is the only position I held with the DOL.

3.     Since 2012, I have been a union steward and labor leader. For the past 4 years, I have been the President for AFGE Local 2391 with the American Federation of Government Employees ("AFGE" or "Union"), which represents DOL employees in eight states, Alaska, Arizona, California, Hawaii, Idaho, Nevada, Oregon, and Washington.  It has approximately 400 members and represents about 1,200 employees, as of the beginning of 2025.  Of those 1,200 employees, approximately 60 of them, until recently, worked in OFCCP.

4.     I am also a member of the National Council of the Field Labor Locals ("NCFLL").  The 17 locals within the NCFLL represent all of the bargaining unit employees/field staff in the DOL nationally, but not in the DC metropolitan area which is covered by Local 12.  Eleven of the 17 locals have employees from OFCCP.  The NCFLL covers 7,000 DOL bargaining unit employees, and approximately half of those employees, around 3,500, are AFGE dues-paying members.  I am and have been very involved in AFGE 2391 and the NCFLL as a union leader.  Last year I announced my candidacy for NCFLL Officer/Vice President. The election is set to occur in June 2025, but since I was placed on administrative leave on April 16, as discussed below, I am no longer eligible to run for office.  Had I won that office, I would move to a full-time union release position, where I would continue to be paid by the DOL, but my full time would be spent on labor relations functions and bargaining unit employees.  That job opportunity has been eliminated by the administrative leave.

5.      Both as AFGE Local 2391 President and NCFLL member, I have been extremely busy over the past few months answering the flood of questions from DOL employees about what is happening at the DOL.  As I discuss later in this declaration, the DOL has not provided information to the Union about what is happening at the DOL, and instead communicates directly to employees, while not providing full information.  This lack of transparency has led to the proliferation of rumors about job cuts, and those hearing the rumors then reach out to Union leaders for confirmation only to discover the Agency has still not communicated with the Union about what is occurring.  Each month in 2025, the volume of calls and emails has dramatically increased from the prior month.  Union members want to know what the Union is doing to protect jobs, and the Union has had to explain that the Agency is not being transparent with its plans or actions.

6.      The Union's mission is to represent and advocate for and promote the interests of bargaining unit members in their federal employment at the DOL. As the exclusive bargaining representative of these workers, the Union provides many services to bargaining unit members. Core functions of the Union include collective bargaining with the DOL to obtain a fair and reasonable collective bargaining agreement ("CBA"); filing and negotiating grievances against the DOL to enforce the terms and conditions of the CBA; assisting employees with obtaining reasonable accommodations; pursuing arbitrations on behalf of workers to enforce the CBA; and providing other representation, support, guidance, and resources to bargaining unit employees.

7.      OFCCP has employees who worked at DOL Headquarters in Washington, D.C. and out of six regions from regional, district, area offices or from telework/remote locations.  OFCCP has three core functions: (1) pursuant to Executive Order ("EO") 11246 from 1965, audit federal contractors to ensure their personnel actions including hiring, promotion, termination and compensation practices are not based on race, color, religion, sex, or national origin; (2) pursuant to the Vietnam Era Veterans' Readjustment Assistance Act of 1974 ("VEVRAA"), 38 U.S.C. § 4212, as amended to include recently discharged and disabled veterans, audit federal contractors to ensure their hiring and promotion practices do not discriminate against veterans, including disabled veterans, and meet VEVRAA's affirmative action provisions for veterans; and (3)

pursuant to Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793, as amended, audit federal contractors to ensure their hiring and promotion practices do not discriminate against disabled workers.

8.    Immediately after President Trump's inauguration and his issuance of Executive Order 13985 to end Diversity, Equity, and Inclusion programs in the federal government, I, along with OFCCP staff nationwide were instructed on January 23, 2025, by top DOL leadership, Michelle Hodge, Acting OFCCP Director, to stop all work. A redacted copy of the January 23 email is attached hereto as Exhibit A.

9.    On January 24, 2025, Vicent Micone, Acting Secretary of Labor, emailed the directive to me and likely all other DOL employees an "Order" to "Cease and Desist Investigative and Enforcement Activity under EO 11246".  A true and correct copy of the January 24 email is attached hereto as Exhibit B.  All OFCCP investigations immediately ended. Attached to the email was Secretary's Order 03-2025 that further stated we were ordered to "[n]otify all regulated parties with impacted open reviews or investigations by January 31, 2025, that the EO 11246 component of the review or investigation has been closed and the section 503 and VEVRAA components of the review or investigation are being held in abeyance pending further guidance."  A true and correct copy of Order 03-2025 is attached hereto as Exhibit C.

10.    We never received further guidance and our  work  covered by VEVRAA and Section 503 of the Rehabilitation Act was never taken out of abeyance.  The Agency also required me and OFCCP employees to come into the office five days a week, but would not allow us to continue or perform any work, on the three core functions or any other assigned work for the DOL. In the Los Angeles office, we had four seats for 13 employees.  I sat in a back-lit, noisy, high traffic walkway between our office and another agency for over two months, while other colleagues were stationed in conference rooms and temporary space in other agencies on the 7th floor.

