Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
dleonard@altber.com
bchisholm@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org

*Attorneys for Plaintiffs*

[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **DECLARATION OF EDWARD HUGLER** |

## DECLARATION OF EDWARD HUGLER

I, Edward Hugler, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I joined the Department of Labor in 1978.

3. I served in the Department of Labor for forty years.

4. From 2000 to 2018, I served as Deputy Assistant Secretary for Operations in the Office of the Assistant Secretary for Administration and Management (OASAM).

5. During two periods, in early 2009 and early 2017, I served as the Acting Secretary of Labor until the president's nominees were confirmed.

6. In my role as Deputy Assistant Secretary for Operations, I was the highest ranking career civil servant under the Assistant Secretary for Administration & Management, a political appointee. Part of my portfolio included supervising Human Resources, Security, Field Operations, Business Operations, and Procurement for the Department.

7. In my forty years at the Department, I never executed a Reduction in Force ("RIF"). However, during my tenure, the Department did consider furloughs at times of budget shortfall and I oversaw several draft furlough plans. According to OPM rules, furloughs of more than 30 calendar days are considered RIFs and must follow RIF rules. Though we did not end up executing the furloughs, we did all of the upfront planning and so I am aware of the considerations and requirements of a RIF.

8. In the event of a RIF, it would be my responsibility to oversee the work of the Department's Chief Human Capital Officer (CHCO), who in turn would be the principal career official responsible for managing the RIF.

9. Based on my understanding of RIF rules and the RIF plans I oversaw in my service at the Department of Labor, failing to follow all the proper procedural steps risks running afoul of applicable rules and engaging in arbitrary decision-making regarding which positions to cut.

10. The OPM rules are very clear on the steps required for a RIF. Briefly summarized, the Department must create a competitive area within which employees compete for retention. The agency must identify employees on the basis of organizational unit and geographical location.

11. Engaging in this detailed and exhaustive process was always considered by the Department leadership to be a last resort. There are numerous tactical tools to minimize the need for a RIF, which include detailing employees to other agencies.

12. We considered RIFs to be a blunt instrument. This is in part because, when a RIF occurs, agency leaders have limited ability to select the specific individuals and roles to retain or release, which can be important for ensuring ongoing functioning of the Department and fulfillment of the Department's goals.

13. In the few instances when I was involved in planning a RIF, the process would start with the Assistant Secretary (a presidential appointee) convening meetings with career professionals (including the Deputy Assistant Secretary for Operations) to request they put together a plan.

14. Each time I engaged in RIF planning, the Department leadership would then prepare materials outlining the steps for a RIF. Preparing this document requires participation from many offices within the Department. It implicates the Budget Center, which must prepare logistics for severance or early retirement, consulting with OPM to obtain authorities for Voluntary Separation Incentive Payments and Voluntary Early Retirement Authority. It implicates staffing, which must plan for terminations and reassignments. Human Resources staff are key expert advisors and architects of RIF plans. Additionally, Department lawyers advise on key aspects. Key Department leaders work in close consultation to make such a weighty decision.

15. It is important to note that the Department, not OPM, is responsible for all RIF decisions, including whether to engage in a RIF at all. According to OPM's Workforce Reshaping Operations Handbook, "Each agency is responsible for deciding what positions are abolished, whether a RIF or transfer of function is necessary, and (if applicable) when a RIF will take place." Handbook, Ch. III.A at 22-3.

16. OPM is not in charge of directing the Department in implementing a RIF. OPM does not draft the RIF plan, execute the plan, or even approve it. Rather, OPM's role in my experience has been to simply advise on compliance with existing OPM RIF regulations.

17. Under OPM rules, the Department must establish a retention register for targeted agency employees based on the four retention factors required by law: (1) Tenure of employment; (2) Veterans' preference; (3) Total creditable Federal civilian and uniformed service; and (4) Performance ratings.

18. There is also a notice requirement. The Department must give employees 60 days' notice of a RIF. It could be reduced to 30 days, if there are extenuating circumstances. For example, a major budget reduction may warrant initiating the process to reduce the length of the notice requirement to 30 days. Unions also must receive sufficient notice.

19. Part of my role was to supervise the Department of Labor Chief Human Capital Officer. The CHCO's job is to construct the RIF plan according to all laws and requirements. I would request from the CHCO guidance on OPM processes and how to ensure our compliance with all applicable laws and regulations, as well as the terms of collective bargaining agreements.

20. The Human Resources team would work with the head of an agency to teach them the relevant steps, such as how to build a retention register and provide employees who have longer tenure the requisite "bumping" rights. They engage in a collaborative process to evaluate employees based on the rigid set of factors prescribed by law.

Declaration of Edward Hugler                                                    Case No: 3:25-cv-03698-SI

21. As described, a RIF involves working across many stakeholders (e.g., agency heads, Department leadership, HR officials) who often have differing interests and preferences to consider other, more strategic options. RIFs are not a paper exercise. They are a very complicated process that take time and resources to get right and properly execute. A RIF requires meaningful consultation with all the impacted stakeholders, including agency heads and employee unions. RIFs can have substantial impacts on the ability of the agency to carry out its core functions. In my time with the Department of Labor, RIFs were not a preferred means of staff resources management but, if we needed to use this tool, we would do so in strict accordance with RIF rules.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 30th day of April in Chestertown, MD.

*(signature)*
Edward C. Hugler

Declaration of Edward Hugler                                    Case No: 3:25-cv-03698-SI