Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel.: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org

*Attorneys for Plaintiffs*

[*Additional counsel and affiliations identified on signature page*]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br>　　　　Plaintiffs, <br><br>　v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br>　　　　Defendants. | Case No. 3:25-cv-03698-SI <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ II

I.    Defendants Are Implementing the President's Orders to Reorganize Through RIFs ............ 1

II.   There is No Constitutional or Statutory Authority for the EO or Memo ............................... 3

III.  Plaintiffs are likely to succeed on their APA Claims against OMB, OPM, and
      DOGE 7

IV.   Plaintiffs Are Likely to Succeed on Their APA Claims against Agency Defendants ............ 8

V.    Congress Did Not Send These Constitutional and APA Claims to Adjudicative
      Agencies for Employee Personnel Actions and Labor Disputes ............................................ 9

VI.   Plaintiffs Establish Standing and Irreparable Injury ........................................................... 12

VII.  The Equities Otherwise Favor a TRO ................................................................................. 14

VIII. The Scope of the Requested Injunction Is Appropriate ....................................................... 14

IX.   Plaintiffs Did Not Delay Seeking a TRO ............................................................................ 15

X.    No Bond Should Be Required .............................................................................................. 15

CONCLUSION ............................................................................................................................ 15

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*AFGE v. OPM.,*
  2025 WL 914823 (9th Cir. Mar. 26, 2025) ............................................................ 10

5

6

*AFGE v. OPM,*
  2025 WL 900057 (N.D.Cal. Mar.24, 2025) ........................................................... 11

7

*AFL-CIO v. Dep't of Lab.,*
  2025 WL 1129227 (D.D.C. Apr. 16, 2025)........................................................... 7,

8

9

*Arc of Cal. v. Douglas,*
  757 F.3d 975 (9th Cir. 2014) ............................................................................... 16

10

11

*Arizona v. Biden,*
  40 F.4th 375 (6th Cir. 2022) ............................................................................... 13

12

*Biden v. Texas,*
  597 U.S. 785 (2022) ............................................................................................. 8

13

14

*Bresgal v. Brock,*
  843 F.2d 1163 (9th Cir. 1987) ............................................................................ 14

15

16

*Cal. v. Azar,*
  911 F.3d 558 (9th Cir. 2018) .............................................................................. 14

17

*Chen v. I.N.S.,*
  95 F.3d 801 (9th Cir. 1996) ................................................................................. 6

18

19

*City & Cnty. of San Francisco v. Trump,*
  897 F.3d 1225 (9th Cir. 2018) ...................................................................... 5, 6, 9

20

21

*City & Cnty. of San Francisco v. USCIS,*
  981 F.3d 742 (9th Cir. 2020) .............................................................................. 14

22

*Cnty. of Santa Clara v. Trump,*
  250 F. Supp. 3d 497 (N.D. Cal. 2017).................................................................. 7

23

24

*Cuviello v. City of Vallejo,*
  944 F.3d 816 (9th Cir. 2019) .............................................................................. 16

25

26

*Dalton v. Spencer,*
  511 U.S. 462 (1994) ............................................................................................. 7

27

*Dep't of Commerce v. New York,*
  588 U.S. 752 (2019) ........................................................................................... 11

28

*Doe v. Horne*,
  115 F.4th 1083 (9th Cir. 2024) ........................................................................ 16

*E. Bay Sanctuary Cov. v. Trump*,
  349 F.Supp.3d 838 (N.D. Cal. 2018) ............................................................... 16

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) ........................................................................... 15

*E. Bay Sanctuary Covenant v. Garland*,
  994 F.3d 962 (9th Cir. 2020) ........................................................................... 15

*Elgin v. Dep't of the Treasury*,
  567 U.S. 1 (2012) ..................................................................................... 10, 11

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018) ........................................................................................ 11

*FDA v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 (2024) ........................................................................................ 14

*Freelancer Int'l Pty Ltd. v. Upwork Global, Inc.*,
  2020 WL 6929088 (N.D. Cal. Sep. 9, 2020) ................................................... 15

*Harris v. Bd. of Supervisors*,
  366 F.3d 754 (9th Cir. 2004) ........................................................................... 13

*Kerr v. Jewell*,
  836 F.3d 1048 (9th Cir. 2016) ......................................................................... 11

*Kingdomware Techs., Inc. v. U.S.*,
  579 U.S. 162 (2016) .......................................................................................... 2

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) .............................................................................. 10, 11, 12

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) .......................................................................................... 7

*Markland v. OPM*,
  140 F.3d 1031 (Fed. Cir. 1998) ......................................................................... 6

*Medellín v. Texas*,
  552 U.S. 491 (2008) .......................................................................................... 3

*Mi Familia Vota v. Fontes*,
  129 F.4th 691 (9th Cir. 2025) .......................................................................... 13

*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012) ........................................................................................ 10

*Murphy Company v. Biden*,
    65 F.4th 1122 (2023) ................................................................................................. 7

*Nat'l Council of Nonprofits v. OMB*,
    2025 WL 597959 (D.D.C. Feb. 25, 2025) ......................................................... 5, 8, 16

*Natl. Treas. Employees Union v. Vought*,
    2025 WL 942772 (D.D.C. Mar. 28, 2025) ............................................................... 7, 9

*Navajo Nation v. U.S. Dep't of Interior*,
    819 F.3d 1084 (9th Cir. 2016) .................................................................................... 8

*New York v. McMahon*,
    No. 1:25-cv-10601 (D. Mass.) .................................................................................. 15

*New York v. Trump*,
    133 F.4th 51 (1st Cir. 2025) ...............................................................................*passim*

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ..................................................................................................... 7

*NTEU v. Trump*,
    No. 1:25-cv-00420 (D.D.C.) ..................................................................................... 15

*Pacito v. Trump*,
    2025 WL 893530 (W.D. Wash. Mar. 24, 2025) ...................................................... 16

*Pangea Legal Servs. v. DHS*,
    501 F.Supp.3d 792 (N.D. Cal. 2020) .................................................................. 14, 15

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ..................................................................................................... 8

*Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*,
    128 F.4th 1089 (9th Cir. 2025) .................................................................................. 8

*Regents of Univ. of Cal. v. DHS Sec'y*,
    908 F.3d 476 (9th Cir. 2018), *vacated in part on other grounds*, 591 U.S. 1 (2020) ............ 15

*Rhode Island v. Trump*,
    2025 WL 1303868 (D.R.I. May 6, 2025) ............................................................... 8, 9

*San Francisco v. Trump*,
    2025 WL 1282637 (N.D. Cal. May 3, 2025) ........................................................... 16

*Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*,
    508 F. Supp. 3d 521 (N.D. Cal. 2020) ...................................................................... 7

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ................................................................................................... 4

*Sherley v. Sebelius*,
    689 F.3d 776 (D.C. Cir. 2012) ....................................................................... 4

*Sierra Club v. Trump*,
    963 F.3d 874 (9th Cir. 2020), *judgment vacated on other grounds, sub nom. Biden v. Sierra Club*, 142 S.Ct. 46 (2021) .......................................................... 7, 11

*State v. Su*,
    121 F.4th 1 (9th Cir. 2024) ........................................................................ 5, 6

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ........................................................................ 10, 11, 12

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
    578 U.S. 590 (2016) .......................................................................... 11, 12

*United States v. Texas*,
    599 U.S. 670 (2023) ................................................................................. 13

*Veit v. Heckler*,
    746 F.2d 508 (1984) ................................................................................ 10

*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) ..................................................................... 7

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
    586 U.S. 9 (2018) ................................................................................... 11

