Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle E. Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[*Additional counsel and affiliations identified on signature page*]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>      Plaintiffs,<br><br>     v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>      Defendants. | Case No. 3:25-cv-03698-SI<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND/OR RECONSIDERATION OF EXPEDITED DISCOVERY** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT .......................................................................................................................... 3

    I.     Standard of Review ................................................................................................. 3

    II.    ARRPs Are Relevant to this Litigation, as the Court Has Already
           Recognized ............................................................................................................. 4

    III.   ARRPs Are Not Subject to the Deliberative Process Privilege ................................ 6

          A.    ARRPs Are Not Predecisional ........................................................................ 7

          B.    ARRPs Are Not Deliberative ......................................................................... 9

          C.    The Government Failed to Properly Invoke or Justify the Asserted
               Privilege with the Required Specificity ......................................................... 10

          D.    Any Privilege Is Qualified and Is Overcome by Plaintiffs' Showing of a
               Need for and the Relevance of the ARRPs ..................................................... 12

    IV.   The Court Has Provided the Government Fair Opportunities to Establish the
           Privilege ................................................................................................................. 14

    V.    The Government Has Not Justified a Protective Order ........................................... 16

CONCLUSION ...................................................................................................................... 19

1

2

**TABLE OF AUTHORITIES**

**Page(s)**

3

**Cases**

4

5

*Assembly of State of Cal. v. U.S. Dep't of Com.*,
    968 F.2d 916 (9th Cir. 1992) ................................................................. 8, 9

6

7

*Athletics Inv. Grp., LLC v. Schnitzer Steel Indus., Inc.*,
    No. 21-CV-05246-MMC (DMR), 2024 WL 4682307 (N.D. Cal. Nov. 4, 2024) ............ 17, 18

8

*Balla v. Idaho State Bd. of Corr.*,
    869 F.2d 461 (9th Cir. 1989) ................................................................. 3

9

10

*Brave New Films 501(c)(4) v. Weiner*,
    No. C08-04703SI, 2009 WL 1393540 (N.D. Cal. May 18, 2009) ........................ 17

11

12

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ................................................................. 9, 13

13

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
    809 F.3d 1092 (9th Cir. 2016) ................................................................. 16, 19

14

15

*Desert Survivors v. U.S. Dep't of the Interior*,
    231 F. Supp. 3d 368 (N.D. Cal. 2017) ................................................................. 6

16

17

*Phillips ex rel. Estate of Byrd v. Gen. Motors Corp.*,
    307 F.3d 1206 (9th Cir. 2002) ................................................................. 16, 18

18

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ................................................................. 17

19

20

*FTC v. Warner Commc'ns Inc.*,
    742 F.2d 1156 (9th Cir. 1984) ................................................................. 6, 7, 12

21

22

*Gen. Elec. Co. v. EPA*,
    290 F.3d 377 (D.C. Cir. 2002) ................................................................. 8

23

*Humphreys v. Regents of Univ. of California*,
    No. C 04-03808 SI, 2006 WL 8459527 (N.D. Cal. May 23, 2006) ...................... 16

24

25

*K.L. v. Edgar*,
    964 F. Supp. 1206 (N.D. Ill. 1997) ................................................................. 6

26

*Karnoski v. Trump*,
    926 F.3d 1180 (9th Cir. 2019) ................................................................. 12

27

28

*Kona Enters., Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000) ................................................................. 3

*Landry v. FDIC*,
   204 F.3d 1125 (D.C. Cir. 2000) ........................................................................... 11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) ............................................................................ 3, 14

*In re McKesson Governmental Entities Average Wholesale Price Litig.*,
   264 F.R.D. 595 (N.D. Cal. 2009) ..................................................................... 6, 11

*Nat'l Treas. Employees Union v. Trump*,
   25-cv-935 (D.D.C. Apr. 25, 2025) ....................................................................... 13

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ............................................................................................... 6

*Pac. Fisheries, Inc. v. United States*,
   539 F.3d 1143 (9th Cir. 2008) ..................................................................... 7, 9, 12

*Pizzuto v. Tewalt*,
   131 F.4th 1070 (9th Cir. 2025) ............................................................................ 14

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
   421 U.S. 168 (1975) ............................................................................................... 8

*Reps. Comm. for Freedom of the Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021) ............................................................................... 11

*In re Roman Cath. Archbishop of Portland in Oregon*,
   661 F.3d 417 (9th Cir. 2011) ................................................................... 16, 17, 18

*Semitool, Inc. v. Tokyo Electron America, Inc.*,
   208 F.R.D. 273 (N.D. Cal. 2002) ........................................................................ 14

*Shutterfly, Inc. v. ForeverArts, Inc.*,
   No. CR 12-3671, 2012 WL 2911887 (N.D. Cal. July 13, 2012) ........................... 14

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
   No. 22-MD-03047-YGR (PHK), 2024 WL 5088103 (N.D. Cal. Dec. 11, 2024) ..... 4

*In re Soc. Media Adolescent Addiction/ Pers. Inj. Prods. Liab. Litig.*,
   No. 22-MD-03047-YGR (PHK), 2025 WL 1292655 (N.D. Cal. May 5, 2025) ....... 15

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
   592 U.S. 261 (2021) ............................................................................................... 7

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995) ................................................................................ 16

*United States v. Irvin*,
   127 F.R.D. 169 (C.D. Cal. 1989) ......................................................................... 12

*United States v. Rozet*,
    183 F.R.D. 662 (N.D. Cal. 1998) ......................................................................... 6, 11

*Wolfe v. Dep't of Health & Hum. Servs.*,
    839 F.2d 768 (D.C. Cir. 1988) ................................................................................ 6

1

### INTRODUCTION

2      Plaintiffs oppose the Government's motion for reconsideration of the Court's order that the

3   Government produce the Agency RIF and Reorganization Plans ("ARRPs") created pursuant to

4   Executive Order 14201 ("EO") and the Office of Management and Budget ("OMB") and Office of

5   Personnel Management ("OPM") Memorandum ("Memo") at issue in this lawsuit, and alternatively

6   for a protective order. ECF 88.[1]

7      Contrary to the Government's bare contentions, the ARRPs contain evidence directly relevant

8   to key issues the Court will analyze in this litigation and, most immediately, when considering

9   whether a preliminary injunction is appropriate. Specifically, disclosure of the ARRPs will shed light

10  as to the extent of top-down control, the massive scale of the federal government reorganization, and

11  should reveal actual and imminent actions implementing the EO, according to the President's terms.

