OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
TONY LOPRESTI, State Bar #289269
KAVITA NARAYAN, State Bar #264191
MEREDITH A. JOHNSON, State Bar #291018
RAPHAEL N. RAJENDRA, State Bar #255096
HANNAH M. GODBEY, State Bar #334475
70 West Hedding Street, East Wing, Ninth Floor
San José, California  95110-1770
Telephone: (408) 299-5900
Facsimile:  (408) 292-7240
E-Mail:     Tony.LoPresti@cco.sccgov.org
            Kavita.Narayan@cco.sccgov.org
            Meredith.Johnson@cco.sccgov.org
            Raphael.Rajendra@cco.sccgov.org
            Hannah.Godbey@cco.sccgov.org

*Attorneys for Plaintiff
County of Santa Clara, Calif.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-3698-SI <br><br> **SUPPLEMENTAL DECLARATION OF SANTA CLARA COUNTY EXECUTIVE JAMES R. WILLIAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

## SUPPLEMENTAL DECLARATION OF JAMES R. WILLIAMS

I, JAMES R. WILLIAMS, declare:

1. I make this declaration in support of Plaintiffs' motion for a preliminary injunction. I am a resident of the State of California. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify to them competently under oath.

2. As I explained in greater detail in my original declaration dated April 30, 2025 and filed with the Court in this action on May 1, 2025 at ECF No. 37-58, I am the County Executive of the County of Santa Clara ("Santa Clara" or the "County"). As the chief administrative officer of the County, I am responsible for oversight of almost all of the County's approximately 25,000 employees and the proper administration of the County's operations. I am also responsible for implementing the County's policy agenda as set by the County's Board of Supervisors, and recommending and implementing the annual budget approved by the County's Board of Supervisors.

3. As explained in my original declaration, the U.S. Department of Agriculture's (USDA) Animal and Plant Health Inspection Service (APHIS) is an essential partner for a range of Santa Clara's activities.

4. In addition to the points made in my original declaration, Santa Clara also relies on APHIS when it certifies agricultural products for export. A variety of requirements must be met before an agricultural product can be exported to a foreign nation. Product- and destination-specific rules apply when, for example, a local farmer wishes to export cherries to China, garlic to Mexico, or heirloom seeds to Canada—all of which are regular occurrences in Santa Clara County. Local government officials called Authorized Certification Officials (ACOs) are trained and accredited by APHIS to perform the function of inspecting agricultural products and certifying that they comply with U.S. export laws as well as the phytosanitary regulations of the importing nation. If an ACO's inspection reveals that a product is pest and disease free and complies with all applicable laws and regulations, the ACO issues a phytosanitary certificate for the product before export.

5. APHIS is responsible not only for training and accrediting ACOs, but also for maintaining the Phytosanitary Export Database (PExD) and the Phytosanitary Certificate Issuance & Tracking System (PCIT). The PExD is used by ACOs to review the full landscape of laws and

1

regulations applicable to a given product when that product is being exported to a specific foreign nation. APHIS hosts the database and regularly updates it to reflect any changes in law. The PCIT is used by ACOs to create phytosanitary certificates once the inspection process is complete for a given product, and to process payment from the exporter. I have reviewed a news report that indicates that hundreds of APHIS employees left their jobs on April 30, 2025, and after that an email from human resources identified at least 73 positions within APHIS that it stated "'are especially critical to fill as soon as possible.'"[1] If USDA's ARRP diminishes the ability of APHIS to train and accredit new ACOs, process renewals of existing ACO accreditations, maintain and update the PExD, or maintain the PCIT, agricultural exports from Santa Clara County and throughout the nation could grind to a halt, inflicting significant harm on both the local and national economies. Santa Clara would also lose a revenue stream in the form of lost PCIT payments from exporters. Finally, the farming industry often operates with razor-thin profit margins. Even a temporary delay in the processing of phytosanitary certificates could lead to product spoilage, devastating small agricultural businesses in Santa Clara County and potentially leading to irreparable loss of local industry.

