PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
ANDREW M. BERNIE
Trial Attorney
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-7203
andrew.m.bernie@usdoj.gov

Counsel for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-03698-SI<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER OR IN THE ALTERNATIVE FOR RECONSIDERATION AND REQUEST FOR AN IMMEDIATE ADMINISTRATIVE STAY** |

Reply in Support of Defendants' Motion for a Protective Order or in the Alternative for Reconsideration and Request for an Immediate Administrative Stay
3:25-cv-3698-SI

1

Plaintiffs sought and received a sweeping temporary restraining order (TRO)[1] that enjoins the Office of Management and Budget (OMB), the Office of Personnel Management (OPM), the United States DOGE Service (USDS), twelve Cabinet-level Departments, and numerous other components from implementing or enforcing sections 3(c) and 3(e) of Executive Order 14210 (Workforce Executive Order) and the February 26, 2025 OMB/OPM Memorandum (Workforce Memorandum). The Court found that statutory authority for the Workforce Executive Order was "plainly lacking." As to the Memorandum, the Court held that it asserted authority "far outside the bounds of any authority that Congress vested in OPM or OMB." The Court also held that OPM and OMB unlawfully engaged in rule-making without following notice-and-comment procedures when they issued the Workforce Memorandum and whenever OPM/OMB approve ARRPs. The Court stated all of this and more in a 42-page opinion, after holding a live hearing and reviewing extensive briefing (including principal briefs from both parties double the size permitted under the local rules, and amicus briefs on both sides). The Government respectfully disagrees with the Court's conclusions, as well as its characterization of the Workforce Executive Order and Workforce Memorandum. But because the Court was able to enter equitable relief for Plaintiffs based on Plaintiffs' facial challenges to the Workforce Executive Order and Workforce Memorandum, Plaintiffs cannot show that they need access to the Agency RIF and Reorganization Plans (ARRPs) at the preliminary injunction stage.

None of this is enough for Plaintiffs. According to them, the Government should also be required to produce all ARRPs, extensive long- and intermediate-term agency planning documents that memorialize agencies' thinking at one stage of an interagency dialogue about policy choices to be made down the road, and which include highly sensitive information such as "strategies for agency negotiations with unions," "present and future appropriations requests," and "congressional engagement." And they would have this Court direct the Government to turn over all of these sensitive agency planning documents immediately—a step which would of course be

---

[1] As noted in Defendants' motion, *see* ECF No. 88 (Motion) at 1, Defendants contest that this order is properly characterized as a TRO, but for ease of reference, Defendants will refer to it as a TRO here.

irreversible—without a protective order and without an opportunity for the Government to orderly seek appellate review. All of this even though Plaintiffs never filed a discovery motion, never conferred with the Government on any such motion, did not follow any of the local rule requirements for resolving discovery disputes, and included a single conclusory paragraph on the subject in their TRO motion that contained no meaningful legal justification and as to which the Government responded under a briefing schedule it opposed. This is extraordinary. The Court should grant reconsideration or a protective order that relieves the government of the obligation to produce the ARRPs and the other materials the Court has ordered produced.

As a threshold matter, the ARRPs are privileged. Plaintiffs insist that they are not predecisional or deliberative because, among other flawed arguments, OPM/OMB purportedly approve the ARRPs and the Workforce Memorandum sets forth the items ARRPs should include. But any approval function OMB and OPM exercise does not change the fact that ARRPs are agency planning documents, such documents are always subject to change, and agencies are not *required* to follow every plan, strategy, and recommendation in an ARRP. This is clear not only from the declaration Defendants submitted but from the Workforce Memorandum itself, which plainly contemplates agency submissions of plans that include potential steps which will not be effectuated until far into the future, if at all. And although the Workforce Memorandum may set forth the *topics* ARRPs should address, the *substance* of the agency's recommendations, plans, and strategies on those topics (set forth in the ARRPs) are plainly privileged.

Nor do Plaintiffs have any serious response to the Government's explanation of the irreparable harm that would flow from irreversible disclosure of the ARRPs and associated plan documents. Plaintiffs submit portions of one ARRP from one agency that is not a defendant in this lawsuit and that is fundamentally unlike the agencies in this suit. They only attach the cover sheet from that agency's Phase 2 ARRP, not the entire report. And in any event, the materials Plaintiffs submit from that agency, far from supporting Plaintiffs, were clearly privileged before they were disclosed and only underscore the predecisional and deliberative nature of ARRPs.

