Michael R. Lozeau (SBN 142893)
LOZEAU DRURY LLP
1939 Harrison Street, Suite 150
Oakland, California 94612
Tel: (510) 836-4200
michael@lozeaudrury.com

Peter T. Jenkins (appearance *pro hac vice*)
PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY
962 Wayne Avenue, Ste. 610
Silver Spring, MD 20910
Tel: (202) 265-4189
pjenkins@peer.org

*Counsel for Amicus Curiae*

# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

|  |  |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
|             Plaintiffs, | **BRIEF OF AMICUS CURIAE PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
|       v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al. | |
|             Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................ii

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT OF INTEREST .............................................................................1

SUMMARY OF ARGUMENT ............................................................................2

ARGUMENT ....................................................................................................  3

A. The Use of Administrative Leave on Federal Employees in the RIF Context ...........................................................................................................4

B. The Agencies' Actions Have Violated the Administrative Leave Act .........5

    1.    Paid Administrative Leave is Strictly Limited by Law ......................5

    2.    The 2024 OPM Final Rule on Administrative Leave Violated the ALA ........................................................................................  7

    3.    The OPM Final Rule on Administrative Leave Does Not Apply Yet. ....................................................................................................15

CONCLUSION.................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ............................................. 17
*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) .................................... 16
*K Mart Corp. v. Cartier Inc.*, 486 U.S. 281 (1988) .............................................. 14
*Lamie v. United States Trustee*, 540 U.S. 526 (2004) .......................................... 18
*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ................................ 17, 18
*Magwood v. Patterson*, 561 U.S. 320 (2010) ....................................................... 18
*Public Employees for Environmental Responsibility v. Office of Personnel Management*, Case No. 1:24-cv-01918, USDC D.C. ............................................ 6

## Statutes

5 U.S.C. § 6329a ................................................................................................ 6, 9
5 U.S.C. § 6329a(b) ............................................... 10, 11, 12, 16, 17, 18, 19
5 U.S.C. § 6329a(c)(1) .......................................................................................... 11
5 U.S.C. § 6329a(c)(2) .................................................................................... 19, 20
5 U.S.C. § 6329b ........................................................................................... 6, 9, 10
5 U.S.C. § 6329b(b) ............................................................................................... 18
5 U.S.C. § 6329b(b)(2) .................................................................................... 10, 14
5 U.S.C. § 6329b(h)(1) .......................................................................................... 11
5 U.S.C. § 6329b(h)(2) .......................................................................................... 19
5 U.S.C. § 6329c ..................................................................................................... 6
Pub. L. 114–328, 130 Stat. 2000, December 23, 2016 ....................................... 6, 13

## Other Authorities

Memorandum of February 4, 2025, to "Heads and Acting Heads of Departments and Agencies," Legality of Deferred Resignation Program ............................... 14
OPM Memorandum of Jan. 20, 2025, to "Heads and Acting Heads of Departments and Agencies," Guidance on Probationary Periods, Administrative Leave and Details ...................................................................................... 13, 14, 17

## Rules

Fed. R. App. P. 29(a)(3) ......................................................................................... 3
Fed. R. App. P. 29(a)(4)(E) .................................................................................... 2

## Regulations

5 C.F.R. § 1201.3(a) ............................................................................... 11
5 C.F.R. § 630.1401 ................................................................................. 4
5 C.F.R. § 630.1403 ............................................................................... 12
5 C.F.R. § 630.1404 ........................................................................... 9, 10
82 Fed. Reg., 32,275 (July 13, 2017) ..................................................... 9
89 Fed. Reg., 102,257 (Dec. 17, 2024) ............................................ 12, 17
89 Fed. Reg., 102,266 (Dec. 17, 2024) ................................................. 10
89 Fed. Reg., 102,290-2291 (Dec. 17, 2024) ................................... 10, 12

## STATEMENT OF INTEREST

Public Employees for Environmental Responsibility ("PEER") is a national nonprofit, non-partisan organization incorporated in the District of Columbia. PEER serves environmental and public health professionals, land managers, scientists, enforcement officers, and other civil servants dedicated to upholding environmental laws and values. PEER provides *pro bono* legal services to public employees who hold government agencies accountable to environmental ethics, compliance with environmental laws, and scientific integrity standards. PEER represents and defends environmental whistleblowers, investigates and exposes improper or illegal government actions, and works to improve laws and regulations impacting PEER's clients and its supporters.

