Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle E. Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[*Additional counsel and affiliations identified on signature page*]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

1.    Defendants cannot separate RIFs from the challenged reorganization of the
       government. .................................................................................................................1

2.    Defendants cannot absolve OMB, OPM, and DOGE. ..............................................3

3.    Defendants overstate agencies' authority to RIF .....................................................5

4.    Defendants concede they are not relying on facts or evidence. ...............................7

5.    The scope of the proposed preliminary injunction is appropriate. .........................8

CONCLUSION ...................................................................................................................11

1

**TABLE OF AUTHORITIES**

2
Page(s)

3
**Federal Cases**

4
*Aids Vaccine Advoc. Coal. v. United States Dep't of State*
     2025 WL 752378 (D.D.C. Mar. 10, 2025) ............................................... 8

5
*Allen v. Milligan*
6
     599 U.S. 1 (2023) .................................................................................... 9

7
*Califano v. Yamasaki*
     442 U.S. 682 (1979) ................................................................................ 8
8

9
*Chrysler Corp. v. Brown*
     441 U.S. 281 (1979) ................................................................................ 5

10
*City & County of San Francisco v. Trump*
11
     897 F.3d 1225 (9th Cir. 2018) ................................................................ 1

12
*Cnty. of Santa Clara v. Trump*
     250 F.Supp.3d 497 (N.D. Cal. 2017) ...................................................... 8
13

14
*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*
     603 U.S. 799 (2024) ................................................................................ 8

15
*Dep't of Homeland Sec. v. Regents of the Univ. of California*
16
     591 U.S. 1 (2020) .................................................................................... 9

17
*Nat'l Council of Nonprofits v. OMB*
     2025 WL 368852 (D.D.C. Feb. 3, 2025) ................................................ 8
18

19
*Nat'l Council of Nonprofits v. OMB*
     2025 WL 597959 (D.D.C. Feb. 25, 2025) .............................................. 3

20
*New York v. Trump*
21
     133 F.4th 51 (1st Cir. 2025) ................................................................... 3

22
*New York v. Trump*
     2025 WL 357368 (D.R.I. Jan. 31, 2025) ................................................ 8
23

24
*Nixon v. Fitzgerald*
     457 U.S. 731 (1982) ............................................................................ 6, 7

25
*PFLAG, Inc. v. Trump*
26
     2025 WL 685124 (D. Md. Mar. 4, 2025) ................................................ 8

27
*Widakuswara v. Lake*
     2025 WL 1166400 (D.D.C. Apr. 22, 2025) ............................................ 8
28

**U.S. Constitution**

U.S. Const. Article 1, § 9..................................................................................................8

U.S. Const. Article II, § 3..................................................................................................8

**Federal Statutes**

5 U.S.C.
 § 301.............................................................................................................5, 6
 § 1103...............................................................................................................4
 § 1105...............................................................................................................4
 § 2301...............................................................................................................6
 § 3101.............................................................................................................5, 6
 §§ 3501-04.........................................................................................................5
 § 3502.........................................................................................................4, 5, 6

10 U.S.C.
 § 8012...............................................................................................................6
 § 9013...............................................................................................................6

31 U.S.C.
 §§ 501-507.........................................................................................................4
 § 503.................................................................................................................4
 § 1105...............................................................................................................8

**Other Authorities**

5 C.F.R. pt. 351................................................................................................................5

5 C.F.R. § 351.201............................................................................................................4

Exec. Order No. 12,839, § 1, 58 Fed. Reg. 8515 (Feb. 10, 1993)........................................6

Plaintiffs submit this brief reply to address arguments made by Defendants in opposition to Plaintiffs' Motion for Preliminary Injunction.

