Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF COMPLIANCE** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

**INTRODUCTION**

In response to Defendants' Notice of Compliance (ECF 155), Plaintiffs respectfully request that the Court issue an order (1) confirming that the State Department's April 22, 2025 announced reorganization and related reductions-in-force (RIFs) and the Department of Housing and Urban Development ("HUD")'s May 2025 termination of probationary employees fall within the scope of this Court's injunctive relief ordered on May 9, 2025 (ECF 85) and May 22, 2025 (ECF 124); and (2) requiring Defendants to file a further compliance report confirming and identifying specific additional actions taken by the State Department and HUD to comply with this Court's orders.

Defendants have not moved this Court for relief from the preliminary injunction, but instead presented declarations stating that the actions of the State Department and HUD are entirely unrelated to President Trump's Executive Order No. 14210 ("EO") and the implementing OMB/OPM Memorandum.  However, the contemporaneous documents from each agency, as well as from OMB/OPM, prove otherwise, and defeat the agencies' assertion that their actions were not in fact taken to implement the EO.  Plaintiffs address below the reasons that the actions planned or taken by the State Department and HUD are covered by this Court's injunction prohibiting actions to implement or enforce the EO.

**BACKGROUND**

This Court's May 22 preliminary injunction, like the May 9, 2025 TRO that preceded it, stays and enjoins Defendants from "taking any actions to implement or enforce sections 3(c) and 3(e) of Executive Order 14210 or the February 26, 2025 OMB/OPM Memorandum, including but not limited to… (4) any further implementation of ARRPs, including but not limited to the following actions, to the extent they are taken to implement Executive Order 14210 and/or the OMB/OPM Memorandum:

(a) execution of any existing RIF notices (including final separation of employees),

(b) issuance of any further RIF notices,

(c) placement of employees on administrative leave, and

(d) transfer of functions or programs between the agency defendants."

ECF 124 at 48.

There is no dispute that both the State Department and HUD are Federal Agency Defendants bound to comply with this Court's injunction. *See id.* There is also no dispute that Plaintiffs identified the State Department's "reorganization" announced on April 22, 2025 as an action taken in furtherance of the EO, in both their TRO and preliminary injunction papers. ECF 37-1 at 26-27; ECF 37-20; ECF 101-1 at 7; ECF 101-11 Ex. A. Plaintiffs also submitted the OMB/OPM Memorandum, which identifies terminations of probationary employees as a "tool" to be considered and used in Agency RIF and Reorganization Plans ("ARRPs"), ECF 37-1, Ex. B, and a template ARRP cover sheet from OMB/OPM that lists "Probationary Employees" as one category of "FTE Reductions Attributed to Specific Strategies" for agencies to implement. ECF 96-1, Ex. D. In opposing the TRO and preliminary injunction, Defendants did not argue (or submit any evidence) that planned actions by the State Department with respect to its reorganization, or by HUD with respect to probationary employees, were unrelated to the EO or fell outside the injunction's terms. Nor did Defendants, at any point, seek clarification of the Court's May 22 preliminary injunction order (as expressly permitted by that order, ECF No. 124 at 48) or otherwise move for relief in this Court.

On June 3, 2025, having unsuccessfully attempted to resolve disputes regarding compliance through counsel, Plaintiffs notified the Court of the relevant actions planned or taken by the State Department and HUD and provided documents showing that those actions were prohibited by the existing injunction. ECF 148. The Court ordered Defendants to "make a factual showing (and further legal argument, if the government wishes) in support of its position as to why the State Department and HUD actions … are not covered by the Preliminary Injunction" by June 9, 2025. ECF 151. On June 9, 2025, Defendants provided a Notice accompanied by two Declarations, attaching no supporting documentation, in which they contend the actions at issue are independent of the EO. ECF 155. Plaintiffs provide this response.

