
CRAIG H. MISSAKIAN
United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
ANDREW M. BERNIE
Trial Attorney
Civil Division, Federal Programs Branch

   1100 L Street, NW
   Washington, DC 20005
   Telephone: (202) 353-7203
   andrew.m.bernie@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>   Plaintiffs,<br><br>   v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>   Defendants. | Case No. 3:25-cv-03698-SI<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY AND REQUEST FOR MODIFICATION** |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT ............................................................................................................................. 4

I.   Plaintiffs Have Not Established a Valid Need for the Production of ARRPs ................ 4

II.  The Court Should Deny Plaintiffs' Request for an Order Requiring Immediate Production of ARRPs and Should Grant Defendants' Previous Motion for a Protective Order ............................................................................................................. 9

    A.   Plaintiffs' Only Even Potentially Viable Claims Invoke the APA, and there is No Basis for the Court to Order Discovery Pursuant to those Claims ................................................................................................................. 9

    B.   Plaintiffs Are Not Challenging Final Agency Action and in Any Event None of the Exceptions to APA Record Review Apply ..................................... 10

    C.   The AARPs Are Privileged and Protected From Disclosure Even if Discovery Were Warranted ............................................................................... 11

    D.   Plaintiffs Have Not Overcome the Privilege ..................................................... 13

III. The Court Should Stay Any Further Disclosure Order ................................................ 15

IV.  Potential Future RIFs that Agencies Have Not Finalized Are Not an Appropriate Subject for this Court's Inquiry ..................................................................................... 15

CONCLUSION ....................................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Assembly of State of Cal. v. U.S. Dep't of Com.*,
  968 F.2d 916 (9th Cir. 1992) ................................................................................ 12

*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................................................. 11

*Blue Mountains Biodiversity Project v. Jeffries*,
  99 F.4th 438 (9th Cir. 2024) .................................................................................. 9

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
  450 F.3d 930 (9th Cir. 2006) ................................................................................ 10

*Lands Council v. Powell*,
  395 F.3d 1019 (9th Cir. 2005) ............................................................................... 9

*Oceana, Inc. v. Ross*,
  920 F.3d 855 (D.C. Cir. 2019) ............................................................................... 9

*Ohio Forestry Ass'n v. Sierra Club*,
  523 U.S. 726 (1998) ............................................................................................. 13

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
  100 F.3d 1443 (9th Cir. 1996) .............................................................................. 10

*Trump v. Am. Fed. of Gov't Emps.*,
  No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025) ...................................... 4, 7

*United States DOGE Service et al. v. CREW*,
  No. No. 24-1246 (24A1122), 145 S. Ct. 1981 (2025) ......................................... 15

## Executive Orders and Regulations

Exec. Order 14158,
  90 Fed. Reg. 8441 (Jan. 20, 2025) ......................................................................... 5

Exec. Order 14210,
  90 Fed. Reg. 9669 (Feb. 11, 2025) ............................................................ 1, 2, 3, 13

5 C.F.R. § 351.402(c) ................................................................................................ 16

**INTRODUCTION**

On July 8, the Supreme Court stayed this Court's preliminary injunction, concluding that Executive Order 14210 (Workforce Executive Order) and the February 26, 2025 Memorandum (Workforce Memorandum), issued by the Office of Management and Budget (OMB) and Office of Personnel Management (OPM), are likely lawful. That Order effectively ends this case, and Defendants will move to dismiss the Amended Complaint (Complaint), *see* ECF No. 100, in one week. The plain import of the Supreme Court's decision is that Plaintiffs must await specific RIFs from particular agencies and then bring challenges to those RIFs (if they can establish jurisdiction and identify a viable cause of action). But that is not *this case*. This case is a global challenge to the Workforce Executive Order and Workforce Memorandum. True, two of Plaintiffs' seven claims are directed against Federal Agency Defendants[1] submissions of Agency RIF and Reorganization Plans (ARRPs). But Plaintiffs do not challenge the content of particular ARRPs (and of course cannot, because these predecisional documents have not been made public). Instead, in both of these claims Plaintiffs allege that Federal Agency Defendants violated the APA *by following* the directives contained in the Executive Order and Memorandum, directives Plaintiffs contend are unlawful. The Supreme Court's Order forecloses that theory.

