CRAIG H. MISSAKIAN
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
ANDREW M. BERNIE
Trial Attorney
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-7203
andrew.m.bernie@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.* <br><br>     Plaintiffs, <br><br>     v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br>     Defendants. | Case No. 3:25-cv-03698-SI <br><br> **DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND ORDER QUASHING PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS; MEMORANDUM OF POINTS AND AUTHORITIES** |

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................................... 1

BACKGROUND....................................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

I.      The Court Should Not Order Discovery Before Resolving the Government's
        Forthcoming Motion to Dismiss............................................................................... 5

II.     Discovery is unwarranted on Plaintiffs' APA Claims, the only claims even
        plausibly left open by the Supreme Court's Stay Order ...................................... 8

III.    RFP 1 Seeks Discovery on an Issue Foreclosed by the Supreme Court's Stay
        Order ........................................................................................................................ 10

IV.     RFP 1 is Particularly Improper and Overbroad as Applied to DOGE ............................ 12

V.      RFP 1 Seeks Privileged Information...................................................................... 14

VI.     RFPs 2 and 3 are not Relevant to any Issue in this Case..................................... 15

VII.    The Discovery is not Relevant to Any Relief the Court Could Grant. ............................ 16

CONCLUSION....................................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Assembly of State of Cal. v. U.S. Dep't of Com.*,
  968 F.2d 916 (9th Cir. 1992) ................................................................................ 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 5

*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................................................. 16

*Blue Mountains Biodiversity Project v. Jeffries*,
  99 F.4th 438 (9th Cir. 2024) .................................................................................. 9

*Carter v. U.S. Department of Commerce*,
  307 F.3d 1084 (9th Cir. 2002) ....................................................................... 14, 15

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
  450 F.3d 930 (9th Cir. 2006) ................................................................................. 9

*Energy Rsch. Found. v. Def. Nuclear Facilities Safety Bd.*,
  917 F.2d 581 (D.C. Cir. 1990) ............................................................................. 14

*Hewlett Packard Enter. Co. v. Inspur Grp. Co.*,
  No. 24-CV-02220-JST, 2024 WL 4631665 (N.D. Cal. Oct. 29, 2024) ................. 5

*In re United States*,
  583 U.S. 29 (2017) ................................................................................................. 5

*Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*,
  466 F. Supp. 3d 100 (D.D.C. 2020) .................................................................... 14

*Lands Council v. Powell*,
  395 F.3d 1019 (9th Cir. 2005) ............................................................................... 8

*Oceana, Inc. v. Ross*,
  920 F.3d 855 (D.C. Cir. 2019) ............................................................................... 9

*Soucie v. David*,
  448 F.2d 1067 (D.C. Cir. 1971) ........................................................................... 14

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
  100 F.3d 1443 (9th Cir. 1996) ......................................................................... 9, 10

*Trump v. Am. Fed. of Gov't Emps.*,
  No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025) ............................... 4, 5, 11

Defendants' Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents; Memorandum of Points and Authorities

ii

*United States DOGE Service et al. v. CREW*,
   No. No. 24-1246 (24A1122), 145 S. Ct. 1981 (2025) .......................................... 14

*United States v. Irvin*,
   127 F.R.D. 169 (C.D. Cal.1989) ......................................................................... 14

**Other Authorities**

Exec. Order 14158,

   90 Fed. Reg. 8441 (Jan. 20, 2025) ..................................................................... 12

Exec. Order 14210,

   90 Fed. Reg. 9669 (Feb. 11, 2025) ....................................................................... 3

### INTRODUCTION

The Court should promptly grant a protective order and/or quash Plaintiffs' Request for Production of Documents, ECF NO. 178-1 Ex. A (RFPs), thereby relieving Defendants of any obligation to respond to the RFPs. The RFPs are procedurally and substantively flawed for at least seven reasons.

*First*, any discovery is premature. Defendants have not yet responded to the Complaint and will move to dismiss the Complaint next week. This Court should rule on that motion before entertaining Plaintiffs' request for discovery in furtherance of legal claims that are inconsistent with the Supreme Court's July 8 order staying this Court's May 22 preliminary injunction.

*Second*, the only claims challenging individual Agency RIF and Reorganization Plans (ARRPs) under any theory are Administrative Procedure Act (APA) claims. Similarly, the only claims as to which this Court reserved decision in issuing the preliminary injunction the Supreme Court stayed are APA claims. There is no basis for any discovery at all in adjudicating an APA claim, let alone discovery before an administrative record is certified and before Defendants have even responded to the Complaint.

*Third*, the RFPs principally seek communications related to an issue—whether the Office of Management and Budget (OMB) and Office of Personnel Management (OPM) are "approving" ARRPs—that is irrelevant in light of the Supreme Court's stay order. That order concluded, among other things, that the February 26, 2025 OPM/OMB Memorandum (Workforce Memorandum) was likely lawful. The Workforce Memorandum directs that ARRPs be submitted to OMB and OPM for review and approval, and the supposed illegality of that directive was *the central component* of Plaintiffs' argument before the Supreme Court (as well as this Court); and in the Supreme Court, Defendants neither contested Plaintiffs' assertion that such approvals were required by the Workforce Memorandum nor challenged any of the alleged facts Plaintiffs provided. The Supreme Court, by a lopsided margin, nonetheless concluded that the Memorandum was likely lawful.

