Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF REQUEST FOR RULING ON EXPEDITED DISCOVERY** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ II

INTRODUCTION ......................................................................................................................... 1

I.   Defendants' Position that Plaintiffs' Claims Are Foreclosed Rests on Their
     Mischaracterization of the Scope of Plaintiffs' Claims and the Impact of the
     Supreme Court Order. ............................................................................................................ 2

II.  The Requirement to Produce an Administrative Record in APA Cases Does Not
     Obviate the Government's Obligation to Produce the Documents and Information
     Previously Ordered by this Court. ........................................................................................ 7

III. The Deliberative Process Privilege Does Not Shield the ARRPs Ordered by the
     Court. ................................................................................................................................... 9

IV.  The Government Must Disclose the 40 RIFs at 17 Agencies. ........................................... 11

V.   A Stay Is Unwarranted. ...................................................................................................... 13

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AFGE v. Trump*
    (9th Cir. Case No. 25-3293) ................................................... 10

*All. for Retired Americans v. Bessent*,
    No. CV 25-0313 (CKK), 2025 WL 1114350 (D.D.C. Mar. 20, 2025) ................................... 9

*Allen v. Milligan*,
    599 U.S. 1 (2023) ................................... 3

*Bennett v. Spear*,
    520 U.S. 154 (1997) ................................... 6

*Biden v. Texas*,
    597 U.S. 785 (2022) ................................... 3

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156 (1962) ................................... 12

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*,
    889 F.3d 584 (9th Cir. 2018) ................................... 7

*California v. Trump*,
    379 F. Supp. 3d 928 (N.D. Cal. 2019) ................................... 9

*California v. U.S. Dep't of Homeland Sec.*,
    612 F. Supp. 3d 875 (N.D. Cal. 2020) ................................... 9

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ................................... 12

*Dietz v. Bouldin*,
    579 U.S. 40 (2016) ................................... 8

*Doe 1 v. Nielsen*,
    No. 18-CV-02349-BLF(VKD), 2018 WL 4266870 (N.D. Cal. Sept. 7, 2018) ................................... 9

*Doe v. Trump*,
    284 F.Supp.3d 1182 (W.D. Wash. 2018) ................................... 3

*E. Bay Sanctuary Covenant v. Trump*,
    354 F. Supp. 3d 1094 (N.D. Cal. 2018), *aff'd*, 950 F.3d 1242 (9th Cir. 2020) ................................... 8, 13

*Gray v. First Winthrop Corp.*,
    133 F.R.D. 39 (N.D. Cal. 1990) ................................... 8

*Hisp. Affs. Project v. Acosta,*
  901 F.3d 378 (D.C. Cir. 2018)..................................................................9

*Kern v. U.S. Bureau of Land Mgmt.,*
  284 F.3d 1062 (9th Cir. 2002) .................................................................6

*Labrador v. Poe,*
  144 S. Ct. 921 (2024) ..............................................................................3

*Merrill v. Milligan,*
  142 S. Ct. 879 (2022) ..............................................................................3

*Mohawk Indus., Inc. v. Carpenter,*
  558 U.S. 100 (2009) ...............................................................................14

*Nken v. Holder,*
  556 U.S. 418 (2009) ...............................................................................13

*Ohio Forestry Association v. Sierra Club,*
  523 U.S. 726 (1998) .................................................................................6

*Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce,*
  128 F.4th 1089 (9th Cir. 2025) ............................................................6, 10

*Sierra Club v. Trump,*
  963 F.3d 874 (9th Cir. 2020) ................................................................3, 9

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.,*
  100 F.3d 1443 (9th Cir. 1996) .................................................................7

*Texas v. U.S. Dep't of Homeland Sec.,*
  2023 WL 2842760 (S.D. Tex. Apr. 7, 2023)...........................................9

*Thompson v. U.S. Dep't of Lab.,*
  885 F.2d 551 (9th Cir. 1989) ...................................................................7

*Trump v. AFGE,*
  No. 24A1174 (U.S. June 2, 2025) ......................................................6, 10

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
  578 U.S. 590 (2016) .................................................................................5

*U.S. Fidelity & Guar. Co. v. Lee Inv. LLC,*
  641 F.3d 1126 (9th Cir. 2011) ...............................................................13

*In re Walsh,*
  15 F.4th 1005 (9th Cir. 2021) ................................................................14

**Federal Statutes**

5 U.S.C. § 705 ..................................................................................................................8

**Other Authorities**

Sophia Barkoff et al., *State Department Enacts Widespread Layoffs, Cutting 1,353 Staff as Part of Reorganization*, CBS News (Jul. 12, 2025) ................................2, 14

Michael Crowley et al., *State Dept. Layoffs Hit Russia and Ukraine Analysts*, N.Y. Times (July 15, 2025)........................................................................................14

Christina Jewett & Benjamin Mueller, *H.H.S. Finalizes Thousands of Layoffs After Supreme Court Decision*, N.Y. Times (Jul. 15, 2025) ........................................2, 14

Hannah Natanson et al., *State Department Cuts China Policy Staff Amid Major Overhaul*, Wash. Post (July 14, 2025)....................................................................14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

The Government's Opposition (ECF 208) to Plaintiffs' Request for a Ruling Confirming Prior Expedited Discovery Order (ECF 176) fundamentally misunderstands the nature of Plaintiffs' claims, the impact of the Supreme Court decision granting a stay of this Court's preliminary injunction based on a subset of those claims, and the posture of the present proceedings and current discovery dispute. Further, instead of complying with this Court's express order to name the 17 agencies and 40 reductions-in-force ("RIFs") that the Government told the Supreme Court were already "in progress" and enjoined by the preliminary injunction, the Government submitted a non-responsive declaration (ECF 208-1) that offers multiple excuses for failing to do so, each lacking in merit. The Government does not provide any valid basis why this Court should refuse to confirm its existing expedited discovery order, or should not require immediate compliance with its more recent order to identify the impending RIFs taken pursuant to the challenged Agency RIF and Reorganization Plans ("ARRPs").

