CRAIG H. MISSAKIAN
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
ANDREW M. BERNIE
Trial Attorney
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-7203
andrew.m.bernie@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-03698-SI<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: August 29, 2025<br>Time: 10:00 am<br>Judge: The Hon. Susan Illston<br>Place: San Francisco Courthouse<br>Courtroom 1 |

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................................. 1

MOTION TO DISMISS ............................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

    I.      Agency Authority to Engage in RIFs ............................................................................. 3

    II.     The Workforce Executive Order and Workforce Memorandum ................................... 5

    III.    Procedural History ........................................................................................................ 7

STANDARD OF REVIEW ........................................................................................................ 8

ARGUMENT .............................................................................................................................. 8

    I.      The Workforce Executive Order and Workforce Memorandum Are Lawful,
          As Reinforced by the Supreme Court's Stay Order .................................................... 8

    II.     The Amended Complaint Must be Dismissed ........................................................... 16

    III.    The Court Lacks Jurisdiction to Consider Challenges to Specific RIFs.................... 20

    IV.    The Claims Against "DOGE" Must Be Dismissed.................................................... 22

CONCLUSION ........................................................................................................................ 25

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

1

# TABLE OF AUTHORITIES

## Cases

*Alder v. Tennessee Valley Auth.*,
43 F. App'x 952 (6th Cir. 2002) ............................................................. 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 8

*Bennett v. Spear*,
520 U.S. 154 (1997) ................................................................................. 20

*Building & Const. Trades Dept., AFL-CIO v. Allbaugh*,
295 F.3d 28 (D.C. Cir. 2002) ................................................................. 12

*City and County of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) ............................................................... 11

*Dalton v. Specter*,
511 U.S. 462 (1994) ................................................................................. 16

*Department of Education v. California*,
145 S. Ct. 966 (2025) .............................................................................. 12

*Doe v. Trump*,
284 F.Supp.3d 1182 (W.D. Wash. 2018) ............................................... 13

*James v. Von Zemenszky*,
284 F.3d 1310 (Fed. Cir. 2002) ............................................................... 3

*Keim v. United States*,
177 U.S. 290 (1900) ................................................................................. 4

*Knight v. Department of Def.*,
332 F.3d 1362 (Fed. Cir. 2003) ............................................................... 21

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375 (1994) ................................................................................. 8

*Lawyers for Fair Reciprocal Admission v. United States*,
141 F.4th 1056 (9th Cir. 2025) ............................................................... 8

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
2025 WL 1187730 (D.D.C. Apr. 24, 2025) ............................................ 11

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

2

*Markland v. OPM,*
    140 F.3d 1031 (Fed. Cir. 1998) ...................................................................... 4, 9

*Merrill v. Milligan,*
    142 S. Ct. 879 (2022) ........................................................................................ 13

*National Treasury Emps. Union v. Devine,*
    733 F.2d 114 (D.C. Cir. 1984) ......................................................................... 15

*Partington v. Houck,*
    723 F.3d 280 (D.C. Cir. 2013) ......................................................................... 24

*Trump v. Am. Fed. of Gov't Emps.,*
    No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025) ............................. 8, 12, 13

*United States v. Fausto,*
    484 U.S. 439 (1988) .......................................................................................... 21

*Vera Institute for Justice et al. v. Department of Justice et al.,*
    No. 25-CV-1643 (APM), 2025 WL 1865160 (D.D.C. July 7, 2025) ...................... 12

## Statutes and Court Rules

5 U.S.C. § 301 ........................................................................................................ 10

5 U.S.C. § 1214(b) .................................................................................................. 21

5 U.S.C. § 3502 ........................................................................................................ 4

5 U.S.C. § 3502(a) ............................................................................................... 3, 15

5 U.S.C. § 5361(7) .................................................................................................. 10

5 U.S.C. § 7105(a)(2) ............................................................................................. 21

5 U.S.C. § 7123(a) ............................................................................................. 21, 22

5 U.S.C. § 7703(b)(1) ............................................................................................. 21

5 U.S.C. § 3502(d)(1)(A) .......................................................................................... 3

5 U.S.C. § 3502(d)(1)(B) ...................................................................................... 3, 11

5 U.S.C. § 3502(d)(2)(E) .......................................................................................... 3

5 U.S.C. § 3502(d)(3) ............................................................................................... 3

5 U.S.C. §§ 7101-7135 ............................................................................................ 21

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

3

6 U.S.C. § 452 .................................................................................................................. 10

22 U.S.C. § 6611 .............................................................................................................. 10

28 U.S.C. § 509 ................................................................................................................ 10

28 U.S.C. § 510 ................................................................................................................ 10

31 U.S.C. § 503(b) ........................................................................................................... 15

31 U.S.C. § 503(b)(4) ...................................................................................................... 15

U.S.C. § 7701(a) .............................................................................................................. 21

U.S.C.A. § 701(b)(1) ....................................................................................................... 24

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 1, 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1, 8

**Executive Orders, Regulations, and Administrative Materials**

Exec. Order 14210,

    90 Fed. Reg. 9669 (Feb. 11, 2025) .................................................................. 1, 5, 16, 24

Exec. Order 14158,

    90 Fed. Reg. 8441 (Jan. 20, 2025) ............................................................................. 22

Exec. Order 14,170,

    90 Fed. Reg. 8621 (Jan. 30, 2025) ............................................................................. 24

Exec. Order 14,218,

    90 Fed. Reg. 10,581 (Feb. 19, 2025) .......................................................................... 24

Exec. Order 14,222,

    90 Fed. Reg. 11095 (Feb. 26, 2025) ...................................................................... 24, 25

Exec. Order 12,839,

    58 Fed. Reg. 8515 (Feb. 12, 1993) .............................................................................. 4

5 C.F.R. Pt. 351 ........................................................................................................... 4, 15

5 C.F.R. § 351.201(a)(2) .................................................................................................. 10

5 C.F.R. § 351.205 ....................................................................................................... 4, 15

5 C.F.R. § 351.803(b) ...................................................................................................... 11

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

4

5 C.F.R. § 351.901 ......................................................................................................... 21

5 C.F.R. § 351.801(b) ...................................................................................................... 7

5 C.F.R. § 351.802 ........................................................................................................... 7

Establishment of the Office of Environmental Justice,
    87 Fed. Reg. 33,174 (June 1, 2022) ........................................................................ 10

Establishment of the Space Bureau and the Office of International Affairs and Reorganization of
    the Consumer and Governmental Affairs Bureau and the Office of the Managing Director,
    88 Fed. Reg. 21,424 (Apr. 10, 2023) ...................................................................... 10

**Other**

Trevor N. McFadden and Vetan Kapoor,
    *The Precedential Effects of the Supreme Court's Emergency Stays*, 44 Harv. J. L. & Pub. Pol'y
    827 (2021) .......................................................................................... 12, 13

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

5

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on August 29, 2025 at 10:00 am, in Courtroom 1, 17th Floor, United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA, Defendants will move the Court to dismiss this action.

**MOTION TO DISMISS**

Defendants hereby move to dismiss this action in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for the reasons more fully set forth in the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

On February 11, 2025, President Trump issued an Executive Order directing federal agencies to "promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law," including laws that "mandate[]" the performance of certain "functions" or "require[]" certain agency "subcomponents." Exec. Order. 14210, § 3(c), 90 Fed. Reg. 9669 (Feb. 11, 2025) (Workforce Executive Order). On February 26, 2025, the Office of Personnel Management (OPM) and Office of Management and Budget (OMB) jointly issued a memorandum (Workforce Memorandum) regarding the implementation of the Workforce Executive Order through Agency RIF and Reorganization Plans (ARRPs). The Workforce Memorandum provided guidance on the principles that should inform the ARRPs, including objectives and priorities like providing "[b]etter service for the American people" and "[i]ncreased productivity." Like the Executive Order, the Workforce Memorandum repeatedly emphasized the need for agencies to comply with statutory mandates in conducting RIFs and reorganizations. The Workforce Memorandum directed each agency to submit a "Phase 1" ARRP (by March 13, 2025) and a "Phase 2" ARRP (by April 14, 2025) for OPM and OMB's review and approval.

