Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND ORDER QUASHING PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ........................................................................................................................ 1

LEGAL STANDARD ............................................................................................................... 3

ARGUMENT ............................................................................................................................. 4

    I.    The Government's plan to move for dismissal does not justify a protective order........................................................................................................................... 4

        A.    Discovery is open, and a motion to dismiss does not stay discovery............. 4

        B.    The Government's argument for staying discovery mischaracterizes the effect of the Supreme Court stay as well as Plaintiffs' claims. ................. 5

        C.    The Supreme Court's stay does not undermine this Court's jurisdiction. ....................................................................................................... 8

        D.    Discovery should be expedited, not stayed. ................................................. 10

    II.    The APA does not foreclose discovery. ..................................................................... 11

    III.    The Government provides no valid reason to avoid Request No. 1. .......................... 12

        A.    The requested communications are relevant. ................................................ 12

        B.    Request No. 1 is properly directed at DOGE. .............................................. 13

        C.    The communications sought by Request No. 1 are not categorically privileged, and the Government must produce a privilege log for any specific assertions. ......................................................................................... 15

    IV.    Request Nos. 2 and 3 are relevant. ............................................................................ 16

    V.    Discovery is relevant to potential relief..................................................................... 17

CONCLUSION ........................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AFGE v. OPM,*
  2025 WL 914823 (9th Cir. Mar. 26, 2025) ............................................................. 9

*AFGE v. Trump,*
  139 F.4th 1020 (9th Cir. 2025) ........................................................................... 8, 9

*AFL-CIO v. Dep't of Lab.,*
  766 F.Supp.3d 105 (D.D.C. 2025) ....................................................................... 15

*All. for Retired Americans v. Bessent,*
  No. CV 25-0313 (CKK), 2025 WL 1114350 (D.D.C. Mar. 20, 2025) ................... 11

*Allen v. Milligan,*
  599 U.S. 1 (2023) .................................................................................................. 6

*Biden v. Texas,*
  597 U.S. 785 (2022) ............................................................................................... 6

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke,*
  889 F.3d 584 (9th Cir. 2018) ............................................................................... 11

*Dep't of Commerce v. New York,*
  588 U.S. 752 (2019) ............................................................................................... 9

*Desert Survivors v. U.S. Dep't of the Interior,*
  231 F.Supp.3d 368 (N.D. Cal. 2017) ............................................................... 15, 16

*Dietz v. Bouldin,*
  579 U.S. 40 (2016) ............................................................................................... 11

*Doe 1 v. Nielsen,*
  No. 18-CV-02349-BLF(VKD), 2018 WL 4266870 (N.D. Cal. Sept. 7, 2018) ...... 11

*Dunlap v. Alaska Radiology Assocs., Inc.,*
  No. 3:14-CV-00143-TMB, 2018 WL 11462402 (D. Alaska Nov. 5, 2018) ............. 4

*F.T.C. v. Warner Commc'ns Inc.,*
  742 F.2d 1156 (9th Cir. 1984) .......................................................................... 15, 16

*Gray v. First Winthrop Corp.,*
  133 F.R.D. 39 (N.D. Cal. 1990) ............................................................................. 5

*Hewlett Packard Enter. Co. v. Inspur Grp. Co.,*
  No. 24-CV-02220-JST, 2024 WL 4631665 (N.D. Cal. Oct. 29, 2024) .................... 5

*Hisp. Affs. Project v. Acosta*,
  901 F.3d 378 (D.C. Cir. 2018) ............................................................... 11

*Labrador v. Poe*,
  144 S. Ct. 921 (2024) ............................................................................ 5

*People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*,
  No. C05-03508 EDL, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006) ...................... 16

*Lofton v. Bank of Am. Corp.*,
  No. C 07-05892, 2008 WL 2037606 (N.D. Cal. May 12, 2008) ........................... 5

*Merrill v. Milligan*,
  142 S. Ct. 879 (2022) ............................................................................ 5

*Neonode Smartphone LLC v. Apple, Inc.*,
  No. 21-CV-08872, 2022 WL 1285429 (N.D. Cal. Apr. 29, 2022) ............ 3, 12, 18

*Peng v. NorthWestern Mut. Life Ins. Co.*,
  No. 17-CV-01760, 2017 WL 3007030 (N.D. Cal. July 14, 2017) ....................... 3

*Pizzuto v. Tewalt*,
  136 F.4th 855 (9th Cir. 2025) .............................................................. 12

*Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*,
  128 F.4th 1089 (9th Cir. 2025) ............................................................ 17

*Robinson v. Chefs' Warehouse*,
  No. 3:15-CV-05421-RS(KAW), 2017 WL 836944 (N.D. Cal. Mar. 3, 2017) ............ 4

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) .............................................................................. 4

*Sierra Club v. Trump*,
  963 F.3d 874 (9th Cir. 2020) ............................................................... 6

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
  100 F.3d 1443 (9th Cir. 1996) ............................................................. 11

*Tavantzis v. Am. Airlines, Inc.*,
  No. 23-CV-05607-BLF, 2024 WL 812012 (N.D. Cal. Feb. 23, 2024) ................... 5

*Thompson v. U.S. Dep't of Lab.*,
  885 F.2d 551 (9th Cir. 1989) ............................................................... 11

*Trump v. AFGE*,
  No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025) ........................... *passim*

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  578 U.S. 590 (2016) ............................................................................ 17

1

**Federal Statutes**

2   Fed. R. Civ. P. 12 ...................................................................................................4

3   Fed. R. Civ. P. 26 ..............................................................................................2, 3, 4

4   Fed. R. Civ. P. 45 ...................................................................................................4

5   5 U.S.C.
6        § 701 ...........................................................................................................15
         § 705 ...........................................................................................................18
7

**Other Authorities**

8
9   Michael Crowley et al., *State Dept. Layoffs Hit Russia and Ukraine Analysts*, N.Y.
         Times (July 15, 2025).........................................................................................10
10
11  Lisa Friedman & Maxine Joselow, *E.P.A. Says It Will Eliminate Its Scientific
         Research Arm*, N.Y. Times (July 18, 2025) .........................................................10

12  Christina Jewett & Benjamin Mueller, *H.H.S. Finalizes Thousands of Layoffs After
         Supreme Court Decision*, N.Y. Times (Jul. 15, 2025) ............................................10
13
14  Hannah Natanson et al., *State Department Cuts China Policy Staff Amid Major
         Overhaul*, Wash. Post (July 14, 2025)..................................................................10

