CRAIG H. MISSAKIAN
United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
ANDREW M. BERNIE
Trial Attorney
Civil Division, Federal Programs Branch

   1100 L Street, NW
   Washington, DC 20005
   Telephone: (202) 353-7203
   andrew.m.bernie@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>    Defendants. | Case No. 3:25-cv-03698-SI<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND ORDER QUASHING PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** |

**INTRODUCTION**

On July 8, with only one noted dissent, the Supreme Court stayed this Court's preliminary injunction, concluding that Plaintiffs are unlikely to succeed on the merits of their challenges to Executive Order 14210 (Workforce Executive Order) and the February 26 Memorandum (Workforce Memorandum) from the Office of Personnel Management (OPM) and Office of Management and Budget (OMB). Yet Plaintiffs now seek expedited discovery of a broad swathe of almost certainly privileged communications. They seek to require Defendants to produce these documents on an extraordinarily expedited basis, even though the Court has not yet resolved Defendants' pending motion to dismiss. And they seek these documents even though—as their opposition confirms—they cannot identify any viable legal theory for which the documents they seek could make a material difference as to any live issues remaining in the case, let alone provide a basis for any relief this Court could lawfully grant. The Court should immediately grant a protective order, and at the very least should resolve Defendants' forthcoming motion to dismiss *before* any discovery is permitted. The Court should decline Plaintiffs' invitation to order still more emergency relief—which would necessitate still more emergency appellate motions practice—particularly since Plaintiffs' proposed discovery is factually and legally baseless.

**ARGUMENT**

**I.     There is No Basis for Plaintiffs' Requested Discovery.**

As set forth in Defendants' Motion for a Protective Order, Plaintiffs' requested discovery: (1) relates to arguments that are foreclosed by the Supreme Court's stay decision; (2) relates to purported Administrative Procedure Act (APA) claims that, even if they could survive the Supreme Court's order, would not be a basis for the discovery they seek; (3) is otherwise not relevant to any relief this Court could lawfully grant; (4) is privileged; and (5) as to Requests 2 and 3, is otherwise irrelevant and improper. We address each point in turn.

**A.     Plaintiffs seek discovery on theories foreclosed by the Supreme Court.**

Our motion to dismiss explains why all of Plaintiffs' claims necessarily depend on an argument that the Workforce Executive Order, the Workforce Memorandum, or both are unlawful,

Defendants' Reply in Support of Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents
3:25-cv-3698-SI

1

1  and thus are effectively foreclosed by the Supreme Court's stay order. *See* Motion to Dismiss, ECF No. 216 (MTD) at 16-19. None of Plaintiffs' arguments persuade otherwise.

Plaintiffs first respond that the Supreme Court's order is not a ruling on the merits of the Executive Order and Memorandum. ECF No. 218 (Opp.) at 5-6. But in one sense, that is obviously incorrect; the Supreme Court's ruling was *based* on the merits. Unlike the statement from Justice Kavanaugh that Plaintiffs cite (addressing a stay the Supreme Court granted for reasons *unrelated to* the merits, MTD at 13), the Supreme Court granted this stay based on its assessment of the merits. The Court held that "the Government is likely to succeed on its argument that" the Workforce Executive Order and Workforce Memorandum are lawful. And indeed, earlier today the Supreme Court emphasized—in staying a district court order in a different case—that, "[a]lthough our interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases." *Trump et al. v. Boyle et al.*, No. 25A11 (S. Ct. Jul. 23, 2025). That admonition applies at least as strongly here, where the Supreme Court's order was based on merits conclusions in *this case*, not merely "like cases."

To be sure, the Court's ruling necessarily was not a *final* adjudication on the merits. But as to Plaintiffs' challenge to the Executive Order, the legality of the Executive Order is a *question of law* to be decided based on the content of the Executive Order (not a question of fact to be decided based on the supposed "evidentiary record" of how agencies are purportedly implementing the Executive Order). And at the very least, this is how the *Supreme Court* saw it. MTD at 11-12 & 13 n.5. Given the procedural posture (a motion to stay pending appeal), the Court's ruling was framed in terms of likelihood of success. But the purely legal nature of the Court's ruling, following the parties' substantial stay motion briefing, simply does not in any practical sense *leave open* the question of the Executive Order's legality.

