PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
ANDREW M. BERNIE
Trial Attorney
Civil Division, Federal Programs Branch

   1100 L Street, NW
   Washington, DC 20005
   Telephone: (202) 353-7203
   andrew.m.bernie@usdoj.gov

Counsel for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*, <br><br>    Plaintiffs, <br><br>    v. <br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br>    Defendants. | Case No. 3:25-cv-03698-SI <br><br>**NOTICE** |

Attached to this notice is a declaration providing the information directed by the Court's July 18 Order.[1] *See* Declaration of Noah Peters.

---

[1] The Court's directive that Defendants provide Agency RIF and Reorganization Plans for in camera review and to Plaintiffs' counsel has been administratively stayed by the Ninth Circuit.

As Mr. Peters' Declaration explains, the estimate of "about 40 RIFs in 17 agencies" reflects data concerning an early, initial step in a potential reduction in force (RIF), namely OPM approval of an agency's request pursuant to 5 C.F.R. § 351.402(c) for approval of a competitive area that had been in effect for less than 90 days, and also derives from another waiver request that agencies can submit to OPM, to shorten the RIF notice period when the RIF is "caused by circumstances not reasonably foreseeable." OPM chose this measure as the best available means of estimating how many RIFs were in progress across the Federal government that were related to Executive Order 14210 and thus were subject to the Court's injunction.

As Mr. Peters further notes, the estimate was over-inclusive in some ways (including that it inadvertently included certain non-enjoined agencies) but it was under-inclusive in other ways, including that it used a narrow date range (the number of competitive area waivers that OPM approved between March 10, 2025 and April 13, 2025); and as Mr. Peters has previously explained, this estimate understated the number of competitive area waivers approved by OPM as to the agency defendants prior to May 9 (the date of the Court's TRO). *See* ECF No. 208-1 ¶ 14. And the Government's estimate before the Supreme Court further likely understated the harm to the government from the since-stayed preliminary injunction because, during the approximately two months the TRO and preliminary injunction were in place, agencies may have been planning to submit requests for competitive area waivers to OPM after May 9, 2025, but abstained from doing so because of the Court's TRO and then injunction.

In directing disclosure of further information about potential RIFs, the Court suggested that Defendants had provided shifting or incorrect information to the Supreme Court and this Court. Defendants take with the utmost seriousness their obligation to supply the courts with accurate and up to date information, and will continue to do so. We respectfully disagree with the Court's contrary suggestion.

With respect to our statement to the Supreme Court, Defendants' representation that many RIFs had not been finalized or formally decided upon did not "back-track" from Defendants' representation to the Supreme Court regarding the enjoined RIFs. ECF No. 214 at 10. Defendants'

Supreme Court application stated that the Office of Solicitor General had "been informed by OPM that about 40 RIFs in 17 agencies were in progress and are currently enjoined." That representation was based on an estimate that was over and underinclusive but, as explained above the estimate was in fact ultimately underinclusive of the harm to the government. And seeking a competitive area waiver if applicable is one of the necessary first steps to effectuate a RIF under both OPM's regulations and the Workforce Memorandum. Those potential RIFs were "in progress" and thus enjoined by this Court's since-stayed injunction, even if the RIFs were not past the point of no return. Defendants did not suggest to the Supreme Court that the RIFs this Court's order enjoined had been finalized and formally decided upon.

But in addition, when Defendants filed their Supreme Court application on June 2, the Court's preliminary injunction was in place and the Court's TRO had been issued nearly a month earlier (on May 9). So in estimating the in-progress RIFs being affected by the injunction, Defendants necessarily looked backward to determine what RIFs had been in progress *before* the TRO/PI (and used competitive waiver requests as an estimate). But now that the Court's injunction is stayed and agencies have been able to resume work implementing the Executive Order, it is not surprising that changes occurring since May 9 have rendered some of these RIFs unnecessary. That is not inconsistent with Defendants' representation to the Supreme Court because Defendants never said the RIFs halted by this Court's injunction had been finalized—to the contrary, one of Defendants' fundamental points in its court filings is that nothing is final until the agencies *actually make* final RIF decisions.

Nor is there any inconsistency between Mr. Peters' July 14 declaration and the Government's prior representations in this case. The Court stated that, "if RIFs do not flow from ARRPs, Executive Order 14210, or the OMB/OPM Memo at issue in this case, they would not have been enjoined by the Court's preliminary injunction" and further stated that "[t]he government's shifting positions degrade the Executive's credibility and further underscore the need for an examination of the documents themselves." ECF No. 214 at 10.

Respectfully, this is mistaken. For one, Defendants do not dispute that RIFs "flow from" the Executive Order where they are being considered by agencies because of the Executive Order

1   and that such RIFs were covered by the preliminary injunction. The Court's preliminary injunction
2   broadly enjoined Defendants "from taking any actions to implement or enforce sections 3(c) and
3   3(e) of Executive Order 14210 or the February 26, 2025 OMB/OPM Memorandum." ECF No. 124
4   at 47-48; *see also* Exec. Order 14120, § 3(c) (directing agencies to "undertake preparations to
5   initiate large-scale reductions in force"). The RIFs referenced in Defendants' Supreme Court
6   application were in-progress RIFs undertaken pursuant to the Executive Order and were thus
7   enjoined by the Court's since-stayed preliminary injunction; that does not mean they flowed from
8   ARRPs. And that is not at odds with saying that the RIFs were not finalized because the agencies
9   had not decided whether to proceed. Nothing in Mr. Peters' declaration suggested otherwise or
10  contradicts Defendants' filings in this case. Indeed, the point of that declaration was to explain
11  how the figures supplied to the Supreme Court had been derived. The Government had not
12  previously explained (or been asked to explain) how it calculated that figure, so the declaration
13  could not have been inconsistent with—and was not inconsistent with—any previous position or
14  representation.

15  The Court also "repeat[ed] a query that it previously posed: if the ARRPs are non-final
16  planning documents that do not commit an agency to take any specific action, pursuant to *what*,
17  then, are the agencies implementing their large-scale reorganizations and RIFs?" ECF No. 214 at
18  10. The answer is that any RIFs or reorganizations previously enjoined by the Court's injunction
19  are being taken pursuant to the agency's own statutory authorities to conduct RIFs, and were being
20  undertaken because the Executive Order directed agencies to prepare them consistent with
21  applicable law.[2] But the ARRPs are not a source of authority at all—they are just inter-agency
22  planning documents, which do not actually require the agencies to do or not do anything. Agency
23  RIF plans, and plans on the many other subjects discussed in ARRPs, are predecisional and
24  deliberative because agencies are not obligated to go forward with RIFs or any other potential
25  actions discussed therein.

---

28  [2] As we have previously noted and no one disputes, federal law expressly permits agencies to conduct RIFs.

| | |
|---|---|
| Dated: July 24, 2025 | Respectfully submitted, |
| | PATRICK D. ROBBINS (CABN 152288)<br>Acting United States Attorney<br>U.S. ATTORNEY'S OFFICE<br>450 Golden Gate Avenue, Box 36055<br>San Francisco, California 94102-3495 |
| | ERIC J. HAMILTON (CABN 296283)<br>Deputy Assistant Attorney General<br>DIANE KELLEHER<br>Branch Director<br>CHRISTOPHER HALL<br>Assistant Branch Director |
| | <u>/s/Andrew M. Bernie</u><br>1100 L Street, NW<br>Washington, DC 20005<br>Telephone: (202) 353-7203<br>andrew.m.bernie@usdoj.gov |
| | *Counsel for Defendants* |