CRAIG H. MISSAKIAN
United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-6748

BRETT A. SHUMATE
Assistant Attorney General
ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
ANDREW M. BERNIE
Trial Attorney
Civil Division, Federal Programs Branch

    1100 L Street, NW
    Washington, DC 20005
    Telephone: (202) 353-7203
    andrew.m.bernie@usdoj.gov

Counsel for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al*.<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>    Defendants. | Case No. 3:25-cv-03698-SI<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER REQUIRING PRODUCTION OF ADMINISTRATIVE RECORD(S)** |

# INTRODUCTION

The Supreme Court concluded less than a month ago that Executive Order 14210 (Workforce Memorandum) and the February 26, 2025 Memorandum from the Office of Personnel Management (OPM) and Office of Management and Budget (OMB) (Workforce Memorandum) were likely lawful. *Trump v. Am. Fed. of Gov't Emps.*, No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025). Notably, unlike other plaintiffs who have attempted to challenge particular agency reductions in force (RIF) and reorganizations based on grounds specific to those RIFs and reorganizations, Plaintiffs here based their complaint on the supposed illegality of government-wide policies. Plaintiffs made no attempt to allege that individual agency RIF and reorganization actions violated specific agency governing statutes—nor could they have done so since Plaintiffs brought suit *before* most agencies announced RIFs and other actions implementing the Executive Order.

Indeed, Plaintiffs also insisted that this Court had jurisdiction *because* they purportedly challenged "government-wide" policies, bringing constitutional and statutory challenges to the Workforce Executive Order and Workforce Memorandum. ECF No. 37-1 at 47-48. And this Court concluded that the Federal Service Labor-Management Relations Statute (FSLMRS) and the Civil Service Reform Act (CSRA) did not preclude district court jurisdiction *because* Plaintiffs' claims challenging the Executive Order and Memorandum were not the sorts of claims, in the Court's view, as to which Congress intended to preclude district-court review under the APA. ECF No. 124 at 22-26. Plaintiffs thus sought and received an injunction preventing OMB, OPM, the U.S. DOGE Service (USDS), and 19 agency defendants (including every Cabinet-level agency except the Department of Education) from implementing the Workforce Executive Order and Workforce Memorandum for nearly two months.

With the theory of their lawsuit substantially eroded, Plaintiffs could have retrenched, withdrawn this action, waited to assess any individual agency RIF and reorganization actions, considered those actions in light of those agencies' individual statutory and regulatory frameworks, and attempted to challenge any actions they believed to be inconsistent with those frameworks—either under the exclusive administrative scheme for adjudicating federal personnel and labor

Defendants' Opposition to Plaintiffs' Motion For An Order Requiring Production of Administrative Records(s)
3:25-cv-3698-SI

1

disputes or by attempting to bring a targeted district court action. Instead, they have reacted to the Supreme Court's Order by instituting a flurry of new emergency motions practice.

And despite their blizzard of filings, the putative basis for Plaintiffs' lawsuit following the Supreme Court's near-unanimous order has never been made entirely clear. Plaintiffs appear to contend alternatively that: (1) the Supreme Court's nearly unanimous conclusion on a question of law should not be given much weight because, on a stay pending appeal, it concluded only that the Executive Order and Memorandum were "likely lawful"; (2) Plaintiffs are in fact challenging "implementation of ARRPs" in a manner that is somehow independent of the Workforce Memorandum and OPM/OMB approval requirement that the Supreme Court held was likely lawful, *and* are also somehow entitled to bring challenges to "implementation of ARRPs" independent of a challenge to a specific reviewable final agency action; and (3) Plaintiffs are actually challenging individual agency RIF and reorganization actions on individualized grounds independent of any government-wide policies, even though their Complaint does not adequately plead any such challenges and notwithstanding that this Court would not have jurisdiction over such challenges, individually or en masse. None of these various theories or any new theories Plaintiffs might come up with has merit, and this Court should dismiss the Complaint following full briefing on the Government's pending motion.

