Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................. ii

INTRODUCTION ........................................................................................................................... 1

BACKGROUND .............................................................................................................................. 3

STANDARD OF REVIEW .............................................................................................................. 6

ARGUMENT .................................................................................................................................... 7

     I.     None of Plaintiffs' Claims Should Be Dismissed for Failure to State a
           Claim as a Matter of Law ...................................................................................... 7

           A.     Defendants ignore applicable law to convert the stay order into a
                  dispositive merits decision ........................................................................ 7

           B.     The Supreme Court stay order does not address the majority of
                  Plaintiffs' claims ..................................................................................... 10

           C.     Defendants' alternative arguments likewise lack merit ............................. 13

           D.     Defendants' efforts to reargue the merits of Plaintiffs' claim
                  challenging the EO and Memorandum are unpersuasive ............................ 16

     II.    This Court Has Jurisdiction Over Plaintiffs' Ultra Vires and APA Claims ............. 17

     III.   Plaintiffs Have Adequately Pleaded a Claim against DOGE .................................... 21

CONCLUSION .............................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AFGE v. Trump*,
  139 F.4th 1020 (9th Cir. 2025) ..........................................................................*passim*

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) .......................................................................................7, 8

*AFGE v. OPM*,
  No. 25-1677 (9th Cir July 11, 2025) ...............................................................................8

*AFL-CIO v. Dep't of Lab.*,
  766 F. Supp. 3d 105 (D.D.C. 2025) ...............................................................................22

*AFL-CIO v. Dep't of Lab.*,
  778 F. Supp 3d 56 (D.D.C. 2025) ..................................................................................22

*Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO v. Connally*,
  337 F. Supp. 737 (D.D.C. 1971) ...................................................................................22

*Bennett v. Spear*,
  520 U.S. 154 (1997) .................................................................................................14, 21

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979) ........................................................................................................3

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ......................................................................................................19

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ......................................................................................................20

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
  591 U.S. 1 (2018) ..........................................................................................................20

*Does 1-3 v. Mills*,
  142 S. Ct. 17 (2021) ........................................................................................................9

*Feds for Med. Freedom v. Biden*,
  63 F.4th 366 (5th Cir. 2023) (en banc) ....................................................................18, 20

*Hollingsworth v. Perry*,
  558 U.S. 183 (2010) ........................................................................................................9

*Jaiyeola v. Brundage*,
  754 F. Supp. 3d 910 (N.D. Cal. 2024) ............................................................................6

*La Posta Band of Diegueno Mission Indians of La Posta Rsrv. v. Trump*,
  828 F. App'x 489 (9th Cir. 2020)..................................................................................8

*Labrador v. Poe*,
  144 S. Ct. 921 (2024) ...................................................................................................8

*McMahon v. New York*,
  145 S. Ct. 2643 (2025) ...............................................................................................18

*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012) ....................................................................................................19

*Nat'l Broiler Council, Inc. v. Fed. Lab. Rels. Council*,
  382 F. Supp. 322 (E.D. Va. 1974) ..............................................................................22

*Nat'l Urb. League v. Ross*,
  508 F. Supp. 3d 663 (N.D. Cal. 2020)..........................................................................8

*New York v. Trump*,
  133 F.4th 51 (1st Cir. 2025) .......................................................................................16

*Nken v. Holder*,
  556 U.S. 418 (2009) ......................................................................................................9

*NTEU v. Vought*,
  No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025) .............................14, 19

*OPM v. AFGE*,
  145 S. Ct. 1914 (2025) ...............................................................................................18

*Rowe v. Educ. Credit Mgmt. Corp.*,
  559 F.3d 1028 (9th Cir. 2009) ......................................................................................6

*Sierra Club v. Trump*,
  963 F.3d 874 (9th Cir. 2020) ...............................................................................7, 8, 14

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ....................................................................................................20

*Trump v. AFGE*,
  No. 24A1174, 2025 WL 1873449 (U.S. July 8, 202)......................................*passim*

*Trump v. CASA, Inc.*,
  145 S. Ct. 2540 (2025) ..................................................................................................9

*Trump v. Int'l Refugee Assistance Project*,
  582 U.S. 571 (2017) ......................................................................................................7

*Trump v. Sierra Club*,
  140 S. Ct. 1 (2019) ........................................................................................................8

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   578 U.S. 590 (2016) ..........................................................................................................20

*Vera Inst. of Just. v. U.S. Dep't of Just.*,
   No. 25-CV-1643 (APM), 2025 WL 1865160 (D.D.C. July 7, 2025)........................................9

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
   586 U.S. 9 (2018) .............................................................................................................20

*Widakuswara v. Lake*,
   No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ....................................................19

**Federal Statutes**

5 U.S.C.
   § 301 ....................................................................................................................................3
   § 701 ..................................................................................................................................22
   § 704 ..................................................................................................................................21
   § 706 ....................................................................................................................................5
   § 1103 ..........................................................................................................................17, 19
   § 1105 ..........................................................................................................................17, 19
   § 3101 ..................................................................................................................................3
   § 3502 ..................................................................................................................................3
   § 7512 ................................................................................................................................19

28 U.S.C.
   § 1331 ................................................................................................................................19

**Other Authorities**

Executive Order 14,210,
   90 Fed. Reg. 9669, 2025 WL 486773 (Feb. 11, 2025) .................................................*passim*

**INTRODUCTION**

On April 28, 2025, in response to an "unprecedented attempted restructuring of the federal government and its operations," *AFGE v. Trump*, 139 F.4th 1020, 1028 (9th Cir. 2025), Plaintiffs—a coalition of unions, nonprofits, and local governments—brought seven claims against Defendants President Donald J. Trump and the federal agencies that were implementing his orders. ECF 1; *see also* ECF 100 (Amended Complaint).  Plaintiffs alleged that Defendants were engaged in ultra vires actions in excess of any statutory or constitutional authority, as well as violations of the substantive and procedural provisions of the Administrative Procedure Act ("APA").  ECF 100 ¶¶ 382-431 (Claims I – VII).

Defendants' primary argument is that "all seven claims in the Amended Complaint depend on the assertion that the Workforce Executive Order, the Workforce Memorandum, or both are unlawful," and therefore, in light of the Supreme Court's stay decision, must be dismissed as a "matter of law."  ECF 216 at 2; *see Trump v. AFGE*, No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025).  However, Defendants' argument is premised on misconstructions of both Plaintiffs' claims and the Supreme Court's order.

Section I below explains why all of Plaintiffs' claims survive the Supreme Court's stay order and this motion, including for the reasons previously addressed by this Court.  Plaintiffs' claims are not limited to, and do not depend only on, facial challenges to Executive Order 14,210 ("EO") and the implementing Memorandum from the Office of Management and Budget ("OMB") and Office of Personnel Management ("OPM").  Five of Plaintiffs' seven claims go beyond the facial challenges to the EO and OMB/OPM Memorandum to also challenge the manner in which OMB, OPM, the newly created Department of Government Efficiency ("DOGE"), and the Federal Agency Defendants have implemented the President's directives, including by engaging in arbitrary and capricious and otherwise unlawful actions in violation of the APA.  ECF 100 ¶¶389-431 (Claims II, III, IV, VI, and VII).[1]

---

[1] "Federal Agency Defendants" refers to the agency defendants other than OMB, OPM, and DOGE. ECF 100 ¶65.

