CRAIG H. MISSAKIAN
United States Attorney

    450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
ANDREW M. BERNIE
CESAR E. AZRAK
Trial Attorneys
Civil Division, Federal Programs Branch

    950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 514-3411
andrew.bernie@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al*.<br><br>    Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al*.,<br><br>    Defendants. | Case No. 3:25-cv-03698-SI<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

1

**TABLE OF CONTENTS**

2    INTRODUCTION ........................................................................................................... 1

3    ARGUMENT .................................................................................................................. 2

4    I.    The Complaint Must Be Dismissed Insofar as it Challenges the Workforce

5          Executive Order. ................................................................................................ 2

6    II.   The Complaint Must Be Dismissed Insofar as it Challenges the Workforce

7          Memorandum. .................................................................................................... 6

8    III.  Plaintiffs otherwise fail to state a claim upon which relief can be granted. ..................... 10

9    IV.   The claims against "DOGE" must be dismissed.................................................. 14

10   CONCLUSION.............................................................................................................. 15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*AFL-CIO v. Dep't of Lab.,*
4      766 F. Supp. 3d 105 (D.D.C. 2025) ................................................................. 14

5  *Ashcroft v. Iqbal,*
6      556 U.S. 662 (2009) ........................................................................................ 9

7  *Biden v. Sierra Club,*
       142 S. Ct. 46 (2021) ........................................................................................ 4
8
*Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh,*
9      295 F.3d 28 (D.C. Cir. 2002) .......................................................................... 3

10  *Doe v. Trump,*
        284 F.Supp.3d 1182 (W.D. Wash. 2018) ........................................................ 5
11
*Does 1-3 v. Mills,*
12      142 S. Ct. 17 (2021) ........................................................................................ 4

13
*Federal Express Corp. v. United States Dep't of Comm.,*
14      39 F.4th 756 (D.C. Cir. 2022) ...................................................................... 6, 7

15  *Keim v. United States,*
        177 U.S. 290 (1900) ........................................................................................ 2
16
*Lucas v. Am. Federation of Government Employees,*
17      --- F.4th ----, No. 23-7051, 2025 WL 2371197 (D.C. Cir. Aug. 15, 2025) ............................ 14

18
*Markland v. OPM,*
19      140 F.3d 1031 (Fed. Cir. 1998) ....................................................................... 2

20  *Merrill v. Milligan,*
        142 S. Ct. 879 (2022) ...................................................................................... 5
21
*NRC v. Texas,*
22      605 U.S. 665 (2025) ................................................................................. 6, 7, 10

23  *Nyunt v. Chairman, Broad. Bd. of Governors,*
24      589 F.3d 445 (D.C. Cir. 2009) ........................................................................ 6

25  *Oestereich v. Selective Serv. System Loc. Board No. 11,*
        393 U.S. 233 (1968) ........................................................................................ 6
26
*Sierra Club v. Trump,*
27      963 F.3d 874 (9th Cir. 2020) ........................................................................ 4, 5

28  *Steckman v. Hart Brewing, Inc.,*

143 F.3d 1293 (9th Cir.1998) ............................................................................... 8

*Trump v. AFGE, No. 24A1174*,
  2025 WL 1873449 (U.S. July 8, 2025) ........................................................... 1

*Trump v. Boyle*,
  145 S. Ct. 2653 (2025) ..................................................................................... 5

*Trump v. CASA, Inc.*,
  145 S. Ct. 2540 (2025) ..................................................................................... 4

*United States v. Godinez–Ortiz*,
  563 F.3d 1022 (9th Cir. 2009) ........................................................................ 3

*United States v. Harris*,
  185 F.3d 999 (9th Cir. 1999) .......................................................................... 3

*United States v. Xiaoying Tang Dowai*,
  839 F.3d 877 (9th Cir. 2016) .......................................................................... 3

*USDS. AFL-CIO v. Dep't of Lab.*,
  778 F. Supp 3d 56 (D.D.C. 2025) ................................................................. 14

*Vera Institute for Justice et al. v. Department of Justice et al., No. 25-CV-1643*
  (APM), 2025 WL 1865160 (D.D.C. July 7, 2025) ........................................ 6

**Statutes, Executive Orders, and Regulations**

5 U.S.C. § 3502 ................................................................................................. 2

Executive Order 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025) ....................... 2, 3

5 C.F.R. § 351.803 ............................................................................................ 2

1                                    **INTRODUCTION**

2          Plaintiffs' Amended Complaint, ECF No. 100 (Complaint), asserts a facial challenge to

3   Executive Order 14210 (Workforce Executive Order) and to the February 26, 2025 Memorandum

4   (Workforce Memorandum) from the Office of Management and Budget (OMB) and Office of

5   Personnel Management (OPM). The Executive Order and Memorandum are lawful on their face

6   and the Supreme Court accordingly concluded that this challenge is likely to fail. *See Trump v.*

7   *AFGE*, No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025). Plaintiffs thus lack viable claims

8   challenging the Executive Order and Memorandum. Although Plaintiffs insist that the Supreme

9   Court's order is not technically binding because the Court held only that the Order and

10  Memorandum are "likely" lawful, that conclusion reflects a near-unanimous ruling on a question

11  of law, not a factual question requiring further development. And Plaintiffs make no argument

12  concerning these sources independent of arguments the Supreme Court necessarily and

13  overwhelmingly rejected.

