United States District Court
Northern District of California

1

2

3

4                          UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    AMERICAN FEDERATION OF                    Case No. 25-cv-03698-SI
     GOVERNMENT EMPLOYEES, AFL-CIO,
8    et al.,

9              Plaintiffs,                     **ORDER GRANTING IN PART AND
                                               DENYING IN PART MOTION TO
10         v.                                  DISMISS**

11   DONALD J. TRUMP, et al.,                  Re: Dkt. No. 216

12             Defendants.

13

14        Defendants have moved to dismiss the amended complaint in this action, which challenges

15   large-scale reductions in force and reorganizations at numerous federal agencies.  Dkt. No. 216.

16   Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for resolution without oral

17   argument and vacates the hearing currently set for September 12, 2025.  For the reasons set forth

18   below, the Court denies the motion with the exception that the claims against DOGE are dismissed

19   with leave for plaintiffs to amend to clarify the DOGE allegations.

20

21                                    **BACKGROUND**

22        Although only a few months old, this case already has a lengthy procedural history.  The

23   Court does not recite in full the factual and procedural background of this case except as needed to

24   resolve this motion.  Plaintiffs filed suit on April 28, 2025.  Dkt. No. 1.  The defendants in this case

25   are President Trump, the Office of Management and Budget (OMB), the Office of Personnel

26   Management (OPM), the Department of Government Efficiency (DOGE), numerous federal

27

28

United States District Court
Northern District of California

1    agencies, and the heads of those agencies.[1]

2        By way of background, on February 11, 2025, President Trump issued Executive Order

3    14210, "Implementing the President's 'Department of Government Efficiency' Workforce

4    Optimization Initiative."  90 Fed. Reg. 9669 (Feb. 11, 2025).  The order "commences a critical

5    transformation of the Federal bureaucracy[.]"  *Id.* § 1.  Section 3(c) of the order states,

> Agency Heads shall promptly undertake preparations to initiate large-
> scale reductions in force (RIFs), consistent with applicable law, and
> to separate from Federal service temporary employees and
> reemployed annuitants working in areas that will likely be subject to
> the RIFs. All offices that perform functions not mandated by statute
> or other law shall be prioritized in the RIFs, including all agency
> diversity, equity, and inclusion initiatives; all agency initiatives,
> components, or operations that my Administration suspends or closes;
> and all components and employees performing functions not
> mandated by statute or other law who are not typically designated as
> essential during a lapse in appropriations as provided in the Agency
> Contingency Plans on the Office of Management and Budget website.
> This subsection shall not apply to functions related to public safety,
> immigration enforcement, or law enforcement.

*Id.* § 3(c).  The order also directs agencies to submit a report within thirty days to the Office of

Management and Budget that "shall discuss whether the agency or any of its subcomponents should

be eliminated or consolidated."  *Id.* § 3(e).

        On February 26, 2025, in response to Executive Order 14210, the directors of OMB and

OPM sent a memorandum to heads of executive departments and agencies.  Dkt. No. 100-2, Ex. B

("OMB/OPM Memo").   The memo states that "tax dollars are being siphoned off to fund

unproductive and unnecessary programs that benefit radical interest groups while hurting hard-

working American citizens. [¶] The American people registered their verdict on the bloated, corrupt

federal bureaucracy on November 5, 2024 by voting for President Trump and his promises to

sweepingly reform the federal government."  *Id.* at 1.  The memo instructed agency heads to submit

Agency RIF and Reorganization Plans (ARRPs) to OMB and OPM for review and approval.

Agencies were directed to submit a "Phase 1" ARRP by March 13, 2025, that included, among other

---

[1] For ease of reference, this Order refers to OMB, OPM, and DOGE collectively as "the
implementing agencies" and the remaining defendant agencies and agency heads as "federal agency
defendants."

United States District Court
Northern District of California

1    information, any Congressional statutes that established the agency, whether parts of the agency

2    should be eliminated, a list of essential positions, how the agency intends to reduce positions, a

3    "suggested plan for congressional engagement to gather input and agreement on major restructuring

4    efforts," and the agency's timeline for implementation. *Id.* at 3-4. The memo directs agencies to

5    submit "Phase 2" ARRPs by April 14, 2025 that include, among other information, all reductions

6    that will occur through RIFs, proposed relocations of offices from the Washington, D.C. area to

7    "less-costly parts of the country," "[a]n explanation of how the ARRPs will improve services for

