# Exhibit B

…

 U.S. Office of Management and Budget

 U.S. Office of Personnel Management

# MEMORANDUM

| | |
|---|---|
| **TO:** | Heads of Executive Departments and Agencies |
| **FROM:** | Russell T. Vought, Director, Office of Management and Budget; Charles Ezell, Acting Director, Office of Personnel Management. |
| **DATE:** | February 26, 2025 |
| **RE:** | Guidance on Agency RIF and Reorganization Plans Requested by *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative* |

### I. Background

The federal government is costly, inefficient, and deeply in debt. At the same time, it is not producing results for the American public. Instead, tax dollars are being siphoned off to fund unproductive and unnecessary programs that benefit radical interest groups while hurting hard-working American citizens.

The American people registered their verdict on the bloated, corrupt federal bureaucracy on November 5, 2024 by voting for President Trump and his promises to sweepingly reform the federal government.

On February 11, 2025, President Trump's Executive Order *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative* (*Workforce Optimization*) "commence[d] a critical transformation of the Federal bureaucracy." It directed agencies to "eliminat[e] waste, bloat, and insularity" in order to "empower American families, workers, taxpayers, and our system of Government itself."

President Trump required that "Agency Heads shall promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law." President Trump also directed that, **no later than March 13, 2025**, agencies develop Agency Reorganization Plans.

The U.S. Office of Management and Budget ("OMB") and the U.S. Office of Personnel Management ("OPM") now submit guidance on these Agency RIF and Reorganization Plans ("ARRP"), along with the instruction that such plans be submitted to OMB and OPM.

### II. Principles to Inform ARRPs

ARRPs should seek to achieve the following:

1. Better service for the American people;

2. Increased productivity;

3. A significant reduction in the number of full-time equivalent (FTE) positions by eliminating positions that are not required;

4. A reduced real property footprint; and

5. Reduced budget topline.

Pursuant to the President's direction, agencies should focus on the maximum elimination of functions that are not statutorily mandated while driving the highest-quality, most efficient delivery of their statutorily-required functions.

Agencies should also seek to consolidate areas of the agency organization chart that are duplicative; consolidate management layers where unnecessary layers exist; seek reductions in components and positions that are non-critical; implement technological solutions that automate routine tasks while enabling staff to focus on higher-value activities; close and/or consolidate regional field offices to the extent consistent with efficient service delivery; and maximally reduce the use of outside consultants and contractors. When taking these actions, agencies should align closures and/or relocation of bureaus and offices with agency return-to-office actions to avoid multiple relocation benefit costs for individual employees.

Agencies should review their statutory authority and ensure that their plans and actions are consistent with such authority.

Agency heads should collaborate with their Department of Government Efficiency ("DOGE") team leads within the agency in developing competitive areas for ARRPs. In addition, the agency should specifically identify competitive areas that include positions not typically designated as essential during a lapse in appropriations. When making this determination, agencies should refer to the functions that are excepted from the Antideficiency Act (ADA) in the Agency Contingency Plans submitted to OMB in 2019 as the starting point for making this determination.

**III.    Available Tools**

In their ARRPs, agencies should employ all available tools to effectuate the President's directive for a more effective and efficient government and describe how they will use each.  Such tools include:

1. Continuing to comply with the hiring freeze outlined in the January 20, 2025 Presidential Memorandum *Hiring Freeze* or (with approval of OPM and OMB) implementing the general principle that, subject to appropriate exemptions, no more than one employee should be hired for every four employees that depart;

2. Establishing internal processes that ensure agency leadership has visibility and/or direct sign-off on all potential job offers and candidates prior to extending offers;

3. Eliminating non-statutorily mandated functions through RIFs (Appendix 1 contains a sample timeline);

4. Removing underperforming employees or employees engaged in misconduct, and continuing to evaluate probationary employees;

5. Reducing headcount through attrition and allowing term or temporary positions to expire without renewal;

6. Separating reemployed annuitants in areas likely subject to RIFs; and

7. Renegotiating provisions of collective bargaining agreements (CBAs) that would inhibit enhanced government efficiency and employee accountability.

ARRPs should also list the competitive areas for large-scale reductions in force, the RIF effective dates (which may be a date prior to when the plan is submitted), the expected conclusion of the RIFs, the number of FTEs reduced, and additional impact of RIFs such as cancellation of related contracts, leases or overhead.

