Exhibit A

Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel.: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*
[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO; AFGE LOCAL 1122; AFGE LOCAL 1236; AFGE LOCAL 2110; AFGE LOCAL 3172; SEIU LOCAL 521; SEIU LOCAL 1000; SEIU LOCAL 1021; ALLIANCE FOR RETIRED AMERICANS; AMERICAN GEOPHYSICAL UNION; AMERICAN PUBLIC HEALTH ASSOCIATION; CENTER FOR TAXPAYER RIGHTS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; COMMON DEFENSE CIVIC ENGAGEMENT; MAIN STREET ALLIANCE; NATURAL | Case No. 3:25-cv-03698-SI **SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1  RESOURCES DEFENSE COUNCIL, INC.;
   NORTHEAST ORGANIC FARMING
2  ASSOCIATION, INC.; VOTEVETS ACTION
   FUND INC.; WESTERN WATERSHEDS
3  PROJECT; COUNTY OF SANTA CLARA,
   CALIFORNIA; CITY OF CHICAGO,
4  ILLINOIS; MARTIN LUTHER KING, JR.
   COUNTY, WASHINGTON; HARRIS
5  COUNTY, TEXAS; CITY OF BALTIMORE,
   MARYLAND; CITY AND COUNTY OF SAN
6  FRANCISCO, CALIFORNIA; AND
   AMERICAN FOREIGN SERVICE
7  ASSOCIATION,
8
9           Plaintiffs,
10     v.
11  DONALD J. TRUMP, in his official capacity as
    President of the United States;
12  UNITED STATES OFFICE OF
    MANAGEMENT AND BUDGET;
13  RUSSELL VOUGHT, in his official capacity as
    Director of U.S. Office of Management and
14  Budget;
    UNITED STATES OFFICE OF PERSONNEL
15  MANAGEMENT;
    SCOTT KUPOR, in his official capacity as
16  Director of the U.S. Office of Personnel
    Management;
17  UNITED STATES DOGE SERVICE;
    AMY GLEASON, in her official capacity as
18  Acting Administrator of the U.S. DOGE
    Service;
19  UNITED STATES DEPARTMENT OF
    AGRICULTURE;
20  BROOKE ROLLINS, in her official capacity as
    Secretary of the U.S. Department of Agriculture;
21  UNITED STATES DEPARTMENT OF
    COMMERCE;
22  HOWARD LUTNICK, in his official capacity as
    Secretary of the U.S. Department of Commerce;
23  UNITED STATES DEPARTMENT OF
    DEFENSE;
24  PETE HEGSETH, in his official capacity as
    Secretary of the U.S. Department of Defense;
25  UNITED STATES DEPARTMENT OF
    ENERGY;
26
27
28

SUPPLEMENTAL COMPLAINT, No. 3:25-cv-03698-SI

CHRIS WRIGHT, in his official capacity as
Secretary of the U.S. Department of Energy;
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
ROBERT F. KENNEDY JR., in his official
capacity as Secretary of the U.S. Department of
Health and Human Services;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY;
KRISTI NOEM, in her official capacity as
Secretary of the U.S. Department of Homeland
Security;
UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT;
SCOTT TURNER, in his official capacity as
Secretary of the U.S. Department of Housing
and Urban Development;
UNITED STATES DEPARTMENT OF
JUSTICE;
PAM BONDI, in her official capacity as
Attorney General of the U.S. Department of
Justice;
UNITED STATES DEPARTMENT OF THE
INTERIOR;
DOUG BURGUM, in his official capacity as
Secretary of the U.S. Department of the Interior;
UNITED STATES DEPARTMENT OF
LABOR;
LORI CHAVEZ-DEREMER, in her official
capacity as Secretary of the U.S. Department of
Labor;
UNITED STATES DEPARTMENT OF
STATE;
MARCO RUBIO, in his official capacity as
Secretary of the U.S. Department of State;
UNITED STATES DEPARTMENT OF
TREASURY;
SCOTT BESSENT, in his official capacity as
Secretary of U.S. Department of Treasury;
UNITED STATES DEPARTMENT OF
TRANSPORTATION;
SEAN DUFFY, in his official capacity as
Secretary for the U.S. Department of
Transportation;
UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS;
DOUG COLLINS, in his official capacity as
Secretary of Veterans Affairs;

AMERICORPS (a.k.a. the CORPORATION
FOR NATIONAL AND COMMUNITY
SERVICE);
JENNIFER BASTRESS TAHMASEBI, in her
official capacity as Interim Agency Head of
AmeriCorps;
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY;
LEE ZELDIN, in his official capacity as
Administrator of U.S. Environmental Protection
Agency;
UNITED STATES GENERAL SERVICES
ADMINISTRATION;
MICHAEL RIGAS, in his official capacity as
Acting Administrator for U.S. General Services
Administration;
NATIONAL LABOR RELATIONS BOARD;
DAVID M. PROUTY, in his official capacity as
Member of the National Labor Relations Board;
WILLIAM COWEN, in his official capacity as
the Acting General Counsel of the National
Labor Relations Board;
NATIONAL SCIENCE FOUNDATION;
BRIAN STONE, in his official capacity as
Acting Director of the National Science
Foundation;
PEACE CORPS;
PAUL SHEA, in her official capacity as Chief
Executive Officer of the Peace Corps;
UNITED STATES SMALL BUSINESS
ADMINISTRATION;
KELLY LOEFFLER, in her official capacity as
Administrator of the U.S. Small Business
Administration;
UNITED STATES SOCIAL SECURITY
ADMINISTRATION;
FRANK BISIGNANO, in his official capacity as
Commissioner of the U.S. Social Security
Administration;
FEDERAL EMERGENCY MANAGEMENT
AGENCY; and
KAREN EVANS, in her official capacity as the
Senior Official Performing the Duties of FEMA
Administator,

     Defendants.

1

**INTRODUCTION**

2      435.    This filing supplements Plaintiffs' operative September 29, 2025 Second Amended

3   Complaint ("SAC"), pursuant to Federal Rule of Civil Procedure 15(d), by alleging facts pertinent to

4   Plaintiffs' existing claims that have occurred after the filing of the SAC, and by asserting additional

5   claims challenging such later actions by Defendants to dramatically reorganize and reduce the size of

6   the federal government through the continued implementation of February 11, 2025 Executive Order

7   14210 ("Implementing the President's "Department of Government Efficiency" Workforce

8   Optimization Initiative"), including but not limited to ongoing actions by Defendant Department of

9   Homeland Security ("DHS") to dramatically reduce the size of the Federal Emergency Management

10   Agency ("FEMA").

11      436.    During the time that this litigation has been pending, the Administration has issued a

12   new round of directives to implement the workforce reduction directives initially set forth in the

13   President's Executive Order 14210 and reflected in agency actions to implement those orders

14   (including the "Agency RIF and Reorganization Plans," "ARRPs").  On October 15, 2025, the

15   President issued a new directive, Executive Order 14356, to "protect and expand upon" its "historic

16   improvements" in workforce reduction.  Among other things, Executive Order 14356 required every

17   agency to create, implement and comply with  "Annual Staffing Plans."  EO 14356, §1 ("Ensuring

18   Continued Accountability in Federal Hiring").  Although "final" Annual Staffing Plans were due in

19   December 2025 (*id*. §2(c)(i)), they have not been publicly revealed.  Instead, Defendants have

20   decided, as they did with the ARRPs, to keep those Plans and any workforce reduction actions they

21   require secret.  The limited information that has been made public confirms that while injunctive

22   relief prevented many agencies from engaging in unlawful workforce reductions during 2025, some

23   of those agencies are poised to carry out further unlawful workforce reduction plans in 2026.[1]

24

25

26      ─────────────────────
         [1] Washington Post, *Here are the agencies that were cut the most by Trump, new data shows*

27   (Jan. 10, 2026) (OPM data reveals only 11,000 federal positions eliminated through RIFs in 2025),
     available at: available at: https://www.washingtonpost.com/politics/2026/01/10/federal-cuts-trump-

28   agencies-data/.

1        437.    In particular, Defendant DHS has already begun its unlawful implementation of these

2  workforce reduction directives by ordering FEMA to reduce itself *by half*.  Pursuant to that directive,

3  terminations of FEMA employees began on December 31, 2025, and over 10,000 positions are slated

4  to be eliminated in the coming months.  These DHS actions to transform and dismantle FEMA

5  (which Congress intended to be independent of DHS control, and which this Supplemental Complaint

6  adds as a Defendant) implement Defendants' continued scheme to downsize the federal government

7  in contravention of Congress's directives and Article I of the U.S. Constitution.  The planned

8  workforce cuts take direct aim at FEMA's mandate, reaffirmed and strengthened by Congress

9  following the tragic aftermath of Hurricane Katrina: "to reduce the loss of life and property and

10  protect the Nation from all hazards, including natural disasters, acts of terrorism, and other man-made

11  disasters, by leading and supporting the Nation in a risk-based, comprehensive emergency

12  management system of preparedness, protection, response, recovery, and mitigation."  6 U.S.C.

13  §313(b)(1).  And they will eviscerate the agency's congressionally mandated duty to maintain

14  capacity to "make sure America is equipped to prepare for and respond to disasters."[2]  Rather than

15  comply with these statutory mandates, Defendants' plan to shrink FEMA (and thereby push disaster

16  relief and recovery to state and local governments) risks the type of catastrophic tragedy that

17  Congress sought to ensure would never again happen in this country.

18        Plaintiffs therefore hereby plead as follows:

19  **SUPPLEMENTAL PARTIES**

20        438.    Plaintiff American Foreign Service Association ("AFSA") is a labor organization and

21  unincorporated association headquartered at 2101 E Street, NW, Washington, DC 20037.  AFSA was

22  founded in 1924 as a professional association and advocates for the Members of the United States

23  Foreign Service.  AFSA has been certified by the Foreign Service Labor Relations Board as the

24

25         [2] https://www.fema.gov/about.  As FEMA explains, its mission is to help people "before,
during, and after disasters" anywhere in the United States.  *See* FEMA Publication No. 1:  *We Are*
26  *FEMA:  Helping people before, during and after disasters* and *Somos FEMA: Ayudando a las*
*personas antes, durante y después de los desastres*, both available at:
27  https://www.fema.gov/about/action/pub-1.

28  SUPPLEMENTAL COMPLAINT, No. 3:25-cv-03698-SI            2

exclusive representative of active duty members of the Foreign Service employed by the U.S. Department of State and the U.S. Agency for International Development ("USAID"), as well as the Foreign Commercial Service in the Department of Commerce, Foreign Agricultural Service, Animal and Plant Health Inspection Service in the Department of Agriculture, and U.S. Agency for Global Media. AFSA has members and represents employees who live and work throughout the world, including members and employees who live and work within the Northern District of California. AFSA is added as a plaintiff to claims in the Second Amended Complaint and this Supplemental Complaint, on its own behalf and on behalf of its members.

439.    Defendant Karen Evans is the Senior Official Performing the Duties of FEMA Administrator and is sued in her official capacity as a Federal Agency Defendant. Evans is added as a Defendant to Claims VI and VII in the Second Amended Complaint and to all claims in this Supplemental Complaint.

440.    Defendant FEMA is a federal agency headquartered in Washington, D.C. FEMA is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1) and is sued as a Federal Agency Defendant. FEMA is added as a Defendant to Claims VI and VII in the Second Amended Complaint and to all claims in this Supplemental Complaint.

## SUPPLEMENTAL FACTUAL ALLEGATIONS

### I.    Executive Order 14356 and Annual Staffing Plans for 2026

441.    On October 15, 2025, President Donald J. Trump issued Executive Order 14356 ("Ensuring Continued Accountability in Federal Hiring"), continuing the series of Executive Orders that further the President's goal to effectuate a "critical transformation of the Federal bureaucracy" (EO 14210). Executive Order 14356 proclaimed:

> In just 8 months, my Administration has dramatically reduced the size of the Federal workforce … while prioritizing hiring in national security, immigration enforcement, public safety, and other roles that further my Administration's priorities and benefit American taxpayers. The results of this approach have surpassed the ratio of four departures for each new hire set forth in Executive Order 14210 of February 11, 2025 (Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative).

EO 14356, §1. The new EO announced further "policies and procedures" in order "[t]o protect and

expand upon these historic improvements, and to ensure that the Federal Government is optimally staffed to meet critical mission needs and implement the agenda that the American people elected me to pursue." *Id*.

442.    In the portion of the EO addressing those "policies and procedures" as relevant to his workforce reduction goals and this case, the President required every federal agency to create, implement, and comply with new "Annual Staffing Plans" that eliminate functions and positions the President and his Administration view as "unnecessary." *Id.*, §2(c).  Thus, the President ordered:  "In these plans, agencies shall seek to improve operational efficiency; *eliminate* duplicative or *unnecessary functions and positions*; reduce unnecessary or low-value contractor positions; promote employee accountability; enhance delivery of essential services; appropriately prioritize hiring for national security, homeland security, and public safety positions; and implement the recruitment initiatives described in the Merit Hiring Plan." *Id*. (emphasis added).

443.    Agencies were ordered to create Staffing Plans within 60 days of the order and to submit "final" plans to the Office of Management and Budget ("OMB") and Office of Personnel Management ("OPM").  *Id*.  The EO further ordered federal agencies to implement and "comply with" these Staffing Plans "throughout the fiscal year."  *Id*.  And the President further ordered each agency to submit "updates to OPM and OMB at the beginning of each quarter, beginning with the second quarter of the 2026 fiscal year, showing progress in implementing their Annual Staffing Plans." *Id.*

444.    The White House issued a "Fact Sheet" accompanying EO 14356, which confirmed the order to eliminate functions and positions the President and his Administration view as unnecessary:  "The Trump Administration is committed to streamlining the Federal Government, *eliminating unnecessary programs*, and reducing bureaucratic inefficiency."[3]

445.    On November 5, 2025, OPM and OMB issued a Memorandum to all federal agencies regarding implementation of EO 14356 that further confirmed the order to eliminate programs and

---

[3] Fact Sheet: President Donald J. Trump Ensures Continued Accountability in Federal Hiring (Oct. 15. 2025), available at: https://www.whitehouse.gov/fact-sheets/2025/10/fact-sheet-president-donald-j-trump-ensures-continued-accountability-in-federal-hiring/ (emphasis added).

staff the Administration views as unnecessary.  Citing EO 14210, the November 5 Memorandum explained:  "Since taking office, President Trump has made it a top priority to improve government efficiency, restore government accountability, and eliminate waste, bloat, and insularity."[4]  And it further proclaimed, "[t]hose efforts have been a tremendous success" and "[t]he Trump Administration has achieved unprecedented reductions in the Federal workforce."  *Id.*

446.    In relevant part, the November 5 OMB/OPM Memorandum directs:

The agency's Annual Staffing Plan shall additionally consider efficiencies that may be created by organizational restructuring, removal of unnecessary management layers, *elimination of* duplicative or *unnecessary functions and positions*, consolidation of administrative functions, reduction of unnecessary or low-value contractor positions, performance management of underperforming employees, effective and efficient distribution of workload across similar positions and shared skill sets, process streamlining and improvements, and new technologies.

