CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
ROBERT BOMBARD
MARIANNE F. KIES
Trial Attorneys
Civil Division, Federal Programs Branch

   1100 L Street, NW
   Washington, DC 20005
   Telephone: (202) 353-7203
   Robert.Bombard2@usdoj.gov

Counsel for Defendants

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al*.<br><br>   Plaintiffs,<br><br>   v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al*.,<br><br>   Defendants. | Case No. 3:25-cv-03698-SI<br><br>**DECLARATION OF KAREN S. EVANS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Hearing Date: March 3, 2026<br>Time: 11:00 a.m.<br>Judge: Hon. Susan Illston<br>Place: San Francisco Courthouse<br>       Courtroom 1 |

In accordance with the provisions of 28 U.S.C. § 1746, I, Karen S. Evans, state as follows, under penalty of perjury, pertinent to the above-styled and numbered cause:

1. I am the Senior Official Performing the Duties of Administrator ("SOPDA") for the Federal Emergency Management Agency ("FEMA"), headquartered in Washington, D.C. In this position, I primarily, but not solely, exercise the authorities previously assigned to FEMA and the Director of FEMA within the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), Public Law 93-288 as amended, codified at 42 U.S.C. §§ 5121, *et seq.*; administer the National Flood Insurance program; and carry out several functions delegated to me by the Secretary of Homeland Security. I have held the SOPDA position since December 3, 2025.

2. The statements set forth in this Declaration are based on my personal knowledge and review of documents and information provided to me in my official duties.

**Attachments to This Declaration**

3. Attached hereto as **Exhibit 1** is a true and correct copy of Chapter 10 of FEMA's Disaster Operations Legal Reference, 4th ed. (Sept. 2020) ("DOLR 4.0").

4. Attached hereto as **Exhibit 2** is a true and correct copy of FEMA Manual 252-11-1 (approved Aug. 25, 2015), also known as FEMA's CORE Manual. Although the CORE Manual provides important factual background and context for the CORE program, it is not binding. FEMA retains the discretion to update and implement new procedures not in violation of law, in between new versions of the policy, to address changing agency direction and needs.

5. Attached hereto as **Exhibit 3** is a true and correct copy of COREs' Conditions of Employment.

6. Attached hereto as **Exhibit 4** is a true and correct copy of an August 8, 2025, Memorandum regarding termination of bargaining rights for COREs, among others.

7. Attached hereto as **Exhibit 5** is a true and correct copy of a December 23, 2025, email communication from FEMA's Chief Human Capital Officer, regarding a "Workforce Capacity Planning Exercise."

Declaration of Karen S. Evans ISO Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

1

**FEMA's Responsibilities and Workforce**

8. FEMA is responsible for, *inter alia*, administering and coordinating the Federal government's response to Presidentially declared disasters pursuant to the Stafford Act. In my role as the SOPDA, I am responsible for reducing the loss of life and property and protecting the nation from all hazards, by leading and supporting the nation in a risk-based, comprehensive emergency management system of preparedness, protection, response, recovery, and mitigation. I am also responsible for partnering with state and local governments, and other emergency providers, to build a national system of emergency management.

9. As SOPDA, I am committed to ensuring the entire FEMA workforce is adequately staffed, trained, resourced, and equipped to fulfill our statutory obligations to the American people.

10. As SOPDA, and by statute, I report directly to the Secretary of Homeland Security. 6 U.S.C. § 313(c)(3).

11. The FEMA workforce covers ten geographic regions. Principally, its workforce includes permanent Title 5 employees; a Cadre of On-Call Response/Recovery Employees ("CORE"); and Reservists. Most FEMA program divisions and office locations utilize both Title 5 employees and CORE employees. A Title 5 employee may share the same title as a CORE employee and work on the same projects. Unlike Title 5 employees, however, CORE employees are limited to disaster and emergency-specific work, as discussed further below.

**FEMA's CORE Program, Generally**

12. COREs work full-time, on temporary appointments, to directly support the response and recovery efforts of open disasters. Specifically, CORE employees perform disaster work, such as applicant processing services, and other recurring work, such as financial management of disaster operations, long-term recovery projects, and close-out activities.

13. COREs generally serve fixed two-year terms. CORE appointments end on the Not to Exceed Date of an appointment, unless the appointment is extended or renewed based on FEMA's evolving operational needs and workload.

14. In recent years, FEMA's work—and therefore, its CORE program—has expanded

Declaration of Karen S. Evans ISO Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

2

beyond the Agency's statutorily mandated mission and traditional disaster responses, to non-disaster-related humanitarian aid. For example, from approximately 2021 to 2024, FEMA COREs assisted the federal government's efforts to provide shelters and supplies to unaccompanied alien children from the Southwest border of the United States. FEMA COREs also supported DHS in the resettling of Afghan refugees via Operation Allies Welcome from approximately 2021 to 2022.

15. The increase in CORE positions over time illustrates the program's rapid expansion. The CORE program, first developed in 1996, was initially comprised of 286 positions. By the end of 2015, well after the enactment of the Post-Katrina Emergency Reform Act of 2006, FEMA employed around 3,416 CORE employees. Five years later, by 2020, that number had more than doubled, to 6,958. By the end of 2024, it almost doubled again, to 11,244 employees. FEMA currently employs 10,168 CORE employees.

16. FEMA's growth and expansion over the years, such as to provide non-disaster-related humanitarian aid as described above, has led to concerns that FEMA has allowed "mission creep" and overstretched its finite resources.

