Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 3:25-cv-03698-SI<br><br>**SUPPLEMENTAL DECLARATION OF MARYANN TIERNEY** |

## SUPPLEMENTAL DECLARATION OF MARYANN TIERNEY

I, MaryAnn Tierney, declare as follows:

1. I am over 18 years old and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I worked at FEMA for nearly fifteen years. At the time that I left FEMA in June 2025, I was serving in the role of FEMA's Senior Official Performing the Duties of Deputy Administrator. I provided further description of my background in my previous declaration submitted in this case (ECF No. 303-02).

3. I submit this supplemental declaration in response to certain statements in the declaration of Karen Evans, which was submitted in support of Defendants' opposition to Plaintiffs' motion for a preliminary injunction (ECF No. 312-1).

4. I am currently employed in a mass transit agency on the East Coast and was overseeing my organization's preparation for, response to, and recovery from the historic blizzard that occurred February 23-24, 2026. Due to my operational responsibilities, I was unable to provide a supplemental declaration before today.

5. Ms. Evans' declaration does not accurately reflect the operational realities of FEMA disaster response and recovery, nor does it adequately address the functional consequences of the current non-renewal practices on FEMA's existing statutory obligations. Based on my fifteen years of leadership experience at FEMA, including as Regional Administrator for Region III and as Senior Official Performing the Duties of Deputy Administrator, I believe the assertions in Ms. Evans' declaration materially understate the operational harm resulting from the January 2026 CORE non-renewals.

6. Ms. Evans has served as Senior Official Performing the Duties of Administrator only since December 3, 2025. Her declaration relies primarily on policy descriptions and generalized staffing figures, rather than firsthand experience managing large-scale disaster operations, surge staffing, or long-term recovery.

7. Ms. Evans states that non-renewals are "commonplace" and references 349 non-renewals in 2025. That comparison is misleading. Historically, non-renewals were targeted and tied

to workload analysis, operational demand, and force structure requirements. Decisions were made based on specific disaster activity, recovery backlog, housing inventory, and grant management obligations. They were not implemented as centralized, time-based attrition events affecting large numbers of operational personnel simultaneously, and they were not implemented at rates close to that of the January 2026 non-renewals. Further, in my experience, DHS did not previously exercise direct approval authority over CORE renewals.

8. Ms. Evans asserts that FEMA can "routinely surge personnel" and that the January 2026 non-renewals do not jeopardize the agency's mission. But surge capacity depends on the existence of trained, credentialed, and deployable personnel. FEMA's surge model relies heavily on CORE employees and reservists, who are cross-trained and assigned disaster roles beyond their programmatic duties. Reducing that pool of deployable personnel directly reduces FEMA's ability to respond to disasters, especially during multi-state or concurrent disasters.

9. Surge capacity cannot be created instantaneously. New hires require background checks, onboarding, FEMA Qualification System certification, and disaster experience before they can function effectively in the field. The combination of non-renewals and hiring restrictions materially diminishes FEMA's readiness for future disasters.

10. Ms. Evans also does not acknowledge that CORE employees perform central statutory functions without which FEMA cannot execute its mission.

11. For example, CORE employees:
   a. Staff the National Processing Service Centers that process individual disaster assistance applications;
   b. Formulate and manage Public Assistance grants;
   c. Conduct site inspections and damage assessments;
   d. Deploy as Federal Coordinating Officers and field leadership;
   e. Operate housing yards and manage temporary housing units;
   f. Serve in logistics, mitigation, and survivor assistance roles.

12. In practice, CORE employees are not peripheral or supplemental. They constitute the operational backbone of FEMA's response and recovery workforce. During my fifteen years at

FEMA, there was no major disaster in which CORE employees were not indispensable from initial response through recovery closeout.

13. As I described previously, FEMA's housing operations provide a concrete example of how the January non-renewals have already begun to harm FEMA's functioning. As I explained, a housing yard in Alabama responsible for maintaining temporary housing units experienced substantial loss of materials handlers due to non-renewals. Reduced staffing impairs FEMA's ability to maintain, transport, and deploy housing units. That affects real disaster survivors who depend on temporary housing following major events. This example illustrates that the harm is not theoretical. It is operational and immediate.

14. Ms. Evans references concerns about "mission creep" and disaster declaration thresholds. But it is the volume and severity of disasters in recent years that have required sustained staffing increases. During my tenure, FEMA's force strength consistently fell below force structure targets across multiple cadres. FEMA was already operating under staffing strain before the January 2026 non-renewals. Further workforce reductions, particularly of deployable Stafford Act employees, compound existing vulnerabilities.

15. The January 2026 non-renewals and projected workforce reductions will impair FEMA's statutory mission. Ms. Evans asserts that January 2026 non-renewals do not jeopardize FEMA's mission, but provides no cadre-level, regional, or disaster-specific analysis to support that conclusion. Based on my fifteen years of operational leadership at FEMA, including management of large-scale disasters and multi-state responses, indiscriminate non-renewals of CORE employees, especially when combined with reductions in reservists, will significantly degrade FEMA's ability to, among other things:

    a. Staff the National Processing Service Centers that process individual disaster assistance applications;

    b. Formulate and manage Public Assistance grants;

    c. Maintain and deploy housing resources;

    d. Surge staff during concurrent disasters;

    e. Sustain long-term recovery operations.

16. This harm is not speculative. It is predictable, structural, and already emerging.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed February 25, 2026, in Philadelphia, Pennsylvania.

MaryAnn Tierney