CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
MARIANNE F. KIES
CESAR AZRAK
Trial Attorneys
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-1819
Marianne.F.Kies@usdoj.gov

Counsel for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al*.,<br><br>Defendants. | Case No. 3:25-cv-03698-SI<br><br>**DECLARATION OF KEVIN YUSMAN**<br><br>Hearing Date: March 20, 2026<br>Time: 3:00 p.m.<br>Judge: Hon. Susan Illston<br>Place: San Francisco Courthouse<br>Courtroom 1 |

Declaration of Kevin Yusman
3:25-cv-3698-SI

In accordance with the provisions of 28 U.S.C. § 1746, I, Kevin Yusman, state as follows, under penalty of perjury, pertinent to the above-styled and numbered cause:

1.    I am the Associate Chief Counsel, Mission Support Legal Division, Office of Chief Counsel ("OCC") at the Federal Emergency Management Agency ("FEMA"). In this position, I supervise attorneys who are coordinating efforts at FEMA to respond to court orders and discovery requests in this case. I have held this position since May 8, 2022. I have been employed with FEMA OCC since July 2012.

2.    The statements set forth in this Declaration are to the best of my knowledge, information, and belief, and review of documents and information provided to me in my official duties.

3.    I understand that on March 3, 2026, this Court ordered "expedited discovery," including document productions, in connection with Plaintiffs' pending motion for preliminary injunction. The categories of productions ordered were: (i) documents "related to the renewals/nonrenewals of CORE employees" at the Federal Emergency Management Agency ("FEMA"), and (ii) "communications from DHS and FEMA, including email communications," regarding "the renewals/nonrenewals of CORE employees as well as 'target' reductions of FEMA and CORE employee staffing." ECF 321.

4.    I also understand that the Court entered a further Order on March 9, 2026, directing Defendants to "search the custodial records" of Department of Homeland Security ("DHS") and FEMA employees. ECF 328. Namely, I understand the terms of the March 9 Order to require searches of the "custodial records" of the entire DHS Office of the Secretary, the DHS Office of the Chief Human Capital Officer ("OCHCO"), FEMA leadership, the FEMA OCHCO, and FEMA supervisors of programs and offices involved in the renewals of CORE employees. *Id.*

5.    I am also aware that the Court's March 9 Order set a deadline for production of responsive documents of Tuesday, March 17, 2026.  *Id.*

6.    I submit this Declaration to explain the searches and production categories that FEMA was able to implement up to the signing of this Declaration.

Declaration of Kevin Yusman
3:25-cv-3698-SI

1

## SUBSTANTIVE SCOPE OF FEMA SEARCH

7.    Plaintiffs asserted that, "Defendants should use the standard search term review process to identify documents that pertain to the renewals and nonrenewals of the CORE." ECF 327 at 4 (internal pagination). The Court's order did not contain a list of search terms. ECF 328. Therefore, FEMA developed targeted search terms designed to yield information regarding FEMA staffing and CORE renewals or nonrenewals after December 1, 2025.

## STRUCTURE AND TIMING OF FEMA SEARCH AND REVIEW TO DATE

8.    To ensure the Agency's ability to produce responsive materials within the week allotted by the Court's order, FEMA structured its document collection in "Tiers," prioritizing for the earliest ESI collections the custodians most likely to have responsive information, plus those specifically named by Plaintiffs and identified by the Court in its March 9 order.

9.    Namely, FEMA's collection efforts divided custodians into the following three Tiers.

    a.  Tier 1 consisted of the following 9 people:

        i.  Karen Evans, Senior Official Performing the Duties of Administrator ("SOPDA")

        ii.  La'Toya Prieur, CHCO

        iii.  Victoria Barton, Associate Administrator for Office of External Affairs

        iv.  Blanca Sanchez, former Acting Deputy CHCO

        v.  Stephanie Dobitsch, former Acting Associate Administrator for Office of Policy and Program Analysis ("OPPA")

        vi.  Kara Voorhies, Office of the Administrator

        vii.  Puneet Khan, Office of the Administrator

        viii.  Will Bilicic, Office of the Administrator

        ix.  Claire Thomas, Director, Strategy Division, OPPA

    b.  Tier 2 consisted of all FEMA Principal leadership and Regional Administrators (30 people).

    c.  Tier 3 consisted of the following categories of people (971 people):

Declaration of Kevin Yusman
3:25-cv-3698-SI

2

      i. All OCHCO employees (492 people)

      ii. Program Heads (21 people)

      iii. Supervisors of every CORE employee who had an NTE (Not-to-Exceed) date between January 1, 2026, and March 6, 2026 (458 people)

  d. FEMA also collected data from 6 attorneys assigned to OCC.

