CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
MARIANNE F. KIES
CESAR AZRAK
Trial Attorneys
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-1819
Marianne.F.Kies@usdoj.gov

Counsel for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **DECLARATION OF CHRISTOPHER DOI** <br><br> Hearing Date: March 20, 2026 <br> Time: 3:00 p.m. <br> Judge: Hon. Susan Illston <br> Place: San Francisco Courthouse <br> Courtroom 1 |

Declaration of Christopher Doi
3:25-cv-3698-SI

In accordance with the provisions of 28 U.S.C. § 1746, I, Christopher Doi, state as follows, under penalty of perjury, pertinent to the above-styled and numbered cause:

1. Since May 2024, I have worked as a contractor through Leidos, Inc. for the U.S. Department of Justice ("DOJ") as the Automated Litigation Support ("ALS") Lab Manager. Overall, the Federal Programs Branch Automated Litigation Support Lab ("FPB ALS Lab") is responsible for providing eDiscovery consulting and litigation project management to DOJ case teams, supporting DOJ users working in eDiscovery document review and production technology systems, and handling litigation support tasks in support of legal matters assigned to the DOJ Civil Division Federal Programs Branch. In total, the ALS Lab is staffed by seven contractors.

2. The statements set forth in this Declaration are based on my personal knowledge and review of documents and information provided to me in my official duties.

3. I understand that in a March 3, 2026, Order, the Court ordered expedited discovery in this matter, to include the following categories, from the Department of Homeland Security ("DHS") and the Federal Emergency Management Agency ("FEMA"): (i) documents "related to the renewals/nonrenewals of CORE employees" at the Federal Emergency Management Agency ("FEMA"), and (ii) "communications from DHS and FEMA, including email communications," regarding "the renewals/nonrenewals of CORE employees as well as 'target' reductions of FEMA and CORE employee staffing." ECF 321.

4. I also understand that the Court entered a further Order on March 9, 2026, setting the scope of custodial searches of DHS and FEMA employees. ECF 328. I understand the terms of the March 9 Order to require searches of the entire DHS Office of the Secretary, the DHS Office of the Chief Human Capital Officer ("OCHCO"), FEMA leadership, the FEMA OCHCO, and FEMA supervisors of programs and offices involved in the renewals of CORE employees. *Id.* I understand the effective scope of this requirement to encompass approximately 1,250 custodians across DHS and FEMA.

5. I am also aware that the Court's March 9 Order set a deadline for production of responsive documents of Tuesday, March 17, 2026. *Id.*

6. I submit this Declaration to explain the ALS Lab's role in facilitating the DHS and

Declaration of Christopher Doi
3:25-cv-3698-SI

1

FEMA productions, and particularly to explain the burden imposed by the volume of materials and custodians resulting from the DHS and FEMA searches ordered by the Court, combined with a one-week deadline for production.

## ALS LAB ROLE IN FACILITATING DOCUMENT PRODUCTIONS

7    As I explained above in Paragraph 1, the ALS Lab is responsible for providing eDiscovery consulting and litigation support project management to DOJ case teams, supporting DOJ users working in eDiscovery document review and production technology systems, and handling of litigation support tasks in support of legal matters assigned to the Federal Programs Branch. On average, at any given time, the ALS Lab is responsible for facilitating document processing, reviews, and productions for 180 active case teams.

8    Document productions are a complex, time-consuming process. Namely, the process begins with the Agency identifying and collecting documents from relevant custodians. Document collection efforts require time to set up search terms and syntax, running the searches across potentially several data repositories, and exporting document hits into a file that can be transmitted to the ALS Lab. Once the Agency has handled document collection and, in cases (like this one) where the Agency has already applied search terms to that collection, the following steps occur on the ALS Lab end:

    a.   The Agency uploads its document collections to our secure file transfer system, Justice Enterprise File Sharing ("JEFS").

