CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
ROBERT C. BOMBARD
MARIANNE F. KIES
Trial Attorneys
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 989-9509
Robert.Bombard2@usdoj.gov

Counsel for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al*.<br><br>      Plaintiffs,<br><br>      v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al*.,<br><br>      Defendants. | Case No. 3:25-cv-03698-SI<br><br>**NOTICE OF SUBSTANTIAL COMPLIANCE WITH ORDER OF MARCH 20, 2026 (ECF 336)** |

Notice of Substantial Compliance
3:25-cv-03698-SI

Defendants have substantially complied with the Court's March 20, 2026, Order concerning expedited discovery disputes related to Plaintiffs' pending motion for preliminary injunction. *See* ECF 336 ("March 20 Order"). The March 20 Order directed Defendants to perform four tasks: (1) produce "relevant phone electronic phone communications" of certain individuals by March 26, 2026; (2) identify any individuals who were the recipients or authors of the three groups or addresses identified by plaintiffs by March 23, 2026; (3) meet and confer regarding plaintiffs' concerns regarding privilege logs; and (4) meet and confer about "the sufficiency of the DHS production, and why no documents were produced for these custodians and for the December 20 to January 6 time period, no later than March 24, 2026." Defendants have complied with items (2) through (4). Defendants have substantially complied with item (1), having largely completed self-reporting and/or self-searches of custodians' DHS- and FEMA-issued work phones that have yielded little if any potentially responsive material (on top of the tens of thousands of documents already produced by both agencies). Out of an abundance of caution, both DHS and FEMA have also undertaken physical collection and forensic extraction efforts that Defendants anticipate completing by Monday, March 30 for DHS, with FEMA's parallel efforts taking substantially longer given its broader custodian sweep, technological limitations, and logistical constraints. Below, Defendants detail the status of each item in the sequence specified by the March 20 Order.

## 1. Electronic Communications on Government-Issued Phones.

Over the six calendar days since the March 20 Order, DHS and FEMA have substantially complied with item (1), which required the production of "relevant electronic phone communications" of certain custodians within each agency. DHS has accounted for potentially responsive material from the work phones of all six required custodians, with all confirming that they did not discuss the renewal/nonrenewal of CORE employees or target reductions of FEMA and CORE employee staffing on their work phones via text, Signal, or WhatsApp. Declaration of Kateland Jackson (March 26, 2026) ("Jackson Decl."), ¶ 11. For its part, FEMA has completed custodian self-searches of eighteen out of thirty custodians, a process that has so far yielded only two potentially responsive messages.

Notice of Substantial Compliance
3:25-cv-03698-SI

To err on the side of caution and further substantiate the results of their custodian inquiries, both DHS and FEMA have also undertaken all reasonable efforts to physically collect and forensically extract potentially responsive materials from custodian phones. DHS has collected and imaged four of six custodian work phones, with one work phone still to be searched following its custodian's return from international travel, and the other work phone outside of DHS's possession, custody, or control, as detailed below. DHS anticipates that production of any responsive information from the four custodian work phones it has collected may be completed by Monday, March 30. For its part, FEMA has forensically extracted the contents of nine custodians' work phones—five Tier 1 custodians and four Tier 2 custodians—and continues to work with remaining custodians to collect and extract the contents of their work phones, a process that will take substantial additional time to complete given logistical and technological limitations on FEMA's ability to collect and review those custodians' phones. *See* Declaration of Raymond P. Malengo (March 26, 2026) ("Malengo Decl.").

**DHS Phone Searches.** The March 20 Order required DHS to produce relevant electronic phone communications from six custodians—former Secretary Kristi Noem, Corey Lewandowski, Roland Edwards, Joseph Guy, Troup Hemenway, and Kara Voorhies. DHS had imaged the phones of Troup Hemenway, Roland Edwards, Corey Lewandowski, and Secretary Noem on Friday, March 20, prior to issuance of the March 20 Order.

DHS has two available methods of searching work phones: (1) manual searches using screenshots and archiving the relevant messages and (2) physical forensic imaging. Relying on the manual-search method as a primary measure, all six custodians have at this time confirmed that they did not discuss the renewal/nonrenewal of CORE employees or targeted reductions of FEMA and CORE employee staffing on their work phones via text messaging, Signal, or WhatsApp. Having conducted a reasonable inquiry under these expedited circumstances, DHS has complied with this aspect of the Court's Order.

