Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF "SUBSTANTIAL COMPLIANCE" AND REQUEST RE: FURTHER COMPLIANCE DEADLINES** |

**INTRODUCTION**

Plaintiffs' preliminary injunction motion to stop Defendants Department of Homeland Security ("DHS") and Federal Emergency Management Agency ("FEMA") from implementing a plan to dramatically downsize FEMA in violation of federal law remains pending (ECF 301, 304), as Plaintiffs take expedited discovery to establish facts regarding DHS and FEMA plans and decision-making regarding the FEMA workforce. Pursuant to this Court's prior orders (ECF 321, 328), during the week of March 30 to April 3, 2026, Plaintiffs deposed the Senior Official Performing the Duties of Administrator ("SOPDA") Karen Evans, DHS Chief Human Capital Officer ("CHCO") Roland Edwards, and FEMA CHCO La'Toya Prieur. These depositions confirmed core allegations in Plaintiffs' supplemental complaint, including the existence of an Annual Staffing Plan to cut FEMA staff by approximately 50 percent that SOPDA Karen Evans admitted to submitting to DHS; that the dramatic reduction was requested by DHS leadership; and that those numbers were communicated to the Office of Management and Budget ("OMB") and Office of Personnel Management ("OPM") pursuant to Executive Order 14356. *See* Leonard Decl., Ex. A (Evans Dep. Trans. 219:21-222:7; 235:4-19).[1]

The depositions also starkly evidenced the deficiencies in Defendants' compliance with the Court's recent orders requiring expedited discovery and the production of information to Plaintiffs regarding the nature of DHS and FEMA decision-making. ECF 321, 328, 339. The deponents revealed documents and information that should have been produced to Plaintiffs by the Court's deadlines but were not, including communications about FEMA business that were made on personal phones by text and Signal (an encrypted messaging application), communications about the staffing plan with the 50 percent cut, and handwritten meeting notes (including meetings with DHS leadership) that Ms. Evans improperly redacted herself before production.

The deposition testimony also revealed the involvement of other individuals at DHS in decision-making regarding FEMA's Cadre of On-Call Response/Recovery Employees ("CORE")

---

[1] On April 8, 2026, Defendants confirmed that the only portions of the Evans' Deposition they wish to mark as confidential pursuant to the Protective Order in this case are certain phone numbers read into the record. Leonard Decl. ¶3. Plaintiffs have provided the Court with non-confidential excerpts from that deposition cited herein.

beyond those previously identified in purported compliance with this Court's March 3 Order (ECF 321, 327-1), in particular a non-employee government contractor named Kara Voorhies, who was given the title Senior Advisor to the DHS Secretary and installed at FEMA by DHS leadership to act as a conduit for information and decision-making, and for whom Defendants have yet to turn over phone records. Defendants' declaration (ECF 327-1) clearly did not comply with this Court's order (ECF 321).

The failure to disclose information and documents prior to the recent depositions was prejudicial to Plaintiffs. The depositions revealed that Defendants could have identified and produced responsive material, but did not. Plaintiffs have repeatedly attempted, unsuccessfully, to resolve the following disputes through video and email conferences with Defendants before, during, and after the depositions, but have been unable to obtain complete compliance. In light of the expedited nature of these proceedings, Plaintiffs provide this further information to the Court in response to the Defendants' "Notice of Substantial Compliance" (ECF 337) and respectfully request a further order from the Court imposing deadlines requiring compliance with this Court's previous orders. Specifically, Plaintiffs request that this Court order the search of personal and work phones of identified individuals and the production of documents relating to the 2026 Staffing Plan, metadata for a key document that was produced, and an unredacted version of an improperly redacted document.

In addition, each of the three deposition witnesses identified some DHS individuals with whom they communicated regarding FEMA staffing and the CORE, but testified that they did not know the full extent of who else was directing or involved in decision-making regarding FEMA staffing. Plaintiffs therefore are noticing the further depositions of two DHS individuals whom the deponents have confirmed were involved in the FEMA staffing and CORE decisions, former Deputy Chief of Staff Guy and former "Senior Advisor" to the DHS Secretary Voorhies, before addressing the Court-ordered deposition of former DHS Secretary Noem. Plaintiffs therefore respectfully request the Court impose further production deadlines of next week to permit review and preparation for those further depositions.

Plaintiffs have repeatedly met and conferred and requested Defendants' position on each of the issues addressed below, including providing notice of this filing. Plaintiffs understand that Defendants oppose this request and intend to file a responsive statement.

**BACKGROUND**

On February 10, 2026, Plaintiffs moved for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction asking the Court to halt a plan to dramatically downsize the FEMA workforce, including through non-renewals of CORE employees by NTE date. ECF 301. The Court converted Plaintiffs' motion to a preliminary injunction and scheduled a hearing on March 3, 2026. ECF 304, 308. Plaintiffs provided, at the Court's request, further clarification of the actions challenged (including a plan to cut FEMA staffing, and to implement through a plan to separate CORE employees by their Not to Exceed ("NTE") dates beginning in January 2026). ECF 307, 307-1. In opposition to Plaintiffs' motion, Defendants filed a single declaration from SOPDA Evans stating, inter alia, that DHS made the relevant decisions, and claiming there was no plan to remove all CORE employees. ECF 312, 312-1.

