CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

 450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
BRAD P. ROSENBERG
Special Counsel
CHRISTOPHER HALL
Assistant Branch Director
MARIANNE F. KIES
JEREMY S.B. NEWMAN
ROBERT C. BOMBARD
Trial Attorneys
Civil Division, Federal Programs Branch

 1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-1819
Marianne.F.Kies@usdoj.gov

Counsel for Defendants

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.* <br><br>  Plaintiffs, <br><br>   v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br>  Defendants. | Case No. 3:25-cv-03698-SI <br><br> **REPLY ISO NOTICE OF SUBSTANTIAL COMPLIANCE WITH ORDER OF MARCH 20, 2026 (ECF 336) AND RESPONSE TO REQUEST FOR "FURTHER COMPLIANCE DEADLINES"** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 2

I.     The Supplemental Complaint ................................................................................. 2

II.    The Motion for Temporary Restraining Order .................................................... 3

III.   The Hearing on Plaintiffs' Motion for Preliminary Injunction ........................... 4

IV.   Expedited Discovery .............................................................................................. 5

     A.    Document Productions ................................................................................ 6

     B.    Depositions .................................................................................................. 9

     C.    The Instant Dispute ................................................................................... 11

LEGAL STANDARD ....................................................................................................... 11

ARGUMENT ..................................................................................................................... 12

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. LegalNet, Inc. v. Davis*,
673 F. Supp. 2d 1063 (C.D. Cal. 2009) ................................................................. 11

*Goolsby v. Cnty. of San Diego*,
2019 WL 3891128 (S.D. Cal. Aug. 19, 2019) ....................................................... 14

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
2024 WL 3174874 (S.D. Cal. June 25, 2024) ........................................................ 11

*Krishnan v. Cambia Health Solutions*,
2021 WL 3129940 (W.D. Wash. July 23, 2021) .................................................... 14

*Lackey v. Stinnie*,
604 U.S. 192 (2025) ............................................................................................... 12

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
208 F.R.D. 273 (N.D. Cal. 2002) ........................................................................... 11

*Sports Rehab Consulting LLC v. Vail Clinic*,
2025 WL 1144559 (D. Colo. Apr. 18, 2025) ......................................................... 14

*Trump v. IRAP*,
582 U.S. 571 (2017) ............................................................................................... 12

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ............................................................................................... 12

**Rules**

Fed. R. Civ. P. 26 ............................................................................................... 11, 13

Fed. R. Civ. P. 34 ..................................................................................................... 14

**Other Authorities**

Executive Order 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025) ........................................ 2

Executive Order 14356, 90 Fed. Reg. 48,387 (Oct. 15, 2025) ..................................... 2

8A Fed. Prac. & Proc. Civ. § 2051.1 (3d ed.) .............................................................. 2

**INTRODUCTION**

On March 3, 2026, this Court directed expedited discovery in connection with Plaintiffs' Motion for Preliminary Injunction against the Department of Homeland Security ("DHS") and the Federal Emergency Management Agency ("FEMA"). Expedited discovery was necessary, the Court determined, to answer a single, discrete factual question left unclear by Defendants' Declaration in support of their Opposition to Plaintiffs' Motion: whether DHS, or its component FEMA, had made the decision not to renew certain FEMA "CORE" employees in January 2026 when their temporary appointments expired. ECF 321 at 1–2.[1] On March 9, the Court clarified that its order granting expedited discovery would encompass not only depositions but electronic searches of roughly 1,300 custodians, to include the entire DHS Office of the Secretary, DHS Office of the Chief Human Capital Officer ("OCHCO"), FEMA leadership, FEMA OCHCO, and FEMA supervisors of programs and offices involved in the CORE renewals. ECF 328. Through an extraordinary effort, and despite an ongoing lapse in appropriations, DHS and FEMA produced over 55,000 documents in a matter of days. Defendants also offered for deposition FEMA's top official, Senior Official Performing the Duties of Administrator ("SOPDA") Karen Evans, as well as FEMA's and DHS's respective Chief Human Capital Officers, La'Toya Prieur and Roland Edwards. Plaintiffs thus have had abundant opportunity to discover the answer to the question posed by the Court: Did DHS or FEMA decide not to re-appoint COREs in January 2026?

The answer, as Defendants' counsel represented at the March 3 hearing, is that the decision not to re-appoint those COREs was made by **FEMA**, not DHS. Moreover, there is no evidence that DHS ever rejected any recommendation by FEMA to re-appoint certain COREs. Contrary to Plaintiffs' repeated assertions in their briefing and at oral argument, FEMA—not DHS—made the challenged decisions.

Plaintiffs, dissatisfied with this clear answer, want even more discovery. They want more documents. They want more depositions—including of non-parties. They want more information about the documents they already have. They want the Court to direct government employees (and non-employees) to hand over the contents of their personal cell phones. None of that can or will

---

[1] "CORE" stands for the "Cadre of On-Call Response/Recovery Employees."

Reply ISO Notice of Substantial Compliance and Response re: "Further Compliance Deadlines"
3:25-cv-03698-SI

1

change what Plaintiffs already discovered: Under oath, Ms. Evans clarified her prior declaration and testified unequivocally that FEMA (she, personally) decided not to renew certain COREs upon the expiration of their temporary terms.

