# Exhibit 4

Excerpts of Roland Edwards Deposition Transcript (Apr. 2, 2026)

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

-------------------------------x
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, et al.,

     Plaintiffs,

                      Case No.

  vs.

                   3:25-cv-03698-SI

DONALD J. TRUMP, in his official
capacity as President of the
United States, et al.,

     Defendants.
-------------------------------x

CONFIDENTIAL

PURSUANT TO THE PROTECTIVE ORDER


VIDEOTAPED DEPOSITION OF


ROLAND EDWARDS


Thursday, April 2, 2026


Reported By:  SUSAN ASHE, CER

Job No.:  11974

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect,com

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 2

Thursday, April 2, 2026

8:58 a.m. Eastern Daylight Time

Videotaped deposition of ROLAND EDWARDS, taken on behalf of the Plaintiffs, beginning at 8:58 a.m., on Thursday, April~2, 2026, at the offices of Democracy Forward Foundation, 1445 New York Avenue, Northwest, Washington, D.C., before Susan Ashe, Certified Electronic Reporter and a Notary Public of the District of Columbia.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 3

APPEARANCE OF COUNSEL:

On behalf of All Union and Non-Profit

Organization Plaintiffs

ALTSHULER BERZON LLP

BY:  DANIELLE E. LEONARD, ESQ.

BY:  ELIZABETH ESHLEMAN, ESQ.

177 Post Street, Suite 300

San Francisco, California  94108

(415) 421-7151

dleonard@altshulerberzon.com

eeshleman@altshulerberzon.com

On behalf of All Union and Non-Profit

Organization Plaintiffs (except NRDC) and for

Plaintiffs City of Chicago, IL; Martin Luther,

Jr. County, WA; Harris County, TX; and City of

Baltimore, MD

DEMOCRACY FORWARD FOUNDATION

BY:  TSUKI HOSHIJIMA (pro hac vice)

Senior Counsel

P.O. Box 34553

Washington, D.C.  20043

(202) 448-9090

thoshijima@democracyforward.org

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 4

APPEARANCE OF COUNSEL (Continued):

On behalf of the Defendants and the Witness

UNITED STATES DEPARTMENT OF JUSTICE

BY:  JEREMY NEWMAN, Trial Attorney

BY:  BRAD P. ROSENBERG, Special Counsel

1101 L Street, Northwest

Washington, D.C.  20005

(202) 305-0693

jeremy.s.newman@usdoj.gov

brad.rosenberg@usdoj.gov

-  and  -

FEDERAL EMERGENCY MANAGEMENT AGENCY

BY:  KEVIN YUSMAN

500 C Street, Southwest

Suite 840

Washington, D.C.  20472

kevin.yusman@fema.dhs.gov

-  and  -

DEPARTMENT OF HOMELAND SECURITY

BY:  MATTHEW FLEISCHMAN

BY:  OKWEDE OKOH

2700 Martin Luther King, Jr., Southeast

Washington, D.C.  20032

matthew.fleischman@hq.dhs.gov

okwede.okoh@hq.dhs.gov

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 5

ALSO PRESENT:

Jessica Levy, Esq.

Altshuler Berzon LLP


Shreya Wankhade, Legal Assistant

Democracy Defenders Fund


Jonathan Perry, Videographer

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 237

A.   That is right, with a small caveat -- is that, our information request about CORE renewals is because of Ms. Evans' request to us.

Q.   You recall Ms. Evans requesting information about CORE renewals from DHS OCHCO?

A.   So in terms of the information and, again, making sure that La' Toya and I were synced on the data in terms for the CORE, the numbers that were approved, that type of information.

Q.   Do you recall that at some point a decision was made not to renew FEMA COREs that had NTE dates starting January 1st?

A.   Not that I recall.

Q.   You don't recall that there were a series of CORE nonrenewals in early January?

A.   Not that I recall, no; and certainly not that I was a part of.

Q.   You don't recall being involved in any discussions about whether to renew COREs with upcoming NTE dates in late December?

A.   Not that I recall, no.

Q.   Did you work between Christmas and New Year's?

A.   I did.

Q.   You weren't involved in any discussions

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 238

between Christmas and New Year's about FEMA CORE renewals?

A.   Not that I recall.

Q.   Do you know if anyone at DHS was involved in discussions during that time period about FEMA CORE renewals for people who had NTE dates coming up?

