Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' APRIL 15, 2026 FILING RE: COMPLIANCE DISPUTES** |

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................2

I.  Defendants' Narrative of Independent FEMA Decision-making
    Misrepresents the Evidentiary Record..........................................................2

    A.  DHS Directed FEMA's Staffing Decisions at Every Turn ...........................5

    B.  FEMA's Annual Staffing Plan *Was* Communicated to OMB and
        OPM ...............................................................................................................11

    C.  DHS Also Indisputably Removed FEMA's Hiring and Renewal
        Authority.........................................................................................................12

    D.  Neither Evans, Edwards, Nor Prieur Could Confirm Who at DHS
        Above Guy or Voorhies Was Involved or Made Decisions .........................13

II.  Plaintiffs Seek Limited Further Compliance ...............................................16

    A.  Karen Evans' Self-Redacted Meeting Notes ..................................................16

    B.  Metadata about "Talking Points for FY26 Staffing Strategy" ......................17

    C.  DHS and FEMA Communications About "Annual Staffing Plan"...............17

    D.  Personal Phones...............................................................................................18

    E.  Work Phones ....................................................................................................21

III.  Plaintiffs Can Quickly Supplement the Pending Injunction Motion Once
     Defendants Comply ........................................................................................21

IV.  The Court Should Reject Defendants' New Request to Halt the Case......................22

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*AFGE v. OPM*,
    No. 3:25-cv-01780-WHA (N.D. Cal.) ........................................................................................ 12

*Goolsby v. Cnty. of San Diego*,
    No. 3:17-CV-564-WQH-NLS, 2019 WL 3891128 (S.D. Cal. Aug. 19, 2019) ........................ 19

*Waymo LLC v. Uber Techs., Inc.*,
    No. 17-CV-00939-WHA(JSC), 2017 WL 2972806 (N.D. Cal. July 12, 2017) ....................... 19

Defendants' filing uses the occasion of addressing their purported compliance with this Court's discovery orders to present an inaccurate narrative regarding DHS and FEMA decision-making and plans to cut FEMA staff; to resist discovery that was plainly required by prior orders; and, for the first time, to request a stay of *all* further discovery (from any Defendant, not just DHS and FEMA) on *all* claims, pending a forthcoming motion to dismiss to be filed months after the most recent complaint. Plaintiffs respond to explain why their efforts to date to obtain DHS and FEMA's compliance with this Court's discovery orders go to the heart of the issues presented by the pending preliminary injunction motion and this Court's concerns regarding the facts (ECF 321); to propose the best course forward for completing discovery to identify the actual decision-makers with respect to unlawful DHS and FEMA actions; and to propose the next steps for supplementing Plaintiffs' pending preliminary injunction motion once this discovery is complete.

Defendants' argument rests on an inaccurate portrayal of the facts uncovered by the discovery to date—which does not, as Defendants contend, confirm that *FEMA* made the relevant decisions about FEMA staffing and CORE employees. ECF 344 at 1. To the contrary, the documents and deposition testimony, in addition to Plaintiffs' original showing, support the conclusion that DHS directed FEMA to eliminate CORE employee positions consistent with a DHS-directed plan to cut FEMA staff in half (directly undermining any assertion that SOPDA Karen Evans was acting on her own), *and* shows that Defendants continue to shield the identities of the actual decision-makers and nature of their decisions.

From the outset, DHS and FEMA have refused to produce highly relevant and responsive records and have misrepresented and hidden the identity of the involved decision-makers and the actual bases for the agencies' decisions (which appear on the current record to be arbitrary and capricious and without regard to any actual agency need). Plaintiffs' concern that there are relevant and responsive materials omitted from Defendants' productions is not conjecture: for example, for weeks Defendants resisted discovery into phone communications, and only after Evans admitted at her deposition to using personal phones for agency business, Defendants finally produced a screenshot of a Signal chat with individuals in DHS leadership directing Evans to provide information to assist with staffing plans. *Infra* at 10. Now, nonetheless, Defendants

continue to advocate for halting any further investigation into the questions that the Court ordered expedited discovery to address—namely, whether there was a plan to drastically cut staffing at FEMA and who made the relevant decisions.

Rather than halting all discovery and leaving this Court with an incomplete factual record, Plaintiffs propose that this Court order a schedule that will complete compliance with its prior orders and allow Plaintiffs the time to conduct limited and specific additional discovery, after which the parties will file supplemental briefing on Plaintiffs' pending preliminary injunction motion. In this filing, Plaintiffs begin by showing that the documents and admissions of Defendants' witnesses contradict Defendants' false narrative of independent FEMA decision-making and other factual statements in Defendants' filing, including by showing the existence of a DHS-directed plan to downsize FEMA. *Infra*, Section I. Plaintiffs then explain why the further compliance Plaintiffs seek is important to address the questions and issues before the Court. *Infra*, Section II. Then, Plaintiffs propose next steps for addressing the pending preliminary injunction motion. *Infra*, Section III.

Finally, Plaintiffs respond to Defendants' brand-new request to stay *all* discovery in this case, pending a forthcoming motion to dismiss Plaintiffs' January 30, 2026 supplemental complaint. While Defendants have not asked Plaintiffs to meet and confer about a briefing schedule, Plaintiffs have offered to do so. In the meantime, Defendants offer no justification as to why their intent to file such a motion should delay or prevent discovery on the claims in this case, which go beyond DHS and FEMA, from proceeding. *Infra,* Section IV.

## ARGUMENT

**I.    Defendants' Narrative of Independent FEMA Decision-making Misrepresents the Evidentiary Record**

Defendants predicate both requests in their filing (to deny further compliance with discovery already ordered and to stay all further discovery pending a forthcoming motion to dismiss) on their inaccurate characterization of what the discovery has thus far revealed about the facts. ECF 344 at 1 ("the decision not to re-appoint those COREs was made by **FEMA**, not DHS" (emphasis in original)); *id.* at 2 ("Supplied now with the answer to the question that prompted this

expedited discovery…the Court should determine that it has what it needs to resolve Plaintiffs' Preliminary Injunction Motion and bring the expedited discovery period to a close. In so doing, it should temporarily pause all discovery in this case"); *id*. at 12 (asserting the "discovery has unequivocally revealed the answer… it was FEMA").

Because that is the premise of Defendants' requests, Plaintiffs begin by responding to correct that misrepresentation. In fact, the document and testimonial record that has thus far been obtained through discovery actually reveals the following:

- Substantial and consistent DHS involvement in FEMA decision-making, including a plan to cut 50% of FEMA staff, a plan to eliminate CORE positions by NTE date, and decisions to remove FEMA decision-making authority;

- Confirmation that two individuals (Deputy Chief of Staff ("DCOS") Joseph Guy and DHS Senior Advisor Kara Voorhies) acted as *conduits* to other individuals in DHS leadership on these issues; and

- Denials by each of the three deponents (FEMA SOPDA Karen Evans, DHS CHCO Roland Edwards, and FEMA CHCO La'Toya Prieur) of any knowledge as to *who* in DHS leadership was directing the actions of DOCS Guy and DHS Senior Advisor Voorhies and *what* was communicated (necessitating the additional depositions of Guy and Voorhies).[1]

According to Defendants, the Court-ordered expedited discovery in this case was "to answer a single, discrete factual question left unclear by Defendants' Declaration in support of their Opposition to Plaintiffs' Motion: whether DHS, or its component FEMA, had made the decision not to renew certain FEMA 'CORE' employees in January 2026 when their temporary appointments expired." ECF 344 at 1 (citing ECF 321 at 1–2). But the Court's March 3, 2026,

[1] Given Defendants' assertions that the evidence supports their narrative that FEMA made independent decisions, Plaintiffs provide this preview of the additional evidence that they will submit in support of the pending preliminary injunction motion. The question whether DHS or FEMA made the relevant decisions is, of course, only one aspect of Plaintiffs' merits arguments in seeking a preliminary injunction, which also include claims that the FEMA staffing decisions, whether made by FEMA or DHS, were arbitrary and capricious or otherwise unlawful.

