CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
BRAD P. ROSENBERG
JEREMY S.B. NEWMAN
Chief Litigation Counsel
CHRISTOPHER HALL
MARIANNE F. KIES
Assistant Branch Directors
ROBERT C. BOMBARD
Trial Attorney
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-1819
Marianne.F.Kies@usdoj.gov

Counsel for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al*. <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as | Case No. 3:25-cv-03698-SI <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SUPPLEMENTAL COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hearing Date: June 26, 2026[1] |

---

[1] Defendants provide this hearing date in compliance with Local Civ. R. 7-2(a). However, an in-person hearing on Plaintiffs' Motion for Preliminary Injunction is already set for June 23, 2026. ECF 386. Because the issues across these Motions overlap significantly, and for logistical efficiency, Defendants submit that the hearing on the Motion to Dismiss should be consolidated with the hearing on the Motion for Preliminary Injunction. If the Court determines that June 23 is too soon to hear the Motion to Dismiss, Defendants respectfully propose that the Court postpone

President of the United States, *et al.*,

      Defendants.

Time: 10:00 a.m.
Judge: Hon. Susan Illston
Place: San Francisco Courthouse
      Courtroom 1

the Preliminary Injunction hearing for three days (until June 26) or by however many days are necessary to allow the Court and the parties to appear and argue both Motions together.

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

I.    Executive Order 14356 and "Annual Staffing Plans"........................................... 2

II.   FEMA's Cadre of "On-Call" Response/Recovery (CORE) ................................. 3

III.  Procedural History of This Case ......................................................................... 5

     A.    The Original Litigation: RIFs Under EO 14210 ....................................... 5

     B.    The Supplemental Complaint: Annual Staffing Plans Under EO 14356, and FEMA COREs ............................................................................. 6

     C.    Plaintiffs' Motion for Preliminary Injunction Regarding COREs, and Expedited Discovery ....................................................................... 6

STANDARD OF REVIEW ................................................................................................. 8

ARGUMENT ...................................................................................................................... 9

I.    There Is No Subject-Matter Jurisdiction over Plaintiffs' Claims Regarding Annual Staffing Plans. Facially, Those Claims Fail. ........................................... 9

     A.    Plaintiffs Facially Lack Standing to Challenge EO 14356, the November 5 OMB/OPM Memorandum, or the Annual Staffing Plans. ................................... 9

     B.    Plaintiffs' Claims Regarding EO 14356, the November 5 OMB/OPM Memorandum, and the Annual Staffing Plans Are Also Facially Unripe. ........... 13

     C.    Plaintiffs Fail to Allege that the November 5 OMB/OPM Memorandum, or the Annual Staffing Plans Are "Final" "Agency Action." ............................... 15

II.   There Is No Subject-Matter Jurisdiction over Plaintiffs' Claims Regarding FEMA COREs. Facially and Factually, Those Claims Fail. ........................................... 17

     A.    Facially, the CSRA Precludes Judicial Review of Plaintiffs' Challenge to the Non-Renewal of CORE Appointments. ........................................... 18

     B.    Plaintiffs Lack Standing to Challenge CORE Non-reappointments. .................... 21

     C.    Facially and Factually, Jurisdiction Is Lacking over Plaintiffs' Claims Relating to COREs for the Additional Reason that There Is No Final Agency Action. ............................................................................. 24

CONCLUSION.................................................................................................................. 25

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Right to Life Pol. Action Comm. v. Feldman*,
  504 F.3d 840 (9th Cir. 2007) ............................................................................. 13

*Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*,
  716 F.3d 633 (D.C. Cir. 2013) ........................................................................... 18

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
  929 F.3d 748 (D.C. Cir. 2019) ........................................................................... 19

*Bennett v. Spear*,
  520 U.S. 154 (1997) ........................................................................................... 24

*Block v. Cmty. Nutrition Inst.*,
  467 U.S. 340 (1984) ........................................................................................... 19

*Carducci v. Regan*,
  714 F.2d 171 (D.C. Cir. 1983) ...................................................................... 20, 21

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ..................................................................................... *passim*

*Clark v. City of Seattle*,
  899 F.3d 802 (9th Cir. 2018) ............................................................................. 13

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) ............................................................................................... 18

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ..................................................................................... *passim*

*Flaxman v. Ferguson*,
  151 F.4th 1178 (9th Cir. 2025) ............................................................... 13, 14, 15

*Graham v. Ashcroft*,
  358 F.3d 931 (D.C. Cir. 2004) ........................................................................... 20

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ........................................................................................... 21

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ...................................................................................... 21, 23

*Jones v. L.A. Central Plaza LLC*,
   74 F.4th 1053 (9th Cir. 2023) ........................................................................................ 8, 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ............................................................................................................ 8

*Lake v. Fontes*,
   83 F.4th 1199 (9th Cir. 2023) ......................................................................................... 10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .......................................................................................................... 22

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .......................................................................................................... 16

*Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*,
   737 F.3d 273 (4th Cir. 2013) .......................................................................................... 18

*Nuclear Regul. Comm'n v. Texas*,
   605 U.S. 665 (2025) .......................................................................................................... 16

*OPM v. Am. Fed'n of Gov't Emps.*,
   145 S. Ct. 1914 (2025) (mem.) .................................................................................. 21, 23

*Raines v. Byrd*,
   521 U.S. 811 (1997) .......................................................................................................... 10

*Rattlesnake Coal. v. EPA*,
   509 F.3d 1095 (9th Cir. 2007) ........................................................................................ 15

*Saliba v. SEC*,
   47 F.4th 961 (9th Cir. 2022) ........................................................................................... 17

*Spagnola v. Mathis*,
   859 F.2d 223 (D.C. Cir. 1988) ........................................................................................ 20

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .................................................................................................... 10, 13

*Stockton v. Brown*,
   152 F.4th 1124 (9th Cir. 2025) ............................................................................ 13, 14, 15

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
   600 U.S. 181 (2023) .......................................................................................................... 21

*Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*,
  594 F.2d 730 (9th Cir. 1979) ........................................................................................ 9

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)....................................................................................................... 9

*Trump v. Am. Fed'n of Gov't Emps.*,
  606 U.S. ----, 145 S. Ct. 2635 (2025) (mem.).............................................................. 12

*U.S. Army Corps. of Eng'rs v. Hawkes Co.*,
  578 U.S. 590 (2016)...................................................................................................... 17

*United States v. Fausto*,
  484 U.S. 439 (1988)........................................................................................... 18, 19, 20

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
  5 F.4th 997 (9th Cir. 2021) ..................................................................................... 16, 17

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990)...................................................................................................... 22

*Wild Equity Inst. v. City & Cnty. of S.F.*,
  2012 WL 6082665 (N.D. Cal. Dec. 6, 2012) ................................................................. 8

**Statutes and Rules**

5 U.S.C. § 551................................................................................................................ 16

5 U.S.C. § 704.......................................................................................................... 15, 24

5 U.S.C. § 2302............................................................................................................. 18

5 U.S.C. §§ 7501–7504, 7511–7515, 7703 ....................................................... 18, 19, 20

Post-Katrina Emergency Management Reform Act of 2006,
  6 U.S.C. §§ 311, *et seq.*................................................................................................. 3

The Robert T. Stafford Disaster Relief and Emergency Assistance Act,
  42 U.S.C. §§ 5121, *et seq.*,......................................................................................... 4, 19

Fed. R. Civ. P. 12 ..................................................................................................... 1, 8, 12

**Other Authorities**

Exec. Order No. 14356, *Ensuring Continued Accountability in Federal Hiring*,
  90 Fed. Reg. 48387 (Oct. 15, 2025)..................................................................... *passim*

Exec. Order No. 14210, *Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative*,
90 Fed. Reg. 9669 (Feb. 11, 2025) ...................................................................................... *passim*

*Hiring Freeze*,
90 Fed. Reg. 8247 (Jan. 28, 2025) .......................................................................................... 4

Exec. Order No. 12127, *Federal Emergency Management Agency*,
44 Fed. Reg. 19,367 (Apr. 3, 1979). ...................................................................................... 4

<b><u>NOTICE OF MOTION</u></b>

PLEASE TAKE NOTICE that on June 26, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Susan Illston, in Courtroom 1 of the Phillip Burton Federal Building and United States Courthouse located at 450 Golden Gate Avenue, Seventeenth Floor, San Francisco, California 94102, Defendants will move the Court to dismiss the Supplemental Complaint in this action (ECF 298).

