# EXHIBIT 3

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

--------------------------------x
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, et al.,

     Plaintiffs,

   vs.

DONALD J. TRUMP, in his official
capacity as President of the
United States, et al.,

     Defendants.
--------------------------------x

Case No.

3:25-cv-03698-SI

CONFIDENTIAL

PURSUANT TO THE PROTECTIVE ORDER


VIDEOTAPED DEPOSITION OF


KAREN STREHLE EVANS


Tuesday, March 31, 2026


Reported By:  SUSAN ASHE, CER

Job No.:  11973

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 2

Tuesday, March 31, 2026

8:59 a.m. Eastern Daylight Time

Videotaped deposition of KAREN STREHLE EVANS, taken on behalf of the Plaintiffs, beginning at 8:59 a.m., on Tuesday, March~31, 2026, at the offices of Democracy Forward Foundation, 1445 New York Avenue, Northwest, Washington, D.C., before Susan Ashe, Certified Electronic Reporter and a Notary Public of the District of Columbia.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 3

APPEARANCE OF COUNSEL:

On behalf of All Union and Non-Profit
Organization Plaintiffs

ALTSHULER BERZON LLP

BY:  DANIELLE E. LEONARD, ESQ.

BY:  ELIZABETH ESHLEMAN, ESQ.

177 Post Street, Suite 300

San Francisco, California  94108

(415) 421-7151

dleonard@altshulerberzon.com

eeshleman@altshulerberzon.com

On behalf of All Union and Non-Profit
Organization Plaintiffs (except NRDC) and for
Plaintiffs City of Chicago, IL; Martin Luther,
Jr. County, WA; Harris County, TX; and City of
Baltimore, MD

DEMOCRACY FORWARD FOUNDATION

BY:  TSUKI HOSHIJIMA (pro hac vice)

Senior Counsel

P.O. Box 34553

Washington, D.C.  20043

(202) 448-9090

thoshijima@democracyforward.org

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 4

APPEARANCE OF COUNSEL (Continued):

On behalf of the Defendants and the Witness

UNITED STATES DEPARTMENT OF JUSTICE

BY:  MARIANNE F. KIES

BY:  JEREMY NEWMAN

BY:  CHRISTOPHER R. HALL

Trial Attorneys

Civil Division, Federal Programs

Branch

1101 L Street, Northwest

Washington, D.C.  20005

(202) 305-0693

marianne.f.kies@usdoj.gov

jeremy.s.newman@usdoj.gov

christopher.r.hall@usdoj.gov

-  and  -

FEDERAL EMERGENCY MANAGEMENT AGENCY

BY:  KEVIN YUSMAN

BY:  ASHLEY DARBO

BY:  JAMES EVANS, Chief Counsel

500 C Street, Southwest

Suite 840

Washington, D.C.  20472

kevin.yusman@fema.dhs.gov

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 5

APPEARANCE OF COUNSEL (Continued):

    On behalf of the Defendants and the Witness

    (Continued)

        DEPARTMENT OF HOMELAND SECURITY

        BY:  MATTHEW FLEISCHMAN

        2700 Martin Luther King, Jr., Southeast

        Washington, D.C.  20032

        matthew.fleischman@hq.dhs.gov


    On behalf of the Witness in Her Personal

    Capacity

        BINNALL LAW GROUP

        BY:  JASON GREAVES, ESQ.

        717 King Street, Suite 200

        Alexandria, Virginia  22314

        (703) 888-1943

        jason@binnall.com

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 6

ALSO PRESENT:

Jessica Levy, Esq.

Altshuler Berzon LLP


Olivia King, Legal Assistant

Democracy Forward Foundation


Sana Sinha, Legal Assistant

Democracy Defenders Fund


Jonathan Perry, Videographer

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 7

CONTENTS

THE WITNESS

Karen Strehle Evans


  BY MS. LEONARD                                        16


                         EXHIBITS

PLAINTIFFS

Exhibit No.                                      Marked

Exhibit 1   Linked-In Printout

            Karen S. Evans

            Four Pages                               30

Exhibit 2   Organizational Chart - DHS              49

Exhibit 3   POLITICO PRO

            "Top CISA appointee Karen Evans

            moves to FEMA"                            67

Exhibit 4   US DHS FEMA Review Council

            Open Meeting Minutes

            May 20, 2025                              72

Exhibit 5   US DHS FEMA Review Council

            Open Meeting Minutes

            July 9, 2025                              78

Exhibit 6   "Exhibit 4"

            DHS Record of Clearance and

            Approval                                  82

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 8

EXHIBITS (Continued)

PLAINTIFFS

Exhibit No.                                         Marked

Exhibit 7    "ICYMI:  SULLIVAN BRINGS SENIOR
             FEDERAL OFFICIALS TO STORM-
             RAVAGED WESTERN ALASKA
             VILLAGES"                              120

