Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR RULE 37(E) REMEDIES** |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    I.      DHS and FEMA Officials Involved in FEMA Staffing Decisions Regularly Used Signal Messages on Personal Phones for Official Agency Communications. ..................................................................................................2

    II.    Signal Messages from Key Time Periods Have Been Lost Because Government Officials Set Them to Auto-Delete, and Defendants Failed to Preserve. ...........................................................................................................5

        A.     Government Officials Set Signal Chats to Auto-Delete, Which Led to Loss of Information. ...........................................................................6

        B.     Defendants Took No Meaningful Preservation Steps. ...................................8

        C.     During this Litigation, Defendants Took Further Steps that Caused the Loss of More Data. ..................................................................................10

    III.   Defendants Tried to Conceal This Practice Throughout Discovery. .........................12

LEGAL STANDARD ..........................................................................................................16

ARGUMENT .......................................................................................................................17

    I.      Signal Communications Were Lost Because Defendants Failed to Preserve Them. .........................................................................................................................17

    II.    The Court Should Remedy the Loss Under Rule 37(e)(1). ......................................20

    III.   The Court Should Remedy the Loss Under Rule 37(e)(2). ......................................22

CONCLUSION ....................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Burris v. JPMorgan Chase & Co.*,
  No. 21-16852, 2024 WL 1672263 (9th Cir. Apr. 18, 2024).....................................................23

*Dish Network L.L.C. v. Jadoo TV, Inc.*,
  No. 20-CV-01891-CRB (LB), 2022 WL 11270394 (N.D. Cal. Oct. 19, 2022).....................22

*Est. of Bosco by & Through Kozar v. Cnty. of Sonoma*,
  640 F. Supp. 3d 915 (N.D. Cal. 2022)...................................................................................19

*In re Google Play Store Antitrust Litig.*,
  664 F. Supp. 3d 981 (N.D. Cal. 2023)...................................................................................23

*Gregory v. State of Montana*,
  118 F.4th 1069 (9th Cir. 2024)..............................................................................................18

*Jones v. Riot Hosp. Grp. LLC*,
  No. CV-17-04612, 2022 WL 3682031 (D. Ariz. Aug. 25, 2022) ..........................21,22. 23, 24

*Khan v. S.F. Dep't of Public Health*,
  No. 24-CV-09289-LJC, 2026 WL 1433089 (N.D. Cal. May 21, 2026) ................................20

*Kuen Hwa Traffic Indus. Co. v. DNA Motor, Inc.*,
  No. 2:18-CV-5664-RGK(SKx), 2019 WL 4266811 (C.D. Cal. July 10, 2019).....................21

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
  605 F. Supp. 3d 1218 (N.D. Cal. 2022)................................................................................22

*Morehead v. City of Oxnard*,
  No. 2:21-cv-07689, 2023 WL 8143973 (C.D. Cal. Oct. 4, 2023)..........................................17

*Porter v. City & Cnty. of San Francisco*,
  No. 16-CV-03771-CW(DMR), 2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) .................19, 22

*Ritchie v. United States*,
  451 F.3d 1019 (9th Cir. 2006)...............................................................................................20

**Federal Statutes**

44 U.S.C. § 3101 ............................................................................................................... 12, 18

**Other Authorities**

Fed. R. Civ. P. 37 ...........................................................................................................*passim*

**INTRODUCTION**

Throughout 2025 and 2026, Defendants' high-level officials systematically used disappearing Signal messages on their personal phones to communicate with each other about government business, including the FEMA staffing and CORE renewal matters at issue in this lawsuit. They did so in blatant disregard of federal record-preservation laws and agency policy, for the purpose of shielding their communications from disclosure and accountability.

The result has been the spoliation of communications between the DHS and FEMA officials involved in the challenged DHS and FEMA actions during key time periods. Worse yet, at every turn throughout this case, Defendants have attempted to conceal the existence of these communications, their failure to preserve, and the spoliation. Rather than taking appropriate preservation measures or being forthcoming about the loss of information, Defendants tried to hide that the Signal messages ever existed, refused to search for or collect them even when their existence became undeniable, and repeatedly failed to comply with court orders requiring their production. Indeed, at one point, Defendants represented in a court filing—incorrectly, as it later turned out—that "the custodians whose personal phones remain of interest to Plaintiffs *did not communicate* on their personal phones regarding COREs renewals or target staffing reductions." ECF 344 at 15 (emphasis in original). In addition, high-level officials of Defendants made misrepresentations about their use of Signal messages for official agency business and signed misleading or inaccurate preservation declarations. On top of all that, after this Court's discovery orders, government officials *shortened* auto-delete settings on some of these Signal chats and took other actions, such as the reinstallation of the Signal application, that caused further loss of information.

Defendants' spoliation of the Signal communications was not due to negligence or ignorance of record-keeping or preservation duties. Rather, Defendants intentionally conducted agency business on a disappearing medium for the exact purpose of avoiding accountability, then resisted disclosure of that practice through obstructive litigation conduct. The delays in proper preservation, disclosure, and then production while Defendants continued to use auto-delete settings guaranteed the further loss of relevant material during this litigation.

Under Federal Rule of Civil Procedure 37(e), the Court has several remedial options where a party has "failed to take reasonable steps to preserve" electronically stored information. The evidence in this case supports remedies under both Rule 37(e)(1) for the prejudicial loss of information and Rule 37(e)(2) for intentional spoilation. Under Rule 37(e)(1), Plaintiffs request that the Court exclude any testimony by Defendants' witnesses that seeks in hindsight to controvert what the communications likely showed. Specifically, the Court should preclude Defendants from relying on any testimony from their witnesses to deny Defendants' plan to substantially reduce FEMA staffing, to deny DHS direction over that plan, and to deny implementing that plan through indiscriminate separation of CORE employees. Because Defendants' actions have deprived Plaintiffs of discovery that would have undermined such testimony, excluding this testimony is an appropriate remedy and is proportional to the impact of Defendants' prejudicial actions. In addition, pursuant to Rule 37(e)(2), the Court should presume that the information lost through intentional deletion would have been unfavorable to Defendants because it would have been further evidence of Defendants' plan, DHS's control, and Defendants' implementing actions. This is particularly so for the deleted "FEMA 2.0" Signal group chat between three key DHS and FEMA officials. Finally, Plaintiffs request that the Court enter a finding that Plaintiffs are entitled to fees incurred in uncovering and addressing Defendants' spoliation and grant leave to Plaintiffs to submit a fee application.

## BACKGROUND

I. **DHS and FEMA Officials Involved in FEMA Staffing Decisions Regularly Used Signal Messages on Personal Phones for Official Agency Communications.**

Plaintiffs' supplemental brief in support of their preliminary injunction motion, also filed today, describes DHS's plan for substantial staff reductions at FEMA and the implementation of that plan through a mass separation of COREs. As described in that filing, three of the officials who had significant involvement in the challenged decisions about FEMA staffing are DHS Deputy Chief of Staff Joseph Guy, DHS Senior Advisor to the Secretary Kara Voorhies, and FEMA Senior Official Performing the Duties of Administrator Karen Evans.