11.    The Union first became aware of President Trump's plan to order federal agencies to reorganize and conduct "large-scale" Reductions in Force ("RIFs") through the February 11,

1   2025, Executive Order.  No one from the DOL had communicated anything about large-scale RIFs

2   or reorganization plans to the Union prior to the release of the February 11 Executive Order.

3          12.    On March 24, 2025, the DOL announced that Catherine Eschbach would be the

4   new National Director of OFCCP.  A true and correct copy of the DOL's announcement, which is

5   also available at https://www.dol.gov/newsroom/releases/ofccp/ofccp20250324, is attached hereto

6   as Exhibit D.  In the announcement, Eschbach is quoted as committed to ceasing OFCCP's first

7   core function: "with the recission of EO 11246, the President mandates federal contractors wind

8   those practices down within 90 days."  Exhibit D.  Eschbach continues: "As director, I'm

9   committed to carrying out President Trump's executive orders[.]"  Exhibit D.  There was no

10  acknowledgment in the Announcement or since then of OFCCP's other two core functions, which

11  are mandated by statute, are also being stopped by OFCCP Director without Congressional

12  approval, or even notice to Congress.

13         13.    When Eschbach sent her first email to OFCCP staff on March 24 to introduce

14  herself, she said that she would "implement President Trump's agenda and policies at OFCCP"

15  and implement his "orders to the fullest extent possible" before concluding the email that "With

16  the reduced scope of mission and consistent with the administration-wide DOGE agenda, we will

17  be "right-sizing" the agency through a RIF process and the reduction of OFCCP's physical

18  geographic footprint."  A true and correct copy of Eschbach's March 24 email is attached hereto

19  as Exhibit E.  This email did not provide the required or negotiated details in a RIF notice.

20  Similarly, on March 24, Dawn Wilkie, Human Resources Specialist emailed NCFLL to say

21  OFCCP "will be conducting a Reduction in Force (RIF)" but they "do not know [t]he approximate

22  number of employees who may be affected initially."  A redacted copy of Wilkie's email is

23  attached hereto as Exhibit F.

24         14.    After that vague RFI threat in the introductory email, a deferred resignation option

25  was offered that needed to be accepted by April 14—the same day the Agency's reorganization

26  and RIF plan was due to the Office of Management and Budget ("OMB") pursuant to the

27  President's February 11 EO.  Faced with the choice between having offered wages and family

28  health benefits guaranteed through September 30 or facing a RIF where it was not clear if any of

the statutory or CBA protections would be followed, all of the employees struggled with the decision and one of the fourteen OFCCP employees in the Los Angeles office selected the deferred resignation option, with their administrative leave starting on April 18. Two selected the early retirement option. Two days after the April 14 decision deadline, the eleven remaining employees, like myself, received notice that they were immediately placed on same-day administrative leave effective 6:00 p.m. EST (3:00 p.m. PST) and were given about an hour to clean out our work spaces. I had to move five huge plants and was not able to collect my personal or union electronic records or emails before I was locked out of the system. We were forced to leave before those who had selected the deferred resignation option and without going through the RIF procedure. Our departure effectively resulted in the closure of the Los Angeles OFCCP office.

15.  When the email came through, I was in the middle of a DOL management approved transfer of AFGE Local 2391 union files. My access was abruptly shut off at 3 p.m. PST, cancelling the data transfer. I am Local 2391 President, but do not have access to Local 2391's union files, which includes grievance records, information requests, reasonable accommodation requests, etc.

16.  The Union received no notice of the administrative leave. Based on information I received from the other DOL locals and NCFLL, my understanding is that what occurred in the Los Angeles office is representative of what has occurred in the other OFCCP offices. For example, in the Indianapolis, Indiana district office, where there were 8 OFCCP employees at the beginning of 2025, two selected the first Deferred Resignation Option, five selected the second Deferred Resignation Option, and the one remaining employee was placed on administrative leave on April 16 and had two hours to clean out their office, so no one is left in the Indianapolis OFCCP office. In the San Diego District Office, of the 8 OFCCP employees, three employees took the deferred resignation, one took the early retirement, and four employees were put on admin leave and required to vacate the office on April 16. In Phoenix, of the 3 OFCCP employees, one employee took the deferred resignation, and two were put on admin leave and required to vacate the office April 16. A number of employees have expressed they would not

1   have taken the deferred resignation or early retirement, but they are uncertain about their future

2   employment at the DOL with the large-scale RIF looming.