*Woonasquatucket River Watershed Council v. USDA*,
    2025 WL 1116157 (D.R.I. Apr. 15, 2025) ...................................................... 9

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ................................................................................. 6

**Federal Statutes**

5 U.S.C.
    § 551 ................................................................................................... 8
    § 702 .................................................................................................. 11
    § 903 ................................................................................................ 3, 4
    § 1103 .............................................................................................. 9,10
    § 1105 .............................................................................................. 9,10
    § 7134 ................................................................................................ 10
    § 2301 ................................................................................................. 4
    § 3502 .............................................................................................. 6, 8
7 U.S.C.
    § 5921 .................................................................................................. 3

15 U.S.C.
    § 8962 .................................................................................................. 3

28 U.S.C.
 § 1331 .................................................................................................................. 10, 11

**Other Authorities**

5 C.F.R. § 351.201 ............................................................................................................ 8

5 C.F.R. § 351.806 .......................................................................................................... 14

President Trump's Workforce Executive Order ("EO") requires agencies across the federal government to restructure and radically downsize themselves, including by conducting *mandatory* "large-scale" reductions-in-force ("RIFs"), for the sole purpose of achieving the "transformation" of the federal government, without any Congressional authorization. OMB and OPM are implementing this EO through a Memorandum ("Memo") mandating that each agency submit *for approval* its Agency RIF and Reorganization Plan ("ARRP"). A TRO is needed to freeze implementation of these unlawful and unprecedented directives, which agencies are currently implementing.

Defendants attempt to portray this EO as business as usual, as similar in kind or scale to previous Presidential actions; it is not. Never in the history of this country has a President attempted to reorganize the government without Congressional authorization, including through large-scale RIFs. Indeed, President Trump acknowledged during his first term that, like other Presidents over the past century, he could not reorganize the federal government without Congressional approval.

Nor can Defendants defend these ultra vires orders based on the fiction that the President, OMB, and OPM have merely provided "broad guidance" to federal agencies, which are exercising their independent discretion to consider whether and how to engage in RIFs. Defendants submit no evidence to support their portrayal. They cite a single article, but omit the rest of what the President said: "…if they don't cut, then Elon will do the cutting." Mammel Decl. Ex. M. Plaintiffs' record proves that agencies have been *ordered* to downsize and restructure the government, and are following that order, using RIFs to achieve the parameters and timeframes required by the President.

## I.     Defendants Are Implementing the President's Orders to Reorganize Through RIFs

Defendants rely on a central factual contention that defies the language of the EO, Memo, and evidentiary record: that agencies are exercising their own discretion to conduct RIFs after being given only "broad guidance" by the President. This counterfactual narrative relies on no evidence.

1. The EO's plain language categorically requires that all Agency Heads "*shall promptly undertake preparations to initiate large-scale reductions in force.*" ECF 37-1, App. A. It orders that agencies "*shall*" "prioritize" in these RIFs "all offices that perform functions not mandated by statute or other law" including "all agency diversity, equity, and inclusion initiatives;" "all agency initiatives, components, or operations that my Administration suspends or closes;" and government

1    shutdown level staffing. The EO permits (using "may") Agency Heads to exempt only certain

2    security positions; and authorizes OPM (not agencies) to grant further exemptions only that

3    "promot[e] workforce reduction." These orders are *not* equivocal, or *guidance*: "it is generally clear

4    that 'shall' imposes a mandatory duty." *Kingdomware Techs., Inc. v. U.S.*, 579 U.S. 162, 172 (2016).

5    Defendants themselves argue that agencies must follow the President's orders. Opp. 4, 42.

6          2. The OMB/OPM Memo implementing the EO is equally mandatory: "Each agency *will*

7    submit a Phase 1 ARRP to OMB and OPM for review and approval … Phase 1 ARRPs *shall focus on*

8    *initial agency cuts and reductions*. ... Phase 2 plans *shall* outline a positive vision" for agency

9    operations. ECF 37-1, Ex. B. Defendants' "nine reasons" notwithstanding (Opp. 37), there is nothing

10   equivocal or permissive about the Memo, which removes agency discretion and decision-making.

11   And Defendants *do not deny* Plaintiffs' showing that OMB and OPM have *rejected* certain agencies'

12   ARRP submissions for failing to eliminate a sufficient number of positions. ECF 37-1 at 12.

13         3. Defendants contend that "ARRPs are distinct from RIFs" (to pretend the RIFs are not in

14   service of a reorganization). Opp. 16. But the EO and Memo order the RIFs as the centerpiece of the

15   plan to reorganize—OMB and OPM directed each agency to create *a single combined ARRP* because

16   reorganization is the sole purpose of these RIFs. *See* Opp. 7 (citing RIF regs on "reorganization").

17         4. The uncontroverted record establishes that Federal Agency Defendants are currently

18   implementing President Trump's orders to conduct RIFs in service of reorganizing the government.

19   *See*, *e.g.*, Gamble Reply Decl. Exs. A, B, C (Labor Dept. communications and RIF notice stating

20   abolition of entire program office based on Presidential order, and RIF therefore "due to the impact of

21   the [EO]," specifically §3(c)'s large-scale reductions order).[1] The record further shows that agencies

22   are eliminating functions on demand;[2] that the President is asserting that his Executive Orders

23

---

24   [1] ECF 37-1 at 14 (*AmeriCorps*: nearly all staff RIF'd per EO); Mammel Decl. Exs. C-D (*EPA*:
     scientific research office cut per EO); ECF 37-14 at ¶¶9-12, Exs. A-D (*GSA*: RIFs and offices cut

25   "[i]n support of the [EO]"); ECF 37-1 at 4-5 (*HHS*: cuts "proceeding in accordance with [EO]"
     including entire programs and offices); ECF 41-1 at ¶15, Ex. C (*HUD*: large-scale RIFs in

26   "[c]ompliance with [EO]"); ECF 37-1 at 24 (*NSF*: cutting half of staff under "orders from the White
     House"); *id.* at 24-25 (*SBA*: 43% reduction per EO); *id.* at 25-26 (*SSA*: plans per EO include

27   "abolishment of organizations and positions" and RIFs); *id.* at 27 (*State*: consolidation, 15%
     reduction per EO); *id.* (*Treasury*: 40% IRS cut per EO); *id.* at 28 (*VA*: cuts to 2019 levels per EO).

28   [2] *See, e.g.*, ECF 37-1 at 4-5 (HHS); *id.* at 14 (AmeriCorps); Mammel Decl. ¶¶6-7 (EPA Office of
     Research and Development, *see* 7 U.S.C. §5921(f); 15 U.S.C. §8962).

1    abolishing offices *make law* and therefore eliminate the "statutory and regulatory foundation" for the

2    offices, *e.g.*, Gamble Reply Decl., ¶¶4, 7, Exs. C, D; and that the reorganization being implemented

3    transfers functions and offices *between* agencies.[3]

4           USDA Secretary Rollins admitted the reason this is happening, revealing the plan all along

5    (hatched between Trump terms): "The four years in between term one and term two allowed a lot of

6    work to be done to really be much more intentional on how we do just that, *how we right-size the*

7    *federal government, across every single agency*." Mammel Decl. Ex. A (emphasis added).