12  Further clarity as to the imminently planned government actions will inform the Court's conclusions

13  as to the harms those acts are causing and would cause the Plaintiffs in this case. The high value of

14  these documents to this litigation outweighs any claim of a *qualified* privilege the Government asserts

15  but fails to properly support.

16      The sole declaration from an OMB official provided by the Government in support of its

17  motion essentially asserts the ARRPs are predecisional documents and will be for all time, carefully

18  avoiding stating whether any approvals have already occurred or will imminently occur. ECF 88-1 at

19  1-2. Plaintiffs, however, now have obtained, by way of a formal response to a union information

20  request by one federal agency, examples of a March 13, 2025 ARRP and an April 14, 2025 ARRP, as

21  well as statements by that agency confirming that the April 14, 2025 ARRP was approved and is, as

22  described by that agency, final and no longer predecisional. Soriano Supp. Decl., Ex. 1. The

23  document also uses what appears to be a format required by OMB/OPM/DOGE, indicating that the

24  content of ARRPs is *factual*, and not privileged. *Id.*, Ex. 1, Attach. D.

25      The deliberative process privilege does not apply to the ARRPs the Court has ordered be

26  produced. For the reasons further explained below, ARRPs are not predecisional or deliberative, and

27

28  ───────────────

[1] The Government's request for an administrative stay is mooted by the Court's order postponing the May 13, 2025 production deadline until the Court rules on this motion. ECF No. 92.

the Government has failed to meet its burden to establish the privilege with the specificity required by law. Even if the Government had established the privilege, the privilege would nonetheless be overcome in this case because the Government may not weaponize a privilege intended to promote good government to hide secret efforts directing a wide-scale dismantling of the government.

The Government has had a fair opportunity to challenge the ordered production. Plaintiffs' motion for a temporary restraining order gave the Government fair notice of Plaintiffs' request for production of ARRPs. The Government addressed the request in its opposition but failed to invoke the deliberative process privilege.

Finally, the single, short declaration produced by the Government falls well short of meeting the Government's burden of showing "good cause" and overcoming the presumption of public disclosure, as would be needed to justify the alternative request for a protective order. The Government also provides no details on what such a protective order might entail or how counsel could litigate the motion for preliminary injunction without discussing the ARRPs with their clients or citing the documents in their briefs. The public deserves to understand what its federal government has done and the Government's alternative request should be denied.

## BACKGROUND

Plaintiffs challenge the large-scale reorganization of the federal government without congressional authorization. ECF 1. The complaint challenges Executive Order 14210; the actions by OMB, OPM, and the Department of Government Efficiency ("DOGE") to implement the EO, including the February 26, 2025 OMB/OPM Memo to agency heads; and the implementation of ARRPs by Federal Agency Defendants.

On May 1, 2025, Plaintiffs moved for a temporary restraining order. ECF 37. In that motion, Plaintiffs sought a discovery order that OMB and OPM produce ARRPs for the Federal Agency Defendants. *Id.* at 2; ECF 37-1 at 6, 50; ECF 37-2 at 4. Plaintiffs' motion was supported by over 60 declarants and a substantial factual record, and was fully briefed and argued. ECF 37; ECF 84.

On May 9, 2025, having reviewed and addressed the substantial factual record created by Plaintiffs, the Court issued an order granting a temporary restraining order and expedited discovery of a specific set of Defendants' documents. ECF 85. The Court found that "the release of the ARRPs

will significantly aid the Court's review of the merits of these APA claims." *Id.* at 37. "[S]ince the Court requires more information to evaluate the individual ARRPs and what roles OMB, OPM, and DOGE have played in shaping them," the Court relied on its "inherent powers to manage discovery" to order production. *Id* at 39–40. The Court found "expedited discovery" appropriate because "[t]he timelines required to be in the ARRPs will be particularly useful to the Court as it determines whether further prompt action is necessary." *Id.* at 40. The Court thus ordered production of four categories of documents by May 13, 2025. *Id.* Those four categories are: "(1) the versions of all defendant agency ARRPs submitted to OMB and OPM, (2) the versions of all defendant agency ARRPs approved by OMB and OPM, (3) any agency applications for waivers of statutorily-mandated RIF notice periods, and (4) any responses by OMB or OPM to such waiver requests." *Id.*

On Sunday, March 11, 2025, the Government notified Plaintiffs of its intent to file this motion that night, and to move for a stay of the Tuesday, March 13, 2025 production deadline. Plaintiffs promptly proposed that the Court postpone the deadline for production of ARRPs until the Court resolves this motion. ECF 90. The Court issued an order postponing the May 13, 2025 production deadline until the Court rules on this motion. ECF 92.

## ARGUMENT

### I.    Standard of Review

The Government brings its motion under Federal Rules of Civil Procedure 26(c)(1) and 59(e).

Rule 59(e) allows for a motion to alter or amend a judgment. The Court's order was not a judgment, so Rule 59(e) does not apply. Nonetheless, Plaintiffs agree that the Court has authority to reconsider its interlocutory order under its inherent reconsideration authority. *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989). But "[a] motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Rule 26(c)(1) provides that the Court "may, for good cause," issue a protective order in certain circumstances.

1

**II.    ARRPs Are Relevant to this Litigation, as the Court Has Already Recognized**

2

Plaintiffs' key contention is that the President, through his EO and implementing agencies

3

OMB/OPM/DOGE, has engaged in an unlawful top-down reorganization of unprecedented scale

4

without authority granted either by the Constitution or statute. Agencies have been ordered to create

5

these ARRPs to implement the EO, as set forth in the OMB/OPM implementing Memo. OMB, OPM,

6

and DOGE have claimed authority to implement the President's decision, including by approving or

7

disapproving agencies' ARRPs, and ordering agencies to engage in cuts consistent with the

8

President's directives. Agencies are, under such orders, ceding their own independent decision-

9

making authorities, and engaging in actions to implement the approved ARRPs. Thus, these ARRPs

10

are important evidence of the central control and implementation of the President's order to engage in

11

this reorganization scheme according to *his* designs. *See* Soriano Supp. Decl. ¶¶9–10 (Phase 1 ARRP

12

targeted 20-25% reduction of agency staff, but DOGE responded to the ARRP by telling the agency

13

to achieve a 70% reduction).[2]

14

Upon review of the record evidence, the Court ordered the Government to produce four

15

categories of documents, of which only the first two categories are ARRPs. ECF 85 at 40. The

16

Government's motion and supporting declaration focus only on ARRPs. The Government has thus

17

waived any claim of privilege as to category three (any agency applications for waivers of statutorily

18

mandated reduction-in-force ("RIF") notice periods) and category four (any responses by OMB or

19

OPM to such waiver requests).