6. The National Institute for Occupational Safety and Health (NIOSH), a research agency housed within the Centers for Disease Control and Prevention (CDC), plays a critical role in protecting Santa Clara employees from hazards in the workplace. I have reviewed a news report that indicates that NIOSH has been virtually eliminated and the vast majority of its staff have been terminated or placed on leave.[2] Even diminishing NIOSH's capacity, let alone ceasing altogether most of its functions, will have, and is already having, a significant negative impact on Santa Clara's operations, employees, hospital patients, and residents.

7. NIOSH tests, evaluates, and/or certifies safety equipment, including Personal Protective Equipment (PPE) ranging from N95 respirators, face shields, and medical gowns to equipment designed to protect against hearing loss, such as noise reduction earmuffs. The

---

[1] A. Hsu, *After paying people to leave, one federal agency is scrambling to fill positions*, NPR (May 3, 2025), https://perma.cc/8LH3-G7WN.

[2] W. Stone, *Trump cuts demolish agency focused on toxic chemicals and workplace hazards*, NPR (May 2, 2025), https://perma.cc/E5ZR-CR4W.

elimination of NIOSH has caused and will cause virtually all of this work to stop. Indeed, I have seen on NIOSH's website the public announcements that "due to the reduction in force across NIOSH, no new respirator applications can be accepted,"[3] "[n]o new health hazard evaluation requests can be accepted," "access to tools is limited," and information on NIOSH's Health Hazard Evaluations website "is not currently being updated."[4]

8. Santa Clara relies on NIOSH's review, testing, evaluation, and/or approval of PPE across its operations, including, but not limited to, in its hospitals and health clinics (where medical providers wear respirators, face shields, and medical gowns during various medical procedures, and members of the Sterile Processing Department wear impermeable gowns when using high-grade disinfectants to de-contaminate medical equipment between uses); its Department of Environmental Health (where staff members use PPE when sampling hazardous waste or investigating properties contaminated with methamphetamine); its Registrar of Voters (where workers standing near ballot-processing machines on Election Day wear PPE designed to protect against hearing loss); and its facilities operations (where workers conducting landscaping maintenance wear PPE when handling herbicides, fungicides, or pesticides).

9. Across many County departments and agencies, NIOSH's demise is already forcing Santa Clara to face immediate uncertainties related to procuring devices that must—under law, for worker safety, or pursuant to County policy or standard practice—possess NIOSH certifications or conform to NIOSH guidance. For example, I am aware of federal regulations promulgated by the Occupational Safety and Health Administration that require employers to provide NIOSH-certified respirators to workers who may be exposed to air contaminated with harmful dusts, fogs, fumes, mists, gases, smokes, sprays, or vapors. *See, e.g.*, 29 C.F.R. § 1910.134. But, as explained, NIOSH has already halted its review of new respirator applications, placing the County in an untenable position. The County expects that if NIOSH is and remains shuttered, there will be significant demand from both public and private institutions for the existing inventory of NIOSH-approved

---

[3] NIOSH, *Respirator Approval Program* (archived May 7, 2025), https://perma.cc/PA4X-TN53.
[4] NIOSH, *Health Hazard Evaluations (HHEs)* (archived May 12, 2025), https://perma.cc/8XEP-BKA9.

equipment on the market. Indeed, Santa Clara has already devoted significant employee hours to researching whether, when, and where to buy and store an emergency stockpile of NIOSH-approved equipment. Taking respirators as an example, once the market runs dry, supply gaps would force the County to either discontinue labor subject to Section 1910.134—including cancelling medical procedures that are clinically indicated for patients, but which require the use of a NIOSH-certified respirator—or procure and use PPE that NIOSH has not reviewed or approved, that may or may not conform to the relevant safety standards, and that therefore place the County at risk of violating the law and exposing patients and County employees to serious hazards.