But to the extent the Court has any doubt about whether the ARRPs are actually privileged, the appropriate solution is to require Plaintiffs to file the discovery motion they should have filed

Reply in Support of Defendants' Motion for a Protective Order or in the Alternative for Reconsideration and Request for an Immediate Administrative Stay
3:25-cv-3698-SI

3

1  in the first place but did not, and to allow for orderly briefing on that question. Plaintiffs'
2  contention that the Government did not provide enough specificity about the basis for its privilege
3  assertions is facially ridiculous since Plaintiffs never made a discovery request, never filed a
4  discovery motion, did not follow the local rules for resolving disclosure disputes, and given that
5  the Court issued the Disclosure Order late Friday night with a Tuesday deadline. It is entirely
6  unwarranted that the Government is being forced to litigate its privilege assertions on an
7  emergency basis like this to begin with. The Government's submissions amply justify its privilege
8  assertions in light of that context.

9      Putting all of this aside, there is still no basis for ordering immediate production of the
10 ARRPs and related material. Plaintiffs broadly challenge the legality of the Workforce Executive
11 Order, OPM's guidance, and supposed USDS directives. Their purported challenges to agency
12 implementation are not garden variety APA challenges, and are derivative of their claims that the
13 Order and Workforce Memorandum direct illegal action. But even if the content of the ARRPs
14 were relevant to this case, they are plainly not necessary for the upcoming *preliminary injunction*
15 *proceedings*. Again, although this Court's TRO Opinion reserved decision on some subsidiary
16 topics, it also concluded that the Workforce Executive Order and Workforce Memorandum were
17 unlawful and that the ARRPs flowed from illegal directives (among many other rulings adverse to
18 the Government). Respectfully, it would be extraordinary to require the Government to produce
19 broad categories of documents that are privileged and highly sensitive, on an ultra-expedited
20 timetable without allowance for appellate review when—*at most*—the justification is that these
21 documents might conceivably be relevant only to a potential *alternative ground* for an injunction.

22     Finally, if the Court does order disclosure, it should grant a seven-day administrative stay
23 of any disclosure order to allow for the Solicitor General to decide whether to seek emergency
24 appellate relief.

**ARGUMENT**

25
26 **I.    The ARRPs and Other Planning Documents are Privileged and their
       Disclosure would Irreparably Harm the Government**

27     As Defendants have explained, ARRPs are predecisional and deliberative. Motion at 3-5.
28 ARRPs are constantly subject to change, nothing in an ARRP irrevocably commits an agency to

Reply in Support of Defendants' Motion for a Protective Order or in the Alternative for Reconsideration and
Request for an Immediate Administrative Stay
3:25-cv-3698-SI
                                    4

taking a specific step, and an ARRP may change drastically as the agency's thinking and priorities change. *Id.* at 4; Billy Decl. ¶¶ 4-5. Indeed, they are necessarily predecisional because they typically include plans for changes that would take place many years in the future, if at all. Billy Decl. ¶ 3. They contain many recommendations distinct from specific RIFs. *Id.*; TRO Opp. at 15-16. They are also deliberative. It would obviously "discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions," *Carter v. U.S. Department of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002), if agencies' decisionmaking process on such sensitive topics as personnel reorganizations, strategies regarding present and future regulatory changes, and congressional engagement strategies (among other things) were exposed to the public before they are finalized.

Plaintiffs have no persuasive response. Their principal argument is that ARRPs cannot be predecisional if OMB and OPM have approved them. *See* ECF No. 96 (Opposition) at 7; *see also id.* at 1 (contending that the Government "carefully avoid[s] stating whether any approvals have already occurred or will imminently occur"). This is a non-sequitur. Plaintiffs never come to grips with the fact that ARRPs are merely *plans* related to *future* agency actions, not themselves agency actions. And even to the extent OPM and OMB approve such plans, that obviously does not mean that the ARRPs are set in stone such that agencies are *obligated* to follow all the plans, recommendations, and strategies set forth in the ARRP.