PEER has direct experience with the abuses of paid administrative leave, which is the focus of this Amicus brief. It has represented several Federal employee clients who have been placed on extensive administrative leave, including one agency Managing Director for approximately three years. Now PEER represents eight Environmental Protection Agency (EPA) employees, all of whom worked in some connection with Environmental Justice (EJ), who were all placed on paid administrative leave beginning on February 7 of this year and remained in that status prior to any Reduction in Force (RIF) notices, which have

only came to them recently.[1] PEER has worked hard to get them relief in their efforts to return to active duty.[2]

Further, for several years, PEER has directly engaged in urging full agency compliance with the Administrative Leave Act of 2016 (ALA),[3] the primary statute addressed in this brief. PEER represented the plaintiffs, and was itself a co-plaintiff, in the litigation that pressed the U.S. Office of Personnel Management (OPM) to issue its Final Rule implementing that Act in December of 2024.[4] This brief analyzes the ALA and de-constructs the legal defects in a key section of that Final Rule, which has led to the Defendant Agencies' overly-broad use of administrative leave.

## SUMMARY OF ARGUMENT

The placement of thousands of Federal employees, slated for a RIF by their agencies, on extended administrative leave has directly violated the ALA. The December 17, 2024, Final Rule promulgated by OPM, which purported to

---

[1] See Bogardus, K. 2025. EPA places 168 environmental justice staffers on leave. *Climatewire*, Feb. 7. Available at: https://subscriber.politicopro.com/article/eenews/2025/02/07/epa-places-168-environmental-justice-staffers-on-leave-cw-00202978?source=email .

[2] See Reilly, S., and E. Borst. 2025. Group claims EPA bars environmental justice staff from other jobs. *Greenwire*, May 14. Available at: https://subscriber.politicopro.com/article/eenews/2025/05/14/group-claims-epa-bars-environmental-justice-staff-from-other-jobs-00347689 .

[3] 5 U.S.C. §§ 6329a, 6329b and 6329c, enacted under section 1138 of the National Defense Authorization Act for FY 2017 (Pub. L. 114–328, 130 Stat. 2000, December 23, 2016).

[4] *Public Employees for Environmental Responsibility v. Office of Personnel Management*, Case No. 1:24-cv-01918, USDC D.C. (voluntarily dismissed as moot.)

allow agencies to impose basically unlimited administrative leave, stands in gross violation of the ALA's 10 day limitation on such leave.[5] Additionally, OPM's Final Rule is not in legal effect for use by any agencies yet for purposes of complying with the ALA because they still have not taken the further steps required by the ALA to implement it.

This Court should find that the placement by the Defendant Agencies of their employees who are slated for RIFs on indeterminate administrative leave has violated the ALA. The use of such leave should continue to be enjoined by the Court via a preliminary injunction, as the Plaintiffs here seek in their Motion for Preliminary Injunction. Dkt. No. 101.

## ARGUMENT

This brief initially addresses the ruling by the United States District Court for the Northern District of California, the Honorable Susan Illston, in which she issued an Order Granting Temporary Restraining Order and Compelling Certain Discovery Production. Dkt. No. 85. In her relief, at 40, Judge Illston, *inter alia*, enjoined all the Defendant agencies from:

> (3) any further implementation of the Executive Order, the OMB/OPM Memorandum, or ARRPs by Federal Agency Defendants, including but not limited to: execution of any existing RIF notices (including final separation of employees), issuance of any further RIF notices,

---

[5] OPM. Final Rule. Administrative Leave, Investigative Leave, and Notice Leave. Federal Register 89:242, December 17, 2024, 102256-295, now codified at 5 C.F.R. § 630.1401 *et seq.*

placement of employees on administrative leave, and transfer of functions or programs between the agency defendants. This restraining order shall last fourteen days, through Friday, May 23, 2025, unless the Court finds good cause to extend it.