**1.    Defendants cannot separate RIFs from the challenged reorganization of the government.**

Defendants insist that this case is only about the implementation of RIFs, which, they argue, have nothing to do with reorganization of the government. *E.g*, Opp. at 1 ("the essence of Plaintiffs' Complaint…"), 2 ("a RIF is not a reorganization…"), 16 (same). This defies not only the plain language of the Executive Order ("EO") and implementing OMB/OPM Memorandum ("Memo"), but also the record evidence. Indeed, the *sole purpose* of the RIFs is to effectuate the President's "transformation" of federal agencies according to his vision of radical downsizing, including eliminating *all* discretionary functions and the offices and programs he decides to eliminate. ECF 37-1 App. A (EO, §§3, 4); App. B (ordering agencies to create ARRPs).[1]

In furtherance of this point, Defendants attempt to separate the President's orders regarding RIFs and reorganization in different "subsections," and downplay the EO as "simply direct[ing] agencies to prepare a report" with respect to reorganization. Opp. at 15. But Defendants eventually concede that agencies are developing and implementing these ARRPs (including the RIFs) only *because* of the President's order to transform the government. Opp. at 14. Defendants also do not deny that the record is replete with examples of agencies cutting offices and programs that the President deemed should be eliminated, and engaging in substantial internal and external reorganizations that reflect large-scale RIFs and eliminate the positions and functions that the Administration believes are not required by statute or considered "essential" during an agency shutdown. Indeed, Defendants now concede that they are not contesting any facts. Opp. at 3.

Even if there could be any doubt regarding what the President has ordered, the OMB/OPM Memo puts that to rest:  all agencies government-wide are instructed that the President has "*directed* them to 'eliminat[e] waste, bloat, and insularity.'" ECF 37-1, App. B at 1. All agencies are therefore instructed to create a combined ARRP on an incredibly truncated timeline, which includes: "A

---

[1] Defendants ignore Ninth Circuit law in contending that the EO's purpose is irrelevant. Opp. at 18; *see City & County of San Francisco v. Trump*, 897 F.3d 1225, 1238 (9th Cir. 2018) ("As is true of interpretation of statutes, the interpretation of an Executive Order begins with its text, which must be construed consistently with the Order's object and policy." (internal quotations omitted)).

significant reduction in the number of full-time equivalent (FTE) positions by eliminating positions that are not required." *Id*. at 2.  OMB and OPM further instruct:

> "Pursuant to the President's direction, agencies should focus on the *maximum elimination of functions that are not statutorily mandated* while driving the highest-quality, most efficient delivery of their statutorily-required functions" *and*

> "Agencies should also seek to consolidate areas of the agency organization chart that are duplicative; consolidate management layers where unnecessary layers exist; seek reductions in components and positions that are non-critical…" *and*

> "Agency heads should collaborate with their Department of Government Efficiency ("DOGE") team leads within the agency in developing competitive areas *for ARRPs*. [T]he agency should specifically identify competitive areas that include positions not typically designated as essential during a lapse in appropriations. When making this determination, agencies should refer to the functions that are excepted from the Antideficiency Act (ADA) in the Agency Contingency Plans submitted to OMB in 2019 as the starting point for making this determination."

*Id*. (emphases added).  Then, once the initial substantial RIFs are accomplished, the agencies are further ordered to rearrange the pieces that are left, in the Phase 2 plans (which also include "subsequent large-scale RIFs").  *Id*. at 4-6.

Defendants also do not contest the record evidence showing that OMB and OPM are enforcing these requirements.   For example, they do not dispute that the National Labor Relations Board ("NLRB")'s mid-March ARRP, which stated that NLRB staff were necessary to perform the agency's statutorily-mandated functions and therefore should not be RIF'd, was rejected by OMB and OPM, which informed the agency it did not "meet expectations" and directed the NLRB to cut staff.  ECF 36, Ex. 1.  Nor do they dispute that the same occurred to the National Science Foundation ("NSF") which was similarly told by OMB/OPM to go back to the drawing board and impose large RIFs, and NSF complied by submitting a revised ARRP and issuing the RIFs required by OMB, OPM, and DOGE.  ECF 37-32 ¶¶8-14; ECF 96-1 ¶¶15-20.[2]

---

[2] While Plaintiffs lack access to OMB/OPM approvals and disapprovals and DOGE orders, Plaintiffs have uncovered and submitted evidence showing OMB/OPM is responding in writing to at least some agencies.  ECF 36 Ex. 1 (NLRB); *see also* ECF 37-12 ¶24 (OMB rejected AmeriCorps ARRP for not including RIF).  For example, OMB/OPM directed non-defendant agency National Endowment for the Humanities to modify its proposal dramatically to cut at least 70% of its staff and to start implementing the RIFs immediately.  ECF 96-1 ¶¶6-13, Ex. 1 at 4-6 & Atts. D, I.  Defendants have provided no counter-evidence.