## DISCUSSION

### 1.    State Department

Defendants contend, relying on the Declaration of State Department Deputy Chief of Staff Daniel Holler, that "State's intended reorganization was directed by Secretary Rubio and intended

1   to address foreign policy needs, not to respond to any Executive Order."  ECF 155 at 1.  The

2   narrative provided by Mr. Holler paints a picture of a reorganization process and RIF plans

3   developed entirely internally by the State Department without involvement of OMB and

4   "independent" of the EO.  ECF 155-2.  Notably, Mr. Holler provides the Court with no documents,

5   including the State Department ARRP, to support that narrative.  *See id.*

6           Contrary to Mr. Holler's representations to this Court, however, the State Department's

7   actual documents and public statements, *including documents provided to Congress*, show that the

8   reorganization announced on April 22, 2025 and planned for imminent implementation was

9   undertaken "pursuant to" the EO.  Specifically, on May 29, 2025, the State Department provided

10  multiple appropriations committees and subcommittees of the U.S. House of Representatives and

11  U.S. Senate a "spend plan" pertaining to the current fiscal year 2025 budget.  Supp. Leonard Decl.,

12  Ex. A.  That document stated:

13          In addition, ***pursuant to E.O. 14210* Implementing the President's "Department of
            Government Efficiency" Workforce Optimization Initiative*, the agency
14          reorganization plan was released on April 22** and, subject to additional review, may
            involve other separation expenses, including Reduction in Force (RIF) costs.
15

16  *Id.* (emphasis added).  Thus, the State Department told Congress less than two weeks ago that the

17  April 22 reorganization, which includes imminent planned RIFs, was done "pursuant to" the EO,

18  contrary to the statements of Mr. Holler submitted to this Court.

19          Consistent with the "spend plan" description, the State Department's Fiscal Year 2026

20  Congressional Budget Justification ("CBJ"), which the Department recently provided to Congress,

21  states:

22          ***Pursuant to* E.O. Implementing the President's 'Department of Government
            Efficiency' Workforce Optimization Initiative**, **this request includes the projected
23          impact of the Department's Agency RIF and Reorganization Plan (ARRP) reductions**
            totaling $173.4 million (of which, $137.9 million is AmSals and $35.5 million is bureau-
24          managed) reflected across applicable DP bureaus for office closures and functions to be
            abolished.
25

26          Diplomatic Programs - Ongoing Operations:
            …
27          $173.4 million reduction reflects **the projected savings in salary and position support
            costs for personnel *related to the ARRP*.**
28

*Id.*, Ex. B (emphases modified).[1]

Those State Department statements, made in official submissions to Congress, expressly connect State's reorganization plan to the EO and expressly acknowledge the "projected impact" of the Department's ARRP "reductions" taken "[p]ursuant to" Executive Order 14210.

Those congressional documents are consistent with other contemporaneous statements made by the State Department regarding its reorganization plan, including:

- April 27, 2025 Secretary of State Marco Rubio interview with Kristen Welker of NBC Meet the Press: "But this is a reorganization that should have been done 10, 15 years ago. Multiple secretaries of state from both—appointed by presidents both Democrat and Republican would have loved to have done it. **I just happen to be fortunate to work for a president that allowed us to do it, that actually asked us to do it**, and I'm excited about it. (Second Supp. Hunter Decl., Ex. A) (emphasis added).

- April 22, 2025 State Department Press Briefing: "[T]his is a — from an executive order . . . a whole-of-government — **every department looking at how they can make their department more efficient, less burdensome, less bureaucratic. This is the State Department's version of that**." (ECF 148-1, Ex. A) (emphasis added).

- April 22, 2025 State Department Reorganization Fact Sheet*: "*As part of the plan, the Under Secretaries will also submit a path to reducing staff in domestic offices by 15 percent, **consistent with the President's Workforce Optimization Initiative**." (ECF 148-1, Ex. B) (emphasis added).

- On May 13, 2025, after the Court issued the TRO, the State Department revised its reorganization fact sheet *to remove the reference* to the Workforce Optimization Initiative. (ECF No. 148-1, Ex. C).