In any event, the two claims that challenge ARRPs at all *are APA* claims. Indeed, Plaintiffs' request acknowledges that the only claims as to which this Court reserved decision in issuing the since-stayed preliminary injunction are APA claims. There is no basis for any discovery at all in adjudicating an APA claim, let alone discovery before Defendants have even responded to the Complaint; before an administrative record is certified; and when Defendants maintain the information is privileged. Rather: APA claims, even if cognizable in district court at all, must be adjudicated based on the administrative record; agencies have not even submitted the administrative records for RIFs or any of the other potential future actions about which Plaintiffs complain (in part because most RIFs have not even been finalized); once any administrative record is certified, if future plaintiffs think the record is incomplete, they must object then; and in any

---

[1] Following Plaintiffs' convention in the Complaint, we refer to Defendants other than OPM, OMB, and the United States DOGE Service (USDS) as Federal Agency Defendants.

Defendants' Opposition to Plaintiffs' Request for Expedited Discovery and Request for Modification
3:25-cv-3698-SI

1

event, ARRPs would not properly be part of any administrative record, because deliberative materials are not part of the administrative record.

In addition, ARRPs themselves are not even plausibly characterized as final agency action reviewable under the APA, and Plaintiffs do not appear to contend otherwise. There is thus no basis for this Court to review the legality of the ARRPs under the APA. Nor is there any relief this Court could lawfully grant as to the ARRPs themselves, independent of Plaintiffs' theory—that has now been rejected by 8 Justices of the Supreme Court—that the ARRPs resulted from illegal processes. Simply put, Plaintiffs have lost this case.

Nonetheless, less than a day after the Supreme Court's decision, Plaintiffs filed an "urgent" demand that this Court order disclosure of all ARRPs submitted to OPM and OMB from all Federal Agency Defendants and asked the Court to further order disclosure of dozens of potential future reductions in force (RIFs). *See* ECF No. 176 (Request). For not the first time in this case, *see* ECF No. 88 at 6, Plaintiffs sought this relief without filing a proper motion, instead implausibly framing their demand for unfinalized RIFs as a request for mere "modification" of the Court's since-stayed order granting expedited discovery of submitted ARRPs. For the reasons set forth below, the Court should not grant Plaintiffs any further relief on this motion or any other similar motion, much less on the highly expedited basis Plaintiffs have demanded. In particular, there is no basis for any further relief related to Plaintiffs' demand for information about potential future RIFs. Nor should the Court order disclosure of any agency ARRPs, and it should deny the mass disclosure Plaintiffs have requested in their latest request.

**BACKGROUND**

More than five months ago, on February 11, 2025, President Trump signed the Workforce Executive Order, entitled "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative." Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025). Among other things, that order directed "Agency Heads [to] promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law." *Id.* § 3(c). It also required that within 30 days "Agency Heads shall submit to" OMB and OPM an "Agency Reorganization Plan[]," "a report that identifies any statutes that establish the agency, or

subcomponents of the agency, as statutorily required entities." *Id.* § 3(e). That report "shall discuss whether the agency or any of its subcomponents should be eliminated or consolidated." *Id.* The order adds that it "shall be implemented consistent with applicable law and subject to the availability of appropriations," *id.* § 5(b), and shall not "be construed to impair or otherwise affect the authority granted by law to an executive department, agency, or head thereof," *id.* § 5(a)(i).

About two weeks later, OPM and OMB jointly issued a memorandum to assist with implementation of the Executive Order. ECF No. 37-1 App. 2. Noting agencies' March 13 deadline under the Executive Order, the memorandum set "guidance on these Agency RIF and Reorganization Plans." *Id.* The guidance identifies principles for agencies' consideration in preparing plans while cautioning that "[a]gencies should review their statutory authority and ensure that their plans and actions are consistent with such authority." *Id.* It also set a two-phase timeline for the submission of ARRPs with the first due on March 13 and the second due on April 14. *Id.* at 4. A "Sample RIF Timeline" attached to the memorandum describes four steps for an agency to implement a RIF. *Id.* at 7.

More than two months after OPM and OMB issued the Memorandum, Plaintiffs filed suit on April 28, 2025. ECF No. 1. They filed a motion for a temporary restraining order, which this Court granted on May 9. ECF No. 85. In addition to enjoining Defendants' implementation of the Executive Order and Workforce Memorandum, the Court concluded that it "require[d] more information to evaluate the individual ARRPs and what roles OMB, OPM, and DOGE have played in shaping them." *Id.* at 39. Citing its "inherent powers to manage discovery," the Court required the production of ARRPs and certain documents relating to RIF notice periods. *Id.* at 39-40. Defendants moved for a protective order and for reconsideration. ECF No. 88. In response, the Court required Defendants to submit for *in camera* review and to Plaintiffs' attorneys the ARRPs for four agency defendants. ECF No. 109. Defendants filed these documents before the preliminary injunction hearing. *See* ECF No. 124 at 7, 36.