*Fourth*, the discovery Plaintiffs seek against the Department of Government Efficiency (DOGE) is particularly without basis. "DOGE" is not a single juridical entity that can be sued.

Rather, it is the umbrella term for a government-wide *initiative* that includes the United States DOGE Service (USDS), a temporary organization, and DOGE teams within federal agencies— teams comprised of *agency employees* who report to agency leadership. Plaintiffs' RFPs seek discovery as to this entire initiative, including Federal Agency Defendants' DOGE Teams—not only would it be extraordinarily burdensome to collect such communications from more than two dozen federal agency defendants, but *intra-agency* communications concerning ARRPs are not even relevant to Plaintiffs' (legally foreclosed) arguments. Discovery as to USDS (to the extent Plaintiffs seek such discovery) is also improper. The Complaint pleads no facts suggesting USDS's involvement in review and approval of ARRPs. USDS is also not an agency subject to the APA, and it would likewise be improper to grant discovery against USDS before resolving that legal question in response to Defendants' forthcoming motion to dismiss.

*Fifth*, RFP 1—which encompasses predecisional communications between OMB and/or OPM on the one hand and Federal Agency Defendants on the other (and given Plaintiffs' definition of DOGE, also seeks a massive trove of intra-agency documents)—seeks documents that are largely if not entirely protected from disclosure by the deliberative process privilege.

*Sixth*, Plaintiffs' demand for applications for waivers of RIF notice periods and all responses by OMB or OPM to any such applications is not plausibly relevant to any issue before the Court. Such information would at most reveal potential future RIFs that agencies might (or might not) undertake in the future, and which are not part of this case.

*Seventh*, the discovery Plaintiffs seek is irrelevant to any relief this Court could lawfully grant. Contrary to the apparent premise of Plaintiffs' motion, the Court cannot review for lawfulness the ARRPs themselves, which not even Plaintiffs contend are final agency actions reviewable under the APA. As to potential future RIFs, any such RIFs must be challenged under the comprehensive, reticulated administrative-judicial review scheme set forth in the Federal Service Labor-Management Relations Statute (FSLMRS) and the Civil Service Reform Act (CSRA). Or, if such potential future RIFs can be challenged in federal district court, they must be adjudicated after such RIF decisions are made, based on the administrative record certified by the agency, as part of a new civil action. And even if the Court could conclude that an agency's ARRP

1  was unlawfully submitted and/or approved, no injunction could issue because ARRPs do not

2  commit agencies to conduct any RIFs (or other actions) described therein. Any RIFs are

3  independent decisions of the agency that—if challengeable in district court at all—must be judged

4  based on the administrative record and the reasons provided by the agency.

5                                        **BACKGROUND**

6          More than five months ago, on February 11, 2025, President Trump signed Executive

7  Order 14210 (Workforce Executive Order), entitled "Implementing the President's 'Department

8  of Government Efficiency' Workforce Optimization Initiative." Exec. Order No. 14210, 90 Fed.

9  Reg. 9669 (Feb. 11, 2025). Among other things, the Workforce Executive Order directed "Agency

10  Heads [to] promptly undertake preparations to initiate large-scale reductions in force (RIFs),

11  consistent with applicable law." *Id.* § 3(c). It also required that, within 30 days, "Agency Heads

12  shall submit to" OMB and OPM an "Agency Reorganization Plan[]," and "a report that identifies

13  any statutes that establish the agency, or subcomponents of the agency, as statutorily required

14  entities." *Id.* § 3(e). That report "shall discuss whether the agency or any of its subcomponents

15  should be eliminated or consolidated." *Id.* The Order adds that it "shall be implemented consistent

16  with applicable law and subject to the availability of appropriations," *id.* § 5(b), and shall not "be

17  construed to impair or otherwise affect the authority granted by law to an executive department,

18  agency, or head thereof," *id.* § 5(a)(i).

19          About two weeks later, OPM and OMB jointly issued the Workforce Memorandum to

20  assist with implementation of the Executive Order. ECF No. 37-1 App. 2. Noting agencies' March

21  13 deadline under the Executive Order, the memorandum set "guidance on these Agency RIF and

22  Reorganization Plans." *Id.* The guidance identifies principles for agencies' consideration in

23  preparing plans while cautioning that "[a]gencies should review their statutory authority and

24  ensure that their plans and actions are consistent with such authority." *Id.* It also set a two-phase

25  timeline for the submission of ARRPs with the first due on March 13 and the second due on April

26  14. *Id.* at 4. A "Sample RIF Timeline" attached to the memorandum describes four steps for an

27  agency to implement a RIF. *Id.* at 7. As to both Phase 1 and Phase 2 ARRPs, the Workforce

28

Memorandum states that agencies should submit "ARRPs to OMB and OPM for review and approval." *Id.* at 3, 4.