This litigation continues, notwithstanding the Government's attempt to unilaterally declare it over. ECF 208 at 1. The Supreme Court left for this Court, in the first instance, the task of determining the facts pertaining to the ARRPs implementing the Workforce Executive Order, and the legality of the approval and implementation of those ARRPs. Plaintiffs intend to hold the Government to its obligation to comply with the law. And despite the Government's assertions to the contrary, the law does not permit the Government to proceed in secrecy to prevent judicial review of the legality of its actions. In our constitutional democracy, the law still governs executive action, and the courts still determine the law. The Court should reject the Government's remarkable and wholly unsupported position that by continuing to hide the contents of the ARRPs, it can prevent Plaintiffs from challenging the legality of those plans and the actions that implement them. Plaintiffs respectfully request that this Court confirm the order to produce the ARRPs and related documents previously issued by this Court, deny the Government's prior request for a protective order, and require immediate compliance with the Court's order to identify the 40 RIFs at 17 agencies that were already approved and "in progress" at the time the Government sought a Supreme Court stay.

1  **I.  Defendants' Position that Plaintiffs' Claims Are Foreclosed Rests on Their**
2      **Mischaracterization of the Scope of Plaintiffs' Claims and the Impact of the Supreme**
       **Court Order.**

3          The Government's position that it is neither required to produce the ARRPs nor to disclose

4  implementing actions, including of the agencies at which RIFs are impending, rests on multiple

5  misrepresentations regarding the nature and scope of Plaintiffs' claims in this case and the impact

6  of the Supreme Court's issuance of a stay.  Those misrepresentations ignore the content of

7  Plaintiffs' operative Amended Complaint (ECF 100) as well as the TRO and preliminary injunction

8  briefing (ECF 37-1, 70, 101-1, 120).  As Plaintiffs have pled from the outset (ECF 1), Plaintiffs

9  challenge the legality of the President's Executive Order 14,210 and the implementing agency

10  actions that effectuate this unprecedented transformation of the federal government, including *but*

11  *not limited to* the Office of Management and Budget and Office of Personnel Management's

12  ("OMB/OPM") February 26, 2025 Memorandum requiring the creation of ARRPs; the decisions

13  and directives by OMB/OPM and the Department of Government Efficiency ("DOGE") with

14  respect to the content, timing, and approval/disapproval of those ARRPs; and the Federal Agency

15  Defendants' implementation of those ARRPs.  *See*, *e.g.*, ECF 100 at 1–2, 11–12, 104–111.

16          First, as this Court recognized, neither this Court's preliminary injunction nor the Supreme

17  Court's stay order addressed all of Plaintiffs' claims.[1]  ECF 177 at 2 ("The content of the ARRPs

18  thus remains squarely at issue in this case.").  The Government incorrectly contends that the stay

19  order "effectively ends this case."  ECF 208 at 1.  But the Supreme Court stated expressly that its

20  stay decision was limited to assessing the likely success of Plaintiffs' challenges to the legality of

21

22          [1] The arguments the Government asserts here foreshadow—and seek a premature decision on—
23  a motion to dismiss to be filed on July 21, 2025.  *See* ECF 208 at 4–5 (urging Court to rule on motion
    to dismiss before "entertaining" any discovery requests).  Plaintiffs respond briefly herein to those
24  arguments as they pertain to this discovery dispute, but have not yet had the opportunity to respond
    in full.  To the extent the Government is essentially asking to stay discovery pending resolution of
25  the forthcoming motion to dismiss, the Court should reject that invitation, particularly in light of the
    Government's ongoing and imminent acts to implement the ARRPs.  *See*, *e.g.*, Christina Jewett &
26  Benjamin Mueller, *H.H.S. Finalizes Thousands of Layoffs After Supreme Court Decision*, N.Y.
    Times (Jul. 15, 2025), https://www.nytimes.com/2025/07/15/us/politics/hhs-layoffs.html; Sophia
27  Barkoff et al., *State Department Enacts Widespread Layoffs, Cutting 1,353 Staff as Part of*
    *Reorganization*, CBS News (Jul. 12, 2025), https://www.cbsnews.com/news/state-department-
28  trump-administration-start-layoffs-in-coming-days/.

the Executive Order and the OPM/OMB Memorandum, expressly leaving any challenge to the legality of the ARRPs to this Court to resolve in the first instance. *See* ECF 176 at 3–4 (quoting stay order as "express[ing] no view on the legality of the [ARRPs]" and noting that ARRPs "are not before this Court").