Rather than await specific RIFs and reorganizations, and then potentially challenge them on specific grounds, Plaintiffs brought this sprawling lawsuit against the President, OPM, OMB, the Department of Governmental Efficiency (DOGE), and more than twenty federal agencies—including every Cabinet-level agency except the Department of Education. Because the Amended

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

1

Complaint fails as a matter of law, this Court should dismiss this action. Although there are many reasons Plaintiffs' claims must fail—including that this Court lacks jurisdiction to consider them—the most straightforward is that both the Workforce Executive Order and Workforce Memorandum are plainly lawful. There is nothing plausibly unlawful about an Executive Order directing agency heads to "promptly undertake preparations to initiate large-scale reductions in force" consistent with statutory restrictions. The Memorandum provides agencies with high-level guidance, and the directives instructing agencies to submit ARRPs for review and approval fall comfortably within OPM's and OMB's authorities and the process established in the Executive Order.

Although this Court previously granted Plaintiffs preliminary injunctive relief, the Supreme Court (with only one Justice dissenting) stayed this Court's preliminary injunction, concluding that both the Workforce Executive Order and the Workforce Memorandum are likely lawful. After the Supreme Court's stay—which reflects a near-unanimous ruling on a question of *law*—Plaintiffs lack viable claims premised on the supposed illegality of the Executive Order and Memorandum. That requires dismissal, since all seven claims in the Amended Complaint depend on the assertion that the Workforce Executive Order, the Workforce Memorandum, or both are unlawful. Even if the two claims asserted against Federal Agency Defendants[1] could be characterized as something other than challenges to the Workforce Executive Order and Workforce Memorandum, they fail as a matter of law. To the extent they challenge ARRPs, ARRPs are not final agency action subject to review under the APA. And the Complaint otherwise simply speculates about future agency actions (based largely on news reports, and purportedly leaked documents) or, for the few identified RIFs, pleads no facts or allegations plausibly establishing that those RIFs are unlawful. These are not proper or even intelligible APA claims.

Although Plaintiffs' claims fail on the merits, to the extent the Complaint alleges that RIFs and reorganizations will or do violate statutory requirements—and nothing in the Complaint even attempts to demonstrate this—that also further confirms that their claims are jurisdictionally barred. Congress deliberately designed an exclusive administrative-review scheme for challenges to an agency's personnel actions. Plaintiffs previously invoked this Court's jurisdiction on the

---

[1] We refer to Defendants other than OPM, OMB, and DOGE as Federal Agency Defendants.

grounds that constitutional, statutory, and separation of powers challenges to the Workforce Executive Order and Workforce Memorandum were not the types of challenges Congress intended to preclude through the Federal Service Labor-Management Relations Statute (FSLMRS) and the Civil Service Reform Act (CSRA), and this Court accepted that argument. But now that these theories are precluded by the Supreme Court's near-unanimous stay, any future challenges to agency personnel actions necessarily must be predicated on arguments that such actions, for example, violate the statutory authorities governing those agencies or are arbitrary and capricious. Even assuming the Complaint encompasses such challenges, such garden variety challenges to the lawfulness of federal agency personnel actions unquestionably fall within the exclusive administrative scheme and are precluded from district court review.

Finally, the Complaint must be dismissed as to DOGE. DOGE is a government-wide initiative and cannot be sued. It is distinct from the United States DOGE Service (USDS), and encompasses agency DOGE Teams comprised of agency employees. Nor is there any legal theory under which Agency DOGE Teams are somehow supplanting agency decisionmaking, since Agency DOGE Teams are comprised of agency employees who are accountable to agency leadership. To the extent Plaintiffs intended to sue USDS, the Complaint pleads no facts plausibly alleging USDS's involvement in any unlawful conduct.

## BACKGROUND

### I.  Agency Authority to Engage in RIFs

Federal law expressly recognizes that the government may conduct RIFs, an "administrative procedure by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions." *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002). Section 3502 of Title 5 directs OPM to "prescribe regulations for the release of competing employees in a reduction in force." 5 U.S.C. § 3502(a). That statute further provides, among other things, for notice of a RIF (generally 60 days) to agency employees and their collective-bargaining representatives, including notice of "any appeal or other rights which may be available." 5 U.S.C. §§ 3502(d)(1)(A), (d)(2)(E); *see also* 5 U.S.C. §§ 3502(d)(1)(B), (d)(3) (additionally requiring 60 days' notice to certain state and local entities "if the reduction in force would involve the separation

of a significant number of employees"). OPM's detailed and longstanding RIF regulations, 5 C.F.R. Pt. 351, address everything from the order of employee retention to competition for remaining positions. The regulations specify that "OPM may examine an agency's preparations for reduction in force at any stage" and require "appropriate corrective action." 5 C.F.R. § 351.205.

That statutory and regulatory scheme reflects Congress's longstanding recognition of federal agencies' authority to engage in RIFs. The first such statute, enacted in 1876, provided a veterans' preference, requiring any department head "making any reduction in force" to "retain those persons who may be equally qualified who have been honorably discharged from the military or naval service of the United States, and the widows and orphans of deceased soldiers and sailors." Act of Aug. 15, 1876, Ch. 287, § 3, 19 Stat. 169. Courts have repeatedly rejected challenges to agencies' decisions to conduct RIFs, recognizing that such reductions are a matter of executive discretion. *See, e.g.*, *Keim v. United States*, 177 U.S. 290, 295 (1900) (statute authorizing RIFs "do[es] not contemplate the retention in office of a clerk who is inefficient, nor attempt to transfer the power of determining the question of efficiency from the heads of departments to the courts"); *Markland v. OPM*, 140 F.3d 1031, 1033 (Fed. Cir. 1998) (an agency is accorded "wide discretion in conducting a reduction in force") (citation omitted).

Congress enacted the forerunner of 5 U.S.C. § 3502 in the Veterans' Preference Act of 1944, which directed that "[i]n any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings." Pub. L. No. 78-359, § 12, 58 Stat. 390. In the decades since the statute was enacted, the federal government has exercised its authority to conduct RIFs on numerous occasions. In 1993, for example, President Clinton issued an executive order (entitled Reduction of 100,000 Federal Positions) that directed "[e]ach executive department or agency with over 100 employees [to] eliminate not less than 4 percent of its civilian personnel positions . . . over the next 3 fiscal years." Exec. Order No. 12,839, § 1, 58 Fed. Reg. 8515 (Feb. 12, 1993). The order required "[a]t least 10 percent of the reductions [to] come from the Senior Executive Service, GS-15 and GS-14 levels or equivalent," and imposed annual benchmarks for the agency

1    RIFs. *Id.* §§ 1, 3.

2    **II.  The Workforce Executive Order and Workforce Memorandum**

3        On February 11, 2025, President Trump issued the Workforce Executive Order. As relevant

4    here, the Order directs "Agency Heads [to] promptly undertake preparations to initiate large-scale

5    reductions in force (RIFs), consistent with applicable law, and to separate from Federal service

6    temporary employees and reemployed annuitants working in areas that will likely be subject to the

7    RIFs." Exec. Order 14210 § 3(c). Further, it directs that "[a]ll offices that perform functions not

8    mandated by statute or other law shall be prioritized in the RIFs, including all agency diversity,

9    equity, and inclusion initiatives; all agency initiatives, components, or operations that my

10   Administration suspends or closes; and all components and employees performing functions not

11   mandated by statute or other law who are not typically designated as essential during a lapse in

12   appropriations as provided in the Agency Contingency Plans on the Office of Management and

13   Budget website." *Id.* Finally, it directs that "[t]his subsection shall not apply to functions related

14   to public safety, immigration enforcement, or law enforcement." *Id.*

15       The Workforce Executive Order further provides that, within 30 days of its issuance (i.e.,

16   by March 13, 2025), "Agency Heads shall submit to" OMB and OPM "a report that identifies any

17   statutes that establish the agency, or subcomponents of the agency, as statutorily required entities."