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

Discovery is open in this case, and Defendants (hereinafter "the Government") have given this Court no valid reason to relieve it of the obligation to respond to Plaintiffs' Requests for Production Nos. 1 to 3 pending resolution of a motion to dismiss. ECF 210. The Government's motion seeks to avoid, yet again, revealing the unlawful actions the Government has already taken and is poised to imminently take, and will have drastic impacts on federal agencies, their employees, and all those who rely on their services. This motion is premised on misconstructions of Plaintiffs' claims and the U.S. Supreme Court's July 9, 2025 stay order that this Court has already rejected (ECF 214), as well as other similarly meritless arguments. And documents sought in these Requests would also be part of the administrative record that is imminently due on July 28, 2025 anyway. The Government should be required to respond to Requests for Production Nos. 1 to 3 for similar reasons that the Court ordered production of Agency RIF and Reorganization Plans ("ARRPs"). ECF 214. Communications between Federal Agency Defendants and OMB, OPM, and DOGE about ARRPs, as well as requests for waivers of statutorily mandated RIF periods and responses to such requests, are plainly relevant to both Plaintiffs' Administrative Procedure Act ("APA") and ultra vires claims. The Court should deny the Government's motion.

# BACKGROUND

The Supreme Court's July 9 stay decision expressly left this Court to decide in the first instance the lawfulness of ARRPs produced or approved pursuant to the challenged Executive Order and OMB/OPM Memorandum. *Trump v. AFGE*, No. 24A1174, 2025 WL 1873449, at *1 (U.S. July 8, 2025). Plaintiffs immediately requested that the Court confirm its prior expedited discovery order requiring production of the ARRPs submitted to or approved by OMB and OPM. ECF 176; ECF 85 at 40–41; ECF 92 (staying production deadline); ECF 109 (granting partial reconsideration and ordering partial in camera production). That prior order had required production of the ARRPs submitted by Federal Agency Defendants or approved by OMB or OPM, and related requests for and approvals of reduction in force ("RIF") notice period waivers.[1] The

---

[1] Evidence submitted at the preliminary injunction stage demonstrated that in those RIF notice

1  Court ordered the Government to file a response by July 14, noting that "The content of the

2  ARRPs … remains squarely at issue in this case."  ECF 177.  The Government filed a lengthy

3  opposition, arguing that the Court should halt all discovery pending a forthcoming motion to

4  dismiss, revisiting the Court's jurisdiction, and generally construing the Supreme Court's stay

5  order to end the case. ECF 208.  Plaintiffs responded to these new arguments on July 16.  ECF 213.

6      Meanwhile, pursuant to the Court's initial scheduling order, the parties were to complete

7  their Rule 26(f) conference by no later than July 11, 2025, which would open discovery pursuant to

8  Rule 26(d)(1).  On July 10, Plaintiffs provided the Government with advance notice of three

9  requests for production of documents under Rule 34.  ECF 178-1 ¶2.

10      Request No. 1 seeks production of communications between any Federal Agency

11  Defendants and OMB, OPM, or DOGE about ARRPs.  ECF 178-1 at 8.  Request Nos. 2 and 3 seek

12  production of Federal Agency Defendants' applications for waivers of statutorily mandated RIF

13  notice periods and responses by OMB or OPM to such requests.  *Id.*[2]

14      The requests were deemed served on July 11, 2025, as of the parties' Rule 26(f) conference.

15  *Id.* ¶4; Fed. R. Civ. P. 26(d)(2)(B).  In light of the exigent circumstances, including the

16  Government's imminent plans to implement ARRPs in numerous federal agencies in the wake of

17  the Supreme Court's stay of this Court's prior injunction, Plaintiffs moved on July 11 for an order

18  shortening the Government's time to respond to Request No. 1.  ECF 178.  The same day, the

19  Court ordered the Government to respond to Plaintiffs' motion by July 15 and, in its response, to

20  identify any categorical objections to the production of documents responsive to Request No. 1.

21  ECF 207.

22      On July 15, the Government opposed Plaintiffs' motion, ECF 211, and simultaneously filed

23  its own motion for a protective order and to quash all three Requests for Production, ECF 210.

24  _____

25  waiver requests and OPM responses agencies were referencing administration decisions regarding
   elimination of programs and offices and the Executive Order at issue in this case.  *Infra* Section IV.

26  [2] This Court previously ordered production of those waiver requests and responses, ECF 85 at

27  40, but the subsequent briefing and orders on the Government's protective order and reconsideration
   request did not address this aspect of the Court's order.  Plaintiffs thus included these document

28  requests in an abundance of caution, in the event this Court did not reconfirm that aspect of the
   expedited order.

1    That motion repeated many of the points made by the Government in its objection to production of

2    the ARRPs (ECF 208).

3    　　　On July 18, the Court resolved the pending dispute regarding production of the ARRPs and

4    the Government's request for reconsideration and a protective order, including claims of

5    deliberative process privilege.  ECF 214.  The Court specifically rejected the Government's

6    contentions that the Supreme Court's stay order "effectively ends this case" (ECF 214 at 4, quoting

7    ECF 208 at 1): "This Court disagrees with defendants' reading."  *Id.*  The Court also rejected the

8    Government's position that expedited discovery is inappropriate with respect to APA claims to be

9    reviewed on an administrative record.  *Id.* at 6.  Thus, the Court concluded that ARRPs are "plainly

10   relevant" to Plaintiffs' claims and went on to hold that even if the deliberative process privilege

11   were to apply, the qualified privilege is overcome by the "need for accurate fact-finding."  *Id.* at 4–

12   8.  The Court ordered the Government to produce the ARRPs of the Federal Agency Defendants

13   that were submitted to and/or approved by OPM/OMB, and also granted the Government's request

14   for a protective order in part, providing that the production would be for *in camera* review and

15   counsel's eyes only.  ECF 214 at 10–11.[3]

16   　　　　　　　　　　　　　　　　**LEGAL STANDARD**

17   　　　"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

18   party's claim or defense and proportional to the needs of the case…."  Fed. R. Civ. P. 26(b)(1).

19   Discovery is "accorded a broad and liberal treatment," *Peng v. NorthWestern Mut. Life Ins. Co.*,

20   No. 17-CV-01760, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017) (Illston, J.) (quotation

21   omitted), and the "requirement of relevancy should be construed liberally and with common

22   sense," *Neonode Smartphone LLC v. Apple, Inc.*, No. 21-CV-08872, 2022 WL 1285429, at *1

23   (N.D. Cal. Apr. 29, 2022) (quotation omitted).

24   　　　Courts may grant protective orders under Rule 26(c), which provides that "[a] party …

25

26   ――――――――――――――――――

27   [3] The Court also granted Plaintiffs' request to enforce its prior order requiring the Government
     to identify the 40 RIFs at 17 agencies that it represented to both the Supreme Court and Ninth Circuit
     had been halted by this Court's injunction, rejecting the Government's arguments that it should not

28   have to disclose that information.  ECF 214 at 9–10.