The same is true of the Workforce Memorandum. As we also explain in our motion to dismiss, Plaintiffs—consistent with the Amended Complaint and arguments in this Court—told the Supreme Court that "OMB and OPM have assigned to themselves and thereby usurped statutory delegations of decision-making to agencies," *see* 24A1174 (S. Ct.) (Plaintiffs' Response to Application Filed June 9, 2025) at 29, and repeatedly emphasized the Memorandum's directive

Defendants' Reply in Support of Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents
3:25-cv-3698-SI

2

that OPM and OMP approve ARRPs. MTD at 15 & n.10. Defendants neither contested that OPM/OMB approval was required nor disputed that OPM and OMB had rejected some ARRPs as insufficient. *Id.* The Supreme Court nonetheless held that the Memorandum (including the OPM/OMB approval requirement) was likely lawful.

Pivoting, Plaintiffs insist that their "ultra vires and APA claims against OMB, OPM, and DOGE are not limited to challenging the OMB/OPM Memorandum." ECF No. 218 (Opp.) at 7. As to OPM and OMB, Plaintiffs state that they are also challenging "any direction, approval, or requirement imposed with respect to any ARRPs," which includes "any decision 'approving' an ARRP." *Id.* This restates a theory the Supreme Court necessarily rejected. According to Plaintiffs, OPM and OMB "have taken actions beyond the Memorandum itself *by approving or disapproving ARRPs*." *Id.* (emphasis added). But these are not actions logically distinct from the Memorandum itself. Again, before this Court and the Supreme Court, Plaintiffs focused on the Memorandum's approval requirement, and contended that OPM and OMB had rejected ARRPs, neither of which the Government contested. The Supreme Court's rejection of Plaintiffs' argument that OPM and OMB acted *ultra vires* by supposedly directing that they must approve ARRPs also precludes a claim that OPM and OMB acted ultra vires by *actually* approving ARRPs.

As to "DOGE," Plaintiffs point to alleged DOGE "directives ordering agencies to make staffing and spending cuts" and alleged actions "ordering specific staffing and spending cuts." ECF No. 218 at 7. We addressed this in our motion to dismiss as well. Although claims against DOGE were not addressed by the Supreme Court's decision—because this Court did not embrace them at the preliminary injunction stage—these claims are facially meritless. DOGE (in the sense of the broad Executive-Branch-wide initiative that includes the United States DOGE Service (USDS) and Agency DOGE Teams) is not an entity that can be sued. And the Complaint, which only mentions USDS once in passing, does not plausibly allege any viable claims against USDS. MTD at 25.

More fundamentally, if Plaintiffs are claiming that DOGE is directing agencies to undertake *unlawful* staffing and spending cuts, they can attempt to challenge those alleged actions, if and when those alleged actions are taken. But if they are claiming that DOGE is somehow

Defendants' Reply in Support of Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents
3:25-cv-3698-SI

3

bullying agencies into taking actions the agencies do not want to take but that are *lawful*, Plaintiffs have never cited any authority for the proposition that federal courts have jurisdiction to address such alleged intra-Executive Branch disputes. And putting that aside, even Plaintiffs' theory that "DOGE" is usurping agency decisionmaking makes no sense as applied to agency DOGE Teams, who are agency employees. MTD at 23.

As we also explain in our motion to dismiss, Plaintiffs' notice-and-comment claim is also foreclosed by the Supreme Court's order. MTD at 18. In short, no viable claims against OPM, OMB, or "DOGE" remain following the Supreme Court's order.

That leaves the two APA claims against Federal Agency Defendants. Even assuming the Amended Complaint encompasses APA claims independent of the Workforce Executive Order and Workforce Memorandum, such claims cannot be a basis for the discovery Plaintiffs seek. But in any event, both claims *are* based entirely—or at least *almost entirely*—on allegations that Federal Agency Defendants acted unlawfully by following the Workforce Executive Order and Memorandum. Claim VI contends that the Federal Agency Defendants acted unlawfully by "creat[ing] and submit[ing] for OMB and OPM approval an ARRP, according to the parameters imposed by OMB, OPM and DOGE" and "have exceeded their authority by implementing the President's unconstitutional plans." Am. Compl. ¶¶ 423-24. Claim VII asserts that "[t]he actions of the Federal Agency Defendants, including but not limited to implementing the President's unconstitutional orders to reorganize and RIF employees, pursuant to the terms dictated by the President, violate the APA" by, among other things (and essentially mirroring the allegations in Claim IV), ceding decisionmaking authority, following "the President's unconstitutional directions and directions of OMB and OPM," engaging "in large-scale RIFs that are necessarily contrary to agency's ability to maintain required function and authorizing statute," abandoning reasoned decisionmaking, and acting under unrealistic timetables. *Id.* ¶ 431. All of this is just a restatement of what Plaintiffs contend that the Executive Order and Memorandum require. These claims are simply not viable in light of the Supreme Court's order.