Yet last Wednesday, Plaintiffs filed yet another far-reaching and legally baseless motion. Specifically, Plaintiffs ask the Court to direct Defendants to require production of "administrative record(s)" (the "(s)" to be clear, is from Plaintiffs) covering a sprawling and wholly indeterminate set of supposed "agency actions." Specifically, Plaintiffs demand administrative records for "*at a minimum*" (again, Plaintiffs' words and emphasis) the following: "the OMB/OPM Memorandum; any OMB/OPM approval, whether formal or informal, of a Federal Agency Defendant ARRP (including but not limited to the ARRPs pertaining to the 31 RIFS at 10 defendant agencies referenced in Defendants' appellate filings, *see* ECF 228); any OMB, OPM, or DOGE directive to any Federal Agency Defendants regarding the implementation of Executive Order 14210 . . . or any Federal Agency Defendant action taken to date to implement any ARRP, including but not limited to RIFs, or the closure of offices, programs and functions." ECF No. 234 at 3-4. As to each

Defendants' Opposition to Plaintiffs' Motion For An Order Requiring Production of Administrative Records(s)
3:25-cv-3698-SI

2

of these incredibly broad categories of cited "agency actions," some of the following apply: the complaint does not adequately state a claim against them under the APA; they do not even plausibly constitute reviewable final agency action; they are clearly lawful regardless of the contents of any administrative record; they are not sufficiently described; and they concern supposed actions that district courts would not even plausibly have jurisdiction to consider.

Centrally Plaintiffs invoke a flawed characterization of the relationship between ARRPs or RIFs. RIFs reflect a final agency decision. ARRPs are plans concerning those and other *potential future* actions. By definition, a "plan" is not a final agency action. Planning for a RIF is not in fact a RIF. Plaintiffs' motion blends these two distinct concepts, but the APA requires the Court to appreciate the difference between plans and actions. The Court should summarily deny Plaintiffs' motion, and proceed to consider Defendants' motion to dismiss once it is fully briefed. And then if the Court denies Defendants' motion to dismiss in whole or in part; if Plaintiffs identify specific RIFs they are challenging and a basis for those challenges that is independent of the Executive Order and Memorandum the Supreme Court has held are likely lawful; if the Court rules that it has jurisdiction over any such RIF-specific challenges and Defendants do not obtain appellate relief from any such order; then Defendants can and will produce an administrative record for any such specifically identified action. But there is no basis for requiring such action from Defendants unless and until that happens, and certainly no basis for Plaintiffs' demands.

## ARGUMENT

### I. Defendants have complied with Local Rule 16-5, and the Court should deny Plaintiffs' motion irrespective of its resolution of that issue.

Initially, Defendants have complied with Local Rule 16-5. That Rule is tied to the filing of Defendants' "answer," so by its terms does not apply when Defendants file a motion to dismiss that does not implicate the contents of an administrative record. The plain language (as well the intent) of this provision suggests that the administrative record is not required until the defendant answers and, if a motion to dismiss is filed, the requirement is deferred until the answer is filed— because only then the case is at issue and ready to be briefed on the merits. And that makes particular sense here, where the parties dispute whether this Court has jurisdiction over Plaintiffs' APA challenges, and where the parties also dispute whether Plaintiffs have even properly

Defendants' Opposition to Plaintiffs' Motion For An Order Requiring Production of Administrative Records(s)
3:25-cv-3698-SI

3

1   identified final agency actions for which Defendants would certify a record.

2   Plaintiffs' theory that the "administrative record" is required for any claim styled as an
3   "APA" claim, no matter its merits and before an answer is filed or a motion to dismiss is resolved,
4   would also prove too much. Most of what Plaintiffs purport to challenge are not even debatably
5   final agency actions subject to the APA. But on Plaintiffs' theory, Local Rule 16-5 would apply
6   and presumptively require a federal defendant to compile an "administrative record" no matter
7   how far-fetched the "APA" claim was—even if, for example, a plaintiff purported to seek "APA
8   review" of an Executive Order or a state statute. Nor is Plaintiffs' reference to the supposed
9   "general practice of this Court not to stay discovery pending motions to dismiss," ECF No. 234 at
10  2, relevant. Compilation and certification of an administrative record is not "discovery." And in
11  any event, this Court's prior rulings have not addressed all of the many problems with Plaintiffs'
12  current demands for non-specific "administrative records," discussed further below.