Moreover, this Court has already correctly rejected Defendants' argument that the Supreme Court stay order ends this case. ECF 214, 228, 242. The single sentence in the Supreme Court's stay order stating that the Government is "likely to succeed" in arguing that the EO and Memorandum are "lawful" does not explain the legal or factual basis or rationale for that conclusion, and is not a merits decision that requires dismissal of any claims for failure to state a claim pursuant to Rule 12(b)(6). *AFGE*, No. 24A1174, 2025 WL 1873449 at *1; *see* ECF 214 at 4 n.3.

Alternatively, Defendants contend that Plaintiffs fail to state a claim because: 1) ARRPs are not final agency action; 2) Plaintiffs challenge hypothetical future agency action; and 3) to the extent that Plaintiffs have alleged actual and ongoing actions to implement the EO and Memorandum, Plaintiffs have not explained why such actions violate any statutes. ECF 216 at 2. For reasons explained below, these alternative arguments also miss the mark (including because they, again, largely mischaracterize Plaintiffs' claims and allegations and rest on factual assertions that are in dispute) and provide no basis to dismiss the Amended Complaint. In particular, Defendants' view that ARRPs are merely planning documents and that Plaintiffs simply speculate about future action does not warrant dismissal: Plaintiffs adequately alleged that at the time Plaintiffs filed their complaint, Defendants' actions to dismantle federal agencies were in fact approved and being implemented. ECF 100 ¶¶195-283 (detailing actions being taken to downsize and reorganize agencies); *id*. ¶¶420-431 (challenging implementing action as unlawful). Defendants cannot obtain dismissal by contesting facts.

Next, in Section II, Plaintiffs address Defendants' attempt to revisit this Court's subject matter jurisdiction by arguing that if any claims survive the Supreme Court order, they are aimed at "garden variety challenges to the lawfulness of federal agency personnel actions" so are administratively channeled. ECF 216 at 2-3, 20-22. Defendants concede, as they must, that the Supreme Court's order did not invoke channeling, or purport to disturb this Court or the Ninth Circuit's prior conclusions on jurisdiction. ECF 85 at 18-25, ECF 124 at 18-27; *AFGE*, 139 F.4th at 1030-33. This Court's and the Ninth Circuit's prior conclusions with respect to jurisdiction were

correct and apply to all of Plaintiffs' claims because Congress did not remove express federal

jurisdiction from this Court.

Finally, Section III explains why there is no basis to dismiss the claims against Defendant

DOGE, including those claims against DOGE that this Court and the Ninth Circuit previously

addressed.  ECF 85 at 32-34, ECF 124 at 34-36; *AFGE*, 139 F.4th at 1037-38.

## BACKGROUND

The President issued Executive Order 14,210 ("Implementing the President's "Department

of Government Efficiency" Workforce Optimization Initiative") on February 11, 2025.  ECF 100 at

1; *see* 90 Fed. Reg. 9669, 2025 WL 486773 (Feb. 11, 2025).  The EO directed agencies to

"commence[] a critical transformation of the Federal bureaucracy" by engaging in large-scale

reductions-in-force ("RIFs") to downsize the federal civil service and by reorganizing the structure

of federal agencies.  ECF 100 at 1.  It directed agencies, as part of their "large-scale reductions in

force," to strip away many of their functions, including "all agency initiatives, components, or

operations that my Administration suspends or close" and those not designated as essential during

government emergency shutdowns.  ECF 100 at 9.[2]

Soon after, OMB and OPM issued a Memorandum to all federal agencies implementing

that EO.  ECF 100 ¶160.  The OMB/OPM Memorandum required agencies to submit Agency RIF

and Reorganization Plans ("ARRPs") under tight deadlines, *id.* ¶¶163-70, and directed agencies to

achieve a "significant reduction in the number of full-time equivalent" government positions

through their ARRPs.  ECF 100 ¶164.  The Memorandum further required agencies to submit

---

[2] The EO did not identify or rely on any specific statutory authority, including the statutory references to retention preference during reductions-in-force that Defendants contend grants authority to RIF, or agencies' "housekeeping" authority.  ECF 216 at 3-6; *see* 90 Fed. Reg. 9669.  Plaintiffs disagree with Defendants' inaccurate recounting of the supposed statutory basis for agencies' authority to RIF set forth in the "Background" to Defendants' Motion, for reasons previously explained in this case. *See* ECF 101-1 at 35, ECF 120 at 5-6; *see also* Opp. to Supp. Emergency Motion for Stay 15-18, *AFGE v. Trump*, No. 25-3293 (9th Cir. May 27, 2025), ECF 7.1.  In short, no statute provides federal agencies *unfettered* authority to engage in downsizing via RIFs.  *See* 5 U.S.C. §3101 (authorizing agencies to employ "such number of employees" that "Congress may appropriate for from year to year"); 5 U.S.C. §3502 (permitting OPM to create rules for retention preferences, not the authority to RIF itself).  Likewise, the housekeeping authority has *never* permitted substantive changes.  *See* 5 U.S.C. §301; *Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979).

"Phase 1" ARRPs, which "shall focus on initial agency cuts and reductions," to OMB and OPM "for review and approval," within two weeks, by March 13, 2025.  ECF 100 ¶168.  The Memorandum also required agencies to submit "Phase 2" ARRPs, for the purpose of reorganizing what remained of agencies after the initial large-scale cuts, to OMB and OPM "for review and approval," by April 14, 2025.  *Id.* ¶169.

OMB, OPM, and DOGE each took specific actions to direct federal agencies in the implementation of this EO.  *Id.* ¶¶16, 22, 23.  OMB and OPM required the submission of ARRPs for approval "according to the parameters and requirements" that OMB and OPM imposed on the agencies.  *Id.* at ¶13.  Plaintiffs specifically alleged that OMB and OPM were directing agencies with respect to the implementation of the EO via reorganization and workforce reduction, including by rejecting cuts that did not go deep enough.  *E.g.*, *id.* ¶¶197, 203, 248, 251, 275, 282, 404, 411.  With respect to DOGE (the Administration's own term for this new "Department"), Plaintiffs alleged that: "DOGE, for its part, has been dictating to each agency the required cuts to staffing and programs, in the name of 'fraud and waste.'"  *Id*. ¶¶13, 15-16, 23, 175, 282, 404, 411.

Defendants shielded their reorganization and downsizing decisions from the public, federal employees, their labor representatives, and even Congress.  *Id.* ¶18.  Following the deadlines for submission of ARRPs to OMB and OPM, many agencies began implementing these directives from the President, OMB, OPM, and DOGE by reorganizing and issuing RIF notices to their employees.  *Id.* ¶¶19-20, 22-23, 175, 196-227 (ongoing implementation via reorganization and RIFs), 228-78 (imminent implementation via reorganization and RIFs), 279 (alleging that the above actions are being implemented).  In particular, agencies acted to meet "targets" that the agencies themselves did not create for the number and extent of cuts.  *Id.* ¶¶175-76, 248, 251, 282.

Plaintiffs filed suit on April 28, 2025 and the operative Amended Complaint on May 14, 2025.  ECF 1, 100.  Based on the factual allegations described above, Plaintiffs pled seven claims:

(1) that the EO was ultra vires, exceeding any statutory or constitutional authority of the President, and intruded on Congress's Article I authority;

(2) that the actions of OMB, OPM, and DOGE to implement the EO, including the OMB/OPM Memorandum and also other directives and requirements imposed on agencies, were ultra vires;

(3) that those actions of OMB, OPM, and DOGE were not in accordance with law and were in excess of statutory authority, in violation of the APA, 5 U.S.C. §706(2)(A), (C);

(4) that those actions of OMB, OPM, and DOGE were arbitrary and capricious, in violation of the APA, *id.* §706(2)(A);

(5) that OMB, OPM, and DOGE's actions (including the OMB/OPM Memorandum and any "directives ordering agencies to make staffing and spending cuts") violated the procedural requirements of the APA, *id.* §706(2)(D);

(6) that the actions of the Federal Agency Defendants were not in accordance with law, in violation of the APA, *id.* §706(2)(A), (C); and

(7) that the actions of the Federal Agency Defendants were arbitrary and capricious, in violation of the APA, *id.* §706(2)(A).