14         It is entirely unclear what Plaintiffs even purport to challenge *other than* the Executive

15  Order and Memorandum, but they fail to state a claim under any theory. If Plaintiffs contend that

16  any "approval" of an Agency RIF and Reorganization Plan (ARRP) is unlawful insofar as the

17  ARRP contemplates future agency actions *that would be unlawful* (or arbitrary and capricious),

18  the relevant action would be from the agency if and when it takes any such actions in the future.

19  If they contend that the mere fact of OPM and OMB approval is what makes the ARRPs unlawful,

20  any such argument is wholly without merit and is contrary to the Supreme Court's stay order. If

21  they contend that other "directives" from OPM and OMB direct that agencies cut spending and

22  staff, they identify no such directives and, if such directives existed, the relevant actions would

23  still be any agency actions actually effectuating such cuts. And if they seek to challenge agencies'

24  *actual RIFs or reorganizations* independent of any challenge to the Executive Order and

25  Memorandum, they have failed to identify the precise actions at issue, they have likewise failed to

26  plead allegations that specific agency RIFs and reorganizations are contrary to agency organic

27  statutes or otherwise provide specific grounds for any such claims, and this Court would plainly

28  lack jurisdiction to consider such challenges. Finally, and for multiple reasons, the claims against

Defendants' Reply in Support of Motion to Dismiss
3:25-cv-3698-SI

1    the Department of Government Efficiency (DOGE) must be dismissed. None of Plaintiffs'

2    contrary arguments persuades otherwise.

3                                     **ARGUMENT**

4    **I.     The Complaint Must Be Dismissed Insofar as it Challenges the Workforce**

5    **        Executive Order.**

6           As set forth in the motion to dismiss, ECF No. 216 at 8-14, the Workforce Executive Order

7    is lawful on its face. The directive for "Agency Heads [to] promptly undertake preparations to

8    initiate large-scale reductions in force (RIFs), consistent with applicable law," Exec. Order 14210

9    § 3(c), is lawful. Federal law expressly permits agencies to conduct RIFs, and there is no

10   requirement that such RIFs not be "large-scale"; indeed, federal law explicitly recognizes that RIFs

11   will sometimes involve "the separation of a significant number of employees." 5 U.S.C.

12   § 3502(d)(1)(B); *see* 5 C.F.R. § 351.803(b). That being so, the President unquestionably had the

13   authority to direct agencies to conduct RIFs, consistent with law, in furtherance of his policy

14   objectives.

15          Plaintiffs contend that "no statute provides federal agencies *unfettered* authority to engage

16   in downsizing via RIFs," Opp. at 3 n.2, but, for purposes of assessing the legality of the Executive

17   Order, this argument is beside the point. Agencies unquestionably have authority to conduct RIFs,

18   and courts have repeatedly rejected challenges to agencies' decisions to conduct RIFs, recognizing

19   that such reductions are a matter of executive discretion. *See, e.g.*, *Keim v. United States*, 177 U.S.

20   290, 295 (1900); *Markland v. OPM*, 140 F.3d 1031, 1033 (Fed. Cir. 1998). And again, if any

21   specific RIFs undertaken pursuant to the Executive Order were to end up violating any statutory

22   requirements, that would be *contrary* to the Executive Order, which directs that any RIFs be

23   undertaken consistent with applicable law," including laws that "mandate[]" the performance of

24   certain "functions" or "require[]" certain agency "subcomponents." Any such speculation—or

25   indeed, even any specific RIFs that Plaintiffs believe *do* violate statutory requirements—is not a

26   basis for challenging *the Executive Order itself*.

27          The Executive Order further provides that, within 30 days of its issuance, "Agency Heads

28   shall submit to" OMB and OPM "a report that identifies any statutes that establish the agency, or

1    subcomponents of the agency, as statutorily required entities." Exec. Order 14210 § 3(e). That

2    report "shall discuss whether the agency or any of its subcomponents should be eliminated or

3    consolidated." *Id.* This directive is also lawful and, indeed, wholly unremarkable.

4            Plaintiffs provide no basis for allowing their challenge to the Executive Order to go

5    forward. Plaintiffs fault Defendants for asking the Court to "revisit its earlier conclusions"

6    regarding the legality of the Executive Order. Opp. at 16. Given that the Supreme Court stayed the

7    Court's prior order and found that the Executive Order was likely lawful, that criticism is

8    unfounded. And even absent the Supreme Court's stay order, there would be nothing wrong with

9    Defendants asking the Court not to adhere to an incorrect legal analysis from an earlier stage of

10   the case. Defendants have explained why the Court's analysis of the Executive Order's legality at

11   the preliminary injunction stage was mistaken. Among other reasons: (1) there is nothing suspect

12   about the President directing how agencies within the Executive Branch should exercise their

13   lawful authorities (and indeed, that is how the Executive Branch is supposed to work); (2) nothing

14   in federal law categorically prohibits large-scale RIFs; (3) the legality of an executive order itself

15   is a question of law, to be determined based on the executive order's content (not, as the Court

16   seemed to view it, as a factual inquiry to be resolved on a record of how agencies are supposedly

17   implementing it); and (4) since the Executive Order expressly directs compliance with the law and

18   is certainly *capable* of being applied lawfully, there is no basis for attacking its validity. ECF No.