8    Americans and advance the President's policy priorities," a certification that the ARRPs will

9    improve the delivery of direct services, and a timetable for implementation. *Id.* at 4-6. The memo

10   also instructs agencies to send monthly progress reports to OMB and OPM on May 14, June 16, and

11   July 16, 2025. *Id.* at 6. The memo excludes law enforcement, border security, national security,

12   immigration enforcement, public safety, military personnel, the Executive Office of the President,

13   and the U.S. Postal Service. *Id.*

14          On May 1, 2025, plaintiffs in this action moved for a temporary restraining order, which the

15   Court granted on May 9, 2025. Dkt. Nos. 37, 85. On May 14, 2025, plaintiffs filed an amended

16   complaint, Dkt. No. 100 (AC), which is now the operative complaint in this case. The amended

17   complaint adds two local union plaintiffs and one additional federal agency defendant. The

18   amended complaint asserts seven claims for relief, as follows:

19          • Claim I: that President Trump's Executive Order 14210 is *ultra vires* and usurps

20            Congressional authority, in violation of the Constitution's separation of powers, AC

21            ¶ 388;

22          • Claim II: that "the actions and orders of OMB, OPM, and DOGE to implement the

23            President's February 11, 2025 Executive Order, including but not limited to the

24            February 26, 2025 Memorandum to all agencies, as well as any direction, approval,

25            or requirement imposed with respect to any ARRPs that result from that Executive

26            Order, exceed OMB, OPM, and DOGE's authority and are contrary to statute and

27            thus *ultra vires*[,]" AC ¶ 396;

28          • Claim III: that "the actions and orders of OMB, OPM, and DOGE to implement the

3

1   President's February 11, 2025 Executive Order, including but not limited to the

2   February 26, 2025 Memorandum to all agencies, and any direction, approval, or

3   requirement imposed with respect to any ARRPs that result from that Executive

4   Order, exceed authority and are contrary to statute[,]" in violation of the

5   Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A) and (C), AC ¶ 404;

6   • Claim IV: that the actions of OMB, OPM, DOGE and their directors are arbitrary

7   and capricious, in violation of the APA, 5 U.S.C. § 706(2)(A), AC ¶ 411;

8   • Claim V: that the actions of OMB, OPM, DOGE and their directors have violated

9   the APA's notice and comment requirements, 5 U.S.C. § 706(2)(D), because

10   "[n]either OMB, nor OPM, nor DOGE, has published and provided opportunity for

11   notice and comment on its actions pursuant to Executive Order 14210, including but

12   not limited to the February 26, 2025 Memorandum, any decision 'approving' an

13   ARRP, or DOGE's directives ordering agencies to make staffing or spending cuts[,]"

14   AC ¶ 417;

15   • Claim VI: that the federal agency defendants have violated the APA because their

16   actions "are inconsistent with law in violation of 5 U.S.C. § 706(2)(A) and exceed

17   statutory authority in violation of 5 U.S.C. § 706(2)(C), and are for those reasons

18   also arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A)[,]" AC ¶ 426; and

19   • Claim VII: that the "actions of the Federal Agency Defendants, including but not

20   limited to implementing the President's unconstitutional orders to reorganize and

21   RIF employees, pursuant to the terms dictated by the President, violate the APA

22   because they are arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A)[,]"

23   AC ¶ 431.

24   On May 14, 2025, plaintiffs moved for a preliminary injunction. Dkt. No. 101. On May 22,

25   2025, the Court granted a preliminary injunction. Dkt. No. 124. The Court found plaintiffs likely

26   to succeed on the merits of Claim I (*ultra vires* claim against the President), Claim II (*ultra vires*

27   claim against OMB, OPM, DOGE, and their directors), Claim III as to OMB and OPM (APA claim

28   as not in accordance with law and exceeding statutory authority), and Claim V as to OMB and OPM

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    (APA claim for engaging in rule-making without notice and comment).  *Id.* at 28, 41, 44.  The Court

2    reserved ruling on the APA claims as to DOGE, explaining that "[t]he record is less developed as

3    to DOGE's actions and would benefit from further factual development."  *Id.* at 43.  The Court also

4    reserved ruling on the merits of the APA claim asserting arbitrary and capricious action by OMB,

5    OPM, and DOGE (Claim IV) and the APA claims asserted against the federal agency defendants

6    (Claims VI and VII).  *Id.* at 44.  The Court explained that "a full review of the ARRPs will

7    significantly aid the Court's review of the merits of these APA claims."  *Id.*  Among other things,

8    the Court enjoined the agency defendants "from taking any actions to implement or enforce sections

9    3(c) and 3(e) of Executive Order 14210 or the February 26, 2025 OMB/OPM Memorandum . . . ."