Agencies should also closely consider changes to regulations and agency policies, including changes that must be pursued through notice-and-comment rulemaking, that would lead to the reduction or elimination of agency subcomponents or speed up the implementation of ARRPs.

### IV.   Phase 1 ARRPs

Each agency will submit a Phase 1 ARRPs to OMB and OPM for review and approval **no later than March 13, 2025**. Phase 1 ARRPs shall focus on initial agency cuts and reductions. Each Phase 1 ARRP should identify:

1. A list of agency subcomponents or offices that provide direct services to citizens. Such subcomponents or offices should be included in ARRPs to improve services to citizens while eliminating costs and reducing the size of the federal government. But for service delivery subcomponents or offices, implementation shall not begin until certified by OMB and OPM as resulting in a positive effect on the delivery of such services.

2. Any statutes that establish the agency, or subcomponents of the agency, as statutorily required entities. Agency leadership must confirm statutes have not been interpreted in a way that expands requirements beyond what the statute actually requires. Instead, statutes should be interpreted to cover only what functions they explicitly require.

3. All agency components and employees performing functions not mandated by statute or regulation who are not typically designated as essential during a lapse in appropriations (because the functions performed by such employees do not fall under an exception to the ADA) using the Agency Contingency Plans submitted to OMB in 2019 referenced above.

4. Whether the agency or any of its subcomponents should be eliminated or consolidated; and which specific subcomponents or functions, if any, should be expanded to deliver on the President's priorities.

5. The specific tools the agency intends to use to achieve efficiencies, including, as to each, the number of FTEs reduced and any potential savings or costs associated with such actions in Fiscal Years 2025, 2026 and 2027:

   a. Continuation of the current hiring freeze;
   b. Regular attrition (e.g., retirement, movement between agencies and the private sector);
   c. Attrition through enhanced policies governing employee performance and conduct;
   d. Attrition through the termination or non-renewal of term or limited positions or reemployed annuitants;
   e. Attrition achieved by RIFs. Please refer to Appendix 1 for specific steps and timing. For purposes of the Phase 1 ARRP, the agency should include the following information:

      i. The competitive areas and organizational components that the agency has targeted or will target for initial RIFs, and
      ii. The agency's target for reductions in FTE positions via RIFs.

6. A list by job position of all positions categorized as essential for purposes of exclusion from large-scale RIFs, including the number per each job position and total by agency and subcomponent.

7. The agency's suggested plan for congressional engagement to gather input and agreement on major restructuring efforts and the movement of fundings between accounts, as applicable, including compliance with any congressional notification requirements.

8. The agency's timetable and plan for implementing each part of its Phase 1 ARRP.

### V. Phase 2 ARRPs

Agencies should then submit a Phase 2 ARRP to OMB and OPM for review and approval **no later than April 14, 2025**. Phase 2 plans shall outline a positive vision for more productive, efficient agency operations going forward. Phase 2 plans should be planned for implementation by September 30, 2025. The Phase 2 plan should include the following additional information:

1. The agency's proposed future-state organizational chart with its functional areas, consolidated management hierarchy, and position titles and counts clearly depicted.

2. Confirmation that the agency has reviewed all personnel data, including each employee's official position description, four most recent performance ratings of record, retention service computation date, and veterans' preference status.

3. The agency's plan to ensure that employees are grouped, to the greatest extent possible, based on like duties and job functions to promote effective collaboration and management, and that the agency's real estate footprint is aligned with cross-agency efforts coordinated by GSA to establish regional federal office hubs.

4. Any proposed relocations of agency bureaus and offices from Washington, D.C. and the National Capital Region to less-costly parts of the country.

5. The competitive areas for subsequent large-scale RIFs.

6. All reductions, including FTE positions, term and temporary positions, reemployed annuitants, real estate footprint, and contracts that will occur in relation to the RIFs.

7. Any components absorbing functions, including how this will be achieved in terms of FTE positions, funding, and space.

8. The agency's internal processes that ensure agency leadership has visibility and/or direct sign-off on all potential job offers and candidates prior to extending offers.

9. The agency's data-driven plan to ensure new career appointment hires are in highest-need areas and adhere to the general principle that, subject to appropriate exemptions, no more than one employee should be hired for every four employees that depart. Until the agency has finalized its post-hiring-freeze plan, agencies should continue to adhere to the current hiring freeze.