*Id.* (emphases added).  The Memorandum also repeats the EO's instruction that agencies must comply with these Staffing Plans, directing that agencies may amend their Plans "in coordination" with OMB and OPM.  *Id.*

447.    The November 5 Memorandum directs:  "Annual Staffing Plans for FY 2026 shall be submitted to OMB and OPM no later than December 1, 2025."  *Id.*  Although that date has passed, and notwithstanding the President's directive that "final" plans be created and submitted to OMB/OPM, neither the federal agencies nor OMB/OPM have made public any of these Annual Staffing Plans.

448.    The Administration's statements and actions throughout 2025 make clear that the President intends this EO to require agencies to continue to "eliminate" programs that he and his advisors believe are "unnecessary," regardless of Congress's assessment of necessity or authorization or funding of those programs.  While both the President and OMB/OPM have proclaimed that the President's EO 14210 workforce reduction agenda has been a success, many of those plans were delayed in whole or in part by litigation and/or legislation throughout 2025.

---

[4] Available at : https://www.opm.gov/chcoc/latest-memos/guidance-on-executive-order-14356-ensuring-continued-accountability-in-federal-hiring.pdf.

449.    The original centerpiece of the President's agenda, as set forth in EO 14210, was planned mass terminations.  But government-wide mass terminations of probationary employees and large-scale planned reductions-in-force ("RIFs") at many agencies were were disrupted by injunctions.[5]  When agencies attempted to resume plans to RIF employees during the government shutdown, they were largely halted through litigation and legislation (including Section 120 of the Continuing Resolution (CR) that ended the shutdown).[6]

450.    Thus, as a result of these developments throughout 2025 and into early 2026, many federal agencies were required to hold off on reorganization and RIF plans that they otherwise would have implemented.

451.    However, the current CR language barring further RIFs is set to expire on January 30, 2026.  Pub. L. No. 119-37, §120, 139 Stat 495 (2025).  As 2026 begins, the Administration is poised to continue these efforts to downsize the government, including through additional mass terminations, if the CR language is not extended.

452.    For example, as recently as November 2025, Defendant Department of the Interior ("DOI") expressed to this Court that it intended to eliminate, via a massive RIF planned pursuant to EO 14210 and the Administration's workforce reduction agenda, thousands of employees across its sub-agencies.  *AFGE v. OMB*, Case No. 25-cv-08302-SI, ECF Nos. 67-1; 71-2.  DOI publicly revealed its plans to eliminate thousands of positions across the Bureau of Land Management, Bureau of Reclamation, Fish and Wildlife Service, the National Park Service, and the U.S. Geological Survey.  The level of these planned cuts would necessarily reach statutorily authorized and mandated programs and interfere with the Department's ability to perform statutorily required functions.  For example, the planned NPS cuts would have eliminated over 25 percent of positions in the Pacific

---

[5] *E.g., AFGE v. OPM*, 2025 WL 660053 (N.D. Cal. Feb. 28, 2025); 770 F.Supp.3d 1215 (N.D. Cal. 2025); 2025 WL 835337 (9th Cir.  March 17, 2025); 781 F.Supp.3d 920 (N.D. Cal. 2025); 799 F.Supp.3d 967 (N.D. Cal. 2025); *see also* ECF Nos. 85, 124; *AFGE v. Trump*, 139 F.4th 1020 (9th Cir. 2025).  Compliance declarations confirmed many previously terminated probationary employees were reinstated.  *AFGE v. OPM*, Case No. 25-cv-01780-WHA ECF Nos. 272-01 through 272-19.

[6] *AFGE v OMB*, 2025 WL 2936175 (N.D. Cal. October 15, 2025); 2025 WL 3018250 (N.D. Cal. October 28, 2025); 2025 WL 3485737 (N.D. Cal. Dec. 4, 2025); 2025 WL 3654116 (N.D. Cal. Dec. 17, 2025); *see also* Pub. L. No 119-37, §120, 139 Stat 495 (2025).

West Regional Office, which is responsible for more than 60 national parks already under siege because of short-staffing.[7]

453.    DOI explained that it was halting work on these long-planned RIFs due to this Court's injunctions during the federal government shutdown and then, later, CR Section 120 (Pub. L. No 119-37, §120, 139 Stat 495 (2025)).  ECF No. 67-1; 71-2.  The press has reported that at least some Interior staff recently "have been told to prepare for potential layoffs after Jan. 30."[8]

454.    Other agencies have also informed this Court that longstanding plans to implement the President's directive in EO 14210 were suspended only in light of Section 120 of the CR and/or this Court's injunctive orders enforcing that legislation, including Defendant Department of State's attempt to terminate large numbers of Foreign Service employees.

455.    At least one agency, DHS, on orders of DHS Secretary Kristi Noem, has decided to begin implementing its staffing plan for FEMA by ordering a dramatic 50 percent reduction in staff across the different categories of FEMA employees, and did not wait for the CR to expire before beginning to implement these cuts.

## II.    The Unlawful Downsizing Directive to the Federal Emergency Management Agency

456.    FEMA is the federal ageny charged by Congress with creating and sustaining a comprehensive national strategy, framework, and capacity to plan for, prevent, mitigate, protect against, respond to and recover from emergencies and disasters nationwide.  It does this by, among other things, deploying trained, experienced, and specialized staff from around the country at a moment's notice to sites of declared disasters and emergencies and continuing to support communities through recovery, and distributing and administering billions of dollars in funding to state and local governments.  FEMA staff provide services ranging from erecting housing for disaster victims, staffing disaster recovery centers, meeting with affected residents to help them access resources such as emergency food and shelter, processing longer-term recovery needs, and working

---

[7] *Id.*; *see also* New York Times, *At Yosemite, Rangers Are Scarce and Visitors Have Gone Wild* (Jan. 19, 2026), available at: https://www.nytimes.com/2026/01/19/us/politics/yosemite-national-park-california-staffing-cuts.html.

[8] E&E News by Politico, *More Interior layoffs coming? It's possible.* (Jan. 21, 2016), available at:  https://www.eenews.net/articles/more-interior-layoffs-coming-its-possible/.

with state and local governments to assess and rebuild public infrastructure and take other steps to respond and recover from disasters. FEMA staff provide services for wildfires, hurricanes, earthquakes, tornadoes, and terrorist and other man-made emergencies, and arrive equipped with resources and training needed to help communities recover and thereby prevent further harm.

### A.    The FEMA Workforce

457.    Congress has authorized FEMA to employ civil service employees subject to the requirements of Title 5 ("civil service employees") as well as other full-time employees who are not subject to Title 5. Specifically, the 1988 Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act") authorized agencies performing disaster work "to appoint and fix the compensation of such temporary personnel as may be necessary, without regard to the provisions of Title 5 governing appointments in competitive service." 42 U.S.C. § 5149(b)(1).

458.    The Stafford Act's hiring provisions allow FEMA the flexibility to hire many employees, including for specific types of expertise demanded by disaster management, under a more streamlined process than the civil service process. FEMA's non-civil service statutory employees are commonly referred to as "Stafford Act employees," are funded through the non-discretionary, mandatory funding established by Congress, and are exempt from furlough during government shutdowns.

459.    FEMA's Stafford Act employees fall into two categories: the Cadre of On-Call Response/Recovery ("CORE") and reservists. CORE employees are full-time workers who are hired for two- to four-year terms, renewable according to agency need, and who work across disasters. Reservists are on-call employees who may be activated in particular emergencies, and are also renewable according to agency need. Stafford Act employees are funded through separate dedicated, non-discretionary appropriations (as part of the Disaster Relief Fund).[9]

---

[9] FEMA can also augment its capacity through the DHS Surge Capacity Force, which deploys volunteers employed by DHS, not FEMA, for particular disasters (and through additional short-term local hires). On information and belief, the DHS Surge Capacity Force is largely unavailable for the foreseeable future in light of other DHS demands.

460.    FEMA's Stafford Act employees are more than triple the number of regular civil service employees.  According to the most recent Government Accounting Office report on FEMA staffing, FEMA reported employing 23,620 total staff as of June 1, 2024, of which only approximately 5,100 were permanent civil service employees.[10]  As of fiscal year 2022, FEMA employed approximately 5,000 Title 5 employees, 9,000 Stafford Act CORE employees, 8,000 Stafford Act reservists, and approximately 1,000 others.[11]

461.    All FEMA employees, including CORE employees, are assigned to one or more of the following position categories: incident management (also called the disaster workforce, comprised of individuals who "deploy to disaster sites to administer federal emergency response and recovery programs"), incident support, ancillary support, and mission essential (which all provide support services to deployed incident management staff, as well as to FEMA more generally).[12]

462.    CORE employees perform roles across nearly every aspect of FEMA's required functions, but the vast majority of the thousands of CORE and reservist employees are assigned to the disaster workforce, which provides services directly to the public and to state, local and tribal governments.

463.    The disaster workforce is further divided into 23 subject matter "cadres."  Of the cadres, the biggest are individual assistance, public assistance, logistics, hazard mitigation, and disaster survivor assistance, which collectively make up about two-thirds of FEMA's disaster workforce.[13]

---

[10] Government Accounting Office, *Disaster Assistance High-Risk Series: Federal Response Workforce Readiness,* Report GAO-25-108598 (September 2025) at *9, available at: https://www.gao.gov/products/gao-25-108598.

[11] Government Accounting Office, *FEMA Hiring and Staff Shortages*, Report GAO-23-105663  (May 2023) at *6, available at:  https://www.gao.gov/assets/gao-23-105663.pdf.

[12] *Id.*

[13] *Id.* at 8.  The complete list of cadres also includes: Acquisitions, Alternative Dispute Resolution, Civil Rights, Disability Integration, Disaster Emergency Communications, Disaster Field Training Operations, Disaster Survivor Assistance, Environmental Historic Preservation, External Affairs, Field Leadership, Financial Management, Hazard Mitigation, Human Resources, Individual Assistance, Information Technology, Logistics, Interagency Recovery Coordination, Office of Chief Counsel, Operations, Planning, Public Assistance, Safety, and Security.  *Id.*

1    464.    *Individual Assistance Cadre*.  CORE and reservist employees assigned to FEMA's

2    individual assistance cadre perform work to "ensure[] that individuals and families affected by

3    disasters have access to the full range of FEMA programs and information in a timely manner."[14]

4    This includes "communicating with applicants about their case status and disaster assistance

5    programs; coordinating disaster resources with state, local and non-governmental organizations;

6    developing partnerships with stakeholders; and supporting the delivery of lifesaving, life-sustaining

7    services."[15]  FEMA's individual assistance program includes mass care/emergency assistance,

8    individuals and households program assistance, disaster case management, crisis counseling

9    assistance, disaster legal services, disaster unemployment assistance, and voluntary agency

10    coordination.[16]

11    465.    *Public Assistance Cadre*.  CORE and reservist employees assigned to FEMA's public

12    assistance cadre provide "assistance to state, local, Tribal Nation, and territorial (SLTT) governments

13    and certain types of private nonprofit (PNP) organizations so that communities can quickly respond

14    to and recover from major disasters or emergencies."[17]  Specifically, these employees "provide[]

15    supplemental federal grant assistance for debris removal, emergency protective measures, and the

16    restoration of disaster-damaged, publicly owned facilities, and specific facilities of certain PNP

17    organizations."[18]

18    466.    *Logistics Cadre*.  CORE and reservist employees assigned to FEMA's logistics cadre

19    "coordinate[] and monitor[] all aspects of resource planning, movement, ordering, tracking, and

20    property management of Initial Response Resources, teams, and accountable property during the life

21    of an incident."  This cadre is "responsible for the operational readiness in support of FEMA's

22    incident workforce."[19]

---

23    [14] https://www.fema.gov/careers/paths/cadres.

24    [15] *Id.*

25    [16] FEMA, Individual Assistance Program and Policy Guide (IAPPG) (May 2021), available
at: https://www.fema.gov/sites/default/files/documents/fema_iappg-1.1.pdf.

26    [17] FEMA, Public Assistance Program and Policy Guide  (Jan. 6, 2025), available at:
https://www.fema.gov/sites/default/files/documents/fema_pa_pappg-5.0-amended.pdf.

27    [18] *Id.*

28    [19] https://www.fema.gov/careers/paths/cadres.

467.     *Hazard Mitigation Cadre*.  CORE and reservist employees assigned to FEMA's hazard mitigation cadre "promote risk reduction activities from all-natural hazards through community engagement" and "promote[] awareness of the benefits of hazard mitigation through public education, encourage[] private sector partnership, and provide[] technical assistance to local and state governments in the form of grants management, community planning, and floodplain management."[20]

468.     Finally, FEMA's Disaster Survivor Assistance is the "boots on the ground" cadre that "establishes a timely presence at every disaster, primarily focusing on addressing the needs of disaster survivors by collecting targeted information to support leadership and operational decision-making, providing accessible, in-person case-specific information and referrals, providing referrals to whole community partners, as needed, and identifying disability-inclusive public information needs so strategic messaging can be developed and disseminated."[21]

469.     Statutorily mandated "emergency response teams" and "Regional Office Strike teams" are now referred to by FEMA as "Federal Incident Management Assistance Teams" ("IMATs").[22] These teams are also primarily staffed with CORE employees.[23]

470.     Although CORE employees are hired under Stafford Act statutory authority for a set term, their employment has historically been routinely renewed.  Many CORE employees have worked for FEMA for many years, if not decades.  Until recently, FEMA has routinely renewed CORE employees, based on "agency need."

471.     When CORE and reservist employees are hired, they are provided a "not-to-exceed" ("NTE") date. This date is recorded in standardized employment records, including the SF-52 "Request for Personnel Action" form.  Beginning 90 days prior to an employee's NTE, the employee

---

[20] *Id.*

[21] *Id.*

[22] Government Accounting Office, Actions to Implement the Post-Katrina Act, Report GAO-09-59R, available at:  https://www.gao.gov/assets/gao-09-59r.pdf.