17. There is also an ongoing review at FEMA of the Agency's disaster declaration practices. Specifically, there are concerns that the threshold for declaring a disaster has diminished over the years, allowing a greater number of "disasters" to be created, thereby opening the door to more Disaster Relief Funding. The criteria for these declarations (in particular, the per capita damage indicator), have not been fundamentally revised in over a decade. While FEMA adjusts the dollar threshold annually for inflation, the underlying methodology has remained largely unchanged since 1986 and has prompted reconsideration as to whether the disaster threshold should be elevated. If the standard for a natural disaster changes, FEMA's staffing needs could similarly change.

**Conditions of CORE Employment at FEMA**

18. CORE employees are hired under the Stafford Act, funded by the Disaster Relief Fund, and are placed in the excepted service.

19. COREs generally do not have civil service protections under the Civil Service

Reform Act ("CSRA"), such as appeal rights to the Merit Systems Protection Board ("MSPB"). In fact, by virtue of their term appointments, COREs are not entitled to seek review of "adverse employment actions" with the MSPB unless they have served over two years of an appointment that is over two years in length, or are a preference-eligible employee who has served over one year.[1]

20.     CORE employees also do not have collective bargaining representation. AFGE Local 4060, the sole union at FEMA, now represents only sixty, permanent police officers and fire officials hired pursuant to Title 5. *See also* **Exhibit 4.**

21.     Under the "Cadre of On-Call Response/Recovery Employee (CORE) Program," FEMA Manual 252-11-1 (**Exhibit 2**), when accepting an offer of employment, all CORE employees must sign a Conditions of Employment document (**Exhibit 3**) affirming that: (i) the position is a "temporary civil service excepted service position that does not confer eligibility or priority consideration for permanent appointment"; (ii) the individual "may be released from an assignment at any time and with little or no notice based on the needs of the operation"); (iii) the individual also "be terminated at any time, with cause (e.g. poor performance or misconduct) or without cause (e.g. downsizing of workforce, change in program direction or operational needs)"; and (iv) "my appointment will end on the Not to Exceed (NTE) date of my appointment, unless it is extended based on the needs of the Agency."

22.     FEMA's Office of the Chief Human Capital Officer ("OCHCO") provides each FEMA Office and Directorate with a list of COREs and their expiration dates on a biweekly basis. The FEMA official who requests to renew a CORE is called a "Supervisor of Record." Supervisors of Record requests to renew are sent to me, as FEMA's SOPDA, for review and approval. I then forward the approved requests to DHS's OCHCO. As FEMA is a component of DHS, DHS has final authority over non-renewal decisions.

23.     Non-renewals are distinct from *removals* (also known as terminations). Non-

---

[1] A small proportion of CORE employees are hired for periods greater than two years, not to exceed four years.

Declaration of Karen S. Evans ISO Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

4

renewals are also distinct from agency "rightsizing," which is referenced in the CORE Manual. A "rightsizing" does not occur when FEMA declines to renew a CORE's appointment at the end of a CORE's appointment term.

**Agency Decisions Not to Renew Certain COREs in 2026**

24. Non-renewals of COREs are commonplace. For instance, in 2025, 349 COREs were released at the end of their terms.

25. During January 2026, 303 CORE employees reached the end of their terms of employment. Pursuant to its lawful authority, DHS decided not to reappoint 192 of them. However, DHS rescinded non-renewals for 33 of those 192 COREs within one week.

26. The 159 non-renewals of CORE employees in January 2026 do not jeopardize FEMA's mission, or impair specific response teams. The CORE program continues to exist, operate, and fulfill its mission, and FEMA's functions continue unaltered.

27. The January 2026 non-renewals of COREs do not threaten FEMA's ability to perform its statutory mandate. FEMA routinely surges personnel (and equipment and other assistance), as needed.

28. There is no plan under consideration which calls for the "blanket" or indiscriminate non-renewal of all COREs. Just the opposite. Rather, FEMA and DHS are considering non-renewals of COREs for whom there are performance or misconduct issues, or where a supervisor determines they are overstaffed.

**The Government-Wide Hiring Freeze**

29. On January 20, 2025, the President announced a government-wide hiring freeze. The same day, OMB and OPM issued guidance related to the Executive Order which implemented a hiring freeze across executive agencies.

30. DHS thereafter implemented certain procedures for review of hiring decisions. On March 18, 2025, FEMA received DHS permission to approve CORE appointment extensions for COREs in mission-critical positions, for up to two years. CORE appointments in non-mission critical positions could receive 30-day incremental appointments while awaiting DHS approval.

Declaration of Karen S. Evans ISO Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

5

31. On May 19, 2025, DHS reauthorized FEMA to re-appoint non-mission critical COREs, this time for 180-day periods. That reauthorization existed until its expiration on December 31, 2025. At that point, CORE reappointments started to use the same approval process as other hires throughout FEMA and DHS—including the requirement of final DHS approval.

32. The posting on FEMA's human resources website, stating that, "FEMA's authority to extend CORE appointments ended on December 31, 2025" relates back to the May 2025 reauthorization—not a blanket policy not to renew COREs in the future.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: February 19, 2026

In Martinsburg, WV:

KAREN S EVANS
Digitally signed by KAREN S EVANS
Date: 2026.02.19 21:52:49 -05'00'

Karen S. Evans
Senior Official Performing the Duties of Administrator ("SOPDA")
Federal Emergency Management Agency

Declaration of Karen S. Evans ISO Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

6