10. In all, FEMA identified 971 custodians. This total accounts for 45 custodians appearing on multiple lists.

11. As a threshold step to collecting responsive information from each Tier of custodian, FEMA had to create an Excel spreadsheet identifying the employees by name and their respective email addresses for each Tier, because no current list with emails existed for each tier of which I was aware. FEMA did not start until Tuesday, March 10, because the Court's order was issued after the close of business on Monday, March 9. The process was completed in batches for each tier. The final list was compiled on Thursday, March 12.

12. The next step in the process was for the Agency's Office of Chief Information Officer ("OCIO") to "pull" Personal Storage Table ("PST") (email) files from each of the custodians, which include Microsoft Teams documents, and documents from OneDrive (which is a shared document management system) using the date range of December 1, 2025 to March 6, 2026 and to apply the search terms.

13. For FEMA, the search terms run on Tier 1 custodians yielded 11.37 gigabytes ("GB"). The search terms run on Tier 2 custodians yielded 78.18 GB. The search terms run on Tier 3 custodians yielded 109.62 GB.

14. In total, FEMA collected more than 199.18 gigabytes of data from the 971 unique custodians. The collection of data took a total of 10 hours and 38 minutes.

15. The process of OCIO pulling the PST files, OneDrive, and Teams occurred sequentially over the course of the week of March 10 by the Tiers identified above using the lists as these were completed.

16. After FEMA's collection for a Tier was complete, FEMA further divided the results into batches, which in turn were further divided into "email" and "OneDrive" zip files.

Declaration of Kevin Yusman
3:25-cv-3698-SI

3

The processing time for creating each batch varied, ranging from approximately 5 minutes to over 2.5 hours. The difference in duration is because of the number of custodians for each tier and batch.

17. Once FEMA ran search terms through the files and as each was completed, the next step was for the Agency to send the results to the Department of Justice so that the files could be loaded to a secure platform for manual review of responsiveness and privilege.

18. FEMA sent the first batches, which comprised Tier 1, to the Department of Justice at about 1:23 pm ET on Wednesday, March 11. I understand that the Department of Justice then uploaded the raw data to the system.

19. The last batch was finished uploading at 10:12 pm ET on Thursday, March 12. I understand that the Department of Justice then uploaded the raw data to the system.

20. Tier 1 documents were first available for FEMA's review at 2:15 p.m. on Friday, March 13.

21. As part of the review process, FEMA OCC requested attorneys in the office assist with the review.

22. Each of these attorneys completed and submitted the documents for access to the Department of Justice beginning on Monday, March 9 and through Monday, March 16. However, the Department of Justice was not able to clear many of these attorneys for access prior to the close of business on March 13. This slowed FEMA's ability to review the documents over the weekend, Saturday, March 14 and Sunday, March 15.

23. In all, approximately 25 attorneys were made available, but not all were able to dedicate full-time to the task initially.

24. Between March 9 and March 17 alone, FEMA devoted more than 430 personnel hours to reviewing documents for responsiveness. It produced responsive documents from Tiers 1 and 2 on March 17, and by stipulation will produce responsive documents from Tier 3 on March 20.

25. On March 18, FEMA OCC directed various attorneys to make the review of the documents their primary duty. FEMA OCC also authorized overtime to allow for review after

Declaration of Kevin Yusman
3:25-cv-3698-SI

normal business hours.

26.    In total, 77,612 documents of various sizes and pages were batched for review.

27.    As of the signing this Declaration, FEMA has reviewed approximately 67,365 documents. There are still approximately 10,238 documents to be reviewed.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: March 19, 2026

In Herndon, Virginia:

KEVIN D
YUSMAN

Digitally signed by KEVIN
D YUSMAN
Date: 2026.03.19 20:16:46
-04'00'

Kevin Yusman,
Associate Chief Counsel,
Mission Support Legal Division,
Office of Chief Counsel,
Federal Emergency Management Agency

Declaration of Kevin Yusman
3:25-cv-3698-SI

5