    b.   Once the document collection is posted to JEFS, the Lab's next step is to download and extract the data and copy uncompressed data to the server. The amount of time this takes depends on the volume of data. So, for instance, it takes about 3 hours to download approximately 250GB of compressed data. The Lab then ingests the raw data to our processing platform, RelativityOne. To process the data, the Lab separates the data by custodian and processes individually to deduplicate against previously processed data. Given the high number of custodians in the collection, and the Lab processing each custodian mailbox (PST file) separately, the time required to process the collection was prolonged. The

Declaration of Christopher Doi
3:25-cv-3698-SI

processed data is then exported and loaded into the review platform, Relativity. The amount of time this takes also depends on the volume of data, and—for custodial records—on the number of custodians

c.  Once the raw data from a given collection are processed and loaded to Relativity, the Lab searches the data to identify documents containing specific keywords or terms and structured analytics operations, such as email threading and textual near duplicate identification, to organize data to shorten review time and improve coding consistency. The amount of time this takes also depends on the volume of data. This is because the search terms and structured analytics operations are run against the entire database to identify documents and document relationships for review. For instance, it takes approximately 4 to 5 hours to run email threading, and it takes 3 to 4 hours to run search terms for each set of documents. The Lab cannot make this process run more quickly because it is primarily dependent upon machine time.

d.  Once the document collections are available on Relativity and processed, they are ready for review.

e.  However, Agency counsel does not automatically have access to DOJ's Relativity platform, because they are not DOJ Civil Division employes or contractors. Therefore, to be able to review documents on Relativity, Agency counsel must first submit the Department of Justice Cybersecurity and Privacy Rules of Behavior (ROB) for General Users from (ROB Forms). After Agency counsel submit an "ROB Form" to me, I submit the Forms to DOJ Security. That process can take 24 hours because the Security personnel must confirm that the account requestor has an active government security clearance, and it takes more time if the number of new reviewers is higher. The Security personnel who approve access generally do not work outside normal business hours during the weekday. In general, it takes one business day for reviewers to be approved for access by Security. Once Security approves, the form is submitted to the CORA

Declaration of Christopher Doi
3:25-cv-3698-SI

3

        Administrators who create the user accounts and add them to the review workspace.

    f.    Once Agency counsel review and tag documents on Relativity for responsiveness and privilege, tasks that can require significant time when document volumes are high, the Lab's responsibility is to process the proposed production set for final production. This process includes checking the coding for inconsistencies, creating the production sets, running productions including applying bates stamps and confidential branding, updating OCR to capture redacted material, exporting the production, performing quality control checks, and uploading to our secure file transfer system. The process can take 6 to 8 hours amount of time, depending on the size of the production. The assignment of Bates numbering is an automated process for which the Lab does not control the timing.

9.    As outlined above in Paragraph 8, it is expected that when new data arrive at the FPB ALS Lab there are many discrete tasks that must be performed on the data to make it review ready. Each of the many eDiscovery tasks outlined above, including downloading compressed data, decompressing data, importing raw data into the data processing platform, exporting processed data and loading to the Relativity workspace, imaging documents for review and redaction, updating Relativity analytics and search indices, running search term reports and advanced analytics (e.g., clustering, domain parsing, email threading, textual near-duplicate identification, as needed), and creating document batches, are required to get documents into review. The duration required for tasks to complete is a combination of the time needed by Litigation Support professionals to assess the data and initiate steps to complete a task, and "machine time" or the time required for a computer to complete a task. The human time element of eDiscovery tasks can vary depending on the complexity of the task, but machine time is typically linear and dependent on data volume. That is, the more data there is, the more machine time that is expected for the task to complete.

**STRUCTURE AND TIMING OF PRODUCTIONS IN THIS CASE**

10.    Since March 9, 2026, DOJ instructed the ALS Lab to prioritize DHS and FEMA's

productions in this case.

11.    Given the volume of their respective custodian searches under the Court's March 9 Order, with approximately 1,250 custodians to search between them, I understand that both FEMA and DHS HQ structured their document collections in "Tiers," prioritizing for the earliest ESI collections the custodians most likely to have responsive information, plus other custodians specifically named by Plaintiffs and identified by the Court in its order.