Nonetheless, and out of an abundance of caution, DHS has also forensically imaged the work phones of each required custodian, Jackson Decl. ¶¶ 7-10, other than Joseph Guy and Kara Voorhies, whose circumstances are detailed below. Beginning on Monday, March 23, DHS

searched the imaged phone files using the search term "CORE" with no limitation on the relevant timeframe. *Id.* ¶ 13. That search yielded approximately 2,500 conversation excerpts (representing approximately 600 MB of data) from the work phones of Secretary Noem, Mr. Lewandowski, Mr. Hemenway, and Mr. Edwards. *Id.* ¶ 14. Those results were sent to DOJ on March 26 so the files could be loaded to a secure platform for manual review of responsiveness and privilege. *Id.* ¶ 15.[1]

As noted above, DHS has not yet been able to physically collect and forensically search the work phones of former Deputy Chief of Staff Joseph Guy or Kara Voorhies. Mr. Guy, who has left DHS, has been on international travel since before the March 20 Order, and thus has been unable to physically turn in his DHS phone until his scheduled return to Washington, D.C. on March 27. For that reason, DHS has not yet been able to image or search his DHS phone; nor has Mr. Guy been able to self-search his phone. The Office of the Chief Information Officer ("OCIO") has placed Mr. Guy's phone in "Lost Mode" to preserve all data and prevent it from being used. Upon his return to Washington, DHS will image Mr. Guy's phone and conduct a forensic search. *See* Jackson Decl. ¶ 12. DHS was also unable to image the DHS or FEMA phones issued to Kara Voorhies because those phones are not within Defendants' possession, custody, or control, pursuant to a preservation notice issued by the Office of the Inspector General for the Department of Homeland Security prior to the March 20 Order. *See id.* (Ms. Voorhies is no longer employed by or serving as a contractor with DHS or FEMA, and has had no association with either agency since prior to the March 20 Order.)

************************

DHS has timely produced responsive, non-privileged communications and documents in its possession, custody, and control from the records of the DHS custodians ordered by the Court, as well as a log identifying redacted information or documents that DHS withheld on the basis of one or more privileges. On top of those earlier efforts, DHS has now complied with the March 20 Order's directive to produce responsive materials from relevant custodians' work phones.

---

[1] Preliminary review of a subset of the approximately 2,500 conversation excerpts pulled from DHS custodian phones indicates that a substantial number of the "hits" for potentially responsive material may be attributable to the fact that the search term "CORE" itself appears in the first name of custodian Corey Lewandowski.

Notice of Substantial Compliance
3:25-cv-03698-SI

Defendants further anticipate that a secondary physical collection and forensic extraction process for four of the six custodian phones will backstop its primary self-search efforts, with completion of that process as soon as Monday, March 30. Defendants will supplement that secondary effort once it has completed a forensic search of Mr. Guy's phone following his scheduled March 27 return from international travel.

**FEMA Phone Searches.** The March 20 Order required FEMA to search the work phones of Tier 1 and 2 custodians and produce any responsive materials by March 26. To comply with that requirement within the six calendar days provided, FEMA instructed each of those custodians to search their work phones for any responsive documents and provide screenshots of any potentially responsive messages located. To date, DOJ counsel has been informed that directive has yielded responses from eighteen out of thirty Tier 1 and 2 custodians. Of nine Tier 1 custodians, three have responded and reported no potentially responsive messages. Of twenty-one Tier 2 custodians (eleven program executives and ten regional administrators), fifteen have responded, and FEMA identified and retrieved two responsive images, which have been screenshotted, provided to FEMA OCC, and produced to Plaintiffs.

To err on the side of caution, FEMA also collected and imaged the work phones of as many custodians as possible under the time, logistical, and technological constraints governing this process. To date, FEMA has completed forensic extractions of nine custodians' work phones: Senior Official Performing the Duties of Administrator (SOPDA) Karen Evans; La'Toya Prieur, Victoria Barton, Puneet Kahn, Thomas Breslin; Jessica Samuel; Gregg Phillips; Shila Cooch; and Blanca Sanchez. Malengo Decl. ¶ 15. (FEMA cannot physically collect the work phone previously assigned to an additional Tier 1 custodian, Kara Voorhies, for the same reasons DHS is unable to, as detailed above.) Of necessity, FEMA concentrated its initial efforts on the phones of custodians assigned to its Washington, D.C. headquarters.