At the March 3, 2026 hearing, "defense counsel presented a version of the facts markedly different from what is contained in the sworn declaration by Karen S. Evans." ECF 321 at 1. Accordingly, the Court ordered expedited discovery, including that Defendants shall produce documents and communications pertaining to CORE non-renewals and staffing plans; that Plaintiffs may take depositions of certain DHS and FEMA officials; and that Defendants shall provide a declaration identifying the DHS or FEMA individuals involved in decision-making regarding the CORE renewals within two days. *Id*. at 2. The Court also ordered the parties to meet and confer regarding any issues pertaining to the scope of this expedited discovery order, and present any disputes in a joint statement no later than March 6, 2026. *Id*.

Defendants provided a declaration on March 5 that purported to list the individuals at DHS and FEMA involved in decision-making regarding the COREs, based only on information "[t]o the best of" the knowledge of FEMA CHCO Ms. Prieur.[2] ECF 327-1. Defendants did not provide a

---

[2] Documents later produced by Defendants showed that Ms. Prieur was actually on leave and

declaration from anyone at DHS, nor did they reveal the involvement of individuals at DHS who were involved in discussions and decision-making regarding FEMA staffing and CORE employees, including Ms. Voorhies and others.  The parties' March 6 joint statement outlined Plaintiffs' efforts to meet and confer regarding the timing and scope of Defendants' searches (including phone record searches), custodians, the timing of depositions, and the inadequacy of the Prieur declaration.  ECF 327.  Notably, Defendants' position with respect to the expedited discovery focused on custodians and timing, and did *not* raise any objections with respect to scope of the document productions other than custodians and timing.  *Id*.  Defendants advocated that the Court limit the scope of searches to the individuals identified in the Prieur declaration, based on "Defendants' attestation as to FEMA and DHS personnel who *were* involved in relevant decision-making."  *Id*. at 9 (emphasis in original).[3]

On March 9, 2026, this Court issued a further order regarding the parties' discovery disputes, requiring Defendants to produce responsive documents by March 17, 2026, along with a privilege log; rejecting Defendants' request to limit document productions to the custodians listed in the Prieur declaration; and ordering depositions of SOPDA Evans, DHS CHCO Edwards, and FEMA CHCO Prieur to occur the week of March 30.  ECF 328.

On the day of production (March 17), Defendants informed Plaintiffs they were unable to complete the production and requested an extension.  Defendants also objected, for the first time, to production of phone records.  ECF 332 at 2.  Plaintiffs stipulated to a brief extension for certain custodians to Friday, March 20, including based on Defendants' representation that responsive documents from DHS and FEMA leadership (including Ms. Evans) would be produced by the March 17 deadline.  ECF 329 ¶3.

out of the office from roughly December 26, 2025 through January 12, 2026, during many relevant events, a fact of which DHS and FEMA were aware when Defendants decided to submit this inadequate declaration.

[3] Deposition testimony and documents revealed that this representation was inaccurate.  Ms. Voorhies was directly involved in discussions and decisions regarding FEMA staffing (including discussions of plans to cut FEMA staff by 50 percent, plans to reduce the CORE by NTE date, and other discussions).  Neither the DHS CHCO nor FEMA CHCO was aware of who actually made the decisions regarding CORE staffing and FEMA's Annual Staffing Plan, beyond the individuals to whom they personally passed information (which documents revealed included Ms. Voorhies, DHS Management Directorate Chief of Staff Greyson McGill, and others).

On March 17, Defendants produced only a total of 314 documents from DHS. Defendants produced 11,944 documents that they represented were from FEMA leadership custodians. Defendants also objected on March 17, for the first time, to the production of any phone records. The parties presented further disputes to the Court regarding phone records, the scope of Defendants' searches, and invocation of deliberative process privilege. ECF 332, 333. The Court issued a further order on March 20, requiring the "production of relevant electronic phone communications" from specified individuals by March 26. ECF 336.

Late on March 20, 2026, Defendants produced a further 43,148 documents, which they represented were from other FEMA custodians, and a secondary privilege log.[4] As discussed further below, with this secondary production, Defendants also produced handwritten notes from Ms. Evans—which she had redacted *herself*—without explaining the late production, the alterations to the original, or invoking any privilege by including the redactions on any privilege log.

On March 26, Defendants produced two phone records, from unidentified FEMA custodians later determined to be FEMA regional supervisors outside of headquarters. On March 27, Defendants filed a "Notice of Substantial Compliance" in which they confirmed that they had not in fact fully complied with the Court's order to produce phone records. ECF 337. The Court issued a clarifying Order on March 27 in response to this filing, with respect to lower-level FEMA officials. ECF 339.