Supplied now with the answer to the question that prompted this expedited discovery, based on searches of hundreds of custodians and nearly 21 hours of record examination of three deponents, the Court should determine that it has what it needs to resolve Plaintiffs' Preliminary Injunction Motion and bring the expedited discovery period to a close. In so doing, it should temporarily pause all discovery in this case and order the parties to confer regarding a supplemental briefing schedule for Plaintiffs' Motion for Preliminary Injunction, so the parties can present the material Plaintiffs discovered into the proper legal context for this Court's *prompt* resolution. The Court should also allow Defendants to submit a motion to dismiss the Supplemental Complaint (ECF 298) and direct the parties to confer regarding a briefing schedule for that motion. Finally, and before any discovery in this matter resumes following resolution of Defendants' forthcoming motion to dismiss, the parties should be directed to hold a new Rule 26(f) conference to discuss the proper parameters of discovery and ensure that it is properly tailored to Plaintiffs' new claims, thus minimizing the need for continued Court intervention. *See* 8A Fed. Prac. & Proc. Civ. § 2051.1 (3d ed.) ("The animating impulse behind the Rule 26(f) conference requirement is that advance planning and collaboration will frequently reduce or avoid problems that would occur without that planning.").

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Supplemental Complaint

This litigation, filed in April 2025 against 25 federal Agencies, challenges "large-scale" Reductions in Force ("RIFs"), putatively pursuant to Executive Order 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025). *See generally* ECF 1 (Compl.), ECF 100 (Am. Compl.), ECF 270 (Second Am. Compl.). On January 30, 2026, however, Plaintiffs filed a "Supplemental Complaint" to challenge an entirely "new round of directives"—particularly, Executive Order 14356, 90 Fed. Reg. 48,387, issued on October 15, 2025—that directed Agencies to create "Annual Staffing Plans." *See, e.g.*, Suppl. Compl. ¶¶ 436, 441–55 ("Supplemental Factual Allegations," § I). Separately in their 53-

page Supplemental Complaint, which added FEMA as a Defendant (*id.* ¶¶ 439, 440), Plaintiffs challenge an alleged "downsizing directive" to FEMA. *Id.* ¶¶ 456–568 ("Supplemental Factual Allegations," § II). Specifically, based largely on media reporting, Plaintiffs allege that DHS, FEMA's parent agency, has unlawfully usurped FEMA's authority by ordering FEMA not to re-appoint certain term personnel (COREs) at the expiration of their terms. *E.g.*, *id.* ¶ 480 ("The mechanism by which DHS has decided to achieve the designated 41 percent reduction in CORE employees includes a DHS order to FEMA not to renew CORE employees with NTEs beginning on January 1, 2026."); *id.* ¶ 484 ("At the direction of DHS, FEMA began implementing Secretary Noem's blanket denial of CORE renewals on New Year's Eve."). According to the Supplemental Complaint: "DHS, not FEMA, is making the decisions not to renew these employees." *Id.* ¶ 492. The Supplemental Complaint brings new Administrative Procedure Act ("APA") (and derivative *ultra vires*) claims related to this supposed DHS directive. *See generally id.* ¶¶ 575–604.

Defendants have not yet had any opportunity to respond to the Supplemental Complaint, such as through a motion to dismiss. Nor have the parties had an opportunity to discuss the contours of appropriate discovery regarding the claims in that Complaint, should those claims survive a motion to dismiss.

## II.    The Motion for Temporary Restraining Order

On February 10, Plaintiffs moved for a Temporary Restraining Order related to the alleged DHS decision not to renew FEMA COREs. ECF 301; *see* ECF 301-1 (Memo. ISO TRO) at 12–19 (internal pagination), § II: "The Unlawful Directive to Reduce FEMA's Workforce"); *e.g.*, *id.* at 16 ("At DHS's direction, FEMA began implementing Secretary Noem's blanket disapproval of CORE renewals on December 31, 2025[.]"). Defendants opposed Plaintiffs' Motion, which the Court had converted to a Motion for Preliminary Injunction. ECF 312. Among other things, Defendants explained that the Civil Service Reform Act's comprehensive scheme for resolving federal employment disputes forecloses district court jurisdiction. *Id.* at 10–13 (internal pagination). Defendants' opposition, prepared over nine days, attached a Declaration from FEMA's SOPDA Karen Evans. ECF 312-1 ("Evans Decl."). As to the non-renewal of certain COREs in January 2026, Ms. Evans stated that "[p]ursuant to its lawful authority, DHS decided

not to reappoint 192 of them." *Id.* ¶ 25. After the Motion was fully briefed but before the hearing, Defendants sought to provide a supplemental declaration that would have clarified what Ms. Evans intended by her statement in Paragraph 25 of her Declaration. Plaintiffs informed Defendants that they would oppose submission of this information to the Court, so Defendants did not do so. *See* **Ex. 5** to Kies Decl. (Feb. 26, 2026, Correspondence) (defense counsel explaining that the additional facts "are necessary for completeness of the record").