A.   Just to -- just to backtrack, are you asking the question about was FEMA internally taking a -- taking a look at COREs and making decisions?

Or are you asking me, was I a part of the process to determine whether or not COREs would or would not be renewed?

Q.   Let me rephrase.

A.   Okay.

Q.   In late December, do you know if anyone at DHS headquarters was involved in discussions about whether to renew COREs whose terms were expiring in January?

A.   I am not aware of any of those discussions, and I was not a part of discussions about specific CORE renewals.

MR. HOSHIJIMA:  I'm handing you Exhibit 50.

(Whereupon, Plaintiffs Exhibit 50 was

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 239

marked for identification.)

Q.   This is an email produced to us with Bates stamp -0472.  It's an email from Puneet Khan to you on January 8th.

Do you recognize this email?

(Witness reading.)

A.   I don't specifically remember the email.

Q.   Who is Puneet Khan?

A.   She's a deputy chief of staff for FEMA.

Q.   How often have you communicated with Ms. Khan?

A.   During the time period?

Q.   Sure.

A.   Okay.  Infrequently.  Like, I -- honestly, I don't recall, like, having any significant conversations with her during that time period.

Q.   During any time period, do you recall having regular communications with Ms. Khan?

A.   So I would have interacted with her a lot more frequently, because she used to be in the Management Directorate.

And so, I did interact with her then.  I did not interact with her as much when she went to FEMA.

Q.   When was she in the Management

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 241

Q.   Do you know what Ms. Khan means when this email says:

Thank you for all your

help over the last few days.

A.   I don't recall.

Q.   This email is about FEMA CORE renewals, though.  Right?

A.   That's certainly what it looks like.

Q.   And you're aware that over the week before this email, between January 1st and January 8th, FEMA had been separating COREs whose NTE dates had come up?

A.   I'm not sure that I'm aware of that -- or that I was aware of that.

Q.   You're not aware that in early January, FEMA was letting go of COREs?

A.   Not -- not directly, no.

Q.   You don't know what Puneet Khan is referencing when this email says:

Thank you for your help

over those last few days.

A.   I don't recall.

Q.   Why is she reaching out for you -- for help in this email, then, about FEMA CORE renewals?

MR. NEWMAN:  Objection; calls

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 242

for speculation.

A.   I don't recall.

It -- I did manage the -- my team, at least, was responsible for the process to send approvals to the front office.

So I don't know if this was her request to me to make sure that I knew that FEMA would have a significant -- significant number, that they wanted to make sure that I had visibility on it, and that I would track through with my team.

Q.   This email says:

FEMA has a large volume of CORE positions that are being reviewed.

A.   Okay.

Q.   Is that referring to DHS's review of FEMA's requests to renew FEMA COREs?

MR. NEWMAN:   Objection; foundation.

A.   I'm not sure.  I'm not sure if, there, she's referencing the -- any that may have been in the DHS process or ones that were still being reviewed at FEMA.

Q.   Starting the beginning of January, the DHS process was being used for DHS to approve FEMA CORE

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 243

renewals.  Right?

A.    That is correct.

Q.    You recall that starting at the beginning of January?

A.    I do.

Q.    Because FEMA's authority to renew its own COREs was taken away at the end of December?

A.    I'm assuming that that's the reason why, yes.

Q.    And DHS had to approve any CORE renewals?

A.    Correct.

Q.    Do you know why Puneet Khan is asking for expedited review here?

MR. NEWMAN:  Objection; calls for speculation.

A.    In conversations, it's because they wanted to ensure that the -- the CORE renewals could occur by the date if they were going to renew the COREs.

Q.    What does she mean at the end of the email, when she says:

...rather should go through the standard process.

MR. NEWMAN:  Objection; calls for speculation.

A.    My understanding is that -- because of the

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 244

timing, that there were some that were coming up for renewal imminently, and they wanted to make sure that there wouldn't be a break for those employees.

Q.  Is the "standard process" referring to the S1 hiring verification process?

A.  That's my understanding.

MR. HOSHIJIMA:  I'm handing you Exhibit 51.

(Whereupon, Plaintiffs Exhibit 51 was marked for identification.)

Q.  This is a document produced to us with Bates number starting -10027.

If you take a look at the bottom email in the thread, on the third page, do you see that's an email from you to Ms. Prieur?