Order (ECF 321) identifies the factual dispute that prompted the need for expedited discovery as "whether DHS ordered or directed that FEMA make staffing cuts (and cut staffing to a certain level)." ECF 321 at 1-2. Encompassed within that inquiry are both the question whether there was a plan to cut FEMA staffing to a target level, and whether DHS "ordered or directed" FEMA to make the relevant target and staffing decisions.

The discovery thus far has pointed to an affirmative answer to both questions: DHS was directing staffing cuts (including with respect to the January COREs), and directing Evans to act, through Guy and Voorhies. While Evans now claims, contrary to her original Declaration, to have made certain non-renewal decisions herself, that testimony is not credible in light of the evidence summarized below. The documentary evidence as well as the depositions reveal direct DHS involvement in FEMA staffing decisions, direction to create and implement a 50% staffing cut plan, and removal of authority over CORE staffing from FEMA.

Compliance with this Court's previous orders regarding document discovery, as well as depositions of DCOS Guy and DHS Senior Advisor Voorhies,[2] are necessary given that the previous deponents claimed a lack of knowledge as to the identity of the DHS decision-makers and the specifics of the direction they gave to Evans not to renew CORE employees.

---

[2] Voorhies was not a DHS or FEMA employee (although she apparently represented to Evans early on that she was). Eshleman Decl., Ex. G (Evans Trans. 99:4-101:4, 103:7-11). She was a DHS (not FEMA) contractor, given the title of DHS Senior Advisor. *Id.* (Evans Trans. 98:18-99:8). As discussed further below, Voorhies appears on hundreds of emails regarding FEMA staffing and personnel decisions. *Infra* at 7-10. Evans and Prieur both confirmed that DHS leadership assigned Voorhies to work on FEMA issues. *Id.* (Evans Trans. 98:18-21); *id.*, Ex. I (Prieur Trans. 48:17-49:3). Prieur repeatedly described Voorhies as acting as a "liaison" between FEMA and DHS leadership. *Id.*, Ex. I (Prieur Trans. 48:17-49:3, 49:19-23, 167:11-168:1, 185:14-17, 193:3-18, 248:18-21). Neither Evans, Edwards, nor Prieur knew who in DHS leadership Voorhies was reporting to or who was directing her actions, but they understood that she was installed at FEMA by DHS Chief Advisor Corey Lewandowski. *Id.*, Ex. G (Evans Trans. 99:4-103:6); *id.*, Ex. H (Edwards Trans. 75:13-76:3, 317:22-319:18); *id.*, Ex. I (Prieur Trans. 51:14-53:9). Voorhies' involvement in FEMA personnel decisions as a contractor raises a host of legal concerns, including as the DHS CHCO admitted, potential concerns under the Privacy Act (with respect to lists of FEMA CORE employees by NTE date that were forwarded to Voorhies beginning in December 2025). *Id.*, Ex. H (Edwards Trans. 322:11-326:24).

### A.    DHS Directed FEMA's Staffing Decisions at Every Turn

The question of who implemented the specific decision to cut CORE staff positions beginning in January 2026 must be viewed in the context of the direction that DHS gave regarding FEMA staffing plans in December 2025.  At the March 3, 2026 hearing, Defendants' counsel represented, repeatedly, that there was no "plan" to cut FEMA staff:

> MR. BOMBARD: …And there is no plan, so there's nothing, there's no directive to enjoin.
> THE COURT: There is no plan, is that what you're saying?
> MR. BOMBARD: There is no plan at this time for these kinds of cuts.

ECF 322 (March 3, 3026 Hearing Trans. 48:18-23).  But Evans admitted at her deposition that there *was* a Fiscal Year 2026 staffing plan that cut FEMA staff by 50%, FEMA had been directed by DHS leadership to create that plan, and, perhaps most significantly, that the plan was directly connected to removing COREs by NTE date, and to the requirements of submitting an Annual Staffing Plan to OMB/OPM (pursuant to the President's Executive Order 14356).  Eshleman Decl., Ex. G (Evans Trans. 219:21-222:9, 223:10-224:20, 235:4-25, 261:18-262:17, 278:1-286:25).[3]

Executive Order 14356, the subject of Plaintiffs' supplemental complaint, was issued on October 15, 2025, and required agencies (including DHS and FEMA) to submit final Annual Staffing Plans within 60 days.  In late November 2025, DHS ordered FEMA, along with every other DHS component, to submit its Annual Staffing Plan for Fiscal Year 2026 for compilation in DHS's staffing plan to be submitted to OMB and OPM pursuant to Executive Order 14356.  *Id.* at Ex. G (Evans Trans. 207:1-209:11).  To complete the detailed "bottoms-up" staffing analysis required by DHS, FEMA's program and regional offices analyzed their staffing needs and recommended that FEMA maintain current staffing levels of 23,000 employees, which FEMA

---

[3] Plaintiffs are submitting the entire Evans deposition transcript as Exhibit A to the accompanying Eshleman Declaration to avoid the need for the Court to reconcile three sets of excerpts from ECF 341, ECF 344, and this filing.  That deposition transcript undercuts Defendants' assertion that Plaintiffs' counsel were pursuing irrelevant material: the entire course of questioning was aimed at establishing the decision-making hierarchy and roles of individuals at DHS, as well as facts pertaining to workforce reduction efforts by DHS leadership.

Chief Human Capital Officer ("CHCO") Prieur then transmitted to Evans.  *Id.* at Ex. G (Evans Trans. 238:4-243:2); *id.* at Ex. I (Prieur Trans. 134:9-137:3).[4]

However, DHS did not want a FEMA staffing plan with 23,000 employees.  Evans' deposition testimony admitted that DHS, through DCOS Guy, instructed Evans include a 50% cut to FEMA's staff in this plan (which at the time numbered roughly 23,000 positions, thus reflecting a cut of 11,500 employees).  *Id.* at Ex. G (Evans Trans. 235:10-25); *see* ECF 341-1 (Leonard Decl., Ex. C (Dep. Ex. 17) (previously submitted in camera)).  Corroborating this admission, on December 4, 2025, Evans recorded notes from her discussion of this cut with DHS Senior Advisor Voorhies stating that "[t]he number is 11,383."  Eshleman Decl., Ex. G (Evans Trans. 223:13-224:11).  Following these instructions from DHS, Evans then submitted FEMA's Annual Staffing Plan that included DHS's 50% cut and reduced FEMA's staff to 11,383—ignoring FEMA components' analysis of their staffing needs.  *Id.* at Ex. G (Evans Trans. 219:21-222:7, 224:6-11); *see also* ECF 341-1 (Leonard Decl., Ex. C (Dep. Ex. 17) (previously submitted in camera)).[5]