<b><u>MOTION TO DISMISS</u></b>

Defendants hereby move to dismiss the Supplemental Complaint in this action, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(h)(3), and 12(b)(6), for the reasons more fully set forth in the following Memorandum of Points and Authorities.

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

<b><u>INTRODUCTION</u></b>

Plaintiffs' Supplemental Complaint shows how the parties' ongoing dispute has morphed into a litigation safari with Plaintiffs roving the Executive Branch to explore various employment issues, none of which satisfy Article III or are otherwise amenable to resolution by this Court. Some of those issues—such as their challenge to Executive Order 14356, the implementing memorandum drafted by the Offices of Management and Budget ("OMB") and Personnel Management ("OPM"), and the "Annual Staffing Plans" contemplated by the EO and memorandum to guide future federal hiring—are unrelated to Plaintiffs' prior claims regarding alleged government-wide Reductions in Force, other than the fact that they both involve federal employees. Others—such as Plaintiffs' challenge to an alleged Department of Homeland Security ("DHS") "directive" to the Federal Emergency Management Agency ("FEMA") to eliminate FEMA CORE employees—have involved extensive discovery that *refutes* Plaintiffs' unfounded theories. All of Plaintiffs' claims fail for lack of subject-matter jurisdiction.

Plaintiffs' Annual Staffing Plan claims fail on at least three independent grounds. First, Plaintiffs lack standing. EO 14356 and its implementing memorandum say nothing about terminating existing federal employees—they govern only how agencies fill vacancies. Plaintiffs do not—and cannot—allege that any of these documents threatens injury to them or their alleged

members. Second, Plaintiffs' claims are unripe. Annual Staffing Plans are forward-looking, iterative planning documents, subject to amendment and revision; they direct agencies to deliberate about *future hiring*. No justiciable dispute has crystallized from that process, if it ever could. Third, none of the documents are "final agency action" under the Administrative Procedure Act ("APA"). They consummate nothing and impose no obligations or legal consequences on Plaintiffs. The APA does not authorize courts to police the internal workforce planning deliberations of the Executive Branch, and this Court should decline Plaintiffs' invitation to do so here.

As to the second category of challenged conduct, Plaintiffs' FEMA CORE claims fail for three independent, dispositive reasons. First, the Civil Service Reform Act ("CSRA") precludes district-court jurisdiction. Congress constructed a comprehensive, reticulated scheme for resolving federal employment disputes, and that scheme channels any challenge to CORE non-renewals through administrative processes that Plaintiffs as unions, advocacy organizations, and local governments cannot bypass. Second, Plaintiffs never had standing to challenge CORE non-renewals. No individual CORE employee is a named plaintiff. Plaintiffs' declarants are not parties and do not claim to be dues-paying union members. Third, Plaintiffs' APA claims require a "final agency action," but the theory underlying those claims—that DHS issued a directive constituting such action—has been factually disproved.

For these reasons, the Court should dismiss the Supplemental Complaint in its entirety.

## BACKGROUND

### Executive Order 14356 and "Annual Staffing Plans"

On October 15, 2025, the President issued Executive Order 14356 to "ensure that the federal government is optimally staffed to meet critical mission needs." *Ensuring Continued Accountability in Federal Hiring*, 90 Fed. Reg. 48387 (Oct. 15, 2025) ("*Federal Hiring*" or "*EO 14356*"). The Order sets forth policies and procedures that govern "Federal *hiring* . . . going forward, *id*. (emphasis added), and it directs each agency to prepare an "Annual Staffing Plan"— a forward-looking workforce planning document predicting hiring needs for the coming year. *Id*. Agencies are to do so in coordination with OMB and OPM, to "ensure that new career

appointments in the upcoming fiscal year are in the highest-need areas and aligned with the priorities of [the President's] Administration." *Id*.

On November 5, 2025, OMB and OPM issued a memorandum implementing EO 14356 ("November 5 OMB/OPM Memorandum" or "Nov. 5 Mem."), instructing agencies that: (i) "[f]ederal hiring must comply with the Merit Hiring Plan"; (ii) "agency leadership must approve the opening of a new role"; (iii) "[a]gency leadership should also function as a hiring committee in the candidate selection process"; and (iv) agency heads must "establish a Strategic Hiring Committee" to "approve the creation or filling, as applicable, of each vacancy within the agency." Nov. 5 Mem. 1–2 (quotation cleaned).[2] The Memorandum also directs that Hiring Committees should "use . . . independent judgment" rather than "ministerially ratify[ing] or routinely defer[ring] to the recommendations of others in reviewing and approving new hires." *Id*. at 2. It directs agencies to "develop and submit" Annual Staffing Plans, to "ensure that new career appointments in the upcoming fiscal year are in the highest-need areas." *Id.* Together, EO 14356 and the November 5 OMB/OPM Memorandum address agency prioritization in making new hires, to "ensure that hiring is focused on critical mission areas, implementing the President's specific policy priorities, and enhancing service delivery." *Id*. at 2. They say nothing about terminating existing federal employees. They also both direct that EO 14356 "shall be interpreted and implemented consistent with all applicable laws and subject to the availability of appropriations." *E.g.*, *id.* at 1 n.2.

## II.    FEMA's Cadre of "On-Call" Response/Recovery (CORE)

In response to Hurricane Katrina in August 2005, Congress passed the Post-Katrina Emergency Management Reform Act of 2006 ("PKEMRA"), 6 U.S.C. §§ 311, *et seq.*, establishing FEMA as a component within DHS; defining its mission; and designating its Administrator as the principal advisor to the President, the Homeland Security Council, and the Secretary of Homeland Security for "all matters relating to emergency management in the United States." *Id.* § 313. The Administrator reports directly to the Secretary of Homeland Security. *Id.* § 313(c)(3).

---

[2] *Available here*: guidance-on-executive-order-14356-ensuring-continued-accountability-in-federal-hiring.pdf.

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

3

FEMA's workforce, covering ten geographic regions, comprises two categories: Title 5 employees and Stafford Act[3] employees. *See* ECF 312-2 (Ch. 10 of Disaster Operations Legal Reference, 4th ed. (Sep. 2020) ("DOLR 4.0")), § II.A.1; 6 U.S.C. § 317(a). Stafford Act Employees are subdivided into COREs, Reservists, and Local Hires. DOLR 4.0 § II.A.1; *see* 42 U.S.C. § 5149(b). FEMA's hiring authorities allow it "to scale its workforce as necessary and . . . staff multiple operations with minimal notice." DOLR 4.0 § I. Relevant here, COREs work full-time, on temporary appointments, to support response and recovery efforts for open disasters. *See* ECF 312-1 (Decl. of Karen Evans) ¶ 12 ("Evans Decl."). COREs generally serve fixed two-year terms ending on the Not to Exceed ("NTE") Date of their appointments, unless extended or renewed based on evolving operational needs and workload. *Id.* ¶ 13; *see also* ECF 383-1 (Decl. of Jeff Neurauter) ¶ 3 ("Neurauter Decl."). Non-renewals of COREs are commonplace; for instance, in 2025, 349 COREs were released at the end of their terms. Evans Decl. ¶ 24.