Exhibit 8    Press Release
             Office of U.S. Senator
             Dan Sullivan                           122

Exhibit 9    Email Correspondence
             "Reminder from Chief
             Information Officer Antoine
             McCord on Electronic Message
             Federal Records Preservation"          162

Exhibit 10   Redacted Handwritten Notes
             USA-AFGE-Exp-0033527
             through -544                            165

Exhibit 11   The Washington Post
             "FEMA head resigns.  Richardson
             had been hard to reach during
             Texas floods."                          177

Exhibit 12   The New York Times
             "In a Reversal, FEMA Won't
             Reinstate Suspended Workers"           183

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 9

EXHIBITS (Continued)

PLAINTIFFS

Exhibit No.                                              Marked

Exhibit 13  Draft Final Report

            "The President's Council to

            Assess the Federal Emergency

            Management Agency"

            December 11, 2025                           193

Exhibit 14  Email Correspondence

            USA-AFGE-Exp.-0007239

            through -241                                199

Exhibit 15  Executive Order 14356

            October 15, 2025                            205

Exhibit 16  Email Correspondence

            USA-AFGE-Exp.-0002353

            through -357                                207

Exhibit 17  Organization Information

            Chart

            USA-AFGE-Exp.-0006542                       218

Exhibit 18  Email Correspondence

            USA-AFGE-Exp.-0007333

            through -343                                228

Exhibit 19  Email Correspondence

            USA-AFGE-Exp.-0006535

            through -538                                237

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 10

                        EXHIBITS (Continued)

PLAINTIFFS

Exhibit No.                                          Marked

Exhibit 20   Email Correspondence

             USA-AFGE-Exp.-0006686

             through -688                              254

Exhibit 21   May 14, 2025 Correspondence

             USA-AFGE-Exp.-0000405

             and -406                                  265

Exhibit 22   Email Correspondence

             USA-AFGE-Exp.-0004575

             through -582                              268

Exhibit 23   Email Correspondence

             USA-AFGE-Exp.-0010683

             through -688                              271

Exhibit 24   Email Correspondence

             USA-AFGE-Exp.-0006997

             and -998                                  278

Exhibit 25   "Talking Points for FY26

             Staffing Strategy"

             USA-AFGE-Exp.-0034341

             and -342                                  287

Exhibit 26   Email Correspondence

             USA-AFGE-Exp.-0014520

             and -521                                  297

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 11

EXHIBITS (Continued)

PLAINTIFFS

| Exhibit No. | | Marked |
|---|---|---|
| Exhibit 27 | Email Correspondence USA-AFGE-Exp.-0007258 through -260 | 305 |
| Exhibit 28 | Email Correspondence USA-AFGE-Exp.-0007219 and -720 | 326 |
| Exhibit 29 | Email Correspondence USA-AFGE-Exp.-0004518 through -520 | 334 |
| Exhibit 30 | Email Correspondence USA-AFGE-Exp.-0000363 through -367 | 340 |
| Exhibit 31 | Email Correspondence USA-AFGE-Exp.-0005054 through -059 | 346 |
| Exhibit 32 | Email Correspondence USA-AFGE-Exp.-0009465 and -466 | 349 |
| Exhibit 33 | Email Correspondence USA-AFGE-Exp.-0000576 | 359 |

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 12

                    EXHIBITS (Continued)

PLAINTIFFS

Exhibit No.                                          Marked

Exhibit 34   "Declaration of Karen S. Evans

              in Support of Defendants'

              Opposition to Plaintiffs'

              Motion for a Preliminary

              Injunction"                              360


                 REQUEST FOR PRODUCTION

Page/Line              Page/Line              Page/Line

  27/21                 175/19


(REPORTER'S NOTE:  All quotations from exhibits are
reflected in the manner in which they were read into
the record and do not necessarily denote an exact
quote from the document.)

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 265

done in a May 14th memo from S1.  Is that right?

MS. KIES:  Object to form.

A.    That's my understanding --

Q.    Okay.

A.    -- yes.

MS. KIES:  Let's mark that as the next exhibit, which is No. 21.

(Whereupon, Plaintiffs Exhibit 21 was marked for identification.)

Q.    So, Ms. Evans, you've been handed Exhibit 21, which is a May 14th memo signed by Kristi Noem, Secretary of DHS, as approved, that, in your view, delegates back to FEMA the authority to extend certain CORE positions by 180 days.  Correct?

MS. KIES:  Object to form.

A.    Yes, except this memo is -- does not include the annex.  And so -- Annex A has specific background information that should be included.

Q.    There's an attachment that we don't have. Is that correct?

A.    I don't know whether you have it or not, but this specifically says:

See Annex A for additional
    background.
And there is no Annex A associated with

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 266

this memo.

Q.   Okay.  But the memo that you see before you, this -- in general terms, this extends to FEMA the delegated authority to renew certain CORE positions by 180 days only.  Correct?