Each of them took part in a widespread practice by DHS and FEMA officials to conduct agency business through disappearing messages on the Signal platform on their personal phones. They used the disappearing Signal messages to discuss a wide range of agency business, including FEMA staffing, the structure and downsizing of FEMA, and CORE renewals. This systematic practice by Defendants' high-level officials could only have been for the purpose of circumventing federal-record preservation requirements and shielding official agency business from discovery and other disclosure.

In his deposition, Joseph Guy initially tried to downplay his use of Signal messages for official agency communications, only to later be discredited. Guy repeatedly claimed not to recall whether he had used his personal phone for official communications (and then asserted that they were just used for workplace "banter"). 5/4 Guy Dep. at 48:2-52:11, 61:5-65:22, 81:1-10, 125:7-13, 126:5-127:5, 131:3-21.[1] But his personal phone still contained evidence of the extensive use of disappearing Signal messages for official communications. Later in that deposition, Guy searched his personal phone's Signal application in response to Plaintiffs' questions and found over two-dozen group chats with "FEMA" in the title. *Id.* at 143:21-145:19. Those chats were named: FEMA Comms; FEMA-HQ; FEMA Data Hunt; FEMA Grants; FEMA RIF; Good FEMA; DOGE FEMA; FEMA ORR Awareness; FEMA Sanity Club; FEMA OPA; HQ-FEMA; NC FEMA; FEMA Region 6; FEMA DH Leadership; FEMA II; Florida ICE FEMA Group; FEMA $$$; FEMA 2025 Disaster Plan; FEMA ESEC; FEMA IT; FEMA Messaging; MS FEMA Trip; FEMA Prep Team; FEMA 2; FEMA OPE Coord; FEMA Videos; and FEMA 2.0. *Id.*; *id.* at 155:20-157:12; *id.* at 162:8-165:11. Kara Voorhies was a member of eight of those groups, Karen Evans was a member of four of those groups, and other participants included various officials and employees of Defendants, including agency counsel. *Id.* at 162:13-165:11.[2] That list of Signal messages that Guy read on the first day of his deposition included only the hits for the search term "FEMA" in

[1] Deposition transcripts and deposition exhibits cited in this motion have been filed today as evidence in support of Plaintiffs' supplemental brief in support of their preliminary injunction motion.

[2] In fact, Defendants have sought to claw back Signal messages produced by Voorhies by asserting attorney-client privilege, indicating that agency counsel used Signal chats to exchange messages with agency officials who were using their personal phones. Hoshijima Decl. ¶6.

the Signal chat name and did not include many other work-related chats or individual chats. *Id.* at 139:13-141:21. At the second day of his deposition, Guy again confirmed that he was a participant in additional Signal group chats related to FEMA. 5/15 Guy Dep. 47:22-57:12. He also admitted that the content of those chats related to FEMA business. *Id.* at 59:16-72:2.

Karen Evans similarly tried to downplay her use of Signal for work-related messages, only for further discovery to show otherwise. On the first day of her deposition, she admitted that she used the Signal application on her personal phone to communicate about FEMA matters with other DHS and FEMA officials, including then-DHS Secretary Kristi Noem, Chief Advisor to the Secretary Corey Lewandowski, Guy, and Voorhies. 3/31 Evans Dep. 141:5-142:6, 146:24-148:10, 149:18-152:6, 160:22-161:22. When asked to identify "all of" the group chats on her Signal application involving FEMA business, she identified just three. *Id.* 152:23-155:11. Defendants subsequently produced only three Signal screenshots from Evans' phone, which confirmed that Evans had used the group chats to discuss FEMA staffing. ECF 350-1 ¶ 3 & Ex. A-C. In a screen capture of the "FEMA 2.0" group chat, DHS Senior Advisor Voorhies asked Evans to provide FEMA staffing information "for the overall staffing plan." ECF 350-1 at 7. In another screenshot, Voorhies and Evans discussed a "re-org plan" due March 31.[3]

As it turns out, Evans had not been forthcoming about the number of Signal chats she was involved in. Evans' testimony on the first day of her deposition, and the first set of Signal screenshots produced by Defendants, dramatically understated the extent of her use of Signal to discuss FEMA staffing. On April 29, 2026, in response to this Court's further order requiring a search of Evans' phone, ECF 351, Defendants produced a handful of additional images from Evans' personal phone. These included a chat called "FEMA Rapid Response," which contained messages about short-term CORE extensions and CORE separations. ECF 356 at 2; Hoshijima Decl. Ex. A. That production also included one-on-one messages between Guy and Evans discussing CORE renewals. Hoshijima Decl. Ex. B. The Court ordered her phone searched again. ECF 362, 377, 386. Eventually, in response to these further Court orders, Defendants produced 47

---

[3] Staffing plans from FEMA program offices and regions were due on March 31, 2026, and those plans were "directly related" to "CORE renewals." 3/31 Evans Dep. 331:9-16, 337:4-11.

Signal chats from a backup that Evans had made on her personal computer on April 25, 2026.  ECF 396 at 1-3; 5/26 Evans Dep. 50:18-52:20; Hoshijima  Decl. ¶4.  Those chats included discussion of COREs.  5/26 Evans Dep. 44:1-19.

Kara Voorhies testified at a deposition and produced FEMA-related communications from her personal phone in response to a Rule 45 subpoena.  Voorhies produced screenshots from 27 FEMA-related chats that still existed on her phone as of her May deposition.  Hoshijima Decl. ¶ 5.  Those chats included one-on-one chats as well as group chats titled FEMA QUEENS; FEMA RIF; FEMA Sanity Club; Karen Gregg Kara + Joe; FEMA 2.0; FEMA HQ; and FEMA Rapid Response; Advisor/Counselor Co…; Disaster Response Up…; DR Action Group; Winter Storm Team.  *Id.* That list of FEMA-related group chats was likely underinclusive.  Voorhies produced only the chats that hit on search terms, so her production would not have included any chats where all responsive communications had already disappeared.  Voorhies Dep. Tr. 205:7-16; Depo. Ex. 148.

Voorhies testified that she, Evans, and Guy were part of the "FEMA RIF" Signal group and that they discussed issues related to reductions in force at FEMA.  Voorhies Dep. 138:18-139:22; Dep. Ex. 138.  She also produced messages from the "FEMA Rapid Response" Signal group that included discussions of CORE terminations among agency officials.  5/15 Guy Dep. 107:24-111:15; Dep. Ex. 220.  Voorhies testified that overall there were a significant number of Signal chats among DHS and FEMA officials, and that "I was using Signal because my client was DHS and *that's what they preferred to use to communicate*."  Voorhies Dep. 92:22-93:1, 206:3-11 (emphasis added).