3          17.    I have heard across OFCCP that many OFCCP employees accepted the initial or

4   subsequent deferred resignation options, but the Department has not provided the roster(s) or

5   information to the Union as requested, and any remaining bargaining unit employees in the

6   enforcement division of OFCCP were placed on administrative leave without any notice of a RIF

7   or other due process on April 16.  The impact of the Executive Order is forthcoming RIFs is most

8   if not all of the 470 employees for OFCCP (bargaining unit and management) across the nation are

9   gone from the Agency, without notice or any required RIF process.  The Union is entitled to know

10  who is in the bargaining unit and when/ how someone leaves and has requested names and

11  numbers, but to date, the Agency has not provided that information or any information or actual

12  RIF plan or notice to us.

13         18.    Focusing only on OFCCP, the DOL's action impacts veterans and disabled

14  workers' prospects of equal employment opportunity and of being hired and promoted by federal

15  contractors.  Without OFCCP's regulatory oversight and the prospect of an OFCCP audit, there is

16  no deterrent or government accountability for federal contractors who discriminate against

17  veterans or workers with disabilities.  EO 11246 was mislabeled as a DEI program, but in fact, EO

18  11246 enabled systemic discrimination against anyone (whites, males, non-whites, females, etc.)

19  to be identified and corrected. OFCCP audits look for statistical significance in all directions.  If a

20  federal contractor was hiring only women or minorities, that would have been flagged in an audit

21  and reviewed by OFCCP.  The efforts of the 470 employees across the nation were temporarily

22  halted back in January based on rescinding of the 11246 and Hodge's instruction, but they are

23  permanently ended by the systematic dismantling and closure of the OFCCP.

24         19.    As AFGE Local 2391 President and NCFLL member, I have requested information

25  about the changes being made to OFCCP.  I received no information in response to those

26  information requests.  As stated above, since April 16, I do not have access to my DOL electronic

27  files, where the correspondence referred to herein is stored.

28

20.     What occurred to OFCCP is having an immediate adverse effect on the Union's ability to provide core services to unit members and to accomplish its mission.  The Union represents employees in other DOL agencies other than OFCCP including Bureau of Labor Statistics, Wage and Hour and Division, Occupational Safety and Health Administration, Mine Safety and Health Administration, Employee Benefits Security Administration, Women's Bureau etc. Employees in these agencies believe they will similarly be gutted and are flooding the Union with questions.  We do not have information to share because the Department will not respond to our information requests.  I have had to divert my time to responding to the flood of questions and deep fear of bargaining unit employees, and this takes away from my ability to enforce the RIF provisions in the CBA as well as sending detailed information requests.

21.     I have worked in the federal government since 2009 and have experienced prior government shutdowns including in October 2013 and December 2018-January 2019.  What the DOL has done through its reorganization and RIF plan in the last month has led to the dismantling and effective elimination of OFCCP.  This is far worse than prior government shutdowns that were of a short duration and where some work was accomplished, even if that work was paid after the return from the shutdown.  For example, while OFCCP audits were delayed during prior shutdowns, we were able to continue after the shutdowns.  Now, all audit work has been permanently stopped, and even if funding later returns, there will be no one here to train new staff on how to perform the audits, even the ones that are statutorily required. This is the complete cessation of national operations.  There was a settlement with one company who agreed to pay female victims who had been systematically not hired, and those victims who had been informed of the settlement now will not be paid pursuant to the settlement agreement because OFCCP has been shuttered and all of our work was stopped by the Department.

22.     If the plan to shutter OFCCP were published in the Federal Register for notice and comment, the Union would comment on these plans to shed light on what is happening and how there will be an institutional knowledge vacuum and continuity lapse at OFCCP from the program elimination and anticipated RIF.

23.     The Union's activities are funded through members' voluntary dues, which are paid through payroll deductions from the bi-monthly pay.  If the Union no longer receives dues from the OFCCP members who were placed on administrative leave awaiting a RIF notice and not being replaced, the Union will suffer financial loss and it will make it significantly more difficult for the Union to provide representation to DOL bargaining unit employees and fulfill its contractual obligations herein.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed April 26, 2025, in Los Angeles, California.

_____

Aliyah Levin

Exhibit A

**From:** OFCCP Director <OFCCPDirector@dol.gov>
**Sent:** Thursday, January 23, 2025 12:52 PM
**To:**

**To:** 

**To:** 

**To:** ████████████████████████████████████████████████

████████████████████

**Subject:** OFCCP Additional Operating Guidance

Dear All Staff,

Per the Acting Director's earlier issued email, this is additional guidance on next action steps over the course of the next few days.

Effective today, please suspend processing the following actions related to compliance evaluations, complaint investigations, outreach, and compliance assistance.