8           5. Defendants also distort the history: President Clinton did *not* order agencies to conduct

9    RIFs and he secured congressional authorization for his buyout plans. *See* Exec. Order 12839, 58

10   Fed. Reg. 8515 (Feb. 10, 1993); Federal Workforce Restructuring Act of 1994, Pub. L. 103-226, 108

11   Stat. 111 (1994). Defendants' suggestion that Presidents Reagan or Truman ordered RIFs is

12   unsupported and Plaintiffs can find no record of this. As far as Plaintiffs are aware, no prior President

13   has assumed the authority, without express congressional authorization, to require agencies to engage

14   in RIFs, in service of a reorganization or otherwise. (And even if any prior president had ordered a

15   RIF, "past practice does not, by itself, create power." *Medellín v. Texas*, 552 U.S. 491, 532 (2008).)

16   **II.    There is No Constitutional or Statutory Authority for the EO or Memo**

17           1.    *The President's EO is Unconstitutional*. Defendants concede that the President was

18   not specifically authorized by Congress to reorganize the federal government, Opp. 41, defying 100

19   years of presidential and congressional precedent. *See* ECF 37-1 at 29-32. The plain language of the

20   EO and record evidence establish that President Trump has ordered a reorganization. *Supra* at 1-2.

21   Congress's definition of "reorganization plan" plainly encompasses the types of actions the President

22   has ordered federal agencies to take, including transfers of functions between agencies, elimination of

23   functions (*including non-statutory functions*, 5 U.S.C. §903(a)(2)), and the consolidation of programs

24   and functions within agencies. *Id.* §903; ECF 37-1 at 14-29. Regardless of whether agencies

25   generally have authority to implement some form of RIFs, the President's order to conduct RIFs to

26   effectuate a government-wide reorganization lacks Congressional authorization.

---

[3] *See, e.g.*, Mammel Decl. ¶¶3-4 & Ex. A (USDA plans potentially include consolidating functions with up to seven other agencies across government, including housing and firefighting); ECF 37-26 ¶¶42-43 (DOE student aid office planned to move to SBA).

Nor do Defendants attempt to respond to Plaintiffs' showing that neither Article II nor Congress has *ever* provided the President the authority to lay off rank-and-file federal employees (ECF 37-1 at 31). The assumption of such authority would defy the purpose of civil service protections from political influence (5 U.S.C. §2301) and Supreme Court precedent, *Seila Law LLC v. CFPB*, 591 U.S. 197, 217 (2020) (reaffirming Article II restrictions on President's removal powers, even of officers). Thus, Defendants rely *only* on the President's general Article II supervision authority. Defendants' argument rests on two faulty premises: first, that agencies are the real actors; and second, that the President's orders do not direct agencies to violate the law by acting in a manner that is entirely arbitrary and capricious and ignores relevant considerations. Opp. 38-45.[4]

First, the argument that the President is simply giving agencies general guidance defies the language of the EO, Memo, and record. *Supra* at 1-2. Defendants rely on (and misleadingly cite) a single Presidential press comment that the agencies are making the decisions (after public outcry over DOGE's directions to agencies). Opp. 14; *supra* at 1. Defendants submitted *no* evidence from any Federal Agency Defendant to show either that 1) they are in fact making these decisions, or 2) that they are engaging in reasoned decision-making. Defendants have *conceded* the factual record, which is filled with admissions by agencies that they are acting pursuant to the President's instructions and consistent with the arbitrary EO parameters. *Supra* n.1.

Next, as a matter of law, no one disputes the President has general supervision powers—that is a strawman.[5] The question is whether the President's powers of supervision extend to ordering agencies to take the action the President has *categorically* required, including giving up their

---

[4] In Defendants' view, 100 years of Congressional and Presidential action are "irrelevant" and apparently misguided, because the Constitution already permits the President to exercise decision-making authority over agencies. This is plainly wrong. No court has interpreted Article II's general supervision power so broadly as to authorize the President to order agencies across the government to dismantle themselves though "large-scale" RIFs for the purpose of reorganization.

[5] Defendants also overreach, by citing without attribution the concurrence in *Arnett v. Kennedy*, 416, 134, 168 (1974), for the proposition that "the Government" has discretion and control, when the Court was discussing *Congressional* control over agencies and their employees via legislation. *Id.* Defendants also argue that agencies must implement a President's orders, citing *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012). The issue in *Sherley* was whether HHS regulations regarding stem cell research violated an act of Congress, and whether HHS acted in an arbitrary and capricious manner by rejecting comments made during rule-making that wanted to eliminate all such research, contrary to an Executive Order interpreting the statutory authority. President Trump's Executive Order makes no attempt *at all* to interpret statutory authority before imposing his categorical requirements.

1    decision-making power to OMB, OPM and DOGE; eliminating offices and functions *the President*

2    dictates; planning RIFs that prioritize shutdown levels of staffing regardless of agency function; and

3    otherwise acting in an arbitrary and capricious manner that abuses any discretion. No case holds that

4    Article II gives the President the authority to do all that. And supervision authority does not include

5    ordering agencies to violate the APA. *New York v. Trump*, 133 F.4th 51, 70-71 (1st Cir. 2025); *State*

6    *v. Su*, 121 F.4th 1, 15 (9th Cir. 2024) (agency implementing Exec. Order must comply with APA).

7         In service of this argument, Defendants rely heavily on the savings clause. Opp. 39-40. This is

8    a familiar and misleading playbook. *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1242

9    (9th Cir. 2018) (rejecting same argument); *Nat'l Council of Nonprofits v. OMB*, 2025 WL 597959, *7

10   (D.D.C. Feb. 25, 2025) (rejecting contention that "countless federal agencies ... suddenly began

11   exercising their own discretion to suspend funding across the board at the exact same time" because it

12   requires "unfathomable" "coincidental assumptions" and "contradicts the record"); *accord New York*

13   *v. Trump*, 133 F.4th at 69. Generically telling agencies to comply with the law while imposing

14   categorical requirements that make that instruction impossible cannot save the EO: "Because the

15   Executive Order unambiguously commands action, here there is more than a 'mere possibility that

16   some agency might make a legally suspect decision.' The Executive Order's savings clause does not

17   and cannot override its meaning." *City & Cnty of San Francisco*, 897 F.3d at 1240.[6]

18        Even if the President had the authority to order agencies to exercise their own discretion to

19   RIF and reorganize themselves, he cannot order them to replace reasoned and rational decision-

20   making with Presidential fiat (to eliminate offices and functions "My Administration's" orders

21   eliminated); improper considerations (to prioritize using government shutdown levels of employment

22   that by definition cannot support agency functions); and predetermined outcomes (large-scale RIFs).

23   Even within the scope of discretion the CSRA affords agencies, no agency has the authority to rush

24   into "large-scale" RIFs that serve the sole purpose of effectuating the President's goal of downsizing

25   and reorganizing government and eliminating programs, offices, and functions that he chooses to

---

[6] Defendants rely on inapplicable out of circuit precedent to argue that an EO cannot be unlawful if it has any lawful application when it contains a savings clause. Opp. at 39-40; s*ee City & Cnty. of San Francisco*, 897 F.3d at 1240.

eliminate (divorced from any proper consideration of agency needs and functions).[7] As in *New York v. Trump*, even if some of the ARRP elements fell within agency discretion, and even if the agencies were making considered decisions themselves, that would not save this EO and its breakneck implementation from falling outside the President's authority. 133 F.4th at 69-70. Defendants spend many pages discussing the history of the RIF authority, but whatever general authority exists does not answer whether the President can order *these* RIFs, with *these* parameters, which are being compelled in service of the President's unconstitutional reorganization of government. Defendants' primary response is simply to claim that agencies are making the decisions. Opp. 43.