20

The Government asserts that ARRPs are irrelevant, ECF 88 at 3, which would mean that they

21

are not even subject to discovery. But the test for discoverability under Federal Rule Civil Procedure

22

26(b)(1) is broad. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-MD-

23

03047-YGR (PHK), 2024 WL 5088103, at *1 (N.D. Cal. Dec. 11, 2024). ARRPs easily clear the low

24

threshold of being "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

25

26

27

28

---

[2] The revealed ARRP involves an agency, the National Endowment for the Humanities ("NEH"), that is not a Federal Agency Defendant in this case (and was subject to its own Executive Order), but is probative of the apparent form, content, and approval process for these documents. At the very least, the form of the April 14 document appears to be standardized and required by OMB/OPM.

1    The Government argues that ARRPs are irrelevant now that the Court has temporarily

2    enjoined all implementation of the EO and OMB/OPM Memo. ECF 88 at 8–9. But the Court's

3    temporary restraining order lasts only fourteen days. ECF 85 at 40. The Court is proceeding

4    expeditiously to preliminary injunction proceedings, proceedings to which it found that these

5    documents would be relevant. *Id.* Especially as the Government is disputing entry of a preliminary

6    injunction and disputing facts surrounding the government's ongoing reorganization, the Court is

7    entitled to require expedited discovery of these documents.

8    The Government also claims that Plaintiffs' challenges to the ARRPs are entirely dependent

9    on Plaintiffs' challenges to the EO and OMB/OPM Memo. ECF 88 at 9. But the Government

10    understands Plaintiffs' claims too narrowly. Agency action to implement the unlawful EO and Memo

11    is relevant to the facts and remedies regardless, but Plaintiffs do also challenge agencies' actions to

12    implement the reorganization as arbitrary and capricious. ECF 1 ¶¶400–03. In its temporary

13    restraining order, the Court deferred evaluation of the APA arbitrary-and-capricious claims against

14    Federal Agency Defendants pending disclosure of the ARRPs. ECF 85 at 37.

15    The ARRPs are plainly relevant to the issues that will be considered by the Court at the

16    upcoming preliminary injunction hearing. *Id.* First, the ARRPs may support the merits of Plaintiffs'

17    claims. At the temporary restraining order stage, Plaintiffs established their likelihood of success on

18    the merits by assembling publicly available information. But the Court is entitled to the discovery it

19    has determined to be relevant to its consideration of Plaintiffs' forthcoming motion for a preliminary

20    injunction with a complete factual picture. In particular, production of all versions of ARRPs that

21    agencies have submitted to OMB and OPM may allow the Court to assess the role of OMB and OPM

22    approvals and the extent to which agencies were directed to change their plans to accord with

23    external directives. *See* Soriano Supp. Decl. ¶7 & Ex. 1, p. 2 (agency explanation that: "the

24    Department of Government Efficiency (DOGE) instructed NEH to reduce the agency's workforce

25    through a Reduction in Force (RIF).")

26    Second, ARRPs likely bear on standing and imminent irreparable harm to Plaintiffs. Plaintiffs

27    have thus far established harm based on the publicly available information. *See* ECF 37-1 at 12–29;

28    ECF 70 at 12–14. But the ARRPs will provide a fuller picture of the actions that have been and will

1   be taken by agencies, and therefore the harms that Plaintiffs will suffer, particularly during the

2   pendency of this case. As the Court is aware, the Government has already challenged Plaintiffs'

3   ability to show sufficiently imminent harm, and it should not be permitted to hamstring Plaintiffs'

4   ability to do so in the upcoming preliminary injunction litigation by withholding key evidence.

5       For these reasons, the Court has already recognized the need for immediate disclosure of

6   ARRPs. Indeed, the Court ordered "expedited" production because the information will shed light on

7   the roles of OMB, OPM, and DOGE during the short pendency of the temporary restraining order so

8   that the Court can decide "whether further prompt action is necessary." ECF 85 at 40.

**III.    ARRPs Are Not Subject to the Deliberative Process Privilege**

10      The ARRPs are not predecisional or deliberative. And the Government's thin declaration does

11  not justify the privilege, nor does it identify the harms of disclosure with anything near the requisite

12  specificity. Indeed, recently obtained portions of ARRPs from the NEH seriously undercut the single-

13  paragraph description of "all" ARRPs provided by the Government in the Declaration of Stephen M.

14  Billy. ECF 88-1 ¶2; *see* Soriano Supp. Decl. ¶¶5–6 (describing a recent disclosure in response to a

15  union request). This Court's order that the ARRPs be disclosed should be respected.

16      The purpose of the qualified deliberative process privilege is to promote good government.

17  The privilege "was developed to promote frank and independent discussion among those responsible

18  for making governmental decisions," and its "ultimate purpose . . . is to protect the quality of agency

19  decisions." *FTC v. Warner Commc'ns Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *NLRB v.*

20  *Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)). It is a "narrow privilege" that "must be strictly

21  confined within the narrowest possible limits consistent with the logic of its principles." *In re*

22  *McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 601 (N.D. Cal.

23  2009) (quoting *United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998) and *K.L. v. Edgar*, 964

24  F. Supp. 1206, 1208 (N.D. Ill. 1997)). The deliberative process privilege has its origins in common

25  law. *Wolfe v. Dep't of Health & Hum. Servs.*, 839 F.2d 768, 773 & n.5 (D.C. Cir. 1988); *Desert*

26  *Survivors v. U.S. Dep't of the Interior*, 231 F. Supp. 3d 368, 379 (N.D. Cal. 2017).[3] Unless a

27

28  _____
    [3] These cases, and other FOIA cases on deliberative process privilege under FOIA Exemption Five, are

PLFS OPP. TO DEFS MOT. FOR PROTECTIVE ORDER AND/OR RECONSIDERATION, NO. 3:25-cv-03698-SI   6

litigation need for the documents outweighs the privilege, the Government may withhold "documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Warner Commc'ns*, 742 F.2d at 1161.