10. Additionally, new PPE is developed and introduced to market all the time, both as manufacturers seek to improve upon existing product designs and as emerging risks require the development of new products. For example, respirator manufacturers often seek to enhance wearability, including by reducing skin irritation and barriers to fulsome communication between patient and provider. NIOSH, as the institution tasked with researching workplace hazards and determining what type of PPE is needed to protect workers from harm, reviews and certifies new PPE on a rolling basis. Without NIOSH, PPE will be frozen in time, depriving workers and the public of improvements to existing products stemming from innovation as well as scientific research and development. Workers and the public will also be left exposed to new and emerging hazards, for which there is not yet any NIOSH-reviewed PPE. Moreover, NIOSH performs post-market evaluations to ensure that manufacturers maintain the level of quality. Without NIOSH's post-market evaluations, buying the same respirator from the same manufacturer could result in the purchase of an inferior product. These risks are especially heightened for Santa Clara for several reasons, including that it operates a large health and hospital system; that it is a hub for international travel in light of its close proximity to four airports; that its employees may be designated disaster service workers (as thousands were during the COVID-19 pandemic) and assigned to perform work for which specific, and sometimes new or emergent, hazards require specific PPE; that it is home to several sites, such as advanced biological and chemical research facilities, that pose especially significant risks of bioterrorist attacks; and that its geographic location renders employees and residents alike particularly susceptible to new and changing hazards, including infections and

respiratory and other atmospheric risks caused by wildfires and exacerbated by climate change.

11. NIOSH also played a critical role in the County's response to the pandemic, when Santa Clara experienced the first known COVID-19-related death in the United States. When there was an insufficient number of N95 respirators available in the global market to meet the County's needs, NIOSH played a leading role in evaluating the efficacy of KN95 respirators—a similar respirator that originated in China as an alternative to the N95 respirator. In addition to shaping CDC guidance on the use of KN95 respirators, NIOSH provided KN95 testing and evaluation services that were available to the public. NIOSH invited interested persons to send a small sample of KN95 respirators they purchased from other countries to be tested at NIOSH's National Personal Protective Technology Laboratory. NIOSH then published the results of these assessments, which allowed the public to make informed decisions when purchasing substitutes for N95 respirators.[5] To the County's knowledge, no other entity is capable of or has the expertise to fill this gap in a credible and unbiased way, leaving the public exposed to risk in the event of another infectious disease outbreak or other significant public health event. If such an event were to arise when there was an absence or undersupply of NIOSH-reviewed products on the market, NIOSH's decimation means it would be unable to help the public—as well as Santa Clara and other entities responsible for responding to public health events—to survive and remain healthy during such an event.

12. Santa Clara relies on NIOSH to help make informed decisions when facing both "known unknowns" and "unknown unknowns." NIOSH conducts research about a wide range of topics such as workplace violence and hazards to, among other things, workers' reproductive health, lung heath, and hearing. In many cases, NIOSH is the only entity collecting the data, maintaining the data, analyzing the data, and turning its analysis into concrete guidance for employers and workers. Federal, state, and local government agencies in turn rely on that research and guidance to develop their own regulations or policies. For example, Santa Clara's Office of Occupational Safety & Environmental Compliance relies on NIOSH's research to develop County policies designed to

---

[5] *See* M. D'Alessandro et al., *Who Does What? The Roles of NIOSH, OSHA, and the FDA in Respiratory Protection in the Workplace* (Nov. 25, 2024), https://perma.cc/WT79-5RHA.