A simple example illustrates the point. If an agency created a plan concerning five regulations it was planning on issuing in the next year, that plan would obviously be predecisional and deliberative, even if the agency had submitted the plan to OMB for "approval" under an Executive Order and even if OMB had actually "approved" it. And no one would seriously contend that OMB's approval bound the agency to *actually issue* the regulations if circumstances changed or the agency simply changed its mind. So too here. Plaintiffs' contention that the mere fact of alleged OMB/OPM approval "is inconsistent with the notion that ARRPs are fluid, internal planning aids that the agencies consider on an ongoing basis," Opposition at 8, thus has no basis. And as discussed in the next section, Plaintiffs' reliance on portions of an ARRP released by one

Reply in Support of Defendants' Motion for a Protective Order or in the Alternative for Reconsideration and
Request for an Immediate Administrative Stay
3:25-cv-3698-SI

5

federal agency only *reinforces*—rather than refutes—the Government's argument that these materials are privileged.

Putting aside that nothing in the Workforce Memorandum remotely suggests that the ARRPs are set in stone and that OMB has unequivocally explained that they are not, it is obvious from the Workforce Memorandum itself that the ARRPs *must* be predecisional and deliberative. To take three representative examples: The Workforce Memorandum states that Phase 2 ARRPs should provide, among other things: (1) any proposed relocations from Washington, D.C. to less expensive areas of the country; (2) plans to improve efficiency and reduce costs through improved technology; and (3) "[a]ny changes to regulations and agency policies, including changes that must be pursued through notice-and-comment rulemaking." ECF No. 37-1 App. 2 at 5-6. That an agency expresses a plan to relocate some staff (or not) does not bind it to that result, any more than it might choose to pursue a different technological solution that is more cost-effective. Similarly, of course an agency would not be obligated to go forward with regulatory changes (including notice-and-comment rulemaking) if the agency later changed priorities or otherwise concluded that the regulatory changes proposed in an ARRP were unwise. Plaintiffs' reference to the principle that the mere possibility of future revision does not necessarily make an action non-final, *see* Opposition at 8, is thus beside the point. By their very nature, ARRPs are dynamic and fluid intermediate and long-term planning documents that include strategies, plans, and recommendations that are inevitably subject to modification and adjustment as the agency's thinking and priorities change, or as circumstances otherwise warrant.

Plaintiffs also contend that the ARRPs are pre-decisional because "[t]he terms of the ARRPs submitted by Federal Agency Defendants are established by the parameters of the EO and the OMB/OPM Memo." Opposition at 7-8. This also misses the point entirely. Although the Workforce Memorandum may set forth the *topics* ARRPs should address, the agency's actual recommendations, plans, and strategies on those topics are obviously not dictated by the Workforce Memorandum, and how the agency plans to address those topics is plainly predecisional and deliberative.

Plaintiffs also assert that "ARRPs cannot be predecisional given that their implementation is already underway." Opposition at 8. This argument also fails. The Government has never contended—and obviously does not contend—that *none* of the proposed recommendations, strategies, and techniques set forth in the ARRPs will be acted upon. Relatedly, there is no merit to Plaintiffs' claim that Defendants are "weaponiz[ing] a privilege intended to promote good government to hide secret efforts directing a wide-scale dismantling of the government." *Id.* at 2. If an agency actually decides to go forward with steps that might affect Plaintiffs—RIFs, transfers, reorganizations, re-assignments, regulatory changes, etc.—Plaintiffs and the public will learn about those decisions when they are made. Indeed, when final determinations have been made, agencies *are* publicly releasing their final plans (*see, e.g.*, https://www.hhs.gov/press-room/hhs-restructuring-doge.html; https://www.state.gov/building-an-america-first-state-department/), and they are following the required notice process for RIFs where RIFs are issued.

Plaintiffs' real complaint is that they would like to know the Government's recommendations, strategies, and thinking concerning matters as to which it has not made final decisions. But that is just another way of saying that Plaintiffs seek predecisional and deliberative information. They are not entitled to that information, particularly on the highly expedited timetable they seek to require the Government to produce it.

Finally, Plaintiffs' brief argument that the ARRPs are not deliberative is similarly incorrect and adds nothing to the analysis. Plaintiffs simply repeat their assertion that, because agencies are required to submit the ARRPs in furtherance of the Workforce Executive Order and the Workforce Memorandum sets forth the items they should address, the agencies' substantive plans, recommendations, and strategies are fixed and not part of a give and take process within the agencies. *See* Opposition at 9. As previously explained, that is wrong. The ARRPs are privileged.