This brief focuses on just one relief provision in par. 3, above, the phrase that prohibits the "placement of employees on administrative leave". The pending Motion for a Preliminary Injunction seeks continuation of that relief provision, as well as rescission of administrative leave that has been imposed to date in furtherance of the Administration's illegal RIF actions. Dkt. No. 101, at 1-2. ¶¶ 1(c)(v.) and 3. This brief supports the Plaintiffs' Motion with respect to all relief sought regarding administrative leave.

## A. The Use of Administrative Leave on Federal Employees in the RIF Context

Judge Illston's Order, at 8, highlights that "placing employees on administrative leave" is an integral step in implementing the Office of Management and Budget and Office of Personnel Management RIF and Reorganization Plans (ARRPs). The Order then highlights some examples, at 8:

> After sending RIF notices to employees, agencies have sometimes placed these employees on immediate administrative leave until the termination date set by the RIF, usually sixty days after the notice. *See*, *e.g.*, Dkt. No. 37- 14 ("Decl. Fabris AFGE") ¶¶ 11-15.

Extensive other documentation is in the record of large numbers of employees sweepingly placed on immediate administrative leave in preparation for RIFs,

e.g., ECF 37-12 ¶20 (AmeriCorps); ECF 37-14 ¶11 (General Services Administration); ECF 37-21 ¶18 (Health and Human Services); and 37-16 ¶10 (Department of Labor).

Further, as indicated under Statement of Interest, *supra*, PEER represents eight EPA EJ employees who have been stuck out on involuntary administrative leave for more than three months prior to any RIF indication. EPA recently informed the more than 100 EJ staffers in that situation that they would be subject to a RIF; shortly thereafter they were denied the opportunity to apply to compete for other EPA open positions.

**B. The Agencies' Actions Have Violated the Administrative Leave Act**

**1.  Paid Administrative Leave is Strictly Limited by Law**

The ALA succinctly provides, without exception (emphasis added):

> **5 U.S. Code § 6329a**
> ……………..
> (b) Administrative Leave.—
>     (1) In general.—
> During any calendar year, an agency may place an employee in administrative leave for a period of **not more than a total of 10 work days**.

At the expiration of 10 work days, then § 6329b applies, allowing for investigative or notice leave, but only in appropriate cases:

> (b)(3)Duration of leave.--
> (A) Investigative leave.--Upon the expiration of the 10 work day period described in section 6329a(b)(1) with respect to an employee, and if an agency determines that an extended

investigation of the employee is necessary, the agency may place the employee in investigative leave for a period of not more than 30 work days.

(B) Notice leave.--Placement of an employee in notice leave shall be for a period not longer than the duration of the notice period.

Investigative and notice leave are defined under subsection § 6329b; the former applies in cases of investigation of misconduct and the latter when there has already been a formal determination to take an adverse action against an employee. (There is no indication of notice leave being applied by any Agencies here.) That ALA section tightly regulates the use of investigative leave as far as time limits, extensions of the leave, and notice requirements to the employee.

Further, agencies can employ neither investigative nor notice leave in order to bar any employee from working at their duty station unless the agency first determines they would pose a threat or their presence would otherwise jeopardize the agency's functioning. Under § 6329b(b)(2), the agency must find that the employee likely will:

(i) pose a threat to the employee or others;
(ii) result in the destruction of evidence relevant to an investigation;
(iii) result in loss of or damage to Government property; or
(iv) otherwise jeopardize legitimate Government interests.