The undisputed record shows that the President has ordered all agencies to reorganize *by* cutting the functions and positions that OMB/OPM determine are not mandated by statute, *regardless* of the reason Congress provided agencies with that discretion or appropriated funds for those programs and functions. And that is exactly what agencies are doing, on an unprecedented scale. *See* ECF 37-1, App A, B; ECF 37-1 at 12-29; ECF 70 at 1-35; ECF 101-1 at 11-13.[3] While agencies may have some leeway in their proposals and recommendations to OMB and OPM (for OMB and OPM decision-making) regarding how and when to implement the actions that serve the purpose of reorganizing, the actions result from these unlawful order to reorganize.[4]

It matters not, as Defendants also contend here, that OPM's regulations discuss RIFs for the purpose of reorganization (Opp. at 16), because in this case the reorganization that the RIFs are effectuating *is not authorized by law*. When a President wishes to implement such a plan to transform the government, the order of action required by the Constitution is: propose a legislative plan to Congress, get Congressional approval, and *then* RIF, if Congress has approved the reductions. By proceeding in the opposite order, without congressional authorization, the President violates the Constitution, and his implementing agencies violate the law, including the APA.

### 2. Defendants cannot absolve OMB, OPM, and DOGE.

Defendants attempt to shield OMB, OPM, and DOGE by claiming that the Federal Agency Defendants are, in fact, making all the decisions here (notwithstanding having conceded that they are not relying on any facts, (Opp. at 3). But besides the mandatory language discussed above, and the requirement of OPM/OMB approval, Defendants ignore language limiting Agency Heads' discretion to grant exceptions to the requirements of the EO to a single basis (for "any position they deem necessary to meet national security, homeland security, or public safety responsibilities") while

---

[3] This Court correctly concluded in its TRO that the record includes many examples of Defendants cutting statutorily authorized programs as well. ECF 85 at 2-4.

[4] *See, e.g., New York v. Trump*, 133 F.4th 51, 68 (1st Cir. 2025) (affirming conclusion that "any 'suggest[ion] that the challenged federal funding freezes were purely the result of independent agency decisions' was 'disingenuous'"); *Nat'l Council of Nonprofits v. OMB*, 2025 WL 597959 at *7 (D.D.C. Feb. 25, 2025) (rejecting contention that "countless federal agencies ... suddenly began exercising their own discretion to suspend funding across the board at the exact same time" because it requires "unfathomable" "coincidental assumptions" and "contradicts the record").

giving OPM broad authority to "grant exemptions from this order where those exemptions are otherwise necessary and shall assist in promoting workforce reduction." ECF 37-1, App. A (§4).

Defendants' hypothesizing that agencies *could* implement these actions without OPM/OMB approval entirely ignores the Memo's requirement of approval for *all* ARRPs. *See* ECF 37-1, App. B. Defendants also ignore the language expressly stating that agencies *cannot* implement without this particular OMB/OPM certification: "agencies or components that provide direct services to citizens (such as Social Security, Medicare, and veterans' health care) *shall not implement any proposed ARRPs* until OMB and OPM certify that the plans will have a positive effect on the delivery of such services." ECF 37-1, App. B at 6 (emphasis added).