Further, Plaintiffs' TRO and preliminary injunction filings submitted evidence regarding RIF notices that the State Department had already issued to employees in the Counter Foreign Information Manipulation and Interference (R/FIMI). ECF 37-20 ¶12. Mr. Holler admits that the Department closed that office and, on April 16, 2025, issued RIF notices to these employees. ECF 155-2 ¶16. He then states the following:

---

[1] Plaintiffs note that the State Department's Congressional Budget Justification was developed in close collaboration with—including review and clearance by—OMB. *See, e.g.*, OMB Circular No. A–11 at 22-2 to 22-3 (2024) (describing "Clearance of budget materials for the Congress," including for "[a]ll budget justifications"); *id.* at 22-5 ("You must submit all budget justification materials to OMB for clearance before transmitting them to the Congress.") (available at https://www.whitehouse.gov/wp-content/uploads/2018/06/a11.pdf).

> As outlined in several public statements and media appearances, the intended closure of FIMI was unrelated to the broader reorganization and entirely distinct from any broader workforce reduction goals.

ECF 155-2 ¶16.  Again, however, Mr. Holler's statement is contradicted by contemporaneous State Department documents.  In an email to R/FIMI employees on April 23, 2025, a State Department human resources officer explained that the closure of the R/FIMI "*aligns to the Department's projected plans in compliance with Executive Order 14210, 'Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative'*" and "[t]he Department **consequently** requested and **received approval from OPM** permission to provide less than 60 days' notice for the Reduction in Force."  Second Supp. Hunter Decl., Ex. B (emphases added).[2]

Mr. Holler also admits that the State Department submitted an Agency RIF and Reorganization Plan to OMB/OPM pursuant to the EO and instructions in the implementing OMB/OPM Memorandum, but tellingly does not provide the ARRP to the Court.  ECF 155-2 ¶13.  He represents that the State Department provided "only summary information about certain Department goals" in the ARRP it submitted pursuant to the OMB/OPM Memorandum (per that Memorandum, for "approval," ECF 37-1, Ex. B), and says further that "no specific reorganization plans, RIF competitive areas, or other associated details were provided in the Department's submission."  *Id.*  He later claims that the State Department stopped communicating with OMB/OPM *after* the April 22 public announcement of the reorganization plan—but that of course does not shed light on the earlier submission and/or approval by OMB/OPM of that ARRP prior to the April 22 public announcement.  *Id.* at ¶¶19-21.  Notably, Mr. Holler does *not* state whether the State Department ARRP included the Department's reorganization plan announced April 22, or whether OMB/OPM approved the State Department's reorganization plans.

With respect to the earlier period for ARRP submission and approval prior to the April 22 announcement, again the contemporaneous documents undermine Mr. Holler's narrative.  As of at

---

[2] Plaintiffs submitted evidence at the preliminary injunction stage showing that other agencies were similarly eliminating offices and programs while citing other Executive Orders, and then issuing RIF notices to eliminate the positions within those offices and programs pursuant to the EO at issue in this case.  ECF 70-2 & Exs. A-C.

1   least February 21, 2025, the State Department was preparing the reorganization plan required by

2   the EO.  State Department communications stated:  "The President's Executive Order of February

3   11, 2025 entitled:  Implementing the President's "Department of Government Efficiency"

4   Workforce Optimization Initiative requires agencies to submit to the Director of OMB a report that

5   identifies any statutes that establish the agency, or subcomponents of the agency, as statutorily

6   required entities.  The report shall discuss whether the agency or any of its subcomponents should

7   be eliminated or consolidated."  Second Supp. Hunter Decl., Ex. C (directions from the "Senior

8   Advisor to the Director General, and Director for Workforce Innovation, Bureau of Global Talent

9   Management (GTM)" describing the "ACTION REQUIRED" by "all EX Offices" to create the

10  plan required by the EO).

11      The Department's budget documents also belie this narrative.  As discussed, those

12  documents are necessarily prepared in conjunction with OMB.  *Supra*, n.1.  The CBJ for FY 2026

13  calculates the precise cost of the implementation of the Department's ARRP "pursuant to" the EO,

14  as quoted above.  Supp. Leonard Decl., Ex. B ("… reductions totaling $173.4 million (of which,

15  $137.9 million is AmSals and $35.5 million is bureau-managed) reflected across applicable DP

16  bureaus for office closures and functions to be abolished.").  The discussion between OMB and the

17  State Department regarding the current fiscal year spending and proposed spending for next year,

18  which are *necessarily* impacted by these reorganization plans, and which the State Department