The Court granted Plaintiffs' motion for a preliminary injunction on May 22. ECF No. 124. Defendants appealed. ECF No. 125. While Defendants pursued appellate relief, this Court required officials from the four agencies whose ARRPs were produced to explain the privileged nature of

those agencies' ARRPs. ECF No. 139. In response, Defendants submitted the required declarations *in camera* and to Plaintiffs' attorneys. On July 8, the U.S. Supreme Court stayed this Court's preliminary injunction. *Trump v. Am. Fed. of Gov't Emps.*, No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025). The Court concluded that "the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful" and that "the other factors bearing on whether to grant a stay are satisfied." *Id.* *1. The Court "express[ed] no view on the legality of any Agency RIF and Reorganization Plan produced or approved pursuant to the Executive Order and Memorandum," noting that "[t]hose plans are not before this Court." *Id.* Only one Justice dissented. *Id.* (Jackson, J., dissenting).

The next day, Plaintiffs filed a request before this Court for an order requiring the "production of all ARRPs that the Federal Defendant Agencies had submitted to OMB and/or OPM and related documents." Request at 9. The Court entered an order concluding that "[t]he content of the ARRPs . . . remains squarely at issue in this case." ECF No. 177 at 2. The order added that "[t]he Court is of the view that, at minimum, the final versions of the ARRPs at the 17 agencies referenced before the Supreme Court are not covered by the deliberative process privilege." *Id.* The Court required Defendants to respond to Plaintiffs' motion and to "provide a list of the 'about 40 RIFs in 17 agencies' that defendants referenced in their Supreme Court stay application." *Id.*

**ARGUMENT**

**I.     Plaintiffs Have Not Established a Valid Need for the Production of ARRPs.**

This Court ordered expedited discovery more than two months ago when it entered a temporary restraining order and anticipated ruling on Plaintiffs' motion for a preliminary injunction. ECF No. 85. After receiving limited discovery, over Defendants' objection, the Court entered a preliminary injunction. The Supreme Court has now stayed that order, holding that the Workforce Executive Order and the OPM-OMB Workforce Memorandum are likely lawful. Undeterred, Plaintiffs seek to breathe new life into the expedited discovery ordered by the long-ago-expired temporary restraining order. The Court should reject that request and instead allow the parties to brief the legal sufficiency of Plaintiffs' claims. Defendants intend to move to dismiss

this case in one week. This Court should rule on that motion before entertaining Plaintiffs' request for discovery in furtherance of legal claims foreclosed by the Supreme Court's stay.

Defendants' motion will show that all seven claims in the Amended Complaint depend on the mistaken view that the Workforce Executive Order, the Workforce Memorandum, or both are unlawful. The five claims against President Trump, OPM, OMB, and the Department of Governmental Efficiency (DOGE) must fail[2]:

- Claim I contends that the Workforce Executive Order exceeds the President's lawful authority, *id.* ¶¶ 387-88;
- Claim II contends that the Workforce Memorandum exceeds statutory authority, *id.* ¶ 394;
- Claim III similarly contends that the Workforce Memorandum exceeds statutory authority by, according to Plaintiffs, "requiring agencies to submit Agency RIF and Reorganization Plans to OMB and OPM for approval; requiring agencies to include in those plans large-scale RIFs; and imposing an assortment of other parameters and requirements," *id.* ¶ 402;

---

[2] Claims II-V are also asserted against "DOGE." The Department of Government Efficiency or "DOGE" is the umbrella term for the government-wide initiative to implement the President's DOGE Agenda. It consists of the United States DOGE Service (USDS), the USDS Temporary Organization, and Agency DOGE Teams, which are created by agency heads and composed of employees of those agencies who report to agency leadership. Exec. Order 14,158, § 3(a)–(c), 90 Fed. Reg. 8441 (Jan. 20, 2025). It appears that Plaintiffs' claims and allegations against DOGE are intended to encompass *both* USDS (as well as the USDS Temporary Organization) *and* agency DOGE Teams. Complaint ¶ 5. These claims necessarily fail as well, for multiple reasons. For one, the overarching "DOGE" structure is obviously not itself a distinct entity that can be sued. For another, to the extent Plaintiffs are contending that agency DOGE Teams are, for example, usurping agency decisionmaking, *see* Complaint ¶ 393, this makes no sense because Agency DOGE Teams consist of agency employees accountable to agency leadership. The Complaint also includes no allegations that USDS (or the DOGE structure more generally) has any distinct role in the submission and approval of ARRPs. *See, e.g., id.* ¶ 14 (asserting without any basis that agencies "are required to submit plans that follow the President's mandate, according to the President's designs, and that are only effectuated by OMB and OPM (*and DOGE*) approval" (emphasis added)). In any event, none of this matters; the Supreme Court has now held that the OMB/OPM Memorandum and the processes it prescribes are likely lawful so any claims against "DOGE" premised on the supposed illegality of the same process also fail.