More than two months after OPM and OMB issued the Memorandum, Plaintiffs filed suit on April 28, 2025. ECF No. 1. The Court granted Plaintiffs' motion for a preliminary injunction on May 22. ECF No. 124. Defendants appealed. ECF No. 125. After a divided Ninth Circuit panel denied Defendants' motion to stay the injunction pending appeal, Defendants sought such relief from the Supreme Court. As discussed further below, Plaintiffs centered their challenge to the Memorandum on the supposed illegality of the Memorandum's directive that OMB/OPM approve ARRPs, and the Government neither contested Plaintiffs' characterization that the Memorandum requires such approval, nor addressed any of the supposed facts Plaintiffs highlighted related to that point.

On July 8, the U.S. Supreme Court stayed this Court's preliminary injunction. *Trump v. Am. Fed. of Gov't Emps.*, No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025). The Court concluded that "the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful" and that "the other factors bearing on whether to grant a stay are satisfied." *Id.* *1. Only one Justice dissented. *Id.* (Jackson, J., dissenting).

The next day, Plaintiffs filed a request in this Court for an order requiring the "production of all ARRPs that the Federal Defendant Agencies had submitted to OMB and/or OPM and related documents." ECF No. 176 at 9. Defendants responded to that request yesterday. ECF No. 208.

As relevant to this motion, Plaintiffs have since served the RFPs. RFP 1 broadly requests the following:

> All communications between any Federal Agency Defendant and OMB, OPM, or DOGE discussing any Agency RIF and Reorganization Plan ("ARRP") (in whole or any part), including but not limited to any approvals or disapprovals of those Plans (in whole or any part, formally or informally) and any discussion of whether the contents of those Plans meets or do not meet expectations, communicated by OMB, OPM, or DOGE to any Federal Agency Defendant, from February 26, 2025 to the present.

ECF No. 178-1 Ex. A (RFPs) at 8.[1] The RFPs define "DOGE" as "including the U.S. DOGE Services (USDS), the U.S. DOGE Service Temporary Organization, [and] *members of Agency*

---

[1] When referencing the RFPs, we use the pagination on the ECF stamp for ECF No. 178-1, rather than in the underlying document.

Defendants' Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents; Memorandum of Points and Authorities

4

*DOGE Teams.*" *Id.* (emphasis added). RFP No. 2 seeks "all Federal Agency Defendant applications for waivers of statutorily-mandated RIF notice periods" and RFP No. 3 seeks all responses by OMP or OPM to any such applications. *Id.*

## ARGUMENT

**I.    The Court Should Not Order Discovery Before Resolving the Government's Forthcoming Motion to Dismiss.**

Courts ordinarily wait to order discovery until resolving any motions to dismiss. District courts in the Ninth Circuit typically follow a two-part test: "First, the pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is aimed." *Hewlett Packard Enter. Co. v. Inspur Grp. Co.*, No. 24-CV-02220-JST, 2024 WL 4631665, at *1 (N.D. Cal. Oct. 29, 2024) (quotation marks omitted). "Second, the court must determine whether the pending, potentially dispositive motion can be decided absent additional discovery." *Id.* (quotation marks omitted).

And rightly so. A party should not be able to engage in intrusive discovery to prove up a complaint that suffers from fatal defects if taken as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.") (cleaned up); *see also In re United States*, 583 U.S. 29, 32 (2017) (per curiam) (vacating and remanding to the district court with instructions to rule on the government's threshold arguments regarding jurisdiction and reviewability under the APA which "likely would eliminate the need for the District Court to examine a complete administrative record.").

Both prongs set forth above are met here, as the Government's forthcoming motion to dismiss will be dispositive of the entire case and will not require discovery. Defendants' motion will show that all seven claims in the Amended Complaint depend on the mistaken view that the Workforce Executive Order, the Workforce Memorandum, or both are unlawful—a theory the Supreme Court has now rejected. The five claims against President Trump, OPM, OMB, and DOGE must fail.

- Claim I contends that the Workforce Executive Order exceeds the President's lawful authority, *id.* ¶¶ 387-88;

- Claim II contends that the Workforce Memorandum exceeds statutory authority, *id.* ¶ 394;

- Claim III similarly contends that the Workforce Memorandum exceeds statutory authority by, according to Plaintiffs, "requiring agencies to submit Agency RIF and Reorganization Plans to OMB and OPM for approval; requiring agencies to include in those plans large-scale RIFs; and imposing an assortment of other parameters and requirements," *id.* ¶ 402;

- Claim IV contends that OPM and OMB's issuance of the Workforce Memorandum and its supposed approval of ARRPs necessarily order agencies to, among other things, cede their decision-making authority to OPM and OMB, require agencies to disregard statutory requirements, categorically require large-scale RIFs that are necessarily contrary to agency functions and statutory requirements, require agencies to abandon reasoned decision-making, and require agencies to act under unrealistic timeframes inconsistent with reasoned decisionmaking, *id.* ¶¶ 410-411;

- Claim V asserts that the Workforce Memorandum was unlawfully issued without notice-and-comment procedures, *id.* ¶¶ 412-419.