Second, even as to the claims the stay order did address, the Supreme Court did not, as the Government claims, "rule[] as a matter of law" on or resolve the merits of *any* claims. ECF 208 at 10. A stay order "is not a ruling on the merits." *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurring). In particular, the Ninth Circuit has explained that a brief, unreasoned stay order, like the one at issue here, in no way forecloses the obligation of the lower courts to analyze and rule on the law and facts of the claims at issue. *See*, *e.g.*, *Sierra Club v. Trump*, 963 F.3d 874, 887 (9th Cir. 2020), *vacated and remanded on other grounds sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021) ("carefully analyz[ing]" arguments following an emergency stay order issued by the Supreme Court "suggest[ing]" that Sierra Club lacked a cause of action, and concluding otherwise, in a decision later vacated in light of changed circumstances); *Labrador v. Poe*, 144 S. Ct. 921, 928 (2024) (Kavanaugh, J., concurring) (explaining that emergency applications require the Court to "assess the merits of important cases earlier and more quickly than is ordinarily preferable, and to do so without the benefit of full merits briefing and oral argument"). In fact, the stay order expressly contemplates that the Ninth Circuit may affirm this Court's preliminary injunction and that the Supreme Court may deny review. *See* Stay Order at 1 (noting stay is pending disposition of appeal by Ninth Circuit and certiorari petition by Supreme Court).[2] Nor does a stay order displace or call into question other precedent. *See Doe v. Trump*, 284 F.Supp.3d 1182, 1185 (W.D. Wash. 2018) (courts "[are] not at liberty to simply ignore binding Circuit precedent based on Defendants' divination of what the Supreme Court was thinking when it issued the stay orders").

---

[2] Indeed, the Supreme Court's grant of a stay does not always predict its disposition on the merits even of that particular case. *See, e.g.*, *Allen v. Milligan*, 599 U.S. 1, 10 (2023) (affirming on the merits where the Court previously stayed an injunction and subsequent affirmance of the same on the merits); *Biden v. Texas*, 597 U.S. 785, 794–95, 814 (2022) (denying a stay but subsequently reversing the same judgment and injunction).

1    Third, the Government's position that the stay order forecloses Plaintiffs' challenges to the

2    approval and implementation of ARRPs rests on multiple misrepresentations regarding the nature

3    of those challenges.  The Government contends that "Plaintiffs do not challenge any ARRPs as

4    unlawful by arguing that an ARRP's plan is arbitrary and capricious or contrary to statutes

5    governing the specific agency."  ECF 208 at 6; *see also id.* at 1 ("Plaintiffs do not challenge the

6    content of particular ARRPs"); *id.* at 8.  To the contrary, Plaintiffs *have* challenged and *do*

7    challenge the legality of the approval and implementation of specific ARRPs (including, but not

8    limited to, through RIFs and other reorganization actions).  *See*, *e.g.*, ECF 100 ¶431.  Although the

9    Government has attempted to hide its decisions regarding how it is implementing the challenged

10    Executive Order, Plaintiffs nonetheless have been able to present evidence regarding already

11    approved and imminent actions, and do challenge as unlawful the manner in which OMB, OPM,

12    DOGE, and the Federal Agency Defendants are proceeding.  *Id.* (Claims III, IV, VI, and VII)

13    Nor are the grounds for challenging those ARRP approvals and implementations limited to

14    those that the Government (erroneously) contends have been resolved by the Supreme Court.  *See*

15    ECF 208 at 5–7 (contending that Plaintiffs' challenges to ARRPs are *solely* on ground that they

16    follow the Executive Order and Memorandum's directives).  For example, Plaintiffs' operative

17    complaint pleads that the Federal Agency Defendants' actions are arbitrary and capricious because,

18    among other reasons, they "disregard their authorizing statutes, … engage in large-scale RIFs that

19    are necessarily contrary to agency's ability to maintain required function and authorizing statute,

20    [and] abandon reasoned decision-making considering all relevant factors."  ECF 100 ¶431.  And

21    Plaintiffs' TRO and preliminary injunction briefing similarly argued that the Federal Agency

22    Defendants' implementation of the Executive Order was unlawful, including because, on the

23    existing record, agencies were acting in an arbitrary and capricious manner by, among other things,

24    abolishing offices, programs, and functions that they had previously deemed necessary and

25    important without reasoned explanation.  ECF 37-1 at 43; *see also*, *e.g.*, ECF 70 at 9.

26    Further, the Government's position completely ignores that Plaintiffs' challenge to the

27    approved ARRPs and their implementation are asserted not only against the Federal Agency

28    Defendants but also against OMB, OPM, and DOGE—and include both Administrative Procedure

1    Act ("APA") and *ultra vires* claims against those agencies.  These claims against OMB, OPM, and

2    DOGE challenge not only the Memorandum but also these implementing agencies' actions in

3    approving specific ARRPs and directing the contents thereof (which, according to the record

4    evidence, may come in directives approving ARRPs or other communications).  *See*, *e.g.*, ECF 100

5    ¶396 (Claim II challenges "actions and orders of OMB, OPM, and DOGE … including *but not*

6    *limited to*" the Memorandum, "*as well as any direction, approval, or requirement imposed with*

7    *respect to any ARRPs* that result from that Executive Order, exceed OMB, OPM, and DOGE's

8    authority and are contrary to statute and therefore *ultra vires*.") (emphases added); *id.* ¶¶404, 411

9    (similar, re: Claims III, IV, and V, asserting APA claims against OMB, OPM, and DOGE); *id.*

10   ¶¶405 (specifically challenging "any decision 'approving' an ARRP, and DOGE's directives

11   ordering agencies to make staffing and spending cuts"); *id.* ¶410, 416, 418 (similar); *see also* ECF

12   37-1 at 38-41 (describing OMB response rejecting NLRB's ARRP and requiring larger cuts).[3]

13   While the Memorandum sets up the process and requirements for the content of the ARRPs, OMB,

14   OPM and DOGE have taken and are taking action beyond the Memorandum itself by approving or

15   disapproving ARRPs and, indeed, ordering specific cuts.  The Supreme Court's stay order does not

16   even arguably address the legality or scope of authority for OMB, OPM, and DOGE's decisions

17   and directives with respect to implementing workforce reduction or reorganization at any particular

18   agency.