18   *Id.* § 3(e). That report "shall discuss whether the agency or any of its subcomponents should be

19   eliminated or consolidated." *Id.* The Executive Order further provides that agency heads "may

20   exempt from this order any position they deem necessary to meet national security, homeland

21   security, or public safety responsibilities." *Id.* § 4(b). The Director of OPM is also authorized to

22   "grant exemptions from [the] order." *Id.* § 4(c). Finally, the Order states that it "shall be

23   implemented consistent with applicable law and subject to the availability of appropriations," *id.*

24   § 5(b), and shall not "be construed to impair or otherwise affect the authority granted by law to an

25   executive department, agency, or the head thereof," *id.* § 5(a)(i).

26       On February 26, 2025, OPM and OMB jointly issued the Workforce Memorandum. ECF

27   No. 37-1 App. 2. The Memorandum "submit[s] guidance on [ARRPs], along with the instruction

28   that such plans be submitted to OMB and OPM." *Id.* ARRPs should seek to achieve five principles:

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

(1) "Better service for the American people; (2) "Increased productivity"; (3) "A significant reduction in the number of full-time equivalent (FTE) positions by eliminating positions that are not required"; (4) "A reduced real property footprint"; and (5) "Reduced budget topline." *Id.* at 1-2. "Pursuant to the President's direction, agencies should focus on the maximum elimination of functions that are not statutorily mandated while driving the highest-quality, most efficient delivery of their statutorily-required functions." *Id.* at 2. The Memorandum identifies in broad terms "principles" agencies should consider in undertaking reorganization and reduction actions. *Id.* at 2. It also provides a list of "available tools" agencies should consider employing in crafting their ARRPs to effectuate the President's directive. This includes the hiring freeze President Trump set forth in a January 20, 2025 Presidential Memorandum, processes to ensure that agency heads have visibility and sign off onto potential job offers, eliminating non-statutorily mandated functions through RIFs, reviewing underperforming employees as well as employees engaged in misconduct and probationary employees, reducing headcount through attrition and allowing term or temporary positions to expire without renewal, separating reemployed annuitants in areas likely subject to RIFs, and renegotiating collective bargaining agreements that inhibit government efficiency and employee accountability. *Id.* at 3. The Memorandum also notes that agencies should consider changes to regulations and agency policies that would reduce or eliminate agency subcomponents and otherwise hasten implementation of ARRPs, while cautioning that some such changes "must be pursued through notice-and-comment rulemaking[.]" *Id.*

The Memorandum states that agencies should submit ARRPs "to OMB and OPM for review and approval" in two phases: Phase 1 ARRPs, to be submitted by March 13, 2025, which "shall focus on initial agency cuts and reductions, *id.* at 3; and Phase 2 ARRPs, to be submitted by April 14, 2025, which "shall outline a positive vision for more productive, efficient agency operations going forward," *id.* at 4.[2] The Workforce Memorandum further states that, before a RIF

---

[2] Phase 1 ARRPs should provide a list of agency subcomponents or offices that provide direct services to citizens, any statutes that establish the agency, or subcomponents of the agency, as statutorily required entities, any agency components and employees performing functions not mandated by statute or regulation who are not typically designated as essential during a lapse in appropriations, "[w]hether the agency or any of its subcomponents should be eliminated or

is implemented and an employee separated from service, there must be a formal RIF notice period of 60 days (or 30 days if the agency obtains an OPM waiver), in which affected employees are issued formal RIF notices, as well as provided appeal rights, career transition assistance, and priority placement options. ECF No. 37-1 App.2 at 7. OPM's regulations independently codify these notice requirements. *See, e.g.*, 5 C.F.R. §§ 351.801(b), 351.802.

## III. Procedural History

Plaintiffs filed suit on April 28, 2025, and filed the Amended Complaint (the operative Complaint for purposes of this motion) on May 14. ECF No. 1; ECF No. 100. The Amended Complaint contains seven claims, which we discuss further below.

Three days after they filed this action, Plaintiffs filed a motion for a temporary restraining order, which this Court granted on May 9. ECF No. 85. The Court granted Plaintiffs' motion for a preliminary injunction on May 22. ECF No. 124. The Court's order directed that OMB, OPM, USDS, and 19 agency defendants are "enjoined and/or stayed from taking any actions to

---

consolidated; and which specific subcomponents or functions, if any, should be expanded to deliver on the President's priorities[,]" tools the agency intends to use to increase efficiencies, "[a] list by job position of all positions categorized as essential for purposes of exclusion from large-scale RIFs," "[t]he agency's suggested plan for congressional engagement to gather input and agreement on major restructuring efforts and the movement of fundings between accounts," and the agency's timetable for implementation of each part of the Phase 1 AARP. *Id.* Phase 2 ARRPs should provide, among other things: confirmation that the agency has reviewed all its personnel data, plans to ensure that employees are grouped based on like duties and functions to the maximum extent possible, any proposed relocations from Washington, D.C. to less expensive areas of the country, "[t]he competitive areas for subsequent large-scale RIFs[,]" all reductions (of FTE positions and otherwise), the agency's plan to ensure new career appointment hires are in highest-need areas, any collective bargaining agreement provisions that inhibit efficiency and cost-savings (and the agency's plan to renegotiate any such provisions), an explanation how the ARRP will improve services for Americans and advance the President's priorities, "[f]or agencies that provide direct services to citizens (such as Social Security, Medicare, and veterans' health care), the agency's certification that implementation of the ARRPs will have a positive effect on the delivery of such services" (a certification that "should include a written explanation from the Agency Head"), plans to improve efficiency and reduce costs through improved technology, "[a]ny changes to regulations and agency policies, including changes that must be pursued through notice-and-comment rulemaking," as well as the agency's timetable and plan for implementing the ARRP. *Id.* at 5-6. The Memorandum further states that agencies should continue sending monthly progress reports on May 14, 2025, June 16, 2025, and July 16, 2025. *Id.* at 6. Phase 2 Plans should be planned for implementation by September 30, 2025. *Id.* at 4.

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

implement or enforce" the Workforce Executive Order or Workforce Memorandum. *Id.* at 47-48. The enjoined actions "includ[ed] but [were] not limited to," among other things, any approval or disapproval of agency RIF Plans and "any further implementation" of ARRPs, such as through the issuance or execution of RIF notices and terminations, "to the extent [such actions] are taken to implement" the Workforce Executive Order or Workforce Memorandum. *Id.* at 48.

Defendants appealed. ECF No. 125. A divided Ninth Circuit panel denied Defendants' motion for a stay pending appeal but, on July 8, the Supreme Court granted a stay pending appeal. *Trump v. Am. Fed. of Gov't Emps.*, No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025). The Court concluded that "the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful." *Id.* \*1. The Court "express[ed] no view on the legality of any Agency RIF and Reorganization Plan produced or approved pursuant to the Executive Order and Memorandum," noting that "[t]hose plans are not before this Court." *Id.*

## STANDARD OF REVIEW

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. As the party seeking to invoke this Court's jurisdiction, Plaintiffs have the burden to demonstrate that subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A failure to state a claim may result from the lack of a cognizable legal theory or from an absence of sufficient facts alleged to support a cognizable legal theory." *Lawyers for Fair Reciprocal Admission v. United States*, 141 F.4th 1056, 1065 (9th Cir. 2025).

## ARGUMENT

I.    **The Workforce Executive Order and Workforce Memorandum Are Lawful, As Reinforced by the Supreme Court's Stay Order.**

We first address the merits of Plaintiffs' challenge to the Executive Order and

Memorandum, because the merits are clear, particularly after the Supreme Court's stay order.[3]

The basis for the Executive Order is clear. Federal law permits agencies to conduct RIFs; Congress has recognized agencies' authority to engage in RIFs since the nineteenth century; and the federal government has repeatedly exercised its authority to conduct RIFs, including in large-scale Presidentially-directed RIFs, most recently during the Clinton Administration. *See supra* pp. 3-5. And as the Federal Circuit—where challenges to RIFs are properly channeled following required MSPB review—has explained, "[w]e accord an agency wide discretion in conducting a reduction-in-force." *Markland v. OPM*, 140 F.3d 1031, 1033 (Fed. Cir. 1998). In granting a preliminary injunction, this Court did not appear to disagree with any of this. ECF No. 124 at 37. The President unquestionably had the authority to direct agencies to conduct RIFs, consistent with law, in furtherance of his policy objectives, with the guidance of OPM and OMB.