1    from whom discovery is sought may move for a protective order … for good cause … to protect a

2    party or person from annoyance, embarrassment, oppression, or undue burden or expense." "Rule

3    26(c) confers broad discretion on the trial court to decide when a protective order is appropriate

4    and what degree of protection is required." *Robinson v. Chefs' Warehouse*, No. 3:15-CV-05421-

5    RS(KAW), 2017 WL 836944, at *1 (N.D. Cal. Mar. 3, 2017) (quoting *Seattle Times Co. v.*

6    *Rhinehart*, 467 U.S. 20, 36 (1984)).  The Federal Rules also allow for motions to quash a subpoena

7    (which the Rule 34 requests at issue are not).  Fed. R. Civ. P. 45(d)(3).

8                                              **ARGUMENT**

9            The Government has not justified a protective order.[4]  The Government's primary

10   arguments rely on misconstruing the Supreme Court's stay decision and the nature of Plaintiffs'

11   claims, which this Court has already rejected in its order requiring expedited production of the

12   ARRPs.  ECF 214.  Plaintiffs address in turn why each of the Government's arguments for a

13   protective order lacks merit.

14   **I.      The Government's plan to move for dismissal does not justify a protective order.**

15           **A.      Discovery is open, and a motion to dismiss does not stay discovery.**

16           The Government argues that it should not have to respond to these Requests until the Court

17   resolves its motion to dismiss, essentially seeking a stay of discovery.  ECF 210 at 5.  Neither the

18   Federal Rules nor local rules stay discovery pending such motions.  And in this case, the

19   Government's just-filed motion to dismiss is not likely to dispose of this case, nor to significantly

20   narrow it.  The Government's swift and ongoing action to implement the ARRPs warrants

21   expedited discovery—not a pause of discovery.

22           A party may seek discovery once the parties have conferred under Rule 26(f), which

23   happened on July 11, regardless of whether a defendant moves to dismiss.  *See* Fed. R. Civ. P.

24

25   _____

26           [4] The Government's motion to quash should be disregarded because there is no subpoena
     involved.  *See* Fed. R. Civ. P. 45(d)(3); *Dunlap v. Alaska Radiology Assocs., Inc.*, No. 3:14-CV-
27   00143-TMB, 2018 WL 11462402, at *6 n.52 (D. Alaska Nov. 5, 2018) ("[A] Motion to Quash is
     referenced only in Fed. R. Civ. P. 45(d)(3) in relation to the procedure for subpoenas.…[T]he
28   standard discussed here is the standard for a protective order, as no subpoena is at issue such that the
     standard for quashal would be relevant.").

26(d)(1); ECF 178-1 ¶4.  "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect.  In fact, such a notion is directly at odds with the need for expeditious resolution of litigation."  *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).  The Government asserts that the courts "ordinarily" stay discovery pending a motion to dismiss, but the case they cite, ECF 210 at 5, says the opposite: "The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending. Indeed, district courts look unfavorably upon such blanket stays of discovery."  *Hewlett Packard Enter. Co. v. Inspur Grp. Co.*, No. 24-CV-02220-JST, 2024 WL 4631665, at *1 (N.D. Cal. Oct. 29, 2024) (cleaned up).  A party seeking a stay of discovery has a "heavy burden to make a strong showing to justify the stay."  *Lofton v. Bank of Am. Corp.*, No. C 07-05892, 2008 WL 2037606, at *1 (N.D. Cal. May 12, 2008) (Illston, J.) (cleaned up) (denying stay pending motion to dismiss).  The Government has not made the necessary showing to depart from the ordinary practice of proceeding with discovery pending a motion to dismiss.

### B.    The Government's argument for staying discovery mischaracterizes the effect of the Supreme Court stay as well as Plaintiffs' claims.

In seeking what is essentially a stay of discovery, the Government argues that its just-filed motion to dismiss will be dispositive of the entire case, relying on its mischaracterization of the Supreme Court's stay order and Plaintiffs' claims that this Court has already rejected.  ECF 214.[5] Plaintiffs briefly recap the problems with the Government's position.

As an initial matter, the Supreme Court's stay decision "is not a ruling on the merits." *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurring).  A Supreme Court stay

---

[5] The Government's motion foreshadows the arguments in its motion to dismiss, and Plaintiffs respond briefly to those arguments as they pertain to this discovery dispute.  However, the Government has only just filed its motion to dismiss, and Plaintiffs have had no opportunity to respond in full.  Although evaluating a motion to stay discovery pending a motion to dismiss requires the Court to take a "preliminary peek" at the arguments for dismissal, *Tavantzis v. Am. Airlines, Inc.*, No. 23-CV-05607-BLF, 2024 WL 812012, at *2 (N.D. Cal. Feb. 23, 2024), the Court should recognize that the Government's motion essentially seeks a premature judgment on its motion to dismiss without a fair opportunity for Plaintiffs to respond.

1    decision determines only the "interim status of the law" during the "time it takes for the litigation

2    process to run its course and reach a final merits ruling in the district court, court of appeals, and

3    potentially th[e Supreme] Court." *Labrador v. Poe*, 144 S. Ct. 921, 928–29 (2024) (Kavanaugh, J.,

4    concurring).  A stay does not foreclose lower courts from exercising their obligation to carefully

5    analyze and rule on the law and facts, which can require full discovery of the facts in a way that

6    was not possible at the preliminary injunction stage.  Here, in particular, "[s]ince the Supreme

7    Court included no explanation of its conclusion, this Court cannot say whether the Supreme Court

8    determined the claims underlying the preliminary injunction fail as a matter of law or if the

9    evidentiary record has not yet sufficiently developed to support the claims."  ECF 214 at 4 n.3.

10   The full course of merits litigation may ultimately result in a decision contrary to an initial stay

11   decision, which shows that a stay does not necessarily entail dismissal.  *See*, *e.g.*, *Sierra Club v.*

12   *Trump*, 963 F.3d 874, 887 (9th Cir. 2020) (concluding that Sierra Club had available causes of

13   actions despite Supreme Court emergency stay order suggesting otherwise), *vacated and remanded*

14   *on other grounds sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021); *Allen v. Milligan*, 599 U.S.

15   1, 17 (2023) (affirming on the merits after the Court previously stayed an injunction); *Biden v.*

16   *Texas*, 597 U.S. 785, 794–95, 814 (2022) (denying a stay but subsequently reversing the same

17   judgment and injunction).