Defendants' Reply in Support of Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents
3:25-cv-3698-SI

4

**B.    Any APA claims that survive the Supreme Court's Order do not warrant the discovery Plaintiffs seek.**

Given the Amended Complaint's allegations, and Plaintiffs' arguments in their opposition, the contours of Plaintiffs' APA claims against Federal Defendants are not clear. But under any theory, even if the Amended Complaint encompasses APA claims independent of the Executive Order and Memorandum, they would not be *viable* APA claims. And even if Plaintiffs had viable APA claims, they would not support the discovery Plaintiffs seek.

To be sure, a *traditional* APA claim—for example, that a specific RIF violates an agency governing statute or is otherwise unlawful for reasons independent of the Executive Order and Memorandum—probably would not be precluded by the Supreme Court's order. Defendants do not understand Plaintiffs to contend they are asserting such a conventional APA claim—though their opposition is confusing on this point.[1] And any such claim would be a nonstarter for several reasons, and is not a basis for ordering discovery.

Most obviously, this Court would lack jurisdiction to hear such claims. Plaintiffs previously argued that their challenges were not precluded by the CSRA and FSLMRS because they challenged government-wide policies, and the Court repeatedly made clear that it believed it had jurisdiction because Plaintiffs brought constitutional and statutory challenges to the Workforce Executive Order and Workforce Memorandum that, in the Court's view, were not the sorts of claims as to which Congress intended to preclude district-court review under the APA. MTD at 21. But a conventional challenge to a RIF as violating statutory requirements or as arbitrary and capricious is clearly precluded. Moreover, Plaintiffs largely brought this suit to enjoin RIFs before they occurred and, as to the RIFs that Plaintiffs claim were in progress when the Amended Complaint was filed, the Amended Complaint contains no facts or other allegations that these

---

[1] For example, Plaintiffs state that they "challenge agency actions to reorganize and RIF that result from unlawful OMB, OPM, and DOGE directives, violations of statutory obligation and authority, and arbitrary and capricious decision-making," Opp. at 9, effectively equating challenges to alleged government-wide directives with challenges to the merits of specific agency decisions. In any event, as discussed above, the Amended Complaint clearly challenges Federal Agency Defendants' actions as contrary to law and arbitrary and capricious only insofar as they followed the directives in the Order and Memorandum.

Defendants' Reply in Support of Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents
3:25-cv-3698-SI

specific RIFs violate any statutory requirements or are otherwise unlawful. MTD at 20.

Plaintiffs' opposition also insists that they are challenging "arbitrary and capricious and otherwise unlawful actions implementing the ARRPs." Opp. at 9. The Amended Complaint similarly states that "[t]he implementation of ARRPs by RIFing federal employees, closing offices, functions, and programs, and otherwise reorganizing agency functions are all final agency action under the APA." Am. Compl. ¶ 422 (Claim VI); *see also id.* ¶ 429 (similar language for Claim VII). But a sprawling challenge to unspecified actions across dozens of separate agencies, in many cases before those decisions are even made or finalized, is not a proper APA claim or even an intelligible one.

Nor can Plaintiffs challenge the ARRPs themselves under the APA. Plaintiffs state that "approved ARRPs and the Federal Agency Defendants' actions implementing them, including through issuance of large-scale RIF notices and placement of employees on administrative leave *en masse*, are final agency actions under the APA." Opp. at 17-18. This conflates two very different things. Particular actions taken by agencies, such as "large-scale RIF notices," may well be final agency actions (though not, in the government's view, final agency actions reviewable *in federal district courts*). But the ARRPs *themselves* are not final agency actions, since ARRPs are—by their nature—deliberative documents that do not mark the consummation of an agencies' thinking on RIFs and reorganizations and carry no legal consequences. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  In other ways, agencies may use the AARPs to plan a RIF, but the RIF itself is the relevant action with defined contours.

But even if Plaintiffs had some viable, adequately pled APA claim against Federal Agency Defendants, the discovery they seek here would still be improper. Any such APA claim would need to be adjudicated based on the administrative record. An agency's action can be held arbitrary or capricious if the agency's decision is not "founded on a reasoned evaluation of the relevant factors." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014) (citation omitted); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency is not required to defend every potential option it

Defendants' Reply in Support of Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents
3:25-cv-3698-SI

considered and committed to paper; it would simply have to defend its final decision on the basis of the record it assembles and its own contemporaneous explanation.