13  Finally, if Defendants have misunderstood the Local Rule's requirements, the Court should
14  still deny Plaintiffs' motion. Plaintiffs state that "[e]ven if there were any ambiguity in the language
15  of the rule, this Court has the authority to require production of the record." ECF No. 234 at 2. The
16  Court also has the authority to treat this opposition as a request to defer any requirement until
17  following the resolution of the motion to dismiss when the parameters of any remaining part of the
18  case are clearer. Indeed, this Court has previously granted relief to Plaintiffs even when they had
19  not filed a properly noticed motion on the subject. ECF No. 85 at 40 (requiring disclosure of
20  ARRPs without a properly noticed motion on the subject); ECF No. 214 at 11 (requiring disclosure
21  of RIFs referenced in Supreme Court application despite the absence of a proper motion from
22  Plaintiffs requesting this relief). It can and should do the same for Defendants here.

**II.     Plaintiffs' motion should be denied as to each of the four requested categories of "administrative records."**

We now address the four categories of supposed agency actions as to which Plaintiffs demand administrative records.

**A.  The Workforce Memorandum**.

We adhere to our previous position that the Workforce Memorandum is not a final agency action subject to review under the APA, an argument the Supreme Court did not address. In any

Defendants' Opposition to Plaintiffs' Motion For An Order Requiring Production of Administrative Records(s)
3:25-cv-3698-SI

4

event, Plaintiffs' challenge to the Memorandum plainly fails as a matter of law in light of the Supreme Court's stay order. Before the Supreme Court Plaintiffs complained that "OMB and OPM have assigned to themselves and thereby usurped statutory delegations of decision-making to agencies." *See* 24A1174 (S. Ct.) (Plaintiffs' Response to Application Filed June 9, 2025) at 29. Plaintiffs likewise focused *heavily and repeatedly on OPM/OMB approval* of ARRPs in arguing that the Workforce Memorandum was unlawful.[1] And for purposes of its stay application, Defendants *did not dispute* Plaintiffs' argument that the Memorandum requires OPM and OMB to approve ARRPs, and instead argued that any such approval requirement was *lawful*. *See* 24A1174 (S. Ct.) (Stay Application Filed June 2, 2025) at 23. Nor did Defendants dispute for purposes of their Supreme Court application that OPM and OMB have rejected some ARRPs. *Id.* at 28. The Supreme Court was not swayed by Plaintiffs' arguments about improper OPM and OMB influence and held that the Workforce Memorandum—including its provision directing OMB and OPM approval of ARRPs—was likely lawful.

Plaintiffs insist again that "[t]he Supreme Court granted a stay predicated on an initial assessment that the Memorandum is 'likely' to be lawful" and that "an emergency stay order does not foreclose discovery on a pending claim, or the considered and reasoned assessment on a full and complete record." ECF No. 234 at 3 n.2. In their motion to dismiss, Defendants explained

---

[1] *See id.* at 3 ("[T]hrough their Memorandum, OMB and OPM amplified and accelerated the President's orders by imposing unworkable timeframes and assuming for themselves the power to approve or veto proposals by individual federal agencies…");*id.* at 8-9 ("The Memorandum also instructed each federal agency to submit a combined ARRP implementing the EO, for OMB and OPM's review and approval." (cleaned up)); *id.* at 9 (contending that "Respondents established, and the Government did not dispute, that OMB and OPM *rejected* some ARRPs for failure to eliminate enough positions, requiring agencies to impose greater cuts to programs and positions"); *id.* ("Soon after these submission deadlines for OMB/OPM 'approval,' agencies across the federal government commenced implementation of reorganizations and RIFs according to the President's parameters."); *id.* at 27 ("The District Court and Court of Appeals also correctly held that Respondents are likely to prevail on claims that OMB and OPM's actions directing federal agencies to create and implement ARRPs on incredibly truncated timeframes, and to obtain approval from OMB and OPM for those plans, exceeded their authority and violate the APA."); *id.* (stating that no statutes "authorize OMB to require agencies to reorganize or RIF employees (or to do so in particular timeframes or scale or scope), or to make substantive decisions for other agencies on matters Congress did not delegate to OMB"); *id.* ("OPM does not have authority to make RIF or reorganization decisions either.").