The scope of the complaint is commensurate with the breadth of this administration's government-wide scheme to restructure and downsize federal agencies.

This Court issued a temporary restraining order on May 9, 2025 and a preliminary injunction on May 22, 2025. ECF 85, 124. In issuing the preliminary injunction, the Court concluded that Plaintiffs were likely to succeed on the ultra vires claims (Claims I and II), the APA contrary-to-law claim against OMB, OPM, and DOGE (Claim III), and the APA procedural claim against OMB, OPM, and DOGE (Claim V). ECF 124 at 41, 44. The Court reserved its ruling on the merits of the APA arbitrary-and-capricious claim against OMB, OPM, and DOGE (Claim IV) and the APA claims against the Federal Agency Defendants (Claims VI and VII). ECF 124 at 44.

Defendants appealed the preliminary injunction and sought a stay, which the Ninth Circuit denied in a published opinion. *AFGE*, 139 F.4th at 1040. First, the Ninth Circuit rejected Defendants' arguments that federal courts lacked jurisdiction over Plaintiffs' ultra vires and APA claims. *Id.* at 1030-33. The Ninth Circuit then held that Plaintiffs were likely to succeed on claims that the President exceeded any statutory or constitutional authority. *Id.* at 1033-37. The Court

then turned to "the actions taken by OMB, OPM, and DOGE" and concluded both that these agencies lacked statutory authority to take the actions the record revealed, and that both the OMB/OPM Memorandum and any OMB/OPM approvals of ARRPs were final action for purposes of the APA. *Id*. at 1037-39.

Defendants sought a stay of the preliminary injunction from the Supreme Court, which granted the application on July 8, 2025. *AFGE*, No. 24A1174, 2025 WL 1873449. The Supreme Court's order stated that "[b]ecause the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful—and because the other factors bearing on whether to grant a stay are satisfied—we grant the application." *Id.* at *1. The Court made clear that its conclusion about likely success on the merits was limited to Plaintiffs' facial challenge to the EO and Memorandum, and that it was not reaching other issues: "We express no view on the legality of any Agency RIF and Reorganization Plan produced or approved pursuant to the Executive Order and Memorandum." *Id.* As the Supreme Court explained, the legality of ARRPs was "not before th[e] Court" because "[t]he District Court enjoined further implementation or approval of the plans based on its view about the illegality of the Executive Order and Memorandum, not on any assessment of the plans themselves." *Id.* Thus, the Court expressly left for the District Court to decide in the first instance the lawfulness of agencies' ARRPs. *Id.* at *1 (Sotomayor, J., concurring) (confirming that the Supreme Court had "no occasion to consider whether [the ARRPs] can and will be carried out consistent with the constraints of law" and "le[ft] the District Court free to consider those questions in the first instance").

## STANDARD OF REVIEW

Rule 12(b)(6) allows for dismissal for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009) (quotation omitted). In a "facial" attack on jurisdiction pursuant to Rule 12(b)(1), the Court must also take the allegations in the complaint as true. *Jaiyeola v. Brundage*, 754 F. Supp. 3d 910, 912 (N.D. Cal. 2024).

**ARGUMENT**

**I.     None of Plaintiffs' Claims Should Be Dismissed for Failure to State a Claim as a Matter of Law**

Defendants' motion to dismiss all of Plaintiffs' claims rests on at least two erroneous premises: first, that the Supreme Court issued a merits decision; and second, that all of Plaintiffs' claims turn on the outcome of that merits decision. Because both premises are wrong, none of Plaintiffs' claims are foreclosed by the Supreme Court's stay order. For that reason, and because Defendants' attempt to reargue the issues is unpersuasive, Defendants' Rule 12(b)(6) motion should be denied in its entirety.

**A.     Defendants ignore applicable law to convert the stay order into a dispositive merits decision**

Defendants argue that the Supreme Court stay order opining that the EO and Memorandum are "likely" lawful "precludes" this Court from relying on its earlier determination with respect to the merits of certain of Plaintiffs' claims and is "dispositive." ECF 216 at 8-15. That argument ignores governing law regarding the nature, purpose, and effect of decisions on stay motions.

A decision on a motion to stay an injunction pending appeal is not a dispositive ruling on the merits of plaintiffs' claims. As the Ninth Circuit has instructed, "[s]uch a predictive analysis should not, and does not, forever decide the merits of the parties' claims." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 661 (9th Cir. 2021); *Sierra Club v. Trump*, 963 F.3d 874, 887 (9th Cir. 2020) (concluding that Sierra Club had available causes of actions despite Supreme Court emergency stay order suggesting otherwise), *vac'd and remanded on other grounds sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021); *cf. Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) ("The purpose of such interim equitable relief is not to conclusively determine the rights of the parties [citation omitted] but to balance the equities as the litigation moves forward."). Thus, a stay decision determines only the "interim status of the law" during the "time it takes for the litigation process to run its course and reach a final merits ruling in the district court, court of

appeals, and potentially th[e Supreme] Court." *Labrador v. Poe*, 144 S. Ct. 921, 928-29 (2024) (Kavanaugh, J., concurring).[3]

In *Sierra Club*, the Supreme Court granted a stay pending appeal from partial summary judgment, and in so doing opined that the Plaintiffs lacked a cause of action. *Trump v. Sierra Club*, 140 S. Ct. 1 (2019) ("[T]he Government has made a sufficient showing at this stage that the plaintiffs have no cause of action to obtain review of the Acting Secretary's compliance with Section 8005 [of Defense Department Appropriations Act].")  The Ninth Circuit, in resolving the merits of that appeal, "heed[ed] the words of the [Supreme] Court" but after "carefully analyz[ing] Sierra Club's arguments," concluded that (contrary to the Supreme Court's initial inclination) the "Sierra Club has both a constitutional and an *ultra vires* cause of action." *Sierra Club*, 963 F.3d at 887.  And in *East Bay Sanctuary*, the Ninth Circuit explained why a decision resolving a request for a stay pending appeal is not a dispositive merits decision (because the question on a stay motion is "is an additional step removed from the underlying merits of the district court's preliminary injunction").  993 F.3d at 661.  Thus, a stay decision "should not and does not" resolve the merits. *Id*.  The Court explained further:  "This sort of pre-adjudication adjudication would defeat the purpose of a stay, which is to give the reviewing court the time to act responsibly, rather than doling out justice on the fly." *Id*. (quotations omitted).[4]  Defendants discuss neither of these Ninth Circuit decisions (notwithstanding Defendant OPM's own recent reliance on *East Bay Sanctuary* to argue that a stay decision is not a binding merits decision (*supra* n.3)).  ECF 216 at 12-13.

---

[3] Indeed, Defendant OPM recently argued as much to the Ninth Circuit, relying on *East Bay Sanctuary*, 993 F.3d at 660-62, to argue that "[s]tay orders issued at that 'very preliminary state of the proceedings' reflect different considerations from a merits panel's consideration of an appeal from a preliminary injunction and are therefore not binding on a merits panel in the same case." Reply Br. for Appellants 16, *AFGE v. OPM*, No. 25-1677 (9th Cir July 11, 2025), Dkt. 71-1.