19   216 at 9-12. Plaintiffs do not meaningfully address any of this.

20           In any event, the Supreme Court *did* stay this Court's preliminary injunction. Plaintiffs'

21   suggestion that the Court simply adhere to "[t]he rationale previously provided by this Court (and

22   the Ninth Circuit)," Opp. at 16, is an invitation to defy the Supreme Court. Plaintiffs insist that

23   those prior decisions "certainly establish[] that Plaintiffs have at least stated a claim, even if the

24   Supreme Court has questioned whether Plaintiffs will ultimately prevail." Opp. at 16. But this

25   ignores that the legality of the Executive Order is a question of *law*, not a question of fact. *Bldg.*

26   *& Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002); *see also United*

27   *States v. Xiaoying Tang Dowai*, 839 F.3d 877, 879 (9th Cir. 2016) (constitutionality of a statute is

28   a question of law); *United States v. Godinez–Ortiz*, 563 F.3d 1022, 1032 (9th Cir. 2009); *United*

1   *States v. Harris*, 185 F.3d 999, 1003 (9th Cir. 1999). Even if the legality of the Executive Order

2   presented a *difficult* legal question—it does not—it is still a *purely legal* question, which is

3   appropriately resolved at the motion to dismiss stage. Plaintiffs' argument that the lawfulness of

4   the Executive Order should be decided "on a full factual record," Opp. at 17, is thus misplaced.

5   Whether the Executive Order is lawful—just like the question whether a statute is constitutional—

6   depends on what the Executive Order says. Because the Executive Order does not direct agencies

7   to take any unlawful actions, the Order is lawful—and the Supreme Court's near-unanimous order

8   supports, if not dictates, that legal conclusion. That should be the end of the analysis.

9        Relatedly, Plaintiffs' attempt to consign the Supreme Court's near unanimous stay order to

10  irrelevancy is wrong. Plaintiffs devote significant space to arguing that a stay decision is not

11  technically *conclusive* as to the merits *in all cases*, and that lower courts have occasionally issued

12  rulings on the merits that conflict with the Supreme Court's determination of how the merits were

13  likely to be resolved. Opp. at 7-10. That misses the point in multiple respects.

14       First of all, most of the authority Plaintiffs invoke is irrelevant. Plaintiffs cite a concurrence

15  from Justice Barrett, but that concurrence explained why she voted to *deny* a motion to stay and

16  why the Supreme Court should be circumspect generally in granting that relief. *Does 1-3 v. Mills*,

17  142 S. Ct. 17, 18 (2021) (Barrett, J., concurring in denial of stay). That underscores that where, as

18  here, the Supreme Court *grants* a stay, lower courts must respect the conclusions underlying the

19  stay order. They cite a different Supreme Court decision stating that "when we are asked to stay

20  an execution on the grounds of a serious legal question, we ask whether the capital defendant is

21  likely to prevail on the merits of the issue before us, not whether he is likely to prevail on the

22  merits of the underlying suit," *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2562 (2025); but putting

23  aside the sui generis nature of the Supreme Court's practice in capital cases, here the Supreme

24  Court *addressed* the issue of the Executive Order's likely legality.

25       Plaintiffs also cite one case where a divided panel of the Ninth Circuit reached a legal

26  conclusion contrary to the Supreme Court's conclusion in a stay posture, *see Sierra Club v. Trump*,

27  963 F.3d 874, 887 (9th Cir. 2020); the Ninth Circuit's panel decision was subsequently vacated on

28  other grounds, *Biden v. Sierra Club*, 142 S. Ct. 46 (2021). First of all, in that case, the panel

"heed[ed] the words of the [Supreme] Court," *Sierra Club*, 963 F.3d at 887, and explained in detail why it nonetheless concluded that the plaintiff there had a cause of action. The Ninth Circuit did not simply decline wholesale to revisit previous analysis that the Supreme Court rejected, as Plaintiffs ask the Court to do here. And in any event, a single divided panel decision that was subsequently vacated is hardly sturdy ground for Plaintiffs' assertion that this Court should simply adhere to its previous conclusions in the face of the Supreme Court's order. *See* ECF No. 216 at 13-14 n.7 (citing research indicating that, outside the death penalty context, Supreme Court stay decisions almost forecast the eventual merits decision).[1]

In any event, even if the stay decision is not technically binding, it obviously at least heavily *informs* how this Court should resolve the motion to dismiss. Even holdings that the Government is "likely" to succeed on the merits must "inform how a [lower] court" proceeds "in like cases," *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025)—let alone in the same case. That is particularly true here given the context of the Supreme Court's order. This is not a death penalty case. It is not a case where the Supreme Court gave no basis for its stay (leaving the lower courts to guess whether the stay was based on the Supreme Court's assessment of the merits, irreparable harm, or some other consideration). *See Doe v. Trump*, 284 F.Supp.3d 1182, 1185 (W.D. Wash. 2018). It is not a case where the Supreme Court issued a stay for reasons unrelated to the merits. *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurring). Nor is it a case where the Supreme Court granted a stay based on a preliminary *factual assessment* that may prove incorrect. The Court concluded that the Executive Order was "likely" lawful because that was the relevant legal standard on a motion for a stay pending appeal. But the Court reached that conclusion as to a purely legal issue, following extensive briefing, including amicus briefs on both sides, in an order that apparently represented the views of all but one Justice. Respectfully, "[t]his court must listen."