10   *Id.* at 47-48.  The injunction applied to the following defendant agencies: OMB, OPM, DOGE

11   (USDS), USDA, Commerce, Energy, HHS, HUD, Interior, Labor, State, Treasury, Transportation,

12   VA, AmeriCorps, Peace Corps, EPA, GSA, NLRB, NSF, SBA, and SSA.  *Id.* at 48.

13        The government sought an emergency stay of the injunction pending appeal from the Ninth

14   Circuit, and the Ninth Circuit denied the request for an emergency stay in an order issued May 30,

15   2025.  Dkt. No. 145; *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 139 F.4th 1020 (9th

16   Cir. 2025).

17        The government then sought an emergency stay of the injunction pending appeal from the

18   Supreme Court.  On July 8, 2025, the Supreme Court granted the stay.  *Trump v. Am. Fed'n of Gov't*

19   *Emps.*, 606 U.S. ----, 145 S. Ct. 2635 (2025).  The Supreme Court's stay order reads in its entirety:

> The application for stay presented to Justice Kagan and by her referred to the Court is granted. The May 22, 2025 preliminary injunction entered by the United States District Court for the Northern District of California, case No. 3:25–cv–3698, is stayed pending the disposition of the appeal in the United States Court of Appeals for the Ninth Circuit and disposition of a petition for a writ of certiorari, if such a writ is timely sought. Should certiorari be denied, this stay shall terminate automatically. In the event certiorari is granted, the stay shall terminate upon the sending down of the judgment of this Court.
>
> The District Court's injunction was based on its view that Executive Order No. 14210, 90 Fed. Reg. 9669 (2025), and a joint memorandum from the Office of Management and Budget and Office of Personnel Management implementing that Executive Order are unlawful. Because the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful—and because the other factors bearing on whether to grant a stay are satisfied—we grant the

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> application. We express no view on the legality of any Agency RIF and Reorganization Plan produced or approved pursuant to the Executive Order and Memorandum. The District Court enjoined further implementation or approval of the plans based on its view about the illegality of the Executive Order and Memorandum, not on any assessment of the plans themselves. Those plans are not before this Court.

*Id.* Justice Sotomayor filed a concurring opinion and Justice Jackson dissented.

Defendants now move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1)—for lack of subject matter jurisdiction—and 12(b)(6)—for failure to state a claim. Dkt. No. 216. Plaintiffs oppose, Dkt. No. 250, and defendants have filed a reply brief, Dkt. No. 252.

# LEGAL STANDARDS

## I.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual.").

## II.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted

1    unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened

2    fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to above the

3    speculative level." *Twombly*, 550 U.S. at 555, 570.

4          In deciding whether to grant a motion to dismiss, the Court must assume the plaintiff's

5    allegations are true and must draw all reasonable inferences in his favor.  *See Usher v. City of Los*

6    *Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the Court is not required to accept as true

7    "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

8    inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  As a general rule,

9    the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6)

10   motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  However, pursuant to Federal

11   Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior

12   court proceedings.  *Id*. at 688-89.  The court may also consider "documents attached to the complaint

13   [and] documents incorporated by reference in the complaint . . . without converting the motion to

14   dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

15   2003).

16         If the Court dismisses the complaint, it must then decide whether to grant leave to amend.

17   The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no

18   request to amend the pleading was made, unless it determines that the pleading could not possibly

19   be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)

20   (citations and internal quotation marks omitted).

21

22                                          **DISCUSSION**

23         Defendants forward three arguments in support of their motion to dismiss.  First, they

24   contend that, since the Supreme Court stated that the "Government is likely to succeed on its

25   argument that the Executive Order and Memorandum are lawful[,]" plaintiffs' claims necessarily

26   fail. *See Trump*, 145 S. Ct. at 2635.  Defendants seek dismissal of all seven claims in the amended

27   complaint.  Second, defendants argue that, "to the extent the Complaint alleges that RIFs and

28   reorganizations will or do violate statutory requirements[,] . . . that also further confirms that their

United States District Court
Northern District of California

1    claims are jurisdictionally barred" and must be channeled through the administrative review process

2    for challenging agency personnel actions. Dkt. No. 216 at 2. Third, defendants argue that the claims

3    against DOGE must be dismissed because plaintiffs have sued the wrong entity and that "DOGE is

4    a government-wide initiative and cannot be sued." *Id.* at 3.