10. Any provisions of collective bargaining agreements that would inhibit government efficiency and cost-savings, and agency plans to renegotiate such provisions.

11. An explanation of how the ARRPs will improve services for Americans and advance the President's policy priorities.

12. The framework and criteria the agency has used to define and determine efficient use of existing personnel and funds to improve services and the delivery of these services.

13. For agencies that provide direct services to citizens (such as Social Security, Medicare, and veterans' health care), the agency's certification that implementation of the ARRPs will have a positive effect on the delivery of such services. The certification should include a written explanation from the Agency Head and, where appropriate, the agency's CIO and any relevant program manager.

14. The programs and agency components not impacted by the ARRP, and the justification for any exclusion.

15. Plans to reduce costs and promote efficiencies through improved technology, including through the adoption of new software or systems, and elimination of duplicative systems.

16. Any changes to regulations and agency policies, including changes that must be pursued through notice-and-comment rulemaking, that would lead to the reduction or elimination of agency subcomponents, or speed up implementation of ARRPs.

17. The agency's timetable and plan for implementing each part of its Phase 2 ARRP, and its plan for monitoring and accountability in implementing its ARRPs.

Agencies should continue sending monthly progress reports each month on May 14, 2025, June 16, 2025, and July 16, 2025. All plans and reports requested by this memorandum should be submitted to OPM at tracking@opm.gov and OMB at workforce@omb.eop.gov; when submitting plans and reports, please ensure both OPM and OMB addresses are included on the message.

**VI.   Exclusions**

Nothing in this memorandum shall have any application to:

1. Positions that are necessary to meet law enforcement, border security, national security, immigration enforcement, or public safety responsibilities;

2. Military personnel in the armed forces and all Federal uniformed personnel, including the U.S. Coast Guard, the Commissioned Corps of the U.S. Public Health Service, and the Commissioned Officer Corps of the National Oceanic and Atmospheric Administration;

3. Officials nominated and appointed to positions requiring Presidential appointment or Senate confirmation, non-career positions in the Senior Executive Service or Schedule C positions in the excepted service, officials appointed through temporary organization hiring authority pursuant to 5 U.S.C. § 3161, or the appointment of any other non-career employees or officials, if approved by agency leadership appointed by the President;

4. The Executive Office of the President; or

5. The U.S. Postal Service.

Finally, agencies or components that provide direct services to citizens (such as Social Security, Medicare, and veterans' health care) shall not implement any proposed ARRPs until OMB and OPM certify that the plans will have a positive effect on the delivery of such services.

cc: Chief Human Capital Officers ("***CHCOs***"), Deputy CHCOs, Human Resources Directors, Chiefs of Staff, and DOGE team leads.

**Appendix 1- Sample RIF Timeline**

This sample timeline is prepared in accordance with the U.S. Office of Personnel Management **Workforce Reshaping Operations Handbook**. RIF timing may vary based on agency-specific requirements, collective bargaining agreements, and workforce considerations. Agencies can accelerate these timelines through parallel processing, securing OPM waivers to policy, expediting process steps, and streamlining stakeholder coordination.

**Step 1: Identification of Competitive Areas and Levels (by March 13, 2025 for Phase 1 ARRPs)**

1. Identify competitive areas and levels and determine which positions may be affected. If applicable, seek OPM waiver approval to adjust competitive areas within 90 days of the RIF effective date.
2. For Phase 1 ARRPs, this step should be completed no later than March 13, 2025.

**Step 2: Planning, Preparation & Analysis (up to 30 days)**

1. Explore use of VSIP/VERA.
2. Conduct an impact assessment.
3. Review position descriptions for accuracy, validate competitive levels, and verify employee retention data (e.g., veteran preference, service computation dates).
4. Develop retention register.
5. Draft RIF notices and seek OPM waiver approval for a 30-day notification period.
6. Develop transition materials.
7. Notify unions (if required).
8. Prepare congressional notification (if required).

**Step 3: Formal RIF Notice Period (60 days, shortened to 30 days with an OPM waiver)**

1. Issue official RIF notices.
2. Provide employees with appeal rights, career transition assistance, and priority placement options.
3. Execute any required congressional notification and notice to the Department of Labor, state, and local officials, if applicable.

**Step 4: RIF Implementation & Separation (Final Step)**

1. Officially implement separations, reassignments, or downgrades.
2. Provide final benefits counseling, exit processing, and documentation.
3. Update HR systems and notify OPM of personnel actions.