[23] Congressional Research Service, *Deployable Federal Assets Supporting Domestic Disaster Response Operations: Summary and Considerations for Congress* (May 13, 2015) at *21 & n.77, available at:  https://www.congress.gov/crs_external_products/R/PDF/R43560/R43560.8.pdf.

and supervisor submit renewal paperwork that includes the supervisor's approval.  Historically,
CORE employee renewals have been routinely approved by FEMA supervisors with no DHS
involvement.[24]

### B.    DHS December 2025 Decision to Cut FEMA Staffing in Half

#### 1.    DHS Gives FEMA Target Cuts

472.    In December 2025, DHS moved forward with a plan to cut FEMA's workforce in half,
beginning on New Year's Eve.

473.    On December 23, 2025, FEMA management employees across the agency were sent
an email directing them to plan for a 50 percent reduction of the FEMA workforce in the coming
months.[25]  While the instructions were described as a "planning exercise," the email required
management to identify which employees to retain as necessary and which could be terminated.

474.    The email attached a spreadsheet for management to complete with "target" cuts to be
achieved in the FY 26 fiscal year prepopulated to total 50 percent of the workforce (a total reduction
of 11,567 positions from the 9/30/2025 Workforce Count Total of 23,067).

475.    The sheet included specific target reductions to comprise that 50 percent cut in FEMA
employees, which included the following: a reduction of 15 percent for "Permanent Fulltime" (i.e.
Title 5 civil service) from 4,956 to 4,200 positions; a reduction of 41 percent for "Disaster Fulltime"
from 10,571 to 6,200; and a reduction of 85 percent for the "Surge Workforce" from 7,540 to 1,100.[26]
The reductions were then further broken down by agency sub-component.  The attachment is
reproduced here:

---

[24] *See, e.g.*, FEMA, *FEMA Cadre Management Guide* (October 2014), at *13, available at:
https://www.fema.gov/sites/default/files/2020-07/FEMA_Cadre_Management_Guide1-10282014.pdf
(explaining that first line supervisors of incident management CORE employees are responsible for,
in consultation with second line supervisors, "terminat[ing] or renew[ing] the appointments of IM
COREs and other employees under direct supervision as required based on lack of work or other
mission-related needs").

[25] CNN, *FEMA planning exercise envisioned deep workforce cuts, adding to uncertainty
around agency's future* (Jan. 5, 2026), available at: https://www.cnn.com/2026/01/05/politics/fema-
deep-workforce-cuts-uncertainty.

[26] This spreadsheet is ambiguous, but from the numbers set forth therein appears to include
Stafford Act reservists in the "surge" category (not the "surge" force, which includes individuals who
are not employed by FEMA).

Reference Table of September 30, 2025 Actuals and FY26 Targets

| | Target Workforce Total Count | Percent of Workforce Total | 9/30/2025 Workforce Count Totals | Total Count Reduction | Total Percent Reduction |
|---|---|---|---|---|---|
| Total | 11,500 | | 23,067 | 11,567 | |
| Permanent Full Time | 4,200 | 36.5% | 4,956 | 756 | 15% |
| Disaster Full Time | 6,200 | 53.9% | 10,571 | 4,371 | 41% |
| Surge Workforce | 1,100 | 9.6% | 7,540 | 6,440 | 85% |

| MET | 9/30/2025 Total | Percentage of 9/30/25 Workforce | Target Count | Target Percentage by MET | Target of Overall Workforce |
|---|---|---|---|---|---|
| 1 Advisor to S1 and POTUS | 188 | 1% | 115 | | 1% |
| Permanent Full Time | 146 | 78% | 92 | 80% | 1% |
| Disaster Full Time | 42 | 22% | 23 | 20% | 0% |
| Surge Workforce | | 0% | 0 | 0% | 0% |
| 2 Regional Coordination | 1,961 | 9% | 1150 | 10% | 10% |
| Permanent Full Time | 485 | 25% | 460 | 40% | 4% |
| Disaster Full Time | 1,395 | 71% | 690 | 60% | 6% |
| Surge Workforce | 81 | 4% | 0 | 0% | 4% |
| 3 Continuity | 486 | 2% | 460 | 99% | 4% |
| Permanent Full Time | 483 | 99% | 455 | 99% | 4% |
| Disaster Full Time | 3 | 1% | 5 | 1% | 0% |
| Surge Workforce | | 0% | 0 | 0% | 0% |

476.    The December 23 email informed agency management that these actions were being taken consistent with the OMB/OPM memorandum implementing Executive Order 14356.

477.    As discussed *supra*, the October 15 Executive Order and November 5 OMB/OPM Memorandum required agencies including DHS to submit an "Annual Staffing Plan" that reflected proposed reductions by no later than December 1, 2025 and quarterly updates thereafter.  Neither OMB, OPM, nor DHS has made public any Annual Staffing Plan for DHS or FEMA.  Neither DHS nor FEMA has disclosed these "final" plans to FEMA employees.  On information and belief, the DHS Annual Staffing Plan includes the plan to cut FEMA staff in half.

478.    The December 23 email informed FEMA management that the internal deadline for completion of this required "planning exercise" was December 31, 2025.  As explained *infra*, that is also the date that FEMA began implementing these cuts by eliminating positions.

479.    On information and belief, the identified staffing reduction "targets" were not the result of any assessment of workforce need or FEMA's statutory authorizations or mandates, and were not recommended by FEMA officials.  Rather, officials were reportedly "stunned and pointed out that getting rid of nearly half of the nation's disaster workforce would greatly harm communities in various stages of disaster recovery."[27]

---

[27] Washington Post, *Emails outline potential cuts affecting thousands of FEMA disaster responders* (Jan. 5, 2026), available at: https://www.washingtonpost.com/weather/2026/01/05/fema-disaster-core-cuts-dhs-emails/.

480.    The mechanism by which DHS has decided to achieve the designated 41 percent reduction in CORE employees includes a DHS order to FEMA not to renew CORE employees with NTEs beginning on January 1, 2026.

481.    The FEMA human resources website states:  **"FEMA's authority to extend CORE appointments ended on December 31, 2025."**



482.    The FEMA human resources website likewise confirms that CORE renewals require completed and signed forms to be submitted to the FEMA OCHCO ("Office of Chief Human Capital Officer") for "weekly" routing to the "DHS OCHCO and FEMA leadership for concurrence" and then "for S1 approval."  "S1" stands for Secretary Noem.  FEMA management is instructed that they should submit the forms "as soon as you verify a need" for the positions.  The form that must be attached to any FEMA recommendation to renew CORE employment now contains a space for the signature of DHS Secretary Noem.[28]



483.    Never before in the history of FEMA has DHS attempted to eliminate FEMA's authority to renew any CORE positions.  Never before in the history of FEMA has DHS required DHS Secretary approval for any FEMA renewal.  Nor has DHS ever instituted a policy denying those renewals notwithstanding FEMA's determination of agency need.

---

[28] New York Times, *FEMA Staff Bracing for Dismissal of 1,000 Disaster Workers (Jan. 13, 2026)*, available at: https://www.nytimes.com/2026/01/06/climate/fema-staff-cuts-1000-workers.html.

## 2.    DHS Orders FEMA to Begin Cuts on New Year's Eve

484.    At the direction of DHS, FEMA began implementing Secretary Noem's blanket denial of CORE renewals on New Year's Eve.  On information and belief, FEMA supervisors were instructed by DHS not to provide advance notice to employees.

485.    Thus, on December 31, 2025, FEMA sent emails to certain CORE employees saying their positions "would not be renewed" and "therefore, your services will no longer be needed" after their NTE dates in early January.  The messages were sent to work email addresses and stated:

> The purpose of this message is to notify you that your appointment as a [Position] of On-Call Response/Recovery Employee (CORE), will not be renewed.  Your current appointment as a CORE expires [DATE]; therefore, your services will no longer be needed beyond this date.

Individuals were then informed that they must contact FEMA human resources "for assistance with out-processing" and "must turn in all Government-issued equipment, including but not limited to cellular phones, laptop computers, keys, credentials, access or identification cards, Government travel credit/chargecard (cut credit card in half), and any FEMA office files or back-up (key drives/discs) computer files you have in your possession no later than close of business."  On information and belief, affected employees received emails regarding termination of their services and immediately lost systems access.  On information and belief, some employees who received these non-renewal notices were deployed on-site working on hurricane relief efforts and were abruptly terminated from federal employment with no notice.  According to the Washington Post, some employees learned they were terminated on New Year's Day (a federal holiday), and were informed to return their equipment by January 2.[29]

486.    After CNN published an article detailing the cuts on January 2, 2026, the DHS spokesperson described the non-renewals as "a routine staff adjustment of 50 staff out of 8,000."[30] The spokesperson continued:  "The CORE program consists of term-limited positions that are

[29] Washington Post, *Emails outline potential cuts affecting thousands of FEMA disaster responders* (Jan. 5, 2026), available at: https://www.washingtonpost.com/weather/2026/01/05/fema-disaster-core-cuts-dhs-emails/.

[30] CNN, *Exclusive: DHS begins slashing FEMA disaster response staff as 2026 begins* (Jan. 2, 2026), available at: https://www.cnn.com/2026/01/01/politics/dhs-cutting-fema-disaster-response-staff.

1  designed to fluctuate based on disaster activity, operational need, and available funding."  And the

2  spokesperson falsely stated: "CORE appointments have always been subject to end-of-term decisions

3  consistent with that structure and there has been no change to policy."  DHS's spokesperson did not

4  deny that DHS (not FEMA) had made the decision not to renew, and ignored that FEMA had actually

5  *recommended* renewals.

6       487.    Non-renewals of CORE employees are not "routine."  To the contrary, CORE

7  appointments are routinely renewed as positions for which FEMA has determined there is a "need."

8  Until this recent DHS directive, FEMA policy and practice has been to approve renewals without

9  DHS involvement, consistent with statutory restrictions discussed further *infra*.

10       488.    The affected FEMA CORE employees, who had submitted renewal paperwork

11  beginning 90 days in advance of their NTEs and obtained supervisor approval, were given no

12  advance notice of these abrupt non-renewals.

13       489.    The initial New Year's Eve notices were sent to approximately 65 individuals,

14  including employees represented by AFGE.  Approximately 900-1,000 FEMA CORE employees

15  have NTE dates in January 2026, including employees represented by AFGE.  Given the number of

16  CORE employees and the distribution of NTE dates throughout the year, hundreds if not more than

17  1,000 FEMA employees, including employees represented by AFGE, have NTE dates every month.

18       490.    Both DHS and FEMA are aware of the number and distribution of FEMA CORE

19  employees by NTE dates.  Both DHS and FEMA are aware of the negative impact these staffing cuts

20  will have on the agency's ability to perform mandated services.

21       491.    During January 2026, to implement this DHS non-renewal policy and directive,

22  FEMA conducted meetings across the agency in which supervisors were informed that CORE

23  employees will not be renewed, even if actively working on rebuilding efforts for recent disasters.[31]

24

25  [31] Federal News Network*, Concerns mount over FEMA staff reductions* (Jan. 8, 2026),
   available at: https://federalnewsnetwork.com/hiring-retention/2026/01/concerns-mount-over-fema-

26  staff-reductions/; *see also* NPR, *FEMA is getting rid of thousands of workers in areas recovering
   from disasters* (Jan. 16, 2026), available at: https://www.npr.org/2026/01/16/nx-s1-5677605/fema-

27  cuts-jobs-trump; Washington Post, *Emails outline potential cuts affecting thousands of FEMA*

28

Supervisors at FEMA have been told that thousands of FEMA employees will lose their positions in the coming months.[32] FEMA supervisors are "advising their staff to prepare for the elimination of 1,000 jobs this month [January] as part of changes that Kristi Noem, the secretary of the Department of Homeland Security, is overseeing at the agency, according to three people with knowledge of the discussions."[33]

492.    All FEMA CORE employees who are facing non-renewal as a result of this DHS policy are in positions for which FEMA supervisors have recommended renewal and for which renewal paperwork has been submitted.[34] But after this submission and approval, DHS has been denying the renewals. DHS, not FEMA, is making the decisions not to renew these employees.

493.    The Washington Post reported that one FEMA supervisor wrote to human resources stating "This must be a mistake, … explaining that they had approved their employee's renewal and sent the paperwork through the proper channels."[35]

494.    Another supervisor overseeing recovery work for Hurricane Helene "expressed concern and confusion over losing a staffer, stating in a New Year's Eve note to human resources that 'based on the attached emails and form,' the worker's "appointment should be renewed.'" *Id*. That person wrote further: "'I would like to resolve this ASAP, as this is a disappointing and confusing email to get right before a holiday.'" *Id*. The Post reports that a top FEMA human resources official responded that the situation was "out of their hands." *Id*.

_____

*disaster responders* (Jan. 5, 2026), available at: https://www.washingtonpost.com/weather/2026/01/05/fema-disaster-core-cuts-dhs-emails/ (supervisors told there is "no plan" to renew any CORE employees in January 2026).

[32] *Id*.

[33] New York Times, *FEMA Staff Bracing for Dismissal of 1,000 Disaster Workers*, (Jan. 13, 2026), available at: https://www.nytimes.com/2026/01/06/climate/fema-staff-cuts-1000-workers.html.

[34] NPR, *supra* n. 31; *see also* Federal News Network, *Concerns mount over FEMA staff reductions* (Jan. 8, 2026), available at: https://federalnewsnetwork.com/hiring-retention/2026/01/concerns-mount-over-fema-staff-reductions/.

[35] Washington Post, *Emails outline potential cuts affecting thousands of FEMA disaster responders* (Jan. 5, 2026), available at: https://www.washingtonpost.com/weather/2026/01/05/fema-disaster-core-cuts-dhs-emails/.

495.    As shown by DHS and FEMA's statements that Secretary Noem must approve any renewals and press statements by individuals within FEMA with knowledge of the decision-making process, the directive not to renew any CORE positions, as well as the decision to implement the target overall cut of 41 percent of CORE and 85 percent of reservists, are decisions made by Secretary Noem.

496.    The elimination of CORE positions on a rolling basis based on NTE is indiscriminate and unrelated to any workforce requirements, actual agency need, or statutory mandate.  The lack of planning for this directive and the lack of notice to FEMA supervisors and employees prior to eliminating these positions will exacerbate the adverse impacts on the services the agency is required to provide.  On information and belief, neither DHS nor FEMA conducted any evaluation of workforce need in deciding to reject approval by NTE date, and indeed, have acted contrary to recommendations for renewal by FEMA supervisors.