12.    In total, DHS sent us documents from 292 custodians. The total volume of data received from DHS was 1.5 GBs of compressed data, approximately 2 GBs uncompressed.

13.    In total, FEMA sent us documents from 835 custodians. The total volume of data received from FEMA was 160 GBs compressed, which expanded to 173 GBs when uncompressed.

14.    DHS submitted its Tier 1 custodians to the ALS Lab on Wednesday, March 11, 2026, at approximately 9:00 a.m. ET. Following the data processing described above in Paragraph 8, which took roughly 7 hours, the data were available for DHS review on March 11, 2026, at 3:53 pm ET.

15.    DHS submitted its Tier 2 custodians to the ALS Lab on Thursday, March 12, 2026, at 1:26 p.m. ET. Following the data processing described above in Paragraph 8, the data were available for DHS review on Sunday, March 15, 2026, at 10:33 a.m. ET. After threading and de-duplication, DHS Tier 1 comprised 383 documents. After threading and de-duplication, DHS Tier 2 comprised 615 documents.

16.    FEMA submitted its Tier 1 and 2 custodians to the ALS Lab on Wednesday, March 11, 2026, at approximately 1:30 p.m. ET, in the form of batches. Following the data processing described above in Paragraph 8, the data from Tier 1 were available for FEMA review on Friday, March 13, 2026 at approximately 2:00 p.m. ET. The data from Tier 2 were available for FEMA review on Friday, March 13, 2026, at approximately 7:39 p.m. ET.

17.    FEMA submitted its Tier 3 custodians to the ALS Lab on Thursday, March 12, 2026, at 10:12 p.m. Following the data processing described above in Paragraph 8, the data were available for FEMA review on Sunday, March 15, 2026, at approximately 11:19 a.m.. Before

Declaration of Christopher Doi
3:25-cv-3698-SI

5

performing any searches or data culling processes, Tier 1 data comprised 16,601 documents, Tier 2 comprised 30,180 documents, and Tier 3 comprised 47,756 documents. After threading and de-duplication, Tiers 1 and 2 were culled down to 16,887 documents and batched together for FEMA review. After threading and de-duplication, Tier 3 comprised 22,955 documents batched as a separate review.

18.    After the data for Tiers 1 and 2 were loaded into Relativity and were presumed to be ready for review, it was discovered that global deduplication was not implemented on these data sets during processing due to a configuration error. The ALS Lab team found the error when post-processing document volumes exceeded the expected volumes. Reprocessing and reloading the data was not recommended given the potential impact to global deduplication markers for other documents in the processing workspace. I ran textual near-duplicate detection in Relativity to identify the 100% non-primary documents and removed those from the data set to be reviewed. Running the textual near-duplicate process required additional time but yielded the same result in identifying the duplicate documents in the dataset.

19.    As I stated above in Paragraph 8, Agency counsel do not automatically have access to DOJ's Relativity platform, because the setup of user accounts in DOJ's Relativity environment require that users complete an account request form and sign and date a Rules of Behavior form (ROB) that DOJ Civil Security personnel review and approve or deny. In this case, none of the available FEMA reviewers had preexisting access to Relativity. Therefore, each of them submitted a ROB Form to the Lab, for us to submit to DOJ Civil Security. The bulk (27) of FEMA reviewers did not gain access to Relativity until the afternoon of Monday, March 16, 2026, at 3:01 p.m. ET.

20.    No one had any access to Relativity from 11:00 p.m. ET on Saturday, March 14, to 9:00 a.m. ET on Sunday, March 15, due to required platform maintenance of the Relativity system for which the Lab does not control the schedule.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Declaration of Christopher Doi
3:25-cv-3698-SI

6

Dated: March 19, 2026

In Washington, DC:

CHRISTOPHER DOI (Affiliate)
Digitally signed by CHRISTOPHER DOI (Affiliate)
Date: 2026.03.19 20:00:17 -04'00'

Christopher Doi
ALS Lab Manager – Federal Programs

Declaration of Christopher Doi
3:25-cv-3698-SI

7