FEMA will continue its efforts to complete the collection and forensic extraction process for the work phones of the remaining twenty Tier 1 and Tier 2 custodians, most of whom are either on furlough under the ongoing lapse in appropriations, stationed in locations outside of Washington, D.C., or both. But that will require substantial additional time and resources given

technological and logistical restraints. Based on those factors, FEMA estimates that the completion of the collection and forensic extraction process will require an additional fourteen days for collection and extraction, plus six more days to complete the reporting of potentially responsive material from each phone. Malengo Decl. ¶ 20.

Technologically, FEMA's ability to complete the collection and forensic extraction process for remaining custodians is limited. FEMA's Office of Professional Responsibility has only two investigators with the training and expertise to conduct forensic analysis of mobile devices. *Id.* ¶ 6. Similarly, FEMA's headquarters has only two forensic computers capable of performing device extractions. *Id.* ¶ 8. Each mobile device extraction takes as long as four to six hours, depending on the volume of material on the device. *Id.*

Similarly, FEMA's ability to complete this process is limited by logistical factors. Of the remaining custodians, several are furloughed and thus unavailable due to the ongoing lapse in appropriations. *Id.* ¶ 17. More broadly, the ten regional administrators are stationed across the country, and will be required to send their work phones to FEMA headquarters in Washington, D.C. for forensic analysis, a process complicated by the fact that all FEMA mailroom operations are shut down and all work travel has been canceled under the ongoing lapse. *Id.* ¶¶ 18-19.

********

In addition to tens of thousands of potentially responsive documents it previously produced, FEMA has substantially complied with the March 20 Order through careful efforts to complete custodian self-searches for potentially responsive material on their FEMA work phones. At the same time, out of an abundance of caution, FEMA has undertaken additional efforts to physically collect and forensically search custodians' work phones, a process that continues apace. Given the large number of custodians (including several who are furloughed under the lapse in appropriations), staffing limitations, and technological and logistical constraints, FEMA has done all that it can do under the six-day timeline imposed by the March 20 Order, but it continues to undertake all reasonable efforts to substantiate the results of its custodial self-searches through a physical collection and forensic extraction process it anticipates to take an additional three weeks, at minimum. While FEMA does not believe that the physical extraction of data from phones is

Notice of Substantial Compliance
3:25-cv-03698-SI

5

necessary if individual custodians can confirm that they have no responsive records to produce, FEMA seeks confirmation from the Court that such data extractions are unnecessary, particularly for Tier 2 custodians. That confirmation would save FEMA the time and expense of not having to image those phones, which is a burden not only for the agency but also those custodians who otherwise must have their phones shipped to Washington, D.C., particularly at a time when they might be faced with responding to disasters within their assigned regions.

### 2. Prieur Declaration.

Defendants provided the information ordered in relation to the Prieur Declaration identifying the individuals who received or authored the three groups (i.e., the "DHS Personnel Actions" email group, the "DHS Personnel Verifications Actions Leadership," and the hiringrequest@hq.dhs.gov email address) to counsel for Plaintiffs via email on March 23, 2026. *See* **Exhibit A** (Mar. 23, 2026, Email Correspondence).

### 3. Deliberative Process Privilege.

Defendants met and conferred with Plaintiffs' counsel via video conference concerning deliberative process privilege assertions and Defendants' privilege logs at 4 p.m. ET on Thursday, March 26. The meet-and-confer lasted approximately forty minutes. Counsel for each party addressed those topics, as directed by the March 20 Order.

### 4. Adequacy of Search Terms.

The parties met and conferred about "the sufficiency of the DHS production, and why no documents were produced for these custodians and for the December 20 to January 6 time period" on Tuesday, March 24 at 2:30 p.m. ET. This meet-and-confer lasted approximately one hour, and Defendants addressed the sufficiency of the DHS productions with counsel for Plaintiffs, noting in relevant part that Defendants searched the full timeframe for all DHS custodians.

Dated: March 26, 2026                    Respectfully submitted,

PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

Notice of Substantial Compliance
3:25-cv-03698-SI

ERIC HAMILTON
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER HALL
Assistant Branch Director

*/s/ Robert C. Bombard*
ROBERT C. BOMBARD
MARIANNE KIES
Trial Attorneys
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005

*Counsel for Defendants*