Plaintiffs deposed Ms. Evans on March 31, 2026. Her testimony revealed a number of additional compliance issues, including the use of personal phones for FEMA business by multiple individuals including herself. Ms. Evans confirmed DHS involvement in FEMA staffing issues and CORE renewals, but denied having complete information regarding DHS leadership involvement, beyond Ms. Voorhies and Mr. Guy.[5] The parties engaged in further conferences in

---

[4] The volume of documents from FEMA (containing many duplicates) does not excuse the inadequate search and production from DHS, or the plainly missing documents from FEMA custodians, as discussed below.

[5] Ms. Evans claimed responsibility for certain decisions regarding the CORE renewals (notwithstanding the statements in her Declaration), but other admissions and evidence casts doubt

writing and in person regarding the issues raised by Ms. Evans' deposition, which were not successful in resolving disputes.

Plaintiffs deposed Mr. Edwards on April 2 and Ms. Prieur on April 3.  Both CHCOs confirmed DHS involvement in communications with FEMA regarding FEMA staffing plans and CORE renewals, but stated they lacked knowledge of all the individuals at DHS who were involved, beyond Ms. Voorhies and Mr. Guy.

During and following these depositions, Plaintiffs have attempted further to resolve disputes regarding Defendants' noncompliance with production of communications on personal and other phones, documents identified in deposition but not produced, improperly altered meeting notes (which counsel permitted Ms. Evans to redact herself, without notice to Plaintiffs), and other issues.  Defendants have only offered partial compliance, with no guaranteed dates.  Leonard Decl. ¶¶13, 14, 17, 23-24.[6]

On April 8, Plaintiffs requested Defendants provide available dates the weeks of April 20 or 27 for the depositions of Mr. Guy and Ms. Voorhies, and have not received a response.  Plaintiffs therefore are noticing the depositions today, and remain willing to discuss minor adjustments to the dates.

## DISCUSSION

## I.    Electronic Telephone Communications

### A.    Use of Personal Phones for DHS and FEMA Business

On March 20, 2026, the Court ordered Defendants to produce responsive electronic phone communications, including Signal chats and text messages, from the phones of Kristi Noem, Corey

---

on any claim of decision-making independent of DHS. Plaintiffs intend to present all of this to the Court once this expedited discovery is complete.

[6] In addition to meeting and conferring regarding Defendants' compliance with the Court's Orders, upon receipt of Defendants' production of documents, on March 20, 2026, Plaintiffs provided notice and commenced the meet and confer process under the Protective Order regarding Defendants' Confidentiality designations, triggering Defendants' deadline to move this Court to maintain any of these designations. *Id.* at 6-7.  Defendants did not mark the deposition transcripts Confidential at deposition, other than three phone numbers read into the record.  Defendants confirmed on April 8, 2026 that their designations for the Evans deposition are limited to those phone numbers and there are no designations for Edwards, and, on April 9, that designations for Prieur were limited to three individual names.

Lewandowski, the individuals identified in the Declaration of La'Toya Prieur, and the nine individuals identified as "Key" FEMA custodians by March 26, 2026.  ECF 336 at 1 (citing ECF 332 at 1; ECF 327-1).  The Court did not exclude relevant communications made on the custodian's personal phones from its order.  *Id.*  Defendants took the position, apparently without any investigation, that they would not search personal phones, regardless of whether the individuals involved used those phones for government business.  Leonard Decl. ¶¶10, 13.

The deposition of Karen Evans conclusively revealed that Ms. Evans used her *personal phone* to communicate regarding FEMA matters with other government officials, including then-DHS Secretary Kristi Noem, Chief Advisor to the Secretary Corey Lewandowski, DHS Deputy Chief of Staff Joseph Guy, and DHS "Senior Advisor" (and actual government contractor) Kara Voorhies.  Leonard Decl., Ex. A (Evans Dep. Trans. 141:21-24, 149:21-151:11).  Ms. Evans also confirmed that at least Ms. Evans, Mr. Guy, and Ms. Voorhies were communicating about FEMA business using personal phones (and potentially Mr. Lewandoski, for whom Ms. Evans had a phone number saved but was unsure whether it was DHS-issued or personal).  *Id.* (Evans Dep. Trans. 141:21-148:20, 151:7-20, 160:4-161:22).  Ms. Evans also confirmed that she used the messaging platform Signal on her personal phone to communicate with at least Ms. Noem, Mr. Lewandowski, Mr. Guy, and Ms. Voorhies about FEMA.  *Id.* (Evans Dep. Trans. 149:18-151:16).  Ms. Evans testified that she selectively preserved some Signal messages that she "determined were appropriate records" by sending screenshots of those messages to herself through her work email account (none of which have been produced by Defendants).  *Id.* (Evans Dep. Trans. 155:12-157:8).[7]

Even a barest minimum of investigation should have revealed to Defendants' counsel the use of personal phones for government business, given Ms. Evans' testimony.  Those communications plainly fall within the scope of this Court's prior Orders to produce *all* responsive electronic phone communications from the relevant custodians.  ECF 336.