## III.     The Hearing on Plaintiffs' Motion for Preliminary Injunction

Without the benefit of the supplemental information that Defendants had endeavored to provide to Plaintiffs and the Court, a hearing on Plaintiffs' Motion took place on March 3, 2026. *See* **Ex. 1** to Kies Decl. (Mar. 3, 2026, Hr'g Tr., hereafter, "Hr'g Tr."). The Court opened the hearing by stating its initial inclination to deny the Motion because, *inter alia*, "the evidentiary record is not sufficiently developed on the key questions of whether DHS ordered or directed that FEMA make staffing cuts and cut staffing to a certain level." *Id.* at 4:7–11. But Plaintiffs continued to insist that the facts were otherwise, arguing that "DHS made the decisions not to do the renewals," and "they removed authority from FEMA to make those decisions," so "if someone was not renewed, it was DHS'[s] decision, not FEMA's." *Id.* at 20:21–25; *see also, e.g.*, *id.* at 21:13–19 (describing this purported fact as "the key to [Plaintiffs'] status quo argument" and "part of the merits" because "DHS does not have the authority to remove this authority from FEMA"); *id.* at 21:22–24 ("[T]he status quo with these individuals is FEMA approved the renewal. DHS made an unlawful decision and took an unlawful action when they decided not to reappoint them."); *id.* at 22:8–14 ("That's the unlawful act that is the direct cause of those individuals being separated from federal service and not being renewed, because the renewal was approved. The status quo, the status quo prior to the unlawful act, is renewal. FEMA's already made the decision for these, Your Honor. So that is the key to [Plaintiffs'] argument.").

In support of their argument that DHS (not FEMA) made the decision not to re-appoint COREs in January 2026, Plaintiffs pointed to Paragraph 25 in the Evans Declaration, discussed above. *Id.* at 21:8–11. Defendants, in turn, explained that Plaintiffs had misunderstood the Evans Declaration, that Defendants possessed additional information relevant to that statement, and that

Reply ISO Notice of Substantial Compliance and Response re: "Further Compliance Deadlines"
3:25-cv-03698-SI

Defendants could provide this clarity via a supplemental declaration. *E.g.*, *id.* at 28:18–31:3, 32:22–33:11, 44:14–21. For their part, Plaintiffs' counsel, while objecting that defense counsel was "trying to testify as to facts," themselves reasserted the alleged fact that "DHS decided not to reappoint [the COREs]," *e.g.*, *id.* at 31:5–32:6, 62:11–15, and further accused defense counsel of "attempting to controvert the evidence . . . in order to disrupt our ability to obtain th[e] PI," *id.* at 41:8–14; *id.* at 66:5–17. Following this back-and-forth, the Court retired the hearing and indicated that it would "let [the parties] know" if it needed additional information. *Id.* at 67:15–21.

## IV.    Expedited Discovery

After the hearing, the District Court issued an order "Re: Expedited Discovery on Motion for Preliminary Injunction." ECF 321. As preamble, the Court stated:

> On March 3, 2026, the Court heard argument on plaintiffs' motion for a preliminary injunction regarding non-renewals of "CORE" staff at [FEMA]. At the hearing, the Court expressed concern regarding the factual sufficiency of the current record. Also at the hearing, defense counsel presented a version of the facts markedly different from what is contained in the sworn declaration by Karen S. Evans, [SOPDA for FEMA]. In particular, defense counsel represented that since January 1, 2026, [DHS] adopted 100% of the renewal recommendations for CORE staff made by SOPDA Evans and that any non-renewals of CORE employment were made at the FEMA level, rather than at the DHS level. By contrast, Evans declared under penalty of perjury that, of the 303 CORE employees whose terms of employment were set to expire in January 2026, "**DHS** decided not to reappoint 192 of them." This factual dispute goes to the core question in this case: whether DHS ordered or directed that FEMA make staffing cuts (and cut staffing to a certain level).

*Id.* at 1–2 (citations omitted). "In light of this significant factual dispute and the changing position of defendants," the District Court ordered "the following expedited discovery": (i) documents "related to the renewals/nonrenewals of CORE employees"; (ii) communications from DHS and FEMA "regarding the renewals/nonrenewals of CORE employees as well as 'target' reductions of FEMA and CORE employee staffing"; (iii) a total of four depositions, of former Secretary Noem, SOPDA Evans, and the DHS and FEMA CHCOs; and (iv) a declaration identifying "the individual(s) involved in the decisions regarding the renewal of the CORE employees whom defense counsel referenced at the hearing." *Id.* at 1–2. The order did not include search terms for

the document productions. *See id.* The Court directed the parties to meet and confer and, by March 6, file a joint statement outlining any disputes as to scope. *Id.* at 2.

The parties conferred and filed a joint statement, as directed. ECF 327. In an insert three times the length allowed by Court rule, Plaintiffs requested, *inter alia*, that Defendants produce (in six calendar days) ESI from approximately 1,300 custodians (the entire DHS Office of the Secretary, DHS OCHCO, FEMA leadership, FEMA OCHCO, and FEMA Supervisors of Programs/Offices involved in CORE renewals) and that the District Court categorically overrule any assertions of deliberative process privilege. *Id.* at 1–7. Plaintiffs' proposal did not include search terms. *See id.* Defendants responded, within the 2.5 pages allotted, that Plaintiffs' proposal contemplated full-blown merits discovery on an expedited timeframe. Defendants offered to search for responsive materials from the *actual* decisionmakers, including the SOPDA. *Id.* at 8–10. On March 9, the Court ordered the production of responsive documents, and a privilege log, by March 17, from what amounted to approximately 1,250 custodians. *See* ECF 328. The following discovery has occurred, with objections from Plaintiffs (and demands for even more discovery) every step of the way.