A.  I do.

Q.  And to Ms. Sanchez?

A.  Yes.

Q.  Blanca Sanchez also works in FEMA OCHCO with La' Toya Prieur?

A.  She did at that time.

Q.  Do you know where she is now?

A.  I do not.

Q.  This email that you write is about OCC hiring.  Right?

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 266

A.    That's what they appear to be.

Q.    These are required to go up to the Office of the Secretary for approval as well, though. Right?

A.    That is correct.

Q.    Both of the forms you're talking about go from a DHS component to DHS OCHCO, and then up to the DHS Office of the Secretary?

A.    That's correct.

Q.    How long has DHS been using this form for personnel verification?

MR. NEWMAN:  Objection; foundation.

A.    I don't recall when we sent this form out for component use.

Q.    Was it within the last year?

A.    It is now March.

I don't know if it's within the last year or if it was since the beginning of 2025.

Q.    Going back to this email, the attachment says January 18th to 31, 2026 CORE renewal requests, FEMA OA approved.

Do you see that?

A.    Oh, on this -- up in the attachment name?

Q.    Yes.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 267

A.   Okay.  Yes.

Q.   That's referring to FEMA Office of the Administrator's approval.  Right?

A.   That's my understanding.

Q.   And that's because the FEMA Office of the Administrator would approve the requests, but the requests still have to be approved by the DHS Office of the Secretary.  Right?

A.   That's my understanding.

Q.   FEMA Office of the Administrator can't make its own call to renew these call -- these COREs.  Right?

A.   They are making the call of which ones to renew and then push them forward for concurrence.

Q.   You said "concurrence"?

A.   Correct.

Q.   That's the first time I've heard you use that term in the context of this process.

A.   Correct.

So the office that manages the process is responsible for determining qualifications, determining, you know, what's needed in order to manage the organization.

Once they make those determinations, they would then send it forward to the front office to

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 268

make sure the front office agreed that they could then move out on them.

Q.   Ms. Prieur's email, though, is asking that these packages be expedited for approval.  Right?

A.   Correct.

Q.   And that's approval by the DHS Office of the Secretary?

A.   Yeah, that's correct.

Q.   Do you know if the FEMA Office of the Administrator actually considered the qualifications and need for CORE renewals before sending them up?

A.   Do I know -- I was not involved in the process.

It is my understanding that the FEMA administrator actually went through and reviewed submissions -- or the needs of the various organizations before determining which ones would be approved or not approved.

Q.   What's the basis for that understanding?

A.   Of me understanding that that's what she did?

Q.   Right.

A.   That was a conversation that I'm -- I don't recall if it was a conversation or an email, but that -- that's what I received from Ms. Evans in

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 272

submissions of either of those types of forms from any DHS component?

A.  That's correct.

MR. HOSHIJIMA:  Turning to Exhibit 56.

(Whereupon, Plaintiffs Exhibit 56 was marked for identification.)

Q.  This is an email produced to us with Bates stamp -0539.

Do you see that the bottom email in this thread is that same email we've discussed before, where Ms. Prieur sends you a batch of 28 expedited personnel action requests?

A.  I see that.

Q.  This is the email you forwarded to Ms. Glaze in the previous email chain.  Right?

A.  I see that.

Q.  Ms. Glaze is sending that to DHS Personnel Actions?

A.  I see that.

Q.  Do you know why she's doing that?

A.  This is January.

Prior to -- prior to the shutdown -- so Ms. Glaze has a team.

And so, I am not sure whether or not

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 273

that's just to make sure that it's tracked by the box that it would normally go to for approval, and then her team would then log it on her behalf.

So I'm just -- I'm not sure.

Q.   Because DHS personnel actions is not the set of people who are approving these requests. Right?

A.   I don't believe so.  I think there was another email address for those folks.

Q.   If you look at Exhibit 53, you're saying that Personnel Verifications Actions Leadership are the decision-makers?

A.   That's what I believe.

MR. HOSHIJIMA:  Turning to Exhibit 57.

(Whereupon, Plaintiffs Exhibit 57 was marked for identification.)

Q.   This is an email produced to us with Bates stamp -0642.  And it's an email from you to Ms. Prieur on January 22nd.

Do you see that?

A.   I do.

Q.   And do you see that you are attaching two files and saying:

These are all approved.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 274

Do you see that?

A.   Yes.

Q.   If you pull up Exhibits 53 and 54, which were Ms. Glaze's email with an expedited summary -- request summary and Ms. Prieur's email to you with the 28 personnel action requests, do you see how those -- the subject lines of those emails are the attachments to your January 22nd email?