On December 4, the same day that Evans submitted a staffing plan with DHS's 50% cut, she discussed plans for implementing that 50% cut and the goal of reaching 11,383 employees with a subordinate, Stephanie Dobitsch (at that time, Associate Administrator of FEMA's Office of Policy and Program Analysis).  Eshleman Decl., Ex. G (Evans Trans. 278:4-281:5, 282:15-25).  Evans testified that at that meeting, she and Dobitsch discussed "[l]ooking at all CORE dates" and a "[p]roposed plan to reduce COREs by date."  *Id.*, Ex. G (Evans Trans. 279:8-280:16); *see also*

---

[4] The deposition testimony on these subjects is supported by a number of documents that Defendants have continued to mark "Confidential" without basis.  *See* ECF 346.  Until this Court resolves that dispute, Plaintiffs will not submit these on the public record (and has submitted certain documents in camera, *see* ECF 341).  If the Court wishes to see any additional depositions exhibits referenced in the non-confidential testimony, Plaintiffs can submit them in camera or file them under seal, as the Court directs.

[5] Although Evans initially denied recalling any "specific activities associated with" the submission of FEMA's annual staffing plan, and denied recalling cutting the number of FEMA staff in half in the plan submitted to DHS, Eshleman Decl., Ex. G (Evans Trans. 215:15-216:11), when confronted with the documents, she admitted to having sent the staffing plan to DHS and that she made the 50% cut, *id.* (Evans Trans. 219:21-220:24, 224:6-11).  Evans' testimony claiming that she did not recall her role in the staffing plan cutting FEMA's staff in half at DHS direction was not credible.

ECF 341-1 (Leonard Decl., Ex. B at USA-AFGE-Exp.-0033534 (Dep. Ex. 10) (previously submitted in camera; Evans' notes summarizing the December 4 meeting)).  Defendants subsequently produced another document summarizing the implementation of this plan (for which Plaintiffs seek the metadata, *see infra* at 17.  ECF 341-1 (Leonard Decl. Ex. E (Dep. Ex. 25) (previously submitted in camera)).

Early on the morning of December 5, 2025—the day after Evans submitted FEMA's Annual Staffing Plan with DHS's 50% cut and discussed with subordinates the need to look at CORE NTE dates and develop a plan to reduce COREs by NTE date—FEMA's CHCO Prieur directed staff to provide her with data about CORE NTE dates for *immediate transmission to "S1"* (the DHS Secretary).  Eshleman Decl., Ex. G (Evans Trans. 298:8-25); *id.*, Ex. I (Prieur Trans. 188:7-12-191:13).  Throughout the month of December, similar data about CORE renewals and NTE dates was collected and transmitted by Evans and CHCO Prieur to high level DHS officials including Voorhies, Guy, and Edwards.  *See, e.g.*, *id.*, Ex. G (Evans Trans. 305:20-308:6); *id.*, Ex. H (Edwards Trans. 210:23-211:10, 199:24-200:23); *id.*, Ex. I (Prieur Trans. 264:14-23).  This data included the number of COREs with NTE dates in January, February, and March (*id.*, Ex. G (Evans Trans. 305:20-308:6)); the cost to the agency of each CORE employee (*id.*, Ex. I (Prieur Trans. 276:9-21)); and the number of COREs already renewed at during various timeframes in 2025 (*id.*, Ex. H (Edwards Trans. 199:24-200:23, 232:14-20, 233:20-234:17); *id.*, Ex. I (Prieur Trans. 264:14-23)).  To be clear, immediately after requiring FEMA (via Evans) to include a 50% cut to FEMA staffing in its FY2026 staffing plan, and immediately prior to the decision to eliminate CORE positions by NTE beginning in January 2026, DHS leadership requested and was receiving significant data regarding CORE renewals by NTE and the costs to the agency of keeping them.  Significantly, neither Evans, Edwards, nor Prieur was able to testify as to who in DHS Leadership beyond Guy and Voorhies actually requested or received this information.  *Id.*, Ex. G (Evans Trans. 302:13-304:17); *id.*, Ex. H (Edwards Trans. 197:20-198:19), *id.*, Ex. I (Prieur Trans. 193:3-18).

Meanwhile, per her assignment to devise a specific plan for implementing DHS's 50% staffing cut target, Associate Administrator Dobitsch drafted the December 23 "staffing exercise"

email that was previously submitted to this Court.  ECF 312-6; ECF 326-1.  This draft email instructed components to conduct another bottom-up staffing analysis (having just done so less than a month earlier), but this time with a 50% "target" cut in agency personnel.  Leonard Decl., Ex. D (Dep. Ex. 18) (previously submitted in camera).  On December 23, 2025, the final version of that "exercise" was sent out to FEMA components, including a spreadsheet for components to complete that listed a target of a 50% reduction in staff, with a completion deadline of December 31, 2025. ECF 312-6; ECF 326-1.[6]

During the December 2025 period leading up the January non-renewals (and thereafter) Evans held weekly meetings with DHS DCOS Guy, which DHS Senior Advisor Voorhies also attended.  Eshleman Decl, Ex G (Evans Trans. 133:2-10, 190:5-8, 273:9-16).  These meetings included discussions of issues related to "CORE renewals."  *Id.*, Ex. G (Evans Trans. 306:10-16); *see also id.* (Evans Trans. 130:23-131:2 ("Q: And you communicated with Ms. Voorhies about the non-renewals of COREs by NTE date. Correct? … A: Yes, I did.")).  On December 31, 2025, the day before the January non-renewals began (and the day on which Evans claims *she* made the decision not to renew the COREs), Evans had one of her weekly meetings with DHS DCOS Guy. *Id.*, Ex. G (Evans Trans. 353:17-25).  Evans testified that her notes from that meeting state, "Not going to approve the COREs (30 days extensions) and COREs in general."  *Id.*; *see also* Leonard

---

[6] In response to the December 23 "exercise," FEMA programs and regions again returned numbers that were inconsistent with DHS's 50% planned cut, and again recommended that FEMA maintain current staffing of 23,000 employees.  Eshleman Decl., Ex. I (Prieur Trans. 204:8-205:2). Unsatisfied, DHS and FEMA leadership then required components to engage in yet a third round of "bottoms-up zero-based" staffing analysis, which was due on March 31, 2026.  *Id.*, Ex. G (Evans Trans. 342:12-344:14).  Plaintiffs lack access to those documents, which followed the March 6 production cutoff date.  FEMA CHCO Prieur confirmed that instructions to components for conducting this analysis were intentionally not put in writing to avoid the press obtaining the contents of those instructions.  *Id.*, Ex. I (Prieur Trans. 320:25-322:13).  Prieur also confirmed that the intent is to implement staffing plans (including any reductions) **by June 2026**.  *Id.* (Prieur Trans. 333:8-24).  The plan to implement this new round of FEMA staffing analysis by the June timeframe was also confirmed by multiple documents, including phone records untimely produced by Defendants after the depositions.  Eshleman Decl., Ex. D (phone record produced from FEMA "Tier 1" custodians for the first time on April 15).

Decl. Ex B at USA-AFGE-Exp.-0033536 (Dep. Ex. 10) (in camera).[7]  The next day, FEMA began implementing the elimination of COREs by NTE date.  Eshleman Decl., Ex. G (Evans Trans. 356:1-15).