On January 20, 2025, the President announced a government-wide hiring freeze. *Hiring Freeze*, 90 Fed. Reg. 8247 (Jan. 28, 2025). That same day, OMB and OPM issued implementing guidance extending the freeze across executive agencies. Evans Decl. ¶ 29. DHS, in turn, established procedures for reviewing hiring decisions. *Id.* ¶ 30. On March 18, FEMA received DHS's permission to approve appointment extensions for COREs in mission-critical positions, for up to two years. *Id.* CORE appointments in non-mission critical positions could receive 30-day incremental appointments while awaiting DHS approval. *Id.* On May 19, because of the upcoming hurricane season, DHS reauthorized FEMA to re-appoint non-mission critical COREs, this time for 180 days. *Id.* ¶ 31; *see* **Ex. 2** to Bombard Decl., attached hereto (May 14, 2025, Memo.). That reauthorization existed until it expired, by its terms, on December 31. Evans Decl. ¶ 31; May 14, 2025, Memo. In December, FEMA's Senior Officer Performing the Duties of Administrator ("SOPDA") at the time, Karen Evans ("Evans"), decided not to seek DHS's approval to extend this delegated authority further. *See* Evans Dep. Tr. (**Ex. 3** to Bombard Decl.), at 273:17–274:4,

---

[3] The Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. §§ 5121, *et seq.*, establishes the current statutory framework for disaster response and recovery through presidential disaster declarations. *History of FEMA*, FEMA (Jan. 4, 2021), https://www.fema.gov/about/history; 44 Fed. Reg. 19,367 (Apr. 3, 1979).

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

274:25–275:9. Upon the expiration of FEMA's delegated authority under the May 14, 2025, Memorandum, future new CORE appointments and reappointments would require DHS headquarters' approval. *Id.* at 266:9–24, 267:8–25, 277:11–20; *see* **Ex. 1** to Bombard Decl. (Mar. 14, 2025, Memo.).

Between January 1 and 21, 2026, the terms of appointment for 178 COREs were due to expire. Neurauter Decl. ¶ 4. In mid-to-late December, Evans was working to ensure that FEMA had a process in place by which program heads and regional administrators could compile information regarding which COREs (by function) they wanted to recommend for reappointment. *E.g.*, Evans Dep. Tr. at 346:20–347:24, 355:6–25. That process was not yet in place by the end of December, and FEMA's delegated authority was ending as of December 31, so Evans decided not to seek DHS's approval to re-appoint COREs whose terms were ending between January 1 and January 21, 2026. *See id.* at 349:7–353:7, 356:1–15, 374:1–17. She explained: "I made the decision not to renew these appointments." *Id.* at 351:13–352:25; *accord, e.g.*, *id.* at 363:19–364:8, 365:2–11, 366:4–5.[4] The terms of employment for 148 COREs were allowed to expire in January (30 of those 178 resigned or retired before their terms expired). Neurauter Decl. ¶ 4.

As of May 6, 2026, FEMA decided to offer the 148 COREs new appointments with six-month or one-year terms, based on the needs of the program or regional offices they supported. *See id.* ¶¶ 6–8. As of May 6, 94 COREs had accepted their offers, 14 COREs had declined their offers, and 40 COREs had not yet responded. *Id.* ¶ 10.

**III.    Procedural History of This Case**

    **A.    The Original Litigation: RIFs Under EO 14210**

On April 28, 2025, Plaintiffs filed suit challenging Reductions in Force ("RIFs") putatively conducted under Executive Order No. 14210 ("Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative"). 90 Fed. Reg. 9669 (Feb. 11, 2025); *see generally* ECF 1 (Compl.); *see also* ECF 100 (Am. Compl.), ECF 270 (Second Am. Compl.). Plaintiffs alleged that the Order was *ultra vires* and usurped congressional authority, and that

---

[4] Once a policy for recommendations was in place, Evans further decided that any extension of COREs would be limited to 90 days. *Id.* at 356:16–357:20, 359:22–360:2.

OPM, OMB, and more than twenty federal agencies unlawfully implemented it in planning and carrying out RIFs. *See generally* ECF 1. The parties are in discovery regarding the agencies' alleged implementation of EO 14210. *See, e.g.*, ECF 285.

B.   The Supplemental Complaint: Annual Staffing Plans Under EO 14356, and FEMA COREs

On January 30, 2026, Plaintiffs filed a "Supplemental Complaint" to challenge an entirely "new round of directives"—Executive Order 14356, 90 Fed. Reg. 48,387, issued on October 15, 2025—that directed agencies to create "Annual Staffing Plans." *See, e.g.*, ECF 298 (Suppl. Compl.) ¶¶ 436, 441–55 ("Supplemental Factual Allegations," § I). Plaintiffs also added FEMA as a Defendant (*id*. ¶¶ 439, 440) and challenge an alleged "downsizing directive" to FEMA. *Id.* ¶¶ 456–568 ("Supplemental Factual Allegations," § II). Based largely on media reporting, Plaintiffs allege that DHS unlawfully usurped FEMA's authority by ordering FEMA not to reappoint certain COREs at the expiration of their terms. *E.g.*, *id*. ¶¶ 484, 492. As to the EO challenge, Plaintiffs supplement their existing claims in the Second Amended Complaint. *Id.* ¶¶ 569–74. For the CORE non-renewals, they assert six new claims, alleging that DHS and FEMA's actions: (1) are not in accordance with law and exceed statutory authority under the APA (Claims 8 and 11); (2) are *ultra vires*, unlawful and unconstitutional (Claims 9 and 12); and (3) are arbitrary and capricious under the APA (Claims 10 and 13). *Id*. ¶¶ 575–604.

C.   Plaintiffs' Motion for Preliminary Injunction Regarding COREs, and Expedited Discovery

On February 10, 2026, Plaintiffs moved for a temporary restraining order concerning DHS's alleged decision not to renew certain CORE appointments that expired by their own terms between January 1 and January 21, 2026. ECF 301; *see* ECF 301-1 (Memo. ISO TRO) at 12–19 (internal pagination), § II: "The Unlawful Directive to Reduce FEMA's Workforce"); *e.g.*, *id.* at 16 ("At DHS's direction, FEMA began implementing Secretary Noem's blanket disapproval of CORE renewals on December 31, 2025[.]"). The Court converted the motion to a preliminary injunction and directed Plaintiffs to clarify the relief sought against DHS. ECF 304. Plaintiffs clarified that they were seeking to enjoin: (1) "DHS's removal of FEMA decision-making

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

authority over CORE positions"; (2) "DHS's imposition of a workforce reduction plan to eliminate half of FEMA staff, including 41 percent of CORE positions;" and (3) "DHS's order to eliminate CORE positions on their Not to Exceed ("NTE") dates beginning on January 1, 2026 regardless of agency need or employee performance." ECF 307. Plaintiffs also sought to bar FEMA from "taking any action to implement, carry out, or effective DHS['s] directives," and specifically "[f]rom taking any action to separate CORE employees from federal employment by disapproving term renewals." ECF 301-2. Plaintiffs also asked the Court to require FEMA to "rescind all notices of non-renewal separating CORE employees from FEMA employment since January 1, 2026." *Id.*

Defendants opposed Plaintiffs' motion on two principal grounds: first, that the Civil Service Reform Act's (CSRA) comprehensive scheme for resolving federal employment disputes forecloses district court jurisdiction, precluding a clear likelihood of success on the merits; and second, that none of the Plaintiffs—a collection of unions, advocacy organizations, and local governments—had suffered a concrete, particularized injury sufficient to establish Article III standing. Defendants' opposition, prepared over nine days, attached a Declaration from Evans. ECF 312-1. As to the non-renewal of certain COREs in January 2026, Evans stated that "[p]ursuant to its lawful authority, DHS decided not to reappoint [them]." *Id.* ¶ 25.

The Court held a hearing on Plaintiffs' motion for preliminary injunction on March 3, 2026. The Court opened the hearing by stating its initial inclination to deny Plaintiffs' motion because, *inter alia*, "the evidentiary record is not sufficiently developed on the key questions of whether DHS ordered or directed that FEMA make staffing cuts and cut staffing to a certain level." ECF 345-1 (Mar. 3, 2026, Hr'g Tr.) at 4:7–11. But Plaintiffs continued to insist that the facts were otherwise, arguing that "DHS made the decisions not to do the renewals," and "they removed authority from FEMA to make those decisions," so "if someone was not renewed, it was DHS['s] decision, not FEMA's." *Id.* at 20:21–25; *see also*, *e.g.*, *id.* at 21:13–19 (describing this purported fact as "the key to [Plaintiffs'] status quo argument" and "part of the merits" because "DHS does not have the authority to remove this authority from FEMA"); *id.* at 21:22–24 ("[T]he status quo with these individuals is FEMA approved the renewal. DHS made an unlawful decision and took an unlawful action when they decided not to reappoint them."); *id.* at 22:8–14 ("That's the

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

unlawful act that is the direct cause of those individuals being separated from federal service and not being renewed, because the renewal was approved. The status quo, the status quo prior to the unlawful act, is renewal. FEMA's already made the decision for these, Your Honor. So that is the key to [Plaintiffs'] argument.").