A.   That's my understanding.  But also, I believe there is specific discussion and background about what that actually means in Annex A.

Q.   Without this delegation of authority, DHS required, as of May 2025, all decisions regarding CORE positions to be sent to DHS for S1 approval.  Correct?

MS. KIES:  Object to form, foundation.

A.   It's my understanding that the policy at that time, and continues to be the policy until rescinded by the current DHS Secretary, is hiring decisions are sent forward to DHS headquarters.

Q.   And you understand the extension of a CORE position to be a hiring decision?

MS. KIES:  Object to form.

A.   That is my interpretation of it, is that because it is a personnel action that cuts an SF-50, it counts as a hiring action.

Q.   And we'll get to that.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 267

You had a little bit of a dispute internally within FEMA whether -- whether that was the case, did you not, at the end of 2025?

MS. KIES: Object to form.

A.    I believe that the emails outlined that discussion that we had -- that I had with the FEMA CHCO office.

Q.    But with respect to the nonMCO CORE positions addressed by this memo, you understood that FEMA, for six months, until that authority expired, had the ability to renew and extend nonMCO CORE positions for up to 180 days.  Correct?

MS. KIES: Object to form.

A.    Yes, that's what this says.

Q.    And the limit of 180 days, that was a limit that was imposed by DHS, by the secretary's decision.  Correct?

MS. KIES: Object to form.

A.    That's what this memo states, yes.

Q.    And without that authority, all of those decisions had to go to the DHS front office for approval.  Correct?

MS. KIES: Object to form.

A.    The renewals had to go forward to DHS without this authority.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 268

Q.    Do you have any understanding of why this authority was granted to FEMA for roughly only a six-month period?

MS. KIES:  Object to form, foundation.

A.    This is when I arrived as the senior advisor to Mr. Richardson.  And I believe that this ability, as this states, was because we were coming up on hurricane season.

Q.    Hurricane season, which lasts, roughly, six months?

A.    It starts on June 1st.

Q.    And ends at the end of November?

A.    I believe it's --

MS. KIES:  Object to form.

A.    -- the end of November.

MS. LEONARD:  All right.  We're going to mark -- this is the next.  22.

(Whereupon, Plaintiffs Exhibit 22 was marked for identification.)

Q.    So, Ms. Evans, I've handed you what's been produced to us as an email with two attachments from the December 5th time frame.

The attachments appear to be a red-lined and a final FEMA CORE renewal S1 decision memo that

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 272

CORE renewal memo.

I'm going to ask you about the top email.

(Witness reading.)

A.    Okay.

Q.    So you see here that Mr. Clayton is sending an email to FEMA's ExecSec that says:

Please allow Kara opportunity to review before packaging for signature.

Do you see that?

A.    Yes, I do.

Q.    And you understand that that's a reference to Ms. Voorhies?

MS. KIES:  Object to form, foundation.

A.    I believe that's the case, yes.

Q.    And do you have any reason to believe that these memos were not sent to Ms. Voorhies to give her an opportunity to review before packaging for signature?

MS. KIES:  Object to form, foundation.

A.    I have no reason to believe that they were not sent to her.

Q.    And did you discuss these memos or the

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 273

renewal authority with Ms. Voorhies?

MS. KIES:  Object to form.

A.   I'm sure that I had discussions about the COREs, as we previously discussed, and then the authorities associated with hiring from the department and the delegated authorities.

Did I specifically talk about these memos? As you can see, again, I'm not on these emails.

Q.   Do you recall discussing the renewal authority with Ms. Voorhies in this early December time frame?

A.   I recall discussing that with her, but I also recall discussing it because, as I previously stated, I had weekly meetings with the deputy chief of staff, Joe Guy, and let him know that this was going to expire.

Q.   And did you discuss seeking renewal authority to extend that delegated authority with the DHS front office?

MS. KIES:  Object to form.

A.   I discussed with DCOS Guy that I was not going to seek the authority.

Q.   Who made the decision not to seek the Secretary of Homeland Security's approval to extend FEMA authority?

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 274

MS. KIES:  Object to form.

A.  I made the decision not to send these memos forward and seek the approval after December 31st.

Q.  And was that before or after the memos were sent to Kara Voorhies?

MS. KIES:  Object to form, foundation.

A.  I'm unsure of the timing of this.  I really don't know the timing of this.

Q.  But you discussed this issue with Ms. Voorhies before you made that decision.  Correct?

MS. KIES:  Object to form.

A.  As my previous note showed, that I have been discussing issues of FEMA with DCOS Guy on a weekly basis.

And as I previously stated, Ms. Voorhies was present in those meetings.

Q.  Did DCOS Guy tell you not to seek approval to extend the FEMA authority?

MS. KIES:  Object to form.