## II.    Signal Messages from Key Time Periods Have Been Lost Because Government Officials Set Them to Auto-Delete, and Defendants Failed to Preserve.

Defendants' high-level officials set their Signal messages to disappear after set time periods, despite awareness of federal record-retention requirements, yet Defendants took no meaningful preservation measures at all, including as they took action to downsize FEMA and after this litigation was filed.  The result was the loss of likely relevant communications by key agency officials during key time periods.  Not only did Defendants fail to take the record retention measures required by law and Department policy or any other reasonable preservation measures,

but their officials submitted misleading or untrue testimony about preservation measures, despite their counsel's knowledge of the existence of these communications and auto-delete settings. And Defendants took further actions during this litigation that caused additional loss of relevant information.

### A.    Government Officials Set Signal Chats to Auto-Delete, Which Led to Loss of Information.

Defendants have never fully complied with this Court's order to produce all documents pertaining to FEMA CORE renewals or staffing plans because Defendants did not produce documents from Signal from all custodians who are revealed in the Signal chats that Plaintiffs were able to obtain from Evans and Voorhies. Nonetheless, the materials Plaintiffs did obtain revealed dozens of Signal chats that used auto-delete message settings ranging from four-week to one-day deletion periods.[4]

Guy revealed 18 FEMA-related chats with auto-delete settings at his deposition. Of the 47 chats produced by Evans from the April 25 back-up, at least 15 appear to have been set to auto-delete. Hoshijima Decl. ¶4. Likewise, of the 27 chats produced by Voorhies from those with content remaining on her phone on May 11, at least four contained auto-delete settings. *Id.* ¶5

The best illustration of the loss of relevant information is the "FEMA 2.0" Signal group chat, which comprised three key officials: Joseph Guy, Kara Voorhies, and Karen Evans. ECF 356-3 at 1. Defendants have produced only two "screenshots" that capture any substance from the FEMA 2.0 group chat. The first image—a photo of Evans' personal phone screen taken haphazardly on another phone on March 5, 2026—shows that the officials used "FEMA 2.0" to discuss FEMA staffing. ECF 350-1, Ex. A; ECF 356-3 at 1. Specifically, DHS instructed FEMA to provide staffing numbers for "the overall staffing plan." *Id.* The cut-off bottom of a prior message at the top of the screen showed that there were more messages earlier in the chat, but all

---

[4] Signal does not, by default, delete messages after a set time period. Hoshijima Decl. ¶7. But Signal offers participants in a chat the option to affirmatively engage auto-deletion settings, with a range of deletion timeframes (from 30 seconds through four weeks, or custom). *Id.* Signal informs its users: "When enabled, new messages sent and received in this chat will disappear after they have been sent." *Id.*; *see also* https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages ("Disappearing messages can be managed by anyone in the chat.").

those messages were set to auto-delete in four weeks. ECF 350-1, Ex. A. The second image, not initially produced by Defendants, showed discussions between Guy and Voorhies about Corey Lewandowski's desire to push "easy money" out of the Disaster Relief Fund—plainly also a work-related communication. Hoshijima Decl. Ex. C.

There is good reason to believe that prior messages in the FEMA 2.0 chat, which were deleted because of the auto-delete settings, were relevant to this case. Evans created the FEMA 2.0 chat on November 15, 2025, and it was in use through at least March 2026. Although Evans tried to claim that she "d[id]n't recall how much we used FEMA 2.0" before March 2026, 3/31 Evans Dep. 19:8-20:13, and Guy claimed not to remember whether they used FEMA 2.0 to discuss COREs, 5/15 Guy Dep. 41:17-43:15, those evasive answers cannot be credited. FEMA 2.0 was the group chat between three key DHS and FEMA officials involved in the challenged decisionmaking; "FEMA 2.0" is the exact phrase that was used in the draft FEMA Review Council report to refer to a radically reduced FEMA with half the number of staff, ECF 350 at 10; and one of the two screen captures produced from the chat shows DHS instructing FEMA to provide staffing numbers for a staffing plan.

By the time Defendants finally tried in May 2026 to collect more messages from the FEMA 2.0 chat on Evans' phone, no messages remained in the chat. ECF 397-1 at 11; ECF 396 at 1-3. Even the few messages that had been shown in the March 2026 image had been deleted. *Id.* No messages from the "FEMA 2.0" chat remained on Guy's phone either. 5/15 Guy Dep. 35:6-37:18. Nor were any messages from the FEMA 2.0 chat preserved on Voorhies' phone. ECF 397-1 at 13-14. Thus, other than the few messages shown in the two screen captures that Defendants produced, all messages from the FEMA 2.0 chat dating back to Evans' creation of the chat in November 2025 have been lost. ECF 350-1, Ex. A; ECF 356-3; ECF 397-1 at 11, 13-14. As Defendants admitted, that was because "the messages were set to disappear and no longer exist." ECF 397-1 at 5.

Data from relevant time periods were also lost from other Signal individual and group chats between DHS and FEMA officials that were used for government business. Evans confirmed that she had various Signal chats with one-week auto-delete settings, including her one-on-one chat with Guy. 5/26 Evans Dep. 37:3-13, 39:2-40:16. In one instance, a DHS official asked Evans

about "guidance on COREs at FEMA," then set the disappearing message timer to one week, with the result that any response by Evans had been deleted by the time the chat was collected. *Id.* at 40:13-41:4. Other Signal chats on Evans' phone were set to one-day auto-delete periods. *Id.* at 42:24-44:16.

All data from key time periods was also lost from Guy's phone. Guy identified dozens of FEMA-related Signal chats, and none had messages remaining on them. 5/4 Guy Dep. 145:20-23. Most of those groups were set to auto-delete messages after one week. *Id.* at 141:2-146:1, 155:20-157:18. The auto-delete periods he admitted to were: FEMA Comms (one week); FEMA-HQ (one week); FEMA Data Hunt (one week); FEMA Grants (one week); Good FEMA (one week); DOGE FEMA (one week); FEMA ORR Awareness (one week); HQ-FEMA (one week); NC FEMA (one week); FEMA Region 6 (one week); FEMA DH Leadership (one week); Florida ICE FEMA Group (one week); FEMA $$$ (one week); FEMA IT (one week); FEMA Messaging (one week); FEMA Prep Team (one week); FEMA 2 (one week); and FEMA 2.0 (one week). *Id.*

### B.    Defendants Took No Meaningful Preservation Steps.

All these Signal chats were lost because Defendants took no meaningful preservation measures. The high-level officials running DHS and FEMA were well aware of their own extensive use of Signal, and indeed, DHS counsel participated in Signal chats with these individuals. The communications were plainly government work-related communications that had to be retained as federal records. There is no excuse, at all, for Defendants' intentional use of personal devices for electronic work-related communications that they did not preserve.