The following list is neither mutually exclusive nor exhaustive:

- Do not engage in or conduct any outreach events (e.g., listening sessions, conferences, panels, meetings, stakeholder activities, etc.).
- Do not engage in or conduct any compliance assistance efforts.
- Do not conduct any pre-award clearances.
- Do not schedule or engage in any onsites.
- Do not issue any data requests.
- Do not review any data or other information related to EO 11246 provided by the contractor during a compliance review or complaint investigation.
- Do not submit data requests related to systemic analysis to the Enforcement Division.
- Do not engage in any Mega related activities – including outreach and compliance assistance.
- Do not engage in any conciliation activity.
- Do not engage in any FAAP-related efforts (e.g., contractor discussions, reviews, etc.).
- Do not submit any jurisdiction research requests to the OFCCP National Office or to SOL.
- Do not send any enforcement referrals or inquiries to SOL.

Refer all dual-filed E.O. 11246 inquiries and complaints to the EEOC per the procedures in the MOU (effective December 17, 2024).

The National Office has suspended all CMS scheduling privileges as we develop further guidance focused on Section 503 and VEVRAA.

As a reminder, please note that the requirements under Section 503 of the Rehabilitation Act, 29 U.S.C. 793, and the Vietnam Era Veterans' Readjustment Assistance Act (VEVRAA), 38 U.S.C. 4212, both enforced by OFCCP, are statutory and **remain in effect**.

The National Office will issue guidance next week specifically detailing next steps in processing compliance evaluations, complaint investigations, outreach, and compliance assistance focused on Section 503 and VEVRAA. Further guidance on the rescission of Executive Order 11246 will also be provided.

Please direct all inquiries related to the Executive Order, "Ending Illegal Discrimination and Restoring Merit-Based Opportunity," to OFCCPdirector@dol.gov and williams.tina.t@dol.gov.

Respectfully,

*Michele Hodge*
Acting Director
U.S. Department of Labor
Office of Federal Contract Compliance Programs
200 Constitution Ave, NW – Suite C-3325
Washington, DC  20210
hodge.michele@dol.gov
Direct: 202-696-3569



Exhibit B

**From:**          Vincent Micone - Public <m-Vincent-Micone-Public@dol.gov>
**Sent:**          Friday, January 24, 2025 2:55 PM
**Subject:**       Cease and Desist Investigative and Enforcement Activity under EO 11246
**Attachments:**   Secretarys Order 03-2025.pdf

Dear Colleagues,

Please see the attached Secretary's Order 03-2025 to cease and desist all investigative and enforcement activity under the rescinded Executive Order 11246 and the regulations promulgated under it.  This Order is consistent with the email that Acting OFCCP Director, Michele Hodge, issued yesterday.  DOL no longer has any authority under the rescinded Executive Order 11246 or its regulations.

This order applies to all DOL employees, including OFCCP, OALJ, and ARB.

Thank you for your attention to this matter.

Thanks,
Vince

----------------------------------------------------------------------------------------------

**Vince Micone**
Acting Secretary
U.S. Department of Labor



Exhibit C

**Secretary's Order 03-2025 - To Cease and Desist AU Investigative and Enforcement Activity Under Rescinded Executive Order 11246.**

Date:  January 24, 2025

1. **Purpose.** To immediately cease and desist all investigative and enforcement activity under the rescinded Executive Order 11246, *Equal Employment Opportunity* (September 24, 1QS5), and the regulations promulgated under it.  DOL no longer has any authority under the rescinded Executive Order 11246.  This order applies to all DOL employees, including OFCCP, OAU, and ARB.

2. **Authorities.** This Order is issued pursuant to the President's Executive Order, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity* (January 21, 2025), which repeals Executive Order 11246 and its subsequent amendments.

3. **Orders.**
   a. Cease and desist all investigative and enforcement activity under the rescinded Executive Order 11246 and the regulations promulgated under it.  This includes all pending cases, conciliation agreements, investigations, complaints, and any other enforcement-related or investigative activity.
   b. Notify all regulated parties with impacted open reviews or investigations by January 31, 2025, that the EO 11246 component of the review or investigation has been closed and the Section 503 and VEVRAA components of the review or investigation are being held in abeyance pending further guidance.

4. **Privacy.** This Order is subject to applicable laws, regulations, and procedures, including the Privacy Act.  This Order does not apply where prohibited by law.

5. **Effective Date.** This order is effective immediately.

Vincent N. Micone, III
Acting Secretary of Labor

Jan 24, 2025
Date

Exhibit D

4/24/25, 8:28 AM
US Department of Labor appoints Catherine Eschbach as director of the Office of Federal Contract Compliance Programs | U.S. Department of Labor

Case 3:25-cv-03698-SI    Document 37-24    Filed 05/01/25    Page 21 of 33


**U.S. DEPARTMENT OF LABOR**

News Release

## US DEPARTMENT OF LABOR APPOINTS CATHERINE ESCHBACH AS DIRECTOR OF THE OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS

**WASHINGTON** – The U.S. Department of Labor today announced Catherine Eschbach will lead the Office of Federal Contract Compliance Programs.