Where, as here, Congress has repeatedly declined to reauthorize the power to reorganize that the President needs to take such action, his power is "at its lowest ebb." *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 637 (1952) (Jackson, J., concurring); *accord City & Cnty. of San Francisco*, 897 F.3d at 1234. The President's orders to agencies to implement a reorganization on his terms, including by way of RIFs for the purpose of reorganization, are not grounded in any Constitutional or statutory authorization, usurp legislative authority, and are unconstitutional and ultra vires. *Id.* at 585; *Chen v. I.N.S.*, 95 F.3d 801, 805 (9th Cir. 1996) ("the Executive Order lacked the force and effect of law because it was never grounded in a statutory mandate or congressional delegation of authority"); *State v. Su*, 121 F.4th at 13 ("In sum, the President cannot issue an executive order instructing agencies to carry out [his] mandate" without Constitutional or statutory authority); *see also City & Cnty. of San Francisco*, 897 F.3d at 1235 (enjoining implementation of unconstitutional Executive Order). This conclusion does not upend the Constitution, as Defendants claim; it respects it. The agency action implementing the President's unlawful directives therefore should be enjoined. *Id.*[8] The Ninth Circuit has conclusively resolved the availability of ultra vires

---

[7] The sole RIF statute (5 U.S.C. §3502) does not provide *unfettered* agency discretion and is of course subject to review for "abuse of that discretion, a substantial departure from applicable procedures, a misconstruction of governing statutes, or the like," *Markland v. OPM*, 140 F.3d 1031, 1033 (Fed. Cir. 1998). By following President Trump's orders, agencies abuse statutory discretion. *Infra*, at 7-9.

[8] *See also Washington v. Trump*, 847 F.3d 1151, 1156 (9th Cir. 2017) (denying stay of injunction of Executive Order); *Sierra Club v. Trump*, 963 F.3d 874, 888-93 (9th Cir. 2020), *judgment vacated on other grounds*, *sub nom. Biden v. Sierra Club*, 142 S.Ct. 46 (2021); *Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F. Supp. 3d 521, 547 (N.D. Cal. 2020) (enjoining Exec. Order); *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 539 (N.D. Cal. 2017) (same).

1    claims and relief to enjoin unlawful Executive Orders; Defendants' argument that review is

2    foreclosed by *Dalton v. Spencer*, 511 U.S. 462 (1994) is another oft-rejected refrain (Opp. 34);[9] and

3    Defendants' out-of-circuit case law does not apply. Opp. at 43-44.

4        2.        *Defendants Concede OMB, OPM and DOGE Lack Authority*. Defendants concede this

5    point, by identifying no statutory authority for OMB, OPM, or DOGE actions. Opp. 44-45.[10]

6    **III.    Plaintiffs are likely to succeed on their APA Claims against OMB, OPM, and DOGE**

7        *1. Discrete agency action.* Plaintiffs' claims challenging the OMB/OPM Memo and ARRP

8    approvals are not an impermissible "wholesale" or "programmatic attack" seeking "general judicial

9    review of [agencies'] day-to-day operations." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891, 899

10   (1990) (no APA claim where plaintiffs sought court oversight of all "continuing (and thus constantly

11   changing) operations of the BLM" to manage federal public lands). Plaintiffs properly challenge only

12   specific and "circumscribed, discrete agency actions" by OMB and OPM. *Norton v. S. Utah*

13   *Wilderness All.*, 542 U.S. 55, 62 (2004). The fact that those actions may have widespread impacts

14   does not convert Plaintiffs' challenge into a "programmatic" challenge. *See New York*, 133 F.4th at

15   67 (APA challenge to OMB directive to freeze *all* federal financial assistance across all agencies). As

16   the Supreme Court recognized, an agency's "specific order or regulation, applying some particular

17   measure across the board to all individual [agency decisions], … can of course be challenged under

18   the APA"—even if the challenge will have widespread effects. *Lujan*, 497 U.S. at 890 n.2.

19       *2. Final agency action.* Defendants do not dispute that the Memo sets forth OMB/OPM's final

20   position; instead they argue it is too far removed from any legal consequences to Plaintiffs.[11] Opp.

21

22       [9] *Dalton* made clear that constitutional challenges are justiciable where the President's action lacks
         both "'statutory authority' and 'background constitutional authority.'" *Murphy Company v. Biden*, 65
23       F.4th 1122, 1130 (2023). Plaintiffs assert such a separation of powers claim here. *Cf. Natl. Treas.*
         *Employees Union v. Vought*, 2025 WL 942772, *8-9 (D.D.C. Mar. 28, 2025).
24       [10] Defendants are correct that Plaintiffs seek relief against U.S. DOGE Services (USDS), which is
         often referred to as DOGE and is an agency for the purposes of the APA. *AFL-CIO v. Dep't of Lab.*,
25       2025 WL 1129227, at *22 n.19 (D.D.C. Apr. 16, 2025). But Defendants cannot rely on the opaque
         structure and operations of DOGE to dodge accountability. *See AFL-CIO*, 2025 WL 1129227, at *17
26       (explaining that DOGE Teams are tasked with "executing the agenda laid out in the DOGE E.O. and
         other relevant Executive Orders—as interpreted by the USDS Administrator").
27       [11] The Memo is an APA "rule." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (opinion
         letter was a rule; "rule" is "defined broadly to include any 'statement[s] of general or particular
28       applicability and future effect' … to 'implement, interpret, or prescribe law or policy'") (quoting 5
         U.S.C. §551(4)).

36-37. But "[a] federal agency's assessment, plan, or decision qualifies as final agency action even if the ultimate impact of that action rests on some other occurrence—for instance, … a decision by another administrative agency ..." *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*, 128 F.4th 1089, 1109 (9th Cir. 2025). Final agency action includes action that binds or directs government officials to act in ways that impact plaintiffs. *See New York*, 133 F.4th at 68 (OMB directive to agencies to freeze federal funds was final agency action ); *Nat'l Council of Nonprofits*, 2025 WL 597959, *13 (same).[12] The Memo is final agency action because it mandates that agencies perform large-scale RIFs on a particular timeline according to specific terms and subject to OMB/OPM approval, ECF 37-1 at 10-11, and those RIFs have legal consequences for Plaintiffs, *id.* at 44-49. The record refutes Defendants' contention that agencies do not need to comply with the Memo. *Id.* at 12-28.[13] Defendants do not dispute that ARRP approvals and DOGE's directives are final action.

       3. *Unlawful action.* Defendants do not even attempt to justify these agencies' failure to provide any reasoned explanation for the requirements imposed in their Memo or directives; their disregard for important aspects of the decision (including harm to employees, governments, and the public); or their unreasonable timelines and demands, including to abolish programs as directed by the President/his agents and start from a baseline of *government shutdown staffing*, which by definition is insufficient to perform basic agency functions. ECF 37-1 at 38-40; *Rhode Island v. Trump*, 2025 WL 1303868, at *11-12 (D.R.I. May 6, 2025). Defendants also do not deny that OMB and OPM did not perform notice-and-comment rulemaking, ECF 37-1 at 41, or provide any statutory authority for their challenged actions,[14] *supra* at 7. Plaintiffs are likely to succeed on these claims.

**IV.**    **Plaintiffs Are Likely to Succeed on Their APA Claims against Agency Defendants**

       *1. Discrete, final agency action.* Plaintiffs challenge Federal Agency Defendants' implementation of ARRPs through RIFs and reorganizations. Defendants concede terminations through RIFs are final agency action, Opp. 38; reorganizations by eliminating programs and functions

---

[12] *See also Biden v. Texas*, 597 U.S. 785, 807-10 (2022) (DHS memo).