To qualify for the deliberative process privilege, a document must be both (1) predecisional, having been "generated before the adoption of an agency's policy or decision," and (2) deliberative in nature, "containing opinions, recommendations, or advice about agency policies." *Id*. Critically, the deliberative process privilege *does not protect facts* unless they are interwoven with deliberative material and not segregable. *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). Thus the agency must take care not to over-claim the privilege to include material in documents that is plainly factual; here, the Government has certainly not asserted the privilege with the required precision.

### A.    ARRPs Are Not Predecisional

The Government's cursory arguments that the ARRPs ordered for disclosure by the Court are predecisional (ECF 88 at 4) are unpersuasive.

As an initial matter, ARRPs that have been approved by OMB and OPM (the second category of documents ordered to be produced) are not predecisional. Those ARRPs must, per OMB and OPM's directives, include the elements required by the OMB and OPM Memo, were submitted by the agencies under the deadline set by OMB and OPM and for review and approval, and have already been approved. Defendants' declaration refuses to address whether ARRPs have in fact been approved; the record of both direct (Soriano Supp. Decl., Ex. 1) and circumstantial evidence (ECF 37-1 at 12–29; ECF 70 at 1–3) regarding agency implementation demonstrate that approval has been granted to at least some ARRPs.

The ARRPs submitted by Federal Agency Defendants to OMB and OPM (the other category of documents ordered to be produced) also are not predecisional as to those defendants.[4] The terms of

---

relevant here because that FOIA exemption "incorporates the privileges available to Government agencies in civil litigation." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021).

[4] To the extent the Government contends that ARRPs are predecisional with respect to the decision *by OMB and OPM* to approve each ARRP, that necessarily concedes that OMB and OPM are in fact exercising unlawful decisionmaking power over agencies.

the ARRPs submitted by Federal Agency Defendants are established by the parameters of the EO and the OMB/OPM Memo. Certainly, the ARRPs are not "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). Rather, as relative to the EO and Memo, the ARRPs reflect implementation of the challenged ultra vires actions by the President and OMB/OPM/DOGE.

The Government argues that ARRPs support future decisions by each agency but that ARRPs are "*never final*." ECF 88 at 4 (emphasis added).[5] As the Government paints the picture, ARRPs reflect vague "someday" intentions that may never come to pass. But the information in the public record is inconsistent with the Government's characterization. ARRPs respond to specific directives of the President, OMB, and OPM, at specified deadlines, subject to centralized approval—all of which is inconsistent with the notion that ARRPs are fluid, internal planning aids that the agencies consider on an ongoing basis. And ARRPs cannot be predecisional given that their implementation is already underway and resulting in immediate harms. ECF 85 at 13–17, 37–38.

In any case, the possibility of future change does not make a document pre-decisional. "This argument proves far too much. Any memorandum always will be 'predecisional' if referenced to a decision that possibly may be made at some undisclosed time in the future." *Assembly of State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 921 (9th Cir. 1992), *as amended on denial of reh'g* (Sept. 17, 1992); *cf. Gen. Elec. Co. v. EPA*, 290 F.3d 377, 380 (D.C. Cir. 2002) ("If the possibility . . . of future revision in fact could make agency action non-final as a matter of law, then it would be hard to imagine when any agency rule . . . would ever be final . . . ."). These documents reflect the policies that the Government has decided to pursue at this time, making the ARRPs final for the purposes of the privilege. By the Government's logic, no decision would ever be final. The Government may not operate in secrecy by perpetually labeling its actions as non-final, even as those actions have real consequences for Plaintiffs.

_____

[5] To the extent Defendants rely on the later monthly "report" deadlines to portray these documents as pre-decisional forever, they ignore that the OMB/OPM Memo uses two different terms: "plan" for the documents submitted for approval on March 13 and April 14, and "report" for the later reports regarding implementation.  ECF 37-1, App. B.

**B.    ARRPs Are Not Deliberative**

Even if the ARRPs were predecisional, they are not deliberative. The deliberative process privilege avoids "expos[ing] an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Assembly of State of Cal.*, 968 F.2d at 921. Materials may be shielded "to the extent that they reveal the mental processes of decision-makers." *Id.* Deliberative process privilege is protection for candid internal discussion, including "personal opinions of the writer," *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980), to assist an agency decisionmaker at arriving at their decision.

ARRPs implement a mandatory reorganization directive by the President, as well as further directives by OMB, OPM, and DOGE. *See* Soriano Supp. Decl., Ex. 1, Attach. F (OPM communicating to the NEH: "Your request indicates that a RIF is necessary in the NEH due to the impact of an Executive Order titled, 'Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative'"). The OMB/OPM Memo orders agencies to implement the reorganization order; it does not contemplate that ARRPs will "reflect[] the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866. That appears to be borne out by the single ARRP Plaintiffs have obtained. As the NEH ARRP disclosure shows, critical components of the ARRPs are purely factual: The "Agency ARRP Phase 2 Cover Sheet," for example, appears to be a spreadsheet where agencies enter factual information, including about whether there is a planned hiring freeze and the number of probationary employees at the agency. *See id.*, Ex. 1, Attach. D. And as noted, factual material is not deliberative in nature and is not shielded by the privilege. *Pac. Fisheries, Inc.*, 539 F.3d at 1148. To the extent the ARRPs reflect agencies' decisions about *how* to implement directives from OMB/OPM/DOGE, they reflect final decisions about how agencies will do so—not ongoing, internal deliberations over those questions.

The Government argues that ARRPs contain information about future plans and strategies, not all of which will be acted upon—at least right away. But again, the fact that ARRPs might change based on "intervening events and changes in the agency's thinking," ECF 88 at 5, does not establish that the documents reflect candid, personal mental processes that might need protection to ensure

proper government decision-making. At a minimum, ARRPs already approved by OMB and OPM

(the second category of documents ordered to be produced) certainly reflect final decisions by OMB

and OPM and are not deliberative.

**C.    The Government Failed to Properly Invoke or Justify the Asserted Privilege with the Required Specificity**

The deliberative process privilege must be invoked with specificity. But the Government's

single declaration makes statements that are at once sweeping and incredibly terse about the

characteristics of multiple documents the Court has ordered produced. It makes no distinctions

between different categories of documents, such as ARRPs that have been submitted for review to

OMB/OPM and those that have been approved. It does not account for different types of information

within ARRPs and the specific harms purportedly associated with disclosure of each type of

information. In short, the Government's generalized claims about the alleged harms of disclosure

come nowhere close to establishing the privilege.