5

Supp. Declaration of James R. Williams ISO Plaintiffs' Mot. for Prelim. Inj.   Case No. 3:25-cv-3698-SI

protect employees from environmental hazards such as chemical exposures (for example, workers tackling weed abatement or construction-adjacent work) and other workplace hazards such as unsafe noise (for example, workers stationed near County-owned roads and airports). Additionally, when it conducts certain ergonomic assessments, Santa Clara relies on the NIOSH Lifting Equation to inform procurement and staffing decisions, for example, to procure 25-lb bags of cement instead of 50-lb bags in order to reduce the risk of harm to workers required to lift and carry those bags.[6]

13. In addition, NIOSH carries a uniquely credible and centralized voice as a creator, reviewer, and clearinghouse of reliable scientific study and its applications. The expertise it has amassed over decades cannot be replaced. To illustrate, NIOSH has historically distributed educational materials to local public health departments nationwide for free, to assist with public education campaigns. Santa Clara does not have the resources to develop and maintain expertise in all issue areas covered by NIOSH's materials, to develop and print similar materials in-house for every such issue, or to maintain routinely updated websites to which it can refer employees and residents. Moreover, some of NIOSH's research is longitudinal, spanning decades from initiation to completion. Shuttering NIOSH could mean the loss of unpublished data, undermining decades of research into topics such as environmental hazards and carcinogen exposure—research that is unlikely to result in any kind of profit and so is unlikely to be taken up by private entities.

14. Santa Clara's Public Health Department is presently facing challenges addressing the local impacts of a national Measles outbreak due to the reductions in force at NIOSH. Before NIOSH's decimation earlier this month, during disease outbreaks NIOSH typically undertook research, provided on-the-ground advice about how to contain the outbreak, and hosted a webpage that provided critical information to the public. There is simply no complete replacement for NIOSH's role, and the absence of any organized, credible, and consistent replacement for NIOSH's work during the present Measles outbreak underscores the risk of imminent harm that NIOSH's decimation poses to the County, its employees, and its patients and residents. The County simply cannot fill the gap itself, most importantly because it does not have access to the data, knowledge of

---

[6] NIOSH, *Revised NIOSH Lifting Equation* (archived May 7, 2025), https://perma.cc/7F65-KGYM.

6

Supp. Decl. of James R. Williams ISO Plaintiffs' Mot. for Prelim. Inj.   Case No. 3:25-cv-3698-SI

developing and on-the-ground facts, or scientists on staff with the long-term expert knowledge NIOSH had regarding threshold tipping points where the response of public agencies should shift.

15. NIOSH's ongoing research into industrial chemicals is the essential backdrop for the credibility of the PPE recommendations and recommended exposure levels (RELs) for certain chemicals contained in NIOSH's widely used Pocket Guide.[7] These PPE recommendations and RELs can change based on NIOSH's development and assessment of new data and ongoing research. One example is respirable crystalline silica, also referred to as silica dust, a carcinogenic byproduct of construction-adjacent work, such as tilework.[8] Another example is lead—NIOSH's lead RELs recently changed based on a new scientific consensus that harm from lead exposure occurs at lower levels than previously understood. Santa Clara relies on the Pocket Guide and NIOSH's ongoing research into RELs for industrial chemicals across numerous departments and agencies. For example, one of Santa Clara Valley Healthcare's labs uses formaldehyde, and it follows the Pocket Guide's standards for how long staff can be exposed to formaldehyde in an 8-hour shift. Additionally, when Santa Clara's Fire Department sends response teams to hazmat incident sites, the teams rely on the Pocket Guide to ensure they do not remain exposed to hazardous chemicals for longer than the time-weighted averages listed in the Guide. Without NIOSH's efforts to keep the science underpinning the Pocket Guide up to date—including revising its PPE recommendations and RELs in light of NIOSH's own research findings—both Santa Clara's employees and the public could be exposed to serious health hazards.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 14, 2025 in Santa Clara County, California.

_____
JAMES R. WILLIAMS

---

[7] NIOSH, *NIOSH Pocket Guide to Chemical Hazards* (archived on May 7, 2025), https://perma.cc/JZK6-C966.

[8] *E.g.*, NIOSH, *NIOSH Policy Statement: Respiratory Protection Recommendations for Airborne Exposures to Crystalline Silica* (Jul. 2008), https://perma.cc/P7BJ-NJ47.

7

Supp. Decl. of James R. Williams ISO Plaintiffs' Mot. for Prelim. Inj.   Case No. 3:25-cv-3698-SI