## II.     Disclosure of the ARRPs would Irreparably Harm the Government

Plaintiffs cannot seriously dispute that public disclosure of all the ARRPs (as well as agency applications for waivers of statutorily-mandated RIF notice periods, and any responses by OMB or OPM to such waiver requests) would irreparably harm the government. Publication of confidential documents is irreversible and quintessential irreparable harm. Motion at 5-6

Reply in Support of Defendants' Motion for a Protective Order or in the Alternative for Reconsideration and Request for an Immediate Administrative Stay
3:25-cv-3698-SI

7

(collecting cases). And the ARRPs contain highly sensitive information of the highest order: This "information includes strategies for agency negotiations with unions; plans and strategies for personnel reorganization that may or may not materialize, but might seriously hurt agency recruitment and retention if released; plans and strategies regarding present and future regulatory changes; plans and strategies for present and future appropriations requests; plans and strategies for congressional engagement; and plans and strategies for agency IT management." Billy Decl. ¶ 4. This highly sensitive information "would seriously undermine agency operations if they were released." *Id.*

To the extent Plaintiffs respond to this line of argument at all, they rely on portions of an ARRP released by the National Endowment for the Humanities (NEH). *See* Opposition at 10 (contending that NEH ARRP supposedly shows "how benign much of the information apparently contained in the documents actually is"). This argument fails on every level. For one, NEH is not a defendant in this case. Moreover, NEH has a small number of employees, https://bestplacestowork.org/rankings/detail/?c=AJ00 (suggesting that NEH has about 125 employees), a miniscule budget (approximately $200 million in 2023), and implements a limited set of authorities largely concerning providing grants to cultural institutions, *see* ECF No. 96-1 at 17-18. There is no basis to conclude that the content of NEH's Plan—let alone the practical impacts to the government—would be the same as disclosure of the Plans of the actual defendants in this case. And as Plaintiffs note, NEH is subject to its own Executive Order. Opposition at 4 n.2. No less importantly, Plaintiffs' submission does not *actually include* the NEH Phase 2 ARRP; Plaintiffs only attach the cover sheet, not the entire Phase 2 report. ECF No. 96-1 at 23.

In any event, it is clear that the documents attached to the Soriano Declaration contain information that is predecisional and deliberative in nature. For example, in response to questions in the Phase 1 ARRP, NEH identified "a number of NEH offices that current leadership *believe* should be eliminated" and consolidated, and described what NEH was "considering," including offices "NEH is considering eliminating." ECF No. 96-1 Att. C at 3 (emphasis added). The agency explicitly identified ARRP Phase 1 as "a pre-decisional document." ECF No. 96-1 Ex. 1 at 6. Also, the agency marked its ARRP Phase 2 submission as "Predecisional – Deliberative." ECF No. 96-

1 Att. D at 2. And the cover sheet for the Phase 2 ARRP (the only part of the Phase 2 ARRP attached to the Declaration) contains plans for future staffing levels at the agency, so it is obviously predecisional and deliberative (and is marked as such). *Id.* The cover sheet also makes clear that it allows for information to be presented for FY25, 26 and 27; plans for those years would necessarily have to be contemplated plans, not final decisions.

Nor do Plaintiffs provide any persuasive response to the Government's other points on irreparable harm. As to the Government's point that the disclosure will undermine negotiations with unions, Plaintiffs have no response except to invoke a separate Executive Order excluding certain unions from collective bargaining. *See* Opposition at 13. And as Mr. Billy's declaration further explained, disclosure of the ARRPs would reveal "plans and strategies for personnel reorganization that may or may not materialize, but might seriously hurt agency recruitment and retention if released." Billy Decl. ¶ 4. General intentions to conduct RIFs, reorganizations, or other actions are, to a job seeker or employee, very different than plans to conduct specific reorganizations or RIFs.

At bottom, Plaintiffs provide no plausible refutation of the undoubted irreparable harm the Government would suffer from an irreversible order that it disclose dozens of high-level agency planning documents with reams of sensitive information. And it would be extraordinary to require the Government to produce all of these sensitive materials on a highly expedited basis, without proper motion practice.