No provision in the ALA allows a Federal civil servant to be left in "limbo" and barred from their workplace on administrative leave, without any of the jeopardy findings above, for longer than the plain 10 work day limit in §

6329a(b). Further, no statutory or regulatory provision on RIFs allows for any use of administrative leave beyond that provided for in the ALA.

### 2. The 2024 OPM Final Rule on Administrative Leave Violated the ALA

The ALA directed OPM to prescribe implementing regulations. Sections 6329a(c)(1) and 6329b(h)(1) required it to adopt regulations for paid leave within 270 days of the ALA's enactment.[6] In its Proposed Rule in 2017, OPM's interpretation of § 6329a(b), *supra*, on administrative leave simply and faithfully paraphrased the statute, providing:[7]

> **§ 630.1404 Calendar year limitation.** (a) General. Under 5 U.S.C. 6329a(b), during any calendar year, an agency may place an employee on administrative leave for no more than 10 work days.

82 Fed. Reg., 32,275 (July 13, 2017). The 10 work day maximum in both the ALA text and the Proposed Rule was unambiguous. However, when OPM issued its Final Rule on December 17, 2024, it purported to define away that 10 day limit for the vast bulk of administrative leave's use, thus severely narrowing the effect of § 6329a(b). The Final Rule text of the same key subsection now provides (second emphasis added):

> **§ 630.1404 Calendar year limitation.** (a) General. Under 5 U.S.C. 6329a(b), during any calendar year, an agency may place an

---

[6] OPM did not complete this rulemaking task, which should have been finalized in 2017, until seven years later. No additional public comment was take on the major changes in the Final Rule.
[7] OPM, Proposed Rule. Administrative Leave, Investigative Leave, Notice Leave, and Weather and Safety Leave. Federal Register 82:133, July 13, 2017, 32263-281.

employee on administrative leave for no more than 10 workdays. In this context, the term "place" refers to a management-initiated action to put an employee in administrative leave status, with or without the employee's consent, for the purpose of conducting an investigation (as defined in § 630.1502). **The 10-workday annual limit does not apply to administrative leave for other purposes**.

89 Fed. Reg., 102,290-2291 (Dec. 17, 2024).

Thus, OPM re-interpreted § 6329a(b) to mean what OPM wanted, not what Congress itself wrote, attempting to explain its choice in the Rule Preamble that the:

10-workday limitation in section 6329a of the Administrative Leave Act does not apply to general uses of administrative leave, but instead was meant to apply to management-initiated actions to "place" an employee on administrative leave, with or without the employee's consent, for the purpose of investigating an employee's conduct, performance, or other reasons prompting an investigation that could lead to an adverse personnel outcome.

89 Fed. Reg., 102,266 (Dec. 17, 2024). In radically changing its interpretation, OPM vastly liberalized the allowable use of administrative leave. Its new interpretation is that Congress somehow implied that agencies could impose unlimited administrative leave, with the sole exception of when its use is preliminary to subsequent investigative leave. That surprise re-interpretation – seven years after its Proposed Rule – twisted the unambiguous language in § 6329a(b) to the converse of Congress's intent. Federal employees were intended by Congress to be protected from unlimited, unchallengeable, administrative

leave (not just from abuses of investigative leave).[8] The Sense of Congress, at the beginning of the 2016 ALA legislation, makes that very clear (emphasis added):[9]

> (5) data show that there are too many examples of employees placed in **administrative leave** for 6 months or longer, leaving the employees without any available recourse to — (A) return to duty status; or (B) challenge the decision of the agency;

Indeed, OPM's Final Rule correctly stated Congress's intent and then proceeded to contravene it via the agency's re-interpretation (emphasis added):

> In the sense of Congress provisions in section 11388(b) of the Administrative Leave Act, Congress expressed the need for legislation to address concerns that usage of administrative leave had sometimes exceeded reasonable amounts and resulted in significant costs to the Government. Congress wanted agencies to (1) **use administrative leave sparingly and reasonably….**

---

[8] Paid administrative leave for no matter how long is not an "adverse action" that is challengeable by an employee in the Merit Systems Protection Board. 5 C.F.R. § 1201.3(a), or any other forum.