Defendants do not rehabilitate OMB and OPM on the law either. It is not "comfortably within OPM's and OMB's statutory authorities" (Opp. at 19) for either agency to require other agencies to engage in massive layoffs in service of a government-wide reorganization that includes the "maximum elimination of functions" that OMB and OPM determined are not "required," pursuant to the President's EO and the Memo. ECF 37-1, App. A, B at 1-2. None of the statutes cited by Defendants that delegate rule-making functions to OPM authorize OPM decision-making authority regarding the fact, scale, or timing of actions reorganizing agencies or imposing RIFs. 5 U.S.C. §§1103, 1105, 3502. As OPM's own implementing regulations state: not OPM, but "*Each agency* is responsible for determining the categories within which positions are required, where they are to be located, and when they are to be filled, abolished, or vacated." 5 C.F.R. § 351.201. Nor do OMB's statutorily authorized functions include wielding final decision-making authority over other agencies' RIFs or reorganization plans. *See* 31 U.S.C. §§501-507; *see also* 5 U.S.C. §3502 (RIF retention order statute, identifying no role for OMB). The Government cites only 31 U.S.C. §503, which authorizes OMB to "establish general management policies for executive agencies" and to "[f]acilitate actions by the Congress and the executive branch to improve the management of Federal Government operations." 31 U.S.C. §503(b) and (b)(4). But the plain language of these provisions does not extend to approving or rejecting the content or timing of RIF or reorganization plans.

The only remaining claimed source of authority for OMB and OPM is the EO itself. But the President can only execute the laws, not make them. And Congress plainly gave basic employment

authority to the federal agencies, not OPM or OMB, 5 U.S.C. §3101, and the President has no

authority to *transfer* that delegated authority between agencies without congressional approval. And,

because the EO's directives are unlawful, OMB and OPM's Memorandum and any ARRP approvals

premised thereon are similarly without authority.

### 3. Defendants overstate agencies' authority to RIF.

Even if they were not acting pursuant to orders by the President and his implementing

agencies (which they are), agencies would abuse their discretion and act arbitrarily and capriciously

by: eliminating *every* discretionary function at the same time regardless of need or purpose,

eliminating the offices and programs the President dictates, and eliminating all positions not

considered "essential" during government shut-downs. Defendants erroneously contend that

Plaintiffs do not identify any independent basis to conclude that the agencies violate any statute even

if they were taking these actions on their own: across the board, agencies are violating the APA by

engaging in these reorganizations according to the President's required parameters.[5]

Defendants also misconstrue the relevant statutes to claim that agencies have unfettered

discretion to RIF employees, for any purpose at all. Congress has generally authorized agencies to

"employ such number of employees" that "Congress may appropriate for from year to year," 5 U.S.C.

§3101, and to "prescribe regulations for the government of his department, the conduct of its

employees, the distribution and performance of its business, and the custody, use, and preservation of

its records, papers, and property." *Id.* §301.[6] And while Congress has enacted a "Retention

Preference" that requires agencies to use a particular order of retention *if* conducting a RIF, 5 U.S.C.

§§3501-04, that retention order statute (and implementing regulations) *do not* independently provide

the authority to engage in a RIF, nor discuss the scope of that authority. 5 U.S.C. §3502; 5 C.F.R. Pt.

351. All of the historical statutes invoked by Defendants (Opp. at 1, "since the nineteenth

---

[5] Whether agencies *are also* violating any of their organic statutes or appropriations requirements is an additional issue, but Plaintiffs need not demonstrate each and every action in these ARRPs that violates some additional law, to demonstrate that the President and these agencies have violated the Constitution and the APA.

[6] Section 301 is known as the "housekeeping" statute and "authoriz[es] what the APA terms 'rules of agency organization procedure or practice' as opposed to 'substantive rules.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979).

century…") also address retention preference, not the source of authority to conduct a RIF.  *E.g.*, Ch. 287, §3, 19 Stat. 143, 169 (Aug. 15, 1876); *see also* Veterans' Preference Act of 1944, Pub. L. No. 78-359, §12, 58 Stat. 390 (predecessor of the modern 5 U.S.C. §3502).