19  admits it intends to imminently implement (ECF 155-2 ¶23), plainly was ongoing during April

20  2025 if not earlier.[3]

21      Finally, it does not matter whether Secretary Rubio and his advisors began planning a State

22  Department reorganization before or after the President's Executive Order.  The reorganization

23  plan that the State Department ultimately announced on April 22, 2025 was, as reflected in the

24  State Department's own words, *pursuant to* that Order.

25

26

27

28

---

[3] *E.g.*, Washington Post, *Trump plan would slash State Dept. funding by nearly half, memo says* (April 14, 2025), available at https://www.washingtonpost.com/national-security/2025/04/14/state-department-budget-cuts-trump-rubio/

1      As shown previously (ECF 148), the preliminary injunction plainly applies to the State

2  Department reorganization plan and related RIFs.  Defendants' submission fails to show that the

3  State Department reorganization announced on April 22, 2025 was not, as a matter of fact, an

4  action implementing the EO at issue in this case, and that State therefore should be relieved from

5  complying with that injunction.  Defendants cannot tell Congress one thing and this Court another.

6  **2.      HUD**

7      HUD admits that "in May 2025" it terminated 76 probationary employees.  ECF 155-1 at

8  ¶4.[4]  Defendants do not reveal the dates of these terminations, or whether they occurred after this

9  Court's May 9 or May 22 injunctions (however, as Plaintiffs previously demonstrated to the Court,

10  those terminations occurred on or around May 15, *see* ECF 148-1; ECF 155).  Defendants merely

11  contend, relying on the Declaration of HUD Chief Human Capital Officer Lori Michalksi, that

12  "HUD's termination of 76 of 312 probationary employees was not pursuant to or to implement, and

13  was entirely independent from, sections 3(c) and 3(e) of Executive Order 14210 and the February

14  26, 2025, OMB/OPM Memorandum."  ECF 155 at 1.

15      However, the documents created by OMB/OPM to enforce and implement the EO direct

16  agencies to use all "tools" available to them in their ARRPs to achieve the President's workforce

17  reduction directives, and specifically list "Probationary Employees" as one category of "FTE

18  Reductions Attributed to Specific Strategies" that agencies should implement pursuant to the EO.

19  *See* ECF 37-1, Ex. B; ECF 96-1, Ex. D.  Defendants do not deny that the probationary terminations

20  at issue occurred on or around May 15, which is after March 13 and April 14 deadlines for HUD to

21  submit its ARRPs to OMB/OPM for approval.

22      Plaintiffs therefore reasonably requested that Defendants explain whether HUD included

23  the termination of probationary employees in its ARRPs.  ECF 148-1, Ex. D. Notwithstanding the

24  discussion of that request at the status conference, Defendants' Declaration pointedly does not

25  address the content of HUD's ARRP, nor does it deny that the HUD ARRP included, as directed

26

27      [4] In prior meet and confer emails, defense counsel previously stated that HUD had terminated
28  "approximately 79" probationary employees.  ECF 148-1 Ex. D.  Regardless of whether the correct
   number is 76 or 79, those terminations are covered by the preliminary injunction.

by OMB/OPM, the termination of probationary employees as a "strategy" or "tool" to reduce the number of employees.  The Michalksi Declaration states only that the terminations were pursuant to and consistent with a different Executive Order, and not the EO at issue in this case.  But the Declaration provides no documentation or other evidence to support that assertion or to otherwise counter the OMB/OPM documents that expressly identify the termination of probationary employees as a tool to implement the EO.

Moreover, nothing about the two Executive Orders states that they are mutually exclusive.  A number of the "tools" or "strategies" that the OMB/OPM Memorandum instructs agencies to use in their ARRPs to achieve workforce reduction goals find their source authority elsewhere (for example, Defendants contend that agency RIF authority comes from 5 U.S.C. §3502, not the EO).[5]  The record evidence already includes other agency actions (such as the elimination of programs or functions) that were taken pursuant to other Executive Orders, *as well as* being expressly included in actions to effectuate the workforce reduction goals of the EO at issue here.  *Supra*, n.2 (DOL elimination of Office of Federal Contract Compliance Programs pursuant to different Executive Order, and employees issued RIF notices expressly to effectuate this EO).  Simply stating that an action was also taken under the authority of a different Executive Order therefore does not prove that the action did not also implement the EO at issue here.