Defendants' Opposition to Plaintiffs' Request for Expedited Discovery and Request for Modification
3:25-cv-3698-SI

- Claim IV contends that OPM and OMB's issuance of the Workforce Memorandum and its supposed approval of ARRPs necessarily order agencies to, among other things, cede their decision-making authority to OPM and OMB, require agencies to disregard statutory requirements, categorically require large-scale RIFs that are necessarily contrary to agency functions and statutory requirements, require agencies to abandon reasoned decision-making, and require agencies to act under unrealistic timeframes inconsistent with reasoned decisionmaking, *id.* ¶¶ 410-411; and

- Claim V asserts that the Workforce Memorandum was unlawfully issued without notice-and-comment procedures, *id.* ¶¶ 412-419.

Allowing any of those claims to go forward—let alone granting relief on those claims—would be flatly inconsistent with the Supreme Court's nearly unanimous order.

The same is true of Claims VI and VII. Although these purport to be APA claims against Federal Agency Defendants, Plaintiffs do not challenge any ARRP as unlawful by arguing that an ARRP's plan is arbitrary and capricious or contrary to statutes governing the specific agency that submitted them. Nor could Plaintiffs have done so, since these deliberative planning documents have not been made public. Rather, these claims assert that the agencies acted unlawfully *by following* the directives in the Workforce Executive Order and Workforce Memorandum. Claim VI contends that the Federal Agency Defendants acted unlawfully by "creat[ing] and submit[ing] for OMB and OPM approval an ARRP, according to the parameters imposed by OMB, OPM and DOGE" and "have exceeded their authority by implementing the President's unconstitutional plans." *Id.* ¶¶ 423-24. Claim VII asserts that "[t]he actions of the Federal Agency Defendants, including but not limited to implementing the President's unconstitutional orders to reorganize and RIF employees, pursuant to the terms dictated by the President, violate the APA" by, among other things (and essentially mirroring the allegations in Claim IV), ceding decisionmaking authority, following "the President's unconstitutional directions and directions of OMB and OPM," engaging "in large-scale RIFs that are necessarily contrary to agency's ability to maintain required function

and authorizing statute," abandoning reasoned decisionmaking, and acting under unrealistic timetables. *Id.* ¶ 431.

None of these assertions is based in law or the content of the Workforce Executive Order and Workforce Memorandum. In any event, both Claim VI and VII derive from Plaintiffs' assertion that the Workforce Executive Order and Workforce Memorandum direct unlawful actions. The Supreme Court has now held in a near-unanimous Order that the Executive Order and Memorandum are both likely lawful.

Nonetheless, Plaintiffs appear to believe that the Supreme Court's rejection of their arguments authorized them to continue to litigate the ARRPs. They complain that "[w]ithout those ARRPs and related documents, this Court will be hampered from evaluating the issue that the Supreme Court has specifically directed that it may now consider." Request at 5. They are wrong. While the Supreme Court noted that its stay "express[ed] no view on the legality of any Agency RIF and Reorganization Plan," 2025 WL 1873449, at *1, it did not "direct[]" that this Court "may now consider" the legal validity of ARRPs, Request at 5. It did not hold that Plaintiffs had satisfied the Rule 12(b) standard for litigating a claim challenging any ARRP. It did not analyze any of the arguments Defendants have made above. And it did not hold that ARRPs are not pre-decisional and deliberative and therefore not privileged from compelled disclosure. None of those issues were briefed in or before the Supreme Court.

Rather, the Supreme Court made this statement in explaining its disagreement with the preliminary injunction. It stated that "[t]he District Court enjoined further implementation or approval of the plans based on its view about the illegality of the Executive Order and Memorandum, not on any assessment of the plans themselves." *Id.* Justice Sotomayor's concurring opinion added that "[t]he plans themselves are not before [the Supreme Court], at this stage, and we thus have no occasion to consider whether they can and will be carried out consistent with the constraints of law." *Id.* She thus "join[ed] the Court's stay because it leaves the District Court free to consider those questions in the first instance." *Id.* But in making this remark, she also did not comment on whether the Complaint adequately pled a challenge to any agency's ARRP or whether ARRPs are privileged.