Allowing any of those claims to go forward would be inconsistent with the Supreme Court's order staying the preliminary injunction and holding that the Executive Order and Memorandum are both likely lawful.

The same is true of Claims VI and VII. Although these purport to be APA claims against Federal Agency Defendants, Plaintiffs do not challenge any particular ARRP as unlawful on its own terms—Plaintiffs do not argue, for example, that any particular ARRP is arbitrary and capricious or contrary to statutes governing the specific agency that submitted them. And of course, Plaintiffs could not have done so, since these deliberative planning documents have not been made public. Rather, Plaintiffs' APA claims assert that the agencies acted unlawfully *by following* the directives in the Workforce Executive Order and Workforce Memorandum. Claim

Defendants' Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents; Memorandum of Points and Authorities

VI contends that the Federal Agency Defendants acted unlawfully by "creat[ing] and submit[ing] for OMB and OPM approval an ARRP, according to the parameters imposed by OMB, OPM and DOGE" and "have exceeded their authority by implementing the President's unconstitutional plans." *Id.* ¶¶ 423-24. Claim VII asserts that "[t]he actions of the Federal Agency Defendants, including but not limited to implementing the President's unconstitutional orders to reorganize and RIF employees, pursuant to the terms dictated by the President, violate the APA" by, among other things (and essentially mirroring the allegations in Claim IV), ceding decisionmaking authority, following "the President's unconstitutional directions and directions of OMB and OPM," engaging "in large-scale RIFs that are necessarily contrary to agency's ability to maintain required function and authorizing statute," abandoning reasoned decisionmaking, and acting under unrealistic timetables. *Id.* ¶ 431.

Defendants recognize that this Court previously rejected their legal arguments concerning both the merits of the Workforce Executive Order and Workforce Memorandum as well as arguments concerning this Court's lack of jurisdiction. But the Supreme Court's order directs a different answer to the Court's merits conclusions. Because the Supreme Court concluded that the Executive Order and Memorandum are likely lawful after considering Plaintiffs' arguments that those documents directed agencies to act unlawfully, Plaintiffs cannot proceed with claims premised on assertions that agencies are acting unlawfully by following the directives set forth in those documents.[2]

---

[2] The Supreme Court's order also undermines the Court's prior jurisdictional analysis. This Court previously concluded that the CSRA and FSLMRS did not preclude district-court jurisdiction. ECF No. 124 at 22-26. Defendants continue to disagree with the Court's prior reasoning, but that reasoning no longer applies. The Court believed it had jurisdiction because Plaintiffs brought constitutional and statutory challenges to the Workforce Executive Order and Workforce Memorandum that, in the Court's view, were not the sorts of claims as to which Congress intended to preclude district-court review under the APA. *Id.* at 23 (claims here "touch[] on fundamental questions of executive authority and separation of powers"); *id.* at 24 (asserting that "claims at issue here are wholly collateral to the review authority of the Federal Labor Relations Authority and the Merit Systems Protection Board" because "this lawsuit involves questions of constitutional and statutory authority and the separation of powers"); *id.* at 25 (characterizing claims as "claims that involve broader questions about constitutional and administrative law"); *id.* ("There is nothing efficient about sending constitutional claims to a body that cannot decide them, only to wait for an opportunity to appeal."); *id.* (stating that "the claims here involve issues related to the appropriate

Even if the forthcoming motion to dismiss is not dispositive of the entire case—which Defendants believe it will be—that motion will at the very least inform and likely drastically narrow what issues could even conceivably be appropriate for discovery. And that narrowing will almost certainly be relevant to the permissibility of Plaintiffs' proposed discovery. RFP 1 specifically is squarely directed at supposed OPM/OMB approvals of ARRPs and other communications concerning them. But as explained in Part III below, the Supreme Court's order has taken that issue off the table in this case. The Court should not allow Plaintiffs' requested discovery until it resolves that legal question, and otherwise decides what, if anything, is left of this case.

## II. Discovery is unwarranted on Plaintiffs' APA Claims, the only claims even plausibly left open by the Supreme Court's Stay Order.

The only claims even plausibly still live after the Supreme Court's decision are APA claims. The only claims against Federal Agency Defendants are APA claims. *See* Complaint ¶¶ 420-431. And Plaintiffs themselves have previously noted that the only claims on which this Court reserved decision in issuing the since-stayed preliminary injunction are APA claims. ECF No. 176 at 2. That matters because there is no legal hook for this Court ordering discovery as part of an APA claim, particularly at this early juncture of the case. If Plaintiffs challenge some future agency decision under the APA—such as a RIF—any such challenge must be based on the administrative record compiled by the agency (again, assuming arguendo that such challenges can even be brought in federal district court under the APA, which they cannot be). *See Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (stating this rule and identifying narrow exceptions to it).