19          Finally, the Government is wrong in contending that ARRPs can never reflect final agency

20   decisions (or, for that matter, claiming that Plaintiffs have conceded this point).  ECF 208 at 10–11.

21   As a factual matter, Plaintiffs contend (consistent with the record evidence) that final decisions

22   *approving* proposed ARRPs have in fact been made.  And further, final agency action for APA

23   purposes is that which "mark[s] the consummation of the agency's decisionmaking process," *U.S.*

24

25          [3] *See also*, e.g., ECF 96-1 ¶15 (reporting that NSF management informed employees that RIF of
26   Division of Equity for Excellence in STEM resulted from "following orders from OPM, OMB, and
     DOGE"); ECF 37-1 at 4-5 (HHS Secretary Kennedy statements re: DOGE-ordered cuts); *id.* (VA
27   Secretary: OPM provided VA with "target" cut of 80K positions).  The Government's declarations
     in response to this Court's order requiring further information regarding approvals of ARRPs by
28   OMB and OPM (ECF 139 at 2) further support Plaintiffs' contentions that OMB and OPM are taking
     action to approve ARRPs.

*Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quotations omitted), and is "interpreted in a pragmatic and flexible manner" that "focus[es] on the practical … effects of the agency action." *Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*, 128 F.4th 1089, 1108 (9th Cir. 2025). As Plaintiffs have consistently argued, both the approved ARRPs and the Federal Agency Defendants' actions implementing those ARRPs, including through issuance of large-scale RIF notices and placement of employees on administrative leave en masse, are final agency actions under the APA. *See, e.g.*, Respondents' Response to Stay Application, No. 24A1174 (U.S. June 9, 2025), at 29-30. Those actions are not "merely tentative or interlocutory," but are meant to be implemented, and that implementation will determine the "rights and obligations" of, and have "legal consequences" for, thousands of federal employees. *Bennett v. Spear*, 520 U.S. 154,177–78 (1997); *Prutehi Litekyan*, 128 F.4th at 1110 ("[A] federal agency's assessment, plan, or decision qualifies as final agency action even if the ultimate impact of that action [on plaintiffs] rests on some other occurrence—for instance, … a decision by another administrative agency[.]"). The Government relies on *Ohio Forestry Association v. Sierra Club*, 523 U.S. 726, 735 (1998), to argue that the possibility of further decision-making makes the ARRPs unreviewable under the APA, ECF 208 at 13. But as an initial matter, the unsupported theoretical possibility that the Government could reconsider approved plans does not shield them from review. *Cf. Ohio Forestry Ass'n*, 523 U.S. at 735 ("[T]he possibility that further consideration will actually occur before the Plan is implemented is not theoretical, but real."). Further, the plan at issue in *Ohio Forestry* did not "authoriz[e] specific action." *Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1070 (9th Cir. 2002). Here, by contrast, the *approved* ARRPs authorize action that will imminently harm Plaintiffs.

In sum, the Supreme Court plainly left open the issue of the legality of the approval and implementation of any ARRP (whether the decisions are made by OMB/OPM or the agencies themselves). Who made the pertinent decisions, and whether those decisions were made lawfully, remain central and live issues in this case, including as relevant to Plaintiffs' ultra vires and APA claims. And *nothing* in the stay order says (or even somehow implies) that, as the Government contends, "Plaintiffs must await specific RIFs from particular agencies and then bring challenges to

1    those RIFs," or that the Government's decision to keep the ARRPs secret means that all legal

2    challenges to them are foreclosed.  ECF 208 at 1.  Indeed, the Government (unsurprisingly) cites

3    no authority for its position that Plaintiffs may not challenge the approval or implementation of

4    ARRPs because the Government has chosen to keep them secret, until the Government takes

5    actions that irreparably injure Plaintiffs, the employees they represent, and their members.  In any

6    event, this Court's finding that ARRPs have already been approved and are being implemented—

7    and the Government's representations to the Supreme Court and Ninth Circuit regarding the

8    same—would foreclose any such argument that Plaintiffs' challenges are premature.  ECF 177 at 2.

9    **II.    The Requirement to Produce an Administrative Record in APA Cases Does Not
      Obviate the Government's Obligation to Produce the Documents and Information
10     Previously Ordered by this Court.**

11          Even if Plaintiffs' remaining claims were limited to the APA (which as explained, they are

12    not), the Court should still confirm its prior order requiring the production.