The Court concluded otherwise at the preliminary injunction stage but, respectfully, none of the Court's reasons are sound. First, the Court treated as "evidence" of "unlawful action" the prospect that "the agencies are acting at the *direction* of the President and his team" in planning and executing RIFs. PI Opinion at 36. But that view turns Article II upside down. Agency RIFs are not exempt from the fundamental constitutional principle that the President, as the repository of the entire executive power, may direct his subordinates in exercising their functions—so long as his direction is *lawful*. And contrary to the Court's suggestion, Defendants have never denied that agencies are acting at the ultimate "*direction* of the President," *id.* at 36. To be sure, the Workforce Executive Order provides agencies with broad discretion to implement its directives consistent with agencies' organic statutes and other legal requirements. But the Executive Order is mandatory as to agencies, which we have never disputed. And there is nothing wrong with that—

---

[3] We explain in Part III why this Court lacks jurisdiction to consider any challenges to agency RIFs that are independent of challenges to the Executive Order and Memorandum. For reasons Defendants have previously explained, this Court also lacks jurisdiction to consider the legality of the Order and Memorandum themselves because the FSLMRS and CSRA preclude district court jurisdiction and because the Workforce Memorandum is not a final agency action reviewable under the APA. ECF No. 60 at 23-31, 35-38; ECF No. 117 at 6-11, 13-14. Defendants repeat and incorporate by reference those arguments. But because these issues have already been extensively briefed and since the Supreme Court's order effectively resolves the legality of the Executive Order and Memorandum on the merits, we do not further address those arguments here.

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

that, of course, is the way the constitutional structure is meant to work. The Court's treatment of such presidential direction as evidence of illegality was deeply mistaken.

The Court also emphasized the President's lack of operative "statutory authority to reorganize the executive branch." *Id.* at 28; *see also id.* at 29-32 (discussing historical reorganization statutes). But a RIF is not a reorganization, which generally refers to an agency restructuring rather than the elimination of positions within an existing agency structure. Thus, while a RIF can be conducted *because* of a "reorganization," it can also be conducted for other reasons, such as "lack of work" or "shortage of funds." 5 C.F.R. § 351.201(a)(2); *see*, *e.g.*, 5 U.S.C. § 5361(7). More fundamentally, neither the Workforce Executive Order nor the Memorandum directs any reorganizations or other actions that would conflict with agencies' statutory mandates. There is nothing unlawful about agency RIFs that facilitate the restructuring of agencies within the organizational bounds imposed by statute. Indeed, federal agencies are constantly exercising their existing housekeeping and other statutory reorganization authorities to restructure themselves within the constraints established by Congress.[4] No authority calls into question the legality of those measures. It is of course possible that some hypothetical agency reorganizations might violate statutory requirements. But where the Executive Order is capable of being applied lawfully, a court has no authority to reach out *in advance* to stop agencies from implementing it.

The Court also emphasized that the Executive Order contemplates "large-scale" RIFs. ECF No. 124 at 37, 40. But like analogous layoffs in the private sector, RIFs are often large-scale by their nature. For example, President Clinton's 1993 order of a 100,000-person reduction in the federal workforce was large-scale by any reasonable measure. And federal law explicitly

---

[4] *See* 5 U.S.C. § 301; *see also*, *e.g.*, 28 U.S.C. §§ 509, 510 (vesting most functions of the Department of Justice in the Attorney General and authorizing him to delegate that authority to other officers and employees within the Department); 6 U.S.C. § 452 (authorizing future reorganizations within the Department of Homeland Security); 22 U.S.C. § 6611 (same for Department of State). Notices of such actions litter the Federal Register year after year. *See, e.g.*, *Establishment of the Space Bureau and the Office of International Affairs and Reorganization of the Consumer and Governmental Affairs Bureau and the Office of the Managing Director*, 88 Fed. Reg. 21,424 (Apr. 10, 2023) (restructuring Federal Communications Commission bureaus); *Establishment of the Office of Environmental Justice*, 87 Fed. Reg. 33,174 (June 1, 2022) (creating new office within Department of Health and Human Services).

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

10

recognizes that RIFs will sometimes involve "the separation of a significant number of employees." 5 U.S.C. § 3502(d)(1)(B); *see* 5 C.F.R. § 351.803(b). A large RIF that comports with the agency's statutory structure and function is just as lawful as a small one.

More broadly, the Court suggested that it viewed the Executive Order's lawfulness not as a legal question but as a factual inquiry to be resolved based on "the record"—which the Court viewed as primarily comprised of how agencies are implementing the Executive Order. *See* ECF No. 124 at 2 ("[T]he role of a district court is to examine the evidence, and at this stage of the case the evidence discredits the executive's position."); *id.* at 33 n.18 ("One of the questions to be litigated in this case, and which will require further development of the factual record, is whether the RIFs here are so extensive that they essentially 'eliminate' Congressionally-created agencies or prevent those agencies from fulfilling their statutory mandates."); *id.* at 38 n.21 (characterizing what "appears to be" happening based "[o]n the present record").

Respectfully, this is simply not correct. If future plaintiffs believe a specific agency action implementing the Executive Order is unlawful, they may attempt to challenge it, and it indeed would be the role of the tribunal adjudicating such a challenge (whether that tribunal is an administrative body or a federal district court) to resolve it based on the record of that action. But the validity of an executive order *itself* is a question of law, to be determined based on the executive order's content. Here, the Workforce Executive Order (and Memorandum) expressly direct compliance with the law in conducting RIFs. Where courts have enjoined implementation of an Executive Order notwithstanding a savings clause, they have done so because the order *could not* be applied lawfully (not because of evidence that agencies *were applying* it unlawfully). *See City and County of San Francisco v. Trump*, 897 F.3d 1225, 1238 (9th Cir. 2018). Put another way, if an executive order unambiguously "commands action that a saving clause purports to negate, a reviewing court must ignore the saving clause and read the order's operative provision to mean what it says." *League of United Latin Am. Citizens v. Exec. Off. of the President*, 2025 WL 1187730, at *20 (D.D.C. Apr. 24, 2025) (cleaned up). But where an Executive Order can be applied lawfully, "[t]he mere possibility that some agency might make a legally suspect decision" and ignore a saving clause's command "does not justify an injunction against enforcement" of that

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

11

order." *Building & Const. Trades Dept., AFL-CIO v. Allbaugh*, 295 F.3d 28, 34 (D.C. Cir. 2002). Here, if any future RIFs were to end up violating any statutory requirements, that would be contrary to the Executive Order and Memorandum, not because of them.

Putting all that aside, respectfully, the Supreme Court's nearly unanimous order precludes the Court from adhering to its previous conclusion that the Executive Order is unlawful. To be sure, given the procedural posture (a motion for a stay pending appeal), the Court's ruling was framed in terms of likelihood of success. But the legal basis of the Court's ruling all but forecloses a contrary conclusion on the legality of the Order. "When the full Supreme Court grants a stay application, lower courts should accord that decision great weight, unless there is compelling reason not to do so." Trevor N. McFadden and Vetan Kapoor, *The Precedential Effects of the Supreme Court's Emergency Stays*, 44 Harv. J. L. & Pub. Pol'y 827, 882 (2021). "Of course, any discussion of the merits of a question increases the confidence with which a lower court can act." *Id.* And "a statement by the full Court about the movant's likelihood of success on the merits ought not to be simply ignored or cast aside." *Id.*

Judge Mehta's recent decision in *Vera Institute for Justice et al. v. Department of Justice et al.*, No. 25-CV-1643 (APM), 2025 WL 1865160 (D.D.C. July 7, 2025), is particularly instructive on this point. While criticizing the challenged agency actions at issue, *id.* at *1, Judge Mehta noted that the Supreme Court had granted a stay in a materially identical case, holding that "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Department of Education v. California*, 145 S. Ct. 966, 968 (2025). Because the Supreme Court had "spoken in a case substantially the same as this one," "[t]his court must listen." *Vera Institute*, 2025 WL 1865160, at *2.