18        A further reason why the Supreme Court's stay decision does not "end" this case is because

19   neither this Court's preliminary injunction nor the Supreme Court's stay decision addressed all of

20   Plaintiffs' claims.  The Supreme Court stated expressly that its stay decision was limited to

21   assessing the likely success of Plaintiffs' challenges to the legality of the Executive Order and the

22   OPM/OMB Memorandum.  *Trump v. AFGE*, No. 24A1174, 2025 WL 1873449, at *1 (U.S. July 8,

23   2025).  The Supreme Court "express[ed] no view on the legality of any Agency RIF and

24   Reorganization Plan produced or approved pursuant to the Executive Order and Memorandum,"

25   and recognized that "[t]hose plans are not before this Court."  *Id.*; *see also id.* (Sotomayor, J.,

26   concurring) (stay decision "leaves the District Court free to consider those questions [about the

27   legality of the plans] in the first instance"); ECF 177 at 2 ("The content of the ARRPs thus remains

28   squarely at issue in this case."); ECF 214 at 5 ("To argue otherwise is to ignore the allegations of

the operative complaint"; discussing "just one clear-cut example").

The Government argues that *all* of Plaintiffs' claims "depend on the mistaken view that the Workforce Executive Order, the Workforce Memorandum, or both are unlawful." ECF 210 at 5. But as this Court concluded, that argument mischaracterizes the nature of Plaintiffs' claims by ignoring significant parts of the operative complaint. ECF 214 at 4–5.

Plaintiffs' ultra vires and APA claims against OMB, OPM, and DOGE are not limited to challenging the OMB/OPM Memorandum. Plaintiffs challenge all actions and orders of OMB, OPM, and DOGE to implement the Executive Order, "including but not limited to" the Memorandum, "as well as any direction, approval, or requirement imposed with respect to any ARRPs that result from that Executive Order." ECF 100 ¶396; *see also id.* ¶¶404, 411. That includes "any decision 'approving' an ARRP, and DOGE's directives ordering agencies to make staffing and spending cuts." *Id.* ¶405; *see also id.* ¶¶395, 403, 410, 416–18. While the Memorandum sets up the process and requirements for the content of ARRPs, OMB, OPM, and DOGE have taken actions beyond the Memorandum itself by approving or disapproving ARRPs and ordering specific staffing and spending cuts.[6] The Supreme Court's stay order does not even arguably address the legality or scope of authority for OMB, OPM, and DOGE's decisions and directives with respect to implementing workforce reduction or reorganization at any agency.

Further, Plaintiffs' claims against the Federal Agency Defendants challenging the lawfulness of implementation actions, including through RIFs and other reorganization steps, do not all rely on the lawfulness of the Executive Order or the Memorandum. ECF 100 ¶¶422, 429,

---

[6] Even without access to discovery materials, Plaintiffs have submitted record evidence of unlawful directives aside from the Memorandum itself. *See* ECF 37-1 at 38-41 (describing OMB response rejecting NLRB's ARRP and requiring larger cuts); ECF 96-1 ¶15 (reporting that NSF management informed employees that RIF of Division of Equity for Excellence in STEM resulted from "following orders from OPM, OMB, and DOGE"); ECF 37-1 at 4–5 (HHS Secretary Kennedy statements re: DOGE-ordered cuts); *id.* (VA Secretary: OPM provided VA with "target" cut of 80K positions). The Government's declarations in response to this Court's order requiring further information regarding approvals of ARRPs by OMB and OPM (ECF 139 at 2) further support Plaintiffs' contentions that OMB and OPM are taking action to approve ARRPs. Far from being sure to be dismissed, as the Government claims, Plaintiffs have pleaded plausible claims and already presented factual evidence that supports further factual development.

431.  The Government is also wrong in contending that "Plaintiffs do not challenge any particular ARRP as unlawful on its own terms," ECF 210 at 6, as this Court recognized.  *See* ECF 214.  The operative complaint pleads that the Federal Agency Defendants' actions are arbitrary and capricious because, among other reasons, they "disregard their authorizing statutes, … engage in large-scale RIFs that are necessarily contrary to agency's ability to maintain required function and authorizing statute, [and] abandon reasoned decision-making considering all relevant factors." ECF 100 ¶ 431.  And Plaintiffs' TRO and preliminary injunction briefing similarly argued that the Federal Agency Defendants' implementation of the Executive Order was unlawful, including because, on the existing record, agencies were acting in an arbitrary and capricious manner by, among other things, abolishing offices, programs, and functions that they had previously deemed necessary and important without reasoned explanation.  ECF 37-1 at 43; *see also*, *e.g.*, ECF 70 at 9. Those claims are not derivative of Plaintiffs' facial challenges to the Executive Order and Memorandum and are unaffected by the Supreme Court's stay decision.  *See* ECF 214 at 5–6 (recognizing, as "just one clear-cut example," the continued viability of one of Plaintiffs' claims against Federal Agency Defendants).

Plaintiffs are entitled to discovery on these claims, which are independent of the facial legality of the Executive Order and Memorandum, and the Government may not resist judicial review by maintaining secrecy over its decisions and seeking threshold dismissal.  ECF 214 at 6 ("The Court will not countenance" that the Government "could withhold relevant discovery on the grounds that the plaintiff had not yet proven his or her case.").

C.    **The Supreme Court's stay does not undermine this Court's jurisdiction.**

The Government is also wrong in arguing that the Supreme Court's stay decision somehow undermines this Court's jurisdiction.  ECF 210 at 7 n.2.  The Supreme Court's brief explanation of its reason for granting a stay said nothing about whether the CSRA and FSLMRS precludes district court jurisdiction.  *Trump v. AFGE*, 2025 WL 1873449, at *1.  As Justice Sotomayor stated, that decision "leaves the District Court free to consider those questions" regarding the legality of the ARRPs "in the first instance."  *Id.*  This Court should reject the Government's suggestion to preemptively foreclose discovery because the Government intends to take another run at

administrative channeling in its motion to dismiss.  ECF 210 at 16–17.

First, both this Court and the Ninth Circuit have already confirmed that this Court has jurisdiction.  ECF 124 at 18–26; ECF 85 at 18–24; *AFGE v. Trump*, 139 F.4th 1020, 1030–33 (9th Cir. 2025).