Plaintiffs emphasize that there are exceptions to the general rule that an APA claim must proceed only on the administrative record and without discovery, and they speculate that such exceptions would apply here. Opp. at 11. But this sort of anticipatory argument is not how the APA works. The burden would be on the plaintiffs, at the appropriate time, to establish that any certified administrative record is inadequate and that extra-record discovery is appropriate. *See San Luis*, 776 F.3d at 993. The burden would not be on the government to preemptively negate that any exception might be possible—before any administrative record has even been compiled and certified.

To be clear, this is not merely a formalistic timing objection. Plaintiffs suggest that any problem is simply that they moved for discovery a couple weeks too early, because the "documents sought in these Requests would also be part of the administrative record that is imminently due on July 28, 2025 anyway." Opp. at 1; *see also id.* at 11. That is not necessarily correct and it is not correct at all as to deliberative documents. But the more basic problem is that certification of an administrative record has not happened yet—and *cannot* happen yet—because Plaintiffs have not *even identified* what final agency actions they are challenging and because many of the potential RIFs discussed in the ARRPs have not even been finalized. Plaintiffs point to Local Rule 16-5 for the proposition that the administrative record is due July 28, but that Rule is tied to the filing of Defendants' "answer," so by its terms does not apply when Defendants file a motion to dismiss that does not implicate the contents of the administrative record. The plain language (as well the intent) of this provision suggests that the administrative record is not required until the defendant answers and, if a motion to dismiss is filed, the requirement is deferred until the answer is filed— because only then the case is at issue and ready to be briefed on the merits. And in any event, it is simply impossible for Defendants to file an administrative record for, to use the Amended Complaint's sprawling language, "[t]he implementation of ARRPs by RIFing federal employees, closing offices, functions, and programs, and otherwise reorganizing agency functions," since this

Defendants' Reply in Support of Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents
3:25-cv-3698-SI

7

does not identify any distinct agency action and encompasses many potential actions that have not even taken place (and might not take place).

To be clear: *if* the Court denies Defendants' motion to dismiss; *if* Plaintiffs identify specific RIFs they are challenging and a basis for those challenges that is independent of the Executive Order and Memorandum the Supreme Court has held are likely lawful; *if* the Court rules that it has jurisdiction over any such RIF-specific challenges and Defendants do not obtain appellate relief from any such order; *then* Defendants can and will produce an administrative record for any such specifically identified action. And *then* Plaintiffs can seek discovery and/or supplementation of the record if they can establish that the certified record is incomplete and that the standards for either of those highly disfavored requests is met. But there is no basis for directing Defendants to produce an administrative record before the Court has decided Defendants' motion to dismiss, and where Plaintiffs have not even identified what specific agency action Defendants should be required to produce a record for.

### C. The discovery is not relevant to any relief this Court could lawfully grant.

As Defendants have previously argued, and related to the above, the discovery Plaintiffs seek is not even plausibly relevant to any relief the Court could grant in this case. Plaintiffs state that "[i]f OMB/OPM/DOGE decisions implementing the Executive Order are unlawful, or if approved agency ARRPs or their implementation are unlawful, then those actions could be stayed, preliminarily enjoined, or vacated in a final judgment by this Court." Opp. at 18. But as we have previously explained, ARRPs themselves cannot be directly reviewed.

As to alleged "implementation" of ARRPs, discrete agency actions such as RIFs *can be* challenged (though again, in the Government's view, not in this Court). But this Court plainly could not stay, enjoin, or otherwise grant relief against any RIF or other agency action on the grounds that *an ARRP* was unlawfully approved or rejected, which is the subject of Plaintiffs' discovery requests. Putting aside that this theory is foreclosed by the Supreme Court's near-unanimous order, that would not be grounds for relief against any specific RIFs. As we have repeatedly explained, agencies are not required to undertake RIFs that are contemplated in an ARRP, and several agencies in fact have decided not to do so. ECF No. 208-1 ¶¶ 17-19. At least

Defendants' Reply in Support of Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents
3:25-cv-3698-SI

8

one agency as to which the Complaint alleges that large-scale RIFs are "imminent," Am Compl. ¶¶ 228, 274-78, has since announced that it does not now anticipate a large-scale RIF, see https://news.va.gov/press-room/va-to-reduce-staff-by-nearly-30k-by-end-offy2025/. And the Workforce Executive Order states that it shall not "be construed to impair or otherwise affect the authority granted by law to an executive department, agency, or the head thereof." Exec. Order 14210 § 5(a)(i).