Defendants' Opposition to Plaintiffs' Motion For An Order Requiring Production of Administrative Records(s)
3:25-cv-3698-SI

5

why, as a practical matter, the Supreme Court's stay order precludes the Court from adhering to its previous conclusion that the Executive Order and Memorandum are unlawful. ECF No. 216 at 8-16. But at the very least, to give appropriate weight to an order of the Supreme Court as to the legality of the Memorandum in this case, the Court should at least *decide* Defendants' motion to dismiss—and determine whether Plaintiffs can state a claim as to the legality of the Memorandum—*before* ordering OPM and OMB to produce a "record" for that document.

### B. "[A]ny OMB/OPM approval, whether formal or informal, of a Federal Agency Defendant ARRP"

This demand fails for at least two reasons.

First, any OPM/OMB approval of an ARRP is plainly not a final agency action subject to APA review. ARRPs *themselves* are just plans concerning potential actions that agencies may or may not take, and that they are not required to take. By definition, a "plan" is not a final agency action. And indeed, although Defendants submit that the predecisional and deliberative status of ARRPs is not reasonably open to question, *this Court* also "assume[d] without deciding that at least some ARRPs may include pre-decisional and deliberative materials" in the order requiring production of the ARRPs in camera and to Plaintiffs' counsel, as to which Defendants are currently seeking relief in the Ninth Circuit. ECF No. 214 at 7.

Given that the ARRPs are themselves not final agency actions, any purported "approval" of such a planning document (which is neither binding nor imposes any legal consequences) is not a final agency action subject to APA review. One Executive agency expressing approval on another agency's *future* plans is deliberative and pre-decisional, because there is no final decision until the action agency actually takes the action. That approval would not commit an agency to exercise its own authorities. For example, if there was an inter-agency communication concerning a "plan" to issue certain interim final rules, and the final "plan" was purportedly "approved" by OMB to issue three interim final rules but not two others, that "plan"—and certainly OMB's approval of that plan—obviously would not be a final agency action, or even agency action at all; instead, that would be an internal deliberation, and there would be no final agency action until the interim final rules were actually issued. So too here.

Second, Plaintiffs have already been permitted to obtain discovery that includes

Defendants' Opposition to Plaintiffs' Motion For An Order Requiring Production of Administrative Records(s)
3:25-cv-3698-SI

6

communications concerning ARRPs between federal agency defendants on the one hand, and OPM and OMB on the other. Defendants respectfully submit that the Court was incorrect to allow such discovery, and reserve the right to seek relief from that order. And Defendants do not believe there is any possible relevance to those communications, or that the content of those communications would provide any basis for a legal claim against federal agency defendants as to future actions they may or may not take. Further, the Court also already ordered disclosure of the ARRPs themselves to counsel and the Court and that order is under review at the Ninth Circuit. Plaintiffs do not explain why they also urgently require the "record" of these purported approvals, let alone why this demand cannot await orderly resolution of the motion to dismiss, including resolution of Defendants' argument that any such "approvals" are not reviewable final agency action.

### C. "[A]ny OMB, OPM, or DOGE directive to any Federal Agency Defendants regarding the implementation of Executive Order 14210"

Plaintiffs cite no authority for the proposition that a communication from one Executive Branch component to another is itself a "final agency" action subject to review under the APA. To the extent such hypothetical "directives" are not privileged and part of the record for any future final agency action—such as a RIF or reorganization—that is subject to review, future plaintiffs can make arguments about the effect of such "directives" on the legality of the agency action under review. But Plaintiffs cannot serve what is functionally a discovery request for alleged intra-Executive Branch communications, say their lawsuit is a purported "APA challenge" *to those alleged communications*, and then demand that Defendants compile an administrative record for those supposed communications.