[4] *See also La Posta Band of Diegueno Mission Indians of La Posta Rsrv. v. Trump*, 828 F. App'x 489, 490 (9th Cir. 2020) ("assuming for now (before the Supreme Court definitively answers the question) that La Posta has a cause of action") (following Supreme Court grant of stay pending appeal indicating lack of cause of action); *Nat'l Urb. League v. Ross*, 508 F. Supp. 3d 663, 683 (N.D. Cal. 2020) (denying motion to dismiss following unreasoned Supreme Court stay of injunction pending appeal).

The Supreme Court has also recently reaffirmed that a stay decision is not intended to resolve the underlying merits of the case, explaining that the ultimate merits question in a case is different from application of the stay standard:

> That is not how the *Nken* [*v. Holder*, 556 U.S. 418 (2009)] factors work. See 556 U.S. at 434, 129 S.Ct. 1749. For instance, when we are asked to stay an execution on the grounds of a serious legal question, we ask whether the capital defendant is likely to prevail on the merits of the issue before us, *not whether he is likely to prevail on the merits of the underlying suit*. See, *e.g.*, *Gutierrez v. Saenz*, 603 U. S. ___ (2024) (granting application for a stay based on a question implicating the prisoner's standing to attempt to access DNA testing. The same is true when an applicant seeks a stay in other contexts. See, *e.g.*, *OPM v. AFGE*, 604 U. S. ___ (2025) (granting application for stay because the organizational plaintiffs' allegations were "insufficient to support [their] standing").

*Trump v. CASA, Inc*., 145 S. Ct. 2540, 2562 (2025) (emphasis added). The Court has explained that issuing a stay requires assessing whether there is a "reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari," and "a fair prospect that a majority of the Court will vote to reverse the judgment below." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010); *see also Does 1-3 v. Mills*, 142 S. Ct. 17, 18 (2021) (Barrett, J., concurring in denial of stay and cautioning: "Were the standard otherwise, applicants could use the emergency docket to force the Court to give a merits preview in cases that it would be unlikely to take—and to do so on a short fuse without benefit of full briefing and oral argument."). As against the long-standing law that explains why stay decisions have never been understood to resolve the merits of cases (as opposed to actions to protect the courts' ability to address the merits), Defendants offer only a law review article. ECF 216 at 12.[5]

---

[5] Defendants also cite the out-of-circuit *Vera Inst. of Just. v. U.S. Dep't of Just.*, No. 25-CV-1643 (APM), 2025 WL 1865160 (D.D.C. July 7, 2025), a recent decision from the District of Columbia discussing a Supreme Court stay decision, for the proposition that courts "must listen" to a Supreme Court stay order. ECF 216 at 12. However, that decision did not conclude that courts are *bound* to reach the same conclusion as the Supreme Court's initial assessment; indeed, it recognized that "[t]he Supreme Court's sparse reasoning in [the stay decision at issue] has sown confusion in this jurisdiction," and noted that a recent en banc grant by the D.C. Circuit was *contrary to the Supreme Court's conclusion. Id*. at *9. Further: "[n]or have judges in this District been uniform in their application of [the stay order at issue]." *Id*. And: the stay decision "does not displace other Supreme Court and D.C. Circuit precedent." *Id*. at *11.

Thus, this Court has correctly held that that the stay decision "do[es] not foreclose claims or otherwise halt proceedings on the merits on any claim in this case."  ECF 214 at 4; *see also* ECF 214 at 4 n.3 (recognizing that in light of the lack of explanation, "this Court cannot say whether the Supreme Court determined the claims underlying the preliminary injunction fail as a matter of law or if the evidentiary record has not yet sufficiently developed to support the claims.").  Defendants cannot convert this stay order into a dispositive merits determination that requires dismissal of any of Plaintiffs' claims for failure to state a claim.

### B.    The Supreme Court stay order does not address the majority of Plaintiffs' claims

Even if the Supreme Court order did have binding effect, it could provide no basis to dismiss Plaintiffs' claims that were neither the basis for this Court's injunction nor before the Supreme Court—and the Supreme Court's own order made this explicit.  Defendants are mistaken in arguing that Plaintiffs' remaining claims depend on the facial legality of the EO for Memorandum, as this Court has already concluded.

First, this Court issued a preliminary injunction based on Plaintiffs' likelihood of success on the ultra vires claims (Claims I and II) and exceeds-authority and procedural APA claims against OMB, OPM, and DOGE (Claims III and V).  ECF 124 at 41, 44.  The preliminary injunction decision expressly reserved this Court's consideration of the APA arbitrary-and-capricious claim against OMB, OPM, and DOGE (Claim IV) and the APA claims against Federal Agency Defendants (Claims VI and VII), because the Court required a more developed factual record to evaluate those claims, and Defendants' secrecy over relevant documents clouded the full factual picture.  ECF 124 at 44.  Thus, Claims IV, VI and VII were not before the Ninth Circuit or the Supreme Court, and could not have been resolved by them.  Hence, this Court correctly concluded that the stay decision "did not have any bearing on" the claims that this Court did not address in its preliminary injunction decision.  ECF 214 at 4.

Second, the Supreme Court was explicit that its stay decision was not addressing claims regarding the manner of implementation of the EO and Memorandum: it "express[ed] no view on the legality of any Agency RIF and Reorganization Plan produced or approved pursuant to the

Executive Order and Memorandum." *AFGE*, 2025 WL 1873449, at *1.  Thus, the Supreme Court left the District Court to decide the lawfulness of the ARRPs "in the first instance."  *Id.* at *1 (Sotomayor, J., concurring).

Third, this Court previously correctly rejected Defendant's argument that *all* of Plaintiffs' claims turn on the "legality" of the EO and Memorandum considered by the Supreme Court.  ECF 214, 228, 242.  Nothing in Defendants' Motion gives this Court reason to reconsider that conclusion, for the following reasons.

a.    No court has addressed the likelihood of success on Plaintiffs' arbitrary-and-capricious APA challenge to the OMB/OPM Memorandum.  What both this Court and the Ninth Circuit, however, have concluded is that the Memorandum is final agency action that is subject to APA review.  ECF 124 at 42-43; *AFGE*, 139 F.4th at 1038-39; *see infra* at 14.  That claim plainly survives dismissal.

b.    Plaintiffs' ultra vires and APA claims against OMB, OPM, and DOGE are also not limited to challenging the OMB/OPM Memorandum.  Plaintiffs challenge all actions and orders of OMB, OPM, and DOGE to implement the Executive Order, "including but not limited to" the Memorandum, "as well as any direction, approval, or requirement imposed with respect to any ARRPs that result from that Executive Order."  ECF 100 ¶396; *see also id.* ¶¶404, 411, 416 (similar, re: Claims III, IV, and V, asserting APA claims against OMB, OPM, and DOGE).  That includes "any decision 'approving' an ARRP, and DOGE's directives ordering agencies to make staffing and spending cuts."  *Id.* ¶405; *see also id.* ¶¶395, 403, 410, 416-18.  Those claims do more than "simply characterize the Memorandum itself," ECF 216 at 17, and they are adequately pleaded, *e.g.*, ECF 100 ¶¶13-15, 23, 197, 248, 251, 282.  Thus, this Court has already correctly concluded that the Supreme Court's stay order does not "address the legality or scope of authority" for the other OMB, OPM, and DOGE actions that Plaintiffs challenge.  ECF 228 at 4 ("The Court agrees with plaintiffs that the Supreme Court's stay order does not 'address the legality or scope of

authority for OMB, OPM, and DOGE's decisions and directives with respect to implementing

workforce reduction or reorganization at any agency.'").[6]

        c.      Plaintiffs' claims against the Federal Agency Defendants challenging the lawfulness

of implementation actions, including through RIFs and other reorganization steps, also do not

depend only on the lawfulness of the Executive Order or the Memorandum *per se*, but rather on

the manner in which they have been and are being implemented. ECF 100 ¶¶422, 429, 431.