---

[1] Plaintiffs' discussion of the Government's Ninth Circuit reply brief in *AFGE v. OPM*, No. 25-1677 (9th Cir July 11, 2025), ECF No. 71-1, is not well taken. In that brief, the Government argued that a decision denying a stay by a prior *Ninth Circuit* motions panel in a *different case* did not bind a subsequent merits panel. *Id.* at 16. That does not mean that a district court can ignore an order from the Supreme Court in the same case. And the Government's reply brief further noted that the Supreme Court had *granted* a stay of the preliminary injunction after the prior motions panel had denied one, and thus that that decision obviously was entitled to no weight in the merits panel's analysis.

1   *Vera Institute for Justice et al. v. Department of Justice et al.*, No. 25-CV-1643 (APM), 2025 WL

2   1865160, at *2 (D.D.C. July 7, 2025).

3   **II.      The Complaint Must Be Dismissed Insofar as it Challenges the Workforce**

4   **Memorandum.**

5          The Workforce Memorandum is likewise lawful on its face. As we explained in the motion

6   to dismiss, the Workforce Memorandum states repeatedly that agencies should only undertake

7   actions consistent with their statutory authority, likewise repeatedly makes clear that agencies

8   should not undertake any action that would impair service delivery functions, and otherwise

9   consists for the most part of high-level (and unremarkable) guidance. ECF No. 216 at 14. And we

10  explained how, insofar as the Memorandum directs agencies to submit ARRPs to OPM and OMB

11  "for review and approval" by specified dates, those directives fall easily within OPM's and OMB's

12  statutory authorities and the process established by the President in the Executive Order. *Id.*

13  Plaintiffs do not meaningfully address any of this.

14         And although Plaintiffs repeat their assertion that the Memorandum is *ultra vires*, this

15  claim clearly fails as a matter of law, particularly in light of the Supreme Court's order. *Ultra vires*

16  review, even where available, requires a plaintiff to satisfy among the most demanding standards

17  known in the law. As then-Judge Kavanaugh put it, *ultra vires* review is "essentially a Hail Mary

18  pass—and in court as in football, the attempt rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of*

19  *Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009); *see also NRC v. Texas*, 605 U.S. 665, 681 (2025)

20  (repeating this). Under an *ultra vires* theory, "[t]he agency overstep must be 'plain on the record

21  and on the face of the [statute].'" *Federal Express Corp. v. United States Dep't of Comm.*, 39 F.4th

22  756, 765 (D.C. Cir. 2022) (quoting  *Oestereich v. Selective Serv. System Loc. Board No. 11*, 393

23  U.S. 233, 238 n.7 (1968)) (second alteration supplied by D.C. Circuit). That overstep must amount

24  to a "clear departure by the [agency] from its statutory mandate" or be "blatantly lawless" agency

25  action. *Oestereich*, 393 U.S. at 238. A plaintiff seeking to challenge agency action via a

26  nonstatutory *ultra vires* action "must show more than the type of routine error in statutory

27  interpretation or challenged findings of fact that would apply if Congress had allowed APA

28  review." *Federal Express Corp.*, 39 F.4th at 765 (quotation marks omitted). "In other words, ultra

1    vires claimants must demonstrate that the agency has plainly and openly crossed a congressionally

2    drawn line in the sand." *Id.*

3    Whether Plaintiffs can satisfy that highly demanding standard in their challenge to the

4    Workforce Memorandum is, again, a *legal* question, and the answer is straightforward: Plaintiffs

5    cannot show that the Memorandum represents "blatantly lawless" agency action when a nearly

6    unanimous Supreme Court has held that the Memorandum is likely *lawful*. Even if this Court were

7    to *agree* with some of Plaintiffs' arguments—which it should not—that is simply not close to

8    enough to state a claim under an *ultra vires* theory, particularly given the Supreme Court's

9    decision. *Cf. NRC v. Texas*, 605 U.S. at 682 (noting that D.C. Circuit had previously rejected

10   Texas's statutory argument and stating that "[e]ven if one were to disagree with the D. C. Circuit's

11   conclusion, the statutory argument falls well shy of a meritorious" *ultra vires* claim).