5

6    **I.    The Supreme Court's Stay Order and the Motion to Dismiss**

7    As discussed above, on July 8, 2025, the Supreme Court stayed this Court's preliminary

8    injunction order pending disposition of the ongoing appeal of that order. *See Trump*, 145 S. Ct. at

9    2635. The Supreme Court granted the stay "[b]ecause the Government is likely to succeed on its

10   argument that the Executive Order and Memorandum are lawful—and because the other factors

11   bearing on whether to grant a stay are satisfied." *Id.* The Supreme Court declined to consider the

12   legality of Agency RIF and Reorganization Plans. *Id.* In a concurring opinion, Justice Sotomayor

13   wrote that the stay allows the district court to consider whether the ARRPs "can and will be carried

14   out consistent with the constraints of law." *Id.* (Sotomayor, J., concurring). Defendants now assert

15   that "the merits are clear" that the Executive Order 14210 and the OMB/OPM Memo are lawful and

16   that plaintiffs' claims therefore must be dismissed. Dkt. No. 216 at 8-9; *see also id.* at 13-14

17   (defendants arguing that "[t]he Court respectfully is obligated to treat the Executive Order as lawful

18   in deciding the motion to dismiss and in any future proceedings in this case").

19   Defendants' argument is not well-taken for several reasons. First, at the preliminary

20   injunction stage this Court expressly reserved ruling on Claims IV, VI, and VII, which plaintiffs

21   brought under the APA. Those claims did not form the basis for the Court's preliminary injunction

22   and therefore the merits of those claims were not before the Supreme Court when the government

23   sought an emergency stay of the injunction. Defendants now argue that Claim IV rests on the

24   legality of the OMB/OPM Memo. *See* Dkt. No. 216 at 17. Defendants also argue that Claims VI

25   and VII lack "a single allegation of unlawful agency activity that is independent of Plaintiffs'

26   allegations concerning the Executive Order and Memorandum." *Id.* at 18. Not so. The amended

27   complaint details the scale of implemented or intended agency actions and highlights the short

28   timeline agencies were under to ensure such large-scale changes did not affect their statutory

1    mandates.  AC ¶¶ 20, 172.  Even if the OMB/OPM Memo is lawful, plaintiffs plausibly plead how

2    federal agency defendants may struggle to comply with Administrative Procedure Act requirements

3    for reasoned decision making when forced to "act under unrealistic timeframes." *Id.* ¶ 431.   Claims

4    IV, VI, and VII—which did not form the basis for its preliminary injunction—will remain in the

5    case at this stage.

6          Additionally, as plaintiffs note in their opposition, defendants mis-read Claims II, III, and V

7    as relying solely on the legality of the Executive Order and OMB/OPM Memo in and of themselves.

8    Claims II and III challenge "actions and orders" from the implementing agencies beyond the memo,

9    including "direction, approval, or requirement imposed" by these agencies.  AC ¶¶ 396, 404.  These

10   challenges raise questions of fact as to what the implementing agencies told to whom and when.

11   Similarly, Claim V challenges approval decisions and directives from the implementing agencies

12   beyond the OMB/OPM Memo.  *Id.* ¶ 416.   Since the Supreme Court limited its ruling to the

13   Executive Order and OMB/OPM Memo, expressly declining to consider the legality of the plans or

14   the approval of plans, its order cannot serve as a basis to dismiss these claims at the pleading stage.

15   Whether or not plaintiffs will be able to prove what they allege is a question for another day.

16   Defendants' arguments lose sight of the applicable legal standard at this stage of the case: on a

17   motion to dismiss, the Court must take the plaintiffs' allegations as true and construe them in the

18   light most favorable to the plaintiffs.  *Usher*, 828 F.2d at 561.  In Claims II, III, and V, plaintiffs

19   have alleged actions beyond the facial legality of the Executive Order and OMB/OPM Memo.

20         Defendants' strongest argument is against Claim I, which alleges the President violated the

21   separation of powers when he issued Executive Order 14210.  Defendants argue that Claim I is a

22   "facial challenge" to the legality of the Executive Order and therefore no development of the factual

23   record is needed to resolve this claim.  Dkt. No. 252 at 1.  Plaintiffs do not seem to dispute this.  In

24   issuing the preliminary injunction, this Court went to lengths to explain the history of the President's

25   authority to engage in large-scale reductions in force and reorganizations of federal agencies and

26   found plaintiffs likely to succeed on the merits of their claim that Executive Order 14210 was *ultra*

27   *vires*. *See* Dkt. No. 124 at 27-34, 36-41.