497.    The Washington Post reports that DHS and FEMA officials, including Secretary Noem and "Senior Official Acting as FEMA Administrator" Evans, discussed whether to "to extend positions for a month or two until the agency has had enough time to review the need for the roles," and that the suggestion was rejected by Secretary Noem.[36] .

498.    The DHS statements that deny the existence and scope of these cuts, including claims that neither DHS nor FEMA has made any final decision regarding cuts to FEMA staffing and that neither DHS nor FEMA are using "percentage-based" targets or other specific targets, are false.[37] DHS is not telling the public or its own employees the truth about its decisions to impose ongoing drastic cuts to FEMA CORE staff.

499.    The targeted cuts of 85 percent of Reservist positions (totaling 6,440 positions) will all occur in May 2026 because, on information and belief, all Reservists have the same NTE renewal date in May 2026.

---

[36] *Id.*

[37] The Guardian, *Fema staff outraged by draft plans for deep cuts under Trump* (Jan. 8, 2026), available at: https://www.theguardian.com/us-news/2026/jan/08/fema-staff-cuts-trump.

500.     After releasing hundreds of CORE employees in January 2026, DHS decided on January 22, 2026 to "pause" implementation in light of a forecasted serious winter storm.[38]  DHS had already sent non-renewal notices to a large number of employees earlier that very day.  Then, following meetings with Governors regarding the impending storm, DHS Secretary Noem reportedly decided to pause the off-boarding.  DHS, when asked by the press, "would not comment on how long the pause would last."[39]

501.     The Washington Post reported on January 23, 2026 that DHS's prior policy of requiring FEMA to submit justifications of the FEMA renewals along with the request to renew has been changed.  The Post reported the existence of a new January 22, 2026 memo in which FEMA officials "said that DHS will be making the calls without collecting justifications," and if DHS grants any extensions, "they will be limited to 90 days."[40]

## C.     Prior Administration Efforts to Eliminate FEMA

502.     These actions implement the Administration's longstanding stated goal of eliminating or radically reforming FEMA based on its conclusion that FEMA is unnecessary and/or not aligned with the President's policy priorities, consistent with the President's directives in EO 14210 and EO 14356.  The express aim of the Administration is to eliminate spending on disaster relief and recovery and push those responsibilities to state and local governments.

503.     Since he took office on January 20, 2025, the President has declined to nominate anyone for Senate confirmation to run FEMA, as required by statute, which also mandates that the nominee have "a demonstrated ability in and knowledge of emergency management and homeland security" and "not less than 5 years of executive leadership and management experience in the public

---

[38] Washington Post, *DHS pauses cuts to FEMA as massive winter storm barrels in* (Jan. 23, 2026), available at: https://www.washingtonpost.com/weather/2026/01/23/dhs-pauses-fema-cuts-storm/; CNN, *FEMA halts terminations of disaster workers as agency prepares for massive winter storm* (Jan. 22, 2026), available ar: https://www.cnn.com/2026/01/23/politics/fema-halts-terminations-winter-storm.

[39] W. Post, *supra* n.39.

[40] *Id*.

1    or private sector." 6 U.S.C. §313(c).[41]  Since January 20, 2025, various individuals have held the role

2    of Senior Official Performing the Duties of FEMA Administrator, including the following: Cameron

3    Hamilton (from January 2025 to May 8, 2025); David Richardson (from May 9, 2025 to November

4    17, 2025); and Karen Evans (from December 1, 2025 to the present).  Neither Richardson nor Evans

5    possessed the statutorily required experience to be FEMA Administrator.[42]

6          504.    President Donald J. Trump has repeatedly expressed his belief that FEMA should be

7    eliminated and disaster relief returned to the states and local governments, which would be contrary

8    to Congressional mandate.  For example, when touring Los Angeles fire disaster sites in early 2025,

9    President Trump stated that "FEMA is a very expensive, in my opinion, mostly failed situation."[43]  In

10   June 2025, discussing hurricane season, the President stated, "We want to wean off of FEMA, and we

11   want to bring it back to the state level."[44]

12         505.    On January 24, 2025, President Trump issued Executive Order 14180 creating a

13   "Council to Assess the Federal Emergency Management Agency" to engage in a "full-scale review"

14   of FEMA for the purpose of "evaluating whether FEMA's bureaucracy in disaster response ultimately

15   harms the agency's ability to successfully respond."  90 Fed. Reg. 8743 (Jan. 24, 2025).  The

16   President directed the Council to include "an evaluation of whether FEMA can serve its functions as

17   a support agency, providing supplemental Federal assistance, to the States rather than supplanting

18   State control of disaster relief."  The President appointed Secretary Noem and Department of Defense

19   Secretary Pete Hegseth as the co-chairs of the Council, and required a full report within 180 days of

20   the Council's first meeting.

---

[41] June 9, 2025 Letter from United States Senators to President Donald J. Trump, available at: https://www.welch.senate.gov/wp-content/uploads/2025/06/Letter-to-White-House-on-Absence-of-FEMA-Administrator.pdf.

[42] CNN, *'She's the enforcer': New FEMA chief led effort to rein in agency spending, strip funding from Muslim groups, sources say* (Nov. 24, 2025), available at: https://www.cnn.com/2025/11/24/politics/karen-evans-fema-chief-exclusive.

[43] NPR, *Trump wants states to handle disasters. States aren't prepared* (March 21, 2025), available at: https://www.npr.org/2025/03/21/nx-s1-5327595/trump-order-fema-states-disaster-response.

[44] NPR, *The Trump administration says it wants to eliminate FEMA. Here's what we know* (June 26, 2025), available at: https://www.npr.org/2025/06/26/nx-s1-5430469/faq-fema-elimination.

506.    On March 19, 2025, the President issued a further Executive Order 14239 (Achieving Efficiency Through State and Local Preparedness) declaring the official "policy" of the United States to be that "State and local governments and individuals play a more active and significant role in national resilience and preparedness, thereby saving American lives, securing American livelihoods, reducing taxpayer burdens through efficiency, and unleashing our collective prosperity" and "that my Administration streamline its preparedness operations; update relevant Government policies to reduce complexity and better protect and serve Americans; and enable State and local governments to better understand, plan for, and ultimately address the needs of their citizens."  90 Fed. Reg. 13267, 13267 (Mar. 18, 2025).

507.    DHS Secretary Noem has likewise repeatedly proclaimed that FEMA should be eliminated.  For example, on March 24, 2025, Secretary Noem announced at a Cabinet meeting, "we're going to eliminate FEMA."[45]  Those statements were confirmed by the DHS Spokesperson, who further explained:  "[W]e are cutting out wasteful spending and bureaucracy that slows down relief efforts" and "President Trump and Secretary Noem know that disaster recovery efforts are best led by state and local officials not federal bureaucrats."[46]

508.    On March 26, 2025, Secretary Noem called a meeting that included advisor Corey Lewandowski and acting FEMA head Cameron Hamilton to discuss options for eliminating FEMA, and advocated for "winding down" FEMA by the end of 2025 and for recission of the FEMA Advisory Council Executive Order 14239, to allow this process to move faster.[47]  It was widely reported (and later confirmed by the DHS spokesperson) that Secretary Noem ordered acting

---

[45] Government Executive, *FEMA set for elimination, Noem says, amid bipartisan House reform proposal* (March 24, 2025), available at: https://www.govexec.com/management/2025/03/fema-set-elimination-noem-says-amid-bipartisan-house-reform-proposal/404008/.

[46] *Id*.

[47] Politico, *New Noem plan leaves FEMA on the chopping block* (March 26, 2025), available at:  https://www.politico.com/news/2025/03/26/noem-fema-restructure-eliminate-grants-00250610.

administrator Hamilton to submit to a lie-detector test as to whether he leaked information regarding that meeting and her plans for FEMA.[48]

509.    During approximately the same March 2025 time period, DHS assumed authority for FEMA employment decisions.  CBS reported on March 22, 2025 that the decision was "[s]purred by President Trump's executive action last month directing the Department of Government Efficiency or 'DOGE' to initiate large-scale reductions in the federal workforce [referring to February 11, 2025 EO 14210]."[49]  On March 24, 2025, the DHS spokesperson confirmed that DHS was taking over authority from FEMA for employment decisions.[50]

510.    Secretary Noem admitted in this time frame that actions to eliminate FEMA would require Congressional action.[51]

511.    On May 6, 2025, Secretary Noem testified to Congress that she intended to eliminate FEMA.[52]  The next day, March 7, the then-acting FEMA administrator FEMA Cameron Hamilton disagreed with Secretary Noem's plans, testifying in response that FEMA was vital to communities "in their greatest times of need" and should *not* be eliminated.[53]  Mr. Hamilton testified:  "I do not believe it is in the best interest of the American people to eliminate the Federal Emergency Management Agency."  *Id*.  He explained that that would be "a conversation that should be had between the president of the United States and this governing body."  *Id*.

---

[48] Politico, *FEMA chief given lie detector test after leak of private meeting* (April 4, 2025), available at: https://www.politico.com/news/2025/04/04/fema-chief-given-lie-detector-test-after-leak-of-private-meeting-politico-00272302.

[49] CBS News, *FEMA hiring overhaul drives fears of agency dismantling as hurricane season nears* (March 22, 2025), available at: https://www.cbsnews.com/news/fema-hiring-overhaul-fear-agency-gutting-hurricane-season-trump/.

[50] Government Executive, *FEMA set for elimination, Noem says, amid bipartisan House reform proposal* (March 24, 2025), available at: https://www.govexec.com/management/2025/03/fema-set-elimination-noem-says-amid-bipartisan-house-reform-proposal/404008/.

[51] USA Today, *Trump should 'get rid' of FEMA, Homeland Security chief Kristi Noem says* (Feb. 10, 2025), available at: https://www.usatoday.com/story/news/politics/2025/02/10/trump-fema-kristi-noem-homeland-security/78382194007/ (Noem:  "He'll work with Congress to make sure it's done correctly").

[52] New York Times, *Leader of FEMA Is Dismissed as Trump Administration Takes Aim at the Agency* (May 8, 2025), available at: https://www.nytimes.com/2025/05/08/us/politics/fema-cameron-hamilton.html.

[53] *Id*.

512.     The following day, May 8, 2025, Mr. Hamilton was fired.[54]  FEMA announced that he would be replaced by Mr. Richardson, who was the assistant secretary at DHS's office for countering weapons of mass destruction.  *Id.*

513.     In June 2025, Bloomberg News reported that "Homeland Security Secretary Kristi Noem directed the Federal Emergency Management Agency to prepare a memo on how to abolish itself and create a re-branded, radically smaller disaster response organization."[55]  The "Abolish FEMA" memo acknowledged that many of the proposals mirrored the recommendations of the Heritage Foundation's Project 2025, that many of the proposed changes could not be implemented "without the engagement and action of Congress," and that most states are "unprepared" to assume FEMA's roles.  *Id.*

514.     Among the names proposed in the "Abolish FEMA" memo for any smaller agency that would remain was the "National Office of Emergency Management," or "NOEM."  *Id.*

515.     Throughout 2025, DHS and FEMA implemented the Administration's plan to radically reduce FEMA's function by cutting programs and imposing conditions on the receipt of statutorily mandated federal grants to state and local governments.[56]  Litigation followed, and these actions have been uniformly enjoined as unlawful and contrary to Congressional mandate.[57]

---

[54] *Id.*

[55] Bloomberg News, *'Abolishing FEMA' Memo Outlines Ways for Trump to Scrap Agency* (June 16, 2025), available at: https://www.bloomberg.com/news/articles/2025-06-17/-abolishing-fema-memo-outlines-ways-for-trump-to-scrap-agency.

[56] *E.g.*, NPR, *The Trump Administration says it wants to eliminate FEMA. Here's what we know* (June 26, 2025), available at https://www.npr.org/2025/06/26/nx-s1-5430469/faq-fema-elimination.

[57] *E.g.*, The HILL, *Judge finds FEMA withholding grants in violation of court order,* (Apr. 4, 2025), available at https://thehill.com/regulation/court-battles/5232494-judge-fema-grants-trump-blue-states/.  *See also County of Santa Clara v. Noem*, 2025 WL 3251660 (N.D. Cal. Nov. 21, 2025) (granting preliminary injunction); *Washington v. FEMA*, 2025 WL 2229394 (D. Mass. Aug. 5, 2025) (granting preliminary injunction); 2025 WL 3551751 (D. Mass. Dec. 11, 2025) (granting summary judgment to plaintiffs); *Illinois v. FEMA*, 801 F.Supp.3d 75 (D.R.I. 2025) (granting summary judgment to plaintiffs); *Illinois v. Noem*, 2025 WL 3707011 (D.R.I. Dec. 22, 2025) (granting summary judgment to plaintiffs); *Michigan v. Noem*, 2025 WL 3720147 (D. Or. Dec. 23, 2025) (granting summary judgment to plaintiffs).

516.    The Advisory Council created by Executive Order 14239 eventually met in May, July, and August 2025 and debated proposals for FEMA reform.[58]  At the first meeting, Secretary Noem (co-chair of the Council) said, "The president and I have had many, many discussions about this agency.  I want to be very clear.  The President wants it eliminated as it currently exists.  He wants a new agency."[59]

517.    In November 2025, it was widely reported that Secretary Noem was "at odds" with the Council and "instead of further shrinking and dismantling FEMA, the FEMA Review Council wants to make it more independent."[60]  The Washington Post reported:  "Noem's office also wants to reduce the federal government's share of disaster-related costs to 50 percent, with states having to fund the other 50 percent with cash, which some council members staunchly opposed, according to a person familiar with the situation."  *Id*.  The draft Council report recommended elevating FEMA to a Cabinet agency and removing it from DHS supervision.  *Id*.

518.    It was widely reported that Secretary Noem reduced the draft Council report from 160 pages to 20 pages and altered the recommendations.[61]  The Washington Post reported:  "In early November, the council submitted a 160-page draft proposal on how to revamp FEMA and improve the country's disaster response system…. But after the report's submission, Noem and her top adviser, former Trump campaign manager Corey Lewandowski, cut the draft proposal to fewer than 20 pages…."[62]

519.    In particular:  "*Noem's revisions also include a recommendation to further cut FEMA staff by about half* and have FEMA only handle debris removal and emergency protective measures

---

[58]https://www.dhs.gov/federal-emergency-management-agency-review-council.

[59] NPR, *supra* n. 56.

[60] Washington Post, *Noem at odds with Trump-appointed panel over future of FEMA* (November 19, 2025), available at: https://www.washingtonpost.com/politics/2025/11/19/noem-odds-with-trump-appointed-panel-over-future-fema/; *see also* New York Times, *Trump Wanted to Abolish FEMA. His Own Advisers Disagree* (Nov. 19, 2025), available at: https://www.nytimes.com/2025/11/19/climate/fema-review-council-report-trump.html.