---

[7] Ms. Evans also testified that she did not recall anyone from DHS sending a preservation notice, prior to March 10, regarding Signal messages, after her initial on-boarding as a government employee.  Leonard Decl., Ex. A (Evans Dep. Trans. 162:16-164:8).

Defendants have previously taken the position during the parties' meet and confer conferences that they are not obligated to search personal phones because those phones are not in Defendants' possession, custody or control.  With respect to current employees like Ms. Evans (who is also a *Defendant*), who use personal phones for government business, this is baseless. Defendant Evans has control over her personal phone and has already been ordered to produce relevant documents.  Other current government employees (including Ms. Noem and Mr. Guy, who continue to work for the federal government) can likewise be compelled as government employees to produce their phones if those phones are shown to have been used for agency business (which Ms. Evans' testimony confirms for Mr. Guy conclusively, because she has knowledge of his personal phone number; Ms. Evans likewise confirmed she communicated via Signal with DHS Secretary Noem, but did not have knowledge of her phone number).

"[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand."  *Goolsby v. Cnty. of San Diego*, No. 3:17-CV-564-WQH-NLS, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019) (emphasis and internal citation omitted); *see also United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("Control is defined as the legal right to obtain documents upon demand.").  Defendants have offered "no legal authority for the proposition that Rule 34 allows individuals to differentiate between documents that they possess as a corporate officer and documents that they possess as an individual, and this Court is aware of no such authority.  To the contrary, courts regularly compel parties to produce relevant corporate documents in their possession, custody and control as employees of a third-party." *uSens, Inc. v. Shi*, No. 18-CV-01959-SVK, 2019 WL 13201984, at *2 (N.D. Cal. Apr. 24, 2019).  A defendant's admission at a deposition that they possess responsive documents in virtue of their employment is "sufficient to meet [plaintiff's] burden of demonstrating control under Rule 34." *Id.*

Defendants have represented that Ms. Voorhies is no longer a government contractor, but have made no such representation regarding Mr. Lewandowski (who has continued to travel on

government business since leaving DHS).[8]  Moreover, to date, Defendants have provided no basis for their position that the phones of Senior Advisor to DHS Secretary Voorhies or Chief Advisor to DHS Secretary Lewandowski are not within the possession, custody, or *control* of the government, given their use for government business.  Generally, the personal phones of employees are subject to an employer's possession, custody, and control if, as here, a plaintiff has "show[n] that personal devices were used for business purposes."  *Goolsby*, 2019 WL 3891128, at *4; *Rattie v. Balfour Beatty Infrastructure, Inc.*, No. 22-CV-05061-RS (LJC), 2023 WL 5507174, at *3 (N.D. Cal. Aug. 25, 2023).  Communications about agency business on personal phones are also federal records that were required to be preserved under the Federal Records Act.  NARA Bulletin 2015-02, "Guidance on Managing Electronic Messages" (July 29, 2015), https://perma.cc/AN63-89AK ("Employees create Federal records when they conduct agency business using personal electronic messaging accounts or devices."); 44 U.S.C. § 3301(a)(1)(A) (defining "records" broadly to include "all recorded information, regardless of form or characteristics").

On April 8 (two weeks after the Court's deadline for production of phone communications, and after the depositions of Evans, Edwards, and Prieur), Defendants for the first time stated the following with respect to personal phones:

> Karen Evans testified that she emailed screenshots of chats on her personal phone to her work email.  Defendants are reviewing those screenshots and will promptly produce any screenshots that are responsive and nonprivileged.  Kristi Noem, Corey Lewandowski, and Kara Voorhies have confirmed that they did not use their personal phones to discuss FEMA CORE renewals or targeted reductions of FEMA staffing between December 1, 2025 and March 6, 2026.  We are working to obtain contact information for Joseph Guy and Troup Hemenway; once we receive that, we will reach out to them as well.

Leonard Decl. ¶13(c).

This is insufficient to comply (after the fact) with this Court's orders:

- Evans' phone plainly should be searched, rather than relying on some past self-selection of screenshots.

---

[8] Politico, *DHS confirms that Lewandowski left the department along with Noem* (Mar. 27, 2026), available at https://www.politico.com/news/2026/03/27/dhs-lewandowski-left-with-noem-00849313.

- The self-reporting by Noem, Lewandowski, and Voorhies is not reliable or sufficient in light of the history of this case and the unreliability of such self-representations, so phones should be searched for responsive material, and, as with other custodians, certifying declarations should be provided if these individuals claim that they did not communicate about FEMA business.