A. <u>Document Productions</u>

1. *The Department of Homeland Security*

DHS timely produced 314 responsive documents, as detailed below.

To ensure the Agency's ability to produce as many responsive documents as possible within the allotted timeframe, DHS headquarters structured its document collection in "tiers," prioritizing for the earliest ESI collections the custodians most likely to have responsive information, plus those specifically named by Plaintiffs and identified by the Court in its March 9 order. ECF 333-1 (Jackson Decl.) ¶ 9. Tier 1 included the following five custodians: (1) Troup Hemenway, former Principal Deputy Chief of Staff; (2) Joseph Guy, former Deputy Chief of Staff ("DCOS"); (3) Roland Edwards, CHCO; (4) Corey Lewandowski, former Senior Advisor to the Secretary of Homeland Security; and (5) Kristi Noem, former Secretary of Homeland Security. *Id.* ¶ 10. DHS included Hemenway, Guy, and Edwards based on confirmation that they were involved in receiving, reviewing, and/or approving FEMA's request for renewal of CORE employees

starting in January 2026. ECF 327 at 9 (internal pagination); ECF 327-1 (Prieur Decl.). DHS included Lewandowski and Secretary Noem at Plaintiffs' demand, which the Court adopted. ECF 328; *see* Jackson Decl. ¶ 10. Tier 2 included the 212 employees reporting to Mr. Edwards in DHS's OCHCO and the 72 other people employed in the Office of the Secretary, the two DHS offices demanded by Plaintiffs and directed by the Court. ECF 328; *see* Jackson Decl. ¶ 11. For each of these custodians, DHS pulled Personal Storage Table ("PST") (email) files; communications from Microsoft Teams; and documents from OneDrive (which is a shared document management system). Jackson Decl. ¶ 13. In total, DHS collected over one gigabyte ("GB") of data from the nearly 300 custodians in Tiers 1 and 2. *Id.* In addition, DHS HQ requested that the Office of the Executive Secretary search its records for official correspondence and documents transmitted to the Secretary regarding FEMA staffing and CORE renewals or nonrenewals after December 1, 2025. *Id.* ¶ 8. The Office of the Executive Secretary located no responsive material. *Id.*

The Court's March 9 Order did not provide search terms; nor did Plaintiffs propose any. Therefore, DHS HQ developed search terms designed to yield information regarding FEMA staffing and CORE renewals or nonrenewals after December 1, 2025. Those search terms were:

- (CORE OR "Cadre of On-Call Response and Recovery") /5 (renew* OR nonrenew* OR reappoint* OR nonreappoint* OR NTE OR "workforce reduction plan")
- "Workforce Capacity Planning Exercise" /5 FEMA
- Target /5 (reduc* OR staff*) /5 FEMA

These searches yielded nearly 1,000 documents, which DHS reviewed for responsiveness and privilege. *Id.* ¶ 20.

### 2.    Federal Emergency Management Agency

FEMA timely produced over 55,000 documents, as detailed below.

To ensure its ability to produce responsive materials within one week, FEMA similarly structured its document collection in "Tiers," prioritizing for the earliest ESI collections the custodians most likely to have responsive information, plus those named by Plaintiffs and identified by the March 9 Order. ECF 333-2 (Yusman Decl.) ¶ 8. Tier 1 comprised nine key custodians, including SOPDA Karen Evans and CHCO La'Toya Prieur. *Id.* ¶ 9. Tier 2 comprised

all FEMA Principal leadership and Regional Administrators (30 people). *Id.* Tier 3 comprised OCHCO employees; Program Heads; and Supervisors of every CORE employee who had an NTE (Not-to-Exceed) date between January 1, 2026, and March 6, 2026. *Id.* FEMA also collected data from six attorneys assigned to OCC. *Id.* In all, FEMA identified 971 custodians. *Id.* ¶ 10. For each, FEMA pulled email files; communications from Microsoft Teams; and documents from OneDrive. *Id.* ¶ 12. In total, FEMA collected nearly 200 gigabytes of data from these custodians and applied search terms. *Id.* ¶¶ 13–14.[2] Between March 9 and March 17 alone, FEMA devoted more than 430 personnel hours to reviewing documents for responsiveness. *Id.* ¶ 24. It produced responsive documents from Tiers 1 and 2 on March 17, and by stipulation (ECF 330) from Tier 3 on March 20. In total, FEMA produced over 55,000 documents to Plaintiffs. *See* ECF 341 at 6 (internal pagination) (noting that FEMA alone has already produced 55,092 documents).