(Witness reading.)

A.   I do.

Q.   So are you saying that those two prior batches of FEMA requests have been approved?

MR. NEWMAN:   Object to form.

A.   I believe that's what I was saying.

Q.   And you're now communicating that approval back to FEMA.  Right?

A.   That's correct.

Q.   Who told you that these FEMA requests have been approved?

A.   I actually don't recall who gave me that approval.

Q.   You're not the person who made the approval decision.  Right?

A.   No, I'm not.

Q.   It's somebody higher up the chain of

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 275

command that you sent the requests to?

A.   That's correct.

Q.   Or that somebody on your team had sent the requests to?

A.   That's correct.

Q.   Do you know if it was somebody in the DHS Personnel Verifications Actions Leadership group?

A.   I don't recall who it came from.

Q.   Do you know if somebody in the DHS Personnel Verifications Actions Leadership group would have sought approval from someone above them?

A.   I'm not sure.

Q.   So you don't know who's actually making this approval decision.  Right?

A.   I do not.

Q.   When you send up these requests and you're told that they're approved, how do you usually find out about the approvals?

A.   Normally, the approvals come back by email.

Q.   Email from who?

A.   It just depends.  The large majority of them came to me from Troup Hemenway.

Q.   Troup Hemenway, the principal deputy chief of staff at --

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 295

(Witness reading.)

Q.   That the original email says that it had a spreadsheet attached to it?

A.   It says that, yes.

Q.   Yes.  We don't have it here.

A.   Okay.

Q.   And you respond and say:

We will forward like last time and copy the appropriate deputy chief of staff.

Do you see that?

A.   Correct.

Q.   And who did you send that over to when you say you'll send it forward like last time and copy the appropriate DCOS?

A.   So I didn't forward it because Ms. Glaze was already on the email.

But I completely forgot that at that point in time, she was furloughed.

Q.   So you remember this exchange?

A.   Yes.

Q.   So on January 30th, you don't forward it.

But on February 3rd, when Ms. Prieur follows up, you do send it forward.  Right?

A.   Yes.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 296

Q.   And when you say you just sent it forward, who did you send that forward to?

A.   I would have -- I believe I would have sent it to Joe Guy, Troup Hemenway, Steve Munoz, and Grey McGill.

Q.   Those are the people that you send the verification requests to?

A.   Correct.

Q.   But you don't know if they're the ones making the decision.  Right?

A.   That's correct.

MR. HOSHIJIMA:  Are we up to Exhibit 64?

COURT REPORTER:  Um-hum.

(Whereupon, Plaintiffs Exhibit 64 was marked for identification.)

Q.   This is a document produced to us with Bates stamp -0713.

Do you see that?

A.   I do.

Q.   This is your response to Ms. Prieur saying:

These are clear to move out on.

Do you see that?

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 297

A.   I did.

Q.   And you're attaching an email, if you go to the second page, that was Ms. Prieur's request for renewal of 130 COREs with renewal dates between January 19th and February 9th?

A.   Yes.

Q.   So these are the requests that, because Ms. Glaze was out, you forwarded on, on February 3rd.  Right?

A.   Correct.

Q.   And a week later, you are communicating the approval to Ms. Prieur?

A.   Correct.

Q.   Do you know what happened between when you sent up the approval to Mr. Guy and the others and February 10th, when you're communicating the approval to FEMA?

A.   I do not.

Q.   Do you know who, over the course of the week, reviewed these requests?

A.   I do not.

Q.   When you say, "These are clear to move out on," who told you that these requests are approved?

A.   I don't remember.

Q.   Would it have been Mr. Guy?

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 298

A.   It could have been.

Q.   And you are still personally involved in this process, even though you have a whole big staff of 200-some people in DHS OCHCO.

Why is that?

MR. NEWMAN:  Object to form.

A.   In particular, during this period, we were furloughed.  So we have a skeleton crew right now.

So we are all doing double- and triple-duty at this time.

Q.   So you're personally involved in passing on the paperwork that you get from FEMA further up the chain?

A.   Yes, sir.

Q.   Without weighing in on the recommendations at all?

A.   Yes, sir.

Q.   Were you instructed by someone at DHS to send these approvals up the chain without weighing in on them?

A.   No.

Q.   Who was the one who instructed you to send these approval requests you got from FEMA to Mr. Guy?

MR. NEWMAN:  Object to form.