These facts regarding communication and involvement (at a minimum) by DHS officials are not, as Defendants assert, indicative of an independent FEMA head who developed and began implementing a plan to slash FEMA's staff on her own.  Rather, the evidence, including Evans' own admissions, shows that at each juncture, DHS, through at least Guy and Voorhies, has been involved in directing and supervising FEMA's staffing reduction targets and efforts.  Evans admits that DCOS Guy instructed her to create the staffing plan with the 50% cut, that she sent DHS leadership data about COREs including the number of COREs with NTE dates in the near future, and that she discussed CORE renewals by NTE date with Guy and Voorhies, and met with Guy and discussed the non-renewal of COREs with upcoming NTE dates immediately before FEMA began carrying out the early January non-renewals.

Similarly, while Defendants cite Evans' statement that she "made sure" that DHS "Senior Advisor" Voorhies "was not involved in any personnel decisions," ECF 344 at 15 n. 8; Eshleman Decl., Ex. G (Evans Trans. 111:4-14), they neglect to mention that Evans admitted to having numerous communications with Voorhies about FEMA personnel and personnel decisions, and the record is replete with hundreds of emails about FEMA staffing and personnel decisions involving Voorhies.  *See, e.g.*, Eshleman Decl., Ex. G (Evans Trans. 127:12-128:16, 129:22-131:9, 199:3-16, 224:6-11, 235:20-25, 272:5-24, 273:9-16, 278:6-281:5; 286:1-6; 305:10-307:4).  The evidence thus far assembled shows that Voorhies was involved in these decisions every step of the way:  She was included in the December 4 emails and discussions about reducing COREs by NTE date and the 50% staffing cut plan, subsequent emails regarding data about CORE NTE dates, and emails

---

[7] Deposition Exhibit 10 contains what were revealed in deposition to be Evans' self-redacted handwritten notes (submitted in camera as Leonard Decl., Ex. B, ECF 341-1).  Plaintiffs' counsel was able to read the portions discussed in deposition regarding this meeting with DCOS Guy on December 31 that Evans chose not to redact (*see id.*, at USA-AFGE-Exp.-0033536 (in camera)) but the notes are partial, and everything surrounding that notation is redacted.  *See infra* at 16-17.

discussing the renewal or non-renewal of specific CORE employees. *Id.*, Ex. G (Evans Trans. 223:13-224:11; *id.*, Ex. I (Prieur Trans. 182:22-185:13, 192:13-193:9, 276:12-17, 284:14-21); *id.*, Ex. H (Edwards Trans. 322:11-323:6). In fact, Evans later admitted she had been instructed to include Voorhies on essentially *everything* regarding FEMA, Eshleman Decl., Ex. G (Evans Trans. 132:4-22), despite initially denying receiving any such direction, *id.* (Evans Trans. 128:7-21).

Further, following Evans' deposition, a screenshot of a Signal chat from Evans' personal phone, produced at Plaintiffs' insistence just last week, shows that Voorhies and Evans participated in a Signal group chat called "FEMA 2.0."[8] Eshleman Decl., Ex. A. In that group chat, Voorhies gave Evans specific instructions, including that she provide information that Voorhies says that "we" need for FEMA staffing plans. *Id.*[9] Notably, "FEMA 2.0" is the same phrase used in the draft FEMA Review Council report to refer to the Review Council's recommendations for altering FEMA's composition and functions. *See, e.g.*, Eshleman Decl., Ex. E (Dep. Ex. 13 ("FEMA 2.0 should reduce overall staffing by approximately 50%.")). Defendants did not previously revealed the existence of this FEMA 2.0 Signal chat group or its participants despite its obvious relevance and responsiveness.[10]

---

[8] During her deposition, Evans failed to disclose the existence of this group chat despite being asked to list "all of the group chats that you were involved with on your Signal app that involved FEMA business." Eshleman Decl., Ex. G (Evans Trans. 152:23-25). Evans listed only the following: "There was one, as we previously mentioned, specifically for the winter storm. There is one specifically for communications, to be able to respond to communications. And then there's one for the ExecSec to make sure that we had the STORM numbers so that we could move disaster decs through." *Id.* (Evans Trans. 152:23-153:9).

[9] Evans confirmed that her communications with Voorhies were on Voorhies' personal phone. Eshleman Decl., Ex. G (Evans. Dep. Trans. 141:21-24). This Signal chat with Voorhies confirms the falsity of Defendants' representation to this Court: that "the custodians whose personal phones remain of interest to Plaintiffs did not communicate on their personal phones regarding COREs renewals or target staffing reductions." ECF 344 at 15.

[10] Defendants complain about various questions Plaintiffs asked Evans about Voorhies to establish Evans' knowledge, the relationships among the decision-makers, the respective roles at DHS, and context leading up to the December 2025 decisions (such as information Evans learned while on government travel with Voorhies). ECF 344 at 9-10. Given Voorhies' apparent role in FEMA's staffing decisions, Plaintiffs' questions appropriately sought information regarding the individuals involved in making decisions for FEMA at DHS. Defendants' other complaints—for example that Plaintiffs asked questions about Evans' background imposing staffing cuts at another DHS component—are equally frivolous. When DHS transferred Evans to FEMA, it announced

Defendants ask this Court to credit Evans' claim that she alone made certain personnel decisions, despite this evidence of sustained DHS direction and involvement (including a meeting with DHS DCOS Guy on the very day the decision was supposedly made). ECF 344 at 10. But through her attempts to refute her own Declaration, as well as her deposition testimony and contradictory documentary evidence, Evans has proven herself not credible.[11] As the above discussion shows, DHS directed FEMA's actions, regardless of whether FEMA transmitted any individualized papers for approval.[12] Even aside from the evidence of DHS involvement in the specific FEMA staffing decisions during the relevant timeframe, Evans herself admitted that she did not make those staffing decisions independently of DHS's policy priorities. When given multiple opportunities to deny that she was implementing the policy priorities of the Secretary when she terminated the CORE employees in January, she declined to do so, *see, e.g.*, Eshleman Decl., Ex. G (Evans Trans. 369:20-24), before eventually admitting that she *did* understand herself to be enacting the Secretary's policy priorities in effectuating those terminations, *id.* (Evans Trans. 371:17-20).

### B. FEMA's Annual Staffing Plan *Was* Communicated to OMB and OPM

In an attempt to undermine the finality of the DHS and FEMA plans to cut FEMA staff, Defendants also deny that FEMA's Annual Staffing Plan (with the 50% cut) was ever transmitted

---

that her role in workforce reduction qualified her for the job: "Karen Evans has moved over full-time to the Federal Emergency Management Agency. She was instrumental in helping cut waste, fraud, and abuse at CISA and her skill set is perfectly suited for the future of the Federal Emergency Management Agency." Eshleman Decl. Ex. F (Dep. Ex. 3).

[11] After her deposition, Evans testified to Congress on April 16, 2026 regarding the FEMA Fiscal Year 2027 budget request. Eshleman Decl. ¶13. When asked about the FEMA CORE non-renewals in early 2026 (and her declaration in this case), Evans provided *yet another* inconsistent account of who made the January non-renewal decisions, stating that "Their functions and their work were reviewed and there was a determination made by the supervisor or the program office head that that work wasn't needed and therefore the contract wasn't renewed." *Id.* This statement is demonstrably false: the FEMA programs and regions recommended renewal of the more than 300 COREs who were up for renewal in January 2026, and certainly did not recommend their non-renewal. *Id.*, Ex. I (Prieur Trans. 292:20-293:19). This is now Evans' *third* inconsistent explanation for who made the decision not to renew the CORE employees in January.