Defense counsel, in turn, represented that since January 1, 2026, any non-renewals were decisions made at the FEMA level and were not directed by DHS. ECF 321. The Court identified this as the central factual dispute: whether DHS ordered or directed FEMA to make staffing cuts, and if so, to what level. *Id.* That same day, the Court ordered expedited discovery, which the parties have been engaged in for the past two-and-a-half months, and which has included production of documents from nearly 1,300 custodians; depositions of Evans, FEMA's CHCO, and DHS's CHCO; depositions of non-parties Joe Guy and Kara Voorhies; and manual collection of Signal communications on current and former employees' personal cell phones. *See generally* ECF 321–400. Following this exhaustive discovery, no evidence was adduced that DHS usurped FEMA's authority to decide not to renew COREs or that DHS ever "overturned" a FEMA decision to renew a CORE. A supplemental hearing on the Motion for Preliminary Injunction is currently scheduled for June 23, 2026. ECF 386.

**STANDARD OF REVIEW**

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1), as well as Rule 12(h)(3). Rule 12(b)(1) "allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint." *Wild Equity Inst. v. City & Cnty. of S.F.*, 2012 WL 6082665, at *2 (N.D. Cal. Dec. 6, 2012) (Illston, J.) (citing Fed. R. Civ. P. 12(b)(1)). Under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." "As the party invoking the jurisdiction of the federal court, the plaintiffs bear the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested." *Wild Equity*, 2012 WL 6082665, at *2 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The Ninth Circuit has "distinguished between 'facial' and 'factual' challenges to jurisdictional allegations in a complaint." *Jones v. L.A. Central Plaza LLC*, 74 F.4th 1053, 1056 n.1 (9th Cir. 2023) (citation omitted). Factually, "no presumptive truthfulness

attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citation omitted). "In a facial challenge, by contrast, the moving party accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Jones*, 74 F.4th at 1056 n.1 (internal quotation marks omitted). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)." *Id.* (internal quotation marks omitted).

## ARGUMENT

The Supplemental Complaint challenges two categories of conduct. The first challenges the legality of Annual Staffing Plans prepared by agencies under EO 14356 and the November 5 OMB/OPM Memorandum. *See* Suppl. Compl. ¶¶ 569–74. The second relates to CORE staffing. *See id.* ¶¶ 575–604. The Supplemental Complaint should be dismissed because the Court lacks subject-matter jurisdiction over Plaintiffs' claims, as detailed below.

I.  **There Is No Subject-Matter Jurisdiction over Plaintiffs' Claims Regarding Annual Staffing Plans. <u>Facially</u>, Those Claims Fail.**

For at least three reasons, this Court facially lacks jurisdiction as to Plaintiffs' challenges to EO 14356, the November 5 OMB/OPM Memorandum, or the Annual Staffing Plans. First, Plaintiffs lack standing, because they allege no particularized or concrete injury. Second, any challenge is constitutionally and prudentially unripe. Third, none of those documents represents "agency action" reviewable under the APA—let alone "final" agency action.[5]

<u>Plaintiffs Facially Lack Standing to Challenge EO 14356, the November 5 OMB/OPM Memorandum, or the Annual Staffing Plans</u>.

Federal courts do not sit to adjudicate the public's views about how the government should be run, nor to "exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Instead, under Article III, they redress cognizable injuries to specific protected interests, thus requiring an injury that is both "legally and

---

[5] Any challenge to contemplated employee removals would fall outside of the Court's jurisdiction under the CSRA. *See infra* Argument § II.A.

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

judicially cognizable." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). To show standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024); *Lake v. Fontes*, 83 F.4th 1199, 1202–03 (9th Cir. 2023). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). And "[w]here, as here, a case is at the pleading stage, the plaintiff must" do so by "clearly alleg[ing] facts demonstrating each element." *Id.* (quotation cleaned).

The standing inquiry is "especially rigorous when," as here, "reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation omitted). Plaintiffs must thus allege a "concrete and particularized" and "actual or imminent, not conjectural or hypothetical[]" injury that "affect[s] the plaintiff in a personal and individual way" and "actually exist[s]." *Spokeo*, 578 U.S. at 339–40. "[A]n abstract, theoretical concern will not do." *Lake*, 83 F.4th at 1203 (citation omitted). An injury that has not yet occurred must be sufficiently "imminent" "to ensure that [it] is not too speculative for Article III purposes"—meaning it "must be *certainly impending*." *Clapper*, 568 U.S. at 409. "Allegations of a *possible* future injury are not sufficient." *Id.* (quotation cleaned).

The Supplemental Complaint fails this standard. Plaintiffs do not simply fail to "clearly" allege facts showing injury from the documents; they allege no injury at all. *Spokeo*, 578 U.S. at 338. Instead of carrying their burden, Plaintiffs' allegations simply describe, in background form, the EO and Memorandum. *See* Suppl. Compl. ¶¶ 435–36, 441–47.[6] The Supplemental Complaint's claims should be dismissed for this reason alone.

---

[6] As if *choosing* to list only one of many known effects, Plaintiffs provide an "example" of potential injury stemming from a RIF planned at the Department of the Interior, but even they admit it was planned "pursuant to EO 14210," *see id.* ¶ 452, which is challenged only in the underlying, but not Supplemental, complaint. In fact, the only part of the Supplemental Complaint that tries to meet its burden to allege cognizable injuries is a short sub-section entitled "Cuts Will Cause Substantial Harm to Plaintiffs and the Public"—a series of allegations dedicated exclusively to the claims that DHS unlawfully usurped FEMA's authority over CORE nonrenewals. *See id.* ¶¶ 560–68. Those claims fail for several independent reasons, discussed *infra* Argument § II.

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

But amending their Supplemental Complaint would not aid Plaintiffs even if, having failed to plead Article III standing the first time, they wanted to try again: Plaintiffs could not allege any injury from the challenged documents. *First*, EO 14356 is a forward-looking set of three "policies and procedures" regarding "Federal *hiring*" going forward, aimed at the conditions under which a vacant position "may be filled" or a new position "may be created." *Federal Hiring*, 90 Fed. Reg. at 48387 (emphasis added). Nothing about such guidelines can be understood to injure *current* federal employees, unions that claim to represent them, or non-union plaintiffs asserting RIF-related injuries in the underlying complaint. Instead, the EO provides that future hiring "shall be consistent with the Merit Hiring Plan issued by" OPM. *Id. Second*, the EO requires each agency head to "establish a Strategic Hiring Committee to approve the creation or filling . . . of each vacancy within their agency." *Id.* And *third*, the EO requires each agency to "prepare an Annual Staffing Plan, in coordination with OPM and [OMB], to ensure that new career *appointments* in the upcoming fiscal year are in the highest-need areas and aligned with the priorities of [the] Administration." *Id.* Again, none of this could conceivably injure Plaintiffs or their members.

To be sure, Plaintiffs do train their focus—again, without alleging any related injury—on the EO's requirement that agencies, when crafting hiring plans, "seek to improve operational efficiency; eliminate duplicative or unnecessary functions and positions; reduce unnecessary or low-value contractor positions; promote employee accountability; enhance delivery of essential services; appropriately prioritize hiring for national security, homeland security, and public safety positions; and implement initiatives described in the Merit Hiring Plan." *Id.* at 48387–88; *see* Suppl. Compl. ¶ 442. This, they insist, reflects an "order to eliminate functions and positions the President and his Administration view as unnecessary." Suppl. Compl. ¶ 444. But EO 14356 contemplates Annual Staffing Plans as periodic projections for "new career appointments" at each agency. 90 Fed. Reg. at 48387. Agencies should consider whether a vacant position should be prioritized for filling, or ought not be filled, because it is "unnecessary" to the agency's mission or needlessly "duplicative" of some other role. *Id.* Agency deliberation on the filling of vacancies could not inflict upon Plaintiffs a current or imminent injury.