A.  He did not.  I told him I was not going to do that.

Q.  Did you make that decision because you

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 275

understood that the DHS Secretary did not want to extend that authority?

MS. KIES:  Object to form.

A.   I made the decision because I felt that we didn't need the authority at this time period, because it was not -- we were not in hurricane season, and that this was going to give us the opportunity to actually analyze the workforce appropriately.

Q.   And you were frustrated with the FEMA CHCO's extension of CORE positions pursuant to this authority because it interfered with your plan to reduce the number of CORE staff at FEMA.  Correct?

MS. KIES:  Object to form, misstates testimony and evidence.

A.   I don't agree with the statement that you just made because I don't believe that that's the premise of why -- I know that's not the reason why I did not ask for this authority during this time period.

Q.   If you had received this delegated authority to extend for up to 180 days, and those 180-day extensions had been given, it would have made it more difficult to hit your 50% cut numbers. Correct?

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 276

MS. KIES:  Object to form.

A.   I, again, don't agree with the way that you're asking that question, because we would have done the analysis regardless of whether we had the authority to do the renewals for 180 days or not.

Q.   This was an impediment to your plan to reduce the number of CORE staff at FEMA, was it not?

MS. KIES:  Object to form, misstates testimony.

A.   Can you clarify the question?  Because I don't know what you mean by "this" is an impediment.

Q.   The idea of extending the authority to renew the CORE staff by up to 180 days would have been an impediment to your plan to cut the CORE staff.  Correct?

SP02:  Object to form, misstates evidence.

A.   I don't agree with that statement, because we were going to do the analysis.

And whether we had the authority or not, I viewed that authority as the ability for us to actually do the analysis and do meaningful analysis.

Q.   But you chose not to seek that authority from DHS because you didn't think it was necessary at the time?

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 277

MS. KIES:  Object to form.

A.   Yes, that is correct.

Q.   And as a result of that decision, the authority reverted to DHS, and all action with respect to the CORE required S1 approval.  Correct?

MS. KIES:  Object to form, misstates testimony.

A.   Actually, I don't agree with that statement.  The way that the authorities are set up is hiring decisions go to headquarters.

Q.   All action with respect to any CORE renewal had to be approved by S1 as a result of your decision not to seek the extension of that authority.  Right?

MS. KIES:  Object to form, foundation.

A.   So I'm going to restate what my understanding is, which is renewal of CORE appointments would go forward to headquarters if we were going to renew CORE appointments.

Q.   Let's look at another exchange regarding your conversation with Ms. Dobitsch in early December.

MS. LEONARD:  Mark this as the next, 24.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 278

(Whereupon, Plaintiffs Exhibit 24 was marked for identification.)

(Witness reading.)

Q. Okay. Ms. Evans, are you ready?

A. Yes, ma'am.

Q. Okay. So the first email in the chain, which is on the back, is an email from you on December 4th to Ms. Dobitsch, CC'ing Kara Voorhies. And its subject line is "Follow Up on Items."

Do you see that?

A. Yes.

Q. And then Ms. Dobitsch responds, and she says:

Some notes below for expectation setting on timing and materials.

And I understand what she has done here is to annotate the list that you sent her. Is that correct?

A. Yes, that appears so.

Q. So in that original email, there is information that you wrote, and then there is information that she annotated. Correct?

A. That's what it appears to be, yes.

Q. Okay. And then you wrote this list coming

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 345

to extend the delegated authority to renew some of the COREs.  Correct?

A.    Yes.

Q.    And as a result of that decision, the materials that had been packaged to you for those COREs with NTE dates in January had to be redone by FEMA staff.  Correct?

MS. KIES:  Object to form.

A.    Yes, that's my understanding.

Q.    Because they now needed to use the S1 verification form that DHS required for hiring decisions.  Correct?

MS. KIES:  Object to form.

A.    Yes, that's my understanding.

Q.    And FEMA staff worked very hard over the holidays to package and provide you with that information, did they not?

MS. KIES:  Object to form, foundation.

A.    I can't assess the level of effort that was put into putting together those packages.

Q.    During this same late December period, you were asking for information regarding the amount of money that these CORE employees cost FEMA.  Correct?

MS. KIES:  Object to form.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 346

A.    I believe that what I previously testified was that, and also, issues that were being raised was about the pay associated with COREs.

MS. LEONARD:  Well, let's take a look at the next exhibit in line, which is 31.

(Whereupon, Plaintiffs Exhibit 31 was marked for identification.)

Q.    And it is an email from the FEMA CHCO to you, and it attaches some spreadsheets, but also a memorandum that she wrote.

And my question for you, Ms. Evans, is quite simple, which is:  Did you review this memorandum from La' Toya Prieur on or around December 17th?

(Witness reading.)

A.    Can you ask the question again?  I'm sorry.  I was reading the memo.

Q.    Sure.

Did you review the memo that Ms. -- the FEMA CHCO, Ms. Prieur, provided you about the mission effects of allowing the COREs to expire around December 17th?