Although it is not Plaintiffs' obligation to identify for Defendants where their discoverable communications may exist, from the outset of the expedited discovery period, Plaintiffs insisted that "Signal messages… should have been identified and preserved by Defendants even before the Court's production order." ECF 327 at 4. Yet there is no indication that Defendants took any reasonable preservation measures to ensure that those communications would not be deleted. They never turned off auto-delete settings, never proactively collected disappearing information before it was auto-deleted, and never enforced their own record-preservation requirements. Even when

Evans took belated measures to create Signal backups in late April, she did not disable the auto-delete settings.

When finally pressed into disclosing preservation measures by deposition questions and court orders, Defendants' high-level officials made statements about preservation measures that were at a minimum misleading, and more likely, simply untrue. Evans, a named Defendant in this case, testified at her deposition that she selectively preserved some Signal messages that she "determined were appropriate records" by sending screenshots of those messages to herself through her work email account. 3/31 Evans Dep. 155:12-157:8. She doubled down on that testimony in her sworn declaration. ECF 356-1 at 1. But Defendants have never produced any such emails or any evidence that such emails ever existed. In fact, when the Court ordered Defendants to produce "all FEMA-related Signal chats from Evans's phone," ECF 362 at 2, they were unable to produce Signal chats from the supposed preservation-by-email method. Instead, they had to resort to restoring a backup that Evans had created of her Signal messages, which she had inexplicably (and at least improperly, if not unlawfully) kept on "her personal desktop computer." ECF 396 at 1. Even more inexplicably, Evans had apparently made that backup on April 25, 2026, ECF 396 at 2, but did not mention it in her April 29, 2025 preservation declaration, ECF 356-1, and did not produce any messages from that backup until the Court issued further compliance orders.

Notably, Evans revealed at her second deposition that Defendants' counsel were aware of the Signal backup on her personal computer as of April 25, prior to the Court's production deadlines of April 29 and May 4 and the submission of Evans' misleading declaration on April 29. 5/26 Evans Dep. 58:2-59:13; ECF 351, 356-1, 364. Yet Defendants did not produce documents from this backup in compliance with the April 29 or May 4 production deadlines, and neither Defendants nor their counsel disclosed the backup's existence to the Court or to Plaintiffs in their notices of "substantial" or "partial" compliance, ECF 356, 364 It was only after more Court orders, ECF 362, 377, 386, that Defendants finally accessed the backup and produced communications that remained on it.

In any case, that belated backup was made months after the start of this litigation and the most relevant time periods. ECF 396 at 2; 5/26 Evans Dep. 34:9-36:9. By the time of that backup,

all messages on the FEMA 2.0 chat had already been lost, and the version of the FEMA 2.0 chat produced from the backup contained no messages at all.  ECF 396 at 1-3; ECF 397-1 at 11; 5/26 Evans Dep. 29:13-30:22.  As Defendants admitted, the backup was ineffective because "messages in the FEMA 2.0 chat were set to disappear and did disappear."  ECF 397-1 at 4.

Guy also provided false statements about preservation, and his testimony also showed that Signal messages from the relevant period were lost.  Guy's declaration admitted that "Signal messages on [his] personal device were not preserved," but he represented that was because "[i]t was my understanding that Karen Evans was preserving any work-related Signal messages, including from the FEMA 2.0 Chat."  ECF 359-1 at 1.  That explanation turned out to be baseless. Guy admitted at his deposition that he had no basis for any understanding that Evans was preserving his Signal messages, and that such a statement made no sense because Evans was not even party to all of his Signal messages; he then tried to claim that DHS staff were responsible for preserving his Signal messages, but admitted that DHS staff did not have access to his personal phone to be able to do so.  5/4 Guy Dep. 53:14-54:10, 76:18-77:3, 119:19-124:14, 132:1-25.

## C.     During this Litigation, Defendants Took Further Steps that Caused the Loss of More Data.

Not only did Defendants fail to take reasonable measures to preserve data that was set to auto-delete, and not only did Defendants' high-level officials misrepresent their preservation measures, but the officials also took affirmative actions that led to more loss of data even after litigation was filed and discovery ordered.  When Evans created the FEMA 2.0 chat group in November 2025, she set the auto-delete timer to four weeks.  ECF 397-1 at 11, 13.  Then, on March 11, 2026—during this litigation and after this Court's production orders—Evans *shortened* the auto-delete timer to one week.  ECF 397-1, Ex. C; ECF 350-1, Ex. A.  That was *after* the Court had ordered expedited discovery, ECF 328, which Evans knew about, 5/26 Evans Dep. 47:7-49:2. This was also *the day after* DHS had sent out an agency-wide record preservation reminder that included Signal, which Evans admitted to having received, ECF 332-1 at 2-3; 5/26 Evans Dep. 11:9-12:17.  On March 11, 2026, Evans also shortened the auto-delete timer on a number of other FEMA-related Signal chats on her personal phone.  5/26 Evans Dep. 32:12-33:20.

Evans' April 29, 2026 preservation attestation disclosed nothing about having recently shortened the auto-delete settings on FEMA-related Signal chats. ECF 356-1. Evans also testified at the second day of her deposition that she deleted Signal messages from her personal phone after supposedly emailing screen captures of the messages to her work email. 5/26 Evans Dep. 15:1-17:21. But as explained above, there is no evidence that Evans ever did preserve FEMA-related Signal messages by sending them to her work email, and if she did, it was based on what appears to be an overly narrow self-selection. It seems, then, that what Evans actually did was to delete work-related Signal messages from her personal phone without creating any record of those messages.

Guy and Evans both also reinstalled the Signal application on their phones during this litigation, which resulted in the destruction of data. Evans testified that she reinstalled the Signal application on her phone in May 2026, which resulted in the deletion of content from her phone. *Id.* 77:17-81:24. She did so with Defendants' counsel's knowledge. *Id.*

Guy also admitted to actions that resulted in the loss of data. At his deposition, Guy admitted that he had reinstalled his Signal application days before his May 4, 2026 deposition, which resulted in the loss of data. 5/4 Guy Dep. 90:8-91:19. That was despite the Court's May 1, 2026 order that his personal phone be searched before the deposition and that he bring his phone to that deposition. ECF 362. As a result of his actions, the Signal application on his personal phone deleted everything prior to April 30, 2026. 5/4 Guy Dep. 152:20-153:15. At first, he testified that he had reinstalled his Signal application on the night of May 1, *id.* at 91:1-23, but after being confronted with this Court's May 1 order, *id.* at 91:24-92:18, he eventually claimed that he had deleted the account on April 30 (when he still would have been employed by Defendants), *id.* at 152:6-154:4. Either way, the loss of data raises significant concerns. Although he claimed that he had done the reinstallation that led to data loss in an attempt to restore backup messages, *id.*, that explanation was implausible because he admitted that he had done so without even attempting to read Signal restoration instructions, *id.* at 148:1-151:16. Moreover, documents produced later revealed that former DHS Principal Deputy Chief of Staff Troup Hemenway, with whom Guy had long worked, also reinstalled his Signal account on the same day—suggesting the possibility of a concerted effort to destroy information. 5/15 Guy Dep. 25:20-30:14. Finally, on April 28, when

Guy was still in the employ of Defendants, he shortened the auto-delete settings on his Signal chat with Voorhies to one day after they talked to each other about their depositions—then, he tried to claim that Voorhies, not him, was the one who had shortened the auto-delete setting.  5/15 Guy Dep. 16:18-21:3; 5/4 Guy Dep. 165:12-166:25.  He did so just one week after the Court said that it was "seriously troubled" by the four-week auto-delete setting that Evans had set for the FEMA 2.0 chat.  ECF 351 at 4.