"I'm honored to serve as director of the OFCCP under the Trump Administration and oversee its transition to its new scope of mission," Eschbach said. "President Trump made clear in his executive order on eliminating DEI that EO 11246 had facilitated federal contractors adopting DEI practices out of step with the requirements of our Nation's civil rights laws and that, with the recission of EO 11246, the President mandates federal contractors wind those practices down within 90 days. As director, I'm committed to carrying out President Trump's executive orders, which will restore a merit-based system to provide all workers with equal opportunity."

Prior to her appointment, Eschbach worked for six years in Morgan, Lewis & Bockius LLP's appellate group where her practice focused on complex constitutional, statutory, and administrative law issues. In that role, she spearheaded successful path-making litigation to return the federal government's practices to its constitutional limits, including issues affecting OFCCP. As an active attorney in Houston's legal community, Eschbach was appointed by the Texas Supreme Court to its advisory Grievance Oversight Committee and served as the president of the Houston Lawyers Chapter of the Federalist Society.

Before joining the firm, Eschbach served as a judicial law clerk for now-Chief Judge Jennifer Walker Elrod of the U.S. Court of Appeals for the Fifth Circuit and Judge David Hittner of the U.S. District Court for the Southern District of Texas. She holds a J.D. from the Pepperdine School of Law and a B.S. from Vanderbilt University.

**Agency:** Office of Federal Contract Compliance Programs
**Date:** March 24, 2025
**Release Number:** 25-436-NAT

**Media Contact:** Courtney Parella
**Phone Number:** (771) 241-2863
**Email:** parella.courtney.e@dol.gov

Share This

   

### More News Releases

**Previous**
US Department of Labor cites SeaWorld after trainer is injured by killer whale

**Next Up**
US Department of Labor awards $1.7M to provide job skills, training services for workers displaced by Daicel Safety Systems' layoffs in Kentucky

---

**Agencies**    **Forms**    **Guidance Search**    **FAQ**    **About DOL**    **News**    **Contact Us**



**U.S. DEPARTMENT OF LABOR**

**FEDERAL GOVERNMENT** ⊞

White House

Disaster Recovery Assistance

DisasterAssistance.gov

USA.gov

**LABOR DEPARTMENT** ⊞

About DOL

Guidance Search

Español

Office of Inspector General

**ABOUT THE SITE** ⊞

Freedom of Information Act

Privacy & Security Statement

Disclaimers

Important Website Notices

4/24/25, 8:28 AM
US Department of Labor appoints Catherine Eschbach as director of the Office of Federal Contract Compliance Programs | U.S. Department of Labor

Case 3:25-cv-03698-SI   Document 37-24   Filed 05/01/25   Page 22 of 33

200 Constitution Ave NW
Washington, DC 20210

1-866-4-USA-DOL
1-866-487-2365
www.dol.gov

No Fear Act Data

U.S. Office of Special Counsel

Subscribe to the DOL Newsletter

Read the DOL Newsletter

Emergency Accountability Status Link

A to Z Index

Plug-Ins Used on DOL.gov

Accessibility Statement

Connect With DOL







Site Map  |  Important Website Notices  |  Privacy & Security Statement

Submit Feedback

Exhibit E

| | |
|---|---|
| **From:** | OFCCP Director <OFCCPDirector@dol.gov> |
| **Sent:** | Monday, March 24, 2025 9:38 AM |
| **To:** | zzOFCCP-ALL |
| **Subject:** | Message from Director Eschbach |

Dear OFCCP colleagues,

It is my honor to be named the Director of our agency and have the trust of Secretary Chavez-DeRemer and Deputy Secretary Sonderling to implement President Trump's agenda and policies at OFCCP. I serve at the pleasure of the President and Secretary, and I will be implementing their orders to the fullest extent.

President Trump has rescinded EO 11246, determining that the affirmative action plan requirements, imposed by that executive order and investigated and enforced by OFCCP, facilitated federal contractors adopting discriminatory DEI practices out of step with our nation's civil rights laws. In his executive order on eliminating unlawful DEI, President Trump also made clear that he expects federal contractors to wind down these practices within 90 days of the recission of EO 11246. President Trump issued executive orders that require agencies to examine afresh their statutory authority to ensure compliance with the dictates of the relevant authorizing statutes—as to OFCCP's current 503 and VERRA responsibilities, we will need to examine those statutes closely. The reality is, most of what OFCCP had been doing was out of step, if not flat out contradictory, to our country's laws, and all reform options are on the table to bring OFCCP into compliance with its Constitutional and statutory bounds. We must also ensure that President Trump's policy priorities guide every action this agency takes moving forward. With these overarching goals in mind, I look forward to working with you all on the following areas, as I oversee OFCCP's transition to its new scope of mission:

- 91 days after the recission of EO 11246, we will need to verify all federal contractors have wound down their use of affirmative action plans and implement all enforcement options to ensure President Trump's executive order has been complied with, including internal OFCCP enforcement mechanisms and/or working with other agencies with relevant enforcement authorities.