[13] The Memo's determination that OMB/OPM are the final decisionmakers about each agency's ARRP is inconsistent with the RIF statute and OPM regulations, under which *agencies* are the decision-maker. 5 U.S.C. §3502; 5 C.F.R. § 351.201. The Memo thus alters the status quo of who the final decisionmakers will be, and reflects the "consummation of agency decisionmaking regarding that issue." *Navajo Nation v. U.S. Dep't of Interior*, 819 F.3d 1084, 1091 (9th Cir. 2016).

[14] OPM rules are not subject to the APA "personnel" exception. 5 U.S.C. §§1103(b)(1), 1105.

are as well. These claims are not improper "programmatic" challenges. Each agency is taking action pursuant to a unified document (ARRP) that implements the categorical mandates of a single EO. Courts have upheld many similar challenges. *See New York*, 133 F.4th at 67 (APA applied to all of agencies' actions to "implement broad, categorical freezes on obligated funds" pursuant to OMB directive: "we are not aware of any supporting authority for the proposition that the APA bars a plaintiff from challenging a number of discrete final agency actions all at once").[15]

     *2. Arbitrary and capricious.* Defendants do not even attempt to rebut Plaintiffs' showing that Federal Agency Defendants, by complying with the categorical mandates and impossible deadlines imposed by the President, OMB, OPM, and DOGE when creating their ARRPs, *necessarily* fail to meet fundamental requirements to: consider all relevant factors; address reliance interests; consider alternatives; explain reversals in position; and provide a reasoned explanation for the sudden elimination of longstanding programs and corresponding workforces. ECF 37-1 at 42-44. An arbitrary and capricious claim exists regardless of statutory authority—Defendants' response that agencies have authority to conduct RIFs is a non sequitur. Defendants also contend, without citation, that Plaintiffs can only challenge specific future RIFs, after the fact. Opp. 45-46. But Plaintiffs challenge the ARRPs that are being created and approved pursuant to the EO *now*. Plaintiffs provided voluminous evidence, despite Defendants' refusal to make ARRPs public, establishing the arbitrary and capricious way in which the 17 agencies against which they seek a TRO are implementing ARRPs and conducting RIFs. ECF 37-1 at 12-29. That is more than sufficient to support this claim.

**V.    Congress Did Not Send These Constitutional and APA Claims to Adjudicative Agencies for Employee Personnel Actions and Labor Disputes**

     Defendants' channeling argument singularly focuses on a challenge to "RIFs." Opp. 23-31. But as Defendants recognize, Plaintiffs challenge the legality of the EO and Memo (*id.* at 22), approval of ARRPs by OMB/OPM, and implementation of ARRPs as ultra vires and unlawful under the APA. ECF 1 at 99-105. Defendants make no argument regarding jurisdiction over *those claims*,

---

[15] *See City & Cnty. of San Francisco*, 897 F.3d 1225; *NTEU v. Vought*, 2025 WL 942772, at *13 (D.D.C. Mar. 28, 2025) (CFPB dismantling); *Rhode Island*, 2025 WL 1303868, at *8 (D.R.I. May 6, 2025) (IMLS, MBDA, FMCS dismantling); *Woonasquatucket River Watershed Council v. USDA*, 2025 WL 1116157, at *10 (D.R.I. Apr. 15, 2025) (IIJA, IRA funding freeze).

and so waived the issue. Regarding their other arguments, federal courts do not lightly remove subject matter jurisdiction from federal claims based on implied congressional intent. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) ("jurisdiction conferred by 28 U.S.C. § 1331 should hold firm against 'mere implication flowing from subsequent legislation.'"). Defendants' arguments should be rejected because Congress did not preclude federal courts from hearing Plaintiffs' claims.

      1. *Local Governments, Non-Federal Employee Unions and Non-Profits*. Defendants ignore the Ninth Circuit's recent decision. *See AFGE v. OPM*, 2025 WL 914823, at *1 (9th Cir. Mar. 26, 2025) ("Nor have appellants demonstrated—under existing authority—that they are likely to establish that Congress has channeled the organizational plaintiffs' claims to administrative agencies.").

      Defendants' argument would also require a novel and dramatic expansion of *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-13 (1994), which has been applied to channel only "covered employees appealing covered agency actions." *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 10 (2012). But these Plaintiffs are not "covered employees." No controlling authority has ever sent such plaintiffs to agencies designed to hear claims brought by federal employees or their unions against employing agencies—or foreclosed all judicial review—simply because the case involves federal employment. Defendants also seriously misconstrue *Veit v. Heckler*, 746 F.2d 508 (9th Cir. 1984), contending that case's "exact conclusion" would channel these third parties. Opp. 26. But *Veit* involved a single employee, challenging a covered action by his employing agency. *Id.* at 509-11.

      To the extent that Defendants contend that Congress impliedly foreclosed *any* claims by these Plaintiffs, implied doctrines cannot be so divorced from statutory text, which evidences no intent to foreclose jurisdiction. *E.g.*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-92 (2024). The Congress that enacted the CSRA and FSLMRS referenced the APA at least three times (5 U.S.C. §§1103, 1105, 7134) and cannot be said to have silently intended to eliminate the bedrock principle of APA review. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) ("A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow."); *Loper Bright*, 603 U.S. at 393 ("The text of the APA means what it says."). The APA's judicial review provisions are a "command," and the Supreme Court has warned against impliedly expanding exceptions. *E.g.*,

1    *Dep't of Commerce v. N.Y.*, 588 U.S. 752, 771-72 (2019); *see also U.S. Army Corps of Eng'rs v.*

2    *Hawkes Co., Inc.*, 578 U.S. 590, 601-02 (2016); *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv*., 586

3    U.S. 9, 22-23 (2018). Defendants' implied foreclosure argument conflicts with this APA precedent.

4          2. *Unions and Other Plaintiffs Representing Federal Employees*. The federal sector union

5    Plaintiffs bring the same claims as the above Plaintiffs, under an express grant of federal jurisdiction.

6    28 U.S.C. §1331; 5 U.S.C. §702; *Sierra Club v. Trump*, 963 F.3d 874, 891 (9th Cir. 2020), *vacated as*

7    *moot, Biden v. Sierra Club*, 142 S. Ct. 46 (2021) (confirming equitable jurisdiction to hear ultra vires

8    claim). The fact that *some types of claims* brought by federal employees and their unions may be

9    heard by the MSPB and FLRA does not mean that *all* claims must go there. *Axon*, 598 U.S. at 185 ("a

10   statutory review scheme [that precludes district court jurisdiction] does not necessarily extend to

11   every claim concerning agency action"); *Kerr v. Jewell*, 836 F.3d 1048, 1052-53 (9th Cir. 2016).[16]

12         Defendants invoke out-of-circuit decisions that treat this administrative channeling doctrine

13   like field preemption touching on anything employment related—but, as this Court recently held, that

14   is incorrect. *AFGE v. OPM,* 2025 WL 900057, at *6.[17] Defendants try to cabin the *OPM* case to the

15   probationary employee context, but the rationale applies equally here to 1) the government-wide

16   challenges that can never be heard by the MSPB or FLRA (against the President, OMB, OPM and

17   DOGE, particularly as this Administration works to destroy those channels), and 2) APA claims

18   against Federal Agency Defendants for arbitrary and capricious actions, including for the reasons

19   explained above regarding the command of APA review. The ARRPs are also not covered "personnel

20   actions"—Defendants attempt to distinguish *Feds For Medical Freedom v. Biden* as involving a

21   policy, not a "personnel action"—but so too does this case challenge actions and documents that are

22   not themselves personnel actions, even if they will ultimately result in personnel actions. 63 F.4th

23   366, 375 (5th Cir. 2023) (*en banc*), *judgment vac'd on other grounds*, 144 S.Ct. 480 (2023). Finally,

24

25         [16] In applying *Thunder Basin*, the Supreme Court has generally found that individual "run of the mine" statutory claims belong in administrative fora, *see Elgin*, 567 U.S. at 22; *Thunder Basin*, 510

26   U.S. at 205, while broader challenges to agencies or their policies (including constitutional challenges) should be heard by an Article III district court, *see Free Enter. Fund*, 561 U.S. at 489;

27   *Axon*, 598 U.S. at 189.This trajectory is also consistent with, rather than contrary to, the APA.
          [17] Defendants' out-of-circuit cases also fail to persuade because they do not involve the types of

28   claims at issue here, or do not consider or reach arguments that Plaintiffs have here pressed, particularly with respect to statutory text and the command of judicial review in the APA.