The single declaration purporting to describe the ARRPs also appears to be inconsistent with

the actual ARRP that Plaintiffs recently obtained. For example, the Billy Declaration states that

ARRPs contain "strategies for agency negotiations with unions; . . . plans and strategies regarding

present and future regulatory changes; plans and strategies for present and future appropriations

requests; and plans and strategies for agency IT management." ECF 88-1 ¶4. But deliberative or

predecisional information on those topics is nowhere to be found in the NEH ARRP materials,

strongly suggesting that Mr. Billy's description of the ARRPs at best does not apply to *all ARRPs* and

thus does not meet the specificity the law requires, and at worst is entirely inaccurate. *See* Soriano

Supp. Decl., Ex. 1, Attachs. C-D. Moreover, by describing the contents of ARRPs in such broad

terms, the Government's declarant obscures how benign much of the information apparently

contained in the documents actually is; for example, the Billy Declaration states that the ARRPs

contain "plans and strategies for congressional engagement," but the NEH-disclosed ARRP material

reflects merely factual information about notification to Congress—not deliberative internal

processes or debates. *See* Soriano Supp. Decl., Ex. 1, Attach. C ("NEH intends to consult with its

Congressional appropriations and authorizing committees about restructuring plans."). It is unclear

how *harm* could flow from such information becoming public, and absent harm, the Government's arguments here must fail.

The Government's invocation of the privilege is deficient in other ways. Generally, the deliberative process privilege can be invoked "only by the agency head after personally reviewing the documents for which the privilege is asserted." *McKesson*, 264 F.R.D. at 601; *Rozet*, 183 F.R.D. at 665 (requiring "formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer"). Based on such personal consideration, the government declarant must show "a detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege." *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000).

This showing must be made with specificity as to each document. The Government must not only show, as discussed above, "1) specific facts demonstrating why each document is 'deliberative' and 'predecisional'"; but also "2) specific facts concerning: a) the degree and type of harm that would result from requiring production of each document; and b) what type of protective order would be necessary to reduce that harm or, alternatively, why a protective order would not reduce this harm; and 3) what portions of each document are deliberative and, if specific sections are purely factual, why those sections cannot be produced." *McKesson*, 264 F.R.D. at 602. *Cf. Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021).

The Government has not provided a declaration from anyone who has the power to invoke the privilege. And the Government's declarant does not indicate that he has conducted a personal review of all the ARRPs at issue. Nor does he display any awareness of the specifics of each ARRP (or any particular one). Instead, he provides generalized characterizations about the contents of ARRPs and their alleged nature as "living documents." ECF No. 88-1 ¶6. He recognizes no distinctions between different categories of ARRPs, such as those that are awaiting review and those that have been approved. He fails to acknowledge, let alone identify, that, according to the OMB/OPM Memo, ARRPs contain significant factual material—even though the Government's own brief recognizes that the deliberative process privilege encompasses only "non-factual" material. ECF 88 at 3 (quoting

*United States v. Irvin,* 127 F.R.D. 169, 172 (C.D. Cal. 1989)); *see also* ECF 1-2 at 3–6 (requiring ARRPs to include information about agency structures and actions already taken).[6]

The Government did not even attempt to describe each document with specificity. And as described above, particularly in light of the NEH ARRP disclosure, it is clear that ARRPs contain significant factual material, and that the Government's single declarant did not accurately describe *all* ARRPs by speaking generally about the document. The Government's burden to produce a declarant who is able to opine with specificity on each document has not been met.

**D.  Any Privilege Is Qualified and Is Overcome by Plaintiffs' Showing of a Need for and the Relevance of the ARRPs**

For the reasons above, the Government has not established the deliberative process privilege. But if it had done so, the privilege should be overcome anyway by the need for accurate fact-finding in this litigation.

Deliberative process is a qualified privilege that can be overridden if the litigant's "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Warner Commc'ns*, 742 F.2d at 1161. In deciding whether to override the privilege, courts consider "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.*

As to the first prong, ARRPs are highly relevant. *See supra* Section I. As to the second prong, there is no alternative source of information—precisely because the government has acted in secret, almost entirely refusing to reveal the ARRPs to employees, their labor representatives, the public, or even in response to requests by Congress. ECF 1 ¶¶175–88. On the third prong, the government is "a party to and the focus of the litigation." *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019).

As to the fourth prong, the Government has made no specific showing of harm from disclosure. "To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public

---

[6] Nor has the Government provided a privilege log. As such, the Government improperly asserts a blanket privilege—without meeting its burden to show that there is no reasonably segregable material. *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).

disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States*, 617 F.2d at 866. The Government has provided no reason to believe that disclosure of ARRPs would have such a chilling effect on internal agency communications. The Government claims that ARRPs contain "highly sensitive information," ECF 88-1 ¶4, but without adequate explanation of the basis for that claim or how much of the information in ARRPs can be characterized as such. In reviewing the NEH ARRPs, *see* Soriano Supp. Decl. & Ex. 1, the documents simply reveal the extent of Defendants' unlawful plans to transform the Government. Harm to one's legal position is not cognizable harm; fallout from unlawful government action is not cognizable harm, either. Regardless, the Government has not met its burden to show how disclosure of specific information would lead to specific harms.

The Government's other asserted interests in non-disclosure do not pass muster. The Government claims that disclosure "might seriously hurt agency recruitment and retention if released." ECF 88 at 6 (citing ECF 88-1 ¶4). That concern is hard to square with the current actions of the Government, which has already declared and begun carrying out large-scale terminations across the government. ECF 1-1 ¶ 3(c). The Government also claims that ARRPs contain "strategies for agency negotiations with unions." ECF 88 at 6. But in a recent executive order, the President purported to eliminate the collective-bargaining rights of employees in a wide range of agencies. Executive Order 14251, 90 Fed. Reg. 14553 (Apr. 3, 2025). Based on that executive order, agencies across the government have declared their collective-bargaining agreements void and refused to negotiate with federal unions. *See, e.g.*, Supp. Hunter Decl. ¶3, Ex. A (March 31, 2025 Email from Steven J. Polson, State Dep't).[7] These actions foreclose the Government's withholding of ARRPs on this basis.

Ultimately, a decision whether to override the deliberative privilege must consider the purpose of the privilege, which is to promote good government by safeguarding robust agency decisionmaking processes. Here, no such purpose is served by shielding ARRPs from disclosure.

---

[7] A preliminary injunction against the federal union collective bargaining executive order was issued April 25, 2025. Order, *Nat'l Treas. Employees Union v. Trump*, 25-cv-935 (D.D.C. Apr. 25, 2025), ECF 32.