## III. Requiring Disclosure in this Context Would Be Improper and Procedurally Unfair to the Government

For reasons set forth above, the Government has sufficiently established that ARRPs and associated documents are privileged from disclosure. That is clear both from the Declaration it submitted and the Workforce Memorandum itself, which clearly calls for information and recommendations that by their very nature will be dynamic and subject to change. But if the Court has doubts on that score, the Court should set the matter for an orderly briefing schedule, including requiring Plaintiffs to file an actual proper discovery motion, to follow the local rule requirements for resolving discovery and disclosure disputes, *see* Local Rule 37-1, and give the Government an

Reply in Support of Defendants' Motion for a Protective Order or in the Alternative for Reconsideration and Request for an Immediate Administrative Stay
3:25-cv-3698-SI

9

adequate amount of time to supply whatever information the Court believes is required to adjudicate the privilege dispute (including individualized declarations from agencies if necessary).

Notably, Plaintiffs do not—and cannot—dispute the Government's point that the Court conducted no privilege analysis before requiring it to immediately disclose the ARRPs, let alone the sort of granular analysis the Ninth Circuit has held is required. Motion at 8; *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019). But Plaintiffs contend that the Government was given a fair opportunity to establish the privilege *in responding to their TRO motion*, such that it should be forced to take the irreversible step of making these highly sensitive documents public now. They remarkably assert that the Government "seeks a second bite at the apple," Opposition at 14, and has "Failed to Properly Invoke or Justify the Asserted Privilege with the Required Specificity," *id.* at 10. And they repeatedly criticize the Government for, inter alia, its "single, short declaration" and its supposedly "cursory arguments." *Id.* at 2, 7.

This entire line of argument is wrong. After Plaintiffs drafted a 115-page complaint, filed a TRO motion, and prepared over a thousand pages of declarations and exhibits, the Government filed a brief opposing Plaintiffs' request that their 51-page brief be litigated on a TRO schedule, noting that such a schedule would be "unwarranted and unfair to the United States." ECF No. 40 at 6. The Court entered a schedule allowing Defendants 4 business days to respond. Notwithstanding Plaintiffs' time and effort, Plaintiffs made no attempt to file a proper discovery motion. They did not file a discovery motion, nor even caption their TRO motion as seeking expedited discovery. Contrary to Plaintiffs' assertions, this does not "elevate[] form over substance." Opposition at 15. A motion for discovery seeks different relief, and is subject to completely different legal standards, than the TRO relief Plaintiffs sought. And an order directing the immediate disclosure of documents is not even plausibly characterized as a step to merely maintain the status quo pending an adjudication on the merits. Freezing the status quo does not equate to or require forcing the Government to make granular privilege objections on 4 business days' notice for 21 governmental components (including nearly every Cabinet-level Department), all on pain of permanent forfeiture of its privileges.

1    Nor did Plaintiffs follow any of the local rule requirements for resolving discovery and

2    disclosure disputes (a proposition their opposition does not dispute). They did not attempt to serve

3    proposed discovery requests. They did not confer with the Government or indicate that their TRO

4    motion would also seek discovery. And their entire justification for this request was a single

5    conclusory statement at the bottom of page 50 of their 51-page brief, in which they made no

6    attempt to establish that the ARRPs were non-privileged and otherwise subject to disclosure.

7    Under the circumstances, the Government would have been justified—on the highly

8    expedited timetable for responding to Plaintiffs' 51-page TRO motion—in simply not responding

9    to this procedurally improper and wholly conclusory demand at all. But the Government did

10    respond. It pointed out that Plaintiffs had provided no legal basis for this request, TRO Opposition

11    at 48, and stated separately that ARRPs were deliberative, *id.* at 21. That was more than sufficient

12    under the circumstances. And respectfully, the Court erred by ordering immediate production of

13    these documents without engaging in any privilege analysis, and without ordering briefing on the

14    subject.

15    Plaintiffs' criticisms of the Government's post-TRO efforts to obtain relief from the

16    Disclosure Order are similarly preposterous. *See* Opposition at 15 ("But it is the Government that,

17    having now taken a *second* opportunity to do so, has failed to assert the privilege with sufficient

18    specificity to allow for a granular evaluation."). The Court required virtually immediate production

19    of these documents as part of a TRO Order issued just before 9:30 pm eastern time on Friday night;

20    because of the Tuesday deadline, the Government was required to seek near immediate relief from

21    this Court; and it is now being afforded one business day to reply to Plaintiffs' opposition. Again,

22    there is no reason for this highly expedited schedule, as Plaintiffs' desire to see the ARRPs plainly

23    does not present anything that could even plausibly be characterized as an emergency. But putting

24    that aside, the Government's submissions amply justify its privilege assertions in this context. It

25    is wholly unreasonable to expect the Government—in *opposing a TRO*—to compile the sort of

26    response it would have provided if it were actually in the discovery phase of a case, or the

27    specificity it would generally provide in a *Vaughn* index in a FOIA case.