[9] See Sense of Congress when adopting the ALA, in section 1138(b) of the National Defense Authorization Act for FY 2017 (Pub. L. 114–328, 130 Stat. 2000, December 23, 2016). That carefully drawn bipartisan bill also aimed to rein in the documented excessive costs that the Federal government was paying in the way of salaries to non-working employees. See, the report of the Government Accountability Office (GAO) in 2014, for example, which found 263 employees had spent one-to-three years on paid administrative leave, at a cost to the Federal government of approximately $31 million. GAO. 2014. Federal Paid Administrative Leave: Additional Guidance Needed to Improve OPM Data, GAO-1579, available at: https://www.gao.gov/products/gao-15-79. The GAO also reported that during a five-year period from 2011-2015 the Department of Homeland Security had placed 116 employees on administrative leave for one year or more; those extended leaves had cost taxpayers about $19.8 million. GAO. 2016. Evaluation of DHS's New Policy Can Help Identify Progress toward Reducing Leave Use, GAO-16342, available at https://www.gao.gov/products/gao-16-342. See also, PEER Press Release of March 27, 2025, "More than 100,000 Federal Employees Paid Not to Work," estimating the cost of the current excessive administrative leave applied to nearly 5% of the civilian workforce is "into the billions" of dollars; available at: https://peer.org/more-than-100000-federal-employees-paid-not-to-work/.

89 Fed. Reg., 102,257 (Dec. 17, 2024) (That preamble language is reiterated in the preliminary Final Rule text, at 102,290). And (second emphasis added):

> **§ 630.1403 Principles and prohibitions.** (a) General principles. In granting administrative leave, an agency must adhere to the following general principles: …. (3) Administrative leave is appropriately used for brief or short periods of time—**usually for not more than 1 workday**.

89 Fed. Reg., at 102,290.

Yet, OPM's re-interpretation so that somehow the 10 day annual limit was only aimed at those employees upon whom agencies would later impose investigative leave is providing justification for this Administration's sweeping imposition of involuntary administrative leave on tens of thousands of civil servants government-wide for many months, with no ability to challenge it. That practice grossly violates the "principles and prohibitions," above. It also makes no sense in the statutory scheme that the use of administrative leave to completely bar employees from their workplaces would be left essentially unregulated, entirely at the agency's discretion, in view of the ALA restrictions that apply when an agency bars an employee from the workplace when it places the employee on investigative leave, which is tightly regulated as to length and notice under § 6329b(b)(2), quoted *supra*. See *K Mart Corp. v. Cartier Inc*., 486 U.S. 281, 291 (1988) (statutory language is to be construed in harmony with related provisions and the statute as a whole).

OPM's 2024 re-interpretation gave vast importance to the word "place," indicating that Congress:

> meant [§ 6329a(b)] to apply to management-initiated actions to "place" an employee on administrative leave, with or without the employee's consent, for the purpose of investigating an employee's conduct.

89 Fed. Reg., 102,266 (Dec. 17, 2024).

The arbitrariness and inconsistency of OPM's use of administrative leave in practice is illustrated by the several directives issued by the Trump Administration in 2025 that also use the term "place" with respect to administrative leave without limiting its use to "for the purpose of investigating an employee's conduct". E.g., OPM Memorandum of Jan. 20, 2025, to "Heads and Acting Heads of Departments and Agencies," Guidance on Probationary Periods, Administrative Leave and Details,[10] at 2 ("**Placing** an employee on paid administrative leave may be an appropriate action where the agency component in which the employee works is being eliminated or restructured, or where the agency weighs changes to the individual's role at the agency as part of a workforce realignment."); and Memorandum of February 4, 2025, to "Heads and Acting Heads of Departments and Agencies," Legality of Deferred Resignation

---

[10] Available at: https://www.opm.gov/media/yh3bv2fs/guidance-on-probationary-periods-administrative-leave-and-details-1-20-2025-final.pdf .