The authority to conduct a RIF, like the general "housekeeping" and employment authority delegated to agencies by Congress, is best understood as attendant to federal agencies' authority to establish positions to carry out functions Congress has assigned them and to observe and respect appropriations.  *E.g.*, 5 U.S.C. §301; §3101.  Thus, historically, prior Administrations have addressed workforce reduction as part of the budget dialogue with *Congress*, and have *not* unilaterally ordered government-wide RIFs, as the Government inaccurately asserts here.  Opp. at 14.  Again, President Clinton did not order a RIF.  Exec. Order No. 12,839, §1, 58 Fed. Reg. 8515 (Feb. 10, 1993).[7] President Clinton obtained *congressional authorization* for his buyout plans.  Federal Workforce Restructuring Act of 1994, Pub. L. 103-226, 108 Stat. 111 (1994); *see* Exec. Order No. 12,839, 58 Fed. Reg. 8515 (Feb. 10, 1993).  When Congress has wanted to authorize the executive branch to reduce the federal workforce, it has done so by legislation.  *See, e.g.*, Workforce Restructuring Act of 1994, 108 Stat. 116 (directing President to meet targets for reduction of federal civilian workforce); Defense Authorization Amendments and Base Closure and Realignment Act, 102 Stat. 2623, 2627 (1988) (authorizing several rounds of closures of military installations that employed military and civilian personnel), as amended by 104 Stat. 1485, 1808-14 (1990), and by 108 Stat. 2626 (1994), and by 115 Stat. 1342 (2004); Federal Employees' Pay Act of 1945, Pub. L. 79-106, § 607(b), 59 Stat. 295 (granting budget director authority to set agency personnel ceilings and order reductions in staffing), *repealed* 64 Stat. 843 (1950); *see also, generally*, 5 U.S.C. §2301 (merit system principles constrain removal of civil service employees).

Finally, Defendants misconstrue *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), which involved the President's authority with respect to *military departments* under Title 10 of the U.S. Code.  *Id.* (citing the former 10 U.S.C. § 8012(b), now codified at 10 U.S.C. § 9013(g)); *see* Opp. at 13, 15.

---

[7] *See also* House Rep. 103-386, available at 1994 U.S.C.C.A.N. 49, 52 (Nov. 19, 1993) ("The [OMB] bulletin specified that neither it nor the Executive Order [No. 12839] authorized special early out programs or *required agencies to undergo reductions-in-force*.") (emphasis added).

The President's constitutional authority over military departments as Commander in Chief, and how that impacts statutory authority over those departments, is not at issue in this case. The *Nixon* Court also cautioned, even as to the President's authority with respect to the military: "This is not to say that, in a given case, it would not be appropriate to raise the question whether an official—even a President—had acted within the scope of the official's constitutional and statutory duties." *Id*. at 761 n.4. That is the question here—whether the President acted ultra vires with respect to non-military agencies—and *Nixon* does not remotely answer it.

**4. Defendants concede they are not relying on facts or evidence.**

Defendants state they are relying on no facts to support their opposition: "Defendants did not make any factual representations" in opposition to Plaintiffs' Motion for Temporary Restraining Order ("TRO"), and "[w]e similarly do not make or rely on any factual representations here," Opp. at 1. However, Defendants' brief is actually rife with factual assertions. The following statements of fact are not supported by any evidence, as Defendants have expressly conceded:

- "ARRPs are always subject to change and agencies are not bound to follow all of the recommendations, strategies and proposals ARRPs contain" (Opp. at 14).

- "RIFS, like analogous layoffs in the private sector, are often large-scale by their nature" (Opp. at 16);

- "A RIF is not a reorganization" (Opp. at 2);

- "Of course, if a particular agency's governing statutes require such components, the agency would presumably conclude that it was required to maintain those components" (Opp. at 18) (emphasis removed);

- "[A]ny harm to employees associated with RIFs themselves are not irreparable" (Opp. at 20);

- "Such orders prevent the implementation of agency RIFs pursuant to the Executive Order and Memorandum and [sic] *seriously hampering agencies' control over their own administration*." (Opp. at 21) (emphasis added);

- "[I]t follows that an order freezing much larger layoffs unquestionably inflicts substantial and irreparable injury on the government as an employer and steward of public funds" (Opp. at 21); and

- "[T]he inevitable consequence of Plaintiffs' requested injunction… is to compel federal agencies to keep large numbers of employees on the payroll without necessity, at

1

2          unrecoverable taxpayer expense, thereby frustrating the government's efforts to impose
           budgetary discipline and build a more efficient workforce." (Opp. at 21).