Furthermore, the assessment that HUD asserts it conducted, concluding that these employees "would not advance the *organizational goals* of the Agency and would not advance the efficiency of the service," ECF 155-1 ¶4, appears to directly reference the ongoing efforts to reorganize pursuant to this EO.  If the EO set the standard by which these organizational goals are measured, then it was a cause of the probationary employee terminations at issue.  This further undermines Defendants' assertion that HUD's assessments were "independent" of the EO at issue in this case (the purpose of which is to "transform" every federal agency, including HUD, and plainly sets the "organizational goals" against which the necessity for these positions were measured).

---

[5] Plaintiffs do not concede the legality of the President's April 24, 2025 Executive Order entitled "Strengthening Probationary Periods in the Federal Service."

Finally, Plaintiffs note that the description of the injunction provided by Ms. Michalski is underinclusive. She says "I understand that the Temporary Restraining Order and the Preliminary Injunction enjoined and/or stayed the defendant agencies, which includes HUD, from taking any actions to implement or enforce sections 3(c) and 3(e) of Executive Order 14210 or the February 26, 2025, OMB/OPM Memorandum, including by further implementation of Agency RIF and Reorganization Plans (ARRPs) *by executing any existing RIF notices or issuing any further RIF notices*." ECF 155-1 at ¶3 (emphasis added). This Court, however, enjoined *all* implementation of the ARRPs, "including but not limited to" RIFs and other actions. ECF 124 at 48. Defendants did not correct HUD's mischaracterization of the Order, but instead submitted it to this Court. Defendants' prior "compliance" report consisted of a counsel declaration claiming privilege for the actual instructions provided to agencies regarding the preliminary injunction. ECF 141-1. To the extent that HUD's actions resulted from this underinclusive understanding of this Court's injunction, Defendants have all the more reason to take corrective action.

In sum, by failing to provide this Court with direct evidence (including the best evidence, which would be the content of the HUD ARRP), Defendants have not established that the May 2025 termination of probationary employees was not, as directed by OMB/OPM, taken as a strategy to implement the EO. Those terminations were therefore enjoined by this Court's preliminary injunction. HUD should notify the Court of corrective measures taken to comply with this Court's orders with respect to those probationary employees.

## 3.    Action Requested

As previously discussed, Defendants have not moved for relief from the injunction, and have not given this Court any valid basis to alter its preliminary injunction order. Plaintiffs respectfully request the Court issue an order confirming the application of the injunction to the impending State Department RIFs and reorganization announced on April 22, 2025 and to HUD's May 2025 termination of probationary employees, and order Defendants to submit a new compliance report showing actions taken to bring these agencies into compliance.

1    Respectfully submitted,

2    DATED: June 11, 2025                     Stacey M. Leyton
                                             Barbara J. Chisholm
3                                            Danielle E. Leonard
                                             Corinne F. Johnson
4                                            Alice X. Wang
                                             Robin S. Tholin
5                                            Aaron Schaffer-Neitz
6                                            ALTSHULER BERZON LLP
                                             177 Post St., Suite 300
7                                            San Francisco, CA 94108
                                             Tel: (415) 421-7151
8                                            sleyton@altshulerberzon.com
                                             bchisholm@altshulerberzon.com
9                                            dleonard@altshulerberzon.com

10
                                         By: */s/ Danielle Leonard*
11
                                             *Attorneys for All Union and Non-Profit Organization*
12                                           *Plaintiffs*

13

14                                           Elena Goldstein (pro hac vice)
                                             Skye Perryman (pro hac vice)
15                                           Tsuki Hoshijima (pro hac vice)
16                                           DEMOCRACY FORWARD FOUNDATION
                                             P.O. Box 34553
17                                           Washington, D.C. 20043
                                             Tel: (202) 448-9090
18                                           Fax: (202) 796-4426
19                                           egoldstein@democracyforward.org
                                             sperryman@democracyforward.org
20                                           thoshijima@democracyforward.org