To the extent any Defendant proceeds to implement a RIF or reorganization, plaintiffs who can establish jurisdiction and plead a viable cause of action may be able to litigate a challenge to that implementation. But after the Supreme Court's stay, the Plaintiffs to this action cannot anchor such claims in the Workforce Executive Order or the Workforce Memorandum. Plaintiffs have no legal right to reach out and seek relief from future RIFs *before* agencies finalize them. A future claim that particular agency RIFs violate the agency's governing statutes or are arbitrary and capricious on grounds separate and apart from the Workforce Executive Order and Workforce Memorandum would (in Defendants' view) need to be channeled through Congress's comprehensive administrative scheme for adjudication of federal employment and labor management claims (indeed, this Court's prior reasoning that it had jurisdiction to consider Plaintiffs' claims rested heavily on its view that challenges *to the Executive Order and Memorandum* were not the sorts of claims Congress intended to preclude from district court review). But even if they could be litigated in district court under the APA, any such claim (as discussed further below) would need to be based on the administrative record submitted by the agency. And such a future claim, at the very least, could not be brought as part of *this* case. A claim that particular agency RIFs violate an agency's governing statutes or are arbitrary and capricious is completely unmoored from the claims Plaintiffs have raised here—that the Workforce Executive Order and Workforce Memorandum are unconstitutional, in excess of statutory authority, and otherwise unlawful, and that Federal Agency Defendants acted arbitrarily and contrary to law by acting consistently with those directives.

The Supreme Court's Order warrants introspection and careful consideration, not haste. Because it is highly likely that Defendants' forthcoming motion will result in dismissal of this action or at least narrow the issues in this case, the Court should consider Defendants' forthcoming motion to dismiss in the ordinary course and, to the extent any of Plaintiffs' claims survive that motion, consider appropriate next steps in the case at that time. A nearly unanimous Supreme Court decision staying this Court's previous injunction, holding that the Workforce Executive Order and Workforce Memorandum are likely lawful, and allowing RIFs to proceed, is not an invitation for the Court to direct still more extraordinary relief—let alone for the Court to order

mass disclosure of an enormous volume of privileged information, which would precipitate the need for further emergency appellate proceedings.

    **II.    The Court Should Deny Plaintiffs' Request for an Order Requiring Immediate Production of ARRPs and Should Grant Defendants' Previous Motion for a Protective Order**

Plaintiffs renew their request for disclosure of ARRPs. There is no basis for ordering discovery at this point at all, let alone discovery of the ARRPs, which are privileged.

    **A.    Plaintiffs' Only Even Potentially Viable Claims Invoke the APA, and there is No Basis for the Court to Order Discovery Pursuant to those Claims**

The only claims even plausibly still on the table after the Supreme Court's decision are *APA* claims. The only claims against Federal Agency Defendants are APA claims. *See* Complaint ¶¶ 420-431. And Plaintiffs themselves note that the only claims on which this Court reserved decision in issuing the since-stayed preliminary injunction are APA claims. Request at 2. There is no legal hook for this Court ordering disclosure of the ARRPs as part of an APA claim, particularly at this early juncture of the case. If Plaintiffs challenge some future agency decision under the APA—such as a RIF—any such challenge must be based on the administrative record compiled by the agency (again, assuming arguendo that such challenges can even be brought in federal district court under the APA, which they cannot be). *See Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (stating this rule and identifying narrow exceptions to it). Future plaintiffs are free to *argue* that particular ARRPs should be considered part of the administrative record in challenges to particular RIFs, reorganizations, or other agency decisions—and that issue can be litigated in those cases. Any such future arguments should fail since deliberative materials are not part of the administrative record. *See, e.g., Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024); *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). But in any event, there is no basis for compelling expedited discovery in the form of compelled disclosure of ARRPs, in a purported APA challenge that is not even directed at any alleged final agency action, before any record has been certified, and indeed before Defendants have even responded to the Complaint.

### B. Plaintiffs Are Not Challenging Final Agency Action and in Any Event None of the Exceptions to APA Record Review Apply

In response to the above, Plaintiffs might assert that the "final agency action" justifying compelled disclosure of ARRPs is the Workforce Memorandum. But that theory does not work either. For one, the Workforce Memorandum is also not a final agency action for reasons Defendants have already extensively briefed. For another, the Supreme Court has now ruled as a matter of law that the Memorandum is likely lawful. And in any event, "[j]udicial review of an agency decision typically focuses on the administrative record in existence *at the time of the decision*." *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (emphasis added). And "[p]arties may not use "post-decision information as a new rationalization either for sustaining or attacking the Agency's decision." *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). Even if the Workforce Memorandum were a final agency action for APA purposes, agency ARRPs submitted to OPM and OMB *in response* to the Workforce Memorandum would obviously not be part of the administrative record for the Workforce Memorandum.