---

distribution of authority to and within the executive branch"). But the Supreme Court has now held that the Workforce Executive Order and Workforce Memorandum are likely lawful. And to the extent a future plaintiff alleges that a future RIF violates an agency governing statute, or is arbitrary and capricious—the only type of claim that the Supreme Court's Order logically leaves open— there is no serious question that that is the sort of claim Congress intended to be channeled through the exclusive remedial scheme.

To be sure, future plaintiffs are free to *argue* that the communications Plaintiffs now seek should be considered part of the administrative record in challenges to particular RIFs, reorganizations, or other agency decisions—and that issue can be litigated in those cases. Any such future arguments should fail since deliberative materials are not part of the administrative record. *See, e.g.*, *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024); *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). But in any event, there is no basis for compelling the expedited disclosure of ARRPs, in a purported APA challenge not directed at any alleged final agency action, before any record has been certified, and before Defendants have even responded to the Complaint.

And to the extent Plaintiffs are arguing that the "final agency action" justifying compelled disclosure of the communications they seek is the Workforce Memorandum, that theory does not work either. For one, the Workforce Memorandum is also not a final agency action for reasons Defendants have already extensively briefed. For another, the Supreme Court has now ruled as a matter of law that the Memorandum is likely lawful. And additionally, "[j]udicial review of an agency decision typically focuses on the administrative record in existence *at the time of the decision*." *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (emphasis added). And "[p]arties may not use "post-decision information as a new rationalization either for sustaining or attacking the Agency's decision." *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). Even if the Workforce Memorandum were a final agency action for APA purposes, communications between OPM/OMB about ARRPs after the Workforce Memorandum was issued would obviously not be part of the administrative record for the Workforce Memorandum.[3]

---

[3] Nor would any of the four exceptions allowing supplementation with extra-record materials even plausibly apply. The communications Plaintiffs seek would not be "necessary to determine whether" whether OPM and OMB "considered all relevant factors and . . . explained its decision," OPM and OMB have not "relied on" the communications to justify the Memorandum, supplementing the record with them would not be "necessary to explain technical terms or complex subject matter," and Plaintiffs have not made a showing of "agency bad faith" warranting their disclosure. *Sw. Ctr. for Biological Diversity* 100 F.3d at 1450. In any event, again none of this has been briefed; no administrative record has been produced; and again, Defendants have not even yet responded to the Complaint.

Finally, as we explain further below, even if the communications Plaintiffs sought could be characterized as part of the administrative record for ARRPs, ARRPs are not final agency action that this Court could review (even putting aside Defendants' arguments that the ARRPs are privileged, *see* ECF No. 208 at 11-13).

**III.    RFP 1 Seeks Discovery on an Issue Foreclosed by the Supreme Court's Stay Order.**

Putting aside that any discovery is improper (especially at this time), RFP 1 is contrary to the Supreme Court's stay order. As noted, that RFP seeks "[a]ll communications between any Federal Agency Defendant and OMB, OPM, or DOGE discussing any Agency RIF and Reorganization Plan." Plaintiffs assert that this discovery is purportedly needed because Defendants "continue to contend that OMB/OPM are not approving or disapproving, or not formally approving or disapproving, ARRPs" which they assert is "inconsistent with the record, which establishes that agencies were already implementing, or were poised to implement, their ARRPs, including through large-scale RIFs, and that the OMB/OPM Memorandum does not allow agencies to begin such implementation until the ARRPs are approved by OMB and OPM." ECF No. 178 at 4. Thus, Plaintiffs contend, "communications between OMB/OPM/DOGE and the Federal Defendant Agencies regarding the ARRPs will shed light on OPM/OMB/DOGE's orders and directives to agencies that may constitute approval or rejection (whether formal or informal) of all defendant agencies' ARRPs." *Id.*

This theory is inconsistent with the Supreme Court's decision. Opposing Defendants' request for a stay in that Court, Plaintiffs—as they have done in this Court—focused *heavily and repeatedly on OPM/OMB approval* of ARRPs in arguing that the Workforce Memorandum was unlawful. *See* 24A1174 (S. Ct.) (Plaintiffs' Response to Application Filed June 9, 2025) at 3 ("[T]hrough their Memorandum, OMB and OPM amplified and accelerated the President's orders by imposing unworkable timeframes and assuming for themselves the power to approve or veto proposals by individual federal agencies…"); *id.* at 8-9 ("The Memorandum also instructed each federal agency to submit a combined ARRP implementing the EO, for OMB and OPM's review and approval." (cleaned up)); *id.* at 9 (contending that "Respondents established, and the

Government did not dispute, that OMB and OPM *rejected* some ARRPs for failure to eliminate enough positions, requiring agencies to impose greater cuts to programs and positions"); *id.* ("Soon after these submission deadlines for OMB/OPM 'approval,' agencies across the federal government commenced implementation of reorganizations and RIFs according to the President's parameters."); *id.* at 27 ("Respondents are likely to prevail on claims that OMB and OPM's actions directing federal agencies to create and implement ARRPs on incredibly truncated timeframes, and to obtain approval from OMB and OPM for those plans, exceeded their authority and violate the APA."); *id.* (stating that no statutes "authorize OMB to require agencies to reorganize or RIF employees (or to do so in particular timeframes or scale or scope), or to make substantive decisions for other agencies on matters Congress did not delegate to OMB"); *id.* ("OPM does not have authority to make RIF or reorganization decisions either.").