13          As explained in Section I *supra*, the Government overlooks that Plaintiffs challenge the

14    approval of specific ARRPs by OMB and OPM, as well as the implementation of ARRPs by

15    Federal Agency Defendants.  ARRPs submitted to OMB and OPM would necessarily be part of the

16    administrative record in Plaintiffs' APA challenges to those actions.  ARRPs are key

17    documentation of the challenged agency action and of the agencies' decisionmaking.  Further, in

18    arguing that ARRPs would be excluded from the administrative record as deliberative, the

19    Government mischaracterizes the nature of ARRPs.  See *infra* Section III.[4]

20          The deadline under this Court's Local Rules for production of the administrative record is

21    imminent: July 28, 2025.  Civil L.R. 16-5; ECF 25.  Even if review of Plaintiffs' claims were

22    limited to an administrative record, this Court has the authority to accelerate the deadline or require

23

24          [4] Even if the Government were to make the dubious claim that ARRPs are not properly part of
25    the administrative record because decisionmakers did not "directly or indirectly" consider them,
      *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989), Ninth Circuit authority permits
26    extra-record discovery in certain circumstances, including when "necessary to determine whether
      the agency has considered all relevant factors and has explained its decision," and where "the agency
27    has relied on documents not in the record."  *Cachil Dehe Band of Wintun Indians of Colusa Indian
      Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018) (quoting *Sw. Ctr. for Biological Diversity v. U.S.
28    Forest Serv.*, 100 F.3d 1443, 1451 (9th Cir. 1996)).

staging of the production based on the circumstances of the case. *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (inherent case management authority). The Government itself represented to the Supreme Court and Ninth Circuit that implementation of the challenged actions was imminent, which warrants immediate production of these central documents. *See infra* Section III. Should the Government wish the documents to be reviewed with a complete administrative record, it is free to produce all of the documents together sooner, and in any event must meet the upcoming deadline.[5]

That the Government plans to move for dismissal does not relieve it of the obligation to produce an administrative record. The Local Rules do not stay production pending resolution of a motion to dismiss. *See* Civil L.R. 16-5; *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation."). No basis exists to depart from this ordinary practice (particularly where, as here, the Government has foreshadowed its intention to proceed with motion to dismiss arguments predicated on the misinterpretation of Plaintiffs' claims and the Supreme Court's stay order).

Extra-record evidence is also appropriate "for assessing the balance of the equities and the public interest." *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1107 (N.D. Cal. 2018), *aff'd*, 950 F.3d 1242 (9th Cir. 2020), and *aff'd sub nom. E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021). A decision to stay one particular preliminary injunction does not foreclose further injunctive relief, particularly where, as here, the Supreme Court has expressly declined to address or consider all live issues. If the OMB/OPM/DOGE decisions with respect to agency action implementing this Executive Order are unlawful, or if the approved agency ARRPs or agency actions taken to implement them are unlawful, then both the APA, 5 U.S.C. § 705, and this Court's equitable authority extend to staying and preliminarily enjoining agency action. Good

---

[5] The Government's statements regarding its position on Plaintiffs' claims and the underlying facts raise serious concerns regarding the adequacy and accuracy of the forthcoming administrative record. To the extent these statements presage deficiencies in the administrative record, Plaintiffs intend to swiftly address such issues (and seek supplementation and discovery as appropriate) following the July 28 production of the administrative record.

cause thus exists to permit this expedited discovery to protect this Court's ability to properly balance the equities with respect to such relief.

Also, even in APA cases, a "district court is free to exercise its discretion to permit… discovery to ascertain the contours of the precise policy at issue." *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (cleaned up); *see also Doe 1 v. Nielsen*, No. 18-CV-02349-BLF(VKD), 2018 WL 4266870, at *2 (N.D. Cal. Sept. 7, 2018) ("[T]he Court finds that discovery of the nature of the agency action issue is necessary in order for the parties and the Court to determine the scope of the administrative record to be produced").  This is particularly appropriate in a case like here where, "unlike the typical APA case, which involves the enactment of a rule or other agency action taken in public view—only the Defendants know the 'contours' of those actions." *All. for Retired Americans v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 1114350, at *3 (D.D.C. Mar. 20, 2025).  The Government's insistence on keeping its decisions secret warrants an order requiring immediate production of the central documents.

In any case, as discussed in *supra* Section I, the Government is wrong that Plaintiffs' claims are limited to the APA: the ultra vires claims against OMB, OPM, and DOGE remain live, even if the Supreme Court has expressed a preliminary view that a facial challenge to the OMB/OPM Memorandum is not likely to prevail.  Ultra vires claims "exist[] outside of the APA framework," *California v. Trump*, 379 F. Supp. 3d 928, 942 (N.D. Cal. 2019), *aff'd*, 963 F.3d 926 (9th Cir. 2020), and "each of the claims can proceed separately," *California*, 963 F.3d at 941 n.12.  *See also, e.g.*, *Texas v. U.S. Dep't of Homeland Sec.*, 2023 WL 2842760, at *3 (S.D. Tex. Apr. 7, 2023) (approving discovery into ultra vires claim because "claims that do not arise within the APA context are not bound by the record rule."); *California v. U.S. Dep't of Homeland Sec.*, 612 F. Supp. 3d 875, 895 (N.D. Cal. 2020) (permitting discovery on plaintiffs' constitutional claims brought alongside APA claims).

**III.    The Deliberative Process Privilege Does Not Shield the ARRPs Ordered by the Court.**

The Court correctly determined that at least the ARRPS for the 17 agencies whose 40 RIFs were "in progress" are not privileged, or at the very least that the qualified privilege is overcome.  ECF 177 at 2.  The Government represented to the Supreme Court that this Court's preliminary

1   injunction halting implementation of the ARRPs had "concretely" imposed "immediate

2   consequences" on the Government because "40 RIFs in 17 agencies" "affecting thousands of

3   federal employees" were "in progress."  Stay Application, *Trump v. AFGE*, No. 24A1174 (U.S.