The particular circumstances of the Supreme Court's July 8 stay order make clear that it must be accorded decisive weight on the question of the Workforce Executive Order's legality. For one, the Court made clear that it was granting a stay based on its assessment of the merits. The Supreme Court held that "the Government is likely to succeed on its argument that" the Workforce Executive Order and Workforce Memorandum are lawful. 2025 WL 1873449 at *1. And the Court reached that conclusion as to a legal issue, not a factual question that might be resolved differently

based on further factual development.[5] It resolved this issue following extensive briefing, including amicus briefs on both sides. And the result was lopsided: the Court's merits analysis apparently represented the views of all but one Justice.[6]

Plaintiffs' arguments in recent motion practice to the contrary are not persuasive. Plaintiffs quote Justice Kavanaugh's statement that a stay order "is not a ruling on the merits." *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurring). But Justice Kavanaugh explained there that the stay order *in that case* was not a ruling on the merits because the Supreme Court issued a stay for reasons unrelated to with the merits—the district court in that case ran afoul of the principle that "that federal district courts ordinarily should not enjoin state election laws in the period close to an election." *Id.* Here, by contrast, the Supreme Court assuredly did opine on the merits. Plaintiffs' invocation of a district court case for the proposition that courts are "not at liberty to simply ignore binding Circuit precedent based on Defendants' divination of what the Supreme Court was thinking when it issued the stay orders," *Doe v. Trump*, 284 F.Supp.3d 1182, 1185 (W.D. Wash. 2018), is also not well taken. The district court there explained that the Supreme Court had given "no reason for its stay orders, thus, it is impossible for this court to discern the Supreme Court's rationale." *Id.* That is not the situation here, where the Court expressly stated that the Executive Order and Memorandum were likely lawful.[7] The Court respectfully is obligated to

---

[5] Even if this Court continues to believe that the question of the Executive Order's legality presents a factual rather than legal issue, it is clear that the Supreme Court does not agree. Justice Sotomayor's concurrence found it dispositive that "the relevant Executive Order directs agencies to plan reorganizations and reductions in force consistent with applicable law, and the resulting joint memorandum from the Office of Management and Budget and Office of Personnel Management reiterates as much." 2025 WL 1873449, at *2 (Sotomayor, J., concurring) (quotation marks omitted). And both the majority and Justice Sotomayor obviously rejected Justice Jackson's view that the legality of these sources was a factual question requiring factual development.

[6] Only Justice Jackson publicly dissented from the Order.

[7] Plaintiffs also assert that "the Supreme Court's grant of a stay does not always predict its disposition on the merits even of that particular case." ECF No. 213 at 3 n.2. Of the two examples Plaintiffs cite, one of them (the election law case cited above) involved a stay granted for reasons *wholly independent* of the merits. The other case involved *a denial* of a stay. But decisions to deny a stay generally do not have any precedential effect (at least where they do not express a view on the merits) because the Court may deny a stay if the movant fails to satisfy any of the *Nken* stay factors. *See* McFadden and Kapoor, 44 Harv. J. L. & Pub. Pol'y at 849-50. By contrast, "once the

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

13

treat the Executive Order as lawful in deciding the motion to dismiss and in any future proceedings in this case.

      As to the Workforce Memorandum, we have already explained at length why, even if the Memorandum were a final agency action subject to APA review (and it is not), the Memorandum is lawful. The Workforce Memorandum states at least five times that agencies should only undertake actions that are consistent with their statutory authority.[8] It repeatedly makes clear that agencies should not undertake any action that would impair service delivery functions.[9] And these dispositive points aside, most of the memorandum consists of high-level guidance, setting forth principles that agency RIF Plans "*should* seek to achieve," tools that agencies "*should* employ" in developing Plans, and information that Plans "*should* include." ECF No. 37-1 App. 2 at 2 (emphasis added). Insofar as it directs agencies to submit ARRPs to OPM and OMB "for review and approval" by specified dates, *id.* at 3-4, those directives fall easily within OPM's and OMB's statutory authorities and the process established by the President in the Executive Order.

      As for OPM, that agency has authority to "prescribe regulations for the release of

---

Supreme Court decides a movant is likely to succeed on the merits, the movant typically ends up being the prevailing party when a merits decision is issued." *Id.* at 871; *see also id.* (noting that, "[f]rom 2015 until August 2020, Westlaw reports that the Supreme Court made roughly 250 non-administrative stay decisions" and that "[e]xcept in the death penalty context, stay grants issued by the full Court forecasted the eventual merits decision in *every instance* that the Court went on to rule on the merits"). And here, of course, the Court not only ruled that the Executive Order and Memorandum were likely lawful, but its conclusion was nearly unanimous.

[8] Specifically: (1) any changes made by agencies should seek to "driv[e] the highest-quality, most efficient delivery of their statutorily-required functions," ECF No. 37-1 App. 2 at 2; (2) agencies should only seek to eliminate "functions that not statutorily mandated," *id.*; (3) "[a]gencies should review their statutory authority and ensure that their plans and actions are consistent with such authority," *id.*; (4) agencies should only seek to "[e]liminat[e] non-statutorily mandated functions through RIFs," *id.* at 3; and (5) in their initial reports, agencies must provide "[a]ny statutes that establish the agency, or subcomponents of the agency, as statutorily required entities," *id.*

[9] Specifically: "(1) Agency field offices should only be closed or consolidated "to the extent consistent with efficient service delivery," ECF No. 37-1 App. 2 at 2; (2) ARRPs must include "[a]n explanation of how the ARRPs will improve services for Americans and advance the President's policy priorities," *id.* at 5; (3) ARRPs must include "[t]he framework and criteria the agency has used to define and determine efficient use of existing personnel and funds to improve services and the delivery of these services," *id.*

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

14

competing employees in a reduction in force," 5 U.S.C. § 3502(a), and other statutes supplement that authority, *see, e.g.*, *id.* § 1301 (OPM "shall aid the President, as he may request, in preparing the rules he prescribes under this title for the administration of the competitive service"); *id.* § 1302(b) (OPM "shall prescribe and enforce regulations for the administration of the provisions of this title, and Executive orders issued in furtherance thereof, that implement the Congressional policy" governing, *inter alia*, preferences for employee "retention"); *see also id.* §§ 1103(a)(5)(A), (c), 1104(b)(2). OPM exercised those authorities in promulgating detailed, Executive-wide RIF regulations. 5 C.F.R. Pt. 351. Those regulations provide for OPM to "establish further guidance and instructions for the planning, preparation, conduct, and review of reductions in force" and to "examine an agency's preparations for reduction in force at any stage," 5 C.F.R. § 351.205, which squarely encompasses OPM's directives here. In short, OPM's RIF regulations "mandate a continuing exchange between each agency and the OPM." *National Treasury Emps. Union* v. *Devine*, 733 F.2d 114, 120 (D.C. Cir. 1984). As for OMB, it is statutorily authorized to "establish general management policies for executive agencies" and "[f]acilitate actions by . . . the executive branch to improve the management of Federal Government operations and to remove impediments to effective administration." 31 U.S.C. §§ 503(b), (b)(4). Moreover, the Executive Order expressly directs agency heads to submit reorganization plans to the Director of OMB.