Second, the Government's channeling argument is premised on an overly narrow view of Plaintiffs' claims, ignoring both the preliminary nature of the Supreme Court's stay decision and that Plaintiffs' ultra vires and APA challenges to OMB, OPM and DOGE directives and approvals (which as discussed *supra*, were not before the Supreme Court) cannot be heard by the Merits Systems Protection Board ("MSPB") or Federal Labor Relations Agency ("FLRA") and are not channeled for the reasons previously explained by this Court and the Ninth Circuit.  ECF 124 at 18–26; *AFGE v. Trump*, 139 F.4th at 1030–33; *see also AFGE v. OPM*, 2025 WL 914823, at *1 (9th Cir. Mar. 26, 2025) (non-profit organization claims against OPM not likely channeled).

Third, Plaintiffs' APA claims against Federal Agency Defendants arising from arbitrary and capricious and otherwise unlawful actions implementing the ARRPs are outside the scope of administrative adjudication for reasons previously explained by Plaintiffs.  *See* ECF 101-1 at 17–21; ECF 70 at 9–12; ECF 37-1 at 46–48.  In particular, Plaintiffs challenge agency actions to reorganize and RIF that result from unlawful OMB, OPM, and DOGE directives, violations of statutory obligation and authority, and arbitrary and capricious decision-making.  Those claims belong in federal court, under the APA "command" of judicial review.  *Dep't of Commerce v. New York*, 588 U.S. 752, 771–72 (2019); *see* ECF 70 at 10–11.

Further, even if this case were directed only at the decisions to RIF (which it is not), this Court has also already rejected the argument that challenges to decisions resulting in RIFs are likely channeled.  ECF 124 at 25 n. 14 ("when the question is about what Congress intended, it matters that Congress chose not to provide an administrative path to RIF challenges themselves").

Plaintiffs will further address in the forthcoming response to the motion to dismiss why this Court and the Ninth Circuit's prior analyses foreclose the Government's attempt to revisit the issue of jurisdiction.  For present purposes, the Government's desire to reargue jurisdiction gives this Court no basis to delay discovery.

**D.      Discovery should be expedited, not stayed.**

Expedited discovery—not a stay of discovery—is warranted because Plaintiffs have established impending harm from imminent government actions.  The Government represented to the Ninth Circuit and Supreme Court that it intends to implement ARRPs imminently through RIFs and reorganization actions.  Stay Application at 32, *Trump v. AFGE*, No. 24A1174 (U.S. June 2, 2025) (stating that the Court's preliminary injunction halting implementation of the ARRPs had "concretely" imposed "immediate consequences" on the Government because "40 RIFs in 17 agencies" "affecting thousands of federal employees" had been "in progress"); Opening Brief at 45, *AFGE v. Trump*, No. 25-3293 (9th Cir. June 20, 2025), Dkt. 12.1 ("[m]ultiple RIFs were set to be noticed within the month following entry of the injunction, and dozens were set to occur during that period," and the "[t]he injunction halts those processes in their tracks").  Indeed, following the Supreme Court's stay decision, more than 1,300 State Department employees received RIF notices and were immediately placed on administrative leave on Friday, July 12, directly harming federal employees, Plaintiff unions, and threatening the agency's ability to respond to foreign threats.[7] The Department of Health and Human Services similarly executed RIFs of thousands of employees,[8] and the EPA has announced it will eliminate the entire Office of Research and Development.[9]

Rather than relieving the Government of discovery obligations, the Court should allow Plaintiffs' request for expedited discovery.

---

[7] *See*, *e.g.*, Hannah Natanson et al., *State Department Cuts China Policy Staff Amid Major Overhaul*, Wash. Post (July 14, 2025), https://www.washingtonpost.com/national-security/2025/07/14/state-department-rubio-firings-china/; Michael Crowley et al., *State Dept. Layoffs Hit Russia and Ukraine Analysts*, N.Y. Times (July 15, 2025), https://www.nytimes.com/2025/07/15/us/politics/state-department-layoffs-russia-ukraine.html.

[8] *See*, *e.g.*, Christina Jewett & Benjamin Mueller, *H.H.S. Finalizes Thousands of Layoffs After Supreme Court Decision*, N.Y. Times (Jul. 15, 2025), https://www.nytimes.com/2025/07/15/us/politics/hhs-layoffs.html

[9] *See*, *e.g.*, Lisa Friedman & Maxine Joselow, *E.P.A. Says It Will Eliminate Its Scientific Research Arm*, N.Y. Times (July 18, 2025), https://www.nytimes.com/2025/07/18/climate/epa-firings-scientific-research.html; ECF 37-19 ¶¶17-18 (describing harms of cuts to ORD); ECF 101-8 ¶¶18-27 (same).

## II.     The APA does not foreclose discovery.

For the reasons explained in Section I *supra*, the Government is wrong that the only "plausibly" remaining claims are under the APA.  ECF 210 at 8.  Discovery is open with respect to Plaintiffs' ultra vires claims, including those challenging OMB, OPM, and DOGE approvals and directives to agencies that the Supreme Court did not address.

Even as to the APA claims, Plaintiffs' requests for production are appropriate.  The Government has insisted on keeping its decisions and actions secret and argued that Plaintiffs are thus precluded from bringing their challenges.  ECF 210 at 10.  But the information Plaintiffs seek would be part of a complete administrative record—which is set to be produced imminently (by July 28, 2025, Civil L.R. 16-5; ECF 25)—and, were the Government to fail to include it, would properly be the subject of supplementation or extra-record discovery.  An administrative record must contain all information that decisionmakers "directly or indirectly" considered.  *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989).  It is within the court's inherent case management authority, *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016), to order accelerated production of certain parts of the administrative record.

Beyond that, extra-record discovery is allowed in certain circumstances, including when "necessary to determine whether the agency has considered all relevant factors and has explained its decision," and where "the agency has relied on documents not in the record."  *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1451 (9th Cir. 1996)); ECF 214 at 6.

In addition, in APA cases, a "district court is free to exercise its discretion to permit… discovery to ascertain the contours of the precise policy at issue."  *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (cleaned up); *see also Doe 1 v. Nielsen*, No. 18-CV-02349-BLF(VKD), 2018 WL 4266870, at *2 (N.D. Cal. Sept. 7, 2018) ("[T]he Court finds that discovery of the nature of the agency action issue is necessary in order for the parties and the Court to determine the scope of the administrative record to be produced").  This is particularly warranted in a case like here where, "unlike the typical APA case, which involves the enactment of a rule or

1    other agency action taken in public view—only the Defendants know the 'contours' of those

2    actions." *All. for Retired Americans v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 1114350, at *3

3    (D.D.C. Mar. 20, 2025).