Thus, if and when agencies undertake RIFs, those RIFs will represent independent decisions of those agencies, and Plaintiffs can assert a challenge based on the rationale provided by the agency. But a court could not enjoin an otherwise lawful future RIF simply because it was contained within an ARRP—even if the court were able to conclude that an ARRP was unlawfully "approved."

### D. Plaintiffs seek documents that are privileged.

It is also clear that a significant portion of documents responsive to Request No. 1 are likely privileged. Contrary to Plaintiffs' view, many of the communications between OMB/OPM and Federal Agency Defendants (not just intra-agency communications that Plaintiffs now clarify that they are not seeking) are definitionally privileged. That is particularly so given the nature of the documents at issue. The Supreme Court has repeatedly held that "[t]he high respect that is owed to the office of the Chief Executive … is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Clinton v. Jones*, 520 U.S. 681, 707 (1997). That office's "unique position in the constitutional scheme" "counsel[s] judicial deference and restraint." *Nixon v. Fitzgerald*, 457 U.S. 731, 749, 753 (1982). "[S]pecial considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 385 (2004). And because discovery against the White House raises the prospect of a "'constitutional confrontation'" between the Executive and Judicial Branches, the Supreme Court has made clear that it is reserved for exceptional circumstances and that such confrontations "should be avoided whenever possible." *Id.* at 389-90 (quoting *United States v. Nixon*, 418 U.S. 683, 692 (1974)); *see, e.g., U.S DOGE Service v. Center for Responsibility & Ethics in Wash.*,

Defendants' Reply in Support of Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents
3:25-cv-3698-SI

9

145 S. Ct. 1981, 1982 (2025) (summarily vacating denial of mandamus petition because court of appeals gave insufficient consideration to the "separation of powers concerns [that] counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications").

Here, Plaintiffs seek production of communications between Federal Agency Defendants and OMB, a component of the Executive Office of the President. And at least the communications in which Plaintiffs appear to be most interested are crafted to capture substantive give and take within the Executive Branch. *See* RFPs at 8 (seeking communications involving "any discussion of whether the contents of those Plans meets or do not meet expectations"). For effective communication, any such materials must candidly convey the agencies' and OPM/OMB's assessments. Disclosure of deliberative documents' use in future litigation would plainly hamper agencies' ability to communicate effectively with the components charged with coordinating the President's agenda if agencies.

The Court previously directed only that Defendants identify "categorical objections" to production of documents. And Plaintiffs' opposition does not dispute that Defendants can assert privilege where they believe it applies. Defendants respectfully submit that a protective order is warranted independent of any privilege concerns. Still, because Request No. 1 calls for documents that are likely to be privileged in substantial part, this militates even further in favor of a protective order. And it underscores that the Court should not allow Plaintiffs to undertake discovery without considering alternatives that could obviate any need for discovery—namely, waiting to rule on the need for disclosure until after the Court adjudicates the government's pending motion to dismiss; after Plaintiffs identify any specific RIFs and the basis for their challenge to those RIFs; after the Court addresses whether any particular RIFs are properly subject to challenge in this Court; and after an administrative record for any properly challenged RIFs is certified and deemed inadequate.

E.  **Requests 2 and 3 are improper and seek irrelevant information.**

RFP 2 seeks "all Federal Agency Defendant applications for waivers of statutorily-mandated RIF notice periods" and RFP 3 seeks all responses by OMP or OPM to any such applications. As we explained in our motion, the only conceivable purpose for this request is to

Defendants' Reply in Support of Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents
3:25-cv-3698-SI

10

collect information regarding potential future RIFs that have not been finalized or announced. Plaintiffs' desire for a preview of potential future RIFs that may or may not occur does not warrant discovery, nor is it a basis for the expedited pre-motion-to-dismiss discovery Plaintiffs seek. In response, Plaintiffs contend that "[p]ursuant to OPM's instructions, agencies must submit justifications for shortening the required time periods for the creation of competitive areas and providing notice to employees" and that "[t]hese documents would thus be part of the administrative record." Opp. at 17. But even if true, that simply underscores that impropriety of these requests. Plaintiffs are not entitled to potential administrative record materials for potential future RIFs *before* those RIFs are announced and finalized, particularly through pre-answer expedited discovery.