As to "DOGE," we have explained that "DOGE" is the umbrella term for the government-wide initiative to implement the President's DOGE Agenda. It consists of USDS, the USDS Temporary Organization, and Agency DOGE Teams, which are created by agency heads and composed of employees of those agencies who report to agency leadership. Exec. Order 14,158, § 3(a)–(c), 90 Fed. Reg. 8441 (Jan. 20, 2025). To the extent Plaintiffs are seeking any "directives" from agency DOGE Teams within the agency, Plaintiffs have never identified any even colorable theory how such intra-agency directives are unlawful (except insofar as they *result* in reviewable

Defendants' Opposition to Plaintiffs' Motion For An Order Requiring Production of Administrative Records(s)
3:25-cv-3698-SI

7

agency actions that are unlawful; and in that case, again, it would be the specific agency actions that would be subject to review, not any intra-agency communications directing such actions). Nor have Plaintiffs ever explained how the federal judicial power extends to adjudicating such alleged intra-agency disputes. Again, even if an agency DOGE Team were to "direct" specific agency actions such as RIFs or reorganization, the relevant agency action would obviously be the RIF or reorganization, not the hypothetical agency DOGE Team "directive" to take that action. And if that action were reviewable under the APA, its validity would be adjudicated based on the relevant statutory and regulatory framework, and the rationale supplied by the agency.

As to USDS, we have explained that USDS has no statutory authority, and that its tasks and responsibilities under various Executive Orders are limited and advisory. ECF No. 216 at 24-25. USDS categorically lacks the power to issue directives to federal agencies, as to Executive Order 14210 or on any other subject.

In addition, USDS is not an agency subject to the APA. As we have previously noted, there are numerous pending cases raising the question whether USDS is an agency for purpose of FOIA or the APA. *See, e.g.*, *Ctr. for Biological Diversity v. OMB*, No. 1:25-cv-165 (D.D.C.); *Am. Oversight v. U.S. Dep't of Gov't Efficiency*, No. 1:25-cv-409 (D.D.C.); *CREW v. U.S. DOGE Serv.*, No. 1:25-cv- 511 (D.D.C.); *MSW Media, Inc. v. USDS*, No. 1:25-cv-01933 (D.D.C.); *Am. Oversight v. U.S. Dep't of Gov't Efficiency*, No. 1:25-cv-1251 (D.D.C. filed Apr. 23, 2025); *Project on Gov't Oversight, Inc. v. U.S. DOGE Serv.*, 1:25-1295 (D.D.C.); *Center for Biological Diversity v. Office of Management and Budget*, No. 1:25-cv-00165-BAH (D.D.C.). The Supreme Court has already blocked one discovery order as to USDS, while making clear that "[a]ny inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to persuade"). *U.S DOGE Service et al. v. CREW*, No. 24A1122, 605 U.S. __ (Jun. 6, 2025). Yet Plaintiffs ask this Court to order USDS to compile "administrative records" for supposed "directives," all before deciding whether USDS is an agency subject to the APA, and also before addressing Defendants' argument that the Amended Complaint otherwise does not adequately state a claim against USDS. ECF No. 216 at 25. The Court should firmly reject that invitation.