Plaintiffs allege that the Federal Agency Defendants' actions implementing these orders are

contrary to law and arbitrary and capricious because, among other reasons, they "disregard their

authorizing statutes, … engage in large-scale RIFs that are necessarily contrary to agency's ability

to maintain required function and authorizing statute, … RIF according to Funding Lapse Plan

Staffing Levels, which necessarily and by definition cannot staff agencies at the level necessary to

adequately perform, … abandon reasoned decision-making considering all relevant factors, …

[and] act under unrealistic timeframes that necessarily will result in plans that are not supported by

rational reasoning or agencies' considered judgment." ECF 100 ¶¶424, 431; *see also* ECF 100

¶¶20, 194-227 (characterizing implementing actions, including RIFs, that agencies across the

government had already begun to take as of the date of the complaint).

        In particular, Defendants disregard Plaintiffs' allegations that agencies *cannot* implement

these orders in the timeframes that were required and that they have not implemented them in a

manner that "complies with all of the federal agency's statutory and regulatory requirements."

ECF 100 ¶172, 431. Defendants also disregard all the facts pled by Plaintiffs in support of these

claims describing the actions being taken by the agencies. *Id.* at ¶¶196-227 (ongoing

implementation via reorganization and RIFs), 228-278 (imminent implementation via

---

[6] Defendants' motion does not acknowledge that Plaintiffs' claims against OMB, OPM, or DOGE challenge actions other than those based on the Memorandum. ECF 216 at 17 ("All of these claims simply characterize the Memorandum."). The assertion that "[t]he Amended Complaint does not identify, let alone adequately plead, any assertedly unlawful action by OPM and OMB other than the issuance and implementation of the Workforce Memorandum," *id.*, plainly mischaracterizes Plaintiffs' allegations, as discussed *supra* at 4-5, 10. To the extent that Defendants argue that the claims must be dismissed because Plaintiffs have not identified any act by OMB, OPM, or DOGE that is "logically" distinct from the challenge to the Memorandum, that is incorrect: Plaintiffs challenge the directives these agencies have given other agencies. *Id.*

reorganization and RIFs), 279 (alleging that the above actions are being implemented). Plaintiffs do not need to *argue* in a complaint why these facts establish arbitrary and capricious action, and have sufficiently pled that these actions are being taken and decisions are being made without taking into account the relevant factors including agency need and function (and Defendants have made *no argument* that these facts regarding agency action are insufficient to support such a claim). The manner in which the Federal Agency Defendants are implementing the EO through their ARRPs is directly at issue in this case (the very issue the Supreme Court was clear it was not addressing).

Moreover, Plaintiffs' claims against the Federal Agency Defendants stand whether or not they are taking actions consistent with the content of the EO or OMB/OPM Memorandum. Defendants appear to interpret the Supreme Court's statement that the EO and Memorandum are likely "lawful" to mean that any action taken pursuant to the directions in those documents *must* be lawful, but the Supreme Court was quite clear that it was *not* saying that: "We express no view on the legality of any Agency RIF and Reorganization Plan *produced or approved pursuant to* the Executive Order and Memorandum." *AFGE*, No. 24A1174, 2025 WL 1873449 at *1 (emphasis added). While the full basis for that language in the Supreme Court's order is not clear, it does not purport to require Plaintiffs to identify specific actions that are somehow in addition to, defiant of, or contrary to the instructions they are being given in order to prevail on the merits (or, certainly, to survive a motion to dismiss). Rather, the Supreme Court expressly left open the prospect that action taken *pursuant to* these orders may be unlawful, as made explicit by the concurrence of Justice Sotomayor. *Id.* at *1 (Sotomayor, J., concurring) (confirming that the Supreme Court had "no occasion to consider whether [the ARRPs] *can and will* be carried out consistent with the constraints of law" and "le[ft] the District Court free to consider those questions in the first instance" (emphasis added)).

## C. Defendants' alternative arguments likewise lack merit

While Defendants argue that none of Plaintiffs' claims survive the Supreme Court order, they argue in the alternative that if Plaintiffs can challenge agency action, those claims would fail

for three reasons.  These arguments—the purported lack of final agency action, ripeness, and scope

of the challenge—also lack merit.  ECF 216 at 2, 16-19.

 *Final agency action.*  Defendants' final agency action argument is largely based on a

further misconstruction of Plaintiffs' claims, as well as factual representations outside the

complaint regarding the status of ARRP approvals.  ECF 216 at 19-20.  Plaintiffs challenge the

OMB and OPM approvals of ARRPs and the actions of the Federal Agency Defendants in

implementing those ARRPs, both of which are final agency action for purposes of the APA.

Plaintiffs have pled that OMB, OPM, and DOGE are making decisions with respect to the content

and timing of agencies' implementation of the President's orders, and those facts support the legal

conclusion that those actions qualify as final.  ECF 100 at ¶¶13, 15-16, 22-23, 175, 197, 203, 248,

251, 275, 282, 404, 411; *AFGE*, 139 F.4th at 1038-39; ECF 124 at 42-43; ECF 213 at 5 & n.3.

 The Ninth Circuit and this Court have already correctly concluded that the Memorandum

and approvals of ARRPs are final agency action for purposes of the APA, which Defendants

simply ignore, and give no valid basis to question.  ECF 124 at 42-43; *AFGE*, 139 F.4th at 1038-

39.[7]  Agencies' implementations of approved ARRPs are also final because they mark the

consummation of the agencies' decisionmaking processes and also have legal consequences.

*Bennett v. Spear*, 520 U.S. 154, 178 (1997).  To the extent Defendants may seek in reply to rely on

the recent divided panel decision by the D.C. Circuit in *NTEU v. Vought*, a case challenging the

shutdown of the Consumer Financial Protection Bureau, the majority decision appears to endorse a

view that exempts agency action from review under the APA if it is done behind closed doors,

elevating form over substance and misreading that statute for all the reasons explained by Judge

Pillard's well-reasoned dissent, which provides the more persuasive analysis—analysis that is more

consistent with this Court's and the Ninth Circuit's analysis, and applicable Supreme Court

---

[7] The Ninth Circuit's published decision is, of course, also a decision resolving a stay motion, and
with respect to the merits of Plaintiffs' claims, it also assessed the likelihood of success for
purposes of the stay standard, not as a final resolution.  This Court may nonetheless consider the
Ninth Circuit's reasoning in denying the stay, particularly on issues the Supreme Court did not
address, along with its own prior reasoning in granting the preliminary injunction, as persuasive in
determining whether Plaintiffs have stated a claim (just as the Ninth Circuit conducted its own
analysis on appeal following the stay pending that appeal in *Sierra Club*, 963 F.3d at 887).

precedent.  No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025), at *21-46 (Pillard, J., dissenting).  As Judge Pillard explained, final agency actions are reviewable under the APA even when an agency does not make any formal, published announcement of its policy decisions.  *Id.* at *30.  Whether an agency has taken a final reviewable action is a factual question (and Plaintiffs have certainly pled that they have here).  *Id.* at *32-33.  Where an agency has taken action within the APA's "expansive statutory definition," an agency may not avoid judicial review by "conceal[ing] its reasons for acting" and "obfuscat[ing] what it is doing while it acts."  *Id.* at *39.