12   As to Plaintiffs' purported APA challenges to the Memorandum, they too fail as a matter

13   of law. As to the Memorandum's OPM/OMB approval language, Plaintiffs do not engage with the

14   motion to dismiss on this point: the supposed illegality of this language was the centerpiece of

15   Plaintiffs' arguments before the Supreme Court, Defendants did not dispute Plaintiffs' argument

16   that the Memorandum requires OPM and OMB to approve ARRPs, Defendants also did not dispute

17   Plaintiffs' allegation, that OPM and OMB have rejected some ARRPs, and the Supreme Court

18   nonetheless held that the Memorandum was likely lawful. There is simply no plausible reading of

19   the Supreme Court's order that does not foreclose this legal argument. Nor do Plaintiffs identify

20   any other argument that the Memorandum is unlawful apart from those the Supreme Court

21   considered and necessarily rejected.

22   It is also irrelevant that "[n]o court has addressed the likelihood of success on Plaintiffs'

23   arbitrary-and-capricious APA challenge to the OMB/OPM Memorandum," Opp. at 11, since that

24   challenge (encompassed within Claim IV) too plainly fails to state a viable claim. That claim

25   recites eight respects in which the "Memorandum, any decision 'approving' an ARRP, and

26   DOGE's directives ordering agencies to make staffing and spending cuts" are allegedly arbitrary

27   and capricious. Compl. ¶¶ 410-11. It is unclear which of these assertions they intend to apply to

28

1    the Memorandum specifically. We will thus assume that Plaintiffs assert all eight as to the

2    Memorandum. In any event, all of them fail.

3           The first assertion—that the Memorandum "order[s] federal agencies to cede decision-

4    making authority to OMB, OPM, and/or DOGE, regardless of the requirements of any applicable

5    statute or regulation," *id.* ¶ 411, reprises Plaintiffs' allegations as to the Memorandum's approval

6    requirement, which we have already addressed and the Supreme Court necessarily rejected.

7           The second, third, fourth, and sixth assertions—that the Memorandum (2) "require[s]

8    agencies to disregard their authorizing statutes and regulations, and follow the President's

9    unconstitutional directions and directions of OMB, OPM, and/or DOGE," (3) "categorically

10   impose[s] requirements to engage in large-scale RIFs that are necessarily contrary to agency

11   function and authorizing statutes and regulations," (4) "categorically impose[s] requirements to

12   RIF employees at the President's direction, according to the offices, programs and functions the

13   President and his Administration eliminate regardless of statute or regulation," and (6) "require[s]

14   agencies to abandoned reasoned decision-making considering all relevant factors," *id.*—likewise

15   fail to state a claim. For starters, these assertions—contending that the Memorandum is arbitrary

16   and capricious because it instructs agencies *to violate the law*—are not meaningfully distinct from

17   Plaintiffs' contrary-to-law claim. They are also contrary to the Memorandum, which repeatedly

18   states that agencies should ensure that any actions they take are consistent with legal

19   requirements.[2] These conclusory statements, which are contradicted by the Memorandum attached

20   to the Complaint, are false and entitled to no weight or presumption of truth. *See, e.g.*, *Steckman*

21   *v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998) ("[W]e are not required to accept as

22   true conclusory allegations which are contradicted by documents referred to in the complaint.");

23

24   _____

     [2] Specifically: (1) any changes made by agencies should seek to "driv[e] the highest-quality, most
25   efficient delivery of their statutorily-required functions," ECF No. 100-2 at 2; (2) agencies should
     only seek to eliminate "functions that not statutorily mandated," *id.*; (3) "[a]gencies should review
26   their statutory authority and ensure that their plans and actions are consistent with such authority,"
     *id.*; (4) agencies should only seek to "[e]liminat[e] non-statutorily mandated functions through
27   RIFs," *id.* at 3; and (5) in their initial reports, agencies must provide "[a]ny statutes that establish
     the agency, or subcomponents of the agency, as statutorily required entities," *id.*
28

Defendants' Reply in Support of Motion to Dismiss
3:25-cv-3698-SI

1   *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true

2   all of the allegations contained in a complaint is inapplicable to legal conclusions.").

3          The fifth assertion—that the Memorandum "categorically require[s] agencies to engage in

4   RIFs that will align the agency with Funding Lapse Plan Staffing Levels, which necessarily and

5   by definition cannot adequately staff agencies," Compl. ¶ 411—is also contrary to the

6   Memorandum. The Memorandum simply instructs agencies to work with their DOGE Team leads

7   to "develop[] competitive areas for ARRPs" and to "identify competitive areas that include

8   positions not typically designated as essential during a lapse in appropriations." ECF No. 100-2.

9   And in making this latter determination, the Memorandum notes that agencies "should refer to the

10  functions that are excepted from the Antideficiency Act (ADA) in the Agency Contingency Plans

11  submitted to OMB in 2019 as the starting point"—which makes sense because the last significant

12  government shutdown occurred during that period. The Memorandum does not remotely

13  suggest—and certainly does not *direct*—that all employees who would not be designated essential

14  during a shutdown should be RIFed, let alone require funding at 2019 funding lapse plan staffing

15  levels. Indeed, any such categorical directive would be contrary to the Memorandum's repeated

16  admonitions that agencies should not undertake any action that would impair service delivery

17  functions. This assertion is completely manufactured and is likewise entitled to no weight or

18  presumption of truth in resolving the motion to dismiss.