28         Applying the legal standard for a motion to dismiss, the Court concludes that at this stage

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Claim I shall remain in the case. The accelerated pace of litigation in this case yielded the Supreme

2    Court's emergency stay order. In the absence of further direction from the Supreme Court, however,

3    the Supreme Court's predictive holding in an emergency stay application does not preclude a

4    plausible claim at the motion to dismiss stage. Simply put, a stay of a preliminary injunction based

5    on the "likely" legality of the Executive Order and OMB/OPM Memorandum, without reasoning,

6    cannot be interpreted as a dispositive ruling on the merits. A reasoned explication of the merits is

7    particularly important in light of the broad scope of the Executive Order at issue here.[2]

8         The Supreme Court has clearly distinguished between "interim equitable relief" and a final

9    disposition of a case. *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (citing

10   *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395, 101 (1981)). The Ninth Circuit has done the same.

11   *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 661 (9th Cir. 2021). Indeed, to do otherwise

12   would enshrine "justice on the fly," s*ee Nken v. Holder*, 556 U.S. 418, 427 (2009), and deprive the

13   parties and the public of the reasoned decision-making upon which the judicial branch rests, *see*

14   *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("The political branches of

15   government claim legitimacy by election, judges by reason."). For the reasons stated in the Court's

16   prior order, Dkt. No. 124 at 27-34, 36-41, the Court finds plaintiffs have plausibly stated a claim for

17   relief that the President's Executive Order 14210 is *ultra vires*.

18

19   **II.    Jurisdictional Challenge**

20        Separately, defendants argue that this Court lacks jurisdiction to consider challenges to

21   specific RIFs and reorganizations because those challenges must be channeled to administrative

22   adjudicative bodies. In its order granting a preliminary injunction, this Court considered and

23   rejected the channeling argument before proceeding to address the relevant factors in the preliminary

24

25        [2] Recently, some district court judges have been accused of disregarding controlling
     Supreme Court precedent. This Court does not intend to disregard or ignore Supreme Court
26   precedent. Rather, this Court is doing its best to adjudicate this case under the governing legal
     standards; here, there is little precedent to follow where the Supreme Court did not explain its
27   reasoning in the stay order. *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, No. 25A103, 2025
     WL 2415669, at *4 (U.S. Aug. 21, 2025) (Gorsuch, J., concurring in part and dissenting in part)
28   ("regardless of a decision's procedural posture, its 'reasoning—its *ratio decidendi*'—carries
     precedential weight in 'future cases'") (quoting *Ramos v. Louisiana*, 590 U.S. 83, 104 (2020)).

1    injunction context.  Dkt. No. 124 at 18-27.  In its review of the government's stay application, the

2    Ninth Circuit similarly found plaintiffs' claims to "plainly fall outside of the scope" of the

3    administrative review scheme established by Congress.  *Am. Fed'n of Gov't Emps.*, 139 F.4th at

4    1030.  And although the parties extensively briefed the jurisdictional challenge in the emergency

5    stay application with the Supreme Court, the Supreme Court's order did not address the

6    government's jurisdictional challenge.  *See Trump*, 145 S. Ct. at 2635 (granting stay "because the

7    other factors bearing on whether to grant a stay are satisfied").

8         Defendants now argue that because this Court stressed the government-wide nature of

9    plaintiffs' challenge in its jurisdictional analysis on the preliminary injunction, the Court's reasoning

10   "no longer applies" because of the Supreme Court's order.  Dkt. No. 216 at 22.  Once again, this

11   argument relies on an incorrect interpretation of the implications of that order and the Court rejects

12   that argument for the reasons stated in the previous section.  And while defendants seek to narrow

13   the Court's attention to challenges to specific RIFs, that framing ignores the nature of the operative

14   complaint's challenge against coordinated government-wide reorganizations and the role of specific

15   agencies in these efforts.

16        At this stage, the Court refers to its prior jurisdictional analysis, Dkt. No. 124 at 18-27,

17   reinforced by the Ninth Circuit and left untouched by the Supreme Court.  Defendants' motion to

18   dismiss on the basis of a lack of jurisdiction under Rule 12(b)(1) is denied.