[61] W.Post, *supra* n. 60; AP News, *Trump administration makes major changes to a report it commissioned on FEMA reforms, AP sources say*  (Nov. 21, 2025), available at: https://apnews.com/article/fema-review-council-kristi-noem-trump-disasters.

[62] W.Post, *supra* n. 60.

1    when responding to a disaster, moving most of its other work—such as helping repair damaged

2    utilities, roads and bridges, public buildings and parks—to other agencies, according to a person

3    familiar with the reports." *Id*. (emphasis added).

4         520.    The Council was scheduled to approve and release its final report in December 2025.

5    The public Council meeting was noticed for December 11, 2025.  *See* 90 Fed. Reg. 54360.  On

6    December 10, 2025, CNN obtained and reported on the draft report, confirming the recommendation

7    to cut FEMA staff by half.[63]

8         521.    The December 11 meeting was abruptly cancelled following the CNN report regarding

9    the contents of the report and Secretary Noem's revisions, and the Council has not to date released its

10   report (missing the deadline established by Executive Order 14180).[64]  The DHS website states only:

11   "The FEMA Review Council's meeting has been postponed. We will keep you apprised of the new

12   date as soon as possible."[65]

13        522.    As discussed *supra*, notwithstanding the withholding of the final report, DHS moved

14   forward with its plan to cut FEMA in half.

15        **D.    Impact of DHS Actions on FEMA Functions**

16             **1.    Overview of FEMA's Statutorily Mandated Functions**

17        523.    FEMA was established in 1979 because a coordinated, unified federal response was

18   necessary to adequately prepare for and respond to disasters and emergencies across the United

19   States.  As defined by Congress, "[t]he primary mission of the Agency is to reduce the loss of life and

20   property and protect the Nation from all hazards, including natural disasters, acts of terrorism, and

21   other man-made disasters, by leading and supporting the Nation in a risk-based, comprehensive

22   emergency management system of preparedness, protection, response, recovery, and mitigation."  6

23   U.S.C. §313(b)(1).  FEMA deploys its prevention, response and recovery resources (including staff

---

[63] CNN, *Exclusive: Trump's FEMA council to recommend dramatic downsizing and overhaul – but not elimination – of the agency* (Dec. 10, 2025), available at: https://www.cnn.com/2025/12/10/politics/fema-council-report-recommend-downsizing-overhaul.

[64] CNN, *White House officials abruptly postpone final meeting of Trump-created FEMA task force* (Dec. 11, 2025), available at:  https://www.cnn.com/2025/12/11/politics/white-house-postpone-fema-meeting.

[65] https://www.dhs.gov/federal-emergency-management-agency-review-council.

and financial support) to bolster the state and local response to declared "major disasters" and "emergencies."  42 U.S.C. §5122(1),(2).

524.    Before FEMA was established, disaster response was largely provided by state and local governments with the assistance of charitable organizations and a smattering of disparate federal agencies.  Following a series of large-scale natural disasters in the 1960s, it became clear that centralized federal staff and resources were essential to adequately respond to disasters and other types of emergencies.  Following requests by the National Governors' Association for a comprehensive emergency management system, in 1979, President Carter transferred the emergency response functions from a variety of federal agencies and created FEMA pursuant to congressionally granted reorganization authority under Section 304 of Reorganization Plan No. 3 of 1978, 43 Fed. Reg. 41943 and Public Law 95-17 (April 6, 1977).  *See* Executive Order No. 12127 (April 1, 1979); FEMA website, "History of FEMA," available at https://www.fema.gov/about/history.

525.    In 1988, the Stafford Act further defined FEMA's mission and developed "a comprehensive and coordinated federal response to disasters and emergencies, providing necessary support to disaster survivors and helping to prevent future disasters."[66]  Public Law 100-707 (Nov. 23, 1988).  Congress has further refined FEMA's statutory mandates several times since to enhance the federal government's capacity for mitigation, preparation, response, and recovery from covered disasters, most notably the  Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, the Post-Katrina Emergency Management Reform Act of 2006, Pub. L. No. 109-295, 120 Stat. 1394, the [Hurricane] Sandy Recovery Improvement Act of 2013, Pub. L. No. 113-2, 127 Stat. 39, and the Disaster Recovery Reform Act of 2018, Pub. L. No. 115-254, 132 Stat. 3438.

526.    FEMA summarizes its complex statutory mission as providing federal assistance "before, during, and after" major disasters and other emergencies including terrorist attacks.[67]  Fulfilling the agency's statutory mandates requires substantial federal resources to coordinate a national system of disaster preparedness, response, and recovery.  *See* generally 6 U.S.C. §§313, 314.

---

[66] https://www.fema.gov/disaster/stafford-act.
[67] *See* FEMA Publication No. 1: *We Are FEMA*, supra n.2.; *see also* https://www.fema.gov/about/how-fema-works.

FEMA fulfills its mission not only by providing money in the form of grant relief, but through substantial staffing and expertise on the ground during and after any emergency or disaster.

527.    FEMA's five statutory mission areas—preparedness, protection, mitigation, response, and recovery (6 U.S.C. §313(b)(19) —require a wide range of services to state and local governments, communities and people impacted by disasters.

- Before a disaster, FEMA is responsible for mitigation, protection, and preparedness, which includes "planning, training, and building the emergency management profession to prepare effectively for, mitigate against, respond to, and recover from any hazard" and "taking sustained actions to reduce or eliminate long-term risks to people and property from hazards and their effects."  6 U.S.C. §314(a)(9)(A), (B).

- During a disaster and in the immediate aftermath, FEMA initiates its response efforts, including "conducting emergency operations to save lives and property through positioning emergency equipment, personnel, and supplies, through evacuating potential victims, through providing food, water, shelter, and medical care to those in need, and through restoring critical public services."  *Id.* §314(a)(9)(C).

- Finally, after a disaster, FEMA transitions into recovery work, which involves "rebuilding communities so individuals, businesses, and governments can function on their own, return to normal life, and protect against future hazards."  *Id.* §§314(a)(9)(D)

528.    To effectuate FEMA's mission, Congress has identified and assigned a series of specific statutory mandates, imposed through obligations on the FEMA Administrator.  6 U.S.C. §§313(b)(1), (2)(A)-(I), 314(a)(1)-(21).  For example, the FEMA Administrator "shall… lead the Nation's efforts to prepare for, protect against, respond to, recover from, and mitigate against the risk of natural disasters, acts of terrorism, and other man-made disasters, including catastrophic incidents."  6 U.S.C. §313(b)(2)(A).

529.    Further, the Administrator is obligated to "develop a Federal response capability that, when necessary and appropriate, can act effectively and rapidly to deliver assistance essential to saving lives or protecting or preserving property or public health and safety in a natural disaster, act

of terrorism, or other man-made disaster." 6 U.S.C. §313(b)(2)(C); *see generally* 6 U.S.C. §313(b)(2) (listing specific mandates imposed "[i]n support of the primary mission of the Agency").

530.     Additionally, the FEMA Administrator "shall" "administer[] and ensur[e] the implementation of the National Response Plan, including coordinating and ensuring the readiness of each emergency support function under the National Response Plan." 6 U.S.C. §314(a), (13).   In 2008, the National Response Plan was superseded by a National Response Framework.[68]   The National Response Framework "is a guide to how the Nation responds to all types of disasters and emergencies,"[69] and sets out 15 emergency support functions that various federal agencies should perform in responding to certain emergencies.   As set forth in that Framework, FEMA must provide a range of specific types of individual and public assistance[70] and manage the logistics of the federal response.[71]

531.     Congress further requires FEMA to take a broad "all-hazards approach" to fulfilling this complex mission, requiring that, "In carrying out the responsibilities under this section, the Administrator shall coordinate the implementation of a risk-based, all-hazards strategy that builds those common capabilities necessary to prepare for, protect against, respond to, recover from, or mitigate against natural disasters, acts of terrorism, and other man-made disasters, while also building the unique capabilities necessary to prepare for, protect against, respond to, recover from, or mitigate against the risks of specific types of incidents that pose the greatest risk to the Nation."   6 U.S.C. §314(b).

532.     In light of the importance and complexity of this mission, Congress required that the FEMA Administrator be appointed by the President and approved by the Senate (6 U.S.C. §313(c)(1))

---

[68] DHS National Response Framework (3d Ed. June 2016), at 3, available at: https://www.ready.gov/sites/default/files/2019-06/national_response_framework.pdf.
[69] DHS National Response Framework (4th Ed. Oct. 28, 2019), at 2, available at: https://www.fema.gov/sites/default/files/documents/NRF_FINALApproved_2011028.pdf.
[70] FEMA, *Emergency Support Function #6 – Mass Care, Emergency Assistance, Temporary Housing, and Human Services Annex*, available at: https://www.fema.gov/sites/default/files/2020-07/fema_ESF_6_Mass-Care.pdf.
[71] FEMA, *Emergency Support Function #7 – Logistics Annex*, available at: https://www.fema.gov/sites/default/files/2020-07/fema_ESF_7_Logistics.pdf.

and have "a demonstrated ability in and knowledge of emergency management and homeland security" (*id*. at (c)(2)).

533.    Congress has also imposed specific statutory mandates beyond those defined in FEMA's authorizing statutes. *See generally*, 42 U.S.C. Chapter 68 (Disaster Relief).  For example, FEMA must maintain "at a minimum 3 national response teams" and "sufficient regional response teams, including Regional Office strike teams." 42 U.S.C. §5144(b)(1)(A), (B).  And those "Federal emergency response teams [must] consist of adequate numbers of properly planned, organized, equipped, trained, and exercised personnel to achieve the established target capability level." *Id.* § 5144(b)(3). The Regional Office strike teams must include, among other things, "personnel trained in incident management" and "public affairs, response and recovery, and communications support personnel."  6 U.S.C. § 317(f)(1).

534.    To serve this broad and complex statutory mandate, FEMA requires a physical presence in its own offices and the ability to deploy staff across the country as disasters arise.  FEMA is internally structured with a headquarters in Washington D.C. and ten regional offices, and establishes field offices as necessary to respond to disasters.  Its employees are organized to provide support for FEMA's functions and services across disasters, by assignment to 23 cadres and regional offices.  Employees frequently are deployed from their programmatic position to the field in response to disasters.

535.    As FEMA's own documents make clear, Congress has repeatedly reaffirmed this statutory mandate and the need for sufficient staffing to carry it out.  The FEMA Fiscal Year 2025 Budget Justification to Congress explained:  "Laws such as the Post Katrina Emergency Management Reform Act, the Post Sandy Recovery Act, and the Homeland Security Act of 2002 have set requirements for FEMA to gain and maintain capabilities to not only coordinate the Federal family's ability to provide lifesaving and life sustaining resources and activities during disasters, but to also be

the industry leader in training and education of the emergency management field across all levels of society."[72]

536.    The FEMA Fiscal Year 2026 Budget Justification (from the Trump Administration) explained:  "As the nation continues to face an unprecedented number of complex and catastrophic disasters, emergency management has never been more critical. FEMA must be ready to act at any moment to support States in disaster recovery."[73]  For this reason, FEMA requested funding *for its current staffing level of over 22,000 positions* for FY2026.  *Id.*

### 2.    Congress Also Mandates FEMA's Independence from DHS

537.    Prior to 2002, FEMA was an independent federal agency.  The Homeland Security Act of 2002 integrated FEMA into the newly formed DHS, stating that "the functions, personnel, assets, and liabilities of … [t]he Federal Emergency Management Agency, including the functions of the Director of the Federal Emergency Management Agency relating thereto" "shall be transferred to the Secretary."  Homeland Security Act of 2002, Pub. L. No. 107-296 §503, 116 Stat. 2136, 2213.

538.    Congress quickly modified that structure and reestablished the independence of FEMA from DHS's authorized decision-making authority, following the devastation caused by Hurricane Katrina and the inadequate and fractured federal government response.[74]  Congress concluded that DHS's control over FEMA impaired FEMA's ability to adequately respond to emergencies and disasters.[75]  Congress therefore removed DHS authority over FEMA in the Post-Katrina Emergency Management Reform Act of 2006 ("Post-Katrina Act").  Pub. L. No. 109-295, 120 Stat. 1394.

---

[72] DHS, FEMA Budget Overview, Fiscal Year 2025 Congressional Justification, available at: https://www.dhs.gov/sites/default/files/2024-04/2024_0320_federal_emergency_management_agency.pdf.

[73] DHS, FEMA Budget Overview, Fiscal Year 2026 Congressional Justification, available at: https://www.dhs.gov/sites/default/files/2025-06/25_0613_fema_fy26-congressional-budget-justificatin.pdf.

[74] https://www.govinfo.gov/content/pkg/GOVPUB-PREX-PURL-LPS67263/pdf/GOVPUB-PREX-PURL-LPS67263.pdf#page=76 at page 54-64 (describing the inadequacies in the federal response).

[75] The White House's report identifying the "structural flaw[s]" that led to the inadequate federal response to Hurricane Katrina, explained that "DHS has spread FEMA's planning and coordination capabilities and responsibilities among DHS's other offices and bureaus.  DHS also did not maintain the personnel and resources of FEMA's regional offices."  *Id.* at 53.  Congress relied heavily on this report in developing the Post-Katrina Act.  *See* H. Rep. 109-476, 92-93 (2006).

539.    The Post-Katrina Act transferred FEMA's functions (and personnel), previously transferred by statute to DHS and its Under-Secretary for Emergency Preparedness, back to FEMA: "All functions of the Federal Emergency Management Agency, including existing responsibilities for emergency alert systems and continuity of operations and continuity of government plans and programs as constituted on June 1, 2006, including all of its personnel, assets, components, authorities, grant programs, and liabilities, and including the functions of the Under Secretary for Federal Emergency Management relating thereto" "are transferred to the Agency." 6 U.S.C. §315(a)(1).

540.    The Post-Katrina Act explicitly removed FEMA from DHS decision-making authority. First, Congress ensured that "[t]he Agency [FEMA] shall be maintained as a distinct entity within the Department." 6 U.S.C. §316(a).  Next, it exempted FEMA from the DHS Secretary's general reorganization authority.  Under 6 U.S.C. §452, the DHS Secretary is authorized to "allocate or reallocate functions" and "establish, consolidate, alter, or discontinue organizational units" within DHS, subject to certain limitations.  *Id.* §452(a).  This authority, however, does not extend to FEMA: "Section 452 of this title shall not apply to [FEMA], including any function or organizational unit of [FEMA]."  6 U.S.C. §316(b).