- Finally, Ms. Evans *provided* the contact information for Mr. Guy, so the statement that Defendants lack this information is specious.

Plaintiffs request that this Court order further compliance with respect to searches of personal phones used for government business by no later than Friday, April 17, 2026: specifically, that the review of material should not include self-reporting or the use of a single search term (i.e., "core"), but rather a reasonable review of communications in context by attorneys familiar with this case, to ensure all responsive communications are identified.  Any custodian claiming not to have conducted such communications should be required to attest to that fact under penalty of perjury.

In addition, because Signal messages are often set to delete automatically, Plaintiffs have significant concerns about Defendants' compliance with their preservation obligations.  Plaintiffs have asked Defendants what steps they took to ensure preservation of official communications on personal phones, but Defendants have provided no response.  Plaintiffs therefore request that the Court order Defendants to further attest to the preservation status of communications on personal phones relating to agency business, for all of these custodians.

### B.    Ms. Voorhies' and Mr. Guy's Work Phones

Defendants have to date refused to search the Voorhies work phones issued by both FEMA and DHS and have taken the position that those phones are not within the possession, custody, and control of DHS because of an order of the DHS Inspector General.  This is nonsensical: the DHS Inspector General is *part of DHS.*  Defendants have also refused to provide a copy of the Inspector General preservation notice that is the purported basis for Defendants' noncompliance with this aspect of the Court's order, despite Plaintiffs' requests for that information.  On April 8, 2026, for the first time, Defendants revealed that they *do* have access to *some* content of Ms. Voorhies phone

that has been extracted by DHS (while continuing to maintain they do not possess the phone), and will engage in a search. Leonard Decl. ¶12(c)(ii). This partial, after the fact compliance is insufficient: *all content on the phone* must be searched for all responsive material. Defendants have provided no basis to support their contention that they do not in fact possess the actual phone, and there is no reason to limit the search to some subset of material previously extracted. Plaintiffs request a further order requiring compliance and production by April 17, 2026.

Further, Defendants have not produced any responsive communications from Mr. Guy's work phone. Defendants initially represented that, even though Mr. Guy had already been separated from DHS, DHS did not have his phone and was unable to obtain it because Mr. Guy was abroad. ECF 337. On April 8, Defendants represented that they had obtained Mr. Guy's work phone and searched it, but that the only material they found was related to the litigation. Leonard Decl. ¶12(b)(ii). Despite being ordered to produce communications from Mr. Guy by March 26, 2026, Defendants have still not produced any such communications.

Plaintiffs request an order requiring Defendants to conduct complete and thorough searches of these devices for responsive material immediately. Given the deponents' admissions that Ms. Voorhies and Mr. Guy were involved in FEMA personnel issues,[9] and the alleged lack of personal knowledge by the three deponents regarding the identity of the actual DHS decision-makers (and therefore actual bases for certain decisions), these records could be central to the issues in dispute regarding DHS decision-making regarding FEMA.

## II.      Failure to Produce Responsive Documents

### A.      DHS and FEMA Communications Regarding FEMA's FY2026 Staffing Plan

---

[9] In addition to Defendants' document production and testimony of the deponents, which confirm Ms. Voorhies's involvement in FEMA decisions, the press continues to report on her involvement on behalf of DHS in FEMA decision-making. *See, e.g.*, Washington Post, *What spending probes at DHS reveal about Kristi Noem's time in office* (Apr. 7, 2026), available at https://www.washingtonpost.com/immigration/2026/04/05/noem-trump-dhs-fema-contracts/; CNN, *'Shadow administrator' at FEMA part of investigation by DHS internal watchdog, sources say* (Mar. 29, 2026), available at: https://www.cnn.com/2026/03/29/ politics/fema-dhs-investigation-watchdog-kara-voorhies; Wall Street Journal, *Investigators Examine Contractor Installed at FEMA Under Kristi Noem* (Mar. 28, 2026), available at: https://www.wsj.com/politics/national-security/investigators-examine-contractor-installed-at-fema-under-kristi-noem-f6f0029d.

At her March 31, 2026 deposition, Ms. Evans confirmed that on December 4, 2025, FEMA sent DHS an Annual Staffing Plan for Fiscal Year 2026 in which she imposed a 50% cut to the then-current levels of FEMA staff, to be included in DHS's final Annual Staffing Plan submitted to OMB and OPM pursuant to Executive Order 14536.  Leonard Decl., Ex. A (Evans Dep. Trans. 219:21-222:7, & Ex. C (in camera, Deposition Exhibit 17).  Ms. Evans confirmed that she sent that communication to DHS (as shown by her contemporaneous handwritten notes).  *Id.*, Ex. A (Evans Dep. Trans. 223:18-224:11) ("Q. Does this refresh your recollection that you are the person who sent the FEMA annual staffing plan with the number 11,383 to DHS on December 4th, and you copied Kara Voorhies? … A. Yes, that's what this indicates.").  She also confirmed in her testimony that the 50% cut target (reflecting a total of approximately 11,500 FEMA staff) had been communicated to OMB and OPM.  *Id.* (Evans Dep. Trans. 229:13-231:2).