Presumably because they have found no support for their speculations in the voluminous production from Defendants, Plaintiffs remained dissatisfied. On Thursday, March 18, at 9:11 p.m. ET, Plaintiffs emailed Defendants a six-page, single-spaced letter alleging deficiencies in Defendants' productions and privilege logs and demanding a meet-and-confer four business hours later, by 10:30 a.m. PT. Defendants explained that they needed time to respond to Plaintiffs' demands and proposed a meet-and-confer on Friday, March 19. Plaintiffs refused and, with two minutes' notice, contacted the Court and unilaterally imposed an 8:00 p.m. ET deadline for briefing the dispute. In their filing, Plaintiffs raised four arguments. First, although the March 9 Order (ECF 328) did not require searches of phones, Plaintiffs demanded that Defendants be directed to produce, in four calendar days, "all responsive electronic text, Signal, and any other phone communications," which are "commonly collected and produced in discovery." ECF 332 at 1–2. Second, although Defendants had provided sworn testimony of the identity of DHS decisionmakers on CORE hiring (ECF 327-1), Plaintiffs demanded that DHS disclose the recipients and authors of various email groups/addresses they had seen elsewhere in the document productions. ECF 332 at 2–3. Third, Plaintiffs renewed their request for the Court to blanket

---

[2] FEMA's search terms were structured slightly differently than DHS's, given the broader scope of DHS's authorities and responsibilities and the different relationship of FEMA to COREs.

Reply ISO Notice of Substantial Compliance and Response re: "Further Compliance Deadlines"
3:25-cv-03698-SI

overrule any deliberative-process privilege assertion. *Id.* at 3. Finally, Plaintiffs disputed the completeness of DHS's production: requesting not only that DHS search for and produce additional specific documents referenced in its existing production, *id.* at 4–5, but also that DHS redo its searches with new terms proposed by Plaintiffs for the first time that day, *id.* at 5–6. The Court, in turn, ordered Defendants to produce responsive telephone communications from more than 35 people and identify the recipients or authors of the email groups/addresses Plaintiffs flagged. ECF 336 at 1–2. In addition, the Court ordered the parties to confer about the "sufficiency" of DHS's production. *Id.* at 2.

Defendants substantially complied with that Order; their efforts are detailed at ECF 337 and are ongoing in light of the Court's subsequent clarifying Order at ECF 339.

B.    Depositions

As ordered by the Court, Defendants put forth for deposition SOPDA Evans, DHS CHCO Edwards, and FEMA CHCO Prieur the week of March 30.[3] Rather than focusing on the question presented by their Motion for Preliminary Injunction—whether DHS or FEMA decided not to re-appoint the COREs—Plaintiffs used each deposition as free-ranging discovery on numerous topics far afield from their claim that "DHS, not FEMA, is making the decisions not to renew these employees." Suppl. Compl. ¶ 492.

Plaintiffs' deposition of the SOPDA is one example. Plaintiffs examined Ms. Evans for 6 hours and 58 minutes on the record, generating a 379-page transcript on such topics as:

- Whether Ms. Evans teleworks (she confirmed that she works in person at FEMA's offices). *See* **Ex. 2** to Kies Decl. ("Evans Dep. Tr.") at 18:3–19.

- Staffing at the Cybersecurity and Infrastructure Security Agency, another DHS component where Ms. Evans worked before joining FEMA. *See id.* at 38:5–45:21.

- Irrelevant details about a trip Ms. Evans took to Alaska to respond to a typhoon, including the seating arrangements on the plane to Alaska. *See id.* at 119:10–125:18.

---

[3] Plaintiffs have so far abstained from noticing a deposition of former Secretary Noem. *See* ECF 327 at 6.

- The nature of any "relationship" between Kara Voorhies, a former DHS contractor, and Corey Lewandowski, a former DHS Special Government Employee. *See id.* at 125:13–126:19.

- The handling of the suspensions of various FEMA employees who had publicly criticized DHS leadership. *See id.* at 181:17–186:25.

- The anonymous sources for an article CNN published about FEMA (Ms. Evans testified she did not know who the sources were). *See id.* at 194:5–196:4.

- The reassignment of one of Ms. Evans' subordinates away from FEMA. *See id.* at 197:17–204:25.

Plaintiffs used 34 exhibits with Ms. Evans, the 34th of which was the Declaration that generated the Court's March 3 expedited discovery order. At 6:20 p.m. ET—on a deposition day that had begun more than nine hours earlier—Plaintiffs finally presented Ms. Evans's Declaration and asked her about Paragraph 25. *See id.* at 360:3–361:15. Ms. Evans testified that she could see how Paragraph 25 could be confusing, but clarified that FEMA, and specifically she herself, decided not to renew the COREs who were not renewed in 2026; when she averred in her Declaration that "DHS decided not to reappoint" those COREs, she had intended to refer to "DHS" as the agency that includes FEMA. *Id.* at 361:15–24. Ms. Evans testified: "**I'm the one who made the decisions not to renew these COREs**." *Id.* at 363:24–364:8 (emphasis added); *see id.* at 365:2–11 ("The non-renewals decision was made at FEMA."); *id.* at 366:4–5 ("I made the decision not to renew these appointments.").[4] Ms. Evans—**not DHS Headquarters**—also made the decision not to seek to extend FEMA's delegated authority to renew COREs for 180 days beyond December 31, 2025. *Id.* at 273:17–274:4, 274:20–275:9; *see id.* at 266:2–24, 267:8–25; **Ex. 3** to Kies Decl. (May 14, 2025, Memo., Ex. 21 to Evans Dep.); Evans Decl. ¶ 31. Moreover, in the relevant timeframe, FEMA **recommended** COREs for renewal to DHS; there is no evidence that DHS vetoed any of them.[5]

---

[4] Corroborating Ms. Evans's testimony, DHS CHCO Edwards testified that he was not aware of any discussions within DHS Headquarters regarding non-renewals of COREs. **Ex. 4** to Kies Decl. ("Edwards Dep. Tr.") at 238:16–22.