[12] The documents produced in discovery confirm that, as of January 2026, FEMA was seeking DHS Secretary ("S1") approval prior to renewing any CORE positions. It does not appear that forms requesting approval for non-renewals existed (which Evans' original declaration suggested may have been the case), but that does not answer the question of whether DHS directed those actions.

to OMB/OPM.  ECF 344 at 15-16, 344-1, Ex. 9-10.  This is also false.  Evans initially denied knowledge of whether the FEMA plan was transmitted to OPM/OMB.  Eshleman Decl., Ex. G (Evans Trans. 212:4-213:8).  However, when confronted by documents, she admitted that in December 2025 she stated that the FEMA numbers (the roughly 11,500 total) *were* provided to OPM/OMB.  *Id.* (Evans Trans. 230:13-22); *see also* Leonard Decl. Ex. D (Dep. Ex. 18 at USA-AFGE-Exp.0007336 (previously provided in camera).  She also admitted that there was a plan to keep information about the planned reduction from the public.  Eshleman Decl., Ex. G (Evans Trans. 229:4-23); *see* Leonard Decl. Ex. D (Dep. Ex. 18 at USA-AFGE-Exp.0007336 (in camera).[13]  DHS CHCO Edwards testified that he consolidated FEMA's submission with the other DHS components' plans and sent the overall DHS Staffing Plan forward to DHS leadership for approval.  Eshleman Decl., Ex. H (Edwards Trans. 135:4-136:6).  And DHS CHCO Edwards confirmed that, absent rejection by OMB/OPM, DHS had directed DHS components to treat their plans as approved.  *Id.* (Edwards Trans. 151:3-20).  As discussed further *infra*, neither FEMA nor DHS has produced:  Evans' actual admitted transmission of FEMA's Annual Staffing Plan to DHS, any relevant documents from FEMA or DHS following that transmission, including any of the communications to DHS leadership referenced by Edwards.  *Infra* at 17-18.

**C.**    **DHS Also Indisputably Removed FEMA's Hiring and Renewal Authority**

In claiming that FEMA made independent decisions, Defendants also ignore the conclusive evidence that DHS removed FEMA's authority over personnel decisions, with limited exceptions. Discovery to date reveals that DHS leadership assumed this authority, and removed FEMA's

---

[13] The two declarations Defendants submitted do not refute this; nor do they withstand further scrutiny.  Kies Decl., Exs. 9, 10, ECF 345.  The OMB declaration narrowly states only that DHS did not send information to a particular online portal or email address, which is hardly confirmation that the DHS plan was not sent as required by the President's Executive Order.  ECF 345-9, ¶7.  The testimony of the OPM declarant (Noah Peters) lacks proper foundation (ECF 345-10 ¶7); this is reminiscent of a similar declaration from Peters, filed in another case, which denied OPM's directives to agencies to fire probationary employees and which this Court called a "sham declaration" (*AFGE v. OPM*, No. 3:25-cv-01780-WHA (N.D. Cal.), ECF 120 at 8:9-10) as lacking in personal knowledge for the claims that OPM did not direct the terminations at issue (*id.*, ECF 132 at 11), and then ultimately, "unpersuasive" in light of the "mountain" of contrary evidence supporting plaintiffs (*id.*, ECF 202 at 11-12).

authority to renew COREs.  Eshleman Decl., Ex. G (Evans Trans. 97:24-100:13); *id.*, Ex. I (Prieur Trans. 99:6-18; 104:4-106:4; 105:5-7, 111:2-18).  DHS did so under the guise of the President's hiring freeze, even though OMB and OPM had actually exempted all of DHS from that hiring freeze *and* had further exempted the renewal of temporary positions like COREs.  *Id.*, Ex. H (Edwards Trans. 90:16-92:13; 95:16-96:13).

Then, prior to the onset of the 2025 hurricane season, DHS purported to delegate back to FEMA the authority to renew a subset of their COREs, but only for 180-day terms.  *Id.*, Ex. I (Prieur Trans. 113:20-114:9).  As of December 2025, the expiration date DHS set for that delegation was approaching.  *Id.*, Ex. G (Evans Trans. 171:18-172:8).  In December 2025, DHS did not extend the delegation of authority, and beginning in January 2026, DHS's self-imposed hiring freeze therefore applied to FEMA renewal of CORE employees.  *Id.*, Ex. G (Evans Trans. 267:8-25, 365:2-6).  As of early December 2025, FEMA staff had drafted an S1 approval memo, but Evans confirmed DHS involvement in the decision *not* to send that memo forward for approval and to thereby renew that delegation, *id.* (Evans Trans. 130:18-22, 273:9-16, 274:11-19, 346:9-25); *id.*, Ex. I (Prieur Trans. 219:14-222:15).  Notably, the decision to send the FEMA staff's request for extended authority forward to S1 (the Secretary) for approval was made after that memo was provided for review to Voorhies, and after Evans discussed the issue with DCOS Guy and Voorhies.  *Id.*, Ex. G (Evans Trans. 271:23-272:24, 273:9-16).  Evans later repeatedly invoked DHS's removal of FEMA's renewal authority as the reason for the January CORE non-renewals. *Id.* (Evans Trans. 364:21-379:18).

### D. Neither Evans, Edwards, Nor Prieur Could Confirm Who at DHS Above Guy or Voorhies Was Involved or Made Decisions

It is now clear that the declaration provided to the Court by Defendants purporting to list the individuals involved in decision-making with respect to FEMA staffing and CORE non-renewals was inaccurate.  ECF 327-1.  While Defendants named DCOS Guy, they did not identify DHS Senior Advisor Voorhies (who was undeniably involved), *or* anyone else in DHS Leadership with whom Guy or Voorhies was discussing these issues or who was providing direction. Defendants did not disclose, let alone identify, the participants in the "FEMA 2.0" Signal group,

revealed only after the depositions.  Eshleman Decl. ¶¶3-4; *see also id.*, Ex. A.  And, notwithstanding the significant amount of information regarding FEMA staffing and CORE renewals being transmitted to DHS leadership via Guy and Voorhies,  Evans, Prieur, and Edwards each claimed at their depositions not to know from whom they were taking direction or communicating about these matters.

FEMA CHCO Prieur repeatedly testified that Voorhies was "was acting as a liaison between FEMA and the DHS leadership," but Prieur did not know who else in DHS leadership was involved.  Eshleman Decl., Ex. I (Prieur Trans. 185:9-17); *see also id.* (Prieur Trans. 182:9-24 (discussing Pls' Dep. Ex. 24)).  FEMA CHCO Prieur's deposition revealed that the declaration that Prieur submitted to the Court listing those who she understood to be involved in the CORE renewal decisions (ECF 327-1) was based entirely on a single email that Evans had forwarded to her showing a discussion with Evans, Edwards, Guy, and DHS Principal Deputy Chief of Staff Troup Hemenway.  Eshleman Decl., Ex. I (Prieur Trans. 304:21-305:8).  Thus, in essence, Evans told Prieur which names to include in that declaration.  Prieur explained that she was "not aware of all the individuals in DHS leadership who were actually involved in the decision-making with respect to the CORE" and "d[id] not have knowledge" of whether "there were additional officials involved."  *Id.* (Prieur Trans. 305:25-306:5).