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

Nor can Plaintiffs allege injury from the November 5 OMB/OPM Memorandum or the Annual Staffing Plans. The Memorandum provides "Guidance on Executive Order 14356" by counseling agencies, consistent with the EO, that "Federal hiring must comply with the Merit Hiring Plan"; that "agency leadership must approve the opening of a new role" that "should also function as a hiring committee in the candidate selection process"; and that agency heads must "establish a Strategic Hiring Committee" to "approve the creation or filling, as applicable, of each vacancy within the agency." Nov. 5 Mem. 1–2 (quotation cleaned). It also expressly notes that the Committees should "use . . . independent judgment" rather than "ministerially ratify or routinely defer to the recommendations of others in reviewing and approving new hires." *Id.* at 2. Finally, it explains that, under the EO, each agency must "develop and submit an Annual Staffing Plan … to ensure that new career appointments in the upcoming fiscal year are in the highest-need areas." *Id.* Agencies' hiring prioritization similarly does not concretely injure Plaintiffs or their members. And Plaintiffs' citation to Memorandum language echoing the EO directive to identify "duplicative or unnecessary functions and positions," *see* Suppl. Compl. ¶ 446, cannot support a cognizable injury from the Memorandum for the same reasons detailed above as to the EO.[7]

At bottom, Plaintiffs suggest that, having convinced the Court that they adequately pled claims in the underlying complaint against EO 14210, the related OMB/OPM memorandum ("First OMB/OPM Memorandum"), and Agency RIF and Re-organization Plans ("ARRPs"), the Court

---

[7] Plaintiffs also fail to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiffs' sole allegation is that the EO and Memorandum require agencies to "create [annual staffing] plans according to the President's determination of necessity rather than consistent with congressional requirements, mandates, and authorizations." Suppl. Compl. ¶¶ 569–74. But the documents say no such thing. Instead, the EO and Memorandum emphasize: "This order shall be implemented consistent with applicable law and subject to the availability of appropriations." *Federal Hiring*, 90 Fed. Reg. at 48388; Nov. 5 Memo. 1 n.2. The EO further states: "agencies may update their plans during the course of the year based on enactment of relevant appropriations or authorizing legislation," and "[n]othing in this order shall be construed to impair or otherwise affect" the "authority granted by law to an executive department or agency, or the head thereof." 90 Fed. Reg. at 48388. Thus, any implementation of EO 14356 that would conflict with "congressional requirements, mandates, and authorizations" would itself violate the EO and the November 5 Memorandum.

The Supreme Court considered similar arguments Plaintiffs raised as to EO 14210, and it rejected them. *Trump v. Am. Fed'n of Gov't Emps.*, 606 U.S. ----, 145 S. Ct. 2635 (2025) (mem.); *see also id.* (Sotomayor, J., concurring).

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

should just *assume* jurisdiction over challenges to a *new* executive order, memorandum, and agency planning initiative. Fundamental jurisdictional principles preclude that.[8] Plaintiffs' challenges to EO 14356, the November 5 OMB/OPM Memorandum, and the Annual Staffing Plans can survive this motion to dismiss only if the Supplemental Complaint "clearly allege[s] facts demonstrating," *Spokeo*, 578 U.S. at 338 (quotation cleaned) (citation omitted), that an injury is not only "*possible*" but "*certainly impending*," *Clapper*, 568 U.S. at 409. Plaintiffs fail to allege *any* injuries caused by EO 14356, the November 5 OMB/OPM Memorandum, and the Annual Staffing Plans, so their claims should be dismissed for lack of subject-matter jurisdiction.

<u>Plaintiffs' Claims Regarding EO 14356, the November 5 OMB/OPM</u>

<u>Memorandum, and the Annual Staffing Plans Are Also Facially Unripe</u>.

The Supplemental Complaint also flunks Article III's case-or-controversy requirement because any claim they might have is not yet ripe. Ripeness is "peculiarly a question of timing, designed to prevent the courts, though avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018) (quotation cleaned). The doctrine provides that "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Flaxman v. Ferguson*, 151 F.4th 1178, 1184 (9th Cir. 2025) (quotation cleaned). And much like standing, it "has both constitutional and prudential components." *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007).

Constitutional ripeness "equates with Article III's injury-in-fact requirement for standing," *Flaxman*, 151 F.4th at 1184–85: "[f]or a case to be ripe, it must present issues that are definite and concrete, not hypothetical or abstract," *Clark*, 899 F.3d at 809 (quotation cleaned). "But while standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addresses *when* that litigation may occur." *Stockton v. Brown*, 152 F.4th 1124, 1142 (9th Cir. 2025) (quotation cleaned). Because constitutional ripeness "is primarily temporal in scope," it "can be characterized as standing on a timeline." *Clark*, 899 F.3d at 809 (citation omitted). "Prudential

---

[8] In any event, Plaintiffs cannot extrapolate jurisdiction from alleged similarities between the executive orders. EO 14210 contemplates RIFs; EO 14356 contemplates agency prioritization efforts when making new hires. They are miles apart.

ripeness," by contrast, turns on: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Flaxman*, 151 F.4th at 1188 (quotation cleaned). Fitness "is met when the issues raised are primarily legal, do not require further factual development, and the challenged action is final[,]" *Stockton*, 152 F.4th at 1149 (quotation cleaned), which requires "consider[ing] whether the action has a direct and immediate effect on the complaining parties; whether [it] has the status of law; and whether [it] requires immediate compliance with its terms." *Id.* (quotation cleaned). Hardship "requires looking at whether the challenged [conduct] requires an immediate and significant change in the plaintiffs' conduct of their affairs." *Id.* (quotation cleaned).

On their face, Plaintiffs' claims against EO 14356, the November 5 OMB/OPM Memorandum, and the Annual Staffing Plans fail to clear either ripeness hurdle.

### 1.    Plaintiffs' claims are facially constitutionally unripe.

As a constitutional matter, the timing of those claims is improper for the same reasons Plaintiffs cannot show standing. *Supra* Argument § I.A. The EO directs agencies to comply with OPM's "Merit Hiring Plan" in *future* hiring; "establish a Strategic Hiring Committee to approve" *future* hiring efforts; and "prepare an Annual Staffing Plan . . . to ensure that new career appointments . . . are in the highest-need areas." *Federal Hiring*, 90 Fed. Reg. at 48387. The November 5 OMB/OPM Memorandum largely echoes those requirements. *See* Nov. 5 Mem. 1–2. If any of those requirements could cognizably injure Plaintiffs—or anyone else, for that matter— the Supplemental Complaint is silent as to how that injury could be ripe for redress *now*.

Nor does the language that Plaintiffs find most problematic, *see* Suppl. Compl. ¶¶ 442, 446, suggest any claim ripe for adjudication. The Annual Staffing Plans contemplated by the EO and Memorandum address "new career appointments," *Federal Hiring*, 90 Fed. Reg. at 48387, including whether to fill "duplicative or unnecessary functions and positions," Suppl. Compl. ¶ 442 (quoting *Federal Hiring*, 90 Fed. Reg. at 48387); *see also id.* ¶ 446 (same (quoting Nov. 5 Mem. 3)). They may be "amend[ed] . . . in coordination with OMB and OPM" at any time and are to be steadily implemented over the fiscal year they concern. Nov. 5 Mem. 3. And such implementation may involve "significant variances from the annual plan," in which case OMB

and OPM ask to be kept apprised of those variances. *Id.* Nothing about that suggests an existing injury for the Court to redress. Instead, Plaintiffs—who say *nothing* about injury from these documents—can only speculate that a hiring plan considering whether positions are needlessly duplicative *must* involve a removal affecting Plaintiffs or their members. Under such circumstances, Plaintiffs' fears "may not occur as anticipated, or indeed may not occur at all." *Flaxman*, 151 F.4th at 1184 (citation omitted). As things stand today, Plaintiffs' inability to identify any injury resulting from these documents reflects that their claims "are premature for review" and therefore not "appropriate for federal court action." *Stockton*, 152 F.4th at 1142 (citation omitted).