A.    I would say I don't specifically recall reading all of this.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 347

Q.   Do you -- did you take this into consideration in making your decisions with respect to the COREs?

MS. KIES:  Object to form.

A.   What I was doing at that time period was working with the FEMA CHCO to make sure that we were establishing a process so that the program office heads and the regional administrators were reviewing their CORE renewals and doing it based on the functions.

Q.   Do you recall that you were very expressive regarding not including the names of employees on the documents that were being sent to you regarding the upcoming COREs with NTE dates expiring?

MS. KIES:  Object to form.

A.   Yes.

Q.   And why was that?

A.   Because the review was about the functions that the COREs were performing for either the program office head or for the regional administrator.

And I wanted it to be a functional analysis.

Q.   And you did not want the names of

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 348

employees on there.

Did you believe you didn't have the right to see those names, for some reason?

MS. KIES:  Object to form.

A.   I wanted to make sure that I wasn't looking at names because this was a functional review based on what the program office head would say for the functions and the work that's being performed by that position.

Q.   But you knew that when the materials were repackaged to send over to DHS for approval, one -- after the -- once the authority to FEMA had expired, that they were going to have to have names on them. Correct?

MS. KIES:  Object to form, foundation.

A.   The FEMA CHCO reported to me a way -- the way that the form had to be completed.

And so, I did not want to see the names.

So she did the forms.  And then based on that, there was a process of how those forms were completed and then sent up to DHS CHCO.

Q.   And you delegated the authority, actually, to Will Bilicic to sign those forms because you did not want to see the names.  Correct?

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 349

MS. KIES:  Object to form.

A.    That's correct.

MS. LEONARD:  Let's take a look at next.

(Whereupon, Plaintiffs Exhibit 32 was marked for identification.)

Q.    This email is dated December 26th, Exhibit 32, and it forwards to you an email from La' Toya Prieur that was sent to Puneet Khan on Christmas, December 25th, attaching the materials for the CORE individuals who had expirations in January.

Do you see that?

A.    Yes.

Q.    And do you recall that your response was to ask for more money about what a fully loaded CORE is receiving in pay?

Sorry.  Let me rephrase that.

Do you recall that your response to this information, justifications for all the CORE individuals who were expiring in January, was to ask how much money they were costing FEMA?

MS. KIES:  Object to form.

A.    I don't recall that email.

Q.    Do you recall you say, "I want to know

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 350

what a fully loaded CORE is receiving in pay," in response to receiving this information?

MS. KIES:  Object to form.

A.  I recall asking about a fully loaded CORE pay because, as you showed in Exhibit 31, we were looking at what funding that they were coming from and what their pay base was, what they're -- a fully loaded CORE was being paid.

Q.  As consideration for part of the decision-making as to whether to seek approval to renewal these CORE -- renew the COREs that were expiring in January, you were considering that information?

MS. KIES:  Object to form.

A.  As I have previously stated, there was several different analyses that were happening at that time.

And also, as I believe I previously stated, the pay associated with COREs, that issue was being raised at the same time because there was other exercises that were happening with the DHS CHCO and the FEMA CHCO.

So there was issues of pay that had to be addressed as well.

Q.  And in this -- the packaging of the

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 351

request for approval, justifications for the COREs, extensions for the NTEs that were coming in January, you see here Ms. -- in Exhibit 32, Ms. Prieur was also asking for a 30-day -- authority to extend their appointments by 30 days so that a decision could be made.

Do you see that?

A.    I see her recommendation about the 20% of the appointments will expire the first week in January, and that she was seeking SOPDA approval to extend the appointments for 30 days, pending the determination from FEMA and DHS leadership.

Q.    And on December 31st, the decision was made not to seek approval to renew these COREs and not to grant a 30-day extension.  Correct?

MS. KIES:  Object to form.

A.    I made a decision not to sign the documents under the existing authority because this was coming at the end of the delegation of authority.

And these were positions that were going to be in January, so I made the decision not to sign these.

Q.    And you waited until December 31st to make that decision, despite receiving the information on

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 352

the 26th of December?

MS. KIES:  Object to form.

A.   So I got this information.  It was during the holidays.  And I was reviewing the information, and I made the decision not to renew January CORE appointments because the delegation of authority was expiring.

Q.   Was that the only reason you made the decision not to renew them?

MS. KIES:  Object to form.

A.   The reason why I also did this was because I did not want to renew appointments for the first week in January, knowing that my authority was expiring on December 31st.

Because those January decisions, with the expiring of the authority, if they were going to be renewed, needed to be reviewed by headquarters.

Q.   So you understood that by application of the DHS policies, those CORE positions were going to be eliminated?

MS. KIES:  Object to form.