All this happened even though Defendants' officials knew, or should have known, about federal records retention requirements.  Evans was the former Chief Information Officer at DHS, and the Energy Department, and she was also administrator of the Office of Electronic Government and Information Technology at OMB.  3/31 Evans Dep. 32:6-33:23.  As the Chief Information Officer she was the official designated under federal law as responsible for record retention requirements for all of DHS.  5/26 Evans Dep. 63:11-64:6.  She even testified to Congress on the protection of government information and wrote government-wide instructions to agencies.  *Id.* at 61:1-63:10.

At all times, federal law and DHS policies were clear regarding the need to preserve government work-related communications even if conducted on personal devices.  44 U.S.C. § 3101.  In early March 2026, DHS sent out an agency-wide record-preservation reminder that Signal messages "must be archived"; that "[a]ll work-related communications and records are considered official government records and must be preserved, regardless of format"; and that "DHS policy *requires* employees to use work devices for *all* work-related activities."  ECF 332-1 at 2 (emphases added).  Defendants' high-level officials apparently considered themselves free to disregard that policy.

### III.    Defendants Tried to Conceal This Practice Throughout Discovery.

Not only did Defendants circumvent preservation requirements by systematically conducting high-level official communications through disappearing messages on personal phones, but they also tried to conceal that practice throughout the discovery process.  The above facts came to light only after this Court issued multiple orders requiring discovery and mandating Defendants' compliance.  Defendants initially refused to even acknowledge their officials' practice of using

disappearing Signal messages on personal phones, and then when discovery made that practice impossible to deny, Defendants still refused to produce the communications. Defendants eventually produced some of what little remained of the relevant evidence, little by little, only because of a series of Court orders. At every stage, Defendants' litigation conduct was aimed at concealing the loss of evidence. And it led to the destruction of evidence that would have been preserved if they had complied from the start with their legal obligations.

The Court initially ordered expedited discovery because Defendants' counsel attempted to represent facts contrary to Evans' sworn testimony that DHS made the decisions to separate COREs. ECF 322 at 30:7-8. As a result, the Court ordered Defendants to "produce documents related to the renewals/nonrenewals of CORE employees" and to "produce communications from DHS and FEMA, including email communications, regarding the renewals/nonrenewals of CORE employees as well as 'target' reductions of FEMA and CORE employee staffing." ECF 321 at 2.

Defendants did not fully comply with that order. If they had, they would have identified and produced their high-level officials' responsive Signal messages at the outset. Given the widespread practice of DHS and FEMA high-level officials communicating outside official government channels, even a bare minimum investigation would have identified those messages. But instead, Defendants first refused to even admit the existence of those communications and then refused to search for them or disclose them. By the time Plaintiffs obtained deposition testimony admitting the existence of any work-related Signal chats on personal phones, and further compliance orders from the Court, many Signal messages that would have still existed if Defendants had timely complied with this Court's orders had been lost.

From the beginning, Plaintiffs were clear that compliance with the Court's expedited discovery order would require Defendants' searches to include "electronic communications including through Signal and other messaging platforms." ECF 327 at 1, 4. But on the Court-ordered production deadline, ECF 328 at 2, ECF 330, Defendants did not produce any phone communications, ECF 332 at 1-2. Defendants refused to even search for phone communications and argued that Plaintiffs had not "provided evidence that any custodian engaged in messaging on Signal." ECF 333 at 5 & n.3.

After the Court ordered the production of electronic phone communications, ECF 336 at 1, Defendants proclaimed to the Court how extensively they had searched custodians' work phones, ECF 337 at 1-2, without disclosing that DHS and FEMA business was in fact being conducted on personal phones, not work phones.  Plaintiffs had specifically asked that Defendants' searches "include personal phones used for government business," but Defendants refused.  ECF 337-1 at 2.

Defendants were forced to acknowledge the existence of official communications on personal phones only after Plaintiffs obtained deposition testimony from Karen Evans that she and other DHS and FEMA officials, including Guy, communicated with each other using Signal messages on their personal phones.  ECF 341 at 8.  Even then, Defendants continued to argue that official communications on high-level government officials' personal phones were not subject to discovery and asked that discovery be stayed altogether.  ECF 344 at 14, 17.  Defendants represented to the Court (inaccurately, *see supra* Background Section II) that "[a]ny relevant communications… already exist in email form" because Evans had said that she took pictures on her personal phone of messages that are federal records and sent them to her DHS email for preservation.  *Id.* at 14 (citing 3/31 Evans Dep. 155:12-15, 156:1-25).  Defendants also represented in a court filing that "the custodians whose personal phones remain of interest to Plaintiffs *did not communicate* on their personal phones regarding COREs renewals or target staffing reductions."  *Id.* at 15 (emphasis in original).  Defendants then produced only three images containing a handful of messages on single days, which confirmed both that DHS and FEMA officials were conducting agency business on personal phones and that Signal messages on her "FEMA 2.0" chat were set to auto-delete after four weeks.  ECF 350-1 ¶¶3-6 & Ex. A-C.

On April 22, the Court rejected Defendants' request to stay discovery and instead ordered discovery into official agency communications on high-level officials' personal phones, remarking that the Court was "seriously troubled" about Evans' auto-deletion settings.  ECF 351 at 4.  Yet again, Defendants did not comply with this Court's order.  As to Evans, on April 29, they produced just five additional screenshots of Signal messages from her personal phone—which showed that both the group chat "FEMA Rapid Response" and her messages with Guy were set to auto-delete after one week.  Hoshijima Decl. Ex. A-B.  Also on April 29, Defendants also filed a declaration

from Evans claiming that she "ha[s] preserved all FEMA-related communications on [her] personal phone" and that "[s]pecifically," she did so by "t[aking] appropriate screen shots of such messages before deletion." ECF 356-1 at 1. As to Guy, who was at the time still Defendants' employee, Defendants did not provide the Court-ordered attestation of preservation or conduct the ordered search—and provided no explanation for why they had not complied with that Court order. *Id.*; ECF 358 at 1 n.1. More Court orders were required to obtain Defendants' compliance. ECF 362, 377, 386; May 5, 2026 Hearing Tr. 9:8-12:8, 21:8-17.