- We will also be examining federal contractors' previously submitted affirmative action plans to determine whether they indicate the presence of longstanding unlawful discrimination and whether it is appropriate for OFCCP to undertake any investigation and enforcement actions or refer the matter to other relevant agencies with jurisdiction to investigate and/or initiate enforcement actions.

- We must conduct an autopsy of OFCCP's actions and regulations following the recission of EO 11246. We will be examining the underlying authority to implement EO 11246 in the first place, assessing whether post-*Loper Bright* EO 11246 was legally viable if it had not been rescinded, analyzing OFCCP's use and requirement of practices based on disparate impact, reviewing the impact of *Students For Fair Admission* and *Jarkesy* on OFCCP, and documenting the regulatory costs and burdens that were imposed on federal contractors in order to comply with OFCCP's EO 11246 requirements.

- As per the Executive Order, we will advise the Secretary of measures to deter DEI programs or principles by identifying potential civil compliance investigations of publicly traded corporations, large non-profit corporations or associations, foundations with assets of 500 million dollars or more, State and local bar and medical associations, and institutions of higher education with endowments over 1 billion dollars.

- We will examine the statutory authority for any 503 and VERRA investigations and enforcement actions to ensure any actions OFCCP undertakes pursuant to those statutes are limited only to actions authorized by

the statutes.  This will include considering whether a new rulemaking is necessary and whether these functions are best housed at the Department of Labor within OFCCP, as well as whether the *Jarkesy* line of cases requires adopting new adjudicatory processes.

- With the reduced scope of mission and consistent with the administration-wide DOGE agenda, we will be "right-sizing" the agency through a RIF process and the reduction of OFCCP's physical geographic footprint.

I look forward to meeting and working with you as we implement the agenda that the American people elected President Trump to enact. We will restore the agency to full compliance with its constitutional and statutory authority, as OFCCP transitions to this new stage.

**Catherine Eschbach**
**Director**
Office of Federal Contract Compliance Programs
United States Department of Labor
200 Constitution Ave NW  Washington, DC 20210

Exhibit F

**From:**          Levin, Aliyah F - OFCCP <Levin.Aliyah@dol.gov>
**Sent:**          Monday, March 24, 2025 5:42 PM
**To:**            Levin, Aliyah F - OFCCP
**Subject:**       2391 OFCCP RIF Update
**Attachments:**   Message from Director Eschbach (14.2 KB)


Good Afternoon 2391 OFCCP Colleagues,

The NCFLL and Local 12 received notice today regarding OFCCP RIFs. More information will follow. Give us a minute to communicate more information. Everything I know so far is in the attached email or information below.

(Please note that we are not Local 12...we are the NCFLL- AFGE Local 2391. Local 12 covers DOL employees in the DC area only. They have a different collective bargaining agreement than us.) I've attached what our CBA says about RIFs.

In Solidarity,

Aliyah Fuller Levin
President, AFGE 2391-NCFLL
Direct: (310) 809-2977



From: AFGE Local 12 <0012@local.afge.org>
Date: Mon, Mar 24, 2025 at 6:45 PM
Subject: Important Update: OFCCP Reduction in Force (RIF) or Transfer of Function (TOF) and Action Items for All Local 12 Members

Dear AFGE Local 12 Members,

We want to inform you that AFGE Local 12 has received notification that the Office of Federal Contract Compliance Programs (OFCCP) will be conducting a Reduction in Force (RIF) or Transfer of Function (TOF).

Local 12 has already submitted a request for information and a grievance after identifying several potential violations of Article 30 of our collective bargaining agreement. We are actively working to address these concerns and will keep you updated as the situation unfolds.

Action Item for All Local 12 Members: Ensure Your Personnel Records Are in Order

As we navigate this process, we strongly encourage all members to review and update your personnel records, including:
• Service Computation Date (SCD)
• Performance Ratings (Last Three Years)
• Veterans' Preference Status
• Tenure Group

Understanding the RIF and TOF Process

Federal agencies follow 5 CFR Part 351 when implementing a RIF or TOF, establishing the categories and procedures used to determine employee retention and separation. The key categories include:

1. Competitive Area
• Defines organizational and geographical boundaries where employees compete during a RIF.
• Must be large enough to ensure fair competition.

2. Competitive Level
• Group similar positions in duties, qualifications, pay, and tenure.
• Employees in the same level compete for retention.

3. Retention Register Categories
Employees are ranked based on service time, tenure, and performance ratings within a retention register using the following factors:
a. Tenure Group
• Group I: Career employees (permanent status).
• Group II: Career-conditional employees (probationary).
• Group III: Temporary employees (term, excepted service, or temporary appointments).
b. Veterans' Preference
• AD: 10-point disability preference (including 30% or more disabled veterans).
• A: Other 10-point preference eligibles.
• B: 5-point preference eligibles.
• C: Non-preference eligibles.
c. Service Computation Date (SCD)
• Employees with longer federal service have higher retention priority.
d. Performance Ratings
• The last three annual ratings contribute to performance credit, impacting retention ranking.