1    no controlling authority has ever channeled a procedural APA claim because it involves employment.

2        In short, this Court can and should conclude that Union Plaintiffs' claims are not the "type"

3    that Congress intended to be channeled. But even if the Court were to apply the three-part *Thunder*

4    *Basin* analysis, it would reach the same result. As to the first factor, *meaningful* judicial review of

5    these claims, by these parties, would be foreclosed for the reasons explained. *Thunder Basin*, 510

6    U.S. at 207. Meaningful review must account for the type of claim and relief *Congress* intended,

7    particularly for APA claims (for which the Supreme Court has said judicial review years after agency

8    adjudication *is not meaningful*, *Hawkes*, 578 U.S. at 601-02). As to the second factor, Plaintiffs'

9    claims are "*wholly* collateral" to the CSRA's scheme because they do not challenge individual

10    adverse personnel actions or employer action under a contract; they concern separation of powers

11    issues and challenge the substantive and procedural lawfulness of the EO and its implementation

12    through the ARRPs. *Id.* at 211. And as to the third factor, the labor agencies have no particular

13    expertise in resolving constitutional and administrative law questions. *Loper Bright*, 603 U.S. at 399.

**VI.  Plaintiffs Establish Standing and Irreparable Injury**

15        Substantial evidence shows such Defendants' RIFs have injured and will injure Plaintiff

16    federal sector unions,[18] causing members to lose salaries and health insurance if terminated,[19] and

17    worsening workplace conditions if they remain. *See* ECF 37-1 at 44-45 & nn. 57-58.[20] RIFs will also

18    injure members Plaintiff organizations and non-federal unions; as many declarants explain, cuts of

19    this magnitude cannot be made without causing extensive and irreparable harm. ECF 37-1 at 12-29.[21]

---

[18] Defendants wrongly assert that Plaintiffs fail to allege imminent RIFs of Plaintiff unions' members. *E.g.* ECF 37-14 ¶¶12, 23-25 (AFGE; GSA plans 50% cut, RIF notice with June 6 date); ECF 41-1 ¶¶13, 38, Ex. D (AFGE; HUD RIF of 146 members on May 18); ECF 37-18 ¶¶9-14, Exs. D-F, H (AFGE; SBA RIFs of bargaining unit announced in April with dates in June); ECF 37-12 ¶¶20, 22, 25 (AFSCME; RIFs to 90% of AmeriCorps unit; some effective June 24); Gamble Reply Decl. ¶3-5, Exs. A-B (AFGE; DOL RIF of members effective June 6); ECF 37-32 ¶¶10-13 (AFGE; White House ordered 50% staff cut at NSF; voluntary early retirement window ends May 8); ECF 41-4 ¶¶15, 22, Ex. E (AFGE; HHS RIF of all but six unit members, likely effective June 30); ECF 37-9 ¶¶7-9, 13 (AFGE; VA to cut roughly 80,000 jobs, RIF notices anticipated in June).

[19] Defendants ignore this loss of health insurance. *See* ECF 37-1 at 49. Plaintiff unions need not name specific members, Opp. 32, because it is "clear and not speculative" their members will be injured. *Mi Familia Vota v. Fontes*, 129 F.4th 691, 708-09 (9th Cir. 2025).

[20] These allegations are not "conclusory," Opp. 33, but rely on declarants' prior and current experiences with reduced staffing and give specific factual explanations. *E.g.* ECF 37-20 ¶37; ECF 37-21 ¶32; ECF 37-35 ¶¶12-13.

[21] *See, e.g.*, ECF 37-39 ¶¶7-8, 11 (ARA; SSA wait times); ECF 37-37 ¶¶18-21 (NOFA; USDA

1    These injuries are fully "grounded in evidence," not "conclusory or speculative." Opp. 47. Similarly,

2    city and county Plaintiffs showed direct injury, including delayed public health grants and staff cuts

3    from HHS;[22] loss of EPA support to remediate hazardous environmental conditions;[23] and increased

4    burdens on local firefighting.[24] These are not the types of "indirect" consequences or "peripheral

5    costs" that Defendants' authorities warn are insufficient for standing.[25] Given this evidence, and

6    Plaintiffs' showing that RIFs have *already* harmed services,[26] Defendants cannot defeat Plaintiffs'

7    evidence of injury by pointing to boilerplate "instructions that agencies should not undertake any

8    action that would impair service delivery functions." Opp. 33.

9        Nor does the *potential* advance notice to employees obviate these injuries. In fact, Defendants

10   have been providing *no* notice before placing employees on immediate administrative leave. *See*, *e.g.*,

11   ECF 37-12 ¶20 (AmeriCorps).[27] Many RIFs have already occurred.[28] And Defendants offer no reason

12   why Plaintiffs should be required to make seriatim requests for emergency injunctive relief each time

13   an agency notices a new RIF, when all stem from the same challenged unlawful acts.

14   ───────────────

15   Farm Service Agency); *cf. Harris v. Bd. of Supervisors*, 366 F.3d 754, 762 (9th Cir. 2004) ("Given … existing shortages and delays, it is not speculative to anticipate that reducing the resources available will further impede the County's ability to deliver medical treatment to plaintiffs").

16   [22] *E.g.* ECF 37-46 ¶23 (80% of Harris County Public Health Preparedness and Response team depends on funding from CDC, which has been unresponsive to grant questions); ECF 41-6 ¶33(a)-

17   (b) (King County is unable to reach grant specialist and is relying on stop-gap funding; CDC Public Health Associate at county Sexual Health Clinic was terminated).

18   [23] *E.g.* ECF 37-58 ¶¶31-34 (Santa Clara relies on "EPA's capacity to deploy the on-scene coordinators…during its emergency response to releases of hazardous materials and other harmful

19   chemicals"); ECF 37-52 ¶¶25-28 (EPA aided Chicago following an industrial structure collapse); ECF 37-19 ¶¶8, 22 (effects of EPA cuts on emergency response).

20   [24] ECF 37-58 ¶24 (Forest Service cuts will shift wildfire response burden to Santa Clara); ECF 37-49 ¶¶2-4 (San Francisco; same); ECF 37-1 at 25-40 (listing additional harms).

21   [25] *See* Opp. 33 (citing *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023); *Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022)). Those cases also both involved challenges to the Executive's decision

22   *not* to arrest or prosecute, a type of lawsuit that is historically disfavored. *Texas*, 599 U.S. at 678. In contrast, challenges to agency actions reducing services are familiar territory for courts, including

23   from localities that will experience "an increased demand for aid supplied by the state and local entities" as a result. *City & Cnty. of San Francisco v. USCIS*, 981 F.3d 742, 754 (9th Cir. 2020).