1   ARRPs are the result of a diktat from the President that agencies perform large-scale reductions in

2   force and cut government functions on his terms, regardless of prior agency determinations that these

3   staff or functions were valuable or needed to perform important functions. The deliberative process

4   privilege is not intended to allow the Government to proceed in secrecy here and to withhold from the

5   public the scope of their plans to reorganize the government.

6   **IV.    The Court Has Provided the Government Fair Opportunities to Establish the Privilege**

7           The record refutes the Government's assertions that the Court's order requiring production is

8   "flawed" and "highly unfair." ECF 88 at 6. Plaintiffs' motion for a temporary restraining order,

9   supporting brief, and proposed order each gave the Government fair notice of Plaintiffs' request for

10  production of ARRPs. ECF 37 at 2; ECF 37-1 at 6, 50; ECF 37-2. Indeed, the Government's TRO

11  opposition brief *quoted and responded to Plaintiffs' request*, arguing that Plaintiffs have no need for

12  the ARRPs and should seek them through FOIA. ECF 60 at 48–49. Production of the ARRPs also

13  was discussed during the May 9 TRO hearing. *See* Lingiardi Decl. Ex. A ("Hrg. Tr.") at 21–22, 41–

14  43. The pace of this process reflects the immediate harms created by the Government's conduct, as

15  alleged in the complaint, and is "proportional to the needs of this case, considering the importance of

16  the issues at stake." Fed. R. Civ. P. 26(b)(1).

17          Now that the Court has ruled in Plaintiffs' favor and ordered production of the ARRPs, the

18  Government seeks a second bite at the apple. But because the Government could have briefed all

19  these arguments earlier, reconsideration is improper. *Marlyn Nutraceuticals*, 571 F.3d at 880. In any

20  case, the Government still has not justified its privilege claim. *Supra* Section II. Nor has it otherwise

21  shown that ordering the production was not within the district court's "wide latitude in controlling

22  discovery," including "broad discretion in determining relevancy for discovery purposes." *Pizzuto v.

23  Tewalt*, 131 F.4th 1070, 1082 (9th Cir. 2025). A district court may permit expedited discovery upon a

24  showing of "good cause," which exists "where the need for expedited discovery, in consideration of

25  the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v.

26  Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *see also, e.g.*, *Shutterfly, Inc. v.

27  ForeverArts, Inc.*, No. CR 12-3671, 2012 WL 2911887, at *4 (N.D. Cal. July 13, 2012) (granting

28

plaintiff's request for a temporary restraining order and for limited expedited discovery prior to the preliminary injunction hearing). This Court's order was an appropriate exercise of its discretion.

The Government's arguments to the contrary are unpersuasive. First, the Government's complaint that the TRO motion was not labeled or served as a discovery motion (ECF 88 at 6) elevates form over substance: Plaintiffs were seeking emergency relief, and the Government understood Plaintiffs' request for discovery because it devoted a separate section of its opposition brief responding to it.

Second, the Government claims that the Court has not performed a sufficiently "granular" balancing analysis to evaluate the deliberate process privilege. ECF 88 at 8. But it is the Government that, having now taken a *second* opportunity to do so, has failed to assert the privilege with sufficient specificity to allow for a granular evaluation. Instead, the Government has improperly asserted a blanket privilege without even attempting to show, for example, that there is no reasonably segregable material, *see* Section II, *supra*, much less disclosing what is segregable and seeking protection over what is not.

Finally, the Government objects that this Court has ordered production of RIF notice period materials that Plaintiffs requested at the temporary restraining order hearing. ECF 88 at 8. The Government incorrectly asserts that Plaintiffs sought the RIF notice period waivers only and did not request agency applications for the same; but at the hearing, Plaintiffs requested documents related to "receiving and granting waivers." Hrg. Tr. at 43. The Government had not clarified its position on what was supposedly happening between the President, OMB, OPM, and the agencies until the Defendants filed their opposition brief two days before the hearing—and then further expanded on their position at the hearing. Plaintiffs acknowledged during the hearing that this part of their document request was not included in their motion and explained that, in Plaintiffs' reply in support of their motion, they had provided additional facts that raised serious questions about how and why OPM has been granting RIF notice period waivers. *Id.* at 42–43. In any event, this Court's "broad discretion and authority to manage discovery . . . extends to crafting discovery orders that may expand, limit, or differ from the relief requested." *In re Soc. Media Adolescent Addiction/ Pers. Inj.*

1  *Prods. Liab. Litig.*, No. 22-MD-03047-YGR (PHK), 2025 WL 1292655, at *1 (N.D. Cal. May 5,

2  2025).

3  **V.       The Government Has Not Justified a Protective Order**

4          As an alternative to reconsideration, the Government asks the Court to "direct any ARRPs to

5  be filed under seal and . . . enter a protective order directing that Plaintiffs' counsel may not disclose

6  the ARRPs to anyone else (including their clients)." ECF 88 at 10. But the Government does not

7  come close to meeting its burden to prove "good cause" to justify a protective order; such an order

8  would impede Plaintiffs' ability to show the need for a preliminary injunction; and the Government's

9  proposal is practically unworkable, as it has not presented the Court or Plaintiffs with a properly

10  narrowly-tailored proposed protective order that would provide clarity on how Plaintiffs could rely on

11  the ARRPs in their preliminary injunction papers or at the preliminary injunction hearing. To the

12  extent the Government seeks to require that any reference or citation to the ARRPs be filed under seal

13  in Plaintiffs' motion for a preliminary injunction, it surely cannot meet that higher standard. *See infra*

14  at 19.

15          For a protective order, "[t]he starting point for the[] dispute is the presumption that court

16  proceedings are public events." *Humphreys v. Regents of Univ. of California*, No. C 04-03808 SI,

17  2006 WL 8459527, at *1 (N.D. Cal. May 23, 2006) (Illston, J). "The presumption of access is 'based

18  on the need for federal courts, although independent—indeed, particularly because they are

19  independent—to have a measure of accountability and for the public to have confidence in the

20  administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir.

21  2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). "Ordinarily in litigation,

22  'the public can gain access to litigation documents and information produced during discovery.'"

23  *Humphreys*, 2006 WL 8459527, at *1 (quoting *Phillips ex rel. Estate of Byrd v. Gen. Motors Corp.*,

24  307 F.3d 1206, 1210 (9th Cir. 2002)). Under Rule 26, however, upon a showing of "good cause,"

25  courts may depart from this general rule and issue a protective order to prevent public disclosure. *See*

26  *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011).