28

Reply in Support of Defendants' Motion for a Protective Order or in the Alternative for Reconsideration and
Request for an Immediate Administrative Stay
3:25-cv-3698-SI

11

Finally, Plaintiffs cannot seriously dispute that the scope of the disclosure the Court ordered exceeds even what Plaintiffs sought in their motion. *See* ECF No. 37-3 (requesting only "current versions" of the Plans). Plaintiffs acknowledge that they first asked for "waivers" of the 60-day RIF notice period at the end of the live hearing. Tr. at 43. Nor did Plaintiffs ever ask for "agency applications for waivers" at all. The language they quote from the hearing—"receiving and granting waivers"—is not a request for "applications," and even if it was, it plainly would be unfair to the Government to order disclosure of assertedly privileged materials based on a cryptic and conclusory oral request at a hearing, without any briefing at all.

## IV. The ARRPs Are Not Necessary for the Upcoming Preliminary Injunction Hearing

Again, the Court need not decide whether disclosure of the ARRPs could be required or should be required in the future in order to grant the relief requested. But in any event, the ARRPs are not relevant to the case and, even if minimally relevant, are certainly not necessary for the upcoming preliminary injunction hearing

Beginning with relevance, the content of specific ARRPs is not even arguably relevant to six of Plaintiffs' seven claims. Claims I-V are not asserted against the federal agency defendants and involve direct challenges to the Workforce Executive Order and Workforce Memorandum (as well as unspecified supposed alleged USDS directives). Plaintiffs insist that they "also challenge agencies' actions to implement the reorganization." Opposition at 6. But Claim VI is just derivative of Plaintiffs' (incorrect) understanding of the Executive Order and Workforce Memorandum and does not depend upon any particular ARRP's contents—the entire basis of that claim is that the federal agency defendants acted unlawfully by following the Executive Order and Workforce Memorandum. *See* ECF No. 1 (Compl. ¶ 396).[2] Claim VII is the only claim that even conceivably

---

[2] In full, that paragraph states as follows: "None of the Federal Agency Defendants have the statutory authority to cede their decision-making authority with respect to the employees of that agency to the President, OMB, OPM, or DOGE. None of the Federal Agency Defendants have the statutory authority to implement the President's unconstitutional direction to engage in large-scale RIFs, including with respect to functions, programs, or offices *that the President and those acting on his authority* have decided to cut; or to impose staffing cuts that take an agency, irrespective of duty or need, back to government-shutdown lapse levels. The Federal Agency Defendants have exceeded their authority by implementing the President's unconstitutional plans."

could be read as attacking the merits of particular ARRPs independent of the Executive Order and Workforce Memorandum. And even that is a stretch. The claim includes a hodgepodge of allegations, but all of them appear to involve things Plaintiffs allege that the Executive Order and Workforce Memorandum *require* the agencies to do. *Id.* ¶ 403.[3]

But even assuming that Plaintiffs are correct that the ARRPs satisfy Rule 26(b)(1)'s minimal relevance standard, that is not the relevant question. *See* Opposition at 4. Rather, the question is whether the ARRPs are necessary for the upcoming *preliminary injunction hearing*— and indeed, so central to that hearing that the Government should be required to irreversibly produce assertedly privileged documents on an emergency timetable without an ordinary discovery motion or briefing, and without an orderly opportunity for the Government to seek appellate review. The answer to that question is plainly no.