Program,[11] at 2 ("May an Employee Be **Placed** on Administrative Leave During the Deferred Resignation Period? Yes.")(both emphases added).

Neither of those official OPM guidances give "place" the same limiting sense that OPM somehow determined that Congress meant in 2016 in § 6329a(b). No other OPM document directs that placing an employee on administrative leave means only when the purpose is to conduct a subsequent investigation of that person. Civil servants nationwide are being "placed" on administrative leave - for planned RIFs, probationary employees, and in a slew of other contexts - under OPM's Final Rule for much longer than 10 work days and they are not being investigated. The inconsistent interpretations employed by OPM of key ALA terms clearly indicate arbitrary and capricious action. An "[u]nexplained inconsistency" in agency policy is "a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016)(citations omitted).

Going back to the Trump Administration's OPM Memorandum of Jan. 20, 2025, to "Heads and Acting Heads of Departments and Agencies," Guidance on Probationary Periods, Administrative Leave and Details, *supra*, at p. 2, it makes clear that the current allowance of unlimited administrative leave is based on

---

[11] Available at: https://chcoc.gov/sites/default/files/OPM%20Memo%20Legality%20of%20Deferred%20Resignation%20Program%202-4-2025%20FINAL.pdf .

OPM's Final Rule and not on the ALA text or on pre-existing leave practice. The Memorandum repeatedly cites the Final Rule and not the ALA, while acknowledging, at n. 8, that the Rule is not yet in effect for agency compliance purposes (see next argument section below). This Court cannot allow the Agencies, based on OPM's newly-conjured, inconsistently-applied, semantically-strained, and not-yet-in-effect interpretation of "place," to give a dramatically more liberal meaning to administrative leave than what Congress wrote in the ALA text in 2016. This Court should exercise independent judgment in interpreting the ALA and deciding whether it has been properly applied or whether OPM has implied nonexistent ambiguity into § 6329a(b). *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024); *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J., concurring) (The Supreme Court has "abandoned that power to invent 'implications' in the statutory field.")

The wanton use of administrative leave by the Administration to immediately and indefinitely bar civil servants, typically with a few hours' notice or less, from their workplaces and colleagues in preparation for the ongoing RIFs has provided plain evidence that OPM's interpretation of 5 U.S. Code § 6329a(b) in its Final Rule is wrong. As a result of its re-interpretation, administrative leave is not being used "sparingly and reasonably" as Congress directed. The "principle" stated in OPM's own Final Rule that such leave is for "brief or short

periods of time—usually for not more than 1 workday" now appears to be a joke. It is being imposed wholesale with no limits.

A canon of statutory interpretation is to not add language Congress did not insert. *Lamie v. United States Trustee*, 540 U.S. 526, 537 (2004) ("there is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted"); *Magwood v. Patterson*, 561 U.S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Congress' intent."). The OPM's Final Rule plainly violated that canon by re-writing the language of § 6329a(b) – and contrary to Congress's intent.

Here, OPM's interpretation in its Final Rule Preamble is not entitled to deference. Rather, Federal courts must "fulfill their obligations under the [Administrative Procedure Act] to independently identify and respect [any] delegations of authority, police the outer statutory boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA." *Loper Bright Enters.*, 603 U.S. at 403-04. Courts are empowered to "set aside any [agency] action inconsistent with the law as they interpret it." *Id.,* at 391-92.

Under *Loper,* this Court should continue to enjoin all agency actions placing employees on administrative leave in the pre-RIF context for more than 10 work days in a calendar year, in violation of the plain language of the ALA.