3          Defendants therefore concede that they are not relying on facts or evidence to support their

4   assertions of purported harm to the government's budget.  They also greatly overreach.  *Congress*,

5   not the President, sets the budget for the federal agencies, and it is for *Congress*, not the President, to

6   impose "budgetary discipline."  U.S. Const. art. 1, §9; *see also, e.g.,* 31 U.S.C. §1105(a) (requiring

7   the President to submit his *proposal* for federal budget to Congress no later than "on or after the first

8   Monday in January but not later than the first Monday in February of each year").  The President is

9   the steward of the laws that Congress enacts; he does not establish or alter those laws, and he does

10  not unilaterally determine the budget for the federal agencies.  *See* U.S. Const. art. II, §3.[8]  To the

11  extent that Defendants' assertions of "harm" effectively admit that the purpose of the President's EO

12  is to usurp congressional budgetary authority by slashing spending (and particularly spending on the

13  federal civil service)—the President simply has no authority to do that, for all the reasons previously

14  explained.

15          **5. The scope of the proposed preliminary injunction is appropriate.**

16          The scope of the unlawful action challenged in this litigation extends to the ARRPs created

17  for the *sole purpose* of effectuating the President, OMB, and OPM's unlawful orders, and being

18  implemented now, to effectuate those orders.  Defendants argue that relief should be limited to the

19  named parties, Opp. at 22, but the Supreme Court has long recognized that injunctions may properly

20

21  _____

        [8] *Cnty. of Santa Clara v. Trump*, 250 F.Supp.3d 497, 531 (N.D. Cal. 2017) ("Where Congress has
22  failed to give the President discretion in allocating funds, the President has no constitutional authority
    to withhold such funds and violates his obligation to faithfully execute the laws duly enacted by
23  Congress if he does so."); *see also Widakuswara v. Lake*, 2025 WL 1166400, at *15 (D.D.C. Apr. 22,
    2025) ("defendants' unwillingness to expend funds in accordance with the congressional
24  appropriations laws is a direct affront to the power of the legislative branch"); *Aids Vaccine Advoc.
    Coal. v. United States Dep't of State*, 2025 WL 752378, at *15 (D.D.C. Mar. 10, 2025) (President
25  lacks authority "to rescind or defer the funds Congress has appropriated); *PFLAG, Inc. v. Trump*,
    2025 WL 685124, at *19 (D. Md. Mar. 4, 2025) (President may not direct agencies to withhold
26  congressionally appropriated funds "in order to further an administrative policy"); *Nat'l Council of
    Nonprofits v. OMB*, 2025 WL 368852, at *12 (D.D.C. Feb. 3, 2025) (OMB may not "interfer[e] with
27  Congress's appropriation of federal funds); *New York v. Trump*, 2025 WL 357368, at *2 (D.R.I. Jan.
    31, 2025) ("The Executive Branch has a duty to align federal spending and action with the will of the
28  people as expressed through congressional appropriations, not through 'Presidential priorities.'").

1  benefit nonparties when "necessary to redress the [harm to the] complaining parties." *Califano v.*

2  *Yamasaki*, 442 U.S. 682, 702 (1979); *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv.*

3  *Sys.*, 603 U.S. 799, 830-31 (2024) (Kavanaugh, J., concurring) ("[T]his Court has affirmed countless

4  decisions that vacated agency actions … rather than merely providing injunctive relief that enjoined

5  enforcement of the rules against the specific plaintiffs." (citations omitted)) (collecting cases).  This

6  is appropriate when there is no other workable way to provide complete relief, because the harm

7  cannot be selectively blocked only as to the named plaintiffs.  *See, e.g.*, *Allen v. Milligan*, 599 U.S. 1,

8  17 (2023) (affirming grant of preliminary injunction of Alabama's redistricting plan in racial

9  gerrymandering case); *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 9

10  (2020) (holding that agency rescission of a national immigration program "must be vacated").

11        As this Court previously correctly found, it would be "impracticable and unworkable" to

12  attempt to grant piecemeal relief that enjoins Defendants' unlawful reorganization of entire agencies

13  only to the extent that it affects Plaintiffs, but not otherwise.  ECF 85 at 39.  Plaintiffs demonstrated

14  actual and imminent harm to Plaintiffs and their millions of members across the country.  *See* ECF

15  37-1 at 13-29.[9]  As explained above, the President's orders are being implemented through ARRPs

16  that include eliminating entire offices, programs, and functions that the President decides to cut, and

17  to the "maximum extent" possible eliminating functions deemed non-essential for statutory mandates

18  (as determined by the President, OMB, and OPM), and *then* those decisions are being implemented

19  by RIFing federal employees.  Those impacted by the resulting RIFs include hundreds of thousands

20  of Plaintiffs' federal employee union members.  Rescinding individual union members' RIF notices

21  does little if there is no office or position to return to as the result of Defendants' reorganization.