21                                       By: */s/ Tsuki Hoshijima*

22                                           *Attorneys for All Union and Non-Profit Organization*
                                             *Plaintiffs (except NRDC) and for Plaintiffs City of*
23                                           *Chicago, IL; Martin Luther King, Jr. County, WA;*
                                             *Harris County, TX; and City of Baltimore, MD*
24

25
                                             Jules Torti (pro hac vice)
26                                           PROTECT DEMOCRACY PROJECT
                                             82 Nassau St., #601
27                                           New York, NY 10038

28

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jacek Pruski*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)
Matthew Blumin  (pro hac vice)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/ Teague Paterson*

*Attorneys for Plaintiff American Federation of State
County and Municipal Employees, AFL-CIO
(AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL
UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorneys for Plaintiff Service Employees
International Union, AFL-CIO (SEIU)*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By:  */s/ Alexander Holtzman*

1

2      *Attorneys for Plaintiff City and County of San
       Francisco*

3

4      Tony LoPresti (SBN 289269)
       COUNTY COUNSEL

5      Kavita Narayan (SBN 264191)
       Meredith A. Johnson (SBN 291018)

6      Raphael N. Rajendra (SBN 255096)
       Hannah M. Godbey (SBN 334475)

7      OFFICE OF THE COUNTY COUNSEL

8      COUNTY OF SANTA CLARA
       70 West Hedding Street, East Wing, 9th Floor

9      San José, CA 95110
       Tel: (408) 299-5900

10     Kavita.Narayan@cco.sccgov.org

11     Meredith.Johnson@cco.sccgov.org
       Raphael.Rajendra@cco.sccgov.org

12     Hannah.Godbey@cco.sccgov.org

13     By:  */s/ Tony LoPresti*

14     *Attorneys for Plaintiff County of Santa Clara, Calif.*

15

16     David J. Hackett (pro hac vice)
       General Counsel to King County Executive & Special

17     Deputy Prosecutor
       Alison Holcomb (pro hac vice)

18     Deputy General Counsel to King County Executive &
       Special Deputy Prosecutor

19     Erin King-Clancy (pro hac vice app. forthcoming)
       Senior Deputy Prosecuting Attorney

20     OFFICE OF KING COUNTY PROSECUTING
       ATTORNEY LEESA MANION

21     401 5th Avenue, Suite 800
       Seattle, WA 98104

22     (206) 477-9483
       David.Hackett@kingcounty.gov

23     aholcomb@kingcounty.gov
       aclancy@kingcounty.gov

24     By:  */s/ David J. Hackett*

25     *Attorneys for Plaintiff Martin Luther King, Jr. County*

26

27     Sharanya Mohan (CABN 350675)

28

PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org

By: */s/ Sharanva Mohan*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL,
Harris County, TX, and King County, WA*

Christian D. Menefee
Harris County Attorney
Jonathan G.C. Fombonne (pro hac vice)
Deputy County Attorney and First Assistant
Tiffany Bingham (pro hac vice app. forthcoming)
Managing Counsel
Sarah Utley (pro hac vice app. forthcoming)
Division Director – Environmental Division
Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice app. forthcoming)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel: (713) 274-5102
Fax: (713) 437-4211
jonathan.fombonne@harriscountytx.gov
tiffany.bingham@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscoupntytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

By: */s/ Jonathan G.C. Fombonne*

*Attorneys for Plaintiff Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago
Stephen J. Kane (IL ARDC 6272490) (pro hac vice app. forthcoming)
Rebecca A. Hirsch (IL ARDC 6279592) (pro hac vice)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lucy Prather (IL ARDC 6337780) (pro hac vice)
City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Stephen.kane@cityofchicago.org
Rebecca.Hirsch2@cityofchicago.org
Lucy.Prather@cityofchicago.org

By: */s/ Stephen J. Kane*

*Attorneys for Plaintiff City of Chicago*


Ebony M. Thompson
Baltimore City Solicitor
Sara Gross (pro hac vice app. forthcoming*)*
Chief of Affirmative Litigation
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (410) 396-3947
sara.gross@baltimorecity.gov

By: */s/ Sara Gross*

*Attorneys for Plaintiff City of Baltimore*