Nor would any of the four exceptions allowing supplementation with extra-record materials even plausibly apply. The ARRPs would not be "necessary to determine whether" whether OPM and OMB "considered all relevant factors and . . . explained its decision," OPM and OMB have not "relied on" the ARRPs to justify the Memorandum (to the contrary, all Defendants have vigorously resisted their disclosure), supplementing the record with the ARRPs would not be "necessary to explain technical terms or complex subject matter," and Plaintiffs have not made a showing of "agency bad faith" warranting mass disclosure of ARRPs. *Sw. Ctr. for Biological Diversity* 100 F.3d at 1450. In any event, again none of this has been briefed; no administrative record has been produced; and again, Defendants have not even yet responded to the Complaint.

Finally on this point, not even Plaintiffs appear to contend that an ARRP *is itself* a final agency action reviewable under the APA. Complaint ¶ 421 ("*The implementation of ARRPs* by RIFing federal employees, closing offices, functions, and programs, and otherwise reorganizing agency functions are all final agency action under the APA." (emphasis added)); *id*. ¶ 429 (same). And of course, they are not. The ARRPs do not even debatably "mark the consummation of the

agency's decisionmaking process" as to all of the many recommendations, strategies, and topics discussed within them; nor do they in any sense determine "rights or obligations" or themselves impose "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

### C. The AARPs Are Privileged and Protected From Disclosure Even if Discovery Were Warranted

For these reasons, even if the ARRPs were not privileged, there would be no legal basis for ordering their disclosure now. But the ARRPs *are* privileged. We have previously explained that agencies are not required to take any step contemplated in an ARRP, and an ARRP may change (drastically, even) as the agency's thinking and priorities change. ARRPs are necessarily predecisional because they typically include plans for changes that would take place many years in the future, if ever; and they contain many recommendations distinct from specific RIFs. ECF No. 88-1 ¶¶ 3-8. Plaintiffs' latest filing does not meaningfully engage with any of this. And Plaintiffs' assertion that Defendants "assertion of privilege rests on boilerplate statements that ARRPs contain 'highly sensitive information,'" Request at 5, is false. As we have explained, "[s]uch information includes strategies for agency negotiations with unions; plans and strategies for personnel reorganization that may or may not materialize, but might seriously hurt agency recruitment and retention if released; plans and strategies regarding present and future regulatory changes; plans and strategies for present and future appropriations requests; plans and strategies for congressional engagement; and plans and strategies for agency IT management." ECF No. 88-1 ¶ 4.

Plaintiffs also repeat their claim that portions of an ARRP from the National Endowment for the Humanities (NEH) previously made public undermine Defendants' assertion that the ARRPs are privileged and that their disclosure would irreparably harm the Government. Request at 6. We have already thoroughly addressed this: NEH is a not a defendant in this case; it is a small agency with a minuscule budget, that implements a limited set of statutory authorities, and there is no basis to conclude that the content of NEH's Plan and the practical impacts of its release would be the same as disclosure of the Plans of the actual defendants in this case; Plaintiffs' submission of the NEH ARRP did not include a Phase 2 ARRP; and in any event it is clear that even the NEH ARRP documents Plaintiffs did submit in this case contain information that is predecisional and

deliberative in nature. ECF No. 103 at 8. One agency's choice to publicize a deliberative document does not bind the rest of the federal government to the same choice.

Plaintiffs also assert that "Defendants' claim that disclosure might seriously hurt agency recruitment and retention if released cannot be squared with the government's public statements that it plans to radically dismantle the federal workforce through 40 RIFs in 17 agencies previously enjoined in this case." Request at 6. To start, as explained below, those RIFs have not been finalized, many were in an early stage, and some are not now going forward. Nor do Plaintiffs have any basis to claim that these unfinalized RIFs were intended to "radically dismantle the federal workforce." In any event, this argument is a non-sequitur. Defendants' point is that "plans and strategies for personnel reorganization *that may or may not materialize*" would hurt agency recruitment and retention. ECF No. 88-1 ¶ 4 (emphasis added). Even if Defendants decide to go forward with some RIFs, that is not a basis for requiring mass disclosure of ARRPs—which include many potential plans (both RIFs and items unrelated to RIFs) that *have not* been finalized and decided upon.