And for purposes of its stay application, Defendants *did not dispute* Plaintiffs' argument that the Memorandum requires OPM and OMB to approve ARRPs, and instead argued that any such approval requirement was *lawful*. 24A1174 (S. Ct.) (Stay Application Filed June 2, 2025) at 23 ("To be sure, the Memo also issues directives to agencies, principally by instructing them to submit Plans to OPM and OMB 'for review and approval' by specified dates. But those directives fall comfortably within OPM's and OMB's statutory authorities and the process established by the President in the Executive Order." (internal citation omitted)). Nor did Defendants choose to engage with Plaintiffs' supposed evidence that OPM and OMB have allegedly rejected some ARRPs for not proposing enough reductions.

The Supreme Court nonetheless concluded that "the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful." *Trump v. Am. Fed. of Gov't Emps.*, No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025). Because the illegality of the supposed approval requirement was central to Plaintiffs' argument, the Government did not dispute in that Court that OPM/OMB approval was required, and the Court held that the Workforce Memorandum was likely lawful, the Court should not read the Supreme Court's order as leaving open the question whether any OPM/OMB approval requirement was lawful.

Though irrelevant here, it is also incorrect that Defendants have affirmatively contended that OPM/OMB approval is not occurring. As Defendants have explained, we have not made or relied on any factual representations in Defending the merits of this case, and have instead relied upon the Workforce Executive Order and Workforce Memorandum themselves, as well as other legal sources plainly establishing agencies' longstanding authority to conduct RIFs. ECF No. 117 at 3. To the extent Defendants have represented that OPM and OMB are not generally approving or withholding approval of ARRPs or have not approved particular ARRPs, we have done so only to provide the Court with necessary context, i.e., to explain why there are no "approved" versions of ARRPs as opposed to unapproved versions. *See* ECF No. 109 at 5 (directing Defendants, as to certain ARRPs, to provide "(1) the versions of ARRPs submitted to OMB and OPM and (2) the versions of ARRPs approved by OMB and/or OPM"). Plaintiffs are not entitled to conduct discovery regarding a supposed "factual" issue that they manufactured and that, in any event, the Supreme Court's order establishes cannot be the basis for any relief in this case no matter what discovery might hypothetically show.

## IV.    RFP 1 is Particularly Improper and Overbroad as Applied to DOGE.

As noted above, RFP 1 encompasses all communications "between any Federal Agency Defendant and . . . DOGE discussing any "ARRPs. The Department of Government Efficiency or "DOGE" is the umbrella term for the *government-wide initiative* to implement the President's DOGE Agenda. It consists of USDS, the USDS Temporary Organization, and Agency DOGE Teams, which are created by agency heads and composed of employees of those agencies who report to agency leadership. Exec. Order 14,158, § 3(a)–(c), 90 Fed. Reg. 8441 (Jan. 20, 2025). Plaintiffs' discovery requests are clear that they are *not* merely using DOGE as a shorthand reference for USDS, which is a nonstatutory component located within the Executive Office of the President that reports to the White House Chief of Staff. Rather, Plaintiffs' discovery requests define "DOGE" as "including the U.S. DOGE Services (USDS), the U.S. DOGE Service Temporary Organization, *members of Agency DOGE Teams*, and anyone acting on behalf of any of those components, including employees, agents, representatives, officials, and any other affiliated individuals." RFPs at 5 (emphasis added). Thus, RFP 1 appears to seek production of all

intra-agency communications concerning ARRPs, at least if those intra-agency communications include members of the Agency's DOGE Team.

That portion of the request is irrelevant and overbroad. Plaintiffs' legal theory is that OPM and OMB are usurping agency decisionmaking, but that theory is inapplicable to *agency employees*, which agency DOGE Team members are. It is also unreasonable to demand that Defendants collect, compile a privilege log, and/or produce all or a significant portion of intra-agency communications (among all of the more than two dozen Federal Agency Defendants) that discuss those agencies' ARRPs "in whole or any part," let alone to do so within less than two weeks from now.

To the extent Plaintiffs' requested discovery encompasses *USDS*, that too is improper. For one, the Workforce Memorandum is a joint OPM/OMB Memorandum, and the Complaint pleads no facts plausibly alleging USDS's involvement in that Memorandum. The Complaint also includes no allegations that USDS (or the DOGE structure more generally) has any distinct role in the submission and approval of ARRPs. *See, e.g., id.* ¶ 14 (asserting without any basis that agencies "are required to submit plans that follow the President's mandate, according to the President's designs, and that are only effectuated by OMB and OPM (*and DOGE*) approval" (emphasis added)).