4   June 2, 2025), at 32.  The Government subsequently represented to the Ninth Circuit, on appeal

5   from the preliminary injunction, that "[m]ultiple RIFs *were set* to be noticed within the month

6   following entry of the injunction, and dozens *were set* to occur during that period," and that the

7   "[t]he injunction halts those processes in their tracks."  Opening Brief, *AFGE v. Trump* (9th Cir.

8   Case No. 25-3293), Dkt. 12.1 (filed June 20, 2025) (emphasis added); Stay Application, *AFGE v.*

9   *Trump* (9th Cir. Case No. 25-3293), Dkt. 4.1 (filed May 23, 2025), at 19 (same).  The

10  Government's own representations show that approved ARRPs are final decisions with immediate,

11  concrete, and widespread effects.  Indeed, they are having real effects right now, as the Supreme

12  Court's stay of the preliminary injunction has led to swift agency actions to implement RIFs and

13  reorganizations that must have been decided in approved ARRPs.  *See supra* note 1.  Approved

14  ARRPs reflect final decisions even if, as the Government claims, some agencies have since decided

15  not to proceed with RIFs.  *Prutehi Litekyan*, 128 F.4th at 1109 (possibility of revision does not

16  make final agency action nonfinal).

17       ARRPs that are being implemented are neither predecisional nor deliberative, and if any

18  subset or part of these documents were privileged, the qualified privilege must give way to the

19  centrality of these documents and the decisions they reflect to this litigation.  ECF 177 at 2

20  (finding, based on the Court's *in camera* review of certain ARRPs, that ARRPs "are likely not pre-

21  decisional and deliberative").  The Government reargues points with respect to privilege that this

22  Court has already indicated are not persuasive.  *See* ECF 176 at 7–8; ECF 96 at 7–9 (ARRPs

23  contain factual material that are not covered by privilege).

24       Because the Government has not taken the Court up on the opportunity to provide a

25  proposal for more narrow redactions, the documents should be produced in their entirety.[6]

26

27       _____

28       [6] Notwithstanding the Government's failure to address this, Plaintiffs reiterate their agreement
    that any material addressing union negotiating strategy may be redacted.

**IV.    The Government Must Disclose the 40 RIFs at 17 Agencies.**

The Government failed to comply with this Court's order to "provide a list of the 'about 40 RIFs in 17 agencies' that defendants referenced in their Supreme Court stay application." ECF 177 at 2; ECF 208-1. The declaration of OPM Senior Advisor Noah Peters does not list the 40 RIFs at 17 agencies that the Government identified to the Supreme Court. Instead, it provides non-responsive information to the Court regarding RIF procedures (ECF No. 208-1 ¶¶2–9) and states that there were actually *more* RIF-notice waivers granted than the 40 identified RIFs at 17 agencies (*id.* ¶¶14–15), while failing to identify the RIFs described to the Supreme Court or the additional planned RIFs referenced in the declaration. Rather than identifying the 40 (or 70) planned RIFs, Mr. Peters sidesteps the Court's directive and explains why, in his view, the Government should not be required to comply: namely, he obfuscates, the count provided to the Supreme Court was not "derived" from the ARRPs. *Id.* ¶12.[7] Mr. Peters' opinion and reasons why the Government should not have to comply are neither persuasive nor responsive.

The Government's contention that the 40 RIFs at 17 agencies are "potential future" RIFs that "agencies have not finalized" (ECF 208 at 15) is directly contradicted by their prior representations that these RIFs were "in progress" (to the Supreme Court) and "set" to occur (to the Ninth Circuit). *See supra* Section III. Having represented to those courts that the injunction halted these imminent RIFs and that the injunction would therefore cause it irreparable injury, the Government should not now be permitted to tell a very different story. The Government suggests that the RIFs that it described to the Supreme Court and Ninth Circuit were only at an early step of a multi-step decision process, and not certain to happen—let alone imminent. ECF No. 208-1 ¶¶ 8–11. The Court should reject these new self-serving representations, which provide no valid basis to defy this Court's order.

This Court was correct to conclude that if, as the Government previously represented, the

---

[7] Mr. Peters' representations that OPM did not use ARRPs to estimate the number of these RIFs because they are pre-decisional privileged documents (ECF No. 208-1 ¶13) and that OPM approved many other RIFs but "lacks complete information" (*id.* ¶14) are similarly non-responsive and irrelevant. The Court's Order to disclose this information was directed at *Defendants*, not just OPM, and was not limited based on the source of Defendants' knowledge of the RIF plans.

1    injunction halted these RIFs, the RIFs were authorized by the ARRPs.  ECF 177 at 2.  In response,

2    the Government now claims that the RIFs in question were not necessarily part of the ARRPs,

3    although some "may have been."  ECF No. 208-1 ¶¶ 12–13.

4           The Government is not entitled to secrecy about decisions agencies have made that affect

5    federal employees, those who rely on their services, and the services provided to the public across

6    this entire nation.  As the Supreme Court has repeatedly held, an agency must "disclose the basis of

7    its order."  *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962); *Dep't of Com.*

8    *v. New York*, 588 U.S. 752, 785 (2019) ("The reasoned explanation requirement of administrative

9    law, after all, is meant to ensure that agencies offer genuine justifications for important decisions,

10   reasons that can be scrutinized by courts and the interested public.").  This Court has the authority

11   to order the government to reveal its decisions and implementing actions, particularly when those

12   decisions have already been made.