In any event, as to this issue, here too the Supreme Court's near unanimous stay order is dispositive. Before the Supreme Court, Plaintiffs—consistent with the Amended Complaint and arguments in this Court—complained that "OMB and OPM have assigned to themselves and thereby usurped statutory delegations of decision-making to agencies." *See* 24A1174 (S. Ct.) (Plaintiffs' Response to Application Filed June 9, 2025) at 29. Plaintiffs likewise focused *heavily and repeatedly on OPM/OMB approval* of ARRPs in arguing that the Workforce Memorandum was unlawful.[10] And for purposes of its stay application, Defendants *did not dispute* Plaintiffs'

---

[10] *See id.* at 3 ("[T]hrough their Memorandum, OMB and OPM amplified and accelerated the President's orders by imposing unworkable timeframes and assuming for themselves the power to approve or veto proposals by individual federal agencies…");*id.* at 8-9 ("The Memorandum also instructed each federal agency to submit a combined ARRP implementing the EO, for OMB and OPM's review and approval." (cleaned up)); *id.* at 9 (contending that "Respondents established,

---

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

argument that the Memorandum requires OPM and OMB to approve ARRPs, and instead argued that any such approval requirement was *lawful*. 24A1174 (S. Ct.) (Stay Application Filed June 2, 2025) at 23. Nor did Defendants dispute for purposes of their Supreme Court application that OPM and OMB have rejected some ARRPs. *Id.* at 28. The Supreme Court was not swayed by Plaintiffs' arguments and held that the Workforce Memorandum—including its provision directing OMB and OPM approval of ARRPs—was lawful. This Court should not now reach a contrary conclusion.

## II.    The Amended Complaint Must be Dismissed

In light of the foregoing, the Amended Complaint must be dismissed. All seven claims depend on the mistaken view that the Workforce Executive Order, the Workforce Memorandum, or both are unlawful—a theory that fails and that the Supreme Court has now rejected.

Claim I, asserted against President Trump, contends that the Workforce Executive Order exceeds the President's lawful authority. Am. Compl. ¶ 387; *see also id.* ¶ 388 ("Therefore, the President's Executive Order 14210 ordering agencies to engage in large-scale RIFs and reorganization plans, and impose hiring freezes, limits, and controls, is not authorized by Article II and usurps Congress's Article I authority, and is thus ultra vires."). The claim is limited to the Executive Order and does not purport to challenge any other action by President Trump. This claim plainly fails as a matter of law. At the very least, as we explained at the TRO stage, any nonstatutory review of an Executive Order under an ultra vires theory is only available when there is a conceded absence of any statutory authority. *Dalton v. Specter*, 511 U.S. 462, 473 (1994). The Supreme Court's near-unanimous holding that the Executive Order is likely *lawful* certainly

_____

and the Government did not dispute, that OMB and OPM *rejected* some ARRPs for failure to eliminate enough positions, requiring agencies to impose greater cuts to programs and positions"); *id.* ("Soon after these submission deadlines for OMB/OPM 'approval,' agencies across the federal government commenced implementation of reorganizations and RIFs according to the President's parameters."); *id.* at 27 ("The District Court and Court of Appeals also correctly held that Respondents are likely to prevail on claims that OMB and OPM's actions directing federal agencies to create and implement ARRPs on incredibly truncated timeframes, and to obtain approval from OMB and OPM for those plans, exceeded their authority and violate the APA."); *id.* (stating that no statutes "authorize OMB to require agencies to reorganize or RIF employees (or to do so in particular timeframes or scale or scope), or to make substantive decisions for other agencies on matters Congress did not delegate to OMB"); *id.* ("OPM does not have authority to make RIF or reorganization decisions either.").

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

forecloses any argument that the Executive Order fits within this exceedingly narrow exception for blatantly *ultra vires* action. President Trump plainly must be dismissed from this lawsuit.

Claim II, asserted against OPM and OMB,[11] contends that the Workforce Memorandum exceeds statutory authority. Specifically, it contends that "[t]he February 26, 2025 Memorandum from OMB and OPM to agency heads exceeds statutory authority and usurps the authority delegated by Congress to the agencies, not to OMB or OPM, by" supposedly requiring certain things of agencies. *Id.* ¶ 394. Claim III, asserted against the same three Defendants, similarly contends that the Workforce Memorandum exceeds statutory authority by, according to Plaintiffs, "requiring agencies to submit Agency RIF and Reorganization Plans to OMB and OPM for approval; requiring agencies to include in those plans large-scale RIFs; and imposing an assortment of other parameters and requirements," *id.* ¶ 402. Claim IV contends that OPM and OMB's issuance of the Workforce Memorandum and its supposed approval of ARRPs necessarily order agencies to, among other things, cede their decision-making authority to OPM and OMB, require agencies to disregard statutory requirements, categorically require large-scale RIFs that are necessarily contrary to agency functions and statutory requirements, require agencies to abandon reasoned decision-making, and require agencies to act under unrealistic timeframes inconsistent with reasoned decisionmaking. *Id.* ¶¶ 410-411. All of these claims simply characterize the Memorandum. They thus fail as a matter of law, particularly in light of the Supreme Court's order.

That conclusion follows even though Claims II and III state that they are "not limited to the February 26, 2025 Memorandum." *Id.* ¶¶ 396, 404. The Amended Complaint does not identify, let alone adequately plead, any assertedly unlawful action by OPM and OMB other than the issuance and implementation of the Workforce Memorandum. The Amended Complaint's allegations as to OPM and OMB are limited to the Memorandum and Plaintiffs' characterization of it. *Id.* ¶¶ 160-176; *see also id.* Heading C ("OMB, OPM, and DOGE Implementation of the President's Orders: February 26 Directive, March 13 Deadline, and April 14 Deadline").

In any event, to escape the effect of the Supreme Court's order, Plaintiffs must at the very

---

[11] Claims II-IV are also asserted against "DOGE." We explain why the claims against DOGE must be dismissed in Part IV.

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

least identify and plausibly plead allegedly illegal actions by OPM and OMB that are *logically distinct* from the Memorandum the Supreme Court held was likely lawful. They do not. Claims II and III assert that they encompass "any direction, approval, or requirement imposed with respect to any ARRPs that result from that Executive Order," *id.* ¶ 396, while Claim III repeats that language, *id.* ¶ 404, and adds "any decision 'approving' an ARRP," *id.* ¶ 405, which Claim IV repeats, *id.* ¶ 410. But again, the Supreme Court determined that the Workforce Memorandum was likely lawful despite Plaintiffs' repeated emphasis on the Memorandum's directive that ARRPs be submitted for OPM's review and approval, and even though Defendants neither contested that OPM/OMB approval was required nor disputed that OPM and OMB had rejected some ARRPs as insufficient. *See supra* pp. 15-16. These three claims all fail.

Claim V asserts that the Workforce Memorandum was unlawfully issued without notice-and-comment procedures. *Id.* ¶¶ 412-419. This theory is likewise foreclosed by the Supreme Court's stay order and, indeed, the parties litigated this argument in the Supreme Court as well. *See* 24A1174 (S. Ct.) (Plaintiffs' Response to Application Filed June 9, 2025) at 28-29 (Plaintiffs making this argument). OMB and OPM too thus must be dismissed from this case.

Claims VI and VII are asserted against the Federal Agency Defendants, but those Claims must be dismissed for the same reasons. Critically, neither Claim contains a single allegation of unlawful agency activity that is independent of Plaintiffs' allegations concerning the Executive Order and Memorandum. Rather, Plaintiffs allege that Federal Agency Defendants acted unlawfully *by following* the Executive Order and Memorandum. Claim VI contends that the Federal Agency Defendants acted unlawfully by "creat[ing] and submit[ing] for OMB and OPM approval an ARRP, according to the parameters imposed by OMB, OPM and DOGE" and "have exceeded their authority by implementing the President's unconstitutional plans." *Id.* ¶¶ 423-24. Claim VII asserts that "[t]he actions of the Federal Agency Defendants, including but not limited to implementing the President's unconstitutional orders to reorganize and RIF employees, pursuant to the terms dictated by the President, violate the APA" by, among other things (and essentially mirroring the allegations in Claim IV), ceding decisionmaking authority, following "the President's unconstitutional directions and directions of OMB and OPM," engaging "in large-scale

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

18

RIFs that are necessarily contrary to agency's ability to maintain required function and authorizing statute," abandoning reasoned decisionmaking, and acting under unrealistic timetables. *Id.* ¶ 431. And indeed, Plaintiffs themselves have characterized their claims against Agency Defendants as involving "agency action effectuating government-wide Presidential orders." ECF No. 37-1 at 47. An allegation that Federal Agency Defendants followed directives that the Supreme Court has concluded are likely *lawful* does not plausibly state a claim for relief.