4         Plaintiffs explain in the following sections why each Request seeks material that is not only

5    relevant to their ultra vires claims, but that Plaintiffs may also obtain to support their APA claims.[10]

6    **III.    The Government provides no valid reason to avoid Request No. 1.**

7         **A.    The requested communications are relevant.**

8         Plaintiffs' request for communications discussing ARRPs between Federal Agency

9    Defendants and OMB, OPM, and/or DOGE seeks documents that are plainly relevant to this case.

10   The "requirement of relevancy should be construed liberally and with common sense," *Neonode*

11   *Smartphone LLC*, 2022 WL 1285429, at *1, and the relevance standard is a "low bar." *Pizzuto v.*

12   *Tewalt*, 136 F.4th 855, 868 (9th Cir. 2025).

13        As explained in Plaintiffs' briefing on disclosure of the ARRPs themselves, Plaintiffs' ultra

14   vires and APA claims against OMB, OPM, and DOGE challenge not only the Memorandum but

15   also these agencies' actions in approving specific ARRPs and directing the contents thereof.  *See,*

16   *e.g.*, ECF 213; ECF 100 ¶396 (Claim II challenges "actions and orders of OMB, OPM, and

17   DOGE … including *but not limited to*" the Memorandum, "*as well as any direction, approval, or*

18   *requirement imposed with respect to any ARRPs* that result from that Executive Order, exceed

19   OMB, OPM, and DOGE's authority and are contrary to statute and therefore *ultra vires.*")

20   (emphases added); *id.* ¶¶404, 411 (similar, re: Claims III, IV, and V, asserting APA claims against

21   OMB, OPM, and DOGE).  Communications approving or disapproving ARRPs (in part or in

22   whole, and informally or formally), discussing or clarifying the content of the proposals submitted

23   to OMB/OPM for approval, and/or ordering specific cuts or deeper cuts are squarely at issue in

24   these claims, and easily clear the "low bar" of relevance.  *Pizzuto*, 136 F.4th at 868.  These

25

26   _____

27        [10] To the extent the Government seeks to revisit the question whether the OMB/OPM
     Memorandum is final agency action, ECF 210 at 13, that has already been resolved by this Court.
     ECF 124 at 42-43.  In any event, that has no bearing on this discovery dispute because the requested
28   documents are discoverable for claims other than the APA challenge to the Memorandum itself.

communications are also relevant to the APA claims against Federal Agency Defendants, for similar reasons that the ARRPs themselves are. For example, as this Court held, Plaintiffs' APA claim alleging arbitrary and capricious action by agencies requires Plaintiffs "to show that an agency has failed to consider an important aspect of a problem, that the agency offers an explanation for a decision that is contrary to the evidence, that the agency's decision is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise, or that the agency's decision is contrary to governing law." ECF 214 at 5–6. Any communications in which an agency explains its ARRP while seeking approval, or in which OPM, OMB, or DOGE directs the timing, extent, or content of particular cuts (for explained or unexplained reasons), would clearly be relevant to that claim.

The Government tries to sidestep the plain relevance of these communications to Plaintiffs' claims by arguing that those claims are "foreclosed" and therefore fail on the merits after the Supreme Court's stay order. But again, and as this Court has now held, that is not the case. *See* ECF 214 at 4–5; *supra* at 5–8.

## B.    Request No. 1 is properly directed at DOGE.

Request No. 1 also properly encompasses communications to and from DOGE. The record evidence already contains agency admissions that DOGE instructed agencies to take certain actions including the extent to which agencies were to RIF employees. *Supra* n.6. DOGE was specifically tasked by the President with reducing the federal workforce,[11] and specifically tasked by OMB/OPM with working with the agencies on the content and scope of RIFs (ECF 37-1, App. B at 2). Communications between DOGE and Federal Agency Defendants are likely to reveal the unlawful directives that DOGE imposed on agencies and the unlawful nature of the agencies' actions to implement those directives.

The Government makes three arguments. First, it contends that Request No. 1 is irrelevant

---

[11] *See* White House, Presidential Action, *Hiring Freeze* (Jan. 20, 2025) available at https://www.whitehouse.gov/presidential-actions/2025/01/hiring-freeze/; White House, *Fact Sheet: President Donald J. Trump Extends the Hiring Freeze* (April 17, 2025) ("President Trump established the 'Department of Government Efficiency' to examine how to streamline the Federal Government, eliminate unnecessary programs, and reduce bureaucratic inefficiency.").

1    and overbroad to the extent that it seeks communications between any Federal Agency Defendant

2    and "Agency DOGE Teams."  ECF 210 at 12–14.  The Government argues, based on its

3    representation that Agency DOGE Teams comprise agency employees who report to leadership at

4    Federal Agency Defendants, that such communications are intra-agency.  However, Plaintiffs'

5    Request does not seek such intra-agency communications.  Instead, it seeks only communications

6    between OMB, OPM, and DOGE and those Federal Agency Defendants.

7         In drafting these Requests, Plaintiffs defined DOGE in the way that the Government has

8    been using the term.  *E.g.*, ECF 60 at 2 n.1.  Plaintiffs understand the Government is now

9    confirming that communications by members of DOGE Teams embedded at agencies qualify as

10   communications by Federal Agency Defendants, and therefore clarify, in light of that

11   representation to this Court, that Plaintiffs' Request encompasses communications between OMB

12   and any embedded DOGE team member, OPM and any embedded DOGE team member, U.S.

13   DOGE Services (USDS) and any embedded DOGE team member, and U.S. DOGE Service

14   Temporary Organization and any embedded DOGE team member.  Plaintiffs confirm, based on the

15   Government's representations, that this Request does not encompass communications within

16   agencies (i.e., between members of DOGE who are embedded at Federal Agency Defendants and

17   other employees of the same agency).[12]

18        Second, the Government argues that Request No. 1 improperly seeks communications

19   between USDS and Federal Agency Defendants because, it argues, the Complaint does not allege

20   that USDS was "involved" in the Memorandum or with the submission or approval of ARRPs.

21   ECF 210 at 13.  But that is incorrect; Plaintiffs do allege (and have submitted evidence) that

22   DOGE, including USDS, was involved in giving direction to agencies regarding the actions

23   included in these ARRPs, including by dictating to each agency the required cuts to staffing and

24   programs.  *E.g.*, ECF 100 ¶¶13, 15–16, 175, 233, 239, 241, 268, 282; *see also supra* Section I;

25

26   _____

27        [12] Because the Government did not attempt to meet and confer on these objections prior to filing
     its motion, Plaintiffs had no prior opportunity to make these clarifications.  In making these
     clarifications, Plaintiffs do not concede that intra-agency communications are irrelevant to Plaintiffs'
28   claims.  But Plaintiffs do not seek those communications at this time.

*supra* n.6.  Communications between USDS and the agencies about these matters are plainly relevant.