## II.   The Court Should Not Allow Discovery Before Resolving the Government's Forthcoming Motion to Dismiss.

For the reasons set forth above, Defendants submit that no discovery is warranted in this case at all. But at the very least, the Court should resolve Defendants' forthcoming motion to dismiss before allowing any discovery. As previously explained, Defendants' motion satisfies both prongs of the two-part test utilized by district courts in the Ninth Circuit deciding whether to stay discovery pending resolution of a motion to dismiss: the motion is potentially dispositive of the entire case, and it does not require discovery to resolve. *Hewlett Packard Enter. Co. v. Inspur Grp. Co.*, No. 24-CV-02220-JST, 2024 WL 4631665, at *1 (N.D. Cal. Oct. 29, 2024). Plaintiffs note that a motion to dismiss does not *automatically* stay discovery, Opp. at 4-5, which no one disputes; that is why Defendants filed this motion. For reasons Defendants have previously explained, deferring discovery until after the motion to dismiss is resolved is appropriate because the motion should be granted and is likely to at the very least narrow the issues in this case.

Defendants understand and appreciate that this Court has previously suggested that it believes the Supreme Court's stay order is not dispositive of the case. Defendants respectfully submit that the Court's statements overlook both the centrality of the Workforce Executive Order and Workforce Memorandum to Plaintiffs' claims, as well as other considerations, including: (1) as to the legality of the Executive Order, the Supreme Court's order must be given decisive weight,

Defendants' Reply in Support of Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents
3:25-cv-3698-SI

since that question involves a purely legal question as to which the Court provided its views following full stay briefing; (2) as to the legality of the Memorandum, the Supreme Court's Order must be read as a rejection of Plaintiffs' argument that OPM and OMB's approval or rejection of ARRPs is unlawful; (3) Plaintiffs' APA claims against Federal Agency Defendants as pled depend on Plaintiffs' argument that the Executive Order and Memorandum are unlawful; (4) if any APA claim remains, this Court would lack jurisdiction to adjudicate APA claims not tied to asserted government-wide policies (even assuming the Court was correct in its previous conclusions that challenges to government-wide policies were outside the scope of the channeling requirement); (5) ARRPs are not themselves final agency actions; and (6) a challenge to "implementation of ARRPs" untied to any particular agency action—or a claim that such unspecified and future actions are unlawful for reasons independent of the Executive Order and Memorandum the Supreme Court held were likely lawful—is not a cognizable APA claim.

These arguments warrant careful consideration, and the Court should not allow Plaintiffs to charge ahead with discovery—especially discovery directed against a White House component—without deciding them. *See In re Musk*, No. 25-5072, 2025 WL 926608, at *1 (D.C. Cir. Mar. 26, 2025) (granting stay pending mandamus because "petitioners have shown a likelihood of success on their argument that the district court was required to decide their motion to dismiss before allowing discovery"). A party should not be able to engage in intrusive discovery to prove up a complaint that suffers from fatal defects. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.") (cleaned up)); *see also In re United States*, 583 U.S. 29, 32 (2017) (per curiam) (vacating and remanding to the district court with instructions to rule on the government's threshold arguments regarding jurisdiction and reviewability under the APA which "likely would eliminate the need for the District Court to examine a complete administrative record."). That is especially so where the Supreme Court has already held that Plaintiffs' claims are likely to fail on purely legal grounds that do not depend on factual development—namely, that the President has lawful authority, with the assistance of OPM and

Defendants' Reply in Support of Motion for a Protective Order and Order Quashing Plaintiffs' First Set of Requests for the Production of Documents
3:25-cv-3698-SI

12

OMB, to direct and guide agencies in implementing RIFs, and that any defects in any future RIFs do not negate the validity of the Executive Order and Memorandum pursuant to which they were adopted.

Taking the modest step of deferring any discovery until after the motion to dismiss is decided would allow the Court to determine in an orderly fashion what claims and issues, if any, remain viable following the Supreme Court's order. It would also allow this Court to consider any guidance it receives from the Ninth Circuit, which has administratively stayed this Court's July 18 discovery order.

## CONCLUSION

The Court should grant a protective order and relieve Defendants of the obligation to respond to Plaintiffs' requests.

Dated: July 23, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER HALL
Assistant Branch Director

s/ Andrew M. Bernie
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-7203
andrew.m.bernie@usdoj.gov

*Counsel for Defendants*