### D. "[A]ny Federal Agency Defendant action taken to date to implement any ARRP, including but not limited to RIFs, or the closure of offices, programs and functions"

As to this part of Plaintiffs' motion, "action taken to date to implement any ARRP" is, depending on what Plaintiffs mean by this, arguably a null set since agencies are not required to take any step set forth in an ARRP, which are simply agency planning documents. But presumably this is not what Plaintiffs are seeking. Presumably what they mean is that Defendants should be required to compile and certify an "administrative record" for literally every single action federal agency defendants have taken that is contemplated in an ARRP, for each of the nearly two dozen federal agency defendants. This demand is so sprawling and comprehensive—given the volume of potential techniques, actions, and strategies discussed in ARRPs—as to be completely unmanageable. In addition, many of the numerous potential steps on a wide range of subjects discussed by ARRPs likely would not qualify as reviewable final agency actions even if the agency ultimately takes those steps. As to RIFs and reorganizations specifically, again, Plaintiffs do not explain how—even under the jurisdictional theories that this Court embraced at the preliminary injunction stage—this Court would have jurisdiction to address agency RIF and reorganization actions that are not based on challenges to government-wide policies.

Even if the Court would hypothetically have such jurisdiction over an agency's specific RIF (such as the one at the State Department, addressed by the Court at a status conference), Plaintiffs' complaint cannot properly be construed as raising claims to challenge specific RIFs or other agency actions on arbitrary and capricious grounds. The Complaint contains no agency-specific allegation that particular agency actions that had by then taken place were contrary to agency governing statutes. And indeed, many RIFs had not even happened when Plaintiffs filed their complaint and Plaintiffs had not seen any of them. Not only would a challenge to such future RIFs have been unripe and speculative, but it would arguably have been sanctionable for Plaintiffs to claim that reasoning that they had never even seen was arbitrary and capricious. And indeed, that is *still* the case as to many of the RIFs have not yet been finalized. And even if Plaintiffs were to amend their Complaint to raise fact-specific challenges to every identified RIF—and indeed, every single action "implementing" an ARRP—Plaintiffs provide no plausible reason why *this*

Defendants' Opposition to Plaintiffs' Motion For An Order Requiring Production of Administrative Records(s)
3:25-cv-3698-SI

9

*Court* would be an appropriate forum to address literally every single disparate challenge to actions across dozens of federal agencies, merely to the extent such actions were contemplated in an ARRP before the agency decided upon them.

Finally on this point, Plaintiffs' apparent effort to obtain information about any step any agency has undertaken to "implement an ARRP" is excessive and represents a discovery request in search of a legal violation. Plaintiffs' remedy for assertedly unlawful agency action is the same as any other plaintiff: to wait for the agency to issue a final agency action and then challenge it as contrary to law and/or arbitrary and capricious if they believe a district court has jurisdiction over such a claim and such a claim has merit. "The case-by-case approach that this requires" may be "understandably frustrating" to Plaintiffs. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894 (1990). But they are entitled to nothing more.

***

Finally, Plaintiffs, repeating similar allegations they have leveled throughout this case, contend that "Defendants' non-compliance is part of an established pattern to prevent Plaintiffs and this Court from accessing the facts regarding Defendants' actions implementing Executive Order 14210." ECF No. 234 at 5. This contention is baseless. As we have repeatedly pointed out, "Defendants' actions implementing Executive Order 14210," such as RIFS and reorganizations, will be made public *when those actions are decided upon*. When agencies decide upon RIFS and reorganizations, Plaintiffs will learn about them (and likewise, if and when agencies decide *not* to engage in large-scale RIFs, such decisions may be announced when they are made as well[2]). Plaintiffs are not entitled to learn about and challenge hypothetical decisions before they are made. And they are certainly entitled to "administrative record(s)" for alleged internal Executive Branch communications, and for challenges to actions that are inadequately pled, that are not final, and that this Court would not have jurisdiction to entertain.

## CONCLUSION

The Court should deny Plaintiffs' motion and resolve Defendants' motion to dismiss before requiring any other disclosures to Plaintiffs.

---

[2] *See* https://news.va.gov/press-room/va-to-reduce-staff-by-nearly-30k-by-end-offy2025/.

Dated: August 4, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
Acting United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER HALL
Assistant Branch Director

s/ Andrew M. Bernie
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-7203
andrew.m.bernie@usdoj.gov

*Counsel for Defendants*

Defendants' Opposition to Plaintiffs' Motion For An Order Requiring Production of Administrative Records(s)
3:25-cv-3698-SI

11