*Ripeness.*  Defendants further argue that Plaintiffs cannot state claims now, but must "await specific RIFs and reorganizations," ECF 216 at 1, 20, and that Plaintiffs "simply speculate[] about future agency actions," *id.* at 2.  Defendants cannot rely on factual assertions contrary to Plaintiffs' allegations in support of a motion to dismiss.  Plaintiffs have pled that Defendants had already taken action to implement the EO, Memorandum and ARRPs at the time the complaint was filed. ECF 100 ¶¶ 20, 194-227.  This Court has already "recognize[d] that plaintiffs have specifically identified specific actions taken by some agencies to implement reductions in force or reorganizations."  ECF 242 at 3; *see also* ECF 124 at 42-43; *AFGE*, 139 F.4th at 1038-39 (OPM and OMB have approved ARRPs and approvals are final agency action).

On the face of Plaintiffs' allegations, OMB and OPM approvals of ARRPs and subsequent agency actions implementing ARRPs are not, as Defendants claim, vague future possibilities. Rather, they are final actions that agencies have taken, or are taking, with real-world consequences for Plaintiffs and their members.  Defendants make no argument that actions that had been or were being implemented at the time of the complaint (and thus, for which a final approval decision had been made) are not "final" for purposes of the APA.  ECF 216 at 19-20.

*Scope of claims.*  Finally, although Defendants complain about the "sprawling" nature of this lawsuit, ECF 216 at 20, the scope of this case reflects the unprecedented scope of this administration's actions to dismantle, reduce, and reorganize the federal government.  No administration has ever tried to reorganize the government at this scale without congressional authorization to do so, or in such a compressed timeframe, including through an Executive Order addressed to all federal agencies (which number in the hundreds).  That Defendants have taken

many actions to implement this scheme does not insulate Defendants from judicial review.  *See New York v. Trump*, 133 F.4th 51, 68 (1st Cir. 2025) ("[W]e are not aware of any supporting authority for the proposition that the APA bars a plaintiff from challenging a number of discrete final agency actions all at once.").  It only heightens the need for careful judicial review upon further factual development.

> **D.**    **Defendants' efforts to reargue the merits of Plaintiffs' claim challenging the EO and Memorandum are unpersuasive**

Finally, Defendants suggest this Court should revisit its earlier conclusions with respect to Plaintiffs' Claims I and II challenging the EO and Memorandum as ultra vires, contrary to authority and procedurally improper, because they are not "sound."  ECF 216 at 9.  This Court need not accept this invitation to revisit these conclusions for purposes of this motion to dismiss, where there has been no intervening merits determination on appeal.  The rationale previously provided by this Court (and the Ninth Circuit) certainly establishes that Plaintiffs have at least stated a claim, even if the Supreme Court has questioned whether Plaintiffs will ultimately prevail.  For all the reasons previously argued by Plaintiffs to this Court, and the rationale previously provided by this Court, Plaintiffs have, at the very least, stated a cognizable legal theory challenging the EO and the Memorandum (in Claims I and II) that survives dismissal.  ECF 37-1 at 29-36; ECF 70 at 3-7; ECF 101-1 at 11-16; ECF 120 at 1-11; ECF 124, 85; *AFGE*, 139 F.4th at 1033-39.

Were this Court to engage with Defendants' efforts to reargue the merits of Plaintiffs' legal challenges to the EO and Memorandum, none persuade any more now than they did when Defendants made these arguments at the preliminary injunctive stage:

- Defendants hang their hats on agencies' authority to conduct RIFs.  ECF 216 at 9.  But the fact that agencies have authority to conduct RIFs in certain circumstances does not mean that such authority conclusively, as a matter of law, permits the President, OMB or OPM to order *these* RIFS, to be conducted in the manner and for the purposes directed here.  *See* ECF 101-1 at 11-16; ECF 124 at 27-41.

- Defendants also invoke agencies' house-keeping authority, which has *never* been construed to be substantive.  *See* ECF 120 at 5-7; *supra* n.2.

- Neither RIF nor housekeeping statutes authorize the President to order a government-wide reorganization when Congress has withheld that power from the President (after specifically conferring such authority on the President at certain previous times in history).[8]  *See* ECF 120 at 5-7; ECF 124 at 28-34.

- Nor do OMB, OPM, or DOGE have the statutory authority themselves to impose directives on agencies to make deep cuts when Congress gave them no such authority over agencies.[9]  *See* ECF 120 at 3-5; ECF 124 at 34-36.

- None of these authorities permits OMB and OPM to violate the substantive or procedural requirements imposed by the APA, which plainly apply to the Memorandum.  *See* 5 U.S.C. §§1103, 1105; ECF 101-1 at 16; ECF 124 at 44.

For the above reasons, this Court has already recognized that "plaintiffs have cogently laid out why their *ultra vires* claims, and not only their Administrative Procedure Act claims, remain live following the Supreme Court's stay order."  ECF 228 at 4.  The Court should deny the motion to dismiss and allow Plaintiffs' claims to be decided on the merits, on a full factual record.

## II.    This Court Has Jurisdiction Over Plaintiffs' Ultra Vires and APA Claims

This Court and the Ninth Circuit have previously resolved this Court's subject matter jurisdiction and rejected Defendants' arguments that Congress implicitly precluded judicial review of Plaintiffs' ultra vires and APA claims.  ECF 85 at 18-25; *AFGE*, 139 F.4th at 1033 ("[T]he district court below correctly determined that Plaintiffs' claims were properly raised in that court.").

---

[8] Defendants continue to point to President Clinton's Executive Order 12,839, which called for a gradual decrease in the civilian workforce numbers over three years, without acknowledging the language that "[t]he positions shall be vacated through attrition or early out programs established at the discretion of the department and agency heads" rather than through RIFs.  ECF 216 at 4, 9. Defendants' continued overreaching to manufacture a historical analogue only underscores the truly unprecedented nature of this administration's reorganization scheme.

[9] Neither OPM's authority to prescribe general RIF regulations nor OMB's authority to establish "general management policies," ECF 216 at 14-15, authorize them to require agencies to cut their workforce and functions.

Defendants make no argument that the Supreme Court's order addressed the issue of jurisdiction, because it plainly did not (notwithstanding Defendants' arguments to that Court on this issue). ECF 216 at 20-22; *AFGE*, No. 24A1174, 2025 WL 1873449 at *1.[10]  Instead, Defendants reduce their characterization of Plaintiffs' remaining claims to a challenge only to "specific RIFs," and then claim that those are personnel actions channeled to administrative agencies.  ECF 216 at 20-22.  Defendants' attempt to revisit jurisdiction misses the mark on many levels.