19         Plaintiffs' seventh assertion—that the Memorandum purportedly requires "agencies to act

20  under unrealistic timeframes that necessarily will result in plans that are not supported by rational

21  reasoning or the agency's considered judgment," Compl. ¶ 411—likewise fails to state a claim.

22  The Memorandum contemplates implementation of ARRPs to occur by September 30, 2025,

23  nearly *eight months* after the Executive Order. In any event, if an agency were compelled to act

24  under unrealistic timeframes, that might make it more likely that any final reviewable decisions

25  the agency reached would be legally vulnerable. But Plaintiffs are not entitled to complain *in*

26  *advance* that a hypothetical future decision will "necessarily" lack sufficient reasoning.

27         Plaintiffs' eighth assertion—that the Memorandum requires changes to proceed "in secret,"

28  *id.*—likewise has no legal basis. The Memorandum reiterates that agencies must follow all

1    requirements for issuing RIFs, including required notice. ECF No. 100-2 at 7. And it directs

2    agencies to identify any "changes that must be pursued through notice-and-comment rulemaking."

3    *Id.* at 3. Plaintiffs identify no legal principle requiring agencies to more broadly make public their

4    predecisional and deliberative discussions regarding potential future actions. Plaintiffs' challenges

5    to the Memorandum must be dismissed.

6        Finally, even assuming Plaintiffs are entitled to plead in the alternative, they are not entitled

7    to maintain claims challenging the same purported agency actions on *both* APA and ultra vires

8    grounds. *Ultra vires* review is not available where a plaintiff has an alternative path to judicial

9    review. *NRC v. Texas*, 605 U.S. at 682. The Court should dismiss Plaintiffs' APA claim and *ultra*

10   *vires* claim as to the Memorandum. But at the very least, they cannot have both; if APA review is

11   available, they cannot also maintain an *ultra vires* claim. The same is true for all of the other

12   supposed "directives" and other alleged actions Plaintiffs purport to challenge under both the APA

13   and on an *ultra vires* theory.

14                                              \*\*\*

15       As we explained in our motion to dismiss, all seven claims rely—at least in part—on claims

16   that the Workforce Executive Order and Workforce Memorandum are unlawful. But at the very

17   least, Claim I (a direct challenge to the Workforce Executive Order) must be dismissed and the

18   President must be dismissed from this action. Claim V—which asserts that the Workforce

19   Memorandum was unlawfully issued without notice-and-comment procedures, Compl. ¶¶ 412-

20   419—also must be dismissed. This likewise presents a pure question of law and this theory is

21   foreclosed by the Supreme Court's stay order; as noted in the motion to dismiss, the parties

22   litigated this argument in the Supreme Court as well. *See* 24A1174 (S. Ct.) (Plaintiffs' Response

23   to Application Filed June 9, 2025) at 28-29 (Plaintiffs making this argument). And the remainder

24   of the Complaint must be dismissed insofar as it challenges the Workforce Executive Order and

25   Workforce Memorandum themselves.

26   **III.     Plaintiffs otherwise fail to state a claim upon which relief can be granted.**

27       Even if some residue of the Complaint were independent of these two Government-wide

28   sources and could survive the Supreme Court's decision, this action still must be dismissed.

1    Plaintiffs insist that they "challenge the manner in which OMB, OPM," and DOGE "have

2    implemented the President's directives, including by engaging in arbitrary and capricious and

3    otherwise unlawful actions in violation of the APA." Opp. at 1. But Plaintiffs never make clear

4    what it is that they are even challenging or the basis of that challenge. To invoke this Court's

5    jurisdiction, survive a motion to dismiss, and unlock the doors to discovery, Plaintiffs must, at the

6    very least, identify specific reviewable actions that injure them, plead specific allegations, and

7    identify a *viable legal theory* under which those allegations—*if proven*—would entitle them to

8    relief. Neither Plaintiffs' shotgun pleadings nor their opposition does any of those things.

9    Nonetheless, the Complaint and Plaintiffs' opposition appear to posit a number of supposed actions

10   and legal theories, none of which have merit. We address each in turn.

11          *Approval of ARRPs*: Plaintiffs insist that they are challenging "any decision 'approving' an

12   ARRP." Opp. at 11 (quoting Compl. ¶ 405). But what does this mean?

13          One possibility is that Plaintiffs are contending that the mere fact of OPM and OMB

14   approval is what makes the ARRPs unlawful—even if the proposals in an ARRP would be *lawful*

15   if implemented. That is how the Government understood Plaintiffs' Complaint. *See* Compl. ¶¶

16   394-96 (contending that memorandum, approvals, and other unspecified alleged actions usurp

17   agency authority). But that is an attack on the approval requirement itself, a challenge the Supreme

18   Court's decision logically forecloses.

19          Another possibility is that Plaintiffs intend to argue that any OPM and OMB "approval" of

20   an ARRP is unlawful because the ARRP contemplates future *unlawful* action. But the obvious

21   response is that Plaintiffs can at most challenge any final agency action if and when it occurs, not

22   the predecisional ARRPs—and certainly not OPM/OMB's "approval" of such predecisional plans.