19

20   **III.    Claims Against DOGE**

21        Lastly, defendants seek dismissal of Claims II-V asserted against "DOGE," the shorthand

22   way of referring to the administration's "Department of Government Efficiency."  These claims

23   allege that DOGE acted *ultra vires* (Claim II) and violated the Administrative Procedure Act by

24   acting in a manner that is not in accordance with law or exceeds statutory authority (Claim III), is

25   arbitrary and capricious (Claim IV), and has ignored requirements for notice and comment prior to

26   rulemaking (Claim V).  Defendants say DOGE cannot be sued because it is a government-wide

27   initiative, not an entity, consisting of "USDS, the USDS Temporary Organization, and Agency

28   DOGE Teams."  Dkt. No. 216 at 22.  Defendants further assert that USDS is not an agency subject

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    to the Administrative Procedure Act. *Id.* at 23-24. USDS is an entity within the Executive Office

2    of the President that used to be the United States Digital Service but has been renamed the United

3    States DOGE Service. AC ¶ 144.

4    Plaintiffs' amended complaint names the Department of Government Efficiency as a

5    defendant, along with Elon Musk as the "actual head" of DOGE and Amy Gleason as the "titular

6    Acting Administrator of DOGE," both of whom are sued in their official capacity. *Id.* ¶¶ 62-64.

7    The complaint lists numerous allegations that DOGE initiated and required reorganizations and

8    staffing reductions within the federal agency defendants. *See*, *e.g.*, *id.* ¶¶ 175, 182, 233, 239, 241,

9    268, 282-83. Since, in defendants' characterization, DOGE is a term that encompasses both the

10   centralized U.S. DOGE Service and DOGE teams within agencies, the present dispute raises factual

11   questions about whether the alleged directives originated within agencies or outside of them. To

12   the extent that decisions or directives came from DOGE teams within agencies, those actions are

13   more properly considered under Claims VI and VII—if as a factual matter the agency DOGE teams

14   were under the supervisory authority of agency leadership.[3] Notwithstanding any internal agency

15   actions, at the pleading stage, plaintiffs have pled sufficient facts to show that at least some orders

16   to cut have come from the centralized U.S. DOGE Service and its leadership. *See*, *e.g.*, *id.* ¶¶ 16,

17   182.

18   Nevertheless, the Court holds that "Department of Government Efficiency" is not a properly

19   named defendant but will allow plaintiffs leave to amend to more precisely identify the U.S. DOGE

20   Service when it references centralized DOGE action. Plaintiffs' naming convention has caused no

21   prejudice to defendants, nor was it unreasonable given the amorphous nature of DOGE and the

22   information available to plaintiffs. However, as discovery in this litigation proceeds, more precision

23   will help separate and identify the relevant challenged actions.

24   Defendants also argue that the U.S. DOGE Service has no statutory authority and only

25   limited responsibilities, making it exempt from the Administrative Procedure Act's provisions. Dkt.

26

27   ───────────────

28   [3] Plaintiffs concede, here and in prior filings, that "the actions of DOGE teams at agencies can be attributed to the agencies themselves[.]" Dkt. No. 250 at 21 n.12; *see also* Dkt. No. 218 at 13-15.

1   No. 216 at 24-25. However, as plaintiffs point out in their response, defendants' depiction of that

2   entity's role does not align with the facts as alleged in plaintiffs' complaint. Dkt. No. 250 at 22. To

3   repeat, when evaluating a motion to dismiss the Court must accept the allegations in the complaint

4   as true. *Usher*, 828 F.2d at 561. Through this lens, as alleged in the complaint, the U.S. DOGE

5   Service has exercised sufficient authority to make it subject to the Administrative Procedure Act.

6   And as the parties agree the U.S. DOGE Service has no statutory authority, *see* Dkt. No. 216 at 24,

7   plaintiffs have also plausibly alleged that that entity has acted *ultra vires*.

8        In sum, the Court finds the substance of plaintiffs' claims against DOGE sufficient to survive

9   a motion to dismiss, but plaintiffs must properly name the U.S. DOGE Service if it wants to move

10  these claims forward.

11

12                              **CONCLUSION**

13       For the foregoing reasons and for good cause shown, the Court hereby grants defendants'

14  motion to dismiss as to the allegations against DOGE, to the extent stated above. The balance of

15  the motion is denied.

16       Plaintiffs are granted leave to amend their allegations with regard to defendant DOGE.

17  Plaintiffs shall file their second amended complaint by September 30, 2025.

18

19       **IT IS SO ORDERED**.

20  Dated:  September 9, 2025

21                                                    _____

22                                                    SUSAN ILLSTON
                                                      United States District Judge

23

24

25

26

27

28

United States District Court
Northern District of California