541.    Next, Congress expressly prohibited DHS from making "changes to [FEMA's] missions."  6 U.S.C. §316(c).  Thus, *"[t]he Secretary may not substantially or significantly reduce, … the authorities, responsibilities, or functions of [FEMA] or the capability of [FEMA] to perform those missions, authorities, responsibilities*."  6 U.S.C. §316(c)(1) (emphasis added).  Congress also prohibited DHS from transferring any "asset, function, or mission" to "the principal and continuing use of any other organization, unit, or entity of [DHS]," 6 U.S.C. §316(c)(2), and expressly reiterated the DHS Secretary's obligation to comply with Congress's instructions in any annual appropriations act with respect to the transfer or reprogramming of appropriated funds, 6 U.S.C. §316(d).

542.    Congress has never returned authority over FEMA to DHS in any of the subsequent legislation governing DHS or FEMA, including the Sandy Recovery Reform Act in 2013, the Disaster Recovery Reform Act of 2018, or any appropriations statute.

### 3.    Cutting Staff in Half Will Eliminate FEMA's Ability to Function

543.    DHS's ongoing cuts to FEMA's staffing, especially the ongoing non-renewal of CORE employees, will incapacitate FEMA and its ability to carry out current ongoing disaster response work.

544.    FEMA currently has staff deployed to respond to and recover from the "2026 Winter Storm"—an event FEMA predicts "may … affect[]" "[o]ver 230 million Americans across multiple states."[76]  On January 23, 2026, FEMA announced its readiness plans:

> FEMA is actively working with states to monitor and prepare for the severe winter storm which is forecasted to produce heavy snow, dangerous freezing rain and life-threatening wind chills across most of the U.S. this weekend.  In preparation, the agency activated its National Response Coordination Center and Regional Response Coordination Centers in FEMA Regions 1, 2, 3, 4, 5, 6 and 7 to synchronize federal readiness and interagency coordination.  FEMA also embedded staff in State Emergency Operations Centers to ensure real-time coordination.
>
> Additionally, the agency deployed Incident Management Assistance Teams to support the states of Louisiana, Texas and the Commonwealth of Virginia and have 12 additional teams ready to deploy if requested by the states.  Twenty-eight FEMA Urban Search and Rescue teams are on standby, prepared to deploy at the request of governors.
>
> FEMA's strategically located distribution centers across the South and East are collectively stocked with over 7 million meals, more than 2 million liters of water, over 600,000 blankets and more than 300 generators.  FEMA is also establishing staging sites in Kentucky, Louisiana and Texas with additional meals, water and generators to enable rapid movement of resources at the request of affected states.[77]

545.    FEMA CORE employees are also currently working on disasters that include late 2025 flooding in Western Washington,[78] the 2025 Los Angeles fires, Hurricane Helene, Hurricane Milton, wildfires in Maui, and flash flooding in Kerr County Texas, among many others.[79]  FEMA also

---

[76] https://www.fema.gov/disaster/2026-winter-storm.

[77] FEMA Press Release (Jan. 23, 2026), available at:  https://www.fema.gov/press-release/20260123/fema-coordinating-states-ahead-severe-winter-storm.

[78] Cascadia Daily News, *Regional FEMA offices slashed by DOGE face further cuts; disaster response may suffer* (Jan. 4, 2026), available at: https://www.cascadiadaily.com/2026/jan/04/regional-fema-offices-slashed-by-doge-face-further-cuts-disaster-response-may-suffer/.

[79] NPR, *FEMA is getting rid of thousands of workers in areas recovering from disasters* (Jan. 16, 2025), available at: https://www.npr.org/2026/01/16/nx-s1-5677605/fema-cuts-jobs-trump; *see*

continues to provide substantial recovery assistance related to older disasters, such as Hurricanes Katrina, Wilma, Ike, Sandy, Matthew, Harvey, Irma, and Maria.[80]  All of this ongoing disaster recovery work is primarily (if not entirely) conducted by CORE employees.

546.    The elimination of CORE positions will significantly impair FEMA's ability to continue recovery efforts related to these devastating disasters.  For example, FEMA continues to administer billions of dollars in public assistance grants (which fund repair and reconstruction efforts) and mitigation grants (which go towards making infrastructure more resilient to prepare for future disasters) to the states and localities impacted by many of the above disasters.[81]  And, for more recent disasters, FEMA continues to provide substantial individual assistance to affected survivors.[82]  Because the bulk of this recovery work is done by CORE employees, the non-renewals will significantly disrupt these efforts.

547.    These ongoing cuts will also eliminate FEMA's ability to properly prepare for and respond to future disasters and emergencies.  Key preparation work, such as training other FEMA employees in disaster response skills, happens primarily through CORE employees.  And CORE employees play a central role in the responding to major disasters and emergencies.  CORE employees both form the backbone of the logistics force that coordinates the combined federal, state, and local response efforts and comprise a large portion of FEMA's on-the-ground response.  For example, in the aftermath of a disaster, CORE employees perform key functions such as assisting survivors access temporary housing, food, water, and medical care.  The ongoing non-renewal of CORE employees, along with the other planned staffing cuts, will greatly reduce FEMA's ability to provide these life-saving services.

---

*also* FEMA, Disaster Relief Fund: Monthly Report (Jan. 14, 2026), available at: https://www.fema.gov/sites/default/files/documents/fema_ocfo_disaster-relief-fund-report_122025.pdf.

[80] Disaster Relief Fund: Monthly Report, *supra* n. 79.

[81] *Id.* at 6-7, 12-15.

[82] *Id.*

548.    From 2025 through 2024, there was an average of 63 major disasters declared per year, more than twice the average of 25 major disasters declared per year during the first decade of FEMA's existence.[83]

549.    FEMA will not be able to replace the services eliminated as a result of staffing cuts. Even before DHS began its efforts to eliminate half of FEMA's workforce, FEMA's understaffing stretched its disaster relief workforce thin, impairing its ability to respond to these fatal disasters. The existing staff shortages at FEMA have been well-documented by the Government Accounting Office.

550.    GAO explained, as of September 2025, that:

FEMA and other federal agencies faced workforce challenges related to the concurrent nature of the disasters, disaster workforce capacity, and training gaps during Hurricanes Helene and Milton and the 2025 Los Angeles wildfires. Further, these recent disasters exacerbated long-standing FEMA workforce management issues. We previously reported that FEMA had an overall staffing gap—the difference between its on-boarded staff and its staffing target—of approximately 35 percent across different positions at the beginning of fiscal year 2022. We also found that FEMA fell short of its yearly staffing target between 2019 and 2022, and that gap continues to grow. [84]

551.    The 2025 GAO Report was referencing GAO analysis from 2023, which concluded that FEMA has consistently fallen short of its target disaster relief staffing goals in recent years.[85] For example, in fiscal year 2022, the most recent year with publicly available data, FEMA's disaster workforce had less than two-thirds of the staff FEMA estimated it needed to adequately administer its disaster-related programs.[86]

---

[83] Congressional Research Service, *FEMA: Increased Demand and Capacity Strains* (December 2, 2024), available at: https://www.congress.gov/crs_external_products/IF/PDF/IF12834/IF12834.1.pdf.

[84] GAO, *Disaster Assistance High-Risk Series: Federal Response Workforce Readiness* (Sept. 2, 2025), Report GAO-25-108598, at 7, available at: https://www.gao.gov/assets/gao-25-108598.pdf.

[85] GAO, *FEMA DISASTER WORKFORCE Actions Needed to Improve Hiring Data and Address Staffing Gaps* (May 2023), Report GAO-23-105663, at *18 available at: https://www.gao.gov/assets/gao-23-105663.pdf.

[86] CRS, *FEMA: Increased Demand and Capacity Strains* (January 2, 2025), available at: https://www.congress.gov/crs-product/IF12834?q=%7B%22search%22%3A%22Fema%22%7D&s=3&r=6;

552.    The 2023 GAO Report explained that FEMA had modeled its staffing needs to fulfill its statutory mission and was falling significantly short.  Specifically, FEMA conducted annual reviews of its disaster workforce to estimate a baseline of the number of required staff and identify gaps, known as the Force Structure Modification Process.[87]  Those calculations disaster staff (largely comprised of CORE employees) identified a 35 percent staffing gap:   "As of the beginning of fiscal year 2022, FEMA had a disaster force strength of approximately 11,400 employees, creating an overall staffing gap of approximately 6,200 staff (35 percent) across different positions and cadres."  The GAO explained further that FEMA set a target for increasing staffing of the disaster workforce to hit the "target of 17,670 disaster employees across all cadres" by "fiscal year 2024, *but has since pushed it out to fiscal year 2026*."[88]

553.    In its 2025 budget justification, FEMA explained that the ongoing gap in its incident management workforce was "creating operational performance risk" that could render FEMA unable to provide "the disaster response and recovery operations it is responsible for leading and supporting."[89]

554.    On top of these preexisting staffing shortages, FEMA has also been subject to reductions in its workforce as a result of other actions of this Administration, including the unlawful firing of probationary employees in early 2025 and a substantial number of resignations in response to the coercive Deferred Resignation Program.

555.    FEMA's 2026 budget justification in no way indicated that its staffing needs had abated.  To the contrary, the agency requested an increase of over 1,000 full-time equivalents from the prior year in order to "help close capability and performance gaps."[90]

---

[87] GAO, *FEMA DISASTER WORKFORCE Actions Needed to Improve Hiring Data and Address Staffing Gaps* (May 2023), Report GAO-23-105663, at *18 available at: https://www.gao.gov/assets/gao-23-105663.pdf.

[88] *Id.*

[89] DHS, FEMA Budget Overview, Fiscal Year 2025 Congressional Justification, available at: https://www.dhs.gov/sites/default/files/2024-04/2024_0320_federal_emergency_management_agency.pdf.

[90] DHS, FEMA Budget Overview, Fiscal Year 2026 Congressional Justification, available at: https://www.dhs.gov/sites/default/files/2025-06/25_0613_fema_fy26-congressional-budget-justificatin.pdf.

556.    A substantial number of FEMA employees signed a 2025 Petition to Congress stating that further cuts to the FEMA workforce will risk a repeat of the aftermath and tragedy of Hurricane Katrina.[91]  DHS has twice placed employees who it determined signed this Petition on administrative leave.[92]

557.    Thus, while FEMA has projected and acknowledged an agency need to dramatically increase disaster staffing by thousands of additional disaster relief workers, and set a target of doing so through fiscal year 2026, DHS has now ordered FEMA's existing staff to be cut in half.  Such reductions will eliminate FEMA's ability to perform the role mandated by Congress and eliminate the ability of the federal government to prepare for, respond to, and recover from disasters and other emergencies, including terrorist attacks.  The plan to halve the current size of FEMA is a complete abdication of the proper and statutory role of the agency in federal disaster response and recovery.

558.    Implementing DHS's directive to eliminating nearly half of FEMA's current staff, on top of the existing staffing gaps, on an indiscriminate and rolling basis during 2026 will incapacitate the agency in a matter of months, if not weeks.

559.    State and local governments in the United States do not have the capacity to replace resources or services that will be lost should FEMA be incapacitated or its functions be significantly dimished through these staffing reductions.[93]

**E.    Cuts Will Cause Substantial Harm to Plaintiffs and the Public**

560.    Each local government Plaintiff has suffered and/or will imminently suffer actual and ongoing harm as a result of Defendants' implementation of the Administration's workforce reduction actions at issue in this litigation, including the ongoing and imminent elimination of CORE employee

---

[91] https://www.standupforscience.net/fema-katrina-declaration.

[92] CNN, *FEMA workers put on leave after signing letter warning of Trump's overhaul of the agency* (Aug. 26, 2025), available at: https://www.cnn.com/2025/08/26/politics/fema-workers-administrative-leave-katrina-declaration-trump; New York Times, *In a Reversal, FEMA Won't Reinstate Suspended Workers* (Dec. 1, 2025) available at: https://www.nytimes.com/2025/12/01/climate/fema-reinstates-workers-letter-leave.html  (DHS spokesperson confirming reinstatement letters reversed, blaming "rogue bureacrats" for reinstating employees, and explaining that political appointees read news of reinstatements and reversed the decision).

[93] GAO, Disaster Assistance High-Risk Series: State and Local Response Capabilities (Dec. 18, 2025) Report GAO-26-108599, available at: https://www.gao.gov/products/gao-26-108599.

1    positions at FEMA, as the direct result of delays and reduction in services provided by these federal

2    agencies on which they rely.

3          561.    State, local, tribal, and territorial governments, including each local government

4    Plaintiff, rely on FEMA for assistance, much of which is provided by CORE employees, before,

5    during, and after a disaster.  For example, CORE employees operate FEMA's Hazard Mitigation

6    Grant Program, which provides funding to states and local governments to shore up their

7    infrastructure to prevent damage from future disasters.  Additionally, CORE employees operate

8    FEMA's Public Assistance program, which provides local governments with time-sensitive and

9    crucial funding for emergency repairs, debris removal, and infrastructure restoration necessary to

10   protect public health and safety in the immediate and longer-term aftermath of emergencies and

11   disasters.  These services, and the funding they administer, are critical to public health and safety

12   because the cost of recovering can substantially outstrip a local government's own resources.  The

13   local government Plaintiffs therefore rely heavily on CORE and other FEMA staff who operate the

14   programs (around the country) and arrive on-site (often from around the country, and within hours or

15   days) because these staff are trained and experienced with helping local governments access the

16   resources they need, including the funding directed by Congress for this purpose.  Eliminating FEMA

17   staff will interfere with local governments' ability to access resources they need to recover, and force

18   them to rely on their already stretched budgets and resources.

19         562.    State, local, tribal, and territorial governments, including each local government

20   Plaintiff, also rely on FEMA CORE and reservist staff to provide disaster and emergency services

21   (including administering funding) that meet the basic needs of their residents in the wake of a

22   disaster.  The local government Plaintiffs do not have the resources, staff, training, or expertise to

23   replace these services or facilitate residents' access to FEMA resources.  For example, CORE

24   employees also staff critical individual assistance services such as the National Process Service

25   Center and local disaster resource centers, which triages disaster-affected individuals' requests for aid

26   and help residents and businesses navigate the agencies and paperwork needed to access the

27   resources and information they need.

28

563.    Each local government Plaintiff is and will be adversely affected by the elimination of positions at FEMA within their geographic borders, as well as across the country because CORE staff and reservists provide services nationwide and are often deployed to work in locations across the country, outside of the region in which their duty station is located.