Any reasonable search of FEMA and DHS records should have revealed Ms. Evans' communication of this Annual Staffing Plan to DHS, as well as any further DHS communications and documents pertaining to this plan.  Yet Defendants failed to produce the email from Ms. Evans transmitting the Annual Staffing Plan to DHS, or any DHS documents pertaining to that plan, either internally or in communication with OMB or OPM.  In an April 1, 2026 email to Defendants, Plaintiffs requested immediate production of all FEMA communications with DHS regarding the Annual Staffing Plan (which would include Ms. Evans' email), any quarterly reports (required under the Executive Order), and all DHS documents pertaining to FEMA's Annual Staffing Plan, including but not limited to the transmission of the Annual Staffing Plan to OMB/OPM.  Leonard Decl. ¶14(a).  On April 1, 2026, Defendants responded that FEMA's search had included the term "staffing plan" and that the search term "would have yielded" any such communications, notwithstanding the fact that FEMA did not produce Ms. Evans' communications with DHS.  *Id.* ¶14(b).  Moreover, Defendants explained that DHS's search was different, without further explanation, and that Defendants would not agree to any further searches.  *Id.*  This response does not explain the failure to produce relevant documents from Ms. Evans' account, or the failure to produce any DHS documents on the subject of an apparent plan to cut FEMA's workforce in half.

On April 8, 2026 (weeks after the relevant deadlines), Defendants agreed to search for documents pertaining to the transmission of the DHS plan to OMB/OPM, but ignored the request for Ms. Evans' email communicating to DHS and for internal DHS documents. Leonard Decl. ¶14(c). These gestures at partial compliance are far too late and far too little. Notably, the testimony and documents revealed to date directly contradict Defendants' representations to this Court regarding a *lack* of such a plan.

Defendants' refusal to produce any further communications—which Ms. Evans confirmed exist and which plainly fall within the scope of the second category of documents in the Court's March 3, 2026 expedited discovery order (ECF 321 at 2)—only proves the inadequacy of Defendants' search method. It does not absolve Defendants of the responsibility to conduct supplemental searches for key documents that Defendants had failed to produce. Any reasonably conducted conversation with the senior FEMA official would have revealed the existence of these documents.

Plaintiffs respectfully ask the Court to order Defendants to immediately produce all FEMA communications with DHS regarding the Annual Staffing Plan, any quarterly reports, and all DHS documents pertaining to FEMA's Annual Staffing Plan, including but not limited to the transmission of the Annual Staffing Plan to OMB/OPM.

**B.      Metadata about "Talking Points for FY26 Staffing Strategy"**

At Ms. Evans' March 31, 2026, deposition, Plaintiffs asked her about a document produced by Defendants during discovery titled "Talking Points for FY26 Staffing Strategy," USA-AFGE-Exp.-0034341, which pertains to implementation of the FY2026 plan to cut FEMA by 50 percent. Leonard Decl., Ex. A (Evans Dep. Trans. 287:1-292:18).[10] Defendants produced the document to Plaintiffs with metadata including only a filename "DRAFT.docx," and a document creation date of December 11, 2025, rather than identifying the actual custodian or author. *Id.*, Ex. E. In her deposition, Ms. Evans stated that the content aligns with the task that she gave to Stephanie

_____

[10] Defendants marked this document Confidential pursuant to the Protective Order, which Plaintiffs have disputed. Plaintiffs are therefore submitting it to the Court in camera for review rather than on the public docket, until the procedures for lifting designations are exhausted per the Protective Order.

Dobitsch, former Head of FEMA's Office of Policy & Program Analysis, and Will Bilicic, Special Advisor to the Administrator in December 2025. *Id.*, Ex. A (Evans Dep. Trans. 292:4-294:13) (referring to tasks outlined in Ex. 24); *see* Ex. F (in camera, Evans Dep. Ex. 24 at 6998).

On April 1, 2026, Plaintiffs asked Defendants to produce all metadata for the document. Leonard Decl. ¶17. Defendants refused to provide the full file path and identified the custodian only as "FEMA." *Id.* On April 8, counsel claimed that no further metadata exists, which is not plausible, given that the document has an author and was retrieved from a custodian (that is not simply, "FEMA"). *Id.* Defendants' counsel identified individuals that counsel represents were involved, *id.*, but Defendants must produce the native documents and electronic information to confirm those representations. This document is highly probative as to FEMA leadership's staffing targets. Plaintiffs respectfully ask the Court to order Defendants to immediately produce the native document and all metadata, including the file path, author information, and more specific custodian information for this document.