[5] Beginning in January 2026, after expiration of FEMA's delegated authority, FEMA's CORE renewal decisions were subject to DHS approval. *E.g.*, Edwards Dep. Tr. at 242:24–243:11, 267:2–14. Plaintiffs never asked any of the three deponents whether DHS approved all of FEMA's

C. The Instant Dispute

Through the Court-ordered expedited discovery, Plaintiffs have now received nearly 60,000 documents and will further obtain relevant telephonic communications. They have also deposed key personnel, including FEMA's SOPDA—who testified that she made the decision not to renew COREs during the relevant timeframe. Notwithstanding, on April 10, Plaintiffs filed an 18-page memorandum identifying putative "deficiencies" in Defendants' efforts and asking the Court to prolong expedited discovery to permit them even more discovery. ECF 341.

## LEGAL STANDARD

Discovery generally does not commence until the parties have conferred as required by Rule 26(f). *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . by court order."). A district court may permit expedited discovery only "upon a showing of good cause." *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002). The good cause standard, in turn, derives from Rule 26. *See id.* "To determine whether good cause justifies expedited discovery, courts often consider factors including whether a preliminary injunction is pending, the breadth of the discovery requests, the purpose of the request, and the burden on the defendants to comply with the requests." ECF 328 at 2 (citing *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009)). Consideration of breadth and burden makes sense, given that Rule 26 requires the Court to "limit the frequency or extent of discovery" if it determines that:

> (i)   the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii)  the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Proportionality concerns are heightened when discovery includes ESI. *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 2024 WL 3174874, at *4 (S.D. Cal. June

recommended renewals of COREs, although the record is replete with examples of approvals. *See, e.g., id.* at 273:16–274:14; *id.* at 296:15–297:13. By contrast, no evidence produced in discovery suggests that DHS ever "overturned" a FEMA decision to renew a CORE.

Reply ISO Notice of Substantial Compliance and Response re: "Further Compliance Deadlines"
3:25-cv-03698-SI

25, 2024). Finally, because "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), and "to balance the equities as the litigation moves forward," *Trump v. IRAP*, 582 U.S. 571, 580 (2017) (per curiam), expedited discovery occurs "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits," *Lackey v. Stinnie*, 604 U.S. 192, 200–01 (2025) (quoting *Camenisch*, 451 U.S. at 395).

## ARGUMENT

Discovery, like all things, must eventually come to an end. This principle applies with extra force to *expedited* discovery, which is necessarily limited in both scope and duration. Here, for instance, the Court authorized expedited discovery *to resolve* Plaintiffs' Motion for Preliminary Injunction, and specifically to answer one question germane to its resolution of that Motion: did DHS decide not to reappoint certain FEMA COREs in January 2026, as argued by Plaintiffs, or did FEMA, as argued by Defendants? ECF 321. Five weeks have passed since the March 3 Order, during which discovery has unequivocally revealed the answer to that question: It was FEMA. This answer was not reached easily: Defendants underwent intrusive, extensive, highly burdensome, and one-sided document and deposition discovery to get there, all while DHS and FEMA were subject to a lapse in appropriations. Plaintiffs now want even more. But Plaintiffs do not, and cannot, show that the additional discovery they demand would somehow change the only fact that matters to resolution of their Motion.

Nor can Plaintiffs obtain the further discovery they seek by untethering it from the Court's order. Plaintiffs have suggested—including as recently as yesterday, in meet-and-confer correspondence—that they do not require Court authorization to take more discovery, such as depositions of former contractor Voorhies and former DHS DCOS Guy, because "discovery in this case has been open for some time." **Ex. 6** to Kies Decl.; *see also* ECF 341 at 7 (internal pagination). Plaintiffs' assertion is bewildering. If they are referring to discovery being "open" on their Supplemental Complaint, they are wrong. The parties have not had an opportunity to discuss the contours of discovery, as contemplated by Rule 26(f), in the context of the claims of the Supplemental Complaint, nor is there a scheduling order regarding that Complaint. Indeed,

Reply ISO Notice of Substantial Compliance and Response re: "Further Compliance Deadlines"
3:25-cv-03698-SI

Defendants have not even had an opportunity to *respond* to the Supplemental Complaint. Notwithstanding, in addition to the multitude of discovery demands encompassed in Plaintiffs' recent filing putatively related to *expedited* discovery—including more depositions beyond the four previously authorized by the Court—Plaintiffs have separately propounded sweeping Requests for Production relating to their Supplemental Complaint's allegations concerning Annual Staffing Plans. **Ex. 7** to Kies Decl. (Mar. 20, 2026, Requests for Production).[6]

One thing is clear in the chaos: The discovery deluge that has imposed an enormous burden on Defendants (and on the Court, via multiple discovery "disputes" raised by Plaintiffs, often on tight turnarounds) will not stop until the Court intervenes. It should do so now.