Likewise, Evans admitted that she was sending information regarding FEMA and the CORE to DHS leadership, but repeatedly claimed that she lacked knowledge of whom within DHS leadership either Guy or Voorhies were discussing FEMA matters (including CORE renewals).  For instance, Evans did not know who at DHS instructed Guy to tell her to include the 50% cut in FEMA's annual staffing plan.  Eshleman Decl., Ex. G (Evans Trans. 236:14-18).  Similarly, although Evans admitted that she submitted the Annual Staffing Plan with the 50% cut to DHS, she did "not know the actual process after [FEMA] submitted it up to DHS headquarters."  *Id.* (Evans Trans. 212:10-11); *see also id.* (Evans Trans. 226:15-18).  With respect to Voorhies, Evans admitted knowing that Voorhies was discussing FEMA issues with then-Secretary Noem and Corey Lewandowski, but Evans claimed to not know the details of these discussions.  *Id.* (Evans

Trans. 129:1-21). Evans was also unaware of who at DHS gave Voorhies authority over personnel decisions at FEMA. *Id.* (Evans Trans. 131:19-23).

Further, although Edwards was collecting information about CORE renewals by NTE date for *someone* in DHS Leadership in December 2025, he repeatedly claimed to not remember who or what it was for. Eshleman Decl., Ex. H (Edwards Trans. 199:24-200:23; 210:23-214:18, 229:3-230:23). Likewise, Edwards confirmed that he was not the decision-maker at DHS regarding the CORE renewal approval forms that were sent to DHS by FEMA beginning in January 2026. *Id.* (Edwards Trans. 115:4-12, 298:11-17, 274:22-275:2 ("Q. You're not the person who made the approval decision. Right? A. No, I'm not. Q. It's somebody higher up the chain of command that you sent the requests to? A. That's correct.")). Edwards testified that he passed the CORE employees' approval requests to Guy, Hemenway, Greyson McGill, and Stephen Munoz, but he did not know and did not ask whether Guy and Hemenway were approving the forms or if they sought approval from someone above them before communicating the final decision back to him. *See id.* (Edwards Trans. 116:7-19, 275:2-15, 296:3-11, 304:25-305:18, 315:21-316:15).

In light of the information revealed in documents and depositions, and the information that the three deponents could *not* provide, Plaintiffs have noticed the depositions of Guy and Voorhies. Defendants seek to block those depositions and argue that "Plaintiffs do not, and cannot, show that the additional discovery they demand would somehow change the only fact that matters to resolution of their Motion." ECF 344 at 12. But these depositions are needed, and their need could not have been foreseen by Plaintiffs at the time the Court ordered the expedited discovery and four depositions (ECF 321).[14] Discovery has revealed that these individuals possess significant information about their own roles with respect to FEMA staffing decisions, who they were reporting to in DHS leadership with respect to decisions regarding FEMA staffing and CORE

---

[14] As discussed further below in Section IV, discovery in this case has been open since last summer, and Plaintiffs can and have properly noticed these depositions pursuant to Rule 30. Defendants have confirmed that Guy is available on April 30 and is still employed by the federal government; Defendants have indicated Plaintiffs should subpoena Voorhies, but have continued to decline to respond as to whether they intend to represent her. Eshleman Decl., Ex. J.

issues, and, significantly, whether Evans' shifting claims of FEMA independence are correct. Plaintiffs have the right to test Evans' shifting claims, and discovery has revealed that Guy and Voorhies are key participants in discussions and direction from DHS leadership with respect to FEMA staffing in general, and the CORE renewals specifically.

## II.    Plaintiffs Seek Limited Further Compliance

Defendants' specific objections to further compliance with this Court's orders with respect to the handful of issues identified by Plaintiffs (ECF 341) lack merit. ECF 344 at 12-16. As the above discussion confirms, Defendants' main argument—that no further compliance with the Court's prior orders is warranted because the record is now conclusive, *id*. at 12—is simply inaccurate. The further materials Plaintiffs seek, which should have been produced under this Court's prior orders, are all directly relevant to the Court's factual questions about DHS decision-making and involvement in FEMA staffing decisions.

It is worth pointing out that while Defendants have resisted compliance, where Plaintiffs have successfully obtained it, the additional material has been highly relevant and often has contradicted Defendants' representations. For example, despite refusing to produce phone records for weeks, Defendants just last week produced Signal chats from Evans' personal phone revealing a previously undisclosed chat group with DHS Leadership regarding FEMA staffing, and other significant documents from the phone records of other FEMA custodians. Eshleman Decl., Exs. A-D.

The remaining productions sought here by Plaintiffs do not impose a substantial burden on Defendants, and Plaintiffs respectfully request the Court order swift compliance.

### A.    Karen Evans' Self-Redacted Meeting Notes

Defendants have no response to Plaintiffs' arguments that Evans' self-redaction of her notes for responsiveness is a discovery violation and that Defendants' failure to timely produce a privilege log waives any privilege assertion. ECF 341 at 15-16. Weeks after the issue arose at Evans' deposition, Defendants *still* have not justified the privilege assertion. Defendants' representation that they "are working on a privilege log" that they will belatedly produce someday,

ECF 344 at 16, is a wholly insufficient response (including because this material was not redacted only for deliberative reasons, but for responsiveness, which is not permitted, *and* because any claim of deliberative process is outweighed by litigation need).

Plaintiffs request Defendants be required to immediately produce the unredacted notes, with complete pages for the dates on which Evans held meetings relevant to FEMA staffing or the CORE. *Supra* at 8-9 (discussing December 31, 2025 notes of meeting with DCOS Guy, revealed only in part).

**B.    Metadata about "Talking Points for FY26 Staffing Strategy"**

Defendants downplay the import of the "Talking Points for FY26 Staffing Strategy" document (discussed above, *supra* at 6-7) as just "one document," ECF 344 at 16, without acknowledging its substance.  That document, provided in camera, Leonard Decl. Ex. E (Dep. Ex. 25), ECF 341-1 at 105, is significant evidence of the DHS and FEMA staff reduction plan, and its connection to the elimination of CORE positions.  It cannot be true that Defendants have provided all metadata "they could reasonably discover with due diligence." ECF 344 at 16.  Defendants identified the custodian of the file as "FEMA," but Defendants' electronic system surely has more information about where the file was stored and who created it.  Counsel for Defendants have represented that "Claire Thomas authored this document and provided it to Stephanie Dobitsch, though that information does not exist as electronic metadata," ECF 344 at 15, but have never explained the basis for that representation or why the authorship information would not exist as electronic metadata.  Plaintiffs request that Defendants be ordered to immediately produce this document in native form with all metadata intact.