### 2.     *Plaintiffs' claims are facially prudentially unripe.*

Plaintiffs' claims are also prudentially unripe. As to fitness, the Supplemental Complaint does not suggest that EO 14356, the implementing Memorandum, or Annual Staffing Plans have "a direct and immediate effect" on Plaintiffs. *Id.* at 1149 (citation omitted). Nor does the Supplemental Complaint allege that they have "the status of law," or "require[] immediate compliance" in any way that would invade Plaintiffs' legally protected interests. *Id.* (citation omitted). The Annual Staffing Plans are to be incrementally implemented subject to "variances." Nov. 5 Mem. 3. The Ninth Circuit put it best: because the challenged documents are about "future [actions] that have not yet concluded—or even begun," "the fitness-of-the-issues prong weighs strongly against this case being considered prudentially ripe." *Stockton*, 152 F.4th at 1150. And the hardship prong cuts the same way: the Supplemental Complaint identifies no "immediate and significant change" imposed upon Plaintiffs by the challenged documents. *Id.* at 1149 (citation omitted). Prudential concerns thus counsel decisively against judicial involvement.

### C.     Plaintiffs Fail to Allege that the November 5 OMB/OPM Memorandum, or the Annual Staffing Plans Are "Final" "Agency Action."

Beyond standing and ripeness, the Court lacks jurisdiction over Plaintiffs' APA claims because the APA limits review to "final agency action." 5 U.S.C. § 704; *see, e.g.*, *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007) ("Absent final agency action, there was no jurisdiction in the district court."). And it further limits reviewable "agency action" to "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."

5 U.S.C. § 551(13). That requirement is jurisdictionally fatal in two ways: (i) the challenged documents do not constitute "agency action" within the meaning of the APA; and (ii) even if they did, they would not be "final" for purposes of judicial review.[9]

*First*, neither the November 5 OMB/OPM Memorandum nor the Annual Staffing Plans represent "agency action."[10] The latter are designed to be agency projections regarding "new career appointments in the upcoming fiscal year," Nov. 5 Mem. 2, which will "consider," among various factors, whether any agency positions need not be filled because of their "duplicative or unnecessary" nature, *id.* at 3. Nothing about such a document, or the Memorandum itself, would satisfy any category of conduct that is reviewable "agency action" under the APA. That is by congressional design: "[c]onsistent with the cases or controversies requirement [of the Federal Constitution], the APA does not give federal courts general supervisory authority over executive agencies." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1011 (9th Cir. 2021). Put differently, the APA prohibits Plaintiffs from bringing "systemic challenges[] seeking wholesale improvement by court decree" to agency efforts to take stock of their workforce needs. *Id.* (quotation cleaned). Instead, the APA permits review of *specific* agency action when it actually adversely affects a party. Of course, "[t]his 'case-by-case approach is understandably frustrating' to those seeking 'across-the-board' relief"—as Plaintiffs do here. *Id.* at 1011–12 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894 (1990)). Nevertheless, the APA cannot provide review "until the scope of the controversy has been reduced to more manageable proportions . . . by some concrete action applying the [challenged conduct] to [Plaintiffs'] situation in a fashion that harms" them. *Lujan*, 497 U.S. at 891. A challenge to government-wide efforts to project annual agency personnel needs hardly reflects "manageable proportions" or a "concrete action" inflicting harm. Plaintiffs' Supplemental Complaint alleges no harm at all from the challenged documents.

---

[9] Moreover, this Court should not allow Plaintiffs' request for "ultra vires review" to make "an easy end-run around the limitations of . . . judicial-review statutes," like the APA, simply because Plaintiffs filed their complaint too early to use the "statutory avenue" that Congress provided. *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681–82 (2025) (an ultra vires challenge is "essentially a Hail Mary pass" that "rarely succeeds").

[10] Plaintiffs assert no APA claims against EO 14356. *See* Suppl. Compl. ¶¶ 569–74.

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

*Second*, even if they were agency "actions," neither the November 5 OMB/OPM Memorandum nor the Annual Staffing Plans are "final" under the APA. Agency action is "final" only if it satisfies "two conditions": (i) it "must mark the consummation of the agency's decisionmaking process" rather than being "of a merely tentative or interlocutory nature"; and (ii) it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps. of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (citation omitted). The Annual Staffing Plans satisfy neither criterion. They are definitionally non-binding because they may be "amend[ed]" or "updated during the course of the year"; the Memorandum also anticipates "significant variances" from agencies' plans, in which case it asks that they explain their decision to vary from initial projections. Nov. 5 Mem. 3. Everything about that is tentative, only to be consummated later when the *projected* personnel action occurs. Likewise, Plaintiffs' APA claims flunk the second prong because they "do not claim the [challenged documents] impose[] any obligation upon them." *Whitewater*, 5 F.4th at 1009. Nor do they "point to [any] provision in the [challenged documents] for which [agency] noncompliance might result in a consequence" of any real effect at all. *Id.* Nor could they: the EO and Memorandum do not require agencies to take any action that could directly affect Plaintiffs, but to deliberate over hiring efforts. And the very point of the finality requirement is to "ensure[] that courts do not . . . meddle in [an] agency's ongoing deliberations." *Saliba v. SEC*, 47 F.4th 961, 968–69 (9th Cir. 2022) (citation omitted). On that standard, Plaintiffs simply fail to allege any agency action sufficiently "final" for their claims to proceed.

## II.    There Is No Subject-Matter Jurisdiction over Plaintiffs' Claims Regarding FEMA COREs. <u>Facially and Factually</u>, Those Claims Fail.

Plaintiffs' claims regarding the FEMA COREs also fail for lack of subject-matter jurisdiction, both facially (because their claims are precluded by the CSRA) and factually (because they lack standing and there is no final agency action under the APA).[11]

---

[11] Moreover, as Defendants will further explain in their forthcoming supplemental brief regarding the preliminary injunction due June 12, Plaintiffs' claims regarding COREs are moot: They have all been offered reappointment, and there is no legal entitlement to indefinite CORE renewals. Neurauter Decl. ¶¶ 6–8.

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

17

A.    Facially, the CSRA Precludes Judicial Review of Plaintiffs' Challenge to the Non-Renewal of CORE Appointments.

At one level, Plaintiffs' challenge regarding FEMA COREs is a textbook, broad-scale personnel matter: the Supplemental Complaint challenges when and how CORE employees can be removed; asks the Court to dictate the interplay between FEMA and its parent agency, DHS, in that process; and essentially demands that CORE employees must be retained beyond the expiration of their explicitly temporary term appointments, whether or not FEMA determines their continued service is necessary or would efficiently use government resources. At the same time, Plaintiffs themselves are strangers to the scheme Congress created to govern federal personnel matters, the CSRA, and cannot seek relief centering on the retention or reinstatement of federal employees. The CSRA thus precludes district court jurisdiction over Plaintiffs' new claims.

To begin, any term CORE employees who have not been reappointed—who are not parties to this action—would not be able to sue either FEMA or DHS in district court. Congress "established a comprehensive system for reviewing the personnel action[s] taken against federal employees," which provides the "exclusive means" for review. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5, 8 (2012) (citation omitted). Namely, the CSRA, Pub. L. No. 95-454, 92 Stat. 1111 (1978), sets out an "integrated scheme of administrative and judicial review" for challenges to personnel actions taken against members of the civil service, *United States v. Fausto*, 484 U.S. 439, 445 (1988). Through that comprehensive scheme, "Congress intentionally provided—and intentionally chose not to provide—particular for[a] and procedures for particular kinds of claims." *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) (citation modified); *see also Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*, 737 F.3d 273, 277 (4th Cir. 2013). Even if the claims asserted in Plaintiffs' Supplemental Complaint were brought by CORE employees themselves, they would fall outside of district court jurisdiction.