A.   I understood, the way that we were doing this, is that I made the decision not to renew these appointments that were coming due in the first week in January, as is outlined here.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 353

Q.   And that was the result of your application of DHS policies that applied to these positions.  Is that correct?

MS. KIES:  Object to form.

A.   It's my determination based on the expiring authorities that FEMA had at the time, and then the DHS policy as it related to hiring.

Q.   When -- can you look at Exhibit 10, which is your notes.

And the entry on December 31st, which is -33536.

A.   Okay.  Hold on.  I don't have my notes yet.

Okay.  And then number, please?

Q.   -33536.  It's December 31st.

A.   Okay.

Q.   You have notes here:

Not going to approve the COREs (30 days extensions) and COREs in general.

Who was that meeting with?

MS. KIES:  Object to form.

A.   As I recall, this particular meeting, that was part of my meeting -- because this is on Wednesday -- with DCOS Guy.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 354

Q.   And, together, you made the decision not to renew the COREs?

MS. KIES:  Object; misstates testimony.

A.   No.  What I told Mr. Guy in the meeting was that I was not going to approve the 30-day extension, as you outlined here in "Exhibit -9465," as it related to the COREs because the authority was expiring December 31st and that these were for appointments in January.

Q.   And you understood that you were implementing DHS's policies and directives with respect to those COREs.

MS. KIES:  Objection --

Q.   Correct?

MS. KIES:  -- misstates testimony.

A.   I understand that what I was doing as a component within DHS, that with the expiring authority that FEMA had, that I was implementing DHS policy as it related to hiring actions.

Q.   And do you know who DCOS Guy spoke with about the decision to begin eliminating COREs by NTE date on January 1st?

MS. KIES:  Objection;

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 355

foundation, facts not in evidence.

You can answer.

A.   I do not know who he spoke to after I told him about my decision that I was doing based on the January nonrenewals.

Q.   Okay.  And at some point in January and then February, you set up a series of different processes for sending over the approvals of the CORE renewals to the DHS front office.  Correct?

MS. KIES:  Object to form.

A.   So in the time period when this issue was raised, in the -- as -- when I took over as the SOPDA, it was to establish a process that would have the program offices, as well as the regional administrators, to look at the CORE renewal dates by function and sign off on what they were recommending to go forward and what they were recommending on to --

VIDEOGRAPHER:  I'm sorry.

Careful.  You --

WITNESS:  Oh.  Sorry.

A.   Okay.  Sorry.

So that process included program office sign-off of their evaluation of the CORE renew- -- the CORE dates and the renewals based on function.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 356

Q.   But you know that the individuals who were not renewed beginning on January 1, for the first two weeks of January, were recommended by their programs and offices for renewal.

And, in fact, you made the decision, based on DHS policy, to separate those people from employment.  Correct?

MS. KIES:  Object to form, misstates testimony.

A.   What I did at the end of December was based on my understanding and my -- that FEMA is a component of DHS, and that my authority was expiring; that I made the decision not to send these CORE renewals forward to headquarters, DHS headquarters.

Q.   And after that, as you did send forward approvals in January and February, DHS made a policy decision that any extension of a CORE could only be for 90 days.  Correct?

MS. KIES:  Object to form, foundation.

A.   That is incorrect, because I'm the one who made the decision about the extensions for 90 days, because that relates to the period that we're in, in transition, right now.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 357

And it also relates to the staffing plans. And then the 90-day extensions, we would take that into consideration with their staffing plans.

And the idea was to have all of this resolved before hurricane season.

Q.   And the idea being that the 90 days extensions were to hold over until you figured out how to implement the staffing plan.  Correct?

MS. KIES:  Object to form, misstates testimony.

A.   So the 90-day extensions were based on functional analysis that the program offices did, based on their workload, so that the staffing plans that they were turning in, which are due today -- so that we could look at those, along with other analysis that we're doing, to streamline some of the processes within FEMA prior to the final FEMA Review Council report being released and the President making his decisions as it relates to the future of FEMA.

Q.   You didn't have the authority to extend any CORE position beyond 90 days, per DHS policy. Correct?

MS. KIES:  Object to form.

A.   That's not what I stated.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 358

What I stated was I made the decision that these were going to be 90-day renewals, and that we would do 90-day renewals on the COREs as they came up and as they were recommended from the program offices or the regional administrators.

Q.   In fact, headquarters had given you a policy that only allowed 90-day renewals, at the most, in -- after January of 2026.  Correct?

MS. KIES:  Object to form.

A.   I don't recall that.  I believe that if you look at the previous exhibits that we were talking about with the delegation of authority that you showed, that we had till December 31st.

I would have to -- as I pointed out, Annex A wasn't included.

And so, those specific authorities would have been outlined in Annex A.

So I don't recall specifically what you are saying.

Q.   You don't recall being given direction from DHS headquarters that you could not extend COREs longer than 90 days?

MS. KIES:  Object to form.