Eventually, Defendants conducted two rounds of searches of Guy's personal phone. First, while Guy was still a high-level official employed by Defendants, Defendants submitted his declaration stating that he had conducted a self-search of his personal phone and that he had not found any responsive documents. ECF 359-1 ¶ 4. Second, after the Court found that a self-search did not comply with the Court's order, ECF 361 at 1, Defendants performed another search, produced just one document, and claimed that they had found no responsive hits for key terms like "FEMA." ECF 364 at 1; ECF 364-2 at 2-5. It did not take long for further discovery to show that Defendants' searches had been wholly ineffective. When Guy was asked by Plaintiffs' counsel to search his Signal chats for the word "FEMA," he quickly identified at least 27 FEMA-related Signal chats with "FEMA" in the title on his phone that Defendants had not previously disclosed. 5/4 Guy Dep. 143:21-145:19, 155:20-157:12, 162:8-165:11. Moreover, that deposition testimony showed that Defendants' counsel had not been forthcoming to the Court and to Plaintiffs. When Defendants had filed their notice reporting that they had not found any hits on Guy's Signal application for the word "FEMA," Defendants had not disclosed that they knew that Guy had lost the substance of all the Signal messages on his personal phone when he tried to reinstall the Signal application just before Defendants' search. 5/4 Guy Dep. 92:19-95:19, 105:12-105:23. There is no excuse for counsel for Defendants' failure to disclose to the Court that they knew they were reporting search results from a phone whose contents had just been wiped.

As to Evans, Defendants twice failed to comply with the Court's orders requiring production of FEMA-related Signal chats from her personal phone. ECF 362 at 2; ECF 364 at 1; ECF 377; ECF 383 at 2. According to Evans, counsel was aware of the Signal backup created on

PLS.' MEM. IN SUPPORT OF MOTION FOR RULE 37(E) REMEDIES, No. 3:25-cv-03698-SI

15

April 25.  5/26 Evans Dep. 58:2-59:13.  Yet Defendants and their counsel did not disclose the backup to this Court when filing their various notices and declarations.  The backups were not produced until May 12, after multiple further orders from this Court.  ECF 396 at 1-3.  It was only after that production, at Ms. Evans' continued deposition, that Plaintiffs confirmed that Evans too had reinstalled Signal and deleted content on her phone.

Without all this discovery, which came about only after Defendants repeatedly resisted compliance with the Court's orders and Plaintiffs sought and this Court issued successive orders requiring such compliance, Defendants' systematic use of Signal on personal phones to conceal their actions would not have come to light.  Nor would Defendants have disclosed that communications by the key officials involved in FEMA staffing decisions in the critical time periods have been lost.  Much of this discovery could have been avoided if Defendants had been forthcoming, but instead, Defendants tried to resist and deny at every step—making it necessary for Plaintiffs to seek, and the Court to issue, a series of discovery orders that slowly dragged these disclosures out of Defendants.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 37(e) addresses the appropriate remedy when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."

The Rule provides two avenues to address that situation.  First, under Rule 37(e)(1), the court, "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice."  Second, under Rule 37(e)(2), the court, "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may" take one of three actions, including to "presume that the lost information was unfavorable to the party."

"The Ninth Circuit has not set forth a specific standard of proof, but district courts in this Circuit apply a preponderance of the evidence standard in making findings to determine whether to

impose spoliation sanctions under Rule 37(e)." *Morehead v. City of Oxnard*, No. 2:21-cv-07689, 2023 WL 8143973, at *4 (C.D. Cal. Oct. 4, 2023).

## ARGUMENT

### I.    Signal Communications Were Lost Because Defendants Failed to Preserve Them.

Defendants have lost official government communications conducted through disappearing messages on personal phones because Defendants did not take any reasonable preservation measures. Not only did they fail to do anything to avert the loss of information, but the actions that they did take resulted in further loss of relevant information. The contemporaneous communications from the relevant time periods cannot be restored or replaced through additional discovery, as even the belated backup did not restore messages from the critical time period and Defendants' witnesses failed to present credible testimony that could come close to replacing the lost evidence.

Defendants have admitted that they have lost electronic information. As they stated, "messages in the FEMA 2.0 chat were set to disappear and did disappear." ECF 397-1 at 4; *see also id.* at 5 ("[T]he messages were set to disappear and no longer exist."). Indeed, Defendants only ever produced two screenshots of the FEMA 2.0 chat, and earlier messages—especially from the time periods most relevant to this lawsuit—were never produced.

What remains of the Signal messages is sufficient to show that the lost data was of the type that should have been preserved. DHS and FEMA officials regularly used disappearing messages on personal phones to conduct a variety of agency business, including specifically to discuss FEMA staffing. *Supra* Background Section I. There is direct evidence that the "FEMA 2.0" group chat made up of three key DHS and FEMA officials was used to discuss FEMA staffing. *Id.* But all messages on that chat between the time of its creation in November 2025 and March 2026 have been lost, which means that communications between three key officials for the most relevant time period are now unavailable. The period of loss includes official communications in late December 2025, when decisions were made to separate CORE employees; several weeks in January 2026, when the separation decisions were being implemented; and further implementation in mid to late January 2026 when the offboarding of COREs was temporarily paused in the leadup to a winter

storm, and DHS then pivoted to short-term renewals of COREs. Beyond the FEMA 2.0 group, likely relevant messages have been lost from dozens of FEMA-related Signal chats on the government officials' personal phones. *Id.*

Defendants had an obligation to preserve that information. When DHS and FEMA began to implement a secret plan to cut FEMA in half by indiscriminately separating a large number of COREs at the beginning of January 2026, "it was certainly foreseeable that civil litigation could arise." *Gregory v. State of Montana*, 118 F.4th 1069, 1078 (9th Cir. 2024); Fed. R. Civ. P. 37 advisory committee's notes ("[P]otential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable."). After all, DHS was already a Defendant in this suit— and had been since last spring—in which Plaintiffs have been challenging large-scale reorganization and staff reductions by federal agencies. ECF 1. At a minimum, Defendants had "actual knowledge" of the supplemental complaint by January 26, 2026. ECF 290-2 ¶2.

Moreover, entirely independent of the possibility of litigation, the official agency communications were required to be preserved. The Federal Records Act requires agencies to both "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." 44 U.S.C. § 3101. That is why "Department-wide Outlook and Teams messages are automatically retained and preserved," as the DHS Chief Information Officer stated in a recent record-preservation reminder. ECF 332-1 at 2. Beyond that, Department policy required that "[i]f employees send work-related messages using a phone's… encrypted app such as Signal… those messages must be archived." ECF 332-1 at 2. "When using electronic messaging on your phone (SMS, iMessage) or encrypted apps (such as Signal or WhatsApp), please remember: *All* work-related communications and records are considered official government records and must be preserved, regardless of format." *Id.* (emphasis added). To enable that preservation, "DHS policy *requires* employees to use work devices for *all* work-related activities." *Id.* (emphasis added). DHS and FEMA officials operated in utter disregard of these record-preservation requirements, deliberately avoiding the official communication channels with automatic retention policies, in a knowing failure to preserve information that they knew should have been preserved.