4. Assignment Rights (Bump and Retreat Rights)
• Bump Rights: Higher-ranked employees may displace lower-ranked employees in different competitive levels if they qualify.
• Retreat Rights: Displaced employees may return to previously held positions if available.

5. TOF-Specific Categories
• Employees in a Transfer of Function (TOF) may be transferred to another agency or location.
• Retention rights apply, allowing employees to move with their function unless they choose reassignment or separation.

At this time, Local 12 does not know how DOL will prioritize these categories in the decision-making process. However, we will closely monitor the situation and update you as we receive more information. We ask that you not share this information with individuals outside Local 12. Continued sharing of sensitive information may limit our ability to communicate with you effectively and could harm our defense strategies.

We appreciate your patience and cooperation as we work to protect your rights and advocate on your behalf. If you have any questions or concerns, please contact your respective Agency Vice President for assistance. The local12membership@gmail.com is not equipped to handle such inquiries.

In Solidarity,
AFGE Local 12 Executive Board


**From:** Wilkie, Dawn - OASAM OHR <██████@dol.gov>
**Sent:** Monday, March 24, 2025 2:17 PM
**To:** Laurie, Daryl S - Union <██████@dol.gov>; Nolan, Nancy A. - UNION <██████@dol.gov>; Person, Wenomia - Union <██████@dol.gov>; Whitt, Richard A - Union <██████@DOL.GOV>; Horton, Annette - ETA <██████@dol.gov>; Clarkson, Carey P - MSHA <██████@dol.gov>; Wells, Michael M - OASAM OHR <██████@dol.gov>; Barron, Brent F - OWCP <██████@dol.gov>; Suchman, Jefferson W - OWCP <██████@dol.gov>; Southwood, Steve - Union <██████@dol.gov>; Allen, Brad - Union <██████@DOL.GOV>
**Subject:** NCFLL-OFCCP Office of Federal Contract Compliance Programs (OFCCP) will be conducting a Reduction in Force (RIF) or Transfer of Function (TOF)

Hello,

This is to notify NCFLL that the Office of Federal Contract Compliance Programs (OFCCP) will be conducting a Reduction in Force (RIF) or Transfer of Function (TOF). In accordance with Article 47: Reduction in Force or Transfer of Function Section 2,:

The reason for the reduction in force or transfer of function is explained in attached email from Director Eschbach. Currently, we do not know:

- The approximate number of employees who may be affected initially.
- The competitive areas and levels that may be involved initially in a reduction in force; and
- The anticipated effective date that action will be taken.

We are in the process of gathering this information and will share it with you as soon as possible. Thank you in advance for your understanding and patience as we gather this information.

V/R
Dawn

Dawn Wilkie
Human Resource Specialist
Labor Relations
Division of Employee and Labor Relations
██████ (Email)


**Find *your* current OHR Points of Contact !**



*The contents of this email and any attachments to it may contain confidential and/or legally privileged information. This information is only for use by the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking action based upon the information contained herein is strictly prohibited. If this email was received in error, please notify the sender and return the documents immediately.*

NCFLL Collective Bargaining Agreement
**Article 47 – Reduction in Force or Transfer of Function**
**Section 1 – General**
A. The Department will adhere to all applicable Government wide rules and regulations as well as DPR 351 (Oct. 1, 2007) and DPR 330 (Oct. 1, 2007) and the provisions of this Article in the administration of reduction in force (RIF) or transfer of function.
B. This Article governs: (1) transfer of function, and (2) the separation, demotion, reassignment requiring displacement of another employee, or furlough for more than 30 calendar days of bargaining unit employee(s) by reduction in force from their respective levels.
C. The parties agree that RIFs will be handled in accordance with 5 CFR Part 351. The determination of competitive areas will be made in accordance with 5 CFR 351.402. This Article concerns the impact and implementation of the Government-wide regulations on RIF, which may occur during the life of the Agreement, with respect to employees in the NCFLL bargaining unit.
D. Administrative assignment rights for excepted employees will, with respect to positions in the Excepted Service, be administered in accordance with 5 CFR 351.705(a)(3).

**Section 2 – Notification**
A. Preliminary Notification to NCFLL of RIF or Transfer of Function
1. When it is anticipated that transfer of function or RIF affecting bargaining unit employee(s) will be necessary, the NCFLL will be given preliminary notification in writing. This notification will be at least one hundred twenty (120) calendar days in advance of the anticipated implementation date, unless circumstances dictate otherwise, and will include the following information:
   a. The reason for the RIF or transfer of function,
   b. The approximate number of employees who may be affected initially,
   c. The competitive areas and levels that may be involved initially in a reduction in force, and
   d. The anticipated effective date that action will be taken.
2. At the time the NCFLL receives its preliminary notification of an anticipated RIF, the Department will provide the NCFLL with a list of all employees covered by the notice whose current annual ratings of record are overdue.