24   [26] For example, RIFs at HHS caused CDC to cancel support for Milwaukee public schools with lead exposure; severely hindered monitoring, testing, and prevention efforts for communicable

25   diseases; and endangered disease testing for first responders and firefighters. ECF 37-36 ¶¶17, 25, 29-34 (APHA). NIOSH shuttered a federal screening program for black lung disease, *id.* ¶25; and

26   stopped routine mine safety inspections, ECF 37-21 ¶23.

27   [27] *See also* ECF 37-14 ¶11 (GSA); ECF 37-21 ¶18 (HHS); ECF 37-16 ¶10 (DOL). This violates 5 C.F.R. §351.806, which requires, "When possible, the agency shall retain the employee on active duty status during the notice period." The only exception is if "in an emergency the agency lacks

28   work or funds for all or part of the notice period."

[28] *See* ECF 37-13 ¶¶12-14 (EPA); ECF 41-1 ¶¶13-18 (HUD); ECF 37-18 ¶¶8-14 (SBA).

1      Finally, *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), does not foreclose

2  standing when, as here, a defendant's actions "perceptibly impaired" the plaintiff's "core business

3  activities." *Id.* at 395; *see*, *e.g.*, ECF 37-23 ¶¶10-19 (AFGE); ECF 37-1 at 45 n.59.

4  **VII.    The Equities Otherwise Favor a TRO**

5      Defendants' argument depends on their contention that their actions were lawful. Opp. 48; *cf.*

6  *Pangea Legal Servs. v. DHS*, 501 F.Supp.3d 792, 826-27 (N.D. Cal. 2020). They provide no evidence

7  and assert no harm from short-term preservation of the status quo to allow full consideration of a

8  preliminary injunction. "The public interest is served by compliance with the APA," as is "ensuring

9  that the statutes enacted by representatives are not imperiled by executive fiat." *Id.* at 825-26.

10  **VIII.    The Scope of the Requested Injunction Is Appropriate**

11      Plaintiffs have shown injury to Plaintiffs and their members across the country. *Supra* at 12-

12  13. An injunction must be as broad as necessary to give parties relief, as when "a showing of

13  nationwide impact" is made. *Cal. v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018); *see Bresgal v. Brock*,

14  843 F.2d 1163, 1170-71 (9th Cir. 1987); *see also Pangea Legal Servs.*, 501 F.Supp.3d at 826-27.[29]

15  Moreover, the APA's directive to "hold unlawful and set aside agency action," is not limited by

16  "geographic boundaries." *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 987 (9th Cir. 2020)

17  ("*E. Bay I*").[30] Thus, the "ordinary result [in an APA case] is that the rules are vacated—not that their

18  application to the individual petitioners is proscribed.'" *Regents of Univ. of Cal. v. DHS Sec'y*, 908

19  F.3d 476, 511 (9th Cir. 2018), *vacated in part on other grounds*, 591 U.S. 1 (2020) (cleaned up).

20      Defendants object to disclosure of the ARRPs as unnecessary, arguing that Plaintiffs can

21  challenge RIFs after RIF notices issue. Opp. 48-49. But Defendants should reveal to the Court which

22  further actions implementing the ARRPs are imminent, so this Court can properly evaluate the record

23  for a preliminary injunction.[31] Moreover, good cause exists to expedite this discovery. *See Freelancer*

24  _____

25  [29] Plaintiff unions and nonprofit organizations are not geographically limited. *See, e.g.*, ECF 37-23
¶2 (AFGE); ECF 37-26 ¶4 (SEIU); ECF 37-36 ¶2 (APHA); ECF 37-39 ¶2 (ARA). Plaintiff cities and

26  counties injuries derive not only (or even mainly) from termination of federal employees employed
therein. *See, e.g.*, ECF 37-46 ¶12-26; ECF 37-47 ¶4(c); ECF 41-6 ¶22(e), 29-31.

27  [30] Defendants cite an earlier motions panel decision in *E. Bay Sanctuary*, which the Ninth Circuit
deemed non-binding in affirming preliminary injunctive relief in all four border states. *See E. Bay I*,
994 F.3d at 985-88; *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660-62 (9th Cir. 2021).

28  [31] Defendants' suggestion that any TRO should permit them to conduct RIFs that are independent

1    *Int'l Pty Ltd. v. Upwork Global, Inc.*, 2020 WL 6929088, *2 (N.D. Cal. Sep. 9, 2020) (expedited

2    discovery factors include pending preliminary injunction request, purpose, and breadth of request).

3    **IX.    Plaintiffs Did Not Delay Seeking a TRO**

4          Plaintiffs sought a TRO as soon as reasonably practicable after information became public

5    regarding agencies' implementation of the EO and Memo, in conjunction with the March 13 and

6    April 14 ARRP deadlines. *See* ECF 37-1 at 14-23. The grounds for Plaintiffs' legal challenge were

7    not "fully available" in February. Opp. 21-22. Defendants would have challenged standing without

8    information regarding the agencies' RIF plans. In fact, in another case, the government argued that

9    claims challenging this EO were unripe in February because implementation via RIFs had not yet

10   occurred.[32] Plaintiffs also could not show that agencies were following the EO and the Memo—or, in

11   the case of the NLRB and NSF, that agencies not sufficiently following it were forced to modify their

12   plans (ECF 37-1 at 12, 23-24)—until the agencies took actions and their plans emerged.[33]

13   **X.    No Bond Should Be Required**

14         This Court "retains discretion as to the amount of security required, *if any*." *E. Bay Sanctuary*

15   *Cov. v. Trump*, 349 F.Supp.3d 838, 868 (N.D. Cal. 2018) (quotation omitted); *see also San Francisco*

16   *v. Trump*, 2025 WL 1282637, *38 (N.D. Cal. May 3, 2025); *Nat'l Council of Nonprofits*, 2025 WL

17   597959, *19. A TRO would simply require Defendants to continue the work that these agencies have

18   performed for decades. *See Pacito v. Trump*, 2025 WL 893530, at *15 (W.D. Wash. Mar. 24, 2025).

19                                    **CONCLUSION**

20         The Court should issue the proposed temporary restraining order.

21

22   ─────────────────

     of the EO and Memo, Opp. 50, could not be effectuated without knowing what is in the ARRPs. *See*
23   *also Urgent Need for Transparency and Oversight Regarding Agency Reduction-in-Force and*
     *Reorganization Plans Affecting Scientific and Health Priorities* (May 2025), http://united
24   sciencealliance.org/united-call-for-transparency (75 science groups call for ARRP transparency)
        [32] *NTEU v. Trump*, No. 1:25-cv-00420 (D.D.C.), Dkt. 14 at 17; *see also NY v. McMahon*, No. 1:25-
25   cv-10601 (D. Mass.), Dkt. 95 at 9-10 (arguing plaintiffs "lack[ed] understanding of the [Education
     Dept's] ongoing reorganization," were speculating about harms, and had no standing to stop RIFs).
26      [33] Regardless, "[d]elay by itself is not a determinative factor." *Cuviello v. City of Vallejo*, 944 F.3d
     816, 833 (9th Cir. 2019) (17-month delay); *see also Doe v. Horne*, 115 F.4th 1083, 1111 (9th Cir.
27   2024) (7 months); *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (3 months). And timing
     arguments are "not particularly probative in the context of ongoing, worsening injuries," *Arc of Cal.*,
28   757 F.3d at 990, which Plaintiffs show. *See, e.g.*, Mammel Decl. ¶8 (May 2: EPA RIFs "in the
     coming weeks"); ¶11 (Interior May 2: coming RIFs). In Defendants' cited cases, either the plaintiffs
     did not explain the delay or did not show worsening and irreparable harm.