27          Courts considering a protective order "must proceed in two steps. First, a court must

28  determine whether 'particularized harm will result from disclosure of information to the public.'" *Id.*

1   (citation omitted). "Second, if the court concludes that such harm will result from disclosure of the

2   discovery documents, then it must proceed to balance 'the public and private interests to decide

3   whether [maintaining] a protective order is necessary.'" *Id.* (citation omitted).

4       The Government has not met its burden to show what specific harm will result from public

5   disclosure of each document it objects to disclosing. "A party asserting good cause bears the burden,

6   *for each particular document it seeks to protect*, of showing that *specific prejudice or harm will*

7   *result* if no protective order is granted." *Brave New Films 501(c)(4) v. Weiner*, No. C08-04703SI,

8   2009 WL 1393540, at *1 (N.D. Cal. May 18, 2009) (Illston, J.) (emphasis added) (quoting *Foltz v.*

9   *State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)).

10      Instead, the Government puts forward only "[b]road allegations of harm, unsubstantiated by

11  specific examples or articulated reasoning[ which] do not satisfy the Rule 26(c) test." *In re Roman*

12  *Catholic Archbishop*, 661 F.3d at 424 (quotation marks and citation omitted). The Government's

13  single declaration in support of its motion to withhold these documents contains a single paragraph

14  purporting to describe the contents of "ARRPs" generally. *See* ECF 88-1 ¶4. This Court has before it

15  no information from the Government whether all ARRPs have identical contents or individual

16  differences, what those differences are, or even how many exist. The Government's evidence falls far

17  short of "demonstrat[ing] 'particularized harm' that would result from disclosure of the documents to

18  the public, [so] the court need not proceed to the second step of the . . . inquiry." *Athletics Inv. Grp.,*

19  *LLC v. Schnitzer Steel Indus., Inc.*, No. 21-CV-05246-MMC (DMR), 2024 WL 4682307, at *4 (N.D.

20  Cal. Nov. 4, 2024). Indeed, a similar declaration attempting to support claims of deliberative process

21  privilege was found to be "too vague and generalized to satisfy the [movant's] burden at step one to

22  show good cause under *In re Roman Catholic Archbishop*. *Id*.[8] To the extent the Government argues

23

24  ───────────

    [8] In that case, the party seeking to prevent disclosure had previously argued that the documents were

25  protected by deliberative process privilege, and the court had disagreed and ordered them to be
    disclosed in discovery. *Athletics Inv. Grp.*, 2024 WL 4682307, at *4. This, of course, mirrors the instant

26  case, where this Court already heard the Government's objections and concluded that the ARRPs were
    relevant and necessary to disclose. *See* ECF No. 85 at 40. The declaration at issue in *Athletics*

27  *Investment Group* also mirrors the Billy Declaration here. That court described the declaration as
    follows: "Allen states, without elaboration, that disclosure of documents containing "the mental

28  processes, opinions, recommendations, and/or advice of Air District employees with respect to the Air

PLFS OPP. TO DEFS MOT. FOR PROTECTIVE ORDER AND/OR RECONSIDERATION, NO. 3:25-cv-03698-SI   17

1  it is harmed because public disclosure would undermine its desire to cloak its plans to dismantle the

2  government in secrecy, that certainly does not qualify as a harm here.

3      Moreover, even if this Court were to find that "harm will result from the disclosure," it must

4  then "proceed to balance 'the public and private interests to decide whether [maintaining] a protective

5  order is necessary.'" *In re Roman Catholic Archbishop*, 661 F.3d at 424 (quoting *Phillips*, 307 F.3d

6  at 1211). Courts do so by considering the *Glenmede* factors:

7      (1) whether disclosure will violate any privacy interests; (2) whether the information is
    being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure
8      of the information will cause a party embarrassment; (4) whether confidentiality is
    being sought over information important to public health and safety; (5) whether the
9      sharing of information among litigants will promote fairness and efficiency; (6) whether
    a party benefitting from the order of confidentiality is a public entity or official; and (7)
10     whether the case involves issues important to the public.

11 *Id.* at 424, n.5 (quotation omitted).

12     All factors weigh against a protective order. Without specific information as to what is in

13 some or all the ARRPs, the Court cannot evaluate whether that information is embarrassing or

14 implicates privacy interests. But the Court may easily conclude that this case "involves issues

15 important to the public," as it concerns the large-scale attempted dismantling of the federal

16 government. Additionally, that the information is sought from a governmental entity for the

17 legitimate purposes of litigation that touches on critical safety issues strongly supports public

18 disclosure. *Accord Athletics Inv. Grp.*, 2024 WL 4682307, at *4 (disclosure sought from "public

19 agency tasked with regulating air pollution" for use in collateral litigation).

20     "[E]ven when the factors in this two-part test weigh in favor of protecting the discovery

21 material" via a protective order, courts are required to consider whether a partial disclosure of the

22 non-sensitive portions of the material is possible. *In re Roman Cath. Archbishop*, 661 F.3d at 425.

23 But here, by failing to address each document with particularity or describe what "specific prejudice

24 or harm will result" from its public disclosure, the Government has not met its burden in showing

25

26

27  _____

28 District's regularly and enforcement policy towards the Facility ... could undermine the Air District's
   ability to engage in candid discussions in the future." *Athletics Inv. Grp.*, 2024 WL 4682307, at *4.

1    "particularized harm"—*and* it has deprived this Court of any opportunity to assess whether a more

2    limited disclosure is at all possible. *Id.*

3         Finally, the Government provides no clarity as to how its requested protective order—i.e., that

4    litigating counsel could view the documents but Plaintiffs could not—would work as a practical

5    matter, particularly given Plaintiffs' burdens and the quick timeline in this case. Sharing the

6    information in the ARRPs with Plaintiffs is critical to being able to explain how the cuts and

7    reorganizations will harm them—and how imminent (or already manifest) those harms are. Protective

8    orders are not one-size-fits-all; they have specific terms that can differ from case to case, and the

9    Government here has failed to provide even an outline of a tailored protective order for consideration

10   by the Plaintiffs or the Court.