To see why, one need only look at the Court's TRO opinion. This Court concluded the following: at least some of all three groups of Plaintiffs have standing, TRO Opinion at 13-18, none of the Plaintiffs are required to channel their claims, *id.* at 18-25, the Workforce Executive Order is subject to review, *id.* at 30, the Workforce Memorandum is final agency action subject to review under the APA, *id.* at 35-36, the Workforce Executive Order and Workforce Memorandum are unlawful (among other things, that statutory authority for the Executive Order is "plainly lacking," *id.* at 27, and that the Workforce Memorandum "is far outside the bounds of any authority that Congress vested in OPM or OMB," *id.* at 34), Plaintiffs established irreparable harm, *id.* at 37-38, and the balance of interests favor injunctive relief, *id.* at 38-39. And the Court reached these conclusions after holding a live hearing, as well as reviewing voluminous briefing, thousands of pages of declarations, and amicus briefs on both sides. The Court was already able to resolve all of the legal questions necessary to decide a preliminary injunction motion. That is why the Government respectfully asked the Court to simply issue a preliminary injunction at the hearing if it was going to issue any preliminary relief at all.

---

[3] Earlier today, Plaintiffs filed an amended Complaint. ECF No. 100. That Complaint also asserts seven claims and it does not appear that there is any meaningful change in those claims from the original Complaint.

Reply in Support of Defendants' Motion for a Protective Order or in the Alternative for Reconsideration and Request for an Immediate Administrative Stay
3:25-cv-3698-SI

13

The fact that the Court reserved decision on the merits of Plaintiffs' arbitrary and capricious claims, *id.* at 37, does not change the basic point that disclosure of the ARRPs is not necessary for the Court to decide whether to issue a preliminary injunction. For one, the Court itself held that it could issue a TRO against individual ARRPs because they "flow from likely illegal directives." *Id.* at 39. If the Court reaches the same conclusion, it is unclear how reviewing individual ARRPs—no matter how well reasoned—could affect the preliminary injunction analysis. More fundamentally, the purpose of a preliminary injunction is to provide interim relief pending a full adjudication on the merits; the Court does not necessarily need to resolve Plaintiffs' likelihood of success on all seven claims at the preliminary injunction stage, just as it did not do so at the TRO stage. And that certainly does not justify requiring the Government to make immediate disclosure of highly sensitive materials.

Finally, the foregoing considerations also easily dispose of Plaintiffs' meritless claim that the Government's privilege is overcome here. The ARRPs are not "highly relevant," Opposition at 12, and they are not relevant at all to the preliminary injunction proceedings. The Government is not "act[ing] in secret." *Id.* The basis of this claim is that the Government has not disclosed ARRPs, but again, that is because ARRPs are not final actions. Nor do Plaintiffs need the predecisional and deliberative ARRPs to learn what is going on at agencies that concern them—since as previously explained, agencies have disclosed final decisions.

## V.    At a Minimum, the Court Should Restrict Disclosure of the ARRPs to the Court and Plaintiffs' Counsel

Given the foregoing, there is no basis for ordering disclosure of the ARRPs at all. But even if the Court were to conclude, for example, that the ARRPs are necessary to the litigation of the preliminary injunction motion (which, respectfully, they are not), or that Plaintiffs had overcome the Government's qualified privileges (which they have not), Plaintiffs provide no good reason that these highly sensitive deliberative materials need to be disseminated publicly. At the very least, any disclosure obligation should be restricted to only Plaintiffs' counsel—especially given the fact that the ARRPs contain "strategies for agency negotiations with unions." Again, as explained in the Motion, even this intermediate step is wholly unwarranted, would not fully cure the problems with the Disclosure Order, and would not obviate the Government's need to seek

immediate appellate relief and a stay of any such ruling. But it would ameliorate some of the most significant harms to the Government of having its deliberative work-product made public.

## VI.    The Court Should Grant an Immediate Administrative Stay

Finally, if the Court does order disclosure, it should grant a seven-day administrative stay of any disclosure order to allow for the Solicitor General to decide whether to seek emergency appellate relief (including a seven-day administrative stay of any order requiring disclosure under a protective order). Particularly since immediate disclosure of these documents is not even plausibly necessary to meet an ongoing emergency, the Court should give the Ninth Circuit and potentially the Supreme Court a reasonable opportunity to determine if this Court should have the final word on whether the ARRPs and other documents must be disclosed.

## CONCLUSION

For the foregoing reasons, the Court should relieve Defendants of the obligation to produce the ARRPs and related material, and grant a seven-day administrative stay of any disclosure order.

Dated: May 14, 2025

Respectfully submitted,

PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER HALL
Assistant Branch Director

s/ Andrew M. Bernie
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-7203
andrew.m.bernie@usdoj.gov

*Counsel for Defendants*