Unless an agency has formally placed a particular individual civil servant on investigative or notice leave and barred him or her from their workplace under the jeopardy criteria in § 6329b(b), for which there is no evidence here, such civil servants who are now on administrative leave must be allowed to return to active duty unless or until a proposed adverse action against them, such as a proper RIF or an individual removal for cause, is completed. The Defendant Agencies here have improperly used the mere planning for a RIF as a pretext for imposing indefinite administrative leave.

### 3.  The OPM Final Rule on Administrative Leave Does Not Apply Yet.

Assuming, *arguendo,* that this Court somehow does not find legal defects in OPM's re-interpretation of § 6329a(b) on the time limits of administrative leave in its Final Rule, *supra*, the Rule itself directs that OPM's re-interpretation should not actually be relied on by any agency yet for ALA compliance purposes. This point rests on ALA §§ 6329a(c)(2) and 6329b(h)(2), which require each separate agency to adopt "internal policies" to comply with the requirements of the Act within 270 days after issuance of the OPM Final Rule. Thus, OPM reiterated that while "[t]he effective date for these regulations addressing administrative leave (subpart N) and investigative and notice leave (subpart O) is 30 days after the date of publication," nonetheless "the compliance date is set as 270 days after the date of publication." 89 Fed. Reg. at 102,257; *see* OPM

Memorandum of Jan. 20, 2025, to "Heads and Acting Heads of Departments and Agencies," Guidance on Probationary Periods, Administrative Leave and Details, *supra,* footnote 8:

> OPM thus believes that agencies are not required to comply with the administrative leave rule and new regulations until September 13, 2025, the deadline for agencies to issue their own implementing regulations. OPM requests that agencies not issue any agency-specific rules until such rules have been reviewed and approved by OPM.

In other words, actual compliance by the Federal agencies with the OPM Final Rule will not be in effect until up to 270 days after December 17, 2024. Thus, the agencies must "issue their own implementing regulations" by September 13, 2025. To date, no Federal agencies have proposed or adopted such regulations. However, until they do, all agencies must still implement administrative leave in compliance with the statutory 10 work day limit written into the ALA itself. In fact, OPM's Final Rule Preamble emphasizes that:

> Agencies are responsible for compliance with time limits provided for in the Act, ….

89 Fed. Reg. at 102257.

In sum, the Defendant Agencies cannot implement OPM's re-interpretation of the ALA's 10 work day maximum in its Final Rule until they issue their independent regulations under §§ 6329a(c)(2) and 6329b(h)(2). Nevertheless, this Administration has allowed them to lawlessly impose

administrative leave in the pre-RIF context across the Federal government beyond the strict limit in § 6329a(b) with no current authority to do so.

## CONCLUSION

Congress enacted the ALA in 2016 in order that Federal employees would not continue to be place on unlimited, unchallengeable, paid administrative leave, at great expense to taxpayers. Yet, that is exactly what the current Administration has imposed on thousands of civil servants in the pre-RIF context based on OPM's defective re-interpretation of the ALA. Amicus respectfully requests that this Court grant Plaintiffs' Motion for Preliminary Injunction and continue to maintain the relief in its TRO enjoining the Defendant Agencies from sweepingly imposing administrative leave in the future, as well as mandating the recission of past Agency administrative leave orders in furtherance of their illegal RIF actions.


Dated: May 19, 2025


Respectfully submitted,

/s/ Peter T. Jenkins
Peter T. Jenkins (appearance *pro hac vice*)
Paula Dinerstein
PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY
962 Wayne Ave, Suite 610

Silver Spring, MD 20910
Tel: (202) 265-4189
pjenkins@peer.org; pdinerstein@peer.org

Michael R. Lozeau (SBN 142893)
LOZEAU DRURY LLP
1939 Harrison Street, Suite 150
Oakland, California 94612
Tel: (510) 836-4200
michael@lozeaudrury.com

*Counsel for Amicus Curiae*