22        Nor can injuries to Plaintiffs and their members due to the disruption and harm to government

23  services be redressed by piecemeal recission either.  For instance, the Social Security

24  Administration's agency-wide RIFs will drastically increase processing and assistance times and

25  impede or delay the provision of benefits nationwide, including to nonprofit defendant Alliance for

26

27        [9] *See also* ECF 37-39 ¶2 (Alliance for Retired Americans); ECF 37-26 ¶4 (SEIU); ECF 41-5 ¶3
(AFSCME); ECF 37-23 ¶2 (AFGE); ECF 101-8 ¶3 (NRDC); ECF 37-44 ¶5 (Common Defense); ECF
28  37-45 ¶5 (AGU); ECF 37-43 ¶2 (Main Street Alliance); ECF 37-36 ¶2 (American Public Health
Association); ECF 37-37 ¶1 (NOFA); ECF 37-41 ¶3 (CPANP); ECF 37-40 ¶4 (WWP).

1    Retired Americans' 4.4 million members.  ECF 37-1 at 26; ECF 37-39 at 1.  The reduction of Small

2    Business Administration ("SBA") staff by almost half will cause significant delays to loans, disaster

3    loan guarantees, and other services SBA provides to small businesses, harming nonprofit defendant

4    Main Street Alliance's 30,000 members nationwide.  ECF 37-1 at 25; ECF 37-43 at 1.  The expected

5    termination of 80,000 positions at Department of Veterans Affairs will severely hinder its ability to

6    provide health care, help veterans access other benefits, and process claims, harming nonprofit

7    Common Defense and its 40,000 veteran members (and their families) nationwide.  ECF 37-1 at 28-

8    29; ECF 37-44 ¶¶7-22; *see also* ECF 37-38 ¶¶2-19 (VoteVets has 2 million supporters nationwide);

9    ECF 37-5 ¶21.

10          The NSF's 50% staffing cuts will have devasting effects on scientific research and

11    technology, including on the 29,000 scientist members of nonprofit American Geophysical Union

12    ("AGU") in the United States.  ECF 37-1 at 24; ECF 37-45 ¶¶5, 21-26.  The National Oceanic and

13    Atmospheric Administration's ("NOAA") planned nationwide cuts will compromise public safety in

14    cities and counties nationwide that rely on NOAA's National Weather Service for real-time weather

15    information, data, and expertise.  ECF 37-1 at 16.  Interior's nationwide reorganization and

16    impending RIFs in service of that reorganization will undermine conservation, wildlife protection,

17    and public land management nationwide, including jeopardizing national parks and national wildlife

18    refuges, to the detriment of WWP's 14,000 members, Coalition to Protect America's National Parks'

19    4000 members, and local government Plaintiffs.  ECF 37-1 at 22-23; ECF 37-40 ¶¶4, 6-8, 10-22, 39.

20    These types of nationwide and indivisible harms are shown for every federal agency defendant

21    named in the preliminary injunction motion.  *See* ECF 37-1 at 12-29.

22          Defendants have presented no contrary evidence disputing Plaintiffs' showing of harm to

23    Plaintiffs across the entire country.  And they do not deny that these widespread cuts are imminent.

24    *See, e.g.*, Defs. App. for Stay, U.S. Supreme Court No. 24A1106 (May 16, 2025) at 29 ("[A]bout 40

25    RIFs in 17 agencies were in progress and are currently enjoined by the TRO.").  Contrary to

26    Defendants' assertion that "it is up to the government to determine whether complying with a

27    properly limited inunction is sufficiently unworkable," Opp. at 22, it is the province of this Court to

28    decide the appropriate scope of relief to remedy the Executive Branch's extensive unlawful actions.