As to the Court's Order, respectfully, that Order does not engage with any of the Government's arguments—summarized above—as to why the ARRPs are predecisional and deliberative. The Court stated that "[t]he Court is of the view that, at minimum, the final versions of the ARRPs at the 17 agencies referenced before the Supreme Court are not covered by the deliberative process privilege." If the Court's point was that these ARRPs are not predecisional and deliberative insofar as agencies subsequently decided to actually undertake RIFs, that is incorrect. First, as explained below, Defendants' representation before the Supreme Court did not refer to finalized and implemented RIF decisions. Second, even this view would not justify ordering disclosure of the *entire* ARRPs. But more fundamentally, "[a] predecisional document is one prepared in order to assist an agency decisionmaker in arriving at his decision." *Assembly of State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 920 (9th Cir. 1992) (quotation marks omitted). To the extent the Court was suggesting that an otherwise predecisional communication loses its privileged status after a decision is made, that is not the law.

Defendants' Opposition to Plaintiffs' Request for Expedited Discovery and Request for Modification
3:25-cv-3698-SI

12

In addition, Defendants are respectfully unable to understand the Court's assertion that "[i]f defendants considered these RIFs enjoined by the Court's preliminary injunction, then it follows that the RIFs resulted from the defendant agencies' ARRPs." ECF No. 177 at 2. The Court's preliminary injunction broadly enjoined Defendants "from taking any actions to implement or enforce sections 3(c) and 3(e) of Executive Order 14210 or the February 26, 2025 OMB/OPM Memorandum." ECF No. 124 at 47-48. That injunction encompassed RIFs undertaken pursuant to these sources. Whether an agency's plans were within the scope of the Court's broad injunction is independent of whether agency RIF plans, and plans on the many other subjects discussed in ARRPs, are predecisional and deliberative. The ARRPs are privileged.

### D. Plaintiffs Have Not Overcome the Privilege

It is true, as Plaintiffs and the Court note, that the deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need in civil litigation. But that requirement is not met here.

Putting aside that there is no basis for compelling disclosure of the ARRPs as part of an APA case (as discussed above), Plaintiffs provide no intelligible explanation as to how disclosure of the ARRPs is relevant to any live issue in this case. Plaintiffs appear to simply insist that the Court needs access to the ARRPs to determine their legality. Request at 4. This Court has no authority to directly review the ARRPs for legality unless the ARRPs are final agency action reviewable under the APA. They are not, and even Plaintiffs again appear to implicitly acknowledge this. *See* Request at 4 (contending that "[t]he ARRPs and related documents will shed light on the scope and nature of actions implementing these orders"). Nor do Defendants understand what relief Plaintiffs think this Court could grant based on its review of agency ARRPs. If, for example, a particular agency ARRP contemplated future RIFs, the Court obviously could not reach out and enjoin the agency from carrying out RIFs before the agency made a decision, and before the agency provided a contemporaneous explanation for that decision. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 735 (1998)[3] (challenge to an agency plan was not

---

[3] To be clear, Defendants do not suggest the ARRPs are anything like even the plans at issue in *Ohio Forestry Association*, and they obviously are not.

Defendants' Opposition to Plaintiffs' Request for Expedited Discovery and Request for Modification
3:25-cv-3698-SI
13

ripe because of "the possibility that further consideration will actually occur before the [p]lan is implemented").

Plaintiffs also contend that disclosure of the ARRPs is necessary because "Defendants continue to contest significant facts relevant to Plaintiffs' claims of unlawful action, including whether Defendants have approved these plans at all, and what, if any, approved actions are imminent." Request at 5. As to the purported dispute about OMB/OPM approval, this does not matter because the Supreme Court has now held that the Workforce Memorandum—including its directive that Federal Agency Defendants submit ARRPs to OPM and OMB for approval—is likely lawful. And nothing about the ARRPs can shed light on whether the Workforce Executive Order and Workforce Memorandum are lawful; put differently, if Plaintiffs are going to emphasize that the Supreme Court only held that the Executive Order and Memorandum are "likely" lawful, they need to focus on something that is relevant to altering the Court's nearly unanimous conclusion—and agency ARRPs by definition are not relevant to the lawfulness of the Executive Order and Memorandum that preceded them. In any event, mass disclosure of ARRPs and all of the highly sensitive information contained within them is obviously not narrowly tailored to resolve a dispute about whether OPM/OMB have approved them (indeed, Defendants do not even understand why Plaintiffs apparently believe that disclosure of the ARRPs themselves would necessarily answer that question).