In any event, and as Defendants intend to argue in their motion to dismiss, USDS is not an agency that can be sued under the APA. There are multiple cases pending—most of which are in the District Court for the District of Columbia—raising the question whether USDS is an agency for purposes of the Freedom of Information Act. *See, e.g., Ctr. for Biological Diversity v. OMB*, No. 1:25-cv-165 (D.D.C. filed Jan. 20, 2025); *Am. Oversight v. U.S. Dep't of Gov't Efficiency*, No. 1:25-cv-409 (D.D.C. filed Feb. 11, 2025); *CREW v. U.S. DOGE Serv.*, No. 1:25-cv-511 (D.D.C. filed Feb. 20, 2025); *MSW Media, Inc. v. USDS*, No. 1:25-cv-01933 (D.D.C. filed Mar. 28, 2025); *Am. Oversight v. U.S. Dep't of Gov't Efficiency*, No. 1:25-cv-1251 (D.D.C. filed Apr. 23, 2025); and *Project on Gov't Oversight, Inc. v. U.S. DOGE Serv.*, 1:25-1295 (D.D.C. filed Apr. 28, 2025). At least one other case also raises the same question under the APA. *Center for Biological Diversity v. Office of Management and Budget*, No. 1:25-cv-00165-BAH (D.D.C.). Particularly

Defendants' Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents; Memorandum of Points and Authorities

13

because USDS is a White House component that reports directly to the White House Chief of Staff, the Supreme Court has already blocked an overbroad discovery order directed towards USDS related to the question whether USDS *is an agency* under FOIA, for purposes of resolving a motion for summary judgment motion on that threshold question. *United States DOGE Service et al. v. CREW*, No. No. 24-1246 (24A1122), 145 S. Ct. 1981 (2025). The Court should not authorize discovery against USDS before even deciding whether USDS is an agency subject to the APA in the first place.[4]

## V.    RFP 1 Seeks Privileged Information.

In ordering Defendants to respond by today to the motion to shorten time, the Court directed that "defendants shall identify any categorical objections to production of documents responsive to plaintiffs' Request No. 1." Particularly given the two-business-day period Defendants had to respond to Plaintiffs' Motion, we are unable to state at this time what volume of materials Defendants would withhold as privileged if discovery is permitted (and Defendants even more obviously cannot make any such representation with respect to the *intra-agency* documents Plaintiffs seek in the form of communications involving all of the more than two dozen Agency DOGE Teams).

That said, it is highly likely that a significant volume of the materials Plaintiffs seek in RFP 1 are protected from disclosure by the deliberative process privilege. "Federal law recognizes a privilege for pre-decisional, non-factual, non-public communications occurring within federal agencies." *United States v. Irvin*, 127 F.R.D. 169, 172 (C.D. Cal.1989). "To fall within the deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'" *Carter v. U.S. Department of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002). "A predecisional document is one prepared in order to assist an agency decisionmaker in arriving at his decision." *Assembly of State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 920 (9th Cir. 1992) (quotation marks omitted).

---

[4] FOIA's definition of "agency" encompasses the APA's definition of agency. *See Energy Rsch. Found. v. Def. Nuclear Facilities Safety Bd.*, 917 F.2d 581, 583 (D.C. Cir. 1990) (discussing definition of agency in FOIA and finding that "Congress sought to encompass entities that might have eluded the APA's definition in § 551(1)"); *Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971); *Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*, 466 F. Supp. 3d 100, 111 (D.D.C. 2020).

And "[a] predecisional document is a part of the deliberative process, if the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Carter*, 307 F.3d at 1089.

As Defendants have previously argued, the ARRPs are themselves predecisional and deliberative. Intra-agency communications concerning substantive items, strategies, and proposals to be included in what is itself a pre-decisional agency planning document are no less obviously predecisional. And at least the communications in which Plaintiffs appear to be most interested are almost certainly deliberative, as they are crafted to capture substantive give and take within the Executive Branch. *See* RFPs at 8 (seeking communications involving "any discussion of whether the contents of those Plans meets or do not meet expectations"[5]). And again, the potential universe of *intra-agency* documents responsive to the RFPs is quite broad; but intra-agency discussions about plans, techniques, and strategies to include in ARRPs are almost definitionally pre-decisional and deliberative.

## VI.    RFPs 2 and 3 are not Relevant to any Issue in this Case.

As noted above RFP 2 seeks "all Federal Agency Defendant applications for waivers of statutorily-mandated RIF notice periods" and RFP 3 seeks all responses by OMP or OPM to any such applications. Plaintiffs do not even squarely explain why they need this information or to what it is purportedly relevant. Plaintiffs reference "massive RIFs" that they assert are "imminent" and state that they "intend to move for further interim injunctive relief as appropriate," ECF No. 178 at 5; so Defendants assume that the purpose of these RFPs is to collect information for additional motions for emergency relief that Plaintiffs intend to file. That is not a sufficient basis for this discovery. For one, as discussed in the declaration Defendants filed yesterday, such information would not necessarily show that RIF decisions had been finalized, or the scope of any such RIFs, including how many positions would have been affected. *See* ECF No. 208-1 ¶¶ 7-15. And in addition, several agencies are now not planning to proceed with several of the RIFs that

---

[5] To be clear, we do not concede or make any representations that any documents fitting this description exist. We simply note that on its face this language seems to encompass predecisional and deliberative communications.