13          The Government should be held to its word that these RIFs were imminently in progress

14   and set to occur as a result of the Executive Order and the ARRPs, and it should not be permitted to

15   revise its factual representations simply to suit its interests in maintaining secrecy.  Based on the

16   existing factual record before this Court, the information that the Court ordered the Government to

17   disclose is not predecisional because the RIFs at issue were already decided upon.[8]

18          The Government now also represents that certain of those RIFs, previously counted for the

19   Supreme Court, have been reconsidered and are no longer proceeding.  ECF 208-1 ¶17.  If

20   OMB/OPM/DOGE and/or agencies have made new, revised decisions relevant to the issues before

21   this Court, including the imminence of any further implementing action, then that information

22   should be disclosed as well.

23          Most notable, perhaps, is what Mr. Peters' declaration does *not* say.  Mr. Peters does not

24   deny that the 40 RIFs at the 17 agencies mentioned in the Government's Supreme Court briefing

25   were approved.  Nor does he deny that numerous agencies (those other than the unidentified and

---

[8] If the Court finds it necessary in order to resolve this factual dispute, it could hold an evidentiary hearing at which Mr. Peters and others could testify and the Court could make credibility determinations.

1    unquantified "several" agencies referenced in ¶17 as having changed their minds) have begun

2    implementing or are imminently going to begin implementing those approved RIFs.

3        Plaintiffs request that the Government be required to immediately identify the 17 agencies

4    and 40 RIFs (including but not limited to the number of employees and offices and programs

5    affected) that it represented to the Supreme Court were already "in progress" and enjoined.   The

6    Government should also identify which of these RIFs for which OMB/OPM/DOGE and/or the

7    agencies have reconsidered any prior decision to proceed (including specifically which RIFs have

8    been abandoned or reconsidered, and when those decision(s) were made).

9    **V.    A Stay Is Unwarranted.**

10       A stay pending appeal is an "extraordinary request." *E. Bay Sanctuary*, 993 F.3d at 661

11   (citations omitted).  The Government's request does not meet the familiar factors considered in

12   issuing a stay.  *Nken v. Holder*, 556 U.S. 418, 426 (2009).

13       First, the Government has not made a strong showing of likely success on the merits of its

14   deliberative process privilege claims.  The ARRPs are not predecisional or deliberative, and even if

15   they were, the qualified privilege would be overcome by the centrality of these documents and the

16   decisions they reflect to this litigation, as discussed *supra* and in Plaintiffs' prior briefing.  Further,

17   the Ninth Circuit has made clear that "[d]istrict courts have wide latitude in controlling discovery,

18   and their rulings will not be overturned in the absence of a clear abuse of discretion," *U.S. Fidelity*

19   *& Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011).  Compelling discovery of

20   the ARRPs directly at issue does not abuse that discretion.

21       Issuing a stay would also substantially injure Plaintiffs and harm the public interest.  The

22   Government intends to implement ARRPs imminently through RIFs and reorganization actions

23   following the Supreme Court's stay order.  It has tried to shield those plans from review by falsely

24   claiming that they are preliminary, when, in fact, they are set.  Indeed, more than 1,300 State

25   Department employees received RIF notices and were immediately placed on administrative leave

26   on Friday, July 12, directly harming federal employees, Plaintiff unions, and threatening the

27

28

agency's ability to respond to foreign threats.[9]  *See* ECF 37-20 (describing the harms of then-proposed sweeping cuts to the State Department).  Given the likelihood of further immediate actions implementing the approved ARRPs, a stay of any order mandating disclosure of the ARRPs and previously ordered documents would threaten additional imminent harm to Plaintiff unions and their members across the federal government and to Plaintiff organizations, local governments, and the public who rely on Federal Defendant Agencies for crucial services.

The Government's interest in preventing the disclosure of the ARRPs is insufficient to warrant granting the extraordinary request for a stay pending a mandamus petition.  The Government suggests that staying discovery orders is appropriate to block disclosure of any "information that the Government views as privileged," ECF 208 at 15, a standard that would upend the traditional stay factors and allow the Government to force lengthy delays of any nearly any lawsuit filed against it, regardless of the prejudice to plaintiffs and harm to the public interest.  This is particularly inappropriate where, as here, the privilege asserted is not absolute but qualified, and is subject to this Court's informed assessment of litigation need.  The Government's assertion further contradicts the stringent mandamus standard, as "the Supreme Court has held that only 'in extraordinary circumstances—*i.e.*, when a disclosure order amount[s] to a judicial usurpation of power or a clear abuse of discretion, or otherwise works a manifest injustice—a party may petition the court of appeals for a writ of mandamus.'"  *In re Walsh*, 15 F.4th 1005, 1008 (9th Cir. 2021) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009).  Given the Government's actions implementing the ARRPs, it is a stay, not any discovery order, that would cause substantial harm and manifest injustice.

## CONCLUSION

For these reasons, the Court should grant Plaintiffs' request for a ruling confirming this

---

[9] *See also* Barkoff et al., *supra* note 1; Hannah Natanson et al., *State Department Cuts China Policy Staff Amid Major Overhaul*, Wash. Post (July 14, 2025), https://www.washingtonpost.com/national-security/2025/07/14/state-department-rubio-firings-china/; Michael Crowley et al., *State Dept. Layoffs Hit Russia and Ukraine Analysts*, N.Y. Times (July 15, 2025), https://www.nytimes.com/2025/07/15/us/politics/state-department-layoffs-russia-ukraine.html; Jewett & Mueller, *supra* note 1 (HHS RIFs).

Court's prior expedited discovery order, denying Defendants' motion for reconsideration and protective order, and modify its ruling to require the discussed disclosure.