Resisting this conclusion, Plaintiffs have since argued that they "have challenged and do challenge the legality of the approval and implementation of specific ARRPs." ECF No. 213 at 4 (emphasis omitted). But Plaintiffs' challenges to "specific ARRPs" rest on grounds indistinguishable from those undergirding their challenge to the Executive Order and Memorandum. Plaintiffs contend that "claims against OMB, OPM, and DOGE challenge not only the Memorandum but also these implementing agencies' actions in approving specific ARRPs and directing the contents thereof." *Id.* at 5. This is just a restatement of Plaintiffs' argument—which they pressed repeatedly at the Supreme Court, without pushback from the Government—that OPM and OMB were requiring approval of ARRPs and withholding approval for ARRPs that did not propose sufficient cuts. *See supra* pp. 15-16. The Supreme Court was not persuaded.

Plaintiffs also reference language in their Complaint alleging that agencies are acting arbitrarily and capriciously, Am Compl. ¶ 431, but, as previously discussed, this paragraph is simply characterizing the Executive Order, and contains no facts or allegations about individual agency actions that are independent of that characterization of what Order. Plaintiffs' attempt to argue that they are challenging individual agency actions wholly independent of the Workforce Executive Order and Memorandum has no basis in the Amended Complaint. And again, Plaintiffs themselves have repeatedly stressed that they are challenging "agency action effectuating government-wide Presidential orders." ECF No. 37-1 at 47-48.

But to the extent Plaintiffs are purporting to challenge specific agency actions such as RIFs and reorganizations—untethered to any legal challenge to the Memorandum and Executive Order the Supreme Court said were likely lawful—any such challenge also fails. First of all, if Plaintiffs are not challenging agencies' decisions to comply with the Executive Order and Memorandum,

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

19

that just begs the question of what agency action they are purporting to challenge under the APA. The answer cannot be the ARRPs themselves. The ARRPs do not "mark the consummation of the agency's decisionmaking process" as to all of the many recommendations, strategies, and topics discussed within them; nor do they in any sense determine "rights or obligations" or themselves impose "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

And to the extent Plaintiffs claim that the "final agency actions" at issue are post-ARRP actions purportedly implementing ARRPs, *see* ECF No. 213 at 6 (identifying "Federal Agency Defendants' actions implementing those ARRPs, including through issuance of large-scale RIF notices and placement of employees on administrative leave en masse"), a sprawling challenge to unspecified actions across dozens of separate agencies, in many cases before those decisions are even made or finalized, is not a proper APA claim or even an intelligible one.[12]

As to 13 agencies, the Amended Complaint characterizes what Plaintiffs describe as "imminent" RIFs. *Id.* ¶¶ 228-283. But Plaintiffs obviously cannot challenge under the APA alleged future agency action as arbitrary and capricious or otherwise unlawful—based on such sources as newspaper articles, *id.* ¶¶ 230, 233, 235, 238, fact sheets from Senators opposed to future agency cuts, *id.* ¶ 239, and leaked documents, *id.* ¶¶ 254-55—before any RIFs are announced and the agency provides the record and rationale for its decision.[13] As to the eight agencies at which the Complaint alleges RIFs had been implemented, *id.* ¶¶ 196-227, the Complaint contains no facts or other allegations that these specific RIFs violate any statutory requirements or are otherwise unlawful. The Complaint should be dismissed in its entirety.

### III.    The Court Lacks Jurisdiction to Consider Challenges to Specific RIFs.

Even if the Complaint encompassed challenges to individual agency RIFs and reorganizations, and even if Plaintiffs could challenge RIFs that have not yet occurred—as well

---

[12] Nor would it even be possible for Federal Agency Defendants to compile and certify an administrative record for a purported challenge to "actions implementing those ARRPs." *Contra* ECF No. 213 at 7.

[13] Indeed, at least one agency as to which the Complaint alleges that large-scale RIFs are "imminent," Am Compl. ¶¶ 228, 274-78, has since announced that it does not now anticipate a large-scale RIF, *see* https://news.va.gov/press-room/va-to-reduce-staff-by-nearly-30k-by-end-of-fy2025/.

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

20

as challenging other RIFs without pleading any facts or allegations supporting a claim that those RIFs are unlawful—this Court would not have jurisdiction to consider such challenges.

The CSRA "establishe[s] a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). The statute provides that "[a]n employee . . . may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a); *see* 5 U.S.C. § 1214(b) (authorizing the MSPB to issue emergency stay relief). And by longstanding regulation, "[a]n employee who has been furloughed for more than 30 days, separated, or demoted by a reduction in force action may appeal to the Merit Systems Protection Board." 5 C.F.R. § 351.901; *see Alder v. Tennessee Valley Auth.*, 43 F. App'x 952, 956 (6th Cir. 2002) (describing a "reduction-in-force decision" as "a fundamental employment claim subject to MSPB review"), *cert. denied*, 537 U.S. 1112 (2003). The Federal Circuit has exclusive jurisdiction to review final decisions of the MSPB. 5 U.S.C. § 7703(b)(1); *see, e.g.*, *Knight v. Department of Def.*, 332 F.3d 1362, 1364 (Fed. Cir. 2003) (RIF demotion claim). The CSRA also includes the FSLMRS, which governs labor relations between the Executive Branch and its employees. *See* 5 U.S.C. §§ 7101-7135. The Federal Labor Relations Authority is charged with adjudicating labor disputes. 5 U.S.C. § 7105(a)(2). Congress has authorized review of the FLRA's decisions in the courts of appeals. 5 U.S.C. § 7123(a). This framework precludes jurisdiction here.

Plaintiffs previously resisted this conclusion by contending that their claims were not precluded because they purportedly challenged "government-wide" policies. ECF No. 37-1 at 47-48. And this Court similarly concluded that the CSRA and FSLMRS did not preclude district-court jurisdiction. ECF No. 124 at 22-26. The Court repeatedly made clear that it believed it had jurisdiction because Plaintiffs brought constitutional and statutory challenges to the Workforce Executive Order and Workforce Memorandum that, in the Court's view, were not the sorts of claims as to which Congress intended to preclude district-court review under the APA. *Id.* at 23 (claims here "touch[] on fundamental questions of executive authority and separation of powers"); *id.* at 24 (asserting that "claims at issue here are wholly collateral to the review authority of the Federal Labor Relations Authority and the Merit Systems Protection Board" because "this lawsuit

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

21

involves questions of constitutional and statutory authority and the separation of powers"); *id.* at 25 (characterizing claims as "claims that involve broader questions about constitutional and administrative law"); *id.* ("There is nothing efficient about sending constitutional claims to a body that cannot decide them, only to wait for an opportunity to appeal."); *id.* ("the claims here involve issues related to the appropriate distribution of authority to and within the executive branch").

Defendants continue to disagree with the Court's reasoning, but that reasoning no longer applies because Plaintiffs cannot anchor their claims in a challenge to the Executive Order or Memorandum. And if Plaintiffs are challenging pending RIFs (let alone future RIFs) as violating agency governing statutes, as arbitrary and capricious, or on other grounds separate from the government-wide theories the Supreme Court has rejected, there is no serious question that these are the sorts of claims Congress intended to be channeled through the exclusive remedial scheme.