Third, the Government says that it intends to argue in its motion to dismiss that USDS is not an agency under the APA.  ECF 210 at 13.  To start, whether USDS is an agency under the APA has no bearing on discovery regarding Plaintiffs' ultra vires claim against DOGE.  Further, the fact that pending cases "rais[e] the question" whether DOGE is subject to FOIA or the APA, *id.*, provides no basis to conclude it is not.  The APA applies broadly to any "authority of the Government of the United States," 5 U.S.C. §701(b)(1), and the argument that USDS does not qualify as such is meritless.  *See AFL-CIO v. Dep't of Lab.*, No. CV 25-339 (JDB), 2025 WL 1129227, at *22 n.19 (D.D.C. Apr. 16, 2025); *AFL-CIO v. Dep't of Lab.*, 766 F.Supp.3d 105, 111 (D.D.C. 2025).  Discovery regarding USDS's directives to agencies to cut staff and functions will only cement that conclusion.

### C.    The communications sought by Request No. 1 are not categorically privileged, and the Government must produce a privilege log for any specific assertions.

In response to the Court's direction that the Government "identify any categorical objections to production of documents responsive to plaintiffs' Request No. 1," the Government asserts that "it is highly likely that a significant volume of the materials Plaintiffs seek in RFP 1 are protected from disclosure by the deliberative process privilege."  ECF 210 at 14.  This argument misconstrues Plaintiffs' request and cannot support a blanket protective order forbidding discovery.

The Government objects that Request No. 1 seeks "[i]ntra-agency communications" which, it contends, include "discussions about plans, techniques, and strategies" that would be covered by the deliberative process privilege.  ECF 210 at 15**.**  But as noted, this Request does not seek *intra*-agency communications.

The Government does not argue that the *inter*-agency communications responsive to this Request are subject to this privilege.  ECF 210 at 14–15.  Even if the deliberative process privilege did apply to any such responsive communications, this Court has already recognized that the deliberative process privilege is qualified and can be overcome where a party's "need for the materials and the need for accurate fact-finding override the government's interest in non-

1    disclosure." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984); ECF 214 at 7–

2    8.  The communications between agencies and OMB, OPM, and DOGE discussing the ARRPs,

3    including approvals or disapprovals of those ARRPs, are, like the ARRPs themselves, squarely at

4    issue in this case.  "There can be no doubt that under some circumstances, pre-decisional

5    deliberative communications may go to the heart of the question of whether an agency action was

6    arbitrary and capricious, an abuse of discretion or otherwise inconsistent with the law under

7    Section 706(2) of the APA."  *Desert Survivors v. U.S. Dep't of the Interior*, 231 F.Supp.3d 368,

8    382–83 (N.D. Cal. 2017).

9            Given the centrality of this evidence to Plaintiffs' claims and the other *Warner* factors

10   weighing against application of the privilege, if the Court finds that the privilege applies at all to

11   communications between agencies, it should require the Government to identify the specific

12   documents they contend are privileged, so that they may be reviewed *in camera* or included in a

13   privilege log.  *See Desert Survivors*, 231 F.Supp.3d at 382–83 (ordering *in camera* review of

14   assertedly privileged materials); *People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, No.

15   C05-03508 EDL, 2006 WL 708914, at *4 (N.D. Cal. Mar. 16, 2006) ("Defendants must make a

16   specific showing establishing the application of a privilege for each document that it contends that

17   it may withhold based on privilege.").

18   **IV.    Request Nos. 2 and 3 are relevant.**

19           Request Nos. 2 and 3 seek applications for waivers of statutorily mandated RIF notice

20   periods and responses by OMB and OPM to those waiver requests.  The Requests match two of the

21   four categories of documents that the Court ordered produced in its TRO order.  *See supra* n.2

22   (explaining that Plaintiffs made these Requests in case this Court does not confirm that previously

23   ordered discovery); ECF 85 at 40.  Although the Government sought (and partially obtained)

24   reconsideration of the Court's production order as to the other two categories of documents, ECF

25   88, 214, the Government has never before explained why the waiver requests and OMB/OPM's

26   responses to the waiver requests should not be produced, *see* ECF 96 at 9.  Even now, the

27   Government does not claim that those documents are privileged.

28           The Government's only objection is relevance, and that objection is meritless.  Plaintiffs

have established an adequate factual foundation to conclude that the information contained in the waiver requests and OMB/OPM's responses to those requests are likely relevant to showing the agencies' unlawful approach to cutting staff and programs. Pursuant to OPM's instructions, agencies must submit justifications for shortening the required time periods for the creation of competitive areas and providing notice to employees.[13] Those explanations are directly relevant to this case. For example, the Department of Labor's April 2025 request for a waiver regarding its RIFs at the Office of Federal Contract Compliance Programs and OPM's response to that request, which are in the existing record, set forth as justification that the President eliminated the "statutory and regulatory foundation" for the office by an executive order "rendering the vast majority of functions within the agency unnecessary." ECF 70-2 at 22; *id*. at 24 (OPM approval citing same justification). A waiver request and response with respect to non-party National Endowment for the Humanities provides similar support. ECF 96-1 at 25–26, 29–30.

These documents would thus be part of the administrative record, and it was appropriate for the Court to order expedited production of these documents. Plaintiffs served Request Nos. 2 and 3 to ensure prompt production of these documents, which the Court ordered produced in May and which the Government has never produced.

## V.    Discovery is relevant to potential relief.

Finally, the Government recasts its arguments on the merits of Plaintiffs' claims to argue that the discovery requests are "not even plausibly relevant to any relief the Court could grant in this case." ECF 210 at 16. But this argument fails for largely the same reasons addressed *supra* and in Plaintiffs' prior briefing.

First, the Government argues that the ARRPs and associated evidence cannot be reviewed at all by this Court, as they are not final agency action that could be enjoined. But both approved

---

[13] *See* OPM, *Workforce Reshaping Operations Handbook,* at 32 (request to create competitive area with less than 90-days notice must include "A discussion of the circumstances that led to the proposed changes less than 90 days before a proposed reduction."); *id* at 87–88 (request to shorten RIF notice period must include "The reasons why a shorter RIF notice period is needed."), available at    https://www.opm.gov/policy-data-oversight/workforce-restructuring/reductions-in-force-rif/workforce_reshaping.pdf.