First, as discussed *supra*, even beyond the legality of the EO and the Memorandum, Plaintiffs bring ultra vires and APA claims that address actions that go far beyond any particular decision regarding how to apply a RIF to any individual federal employee.  Plaintiffs challenge the legality of the OMB and OPM approvals of ARRPs; OMB, OPM, and DOGE directives to agencies to cut functions, programs and people; and Federal Agency Defendants' actions taken to implement those directives.  Defendants do not argue that this Court lacks jurisdiction with respect to Plaintiffs' claims aimed at these actions because they limit their argument to RIFs. Even if they did, moreover, as Plaintiffs have previously established (ECF 70 at 9-12; ECF 101-1 at 20) that none of these actions is a covered personnel action for purposes of the Civil Service Reform Act ("CSRA"), even if they could lead to personnel actions that impact individual employees, and this Court and the Ninth Circuit's analysis directly applies.  ECF 85 at 18-25; *AFGE*, 139 F.4th at 1030-33; *cf. Feds for Med. Freedom v. Biden*, 63 F.4th 366, 375 (5th Cir. 2023) (en banc), *judgment vac'd as moot*, 144 S. Ct. 480 (2023) (holding that challenge by employee organizations, including union, to government-wide federal employee vaccination mandate was not channeled to MSPB or FLRA).

Second, the prior jurisdictional analysis by the Ninth Circuit and this Court applies directly to all of Plaintiffs' claims against OMB, OPM, and DOGE, and Defendants give this Court no reason to reach a different result now.  There is no discernable difference, for purposes of this

---

[10] None of the Supreme Court's stay decisions this term in cases impacting federal employees have accepted the Government's repeated invitation to address administrative channeling, including *OPM v. AFGE*, 145 S. Ct. 1914 (2025) (granting stay on other grounds) and *McMahon v. New York*, 145 S. Ct. 2643 (2025) (granting stay with no analysis).

jurisdictional analysis, between the substantive exceeds authority and procedural APA claims addressed by this Court for purposes of the preliminary injunction, and the arbitrary and capricious APA claim against those agencies on which the Court reserved decision.  Again, this Court and the Ninth Circuit's analysis defeats any argument this Court lacks jurisdiction.  ECF 85 at 18-25; *AFGE*, 139 F.4th at 1030-33.

Third, the rationale of the Ninth Circuit and this Court's prior jurisdictional rulings reach Plaintiffs' APA claims against Federal Agency Defendants as well.  ECF 85 at 18-25; *AFGE*, 139 F.4th at 1030-33.  In particular, the same Congress that referred to the APA no less than three times in the CSRA (*see* 5 U.S.C. §1103; §1105; §7134) did not *implicitly* remove federal court jurisdiction over APA claims involving agency actions simply because they impact federal employees.  Far more is needed to remove express federal jurisdiction.  *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) ("[J]urisdiction conferred by 28 U.S.C. §1331 should hold firm against 'mere implication flowing from subsequent legislation.'"); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (describing "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them").  And, as this Court previously concluded, even with respect to an agency's decision to implement a RIF, the text of the CSRA indicates that Congress did *not* intend for the administrative agencies to provide exclusive review (because Congress did not provide for administrative review of separations resulting from RIFs at all, *see* 5 U.S.C. §7512(B)).  ECF 124 at 25.[11]

---

[11] To the extent Defendants seek to rely on *Vought*, No. 25-5091, 2025 WL 2371608, at *5-6, that recent decision's channeling analysis suffers from various errors, including those previously identified by Judge Pillard in another agency dismantling case before the same panel.  *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *7-8 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting); (cited in ECF 85 at 23-24).  Those errors include at least: i) conflating agency decisions regarding programs and functions that are *not* covered personnel actions under the CSRA with the application of those decisions to individual employees; ii) ignoring the command of judicial review in the APA and Supreme Court precedent regarding the high hurdle of removing APA judicial review and iii) ignoring the text of the CSRA, which indicates that Congress did not intend administrative agencies to review agency-level decisions that result in terminations for programmatic reasons as compared to separations for individual performance and conduct (5 U.S.C. §7512 (excluding from MSPB jurisdiction separations resulting from agency decisions to RIF and agency national security determinations)).

With respect to the federal employee union Plaintiffs, the analysis of the factors under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), with respect to the claims against Federal Agency Defendants is conclusive:

- First, the Court's conclusion that APA claims are "wholly collateral" to the statutory review scheme applies equally to the APA claims against Federal Agency Defendants. *AFGE*, 139 F.4th at 1031 (concluding "[n]either body [the MSPB or FLRA] has the authority to address the type of constitutional and statutory claims raised by Plaintiffs."). Plaintiffs' APA claims are not, as the Ninth Circuit recognized, the type of claim pursuant to the CSRA that Congress designed those agencies to adjudicate. *Id.* The agency decisions at issue here are not individual personnel actions covered by the CSRA, and are therefore collateral. *See Feds for Med. Freedom*, 63 F.4th at 370-373.

- Second, the Ninth Circuit's conclusion that the MSPB and FLRA lack expertise with respect to APA claims applies equally to APA claims against the Federal Agency Defendants. *Id.*

- Third, the Ninth Circuit's analysis of the lack of meaningful judicial review also applies equally to these APA claims. As that Court explained: "the APA's presumption of judicial review is not overcome merely because Defendants can point to a theoretical alternative path for an aggrieved party to seek review." *Id.* at 1032; *see also Dep't of Com. v. New York*, 588 U.S. 752, 771-72 (2019); *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 17 (quoting *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018)); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 601-02 (2016). Likewise, the Ninth Circuit's concern with the dramatic nature of the actions challenged in this case, and resulting practical impact on employees' ability to ever seek review, applies equally to agency implementation. 139 F.4th at 1032 ("[W]e agree with the district court that such a path to the federal courts would be meaningless where, as here, entire offices and functions are being eliminated from federal agencies.").

Finally, with respect to the non-union organizations and local government Plaintiffs and all of their claims, Defendants make no new argument that this Court and the Ninth Circuit have not

directly rejected:  those Plaintiffs cannot bring any action before the MSPB or the FLRA, and there is no valid basis to conclude the Congress intended to silently *preclude* federal jurisdiction over their ultra vires and APA claims.  ECF 85 at 25; *AFGE*, 139 F.4th at 1032-33.

Defendants' arguments regarding jurisdiction boil down to the incorrect assertion that this Court's and the Ninth Circuit's previous rationale applied *only* to challenges to the EO and Memorandum.  ECF 216 at 22 (arguing "that reasoning no longer applies because Plaintiffs cannot anchor their claims in a challenge to the Executive Order or Memorandum").  For all the reasons just explained, this is incorrect, and the reasoning fully applies across all of Plaintiffs' claims. Defendants have given this Court no reason to conclude Congress has taken away federal jurisdiction, and the Rule 12(b)(1) Motion should be denied.

## III.    Plaintiffs Have Adequately Pleaded a Claim against DOGE

Plaintiffs sued DOGE and its nominal and actual agency head, and pleaded that DOGE made final decisions directing agencies to cut the federal workforce.  ECF 100 ¶¶13-16, 23, 175, 182, 197, 233, 239, 241, 251, 268, 282-83.  This Court previously concluded, and the Ninth Circuit affirmed, that DOGE actions were likely ultra vires (which the Supreme Court did not address). ECF 124 at 34-36; ECF 85 at 32-34; *AFGE*, 139 F.4th at 1038.  Moreover, these alleged actions are final because they result in actual legal consequences, making them subject to APA review. 5 U.S.C. §704; *Bennett v. Spear*, 520 U.S. 154, 175, 178 (1997); *AFGE*, 139 F.4th at 1038-39.

Defendants cannot dispute these conclusions, so they ignore them.  Instead, Defendants make three arguments, but none has merit.  First, Defendants argue that Plaintiffs have not alleged that DOGE was involved in the OMB/OPM Memorandum, which is a red herring in light of all of the other allegations involving DOGE.  *Supra*, at 4.