23          Even if such "approvals" represent final agency action, Plaintiffs have no standing to

24   challenge them. Such approvals do not injure Plaintiffs (or anyone else) since they do not

25   themselves direct RIFs (or anything else). Nor would any injury be redressable—even if this Court

26   set aside a hypothetical "approval" of an ARRP, that would have no effect on the agency's ability

27   to engage in a RIF or any additional otherwise lawful proposal contemplated in an ARRP.  As

28   Defendants have repeatedly noted, ARRPs (whether "approved" or not) do not commit agencies

Defendants' Reply in Support of Motion to Dismiss
3:25-cv-3698-SI

1   to take or not take any specific actions. Nor would any challenge to allegedly unlawful potential

2   actions contained in a pre-decisional planning document be ripe; the agency may not take the

3   action at all, or that final action may differ from what was in an agency's ARRP. But regardless

4   of the doctrinal bucket, the basic point is the same: the relevant action would be the implemented

5   RIF or reorganization, not the mere plan to do so, let alone OPM/OMB's "approval" of an agency's

6   planning document.

7        *Other OPM and OMB "Directives"*: Plaintiffs dispute Defendants' characterization that

8   they do not identify any assertedly unlawful action by OPM and OMB other than the issuance and

9   implementation of the Workforce Memorandum, citing unspecified "directives" to make staffing

10  and spending cuts. Opp. at 4-5, 12 n.6. There are many problems here. First of all, Plaintiffs do not

11  identify any such directives from OPM or OMB. Also, the opposition characterizes these supposed

12  "directives" as coming from OPM and OMB, *id.* at 4-5, but the Complaint does not. The

13  Complaint's allegations regarding OPM and OMB are limited to the Memorandum and its

14  associated deadlines, Compl. ¶¶ 160-176, and it repeatedly alleges that "DOGE" is responsible for

15  alleged directives to make specific cuts, Compl. ¶ 405, 410, 416, 417, 418.

16       In any event, none of this matters. Again, if OMB or OPM were directing cuts or other

17  agency actions that would be unlawful if implemented, the relevant action to challenge would be

18  the agency action implementing such allegedly unlawful cuts. And similar to the above, if the

19  gravamen of Plaintiffs' allegations is really that OPM and OMB are directing actions that would

20  be *lawful*, but that agency leadership—including the Presidentially nominated and Senate-

21  confirmed agency head—do not want to take, that does not state a legally viable claim. If OPM

22  and OMB were to tell an agency to do something that they lack the authority to force the agency

23  to do—and if the agency does not in fact want to do—the "remedy" would belong to the agency.

24  And that "remedy" would be for the agency to simply refuse to take the action that, according to

25  Plaintiffs' apparent allegations, the agency did not want to take. But Plaintiffs have no authority

26  to hale the Executive Branch into court on the theory that one component of the Executive Branch

27  is allegedly bullying another Executive Branch component. That is not the judicial role.

28

Defendants' Reply in Support of Motion to Dismiss
3:25-cv-3698-SI

1    *Actual RIFs and Reorganizations*: Finally, Plaintiffs' assertion that the Complaint properly

2    challenges RIFs and other "implementation actions," Opp. at 12, likewise fails.

3        Initially, the Government does not understand what Plaintiffs' purported challenge is. One

4    possibility is that Plaintiffs are alleging that Federal Agency Defendants' RIFs and reorganizations

5    are (or will be) unlawful (or arbitrary and capricious) because agencies are *following* the Executive

6    Order and Memorandum. That is unquestionably the challenge actually articulated in Claims VI

7    and VII of the Complaint. Compl. ¶¶ 420-431. If that is Plaintiffs' claim, it fails because the

8    Executive Order and Memorandum are lawful.

9        A second possibility is that Plaintiffs challenge agency RIFs and reorganizations as

10   unlawful/arbitrary and capricious for following supposedly illegal orders other than the Executive

11   Order and Memorandum. Opp. at 18 ("Plaintiffs challenge the legality of the OMB and OPM

12   approvals of ARRPs; OMB, OPM, and DOGE directives to agencies to cut functions, programs

13   and people; and Federal Agency Defendants' actions taken to implement those directives."). We

14   addressed this possibility above: Plaintiffs do not adequately plead the existence of any such

15   "directives" and neither these directives nor any OPM/OMB "approval" of ARRPs would be a

16   basis for challenging agency action that is otherwise *lawful*.

17       That brings us to the third possibility, which is that Plaintiffs intend to assert ordinary APA

18   claims—that specific RIFs and reorganizations violate specific legal requirements or are arbitrary

19   and capricious, on grounds independent of the Executive Order and Memorandum (or any other

20   supposed "orders"). But if that is Plaintiffs' intent (which even now is entirely unclear), any such

21   challenge is not adequately pled. Part of the problem, of course, is that Plaintiffs brought suit *before*

22   most such decisions were made and announced—so Plaintiffs could not have had any basis for

23   challenging decisions they had not seen. ECF No. 216 at 220. But contra Plaintiffs, Opp. at 12-13,

24   that is not the *only* problem. Any proper APA challenge to a specific RIF (or other agency

25   action)—if there is a proper APA challenge—would, at a minimum, need to identify each specific