564.    Plaintiff AFGE represents and has as members federal employees who work for the Federal Agency Defendants and will be impacted by Defendants' implementation of the Administration's workforce reduction actions at issue in this litigation.  The employees represented by AFGE include CORE and other FEMA employees who have been or will be separated from employment.  Upon separation, these federal employees will lose their income, health benefits, and other incidents of employment, causing severe irreparable harm to them, their families, and their communities.  Many of these employees are longtime employees of the federal government and/or their agency and will lose not only their current job but a career that has been years in the making.

565.    Plaintiff AFGE also represents and has as members federal employees who work at the Federal Agency Defendants, including FEMA, and who, if they keep their job, will have to work in offices, roles, and functions that will be adversely affected by the staffing cuts, making their jobs immensely more difficult.  Each federal employee who remains will be required to do more to try to meet the agency's statutory mission and obligations, without the support of colleagues who have been separated as a result of Defendants' actions at issue in this lawsuit.

566.    These actions have and will continue to harm Plaintiff AFGE's core function of representing employees and providing counseling, advice, and representation to employees in the event of adverse employment actions.  Plaintiff AFGE has already expended, and will continue to expend, substantial time and resources as a result of Defendants' workforce reduction actions, including the DHS orders to FEMA, implementation of the non-renewal of FEMA positions, and the planned further reductions in positions by DHS and FEMA, addressing employee concerns regarding these actions and attempting to provide employees with effective representation.  The union has been forced to divert resources that would be devoted to representing employees who have, will, or may experience adverse employment actions and/or other representational work.  The union is also

harmed by the actual and imminent termination of its members (including members employed by FEMA, including CORE employees), including by the loss of dues income.

567.    These actions have and will continue to harm Plaintiff AFSCME and its members. The vast majority of AFSCME's 1.4 million members are state and local government employees throughout the country.  Among those state and local government employee members of AFSCME are employees within certain states' divisions of emergency management, including, for example, state employees in Hawaii and Washington State whose work relates to hazard mitigation, natural disaster response, emergency preparedness, and other functions that are supported by FEMA's grant programs.  The drastic elimination of positions within FEMA's public assistance and hazard mitigation cadres is substantially likely to delay receipt of these funds, thereby creating financial uncertainty for and adding pressure on the essential jobs these AFSCME members provide.

568.    Plaintiff SEIU will likewise be harmed because the well-being and working conditions of its members who work for state governments, local governments, and private employers will be significantly and adversely impacted by the workforce reduction actions challenged in this lawsuit, including the elimination of positions at FEMA, and the resulting loss of services and resources provided by the affected agencies, including as a result of the vacuum in disaster relief prevention, mitigation, relief, and recovery in their communities and shift of that work to state and local governments without the capacity to replace FEMA's functions.

## SUPPLEMENTAL ALLEGATIONS AND CLAIMS FOR RELIEF

**Supplemental allegations to existing claims**:

569.    **Claim I (Separation of Powers/*Ultra Vires* Against Defendant President Donald J. Trump)** is supplemented to add the following paragraph:

> Executive Order 14536 and the directive to federal agencies to create, implement, and comply with Annual Staffing Plans that eliminate programs, functions, or positions that the President deems unnecessary regardless of statutory authorization or mandate also exceeds the President's authority.  This EO orders agencies to create such plans according to the President's determination of necessity rather than consistent with congressional requirements,

mandates, and authorizations, and is therefore not authorized by Article II, usurps Congress's Article I authority, and *ultra vires*.

570.     **Claim II (Separation of Powers/*Ultra Vires* against Defendants OMB, OPM, USDS and their Directors)** is supplemented to add the following paragraph:

The November 5, 2025 OMB/OPM Memorandum implementing EO 14536 exceeds statutory authority and usurps the authority delegated by Congress to the agencies, and not to OMB or OPM, by requiring agencies to create, implement, and comply with Annual Staffing Plans that eliminate programs, functions, or positions that the President deems unnecessary regardless of statutory authorization or mandate. The Memorandum requires agencies to create such plans according to the President's determination of necessity rather than consistent with congressional requirements, mandates, and authorizations, and therefore exceeds OMB and OPM's authority and is contrary to statute and *ultra vires*.

571.     **Claim III (Administrative Procedure Act, 5 U.S.C §706(2)(A) and (C) Action Not in Accordance With Law and Exceeding Statutory Authority against Defendants OMB, OPM, USDS and their Directors)** is supplemented to add the following paragraph:

OMB/OPM's issuance and implementation of the November 5, 2025 OMB/OPM Memorandum implementing EO 14536 are final agency actions that exceeds statutory authority and usurps the authority delegated by Congress to the agencies, and not to OMB or OPM, by requiring agencies to create, implement and comply with Annual Staffing Plans that eliminate programs, functions, or positions that the President deems unnecessary regardless of statutory authorization or mandate. The Memorandum requires agencies to create such plans according to the President's determination of necessity rather than consistent with congressional requirements, mandates, and authorizations, and violates 5 U.S.C. §706(2)(A) and (C).

572.     **Claim IV (Administrative Procedure Act, 5 U.S.C §706(2)(A) Arbitrary and Capricious Agency Action against Defendants OMB, OPM, USDS and their Directors)** is supplemented to add the following paragraph:

OMB/OPM's issuance and implementation of the November 5, 2025 OMB/OPM Memorandum implementing EO 14536 are final agency actions that are arbitrary and capricious because OMB/OPM order federal agencies to disregard congressional requirements, mandates, and authorizations and comply with the President's policy priorities and determinations of what is "necessary," require agencies to abandon reasoned decision-making considering all relevant factors, and require the process for the creation and approval of plans to radically transform federal agencies to proceed in secret.

573. **Claim VI (Administrative Procedure Act, 5 U.S.C §706(2)(A) and (C) Action Not in Accordance With Law against Federal Agency Defendants)** is supplemented to add the following paragraph:

On information and belief, the Federal Agency Defendants have created and submitted to OMB and OPM Annual Staffing Plans for fiscal year 2026, without making those Plans available to the employees they impact, the employees' union representatives, or the public. On information and belief, Federal Agency Defendants' Annual Staffing Plans set forth actions in furtherance of the President's workforce reduction agenda that reflect the President's policy priorities and determinations as to whether programs mandated and authorized by Congress are "necessary." Agency actions to implement the President's EO 14210 and EO 14356, including but not limited to Annual Staffing Plans that conflict with congressionally authorized functions or impose staffing cuts irrespective of agencies' duties or needs, are final agency actions that are inconsistent with law in violation of 5 U.S.C. §706(2)(A) and exceed statutory authority in violation of 5 U.S.C. §706(2)(C), and are for those reasons also arbitrary and capricious in violation of 5 U.S.C. §706(2)(A).

574. **Claim VII (Administrative Procedure Act, 5 U.S.C § 706(2)(A) Arbitrary and Capricious Agency Action against Federal Agency Defendants)** is supplemented to add the following paragraph:

Federal Agency Defendant actions to implement the President's EO 14210 and EO 14356, including but not limited to Annual Staffing Plans, that conflict with congressionally

authorized functions or impose staffing cuts irrespective of agencies' duties or needs reflect improper considerations, abandon reasoned decision-making considering all relevant factors, ignore reliance interests, arbitrary and capricious final agency actions, in violation of 5 U.S.C. §706(2)(A).

**Supplemental Claims:**

**Claim VIII**
**Administrative Procedure Act, 5 U.S.C §706(2)(A), (B) and (C)**
**Against Defendant DHS Secretary Noem and DHS**
**(Action Not in Accordance With Law and Exceeding Statutory Authority)**

575.    Plaintiffs incorporate by reference all preceding paragraphs and the Second Amended Complaint as if fully set forth herein.

576.    Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. §§706(2)(A), (B), and (C).

577.    DHS is an agency subject to the APA.  5 U.S.C. §701.

578.    The following actions by DHS are final agency actions for the purposes of APA review: the removal of FEMA's decision-making authority with respect to the reduction in positions at FEMA and in particular the renewals of CORE positions; the decision to reject renewals of CORE and reservist positions under the Stafford Act according to NTE date; the elimination of CORE and reservist positions by rejecting renewals of appointments under the Stafford Act commencing January 1, 2026; and the imposition and implementation of targets for workforce reduction that eliminate nearly half the FEMA workforce.

579.    These actions by DHS are contrary to law and exceed any statutory authority granted to DHS, including by:

a.    violating, and/or causing FEMA to violate, FEMA's mandatory statutory duties as set forth in the Stafford Act and subsequent statutes for "preparedness, protection, mitigation, response, and recovery" from emergencies and disasters nationwide, 6

U.S.C. §§311-323, 711-825, and at 42 U.S.C. Chapter 68 (Disaster Relief),  by
eliminating the staff required to perform those duties adequately;

 b. violating, and/or causing FEMA to violate, these provisions of the Post-Katrina Act:

- 6 U.S.C. §316(c), including by "substantially or significantly reduc[ing] … the authorities, responsibilities, or functions of the Agency or the capability of the Agency to perform those missions, authorities, responsibilities" and by usurping FEMA's decision-making authority and failing to maintain FEMA as a "distinct entity" within the Department separate and apart from DHS control;

- 6 U.S.C. §316(b), by defying Congress' express prohibition of exercising any reorganization authority with respect to FEMA; and

- 6 U.S.C. §315, by disregarding the transfer of "[a]ll functions" of FEMA "including existing responsibilities for emergency alert systems and continuity of operations and continuity of government plans and programs … including all of its personnel, assets, components, authorities, grant programs, and liabilities" away from DHS and back to FEMA;

 c. violating Section 120(a) of the CR by imposing a reduction in force "or any similar reduction of positions" on FEMA's temporary employees;

 d. ignoring and defying statutory requirements and prohibitions and thereby usurping Congress' Article I legislative authority, and violating the separation of powers principles embodied in the U.S. Constitution.

 580. The actions of DHS Secretary Noem and DHS therefore violate the Administrative Procedure Act because they are inconsistent with law in violation of 5 U.S.C. §706(2)(A), contrary to the Constitution in violation of 5 U.S.C. §706(2)(B), and exceed statutory authority in violation of 5 U.S.C. §706(2)(C).

**Claim IX**
**_Ultra Vires_ Unlawful and Unconstitutional Governmental Action**
**Against Defendant DHS Secretary Noem and DHS**

581.    Plaintiffs incorporate by reference all preceding paragraphs and the Second Amended Complaint as if fully set forth herein.

582.    Plaintiffs have a non-statutory right of action to enjoin and declare unlawful official action that is _ultra vires_.

583.    The removal of FEMA's decision-making authority with respect to the reduction in positions at FEMA and in particular the renewals of CORE positions; the creation and implementation of a policy of rejecting renewals of CORE and reservist positions under the Stafford Act according to NTE date; the elimination of CORE and reservist positions by rejecting renewals of appointments under the Stafford Act commencing January 1, 2026; and the imposition and implementation of targets for workforce reduction that eliminate nearly half the FEMA workforce are all contrary to law and exceed any statutory authority granted to DHS, including by:

a.    violating, and causing FEMA to violate, FEMA's mandatory statutory duties as set forth in the Stafford Act and subsequent statutes for "preparedness, protection, mitigation, response, and recovery" from emergencies and disasters nationwide, 6 U.S.C. §§311-323, 711-825, and at 42 U.S.C. Chapter 68 (Disaster Relief), by eliminating the staff required to perform those duties adequately;

b.    violating these provisions of the Post-Katrina Act:

- 6 U.S.C. §316(c), including by "substantially or significantly reduc[ing] … the authorities, responsibilities, or functions of the Agency or the capability of the Agency to perform those missions, authorities, responsibilities" and by usurping FEMA's decision-making authority and failing to maintain FEMA as a "distinct entity" within the Department separate and apart from DHS control;

- 6 U.S.C. §316(b), by defying Congress' express prohibition of exercising any reorganization authority with respect to FEMA; and

- 6 U.S.C. §315, by disregarding the transfer of "[a]ll functions" of FEMA "including existing responsibilities for emergency alert systems and continuity of operations and continuity of government plans and programs … including all of its personnel, assets, components, authorities, grant programs, and liabilities" away from DHS and back to FEMA;

c.    violating Section 120(a) of the CR by imposing a reduction in force "or any similar reduction of positions" on FEMA's temporary employees;

d.    ignoring and defying statutory requirements and prohibitions and thereby usurping Congress' Article I legislative authority, and violating the separation of powers principles embodied in the U.S. Constitution.

584.    The actions of DHS Secretary Noem and DHS therefore exceed authority and are contrary to statute and the Constitution and are therefore *ultra vires*.

**Claim X:**
**Administrative Procedure Act, 5 U.S.C § 706(2)(A)**
**Against Defendants DHS Secretary Noem and DHS**
**(Arbitrary and Capricious Agency Action)**

585.    Plaintiffs incorporate by reference all preceding paragraphs and the Second Amended Complaint as if fully set forth herein.

586.    The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

587.    The APA requires that an agency provide "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). An action is also arbitrary and capricious if the agency "failed to consider . . . important aspects of the problem" before it. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 25 (2020) (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

588.    The actions of DHS—the removal of authority from FEMA for decision-making with respect to the reduction in positions at FEMA and in particular the renewals of CORE positions; the creation and implementation of a policy of rejecting renewals of CORE and reservist positions under the Stafford Act according to NTE; the elimination of CORE and reservist positions by rejecting renewals of appointments under the Stafford Act commencing January 1, 2026; and the imposition and implementation of targets for workforce reduction that eliminate nearly half the FEMA workforce—were all done without considering the necessarily relevant and important aspects of the issue and without considering FEMA's needs or requirements or the reliance interest of affected employees or those relying on their services; were in fact contrary to the recommendations and needs of FEMA; and were done without any rational connection between the actions taken and the reasons given (or lack thereof), and are therefore arbitrary and capricious final agency actions.

589.    The actions of DHS and DHS Secretary Noem therefore violate the APA because they are arbitrary and capricious under 5 U.S.C. §706(2)(A).

**Claim XI**
**Administrative Procedure Act, 5 U.S.C §706(2)(A), (B) and (C)**
**Against Defendant Senior Official Performing the Duties**
**of FEMA Administator Evans and FEMA**
**(Action Not in Accordance With Law and Exceeding Statutory Authority)**

590.    Plaintiffs incorporate by reference all preceding paragraphs and the Second Amended Complaint as if fully set forth herein.

591.    Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. §§706(2)(A), (B), and (C).