### C. Karen Evans' Self-Redacted Notes

Ms. Evans also stated in her March 31, 2026, deposition that she had personally altered evidence by hand-redacting (with a marker) significant portions of handwritten meeting notes from her day planner before the notes were produced to Plaintiffs. Leonard Decl., Ex. A (Evans Dep. Trans. 174:13-175:16).[11] Those notes were produced along with the secondary production on March 20, described above (without any indication of alternation or claim of privilege by counsel). Leonard Decl. ¶21. They were not listed in any privilege log. *Id.* ¶22. Under questioning, Ms. Evans indicated that she had personally redacted the documents, purportedly for relevance or because they were deliberative, in her opinion as a non-lawyer. *Id.*, Ex. A (Evans Dep. Trans. 174:13-175:14-16). Her deposition testimony confirmed, however, that those handwritten notes contained material that is plainly relevant because it addresses CORE terminations and staffing target numbers, and potentially reveal the identities of meeting participants. *Id.*, Ex. A (Evans Dep.

---

[11] Again, Defendants have marked this document Confidential pursuant to the Protective Order and Plaintiffs therefore are providing it in camera to the Court rather than filing it on the public docket, pending resolution of the validity of those designations. Leonard Decl., Ex. B (in camera).

Trans. 256:12-257:5); *id*., Ex. B (Evans Dep. Ex. 10 at 33534 (in camera)).  The redactions are overinclusive, as they appear to remove the names of some meeting participants and other surrounding information.  *See, e.g.*, *id*., Ex. B (Evans Dep. Ex. 10 at 33537, 33538 (in camera)).

Plaintiffs conferred with Defendants' counsel during deposition breaks to request an explanation of the basis for those redactions, but Defendants' counsel was unable to provide any explanation.  Leonard Decl. ¶24.  Plaintiffs requested production of the unaltered notes.  *Id*.  Plaintiffs followed up by email on April 1, again requesting production of all unaltered pages from Ms. Evans' handwritten notes, so that Plaintiffs could use them in the Edwards and Prieur depositions.  *Id*.  On April 1, Defendants replied that the "production copy, which included notes regarding matters neither responsive to Plaintiffs' discovery requests nor relevant to the subject-matter of this ligation, was hand-redacted under the deliberative process privilege, with review by agency counsel," and stated they would "provide a privilege log as soon as reasonably possible."  *Id.* ¶24(b).

This response confirms that Defendants allowed Ms. Evans to redact her own notes based on her assessment of responsiveness, which is plainly impermissible under the federal rules.  *DiGiacinto v. RB Health (US) LLC*, No. 22-CV-04690-DMR, 2024 WL 4660917, at *1 (N.D. Cal. Feb. 16, 2024) (holding it generally "improper to redact portions of otherwise responsive documents on the grounds that those portions are not relevant or responsive"); *United States Aviation Underwriters Inc. v. Aerospike Iron, LLC*, No. 21CV758-GPC(BLM), 2023 WL 2414265, at *2 (S.D. Cal. Mar. 8, 2023); *Rodriguez v. Vizio, Inc.*, No. 14-CV-368 JLS (NLS), 2015 WL 11439029, at *4 (S.D. Cal. Jan. 6, 2015) ("Defendant is under an obligation to produce responsive documents 'as they are kept in the usual course of business'—presumably in unredacted form." (quoting Fed. R. Civ. P. 34(b)(2)(E)(I))).  Permitting a party to redact their own documents invites self-serving error, as many courts have observed.  *See, e.g.*, *Doe v. Trump*, 329 F.R.D. 262, 276 (W.D. Wash. 2018) ("[T]he unilateral redaction of irrelevant or nonresponsive material from otherwise responsive documents gives rise to suspicion that relevant material harmful to the producing party has been obscured and tends to make documents confusing or difficult to use.") (internal quotation marks and citation omitted); *United States v. McGraw-Hill Cos., Inc.*, 2014 WL

8662657, at *4 (C.D. Cal. Sept. 25, 2014).  It is all the more improper to alter evidence by redaction without revealing that to counsel:  "Redaction is, after all, an alteration of potential evidence." *Evon v. Law Offs. of Sidney Mickell*, 2010 WL 455476, at *2 n.1.

Moreover, Defendants have waived any assertion of privilege because their deadline to provide a privilege log has long since passed.  Their deadline for producing this document was March 17, 2026, and the Court ordered that Defendants "shall also produce a privilege log on that date." ECF 328 at 2.  Yet, these notes were neither produced nor listed.  Nor were they listed in the further privilege log provided on Friday, March 20, with Defendant's production that purported to include documents from the remaining FEMA custodians.  Even now, no privilege log has been produced.  Rule 26 requires a party withholding responsive material for privilege not only to invoke the privilege but to provide sufficient information to assess the basis.  *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 239 (N.D. Cal. 2015) ("The Ninth Circuit is clear: a party cannot withhold documents as privileged if it fails to substantiate its privilege assertions." (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005)); *Ramirez v. Cnty. of Los Angeles*, 231 F.R.D. 407, 410 (C.D. Cal. 2005) ("The party who withholds discovery materials must provide sufficient information (*i.e.,* a privilege log) to enable the other party to evaluate the applicability of the privilege or protection…. Failure to provide sufficient information may constitute a waiver of the privilege.").  Defendants have waived any assertions of privilege by failing to invoke or explain any privilege for these notes after Ms. Evans revealed the alteration in her deposition and Plaintiffs demanded complete production.