Thus, Defendants ask the Court to: (1) temporarily stay any outstanding discovery obligations, including Plaintiffs' March 20, 2026 Requests for Production and Plaintiffs' requests for additional depositions; (2) set a schedule for supplemental briefing on Plaintiffs' Motion for a Preliminary Injunction so the parties can present to the Court the evidence that Defendants have provided in the proper legal context; (3) allow Defendants to move to dismiss the Supplemental Complaint; and (4) following resolution of the motion to dismiss, if appropriate, direct a new Rule 26(f) or Joint Case Management Conference for any further discovery or factual development on the Supplemental Complaint in order to ensure that the parties properly "consider the nature and basis of their claims" and "develop a proposed discovery plan" based on Plaintiffs' current claims, which are starkly different (and differently situated) from their claims in the operative Second Amended Complaint filed last year. Fed. R. Civ. P. 26(f).[7]

---

[6] If, instead, Plaintiffs meant that discovery is generally "open" as to the broader, original litigation predating the January 2026 Supplemental Complaint, then that is beside the point because the discovery they seek does not relate to the RIFs at issue prior to that filing.

[7] Among other things, a Rule 26(f) discovery plan ensures that discovery is properly targeted and has an appropriate completion date—something that has been noticeably absent from this latest round of expedited discovery. While the Court previously noted that a Rule 26(f) conference took place on July 11, 2025, ECF 228 at 4, Plaintiffs' Supplemental Complaint substantially alters the "nature and basis of their claims" that then existed, and to the extent the Supplemental Complaint survives a motion to dismiss, a renewed discovery plan is necessary to ensure that any discovery takes place efficiently and with minimal need for Court intervention.

Reply ISO Notice of Substantial Compliance and Response re: "Further Compliance Deadlines"
3:25-cv-03698-SI

Nothing in Plaintiffs' brief suggests that it would be correct to do otherwise. But because Plaintiffs repeatedly mischaracterize the discovery they have obtained, Defendants concisely address each of Plaintiffs' requests on its merits here:

***Personal Phones.*** Plaintiffs ask the Court to order Defendants to collect employees' (and non-employees') personal cellular phones, which—as Defendants have repeatedly informed Plaintiffs—are not within their possession, custody, or control. ECF 341 at 7–11 (internal pagination). As grounds for this proposed intrusion, Plaintiffs observe that Ms. Evans testified to periodically using her personal phone regarding FEMA matters. *E.g.*, Evans Dep. Tr. at 152:23–154:2 (describing Signal group chats relating to recent Winter Storm Fern). Plaintiffs' request is legally unfounded, as they have not carried, and cannot carry, their burden of showing that the personal devices they seek are within the "possession, custody, or control" of their owners' DHS or FEMA employers. Fed. R. Civ. P. 34(a)(1); *see, e.g.*, *Sports Rehab Consulting LLC v. Vail Clinic*, 2025 WL 1144559, at *6–9 (D. Colo. Apr. 18, 2025) (discussing "commonly-accepted understanding" that "an employer (or former employer) does *not* control the devices that its employees personally own"); *Krishnan v. Cambia Health Solutions*, 2021 WL 3129940, at *1–2 (W.D. Wash. July 23, 2021) (denying motion to compel defendant's employees' personal text messages; rejecting argument that employer had a "legal right" to obtain them); *Goolsby v. Cnty. of San Diego*, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019) ("Plaintiff fails to meet his burden showing that [the] County has sufficient control over employees' personal devices to require more than what the County has already requested and produced. Under these circumstances, there is nothing left to compel.").

But even if Plaintiffs' request had any legal basis, it is a red herring. Any relevant communications on Ms. Evans's personal phone to which she testified already exist in email form: she testified under oath that she is familiar with the Federal Records Act, that she took pictures of any messages on her personal cell phone that are "records" within the meaning of the Act, and that she sent those to her email account so they would be preserved. Evans Dep. Tr. at 155:12–15, 156:1–25. Defendants will produce responsive, non-privileged screenshots. Plaintiffs' subjective curiosity about what other people (such as former Secretary Noem or former contractor Voorhies)

might have theoretically discussed on their personal phones is not good cause for even more discovery. Indeed, Plaintiffs do not (and cannot) identify what material facts supposedly exist on any personal phone that would change the outcome of their Motion for Preliminary Injunction, given that the question presented has been answered already, under oath, by the decisionmaker herself: Ms. Evans. Finally, were that not enough, Defendants have already confirmed to Plaintiffs in writing that the custodians whose personal phones remain of interest to Plaintiffs **did not communicate** on their personal phones regarding COREs renewals or target staffing reductions. *See* ECF 341-1 (Leonard Decl.) ¶ 13.c.