**C.    DHS and FEMA Communications About "Annual Staffing Plan"**

As Defendants acknowledge, ECF 344 at 16, Karen Evans testified that she submitted a FEMA Annual Staffing Plan to DHS that included a 50% cut to FEMA.  Eshleman Decl., Ex. G (Evans. Dep. 219:21-222:7); *see also* Leonard Decl. Ex. C, ECF 341-1 at 103 (previously submitted in camera).  Defendants have never produced the communication by which Evans emailed that document (revealing the recipients), nor any internal DHS communications regarding that document.  DHS CHCO Edwards testified that he compiled component staffing plans and sent

them up the chain, Eshleman Decl., Ex. H (Edwards Trans. 135:4-136:6), yet none of those communications have been produced either.  These failures indicate either that Defendants' searches have been inadequate or that Defendants failed to preserve that document and related communications.  Defendants' responsive filing does not even address this issue.  ECF 344 at 15-16.

Instead, Defendants' response focuses solely on the transmission of a DHS Annual Staffing Plan to OMB and OPM, which they represent never took place.  ECF 344 at 15-16.  But as previously discussed, Evans admitted, when confronted with her own emails, that she stated in December 2025 that the 50% cut plan had been transmitted to OMB and OPM.  Eshleman Decl., Ex. G (Evans Dep. 228:16-231:2).  Defendants have failed to produce any such communication from either FEMA or DHS to OMB and OPM, again indicating that either Defendants' searches have been inadequate or that Defendants failed to preserve those communications.

Production of these documents would hardly be burdensome.  The number of individuals involved in the communications at issue is not large, nor is the pertinent time frame.  Defendants have the ability to quickly search for relevant and responsive documents, without their overly narrow DHS search terms, to actually find and produce responsive documents, or to provide a reason why they no longer exist.  Plaintiffs therefore request that the Court provide a further compliance deadline of no more than seven calendar days for a complete production.

### D.    Personal Phones

Defendants cannot, and do not, deny that Evans used her personal phone to communicate about FEMA business with DHS officials.  Evans testified that at least some of those communications were to and from the personal phones of DHS officials, including on the Signal messaging platform.  ECF 341 at 8.  Nor do Defendants deny that these communications are federal records subject to the Federal Records Act.  *Id.* at 10.

On April 15, 2026, alongside their responsive filing on this issue, Defendants produced what they described as "3 responsive, non-privileged, Signal chat screenshots from Evans's personal phone."  Eshleman Decl. ¶3; *see also id.*, Exs. A, B, C.  Those images are photos of a phone screen that appear to be taken by another phone camera.  One image shows that Evans had a

Signal group chat called "FEMA 2.0," with messages set to automatically disappear after 4 weeks. *Supra* at 10. The image shows Voorhies participating in the thread, directing Evans to provide information relevant to FEMA personnel issues. Defendants have not disclosed the other members of the group chat. The date of the messages is shown only as "Today"; the actual date may have already been deleted with the original messages. The other images show an individual Signal chat with Voorhies and a group chat involving Voorhies and other unidentified participants, but the images are cut off. Defendants do not represent that these produced communications are the only relevant or responsive communications currently on Evans' personal phone.

Given the further confirmation in this latest production that high-ranking DHS and FEMA officials were systematically using personal phones to conduct agency business, Defendants cannot avoid discovery by disclaiming control over these communications. Defendants' response elides the fact that Evans is herself a Defendant who controls her own documents. ECF 341 at 9. And even as to custodians who are not themselves parties, the agency employer has control over their federal records. The case law distinguishes between situations where the party seeking production has "show[n] that personal devices were used for business purposes," and situations where there is "only… speculation that [employees] use their personal devices while at work." *Goolsby v. Cnty. of San Diego*, No. 3:17-CV-564-WQH-NLS, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019). The evidence firmly places this case in the former category. It would be a "remarkable proposition" if an agency could "hide responsive documents simply because these officers' work for [the employer] was done using their personal email accounts," *Waymo LLC v. Uber Techs., Inc.*, No. 17-CV-00939-WHA(JSC), 2017 WL 2972806, at *2 (N.D. Cal. July 12, 2017), especially when the evidence amply supports the inference that DHS and FEMA officials deliberately conducted agency business on Signal on personal phones to shield their communications from scrutiny.

Defendants cannot dodge this issue by relying on Evans' supposed practice of preserving federal records through self-selection. It strains credulity to believe, based on these haphazard screenshots, that Evans had a reliable practice of preserving all federal records from her personal

phone by sending them to her work email account.[15]  This is particularly so given that the name of the Signal group (*FEMA 2.0*) refers to the downsized and reformed FEMA.  *See* Eshleman Decl., Ex. G (Evans Dep. 193:12-196:12); *id.*, Ex. E (Evans Dep. Ex. 13 at 7).

Worse yet, Defendants ask Plaintiffs to blindly trust counsel's emailed representations that "Kristi Noem, Corey Lewandowski, and Kara Voorhies have confirmed that they did not use their personal phones" to discuss COREs or staff reductions.  ECF 344 at 15 (citing ECF 341-1 ¶13.c).  This representation is directly contradicted by the Voorhies-Evans screenshots Defendants just produced.  Eshleman Decl., Exs. A, B.  Even if that were not the case, such supposed self-representations communicated through counsel cannot substitute for electronic discovery or sworn declarations.  This is all the more warranted by the belated revelation of the "FEMA 2.0" chat group, which likely includes DHS leadership beyond Voorhies.[16]

Finally, Plaintiffs have repeatedly asked Defendants to attest to their compliance with preservation obligations as they related to agency business conducted on personal phones.  ECF 341 at 11.  Defendants continue their silence.  A bare minimum investigation would have shown that responsive communications were on disappearing message threads on agency officials' personal phones, yet there is no indication that Defendants took any steps to ensure preservation.

Plaintiffs therefore reiterate their request that this Court order further compliance with respect to searches of personal phones used for government business by no later than Friday, April 17, 2026: specifically, that the review of material should not include self-reporting or the use of a single search term (i.e., "core"), but rather a reasonable review of communications in context by attorneys familiar with this case, to ensure that all responsive communications are identified.  Any custodian claiming not to have conducted such communications should be required to attest to that fact under penalty of perjury.  In addition, Plaintiffs request that the Court order Defendants to

---

[15] Defendants did not state whether they obtained the three "screenshots" from Evans' work email account, nor did they produce any accompanying emails that would reveal further information concerning the timing of these communications or Evans' purported preservation practices.  Eshleman Decl. ¶3.

[16] Former DHS Secretary Noem was at the time the Co-Chair of the FEMA Review Council, and was actively involved in editing the draft report that utilized this FEMA 2.0 name.  ECF 301-1 at 12-14.

further attest to the preservation status of communications on personal phones relating to agency business for the custodians covered by this Court's prior orders.

### E.    Work Phones

Defendants attempt to cut off forensic searches of Voorhies' and Guy's work phones by again asking Plaintiffs to take Evans at her word.  They rely on Evans' testimony that she "made sure" that Voorhies was not involved in personnel decisions, ECF 344 at 15—but that claim was directly refuted throughout the rest of Evans' deposition and by myriad documents.  *Supra* at 4-11; Eshleman Decl., Exs. A, B.  It is long past the March 26 deadline for Defendants to comply with this Court's order requiring phone searches (ECF 336).  Defendants now state they will, at some unspecified point in the future, attempt to search Voorhies' work phones in DHS possession, but this is not compliance with the Court's expedited discovery order.