That is because CORE non-reappointments represent personnel actions under the CSRA over which judicial review, if any, is exclusively channeled through that scheme. *See* 5 U.S.C. § 2302(a)(2)(A) (identifying personnel actions that can provide the factual basis for alleged "prohibited personnel practices"). In the context of CORE appointments, reviewability is generally

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

18

limited, in accord with the Stafford Act's emphasis on affording FEMA staffing flexibility to help it meet its disaster-response duties. The Stafford Act allows FEMA to "appoint and fix the compensation of such temporary personnel as may be necessary, *without regard to the provisions of title 5* governing appointments in competitive service." 42 U.S.C. § 5149(b)(1) (emphasis added). Congress thereby gave FEMA the flexibility to hire temporary disaster personnel on an expedited basis, free from procedural requirements governing the permanent career civil service. Inherent in that flexibility is that COREs generally lack the protections that Title 5 affords to permanent employees, including adverse action protections of §§ 7511–7514 and corresponding Merit System Protection Board ("MSPB") appeal rights under 5 U.S.C. § 7513(d).

And even if CORE non-renewals could be analogized to removals from federal service, jurisdiction for such claims would be exclusively channeled through the CSRA. *See* 5 U.S.C. §§ 7501–7504, 7511–7515. In that scenario, employees must "litigat[e] their claims through the statutory scheme in the context of [a] concrete" dispute. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 757 (D.C. Cir. 2019); *see also* 5 U.S.C. §§ 7703(b)(1), 7105(a)(2), 7123(a). Most relevant here, the CSRA "governs adverse action taken against employees for the 'efficiency of the service,'" including removals from service. *Fausto*, 484 U.S. at 446–47; *see* 5 U.S.C. § 7512. Covered employees who have been removed may seek review of such adverse action before the MSPB, followed by review in the Federal Circuit. 5 U.S.C. §§ 7513(d), 7703.

Plaintiffs here—unions, advocacy groups, and city and county governments—are likewise precluded from challenging CORE non-reappointments. Where a comprehensive statutory scheme authorizes only certain plaintiffs' claims, it implicitly precludes review of all others. In *Block v. Community Nutrition Institute*, the Supreme Court considered a statute that permitted dairy *handlers* to obtain judicial review of certain "market orders" but did not expressly authorize review of *consumers'* (or anyone else's) claims. *See* 467 U.S. 340, 346–47 (1984). When a group of dairy consumers sought review, the Court held that the statute's omission of a "provision for participation by consumers in any proceeding" was "sufficient reason to believe that Congress intended to foreclose consumer participation in the regulatory process." *Id.* at 347. Any other holding would facilitate circumvention of the comprehensive statutory scheme. *Id.* at 348.

This principle applies with full force to the CSRA, as the Supreme Court has recognized. In *Fausto*, a suspended federal employee sought relief under the Back Pay Act in the Court of Federal Claims, arguing that because Congress had not (at that time) provided MSPB appeal rights to non-preference-eligible, excepted-service employees such as him, he was free to pursue relief through other judicial channels. 484 U.S. at 443. The Court rejected that argument. Examining the CSRA's "comprehensive nature," "structure," and "the fact that it [did] not include [nonpreference excepted service employees] in provisions for administrative and judicial review," it held that the absence of review rights was not an oversight, but a deliberate legislative choice. *Id*. at 448; *see also id*. (under *Block*, employees who lack CSRA appeal rights "should not be able to demand judicial review for the type of personnel action covered by that chapter").

At bottom, the lack of judicial review of agency decisions not to re-appoint COREs makes sense, no matter who the party seeking to invoke district court jurisdiction is. Allowing non-Title 5 temporary employees with term-limited appointments to obtain judicial review of non-adverse actions like non-renewals—without any of the CSRA's restrictions applicable to claims of *actual* termination—would turn the CSRA's comprehensive structure "upside down." *Id.* at 449. In other words, the exclusion of temporary Stafford Act employees from the CSRA's review scheme reflects Congress's considered judgment about which employees can challenge personnel decisions and does not suffice as *carte blanche* to circumvent the CSRA entirely. *See Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004) (Roberts, J.) ("the comprehensiveness of the statutory scheme involved, not the 'adequacy' of the specific remedies," precludes jurisdiction (quoting *Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir. 1988))).[12]

---

[12] In *Graham*, an FBI Special Agent sued in district court alleging that the FBI's censure of him for alleged irregularities in a surveillance operation violated the APA. 358 F.3d at 932. Then-Judge Roberts focused on the *Fausto* opinion, specifically footnote 3, in which Justice Scalia, quoting his own D.C. Circuit opinion in *Carducci v. Regan*, held that the APA did not provide judicial review for employment claims where the CSRA offered no relief to anyone because the alleged adverse actions were too minor. 714 F.2d 171, 174–75 (D.C. Cir. 1983). Then-Judge Roberts reasoned that permitting review in such cases "presented 'an even more aggravated form of the problem'" than allowing employees—whose claims the CSRA addressed but without judicial review—to obtain direct judicial review, when the CSRA did not even make such review available for the most serious claims. *Graham*, 358 F.3d at 935 (quoting *Carducci*, 714 F.2d at

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

B.    Plaintiffs Lack Standing to Challenge CORE Non-reappointments.

Plaintiffs' challenges to CORE non-reappointments should be dismissed for a separate reason: they never had standing to bring them. Plaintiffs are unions, membership-based non-profit organizations, and local governments, not individual employees. With their preliminary-injunction motion, Plaintiffs submitted declarations from a handful of *non*-party COREs who were not renewed or had upcoming NTE dates. *See* ECF 303-4 ¶ 2, 303-6 ¶¶ 10, 12; 303-7 ¶¶ 2, 14; ECF 303-8 ¶ 2; ECF 303-9 ¶ 2; ECF 303-10 ¶ 2; 303-11 ¶ 2 (Declarants Blanton, Heath, Nelson, Newton, Prell, Shell, and Young stating that they were not renewed); ECF 303-5 ¶ 2 (Declarant Fleming describing an upcoming NTE date). But these individual declarants are not Plaintiffs. No declarant claims to be a current member of AFGE, or any Plaintiff, even by virtue of paying dues.[13]

An organization may establish standing by showing, *inter alia*, the standing of its members, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977), or by identifying "injuries [the organizations themselves] have sustained," and establishing "injury in fact, causation, and redressability" as to those injuries, *Alliance*, 602 U.S. at 393–94 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)); *see also Students for Fair Admissions*, *Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). As the Supreme Court recently held in *AFGE 1*, an entity alleging that they (or their members) use government services cannot premise Article III standing on the theory that termination of employees could cause reduction in those services. *OPM v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 1914 (2025) (mem.). Nor can they premise standing on a theory of resource diversion to counteract the effects of internal government planning documents; that theory is foreclosed by *Alliance*, 602 U.S. at 395. As discussed elsewhere, past or hypothetical future decisions not to re-appoint COREs do not establish Article III standing.

_____

174). Here, as in *Graham*, granting CORE employees a right to direct judicial review for non-renewals would give them "greater rights than the CSRA affords for major adverse actions." *Id*.

[13] The declarants are not formal members of Plaintiff unions; as Plaintiffs concede, COREs do not have collective bargaining representation. *See* Evans Decl. ¶ 20 & Ex. 4 (Aug. 8, 2025 Memo.); *accord* Jackson Decl. (ECF 303) ¶¶ 4–5. AFGE Local 4060, the sole union at FEMA, represents only sixty Title 5 employees. Evans Decl. ¶ 20.

Defendants do not concede that standing would exist if these individuals were dues-paying members, which, again, they do not claim to be.

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

     *1.     Plaintiffs cannot premise standing on ephemeral concerns over the general effectiveness of FEMA.*

As a threshold matter, Plaintiffs cannot establish standing based on their global concerns over FEMA's ability to carry out disaster response work, for at least two reasons. *E.g.*, ECF 303-1 (Coen Decl.) ¶ 8; ECF 303-2 (Tierney Decl.) ¶ 10; ECF 303-3 (Burton Decl.) ¶ 13. First, to show injury in fact, a plaintiff must show that the defendant's action affects him or her in a "personal and individual way," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992), rather than being a "generalized grievance," *Alliance*, 602 U.S. at 381. Plaintiffs' theory fails for this reason alone. Second, Plaintiffs' theory of harm is speculative. A plaintiff must show more than a "possible future injury"; they must show that harm actually occurred or is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citation omitted). "Allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). Plaintiffs' general fear that (i) an indeterminate number of COREs will not be re-appointed (ii) at some time in the indeterminate future, leading to (iii) unspecified impairment of FEMA's disaster response efforts, at (iv) unknown locations, in (v) unknown ways, is not concrete injury.