A.   I know I stated to DCOS Guy that I was going to extend them for 90 days.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 359

MS. LEONARD:  Okay.  Let's mark this as the next exhibit.  Got it.  33.

(Whereupon, Plaintiffs Exhibit 33 was marked for identification.)

WITNESS:  Thank you.

Q.   So this is a very short email from you to the FEMA CHCO.  And you say:

Hi La'Toya

Per our discussion, until further notice, please process CORE Renewals in accordance with HQ policy.  Their renewal dates should NTE 90 days for consistency.

What are your HQ -- what HQ policy are you referring to there?

A.   The HQ policy that I'm referring to is what you brought up previously, which is about the individual forms that need to be signed that have the names on them and that that authority for the signing was delegated to Will Bilicic.

Q.   If -- okay.  So it is your testimony that it was your decision, and your decision alone, that CORE renewals starting in January of 2026 would be limited to 90 days?

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 360

MS. KIES:  Object to form.

A.   That's my recollection, yes.

MS. LEONARD:  Okay.  Let's mark this as the next, which is the declaration that you submitted in this case, Exhibit 34.

(Whereupon, Plaintiffs Exhibit 34 was marked for identification.)

Q.   You're familiar with this document, Ms. Evans?

A.   Yes, ma'am.

Q.   At the time you signed this, did you review all of the information in the declaration?

A.   Yes, I did.

Q.   Did you draft it, or was it drafted for you?

A.   The --

MS. KIES:  Object to form.

A.   The --

WITNESS:  I apologize again. Sorry.

A.   The -- it was drafted, and then I reviewed the draft.

Q.   Did you edit it?

A.   I don't recall if I did specific edits to

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 361

this particular declaration.

Q.   And you intended for the information contained in this declaration to be true and accurate?

A.   Yes, I did.

Q.   And you state here in this declaration....

Give me one moment.

(Pause.)

On Page 6 -- apologies.

On Page 6, in Paragraph 25, you state here that "DHS decided not to reappoint" 192 COREs in January of 2026.

Do you see that statement?

A.   Yes, I do.

Q.   Is that statement accurate?

A.   I think that -- I have reviewed this, and I can see where this statement would be confusing, based on the context of how I reviewed this.

So the way that I reviewed this document is that FEMA is a component of DHS, and I was reviewing this document as FEMA is a component of DHS, and that this document was going externally.

And so, I was talking about FEMA as a component of DHS.

Q.   You refer to FEMA separately in this

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 362

document in many places.  Correct?

A.   Yes, I do.

Q.   Including in all the surrounding paragraphs to this statement.  Correct?

MS. KIES:  Object to form.

A.   Yes, that's what it says.

Q.   And in Paragraph 28, you say:

...FEMA and DHS are considering non-renewals of COREs....

So you're referring to the entities separately throughout this declaration.  Correct?

MS. KIES:  Object to form.

A.   I did in this.  And I would agree that this statement in 25 -- I can see where it would lead to confusion.

Q.   The terminations that -- well, let's put it this way:  The separations of CORE individuals that happened in January were the direct result of DHS directives and orders that you were implementing.  Correct?

MS. KIES:  Objection, misstates testimony and evidence.

A.   As I previously stated, the ones in January were based on that time period of the

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 363

expiration of the authorities and the decision that I made not to renew those appointments that were in the first two weeks, I believe, of January.

Q.  DHS continues to control all authority for FEMA CORE renewals.  Correct?

MS. KIES:  Objection; legal conclusion, misstates testimony and evidence.

You can answer.

A.  I think that, based on what you just said, that's a misstatement.  That's not correct.

Q.  Do you believe it's accurate that DHS made the high-level decisions that led to the elimination of these positions, even if they didn't individually renew [sic] and reject each person?

MS. KIES:  Object to form.

A.  Can you restate that again?

Q.  Sure.

Do you believe it's true that DHS made the high-level decisions that led to the elimination of these positions, even if they did not individually review and reject each person?

MS. KIES:  Object to form.

A.  I do not believe that that's the case.

Q.  You don't believe that these terminations

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 364

came from the decisions and authorities of DHS?

MS. KIES:  Objection; asked and answered.

A.  As I said, I could have clarified this statement, especially where it says "pursuant to the lawful authority," because I'm the one who made the decisions not to renew these COREs, their appointments.

And so, I viewed that particular statement as I'm a component of DHS and that the policies that are in place as a component of DHS, I'm also responsible for following DHS policies.

Q.  And you understand that it is your job to implement the DHS priorities that are given to you by the secretary.  Correct?

MS. KIES:  Object to form.

A.  It is my job to implement the President's executive orders, as well as the secretary's priorities, as it relates to FEMA as a component of DHS.

Q.  And that is what you believed you were doing when you made the decisions with respect to the COREs for January.  Correct?

MS. KIES:  Object to form, misstates evidence and testimony, asked

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 365

and answered.