Preservation was within Defendants' control.  Government officials, including Defendant Evans herself, made the decisions to set their Signal messages to automatically delete.  *Supra* Background Section II.A.  Given the widespread nature of the practice, Defendants participated in, and countenanced, high-level officials' use of disappearing Signal messages for official agency communications without preserving them as federal records.  Defendants failed to turn off auto-delete settings, proactively collect disappearing information before it was auto-deleted, or enforce the Federal Records Act and Department policy requirements that Defendants knew their officials were regularly violating.

This is not a situation where data was lost due to an accident or events outside of Defendants' control.  "[G]ood-faith operation of an electronic information system would be a relevant factor for the court to consider in evaluating whether a party failed to take reasonable steps to preserve lost information." Fed. R. Civ. P. 37 advisory committee's notes.  In contrast, the loss here was because Defendants systematically relied on an unofficial communication medium for the purpose of circumventing the record-preservation mechanisms for official channels.  This also was not an inadvertent mistake by a party that is "less familiar with preservation obligations," Fed. R. Civ. P. 37 advisory committee's note, but rather a failure to meet preservation requirements by a "sophisticated party" with ample experience in litigation, *Est. of Bosco by & Through Kozar v. Cnty. of Sonoma*, 640 F. Supp. 3d 915, 926 (N.D. Cal. 2022).  Indeed, far from taking reasonable preservation measures, the actions that Defendants' officials did take—shortening auto-delete timeframes during this litigation and inexplicably reinstalling Signal in a way that ended up wiping data—almost certainly caused additional loss of relevant data.  *Supra* Background Section II.

Additional discovery cannot take the place of the lost information.  This is not a situation where electronically stored information "exists in multiple locations," such that "substitute information can be found elsewhere."  Fed. R. Civ. P. 37 advisory committee's notes.  The Signal messages are the "only contemporaneous record" of the decisionmaking.  *Porter v. City & Cnty. of San Francisco*, No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at *4 (N.D. Cal. Sept. 5, 2018).  Unlike other types of electronically stored information that might be stored in different locations, Signal messages are encrypted and, in many of the chats at issue, were set by Defendants' officials

to disappear automatically.  Indeed, the fact that Signal messages are not saved elsewhere must be exactly why Defendants' officials were relying extensively on Signal communications on their personal devices—to escape disclosure and accountability for their actions.  Defendants' late-disclosed and belated backup of Signal messages from Evans' personal computer did not restore the lost information, and the self-serving testimony of Defendants' officials cannot replace contemporaneous evidence.

## II.    The Court Should Remedy the Loss Under Rule 37(e)(1).

Rule 37(e)(1) authorizes the Court to remedy prejudice from the loss of information.  Plaintiffs have been prejudiced by being deprived of the opportunity to use contemporaneous communications to contest or impeach Defendants' witnesses' self-serving testimony about their decisionmaking.  To remedy that prejudice, the Court should exclude any testimony from Defendants' witnesses that denies Defendants' plan to substantially reduce FEMA staffing and to implement that plan by indiscriminately separating CORE employees, or denies that DHS directed the FEMA staffing decisions and actions at issue.

The Federal Rules recognize that "[d]etermining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair."  Fed. R. Civ. P. 37 advisory committee's notes.  Courts have distinguished between situations in which a party "has caused a specific document to disappear, such as a contract or a deed" that both parties know of, and situations in which the loss of evidence has deprived a party even of "information as to the exact content of the destroyed documents." *Ritchie v. United States*, 451 F.3d 1019, 1024 (9th Cir. 2006).  The latter is the situation here.  Plaintiffs have had no opportunity to know exactly what the lost Signal communications said.  In circumstances like this, all that is necessary for Plaintiffs to show is "a very slight showing that the documents are relevant," *id.*, or "plausible, concrete suggestions as to what the destroyed evidence might have been," *Khan v. S.F. Dep't of Public Health*, No. 24-CV-09289-LJC, 2026 WL 1433089, at *7 (N.D. Cal. May 21, 2026).

There is enough evidence of what the lost Signal messages would likely have shown to support a finding of prejudice.  The evidence that Plaintiffs have obtained notwithstanding the

spoliation shows that DHS had a plan to substantially reduce FEMA's workforce and that implementation of the plan began with CORE reductions, and that DHS directed FEMA to implement that plan, as shown in Plaintiffs' concurrently filed supplemental brief in support of their preliminary injunction motion. The evidence conclusively establishes that DHS and FEMA officials used Signal messages to discuss agency business, including staffing matters, which is enough to show that the lost communications likely would have been relevant to DHS's plan and its implementation.[5]

The appropriate remedy for such prejudice is exclusion of evidence. Defendants are likely to rely on self-serving testimony by DHS and FEMA officials to deny the existence of any such plan or implementation measures, and Plaintiffs are deprived of the opportunity to test such testimony using the officials' contemporaneous communications. To remedy that prejudice, the appropriate remedy is to exclude such testimony that Plaintiffs will not have a chance to fairly contest.

Exclusion of evidence is an available remedy under Rule 37(e)(1). The "range of such measures [available under Rule 37(e)(1)] is quite broad," and "[m]uch is entrusted to the court's discretion." Fed. R. Civ. P. 37 advisory committee's notes. An option is "to exclude a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence." *Id.*; *Jones v. Riot Hosp. Grp. LLC*, No. CV-17-04612, 2022 WL 3682031, at *2 (D. Ariz. Aug. 25, 2022) (excluding testimony where lost phone made it impossible for opposing party to test veracity), *aff'd*, 95 F.4th 730 (9th Cir. 2024); *Kuen Hwa Traffic Indus. Co. v. DNA Motor, Inc.*, No. 2:18-CV-5664-RGK(SKx), 2019 WL 4266811, at *2 (C.D. Cal. July 10, 2019) (excluding testimony related to lost text messages under Rule 37(e)(1)). Excluding self-serving testimony from Defendants' witnesses that denies the existence of a FEMA

---

[5] In their evidence in further support of the preliminary injunction motion, Plaintiffs have included a substantial number of examples of DHS decision-making (including by Corey Lewandoski, Joe Guy, and others) conducted and communicated on Signal. Defendants clawed back over 200 of Voorhies' FEMA-related Signal chats on the basis that they reflect deliberative and pre-decisional communications (often between DHS and FEMA). There can be no real argument that the evidence does not show that it is likely that this cast of government officials had significant and directly relevant communications that have been lost.

staff-reduction plan would not prevent Defendants from relying on any contemporaneous documentary evidence that Defendants might use to support their defenses.  All the remedy would prevent is Defendants' witnesses making after-the-fact statements that cannot be tested against their own contemporaneous statements.