B. Notice to Employees
1. Affected employees shall be given a written notice no later than sixty (60) calendar days prior to the date of the implementation of a reduction in force or transfer of function, unless circumstances dictate otherwise. When a reduction in force is caused by circumstances not reasonably foreseeable, the Office of Personnel Management (OPM), at the request of the Department, may authorize a notice period of less than sixty (60) calendar days but at least thirty (30) full calendar days before the effective date of release.
2. When a general reduction-in-force notice is used, it will be supplemented by a specific notice. The Department will not release an employee from his or her competitive level until at least fifteen (15) calendar days after the employee's receipt of the specific notice.
3. The notice period begins the day after the employee receives the notice.

**Section 3 – Retention Registers**
A. The NCFLL Executive Council will be provided a copy of the annotated retention register(s), to be used to issue the specific notices, at least two (2) calendar days before the issuance of the initial

specific Notices. The NCFLL Executive Council will keep all Retention Registers secure and confidential in accordance with 5 CFR 293, Personnel Records and DPR 351. Amended or revised retention registers will be provided to the NCFLL as soon as possible.

B. The retention register will include: the employee's tenure group, competitive level, and original service computation credit date; the ratings of record used to compute credit for performance; the amount of credit for performance; and the adjusted service computation date.

C. Employees' performance ratings of record due before the issuance due date of specific RIF notices will be submitted to the servicing Human Resources Office in sufficient time for retention standing to be determined. The due date would ordinarily be no more than fifteen (15) calendar days prior to the issuance date of specific notices.

D. When employees affected by RIF are in the same competitive level with the same length of service, as augmented by performance credit, and the same subgroup, ties will be broken in the following order: (a) total DOL service; then, if necessary, (b) by length of service in the DOL Agency; and then, (c) by time the current grade level.

**Section 4 – Department of Labor Employee Placement Assistance**

A. It is the policy of the Department to assist employees who are adversely affected as the result of government-wide or DOL management initiatives, with career transition services and, to the extent practicable, consideration and selection priority for position(s) within the Department for which they qualify. Priority is given only to affected employees and is intended to maximize their opportunities to find other employment. To the extent feasible, the Department will retrain eligible employees for other occupations. Within budget constraints, the Department will provide the following programs and services for all DOL employees who will or might become "surplus" or "displaced" because of management initiatives, such as delayering, reorganization, competitive sourcing, transfer of function, or other workforce restructuring. Placement assistance for either RIF of Transfer of Function will be governed by 5 CFR 330, Subpart F, and DOL DPR 330.

B. Within budget constraints, the Department will provide the following programs and services for all DOL employees who will or might become "displaced" because of management initiatives, such as delayering, reorganization, competitive sourcing, transfer of function or other workforce restructuring.

   1. Career transition services;
   2. Priority Consideration;
   3. Special selection priority for eligible employees as defined in 5 CFR Part 330, Subpart F (Agency Career Transition Assistance Plans);
   4. Reemployment priority for eligible employees who receive a notice of separation or certificate of expected separation under 5 CFR 351;
   5. Special Selection Priority for positions in Agencies outside of DOL when the employee is separated or proposed to be separated and meets the eligibility requirements under 5 CFR, Subpart G, Interagency Career Transition Assistance Plan for Displaced Employees.

C. Career Transition Services within DOL
   1. Eligible employees may be allowed excused absence for reasonable periods of time to use services and facilities subject to supervisory approval and dependent on the needs of the workload and the office in accordance with DPR 630.
   2. The Department offers career transition services for DOL employees. These services assist employees in determining the context of the employee's work and career objectives and help him/her set realistic career goals.

3. Employees with disabilities may request reasonable accommodation to access career transition services from headquarters or field offices as well as remote sites in accordance with DLMS 6-200, Reasonable Accommodations for Employes and Applicants with Disabilities and as set forth in DPR 330.

**Section 5 – Repromotion List**

A. Career, career-conditional, and excepted employees not serving under time- limited appointment, will be entered on the Repromotion List and given

consideration for repromotion when a vacancy occurs which will be filled by merit staffing competitive procedures or an excepted vacancy occurs that will be advertised internally. The employee must be qualified for the vacancy and it must be in the competitive area where the demotion occurred and at the employee's former or an intervening grade.

B.  Eligibility for referral begins on the effective date of the down grade or when the employee's entitlement under the Displaced Employee Program ceases. It extends for a period not to exceed two years, or until the employee has reached his/her former or retained grade, whichever occurs first, unless the employee declines a reasonable offer of a position.

**Section 6 – RIF Contract Coverage**

During the term of the Contract, all RIFs will be conducted in accordance with this Contract and government-wide regulations. Nothing will waive the right of the NCFLL to negotiate on the impact or implementation of any individual RIF with respect to matters not specifically covered by this Contract.