1

2   DATED: May 8, 2025                    Stacey M. Leyton
                                          Barbara J. Chisholm
3                                         Danielle E. Leonard
                                          Corinne Johnson
4                                         Alice X. Wang
                                          Robin S. Tholin
5                                         Aaron Schaffer-Neitz
6                                         ALTSHULER BERZON LLP
                                          177 Post St., Suite 300
7                                         San Francisco, CA 94108
                                          Tel.: (415) 421-7151
8                                         Fax: (415) 362-8064
                                          sleyton@altshulerberzon.com
9                                         bchisholm@altshulerberzon.com
10                                        dleonard@altshulerberzon.com

11                                  By: */s/ Danielle Leonard*

12                                        *Attorneys for All Union and Non-Profit Organization*
13                                        *Plaintiffs*

14                                        Elena Goldstein (pro hac vice)
15                                        Skye Perryman (pro hac vice)
16                                        DEMOCRACY FORWARD FOUNDATION
                                          P.O. Box 34553
17                                        Washington, D.C. 20043
                                          Tel: (202) 448-9090
18                                        Fax: (202) 796-4426
19                                        egoldstein@democracyforward.org
                                          sperryman@democracyforward.org
20
                                    By: */s/ Elena Goldstein*
21
22                                        *Attorneys for All Union and Non-Profit Organization*
                                          *Plaintiffs (except NRDC) and for Plaintiffs City of*
23                                        *Chicago, IL; Martin Luther King, Jr. County, WA;*
                                          *Harris County, TX; and City of Baltimore, MD*
24

25

26
27                                        Jules Torti (pro hac vice)
                                          PROTECT DEMOCRACY PROJECT
28                                        82 Nassau St., #601
                                          New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti*

*Attorneys for All Union and Non-Profit Organization
Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice app. forthcoming)
Spencer W. Klein (pro hac vice app. forthcoming)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization
Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorney for Plaintiffs American Federation of
Government Employees, AFL-CIO (AFGE) and AFGE
locals*

Teague Paterson (SBN 226659)

1   Matthew Blumin (pro hac vice)
    AMERICAN FEDERATION OF STATE, COUNTY,
2   AND MUNICIPAL EMPLOYEES, AFL-CIO
    1625 L Street, N.W.
3   Washington, D.C. 20036
    Tel: (202) 775-5900
4   TPaterson@afscme.org
    MBlumin@afscme.org
5

6   By: */s/ Teague Paterson*

7   *Attorneys for Plaintiff American Federation of State*
    *County and Municipal Employees, AFL-CIO (AFSCME)*
8

9

10  Steven K. Ury (SBN 199499)
    SERVICE EMPLOYEES INTERNATIONAL UNION,
11  AFL-CIO
    1800 Massachusetts Ave., N.W.
12  Washington, D.C. 20036
    Tel: (202) 730-7428
13  steven.ury@seiu.org

14  By: */s/ Steven K. Ury*

15  *Attorney for Plaintiff Service Employees International*
    *Union, AFL-CIO (SEIU)*
16

17

18  David Chiu (SBN 189542)
    City Attorney
19  Yvonne R. Meré (SBN 175394)
    Chief Deputy City Attorney
20  Mollie M. Lee (SBN 251404)
    Chief of Strategic Advocacy
21  Sara J. Eisenberg (SBN 269303)
    Chief of Complex and Affirmative Litigation
22  Molly J. Alarcon (SBN 315244)
    Alexander J. Holtzman (SBN 311813)
23  Deputy City Attorneys
    OFFICE OF THE CITY ATTORNEY FOR THE CITY
24  AND COUNTY OF SAN FRANCISCO
    1390 Market Street, 7th Floor
25  San Francisco, CA 94102
    molly.alarcon@sfcityatty.org
26  alexander.holtzman@sfcityatty.org

27

28  By: */s/ David Chiu*

1

2

*Attorneys for Plaintiff City and County of San Francisco*

3

Tony LoPresti (SBN 289269)

4

COUNTY COUNSEL
Kavita Narayan (SBN 264191)

5

Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)

6

Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL

7

COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor

8

San José, CA 95110
Tel: (408) 299-5900

9

10

By: */s/ Tony LoPresti*

11

*Attorneys for Plaintiff County of Santa Clara, Calif.*

12

13

David J. Hackett (pro hac vice)

14

General Counsel to King County Executive & Special
Deputy Prosecutor

15

Alison Holcomb (pro hac vice)
Deputy General Counsel to King County Executive &

16

Special Deputy Prosecutor
Erin King-Clancy (pro hac vice app. forthcoming)

17

Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING

18

ATTORNEY LEESA MANION
401 5th Avenue, Suite 800

19

Seattle, WA 98104
(206) 477-9483

20

David.Hackett@kingcounty.gov
aholcomb@kingcounty.gov

21

aclancy@kingcounty.gov

22

By: */s/ David J. Hackett*

23

*Attorneys for Plaintiff Martin Luther King, Jr. County*

24

Sharanya Mohan (SBN 350675)

25

PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115

26

Oakland, CA 94609
Tel: (510) 738-6788

27

sai@publicrightsproject.org

28

By: */s/ Sharanya Mohan*

1    *Attorney for Plaintiffs Baltimore, MD, Chicago, IL,*
     *Harris County, TX, and King County, WA*
2

3    Christian D. Menefee
4    Harris County Attorney

5    Jonathan G.C. Fombonne (pro hac vice app. forthcoming)
     Deputy County Attorney and First Assistant
6    Tiffany Bingham (pro hac vice app. forthcoming)
     Managing Counsel
7    Sarah Utley (pro hac vice app. forthcoming)
8    Division Director – Environmental Division
     Bethany Dwyer (pro hac vice app. forthcoming)
9    Deputy Division Director - Environmental Division
     R. Chan Tysor (pro hac vice)
10   Senior Assistant County Attorney
11   Alexandra "Alex" Keiser (pro hac vice)
     Assistant County Attorney
12   1019 Congress, 15th Floor
     Houston, Texas 77002
13   Tel.: (713) 274-5102
     Fax: (713) 437-4211
14

15   jonathan.fombonne@harriscountytx.gov
     tiffany.bingham@harriscountytx.gov
16   sarah.utley@harriscountytx.gov
     bethany.dwyer@harriscountytx.gov
17   chan.tysor@harriscountytx.gov
     alex.keiser@harriscountytx.gov
18

19   By:  */s/ Jonathan G.C. Fombonne*

20       *Attorneys for Plaintiff Harris County, Texas*

21

22   Mary B. Richardson-Lowry,
     Corporation Counsel of the City of Chicago
23

     Stephen J. Kane (IL ARDC 6272490) (pro hac vice app.
24   forthcoming)
     Rebecca A. Hirsch (IL ARDC 6279592) (pro hac vice
25   app. forthcoming)
     Lucy Prather (IL ARDC 6337780) (pro hac vice)
26   City of Chicago Department of Law,
     Affirmative Litigation Division
27   121 N LaSalle Street, Suite 600
28   Chicago, Illinois 60602

Tel: (312) 744-6934
Stephen.kane@cityofchicago.org
Rebecca.Hirsch2@cityofchicago.org
Lucy.Prather@cityofchicago.org

By: */s/ Stephen J. Kane*

*Attorneys for Plaintiff City of Chicago*


Ebony M. Thompson
Baltimore City Solicitor

Sara Gross (pro hac vice app. forthcoming*)*
Chief of Affirmative Litigation
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (410) 396-3947
sara.gross@baltimorecity.gov

By: */s/ Sara Gross*

*Attorneys for Plaintiff City of Baltimore*