11        Finally, the Government's motion is not clear on this point but suggests the imposition of a

12   requirement that portions of Plaintiffs' preliminary injunction motion would be filed under seal (and

13   presumably that the hearing be conducted under seal as well). Not only would such an approach be

14   unworkable, but it ignores "the strong presumption for public access[,]" "the nature of the [] motion

15   for a preliminary injunction," and the need for the Government to "demonstrate compelling reasons

16   to keep the documents under seal." *Ctr. for Auto Safety*, 809 F.3d at 1103. The Government cannot

17   meet that high standard for sealing here.

## CONCLUSION

18

19        The Court should deny Defendants' motion and set a prompt deadline for production of all

20   documents identified in its prior order. ECF 85 at 40.

21

22   DATED: May 13, 2025                    Stacey M. Leyton
                                            Barbara J. Chisholm
23                                          Danielle E. Leonard
                                            Corinne F. Johnson
24                                          Alice X. Wang
                                            Robin S. Tholin
25                                          Aaron Schaffer-Neitz
                                            ALTSHULER BERZON LLP
26                                          177 Post St., Suite 300
                                            San Francisco, CA 94108
27                                          Tel: (415) 421-7151
                                            sleyton@altshulerberzon.com
28

PLFS OPP. TO DEFS MOT. FOR PROTECTIVE ORDER AND/OR RECONSIDERATION, NO. 3:25-cv-03698-SI    19

bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com

By: */s/ Danielle Leonard*

*Attorneys for All Union and Non-Profit Organization Plaintiffs*

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

By: */s/ Elena Goldstein*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

Jules Torti (pro hac vice)
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

1

2      Norman L. Eisen (pro hac vice app. forthcoming)

3      Spencer W. Klein (pro hac vice app. forthcoming)
       STATE DEMOCRACY DEFENDERS FUND

4      600 Pennsylvania Avenue SE #15180
       Washington, D.C. 20003

5      Tel: (202) 594-9958
       Norman@statedemocracydefenders.org

6      Spencer@statedemocracydefenders.org

7      By: */s/ Norman L. Eisen*

8
       *Attorneys for All Union and Non-Profit Organization*

9      *Plaintiffs (except NRDC)*

10

11     Rushab Sanghvi (SBN 302809)
       AMERICAN FEDERATION OF GOVERNMENT

12     EMPLOYEES, AFL-CIO
       80 F Street, NW

13     Washington, D.C. 20001
       Tel: (202) 639-6426

14     Sanghr@afge.org

15     By: */s/ Rushab Sanghvi*

16
       *Attorneys for Plaintiffs American Federation of*

17     *Government Employees, AFL-CIO (AFGE) and AFGE*
       *locals*

18

19     Teague Paterson (SBN 226659)

20     Matthew Blumin  (pro hac vice app. forthcoming)
       AMERICAN FEDERATION OF STATE, COUNTY,

21     AND MUNICIPAL EMPLOYEES, AFL-CIO
       1625 L Street, N.W.

22     Washington, D.C.  20036
       Tel: (202) 775-5900

23     TPaterson@afscme.org
       MBlumin@afscme.org

24

25     By: */s/Teague Paterson*

26
       *Attorneys for Plaintiff American Federation of State*

27     *County and Municipal Employees, AFL-CIO (AFSCME)*

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL UNION,
AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorneys for Plaintiff Service Employees International
Union, AFL-CIO (SEIU)*


David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE CITY
AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By:  */s/ David Chiu*
David Chiu
City Attorney

*Attorneys for Plaintiff City and County of San Francisco*


Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor

1
2

San José, CA 95110
Tel: (408) 299-5900

3

By:  */s/ Tony LoPresti*

4

*Attorneys for Plaintiff County of Santa Clara, Calif.*

5
6

David J. Hackett (pro hac vice)
General Counsel to King County Executive & Special
Deputy Prosecutor

7
8

Alison Holcomb (pro hac vice)
Deputy General Counsel to King County Executive &
Special Deputy Prosecutor

9

Erin King-Clancy (pro hac vice app. forthcoming)
Senior Deputy Prosecuting Attorney

10

OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION

11

401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483

12

David.Hackett@kingcounty.gov
aholcomb@kingcounty.gov

13

aclancy@kingcounty.gov

14

By: */s/ David J. Hackett*

15

David J. Hackett

16

*Attorneys for Plaintiff Martin Luther King, Jr. County*

17
18

Sharanya Mohan (CABN 350675)
PUBLIC RIGHTS PROJECT

19

490 43rd Street, Unit #115
Oakland, CA 94609

20

Tel: (510) 738-6788
sai@publicrightsproject.org

21
22

By: */s/ Sharanya Mohan*

23

*Attorneys for Plaintiffs Baltimore, MD, Chicago, IL,
Harris County, TX, and King County, WA*

24
25

Christian D. Menefee
Harris County Attorney

26
27

Jonathan G.C. Fombonne (pro hac vice app. forthcoming)
Deputy County Attorney and First Assistant

28

Tiffany Bingham (pro hac vice app. forthcoming)

Managing Counsel
Sarah Utley (pro hac vice app. forthcoming)
Division Director – Environmental Division
Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice app. forthcoming)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice app. forthcoming)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel: (713) 274-5102
Fax: (713) 437-4211

jonathan.fombonne@harriscountytx.gov
tiffany.bingham@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscountytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

By: */s/ Jonathan G.C. Fombonne*
Jonathan G.C. Fombonne

*Attorneys for Plaintiff Harris County, Texas*


Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago

Stephen J. Kane (IL ARDC 6272490) (pro hac vice app. forthcoming)
Rebecca A. Hirsch (IL ARDC 6279592) (pro hac vice app. forthcoming)
Lucy Prather (IL ARDC 6337780) (pro hac vice)
City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Stephen.kane@cityofchicago.org
Rebecca.Hirsch2@cityofchicago.org
Lucy.Prather@cityofchicago.org

By:    */s/Stephen J. Kane*
Stephen J. Kane

*Attorneys for Plaintiff City of Chicago*

PLFS OPP. TO DEFS MOT. FOR PROTECTIVE ORDER AND/OR RECONSIDERATION, NO. 3:25-cv-03698-SI  24

1

2          Ebony M. Thompson
           Baltimore City Solicitor
3
           Sara Gross (pro hac vice app. forthcoming)
4          Chief of Affirmative Litigation
           Baltimore City Department of Law
5          100 N. Holliday Street
           Baltimore, Maryland 21202
6          Tel: (410) 396-3947
           sara.gross@baltimorecity.gov
7
           By: /s/ Sara Gross
8
           *Attorneys for Plaintiff City of Baltimore*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28