2. Defendants also mis-portray Plaintiffs' requested relief as seeking to unwind the clock to a government-wide "state of affairs" as it "existed on February 10." Opp. at 23-24. Plaintiffs do no such thing. The record shows agencies began implementing the President's orders in roughly late March. *See, e.g.*, ECF 37-17 ¶¶7-9 (HHS March 27 RIF). Moreover, Defendants are well aware of the specific, concrete actions that each agency has taken to implement the President's EO, which are identified in the plans and timelines that agencies submitted to OMB/OPM, and which are well within this Court's ability to address to maintain the status quo. Contrary to Defendants' professed "confusion," the proposed PI does not preclude agencies from "planning." Opp at 21-22. Agencies may plan, including planning to request legislative approval. What Plaintiffs seek is to preclude them from *implementing* unlawful plans. And Plaintiffs have proposed a reasonable process by which any such confusion could be addressed by meeting and conferring to formulate a specific and concrete plan to implement any preliminary injunction. Alternatively, the Court could order Defendants to identify each action they have taken to implement or comply with the EO, Memo, and ARRPs, and order them to cease implementing those specified actions.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court grant Plaintiffs' Motion and enter the accompanying proposed preliminary injunction.

DATED: May 20, 2025

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Corinne Johnson
Alice X. Wang
Robin S. Tholin
Aaron Schaffer-Neitz
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
Fax: (415) 362-8064
sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com

By: */s/ Danielle Leonard*

*Attorneys for All Union and Non-Profit Organization Plaintiffs*

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org

By: */s/ Elena Goldstein*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

Jules Torti (pro hac vice)
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice app. forthcoming)
Spencer W. Klein (pro hac vice app. forthcoming)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180

Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorney for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)
Matthew Blumin (pro hac vice)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/ Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428

steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorney for Plaintiff Service Employees International Union, AFL-CIO (SEIU)*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE CITY
AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By: */s/ David Chiu*

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900

By: */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

David J. Hackett (pro hac vice)

General Counsel to King County Executive & Special
Deputy Prosecutor
Alison Holcomb (pro hac vice)
Deputy General Counsel to King County Executive &
Special Deputy Prosecutor
Erin King-Clancy (pro hac vice app. forthcoming)
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
David.Hackett@kingcounty.gov
aholcomb@kingcounty.gov
aclancy@kingcounty.gov

By: */s/ David J. Hackett* _____

*Attorneys for Plaintiff Martin Luther King, Jr. County*


Sharanya Mohan (SBN 350675)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org

By: */s/ Sharanya Mohan* _____

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL,
Harris County, TX, and King County, WA*


Christian D. Menefee
Harris County Attorney

Jonathan G.C. Fombonne (pro hac vice app. forthcoming)
Deputy County Attorney and First Assistant
Tiffany Bingham (pro hac vice app. forthcoming)
Managing Counsel
Sarah Utley (pro hac vice app. forthcoming)
Division Director – Environmental Division
Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002

1
2

Tel.: (713) 274-5102
Fax: (713) 437-4211

3

jonathan.fombonne@harriscountytx.gov
tiffany.bingham@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscountytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

4
5
6

7

By: */s/ Jonathan G.C. Fombonne*

8

*Attorneys for Plaintiff Harris County, Texas*

9
10

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago

11
12

Stephen J. Kane (IL ARDC 6272490) (pro hac vice app. forthcoming)
Rebecca A. Hirsch (IL ARDC 6279592) (pro hac app. forthcoming)
Lucy Prather (IL ARDC 6337780) (pro hac vice)
City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Stephen.kane@cityofchicago.org
Rebecca.Hirsch2@cityofchicago.org
Lucy.Prather@cityofchicago.org

13
14
15
16
17
18

19

By: */s/ Stephen J. Kane*

20

*Attorneys for Plaintiff City of Chicago*

21
22

Ebony M. Thompson
Baltimore City Solicitor

23
24

Sara Gross (pro hac vice app. forthcoming)
Chief of Affirmative Litigation
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (410) 396-3947
sara.gross@baltimorecity.gov

25
26
27

28

By: */s/ Sara Gross*

*Attorneys for Plaintiff City of Baltimore*