As to "what, if any, approved actions are imminent"—even assuming that the ARRPs would shed light on that question—Plaintiffs provide no legal theory under which they are entitled to this information. Plaintiffs insist that "[t]he ARRPs and related documents will shed light on the scope and nature of actions implementing these orders." Request at 4. But Plaintiffs' interest in and speculation about such *future* steps only underscores that, if and when agencies take actions that affect Plaintiffs—such as RIFs, reorganizations, regulatory changes, or other actions—Plaintiffs can attempt to challenge those actions when they occur. And at that time, the tribunal (whether that tribunal is a federal district court, the MSPB, or the FLRA) can evaluate the legality of those actions based on the contemporaneous record and the agency's explanation.

Finally, the Court's Order also stated that "[s]hould defendants have a proposal for how to make disclosure of the ARRPs more workable or more narrowly tailored, the Court encourages defendants to include that proposal in their response, with the caveat that the Court is not inclined to order the near-total redactions defendants have proposed to date." ECF No. 177 at 2. Respectfully, there is no lawful basis to order disclosure of any portion of the ARRPs, and Defendants reserve their right to seek mandamus relief from any order compelling disclosure, in whole or in part. With those caveats, if the Court is inclined to order disclosure, any such order should at the very least be limited to the ARRPs for the Agency Defendants identified in paragraph 14 of the OPM Declaration—i.e., the agencies referenced in the Government's Supreme Court application—and the disclosure should be strictly limited to those portions of the ARRPs discussing potential RIFs. And at the very least, the Court should allow Defendants to submit versions of ARRPs that redact the most sensitive portions of the documents.

### III. The Court Should Stay Any Further Disclosure Order

Finally, if the Court orders disclosure of any ARRPs or orders disclosure of any additional information regarding potential future RIFs, Defendants respectfully request that the Court stay such an order pending final resolution of a petition for mandamus relief from the Ninth Circuit if such a petition is authorized by the Solicitor General. At a minimum, the Court should administratively stay any such order for at least seven days. The Supreme Court and Courts of Appeals have repeatedly stepped in to at least temporarily block district court discovery orders implicating information that the Government views as privileged. *United States DOGE Service et al. v. CREW*, No. No. 24-1246 (24A1122), 145 S. Ct. 1981 (2025); *In re U.S. Department of State et al.*, No. 25-1658 (1st Cir. July 11, 2025). The Court should stay any future ruling here to allow for meaningful review of such ruling and to permit orderly briefing in the Court of Appeals.

### IV. Potential Future RIFs that Agencies Have Not Finalized Are Not an Appropriate Subject for this Court's Inquiry.

On May 16, 2025, Defendants applied to the U.S. Supreme Court for a stay of this Court's May 9 temporary restraining order. *Trump v. Am. Fed. of Gov't Emps.*, No. 24A1106 (U.S. May 16, 2025). The application noted that the "Office [of the Solicitor General] ha[d] been informed

by OPM that about 40 RIFs in 17 agencies were in progress and are currently enjoined by the TRO." *Id*. at 29. On Wednesday, this Court ordered Defendants to "provide a list of the 'about 40 RIFs in 17 agencies' that defendants referenced in their Supreme Court stay application." ECF No. 177 at 2. The attached declaration explains that Defendants calculated this figure based on an early step in RIF planning: OPM approval under 5 C.F.R. § 351.402(c) of a competitive area that had been in effect for less than 90 days.[4] A mere request for such approval does not mean that a decision to engage in RIFs, let alone the specific scope of any RIFs, is close to final. Even after competitive area identification and a waiver application, there are still *eight* additional steps before the "Formal RIF Notice Period" and "RIF Implementation & Separation." OPM Decl. ¶ 9. Indeed, several agencies are now not planning to proceed with several of the RIFs that had been planned at other times. *Id*. ¶ 17. And for the reasons explained above, future agency RIF decisions are not part of this case and this Court lacks authority to enjoin them, particularly before they are implemented. If the Court directs Defendants to provide additional information about potential future, not-yet-finalized RIFs, Defendants respectfully that the Court administratively stay any such order consistent with the arguments in Part III above.

## CONCLUSION

The Court should deny Plaintiffs' Request in all respects.

---

[4] Plaintiffs themselves appear to acknowledge this. They state that they are aware of RIF notices issued by only nine federal agencies before the Court's TRO (and its later preliminary injunction) enjoined the issuance of new RIF notices. Request at 8.

Defendants' Opposition to Plaintiffs' Request for Expedited Discovery and Request for Modification
3:25-cv-3698-SI

16

Dated: July 14, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
Acting United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER HALL
Assistant Branch Director

s/ Andrew M. Bernie
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-7203
andrew.m.bernie@usdoj.gov

*Counsel for Defendants*