Defendants' Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents; Memorandum of Points and Authorities

15

1  had been planned at other times. *Id.* ¶ 17.

2  But more fundamentally, and as discussed in the next section, this Court would not have

3  authority to enjoin any such future RIFS, and certainly could not lawfully do so before any RIF

4  decisions were announced, and the agency provided its contemporaneous reasoning for the RIFs.

5  Plaintiffs' bare desire for advanced notice of potential future RIFs that may or may not occur, and

6  that this Court would not have authority to address, is not a legitimate interest warranting

7  discovery, let alone a basis for the expedited pre-motion-to-dismiss discovery Plaintiffs seek.

8  **VII.    The Discovery is not Relevant to Any Relief the Court Could Grant.**

9  Finally, the discovery Plaintiffs seek is not even plausibly relevant to any relief the Court

10  could grant in this case. To the extent Plaintiffs envision this Court considering the documents

11  they seek while reviewing the ARRPs themselves for lawfulness, *see* ECF No. 178 at 4 ("Those

12  communications are therefore highly relevant to the lawfulness of the ARRPs…"), that is a non-

13  starter. This Court has no authority to directly review the ARRPs for legality unless the ARRPs

14  are final agency action reviewable under the APA. They are not, and even the operative Complaint

15  does not appear to contend otherwise. ECF No. 100 ¶ 421 ("*The implementation of ARRPs* by

16  RIFing federal employees, closing offices, functions, and programs, and otherwise reorganizing

17  agency functions are all final agency action under the APA." (emphasis added)); *id.* ¶ 429 (same).

18  The ARRPs do not even debatably "mark the consummation of the agency's decisionmaking

19  process" as to all of the many recommendations, strategies, and topics discussed within them; nor

20  do they in any sense determine "rights or obligations" or themselves impose "legal consequences."

21  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

22  As to challenges to specific RIFs, to the extent any Defendant proceeds to implement a RIF

23  or reorganization, plaintiffs who can establish jurisdiction and plead a viable cause of action may

24  be able to litigate a challenge to that implementation. But after the Supreme Court's stay, the

25  Plaintiffs to this action cannot anchor such claims in the Workforce Executive Order or the

26  Workforce Memorandum. Plaintiffs have no legal right to reach out and seek relief from future

27  RIFs *before* agencies finalize them. A future claim that particular agency RIFs violate the agency's

28  governing statutes or are arbitrary and capricious on grounds separate and apart from the

Defendants' Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents; Memorandum of Points and Authorities

Workforce Executive Order and Workforce Memorandum would (in Defendants' view) need to be channeled through Congress's comprehensive administrative scheme for adjudication of federal employment and labor management claims (indeed, this Court's prior reasoning that it had jurisdiction to consider Plaintiffs' claims rested heavily on its view that challenges *to the Executive Order and Memorandum* were not the sorts of claims Congress intended to preclude from district court review).

But even if they could be litigated in district court under the APA, any such claim (as discussed further above) would need to be based on the administrative record submitted by the agency. And such a future claim, at the very least, could not be brought as part of *this* case. A claim that particular agency RIFs violate an agency's governing statutes or are arbitrary and capricious is completely unmoored from the claims Plaintiffs have raised here—that the Workforce Executive Order and Workforce Memorandum are unconstitutional, in excess of statutory authority, and otherwise unlawful, and that Federal Agency Defendants acted arbitrarily and contrary to law by acting consistently with those directives.

Finally, even if this Court were somehow able to review ARRPs (it cannot), and even if Plaintiffs were somehow able to establish through discovery that an ARRP was unlawfully approved or rejected (a theory that is foreclosed by the Supreme Court's Order), that would not be grounds for relief against any specific RIFs. As Defendants have repeatedly explained, most recently in the declaration filed yesterday, agencies are not required to undertake RIFs that are contemplated in an ARRP, and several agencies in fact have decided not to do so. ECF No. 208-1 ¶¶ 17-19. There is no plausible theory under which this or any other Court could enjoin an otherwise lawful future RIF simply because it was contained within an ARRP. At the very least, if Plaintiffs want to seek discovery aimed at advancing such a farfetched argument, they should be required to attempt to do so only in the ordinary course, and after Defendants' forthcoming motion to dismiss is decided.

## CONCLUSION

The Court should grant a protective order and/or quash Plaintiffs' RFPs, thereby relieving Defendants of any obligation to respond to them.

Dated: July 15, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER HALL
Assistant Branch Director

s/ Andrew M. Bernie
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-7203
andrew.m.bernie@usdoj.gov

*Counsel for Defendants*