DATED: July 16, 2025                                  Respectfully submitted,

                                                     Stacey M. Leyton
                                                     Barbara J. Chisholm
                                                     Danielle E. Leonard
                                                     Corinne F. Johnson
                                                     Alice X. Wang
                                                     Robin S. Tholin
                                                     Aaron Schaffer-Neitz
                                                     ALTSHULER BERZON LLP
                                                     177 Post St., Suite 300
                                                     San Francisco, CA 94108
                                                     Tel: (415) 421-7151
                                                     sleyton@altshulerberzon.com
                                                     bchisholm@altshulerberzon.com
                                                     dleonard@altshulerberzon.com

                                           By: */s/ Stacey M. Leyton*

                                           *Attorneys for All Union and Non-Profit Organization Plaintiffs*

                                                     Elena Goldstein (pro hac vice)
                                                     Skye Perryman (pro hac vice)
                                                     Tsuki Hoshijima (pro hac vice)
                                                     DEMOCRACY FORWARD FOUNDATION
                                                     P.O. Box 34553
                                                     Washington, D.C. 20043
                                                     Tel: (202) 448-9090
                                                     Fax: (202) 796-4426
                                                     egoldstein@democracyforward.org
                                                     sperryman@democracyforward.org
                                                     thoshijima@democracyforward.org

                                           By: */s/ Tsuki Hoshijima*

                                           *Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

                                                     Jules Torti (pro hac vice)
                                                     PROTECT DEMOCRACY PROJECT

82 Nassau St., #601
New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: /s/ Jacek Pruski

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: /s/ Norman L. Eisen

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: /s/ Rushab Sanghvi

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)
Matthew Blumin  (pro hac vice)

AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/ Teague Paterson*

*Attorneys for Plaintiff American Federation of State*
*County and Municipal Employees, AFL-CIO*
*(AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL
UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorneys for Plaintiff Service Employees*
*International Union, AFL-CIO (SEIU)*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By:  */s/ Alexander Holtzman*

*Attorneys for Plaintiff City and County of San*

1             *Francisco*

2             Tony LoPresti (SBN 289269)
              COUNTY COUNSEL

3             Kavita Narayan (SBN 264191)

4             Meredith A. Johnson (SBN 291018)
              Raphael N. Rajendra (SBN 255096)

5             Hannah M. Godbey (SBN 334475)
              OFFICE OF THE COUNTY COUNSEL

6             COUNTY OF SANTA CLARA

7             70 West Hedding Street, East Wing, 9th Floor
              San José, CA 95110

8             Tel: (408) 299-5900
              Kavita.Narayan@cco.sccgov.org

9             Meredith.Johnson@cco.sccgov.org

10            Raphael.Rajendra@cco.sccgov.org
              Hannah.Godbey@cco.sccgov.org

11

12    By: */s/ Tony LoPresti*

13             *Attorneys for Plaintiff County of Santa Clara, Calif.*

14             David J. Hackett (pro hac vice)
              General Counsel to King County Executive & Special

15             Deputy Prosecutor
              Alison Holcomb (pro hac vice)

16             Deputy General Counsel to King County Executive &
              Special Deputy Prosecutor

17             Erin King-Clancy (pro hac vice app. forthcoming)
              Senior Deputy Prosecuting Attorney

18             OFFICE OF KING COUNTY PROSECUTING
              ATTORNEY LEESA MANION

19             401 5th Avenue, Suite 800
              Seattle, WA 98104

20             (206) 477-9483
              David.Hackett@kingcounty.gov

21             aholcomb@kingcounty.gov
              aclancy@kingcounty.gov

22    By: */s/ David J. Hackett*

23             *Attorneys for Plaintiff Martin Luther King, Jr. County*

24             Sharanya Mohan (CABN 350675)

25

26

27

28

PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org

By: */s/ Sharanva Mohan*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL,
Harris County, TX, and King County, WA*

Christian D. Menefee
Harris County Attorney
Jonathan G.C. Fombonne (pro hac vice)
Deputy County Attorney and First Assistant
Tiffany Bingham (pro hac vice app. forthcoming)
Managing Counsel
Sarah Utley (pro hac vice app. forthcoming)
Division Director – Environmental Division
Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice app. forthcoming)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel: (713) 274-5102
Fax: (713) 437-4211
jonathan.fombonne@harriscountytx.gov
tiffany.bingham@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscoupntytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

By: */s/ Jonathan G.C. Fombonne*

*Attorneys for Plaintiff Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago
Stephen J. Kane (IL ARDC 6272490) (pro hac vice app. forthcoming)
Rebecca A. Hirsch (IL ARDC 6279592) (pro hac vice)
Lucy Prather (IL ARDC 6337780) (pro hac vice)

1

2

3

4

5

         City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Stephen.kane@cityofchicago.org
Rebecca.Hirsch2@cityofchicago.org
Lucy.Prather@cityofchicago.org

6    By: */s/ Stephen J. Kane*     

7

8      *Attorneys for Plaintiff City of Chicago*

Ebony M. Thompson
9      Baltimore City Solicitor
Sara Gross (pro hac vice app. forthcoming*)*
10     Chief of Affirmative Litigation
Baltimore City Department of Law
11     100 N. Holliday Street
Baltimore, Maryland 21202
12     Tel: (410) 396-3947
sara.gross@baltimorecity.gov

13

14    By: */s/ Sara Gross*      

15      *Attorneys for Plaintiff City of Baltimore*

16

17

18

19

20

21

22

23

24

25

26

27

28