## IV.    The Claims Against "DOGE" Must Be Dismissed.

Finally, the Claims asserted against "DOGE" (Claims II-V), also fail. Plaintiffs repeatedly simply group "DOGE" with OPM and OMB in alleging that the Workforce Memorandum is unlawful. Am. Compl. ¶ 13 ("OMB, OPM, and DOGE are implementing the President's unconstitutional and unlawful orders to federal agencies by way of requiring all those other agencies to present" ARRPs for approval); *id.* ¶ 14 (contending that ARRPs "are only effectuated by OMB and OPM (and DOGE) approval"). But the Workforce Memorandum is a joint OPM/OMB Memorandum, and the Amended Complaint pleads no facts plausibly alleging DOGE's involvement. And even if it did, the Supreme Court's conclusion that the Memorandum is likely lawful would preclude claims against DOGE based on the same Memorandum.

Putting that aside, the Department of Government Efficiency or "DOGE" is the umbrella term for the *government-wide initiative* to implement the President's DOGE Agenda. It consists of USDS, the USDS Temporary Organization, and Agency DOGE Teams, which are created by agency heads and composed of employees of those agencies who report to agency leadership. Exec. Order 14,158, § 3(a)–(c), 90 Fed. Reg. 8441 (Jan. 20, 2025). The Amended Complaint identifies the Defendant as the "Department of Government Efficiency," Am. Compl. ¶ 62, and also refers to "DOGE teams embedded at agencies," contending that, "[o]n information and belief,

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

22

DOGE has required federal agencies to comply with required targets imposed by DOGE for spending reductions by eliminating positions, programs, offices, and functions to meet the DOGE stated goal of imposing spending cuts government-wide." *Id.* ¶ 175. And Plaintiffs have since (improperly) sought discovery in the form of intra-agency communications that include Agency DOGE Teams   ECF No. 210 at 12-14.

If Plaintiffs intend their claims against DOGE to encompass the entire government-wide initiative, that is obviously not a distinct entity that can be sued. And to the extent Plaintiffs' legal theory is that "DOGE" is usurping agency decisionmaking,[14] that theory is facially nonsensical as applied to DOGE Teams, which are agency employees. Plaintiffs cite no authority for the proposition that the federal judicial power extends to adjudicating such alleged intra-agency disputes. And even if it did, to the extent Plaintiffs intend to make allegations against "DOGE" that are independent of those against OPM and OMB, those allegations are, again, conclusory. Plaintiffs contend, inter alia, that DOGE "exceeds any authority by ordering agencies, including but not limited to Federal Agency Defendants, to impose cuts to functions and staffing according to 'targets' and 'goals' imposed by DOGE," Am. Compl. ¶ 395; *see also id.* ¶ 403, but they do not plausibly plead that "DOGE" is issuing any unlawful directives.

As to USDS, Plaintiffs clarified in their TRO Reply that they "seek relief against" USDS, ECF No. 70 at 7, though it is still not clear to Defendants if by that Plaintiffs mean that they seek relief *exclusively* against USDS (and not against the broader DOGE structure). In any event, the claims against USDS must be dismissed as well. For starters, USDS is not an "agency" for purposes of the APA, which defines the term in relevant part as "each authority of the Government of the United States." 5 U.S.C.A. § 701(b)(1). "Although the statutory definition of 'agency' is not entirely clear, the APA apparently confers agency status on any administrative unit with

---

[14] *See* Am. Compl. ¶ 13 ("DOGE, for its part, has been dictating to each agency the required cuts to staffing and programs."); *id.* ¶ 22 ("neither OMB, OPM, nor DOGE have their own authority to order federal agencies to engage in large-scale RIFs"); *id.* ("Nor does DOGE have any authority to require agencies to meet targets imposed by DOGE for reductions of staff and/or spending."); *id.* ¶ 175 ("On information and belief, DOGE has required federal agencies to comply with required targets imposed by DOGE for spending reductions by eliminating positions, programs, offices, and functions . . .").

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

1  substantial independent authority in the exercise of specific functions." *Partington v. Houck*, 723

2  F.3d 280, 289 (D.C. Cir. 2013) (quotation marks and alterations omitted).

3  　　USDS has a limited set of advisory responsibilities, none of which even arguably involves

4  substantial independent authority. USDS has no statutory authority and has the following tasks

5  and responsibilities under various Executive Orders: (1) Agency DOGE Teams—again,

6  employees of the respective agency—are tasked generally with "coordinat[ing] their work with

7  USDS" while "advis[ing] their respective Agency Heads on implementing the President's DOGE

8  Agenda," Exec. Order 14,158, § 3(c); (2) The USDS Administrator should "to the maximum

9  extent consistent with law, "have full and prompt access to all unclassified agency records,

10 software systems, and IT systems," *id.* § 4(b); (3) The USDS Administrator must commence a

11 software modernization initiative and "work with Agency Heads to promote inter-operability

12 between agency networks and systems, ensure data integrity, and facilitate responsible data

13 collection and synchronization," *id.* § 4(a); (4) The Assistant to the President for Domestic Policy

14 is directed to consult with USDS (among other entities) in developing a federal hiring plan, Exec.

15 Order 14,170. § 2(a); (5) In implementing that plan, USDS may provide "advice and

16 recommendations as appropriate" concerning implementation, *id.* § 2(d); (6) USDS receives

17 monthly hiring reports from each DOGE Team Lead, Exec. Order 14,210, § 3(b)(iii); (7) The

18 Administrator of USDS, with the OMB Director and in coordination with the Assistant to the

19 President for Domestic Policy, is directed to identify sources of federal funding for illegal aliens

20 and make various recommendations, Exec. Order 14,218, 2(b)(i)-(ii); (8) USDS receives from

21 each agency DOGE Team Lead "a monthly informational report on contracting activities," Exec.

22 Order 14,222, § 3(d)(ii), as well as "to the extent consistent with law—. . . a monthly

23 informational report listing each agency's justifications for non-essential travel," *id.* § 3(e); (9)

24 The OMB Director is directed to consult with the USDS Administrator (as well as the Director of

25 the Office of Personnel Management), to submit a plan to reduce the size of the federal workforce,

26 Presidential Memorandum, Hiring Freeze, *available at* https://www.whitehouse.gov/presidential-

27 actions/2025/01/hiring-freeze/; and (10) The Secretary of the Treasury is directed to consult with

28 the OMB Director and USDS Administrator in determining whether it is in the national interest

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

24

to lift the current IRS hiring freeze, *id.*

None of these limited responsibilities—which are purely advisory and/or consultative in nature— can plausibly be characterized as substantial "authority" wielded by USDS.

As Defendants have previously noted, there are numerous pending cases raising the question whether USDS is an agency for purpose of FOIA or the APA.[15] But this Court need not decide that issue because any claims against USDS are inadequately pled. Indeed, the Complaint does not even *mention* USDS (save for one paragraph quoting from a different Executive Order, Am. Compl. ¶ 145). It certainly pleads no facts plausibly establishing any claims against USDS, particularly since virtually all allegations relating to "DOGE" concern events *within agencies*.

## CONCLUSION

This Court should dismiss this action in its entirety.

---

[15] *See, e.g.*, *Ctr. for Biological Diversity v. OMB*, No. 1:25-cv-165 (D.D.C.); *Am. Oversight v. U.S. Dep't of Gov't Efficiency*, No. 1:25-cv-409 (D.D.C.); *CREW v. U.S. DOGE Serv.*, No. 1:25-cv-511 (D.D.C.); *MSW Media, Inc. v. USDS*, No. 1:25-cv-01933 (D.D.C.); *Am. Oversight v. U.S. Dep't of Gov't Efficiency*, No. 1:25-cv-1251 (D.D.C. filed Apr. 23, 2025); and *Project on Gov't Oversight, Inc. v. U.S. DOGE Serv.*, 1:25-1295 (D.D.C.); *Center for Biological Diversity v. Office of Management and Budget*, No. 1:25-cv-00165-BAH (D.D.C.).

Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint; Memorandum of Points and Authorities
3:25-cv-03698-SI

Dated: July 21, 2025

Respectfully submitted,

PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director

*Andrew M. Bernie*
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-7203
andrew.m.bernie@usdoj.gov

*Counsel for Defendants*