1    ARRPs and the Federal Agency Defendants' actions implementing them, including through

2    issuance of large-scale RIF notices and placement of employees on administrative leave *en masse*,

3    are final agency actions under the APA.  *See* ECF 213 at 5–6; *U.S. Army Corps of Eng'rs v.*

4    *Hawkes Co.*, 578 U.S. 590, 597 (2016); *Prutehi Litekyan: Save Ritidian v. United States Dep't of*

5    *Airforce*, 128 F.4th 1089, 1108 (9th Cir. 2025) (final agency action is "interpreted in a pragmatic

6    and flexible manner" that "focus[es] on the practical … effects of the agency action").  If

7    OMB/OPM/DOGE decisions implementing the Executive Order are unlawful, or if approved

8    agency ARRPs or their implementation are unlawful, then those actions could be stayed,

9    preliminarily enjoined, or vacated in a final judgment by this Court.  Moreover, the relevance

10   standard for purposes of discovery is broad and is "construed liberally and with common sense."

11   *Neonode Smartphone LLC*, 2022 WL 1285429, at *1.  That standard is easily satisfied here, as the

12   communications (including the approvals themselves) and the waiver applications for planned RIFs

13   are relevant to the challenged actions.

14       Second, the Government again contends that the Supreme Court's stay order resolves this

15   case in its entirety, such that Plaintiffs cannot challenge any particular agency reorganization or

16   RIF plan.  This argument fares no better on repetition than it did before.  ECF 214 at 4; *supra*

17   Section I.B.

18       In a final attempt to delay this discovery, the Government argues that Plaintiffs must wait

19   for RIFs to actually occur, and then litigate that case on a future administrative record.  ECF 210 at

20   17.  But the Government cites no authority, and the Government's preference that Plaintiffs wait

21   and bring a new case in the future does not preclude Plaintiffs' present challenge to the

22   Government's acts that have already occurred or are impending.  This Court has equitable authority

23   to enjoin imminent action that is likely to cause irreparable injury and the authority granted by

24   Congress to "issue all necessary and appropriate process to postpone the effective date of an

25   agency action or to preserve status or rights pending conclusion of the review proceedings."  5

26   U.S.C. §705.  Plaintiffs do not need to wait for further irreparable harm to occur before seeking or

27   obtaining discovery, and this Court should reject this thinly veiled attempt to delay review of the

28   lawfulness of the Government's actions.

1

**CONCLUSION**

2      The Court should deny the Government's motion for a protective order and order quashing

3  the requests for production.

4

5  DATED: July 21, 2025                Respectfully submitted,

6                                      Stacey M. Leyton
                                       Barbara J. Chisholm
7                                      Danielle E. Leonard
                                       Corinne F. Johnson
8                                      Alice X. Wang
                                       Robin S. Tholin
9                                      Aaron Schaffer-Neitz
10                                     ALTSHULER BERZON LLP
                                       177 Post St., Suite 300
11                                     San Francisco, CA 94108
                                       Tel: (415) 421-7151
12                                     sleyton@altshulerberzon.com
                                       bchisholm@altshulerberzon.com
13                                     dleonard@altshulerberzon.com

14

15                              By: */s/ Stacey M. Leyton*

16                                     *Attorneys for All Union and Non-Profit Organization*
                                       *Plaintiffs*
17

18                                     Elena Goldstein (pro hac vice)
                                       Skye Perryman (pro hac vice)
19                                     Tsuki Hoshijima (pro hac vice)
                                       DEMOCRACY FORWARD FOUNDATION
20                                     P.O. Box 34553
                                       Washington, D.C. 20043
21                                     Tel: (202) 448-9090
                                       Fax: (202) 796-4426
22                                     egoldstein@democracyforward.org
                                       sperryman@democracyforward.org
23                                     thoshijima@democracyforward.org

24                              By: */s/ Tsuki Hoshijima*
25

26                                     *Attorneys for All Union and Non-Profit Organization*
                                       *Plaintiffs (except NRDC) and for Plaintiffs City of*
27                                     *Chicago, IL; Martin Luther King, Jr. County, WA;*
                                       *Harris County, TX; and City of Baltimore, MD*
28

Jules Torti (pro hac vice)
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jacek Pruski*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Teague Paterson (SBN 226659)
Matthew Blumin  (pro hac vice)
AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/ Teague Paterson*

*Attorneys for Plaintiff American Federation of State*
*County and Municipal Employees, AFL-CIO*
*(AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL
UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorneys for Plaintiff Service Employees*
*International Union, AFL-CIO (SEIU)*

Simi Bhat (SBN 289143)
Katherine K. Desormeau (SBN 266463)
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter St Fl 21,
San Francisco, CA 94104
Tel: (415) 875-6100
sbhat@nrdc.org
kdesormeau@nrdc.org

By: */s/ Simi Bhat*

*Attorneys for Plaintiff Natural Resources Defense*
*Council*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)

Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By:   */s/ Alexander Holtzman*

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By:   */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

David J. Hackett (pro hac vice)
General Counsel to King County Executive & Special
Deputy Prosecutor
Alison Holcomb (pro hac vice)
Deputy General Counsel to King County Executive &
Special Deputy Prosecutor
Erin King-Clancy (pro hac vice app. forthcoming)
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104

(206) 477-9483
David.Hackett@kingcounty.gov
aholcomb@kingcounty.gov
aclancy@kingcounty.gov

By: */s/ David J. Hackett*

*Attorneys for Plaintiff Martin Luther King, Jr. County*

Sharanya Mohan (CABN 350675)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org

By: */s/ Sharanya Mohan*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL,*
*Harris County, TX, and King County, WA*

Christian D. Menefee
Harris County Attorney
Jonathan G.C. Fombonne (pro hac vice)
Deputy County Attorney and First Assistant
Tiffany Bingham (pro hac vice app. forthcoming)
Managing Counsel
Sarah Utley (pro hac vice app. forthcoming)
Division Director – Environmental Division
Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice app. forthcoming)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel: (713) 274-5102
Fax: (713) 437-4211
jonathan.fombonne@harriscountytx.gov
tiffany.bingham@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscoupntytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

By: */s/ Jonathan G.C. Fombonne*

*Attorneys for Plaintiff Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago
Stephen J. Kane (IL ARDC 6272490) (pro hac vice
app. forthcoming)
Rebecca A. Hirsch (IL ARDC 6279592) (pro hac
vice)
Lucy Prather (IL ARDC 6337780) (pro hac vice)
City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Stephen.kane@cityofchicago.org
Rebecca.Hirsch2@cityofchicago.org
Lucy.Prather@cityofchicago.org

By: */s/ Stephen J. Kane*

*Attorneys for Plaintiff City of Chicago*

Ebony M. Thompson
Baltimore City Solicitor
Sara Gross (pro hac vice app. forthcoming*)*
Chief of Affirmative Litigation
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (410) 396-3947
sara.gross@baltimorecity.gov

By: */s/ Sara Gross*

*Attorneys for Plaintiff City of Baltimore*