Second, Defendants argue that DOGE is not a proper defendant, because it is an "umbrella" term for a government-wide initiative, ECF 216 at 22, and that one of its component parts (the U.S. Digital Service, or "USDS") is not an "agency" for purposes of the APA.  *Id*. at 23.[12]

---

[12] To the extent Defendants argue that the part of "DOGE" that involves DOGE teams embedded at agencies cannot be sued, that issue has been previously briefed and addressed.  ECF 218 at 13-15. Plaintiffs do not dispute that the actions of DOGE teams at agencies can be attributed to the

1       However, the APA applies broadly to any "authority of the Government of the United

2   States." 5 U.S.C. §701(b)(1).  The component parts of DOGE, including the USDS and related

3   Temporary Service, qualify under this broad definition.  *AFL-CIO v. Dep't of Lab.*, 778 F. Supp 3d

4   56, 89 n.19 (D.D.C. 2025); *AFL-CIO v. Dep't of Lab.*, 766 F. Supp. 3d 105, 111-12 (D.D.C.

5   2025).[13]  Defendants argue that "DOGE" is an initiative created by Executive Order, but that does

6   not preclude it from meeting the broad APA definition of authority.  *E.g.*, *Nat'l Broiler Council,*

7   *Inc. v. Fed. Lab. Rels. Council*, 382 F. Supp. 322, 325 (E.D. Va. 1974) (finding entity created by

8   Executive Order to be an agency under the APA); *Amalgamated Meat Cutters & Butcher Workmen*

9   *of N. Am., AFL-CIO v. Connally*, 337 F. Supp. 737, 761 (D.D.C. 1971) (same).  Although

10  Defendants argue that USDS has only "a limited set of advisory responsibilities" and thus is not an

11  agency within the meaning of the APA, ECF 216 at 24, that defies the factual record and

12  allegations.  Defendants' characterization of a limited advisory role for USDS is inconsistent with

13  the facts as plausibly alleged regarding actions actually taken by DOGE, under which DOGE

14  (including USDS) has directed agencies to make cuts to their workforce and functions.  The nature

15  of the actual authority that DOGE exercised over agencies is a disputed issue of fact, and claims

16  against DOGE cannot be dismissed at the pleadings stage based on unsubstantiated assertions by

17  Defendants that attempt to minimize DOGE's role.

18      To the extent the USDS or the Temporary Service were providing orders to DOGE teams or

19  to others at agencies requiring how much, who, and when to cut (which the record evidence

20  supports), those are final decisions subject to the APA.  That the complaint pleads allegations

21  against DOGE as a whole rather than against USDS or the Temporary Service specifically, ECF

22  216 at 25, does not make the allegations implausible or insufficient.  Particularly in the context

23  where Defendants' own extreme secrecy prevented more specific allegations, the allegations that

24  are in the operative complaint suffice for this case to proceed beyond the pleading stage.

25

26  _____

    agencies themselves; this does not render "DOGE" an improper Defendant.

27  [13] Defendants cite cases they characterize as raising the issue of whether USDS is subject to FOIA
    or the APA, ECF 216 at 25 n.15, but none that supports their position (some of which are brought,

28  like this one, against the "Department" created by Executive Order).

1

## CONCLUSION

2      For all the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants'

3  motion to dismiss in its entirety.

4

5  DATED: August 18, 2025                    Respectfully submitted,

6                                            Stacey M. Leyton
                                            Barbara J. Chisholm
7                                            Danielle E. Leonard
                                            Corinne F. Johnson
8                                            Alice X. Wang
                                            Robin S. Tholin
9                                            ALTSHULER BERZON LLP
10                                           177 Post St., Suite 300
                                            San Francisco, CA 94108
11                                           Tel: (415) 421-7151
                                            sleyton@altshulerberzon.com
12                                           bchisholm@altshulerberzon.com
                                            dleonard@altshulerberzon.com
13

14                                  By: */s/ Danielle Leonard*

15                                           *Attorneys for All Union and Non-Profit Organization*
16                                           *Plaintiffs*

17                                           Elena Goldstein (pro hac vice)
                                            Skye Perryman (pro hac vice)
18                                           Tsuki Hoshijima (pro hac vice)
19                                           DEMOCRACY FORWARD FOUNDATION
                                            P.O. Box 34553
20                                           Washington, D.C. 20043
                                            Tel: (202) 448-9090
21                                           Fax: (202) 796-4426
22                                           egoldstein@democracyforward.org
                                            sperryman@democracyforward.org
23                                           thoshijima@democracyforward.org

24                                  By: */s/ Tsuki Hoshijima*

25                                           *Attorneys for All Union and Non-Profit Organization*
26                                           *Plaintiffs (except NRDC) and for Plaintiffs City of*
                                            *Chicago, IL; Martin Luther King, Jr. County, WA;*
27                                           *Harris County, TX; and City of Baltimore, MD*

28                                           Jules Torti (pro hac vice)

PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jacek Pruski*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)

Matthew Blumin  (pro hac vice)
AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/ Teague Paterson*

*Attorneys for Plaintiff American Federation of State
County and Municipal Employees, AFL-CIO
(AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL
UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorneys for Plaintiff Service Employees
International Union, AFL-CIO (SEIU)*

Simi Bhat (SBN 289143)
Katherine K. Desormeau (SBN 266463)
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter St Fl 21,
San Francisco, CA 94104
Tel: (415) 875-6100
sbhat@nrdc.org
kdesormeau@nrdc.org

By: */s/ Simi Bhat*

*Attorneys for Plaintiff Natural Resources Defense
Council*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy

Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By: */s/ Alexander Holtzman*

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By: */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

David J. Hackett (pro hac vice)
General Counsel to King County Executive & Special
Deputy Prosecutor
Alison Holcomb (pro hac vice)
Deputy General Counsel to King County Executive &
Special Deputy Prosecutor
Erin King-Clancy (pro hac vice app. forthcoming)
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483

David.Hackett@kingcounty.gov
aholcomb@kingcounty.gov
aclancy@kingcounty.gov

By: */s/ David J. Hackett*

*Attorneys for Plaintiff Martin Luther King, Jr. County*

Sharanya Mohan (CABN 350675)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org

By: */s/ Sharanva Mohan*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL,*
*Harris County, TX, and King County, WA*

Christian D. Menefee
Harris County Attorney
Jonathan G.C. Fombonne (pro hac vice)
Deputy County Attorney and First Assistant
Tiffany Bingham (pro hac vice app. forthcoming)
Managing Counsel
Sarah Utley (pro hac vice app. forthcoming)
Division Director – Environmental Division
Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice app. forthcoming)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel: (713) 274-5102
Fax: (713) 437-4211
jonathan.fombonne@harriscountytx.gov
tiffany.bingham@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscoupntytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

By: */s/ Jonathan G.C. Fombonne*

*Attorneys for Plaintiff Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago
Stephen J. Kane (IL ARDC 6272490) (pro hac vice
app. forthcoming)
Rebecca A. Hirsch (IL ARDC 6279592) (pro hac
vice)
Lucy Prather (IL ARDC 6337780) (pro hac vice)
City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Stephen.kane@cityofchicago.org
Rebecca.Hirsch2@cityofchicago.org
Lucy.Prather@cityofchicago.org

By: */s/ Stephen J. Kane*

*Attorneys for Plaintiff City of Chicago*

Ebony M. Thompson
Baltimore City Solicitor
Sara Gross (pro hac vice app. forthcoming)
Chief of Affirmative Litigation
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (410) 396-3947
Sara.gross@baltimorecity.gov

By: */s/ Sara Gross*

*Attorneys for Plaintiff City of Baltimore*