26   RIF being challenged and adequately plead that such a RIF is unlawful and/or arbitrary and

27   capricious by reference to the specific statutes and other legal authorities governing the agency's

28   activities. The Complaint does not do that. Rather, Plaintiffs just repeat the Complaint's

1  blunderbuss allegations that agency RIFs "disregard their authorizing statutes" and "engage in

2  large-scale RIFs that are necessarily contrary to agency's ability to maintain required function and

3  authorizing statute." Opp. at 12 (quotation marks omitted). These are just Plaintiffs'

4  characterizations of what the Executive Order and Memorandum (as well as unspecified "orders")

5  supposedly require. Plaintiffs make no attempt to explain how or why specific RIFs violate any

6  specific statutory or other requirements. To the extent Plaintiffs have specific objections to

7  particular RIFs on grounds distinct from the Executive Order and Memorandum, they have not

8  intelligibly pled what the asserted legal violations are.

9       And even if Plaintiffs did adequately plead garden variety APA challenges to specific RIFs,

10 this Court would not have jurisdiction to consider them. Plaintiffs insist that "the rationale of the

11 Ninth Circuit and this Court's prior jurisdictional rulings" support jurisdiction over an ordinary

12 APA claim challenging specific RIFs, Opp. at 19, but they obviously do not. This Court previously

13 concluded that it had jurisdiction because Plaintiffs brought constitutional and statutory challenges

14 to the Workforce Executive Order and Workforce Memorandum that, in the Court's view, were

15 not the sorts of claims as to which Congress intended to preclude district-court review under the

16 APA. ECF No. 124 at 23-25. Defendants disagree with the Court's prior conclusion but that is

17 obviously very different than Plaintiffs' apparent current contention that *all purported APA* claims

18 challenging federal employment decisions may be brought in federal district court—even a claim

19 that a specific RIF violates specific agency governing statutes. Opp. at 19. "If the CSRA did not

20 preclude APA claims addressing employment disputes, a savvy litigant could recast just about any

21 such dispute with her employer as an APA suit, giving rise to a parallel proceeding in district

22 court." *Lucas v. Am. Federation of Government Employees*, --- F.4th ----, No. 23-7051, 2025 WL

23 2371197, at *10 (D.C. Cir. Aug. 15, 2025) (opinion of Garcia, J., joined by Pillard and Pan, JJ.).

24 **IV.     The claims against "DOGE" must be dismissed.**

25      Plaintiffs have no viable claims against "DOGE." As previously explained, DOGE is a

26 government-wide initiative, not a component that can be sued. The cases Plaintiffs cite involving,

27 in Plaintiffs' characterization, "[t]he component parts of DOGE," addressed suits against *USDS*.

28 *AFL-CIO v. Dep't of Lab.*, 778 F. Supp 3d 56, 89 n.19 (D.D.C. 2025); *AFL-CIO v. Dep't of Lab.*,

766 F. Supp. 3d 105, 111-12 (D.D.C. 2025). And of course, in cases involving reviewable final agency action, agencies are subject to suit under the APA. But "DOGE"—comprised of USDS, the USDS Temporary Organization, and DOGE teams at every federal agency comprised of federal employees for that agency—is not a single juridical entity that can be sued.

That is just the beginning of the problems. The Complaint contains one passing reference to USDS. Compl. ¶ 145. And for the reasons laid out in Defendants' motion to dismiss, USDS categorically lacks authority to issue binding directives to federal agencies. ECF No. 216 at 24. But even if "USDS or the Temporary Service were providing orders to DOGE teams or to others at agencies requiring how much, who, and when to cut," Opp. at 22—orders Plaintiffs do not identify and do not even squarely contend exist—that would not state a claim for reasons similar to those discussed above. If USDS issued orders to agencies to make cuts that were *unlawful*, the relevant action would be any agency action actually implementing such cuts. And if USDS issued orders to agencies to make cuts that were *lawful*, it obviously would not be the business of the federal courts to mediate a dispute between a federal agency and a White House component about how an agency should exercise its lawful authorities. The claims against USDS must be dismissed.

Virtually all—if not all—of the Complaint's allegations against "DOGE" appear to involve not USDS but events at federal agencies (and thus members of agency DOGE Teams). Compl. ¶¶ 24, 151, 15, 175. Plaintiffs do not dispute that any activities of agency DOGE Teams—which are comprised of agency employees, who answer to agency leadership—"can be attributed to the agencies themselves." Opp. at 21 n.12. If any alleged internal activities or directives themselves result in reviewable agency actions that Plaintiffs believe are unlawful, Plaintiffs can challenge those activities; but they cannot bring a challenge (whether under the APA or on an "*ultra vires*" theory) to alleged internal agency directives themselves.

**CONCLUSION**

This Court should dismiss this action in its entirety.

Defendants' Reply in Support of Motion to Dismiss
3:25-cv-3698-SI

15

Dated: August 25, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER HALL
Assistant Branch Director

*s/ Andrew M. Bernie*
ANDREW M. BERNIE
CESAR E. AZRAK
Trial Attorneys
Civil Division
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 514-3411
andrew.bernie@usdoj.gov

*Counsel for Defendants*