592.    FEMA is an agency subject to the APA. 5 U.S.C. §701.

593.    FEMA has engaged in final agency action, including by implementing unlawful DHS directives to cede decision-making authority to DHS with respect to the reduction in FEMA positions and in particular the renewals of CORE positions; implementing the unlawful DHS directive to reject renewals of CORE and reservist positions under the Stafford Act according to NTE date; eliminating

CORE and reservist positions by rejecting renewals of appointments under the Stafford Act commencing January 1, 2026; and implementing unlawful DHS targets for workforce reduction eliminating nearly half the FEMA workforce.

594.    These actions by FEMA are contrary to law and exceed any statutory authority granted to FEMA by Congress, including by:

a.    violating FEMA's mandatory statutory duties set forth in the Stafford Act and subsequent statutes for "preparedness, protection, mitigation, response, and recovery" from emergencies and disasters nationwide, 6 U.S.C. §§311-323, 711-825, and at 42 U.S.C. Chapter 68 (Disaster Relief), by eliminating the staff required to perform those duties adequately;

b.    ceding decision-making authority with respect to FEMA to DHS, and therefore violating provisions of the Post-Katrina Act:

- 6 U.S.C. §316(a), by failing to maintain FEMA as a "distinct entity" from DHS;
- 6 U.S.C. §316(c), by allowing DHS to "substantially or significantly reduce … the authorities, responsibilities, or functions of the Agency or the capability of the Agency to perform those missions, authorities, responsibilities," which include but are not limited to the statutorily required authority, responsibility, and functions including "preparedness, protection, mitigation, response, and recovery" duties and other specific statutory mandates identified herein and the authority and responsibility to employ Stafford Act employees to perform FEMA's statutorily mandated and authorized functions;
- 6 U.S.C. §315, by disregarding the transfer of "[a]ll functions" of FEMA " including existing responsibilities for emergency alert systems and continuity of operations and continuity of government plans and programs … including all of its personnel, assets, components, authorities, grant programs, and liabilities" away from DHS and back to FEMA;

c.    violating Section 120(a) of the CR by imposing a reduction in force "or any similar

1    reduction of positions" on FEMA's temporary employees; and

2        d.    ignoring and defying statutory requirements and prohibitions usurping Congress'

3            Article I legislative authority, and violating separation of powers principles embodied

4            in the U.S. Constitution.

5        595.    The actions of Senior Official Performing the Duties of FEMA Administrator Evans

6    and FEMA therefore violate the Administrative Procedure Act because they are inconsistent with law

7    in violation of 5 U.S.C. §706(2)(A), contrary to the Constitution in violation of 5 U.S.C. §706(2)(B),

8    and exceed statutory authority in violation of 5 U.S.C. §706(2)(C).

9

10    

**Claim XII**
***Ultra Vires* Unlawful and Unconstitutional Governmental Action**

11    **Against Defendant Senior Official Performing the Duties**
**of FEMA Administrator Evans and FEMA**

12        596.    Plaintiffs incorporate by reference all preceding paragraphs and the Second Amended

13    Complaint as if fully set forth herein.

14        597.    Plaintiffs have a non-statutory right of action to enjoin and declare unlawful official

15    action that is *ultra vires*.

16        598.    The actions of FEMA—the implementation of unlawful DHS directives to cede

17    decision-making authority to DHS with respect to the reduction in FEMA positions and in particular

18    the renewals of CORE positions; the implementation of unlawful DHS directive to reject renewals of

19    CORE and reservist positions under the Stafford Act according to NTE date; the elimination of

20    CORE and reservist positions by rejecting renewals of appointments under the Stafford Act

21    commencing January 1, 2026; the implementation of unlawful DHS targets for workforce reduction

22    that eliminate nearly half the FEMA workforce—are contrary to law and exceed any statutory

23    authority granted to FEMA by Congress, including by:

24        a.    violating FEMA's mandatory statutory duties set forth in the Stafford Act and

25            subsequent statutes for "preparedness, protection, mitigation, response, and recovery"

26            from emergencies and disasters nationwide, 6 U.S.C. §§311-323, 711-825, and at 42

27            U.S.C. Chapter 68 (Disaster Relief), by eliminating the staff required to perform those

28

1              duties adequately;

2        b.      ceding decision-making authority with respect to FEMA to DHS, and therefore

3              violating provisions of the Post-Katrina Act:

4            • 6 U.S.C. § 316(a), by failing to maintain FEMA as a "distinct entity" from DHS;

5            • 6 U.S.C. § 316(c), by allowing DHS to "substantially or significantly reduce … the

6              authorities, responsibilities, or functions of the Agency or the capability of the Agency

7              to perform those missions, authorities, responsibilities," which include but are not

8              limited to the authority, responsibility and functions mandated for FEMA by statute

9              including "preparedness, protection, mitigation, response, and recovery" duties and

10            other specific statutory mandates identified herein and the authority and responsibility

11            to employ Stafford Act employees to perform FEMA's statutorily mandated and

12            authorized functions; and

13            • 6 U.S.C. §315, by disregarding the transfer of "[a]ll functions" of FEMA " including

14              existing responsibilities for emergency alert systems and continuity of operations and

15              continuity of government plans and programs … including all of its personnel, assets,

16              components, authorities, grant programs, and liabilities" away from DHS and back to

17              FEMA;

18        c.      violating Section 120(a) of the CR by imposing a reduction in force "or any similar

19              reduction of positions" on FEMA's temporary employees; and

20        d.      ignoring and defying statutory requirements and prohibitions, usurping Congress'

21              Article I legislative authority, and violating separation of powers principles embodied

22              in the U.S. Constitution.

23     599.     The actions of Senior Official Performing the Duties of FEMA Administrator Evans

24 and FEMA therefore exceed authority and are contrary to statute and the Constitution and are *ultra*

25 *vires*.

26

27

28

**Claim XIII**
**Administrative Procedure Act, 5 U.S.C § 706(2)(A)**
**Against Defendant Senior Official Performing the Duties**
**of FEMA Administator Evans and FEMA**
**(Arbitrary and Capricious Agency Action)**

600.     Plaintiffs incorporate by reference all preceding paragraphs and the Second Amended Complaint as if fully set forth herein.

601.     The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious." 5 U.S.C. §706(2)(A).

602.     The APA requires that an agency provide "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted).  An action is also arbitrary and capricious if the agency "failed to consider . . . important aspects of the problem" before it.  *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 25 (2020) (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

603.     The actions of FEMA—the implementation of unlawful DHS directives to cede FEMA's decision-making authority to DHS with respect to the reduction in FEMA positions and in particular the renewals of CORE positions; the implementation of unlawful DHS directives to reject renewals of CORE and reservist positions under the Stafford Act according to NTE date; the elimination of CORE and reservist positions by rejecting renewals of appointments under the Stafford Act commencing January 1, 2026; and the implementation of unlawful DHS targets for workforce reduction that eliminate nearly half of FEMA's workforce—were all done without considering the necessarily relevant and important aspects of the issue and without considering FEMA's needs or requirements or the reliance interest of affected employees or those relying on their services; were in fact contrary to the recommendations and needs of FEMA; and were done without any rational connection between the actions taken and the reasons given (or lack thereof), and are therefore arbitrary and capricious.

604. The actions of Senior Official Performing the Duties of FEMA Administrator Evans and FEMA therefore violate the APA because they are arbitrary and capricious under 5 U.S.C. §706(2)(A).

## SUPPLEMENTAL PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that this Court:

605. Declare that Defendants DHS Secretary Noem and DHS have exceeded statutory authority and acted contrary to law to statutory law and the Constitution, and acted in an unlawful arbitrary and capricious manner by and through the removal of FEMA's decision-making authority with respect to the reduction in FEMA positions, including with respect to renewals of CORE positions; the creation and implementation of a policy of rejecting renewals of CORE and reservist positions under the Stafford Act according to NTE date; the elimination of CORE and reservist positions by rejecting renewals of appointments under the Stafford Act commencing January 1, 2026; and the imposition and implementation of targets for workforce reduction that eliminate nearly half the FEMA workforce.

606. Declare that Senior Official Performing the Duties of FEMA Administrator Evans and FEMA have exceeded statutory authority and acted contrary to statutory law and the Constitution, and acted in an unlawful arbitrary and capricious manner by and through the implementation of unlawful DHS directives to cede FEMA decision-making authority to DHS with respect to the reduction in FEMA positions, including with respect to renewals of CORE positions; the implementation of unlawful DHS directive to reject renewals of CORE and reservist positions under the Stafford Act according to NTE date; and the elimination of CORE and reservist positions by rejecting renewals of appointments under the Stafford Act commencing January 1, 2026.

607. Vacate, hold unlawful, set aside, and stay DHS's removal of FEMA's authority to renew Stafford Act employees, the decision to deny renewal of Stafford Act employees according to NTE date; the non-renewal of CORE employees pursuant to that decision; the imposition and implementation of targets for workforce reduction that eliminate nearly half the FEMA workforce;

1   and the actions of Senior Official Performing the Duties of FEMA Karen Evans with respect to

2   implementation of these DHS directives under 5 U.S.C. §§705 and 706.

3

4   DATED: January 27, 2026

                          Stacey M. Leyton
                          Barbara J. Chisholm
                          Danielle E. Leonard
                          Robin S. Tholin
                          Elizabeth Eshleman
                          ALTSHULER BERZON LLP
                          177 Post St., Suite 300
                          San Francisco, CA 94108
                          Tel.: (415) 421-7151
                          Fax: (415) 362-8064
                          sleyton@altshulerberzon.com
                          bchisholm@altshulerberzon.com
                          dleonard@altshulerberzon.com

                  By: */s/ Danielle Leonard*

                          *Attorneys for All Union and Non-Profit Organization Plaintiffs*

                          Elena Goldstein (pro hac vice)
                          Skye Perryman (pro hac vice)
                          Tsuki Hoshijima (pro hac vice)
                          DEMOCRACY FORWARD FOUNDATION
                          P.O. Box 34553
                          Washington, D.C. 20043
                          Tel: (202) 448-9090
                          Fax: (202) 796-4426
                          egoldstein@democracyforward.org
                          sperryman@democracyforward.org
                          thoshijima@democracyforward.org

                  By: */s/ Elena Goldstein*

                          *Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

                          Jules Torti (pro hac vice)
                          PROTECT DEMOCRACY PROJECT

82 Nassau St., #601
New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice app. forthcoming)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorney for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

1

2
        Teague Paterson (SBN 226659)

3
        Matthew Blumin (pro hac vice)
        AMERICAN FEDERATION OF STATE, COUNTY,

4
        AND MUNICIPAL EMPLOYEES, AFL-CIO
        1625 L Street, N.W.

5
        Washington, D.C. 20036
        Tel: (202) 775-5900

6
        TPaterson@afscme.org

7
        MBlumin@afscme.org

8
By: */s/ Teague Paterson*

9
        *Attorneys for Plaintiff American Federation of State*

10
        *County and Municipal Employees, AFL-CIO (AFSCME)*

11

12
        Steven K. Ury (SBN 199499)
        SERVICE EMPLOYEES INTERNATIONAL UNION,
        AFL-CIO

13
        1800 Massachusetts Ave., N.W.

14
        Washington, D.C. 20036
        Tel: (202) 730-7428

15
        steven.ury@seiu.org

16
By: */s/ Steven K. Ury*

17
        *Attorney for Plaintiff Service Employees International*

18
        *Union, AFL-CIO (SEIU)*

19

20
        David Chiu (SBN 189542)
        City Attorney
        Yvonne R. Meré (SBN 175394)

21
        Chief Deputy City Attorney
        Mollie M. Lee (SBN 251404)

22
        Chief of Strategic Advocacy

23
        Sara J. Eisenberg (SBN 269303)
        Chief of Complex and Affirmative Litigation

24
        Molly J. Alarcon (SBN 315244)
        Alexander J. Holtzman (SBN 311813)

25
        Deputy City Attorneys

26
        OFFICE OF THE CITY ATTORNEY FOR THE CITY
        AND COUNTY OF SAN FRANCISCO

27
        1390 Market Street, 7th Floor
        San Francisco, CA 94102

28

1
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

2

3
By: */s/ David Chiu*

4
*Attorneys for Plaintiff City and County of San Francisco*

5

6
Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)

7
Meredith A. Johnson (SBN 291018)

8
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)

9
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA

10
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110

11
Tel: (408) 299-5900

12

13
By: */s/ Tony LoPresti*

14
*Attorneys for Plaintiff County of Santa Clara, Calif.*

15

16
David J. Hackett (pro hac vice)
Special Deputy Prosecutor
Erin King-Clancy (SBN 249197)

17
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING

18
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800

19
Seattle, WA 98104
(206) 477-9483

20
David.Hackett@kingcounty.gov
eclancy@kingcounty.gov

21
By: */s/ David J. Hackett*

22
*Attorneys for Plaintiff Martin Luther King, Jr. County*

23

24
Sharanya Mohan (SBN 350675)

25
Eliana Greenberg (SBN 366319)
Toby Merrill (pro hac vice app. forthcoming)

26

27

28
SUPPLEMENTAL COMPLAINT, No. 3:25-cv-03698-SI                                              56

PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org

By: */s/ Eliana Greenberg*

*Attorneys for Plaintiffs Baltimore, MD, Chicago, IL, Harris County, TX, and Martin Luther King, Jr. County, WA*

Christian D. Menefee
Harris County Attorney

Jonathan G.C. Fombonne
Harris County Attorney

Sarah Utley (pro hac vice app. forthcoming)
Managing Counsel
Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel.: (713) 274-5102
Fax: (713) 437-4211

jonathan.fombonne@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscountytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

By: */s/ Jonathan G.C. Fombonne*

*Attorneys for Plaintiff Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago

1

2                  Rebecca A. Hirsch (pro hac vice)
                Lucy Prather (pro hac vice)

3                  City of Chicago Department of Law,
                Affirmative Litigation Division

4                  121 N LaSalle Street, Suite 600
                Chicago, Illinois 60602

5                  Tel: (312) 744-6934
                Rebecca.Hirsch2@cityofchicago.org

6                  Lucy.Prather@cityofchicago.org

7  By: */s/ Rebecca Hirsch*

8

9                  *Attorneys for Plaintiff City of Chicago*

10                 Ebony M. Thompson
                Baltimore City Solicitor

11

12                 Christopher Sousa (SBN 264874)
                Chief Solicitor

13                 Baltimore City Department of Law
                100 N. Holliday Street

14                 Baltimore, Maryland 21202
                Tel: (410) 396-3947

15                 christopher.sousa@baltimorecity.gov

16 By: */s/ Christopher Sousa*

17                 *Attorneys for Plaintiff City of Baltimore*

18

19

20

21

22

23

24

25

26

27

28