For the first time, on April 8, Defendants told Plaintiffs they intend to re-redact Ms. Evans' notes for deliberative process privilege and produce them again along with a privilege log, weeks after their deadlines and after Plaintiffs had the opportunity to depose Ms. Evans about this material (apparently conceding the prior redactions were done improperly).  Leonard Decl. ¶24(d).  They have waived any further privilege assertions they wish to untimely assert, after the fact (and regardless, litigation need would outweigh any qualified deliberative process for these highly probative notes).  Plaintiffs respectfully ask the Court to order Defendants to produce the electronic images of Ms. Evans' unredacted notes in their entirety, immediately.  The alteration of these

notes, to hide content, may justify further deposition in this case, and Plaintiffs reserve the right to ask for continued deposition of Ms. Evans if warranted upon review.

**CONCLUSION**

Contrary to Defendants' representations to this Court, they have not substantially complied with this Court's expedited discovery orders.  Plaintiffs have been forced to repeatedly request responsive material and ensure that the most basic of investigation has been performed by counsel, before, during, and after the recent depositions.  As a result of Defendants' failure to produce responsive material (and completely and accurately respond to this Court's order to identify the individuals involved in decisions regarding the FEMA CORE), Plaintiffs have been prejudiced and good cause exists for further Court orders establishing deadlines for compliance, in advance of the further depositions of DHS officials.  Plaintiffs respectfully request the Court order Defendants to produce the documents described above as indicated, either immediately (for the unredacted notes in counsel's possessions) or by no later than Friday, April 17, 2026 (for those requiring further review).

DATED: April 10, 2026                    Respectfully submitted,

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Robin S. Tholin
Elizabeth Eshleman
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com

By: */s/ Danielle Leonard*

*Attorneys for All Union and Non-Profit Organization Plaintiffs*

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)

PLAINTIFFS' RESPONSE AND REQUEST RE: FURTHER DEADLINES, No. 3:25-cv-03698-SI
18

Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

By: */s/ Tsuki Hoshijima*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

Jules Torti (pro hac vice)
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

PLAINTIFFS' RESPONSE AND REQUEST RE: FURTHER DEADLINES, No. 3:25-cv-03698-SI

19

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)
Matthew Blumin  (pro hac vice)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/ Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorneys for Plaintiff Service Employees International Union, AFL-CIO (SEIU)*

David Chiu (SBN 189542)

PLAINTIFFS' RESPONSE AND REQUEST RE: FURTHER DEADLINES, No. 3:25-cv-03698-SI
20

City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By: /s/ David Chiu

*Attorneys for Plaintiff City and County of San
Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By: /s/ Tony LoPresti

*Attorneys for Plaintiff County of Santa Clara, Calif.*

Christopher Sanders (pro hac vice)
General Counsel
Erin King-Clancy (SBN 249197)
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800

Seattle, WA 98104
(206) 477-9483
chrsanders@kingcounty.gov
eclancy@kingcounty.gov

By: */s/ Erin King-Clancy*

*Attorneys for Plaintiff Martin Luther King, Jr. County*

Sharanya Mohan (SBN 350675)
Eliana Greenberg (SBN 366319)
Toby Merrill (pro hac vice)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
eliana@publicrightsproject.org
toby@publicrightsproject.org

By: */s/ Eliana Greenberg*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL, Harris County, TX, and Martin Luther King, Jr. County, WA*

Jonathan G.C. Fombonne
Harris County Attorney

Sarah Utley (pro hac vice app. forthcoming)
Managing Counsel
Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel: (713) 274-5102
Fax: (713) 437-4211

jonathan.fombonne@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscoupntytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

By: */s/ Jonathan G.C. Fombonne*

PLAINTIFFS' RESPONSE AND REQUEST RE: FURTHER DEADLINES, No. 3:25-cv-03698-SI

22

*Attorneys for Plaintiff Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago

Rebecca A. Hirsch (IL ARDC 6279592) (pro hac vice)
Lucy Prather (IL ARDC 6337780) (pro hac vice)
City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Rebecca.Hirsch2@cityofchicago.org
Lucy.Prather@cityofchicago.org

By: */s/ Rebecca Hirsch*

*Attorneys for Plaintiff City of Chicago*

Ebony M. Thompson
Baltimore City Solicitor

Christopher Sousa (SBN 264874)
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (410) 396-3947
sara.gross@baltimorecity.gov

By: */s/ Christopher Sousa*

*Attorneys for Plaintiff City of Baltimore*