 ***Additional Work Phones.*** Plaintiffs demand forensic searches of the work phones of former contractor Voorhies and former DHS DCOS Guy on the notion that they *might* contain information that "could" be "central" to "issues in dispute." ECF 341 at 11–12 (internal pagination). Plaintiffs do not explain how. That is unsurprising. Ms. Evans testified that she—not Voorhies or Guy—made the challenged decisions regarding COREs. *Supra*.[8] Nonetheless, as to Voorhies, Defendants informed Plaintiffs in writing (before Plaintiffs filed their brief) that they have obtained her FEMA-issued phone and will produce responsive, non-privileged material if any exists. **Ex. 8** to Kies Decl. (Apr. 8, 2026, Correspondence). Defendants are working to obtain access to Voorhies's DHS-issued phone, which is password-protected. *Id.* However, counsel has been informed that Voorhies's DHS-issued phone was last used in early fall 2025; therefore, it is highly unlikely to have any responsive information. As for Guy, Defendants have also informed Plaintiffs in writing that they "obtained [his] work phone and searched it," and that "[t]he search did not reveal any responsive documents." *Id.*

 ***Additional Documents Regarding "Annual Staffing Plan."*** Plaintiffs seek additional information about an "Annual Staffing Plan" they posit DHS must have transmitted to OMB and OPM. ECF 341 at 12–13 (internal pagination). Plaintiffs are disappointed that the document

---

[8] Ms. Evans testified that Voorhies—whose name Plaintiffs' counsel invoked more than 100 times at Ms. Evans's deposition—had no authority to make personnel decisions at FEMA. *E.g.*, Evans Dep. Tr. at 133:22–134:10. Ms. Evans personally "made sure" that, although Voorhies may have been on email communications, she "was not involved in any personnel decisions." *Id.* at 110:25–111:14, 128:7–25.

productions did not include any such plan. But that is because no such plan has been transmitted by DHS to OMB and OPM as of the date of this filing. **Ex. 9** to Kies Decl. (Declaration of Stephanie O'Neill, OMB); **Ex. 10** to Kies Decl. (Declaration of Noah Peters, OPM). Plaintiffs' suggestion that Ms. Evans testified otherwise, ECF 341 at 13, is mistaken. Ms. Evans testified, at most, that FEMA submitted its portion of a proposed Annual Staffing Plan *to DHS*. Evans Dep. Tr. at 210:6–211:21. Ms. Evans testified unequivocally that she did not know whether DHS ever transmitted any Annual Staffing Plan to OMB and OPM. *E.g.*, *id.* at 212:4–213:6. Defendants cannot produce a final, transmitted Annual Staffing Plan that does not exist; nor should they be required to produce even more documents containing deliberative material.

*Metadata About a Single Document.* Plaintiffs seek additional metadata about a single document, which they claim is "probative" as to "FEMA leadership's staffing targets." ECF 341 at 14–15 (internal pagination). Defendants have provided Plaintiffs with all the metadata they could reasonably discover with due diligence, and have informed Plaintiffs that "Claire Thomas authored this document and provided it to Stephanie Dobitsch, though that information does not exist as electronic metadata." **Ex. 8** to Kies Decl. Plaintiffs do not attempt to establish that additional unspecified metadata for one document out of over 55,000 will affect resolution of their Motion for Preliminary Injunction.

*Redactions of Handwritten Notes.* Plaintiffs complain that Ms. Evans redacted certain information contained in her own handwritten notes in her daily planner, recorded and maintained by date. ECF 341 at 15–18 (internal pagination). The redacted information is both deliberative and irrelevant, and Defendants are working on a privilege log. Contrary to Plaintiffs' assertions, Agency counsel reviewed and approved the redactions while preserving the document in unredacted form.

## CONCLUSION

For the foregoing reasons, this Court should order expedited discovery to be closed, with the exception of completion of the outstanding discovery ordered in ECF 339,[9] direct the parties

---

[9] Defendants' outstanding work in expedited discovery, which they have already agreed to complete, includes the following. *First*, DHS will receive (or attempt to receive), process, review, and produce data from Voorhies's DHS and FEMA work phones, to the extent anything responsive

to confer regarding a briefing schedule for both supplemental briefing on Plaintiffs' pending Motion for Preliminary Injunction and Defendants' forthcoming motion to dismiss the Supplemental Complaint, and until those motions are resolved, stay all discovery in this case. Finally, before any discovery resumes, the parties should be directed to confer and submit a discovery plan for any remaining claims in this case.

Dated: April 15, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

DIANE KELLEHER
Branch Director

BRAD P. ROSENBERG
Special Counsel

CHRISTOPHER HALL
Assistant Branch Director

*/s/ Marianne F. Kies*
MARIANNE F. KIES
JEREMY S.B. NEWMAN
ROBERT C. BOMBARD
Trial Attorneys
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005

*Counsel for Defendants*

---

and non-privileged exists. FEMA will produce a privilege log for the Evans handwritten notes that were previously produced in redacted form. FEMA will also produce a small number of additional documents collected from Ms. Evans, including handwritten notes and messages from her personal phone that she sent to her FEMA email account. *Second*, Defendants will produce a small number of responsive, non-privileged material from the work phones of outstanding FEMA Tier 1 custodians. As to one FEMA Tier 1 custodian, former employee Blanca Sanchez, FEMA cannot at this time confirm the presence or absence of any responsive information on the FEMA cell phone previously issued to her, as it was wiped in or before early January 2026, coinciding approximately with her departure from FEMA. *Finally*, FEMA will produce declarations from the FEMA Tier 2 custodians identified in ECF 339 either attesting to the absence of responsive information or providing whatever responsive, non-privileged information exists.