With respect to Guy, Defendants' counsel has represented that the work phone has been searched and did not reveal any responsive communications.  Plaintiffs do not know the scope of Defendants' searches, or whether Guy used his work or personal phone for Signal chats (for which he was likely a participant in the late-revealed FEMA 2.0 group).  Plaintiffs reiterate their request to search Guy's phone for all relevant communications, including any messages in the FEMA 2.0 group (if in fact his personal phone was used for that group pertaining to FEMA business, as discussed above, that phone must be thoroughly searched).

Plaintiffs request the Court order full compliance within seven calendar days, so that Plaintiffs can review and use these documents in upcoming depositions.

### III.    Plaintiffs Can Quickly Supplement the Pending Injunction Motion Once Defendants Comply

Compliance with the above limited requests should not take Defendants longer than a week, and Plaintiffs request the Court order a final production deadline of seven calendar days following any order.  Assuming that Defendants produce the remaining materials, Plaintiffs could take the depositions of Guy and Voorhies shortly thereafter.  (Those depositions are currently noticed for the week of April 27, 2026 but could be taken the following week.)  Plaintiffs intend to evaluate

the need for the deposition of DHS Secretary Noem, as authorized by this Court, following the Guys and Voorhies depositions.

Following those depositions, Plaintiffs could quickly move to supplement the pending preliminary injunction request with additional evidence and argument based on the expedited discovery. Plaintiffs request a schedule that would permit the Court to consider and award relief before the June 2026 target, which discovery obtained thus far has indicated is set for further implementation of the staffing plans. Assuming discovery proceeds as described above, Plaintiffs would propose a deadline to file any such supplemental request by May 15, 2026, with response and reply dates shortly thereafter.

Defendants have stated their agreement that the parties should proceed to briefing on any supplement to Plaintiffs' motion for injunctive relief, ECF 344 at 2, and Plaintiffs intend to meet and confer with Defendants to present an agreed upon schedule, if possible.

## IV.    The Court Should Reject Defendants' New Request to Halt the Case

Defendants' April 15, 2026 filing requests, for the first time in this case and without meeting and conferring with Plaintiffs, to stay *all* discovery pending resolution of a motion to dismiss the supplemental complaint, to be filed on an unspecified forthcoming date.

As the Court is aware, Plaintiffs moved for leave to file the Supplemental Complaint without opposition on January 27, 2026 (ECF 290; ECF 290-2), and that Supplemental Complaint was filed upon this Court's approval three days later (ECF 295). Defendants did not at that time request any schedule for pleadings motions (ECF 290-2), nor did they raise the issue at any time prior to their April 15, 2026 filing. Eshleman Decl. ¶14. Defendants have not disclosed what issues they intend to raise in this new motion (including whether they are the same types of arguments previously raised and rejected in this case, ECF 259).

Plaintiffs have proposed to meet and confer with Defendants with respect to a schedule for any planned motion to dismiss, but there is no reasonable basis for such a motion to interfere with ongoing discovery or the progress of this case. On March 20, 2026, Plaintiffs served all Defendants with discovery pertaining to the implementation of Executive Order 14210 and 14356

(requiring the Annual Staffing Plans), the response to which was due today, April 20, 2026. Eshleman Decl. ¶15. Plaintiffs agreed to a two-week extension as a courtesy, but there is no basis to block this discovery based on a yet-to-be-filed and unexplained motion to dismiss—particularly in a case where discovery is open and ongoing into all of Plaintiffs' claims.

Defendants identify no requirement that parties delay ongoing discovery pending a new Rule 26 conference for each subsequent amended or supplemental complaint. And while Defendants claim that the allegations and claims in the supplemental complaint are "starkly different" from the prior complaints, that is not accurate. ECF 344 at 13. The Supplemental Complaint allegations are highly interconnected with the issues raised by Plaintiffs' earlier claims, pertaining to the implementation of the President's orders requiring workforce reduction. In 2025, the plans at issue were called Agency RIF and Reorganization Plans, and in 2026 the President has continued those efforts, including with the new required Annual Staffing Plans: the challenged actions at FEMA reflect one of the earliest examples of the implementation of this rebranded approach. These are not different in kind, let alone "starkly" different.[17] While Plaintiffs have no objection to a further Rule 26 conference, there is no basis to stay discovery in the meantime or await resolution of any pleadings motion.

Setting aside the fact that any serious request to stay all discovery should have been raised in a properly noticed motion, Plaintiffs respectfully request this Court deny Defendants' proposal to stay all discovery and delay the progress of this case.

---

[17] A high-ranking OMB official publicly stated in March 2026 that workforce reduction remains "Priority Number One" for the Trump Administration. *Continuing to shed federal workers remains 'priority number one,' White House official says*, GovExec (Mar. 5, 2025), available at https://www.govexec.com/workforce/2026/03/continuing-shed-federal-workers-remains-priority-number-one-white-house-official-says/411907/; *see also* FY2026 Presidential Management Agenda, released December 8, 2026, available at https://www.whitehouse.gov/wp-content/uploads/2025/12/M-26-03-Presidents-Management-Agenda.pdf (including three tiers, the first of which is "**Shrink the Government & Eliminate Waste**," including through the goal of "**Downsize the Federal Workforce**") (emphasis in original).

DATED: April 20, 2026

Respectfully submitted,

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Robin S. Tholin
Elizabeth Eshleman
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com

By: */s/ Danielle Leonard*

*Attorneys for All Union and Non-Profit Organization Plaintiffs*

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

By: */s/ Tsuki Hoshijima*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

Jules Torti (pro hac vice)
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT

2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)
Matthew Blumin  (pro hac vice)
AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org

MBlumin@afscme.org

By: */s/ Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL
UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorneys for Plaintiff Service Employees International Union, AFL-CIO (SEIU)*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By:  */s/ David Chiu*

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)

PLS' RESPONSE TO DEFS' FILING RE: COMPLIANCE DISPUTES, No. 3:25-cv-03698-SI

26

Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By: */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

Christopher Sanders (pro hac vice)
General Counsel
Erin King-Clancy (SBN 249197)
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
chrsanders@kingcounty.gov
eclancy@kingcounty.gov

By: */s/ Erin King-Clancy*

*Attorneys for Plaintiff Martin Luther King, Jr. County*

Sharanya Mohan (SBN 350675)
Eliana Greenberg (SBN 366319)
Toby Merrill (pro hac vice)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
eliana@publicrightsproject.org
toby@publicrightsproject.org

By: */s/ Eliana Greenberg*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL, Harris County, TX, and Martin Luther King, Jr. County, WA*

Jonathan G.C. Fombonne
Harris County Attorney

Sarah Utley (pro hac vice app. forthcoming)
Managing Counsel
Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel: (713) 274-5102
Fax: (713) 437-4211

jonathan.fombonne@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscoupntytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

By: */s/ Jonathan G.C. Fombonne*

*Attorneys for Plaintiff Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago

Rebecca A. Hirsch (IL ARDC 6279592) (pro hac vice)
Lucy Prather (IL ARDC 6337780) (pro hac vice)
City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Rebecca.Hirsch2@cityofchicago.org
Lucy.Prather@cityofchicago.org

By: */s/ Rebecca Hirsch*

*Attorneys for Plaintiff City of Chicago*

Ebony M. Thompson
Baltimore City Solicitor

Christopher Sousa (SBN 264874)
Baltimore City Department of Law

100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (410) 396-3947
sara.gross@baltimorecity.gov

By: */s/ Christopher Sousa*

*Attorneys for Plaintiff City of Baltimore*