     *2.     Plaintiff Local Governments lack organizational standing.*

Plaintiffs include six local governments that have asserted they depend on various pre-disaster programs and services CORE employees provide. *E.g.*, ECF 303-12 (Santa Clara), 303-17 (King), 303-14 (Baltimore), 303-16 (Harris), 303-15 (Chicago), 303-18 (San Francisco). But the Local Governments speculate about whether, how, and when any CORE non-reappointments would injure *their* services in the event of a future disaster. *Clapper*, 568 U.S. at 409.

     *3.     Plaintiff Unions and Non-Profits lack associational standing.*

Membership-based Plaintiffs in this case include unions and membership-based non-profit organizations, such as the American Federation of Government Employees ("AFGE"); the American Federation of State, County and Municipal Employees ("AFSCME"); the Service Employees International Union ("SEIU"); and the Alliance for Retired Americans (hereafter, collectively, "the Associations"). They seemingly assert associational standing.

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

22

A plaintiff organization has associational standing when (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members. *Hunt*, 432 U.S. at 343. To have standing to sue in one's own right, a plaintiff must show: "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Alliance*, 602 U.S. at 380. Plaintiffs fail (at least) at the first and third prongs.

Plaintiff Associations have argued that the challenged conduct will "harm" them in two respects. *First*, Plaintiffs AFSCME and SEIU purport to represent employees in states' departments of emergency management, health, ecology, and natural resources, "whose jobs are funded by FEMA grants." ECF 301-1 at 24. "CORE employees play a key role in facilitating the grant programs that fund these positions." *Id.* (citing, *e.g.*, ECF 303-20 (Spiegel Decl.) ¶¶ 17–24). But there is no evidence to support the apparent chain of inferences that: (i) a critical mass of CORE employees who "facilitate" these specific state employees' specific grant programs will not be re-appointed, (ii) to such an extent that the grant programs will not be facilitated, so that (iii) funding for the state employees will lapse, and (iv) the state employees will be fired. This theory of downstream harm rests on a "highly attenuated" chain of inferences insufficient to establish an Article III injury that is certainly impending. *Clapper*, 568 U.S. at 410; *see also, e.g.*, *OPM v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 1914 (staying injunction).

*Second*, Plaintiff AFGE has asserted that it "represents and has as members federal employees who work for FEMA, including CORE and other FEMA employees who have been or will be separated from employment." ECF 301-1 at 25. But AFGE has identified only: (i) a subparagraph of the Jackson declaration, ECF 303 ¶ 46a, and (ii) the Heath declaration (ECF 303-6 ¶ 11). Neither supports Plaintiffs' assertion. Declarant Jackson, President of AFGE Local 4060, references "[o]ne [anonymous] bargaining unit member" who is afraid of being unable to cover future costs, but stops short of indicating whether this anonymous member was non-renewed, or when. *See also* ECF 314-3 (Schwarz Decl.) ¶¶ 4–5 (asserting based on declarant's review of a

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

"survey" and "other communications" that an unknown number of unnamed members of AFGE Local 4060 members include FEMA COREs who were not renewed). In any event, AFGE Local 4060 is not a named Plaintiff (and COREs are not represented by bargaining units anymore). These vague assertions do not provide a basis for standing. And Declarant Heath states that she "was" within the bargaining unit represented by AFGE, but it is no longer true. Evans Decl. ¶ 20 & Ex. 4. Declarant Heath does not state that she remains a voluntary dues-paying member.

Finally, Plaintiffs' claims are not redressable: As discussed above, the CSRA precludes this Court from granting judicial relief.

C.    Facially and Factually, Jurisdiction Is Lacking over Plaintiffs' Claims Relating to COREs for the Additional Reason that There Is No Final Agency Action.

As discussed in Argument § I.C, the APA allows judicial review only of "final agency action," 5 U.S.C. § 704, meaning that the challenged action (1) marks the "consummation" of the agency's decision-making process, and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). Plaintiffs have alleged that DHS, FEMA's parent agency, unlawfully usurped FEMA's authority by ordering FEMA not to re-appoint certain term personnel (COREs) at the expiration of their terms. *E.g.*, Suppl. Compl. ¶ 484 ("At the direction of DHS, FEMA began implementing Secretary Noem's blanket denial of CORE renewals on New Year's Eve."). According to the Supplemental Complaint: "DHS, not FEMA, is making the decisions not to renew these employees." *Id.* ¶ 492. The Supplemental Complaint brings new APA (and derivative *ultra vires*) claims related to this supposed DHS directive. *See generally id.* ¶¶ 575–604.

DHS's alleged "order" to FEMA "not to renew CORE employees" cannot provide the basis for "final agency action" in this case because the evidence demonstrates that no such order ever issued. Plaintiffs have observed that Evans's declaration submitted in opposition to Plaintiffs' motion for preliminary injunction states that, "[p]ursuant to its lawful authority, DHS decided not to reappoint [the COREs in January 2026]." Evans Decl. ¶ 25.[14] During her initial, seven-hour

[14] After Plaintiffs' motion was fully briefed but before the hearing, Defendants sought to provide a supplemental declaration that would have clarified what Evans intended by her statement in Paragraph 25 of her Declaration. Plaintiffs informed Defendants that they would oppose

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

deposition on March 31, 2026, Evans testified that she could see how Paragraph 25 could be confusing, but clarified that FEMA, and specifically she herself, decided not to renew the COREs who were not renewed in 2026; when she averred in her Declaration that "DHS decided not to reappoint" those COREs, she had intended to refer to "DHS" as the agency that includes FEMA. Evans Dep. 361:15–24. Evans testified: "I'm the one who made the decisions not to renew these COREs." *Id.* at 363:24–364:8 (emphasis added); *see id.* at 365:2–11 ("The non-renewals decision was made at FEMA."); *id.* at 366:4–5 ("I made the decision not to renew these appointments.").[4] Evans—not DHS Headquarters—also made the decision not to seek to extend FEMA's delegated authority to renew COREs for 180 days beyond December 31, 2025. *Id.* at 273:17–274:4, 274:20–275:9; Ex. 2 to Bombard Decl. (May 14, 2025, Memo.); Evans Decl. ¶ 31. Moreover, in the relevant timeframe, FEMA *recommended* COREs for renewal to DHS; there is no evidence that DHS vetoed any of them.[15]

**CONCLUSION**

The Court should grant Defendants' Motion to Dismiss the Supplemental Complaint.

---

submission of this information to the Court, so Defendants did not do so. Then, having refused to consider the evidence that would have clarified this very issue, when defense counsel offered to raise the clarification to the Court by supplemental declaration, Plaintiffs' counsel accused both Evans and defense counsel of committing perjury. *E.g.*, Mar. 3, 2026, Hr'g Tr. 41:8–14, 66:5–17.

[15] Any argument that Annual Staffing Plans are final agency action, facially, are wrong. *See supra* Argument § I.C. Factually, they are also wrong, because it is undisputed that DHS (and therefore FEMA) has not even submitted an annual staffing plan to OPM and OMB. O'Neill Decl., ECF 345-9; Peters Decl., ECF 345-10. If they hypothetically did so in the future, it would be predecisional and deliberative (the antithesis of final agency action)—an issue that Defendants will contemporaneously today brief to the Court in their discovery statement.

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

Dated: May 22, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

BRAD P. ROSENBERG
JEREMY S.B. NEWMAN
Chief Litigation Counsel

*/s/ Marianne F. Kies*
CHRISTOPHER HALL
MARIANNE F. KIES
Assistant Branch Directors

ROBERT C. BOMBARD
Trial Attorney
Civil Division, Federal Programs Branch

*Counsel for Defendants*

Defendants' Motion to Dismiss Supplemental Complaint; Memorandum of Points and Authorities
3:25-cv-3698-SI

26