A.   The decision that I made at that point was not to renew those COREs because they were in January, and my authority that was delegated to me from the secretary to the position expired December 31st.

And so, I did not make the recommendations, and it did not go through the hiring process, which is the policy of DHS.

The non-renewals decision was made at FEMA.

Q.   And you believed, in making those decisions, that you were implementing the policy priorities of the Secretary of DHS.  Correct?

MS. KIES:  Objection; misstates testimony, asked and answered.

A.   In making these specific decisions, they were specifically related to these CORE renewals based on the authority that was delegated that was expiring.

And so, because I made the decision not to renew these --

VIDEOGRAPHER:  Oh, sorry.  You pulled --

WITNESS:  Oh, sorry.  I'm sorry.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 366

How about that?

VIDEOGRAPHER:  Okay.

WITNESS:  Sorry.

A.   Okay.  So I made the decision not to renew these appointments.

Q.   Let me ask the question again, Ms. Evans.

When you made these decisions, you believed you were implementing the policy priorities of the Secretary of DHS.  Correct?

MS. KIES:  Objection; asked and answered, misstates testimony.

A.   When I made this decision, as it related to potential renewals of these COREs, I was making the decision based on the authority that was delegated that was expiring on December 31st.

And the DHS policy at that point is:  Any hiring was to go forward to DHS headquarters.

Q.   I'm going to ask again, and it's a yes or no.

You believed, when you were making the decision with respect to the COREs in January, that you were implementing the DHS Secretary's policy priorities, didn't you, Ms. Evans?  Yes or no?

MS. KIES:  Objection; asked and answered, misstates testimony.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 367

A.    I am telling you the context of how this decision was made.  And this decision was made based on the expiration of the authority that had been delegated to FEMA.

And I was making the decision because these were positions that would be renewed in January, based on the policy that DHS had in place as it relates to hiring.

That is the basis of my decision.

Q.    And you certainly didn't think you were acting contrary to the policy priorities of the Secretary of DHS in making these decisions.  Correct?

MS. KIES:  Object to form.

A.    Again, I'm going to restate the basis of this decision, which was it was based on the authorities that were delegated and the authorities that were expiring.

Q.    Ms. Evans, I'm asking you a different question, and you need to give me an answer.  And I'm going to ask you directly one more time, and it's a yes-or-no question.

When you made these decisions, you understood that you were implementing the policy priorities of the DHS Secretary, didn't you?

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 373

questions.

WITNESS:  Okay.  Thank you.

VIDEOGRAPHER:  Off the record at 6:35.

(Whereupon, a recess was taken.)

VIDEOGRAPHER:  On the record at 6:45.

BY MS. LEONARD:

Q.  Ms. Evans, you testified earlier that you made the decision that renewals of CORE positions should be limited to 90 days only starting roughly in late January 2026.  Is that correct?

A.  I believe, based on this email, that was -- this is in February.  So I did make the decision about the nonrenewals.

But upon -- I would also like to clarify something, based on the last exchange that we just had.  Because you were asking the question in multiple different ways, and I clearly was saying that it had to do with the waiver expiring and that these appointments were in January.

So I just want to make sure that I clarify, the way that you asked the question, you were saying, if there were -- if that was the reason.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 374

And I want to make sure that the record is clear that during that time period, as I previously mentioned, we had an agreed-upon process.

And there were process vals that were happening in this time period, because I told you that the office heads and the regional administrators were to be signing off on the memos.

And, initially, when these memos were coming up in the December time period, and you specifically talked about the email that's associated with December 26th, those memos were not prepared appropriately.

And so, there were process vals. And the main process val, to me, was that these memos were not signed off by the program office heads.

And so, those memos needed to be signed off, and they were not.

Q.   And what effort did you make between December 26th and December 31st to ensure that the program office heads would sign off on the recommendations that had been provided to you so that these people could keep their jobs, Ms. Evans?

A.   I sent --

MS. KIES:  Object to form.

WITNESS:  Oh, I apologize.

CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER

Page 375

A.    I sent the information back -- and I believe it's in the emails -- I sent it back and said that the memos had to be processed appropriately with the program office heads or the regional administrator signing off on the memos.

Q.    And you refused to allow the renewal of these CORE positions because of a paperwork flaw, Ms. Evans?

MS. KIES:  Object to form, misstates testimony.

A.    That's not what I'm saying.

What I'm saying is, is that the process was supposed to have the program office heads and the regional administrators to look at the functions and the work that was supposed to be performed by the COREs in these renewals.

Q.    And that is, indeed, how you justified your actions implementing the secretary's priorities and policies of eliminating the CORE.

You justified it by blaming the FEMA OCHCO staff for paperwork.  Right?

MS. KIES:  Objection; mistakes testimony, argumentative, form.

A.    I --

MS. KIES:  Asked and answered.