In addition, under Rule 37(e)(1), the Court should award Plaintiffs the opportunity to prove the amount of fees incurred in uncovering and addressing Defendants' spoliation.  *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1241 (N.D. Cal. 2022) ("An award of attorneys' fees for bringing a sanctions motion is an appropriate remedy for spoliation under Rule 37(e)(1)."); *Dish Network L.L.C. v. Jadoo TV, Inc.*, No. 20-CV-01891-CRB (LB), 2022 WL 11270394, at *5 (N.D. Cal. Oct. 19, 2022).

**III.    The Court Should Remedy the Loss Under Rule 37(e)(2).**

In addition to an exclusion remedy under Rule 37(e)(1), the Court should adopt an adverse inference under Rule 37(e)(2).  Although a higher bar must be met for Rule 37(e)(2) remedies, Defendants' systematic disregard for preservation obligations, affirmative actions to delete evidence, and litigation conduct aimed at concealing their practices shows a level of intentionality that justifies the stronger remedy.

Where the loss of electronic information resulted from Defendants "act[ing] with the intent to deprive" Plaintiffs of discovery, the Court may "presume that the lost information was unfavorable to" Defendants.  Fed. R. Civ. P. 37(e)(2)(A).  "Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024); *see also Porter*, 2018 WL 4215602, at *3.  "Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Jones*, 95 F.4th at 735.  Once such intent is found, that supports both "an inference that the lost information was unfavorable to the party that intentionally destroyed it" and "an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37 advisory committee's notes.

The Court should find that Defendants acted with the intent to deprive Plaintiffs of discovery. That finding is supported by a combination of Defendants' systematic use of disappearing Signal messages on personal phones, which can only be understood as an effort to avoid discovery, and Defendants' litigation conduct of denying and concealing that practice until they had no choice but to admit it. Defendants' officials regularly set auto-delete periods for federal records that should have been preserved, and Defendant Karen Evans shortened the auto-delete setting on her Signal application after the Court ordered expedited discovery. *Supra* Background Sections I-II. Defendants' officials also took additional actions that resulted in the further loss of evidence during this litigation. *Supra* Background Section II.C.

Yet Defendants and their counsel took no steps to preserve disappearing data, and in fact made every effort to shield this destruction of evidence from the Court and from Plaintiffs. Initially, Defendants denied that discoverable communications were on their officials' personal phones until they had no choice but to admit that. *In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 993 (N.D. Cal. 2023) (finding intent to deprive where a party was not forthcoming about preservation issues and "chose to stay silent until compelled … by the Court's intervention," and where there was "intentionality manifested at every level … to hide the ball"). Even after that, Defendants refused to search or produce those communications and represented to the Court (incorrectly) that all Signal communications had been saved in emails or that their custodians did not use personal phones to communicate about the challenged staffing issues. ECF 344 at 14-15. Then, when the Court ordered production of official agency communications on personal phones, Defendants failed to comply with multiple orders and forced Plaintiffs to keep returning to the Court to obtain compliance. *Supra* Background Section III. On top of that, Defendants' witnesses also presented misleading or untrue declarations and deposition testimony about preservation. *Supra* Background Section II. This "sheer number of obfuscatory actions undertaken" by Defendants to conceal the spoliation is a factor the Court may consider in inferring intent. *Burris v. JPMorgan Chase & Co.*, No. 21-16852, 2024 WL 1672263, at *2 (9th Cir. Apr. 18, 2024).

This evidence overwhelmingly supports the conclusion that Defendants "willful[ly]" destroyed evidence "with the purpose of avoiding its discovery." *Jones*, 95 F.4th at 735. That

conclusion is not negated by the fact that Defendants produced some email communications and electronic documents from their custodians, or that after much resistance they eventually produced a few Signal messages from personal phones. After all, the "production of some evidence does not excuse destruction of other relevant evidence." *Id.* at 736. A separate finding of prejudice is not required under Rule 37(e)(2) because "the finding of intent" supports "not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37 advisory committee's notes. Thus, based on the direct and circumstantial evidence of intent that suffices to meet the Rule 37(e)(2) standard, the Court should presume that the lost Signal communications between key decisionmakers would have been unfavorable to Defendants by showing both the implementation of a mass staffing reduction plan at FEMA and DHS control over FEMA decisionmaking as to such reductions.[6]

## CONCLUSION

The Court should grant this motion and enter the attached proposed order.

DATED: May 28, 2026                    Respectfully submitted,

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Robin S. Tholin
Elizabeth Eshleman
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com

By: */s/ Danielle Leonard*
_____

*Attorneys for All Union and Non-Profit Organization Plaintiffs*

---

[6] Plaintiffs do not seek the harsher, case-dispositive remedy under Rule 37(e)(2)(C) of entering a default judgment against Defendants.

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

By: */s/ Tsuki Hoshijima*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

Jules Torti (pro hac vice)
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)
Matthew Blumin  (pro hac vice)
AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/ Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL
UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorneys for Plaintiff Service Employees International Union, AFL-CIO (SEIU)*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By:  */s/ David Chiu*

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By:  */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

Christopher Sanders (pro hac vice)
General Counsel
Erin King-Clancy (SBN 249197)
Senior Deputy Prosecuting Attorney

PLS.' MEM. IN SUPPORT OF MOTION FOR RULE 37(E) REMEDIES, No. 3:25-cv-03698-SI
27

OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
chrsanders@kingcounty.gov
eclancy@kingcounty.gov

By: */s/ Erin King-Clancy*

*Attorneys for Plaintiff Martin Luther King, Jr. County*

Sharanya Mohan (SBN 350675)
Eliana Greenberg (SBN 366319)
Toby Merrill (pro hac vice)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
eliana@publicrightsproject.org
toby@publicrightsproject.org

By: */s/ Eliana Greenberg*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL,
Harris County, TX, and Martin Luther King, Jr.
County, WA*

Jonathan G.C. Fombonne
Harris County Attorney

Sarah Utley (pro hac vice app. forthcoming)
Managing Counsel
Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel: (713) 274-5102
Fax: (713) 437-4211

jonathan.fombonne@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscoupntytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

PLS.' MEM. IN SUPPORT OF MOTION FOR RULE 37(E) REMEDIES, No. 3:25-cv-03698-SI

By: */s/ Jonathan G.C. Fombonne*

*Attorneys for Plaintiff Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago

Rebecca A. Hirsch (IL ARDC 6279592) (pro hac vice)
City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Rebecca.Hirsch2@cityofchicago.org

By: */s/ Rebecca Hirsch*

*Attorneys for Plaintiff City of Chicago*

Ebony M. Thompson
Baltimore City Solicitor

Christopher Sousa (SBN 264874)
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (410) 396-3947
sara.gross@baltimorecity.gov

By: */s/ Christopher Sousa*

*Attorneys for Plaintiff City of Baltimore*