Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
dleonard@altber.com
bchishom@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*
[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>         Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>         Defendants. | Case No. 3:25-cv-03698-SI<br><br>**SECOND DECLARATION OF DANIELLE LEONARD IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL PRELIMINARY INJUNCTION BRIEFING** |

**DECLARATION**

I, Danielle Leonard, declare as follows:

1.      I am a member in good standing of the State Bar of California and the bar of this Court. I represent all Union and Non-Profit Organization Plaintiffs in this action. This declaration is based on my personal knowledge, information, and belief.

2.      This declaration compiled exhibits from the recent expedited discovery depositions, which were marked consecutively, that are cited in Plaintiffs' supplemental brief, attached here in numberical order with a brief description.

3.      A true and correct copy of Karen Evans' LinkedIn profile is attached as **Deposition Exhibit 1**.

4.      A true and correct copy of U.S. Department of Homeland Security organizational chart is attached as **Deposition Exhibit 2**.

5.      A true and correct copy of the PoliticoPro Article by John Sakellariadis published on June 10, 2025, titled "Top CISA appointee Karen Evans moves to FEMA" is attached as **Deposition Exhibit 3**.

6.      A true and correct copy of the meeting minutes from DHS, FEMA Review Council on May 20, 2025 is attached as **Deposition Exhibit 4**.

7.      A true and correct copy of the meeting minutes from DHS, FEMA Review Council on July 9, 2025 is attached as **Deposition Exhibit 5**.

8.      A true and correct copy of Karen Evans' notes (produced as USA-AFGE-Exp.-0033544 – USA-AFGE-Exp.-0033528) is attached as **Deposition Exhibit 10**.

9.      A true and correct copy of the Draft Final Report of the President's Council to assess the Federal Emergency Management Agency published December 11, 2025 is attached as **Deposition Exhibit 13**.

10.      A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0002353 – USA-AFGE-Exp.-0002357 is attached as **Deposition Exhibit 16**.

11.      A true and correct copy of the FEMA Annual Staffing Plan marked USA-AFGE-Exp.0006542 is attached as **Deposition Exhibit 17**.

12. A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0007333 – USA-AFGE-Exp.-0007343 is attached as **Deposition Exhibit 18**.

13. A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0006535 – USA-AFGE-Exp.-0006538 is attached as **Deposition Exhibit 19**.

14. A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0006686 – USA-AFGE-Exp.-0006688 is attached as **Deposition Exhibit 20**.

15. A true and correct copy of the May 14, 2025 DHS memorandum marked USA-AFGE-Exp.-0000405 – USA-AFGE-Exp.-0000406 is attached as **Deposition Exhibit 21**.

16. A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0004575 – USA-AFGE-Exp.-0004582 is attached as **Deposition Exhibit 22**.

17. A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0010683 – USA-AFGE-Exp.-0010688 is attached as **Deposition Exhibit 23**.

18. A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0006997 – USA-AFGE-Exp.-0006998 is attached as **Deposition Exhibit 24**.

19. A true and correct copy of the "Talking Points for FY26 Staffing Strategy" marked USA-AFGE-Exp.-0034341 – USA-AFGE-Exp.-0034342 is attached as **Deposition Exhibit 25**.

20. A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0014520 – USA-AFGE-Exp.-0014521 is attached as **Deposition Exhibit 26**.

21. A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0007258 – USA-AFGE-Exp.-0007260 is attached as **Deposition Exhibit 27**.

22. A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0007219 – USA-AFGE-Exp.-0007220 is attached as **Deposition Exhibit 28**.

23. A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0004518 – USA-AFGE-Exp.-0004520 is attached as **Deposition Exhibit 29**.

24. A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0005054 – USA-AFGE-Exp.-0005059 is attached as **Deposition Exhibit 31**.

25. A true and correct copy of the Declaration of Karen S. Evans in support of Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction is attached as

**Deposition Exhibit 34** (ECF 312.1).

26.    A true and correct copy of the January 20, 2025 memo from Matthew Vaeth and Charles Ezell, Acting Directors of the Office of Management and Budget ("OMP") and the Office of Personnel Management ("OPM") marked USA-AFGE-Exp.-0000428 – USA-AFGE-Exp.-0000434 is attached as **Deposition Exhibit 38**.

27.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0000435 is attached as **Deposition Exhibit 39**.

28.    true and correct copy of the memo from Randolph Alles, Deputy Under Secretary for Management, to Component and Office Heads on March 14, 2025 marked USA-AFGE-Exp.-0000408 – USA-AFGE-Exp.-0000412 is attached as **Deposition Exhibit 40**.

29.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0000403 – USA-AFGE-Exp.-0000404 is attached as **Deposition Exhibit 41**.

30.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0000400 – USA-AFGE-Exp.-0000402 is attached as **Deposition Exhibit 45**.

31.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0000415 – USA-AFGE-Exp.-0000419 is attached as **Deposition Exhibit 46**.

32.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0000420 – USA-AFGE-Exp.-0000427 is attached as **Deposition Exhibit 47**.

33.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0000446 – USA-AFGE-Exp.-0000454 is attached as **Deposition Exhibit 49**.

34.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0000160 – USA-AFGE-Exp.-0000162 is attached as **Deposition Exhibit 66**.

35.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0001244 – USA-AFGE-Exp.-0001249 is attached as **Deposition Exhibit 76**.

36.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0004553 – USA-AFGE-Exp.-0004555 is attached as **Deposition Exhibit 78**.

37.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0004824 is attached as **Deposition Exhibit 79**.

38.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0004990 is attached as **Deposition Exhibit 82**.

39.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0011644 is attached as **Deposition Exhibit 90**.

40.    A true and correct copy of the document marked USA-AFGE-Exp.-0020962 – USA-AFGE-Exp.-0020963 is attached as **Deposition Exhibit 100**.

41.    A true and correct copy of the Signal group chat with the name "FEMA ≻≺ HQ". marked USA-AFGE-Exp.-0425306 is attached as **Deposition Exhibit 106**.

42.    A true and correct copy of the Signal group chat between Kara Voorhies, James Percival, and Karen Evans marked USA-AFGE-Exp.-0424414 is attached as **Deposition Exhibit 113**.

43.    A true and correct copy of the unredacted version of Karen Evans' handwritten calendar notes marked USA-AFGE-Exp.-0425282 – USA-AFGE-Exp.- 0425302 is attached as **Deposition Exhibit 114**.

44.    A true and correct copy of the email correspondence marked USA-AFGE-Exp.-0006291 is attached as **Deposition Exhibit 117**.

45.    A true and correct copy of the Signal group chat with the name "FEMA Rapid Respo…" marked USA-AFGE-Exp.-0425305 is attached as **Deposition Exhibit 118**.

46.    A true and correct copy of the Short Message Report and messages between Kara Voorhies and Core Lewandowski on April 13 – 14, 2025 marked KLV_000001 is attached as **Deposition Exhibit 132**.

47.    A true and correct copy of the Subcontractor Agreement between Kara Voorhies and Kyle Schutt, dated October 15, 2025 marked KLV_000507 – KLV_000512 is attached as **Deposition Exhibit 133**.

48.    A true and correct copy of the Subcontractor Termination Letter from Kyle Schutt signed by Kara Voorhies, dated March 12, 2026 marked KLV_000513 is attached as **Deposition Exhibit 134**.

49.    A true and correct copy of the Short Message Report and messages between Kara

Voorhie and Corey Lewandowski on April 24, 2025 marked KLV_000003 – KLV_000004 is attached as **Deposition Exhibit 135**.

50.     A true and correct copy of the Signal group chat with the name "A K J" marked KLV_000169 – KLV_000170 is attached as **Deposition Exhibit 136**.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed May 29, 2026, in San Francisco, California.

_____

Danielle Leonard

SECOND DECLARATION OF DANIELLE LEONARD, No. 3:25-CV-03698-SI

## Contact

www.linkedin.com/in/karensevans
(LinkedIn)

## Top Skills

Program Evaluation
Information Security
Software Development

## Honors-Awards

Heroines of Washington
Top 10 Infosec Career Influencers
Cybersecurity Leadership Award
Roll of Distinguished Alumni
FedScoop Top Women in Tech 2017

## Publications

Measuring What Matters: Reducing
Risk by Rethinking How We
Evaluate Cybersecurity

A Call to Action: The Federal
Government's Role in Building a
Cybersecurity Workforce for the
Future

Staying Safe in Cyberspace: Cloud
Security on the Horizon

Increasing The Effectiveness of
the Federal Role in Cybersecurity
Education

From Awareness to Action: A
Cybersecurity Agenda for the 45th
President

# Karen S. Evans

Board Member, Strategic Technology Executive, Former Federal
Chief Information Officer
Martinsburg, West Virginia, United States

## Summary

An executive who served in three Presidential Appointed positions
in two administrations. Possessing 30 years of executive-level
management experience focused on cybersecurity, national security,
technology innovation, service delivery and supply chain risk
management. Served and serving as a independent director, Board
member, and strategic advisor.

Specialties: executive management, project management,
management of technology investments including capital planning
and investment control, information security, supply chain risk
management, privacy, accessibility for those with disabilities,
and access to, dissemination of and preservation of government
information

## Experience

**U.S. Department of Homeland Security**
Federal Emergency Management Agency
June 2025 - Present (10 months)

**Cybersecurity and Infrastructure Security Agency**
6 months

Executive Assistant Director for Cybersecurity
February 2025 - June 2025 (5 months)

**Department of Homeland Security**
January 2025 - February 2025 (2 months)

**Cyber Readiness Institute**
Managing Director
October 2021 - February 2025 (3 years 5 months)
New York, New York, United States



The Cyber Readiness Institute is a non-profit initiative that convenes business leaders from across sectors and geographic regions to create free cybersecurity tools for small and medium-sized businesses (SMBs). CRI's resources focus on human behavior and emphasize employee education and awareness. Our mission is to advance the cyber readiness of SMBs to improve the security of global supply chains.

## KE&T Partners, LLC
Partner
January 2021 - February 2025 (4 years 2 months)

As a Senate confirmed, Presidentially Appointed executive, served as the first Assistant Secretary for Cybersecurity, Energy Security and Emergency Response at the U.S. Department of Energy. An executive who served in three Presidential Appointed positions in two administrations. Possessing 30 years of executive-level management experience focused on cybersecurity, national security, technology innovation, service delivery and supply chain risk management. Served as an independent director and outside manager for publicly traded companies and not-for-profits for over ten years. Established the US Cyber Challenge, a private sector non-profit that partnered with universities to train several hundred cyber experts. A federal government career beginning as a GS-2 supporting numerous agencies including the Department of Homeland Security, Department of Justice, Department of Agriculture and Executive Office of the President at the Office of Management and Budget (OMB).

## U.S. Department of Homeland Security
Chief Information Officer
June 2020 - January 2021 (8 months)

Oversaw the largest civilian IT Portfolio in the federal government, comprised of more than 400 IT investments totaling $7.3billion supporting a wide range of mission-critical national security initiatives ranging from securing the borders to protecting our nation's critical infrastructure. Priorities include network modernization; data center consolidation; security operations center (SOC) optimization; and improving the Department's cybersecurity posture during this time of extended telework to operate at full capacity to continue deliver the DHS mission during our pandemic response

## Department of Energy
Assistant Secretary for Cybersecurity, Energy Security and Emergency Response

September 2018 - February 2020 (1 year 6 months)
Washington D.C. Metro Area

As the first Assistant Secretary for Cybersecurity, Energy Security, and Emergency Response (CESER), provided the strategic direction, leadership and management to develop solutions in partnership with private industry to address the emerging threats of tomorrow while protecting the reliable flow of energy to Americans today by improving energy infrastructure security and supporting the Department of Energy's (DOE) national security mission. CESER's focus is preparedness and response activities to natural and man-made threats, ensuring a stronger, more secure future for the Nation. Continued as the subject matter expert for the Under Secretary of Energy to provide improvement of intergovernmental relations for the Department especially in the areas of national security as it relates to cybersecurity

US Cyber Challenge
National Director
February 2010 - September 2018 (8 years 8 months)

The US Cyber Challenge (USCC) is the nationwide talent search and skills development program focused specifically on the cyber workforce.

KE&T Partners, LLC
Partner
March 2009 - September 2018 (9 years 7 months)

Provides strategic Information Technology advisory services to corporate and government executive leadership

Executive Office of the President, Office of Management and Budget
Administrator, E-Government and Information Technology
October 2003 - January 2009 (5 years 4 months)

The Administrator of the Office of Electronic Government and Information Technology (IT) at the Office of Management and Budget oversees the implementation of IT throughout the federal government including advising the Director on the performance of IT investments, overseeing the development of enterprise architectures within and across agencies, directing the activities of the Chief Information Officer (CIO) Council, and overseeing the usage of the E-Government Fund to support interagency partnerships and innovation. This position also has responsibilities in the areas of capital planning and investment control, information security, privacy, accessibility of IT for persons with disabilities, and access to, dissemination of and perseveration of government information.



## Education

MBA, Business Administration · (1990 - 1993)

WVU John Chambers College of Business and Economics
Doctor's Degree, Business · (May 2024)





**FEDERAL**

# Top CISA appointee Karen Evans moves to FEMA

Evans presided over the agency during a turbulent period of personnel and leadership departures.

 BY: **JOHN SAKELLARIADIS** | 06/10/2025 06:11 PM EDT

Karen Evans, a top political appointee at the Cybersecurity and Infrastructure Security Agency, has been assigned a new role elsewhere in the Department of Homeland Security.

**Why it matters:** As one of the most senior officials at CISA for much of the year, Evans presided over the agency during a turbulent period that saw hundreds of CISA staffers and swathes of its senior leadership depart under pressure from the Trump administration.

Evans was first tapped as a senior adviser at CISA in January, and one month later, she was slotted in as the agency's executive assistant director for cybersecurity. She was supplanted as the highest-ranking political appointee at CISA in May, when Madhu Gottumukkala was named the agency's new deputy director.

**Where she is now:** A spokesperson for DHS confirmed the move. "Karen Evans has moved over full-time to the Federal Emergency Management Agency. She was instrumental in helping cut waste, fraud, and abuse at CISA and her skill set is perfectly suited for the future of the Federal Emergency Management Agency."

Evans still appears on CISA's leadership page, and it is not clear what prompted her move to FEMA.

**What's next:** Evans, who served as an assistant secretary at the Energy Department in Trump's first term, was nominated to be the undersecretary for management at DHS in March. Her hearing has not yet been scheduled.



EXHIBIT Evans 3
DATE: 3/31/26
SUSAN ASHE

  **YOUR ACCOUNT MANAGEMENT TEAM**

**Ruth Yemene**
Customer Engagement Specialist
ryemene@politico.com

**Ella Feinstein**
Associate Account Manager
efeinstein@politico.com

© 2026 POLITICO LLC

**U.S. Department of Homeland Security**
**Federal Emergency Management Agency (FEMA) Review Council**
Eisenhower Executive Office Building – Indian Treaty Room
Virtual Webex Meeting
May 20, 2025
Open Meeting Minutes
3:00 – 4:45 P.M. EDT

The Federal Emergency Management Agency Review Council convened on May 20, 2025, from 3:00 –4:45 P.M EDT. The meeting was open to members of the public from 3:00 – 4:45 P.M. EDT under the provisions of the Federal Advisory Committee Act (FACA), P.L. 92-463 and 5 U.S.C.§ 552b.

## PARTICIPANTS:
The following individuals participated in the meeting:

### FEMA Review Council Members:
- Secretary Kristi Noem, Co-Chair
- Governor Phil Bryant, Vice Chair
- Governor Greg Abbott *(Virtual)*
- Mayor Jane Castor *(Virtual)*
- Mr. Mark Cooper
- Sheriff Rosie Cordero-Stutz
- Mr. Robert J. Fenton, Jr.
- Mr. Kevin Guthrie
- Mr. Nim Kidd
- Mr. Michael Whatley
- Governor Glenn Youngkin

### U.S. Department of Homeland Security:
- Patrick Powers, Designated Federal Officer
- Joseph Chilbert, Alternate Designated Federal Officer (ADFO)
- Nicole Gentempo, ADFO
- Sarahjane Dalheim, ADFO
- Adam Kania, ADFO
- Joseph Guy, Deputy Chief of Staff, Secretary's Office
- Phil Hegseth, Senior Advisor, Secretary's Office
- Bradley Hayes, Assistant Secretary, Office of Legislative Affairs (OLA)
- Scott Erickson, Assistant Secretary, Office of Partnership and Engagement (OPE)
- Sara Perkins, Deputy Assistant Secretary, OPE
- Mike Miron, OPE, Committee Management Office (CMO)
- Jason Robertson, Assistant General Counsel, Office of the General Counsel

1



- David Richardson, Senior Official Performing the Duties of the Administrator, FEMA
- Karen Evans, Senior Advisor to the Administrator, FEMA

**Other:**
- Jared Moskowitz, 23rd District of Florida, U.S. House of Representatives
- Stephen Feinberg, Deputy Secretary, Department of Defense
- Alex Wong, Deputy National Security Advisor
- Brian Cavanaugh, Associate Director for Homeland Security, Office of Management and Budget
- Alex Meyer, Director, White House Office of Intergovernmental Affairs

**DESIGNATED FEDERAL OFFICER PATRICK POWERS** called the meeting to order and expressed thanks to the Council members and members of the public for joining the meeting. He reviewed the meeting agenda and advised that meeting minutes will be part of the public record once available. Co-Chair Secretary Noem and Deputy Secretary Feinberg were introduced for opening remarks.

**SECRETARY NOEM** provided opening remarks and expressed gratitude for everyone attending the meeting. She advised that President Trump gave the Council the responsibility to look at FEMA, and they have an important task at hand. She advised that the paperwork that individuals must complete to qualify for FEMA assistance is extremely burdensome, and she would like the Council to look at what they can do to streamline that process. She informed the attendees that FEMA is also tasked with the continuation of government, and that Council members must do their due diligence to ensure that structure remains in place. The Secretary advised that President Trump has said many times that FEMA should be eliminated as it exists today, and that we need to reimagine the agency. She went on to say that if the Council does what it is tasked to do, FEMA's name should change.

**DEPUTY SECRETARY FEINBERG** provided opening remarks and thanked Secretary Noem. He reiterated that it is important to improve resilience and to meet crises with efficiency, along with a reasonable budget and that responsibility should be with the States. The Deputy Secretary highlighted that the private sector has a role to play with State and Federal government, and that he looks forward to the Council's recommendations for the President.

**SECRETARY NOEM** administered the ceremonial swearing in of the Council members.

**SECRETARY NOEM** introduced the Vice Chair, former Mississippi Governor Phil Bryant.

**GOVERNOR PHIL BRYANT** thanked Secretary Noem and Secretary Hegseth for their service and hard work. Governor Bryant relayed his personal experiences in the outcome of Hurricane Katrina and that the challenge is to do all that can be done to prepare for disasters. Governor Bryant looks forward to the comments from the Council.

2

**DEPUTY NATIONAL SECURITY ADVISOR ALEX WONG** congratulated the Council, and relayed that they have a heavy responsibility to reform FEMA to implement the President's vision. The President selected the members on basis of their experience, wisdom and most importantly, their bias for action which the President shares. The states and local authorities are to be empowered in partnership with the federal government, but not to be dependent on the federal government. The metric is the number of lives saved and the number of livelihoods protected.

**ASSOCIATE DIRECTOR BRIAN CAVANAUGH** concurred that President Trump is a president of action. There is an ample opportunity to benefit from the experience of each Council member and to look through what is beyond FEMA. Associate Director Cavanaugh looks forward to the Council's work.

**GOVERNOR GREG ABBOTT** thanked the President, Secretary Noem and Secretary Hegseth for their leadership. Governor Abbott relayed his experiences as Governor of Texas in having more federally declared disasters than other states, and consequentially has experience with FEMA which he has found to be slow. States have proven to be more nimble and more efficient, yet there can be a better partnership with the Federal government. Governor Abbott highlighted that the Council must consider how to address short and long-term housing needs for those affected by disasters. The Council can identify details to complete a mission state to deliver an effective product for fellow Americans.

**DIRECTOR ALEX MEYER** provided remarks on the role that the White House Office of Intergovernmental Affairs has with States. The goal of the Council with FEMA and beyond FEMA should be to build a resilient nation. There is a need to balance the budget and to set clear expectations for Governors on what the federal government can do. Florida and Texas are examples of how to be efficient with disasters without relying on the federal government. Director Meyer looks forward to the Council's work.

**GOVERNOR GLENN YOUNGKIN** expressed gratitude and discussed that Governors, sheriffs, and mayors understand they are on the front lines when there is an emergency, and they need to respond. He shared his experience declaring an emergency during his first week as Governor and learned that responding with certainty is critical. Governor Youngkin advised that we have a broken system and the Council's first step should be understanding the scope and mission of FEMA. He reiterated that at the end of the day, states are responsible and need to stand ready to respond to disasters.

**MAYOR JANE CASTOR** expressed gratitude to everyone on the Council. She discussed her state's experience handling Hurricane Helene and Hurricane Milton within two weeks of each other. Mayor Castor advised that she is in support of cutting the red tape and reducing the bureaucracy to allow FEMA to better serve Americans.

3

**MR. KEVIN GUTHRIE** expressed gratitude for being on the Council and provided background on his career. He highlighted the Emergency Management Assistance Compact mutual aid agreement and discussed the importance of private sector relationships in recovery efforts. He advised that there is a need for states to invest in technology and artificial intelligence to prepare for and respond to disasters.

**MR. W. NIM KIDD** provided background on his career and reiterated that everything begins and ends at the local level. He also discussed his state's emergency management academy.

**MR. MARK COOPER** expressed gratitude for being on the Council and acknowledged that FEMA employees have done good work and supported his home state. Mr. Cooper advised that although FEMA has grown much larger and more bureaucratic, he is a big supporter of the FEMA regional offices.

**MR. MICHAEL WHATLEY** thanked President Trump, the co-chairs, and vice chair Bryant for allowing him to be on the Council. He is a resident of North Carolina and met with many people to discuss the devastation hurricane Helene brought to North Carolina. He reiterated that the nation needs an agency to be there for citizens on their worst day.

**SHERIFF ROSIE CORDERO-STUTZ** expressed gratitude for being on the Council. She provided background on her career and mentioned the importance of sharing best practices between states. The Sheriff reiterated that we need to hold every state accountable.

**MR. ROBERT FENTON** thanked President Trump for putting someone from FEMA on the Council. He discussed his 28-year career with FEMA, and how the agency has taken on more responsibilities and created more bureaucracy.

**SECRETARY NOEM** led a discussion with Council members on the Council's purpose, focus, and taskings. She highlighted that President Trump believes FEMA should no longer exist as it is today, and that he wants a new agency that understands its role in emergency response. She asked Council members their thoughts about which responsibilities should be maintained by FEMA, and which responsibilities should be deployed to the states.

**GOVERNOR PHIL BRYANT** advised that states are always looking for federal dollars. States need to develop an emergency response fund and put it towards disaster recovery. He also mentioned that to reform FEMA, we need to tear it down and reinvent what we see now.

**MR. W. NIM KIDD** reiterated that there needs to be a clear line of delineation of state and federal responsibilities. He also discussed the issue of having many federal agencies coexisting and duplicate efforts.

4

**GOVERNOR GLENN YOUNGKIN** shared his state's experience working with the Department of Housing and Urban Development to improve processes. He discussed that states need to be given the opportunity to lead, and that public-private relationships are a necessity.

**MR. KEVIN GUTHRIE** mentioned that FEMA has created regulations that do not need to exist. He recommended that the consolidated resources centers should be abolished. Mr. Guthrie discussed the importance of training and the need to teach FEMA curriculum at colleges and universities.

**ACTING ADMINISTRATOR DAVID RICHARDSON** responded that he would review everything that was discussed and will meet with the Council. He advised that there are allies in FEMA that have pushed for changes to be made.

**SECRETARY NOEM, DEPUTY SECRETARY FEINBERG, and FORMER GOVERNOR BRYANT** provided closing remarks.

**SECRETARY NOEM** advised that she has already asked governors and members of congress for insight and recommendations to give to the Council. She asked Council members to talk to their colleagues and bring back their recommendations.

**DEPUTY SECRETARY FEINBERG** reiterated that the Department of Defense has been advocating for change.

**FORMER GOVERNOR BRYANT** thanked the Council members and reiterated that the work of the Council is critical.

**DESIGNATED FEDERAL OFFICER PATRICK POWERS** adjourned the meeting and highlighted that several thousand public comments were received.

---

I hereby certify that, to the best of my knowledge, the foregoing minutes are accurate and complete.

Signed: August 20, 2025

Kristi Noem, Secretary, Department of Homeland Security

5

**U.S. Department of Homeland Security**
**Federal Emergency Management Agency (FEMA) Review Council**
U.S. Custom House, New Orleans, Louisiana
Virtual Zoom Meeting
July 9, 2025
Open Meeting Minutes
2:00 – 3:00 P.M. EDT

The Federal Emergency Management Agency Review Council convened on July 9, 2025, from 2:00 –3:00 P.M. EDT. The meeting was open to members of the public from 2:00 – 3:00 P.M. EDT under the provisions of the Federal Advisory Committee Act (FACA), P.L. 92-463 and 5 U.S.C.§ 552b.

## PARTICIPANTS:
The following individuals participated in the meeting:

### FEMA Review Council Members:
- Secretary Kristi Noem, Co-Chair *(virtual)*
- Secretary Pete Hegseth, Co-Chair *(virtual)*
- Governor Phil Bryant, Vice Chair
- Mayor Jane Castor
- Mr. Mark Cooper
- Sheriff Rosie Cordero-Stutz
- Mr. Robert J. Fenton, Jr.
- Mr. Kevin Guthrie
- Mr. Michael Whatley
- Governor Glenn Youngkin *(virtual)*

### U.S. Department of Homeland Security:
- Patrick Powers, Designated Federal Officer
- Joseph Chilbert, Alternate Designated Federal Officer (ADFO)
- Nicole Gentempo, ADFO
- Sarahjane Dalheim, ADFO
- Adam Kania, ADFO
- Mike Miron, Committee Management Office
- Joseph Guy, Deputy Chief of Staff, Secretary's Office
- David Richardson, Senior Official Performing the Duties of the Administrator, FEMA
- Anthony Antognoli, Principal Senior Advisor to the Administrator, FEMA
- Karen Evans, Senior Advisor to the Administrator, FEMA
- Keith Turi, Acting Associate Administrator for Response and Recovery, FEMA
- Nicholis Mutton, Special Counsel, FEMA
- Jennifer-Lyn Thill, Special Advisor, FEMA

1



- Kara Voorhies, Senior Advisor to the Secretary

**Other:**
- Governor Jeff Landry, State of Louisiana
- Jonathan Owen, Acting Deputy Assistant Secretary of Defense for Homeland Defense Integration and Defense, Department of Defense
- Major General Thomas Filoux, Louisiana National Guard
- Major General John Haas, Florida National Guard
- Brigadier General Jason Mahfouz, Louisiana National Guard
- Brock Long, Former FEMA Administrator
- Craig Fugate, Former FEMA Administrator

**DESIGNATED FEDERAL OFFICER PATRICK POWERS** called the meeting to order and expressed thanks to the Council members and members of the public for joining the meeting. He reviewed the meeting agenda and advised that meeting minutes and the video recording will be part of the public record once available. Co-Chair Secretary Noem and Deputy Secretary Hegseth were introduced for opening remarks.

**SECRETARY NOEM** expressed gratitude for everyone attending the meeting and for Secretary Hegseth for co-chairing the Council. She advised that the FEMA will be reevaluated, and the Council is looking at new reforms that are more responsive to the citizens of the United States. Secretary Noem discussed seeing first-hand the devasted families in Texas due to the recent flooding. She advised that the response to the Texas flooding is exactly how President Trump imagined that the agency would operate. She reiterated that federal emergency management should be state and locally led, which is why FEMA must be eliminated as it exists today and remade into a responsive agency. She went on to say that the list of FEMA's failures is staggering, and the responsibility that the Council has is important.

**SECRETARY HEGSETH** provided opening remarks and thanked Secretary Noem, Governor Landry, and Governor Youngkin. He advised that support to domestic partners is critical to the Department of Defense. Secretary Hegseth mentioned that having the Council meeting in New Orleans during the 20th anniversary of Hurricane Katrina is a powerful reminder of the impact that disasters have on communities, and how the Department of Defense can support the response. He advised that the Texas National Guard is supporting the response efforts to the recent Texas floods.

**DESIGNATED FEDERAL OFFICER PATRICK POWERS** introduced Governor Phil Bryant (Vice Chair).

**GOVERNOR PHIL BRYANT** thanked Secretary Noem and Secretary Hegseth for their service and hard work. Vice Chair Bryant introduced Louisiana Governor Jeff Landry.

**GOVERNOR JEFF LANDRY** thanked Governor Bryant, Secretary Hegseth, and Secretary Noem for their leadership. He extended prayers for the people of Texas and shared that the State of Louisiana sent resources and personnel to Texas to assist with flood recovery. Governor Landry advised that the work of the FEMA Review Council matters, and he is confident that Texas will receive the support it needs. He discussed his experience with President Trump addressing national disasters in the State of Louisiana. Governor Landry thanked the Council for holding its second public meeting in New Orleans and reiterated the need for FEMA to be fixed. While Governor Landry is hoping for a passive hurricane system, he is committed to working together to strengthen disaster response.

**GOVERNOR PHIL BRYANT** thanked Governor Landry. He mentioned that the Executive Order allows the Council to form subcommittees. He advised that three subcommittees have been established: 1) Federal-State Coordination Subcommittee, co-chaired by Governor Glenn Youngkin and Governor Greg Abbott; 2) Disaster Response and Recovery Assessment Subcommittee, co-chaired by Kevin Guthrie and Nim Kidd; and 3) Final Report Subcommittee, co-chaired by Phil Bryant and Michael Whatley. Governor Bryant introduced Governor Youngkin to provide an update on the work of the Federal-State Coordination Subcommittee.

**GOVERNOR GLENN YOUNGKIN** thanked Secretary Noem and Secretary Hegseth for leading this important effort of transforming the role of FEMA to support states as opposed to supplanting states. He thanked Governor Bryant for his leadership on the Council, and thanked Governor Landy for hosting the Council in Louisiana. Governor Youngkin advised that the Federal-State Coordination Subcommittee is working to evaluate the role that states, localities, and the federal government have in responding to disasters. He thanked Sheriff Rosie Cordero-Stutz and Mayor Jane Castor for their efforts on the Subcommittee. The Federal-State Coordination Subcommittee has created a mapping exercise to better determine the roles that state, local, and federal governments have today, and beginning to map what those roles should look like moving forward. Governor Youngkin discussed that the Subcommittee has also been reviewing the more than 12,000 public comments. He advised that the Subcommittee has been preparing a spider chart of the comprehensive roles of various government agencies beyond FEMA, so they can better understand the full nature of the federal government's involvement. Governor Youngkin reiterated the extraordinary work that Governor Abbott's team is currently doing in response to the Texas floods.

**MAYOR JANE CASTOR** thanked Governor Youngkin and advised that she is thankful for the emergency responders in Texas who continue to do this important work. Mayor Castor reiterated that disaster response cannot be slow, and if something doesn't work, it needs to be fixed. She advised that the U.S. Conference of Mayors is launching an intergovernmental emergency management taskforce which is meeting next week. Next month, there will be a joint meeting with the National Association of Counties and the National League of Cities.

**SHERIFF ROSIE CORDERO-STUTZ** echoes everyone's sentiments. She advised that the Federal-State Subcommittee had interviews with subject matter experts, and they are bringing

3

those testimonies back to the Council. Sheriff Cordero-Stutz confirmed that she will send out a survey to many associations so the Subcommittee can get the input they need. She is grateful to be on the Council and shared her thanks with Secretary Noem and Secretary Hegseth, as well as the leadership of the Council.

**GOVERNOR PHIL BRYANT** thanked Governor Youngkin and introduced Co-Chair Kevin Guthrie of the Disaster Response and Recovery Assessment Subcommittee.

**MR. KEVIN GUTHRIE** thanked Governor Bryant and appreciated the opportunity to present the Disaster Response and Recovery Assessment Subcommittee's updates. Mr. Guthrie advised that the Subcommittee received several presentations on the statutory functions of FEMA and the categories of work. He discussed how the Subcommittee is looking at these areas in a two-pronged approach. Mr. Guthrie advised that the Subcommittee would continue to conduct listening sessions across the country. He also discussed the Emergency Management Assistance Compact. The Subcommittee is reviewing what has traditionally been a federal role, and what could be taken over by another partner. Lastly, Mr. Guthrie mentioned the Subcommittee is reviewing the role that parametric insurance has regarding disasters.

**MR. MARK COOPER** shared that it is an honor for him to support the Disaster Response and Recovery Assessment Subcommittee. He mentioned that the Subcommittee will conduct regional listening sessions across the country.

**MR. KEVIN GUTHRIE** reiterated that the Disaster Response and Recovery Assessment Subcommittee has made it clear that they will meet within many different states to conduct listening sessions.

**GOVERNOR PHIL BRYANT** advised that the subcommittees have been hard at work, and they continue to meet with subject matter experts to learn about their experiences with FEMA. Governor Bryant thanked former FEMA Administrators Brock Long and Craig Fugate for attending the Council meeting. He discussed that the Final Report Subcommittee is working on drafting the Council's final report.

**MR. MICHAEL WHATLEY** thanked Governor Bryant, Secretary Noem, Secretary Hegseth, and Governor Landry. Mr. Whatley advised that he has reviewed input that has been provided to the Council. He mentioned that the fires and storms that we see will continue to happen, and we need to think about what our response will be in the future. Mr. Whatley thanked President Trump for his vision which will last far beyond his term. He also shared his appreciation for the work of the Federal-State Coordination Subcommittee and the Disaster Response and Recovery Assessment Subcommittee.

**GOVERNOR PHIL BRYANT** thanked Mr. Michael Whatley. He also thanked Acting FEMA Administrator David Richardson and FEMA Regional Administrator Bob Fenton for all the information and resources that they have provided to the Council. Governor Bryant introduced

4

Acting Deputy Assistant Secretary of Defense for Homeland Defense Integration and Defense, Jonathan Owen.

**ACTING DEPUTY ASSISTANT SECRETARY JONATHAN OWEN** thanked everyone. He advised that the Department of Defense is ready to support, and to bring their assets and resources.

**GOVERNOR PHIL BRYANT** thanked Mr. Owen and reiterated the importance of the National Guard.

**DESIGNATED FEDERAL OFFICER PATRICK POWERS** adjourned the meeting and thanked everyone for their participation. He mentioned that the meeting recording and meeting minutes will be posted to the Council's website once available. Mr. Powers advised that feedback can be emailed to FEMAreviewcouncil@hq.dhs.gov.

---

I hereby certify that, to the best of my knowledge, the foregoing minutes are accurate and complete.

Signed: August 20, 2025

Kristi Noem, Secretary, Department of Homeland Security

5

Date _10_ _16_ _25_

███████████████

Not affecting
DRF Categories)          will get w/ CFO
CORES                    Break out options
☑ Contracts from DRF     (w/ consideration)
Staff Salaries)
Buckets



Evans 10
EXHIBIT
DATE: 3 30 26
SUSAN ASHE

© Franklin Planner Corporation • Original-Classic

Confidential - Subject to Protective Order          USA-AFGE-Exp.-0033544



You need to learn how to [...] thoughts just the
same way you select [...] gonna wear
every day. This is [...]
—Eli[...]

**17**
Tuesday
February 2026

Daily Notes

Week 8

Principals Noon

→ Coles

Staffing — 2/31 —

Original-Classic

Confidential - Subject to Protective Order          USA-AFGE-Exp.-0033542

If people would only give, just once in their lives, the same amount of serious reflection to what they want to get out of life that they give to the question of what they want to get out of a two-week vacation.
—Dorothy Canfield Fisher



**9**

Monday
February 2026

**Daily Notes**

40th Day  325 Left  Week 7

© Franklin Planner Corporation • Original-Classic

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0033540



If you are idle, be not solitary; if you are solitary, be not idle.
—Samuel Johnson

**13**
Tuesday
January 2026

Daily Notes                13th Day   352 Left   Week 3

© Franklin Planner Corporation • Original-Classic

Confidential - Subject to Protective Order                USA-AFGE-Exp.-0033538

Goals are dreams with deadlines.
—Diana Scharf-Hunt

# 31
### Wednesday
### December 2025

**Daily Notes**  365th Day  0 Left  Week 1



3. Not going to approve the CORES (30 day extensions) and CORES in general

© Franklin Planner Corporation • Original–Classic

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0033536

Brevity may be the soul of wit, but not
when someone's saying, "I love you."
—Judith Viorst

**4**
Thursday
December 2025

**Daily Notes**                    338th Day  27 Left  Week 49



11,176

1. Looking @ all Core Dates  proposed plan Restrictions
   1A- Katrina Core Dates
2. Meehive Delegation (fee Schedule) Core
3. @ All Delegation ⇒
4. Dec TITLES status for Core

Talked to Kara RE the Number is 11,383
           and Tip Line  (Will CC her)

© Franklin Planner Corporation • Original-Classic

Confidential - Subject to Protective Order              USA-AFGE-Exp.-0033534



Confidential - Subject to Protective Order

USA-AFGE-Exp.-0033532

A society can be no better than
the men and women who compose it.
—Adlai E. Stevenson II

## 29
### Wednesday
### October 2025

**Daily Notes**                    302nd Day  63 Left  Week 44



→ Explore w Dec ___ Cole ←
Nastoune to Style approval

© Franklin Planner Corporation • Original-Classic

Confidential - Subject to Protective Order              USA-AFGE-Exp.-0033530



Confidential - Subject to Protective Order

USA-AFGE-Exp.-0033528

# Draft Final Report

## The President's Council to Assess the Federal Emergency Management Agency

December 11, 2025

  



Evans C3
EXHIBIT
DATE: 3|31|26
SUSAN ASHE

Dear Mr. President,

On January 24, 2025, you established the Federal Emergency Management Agency Review Council (FEMA Review Council) through Executive Order 14180, *Council to Assess the Federal Emergency Management Agency*.

The FEMA Review Council was appointed to advise you, through the Assistant to the President for National Security Affairs, the Assistant to the President for Homeland Security, and the Director of the Office of Management and Budget, on FEMA's current ability to capably and impartially address disasters occurring within the United States, and to further provide recommendations related to FEMA that would best serve the national interest.

Under your leadership, the dedicated servants you appointed to the Council have worked tirelessly to pull back the curtain on how FEMA currently operates, and to understand how the bureaucracy and mission creep pulled FEMA away from its core mission: helping Americans on their worst day. History has shown that most of the agency's reforms have been made only in response to a major catastrophe, but this is a once-in-a-generation opportunity to proactively assess and determine what disaster management should be, and we are honored that you entrusted us with the opportunity to play a role in shaping the future of the nation's disaster response capabilities and efficiencies.

The Council was deliberate in its actions, taking the time to engage across jurisdictional levels and with various sectors across the country to hear about their interactions and experiences working with FEMA during and after disasters. The Council offered stakeholders and the general public a tremendous amount of time over the past year to provide their feedback into the record.

Throughout this lengthy process, the Council has focused their efforts on the key doctrine that *disaster response should be locally executed, state or tribally managed, and federally supported*. The first, best, and most effective response to disasters comes from the local community and first responders where the disaster strikes. This guarantees a people-first, community-centric response to ensure help arrives where it is most needed and without delay. State and local jurisdictions should have the best resources, training, and equipment to support its first responders. The federal government is available to support but should not be the first responders in a disaster. The Council also recognizes the need for *prudent spending of hard-earned American taxpayer dollars by reducing waste in long-term recovery efforts and accelerating how Americans get back on their feet after a disaster.*

After considering the wealth of information we learned from listening sessions, surveys, and meetings with disaster response experts, the Council has voted, affirmed, and further presents the following recommendations to put Americans first, which will eliminate FEMA as we know it today, and replace it with a new **to-be-named FEMA 2.0**, housed within the U.S. Department of Homeland Security (DHS).

Sincerely,


Kristi Noem
Secretary of Homeland Security

Pete Hegseth
Secretary of War

2



# Draft Executive Summary

## The President's Council to Assess the Federal Emergency Management Agency

December 11, 2025

  

DRAFT//PRE-DECISIONAL//DELIBERATIVE

## Table of Contents for Executive Summary

**Listening to the Nation: Stakeholder and Public Feedback**.........................................................5

**Guiding Principles and Key Recommendations**..........................................................................5

    1. FEMA 2.0 – A New Start ........................................................................................7

    2. Recommend FEMA 2.0 remain in DHS .................................................................8

    3. Equip States, Local governments, Tribes, and Territories to lead disaster response with the federal government in a supporting role .........................................................8

    4. Keep Existing Federal Disaster Resources to Support Communities..............................9

    5. Realign the Criteria for Federal Disaster Assistance ........................................................10

    6. Replace the Hazard Mitigation Grant Program with a two-phase funding structure........10

    7. Streamline the Individual Assistance program into a single direct payment program ......11

    8. Reform the Public Assistance program to provide direct funding block grants ...............12

    9. Reform the FEMA National Flood Insurance Program (NFIP) for Financial Stability and Risk Resilience.........................................................................................................13

    10. Maximize every dollar spent by Reducing Administrative Costs...................................13

**Appendix A: Detailed Charts**......................................................................................15

**Appendix B: RAPID Direct Funding Flow Chart** ....................................................17

**Appendix C: Looking Back - A History of Emergency Management and FEMA**................18

**Appendix D: FEMA Disaster Response (2021-2024)** ...............................................19

**About the FEMA Review Council** ...............................................................................20

**FEMA Review Council Members** ...............................................................................21

**Acknowledgements** ...................................................................................................21

**Report Addendum**.....................................................................................................23

DRAFT//PRE-DECISIONAL//DELIBERATIVE

# Listening to the Nation: Stakeholder and Public Feedback

In order to meet the mandate established by the president, the Council was deliberate in its actions over the past several months, devoting significant time to engage across jurisdictional levels and with various entities to hear about their experiences with FEMA during and after disasters. The Council solicited input from a broad range of stakeholders, including Americans affected by natural and man-made disasters; the research community; private sector; state, local, tribal, and territorial (SLTT) governments; foundations; faith-based and nonprofit organizations. In total, the Council received and reviewed (1) 11,708 public submissions, (2) a nationwide survey of SLTT agencies and non-government partners yielding 1,387 responses, (3) direct engagement with 50 states and territories, (4) listening sessions in 13 cities across the nation, and (5) four listening sessions with tribal nations.

The feedback received underscores widespread support for FEMA reform aimed at addressing inefficiencies, reducing bureaucratic barriers, and enhancing support for disaster survivors and local governments. Stakeholders consistently identified key priorities, including the need to streamline processes, decentralize decision-making, improve the access to mitigation and preparedness initiatives, and ensure fairness in disaster response and recovery efforts. Participants emphasized the importance of implementing reforms gradually, allowing for a phased approach that strengthens partnerships among federal, state, tribal, and local entities while minimizing disruptions.

This robust engagement process has provided the Council with invaluable insights into the challenges and opportunities facing FEMA's operations. The feedback serves as a cornerstone for shaping the future of FEMA's programs, ensuring that reforms are informed by the lived experiences of those directly impacted by disasters and those responsible for managing emergency response and recovery efforts. By integrating this input into its recommendations, the Council aims to create a more efficient and responsive FEMA that is better equipped to meet the needs of communities nationwide. The inclusion of public feedback reflects the Council's commitment to fostering collaboration and transparency in the pursuit of meaningful reform.

# Guiding Principles and Key Recommendations

At the direction of President Donald J. Trump, the FEMA Review Council (the Council) conducted a full-scale agency review in accordance with Executive Order 14180 and developed a comprehensive set of findings and recommendations for overhauling the federal government's approach before, during, and after disasters. This executive summary will provide the president with the Council's summarized recommendations, to include guiding principles for reform, recommendations for improvements, and structural changes to promote the national interest and enable national resilience. After the Council fully evaluated the country's history of disaster response, reviewed feedback from more than 11,000 individuals impacted by disasters, and met with stakeholders involved in emergency management, the Council agreed on this key doctrine: *Disaster response should be locally executed, state or tribally managed, and federally supported.*

Disaster response is complicated and increasingly expensive. With taxpayers bearing the burden of recovery funding, it is the responsibility of every American to embrace their individual responsibility to lessen this burden by being prepared for disaster. Prudent preparation through

5

DRAFT//PRE-DECISIONAL//DELIBERATIVE

planning, mitigation, insurance, capabilities, and seeking a fundamental understanding of their role in a disaster is vital to contributing to national preparedness. Active preparation and knowledge directly contribute to the effectiveness of local execution in any emergency or disaster. As our nation returns ownership of emergency management back to local communities and their states, tribes, and territories, we encourage every American to review their insurance policies and personal disaster plans as well as engaging with their local community leaders to be better prepared when disaster strikes.

States and local governments are the foundation of a successful emergency management system. As the immediate first responders, local public safety, infrastructure, and human service personnel require adequate training and equipment to manage all-hazard incidents effectively. States and local governments are on the frontline of recovery efforts following a disaster incident, working with states to reopen critical public and economic infrastructure. Beyond immediate response, local governments are essential for proactive community safety through proper land-use planning and by enforcing building codes to harden critical infrastructure against identified local risks. During a crisis, the visible leadership of state and local officials—demonstrated through decisive action and transparent public communication before, during, and after a disaster—is paramount for public trust and effective coordination. It is imperative that the Council's reforms are implemented in a phased approach manner over two to three years. This phased approach will ensure States, Locals, Tribes, and Territories are able to prepare their fiscal and physical capabilities for the new FEMA 2.0.

When local resources are overwhelmed, a robust system of state-coordinated mutual aid compacts becomes critical to ensuring communities receive necessary support and do not fail. This tiered support system, which can scale up to federal assistance, when necessary, guarantees a resilient national response. Ultimately, strengthening state and local government capability in disaster preparedness, response, recovery, and mitigation is a direct and essential investment in national safety and community resilience.

After an exhaustive national review of the nation's ability to prepare for, respond to, and recover from natural disasters, the Council developed five guiding principles for reform:



6

DRAFT//PRE-DECISIONAL//DELIBERATIVE

The Council leveraged these five guiding principles to develop the following ten key recommendations.

## 1. FEMA 2.0 – A New Start

It is time to close the chapter on FEMA. "FEMA" as a brand and as an agency was irreparably damaged by the previous Administration's proclivity to mission creep and endemic program failures. A new agency should be established that retains the core missions of FEMA, while highlighting the renewed emphasis on locally executed, state or tribally managed, and federally supported emergency management. We propose renaming FEMA and reference the new agency as "FEMA 2.0" in this document.[1]

Beyond boldly transforming the agency, FEMA 2.0 should refocus on its core mission *to reduce the loss of life and property and protect the Nation from all hazards*[2] by reducing bureaucracy, improving efficiency, and building stronger partnerships with SLTT governments. Therefore, the agency will shift from a District of Columbia-centric bureaucracy and regulatory bottleneck to a new, lean coordination-focused workforce that empowers SLTT officials to provide relief for their citizens. FEMA 2.0 should reduce overall staffing by approximately 50% and address a recent surge in headquarters-based personnel by rebalancing their headquarters vs. field personnel ratio to reduce the agency's bureaucratic bloat. This reduction should be phased over a two-to-three-year timeline and would be dependent of the Council's recommendations being implemented and the existing workload of the FEMA 2.0 personnel being reduced. FEMA 2.0 should deliver any cost savings achieved through staffing efficiencies back to the States, Tribes, and Territories. As the agency transforms, there remains a need for partnerships between states and federal stakeholders and this can be best facilitated by active FEMA 2.0 regions.

To empower these partners, FEMA 2.0 should shift training execution to states, expand and leverage existing successful partnerships, continue support of Emergency Management Assistance Compact agreements, empower states with expedited funding, and limit federal on-the-ground response to only incidents that exceed the capabilities and capacities of SLTT stakeholders. Beyond these core actions, FEMA 2.0 should promote a "Whole Community" approach to national preparedness. To do this, the agency must address the existing gap in the emergency management landscape by returning to a network that enables government, private industry, and non-profit partners to build toward shared capabilities and integrated resources. This will formalize and streamline coordination between government agencies, critical private-sector partners, and nonprofit organizations.

The Council recommends reviewing all existing FEMA programs and maintaining those that are critical to our nation's security. Further, rather than replacing successful programs, FEMA 2.0 should double down on those with a proven track record of effective federal-state-local partnership such as the Emergency Management Assistance Compact, National Urban Search

---

[1] The Council recognizes this change will necessitate legislative action, however, the Council recommends in the interim for the president to create a secondary title for FEMA and further direct the Department of Homeland Security to recommend actions, to include legislative and executive actions, required to permanently rename FEMA into the new agency name.

[2] *The primary mission of the Agency is to reduce the loss of life and property and protect the Nation from all hazards, including natural disasters, acts of terrorism, and other man-made disasters, by leading and supporting the Nation in a risk-based, comprehensive emergency management system of preparedness, protection, response, recovery, and mitigation.* – Post-Katrina Emergency Management Reform Act of 2006

7

DRAFT//PRE-DECISIONAL//DELIBERATIVE

and Rescue Program, Centers for Domestic Preparedness, and U.S. Fire Administration among others.

FEMA 2.0 must look for opportunities to remove duplications of effort such as environmental and historical reviews, audits, and inspections that should be conducted by states. Further, FEMA 2.0 should endeavor to expedite the closeout of historical open disasters. Doing so will address and reduce lingering administrative costs as well as legacy information technology systems that are maintained solely to facilitate open disaster declarations. Both directly benefit Americans by accelerating ongoing recovery efforts and reducing taxpayer costs. Finally, as FEMA 2.0 is transformed, the below recommendations must be made with a comprehensive effort to streamline and modernize the agency's technology to support its refocus on the core mission.

## 2. Recommend FEMA 2.0 remain in DHS

Following the September 11, 2001, terrorist attacks, Congress created DHS to consolidate numerous agencies responsible for national security and public safety. The legislation explicitly reframed disaster response as a core component of national security. FEMA 2.0 should remain in DHS, as the Department provides critical resources, budgeting support, and intelligence capabilities, which enables stronger disaster preparedness, faster response, and better recovery efforts for states and communities while maintaining government stability and continuity during crises.[3] Keeping FEMA within DHS ensures communities can easily coordinate across all types of emergencies—from natural disasters to terrorism—by focusing their general response capabilities on their specific local risks.

## 3. Equip States, Local governments, Tribes, and Territories to lead disaster response with the federal government in a supporting role

The National Preparedness Goal aims to create a secure and resilient nation that can handle various threats and hazards.[4] As it stands today, most of the public's first instinct during a major natural disaster is to rely on or expect the federal government to complete a whole-of-government national response irrespective of whether that incident necessitates *any* federal response. However, contrary to that misconception, it is the SLTT governments that have always had the primary response role during a disaster. Reorienting the National Preparedness System to empower SLTT governments to manage the mitigation, response, and recovery of disasters effectively will return the federal role from *leading* to *supporting*.

To achieve this, the Council recommends addressing both the lack of a national standard for initial response and recovery as well as addressing the limited ability to share and coordinate resources. FEMA 2.0 must reinvigorate a national system to ensure SLTT, private, and non-profit capabilities can better integrate during disasters. Additionally, the Council recognizes the importance of Non-Disaster Grants, such as the Emergency Management Performance Grant (EMPG), that ensure our nation's security and recommends these programs be retained within

---

[3] Of note, emergency management stakeholder response on FEMA's location involved vigorous debate and some support for re-establishing FEMA as an independent agency. For all general public written comments, see Federal Register, Department of Homeland Security 2025-0013, https://www.federalregister.gov/documents/2025/03/26/2025-05057/request-for-public-input-on-experiences-with-fema-disaster-responses

[4] Federal Emergency Management Agency, "National Preparedness Goal," https://www.fema.gov/emergency-managers/national-preparedness/goal

8

DRAFT//PRE-DECISIONAL//DELIBERATIVE

FEMA 2.0. The Council encourages exploring how to leverage federal savings from other efficiencies gained to create a potential one-time EMPG increase to better facilitate the return of responsibilities to States, Tribes and Territories.

**To address a lack of a national standard for incident response and recovery:**

1. Encourage adoption of national capability standards at SLTT level

2. Incentivize building scalable training resources at SLTT level

3. Professionalize emergency management to promote professional development

4. Focus on catastrophic planning and promote a common approach to exercise standards

**To address the limited ability to share and coordinate resources:**

1. Revitalize and promote the use of the Unified Resource Catalog of all Federal and SLTT-typed capabilities and resources

2. Refocus SLTT grant investment on mission-ready teams, capabilities, and infrastructure that meet national standards (i.e. State Search and Rescue, Swift Water Rescue, and other teams as identified in National Resource Hub) in lieu of funding specialty equipment

3. Enhance and improve upon the existing credentialing framework under the National Incident Management System (NIMS) and National Qualification System (NQS)

4. Promote the integration of additional partners, to include volunteer and faith-based organizations

5. Incentivize investments in interoperable systems for communication and data sharing to improve real-time coordination

## 4. Keep Existing Federal Disaster Resources to Support Communities

The federal government must maintain the ability to provide federal support resources through a single federal entity, so that state and local officials can quickly and efficiently leverage the full force of the federal government when required. Although state and local authorities have the primary responsibility for responding to a wide range of hazards and protecting their citizens, the federal government should retain the responsibility to support these efforts when required. FEMA's current mission exists at the intersection of emergency management and national security. An essential component of this is FEMA's authority to coordinate other federal agencies in support of SLTT partners. These include federal capabilities and programs such as Urban Search and Rescue Task Forces, National Disaster Medical System, Radiological Emergency Preparedness, and public communication tools like the Integrated Public Alert and Warning System and the National Alert and Warning System.

Additionally, the agency maintains an arsenal of dual-use capabilities, regional offices, incident management teams, prepositioned logistic systems or programs, and the Disaster Relief Fund to ensure the American people are resilient in the face of any threat, whether natural or man-made. Therefore, sustaining and resourcing this mission in FEMA 2.0 is vital to public safety, economic stability, and national resilience.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

## 5. Realign the Criteria for Federal Disaster Assistance

Federal assistance should only be reserved for truly significant events that exceed SLTT capacity and capability. Therefore, common criteria should be established on how to evaluate when this occurs. The current disaster declarations process for federal assistance does not adequately account for SLTT capacity and, therefore, is inconsistent with legislative intent and disincentivizes SLTT investment in disaster preparedness. In addition, the complexity and subjectivity within the existing process for granting federal assistance to individual citizens also creates frustration and tension between federal and state partners that distracts from a common desire to assist survivors efficiently and fairly.

FEMA 2.0 should implement common-sense approaches to update federal disaster declaration thresholds, thus rebalancing federal and state responsibilities. This includes a reset of the Per Capita Indicator threshold, using the Consumer Price Index to account for historical inflation. The Council recommends that disasters be evaluated for federal assistance based on the level of severity for public assistance and individual assistance funding. Additionally, an annual calendar year minimum expenditure should be established for small, medium, and large states prior to them being able to request a federal declaration (*see Appendix A for detailed guidance*).

## 6. Replace the Hazard Mitigation Grant Program with a two-phase funding structure

FEMA's current Hazard Mitigation Grant Program is hampered by administrative burdens that delay funding distribution until well after rebuilding begins, thus missing opportunities for cost-effective mitigation. Reviews indicate lengthy project approval times, inconsistent oversight, and a narrow focus on certain risk while neglecting others. The Council proposes a state-managed program, notionally titled "Refined Risk Reduction" Program (R3P), where project priorities are nationally set and environmental reviews are handled locally, with two phases of funding:

- **Rapid Mitigation Advance** (Within the first 30 days provide up to 5% of the federal government contribution for the disaster to facilitate immediate residential mitigation to primary residences and communities impacted by the event or in other high-risk zones)

- **Strategic Mitigation Allocation** (Within the first six months provide up to the remaining 10% of the federal government contribution to improve the performance of the NFIP by mitigating properties and critical infrastructure based on Federal Administration priorities)

For mitigation to work, the Council recommends states take on greater program management responsibility and continue to develop an improved and comprehensive state hazard mitigation process that identifies projects that are immediately implementable. The program would be structured with up to a 75% cost share based on performance metric (*see Appendix A*) with a 50% minimum. The program would focus on expediting funding for states and territories with approved hazard mitigation plans and a history of successful HMGP performance, encouraging identification and sharing of best practices, inventorying high risk properties and building sound funds management systems. Finally, winding down the legacy open disaster declarations by converting them to the new model would reduce the backlog and break the cycle of repetitive loss, improve fiscal sustainability, and enhance community resilience.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

## 7. Streamline the Individual Assistance program into a single direct payment program

The current FEMA Individual Assistance (IA) Program,[5] which provides direct assistance to disaster survivors, is overly slow, confusing, and inefficient. It leaves many Americans frustrated by complex rules, inconsistent decisions, and long wait times for aid when they are most vulnerable. With at least 15 categories of assistance, the system bewilders and sidelines recipients and private-sector partners who are best positioned to help survivors. Furthermore, the program is not well integrated with other federal housing programs. It does not give Americans the quick certainty they need to drive their own recoveries, and instead centralizes control in Washington, D.C. The process spends taxpayer dollars inefficiently and with little accountability for outcomes. To address these challenges that survivors experience in receiving assistance, the Council proposes the *Framework for Accessible Individual Relief* (FAIR) Program:

- Consolidate existing programs into one direct payment to survivors whose homes are uninhabitable after a disaster.

- Transfer evacuation and temporary emergency sheltering responsibilities to state, tribal, and territorial (STT) governments.

- Focus FEMA 2.0's role on emergency and temporary housing (mass care/sheltering and temporary housing/rental assistance) instead of long-term housing, and only for Americans whose homes are uninhabitable (not those who experience minor damage).

- Affirm private insurance companies remain responsible for permanent housing, with the U.S. Department of Housing and Urban Development and Small Business Administration in lead federal roles.

Instead of bureaucratic, delayed payments that eventually provide only a few thousand dollars to the average American, swift support for emergency sheltering with a faster amount of monetary assistance would directly and positively impact affected Americans. Consolidating assistance into a single payment would provide all Americans clear, specific information on what assistance they would receive from the federal government in the event of a catastrophic loss.

- **Homeowner Assistance**

  - For homeowners, the payment package would be based on their level of need and no more than 15% of the local government's assessed value, capped at a $1 million valuation (i.e. maximum payment not to exceed $150,000).

  - Allowable use would include repairs, replacement, rental and other needs assistance (i.e. personal property loss, transportation, medical, funeral expenses).

- **Renter Assistance**

---

[5] FEMA's Individual Assistance program is designed to help disaster survivors with basic critical needs such as a safe, sanitary, and functional place to live during recovery from a disaster. It is not designed to make survivors whole and is not a substitute for insurance coverage. https://www.fema.gov/fact-sheet/questions-and-answers-about-individual-assistance#:~:text=FEMA%E2%80%99s%20Individual%20Assistance%20program%20is%20designed%20to%20help,and%20is%20not%20a%20substitute%20for%20insurance%20coverage.

11

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- For renters, the payment package would be based on level of need and cover 3 months of rent (first, last, and current month) at the HUD Fair Market Rate (FMR) for the appropriate household size. Individuals with greater need will have the option for 3 additional months of rental assistance for 6 months total.

- This covers rent and other needs assistance.

These reforms will provide quick, cost-effective, and transparent support to disaster survivors, within the limits of federal funding, as well as reduce administrative overhead and clarify federal agency responsibilities. Further, there should be an option for this to be a state-managed program if individual states wish to do so.

## 8. Reform the Public Assistance program to provide direct funding block grants

The current disaster recovery process under FEMA's Public Assistance (PA) program,[6] which provides funding to communities after a federally declared disaster, is burdened by bureaucracy, leading to significant delays and frustration from states and communities. To address this, the Council proposes the *Reformed and Partnered Initiative for Disasters* (RAPID) program, a modern and agile framework that converts the existing PA program into a direct funding model that leverages pre-defined objective event criteria and cost estimates to accelerate and streamline recovery. Utilizing a parametric trigger,[7] funding would be released to states within 30 days of a major federal disaster declaration, much like the Coronavirus Relief Fund that provided rapid financial assistance during the COVID-19 pandemic. This eliminates the need for time consuming loss assessments and quickly provides a financial backstop and cashflow for rapid response and recovery. When paired with traditional insurance of public facilities, this can enable communities to *quickly recover* with manageable financial risk and burden to local taxpayers.

The Council recommends FEMA 2.0 convene a group of STT and private sector representatives to collectively establish a parametric funding model that is based on existing data from the authoritative federal agency or organization over each type of eligible event (i.e. earthquake, hurricane, flood, etc.). The federal funding will be set with a minimum of 50% and increase up to 75% of the established parametric amount based on state performance (*see Appendix A for details*). STTs, in turn, would gain the autonomy to manage the funding, to include determination of project eligibility, and look for duplications of effort as referenced in the Council's first key recommendation.[8] Determination of eligibility would be simplified and limited to eligible applicants, eligible facilities, eligible work, and eligible costs.

Accountability would be maintained through a two-phase audit process: a one-time validation of costs within one year and a final program closeout. All federal funding provided under RAPID

---

[6] Public Assistance is FEMA's largest grant program providing funds to assist communities responding to and recovering from major disasters or emergencies declared by the President. The program provides funding for emergency assistance to save lives and protect property and assists with funding for permanently restoring community infrastructure affected by a federally declared incident. -FEMA Public Assistance Fact Sheet October 2019.

[7] Parametric, or index-based, is a concept where if an event reaches a pre-defined threshold, it automatically sets the payment amount based on the magnitude of the event. This is different than traditional payment based on the magnitude of assessed loss. The main benefit of a parametric model is the speed and certainty of payouts, which are triggered automatically *after* a federal disaster declaration is made, when pre-defined, objective event criteria are met, like wind speed or earthquake magnitude.

[8] This would be accomplished through congressional authorization for eligible, certified STT programs.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

must be expended or returned within eight years. FEMA 2.0 should pursue the ability to convert historic disasters to the new RAPID Direct Funding program, making a onetime payout and immediately transitioning to the two-phased reconciliation approach described above. This will significantly reduce the administrative burden on all stakeholders and prevent added confusion from overlapping approaches. *See Appendix B for an example flow chart of how RAPID would function in a natural disaster.*

## 9. Reform the FEMA National Flood Insurance Program (NFIP) for Financial Stability and Risk Resilience

The National Flood Insurance Program (NFIP), administered by FEMA, faces significant challenges that threaten its long-term viability. The program is financially unsustainable, burdened by over $20 billion in debt,[9] and relies on outdated risk information.[10] This leads to a disconnect between the price of insurance, the public's perception of risk, and actions to mitigate or transfer it. A comprehensive reform plan centered on a strategic shift toward a primary role for the private market, with the goal of fostering a more resilient and financially stable flood risk management system. The Council recommends:

- Empowering communities with stronger land-use policies

- Modernizing risk data with continued implementation of Risk Rating 2.0 and revising flood maps to inform the American people about their true risk

- Implement risk-based pricing and actual costs

- Revising "Write Your Own" compensation to reduce overall administrative costs

- Incentivizing the launch of a "take-out" program to transfer policies to the private market and focus Hazard Mitigation funds on repetitive loss properties

- Engaging state insurance commissioners to facilitate this transfer, including exploring the establishment of a centralized flood insurance marketplace to serve as a clearinghouse for admitted insurers

These changes are expected to accelerate disaster recovery, reduce the federal government's financial burden, send clear financial signals, and provide predictable financial outcomes for homeowners, ultimately leading to a more prepared nation.

## 10. Maximize every dollar spent by Reducing Administrative Costs

A central issue with the current disaster management system is the amount of taxpayer money used for administrative costs. In fact, a substantial part of grant funding is spent on administrative and management expenses at both the federal and state/local levels. In total, almost 25 cents on every dollar can be provided for administrative expenses. As an example, since 2018 in Florida, the cost of a recovery consultant contract rate has increased from $100 to nearly $300 per hour. Most of these costs are expended during the grant development phase, which hinders the pace of recovery. The complexity of existing grant programs has resulted in a

---

[9] Federal Emergency Management Agency, NFIP Debt, https://www.fema.gov/case-study/nfip-debt
[10] *Underwater: How FEMA's outdated flood maps incentivize property owners to take risks.* https://www.nbcnews.com/science/environment/water-femas-outdated-flood-maps-incentivize-system-risk-negotiable-rcna220529

DRAFT//PRE-DECISIONAL//DELIBERATIVE

shift from using government staff to private contractors in exorbitantly high numbers. A FEMA official in Puerto Rico highlights this phenomenon stating, "I have 500 contracted employees that would not be needed if FEMA's grant process was not so complex."[11] The above recommendations offer efficient, streamlined programs that will reduce overall administrative cost burdens by replacing grant programs with direct funding that does not require administrative management.

Any sense of urgency emphasized in this report for providing assistance to SLTTs should be carefully balanced with a robust financial review and compliance. States should be required to utilize their state auditor and/or comptroller to complete timely audits of income and expenditure of all federal funds. Consideration of utilizing private, Certified Public Accountants, or accounting firms to assist in this critical process of accountability would be prudent as many state auditors of public accounts may be overburdened by current statutory responsibilities. Localities and Tribal Governments should be required to submit a standardized audit either from their public auditor or licensed accounting firm. By eliminating and simplifying programs, capping administrative costs, strengthening ethics rules, and increasing direct government support, policymakers would improve how disaster relief funds are used to build a more resilient nation.

**Benefits of the Ten Recommendations**

These recommendations will lead to a more resilient *AMERICA*:

- *Accelerate* disaster response and recovery
- *Modernize* systems and technology for greater efficiency
- *Empower* local and state governments with better resources and tools
- *Reduce* administrative costs and federal burden
- *Improve* coordination across government, private sector, and nonprofits
- *Cultivate* public trust through transparency and accountability
- *Amplify* resilience for rural communities and critical infrastructure

These reforms aim to create a more resilient and prepared nation by ensuring that disaster response and recovery efforts are efficient, cost-effective, and locally executed. Such reforms also ensure that federal support will be available when significant events occur that overwhelm local systems.

---

[11] FEMA Review Council Listening Session, 24 September 2025, San Juan, Puerto Rico.

14

DRAFT//PRE-DECISIONAL//DELIBERATIVE

## Appendix A: Detailed Charts

### Cost Comparison of Current and Proposed Programs

| Current Program | Activity | Current Federal Cost Share | Proposed Program | Activity | Proposed Federal Cost Share |
|---|---|---|---|---|---|
| **Public Assistance** | Emergency Declarations | Not Less than 75% POTUS can increase Section 503(a) | **RAPID Direct Funding** | | • Up to 75% based on performance metric; 50% minimum<br><br>POTUS can increase |
| | Category A: Debris Removal | Not less than 75% POTUS can increase Section 407(d) | | | |
| | Category B: Emergency Protective Measures | Not less than 75% POTUS can increase Section 403(b) | | | |
| | Categories C-G: Permanent Work | Not less than 75% POTUS can increase Section 406(b)(1) | | | |
| **Individual Assistance** | Temporary Housing Assistance (homeowners and renters) | • 100% Section 408(g)(1) | **FAIR** | • Temporary Housing Assistance (homeowners and renters)<br>• Other Needs Assistance | 75% |
| | Other Needs Assistance | • 75% Section 408(g)(2) | | | |
| **Hazard Mitigation Grant** | | • Up to 75% Section 404(a) | **Refined Risk Reduction (R3P)** | • Rapid Mitigation Advance<br>• Strategic Mitigation Allocation | • Up to 75% based on performance metric; 50% minimum<br>• Rapid Mitigation Advance (up to 5% of overall federal contribution)<br>• Strategic Mitigation Allocation (up to 10% of overall federal contribution) |

15

DRAFT//PRE-DECISIONAL//DELIBERATIVE

## Proposed Cost Share Increase Criteria for States, Tribes, and Territories
*A quantitative index should incorporate these criteria to determine cost share increase(s).*

| | | Preparedness | Financial Investment | Response | Recovery | Mitigation |
|---|---|---|---|---|---|---|
| **Required** | | STT entity has implemented a statewide citizen preparedness campaign.[12] | STT entity certifies they have and are maintaining insurance on 100% past permanent work projects. | STT entity annually updates a resources list that includes their resources, typed and cost mapped for deployment outside of the STT (*tying costs to resources*) | The SLTT has the ability to collect, validate, and report preliminary damage assessment data for an affected jurisdiction within the first 30 days post-disaster, enabling timely activation of state and federal assistance mechanisms. | STT entity actively identifies risk through annual THIRA and SPR review and updates to track progress on building national preparedness capabilities. |
| **Recommended** | | STT entity should have a statewide emergency management program that addresses the five national preparedness areas.[13] | STT entity has a minimum of 5% of their state budget in cash reserve | STT entity has an annually reviewed emergency operations plan and requires all localities to have an emergency operation plans and the STT reviews the plan at a minimum every three years | STT has an individual assistance program that includes: 1. Temporary housing assistance 2. Individual and family grant program that includes crisis counseling 3. Disaster unemployment assistance 4. Disaster case management for use during federal disaster. | STT entity manages a mitigation program with a state or local match that provides STT funding to localities to harden infrastructure. |
| | | STT entity adopted consensus standard building codes | STT entity has a disaster reserve or relief fund that support state and local recovery costs; used for FEMA match and non-declared events. | STT entity has participated in EMAC (*outbound/inbound*) deployment in the past 5 years | STT entity must be an IPAWS participant and 75% of the state's localities have a local alert and warning system or participate in IPAWS. | |
| | | | STT entity has 50% of their buildings and infrastructure covered by all hazard insurance (including floods) | | | |

[12] The program must include 2 of the following topics areas to qualify: 1) Preparedness education for their citizens; 2) Coordination with the private and non-profit sectors in planning and communication; 3) Public education related to the importance of personal insurance

[13] Demonstrate this through 1) Maintain current statewide plans for each mission area; 2) Use HSEEP-compliant exercises and implement corrective actions; 3) Integrate THIRA/SPR findings into budgets and strategy; 4) Provide annual preparedness or performance findings

16

DRAFT//PRE-DECISIONAL//DELIBERATIVE

## Appendix B: RAPID Direct Funding Flow Chart

Hurricane with category 3 winds hits Florida

Based on parametric model*, projected damages are $300 million which is well above the PA indicator for a federal disaster declaration

The Governor declares a State of Emergency and requests a major disaster declaration from FEMA 2.0

FEMA 2.0 recommends approval

Based on population of 23 million, $300 million is $13 per capita

President declares major disaster declaration

Within 30 days, FEMA 2.0 provides 50-75% of the parametric pay out of $300 million

Because Florida is a "high performing state", FEMA 2.0 would recommend the federal government provide 75% of the parametric amount ($225 million)

Florida receives $225 million of direct funding and is responsible for managing the money, removing debris, offsetting emergency costs, repairing infrastructure, and providing a final accounting of projects within one year that will be audited by certified auditor and provided to FEMA 2.0

-Florida determines eligibility for projects*** and uses state environmental review
-Florida uses state procurement requirements; not required to follow 2CFR200
-Florida distributes funding fairly, according to disaster caused needs

If there is an under-run, Florida may use extra money toward mitigation efforts

If there is an over-run after one year, Florida may request no more than the remaining 25% of the parametric pay out of $300 million from the President *

All funding must be expended and work completed within 8 years. Residual funding after 8 years must be returned to FEMA 2.0, along with one final certified audit demonstrating use of funds

17

DRAFT//PRE-DECISIONAL//DELIBERATIVE

## Appendix C: Looking Back - A History of Emergency Management and FEMA

The history of disaster and emergency management in the United States reflects the evolution of federal responses to crises, beginning with the first legislative act of disaster relief following the Portsmouth, New Hampshire fire in 1802. Early efforts were reactive, addressing individual emergencies through separate laws until the Federal Disaster Relief Act of 1950 established a comprehensive framework. During the mid-20th century, emergency management expanded to include wartime civil defense and preparation for nuclear attacks, while flooding emerged as a major challenge, prompting the creation of the National Flood Insurance Program (NFIP) in 1968.

The 1970s marked a shift toward a more coordinated approach to disaster management, spurred by large-scale disasters like Hurricane Agnes in 1972. The Disaster Relief Act of 1974 introduced planning and mitigation measures, professionalizing emergency management. This period also saw the establishment of FEMA in 1979 through Executive Order 12127, consolidating federal disaster-related functions under one agency. The Stafford Act of 1988 further defined FEMA's role in disaster response and recovery, emphasizing a systemic approach to preparedness and mitigation.

Major disasters such as Hurricane Katrina in 2005 and Hurricane Sandy in 2012 highlighted gaps in federal response and recovery efforts, leading to legislative reforms. The Post-Katrina Emergency Management Reform Act of 2006 clarified FEMA's authorities and responsibilities, while the Sandy Recovery Improvement Act of 2013 streamlined recovery processes and expanded disaster assistance. The Disaster Recovery Reform Act of 2018 introduced significant reforms, including dedicated funding for pre-disaster mitigation through the Building Resilient Infrastructure and Communities program.

The COVID-19 pandemic in 2020 required an unprecedented federal response, with FEMA coordinating efforts to distribute medical supplies, personal protective equipment, and vaccines, while supporting state and local governments. Lessons learned from the pandemic led to improvements in public health coordination and emergency preparedness. Legislative measures such as the American Rescue Plan Act of 2021 and the Infrastructure Investment and Jobs Act of 2021 provided substantial funding to enhance the Disaster Relief Fund and then subsequently attempt to legislate a solution of how to adjudicate the billions in unobligated funds leftover from the pandemic response.

Overall, the U.S. approach to disaster and emergency management has evolved from reactive measures to a comprehensive system that emphasizes preparedness, mitigation, response and recovery, reflecting the growing complexity and frequency of disasters over time. However, the cumulative effect of reactive legislation saddled FEMA with additional roles, responsibilities, and benefits has ultimately pulled FEMA away from its core mission.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

## Appendix D: FEMA Disaster Response (2021-2024)

Over the previous four years, FEMA encountered one of the busiest disaster periods in recent history, responding to numerous complex and concurrent disasters while grappling with significant workforce and administrative challenges. This assessment highlights FEMA's operational shortcomings, particularly in staffing sufficiency, disaster response delays, and grant oversight failures, which collectively contributed to inadequate disaster response outcomes against an ever-growing mission portfolio. In February 2025, the Government Accountability Office added federal disaster assistance to its "High-Risk List," underscoring systemic issues within FEMA.

The bureaucracy and mission creep that has pulled FEMA away from its core mission combined with a persistent shortage of experienced staff to address these additional missions was a major factor affecting FEMA's performance. At the start of FY2022, FEMA had approximately 11,400 disaster employees, falling short of its staffing goal of 17,670 by roughly 35%. This gap hindered FEMA's ability to deploy surge capacity, retain institutional knowledge, and effectively manage complex operations. Although personnel gaps were routinely highlighted as a challenge, it was left unspoken that the root problem was the expanding mission portfolio, not simply personnel.

The impact of overreliance on the federal government and lack of personnel to conduct manual administrative tasks was evident in delayed disaster assistance, politicization allegations, and administrative inefficiencies. For example, following the cumulative impacts of Hurricanes Helene and Milton, FEMA faced a backlog of 500,000 assistance applications by December 2024, delaying aid delivery to survivors. FEMA's response to the Lahaina wildfires in 2023 also revealed weaknesses in housing logistics and survivor case management, with delays in constructing temporary housing and confusion over rent policies. Similarly, during Hurricane Ida in 2021 and the Eastern Kentucky floods in 2022, survivors reported long delays in receiving aid due to rigid verification rules and insufficient field staffing.

FEMA's administrative capacity was further strained by delays in disaster closeouts and grant oversight failures. The U.S. Department of Homeland Security's Office of Inspector General found that FEMA's oversight deficiencies prolonged disaster closeouts, complicating audits and grant reconciliation. Additionally, FEMA's insufficient oversight of COVID-19 emergency protective measures grants resulted in over $8.1 billion in questioned costs and improper payments, highlighting vulnerabilities in monitoring high-volume grant programs.

Where FEMA had pre-positioned capacity and adequate local partnerships, the agency delivered lifesaving functions and early recovery support. Where pre-existing local capacity was weak (notably some rural and underserved areas) or where multiple disasters clustered, FEMA's limited surge and administrative backstops produced slower assessments, longer grant processing, and protracted closeouts—outcomes that prolong community recovery and increase fiscal exposure. The combination of staffing shortfalls and administrative weaknesses therefore had an uneven but material effect on recovery speed and completeness. Meanwhile, state, local, and private stakeholders routinely delivered faster and effective responses to disasters.

The rising frequency and complexity of disasters have outpaced FEMA's static capacity, creating a strategic mismatch between demand and capability. This mismatch combined with increased responsibilities has constrained FEMA's ability to manage simultaneous large-scale incidents without sacrificing speed or oversight.

19

DRAFT//PRE-DECISIONAL//DELIBERATIVE

## About the FEMA Review Council

On January 24, 2025, President Donald J. Trump signed Executive Order (EO) 14180, "Council to Assess the Federal Emergency Management Agency (FEMA)," establishing a FEMA Review Council to recommend improvements or structural changes to the agency, promote the national interest, and enable national resilience. The Secretary of Homeland Security established the Council consistent with the Federal Advisory Committee Act on February 21, 2025.

The FEMA Review Council consists of two co-chairs and ten council members, who were all appointed by President Trump on April 28, 2025. After the appointment of the members, the Council created three subcommittees to address federal and state coordination, disaster response and recovery assessments, and the compilation of the final report.

The Council also coordinated requests from the President, through the Assistant to the President for National Security Affairs, the Assistant to the President for Homeland Security Affairs, and the Director of the Office of Management and Budget.

For additional information regarding the Council, visit:
https://www.dhs.gov/federal-emergency-management-agency-review-council

### *Work Performed*

The Council's work was conducted from approximately February 2025 through November 2025, during which time the following critical efforts were completed. In total, the Council engaged with representatives from all 50 states and territories, as well as numerous tribal leaders and representatives.

- **Council Public Meetings.** Council members met routinely, both virtually and in-person, for internal proceedings and public meetings.

- **DHS/FEMA Briefings.** The Council received multiple briefings from FEMA and other related DHS offices.

- **Stakeholder Listening Sessions.** The Council and its subcommittees conducted 17 listening sessions to hear from federal, state, local, and tribal partners, as well as relevant private sector entities and non-profit institutions, such as faith-based organizations. The Council traveled extensively throughout the nation to conduct meetings with key stakeholders to capture their concerns, ideas, and solutions.

- **Public Comment and National Survey.** In addition to the above efforts, the Council collected and assessed over 11,000 public responses received via Federal Register Notice solicitation for comment, as well as conducted a national survey of state, local, tribal, and territorial emergency managers.

20

DRAFT//PRE-DECISIONAL//DELIBERATIVE

## FEMA Review Council Members

Kristi Noem
Secretary of Homeland Security
*Co-Chair*

Pete Hegseth
Secretary of War
*Co-Chair*

Greg Abbott
Governor, State of Texas

Phil Bryant
Former Governor, State of Mississippi
*Vice Chair*

Jane Castor
Mayor, City of Tampa, FL

Mark Cooper
Former State Emergency Management
Director and Homeland Security Advisor,
State of Louisiana

Rosie Cordero-Stutz
Sheriff, Miami-Dade County, FL

Robert Fenton, Jr.
Region 9 Administrator, FEMA

Kevin Guthrie
Executive Director, Florida
Division of Emergency Management

W. Nim Kidd
Chief, Texas Division of Emergency
Management

Michael Whatley
Former Chairman,
Republican National Committee

Glenn Youngkin
Governor, Commonwealth of Virginia

## Acknowledgements

The Council would like to acknowledge and express its gratitude toward:

- The many outside experts who were willing to meet with us, for their time and insights,
- The members of state and local emergency management and homeland security entities and governments,
- Governors from many states and their chiefs of staff, and
- The current and former FEMA employees who offered their time and experience.

The Designated Federal Officer, Mr. Patrick Powers, for his exemplary leadership and effort to ensure the Council's work was coordinated, transparent, and effective to ensure a comprehensive effort to meet President Trump's directives – and the many incredible staff members directly supporting the Council, among countless others who made this report possible.

The Council also dedicates this report to the tens of thousands of hardworking emergency management professionals who have dedicated their careers to the preparation, response, recovery, and mitigation of natural and manmade disasters – notably, those who continue to recover from ongoing disasters.

21

# Draft Report Addendum

## The President's Council to Assess the Federal Emergency Management Agency

December 11, 2025



DRAFT//PRE-DECISIONAL//DELIBERATIVE

## Table of Contents – Report Addendum

**Key Recommendations** ................................................................................................ **24**

1. FEMA 2.0 – A New Start ............................................................................................. 24

2. Recommend FEMA 2.0 remain in DHS ..................................................................... 28

3. Equip States, Local governments, Tribes, and Territories to lead disaster response with the federal government in a supporting role ........................................................................ 30

4. Keep Existing Federal Disaster Resources to Support Communities ........................ 34

5. Realign the Criteria for Federal Disaster Assistance ................................................. 36

6. Replace the Existing Hazard Mitigation Grant Program with a two-phase funding structure 368

7. Streamline the Individual Assistance program into a single direct payment program ............. 40

8. Reform the Public Assistance program to provide direct funding block grants ....................... 44

9. Reform the National Flood Insurance Program (NFIP) for Financial Stability and Risk Resilience ..................................................................................................................... 51

10. Maximize every dollar spent by reducing administrative costs ............................................. 55

**Soliciting Input from Stakeholders Across the Nation** .............................................. **57**

    Incorporating Public Feedback into FEMA Review Council Efforts.............................57

    Methodology.............................................................................................................58

    Analysis of Public Feedback Received......................................................................60

    Tribal Engagements.................................................................................................62

**Areas for Further Exploration / Engagement** .......................................................... **63**

**Public Meeting Minutes** ............................................................................................. **64**

**Engaged Subject Matter Experts and Stakeholders** ................................................. **64**

**Detailed Public Comments and Survey Inputs – An Analysis** .................................. **67**

23

DRAFT//PRE-DECISIONAL//DELIBERATIVE

# Key Recommendations

## 1. FEMA 2.0 – A New Start

**Issue Overview:**

FEMA needs to be fundamentally transformed from how it exists today, and the core missions must be remade into a new, supportive agency. "FEMA" as a brand and as an agency has been irreparably damaged by the last four years of mission creep and programmatic failures as noted later in this report. The time is now to close the chapter on FEMA and establish a new agency that retains the core missions of FEMA, while highlighting the renewed emphasis on locally executed, state or tribally managed, and federally *supported* emergency management. We propose renaming FEMA and reference the new agency as "FEMA 2.0" in this document.

The core objective is to realign the agency's mission to prioritize immediate, effective, and impartial disaster response and recovery for American citizens by shifting greater responsibility and direct funding to SLTTs. The current structure is criticized for mission creep, being too centralized, and for administrative bloat that diverts critical resources. Key recommendations include a 50% overall staff reduction, primarily targeting the disaster workforce through program efficiencies and increased accountability, exploring the relocation of physical headquarters, shifting certain missions like training to state authorities, and redefining FEMA's role as a "payer of last resort" to eliminate duplicative federal funding. A crucial element of this reform is to

*"Change is hard. It is especially hard for those invested in the status quo, who have forgotten that their duty is to the American people — not entrenched bureaucracy. I refuse to accept that FEMA red tape should stand between an American citizen suffering and the aid they desperately need. That's why I am working so hard to eliminate FEMA as it exists today and streamline this bloated organization into a tool that actually benefits Americans in crisis." – DHS Secretary Noem, DHS Press Release (August 29, 2025)*

build upon and expand successful federal-state partnership programs to leverage demonstrated value and expertise in the first-response community while establishing a cohesive framework that integrates government, private, and non-profit sectors for unified national resilience. These reforms are designed to create a lean, deployable disaster force that empowers state and local officials, reduces costs, and improves resilience against increasingly complex threats. The internal workforce adjustments should be conducted over a 2-3 year phased approach that allows the agency to realize the efficiencies while reducing staff. Further, these reforms are best achieved via the same timeline that allows for States, Locals, Tribes, and Territories to make corresponding fiscal, capability, and workforce adjustments to ensure a successful transition for all affected stakeholders.

**Problem:**
FEMA currently suffers from multiple systemic issues that hamper its effectiveness and accountability.

24

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- **Lost Mission Focus:** The agency's resources are diverted to missions outside its core disaster response and recovery responsibilities. This includes a significant financial outlay on issues unrelated to its primary mandate. The resulting mission creep saps limited staff and resources, compromising its ability to respond to actual disasters.

- **Lack of Integrated National Framework:** The current emergency management landscape lacks a comprehensive framework that effectively integrates the efforts of federal, state, and local governments with those of private industry and non-profit partners. This gap prevents the building of shared capabilities and national-level capacity, directly impacting the readiness and effectiveness of local first responders.

- **Inefficient Use of Federal Funds:** There is excessive overlap in federal benefits programs, with FEMA often providing duplicative funding. This bureaucratic redundancy leads to administrative bloat, delays in delivering aid, and unnecessary costs for taxpayers.

- **Centralized and Bloated Headquarters:** Compared to mission-focused federal agencies with comparable field operations, such as the U.S. Army Corps of Engineers (USACE) and the U.S. Forest Service (USFS), FEMA is significantly top-heavy. The concentration of personnel in a District of Columbia-centric headquarters creates bureaucratic inertia and slows down critical decision-making during emergencies.

**Recommendations:**

To address these problems, the following recommendations are proposed for FEMA 2.0:

1. **Transfer Training Responsibility and Empower States through Proven Programs**

   - **Shift Training Execution to States:** While FEMA 2.0 must establish and maintain national standards for disaster response, the direct execution of training should be shifted to the state level. This would eliminate current personnel requirements within FEMA 2.0 and empower states to build robust, tailored training programs.

   - **Expand and Leverage Successful Partnerships:** Rather than replacing successful programs, FEMA 2.0 will double down on those with a proven track record of effective federal-state-local partnership.

     o **National Urban Search and Rescue (US&R) Program:** This program, with its network of 28 task forces, has a decades-long history of successfully integrating federal, state, and local emergency response teams. FEMA 2.0 will enhance funding and expand capabilities for these task forces, ensuring they remain a cornerstone of specialized, on-the-ground support. Leverage this successful program as a model to expand the State Urban Search and Rescue (SUSAR) programs.

     o **Centers for Domestic Preparedness (CDP):** The CDP provides invaluable, federally funded training for state, local, tribal, and territorial emergency responders in areas such as incident management and mass casualty response. FEMA 2.0 will expand access to and funding for this training, ensuring first responders across the country are equipped for a wide array of threats, including complex disasters and terrorist acts.

25

DRAFT//PRE-DECISIONAL//DELIBERATIVE

o **U.S. Fire Administration (USFA):** The USFA already works with local fire departments to reduce fire-related injuries and fatalities through training and resource provision. FEMA 2.0 will build on this relationship by better integrating USFA support into overall disaster preparedness and response strategies, particularly for incidents involving complex hazards like wildfires.

2. **Empower States with Direct Funding and Limited Federal Coordination**

   • **Empower States to Take the Lead:** States will assume a greater role in managing disasters from preparedness to recovery, utilizing direct federal funding mechanisms. This empowers state and local officials who have a more direct understanding of their citizens' needs.

   • **Formalize Federal Role as a Coordinated Supporter:** The federal government will limit its on-the-ground response to incidents that exceed the capabilities of state and local resources. In these cases, FEMA 2.0 will act as the central coordinator, aligning resources from across the federal government, such as the Department of War, to provide supplemental support.

   • **Closeout of Historical Open Disasters:** FEMA 2.0 should endeavor to expedite the closeout of historical open disasters. Doing so will address and reduce lingering administrative costs as well as legacy information technology systems that are maintained solely to facilitate open disaster declarations. Both directly benefit Americans by accelerating ongoing recovery efforts and reducing taxpayer costs.

   • **Eliminate Duplicative Funding:** This approach, which establishes FEMA 2.0 as the payer of last resort, will require other federal agencies to provide assistance through their existing benefit programs first, thereby eliminating redundant funding mechanisms and associated administrative burdens. To achieve this, the Administration should work with the U.S. Congress to ensure other existing benefit programs are funded in a timely and responsive manner. Further, FEMA 2.0 must look for opportunities to remove duplications of effort such as environmental and historical reviews, audits, and inspections that should be conducted by states.

3. **Revitalize a Unified National Network for Partnership**

   • **Return an Integrated Network:** Disasters demand a unified national effort that leverages the strengths of all sectors. FEMA 2.0 will address the existing gap in the emergency management landscape by returning to a network that enables government, private industry, and non-profit partners to build toward a shared capability and integrated resources. This network will provide a common understanding of roles and responsibilities, promoting a "Whole Community" approach to national resilience.

   • **Enhance Public-Private Coordination:** The new framework will formalize and streamline coordination between government agencies, critical private-sector partners, and nonprofit organizations. Because the private sector owns and operates most of the nation's critical infrastructure, and nonprofits deliver essential services during emergencies, integrating these partners is essential to strengthening national capacity and improving readiness at the local level. This effort includes revitalizing the National Business Emergency Operations Center (BEOC) and relocating it to the Agency's operational directorate to reestablish its role as a central hub for communication,

26

DRAFT//PRE-DECISIONAL//DELIBERATIVE

problem-solving, and resource coordination among businesses and nonprofit partners during disasters. Additionally, the framework will support the development of Regional BEOCs that are aligned with the National by leveraging existing regional resources—particularly the FEMA Regions' private-sector liaison —to ensure closer alignment with state and local operations. As part of this effort, Regional BEOCs should convene key stakeholders—including major retailers, small business leaders, logistics providers, and nonprofit response partners—to assess current models, close coordination gaps, and identify priority needs for restoring services, stabilizing supply chains, and bringing communities back online following major disasters.

- **Leverage Technology for Shared Awareness:** The framework will also include a plan to develop and implement modern technology and communication protocols that ensure shared situational awareness and data sharing among all partners before, during, and after a disaster.

4. **Rebalance FEMA workforce and provide clarity across Headquarters, Regions and Field**

- **Clarity of roles and responsibilities:** Headquarters will focus on policy, procedures, guidance, oversight, administrative functions, and coordination for national response. The head of FEMA 2.0 is responsible to ensure a national system of emergency management that is locally led, state managed, and federally supported. The regions will focus on preparing and responding to incidents through forward embedded staff at State offices. Incidents will be led by Federal Coordinating Officers who report to Regional Administrators and are empowered to coordinate federal resources and support to States. In partnership with states, tribes, and territories, Regional Administrators will ensure the coordination, training, exercises and plans are in place for the most significant incidents across the United States.

- **Significant Staff Reduction:** Through a combination of program efficiencies, enhanced effectiveness, and greater accountability, it is estimated that FEMA 2.0 can reduce its overall staffing by 50% or more as implemented in this report. This reduction should be phased over a 2-3 year timeline and would be dependent on these recommendations being implemented and the existing workload of the FEMA 2.0 personnel being reduced. Most of this reduction is expected to come from its disaster workforce, which includes temporary, on-call, and permanent personnel deployed to disaster areas. The aim is to create a more strategic, less personnel-intensive response, reserving federal intervention for the largest and most complex events.

- **Transfer Logistics Operations:** Explore moving FEMA 2.0's logistics team to co-locate with the U.S. Transportation Command (USTRANSCOM). This would create efficiencies through direct collaboration with their Department of War counterparts.

- **Review Executive Structure:** Conduct a review of the Senior Executive Service (SES) billets to realign or reduce them in accordance with the proposed staffing efficiencies and mission refocusing.

**Conclusion**

The transformation into FEMA 2.0 is an imperative step toward restoring the agency's effectiveness, accountability, and public trust. By implementing a bold restructuring plan—

27

DRAFT//PRE-DECISIONAL//DELIBERATIVE

centered on significant staffing reductions, streamlining operations, eliminating redundancies, and empowering state partners—the federal government can ensure a more immediate, effective, and efficient response to disasters. This framework shifts the agency's focus from bureaucracy to boots-on-the-ground action, better positioning the United States to meet the complex disaster challenges of the future. The ultimate outcome will be a streamlined, responsive, and resilient organization that delivers timely relief and recovery to American citizens when they need it most.

# 2. Recommend FEMA 2.0 remain in DHS

Following the September 11, 2001, terrorist attacks, Congress created DHS to consolidate numerous agencies responsible for national security and public safety.[14] The legislation explicitly reframed disaster response as a core component of national security. FEMA 2.0 should remain in DHS, as the Department provides critical resources, budgeting support, and intelligence capabilities, which enabling stronger disaster preparedness, faster response, and better recovery efforts for states and communities while maintaining government stability and continuity during crises.[15] Keeping FEMA within DHS ensures communities can easily coordinate across all types of emergencies—from natural disasters to terrorism—by focusing their general response capabilities on their specific local risks. The Council strongly recommends FEMA's mission of continuity remains with the new agency moving forward. This vital national function is best situated within this agency and the Department of Homeland Security.

**Key Advantages of FEMA 2.0 Within DHS:**

1. **Unified National Security Approach:**
   o **Holistic Perspective:** FEMA 2.0's placement within DHS ensures coordinated responses to both natural disasters and terrorism.
   o **Preventing Stove piping:** Integration within DHS addresses pre-2002 challenges, such as the siloing of information and resources, by fostering cross-agency collaboration.
   o **Shared Resources:** FEMA 2.0 benefits from DHS's extensive resources, including advanced technology and intelligence-gathering capabilities, enhancing disaster preparedness and response.

2. **Improved Coordination and Resources:**

---

[14] Under the Post-Katrina Emergency Management Reform Act (PKEMRA), the Administrator of FEMA has a statutory responsibility to advise both the Secretary of Homeland Security and the President on emergency management and during a crisis. ((6 U.S.C. § 313(c)(4)). Further, PKEMRA also designates the FEMA Administrator as the "principal advisor to the President, Homeland Security Council and the Secretary on emergency management matters. ((6 U.S.C. § 313(c)(2)).

[15] Of note, emergency management stakeholder response on FEMA's location involved vigorous debate and some support for re-establishing FEMA as an independent agency. For all general public written comments, Federal Register, Department of Homeland Security 2025-0013, https://www.federalregister.gov/documents/2025/03/26/2025-05057/request-for-public-input-on-experiences-with-fema-disaster-responses

28

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- o **Synergy and Efficiency:** As part of DHS, FEMA 2.0 gains access to administrative support, such as human resources and IT services, which improve operational efficiency and reduce internal burdens.

- o **Congressional Leverage:** FEMA 2.0's inclusion in DHS provides visibility and funding advantages, ensuring its budget is protected within the broader national security framework.

3. **Enhanced Interagency Partnerships:**

- o **Integrated Response:** Complex disasters often require coordination among multiple federal agencies. FEMA 2.0's position within DHS streamlines interagency partnerships, enabling a more effective federal response.

**Challenges and Path Forward:**
While the integrated structure offers distinct advantages, operational challenges such as headquarters-centric decision-making and staffing shortages have hindered FEMA's effectiveness. However, these issues stem from mismanagement rather than the structural integration itself. The Council believes the benefits of a unified approach to national security and emergency management outweigh the challenges and recommends addressing internal inefficiencies through targeted reforms rather than separation.

**Recommendations for Improvement:**
These reforms will empower FEMA 2.0 to meet its mission effectively, leveraging the strengths of the DHS structure while addressing its weaknesses.

**Retain Continuity:**
The Council strongly emphasizes the importance of preserving FEMA's mission of continuity within DHS. Continuity of operations is a cornerstone of national preparedness, ensuring that government systems, critical infrastructure, and essential services remain functional and resilient during emergencies or disruptions. This vital function is integral to safeguarding public safety, maintaining stability, and enabling effective response and recovery efforts.

FEMA 2.0, under DHS, is uniquely positioned to oversee and execute this mission due to its established expertise, resources, and interagency coordination capabilities. To ensure the reliability and effectiveness of this critical function, the Council strongly recommends that no changes be made to this element of the agency's operations, structure, or focus. Preserving the continuity mission within FEMA 2.0 is essential to maintaining the nation's ability to respond to crises and uphold the stability of government functions during times of uncertainty.

**Conclusion**
The integration of the FEMA 2.0 within the Department of Homeland Security (DHS) remains a strategic decision that strengthens disaster preparedness and national security. While challenges exist, they stem from implementation issues rather than the structure itself. By addressing inefficiencies and investing in reforms, FEMA 2.0 can fully leverage the benefits of its placement within DHS, including enhanced coordination, resource sharing, and continuity of operations. Keeping FEMA within DHS ensures communities can easily coordinate across all types of emergencies—from natural disasters to terrorism—by focusing their general response capabilities on their specific local risks.

29

DRAFT//PRE-DECISIONAL//DELIBERATIVE

# 3. Equip States, Local governments, Tribes, and Territories to lead disaster response with the federal government in a supporting role

**Problem:**

Disasters demand unified action across government, private industry, and with non-profit partners, leveraging the strengths of these sectors to optimize national resilience. The national emergency management landscape lacks a framework that helps everyone involved in responding to emergencies build toward a shared capability and integrated resources to raise national-level capacity. This gap directly impacts the readiness of local responders.

**Problem 1: Lack of a National Standard for Incident Response and Recovery**

Standards that define the capabilities jurisdictions should have, how they are measured, and how personnel are qualified have not been adopted nationally, and the overall approach requires significant improvement. While there have been attempts over time to develop national standards and systems, such as the National Preparedness System and core capabilities, these efforts have been fragmented and lack cohesive implementation. Without uniform standards, training varies, equipment is purchased without common specifications, and response teams cannot reliably integrate across jurisdictions. These inconsistencies make it harder to field mission-ready teams, match resources to needs, and deliver timely assistance to survivors.

*"FEMA sets the tone and guides systems down to local jurisdictions through the provision of guidance, frameworks, and training." -Anonymous Stakeholder Feedback*

**Recommendations:**

1.  **Encourage National Capability Standards Adoption:** FEMA 2.0 shall establish a formal governing board of federal, state, local, tribal, and territorial (FSLTT) stakeholders to codify national minimum standards for incident response and recovery capabilities. These standards would build upon existing frameworks like the National Incident Management System (NIMS) Resource Typing and National Qualification System (NQS) and be published through a Resources Typing Library Tool or a similar platform. The goal is to define, in plain terms, the personnel, equipment, training, and performance criteria for common mission sets like mass care, communications, incident management, and logistics.

2.  **Build Scalable Training Resources:** State, locals, and tribal nations shall take responsibility for training delivery, with the federal role primarily shifting to developing curriculum and setting outcome-based standards. In addition to curriculum development, FEMA 2.0 will expand its "train-the-trainer" programs to scale instruction, certifying SLTT instructors from across the nation to provide the FEMA 2.0 curriculum. This will expand the number of trainings delivered local to emergency managers and allow for consistency in training to emergency management best practices. FEMA 2.0 schoolhouses would primarily be focused on hands on training not available elsewhere, to include existing live-agent training at the Center for Domestic Preparedness.

30

DRAFT//PRE-DECISIONAL//DELIBERATIVE

3. **Professionalization of Emergency Management:** To address the unique professional development needs of senior leaders in emergency management, FEMA 2.0 shall establish advanced education pathways focused on crisis leadership, interagency coordination, and strategic decision-making. These pathways will include specialized training programs, executive-level workshops, and mentorship opportunities designed to equip leaders with the skills required to navigate complex emergencies and coordinate effectively across agencies and jurisdictions. Such an initiative would strengthen the leadership pipeline by fostering a cadre of well-prepared professionals who can consistently apply national doctrine and make informed strategic decisions during crises. By investing in the professionalization of emergency management, FEMA 2.0 will promote a unified approach to leadership and decision-making, ensuring greater consistency and effectiveness in emergency response and recovery efforts nationwide.

4. **Catastrophic Planning and Exercise Standards:** FEMA 2.0 shall focus national plans and federally funded exercises on truly catastrophic scenarios, such as large-scale natural disasters, nation-wide cyberattacks, or coordinated terrorist events, to ensure preparedness for the most severe threats. FEMA 2.0 will also develop and implement standardized approaches for SLTT exercise and planning practitioners through shared training, doctrine, and evaluation criteria. By leveraging established frameworks such as the Homeland Security Exercise and Evaluation Program (HSEEP) and Community Planning Guidance, FEMA 2.0 will promote a common approach to how SLTT jurisdictions plan and prepare for incidents within their communities. This will be critical in fostering national resilience as an integrated network, enabling jurisdictions to identify resource gaps in relation to a national inventory and prioritize investments accordingly. This will enhance the ability of SLTT jurisdictions to respond effectively to significant events and integrate seamlessly into broader national response efforts.

### Problem 2: Limited Ability to Share and Coordinate Resources

National readiness is constrained by the absence of a single, standards-driven operating picture that provides real-time visibility into capabilities and resources across jurisdictions and sectors. Without this shared view, resource sharing depends on uneven mutual aid processes, variable recognition of responder qualifications, and fragmented, non-interoperable data systems — conditions that slow decisions and erode trust in deployments. At the same time, non-disaster grant funding is not aligned to build and sustain typed, mission-ready capabilities that are discoverable and rapidly deployable nationwide, and significant private, nonprofit, and volunteer capacity remains outside formal operational workflows. The result is duplicated requests, delayed missions, and avoidable reliance on federal surge assets, while fragmented local investments fail to aggregate into a coherent, interoperable national capability.

### Recommendations:

1. **Revitalize and promote the use of the Unified Resource Catalog:** FSLTT stakeholders should be required to identify and catalog their typed capabilities and resources within a defined period for implementation and updated routinely. Pre-vetted private sector resources and nonprofit capabilities should also be cataloged to present a complete national picture. FEMA 2.0 shall determine whether its Resource Inventory System or a new cloud-based platform is needed to establish a national inventory, creating a single, searchable online marketplace for all stakeholders to find available resources within

31

DRAFT//PRE-DECISIONAL//DELIBERATIVE

budget. Standardized resource typing and federal policies will formalize mutual aid frameworks to enable rapid, coordinated sharing of personnel, equipment, and resources during large-scale incidents.

2. **Prioritize Investment for Mission-Ready Teams, Capabilities, and Infrastructure:** We are a nation of local governments with resources residing at the local level. With this in mind, we must invest via grants to build and standardize this national coalition. FEMA 2.0 should update program guidance and regulations to prioritize investments in Mission Ready Teams (MRTs) for non-disaster grants. Funded capabilities meet national standards, be typed according to NIMS definitions, and be entered into the national inventory system. Federal non-disaster grant programs (NGDP) should be updated to prioritize investments in mission-ready capabilities and infrastructure that meet national standards and integrate into the national inventory system. These investments must directly support national preparedness objectives and ensure rapid deployment during emergencies. Further, these investments must emphasize building capabilities and capacities with a shift away from sustaining SLTT capabilities and capacities with federal grant dollars. The NDGP should be limited to a maximum of 3 years for personnel-related projects with the local jurisdiction funding that person(s) in perpetuity on SLTT funds. NDGP should be limited to building a new capability or capacity through capital outlay equipment once, then SLTT should pick up the cost for maintaining that new capability or capacity through SLTT funds in perpetuity. Additionally, the Council recognizes the importance of Non-Disaster Grants, such as the Emergency Management Performance Grant within the suite of FEMA's preparedness grants, in ensuring our nation's security and recommends these programs be retained within FEMA 2.0. The Council encourages exploring how to leverage federal savings from other efficiencies gained to create a potential one-time EMPG increase to better facilitate the return of responsibilities to States, Tribes and Territories. Linking federal funding to compliance with uniform standards for deployable capabilities will streamline mutual aid processes, enhance resource interoperability, and strengthen national preparedness by focusing on readily deployable resources.

3. **Credentialing:** To enhance the sharing of personnel nationally and improve upon the existing credentialing framework under the National Incident Management System (NIMS), the system must be modernized to ensure uniform standards, interoperability, and recognition of responder qualifications across jurisdictions. This includes expanding the National Qualification System (NQS) to cover emerging roles, integrating credentialing into a centralized national database for real-time visibility, streamlining verification processes using advanced technology, and incorporating volunteer, faith-based, and private sector responders into the credentialing framework. Federal policies should mandate compliance with updated credentialing standards for jurisdictions receiving non-disaster grant funding, while training and technical assistance should be provided to support adoption. These enhancements will ensure rapid deployment of qualified personnel, reduce delays, and strengthen national preparedness and resilience during large-scale incidents.

4. **Promote the Integration of Additional Partners, to include Volunteer and Faith-Based Organizations:** *To enhance the effectiveness and inclusivity of emergency management efforts, FEMA 2.0* **shall prioritize** *the integration of volunteer, faith-based,*

32

DRAFT//PRE-DECISIONAL//DELIBERATIVE

*and nonprofit organizations into national preparedness, response, and recovery frameworks.* FEMA 2.0 shall establish and maintain a national inventory of volunteer, faith-based, and 501(c)(3) organizations, and integrate pre-vetted private sector resources to create a comprehensive national capability picture. Federal policy shall require the integration of these entities into planning, coordination, and operational frameworks to leverage community networks, local knowledge, and additional workforce capacity. This integration will expand the reach and effectiveness of national response and recovery operations while strengthening community resilience.

5. **Fund and Promote Interoperable Systems:** Federal policy shall promote and incentivize shared investments in interoperable communications, data-sharing platforms, and information systems that enable real-time coordination across all levels of government and partner organizations. Open data standards shall be established and promoted by federal policy to ensure interoperability, consistency, and reliability of information exchange during incident response and recovery.

**Benefits:**

- **Speed:** Rapid pre-deployment of anticipated resources will ensure local readiness for impending peril

- **Consistent Expectations:** All local emergency managers know exactly the capabilities they will receive

- **Cost Transparency:** Allows local emergency managers to make better informed cost-benefit decisions to optimize their response

- **Predictability:** Helps jurisdictions plan and budget more effectively for disaster response

- **Capability-focused:** Creation of a national inventory connected to funding eligibility will create incentives for SLTT stakeholders to focus on core capabilities

- **Faster, Coordinated Response:** Joint planning and integrated frameworks reduce gaps and overlaps during disasters

- **Efficient Resource Use:** Shared investments in interoperable systems cut costs and eliminate duplicative infrastructure

- **Seamless Recovery:** Aligned federal programs simplify assistance for survivors and speed community rebuilding

- **Broader Capabilities:** Leveraging private sector innovation and nonprofit expertise expands surge capacity and specialized skills

- **Stronger Public Trust:** Clear roles and unified communication enhance transparency and confidence during crises

- **Nationwide Readiness:** Cross-sector partnerships create a more adaptable, scalable system for complex or cascading disasters

- **Faster Response Times:** Well-trained SLTT teams and regional hubs enable immediate action without waiting for federal assets to arrive

- **Stronger Self-Sufficiency:** Local governments gain the skills, equipment, and partnerships to manage crises, reducing dependency on federal surge capacity

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- **Scalable Support**: Regional hubs provide shared resources that can expand, or contract based on event size, optimizing efficiency
- **Improved Coordination:** Formalized mutual aid agreements streamline resource sharing across jurisdictions, minimizing gaps or duplication
- **Cost Efficiency:** Local capability and mutual aid reduce expensive federal deployments and allow resources to be used where most needed
- **Enhanced Resilience:** Communities build long-term readiness and confidence, ensuring sustained operations during back-to-back or prolonged disasters
- **Tailored Solutions:** Training and equipment investments reflect local hazards and demographics, improving effectiveness in diverse environments

**FEMA 2.0 Savings and Efficiencies Gained:**

To be determined through detailed analysis. Expected areas of savings include reduced reliance on costly federal surge deployments when SLTT and private resources are available; lower duplication of resource requests and overlapping contracts; more targeted grant spending on standardized MRPs; and productivity gains from interoperable communications and data systems. A formal cost-benefit framework should measure baseline response times, deployment costs, and coordination overhead before and after implementation to quantify savings.

**Conclusion:**

A truly resilient nation depends on seamless collaboration across government, private industry, and nonprofit partners. Empowering SLTT governments to take the lead in managing disasters is essential for a resilient national preparedness strategy. Further, implementation of a mandatory national inventory system achieves the goal of ensuring disasters are locally executed, state managed, and federally supported. Leveraging modern technology solutions to establish such a national inventory system that provides transparency to the availability of SLTT resources, alignment to national standards and the typing of those same resources, as well as the upfront costs of those resources will increase the national preparedness of the country.

# 4. Keep Existing Federal Disaster Resources to Support Communities

### Problem:
State and local governments are primarily responsible for responding to threats to life and property but may lack the full scope and scale of resources required to respond. Consistent standards, effective coordination, and robust and timely federal support capabilities are required to save American lives when threatened by a range of hazards. Man-made hazards and nation-state threats will challenge the national response capability in ways it has not been tested before. The federal government must continue to build its capability to support these efforts even if state and local governments assume greater responsibilities.

### Recommendation:
Preserve and modernize the federal government's capability to support state and local partners in lifesaving and life-sustaining efforts. Ensure robust national capability is available for the full range of hazards including natural hazards, cybers attacks, and nation-state threats. This capability must be able to evolve with an ever-changing threat environment. Regardless of the

34

DRAFT//PRE-DECISIONAL//DELIBERATIVE

incident type or requirement, ensure integrated, timely, and efficient federal support is available when needed.

*Protect and Improve National Support Capability*

1. **Sustain Core Standards to support effective and interoperable teams:**
   - Maintain national training and certification programs, including NIMS/ICS/NQS (continued further development) and resource typing

2. **Improve Federal Coordination:**
   - Maintain a central and coordinated response capability to support state and local requirements
   - Ensure a federal government-wide inventory of all available response assets to include type, costs, and available response times

3. **Build Capability for Emerging Threats**
   - Nation-state threats and cyber-attacks will challenge national resilience in ways the United States has not seen in a generation
   - Capability for consequence management and national resilience to these hazards must be driven from the federal government as a core function of our national security

4. **Integrate Emerging Technology:**
   - Leverage advanced analytics, AI, and communications platforms to enhance operational capability, predict requirements in advance, and reduce costs

5. **Leverage Supply Chains for National Security**
   - Ensure the federal government can support national preparedness, supply chain resilience, and consequence management during emergencies

6. **Continuity of Government**
   - FEMA leads federal efforts to develop and implement federal continuity programs by directly assigning responsibility for continuity of operations, continuity of government, and continuity of plans
   - These programs ensure important federal missions, and state and local governments, continue to function amidst any threat

**Benefits:**
   - **Faster Response Times:** Well-trained and interoperable SLTT teams enable immediate action without waiting for federal assets to arrive
   - **Guaranteed National Backbone:** Maintains critical capabilities (NIMS/ICS, US&R, REP, NDMS, IPAWS, DFA) that cannot be replicated at the state or local level
   - **Faster, Unified Response:** Consistent standards and trained teams enable seamless coordination across jurisdictions during complex, multi-state disasters
   - **Adaptation to Emerging Threats:** Expanding readiness for cyber-attacks, pandemics, and climate-driven disasters ensures relevance to evolving risks

35

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- **Enhanced Public Safety:** Reliable federal assets safeguard lives when significant events exceed local capacity
- **Technology-Driven Efficiency:** Advanced analytics, AI, and next-generation communications improve situational awareness and operational speed
- **Cost-Effective Preparedness:** Sustaining national programs avoids duplicative investments by localities while providing surge capabilities when needed

### Conclusion:

FEMA's current mission exists at the intersection of emergency management and national security. An essential component of this is FEMA's authority to coordinate other federal agencies in support of SLTT partners. Additionally, the agency maintains an arsenal of dual-use capabilities, regional offices, incident management teams, and prepositioned logistic systems or programs, and the Disaster Relief Fund to ensure the American people are resilient in the face of any threat, whether natural or man-made. Therefore, sustaining and resourcing this mission in FEMA 2.0 is vital to public safety, economic stability, and national resilience.

## 5. Realign the Criteria for Federal Disaster Assistance

Federal regulations describe the process required for a governor to request Federal disaster assistance, including factors FEMA considers when making a recommendation to the President to approve or deny a major disaster declaration request. The Stafford Act currently prohibits the sole use of "an arithmetic formula or sliding scale based on income or population" when considering declaration requests.[16] Consequently, FEMA uses a set of factors to make recommendations to the President. The existing disaster declarations process for Public Assistance (PA) under accounts for state, local, tribal, and territory (SLTT) capacity and, therefore, is inconsistent with legislative intent and disincentivizes SLTT investment in disaster preparedness. The complexity and subjectivity within the existing disaster declarations process for Individual Assistance (IA) creates frustration and tension between federal and state partners that distracts from a common desire to assist survivors. Realigning the criteria for federal disaster assistance will help rebalance responsibilities between the federal government and SLTT governments.

### Problem:

**Public Assistance (PA):** FEMA initially set a per capita indicator of $1 in 1986, which represented 0.008% of national per capita personal income and correlated closely to 0.1% of state general fund expenditures. Because of this, FEMA assumed $1 per person was a reasonable amount of assistance a state could contribute towards the cost of a disaster. FEMA did not increase the per capita indicator until 1999 when the Agency began adjusting the indicator for inflation.[17] For FY26, the per capita indicator is $1.94.

**Individual Assistance (IA):** FEMA has considered two principal factors since 2019: uninsured home and personal property losses. FEMA assesses these factors using a "cost-to-capacity" ratio to measure the severity and magnitude of a disaster relative to the state's fiscal capacity. To do this, FEMA uses the state's Total Taxable Resources (TTR)—or an estimate of the state's total

---

[16] Stafford Act, Section 320.

[17] Disaster Assistance; Subpart C, the Declaration Process and State Commitments, 51 Fed. Reg. 13332, Apr. 18, 1986.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

*potential* tax base—divided by 1 million.[18] The complexity within the existing process for evaluating assistance to individuals and households creates frustration and tension between federal and state partners. Further, the IA declarations process also risks supplanting assistance within the fiscal capacity of a state because it has a disproportionate emphasis on total estimated cost of assistance over those costs in the context of state capacity.

**Solution:**

- **PA Solution:**

  o *Explore alternative methods for PA declarations. One option is to adjust the national per capita indicator for inflation from 1986-1999.* FEMA 2.0 would update the current Public Assistance per capita indicator to account for historic inflation from 1986 to 1999, realigning the current per capita indicator of $1.94 to $2.99 to account for inflation between 1986 and 1999.

- **IA Solution:**

  o *Eliminate the cost-to-capacity ratio and replace it with a simplified evaluation of damage to the impacted state.* FEMA 2.0 would revert to factors like those prior to the 2019 regulatory change. Under this approach, FEMA 2.0 would consider the number of primary residences that are destroyed or sustain major damage, along with other factors such as community impacts.

## Anticipated Benefits

**Public Assistance:** *Fewer federal disaster declarations, leading to a rebalancing of state and federal responsibilities.* If the per capita indicator had been adjusted for inflation during the years it was not, analysis found that 29% of disasters declared between 2012 and 2025 would not have met the indicator, representing $1.5 billion or 0.69% of the total federal share of funding. Annually, this would have led to 16 fewer major disaster declarations and about $113 million less in funding per year.

**Individual Assistance:** *Simplified Individual Assistance declaration factors.* FEMA and its partners have experienced several challenges with the current approach. Many stakeholders find the cost-to-capacity approach overly complex and struggle to understand how FEMA makes recommendations based on it. Additionally, the current approach may also rely too heavily on total estimated costs of assistance, which favors larger states that more readily experience $7.5 million in damages for a given disaster.

**Implementation Requirements:** Updating both the IA and PA declaration thresholds would require regulatory changes. In the interim, the President could direct through executive action that generally only requests above higher thresholds will be considered.

**Minimum Expenditures**: An annual calendar year minimum expenditure should be established for small, medium, and large states prior to them being able to request a federal declaration (*see Appendix A for detailed guidance*). This will further incentivize states to take lead with their local partners for disaster mitigation.

**Conclusion**: Congress intended some executive discretionary authority within the disaster declarations process. Nevertheless, the law also stipulates federal assistance is provided only

---

[18] Based on annual estimates published by the Department of Treasury.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

when a disaster is beyond the capabilities of SLTT partners and, therefore, necessitates common criteria for how to evaluate when those capabilities are overwhelmed. As described above, the existing disaster declarations process for Public Assistance under accounts for SLTT capacity and, therefore, is inconsistent with legislative intent and disincentivizes SLTT investment in disaster preparedness. The complexity and subjectivity within the existing disaster declarations process for Individual Assistance creates frustration and tension between federal and state partners that distracts from a common desire to assist survivors. FEMA 2.0 should implement common sense approaches to realign the criteria for federal assistance and rebalance federal and state responsibilities.

## 6. Replace the Existing Hazard Mitigation Grant Program with a two-phase funding structure

**Problem:**

FEMA's current Hazard Mitigation Grant Program is conceptually effective but constrained in execution. Although authorized to provide funding for mitigation, most funding is distributed well after the rebuilding process begins. This delay limits opportunities to integrate mitigation into reconstruction, when it is most cost-effective and impactful.

State and local partners consistently report that HMGP application processes are complex and administratively burdensome. GAO reviews found that delays in project approval and funding distribution frequently exceed 12 months, hindering early risk reduction. FEMA's mitigation analyses have also been concentrated on flooding, hurricanes, and tornadoes—leaving gaps in wildfire, drought, and earthquake mitigation.

OIG audits similarly noted that oversight of HMGP property acquisitions lacks consistency across FEMA regions and that opportunities to integrate mitigation during the initial recovery phase are often missed. These findings reflect a need for more agile, outcome-driven funding mechanisms that reduce administrative friction and better align mitigation with broader national resilience goals.

Without reform, FEMA 2.0 risks perpetuating a reactive recovery cycle—rebuilding to pre-disaster conditions and increasing future federal liabilities under the NFIP and Stafford Act disaster assistance programs.

**Recommendations**

**1. Establish a Two-Phase Funding Model**

FEMA 2.0 should eliminate the current HMGP and establish a two-phase funding structure of up to 15% of the disaster estimate in two allocations. This proposed state-managed program, notionally titled "Refined Risk Reduction" Program (R3P). The program would be structured with up to a 75% federal cost share with performance metric and a 50% minimum (*See Appendix A in the Executive Summary*):

A. **Rapid Mitigation Advance** (up to the first 5% of the federal government contribution for the disaster to facilitate immediate residential mitigation)

- Within 30 days of a federal disaster declaration, provide an initial up to 5% of the estimated mitigation allocation to states for immediate mitigation actions integrated into

DRAFT//PRE-DECISIONAL//DELIBERATIVE

rebuilding of disaster-impacted primary residences and communities. Alternatively, harden high risk residences and neighborhoods.

- o Some examples include elevation, seismic and wind retrofits, defensible space creation, and floodproofing.

B. **Strategic Mitigation Allocation** (up to the remaining 10% of the federal government contribution for the disaster for repetitive loss properties and critical infrastructure)

- Allocate up to 10% based on Federal Administration priorities that:
  - o Mitigate repetitive or severe repetitive loss properties to improve NFIP performance; or
  - o Reduce risks to critical infrastructure with the intent of improving the performance of the NFIP (power, water, transportation, communications systems).

## 2. Strengthen State Management

For mitigation to work, states must take on greater program management responsibility and continue to develop an improved and comprehensive state hazard mitigation process that identifies projects that are immediately implementable.

Under this proposal, standardized oversight requirements for R3P-funded property acquisitions and mitigation projects will be managed at the state level.

- o States and territories must provide and maintain an inventory of properties in high-risk areas not built to modern building codes or not in compliance with current NFIP requirements.
- o Funds management systems/processes should be established and validated annually.
- o The state will coordinate with Federal, State, Tribal, Local, and Private organizations to ensure implementation of hazard mitigation strategies and effective use of funds.
- o Encourage greater proactive coordination at state/territorial level with other agencies to expand use of pre-negotiated exemptions/exclusions that streamline environmental review processes that align with prioritized project types.
- o Strategic Mitigation Allocation-eligible projects must be prioritized and meet following criteria.
  - All projects must be approved and funded within one year.
  - Construction completion timelines should be explored to ensure accelerated rebuilding; time extensions will not be offered.

## 3. Prioritize States with Demonstrated Capacity

- Expedite funding for states and territories with approved hazard mitigation plans and a history of successful HMGP performance.
  - o Leverage state and territorial mitigation plans as a repository for program performance (demonstrate and track metrics for funds management and oversight, program coordination, etc.).

39

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- Encourage states/territories to assess performance of FEMA-funded projects (not just R3P-funded) and prioritize future investments.
- Support best practice sharing between states/territories at the regional level where hazards are often shared.

4. **Winding Down Current Program**

- **Reduce backlog by prioritizing high-risk projects**: Identify high risk unliquidated obligations that will either be drawn down by recipients or recovered by FEMA 2.0 within set timeframes, ensuring all stakeholders are accountable for the effective management of existing funds.
- **Convert historic disasters to the two-phase R3P model**: FEMA 2.0 should pursue the ability to convert historic disasters to the two-phase funding model described above.

## Conclusion

Eliminating HMGP and delivering funding via a rapid mitigation advance and strategic mitigation allocation will enable FEMA 2.0 to act faster and more strategically in reducing disaster risk. The R3P model incentivizes state programs to establish program management capacities while aligning directly to GAO and OIG recommendations for timelier and more flexible mitigation investments.

By providing early funding for residential mitigation and directing remaining resources to protect critical infrastructure and reduce NFIP exposure, FEMA 2.0 will:

- Break the cycle of repetitive loss.
- Improve fiscal sustainability.
- Strengthen community resilience; and
- Reinforce FEMA 2.0's mission to help people before, during, and after disasters.

This policy change represents a practical, evidence-based step toward building a mitigation framework that delivers measurable results and national benefit.

# 7. Streamline the Individual Assistance program into a single direct payment program

### The Problem:

**Unnecessary Complexity**: FEMA's current IA program is unnecessarily difficult for recipients and stakeholders to navigate and often results in delayed assistance to survivors. It has drifted from its core objective of providing immediate relief for temporary housing and other individual needs, instead centering on extensive documentation and verification that can feel adversarial to people in crisis. FEMA and the Federal government have received this feedback directly from the American people through customer surveys provided to the Council. As one survivor put it, "I was really frustrated with all the paperwork and having to prove I needed help. I told the case worker, 'I've already lost everything; haven't I shown you enough to show you I'm deserving? Do you not trust what I'm saying?'" Another recalled, "I just sort of remember sitting down and filling out a bunch of forms. [It was] confusing because we weren't sure what the point of it was, we didn't know what we were getting, but they told us to sign up for this stuff, so we did." As

40

DRAFT//PRE-DECISIONAL//DELIBERATIVE

shown in figure 1, the program offers at least 15 types of assistance that are at best overlapping but at worst, extremely confusing for Americans to navigate as they work to recover. The process itself compounds the trauma, leaving people to make rushed, painful decisions under stress.



Figure 1. Categories of assistance provided to individuals, maximum and average award amounts.

**Duplication & Inefficiency:** Compounding these challenges, the program is siloed and duplicative, forcing survivors to repeatedly provide the same information to multiple entities. "What was confusing during the middle of the chaos was trying to figure out what everyone's role was," said a survivor. A local emergency manager observed, "Over 80% of the information for FEMA, SBA, HUD, and state or local agencies is the same. Yet, the burden of providing the information is all on the survivor." This fragmentation drives inefficiency and cost. Staff encounter layers of administrative hurdles— "We will spend thousands not to pay [the citizen] $500," a FEMA employee remarked—and expensive delivery models can be misaligned with outcomes: "FEMA will pay 500 thousand dollars to put a trailer in your yard for a few months when we could have bought the house next door for half that," remarked a government official. As shown in Figure 2, FEMA incurs huge administrative expenses—over $3.6 billion over the last five years—even though most disaster survivors have very basic questions they cannot answer because FEMA's program is too complex and hard to understand. Together, bureaucracy, siloed processes, and costly implementation slow aid, increase



Figure 2. Overhead and expenditures of FEMA's Individual Assistance program compared to reasons survivors call or visit FEMA recovery centers.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

expense, and move the program away from timely, practical relief for individuals.

**The Solution:**

**30-Day Damage Assessments**

- To shorten recovery timelines, FEMA 2.0 should leverage private sector best practices and work with STT stakeholders to ensure initial damage assessments can be completed within the first 30 days post-disaster.

**Direct Payments to Individuals**

- FEMA 2.0 should streamline the IA process by providing a direct payment package to individuals. This funding would focus solely on temporary assistance for individuals with destroyed or uninhabitable homes, excluding secondary homes.

  o Homeowner Assistance

    ▪ For homeowners, the payment package would be based on their level of need and no more than 15% of the local government's assessed value, capped at a $1 million valuation (i.e. maximum payment not to exceed $150,000).

    ▪ This covers repairs, replacement, rental and other needs assistance (i.e. personal property loss, transportation, medical, funeral expenses).

    ▪ The federal government would cover two-thirds of the assistance and the state, local, tribe or territorial government cost share the remainder.

  o Renter Assistance

    ▪ For renters, the payment package would be based on level of need and cover 3 months of rent (first, last, and current month) at the HUD Fair Market Rate (FMR) for the appropriate household size. Individuals with greater need will have the option for 3 additional months of rental assistance for 6 months total.

    ▪ This covers rent and other needs assistance.

    ▪ The Federal government would cover two-thirds of the assistance and the state, local, tribe or territorial government cost share the remainder.

    ▪ Local governments are responsible for creating market conditions that ensure affordable rental properties are available and accessible to survivors.

**Shared Responsibility for Emergency Housing**

FEMA 2.0 will share responsibility with STT governments for the initial phases of emergency housing (mass care/sheltering and temporary housing/rental assistance). Private insurance companies will continue to take primary responsibility for permanent housing with HUD and SBA in supporting roles.

1. **Mass Care/Sheltering** (congregate and non-congregate):
   - STT responsibility

42

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- o Can be funded through RAPID Direct Funding Program/parametric amount

2. **Temporary Housing/Rental Assistance**

- Information sharing agreements between FEMA and STT stakeholders must be established to enable comprehensive recovery
- FEMA 2.0 will make direct payments to survivors
    - o STTs can take on this responsibility as desired if a pre-existing payment system is in place
- STTs can employ various types of assistance such as emergency home repairs or temporary housing units
    - o STTs can utilize their own funding or request a one-time funding allotment, provided within 30 days of the date of the disaster declaration. All federally provided funds must be used within one year.

3. **Permanent Housing**

- Responsibility of private insurance companies with HUD and SBA in key federal role
    - o Can also be funded through CDBG-DR or other federal housing programs

4. **Community Services Programs**

- **Disaster Unemployment** – No change to current program
- **Disaster Legal Services** – Combine with Disaster Case Management and provide direct grant by FEMA 2.0 to STT.
- **Crisis Counseling** – Direct funding provided by FEMA 2.0 to STT based on per capita cost and an estimate of those impacted and utilizing mass care or sheltering services. Limited to 6 months.
- **Disaster Case Management** - Direct funding provided by FEMA 2.0 to STT based on a per capita cost and an estimate of those impacted that will need temporary housing.

## Anticipated Benefits of IA Program Reform

**Speed:** Rapid distribution of funds directly to STTs will ensure affected citizens receive monetary relief quickly.

**Improved Information Sharing**: Establishing agreements between STT stakeholders and FEMA 2.0 for information sharing will accelerate the delivery of assistance to survivors.

**Clear Expectations for Survivors:** Individuals will know the exact amount of financial assistance and support they will receive after a disaster and can plan accordingly. This cost transparency creates an incentive for individuals to consider private insurance prior to a disaster occurring to optimize their personal recovery.

**Predictability:** Helps individuals and jurisdictions plan and budget more effectively for disaster recovery.

43

DRAFT//PRE-DECISIONAL//DELIBERATIVE

**Cost Savings:** Reduces administrative costs by an estimated $154 million per year.

**Shared Responsibilities:** Funding, authorities, and activities are shared and clearly articulated across FEMA 2.0, STTs, HUD, SBA, and private insurance companies to ensure each can provide efficient and effective support to the American public within their appropriate portfolio.

## Implementation Requirements

1. Statutory change required to add cost share, change maximum amount to 15% of home value, cap temporary housing assistance, and eliminate federal option for direct temporary housing assistance.
2. Regulation change is required for STTs to be able to receive temporary housing assistance funding.
3. Policy change is required for streamlining forms of assistance, providing a direct payment package to individuals, and eliminating assistance for minor impacts.

## Conclusion

Refocusing FEMA 2.0 on emergency and temporary housing relief and streamlining individual assistance into flat-rate reimbursements will provide transparent and immediate support to local communities and individual citizens in their hour of need. This effort should, and will, reduce burdensome administrative requirements, eliminate costly overhead with limited impact, and accelerate local recoveries.

# 8. Reform the Public Assistance program to provide direct funding block grants

### The Problem: Inefficient and Delayed Recovery

The current FEMA Public Assistance (PA) program is a reactive reimbursement model that often fails to meet the immediate needs of disaster-struck communities. An excruciatingly slow process, consisting of seven phases and involvement from multiple parties (as evidenced in Figure 3 below) prevents meaningful steps towards recovery.

- **Administrative Delays:** The project-by-project approval process under the current system is notoriously slow, with reimbursement often taking years or even decades. The existing model is rooted in an exact dollar assessment of estimated damages, which is a slow and tedious process. The focus is on accounting for damage rather than addressing the urgent needs of the affected community, and it is a fundamental flaw that hinders the speed and effectiveness of recovery. This forces States, Local, Tribes, or Territories (SLTTs) to rely on limited reserves or expensive credit to begin recovery efforts.

- **Compliance Overload:** Federal regulations, particularly those under the National Environmental Policy Act (NEPA), create additional layers of review and red tape. While important for environmental protection, applying a one-size-fits-all federal standard to urgent recovery work can create unnecessary and costly delays.

- **High Administrative Costs:** In the last five years, FEMA has provided approximately $180 billion in Public Assistance grants to states and local governments; $21 billion of this was used to manage these grants and pay project management costs incurred during project construction. FEMA has expended approximately $11 billion more to administer the $180

44

DRAFT//PRE-DECISIONAL//DELIBERATIVE

billion in grant funding. This model has created a disaster industrial complex that dilutes the impact of federal funding through multiple layers of administrative and contracting costs.

- **Unpredictable Cash Flow:** The reimbursement model provides no certainty for SLTTs, who must front costs with no guarantee of when, or how much, federal aid will arrive. This hinders effective financial planning, increases financing and debt costs, and slows the pace of recovery.

- **Centralized Decision-Making:** The top-down federal approach can disregard the unique needs and local expertise of individual SLTTs, leading to less efficient and less targeted recovery efforts.

- **Federal Overreach:** The threshold for authorizing the PA Program has become artificially low. This has resulted in increased federal involvement in several small events, many of which should be within the capabilities of the SLTTs.

- **Administrative Backlog:** FEMA is currently managing more than 300,000 projects (i.e., subgrants) on more than 600 open and active disasters. There are approximately 25,000 open projects that have exceeded their regulatory or administrative timelines, representing more than $54.8 billion in unliquidated obligations.



*Figure 1. Current FEMA Public Assistance bureaucratic process, with multiple parties engaged in multiple steps in multiple phases that can take decades to complete.*

DRAFT//PRE-DECISIONAL//DELIBERATIVE

### The Solution: A New Framework for Disaster Assistance

The RAPID Program fundamentally restructures the disaster funding model, shifting control and responsibility to the SLTT level while maintaining practical, limited federal oversight.

- **Fast Direct Funding:** Following a presidential major disaster declaration, federal funds would be directly transferred to the STT's treasury within 30 days. This moves away from a traditional grant and instead provides funding directly to the STT for use in adherence with its own procedures. An immediate injection of capital, like the Coronavirus Relief Fund model, provides STTs with the liquidity required to initiate rapid response and recovery.

- **Parametric Funding Mechanism:** FEMA 2.0 funding would be determined by a parametric formula based on objective, independently verifiable metrics like population impacted, wind speed, flood depth, or earthquake magnitude. Funding could be used for debris removal, first responder costs, permanent infrastructure repair and replacement, and mass care/sheltering. The federal funding would be up to 75% based on performance metric with a minimum of 50% of the parametric amount. This eliminates the need for detailed, time-consuming initial damage assessments and provides a predictable, reliable funding amount.

  > **Benefits of a Parametric Approach**
  > The main benefit of a parametric model is the **speed** and **certainty** of payouts, which are triggered automatically when pre-defined, **objective** event criteria are met, like wind speed or earthquake magnitude. This eliminates the need for time consuming loss assessments and quickly provides a financial backstop and cashflow for rapid response and recovery. When paired with traditional insurance of public facilities, this can enable communities to **quickly recover** with manageable financial risk and burden to local taxpayers.

  - o  FEMA 2.0 will convene a group of STT representatives to collectively establish a parametric funding model that is based on existing data from the authoritative federal agency or organization over each type of eligible event (i.e. earthquake, hurricane, flood, etc.)

- **RAPID Direct Funding Authorization Criteria:** While the requirements of the existing federal disaster declaration process would remain in place, the factors used to authorize FEMA Public Assistance funding via RAPID Direct Funding would be replaced with the following:

  > **What is a Parametric trigger?**
  > Parametric, or index-based, is a concept where if an event reaches a pre-defined threshold, it automatically triggers a set payment amount based on the magnitude of the event. This is different than traditional payment based on the magnitude of assessed loss.

  - o  Evidence the parametric trigger occurred; and

  - o  Evidence that response demands exceed the resources and capacity of local and state government.

    - ▪  The per capita threshold has historically not provided an accurate depiction of when the SLTT and effected local governments are truly overwhelmed during an event. As a result, federal assistance has often

46

DRAFT//PRE-DECISIONAL//DELIBERATIVE

erroneously been provided when the STT and local governments had adequate resources to respond.

- **Compliance Requirements:** To expedite recovery, the Program would grant STTs authorization to use their own certified environmental, construction, audit and inspection review processes for projects funded by the program, in lieu of federal NEPA and other environmental and historic preservation requirements. This differs from the U.S. Department of Housing and Urban Development (HUD) Community Development Block Grant-Disaster Recovery (CDBG-DR) program, which requires STTs to perform environmental and historic preservation (EHP) reviews on behalf of HUD, rather than substituting their own environmental process. Furthermore, STTs would no longer be required to adhere to federal procurement requirements and could use their own procurement standards and processes instead.
  - o **Certified Local Programs:** STTs would apply to FEMA 2.0 for pre-disaster certification of their existing environmental review processes.
  - o **Limited Waiver:** The waiver for federal EHP requirements would be exclusively for projects funded by RAPID Direct Funding.
  - o **Consistency and Oversight:** This approach leverages existing STT-level expertise and procedures, creating a faster, more agile recovery without sacrificing environmental protection. FEMA 2.0 would retain oversight to ensure environmental reviews are appropriate and, if not, revoke certification.
- **Simplified and Broadened Eligibility:** Unlike the current PA program, which categorizes work in a rigid and complex manner, the RAPID Direct Funding program would offer a more simplified approach. This approach bolsters insurance requirements and transfers risks from American taxpayers to the private insurance market.
  - o **State/Tribe/Territory Determination:** STTs would have the flexibility to fund projects that are necessary for timely response and recovery and should distribute funding in a fair manner based on disaster-caused need. To ensure project eligibility, the STT must certify projects meet the following criteria:
    - **Eligible applicant.** The applicant must be a state, tribal, territorial, local government, or an eligible PNP organization.
    - **Eligible facility.** The damage must have occurred at an eligible facility, which can include:
      - Buildings (owned or leased)
      - Public works systems
      - Equipment
      - Improved and maintained natural features, such as beaches or levees
    - **Eligible work:** Work must fall into one of two categories:
      - **Emergency Work:** Short-term activities to save lives, protect public health and safety, and protect property. This includes debris removal and emergency protective measures.

47

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- **Permanent Work:** Long-term work to restore a damaged public or PNP facility.
- **Eligible cost:** The costs for eligible work must be necessary, reasonable, and adequately documented. Eligible costs can include labor, equipment, materials, and administrative costs.
- **Emphasis on Outcome:** Eligibility and costs would be based on the outcome (restoring public function and safety) rather than on specific work types or detailed facility classifications.

- **Private Non-Profit (PNP) Eligibility:** The program would streamline the funding process for PNPs while retaining the existing distinction between "critical" and "non-critical" PNPs and the requirement for non-critical PNPs to first apply for an SBA loan.
  - **Expedited Verification of Non-profit Status:** STTs would be encouraged to establish a program to pre-certify PNPs eligibility, creating a verified database that eliminates the need for re-verification after a disaster.

- **Mandatory Two-Phased Reconciliation with Incentives:**
  - **Phase 1: One-Year Reconciliation:** Within one year of receiving initial funding, STTs must submit a certified public accounting (CPA)-conducted audit that provides a full accounting of all projects and costs and their plan to obtain and maintain insurance. Any funds not associated with an eligible project must be classified as underruns. STTs may either return underruns or request reallocation towards mitigation or insurance measures. Additional federal funding is not available for overruns.
    - **Reconciliation Incentives:** STTs that consistently submit timely, accurate, and transparent reconciliations in both audit phases could receive a "High-Performance Designation." For these high-performing STTs, the President may approve more than 75% of the parametric amount as a federal contribution for the current event.
  - **Phase 2: Program Closeout Audit:** Upon the conclusion of all projects, a final, comprehensive audit will be performed by the STT and submitted to FEMA 2.0 to close out the program. All federal funding provided under the RAPID Direct Funding Program must be expended or returned within eight years from the date of the initial award. This change eliminates the federal audit.

- **Insurance Requirements with Incentives:**
  - To ensure responsible risk management and reduce federal outlays, the RAPID Direct Funding Program would build upon the existing "obtain and maintain" insurance requirement by incorporating powerful incentives for STTs to prioritize insurance and self-insurance.
  - **Encouraging Self-Insurance and Risk Pools:**
    - **Swift State/Tribe/Territory Approval:** The program will provide a streamlined process and template for FEMA 2.0 approval of SLTT-level self-insurance plans and risk pools, reducing administrative burden and

48

DRAFT//PRE-DECISIONAL//DELIBERATIVE

encouraging SLTTs to create more affordable and stable insurance mechanisms. Although insurance would be required for damaged public facilities, the parametric based funding provided would not be reduced by insurance proceeds, incentivizing STTs to maximize insurance coverage. Every SLTT should declare their self-insured dollar amount.

- o **Funding for Program Establishment:** A portion of the unused funds can be used by the STT to establish a new self-insurance program or risk pool, demonstrating a direct federal investment in STT-led risk management.

- o **Tax Incentive(s):** To increase participation, create tax credits to mitigate the financial burden of flood insurance. Individuals doing the right thing by carrying insurance policies should be rewarded for their investment and effort to protect against disaster.

- o **State/Tribe/Territory Verification and Compliance:**

  - o **Centralized Asset Registry:** STTs will be required to maintain and publicly publish a centralized, digitized registry of all public and PNP facilities receiving permanent repair funding. This registry should be retroactive and will include insurance details, ensuring a transparent record for audit and enforcement.

  - o **Verification Through Audit:** Compliance with requirements to obtain and maintain insurance will be verified through the two-phased state audit process rather than on a project-by-project basis by FEMA 2.0.

- o **Linking Insurance to Mitigation:** The program will further incentivize risk reduction by linking insurance to mitigation measures.

  - o **Premium Offset for Mitigation:** SLTTs may use the funds to support public entities and PNPs in implementing mitigation measures, potentially leading to lower insurance premiums and a stronger financial incentive for resilience.

- o **Consequences of Non-compliance:** Failure to comply with insurance requirements, as identified in the reconciliation audits, will result in penalties for the STT, such as an automatic reduction in future federal share of the parametric payout.

- **Winding Down Current Program:** While the RAPID Direct Funding program will streamline future funding, FEMA 2.0 must also aggressively pursue closeout and reconciliation of existing disasters.

  - o **Convert Historic Disasters to RAPID Direct Funding:** FEMA 2.0 should pursue the ability to convert historic disasters to the new RAPID Direct Funding program, making a onetime payout and immediately transitioning to the two-phased reconciliation approach described above. This will significantly reduce the administrative burden on all stakeholders and prevent added confusion from overlapping approaches.

  - o **Reduce backlog through prioritizing high-risk projects:** Identify high risk unliquidated obligations that will either be drawn down by recipients or recovered by

DRAFT//PRE-DECISIONAL//DELIBERATIVE

FEMA 2.0 within set timeframes, ensuring all stakeholders are accountable for the effective management of existing funds.

**Precedent and Justification**

The RAPID Program is built upon proven concepts that prioritize speed, efficiency, and accountability:

- **The Coronavirus Relief Fund:** The Coronavirus Relief Fund demonstrated the effectiveness of distributing flexible, direct aid to STTs in an emergency.

- **Existing Block Grants:** Other federal block grants, like the Community Development Block Grant (CDBG) program, show the effectiveness of giving STTs autonomy in managing specific programs.

- **Parametric Triggers:** Used globally by risk insurers and governments, parametric triggers have a proven track record of providing rapid, predetermined payments following a triggering event.

**Anticipated Benefits**

The implementation of the RAPID Program would offer significant advantages for disaster-prone communities:

- **Accelerated Recovery:** Reduces funding delays from months or years to weeks, speeding up the rebuilding of vital public infrastructure and essential community services.

- **Empowered Local Leadership:** Allows SLTTs to leverage their local expertise and direct resources where they are most needed, fostering a more effective and agile recovery.

- **Increased Fiscal Discipline:** Replaces uncertain federal reimbursement with a predictable, rules-based funding model, while certified audits ensure transparency and accountability. The incentive-based reconciliation encourages performance and responsible stewardship of funds, with the potential for additional federal contributions for the current event based on merit. The eight-year expenditure deadline ensures funds are used efficiently.

- **Reduced Bureaucracy:** Significantly cuts down on the administrative burden for STT and local officials and PNPs, freeing up valuable time and resources.

- **Enhanced Public Trust:** Combines the speed of immediate aid and transparent adjudication with the robust oversight of a multi-phased audit process and incentive structure, assuring the public that funds are being used responsibly and effectively.

- **Improved Risk Management:** By linking insurance coverage to financial incentives, the program encourages STTs to take a proactive role in managing disaster risk for public and non-profit facilities.

- **Reduced Administrative Costs:** The RAPID Program is designed to drastically reduce superfluous administrative costs present in the disaster industrial complex and achieves efficiencies in the FEMA 2.0 staffing model by eliminating a variety of currently necessary roles PA program(s). The Program does so by limiting administrative costs to two audits and A&E for project construction. Furthermore, the use of a capped parametric amount for the federal contribution will inherently incentivize STTs to keep administrative costs as low as

50

DRAFT//PRE-DECISIONAL//DELIBERATIVE

possible. This ensures that the intent of the federal funding is realized, and taxpayer dollars are stewarded appropriately.

### Implementation Requirements

- Statutory change is required to implement a direct funding model, STT environmental and historic preservation reviews

- Regulation change is required for STTs to be able to determine eligibility for projects

### Conclusion

The RAPID Program offers a modern solution to the challenges of post-disaster recovery. By moving beyond the slow and reactive traditional PA program, it leverages STT autonomy, parametric funding, and transparent auditing to create a faster, more effective, and more accountable system for all Americans affected by disaster.

## 9. Reform the National Flood Insurance Program (NFIP) for Financial Stability and Risk Resilience

### The Problem:

The NFIP is financially unsustainable and operates with conflicting policy goals, which hinder its effectiveness.

- **Financial Instability:** The NFIP has previously accrued over $40 billion in debt ($16 billion of debt was canceled by Congress in 2017), primarily due to large-scale, catastrophic flooding events that the program's premiums were not designed to cover. The NFIP historically underpriced flood risk, leaving it unable to cover major losses without borrowing from the U.S. Treasury. This financial unsustainability and underpriced insurance has led to an increasing debt burden with no ability to repay. Current interest payments on the debt are $700 million annually.

- **Outdated Risk Information:** The program's current mapping methodology dates to the 1970's and do not fully capture current or emerging flood hazards, leading to an underestimation of risk. This outdated information does not support the pricing of insurance, leads to misunderstanding

> **Why do I need Flood Insurance?**
>
> Floods can happen anywhere – just one inch of water can cause thousands of dollars' worth of damage. Most homeowners' insurance does not cover flood damage. Flood insurance is a separate policy that can cover buildings, the contents of buildings, or both.

of flood risk, and has resulted in communities rebuilding and developing in flood prone areas. The NFIP also utilizes this outdated risk information to set standards for communities to regulate their flood risk. FEMA has not evolved its standards or science to support intuitive land use choices that result in predictable post-flood outcomes. This results in a one size fits all solution that limits local ownership of their flood risk. State and locally tailored standards would better reflect local flood risk choices and ideally decrease community, state, and federal cost.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- **Conflicting Goals:** Congress has instructed the NFIP to be affordable, financially sound, available to all, and risk informed. These goals often pull in opposite directions, and political pressures have frequently blocked meaningful reform, leading to dozens of short-term program reauthorizations. For example, maintaining affordable rates through subsidies directly conflicts with the goal of financial sustainability, and risk-informed pricing is politically unpopular in the most flood prone areas.

**The Solution:**

To address these critical shortcomings, the solution involves a strategic shift to a private market framework combined with strengthened federal oversight and community-level action. Implementing these proposals may require both federal administrative changes and Congressional action to align with current federal statutes, state-based insurance regulatory authorities, and privacy protection laws. FEMA in coordination with the Department of Treasury, state insurance commissioners, and the private insurance industry, should explore strategies for effectively operationalizing these proposals.

- **Empower Communities (Better Land-Use Policies):** Enhance NFIP participation standards administratively to support intuitive land use choices that result in predictable post-flood outcomes for communities. FEMA could explore ways to modernize the Community Rating System incentives to reward integration of property-level resilience activities; align floodplain standards with this proposal's modernization of mapping data; and provide support to states to promote risk communication with local land-use planning. FEMA should ensure any updates promote local decision making and state primacy in land use choices for flood prone areas. These changes place flood risk management squarely in the hands of those most capable of regulating it—state and local governments.

- **Modernize Risk Assessment (Update Risk Rating 2.0 & Improve Maps):** The NFIP's updated pricing methodology, Risk Rating 2.0, leveraged advanced technology and data sources to deliver fairer, more individualized rates, must continue to be implemented and updated based on better information and science. Risk Rating 2.0 was the first step in moving away from the use of mapped flood zones which are used for local floodplain management and to tell homeowners they are either "in or out". The new flood insurance rating methodology now uses a more comprehensive approach based on factors like distance to water, flood types, and the cost to rebuild. The program must also improve the accessibility, transparency, and quality of flood risk data and communication tools for all stakeholders. In addition to updating the mapping methodology to show property-level risk, FEMA should explore ways to expand the availability of anonymized flood loss and exposure data consistent with privacy and trade secret protections under federal law. Enhancing access to risk data will bridge the gap between insurance pricing and the outdated regulatory mapping methodology. Further, the NFIP must adopt an efficient model to identify and maintain flood risk information that connects land use choices and pricing.

- **Implement Risk-Based Pricing & Actual Costs:** A key to enabling the private market shift is to charge policyholders the actual costs of their policies. FEMA should continue to refine Risk Rating 2.0 implementation. The Council recommends exploring existing subsidies and working with Congress to address affordability challenges for select homeowners. FEMA can also evaluate opportunities to better align the Community Rating System Program eligible activities and discounts with measurable physical risk reduction actions communities

52

DRAFT//PRE-DECISIONAL//DELIBERATIVE

and policyholders can take to ensure premium prices are reflective of property-level risk. These refinements could improve consistency between mitigation outcomes, pricing, and private market participation.

- **Revise 'Write Your Own' Compensation:** FEMA provides an expense allowance to Write Your Own (WYO) private insurance companies of roughly $1 billion annually to sell, write, and service standard flood insurance policies under the National Flood Insurance Program. WYO companies do not underwrite the flood risk but serve as intermediaries. In FY25 the expense allowance was 29.1% of total written premium volume by company and projected at 28.4% for FY26. The compensation methodology is dated and doesn't reflect improvements in FEMA's systems, automated premium pricing methodology, or the expanded use of the direct-to-customer servicing platform. Compensation should be updated to ensure FEMA is not over-compensating Write Your Own insurance companies. FEMA should evaluate options through ongoing rulemaking to update the compensation framework that will reflect administrative costs and new operational efficiencies, which was Congressionally directed in the Biggert-Waters Flood Insurance Reform Act of 2012. Completing this rulemaking has the potential to save hundreds of millions of dollars and promote more private flood offerings.

- **Shift to Private Market through Depopulation of Existing NFIP Policies:** A core component of the solution is a gradual, structured transition of certain existing NFIP policies to the private market in areas where private capacity exists and consistent with state regulatory frameworks. This would be accomplished by pursuing a voluntary "take-out" program, which would allow FEMA to assess the feasibility of transferring eligible policies to qualified private insurers under existing statutory authority. Depopulation programs have historically been state-based so applying this approach at the federal level will require careful evaluation of operational, regulatory, and consumer protections. This approach, modeled on successful state depopulation programs for other perils, could reduce the NFIP's policy count. States could regulate the market to ensure consumer protection, with the direct involvement of state insurance commissioners.

- **Evaluate Development of Flood Insurance Marketplace:** To modernize and enhance the capacity of the national flood insurance system, it is recommended that FEMA evaluate the development of a flood insurance marketplace designed to provide consumers with access to both NFIP and qualified private insurance options when purchasing a new flood policy. The marketplace could leverage private sector capacity through a centralized clearinghouse model, allowing private participating insurers opportunity to offer coverage prior to placement with NFIP. This collaboration would serve as a clearinghouse opportunity for private flood insurers who could offer coverage prior to submission to the NFIP. FEMA should evaluate potential options with qualified insurance wholesalers or a consortium of insurers to assess the feasibility of administering a clearinghouse under their current authorities. A model of this kind would address the critical needs of market capacity, consumer protection, and improve administrative efficiency while offering consumers a choice between private coverage or the NFIP.

  o **Centralized Clearinghouse:** FEMA should evaluate models in which a wholesaler or consortium could manage a national market exchange that operates as a clearinghouse for consumers seeking private insurer and NFIP flood policies. This would standardize the policy origination processes, thereby reducing the administrative friction that currently limits private carrier participation.

53

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- o **Pricing Alignment:** The marketplace's pricing mechanism could reference FEMA's Risk Rating 2.0 framework as an actuarial benchmark. In addition, the marketplace could encourage depopulation by requiring the insured to select a private flood insurance policy from a marketplace approved insurer that is priced at no more than 10 percent above the NFIP Risk Rating 2.0 actuarial rate for comparable coverage for the same property. This approach aids in depopulation and helps ensure that while private market competition is encouraged, pricing remains tethered to actuarial science, state rate setting, and avoids significant market volatility.

- o **Rigorous Carrier Standards:** To protect consumers and ensure market resilience, FEMA, through its partnership with the wholesaler or consortium, would ensure all private carriers writing flood insurance through the marketplace meet eligibility requirements, in coordination with State Insurance Commissioners that is consistent with the McCarran Ferguson Act. These requirements would include robust financial stability metrics to prevent carrier failure during catastrophic events.

- o **Strategic Alignment with the NFIP:** This marketplace would operate in concert with the NFIP, providing a viable and standardized private option that helps offload risk from the federal program. This will ultimately contribute to the NFIP's long-term financial stability and reduce the taxpayer burden.

- **Address Repetitive Loss Properties:** Manage repetitive loss properties through targeted mitigation planning and accountability measures, such as those proposed in the "Repeatedly Flooded Communities Preparation Act" (S.1545). This legislation provides a structured plan to address the highest-risk properties and ensures mitigation is a priority in these areas, thereby reducing the financial burden of repeated claims.

**Anticipated Benefits:**

Implementing these changes would produce several key benefits for the public and the government.

- **Accelerated Recovery:** Broader insurance access and diversified coverage through a more competitive market, which will better sustain the overall market and ensure faster payments and more predictable recovery for local communities after a disaster.

- **Reduced Government Burden:** A more robust private market and stronger community-level, state owned land use management will reduce the financial burden on federal, state, and local governments by empowering individuals to understand and manage their own risk.

- **Predictable Financial Outcomes:** Homeowners will be better able to anticipate post-disaster compensation through knowledge of their personal policies, rather than relying on the uncertain nature of federal disaster aid.

- **Increased Resilience:** By aligning insurance rates with granular flood risk, improving publicly available flood risk information, and promoting local decision making and state primacy in land use choices, property owners and local governments will have a greater incentive to invest in mitigation measures, making communities safer and more resilient to the growing threat of flooding.

**Potential Next Steps**

54

DRAFT//PRE-DECISIONAL//DELIBERATIVE

The Council recommends that FEMA coordinate with the U.S. Department of Treasury, other relevant federal agencies, state insurance commissioners, and insurance industry stakeholders to further evaluate the NFIP solutions discussed in this section.

Additionally, FEMA, in coordination with the Department of Treasury should convene a roundtable of state insurance commissioners, federal lending regulators, consumer representatives and relevant insurance industry stakeholders, including insurers, reinsurers, and brokers to analyze the potential reforms outlined in the Council's proposal. These stakeholders can also assess how data, underwriting, and price information can be shared responsibly and maintain consumer protections consistent with statutory authorities and privacy requirements. Further, federal agencies should continue stakeholder engagement on increasing consumer engagement and understanding of flood risk and insurance options.

In relation to a shift to private market and a potential depopulation program, FEMA, the U.S. Department of Treasury, federal lending regulators, Government Sponsored Enterprises, and the state insurance commissioners should collaborate on developing a potential implementation strategy that would be compliant with the express authorities of the McCarran-Ferguson Act as well as the Flood Disaster Protection Act of 1973 mandatory purchase provisions.

**Conclusion:**

The National Flood Insurance Program is at a critical juncture. The current model is unsustainable and has not evolved since the 1970s—it cannot meet conflicting expectations of providing affordable insurance, mitigating flood risk, and maintaining financial solvency. By embracing a new strategy that encourages greater private market participation, modernizes risk assessment, and modifies the NFIP's role in state and community-level land use choices, the nation can move toward a more resilient and financially stable flood risk management system. This shift would reduce the federal government's financial burden, promote accurate risk pricing, and incentivize property owners and communities to invest in mitigation, ultimately leading to a more prepared nation in the face of flood-related disasters. While this proposal seeks to address NFIP's financial problems going forward, the existing debt would have to be addressed by Congress or other revenue sources.

## 10. Maximize every dollar spent by reducing administrative costs

A portion of U.S. federal disaster relief funds is used for administrative costs and contractor fees rather than directly for community recovery. This is due to a system with rising program complexity, significant administrative costs, and a trend of personnel moving between FEMA and private firms. This structure has prompted calls for reforms to simplify grant processes, manage administrative costs, and address the influence of private interests on public policy.

The management system has shifted from one primarily using federal and local government staff to one relying on private contractors. A key factor in this change is the increased complexity of FEMA's grant programs, such as the Public Assistance (PA) and Hazard Mitigation Grant Programs (HMGP). A FEMA official in Puerto Rico highlights this phenomenon: "I have 500 contracted employees that would not be needed if FEMA's grant process was not so complex." The detailed requirements of these programs have created challenges for state and local governments, especially smaller municipalities with limited resources, as noted in GAO reports.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

This complexity has fostered a specialized industry of consultants and contractors who assist communities in navigating the grant application and compliance procedures. This industry's growth has been influenced by:

- **Personnel Transitions:** Former FEMA and state political appointees and career employees have joined or established private companies that now serve as major contractors in the disaster management space. This raises questions about whether former officials leverage insider knowledge and connections for private gain.

- **Financial Incentives:** The current system provides private sector financial incentives for state and local governments to hire them. Since administrative costs are largely reimbursable by FEMA, jurisdictions can pass these consultant fees on to the federal government. As one former FEMA official noted, this can lead to "a lot of money getting spent on process... and you end up with a lot of billable hours" without necessarily improving outcomes.

A central issue with the current system is the amount of taxpayer money used for administrative costs. A substantial part of grant funding is spent on administrative and management expenses at

*In total, almost 25 cents on every dollar can be provided for administrative expenses*

both the federal and state/local levels. In total, almost 25 cents on every dollar can be provided for administrative expenses. Most of these costs are expended during the grant development phase, which hinders the pace of recovery.

- **Overhead spending**: The administrative allowance for state and local governments has been increasing. For instance, DHS OIG audits have identified concerns regarding FEMA's oversight of grant funds and instances of over-obligated funds.
- **Incentive structure:** The reimbursement model may encourage state and local governments to keep disasters "open" longer than necessary to maximize management costs, which can delay project completion. The primary incentive for contractors is to maximize billable hours, not to expedite recovery.
- **Program complexity**: As grant programs become more complex, the demand for specialized consultants increases, which in turn raises administrative costs. The system's intricate nature can make it difficult for citizens and local officials to understand, creating a dependency on the private firms that benefit from this complexity.

To address these challenges, the following recommendations, informed by GAO and OIG findings, have been suggested:

- **Simplify and streamline grant programs**: FEMA could review its grant programs to reduce unnecessary bureaucratic requirements. Simpler applications and standardized documentation could decrease the need for consultants, especially for smaller communities.

- **Establish caps on administrative overhead**: To ensure more funds reach affected communities, FEMA could implement strict, federally mandated caps on the percentage of grant funds that can be used for administrative costs. A more transparent reporting system could also be established to track overhead spending.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- **Strengthen post-employment rules**: Ethics rules for employees transitioning from FEMA to the private sector could be reinforced. This could involve extending "cooling-off" periods and increasing transparency requirements for former employees who become consultants, which would help to mitigate potential conflicts of interest.

- **Increase direct technical assistance**: Instead of increasing administrative reimbursement percentages, FEMA could provide direct, in-house technical assistance to local governments. By offering pre-packaged support and training, FEMA could reduce the reliance on third-party contractors and empower local officials to manage recovery efforts.

In conclusion, the current U.S. disaster management system, with its reliance on private contractors and complex processes, directs a significant amount of money away from community needs. By eliminating and simplifying programs, capping administrative costs, strengthening ethics rules, and increasing direct government support, policymakers could improve how disaster relief funds are used to build a more resilient nation.

# Soliciting Input from Stakeholders Across the Nation

## Incorporating Public Feedback into FEMA Review Council Efforts

The Council undertook extraordinary measures to ensure that public feedback was solicited from a broad range of stakeholders as part of its comprehensive review of FEMA's programs and operations. Recognizing the critical importance of stakeholder engagement, the Council employed multiple avenues to gather input, including public meetings, Federal Register Notices, in-person listening sessions, electronic and regular mail submissions, and virtual forums. These efforts were designed to ensure transparency and accessibility, enabling voices from across the nation to contribute to the reform process.

The feedback received underscores widespread support for FEMA reform aimed at addressing inefficiencies, reducing bureaucratic barriers, and enhancing support for disaster survivors and local governments. Stakeholders consistently identified key priorities, including the need to streamline processes, decentralize decision-making, increase funding for mitigation and preparedness initiatives, and ensure fairness in disaster response and recovery efforts. Participants emphasized the importance of implementing reforms gradually, allowing for a phased approach that strengthens partnerships among federal, state, tribal, and local entities while minimizing disruptions.

This robust engagement process has provided the Council with invaluable insights into the challenges and opportunities facing FEMA's operations. The feedback serves as a cornerstone for shaping the future of FEMA's programs, ensuring that reforms are informed by the lived experiences of those directly impacted by disasters and those responsible for managing emergency response and recovery efforts. By integrating this input into its recommendations, the Council aims to create a more efficient and responsive FEMA that is better equipped to meet the needs of communities nationwide. The inclusion of public feedback reflects the Council's commitment to fostering collaboration and transparency in the pursuit of meaningful reform.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

## Methodology

We are a nation built upon local communities, thus the Council immediately recognized that they must canvas the country to capture the widest possible feedback from the American people for a reform effort that tragically may affect nearly every American at some point in their lifetime.

To achieve this objective, the Council leveraged the following tools. Of note, the views expressed from the survey are not endorsed by the Council but were taken into consideration during deliberations on its recommendations.

- National Survey
- Listening Sessions (in-person and virtual)
- Federal Register Notice Comments
- Public Meetings

### National Survey

The Council's State-Federal Coordination Subcommittee surveyed 1,387 stakeholders spanning state, local, tribal, and territorial (SLTT) agencies as well as non-governmental partners. The results revealed critical insights into the current state of national preparedness and response. The Council conducted surveys focused on mitigation, recovery, preparedness, and response, which collectively assessed key emergency management tasks. These surveys evaluated capabilities ranging from community resilience and long-term vulnerability reduction to infrastructure systems, cybersecurity, and mass care services.

With a total of 1,387 responses, the individual totals for the surveys were:

- Mitigation: 354 responses
- Recovery: 271 responses
- Preparedness: 479 responses
- Response: 283 responses

Most of the responses were from SLTT emergency management services, with some responses from non-governmental agencies such as universities, hospitals, and non-profits. Local agencies provided more than 75 percent of the responses. Geographically, the responses cover the entire United States, with a higher concentration of local agency responses coming from populations on the east and west coasts. Figure 1 shows the distribution of responses for the Response survey.

DRAFT//PRE-DECISIONAL//DELIBERATIVE



Figure 1: The geographic distribution of inputs from the Response Survey.

### Listening Sessions

Subcommittee listening sessions were facilitated to hear from state and local emergency managers throughout the country to hear their thoughts on disaster response, recovery, mitigation, and reforming FEMA's policies and operations. The listening sessions were attended and facilitated by Council members.

The locations for subcommittee listening sessions were strategically selected throughout the United States based on significant disasters that occurred in those areas, and the ability to meet with a bipartisan selection of state and local emergency managers across the regions.

The locations included: Asheville, North Carolina; Oklahoma City, Oklahoma; New Orleans, Louisiana; Los Angeles, California; Lincoln, Nebraska; Cheyenne, Wyoming; Minneapolis, Minnesota; Cape Coral, Florida; Washington, District of Columbia; Colorado Springs, Colorado; San Francisco, California; Waterbury, Vermont; San Juan, Puerto Rico; and virtually.

Additionally, the subcommittees held listening sessions in Los Angeles, California to discuss the recovery efforts of the 2025 Southern California wildfires; San Juan, Puerto Rico to discuss the ongoing impacts of Hurricane Maria in 2017; and Asheville, North Carolina to honor the one-year anniversary of Hurricane Helene.

In addition to these, the Council held an in-person listening session with over 20 Tribal Nations in Oklahoma City, Oklahoma as well as hosting three virtual listening sessions that cumulatively had over 100 Tribal Nations registrants.

### Federal Register Notice Public Comments

The FEMA Review Council published Federal Register Notice DHS-2025-0013 to solicit public feedback on the agency's reform. The 11,708 public comments received reflect a strong

59

DRAFT//PRE-DECISIONAL//DELIBERATIVE

consensus on the importance of FEMA's role in disaster response and recovery, while also capturing a broad spectrum of perspectives, experiences, and recommendations.

**Public Meetings**

The Council held public meetings in three locations: New Orleans, Louisiana; Oklahoma City, Oklahoma; and Washington, District of Columbia. The aim of these public meetings was to ensure the Council operated in a *transparent manner* while also leveraging the anniversaries of significant national disasters to further emphasize President Donald J. Trump's laser-focus on putting Americans first as part of FEMA's reform.

- **New Orleans, Louisiana**. In recognition of the 20-year anniversary of Hurricane Katrina.

- **Oklahoma City, Oklahoma**. To highlight that not every disaster is a natural one, such as the Alfred P. Murray Federal Building bombing in 1995, and to further acknowledge natural disasters are not just flooding events, given the number of catastrophic tornadoes in this state.

- **Washington, District of Columbia**. By conducting two public meetings in the nation's capital, the Council ensured in-person opportunities for senior leaders of the Administration to engage and participate with the Council.

## Analysis of Public Feedback Received

The FEMA Review Council's listening sessions, public comments, public meetings, and survey analysis revealed key themes, challenges, and recommendations for improving FEMA's disaster response, recovery, and mitigation efforts. Details of the below summary can be found in Appendix *Detailed Public Comments*.

**List of Common Issues and Challenges:**

- **Bureaucratic complexity**: FEMA's processes are overly complex, slow, and resource-intensive, creating barriers for smaller jurisdictions and tribal nations.

- **Delays in funding and reimbursements**: Cash flow challenges and slow FEMA reimbursements hinder recovery efforts, especially for smaller entities.

- **Workforce and capacity constraints**: There is high turnover among FEMA staff and limited capacity at the local level impact disaster response and recovery effectiveness.

- **Environmental and historic preservation reviews**: EHP reviews are major bottlenecks, delaying critical recovery projects.

- **Insurance and risk management**: Rising insurance costs, underinsurance, and concerns about FEMA's Risk Rating 2.0 system impact recovery efforts.

- **Disparities in aid**: Systemic inequities affect small, rural, and underserved communities, as well as vulnerable populations like renters, low-income families, and tribal nations.

- **Staffing gaps**: SLTT agencies face shortages in mass care, operational communications, and specialized disaster response capabilities.

- **Communication challenges**: Insufficient clarity and timeliness in FEMA's communication with local jurisdictions hinder coordination.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- **Dependence on FEMA funding**: SLTT agencies rely heavily on FEMA funding for critical disaster response and recovery activities, with reduced funding threatening capabilities.

**List of Common / Core Recommendations:**

1. **Bureaucratic complexity**
   - Simplify FEMA processes by streamlining disaster declarations, grant applications, and project reviews.
   - Decentralize decision-making to regional offices and implement a single federal family individual assistance application for all federal assistance.

2. **Delays in funding and reimbursements**
   - Enhance funding mechanisms by increasing funding for Emergency Management Performance Grant (EMPG), Hazard Mitigation Grant Program (HMGP), and Building Resilient Infrastructure and Communities (BRIC) programs.
   - Transition to block grants for disaster recovery funding with safeguards for fair distribution to expedite aid delivery.

3. **Workforce and capacity constraints**
   - Build local capacity by investing in training, technical assistance, and staffing for local emergency management agencies.
   - Expand FEMA training programs and workforce development initiatives to address staffing shortages.

4. **Environmental and Historic Preservation (EHP) reviews**
   - Streamline EHP reviews to reduce delays in recovery projects and empower local governments to conduct them.

5. **Insurance and risk management**
   - Invest in mitigation and resilience by prioritizing pre-disaster mitigation funding, resilient infrastructure, and incentivizing stronger building codes and forward-looking plans.

6. **Disparities in aid**
   - Address systemic disparities by tailoring FEMA programs to meet the needs of small, rural, underserved communities, tribal nations, and vulnerable populations.

7. **Staffing gaps**
   - Build local capacity by expanding FEMA training programs and workforce development to address gaps in mass care, operational communications, and specialized disaster response capabilities.

8. **Communication challenges**
   - Leverage technology to adopt modern tools like AI, geospatial systems, and real-time data sharing platforms to improve situational awareness and communication clarity.

9. **Dependence on FEMA funding**

61

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- o Maintain and strengthen FEMA's capabilities to ensure reforms prioritize disaster survivors' needs, improve aid delivery efficiency, and address increasing disaster frequency and severity.
- o Enhance public-private partnerships by integrating private sector and nonprofit organizations into disaster planning and operations to supplement FEMA's efforts.

# Tribal Engagements

The Council recognizes the distinct sovereignty of each individual Tribal Nation and Alaska Native Village and their respective government-to-government relationship with the federal government as outlined in the U.S. Constitution, treaties, statutes, and court decisions. The Council also recognizes the unique position Tribal Nations and Alaska Native Villages are in to be considered both states and locals when applied to the traditional levels of government. While the Council could not directly engage one-on-one with each of the 574 federally recognized tribes, the Council provided numerous opportunities for engagement comments from Tribal Nations as directed in the Executive Order. The Council held an in-person listening session with over 20 Tribal Nations in Oklahoma City, Oklahoma. Additionally, the Council hosted three virtual listening sessions that cumulatively had over 100 Tribal Nations registrants. These sessions aimed to gather input on improving FEMA's programs, services, and disaster response capabilities, with the Council committed to synthesizing feedback into recommendations for the President and Congress.

**Findings:**

Tribal leaders emphasized the need for FEMA to respect tribal sovereignty by maintaining direct government-to-government relationships and avoiding state or county intermediaries. They highlighted unique challenges faced by tribes, such as geographical isolation, cultural impacts, and infrastructure limitations, and called for tailored solutions like vertical evacuation structures for coastal tribes. Tribes offered the below key concerns and key proposals:

**Tribal Concerns:**

1. **Tribal Sovereignty and Direct Engagement:** Tribal leaders emphasized the importance of maintaining government-to-government relationships with FEMA, advocating against routing assistance through states or counties. They stressed the need for FEMA to respect tribal sovereignty and directly engage with tribal governments.

2. **Unique Tribal Challenges:** Tribes face distinct challenges, including geographical isolation, cultural impacts of disasters, and limited infrastructure. Alaska Native tribes highlighted erosion, flooding, and permafrost loss, while coastal tribes emphasized the need for vertical evacuation structures to mitigate tsunami risks.

3. **Funding and Grant Accessibility:** Tribes expressed concerns about limited access to FEMA grants, restrictive eligibility criteria, and the cancellation of the Building Resilient Infrastructure and Communities (BRIC) program. They called for streamlined grant processes and equitable funding opportunities.

4. **Disaster Thresholds and Cost Sharing:** FEMA's disaster declaration thresholds often exclude smaller tribes. Tribal leaders advocated for lowering thresholds and increasing cost-sharing flexibility to ensure equitable access to disaster relief.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

5. **Emergency Management Capacity:** Many tribes operate with limited Emergency Management staff and infrastructure. Tribes requested increased technical assistance, training programs, and resources to enhance their capacity.

6. **Collaboration and Mutual Aid:** Tribes proposed the creation of a Tribal Emergency Management Assistance Compact (T-MAC) to facilitate mutual aid and resource sharing among tribal nations during disasters.

**Proposed Recommendations from the Tribes:**

- **Adopt a Tribal Disaster Act:** Establish a standalone act to address tribal-specific needs and organizational structures.

- **Revise the Stafford Act:** Amend the act to better reflect tribal realities, particularly for Alaska Native communities.

- **Restore BRIC and Expand Mitigation Funding:** Reinstate the BRIC program or similar initiatives to support hazard mitigation plans and infrastructure projects.

- **Improve Grant Processes:** Streamline application procedures and broaden eligibility criteria for FEMA grants.

- **Create a Tribal EMAC:** Establish a compact to facilitate mutual aid among tribes.

- **Enhance Technical Assistance:** Provide training, resources, and direct support to build tribal Emergency Management capacity.

- **Recognize Cultural Impacts:** Develop metrics to account for cultural losses in disaster declarations.

# Areas for Further Exploration / Engagement

The scope and scale of interconnected topics and challenges when investigating the nation's state of emergency management is impressively complex. During this journey, the Council identified a series of areas that would benefit from thoughtful exploration from other formal groups or experts that may be best positioned to offer cogent solutions to the President and the Nation.

1. Review and streamline disparate disaster grant programs across federal agencies to improve consistency and accessibility for states and localities

2. Additional analysis on opportunities within the National Flood Insurance Program

3. Assess viability and opportunities for a potential FEMA Headquarters location change

4. Explore how to better integrate emerging technologies including advanced analytics, AI, and communications platforms to enhance operational capability, predict requirements in advance, and reduce costs

5. National Disaster Medical System: How to evolve program to better mirror USAR

6. Qualifications and cultivation of the administrative, state directors, T&T, and major urban core directors

7. National Structure – Optimal/Desired Number of Personnel. Due to anticipating staffing efficiencies, recommend further exploration on FEMA 2.0 staffing as well as FEMA 2.0 Region structure

63

DRAFT//PRE-DECISIONAL//DELIBERATIVE

8. Explore the National Core Competencies of all FEMA-related programs

9. Explore EMPG eligibility for Tribes

10. Explore how to best leverage existing advisory councils for FEMA:

    a. FEMA National Advisory Council

    b. FEMA Technical Mapping Advisory Council

    c. Board of Visitors for the National Fire Academy

# Public Meeting Minutes

The Council held four public meetings during its operations, the first being an inaugural gathering of the Presidentially appointed members, the second and third meetings acting as updates to progress and actions taken during the operations of the Council, and the last being the formal presentation and voting of this report and recommendations. Full public meeting minutes can be found on the Council's website.

- Inaugural FEMA Review Council Meeting on May 20, 2025, located at the Eisenhower Executive Office Building in Washington, DC.

- Second FEMA Review Council Meeting on July 9, 2025, located at the DHS Customs and Border Protection's Customs House in New Orleans, Louisiana.

- Third Public FEMA Review Council Meeting on August 28, 2025, located at the Oklahoma State Capitol Building in Oklahoma City, Oklahoma.

- Final Public FEMA Review Council Meeting on December 11, 2025, located at the Eisenhower Executive Office Building in Washington, DC.

# Engaged Subject Matter Experts and Stakeholders

The FEMA Review Council would like to thank the more than 11,000 individuals and respondents who have participated and engaged with the Council to share their input and insight. A full listing of individuals and organizations who have submitted formal testimony can be found at: Regulations.gov

The Council would like to note the extensive participation from the organizations and entities listed below. This list is not exhaustive or granular as the Council has engaged with numerous subject matter experts that have met in closed subcommittee sessions. The following list has been provided as is to respect the integrity of the feedback provided in those sessions.

**Federal Agencies**

Office of Management and Budget    Department of Homeland Security

Department of War    Federal Emergency Management Agency

Department of Treasury

**National Organizations**

DRAFT//PRE-DECISIONAL//DELIBERATIVE

| Council of Governors | International Association of Emergency Managers |
| International Association of Fire Chiefs | National Association of Counties |
| National Association of Mutual Insurance Companies | National Emergency Management Association |
| National Governors Association Public Health and Disaster Reform Task Force | National League of Cities |
| National Volunteer Fire Council | U.S. Conference of Mayors |
| Reinsurance Association of America | National Association of Insurance Commissioners |
| American Flood Coalition | …and many additional organizations |

## Tribal Nations

| | | |
|---|---|---|
| Agua Caliente Band of Cahuilla Indians | Inter-Tribal Council of Arizona | Ponca Tribe of Nebraska |
| Ak-Chin Indian Community | Iñupiat Community of the Arctic Slope | Port Gamble S'Klallam Tribe |
| Alakanuk Tribe | Iowa Tribe of Oklahoma | Potawatomi Nation |
| Bear River Band of the Rohnerville Rancheria | Jena Band of Choctaw Indians | Prairie Island |
| Blue Lake Rancheria | Jicarilla Apache Nation | Prairie Island Indian Community |
| Brownfields Tribal Response Program Coordinator | Kaibab Band of Paiute Indians | Pueblo of Nambe |
| Burns Paiute Tribe | Karuk Tribe | Pueblo of Zia |
| Cabazon Band of Cahuilla Indians | Kickapoo Tribe of Oklahoma | Puyallup Tribe |
| Caddo Nation of Oklahoma | Kiowa Tribe | Quapaw Nation |
| Cahuilla Band of Indians | Lac Courte Oreilles Nation | Quinault Indian Nation |
| Catawba Nation | Leech Lake Ojibwe | Red Cliff Band |
| Cherokee Nation | Lummi Nation | Rincon Band of Luiseño Indians |
| Chickaloon | Makah Tribal Organization | Saint Regis Mohawk Tribe |
| Chickasaw Nation | Match-E-Be-Nash-She-Wish-Band of Pottawatomi (aka Gun Lake Tribe) | Salt River Pima - Maricopa Indian Community |
| Choctaw Nation | Miccosukee | Santo Domingo Pueblo |
| Coeur d'Alene Tribe | Middletown Rancheria | Seldovia Village Tribe |

65

DRAFT//PRE-DECISIONAL//DELIBERATIVE

| | | |
|---|---|---|
| Comanche Nation | Mille Lacs Band of Ojibwe | Seminole Tribe of Florida |
| Confederated Tribes of the Umatilla Indian Reservation | Morongo Band of Mission Indians | Shakopee Mdewakanton Sioux Community |
| Confederated Tribes of Warm Springs | Native Village of Atka | Shinnecock Indian Nation |
| Cow Creek Band of Umpqua Tribe of Indians | Native Village of Eklutna | Sisseton Wahpeton Oyate of Lake Traverse Reservation |
| Cowlitz Indian Tribe | Native Village of Kipnuk | Skagit River System Cooperative |
| Crow Creek Sioux | Native Village of Ouzinkie | Sokaogon Chippewa Community |
| Dry Creek Band of Pomo Indians | Native Village of Point Hope | Spokane Tribal Business Council |
| Eastern Band of Cherokee Indians | Native Village of Umkumiut | Summit Lake Paiute Tribe |
| Eastern Shawnee Tribe of Oklahoma | Navajo Nation | Suquamish Tribe |
| Federated Indians of Graton Rancheria | Nez Perce Tribe | The Native Village of Dot Lake |
| Flandreau Santee Sioux Tribe | North Fork Rancheria | Three Affiliated Tribes |
| Fond du Lac Band of Lake Superior Chippewa | Nottawaseppi Huron Band of the Potawatomi | Tlingit & Haida |
| Forest County Potawatomi | Oneida Nation | Trinidad Rancheria |
| Fort Sill Apache Tribe | Organized Village of Kwethluk | Tulalip Tribes |
| Gila River Indian Community | Pawnee Nation | Twenty-Nine Palms Band of Mission Indian |
| Grand Portage Band of Lake Superior Chippewa | Pinoleville Pomo Nation | Upper Sioux Community |
| Great Lakes Inter-Tribal Council, INC. | Pokagon Band of Potawatomi | Wampanoag Tribe of Gay Head Aquinnah |
| Hannahville Indian Community, Potawatomi Tribe | Pokagon band of Potawatomi Indians of Michigan and Indiana | Wichita and Affiliated Tribes |
| Ho-Chunk Nation | Pokagon Potawatomi | Winnebago Tribe |
| Hoh Tribal Business Committee | Pokégnek Bodéwadmik | Yakama Nation |
| Hoopa Valley Tribe | Ponca Tribe of NE | Ysleta Del Sur Pueblo |

**States/Territories**

| | | | |
|---|---|---|---|
| Alabama | Alaska | Arizona | Arkansas |

66

DRAFT//PRE-DECISIONAL//DELIBERATIVE

| | | | |
|---|---|---|---|
| California | Colorado | Connecticut | Delaware |
| Florida | Georgia | Hawaii | Idaho |
| Illinois | Indiana | Iowa | Kansas |
| Kentucky | Louisiana | Maine | Maryland |
| Massachusetts | Michigan | Minnesota | Mississippi |
| Missouri | Montana | Nebraska | Nevada |
| New Hampshire | New Jersey | New Mexico | New York |
| North Carolina | North Dakota | Ohio | Oklahoma |
| Oregon | Pennsylvania | Rhode Island | South Carolina |
| South Dakota | Tennessee | Texas | Utah |
| Vermont | Virginia | Washington | West Virginia |
| Wisconsin | Wyoming | Puerto Rico | |

**Private Industry and Faith-Based Organizations**

| | | |
|---|---|---|
| Artanis Capital | BuildSOS Inc | Rule One Consulting |
| Mennonite Disaster Service | Samaritan's Purse | Convoy of Hope |
| Mercy Chefs | The Salvation Army | International Emergency Management |

# Detailed Public Comments and Survey Inputs – An Analysis

### Feedback Mechanism #1 FEMA Review Council Survey Overview

The FEMA Review Council's State-Federal Coordination (FSC) Subcommittee conducted a comprehensive survey of 1,387 stakeholders spanning state, local, tribal, and territorial (SLTT) agencies as well as non-governmental partners. This survey revealed critical insights into the current state of national preparedness and response. Findings highlight both the indispensable value of FEMA's resources and the urgent need for modernization, targeted capacity-building, and sustained partnerships. A recurring theme across responses was the need to streamline the bureaucracy and reduce red tape in administering federal funding. The survey findings outlined high-level strategic priorities to guide FEMA's transformation, ensuring the agency remains a catalyst for resilience in an evolving risk environment.

Survey responses confirm that FEMA plays a vital role in delivering funding, training, specialized assets, and nationally standardized systems. However, administrative inefficiencies, capability gaps among SLTT partners, and uneven resource distribution threaten the speed and effectiveness of disaster response.

At the same time, FEMA's unique capabilities, such as the nationwide Integrated Public Alert and Warning System (IPAWS), Urban Search and Rescue (USAR), National Incident Management System (NIMS) standards, financial support during catastrophic disasters remain

67

DRAFT//PRE-DECISIONAL//DELIBERATIVE

irreplaceable assets that underpin the nation's emergency management framework and should be focused on reducing impacts of future disasters.

**Current State**

Agencies responding to the survey indicated that FEMA support most commonly includes funding, training, technical assistance, and specialized assistance.

The most cited funding programs were the **Emergency Management Performance Grant (EMPG)**, the **State Homeland Security Grant (SHSP)**, and **Individual Assistance**. Survey responses cited **delays and bureaucracy** as a frequent problem. Funding delays were cited over 60 times in the Response survey. The following comment from Oklahoma Emergency Management describes the importance of Federal funding, while acknowledging that the process is burdensome and slow:

> **Question**: If FEMA no longer supported this capability, how would your organization/jurisdiction accomplish this task? If this task would no longer be accomplished without FEMA, why or why not?
>
> **Response**: *If FEMA were no longer involved in disaster recovery, our primary concern would not be the loss of personnel or technical assistance, it would be the loss of critical funding. FEMA's financial support is essential to helping states and communities recover from disasters. However, the current model is weighed down by excessive administrative burden, slow processes, and layers of compliance that often delay recovery efforts and divert resources away from survivors.*
>
> *Rather than deploying large numbers of federal staff to manage relatively small disasters or requiring states to navigate a complex and rigid grants system, FEMA should consider shifting to a block grant model. Providing states with flexible, upfront funding would allow us to tailor disaster recovery efforts to our unique needs and capabilities. This approach would reduce bureaucracy, increase efficiency, and expedite the delivery of aid where it's most needed.*
>
> *States like ours have built strong local response and recovery systems. What we need from FEMA is not manpower, but streamlined, predictable financial support. A block grant system, paired with accountability measures, would empower states to lead recovery more effectively while still maintaining transparency and federal oversight.*
>
> **Source:** Recovery Survey response from Oklahoma Emergency Management

According to the survey results, FEMA relies heavily on SLTT partners for **on-site security and law enforcement** (153 mentions), **mass care services** (176 mentions) and **operational communications** (120 mentions). FEMA partly relies on SLTT partners for these activities due to **staffing gaps**. 87 survey responses mentioned staffing gaps in mass care and 92 responses citing gaps in communications staffing. Lack of proper communication staffing results in **insufficient direct communications with local jurisdictions** (40 mentions) along with **unsatisfactory clarity and timeliness** (30 mentions).

Based on the survey results, FEMA provides more value in specialized areas, where SLTT partners sometimes lack resources or expertise. Respondents mentioned the FEMA **Incident Command System (ICS)** and **National Incident Management System (NIMS)** courses over 100 times, the deployment of specialized teams such as **Urban Search and Rescue (USAR)** and

68

DRAFT//PRE-DECISIONAL//DELIBERATIVE

**Disaster Mortuary Operational Response Teams (DMORT)** over 50 times, and the **Integrated Public Alert and Warning System (IPAWS)** over 20 times. The Snohomish County Department of Emergency Management in Washington state provides the following insight:

> **Question:** What training support does FEMA provide? This could include specific courses or other training support.
>
> **Response:** *All the ICS and NIMS courses. The entire NIMS Training Program which outlines standards processes to support mutual aid. Without nationally standardized training, it will not be long before each state has slightly different response structures or terminology, and state-to-state mutual aid becomes that much harder. We NEED national guidance to ensure we are all able to work together.*
>
> *I feel slightly less passionately about the basic Professional Development Series and Advanced Development Series and other independent study courses. In theory these could be replicated at the state level, but at 50x the effort as just having single courses provided by the federal government, which allow locals and states to build curriculum without having to each create the same content from scratch.*
>
> **Source:** Preparedness Survey response from Snohomish County Department of Emergency Management

## Impact of Potential Changes

Organizations highlighted **mass care services, operational communications, mass search and rescue,** and **preparedness** as areas where reduced funding could impact capabilities. Over 80 responses cited dependencies on FEMA funding for shelter, food, and housing. Potential impacts on operational communications include **insufficient funding for equipment upgrades** and **reduced interoperability** and over 40 SLTT teams stated that they lacked the ability to replace USAR capabilities. According to the survey results, reduced funding would impact jurisdictions rural jurisdictions and jurisdictions without specialized resources the most. Portsmouth, VA Emergency Management responded with the following:

> **Question:** If FEMA no longer supported this capability, how would your organization/jurisdiction accomplish this task? If this task would no longer be accomplished without FEMA, why or why not?
>
> **Response:** *In Portsmouth, Virginia, our Emergency Management team consists of only two full-time professionals working alongside the traditional city services like Social Services, Behavioral Health, Police, and the countless non-profit volunteer organizations that help the community daily with unmet mass care needs. Without FEMA's coordination, technical assistance, and resource alignment, we simply do not have the capacity to meet the wide-ranging and escalating demands of sheltering, feeding, hydration, reunification, and accessible services during a major incident.*
>
> **Source:** Response Survey response from Portsmouth (VA) Emergency Management

Additionally, survey results indicate that SLTT agencies could perform operations such as on-site security. However, reduced funding would limit the ability to scale operations for complex disasters. The St. Lucie County Emergency Management Division in Florida notes potential impacts to long-term or large-scale operations.

DRAFT//PRE-DECISIONAL//DELIBERATIVE

**Question:** If FEMA no longer supported this capability, how would your organization/jurisdiction accomplish this task? If this task would no longer be accomplished without FEMA, why or why not?

**Response:** *Local law enforcement and mutual aid partners would continue to manage security and protective operations with support from state resources. However, the ability to sustain long-term or large-scale security operations would be limited without FEMA funding and technical assistance.*

**Source:** Response Survey response from St Lucie County Emergency Management Division

Respondents cited **public information and warning** and **economic recovery** as areas where reduced funding would have less impact. Since FEMA manages systems such as IPAWS independently, reduced funding would not directly impact SLTT operations. However, responses such as this one from the Maryland Department of Emergency Management suggest that replicating FEMA systems such as IPAWS would be expensive.

**Question:** If FEMA no longer supported this capability, how would your organization/jurisdiction accomplish this task? If this task would no longer be accomplished without FEMA, why or why not?

**Response:** *The State could not replicate the IPAWS system, and to do so would be highly inefficient and expensive compared with common, distributed use of a nationally maintained system.*

**Source:** Response Survey from Maryland Department of Emergency Management

Additionally, partnerships with other agencies such as the Small Business Administration (SBA) and the U.S. Department of Agriculture (USDA) mitigate the impact of reduced funding on economic recovery.

**Feedback Mechanism #2 Listening Sessions Overview:**

The FEMA Review Council conducted extensive listening sessions, public comment analysis, and stakeholder surveys in 2025 to evaluate disaster response, recovery, mitigation, and FEMA's policies and operations. Feedback from state, local, tribal, and territorial (SLTT) agencies, nonprofit organizations, private sector representatives, and community groups highlighted critical flaws in FEMA's processes, funding mechanisms, communication strategies, and operational efficiency. Stakeholders repeatedly identified bureaucratic inefficiencies, delays in funding, inconsistent program administration, workforce constraints, and insufficient engagement with local governments as major barriers to effective disaster management.

The following is a comprehensive summary of the listening sessions held by the FEMA Review Council in 2025, focusing on disaster response, recovery, mitigation, and reforming FEMA's policies and operations.

This captures feedback from a wide range of stakeholders, including state and local emergency management officials, tribal leaders, nonprofit organizations, private sector representatives, and community groups. The views expressed during the listening sessions are not endorsed by the Council but were taken into consideration during deliberations on recommendations.

Below is an analysis of the themes, challenges, and recommendations from the sessions:

**Themes Across Sessions**

70

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- **FEMA Reform and Streamlining Processes:** Across all sessions, participants emphasized the need to simplify FEMA's processes, including grant applications, disaster declarations, and recovery programs. The Public Assistance flow chart, often referred to as "The Snake," and Environmental and Historic Preservation (EHP) reviews were repeatedly criticized for causing delays. Recommendations included decentralizing decision-making to FEMA regional offices, allowing parallel processing of project steps, and adopting technology to modernize operations.

- **Federal, State, and Local Roles:** There was strong support for empowering SLTT governments to lead disaster response and recovery efforts, with FEMA providing strategic oversight and technical assistance. Many participants advocated for a shift from FEMA's operational role to one of support and funding.

- **Funding and Grant Programs:** Emergency Management Performance Grants (EMPG), Hazard Mitigation Grant Program (HMGP), and Building Resilient Infrastructure and Communities (BRIC) were identified as critical funding mechanisms. Participants called for increased funding, streamlined application processes, and greater flexibility in how funds are used. Block grants and/or direct funding were proposed as a potential solution to reduce bureaucracy, but concerns about implementation challenges were noted.

- **Mitigation and Resilience:** Investment in pre-disaster mitigation and resilient infrastructure was emphasized as a cost-effective way to reduce disaster impacts. Participants highlighted the importance of incentivizing communities to adopt stronger building codes and forward-looking plans.

- **Fairness and Vulnerable Populations:** Fairness was a recurring theme, with calls to address systemic disparities faced by small, rural, and underserved communities. Vulnerable populations, including renters, low-income families, and tribal nations, were identified as needing tailored support.

- **Technology and Innovation:** Leveraging technology, such as AI, drones, databases, and geospatial tools, was recommended to improve damage assessments, streamline grant processes, and enhance situational awareness. Real-time data sharing and modernized systems were seen as critical to improving efficiency.

- **Tribal Sovereignty and Representation:** Tribal leaders emphasized the importance of respecting tribal sovereignty and maintaining direct government-to-government relationships. Unique challenges faced by tribal nations, such as geographic isolation and cultural impacts, were highlighted as areas requiring tailored solutions.

- **Public-Private and Private Nonprofit Partnerships:** Participants advocated for greater collaboration with private sector and nonprofit organizations, which were recognized as critical partners in disaster response and recovery. Pre-positioning contracts and integrating these entities into disaster plans were recommended.

### Challenges Identified

- **Bureaucratic Complexity:** FEMA's processes were repeatedly described as overly complex, slow, and resource-intensive, creating barriers for smaller jurisdictions and tribal nations with limited capacity.

71

DRAFT//PRE-DECISIONAL//DELIBERATIVE

- **Delays in Funding and Reimbursements:** Cash flow challenges and delays in FEMA reimbursements were identified as major obstacles for local governments and tribes, particularly smaller entities.

- **Workforce and Capacity Constraints:** High turnover among FEMA staff and limited capacity at the local level hindered effective disaster response and recovery.

- **Insurance and Risk Management:** Rising insurance costs and underinsurance were noted as significant barriers to recovery. Concerns about FEMA's Risk Rating 2.0 system and its impact on flood insurance premiums were highlighted.

- **Environmental and Historic Preservation (EHP) Reviews:** EHP reviews were identified as a major bottleneck, delaying critical recovery projects. Participants called for streamlining these reviews and allowing local governments to conduct them.

**Recommendations**

- **Streamlining FEMA Processes:** (1) Simplify disaster declarations, grant applications, and project reviews. (2) Decentralize decision-making to FEMA regional offices and empower local governments to lead recovery efforts. (3) Have a single federal family individual assistance application.

- **Enhancing Funding Mechanisms:** (1) Increase funding for EMPG, HMGP, and BRIC programs. (2) Transition to block grants for disaster recovery funding, with safeguards to ensure fair distribution.

- **Investing in Mitigation and Resilience:** (1) Prioritize funding for pre-disaster mitigation and resilient infrastructure. (2) Incentivize communities to adopt stronger building codes and forward-looking plans.

- **Addressing Fairness:** (1) Tailor FEMA programs to address the unique needs of small, rural, and underserved communities. (2) Ensure fair access to resources for tribal nations and vulnerable populations.

- **Leveraging Technology:** (1) Adopt modern technology to improve damage assessments, streamline grant processes, and enhance situational awareness. (2) Invest in real-time data sharing and coordination platforms.

- **Strengthening Tribal Engagement:** (1) Respect tribal sovereignty and maintain direct government-to-government relationships. (2) Provide predictable, formula-driven funding allocations directly to tribes.

- **Building Local Capacity:** (1) Invest in training, technical assistance, and staffing for local emergency management agencies through federal standards delivered by states. (2) Expand FEMA's training programs and support workforce development.

- **Public-Private and Private Nonprofit Partnerships:** (1) Integrate private sector and nonprofit organizations into disaster planning and operations. (2) Pre-position contracts and leverage private sector expertise in recovery efforts.

**Feedback Mechanism #3 Analysis of Public Comments Submitted (11,708 Responses):**

On March 26, 2025, the FEMA Review Council published Federal Register Notice DHS-2025-0013 to provide the general public an opportunity to provide input on how to reform FEMA as it

72

DRAFT//PRE-DECISIONAL//DELIBERATIVE

stands today. The Council received 11,708 responses to this notice, underscoring the critical role FEMA plays in disaster management. The public comments submitted in response to the FEMA Review Council's request for feedback under Federal Register Notice DHS-2025-0013 reflect a broad spectrum of perspectives, experiences, and recommendations. These comments underscore the critical role FEMA plays in disaster response and recovery and provide actionable insights for reforming and strengthening the agency's operations. The views expressed in the public comments are not endorsed by the Council but were taken into consideration during deliberations on recommendations. Below is a thematic analysis of the feedback:

**FEMA's Role and Structure**

o **Insights**: FEMA is widely recognized as an essential agency in disaster response and recovery, particularly in coordinating multi-state disasters and providing resources to communities. Respondents emphasized the need for FEMA to focus on preparedness, soft skills training, and fostering strong relationships with local communities. Federal coordination and clear communication about FEMA's capabilities and limitations are seen as critical to its success. In addition, there was lack of clarity regarding which Individual Assistance or Public Assistance programs will be available.
o **Recommendations**: (1) Improve internal feedback mechanisms to ensure continuous improvement. (2) Invest in training programs that emphasize diplomacy, cultural competence, and community engagement.

**State and Federal Coordination**

o **Insights**: The Council of Governors submitted a detailed letter advocating for FEMA reforms, emphasizing that states cannot manage catastrophic disasters alone. Governors highlighted the importance of federal support in disaster response and recovery, particularly in standardizing and expanding Individual Assistance programs and improving interagency coordination.
o **Recommendations**: (1) Create a unified federal disaster assistance application to streamline survivor access to aid. (2) Ensure consistent funding for FEMA programs to support state and local recovery efforts. (3) Leverage state and local expertise to expedite recovery and improve efficiency.

**Strengthening FEMA's Capabilities**

o **Insights**: Respondents overwhelmingly opposed dismantling or downsizing FEMA, citing the increasing frequency and severity of disasters. FEMA's support was viewed as indispensable for states and communities, which lack the capacity to handle large-scale disasters independently. The public also said timely aid and resources provided by FEMA are critical to helping disaster survivors rebuild their communities and mitigate future risks.
o **Recommendations**: (1) Maintain and enhance FEMA's capabilities to better serve communities nationwide. (2) Focus on improving the speed and efficiency of aid delivery to ensure disaster survivors receive timely support.

**Community Feedback and Support**

o **Insights**: Community members, particularly in disaster-prone areas like Houston, Texas, shared both positive and negative experiences with FEMA. While FEMA's support was appreciated, concerns were raised about inconsistencies in assistance, lengthy wait times, and

73

DRAFT//PRE-DECISIONAL//DELIBERATIVE

communication challenges. Issues such as disparities in aid distribution, language barriers, and difficulties with the application process were frequently noted.

o **Recommendations:** (1) Standardize assistance programs to ensure fair and consistent distribution of aid. (2) Enhance training for FEMA staff to improve communication skills and cultural awareness. (3) Increase transparency in FEMA's processes to foster trust and confidence among disaster survivors.

### Diverse Regional and Stakeholder Perspectives

o **Insights:** Feedback from various regions and stakeholders highlighted unique challenges and recommendations. Puerto Rico called for mobile outreach, alternative proof of ownership, and improved communication. Tribal Nations praised FEMA's support but criticized of some disaster reservists' behavior. Gulf Coast areas urged restoration of FEMA funding and staffing. Nevada emphasized the importance of the National Flood Insurance Program and called for reforms. Florida highlighted positive experiences with FEMA during Hurricane Wilma but stressed the need for continued funding.

o **Recommendations:** (1) Tailor FEMA's programs to address regional and stakeholder-specific needs. (2) Streamline grant processes and ensure equitable resource allocation. (3) Invest in better training for FEMA personnel to improve efficiency and professionalism (soft skill development).

### Protecting FEMA's Mission

o **Insights:** Respondents overwhelmingly emphasized the need to protect and strengthen FEMA rather than dismantle or weaken it. Shifting the burden of disaster response to states was viewed as less effective and potentially harmful to local communities. Respondents also stressed that FEMA reforms should be guided by science, equity, and the experiences of disaster survivors, rather than political ideology.

o **Recommendations:** (1) Oppose efforts to weaken FEMA and ensure reforms prioritize the needs of disaster survivors. (2) Strengthen FEMA's capacity to respond to increasingly frequent and severe disasters. (3) Ensure reforms are informed by data, best practices, and input from affected communities.

The 11,708 public comments received reflect a strong consensus on the importance of FEMA's role in disaster response and recovery. While respondents identified areas for improvement, including streamlining processes, enhancing communication, and addressing equity, there was widespread support for maintaining and strengthening FEMA's capabilities. The feedback highlighted the need for FEMA to remain a robust and responsive agency that can effectively support communities during their most vulnerable times.

74



**Sent:**        1/7/2026 1:46:07 PM
**To:**          Khan, Puneet [/o=ExchangeLabs/ou=Exchange Administrative Group
                 (FYDIBOHF23SPDLT)/cn=Recipients/cn=1c2ce09ea8f34f429cb459624ed77b8c-002c703b-83]; Cope-Tilford, Lily
                 [/o=ExchangeLabs/ou=Exchange Administrative Group
                 (FYDIBOHF23SPDLT)/cn=Recipients/cn=1b11e655c1db4cf2b7a982c11c91260c-Cope-tilfor]
**CC:**          Bilicic, William [/o=ExchangeLabs/ou=Exchange Administrative Group
                 (FYDIBOHF23SPDLT)/cn=Recipients/cn=0a8d35e355c24ff98d728931441d89d6-17597001-19]; Prieur, La'Toya
                 [/o=ExchangeLabs/ou=Exchange Administrative Group
                 (FYDIBOHF23SPDLT)/cn=Recipients/cn=d47853c52fb04e47aa9d0194ae59bbb5-0d4e1677-d6]; Clayton, Andrew
                 [/o=ExchangeLabs/ou=Exchange Administrative Group
                 (FYDIBOHF23SPDLT)/cn=Recipients/cn=91ab663fd653453195bd72d3ebf9a7ab-dc3b7313-6b]
**Subject:**     RE: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call
**Attachments:** Workforce Plan - December 2025 12.31 Qtr 2.xlsx

Suspense item, due to DHS on 1/6/25.
v/r, Blanca

**From:** Khan, Puneet <puneet.khan@fema.dhs.gov>
**Sent:** Tuesday, January 6, 2026 11:35 AM
**To:** Sanchez, Blanca <blanca.sanchez@fema.dhs.gov>; Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Clayton, Andrew <andrew.clayton@fema.dhs.gov>
**Subject:** RE: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

Thank YOU!!! Truly thank you!

**From:** Sanchez, Blanca <blanca.sanchez@fema.dhs.gov>
**Sent:** Tuesday, January 6, 2026 11:34 AM
**To:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Clayton, Andrew <andrew.clayton@fema.dhs.gov>
**Subject:** Re: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

Confirmed and DHS granted an extension through Friday.

v/r, Blanca

**From:** Khan, Puneet <puneet.khan@fema.dhs.gov>
**Sent:** Tuesday, January 6, 2026 11:29 AM
**To:** Sanchez, Blanca <blanca.sanchez@fema.dhs.gov>; Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Clayton, Andrew <andrew.clayton@fema.dhs.gov>
**Subject:** Re: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

Hi again, just confirming please do not submit the response to DHS without us clearing w AF1. Thank you!

Warm Regards,

Puneet Khan
Deputy Chief of Staff (Ops)



EXHIBIT
DATE: 3|31|26
SUSAN ASHE

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0002353

Office of the Administrator
Federal Emergency Management Agency
202-717-5153

**From:** Khan, Puneet
**Sent:** Tuesday, January 6, 2026 9:41:05 AM
**To:** Sanchez, Blanca <blanca.sanchez@fema.dhs.gov>; Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Clayton, Andrew <andrew.clayton@fema.dhs.gov>
**Subject:** RE: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

Hi Blanca,

My apologies for the delay, sat in my box yesterday. Attached is the staffing plan that was submitted 12/4. We can use this template. We do need OA/AFI clearance before submitting and may need to request a few extra days from DHS OCHCO (preferably until Friday).

When submitting the final, can we please draft a short narrative summary for AF1 and highlight there is no change. We will then share that with her.

Thank you to you and Lily for your help.

Warm regards,
Puneet

---

**From:** Sanchez, Blanca <blanca.sanchez@fema.dhs.gov>
**Sent:** Monday, January 5, 2026 3:28 PM
**To:** Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>; Khan, Puneet <puneet.khan@fema.dhs.gov>
**Cc:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

Good afternoon team,
There are no updates to the 2nd Quarter Annual Staffing Plan.
v/r, Blanca

---

**From:** Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>
**Sent:** Wednesday, December 31, 2025 1:45 PM
**To:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Sanchez, Blanca <blanca.sanchez@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

Good afternoon,

The spreadsheet is being worked to include the new information currently being collected through the Draft Workforce Plan. Once that update is completed by OCHCO I am happy to provide the updated spreadsheet.

**Lily Cope-Tilford**
Senior Advisor | Mission Support
Office/Mobile: 202-714-8546
Lily.Cope-Tilford@FEMA.DHS.GOV

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0002354

Federal Emergency Management Agency
**fema.gov**



**From:** Khan, Puneet <puneet.khan@fema.dhs.gov>
**Sent:** Wednesday, December 31, 2025 1:20 PM
**To:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Sanchez, Blanca <blanca.sanchez@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>
**Subject:** RE: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

Hi Stephanie,

I am so sorry!! I hope you are feeling better and are on the mend! Friday or Monday sound great. Lily prepared the spreadsheet and we just want to confirm that what we are going to put forward for AF1's review is aligned with what was previously submitted.

Lily, may I ask you to please share with Stephanie?

Thank you so much and please feel better soon!!
Puneet

**From:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Sent:** Wednesday, December 31, 2025 10:52 AM
**To:** Khan, Puneet <puneet.khan@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Sanchez, Blanca <blanca.sanchez@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** Re: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

Hi Puneet,

Happy to chat. I have a pretty severe case of COVID so I've been in and out of consciousness this week. Is something we can discuss Friday or Monday?

Happy new year!
Stephane

**Stephanie Dobitsch**
OPPA, FEMA
771-217-3484

**From:** Khan, Puneet <puneet.khan@fema.dhs.gov>
**Sent:** Tuesday, December 30, 2025 8:55:40 AM
**To:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>

Confidential - Subject to Protective Order

**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Sanchez, Blanca <blanca.sanchez@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** FW: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

Hi Stephanie,

I hope you had a nice holiday week. I am looking for your help and guidance on the below/attached. I chatted with Will about this yesterday and he shared that you were working this item closely with AF1 and that you had done this previously and very well. Any help and guidance on a way forward with this is appreciated!!

Thank you so much!!
Puneet

---

**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Monday, December 22, 2025 2:48 PM
**To:** Khan, Puneet <puneet.khan@fema.dhs.gov>
**Cc:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>; Neurauter, Jeffrey <Jeff.Neurauter@fema.dhs.gov>; Sanchez, Blanca <blanca.sanchez@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Subject:** FW: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

Puneet,

I'm sharing the Annual Staffing Plan sent to the OA for Q1 FY 2026. DHS issued a follow-on tasker to update data for Q2 FY 2026 with a suspense of January 6th. I believe Will may have been working on updates. Seeking guidance on next steps.

LP

---

**From:** Idriss, Betelehem <BETELEHEM.IDRISS@hq.dhs.gov>
**Sent:** Thursday, December 18, 2025 5:00 PM
**To:** HCLC-Principals <HCLC-Principals@hq.dhs.gov>; HCLC-Deputies <HCLC-Deputies@hq.dhs.gov>
**Cc:** MATHIS, REGINALD <REGINALD.MATHIS@hq.dhs.gov>; Le, Huy <huy.le@hq.dhs.gov>
**Subject:** ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

**MESSAGE ON BEHALF OF MISCHELL NAVARRO**
**EXECUTIVE DIRECTOR, HUMAN CAPITAL POLICY AND PROGRAMS**
**OFFICE OF THE CHIEF HUMAN CAPITAL OFFICER**

As a follow-up to the initial staffing data call required by Executive Order 14356, *Ensuring Continued Accountability in Federal Hiring*, the Office of Personnel Management (OPM) requires a quarterly update to the staffing plan. The next update to OPM is due January 30.

To meet this deadline, Components should begin reviewing and refining their previously submitted staffing plans. This update is not a full resubmission, but an opportunity to make necessary adjustments and provide progress updates.

Please note, the initial consolidated staffing plan is under review and pending approval by the proposed Strategic Hiring Committee. Additional feedback and guidance may be provided once approved.

*Instructions for this quarterly update:*

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0002356

- Distribute your previously submitted spreadsheets to your lowest-level offices to complete the tabs highlighted in **green**.
- Complete the tabs highlighted in **blue** at the consolidated component level.
- Submit a consolidated response by **12 p.m., Tuesday, January 6**. Please note, this is a firm deadline to ensure approval through the SHC is completed before the OPM submission deadline.
- Components on a fiscal year (FY) performance management cycle should now have data available for the sections related to FY2025 performance management.

Thank you for your continued support and timely attention to this requirement. For questions, please contact Huy Le at huy.le@hq.dhs.gov and I at betelehem.idriss@hq.dhs.gov with any questions.

Happy Holidays!


V/r,
Bety

---

**From:** Edwards, Roland <roland.edwards@HQ.DHS.GOV>
**Sent:** Friday, November 21, 2025 9:12 AM
**To:** HCLC-Principals <HCLC-Principals@hq.dhs.gov>; HCLC-Deputies <HCLC-Deputies@hq.dhs.gov>
**Cc:** DHSHQ-PAUL COURTNEY <paul.courtney@hq.dhs.gov>; Kessler, Matthew <MATTHEW.KESSLER@hq.dhs.gov>
**Subject:** Due by December 3 at 12PM: Annual Staffing Plan Data Call

As required per the Executive Order 14356, *Ensuring Continued Accountability in Federal Hiring* and related Fact Sheet: President Donald J. Trump Ensures Continued Accountability in Federal Hiring , the Department must submit an Annual Staffing Plan to OPM and OMB.

To facilitate this process, we have attached a standardized template that aligns with OPM/OMB reporting requirements. The template is designed to streamline data collection and reporting across components.

The staffing plan takes a bottoms-up approach to determine the appropriate staffing levels needed to support Presidential priorities, mission-critical areas, and statutory obligations. The OPM/OMB tasker also requires information related to contractors. Please share this as soon as possible with your Heads of Contracting so they can support completion of this tasker on time.

Instructions for completing this data call:

- Components should distribute this template to their lowest-level offices to complete the tabs highlighted in **green**.
- Components should answer the tabs highlighted in **blue** at the consolidated component level.
- Components should submit a consolidated response **no later than 12 p.m., Wednesday, December 3.**

I understand this is a tight deadline, but your support is critical to ensuring DHS can fully comply with the Executive Order. We will hold an office hours session on Monday, November 24, to address any questions you may have regarding this data call.

You may also contact Huy Le at huy.le@hq.dhs.gov and Bety Idriss at betelehem.idriss@hq.dhs.gov directly with any questions.

Thank you for your assistance!

-Roland

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0002357

Provide a bridge from current headcount to proposed staffing count at

| Organization Information | | | | 26 Projection & Rationa |
| NFC Org Code (office level) | Component | Org Level 2 | 9/30/25 FTE | 9/30/26 Projected FTE |
|---|---|---|---|---|
| 0100000000000000 | FEDERAL EMERGENCY MANAGEMENT AGENCY | OFFICE OF THE ADMINISTRATOR | 31 | 25 |
| 0200000000000000 | FEDERAL EMERGENCY MANAGEMENT AGENCY | OFFICE OF EXTERNAL AFFAIRS | 324 | 107 |
| 0300000000000000 | FEDERAL EMERGENCY MANAGEMENT AGENCY | OFFICE OF THE CHIEF FINANCIAL OFFICER | 575 | 190 |
| 0400000000000000 | FEDERAL EMERGENCY MANAGEMENT AGENCY | OFFICE OF PROFESSIONAL RESPONSIBILITY | 35 | 11 |
| 0500000000000000 | FEDERAL EMERGENCY MANAGEMENT AGENCY | OFFICE OF THE CHIEF COUNSEL | 288 | 95 |
| 0700000000000000 | FEDERAL EMERGENCY MANAGEMENT AGENCY | OFFICE OF POLICY AND PROGRAM ANALYSIS | 101 | 79 |
| 2200000000000000 | FEDERAL EMERGENCY MANAGEMENT AGENCY | RESPONSE AND RECOVERY | 11,530 | 6,072 |
| 3100000000000000 | FEDERAL EMERGENCY MANAGEMENT AGENCY | MISSION SUPPORT | 2,516 | 834 |
| 6100000000000000 | FEDERAL EMERGENCY MANAGEMENT AGENCY | RESILIENCE | 2,092 | 2,400 |
| 6200000000000000 | FEDERAL EMERGENCY MANAGEMENT AGENCY | OFFICE OF NATIONAL CONTINUITY PROGRAMS | 528 | 449 |
| 8000000000000000 | FEDERAL EMERGENCY MANAGEMENT AGENCY | US FIRE ADMINISTRATION | 105 | 35 |
| 9100000000000000 | FEDERAL EMERGENCY MANAGEMENT AGENCY | REGIONAL OFFICES | 5,021 | 1,086 |

11383



Evans 17
EXHIBIT
DATE: 3|3|26
SUSAN ASHE

USA-AFGE-Exp.0006542 (Employee Plan)

| From: | Evans, Karen [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=85BF5C69B59B407DBE7A70B634015DC0-771D1D66-F8] |
| Sent: | 12/23/2025 12:59:22 PM |
| To: | Prieur, La'Toya [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=d47853c52fb04e47aa9d0194ae59bbb5-0d4e1677-d6] |
| CC: | Clayton, Andrew [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=91ab663fd653453195bd72d3ebf9a7ab-dc3b7313-6b]; Barton, Victoria |
| | [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=9534efb9e5e34ab39cb89453cb919909-03cc1639-4d]; Voorhies, Kara |
| | [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=59e892831314435587de3f96b6d521fc-71690143-b5] |
| Subject: | FW: FOR MICAH APPROVAL FW: FOR REVIEW: Draft Email for Workforce Retention Planning |
| Attachments: | Workforce Planning Guidance Email Draft.docx |

Here is the approved email

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile: 202-255-4141

**From:** Barton, Victoria <victoria.barton@fema.dhs.gov>
**Sent:** Tuesday, December 23, 2025 12:18 PM
**To:** Clayton, Andrew <andrew.clayton@fema.dhs.gov>
**Cc:** Evans, Karen <karen.evans@fema.dhs.gov>
**Subject:** Fw: FOR MICAH APPROVAL FW: FOR REVIEW: Draft Email for Workforce Retention Planning

Respectfully,

Victoria L. Barton
Associate Administrator
Office of External Affairs
202.664.4745 | victoria.barton@fema.dhs.gov

Federal Emergency Management Agency
FEMA.gov

> [x] The linked image cannot
> be displayed. The file may
> have been moved,
> renamed, or deleted. Verify

**From:** Barton, Victoria
**Sent:** Tuesday, December 23, 2025 10:37:39 AM
**To:** BOCK, MICAH <MICAH.BOCK@hq.dhs.gov>
**Cc:** Evans, Karen <karen.evans@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>
**Subject:** FOR MICAH APPROVAL FW: FOR REVIEW: Draft Email for Workforce Retention Planning



Evans 18
EXHIBIT
DATE: 3\3\26
SUSAN ASHE

Micah –

Please see the revised draft email – this is an internal email to comply to the OMB guidance. The initial draft that was provided was wrong – this may get leaked but it is not inflammatory like that last version we all got. Please let me know if you can review and approve.

Respectfully,

Victoria L. Barton
Associate Administrator
Office of External Affairs
victoria.barton@fema.dhs.gov

Federal Emergency Management Agency
FEMA.gov



----

**From:** Barton, Victoria
**Sent:** Tuesday, December 23, 2025 7:57 AM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Voorhies, Kara <kara.voorhies@fema.dhs.gov>
**Subject:** RE: FOR REVIEW: Draft Email for Workforce Retention Planning

Karen,

After reviewing the draft employee email guidance (drafted by Stephanie D) in light of the November 5, 2025 OMB/OPM memorandum implementing Executive Order 14356, I want to clarify the intent and scope of this exercise and provide a revised email draft that is better aligned with the governing guidance. I do not believe that Stephanie Dobitsch properly followed instructions, nor did she appropriately capture the task. The original draft email she provided to us was misleading, and I believe this will better meet the request.

As outlined in the OMB/OPM memo, *"Continued Accountability requires that each agency develop and submit an Annual Staffing Plan, in coordination with OMB and OPM, to ensure that new career appointments are focused on critical mission areas, implement the President's policy priorities, and enhance service delivery."* The guidance contemplates workforce planning and evaluation, not predetermined reduction targets. The reference to a 50 percent figure in the earlier draft is not part of the OMB/OPM guidance and risks mischaracterizing the purpose of the exercise.

What we are doing is a workforce capacity planning effort necessary to comply with OMB requirements. To that end, FEMA leadership needs a clear, component-level understanding of the Agency's minimum operating capabilities and the positions essential to sustaining core mission delivery. This exercise supports that requirement by:

- Providing leadership with component-level assessments of essential positions
- Informing development of FEMA's Annual Staffing Plan
- Supporting required quarterly reporting to OMB and OPM
- Enabling leadership to exercise independent judgment consistent with the Strategic Hiring Committee framework

Consistent with OMB/OPM guidance, for our approach we will use a zero-based analytical approach, asking components to assess mission requirements as if starting from a baseline of need, rather than current staffing levels, in order to

Confidential - Subject to Protective Order          USA-AFGE-Exp.-0007334

identify which positions are essential to perform FEMA's statutory and operational functions. This approach supports informed leadership judgment and does not presuppose outcomes.

This effort is pre-decisional and does not constitute a staffing action, reduction in force, or directive regarding personnel actions.

Scope and limitations are intentionally narrow:
- Components are asked to recommend positions to retain based on mission essentiality and operational requirements
- No final staffing decisions have been made
- The exercise does not authorize or initiate separations, reassignments, or hiring actions
- Workforce mix considerations reflected in the planning tools are for internal analytical purposes only

Attached is a revised draft email for distribution to staff that aligns with OMB/OPM guidance and appropriately frames this as a planning exercise focused on mission needs, skills alignment, and organizational effectiveness.

I believe this version provides the appropriate clarity and top cover consistent with the guidance. Additionally, please let me know if I need to share this with Puneet.

Respectfully,

Victoria L. Barton
Associate Administrator
Office of External Affairs
victoria.barton@fema.dhs.gov

Federal Emergency Management Agency
FEMA.gov



From: Evans, Karen <karen.evans@fema.dhs.gov>
Sent: Monday, December 22, 2025 5:43 PM
To: Barton, Victoria <victoria.barton@fema.dhs.gov>
Cc: Voorhies, Kara <kara.voorhies@fema.dhs.gov>
Subject: FW: FOR REVIEW: Draft Email for Workforce Retention Planning

Hi Victoria
This is the email we discussed

Karen S. Evans
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

From: Bock, Micah <MICAH.BOCK@hq.dhs.gov>
Sent: Thursday, December 18, 2025 9:04 AM
To: Evans, Karen <karen.evans@fema.dhs.gov>; Barton, Victoria <victoria.barton@fema.dhs.gov>; McLaughlin, Tricia

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0007335

<Tricia.McLaughlin@hq.dhs.gov>
**Cc:** Wollenhaupt, Charles <charles.wollenhaupt@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Guy, Joseph <Joseph.Guy@hq.dhs.gov>
**Subject:** Re: FOR REVIEW: Draft Email for Workforce Retention Planning

Victoria, we'll need to work up a strong statement on why this is needed etc.

---

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Wednesday, December 17, 2025 9:51:55 PM
**To:** Bock, Micah <MICAH.BOCK@hq.dhs.gov>; Barton, Victoria <victoria.barton@fema.dhs.gov>; McLaughlin, Tricia <Tricia.McLaughlin@hq.dhs.gov>
**Cc:** Wollenhaupt, Charles <charles.wollenhaupt@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Guy, Joseph <Joseph.Guy@hq.dhs.gov>
**Subject:** RE: FOR REVIEW: Draft Email for Workforce Retention Planning

I am also adding Joe Guy and Kara Voorhis
I took off Stephanie

I want to highlight the 50% is what has been used "internally" there is no document/guidance regarding the 50%. That was in the leaked report. The number of 11,500 is also what we have provided to OPM/OMB at a high level but we haven't made that public.

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

---

**From:** Bock, Micah <MICAH.BOCK@hq.dhs.gov>
**Sent:** Wednesday, December 17, 2025 1:40 PM
**To:** Barton, Victoria <victoria.barton@fema.dhs.gov>; Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>; McLaughlin, Tricia <Tricia.McLaughlin@hq.dhs.gov>
**Cc:** Evans, Karen <karen.evans@fema.dhs.gov>; Wollenhaupt, Charles <charles.wollenhaupt@fema.dhs.gov>
**Subject:** Re: FOR REVIEW: Draft Email for Workforce Retention Planning

I like the updated draft too.

Adding Tricia to give visibility as this will obviously leak.
*Per our discussion, please use a bottom-up approach to identify positions you recommend retaining, rather than cutting, with the goal of maintaining approximately 11,500 total positions across the Agency. Of these positions, 60% are proposed to be filled by the disaster workforce (CORE and Reservist). Targets for each employee type and Mission Essential Task are provided in Tab 2 of the attached workforce planning excel sheet.*

*Instructions:*
- *Using the first tab, "Organizational Data for Review," filter by your component and note the total number of positions to retain (Column I) by organization and employee type. The cumulative target is 50% fewer than your Org Level Two (Level Three for Regions) filled positions as of the end of fiscal year 2025.*

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0007336

- *For reference, the second tab, "Pivot Tables for Reference," shows the September 30, 2025 workforce distribution, suggested targets, and filterable pivot tables based on responses.*
- *The third tab, "Employee Type for Reference," lists employee types by category.*

*The linked spreadsheet is available only to program heads and senior advisors. Please do not further disseminate this task or the accompanying document. Your review and update to Column I is requested by Wednesday, December 31, 2025. Password to follow.*

**From:** Barton, Victoria <victoria.barton@fema.dhs.gov>
**Sent:** Wednesday, December 17, 2025 1:19:20 PM
**To:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>; Bock, Micah <MICAH.BOCK@hq.dhs.gov>
**Cc:** Evans, Karen <karen.evans@fema.dhs.gov>; Wollenhaupt, Charles <charles.wollenhaupt@fema.dhs.gov>
**Subject:** RE: FOR REVIEW: Draft Email for Workforce Retention Planning

I think the updated draft is better. I think it has been publicly stated that that we want to reduce the FEMA footprint but my hesitation is it has been quiet since the FEMA review council meeting but also we do need to put out clear guidance.

I do wonder what other agencies are doing if they also got this request.

Either way I am good with this message and also if it leaks then I think it kind of is what it is.

Respectfully,

Victoria L. Barton
Associate Administrator
Office of External Affairs
victoria.barton@fema.dhs.gov

Federal Emergency Management Agency
FEMA.gov

 FEMA

**From:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Sent:** Wednesday, December 17, 2025 12:13 PM
**To:** Barton, Victoria <victoria.barton@fema.dhs.gov>; BOCK, MICAH <MICAH.BOCK@hq.dhs.gov>
**Cc:** Evans, Karen <karen.evans@fema.dhs.gov>; Wollenhaupt, Charles <charles.wollenhaupt@fema.dhs.gov>
**Subject:** RE: FOR REVIEW: Draft Email for Workforce Retention Planning

I require data from the program heads to determine the workforce population that will be selected to be reduced and then develop options for how we can reduce (i.e. RIF, WTP, Term Expiration, MDR, etc).I can do a meeting with program heads to convey framework and the assumptions, but I will still need to send the target numbers and directions. Here's a more limited draft message for consideration:

*Per our discussion, please use a bottom-up approach to identify positions you recommend retaining, rather than cutting, with the goal of maintaining approximately 11,500 total positions across the Agency. Of these positions, 60% are proposed to be filled by the disaster workforce (CORE and Reservist). Targets for each*

*employee type and Mission Essential Task are provided in Tab 2 of the attached workforce planning excel sheet.*

### Instructions:

- *Using the first tab, "Organizational Data for Review," filter by your component and note the total number of positions to retain (Column I) by organization and employee type. The cumulative target is 50% fewer than your Org Level Two (Level Three for Regions) filled positions as of the end of fiscal year 2025.*
- *For reference, the second tab, "Pivot Tables for Reference," shows the September 30, 2025 workforce distribution, suggested targets, and filterable pivot tables based on responses.*
- *The third tab, "Employee Type for Reference," lists employee types by category.*

*The linked spreadsheet is available only to program heads and senior advisors. Please do not further disseminate this task or the accompanying document. Your review and update to Column I is requested by Wednesday, December 31, 2025. Password to follow.*

Appreciate your feedback.

Thanks,
Stephanie

**From:** Barton, Victoria <victoria.barton@fema.dhs.gov>
**Sent:** Wednesday, December 17, 2025 11:02 AM
**To:** BOCK, MICAH <MICAH.BOCK@hq.dhs.gov>
**Cc:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>; Evans, Karen <karen.evans@fema.dhs.gov>; Wollenhaupt, Charles <charles.wollenhaupt@fema.dhs.gov>
**Subject:** RE: FOR REVIEW: Draft Email for Workforce Retention Planning

Defer to Stephanie

I don't know why we need an email on this. I think it helps with laying the task out but I don't think the email is necessarily a great idea based on what it is saying.

Respectfully,

Victoria L. Barton
Associate Administrator
Office of External Affairs
victoria.barton@fema.dhs.gov

Federal Emergency Management Agency
FEMA.gov



**From:** Bock, Micah <MICAH.BOCK@hq.dhs.gov>
**Sent:** Wednesday, December 17, 2025 10:58 AM
**To:** Barton, Victoria <victoria.barton@fema.dhs.gov>
**Cc:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>; Evans, Karen <karen.evans@fema.dhs.gov>;

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0007338

Wollenhaupt, Charles <charles.wollenhaupt@fema.dhs.gov>
**Subject:** Re: FOR REVIEW: Draft Email for Workforce Retention Planning

Oh good lord. I assume we have to send this?

---

**From:** Barton, Victoria <victoria.barton@fema.dhs.gov>
**Sent:** Tuesday, December 16, 2025 5:56:59 PM
**To:** Bock, Micah <MICAH.BOCK@hq.dhs.gov>
**Cc:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>; Evans, Karen <karen.evans@fema.dhs.gov>;
Wollenhaupt, Charles <charles.wollenhaupt@fema.dhs.gov>
**Subject:** FW: FOR REVIEW: Draft Email for Workforce Retention Planning

Micah –

Can you please review this document that FEMA wants to send out. I will note, if this does leak, it is aligned with the Administrations priorities on FEMA.

Respectfully,

Victoria L. Barton
Associate Administrator
Office of External Affairs
victoria.barton@fema.dhs.gov

Federal Emergency Management Agency
**FEMA.gov**



**From:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Sent:** Tuesday, December 16, 2025 5:49 PM
**To:** Barton, Victoria <victoria.barton@fema.dhs.gov>
**Cc:** Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; FEMA-OEA-Advisors <fema-oea-advisors@fema.dhs.gov>; Wollenhaupt, Charles <charles.wollenhaupt@fema.dhs.gov>; Evans, Karen <karen.evans@fema.dhs.gov>
**Subject:** RE: FOR REVIEW: Draft Email for Workforce Retention Planning

Hi Victoria,

Please see attached. For distribution, this will go to program heads (Associate and Deputy Associate Administrators, Regional Administrators, Deputy Regional Administrators) and senior advisors to program heads. The excel sheet will be locked and I added some language stating that this task should not be further distributed.

Please let me know if you need anything further.

Best,
Stephanie

Confidential - Subject to Protective Order          USA-AFGE-Exp.-0007339

**From:** Barton, Victoria <victoria.barton@fema.dhs.gov>
**Sent:** Tuesday, December 16, 2025 5:04 PM
**To:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Cc:** Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; FEMA-OEA-Advisors <fema-oea-advisors@fema.dhs.gov>; Wollenhaupt, Charles <charles.wollenhaupt@fema.dhs.gov>; Evans, Karen <karen.evans@fema.dhs.gov>
**Subject:** RE: FOR REVIEW: Draft Email for Workforce Retention Planning

Please send the clean version in a word document and I will get it to DHS OPA for review.

Respectfully,

Victoria L. Barton
Associate Administrator
Office of External Affairs
victoria.barton@fema.dhs.gov

Federal Emergency Management Agency
**FEMA.gov**



**From:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Sent:** Tuesday, December 16, 2025 11:58 AM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>; Barton, Victoria <victoria.barton@fema.dhs.gov>
**Cc:** Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Subject:** RE: FOR REVIEW: Draft Email for Workforce Retention Planning

Thanks, Karen. Victoria, please let me know if you need anything from me to push to OPA.

Best,
Stephanie

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Tuesday, December 16, 2025 11:29 AM
**To:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>; Barton, Victoria <victoria.barton@fema.dhs.gov>
**Cc:** Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Subject:** RE: FOR REVIEW: Draft Email for Workforce Retention Planning

Victoria
Before this goes out, I would like to get OPA review.
This email will leak to the press for sure and the Assumptions below, I want to make sure they are good to go.
Thoughts?

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0007340

**From:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Sent:** Tuesday, December 16, 2025 11:24 AM
**To:** Barton, Victoria <victoria.barton@fema.dhs.gov>; Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Subject:** RE: FOR REVIEW: Draft Email for Workforce Retention Planning

Good morning,

Checking in to see if you have any feedback and approve of pushing the below out to the leadership. I'd like to give them as much time as possible so that I can get you a plan by mid-January.

Thanks,
Stephanie

**From:** Dobitsch, Stephanie
**Sent:** Monday, December 15, 2025 5:20 PM
**To:** Barton, Victoria <victoria.barton@fema.dhs.gov>; Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Subject:** RE: FOR REVIEW: Draft Email for Workforce Retention Planning

Thanks for the quick review. Adjusted below.

**From:** Barton, Victoria <victoria.barton@fema.dhs.gov>
**Sent:** Monday, December 15, 2025 5:11 PM
**To:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>; Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Subject:** RE: FOR REVIEW: Draft Email for Workforce Retention Planning

I would take out all reference to the FEMA review council

Respectfully,

Victoria L. Barton
Associate Administrator
Office of External Affairs
victoria.barton@fema.dhs.gov

Federal Emergency Management Agency
**FEMA.gov**



**From:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Sent:** Monday, December 15, 2025 5:09 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Barton, Victoria <victoria.barton@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Subject:** FOR REVIEW: Draft Email for Workforce Retention Planning

Confidential – Subject to Protective Order                USA-AFGE-Exp.-0007341

Karen,

Per our discussion last week, I plan to send the below email to Associate Administrators and their deputies and senior advisors as soon as possible so they have the next week to provide feedback.

Welcome everyone's feedback and questions.

\*\*\*

Colleagues,

As part of the new requirement to provide quarterly updates to OPM on the Agency's staffing plan, I am requesting your inputs on personnel requirements for each program's minimum operating capabilities. The planning assumption for the Agency is a 50% reduction across functions and varied by employee type. FEMA's response and recovery missions will serve as the resource priority (~60% of total personnel), with potential shifts in those and other program resources occurring as part of broader organizational decisions.

For this task, we request you take a bottom-up approach to determine what you recommend is <u>kept</u>, rather than cut, with a goal of retaining approximately 11,500 total positions across the Agency. 60% of these potions are proposed to be filled by the disaster workforce (CORE and Reservist). Targets for each employee type and Mission Essential Task are provided in the TAB 2 of 🖼 DRAFT Workforce Plan - December 2025.xlsx.

- Using the first tab, *Organizational Data for Review*, please filter by your component and note the total number of positions to retain (Column I) by organization and employee type—with a cumulative target of 50% less your Org Level Two (Three for Regions) filled positions as of fiscal year 2025 end.
- For your reference, you can see the September 30, 2025 workforce distribution, suggested targets, and filterable pivot tables based on responses in the second tab, *Pivot Tables for Reference.*
- The third tab, *Employee Type for Reference,* provides the employee types by category for your reference.

Below are assumptions to consider when identifying which positions to retain:
- The Administration has provided clear direction on downsizing the Federal government by eliminating unnecessary positions, removing poor performers, and strategically hiring for only essential jobs
- Explicit direction on FEMA's future mission delivery is still being discussed and further direction may not be available before the requested delivery of the plan in mid-January.
- Based on discussions to date about FEMA's future:
  o There will likely be fewer declared disasters with shorter field durations;
  o There will likely be a smaller field presence when disasters are declared;
  o States and tribes will take on more operational responsibilities for non-catastrophic planning and incidents;
  o There will be an increased centralization of functions for improved efficiency and oversight

The linked spreadsheet is only available to program heads and senior advisors. Please plan to complete the review and updating of Column I by **Wednesday, December 31, 2025**. Password to follow.

Thank you in advance for your cooperation on this task and meeting leadership's intent.

Best,
Stephanie

**Stephanie Dobitsch**
Associate Administrator (A)

Office of Policy and Program Analysis
771-217-3484



Confidential – Subject to Protective Order    USA-AFGE-Exp.-0007343

| From: | Neurauter, Jeffrey [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=B8BEAAAC6B694CF1852839DEBE8C1292-NEURAUTER,] |
|---|---|
| Sent: | 1/5/2026 2:29:06 PM |
| To: | Sanchez, Blanca [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=60453facb7f24219b8S84785477c429d-7fc8c239-ad] |
| CC: | Applebee, Brian [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=673ae327e33d4c89b778c8aa62bc87d2-Applebee, B] |
| Subject: | RE: UPDATE: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call |
| Attachments: | Annual Staffing Plan Data Call Template 12-3-202S (1400hrs).xlsx; Annual Staffing Plan Data Call Template 12-3-202S (1400hrs) FY2S wReductions.xlsx; Annual Staffing Plan Data Call Template 12-3-202S (1400hrs) FY2S Steady State.xlsx; Copy of Copy of Annual Staffing Plan Data Call Template 12-2-2025 FEMA.xlsx |

Blanca –

Background

On November 21, 2025, DHS OCHCO instructed Components to submit Annual Staffing Plans utilizing a provided template no later than Wednesday, December 3, 2025. Following the instructions provided, FEMA OCHCO sent the data call template to program/regional offices to collect information showing hiring and reduction estimates; contractor usage and spend plan information; information about positions performing national security, immigration enforcement, or public safety duties; and hiring details for fiscal year (FY) 2026. Three versions of an Annual Staffing Plan were created and forwarded to the Office of the Administrator for consideration and approval. One included hiring and reduction estimates provided by offices and two excluded any hiring estimates. On December 4, 2025, SOPDA Evans forwarded FEMA's Annual Staffing Plan directly to DHS.

On December 18, 2025, DHS OCHCO instructed Components to submit a second quarter update to their previously submitted Annual Staffing Plans. Components were specifically instructed to utilize their previous submission and highlight changes/additions in yellow.

On December 23, 2025, FEMA OCHCO sent a Workforce Capacity Planning Exercise email to all program/region office heads. It asked leaders to identify the positions they recommend retaining as essential to sustain FEMA's core mission delivery and minimum operating capability.

On January 5, 2025, FEMA OCHCO received a copy the Annual Staffing Plan submitted to DHS on December 4. FEMA OCHCO had not previously received a copy of this submission.

Discussion

The Annual Staffing Plan created by FEMA OCHCO was based on OPM/OMB instructions to take a bottoms-up approach to determine the appropriate staffing levels needed to support Presidential priorities, mission-critical areas, and statutory obligations. It therefore included all hiring and reduction estimates gathered from program/regional offices broken down to division level or Organization Level 5. This plan showed a staffing level of 24,812 by the end of FY2026.

The Annual Staffing Plan submitted to DHS by the Office of the Administrator contained FEMA Leadership's staffing goals at Organization Level 2, showing a staffing level of 11,383 by the end of FY2026.

The data gathered through the Workforce Capacity Planning Exercise resulted in an end of FY2026 staffing level of 23,146.

Evans 19
EXHIBIT
DATE: 3|31|26
SUSAN ASHE

USA-AFGE-Exp.-0006535

Unfortunately, there is no way to utilize the data obtained through the Workforce Capacity Planning Exercise to update the Annual Staffing Plan in a way that meets the Office of the Administrator's intent and DHS's required level of detail.

Recommendation

I recommend we tell DHS OCHCO that FEMA has no update to its Annual Staffing Plan at this time. I further recommend that OCHCO be given permission to socialize SOPDA's staffing goals in order to allow program/regional offices to prepare a staffing plan with the level of detail required for the DHS Annual Staffing Plan template.


Jeff M. Neurauter
Director
Policy, Planning and Accountability Division
FEMA, OCHCO Office: (202) 646-3526 | Mobile: (202) 304-5395
JeffNeurauter@fema.dhs.gov

Federal Emergeney Management Agency
**fema.gov**


**From:** Idriss, Betelehem <BETELEHEM.IDRISS@hq.dhs.gov>
**Sent:** Tuesday, December 23, 2025 8:41 AM
**To:** HCLC-Principals <HCLC-Principals@hq.dhs.gov>; HCLC-Deputies <HCLC-Deputies@hq.dhs.gov>
**Cc:** MATHIS, REGINALD <REGINALD.MATHIS@hq.dhs.gov>; Le, Huy <huy.le@hq.dhs.gov>
**Subject:** UPDATE: ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

Good morning,


Please highlight changes/additions in yellow.



v/r,

**Bety Idriss**
Deputy Director, Human Capital Policy & Programs
Department of Homeland Security, Office of the Chief Human Capital Officer
Mobile: 771.200.0362

**From:** Idriss, Betelehem
**Sent:** Thursday, December 18, 2025 5:00 PM
**To:** HCLC-Principals <HCLC-Principals@hq.dhs.gov>; HCLC-Deputies <HCLC-Deputies@hq.dhs.gov>
**Cc:** Mathis, Reginald <REGINALD.MATHIS@hq.dhs.gov>; Le, Huy <HUY.LE@hq.dhs.gov>
**Subject:** ACTION DUE: January 6, 2026, 12 PM - Annual Staffing Plan 2nd Quarter Update Data Call

**MESSAGE ON BEHALF OF MISCHELL NAVARRO**
**EXECUTIVE DIRECTOR, HUMAN CAPITAL POLICY AND PROGRAMS**
**OFFICE OF THE CHIEF HUMAN CAPITAL OFFICER**

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0006536

As a follow-up to the initial staffing data call required by Executive Order 14356, *Ensuring Continued Accountability in Federal Hiring*, the Office of Personnel Management (OPM) requires a quarterly update to the staffing plan. The next update to OPM is due January 30.

To meet this deadline, Components should begin reviewing and refining their previously submitted staffing plans. This update is <u>not</u> a full resubmission, but an opportunity to make necessary adjustments and provide progress updates.

Please note, the initial consolidated staffing plan is under review and pending approval by the proposed Strategic Hiring Committee. Additional feedback and guidance may be provided once approved.

*Instructions for this quarterly update:*

•       Distribute your previously submitted spreadsheets to your lowest-level offices to complete the tabs highlighted in **green.**
•       Complete the tabs highlighted in **blue** at the consolidated component level.
•       Submit a consolidated response by **12 p.m., Tuesday, January 6**. Please note, this is a firm deadline to ensure approval through the SHC is completed before the OPM submission deadline.
•       Components on a fiscal year (FY) performance management cycle should now have data available for the sections related to FY2025 performance management.

Thank you for your continued support and timely attention to this requirement. For questions, please contact Huy Le at huy.le@hq.dhs.gov and I at betelehem.idriss@hq.dhs.gov with any questions.

Happy Holidays!


V/r,
Bety

---

**From:** Edwards, Roland <roland.edwards@HQ.DHS.GOV>
**Sent:** Friday, November 21, 2025 9:12 AM
**To:** HCLC-Principals <HCLC-Principals@hq.dhs.gov>; HCLC-Deputies <HCLC-Deputies@hq.dhs.gov>
**Cc:** DHSHQ-PAUL COURTNEY <paul.courtney@hq.dhs.gov>; Kessler, Matthew <MATTHEW.KESSLER@hq.dhs.gov>
**Subject:** Due by December 3 at 12PM: Annual Staffing Plan Data Call

As required per the Executive Order 14356, *Ensuring Continued Accountability in Federal Hiring* and related Fact Sheet: President Donald J. Trump Ensures Continued Accountability in Federal Hiring , the Department must submit an Annual Staffing Plan to OPM and OMB.

To facilitate this process, we have attached a standardized template that aligns with OPM/OMB reporting requirements. The template is designed to streamline data collection and reporting across components.

The staffing plan takes a bottoms-up approach to determine the appropriate staffing levels needed to support Presidential priorities, mission-critical areas, and statutory obligations. The OPM/OMB tasker also requires information related to contractors. Please share this as soon as possible with your Heads of Contracting so they can support completion of this tasker on time.

Instructions for completing this data call:

•       Components should distribute this template to their lowest-level offices to complete the tabs highlighted in **green.**
•       Components should answer the tabs highlighted in **blue** at the consolidated component level.
•       Components should submit a consolidated response **no later than 12 p.m., Wednesday, December 3**.

I understand this is a tight deadline, but your support is critical to ensuring DHS can fully comply with the Executive Order. We will hold an office hours session on Monday, November 24, to address any questions you may have regarding this data call.

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0006537

You may also contact Huy Le at huy.le@hq.dhs.gov and Bety Idriss at betelehem.idriss@hq.dhs.gov directly with any questions.

Thank you for your assistance!

-Roland

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0006538

**From:**       Dobitsch, Stephanie [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
                (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=330D2D04E3FD4974AB1D8BD4177BF2C7-333D7208-AF]
**Sent:**       12/5/2025 3:32:24 PM
**To:**         Evans, Karen [/o=ExchangeLabs/ou=Exchange Administrative Group
                (FYDIBOHF23SPDLT)/cn=Recipients/cn=85bf5c69b59b407dbe7a70b634015dc0-771d1d66-f8]
**CC:**         Bilicic, William [/o=ExchangeLabs/ou=Exchange Administrative Group
                (FYDIBOHF23SPDLT)/cn=Recipients/cn=0a8d35e355c24ff98d728931441d89d6-17597001-19]; Voorhies, Kara
                [/o=ExchangeLabs/ou=Exchange Administrative Group
                (FYDIBOHF23SPDLT)/cn=Recipients/cn=59e892831314435587de3f96b6d521fc-71690143-b5]; Prieur, La'Toya
                [/o=ExchangeLabs/ou=Exchange Administrative Group
                (FYDIBOHF23SPDLT)/cn=Recipients/cn=d47853c52fb04e47aa9d0194ae59bbb5-0d4e1677-d6]; Sjoberg Radway,
                Cynthia [/o=ExchangeLabs/ou=Exchange Administrative Group
                (FYDIBOHF23SPDLT)/cn=Recipients/cn=4717a18ecdf84fff921b4be4ca780428-21a74d8c-31]; James, Greg
                [/o=ExchangeLabs/ou=Exchange Administrative Group
                (FYDIBOHF23SPDLT)/cn=Recipients/cn=0572e344401e4985afda5367d61d53e7-James, Haro]; Layou, Thomas
                [/o=ExchangeLabs/ou=Exchange Administrative Group
                (FYDIBOHF23SPDLT)/cn=Recipients/cn=5e1465ebf2b34916965998df3363a822-6a35370b-ed]
**Subject:**    RE: Response to Questions on Term Employment Extension Memo
**Attachments:** Copy of CORE Expirations (January 2026).xlsx

Hi Karen,

Please see attached. The question on assignments to disasters is complicated and probably falls more in OCFO's lane so adding them here.

The agency has several types of COREs, and all CORE types are directly supporting an open and active disaster, or readiness for the overall disaster mission. The active disaster support is charged the DRF while readiness could be DRF or DRS based on the specific type of work. Some COREs are hired to support a single open disaster or disasters in a single state, for example, those that work in a long-term recovery office like those in Florida or Texas. Others support many open disasters, like the call center staff who take calls directly from survivors, and whose time is charged to those disasters based on an algorithm derived from call data. We also have COREs that work as part of a distributed group, such as those in External Affairs, where the percentage of COREs in an office is determined by the percent of that office's work that is directly supporting the disaster mission. Lastly, we have readiness COREs, whose salaries are funded by the DRS base and support the readiness efforts for the disaster mission overall, ensuring FEMA is prepared to execute. Examples of these include staff in FOD that support our ability to deploy the workforce.

We're planning several meetings next week to dig into this as part of the plan you and I discussed for CORE rightsizing.

Please let me know if you have any questions or require further information to process this request.

Thanks,
Stephanie

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 6:24 AM



Confidential - Subject to Protective Order

USA-AFGE-Exp.-0006686

**To:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** Re: Response to Questions on Term Employment Extension Memo

And also include what disaster they are assigned
Thanks

**From:** Evans, Karen
**Sent:** Thursday, December 4, 2025 10:59:41 PM
**To:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: Response to Questions on Term Employment Extension Memo

I would like the list of the break out of the 312 term employees.
Not their names just numbers, position type, organization location.

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

**From:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Sent:** Thursday, December 4, 2025 4:49 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** Response to Questions on Term Employment Extension Memo

Hi Karen,

Will relayed a few questions you had on the term extension memo that is with you for approval to push to the Secretary. To clarify, our authority to extend term employments ends on December 31st. If we do not receive the Secretary's approval before December 31st, 312 term employees will be offboard beginning on January 1 and through the remainder of the month. There are total of 932 term employees whose terms will expire before March 31st.

We updated the memos to clarify that this request is for both the authority and then your decision to action immediately. Per our discussion this afternoon, I will ensure you have visibility on term extensions at least two weeks prior to the terms expiring moving forward. This notification will include a list of employees, their positions and organizations, the approving associate administrator for the extension, confirmation of satisfactory performance review, and term dates.

Please let me know if you need further details to process this request.

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0006687

Thank you,
Stephanie

**Stephanie Dobitsch**
Associate Administrator (A)
Office of Policy and Program Analysis
771-217-3484



USA-AFGE-Exp.-0006688



U.S. Department of Homeland Security
Washington, DC 20472

**FEMA**

May 14, 2025

**DECISION**

**MEMORANDUM FOR:**  Kristi Noem
Secretary of the Department of Homeland Security

**FROM:**  David E. Richardson
FEMA Senior Official Performing the Duties of Administrator

**SUBJECT:**  **Reinstating FEMA's Ability to Renew Term Employees Based on Mission Requirements**

**Purpose:** FEMA requests your approval to use an internal process to renew term-limited appointments for Cadre of On-call Response/Recovery Employees (COREs) across job series deemed necessary to maintain the Agency's operational readiness for the 2025 hurricane season.

**Background:** FEMA has 2,652 term employees who are not currently in excepted job series and whose terms will expire before the end of CY2025. Most FEMA term employees support active disaster operations and are funded out of the Disaster Relief Fund. FEMA's term-limited appointments consist of existing agency employees and are not new hire employees. If terms are allowed to expire, it may impact FEMA's ability to conduct its mission during the 2025 hurricane season. See Annex A for additional background. This memo rescinds the memo dated May 12, 2025 on the same topic.

**Signature Level Justification:** Allows FEMA to review, based on mission requirements, and appropriately renew term-limited appointments for 2,652 COREs whose term expires between April - December 2025. Appointments will be renewed for a period of 180-days, with a review at the 90-day mark; no automatic renewals will be allowed.

**Timeliness:** Hurricane season is approaching; a prompt decision would be greatly appreciated.



Evans 71
**EXHIBIT**
DATE: 3\3\\26
**SUSAN ASHE**

**Subject:** Reinstating FEMA's Ability to Renew Term Employees Based on Mission
Requirements
Page 2

**Recommendation:** FEMA recommends approving the internal process for renewing select existing
employees with term limited appointments for disaster-related employees as required across select
job series.


Approve/date _~~~~~~~~~~~~~~_ Disapprove/date _____

MAY 1 9 2025


Modify/date _____   ____        _____ Needs discussion/date_____

Confidential - Subject to Protective Order              USA-AFGE-Exp.-0000406

| From: | Kandpal, Nikita [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=7F47C5A7EFB04DD883EBA31E2C06D434-KANDPAL, NI] |
| Sent: | 12/5/2025 1:02:29 PM |
| To: | FEMAExecSec [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=77a0a037c6a7454b8ddcb6632966a88a-FEMAExecSec] |
| CC: | Bilicic, William [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=0a8d35e355c24ff98d728931441d89d6-17597001-19]; Icardi, Michael |
| | [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=8ee6a25151634eb4977326bd7bee406f-ICARDI, MIC]; Cameron, Michelle |
| | [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=4acf0a846ccd4a73a10dc271355cb540-be68982b-2c]; Smith, Kimberly |
| | [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=64e2d76a6da94c78aa7288c2da229324-Leslie, Kim]; Cope-Tilford, Lily |
| | [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=1b11e655c1db4cf2b7a982c11c91260c-Cope-tilfor] |
| Subject: | RE: OA EDITS/COMMENTS: CORE Renewal Memo -CG-2025-35107 |
| Attachments: | FEMA CORE Renewal_S1 Decision Memo_Dec 5 2025_tracked.docx; FEMA CORE Renewal_S1 Decision Memo_Dec 5 2025_final.docx |

Good Afternoon, ExecSec.

Thank you for the feedback and the edits.

I have accepted the track changes in the file and addressed the one comment. You now have the attached "tracked" and "final" versions. Please advise if you require any other information and noted that going forward, AF1 action memos may not be required for S1 decision memos.
Cheers,

Nikita

---

**From:** FEMAExecSec <FEMAExecSec@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 12:31 PM
**To:** Kandpal, Nikita <nikita.kandpal@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Icardi, Michael <michael.icardi@fema.dhs.gov>; Cameron, Michelle <michelle.cameron@fema.dhs.gov>; Smith, Kimberly <Kimberly.C.Smith@fema.dhs.gov>; Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>; FEMAExecSec <FEMAExecSec@fema.dhs.gov>
**Subject:** OA EDITS/COMMENTS: CORE Renewal Memo -CG-2025-35107

Hello Nikita

See attached edits/comments from the Front Office.

For future reference, it is not necessary to submit an AF1 action memo with the S1 memos.

**Kimberly C. Smith**

Program Specialist | Office of the Executive Secretariat | Office of the Administrator
Office: 202.212.3821 Cell: 240.280.4976



Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0004575

Federal Emergency Management Agency
**fema.gov**



EXEC SEC SP PAGE | EXEC SEC DIRECTIVE | EXEC SEC INSTRUCTION MANUAL | DOCUMENT
CLEARANCE MATRIX |
To request F1/F2 attendance at meetings/events, please complete the **online scheduling request form.** For F1 templates,
please visit: Templates (sharepoint.com)


**From:** FEMAExecSec <FEMAExecSec@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 8:28 AM
**To:** Kandpal, Nikita <nikita.kandpal@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Icardi, Michael <michael.icardi@fema.dhs.gov>; Cameron, Michelle <michelle.cameron@fema.dhs.gov>; Smith, Kimberly <Kimberly.C.Smith@fema.dhs.gov>; Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>; FEMAExecSec <FEMAExecSec@fema.dhs.gov>
**Subject:** RE: CORE Renewal Memo -CG-2025-35107

Acknowledging receipt.



**Kimberly C. Smith**

Program Specialist | Office of the Executive Secretariat | Office of the Administrator
Office: 202.212.3821 Cell: 240.280.4976


Federal Emergency Management Agency
**fema.gov**



EXEC SEC SP PAGE | EXEC SEC DIRECTIVE | EXEC SEC INSTRUCTION MANUAL | DOCUMENT
CLEARANCE MATRIX |
To request F1/F2 attendance at meetings/events, please complete the **online scheduling request form.** For F1 templates,
please visit: Templates (sharepoint.com)


**From:** Kandpal, Nikita <nikita.kandpal@fema.dhs.gov>
**Sent:** Thursday, December 4, 2025 5:30 PM
**To:** FEMAExecSec <FEMAExecSec@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Icardi, Michael <michael.icardi@fema.dhs.gov>; Cameron, Michelle <michelle.cameron@fema.dhs.gov>; Smith, Kimberly <Kimberly.C.Smith@fema.dhs.gov>; Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>
**Subject:** RE: CORE Renewal Memo

Good Evening,

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0004576

Based on feedback from SOPDA Evans provided to acting MS Associate Administrator Dobitsch today, we have updated the subject memos for signature. I've pasted the concurrences and background below as a reminder. Please let me know if you have any questions; my understanding is that Ms. Evans is expecting the updated version of the memos.

Attached are the two memos requesting the authority to extend full-time disaster employees on 180-day increments through March 2026. It includes a FEMA Administrator decision memo and a S1 decision memo requesting the authority.

The memos have been cleared by the following:
- Mission Support - La 'Toya Prieur, Tami Franklin, Stephanie Dobitsch
- OPPA - Stephanie Dobitsch
- OCC - Kevin Yusman
- External Affairs - Breese Eddy, Victoria Barton

Thank you!

NK

**Nikita Kandpal**
Chief of Staff | Mission Support
Office/Mobile: (202) 655-9794
nikita.kandpal@fema.dhs.gov

Federal Emergency Management Agency
**fema.gov**

---

**From:** FEMAExecSec <FEMAExecSec@fema.dhs.gov>
**Sent:** Wednesday, November 26, 2025 8:33 AM
**To:** Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Kandpal, Nikita <nikita.kandpal@fema.dhs.gov>; Thomas, Claire <claire.thomas@fema.dhs.gov>; Icardi, Michael <michael.icardi@fema.dhs.gov>; Cameron, Michelle <michelle.cameron@fema.dhs.gov>; FEMAExecSec <FEMAExecSec@fema.dhs.gov>; Smith, Kimberly <Kimberly.C.Smith@fema.dhs.gov>
**Subject:** RE: CORE Renewal Memo

Confirming receipt

**Kimberly C. Smith**

Program Specialist | Office of the Executive Secretariat | Office of the Administrator
Office: 202.212.3821 Cell: 240.280.4976

Federal Emergency Management Agency
**fema.gov**

 **FEMA**

EXEC SEC SP PAGE | EXEC SEC DIRECTIVE | EXEC SEC INSTRUCTION MANUAL | DOCUMENT CLEARANCE MATRIX |
To request F1/F2 attendance at meetings/events, please complete the online scheduling request form. For F1 templates, please visit: Templates (sharepoint.com)

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0004577

**From:** Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>
**Sent:** Tuesday, November 25, 2025 4:53 PM
**To:** FEMAExecSec <FEMAExecSec@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Kandpal, Nikita <nikita.kandpal@fema.dhs.gov>; Thomas, Claire <claire.thomas@fema.dhs.gov>; Icardi, Michael <michael.icardi@fema.dhs.gov>
**Subject:** CORE Renewal Memo

Good afternoon,

Please find attached and linked the below two draft memos requesting the authority to extend full-time disaster employees on 180-day increments through March 2026. This includes a SOPDO Administrator decision memo and a S1 decision memo requesting this authority.

This has been cleared by the following:
Mission Support: La 'Toya Prier, Tami Franklin, Stephanie Dobitsch
OPPA: Stephanie Dobitsch
OCC: Kevin Yusman
External Affairs: Breese Eddy, Victoria Barton

📑FEMA CORE Renewal S1 Decision Memo Nov 25 2025.docx
📑AF1 Action Memo- CORE Memo 11.21.docx

**Lily Cope-Tilford**
Senior Advisor | Mission Support
Office/Mobile: 202-714-8546
Lily.Cope-Tilford@FEMA.DHS.GOV

Federal Emergency Management Agency
**fema.gov**

 FEMA

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0004578

PRE-DECISIONAL/DELIBERATIVE

U.S. Department of Homeland Security
Washington, DC 20472



**FEMA**

[ DATE \@ "MMMM d, yyyy" ]

MEMORADUM FOR THE SECRETARY

FROM:       Karen S. Evans
            Senior Official Performing the Duties of the Administrator

SUBJECT:    **Approval to Renew Term-Limited Appointments for Disaster Mission
            Requirements**

**Purpose:** To seek your approval to renew term-limited appointments for the Federal Emergency Management Agency's (FEMA's) full-time disaster staff who serve in non-mission critical job series deemed necessary to maintain the Agency's operational readiness.

**Background:** Since 2006, FEMA has issued term appointments ranging from two to four years in length for the Agency's full-time disaster staff. In May 2025, DHS instructed FEMA to limit renewals of employees in non-mission critical occupations to 180-day appointments. FEMA has 932 term employees who are not currently in expired mission critical job series and whose term will expire before March 31, 2026. Most FEMA term employees support active disaster operations and are funded through the Disaster Relief Fund. FEMA's term-limited appointments consist of existing Agency employees and are not new hires. Allowing terms to expire and releasing staff solely based on appointment expiration, rather than performance or strategic considerations such as areas of reduction, will hinder FEMA's ability to efficiently and effectively fulfill its mission.

**Signature Level Justification:** You previously approved the extension of these term appointments in May 2025.

**Timeliness:** FEMA's current authority to renew term appointments for non-mission critical occupations expires on December 31, 2025.

**Commented [AC2]:** MS: This refers to job series the S1 has exempted from the hiring verification process, correct? If so, recommend clarifying. As written, it might be confusing and interpreted as a reference to employees in the excepted service, which is not a relevant factor here based on what I can tell.

**Commented [NK3R2]:** Thank you for the comment. Have updated the memo to remain consistent that these are term employees in non-MCO occupations/job series.

Confidential - Subject to Protective Order          USA-AFGE-Exp.-0004579

**Approval to Renew Term-Limited Appointments for Disaster Mission Requirements**
**Page 2**

**Recommendation:** Approve FEMA to renew select existing employees with term-limited appointments for disaster-related support as required across non-mission critical job series through March 31, 2026. Appointments will be renewed for a period of 180-days, with a review at the 90-day mark; no automatic renewals will be allowed.

Approve/date_____    Disapprove/date_____

Modify/date_____    Needs discussion/date_____

Confidential - Subject to Protective Order    USA-AFGE-Exp.-0004580

PRE-DECISIONAL/DELIBERATIVE

U.S. Department of Homeland Security
Washington, DC 20472

 FEMA

[ DATE \@ "MMMM d, yyyy" ]

MEMORADUM FOR THE SECRETARY

FROM:        Karen S. Evans

Senior Official Performing the Duties of the Administrator

SUBJECT:     **Approval to Renew Term-Limited Appointments for Disaster Mission
Requirements**

**Purpose:** To seek your approval to renew term-limited appointments for the Federal Emergency
Management Agency's (FEMA's) full-time disaster staff who serve in non-mission critical job series
deemed necessary to maintain the Agency's operational readiness.

**Background:** Since 2006, FEMA has issued term appointments ranging from two to four years
in length for the Agency's full-time disaster staff. In May 2025, DHS instructed FEMA to limit
renewals of employees in non-mission critical occupations to 180-day appointments. FEMA has
932 term employees who are not in mission critical job series and whose term will expire before
March 31, 2026. Most FEMA term employees support active disaster operations and are funded
through the Disaster Relief Fund. FEMA's term-limited appointments consist of existing Agency
employees and are not new hires. Allowing terms to expire and releasing staff solely based on
appointment expiration, rather than performance or strategic considerations such as areas of
reduction, will hinder FEMA's ability to efficiently and effectively fulfill its mission.

**Signature Level Justification:** You previously approved the extension of these term
appointments in May 2025.

**Timeliness:** FEMA's current authority to renew term appointments for non-mission critical
occupations expires on December 31, 2025.

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0004581

**Approval to Renew Term-Limited Appointments for Disaster Mission Requirements**
**Page 2**

**Recommendation:** Approve FEMA to renew select existing employees with term-limited appointments for disaster-related support as required across non-mission critical job series through March 31, 2026. Appointments will be renewed for a period of 180-days, with a review at the 90-day mark; no automatic renewals will be allowed.

Approve/date_____    Disapprove/date_____

Modify/date _____    Needs discussion/date_____

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0004582

| | |
|---|---|
| **From:** | Clayton, Andrew [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=91AB663FD6S3453195BD72D3EBF9A7AB-DC3B7313-6B] |
| **Sent:** | 12/S/202S 2:11:34 PM |
| **To:** | FEMAExecSec [/o=ExchangeLabs/ou=Exchange AdministrativeGroup |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=77a0a037c6a74S4b8ddcb6632966a88a-FEMAExecSec]; Bilicic, William |
| | [/o=ExchangeLabs/ou=Exchange AdministrativeGroup |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=0a8d3Se3SSc24ff98d728931441d89d6-17S97001-19]; Berger, Regan |
| | [/o=ExchangeLabs/ou=Exchange AdministrativeGroup |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=8c820d3c7e914ccba472dd794c81efc3-92f938e1-2f]; Hoag, Zachariah |
| | [/o=ExchangeLabs/ou=Exchange AdministrativeGroup |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=b7SeS1c4892449feb77a1ef0c9da9Sfc-ea971d8b-20]; Khan, Puneet |
| | [/o=ExchangeLabs/ou=Exchange AdministrativeGroup |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=1c2ce09ea8f34f429cb4S9624ed77b8c-002c703b-83] |
| **CC:** | Smith, Kimberly [/o=ExchangeLabs/ou=Exchange AdministrativeGroup |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=64e2d76a6da94c78aa7288c2da229324-Leslie, Kim]; Cameron, Michelle |
| | [/o=ExchangeLabs/ou=Exchange AdministrativeGroup |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=4acf0a846ccd4a73a10dc2713SScbS40-be68982b-2c]; Cook, Jaime |
| | [/o=ExchangeLabs/ou=Exchange AdministrativeGroup |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=22Sd03c2cf494392ae3fd197a2cb41bS-Cook, Jaime] |
| **Subject:** | RE: ADJUDICATED: [FOR SOPDA REVIEW AND SIGNATURE] CORE Renewal Memo -CG-2025-3S107-P3 |

Thank you – clear for me. Please allow Kara opportunity to review before packaging for signature.

V/r,

**Andrew D. Clayton**
Deputy Chief of Staff (Policy)
Federal Emergency Management Agency
U.S. Department of Homeland Security
M: (202) 215-5447

**From:** FEMAExecSec<FEMAExecSec@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 2:07 PM
**To:** Clayton, Andrew <andrew.clayton@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Berger, Regan <Regan.Berger@fema.dhs.gov>; Hoag, Zachariah <zachariah.hoag@fema.dhs.gov>; Khan, Puneet <puneet.khan@fema.dhs.gov>
**Cc:** Smith, Kimberly <Kimberly.C.Smith@fema.dhs.gov>; Cameron, Michelle <michelle.cameron@fema.dhs.gov>; FEMAExecSec<FEMAExecSec@fema.dhs.gov>; Cook, Jaime<Jaime.Cook@fema.dhs.gov>
**Subject:** ADJUDICATED: [FOR SOPDA REVIEW AND SIGNATURE] CORE Renewal Memo -CG-2025-35107- P3

MS has accepted the track changes in the file and addressed your comment. You now have the attached "tracked" and "final" versions accessible via the link below.

☐CORE Renewal Memo

Kimberly C. Smith

Program Specialist | Office of the Executive Secretariat | Office of the Administrator
Office: 202.212.3821 Cell: 240.280.4976



Confidential - Subject to Protective Order

USA-AFGE-Exp.-0010683

Federal Emergency Management Agency
fema.gov

 FEMA

EXEC SEC SP PAGE | EXEC SEC DIRECTIVE | EXEC SEC INSTRUCTION MANUAL | DOCUMENT
CLEARANCE MATRIX |
To request F1/F2 attendance at meetings/events, please complete the online scheduling request form. For F1 templates,
please visit: Templates (sharepoint.com)

**From:** FEMAExecSec <FEMAExecSec@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 12:40 PM
**To:** Clayton, Andrew <andrew.clayton@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Berger, Regan
<Regan.Berger@fema.dhs.gov>; Hoag, Zachariah <zachariah.hoag@fema.dhs.gov>; Khan, Puneet
<puneet.khan@fema.dhs.gov>
**Cc:** Smith, Kimberly <Kimberly.C.Smith@fema.dhs.gov>; Cameron, Michelle <michelle.cameron@fema.dhs.gov>;
FEMAExecSec <FEMAExecSec@fema.dhs.gov>
**Subject:** RE: UPDATES- [FOR SOPDA REVIEW AND SIGNATURE] CORE Renewal Memo -CG-2025-35107- P3

Thank you, Sir. Your comment was sent to the program office for adjudication.

No, submitting an action memo to Ms. Evans for her signature is unnecessary. I will remind the program offices not to
include one in their submissions.

**Kimberly C. Smith**

Program Specialist | Office of the Executive Secretariat | Office of the Administrator
Office: 202.212.3821 Cell: 240.280.4976

Federal Emergency Management Agency
fema.gov

 FEMA

EXEC SEC SP PAGE | EXEC SEC DIRECTIVE | EXEC SEC INSTRUCTION MANUAL | DOCUMENT
CLEARANCE MATRIX |
To request F1/F2 attendance at meetings/events, please complete the online scheduling request form. For F1 templates,
please visit: Templates (sharepoint.com)

**From:** Clayton, Andrew <andrew.clayton@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 9:08 AM
**To:** FEMAExecSec <FEMAExecSec@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Berger, Regan
<Regan.Berger@fema.dhs.gov>; Hoag, Zachariah <zachariah.hoag@fema.dhs.gov>; Khan, Puneet
<puneet.khan@fema.dhs.gov>

**Cc:** Smith, Kimberly <Kimberly.C.Smith@fema.dhs.gov>; Cameron, Michelle <michelle.cameron@fema.dhs.gov>
**Subject:** RE: UPDATES- [FOR SOPDA REVIEW AND SIGNATURE] CORE Renewal Memo -CG-2025-35107- P3

I made minor edits and two comments in the FEMA-to-S1 memo; one comment is for ExecSec, the other for Mission Support. I'd like to re-clear once comments are adjudicated.

General question: Do we need a memo from the Principal to Ms. Evans requesting her signature? In other words, are we asking Ms. Evans to sign that she agrees with Principal's memo and also sign one out to the Secretary? Just trying to understand protocol.

V/r,

**Andrew D. Clayton**
Deputy Chief of Staff (Policy)
Federal Emergency Management Agency
U.S. Department of Homeland Security
M: (202) 215-5447

---

**From:** FEMAExecSec<FEMAExecSec@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 8:48 AM
**To:** Bilicic, William <william.bilicic@fema.dhs.gov>; Berger, Regan <Regan.Berger@fema.dhs.gov>; Hoag, Zachariah <zachariah.hoag@fema.dhs.gov>; Clayton, Andrew <andrew.clayton@fema.dhs.gov>; Khan, Puneet <puneet.khan@fema.dhs.gov>
**Cc:** Smith, Kimberly <Kimberly.C.Smith@fema.dhs.gov>; Cameron, Michelle <michelle.cameron@fema.dhs.gov>; FEMAExecSec<FEMAExecSec@fema.dhs.gov>
**Subject:** UPDATES- [FOR SOPDA REVIEW AND SIGNATURE] CORE Renewal Memo -CG-2025-35107- P3

Good morning

Nikita Kandpal forwarded the attached updated memos for signature based on the feedback from SOPDA Evans to acting MS Associate Administrator Dobitsch yesterday,
☐ CORE Renewal Memo

The concurrences and background are listed below as a reminder.

Attached are the two memos requesting the authority to extend full-time disaster employees on 180-day increments through March 2026. It includes a FEMA Administrator decision memo and a S1 decision memo requesting the authority.

The memos have been cleared by the following:
- Mission Support - La 'Toya Prieur, Tami Franklin, Stephanie Dobitsch
- OPPA - Stephanie Dobitsch
- OCC - Kevin Yusman
- External Affairs - Breese Eddy, Victoria Barton

**Kimberly C. Smith**

Program Specialist | Office of the Executive Secretariat | Office of the Administrator
Office: 202.212.3821 Cell: 240.280.4976

Confidential - Subject to Protective Order    USA-AFGE-Exp.-0010685

Federal Emergency Management Agency
fema.gov

 FEMA

EXEC SEC SP PAGE | EXEC SEC DIRECTIVE | EXEC SEC INSTRUCTION MANUAL | DOCUMENT
CLEARANCE MATRIX |
To request F1/F2 attendance at meetings/events, please complete the online scheduling request form. For F1 templates,
please visit: Templates (sharepoint.com)


**From:** Bilicic, William <william.bilicic@fema.dhs.gov>
**Sent:** Tuesday, December 2, 2025 9:17 AM
**To:** FEMAExecSec <FEMAExecSec@fema.dhs.gov>; Berger, Regan <Regan.Berger@fema.dhs.gov>; Hoag, Zachariah <zachariah.hoag@fema.dhs.gov>
**Cc:** Smith, Kimberly <Kimberly.C.Smith@fema.dhs.gov>; Cameron, Michelle <michelle.cameron@fema.dhs.gov>
**Subject:** RE: [FOR SOPDA REVIEW AND SIGNATURE] CORE Renewal Memo -P3

Thanks, Michelle—this is printed for AF1 Evans.

Sincerely,
Will

Will Bilicic
Special Advisor to the Administrator
Federal Emergency Management Agency
U.S. Department of Homeland Security
Mobile: (202) 706-3095


**From:** FEMAExecSec <FEMAExecSec@fema.dhs.gov>
**Sent:** Tuesday, December 2, 2025 8:45 AM
**To:** Bilicic, William <william.bilicic@fema.dhs.gov>; Berger, Regan <Regan.Berger@fema.dhs.gov>; Hoag, Zachariah <zachariah.hoag@fema.dhs.gov>
**Cc:** Smith, Kimberly <Kimberly.C.Smith@fema.dhs.gov>; Cameron, Michelle <michelle.cameron@fema.dhs.gov>
**Subject:** RE: [FOR SOPDA REVIEW AND SIGNATURE] CORE Renewal Memo -P3

Good morning, All

Bringing this to the top of your inbox as we have some CORE appointments expiring this week.

Thanks
Michelle


*Michelle Cameron*
(A)Director
Office of Policy and Program Analysis | Audit Liaison Office
Office of the Administrator | Office of the Executive Secretariat
Mobile: 202-716-2311


Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0010686

michelle.cameron@fema.dhs.gov

Federal Emergency Management Agency
FEMA.gov



---

**From:** FEMAExecSec
**Sent:** Wednesday, November 26, 2025 8:41 AM
**To:** Bilicic, William <william.bilicic@fema.dhs.gov>; Berger, Regan <Regan.Berger@fema.dhs.gov>; Hoag, Zachariah <zachariah.hoag@fema.dhs.gov>
**Cc:** FEMAExecSec <FEMAExecSec@fema.dhs.gov>; Smith, Kimberly <Kimberly.C.Smith@fema.dhs.gov>; Cameron, Michelle <michelle.cameron@fema.dhs.gov>
**Subject:** [FOR SOPDA REVIEW AND SIGNATURE] CORE Renewal Memo -P3

FOR YOUR REVIEW:

Please find attached and linked the below two draft memos requesting the authority to extend full-time disaster employees on 180-day increments through March 2026. This includes a SOPDO Administrator decision memo and a S1 decision memo requesting this authority.

This has been cleared by the following:

**Mission Support:** La 'Toya Prier, Tami Franklin, Stephanie Dobitsch
**OPPA:** Stephanie Dobitsch
**OCC:** Kevin Yusman
**External Affairs:** Breese Eddy, Victoria Barton

Attachments
☐CORE Renewal Memo

**Kimberly C. Smith**

Program Specialist | Office of the Executive Secretariat | Office of the Administrator
Office: 202.212.3821 Cell: 240.280.4976

Federal Emergency Management Agency
**fema.gov**



EXEC SEC SP PAGE | EXEC SEC DIRECTIVE | EXEC SEC INSTRUCTION MANUAL | DOCUMENT
CLEARANCE MATRIX |
To request F1/F2 attendance at meetings/events, please complete the online scheduling request form. For F1 templates, please visit: Templates (sharepoint.com)

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0010687

**From:** Cope-Tilford, Lily <lily.cope-tilford@fema.dhs.gov>
**Sent:** Tuesday, November 25, 2025 4:53 PM
**To:** FEMAExecSec <FEMAExecSec@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Kandpal, Nikita <nikita.kandpal@fema.dhs.gov>; Thomas, Claire <claire.thomas@fema.dhs.gov>; Icardi, Michael <michael.icardi@fema.dhs.gov>
**Subject:** CORE Renewal Memo

Good afternoon,

Please find attached and linked the below two draft memos requesting the authority to extend full-time disaster employees on 180-day increments through March 2026. This includes a SOPDO Administrator decision memo and a S1 decision memo requesting this authority.

This has been cleared by the following:
Mission Support: La 'Toya Prier, Tami Franklin, Stephanie Dobitsch
OPPA: Stephanie Dobitsch
OCC: Kevin Yusman
External Affairs: Breese Eddy, Victoria Barton

📄 FEMA CORE Renewal S1 Decision Memo Nov 25 2025.docx
📄 AF1 Action Memo- CORE Memo 11.21.docx

**Lily Cope-Tilford**
Senior Advisor | Mission Support
Office/Mobile: 202-714-8546
Lily.Cope-Tilford@FEMA.DHS.GOV

Federal Emergency Management Agency
**fema.gov**



Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0010688

| | |
|---|---|
| **From:** | Dobitsch, Stephanie [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=330D2D04E3FD4974AB1D8BD4177BF2C7-333D7208-AF] |
| **Sent:** | 12/18/2025 11:23:25 AM |
| **To:** | Khan, Puneet [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=1c2ce09ea8f34f429cb459624ed77b8c-002c703b-83] |
| **CC:** | Clayton, Andrew [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=91ab663fd653453195bd72d3ebf9a7ab-dc3b7313-6b]; Bilicic, William [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=0a8d35e355c24ff98d728931441d89d6-17597001-19] |
| **Subject:** | FW: Follow Up on Items |

Puneet,

I'll be sending you a few emails on Mission Support work I've been handling directly with Karen. The delegations work stays with OPPA but everything can likely be worked directly with La'Toya. Happy to chat through any of these.

Best,
Stephanie

**From:** Dobitsch, Stephanie
**Sent:** Friday, December 12, 2025 10:28 AM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Clayton, Andrew <andrew.clayton@fema.dhs.gov>
**Subject:** RE: Follow Up on Items

Good morning, Karen,

Wanted to follow up on timing for a few of these as your schedule has changed.

•  The Delegations analysis discussion has been moved to December 22nd and OA has all the materials for your review. Jotham and I will be prepared to discuss the CORE delegations and CORE protections as it relates to their status.

•  On the plan to reduce COREs, I asked for 15 minutes with you this afternoon to discuss on my approach to develop the plan due to you in early January.

•  On January CORE renewals, OCHCO will have the updated information to you today for review.

That should cover just about everything noted below for now. Please let me know if you have any questions.

Best,
Stephanie

**From:** Dobitsch, Stephanie
**Sent:** Thursday, December 4, 2025 4:24 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>



Evans 24
EXHIBIT
DATE: 3|3|26
SUSAN ASHE

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0006997

**Cc:** Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Subject:** RE: Follow Up on Items

Appreciate the follow up. Thank you. Some notes below for expectation setting on timing and materials. I also added a task.

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Thursday, December 4, 2025 4:05 PM
**To:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Cc:** Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Subject:** Follow Up on Items

Hi Stephanie

Just so that we are tracking the same list per our discussion:

1.    Looking at all CORE dates

a.    ~~Katrina CORE Dates (Understand a meeting is being scheduled next week to go over all removal and administrative leave actions; updated spreadsheet with employee type and term expirations to be provided ahead of that meeting)~~

b.    Proposed plan to reduce COREs by date (Week of Jan 5th to present options)

c.    Meeting is being set up regarding the delegation for COREs (awaiting OA scheduling)

2.    All delegations analysis will be discussed at Item 2 (materials to be sent on Wednesday with plan to discuss on Friday; this could be earlier if needed)

3.    OCC Title 5 status for COREs (week of December 15th for materials)

4.    Overall CHCO numbers are being worked by you and Will (number is 11,383) Karen will send a follow up note to HQ

5.    ~~Chronology related to the NATO position the current temporary to the current request for permanent (with names associated with the request) (OA has your updated printed package with annexes as discussed; will email with timeline and names this week)~~

6.    ~~SES spreadsheet (Karen to me)~~

7.    Updates to CORE renewal memo to S1 (this will include the numbers of people who will be offboarded starting in January if we do not receive S1 approval to authorize extensions from Jan-March 2026)

I am adding a number "7" which is I owe you the SES spreadsheet where I am changing CR to G

Please feel free to make any modifications as appropriate

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0006998

## Talking Points for FY26 Staffing Strategy

**Ask:** Ms. Evans has tasked me to develop a strategy to cut the FEMA workforce by 50% over FY26. She has specific intent on the cuts to the workforce by employee type:

- PFT: Cut 35% or 1,362 positions
- Core: Cut 68% or 10,843 positions
- Reservist/Local Hire: Cut 76% or 7,039 positions

These numbers are as of the start of FY26 – from 22,559 to 11,426 employees. Ms. Evans has also directed targets for the overall workforce by Mission Essential Task:

1. **Advisor to S1 and POTUS** – FY26 Target: 1% or 114 positions (cut 88 positions)
   - Distributed across ONCP, OPPA, OEA, OA, RSL, ORR, and USFA
2. **Regional Coordination** – FY26 Target: 10% or 1,143 positions (cut 1,046 positions)
   - Mostly Regions (2,099) with some positions in OA, OCC, and ORR
3. **Continuity** – FY26 Target: 4% or 457 positions (shift 279 positions)
   - Mostly ONCP (168) with some positions in OA and MS
4. **Emergency Response** – FY26 Target: 19% or 2,171 positions (cut 1,910 positions)
   - Mostly ORR (3,370) with many in OCFO (259), OEA (331), and some in OCC and Regions
5. **Emergency Recovery** – FY26 Target: 34% or 3,885 positions (cut 7,098)
   - Mostly in ORR (8,824) with many in Regions (2,114) and some in OCC
6. **Training and Exercises** – FY26 Target: 4% or 457 positions (cut 283)
   - Mostly in Resilience (333) and Regions (284) with some in ORR and USFA
7. **Resilience and Preparedness** – FY26 Target: 15% or 1,714 positions (cut 1,290)
   - Mostly in Resilience (1,474) and Regions (1,506) with some in USFA
8. **Flood Insurance** – FY26 Target: 1% or 114 positions (cut 56 positions)
   - Mostly in RSL (159) with some in OCC

   **Mission Enabling** – FY26 Target: 12% or 1,371 positions (cut 1,815)
   - Mostly in MS (2,433), OCFO (344), and OCC (143), and some across all program due to front office/business management

**Plan:** Our first task will be focused on the Disaster Workforce, primarily our use of COREs across the Agency.

We need to identify what positions are critical to maintain to deliver our mission while meeting Ms. Evan's intent to half the workforce.

DRAFT | PRE-DECISIONAL | DO NOT DISTRIBUTE



Confidential - Subject to Protective Order

USA-AFGE-Exp.-0034341

Once we identify the positions that need to be retained, we can determine which options are most appropriate to cut remaining positions to meet the targets set by Ms. Evans.

- *Determine Critical Positions*
  - o We are going to ask you to review your programs CORE positions, and identify 50% of the positions that need to be retained.
  - o We will then evaluate the CORE cuts against the targets set by Ms. Evans for each of the METs, assuming a 7% attrition.
  - o We will then make recommendations for reservist cuts to meet the overall targets (i.e. cutting 90% of reservists positions and 0% of PFT to get to the overall targets and MET distribution).
  - o We will have follow up discussions with component leadership if additional cuts are needed to meet the overall targets.
- *Determine Appropriate Options to Reduce Unnecessary Positions*
  - o Based on the proposed cuts and employee types, we will recommend the following options for consideration:
    - **Lateral Talent to Critical Vacant Positions**
    - **Reduction in Force** by competitive area and considering factors of tenure/type of employee (i.e. CORE), veterans' preference, length of service, and performance ratings
    - **Voluntary separation**
      - Voluntary Early Retirement Authority: PFT
      - Voluntary Separation Incentive Payments: PFT and eligible CORES? (must have served for a continuous three years)
      - Deferred Resignation Program: PFT and COREs
      - Non-Renewals
        - o Local Hires: ~200 on a 120-day appointments
        - o Reservists: ~6,999 who are all up for two-year renewal in May 2026
        - o Core Employees: Assume ~4,000 up for renewal in 2026
- *Develop Implementation Plan*
  - o Once Ms. Evans approves the cuts and provides direction on the appropriate actions, we will develop an implementation plan to meet reductions by the end of FY26.

DRAFT | PRE-DECISIONAL | DO NOT DISTRIBUTE

Confidential - Subject to Protective Order    USA-AFGE-Exp.-0034342

| | |
|---|---|
| **From:** | Prieur, La'Toya [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D47853C52FB04E47AA9D0194AE59BBB5-0D4E1677-D6] |
| **Sent:** | 12/5/2025 11:47:30 AM |
| **To:** | Butler, Matthew [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=20e106450af149c7b52b56434b93ad2d-ef35694f-64] |
| **Subject:** | RE: CORE Expirations (January 2026) |

Matt,

This is a monthly ask for the time being. Please generate reports by the 10th of each month. Thank you!

LP

**From:** Butler, Matthew <matthew.butler@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 10:09 AM
**To:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: CORE Expirations (January 2026)

Of course. It looks like this will be a monthly request. Let me know at some point if there is a preferred date/time to have this run.

Thanks
MB

**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 9:52 AM
**To:** Butler, Matthew <matthew.butler@fema.dhs.gov>
**Cc:** Peterson, Daniel <daniel.peterson@fema.dhs.gov>; Neurauter, Jeffrey <Jeff.Neurauter@fema.dhs.gov>; King, Sasteh <sasteh.king@fema.dhs.gov>
**Subject:** RE: CORE Expirations (January 2026)

Matt,

Thank you for the quick turn on this!

LP

**From:** Butler, Matthew <matthew.butler@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 9:43 AM
**To:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Cc:** Peterson, Daniel <daniel.peterson@fema.dhs.gov>; Neurauter, Jeffrey <Jeff.Neurauter@fema.dhs.gov>; King, Sasteh <sasteh.king@fema.dhs.gov>
**Subject:** RE: CORE Expirations (January 2026)

La'Toya,

Attached is the data requested as of the pay period 22 onboard report.

- I include two more columns to separate deployed vs non deployed



Evans 24
**EXHIBIT**
DATE: 3\31\26
**SUSAN ASHE**

          USA-AFGE-Exp.-0014520

- Wage grade employees with NTE dates are also included

Let me know if you have any other questions

Thanks
Matt

**From:** Peterson, Daniel <daniel.peterson@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 8:28 AM
**To:** Butler, Matthew <matthew.butler@fema.dhs.gov>
**Subject:** FW: CORE Expirations (January 2026)
**Importance:** High

**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 8:17 AM
**To:** Peterson, Daniel <daniel.peterson@fema.dhs.gov>
**Cc:** Neurauter, Jeffrey <Jeff.Neurauter@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Grant, Courtney <courtney.grant@fema.dhs.gov>
**Subject:** CORE Expirations (January 2026)
**Importance:** High

Good morning Dan.

The Office of the Administrator requests to track CORE expirations by month beginning with January 2026 data. Please assign a member of your staff with completing the attached template. Please complete by 10a toady – the OA will send this to S1 today.

**La' Toya Prieur, MBA**
Chief Human Capital Officer | Office of the Chief Human Capital Officer | Mission Support
Mobile Phone: (771) 219-5434
Latoya.Prieur@fema.dhs.gov

*Executive Assistant: Agnes.Gautier@fema.dhs.gov*

Federal Emergency Management Agency
fema.gov

 FEMA

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0014521

**From:**    Evans, Karen [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=85BF5C69B59B407DBE7A70B634015DC0-771D1D66-F8]
**Sent:**    12/18/2025 5:26:14 PM
**To:**    Voorhies, Kara [/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=59e892831314435587de3f96b6d521fc-71690143-b5]; Barton, Victoria
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=9534efb9e5e34ab39cb89453cb919909-03cc1639-4d]; Bilicic, William
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=0a8d35e355c24ff98d728931441d89d6-17597001-19]
**CC:**    Khan, Puneet [/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=1c2ce09ea8f34f429cb459624ed77b8c-002c703b-83]
**Subject:**    FW: Response to Questions on Term Employment Extension Memo
**Attachments:**    Copy of CORE Expirations (January 2026).xlsx

I found the email and see the highlights....that is why I though the number is 324 for December and then, the 932 for January
It is my misunderstanding of what she wrote...I raised this issue to the DCOS December 10th

The actual total is 932 for January, February, March
And they have renewed the December ones in accordance with their existing process

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile: 202-255-4141



**From:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 3:32 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Sjoberg Radway, Cynthia <cynthia.sjobergradway@fema.dhs.gov>; James, Greg <Greg.James@fema.dhs.gov>; Layou, Thomas <thomas.layou@fema.dhs.gov>
**Subject:** RE: Response to Questions on Term Employment Extension Memo

Hi Karen,

Please see attached. The question on assignments to disasters is complicated and probably falls more in OCFO's lane so adding them here.

The agency has several types of COREs, and all CORE types are directly supporting an open and active disaster, or readiness for the overall disaster mission. The active disaster support is charged the DRF while readiness could be DRF or DRS based on the specific type of work. Some COREs are hired to support a single open disaster or disasters in a single state, for example, those that work in a long-term recovery office like those in Florida or Texas. Others support many open disasters, like the call center staff who take calls directly from survivors, and whose time is charged to those disasters based on an algorithm derived from call data. We also have COREs that work as part of a distributed group, such as those in External Affairs, where the percentage of COREs in an office is determined by the percent of that office's work that is directly supporting the disaster mission. Lastly, we have readiness COREs, whose salaries are funded by the DRS base and support the

Confidential - Subject to Protective Order    USA-AFGE-Exp.-0007258

readiness efforts for the disaster mission overall, ensuring FEMA is prepared to execute. Examples of these include staff in FOD that support our ability to deploy the workforce.

We're planning several meetings next week to dig into this as part of the plan you and I discussed for CORE rightsizing.

Please let me know if you have any questions or require further information to process this request.

Thanks,
Stephanie

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Friday, December 5, 2025 6:24 AM
**To:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** Re: Response to Questions on Term Employment Extension Memo

And also include what disaster they are assigned
Thanks

**From:** Evans, Karen
**Sent:** Thursday, December 4, 2025 10:59:41 PM
**To:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: Response to Questions on Term Employment Extension Memo

I would like the list of the break out of the 312 term employees.
Not their names just numbers, position type, organization location.

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

**From:** Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>
**Sent:** Thursday, December 4, 2025 4:49 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Bilicic, William <william.bilicic@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** Response to Questions on Term Employment Extension Memo

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0007259

Hi Karen,

Will relayed a few questions you had on the term extension memo that is with you for approval to push to the Secretary. To clarify, our authority to extend term employments ends on December 31st. If we do not receive the Secretary's approval before December 31st, 312 term employees will be offboard beginning on January 1 and through the remainder of the month. There are total of 932 term employees whose terms will expire before March 31st.

We updated the memos to clarify that this request is for both the authority and then your decision to action immediately. Per our discussion this afternoon, I will ensure you have visibility on term extensions at least two weeks prior to the terms expiring moving forward. This notification will include a list of employees, their positions and organizations, the approving associate administrator for the extension, confirmation of satisfactory performance review, and term dates.

Please let me know if you need further details to process this request.

Thank you,
Stephanie

**Stephanie Dobitsch**
Associate Administrator (A)
Office of Policy and Program Analysis
771-217-3484



Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0007260

| | |
|---|---|
| **From:** | Jaggers, John E. EOP/OMB [John.E.Jaggers@omb.eop.gov] |
| **Sent:** | 3/3/2026 12:46:45 PM |
| **To:** | Evans, Karen [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=85bf5c69b59b407dbe7a70b634015dc0-771d1d66-f8] |
| **Subject:** | RE: You and Victoria made news - |

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please select the Phish Alert Report button on the top right of your screen to report this email if it is unsolicited or suspicious in nature.

Yep – I'd say direct hit...bummer not getting paid to sit around and wait around for disasters that they then barely to respond to – CORE dump needed 😊

Warm Regards
John E. Jaggers
OMB issued cell: 202-881-4514

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Tuesday, March 3, 2026 12:41 PM
**To:** Jaggers, John E. EOP/OMB <John.E.Jaggers@omb.eop.gov>
**Subject:** RE: You and Victoria made news -

We did see this...I am just trying to keep my head low...and you know I am over the target since I am getting personally attacked 😊

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.Evans@fema.dhs.gov
Mobile: 202-255-4141



Freedom 250

Confidentiality Notice
This email message and all documents that accompany it are intended only for the use of the individual or entity to which addressed and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If the reader is not the intended recipient, any disclosure, distribution or other use of this email is prohibited. If you have received this email message in error, please notify the sender immediately. Please consider the environment before printing.

**From:** Jaggers, John E. EOP/OMB <John.E.Jaggers@omb.eop.gov>
**Sent:** Tuesday, March 3, 2026 12:27 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Subject:** You and Victoria made news -
**Importance:** Low

Evans 28
EXHIBIT
DATE: 3\31\26
SUSAN ASHE

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please select the Phish Alert Report button on the top right of your screen to report this email if it is unsolicited or suspicious in nature.

Hi!

I'm sure you saw this:

https://www.govexec.com/workforce/2026/02/officials-warn-disaster-response-risk-former-and-current-fema-leaders-clash-court-over-mass-staff-cuts/411734/?oref=ge-homepage-river

So here's the pull quote that made me laugh...

*"Karen Evans, who is currently serving as the FEMA administrator, said in her declaration before the court last week that the CORE workforce, like the agency's overall mission, had grown too large. She noted that during the Biden administration, CORE staff deployed to assist in housing migrant children. Evans has served in her current role since December and is the third official President Trump has tapped to temporarily lead FEMA.*

*MaryAnn Tierney, who served at FEMA for 15 years, including as the acting deputy administrator through June, said on Wednesday in response to Evans that the acting administrator is out of her depth and misrepresenting the facts on the ground.*

*"Ms. Evans' declaration does not accurately reflect the operational realities of FEMA disaster response and recovery, nor does it adequately address the functional consequences of the current non-renewal practices on FEMA's existing statutory obligations," Tierney said. "I believe the assertions in Ms. Evans' declaration materially understate the operational harm resulting from the January 2026 CORE non-renewals."*

Did Tierney miss the Snow storm response ?  Victoria did a nice job responding.

Warm Regards
John E. Jaggers
OMB issued cell: 202-881-4514

Confidential - Subject to Protective Order    USA-AFGE-Exp.-0007220

**From:** Chief-Human-Capital-Officer [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=34A62CFBC6B74637A816E14A887016E2-CHIEF-COMPO]
**Sent:** 12/23/2025 5:47:38 PM
**To:** Black, Donna [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c785884de84a4899b12c23fd397667b2-6f760cec-2f]; Barton, Victoria [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=9534efb9e5e34ab39cb89453cb919909-03cc1639-4d]; Breslin, Thomas [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=166eeeb1e7724477a0593814e93b1d39-BRESLIN, TH]; Dobitsch, Stephanie [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=330d2d04e3fd4974ab1d8bd4177bf2c7-333d7208-af]; Phillips, Gregg [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=8d436b9f445c45ff9c683898b1c7e341-6881f2c8-47]; Hoffman, Erin [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=4ba1fd64bfa14b3f8884567f07ac3265-Hoffman, Er]; Allen, Jotham [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=9785bafc59904d52ae494def3ffad4be-ALLEN, JOTH]; Sjoberg Radway, Cynthia [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=4717a18ecdf84fff921b4be4ca780428-21a74d8c-31]; Arnold, David [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=21301f0b9d664d0baab6e9eee212b7c1-381590cb-8b]; Gabliks, Eriks [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=455fb92bd6c74be38211a05d9ea5286d-GABLIKS, ER]; Franklin, Tami [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=59741b007f374c9c97bb30e61a3607c2-FRANKLIN, T]; Wollenhaupt, Charles [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=3a2c020927d94787899731a96ce21aa2-b9efe673-32]; Couch, Joseph [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e7fe53520d7242fd8c32b6ba38c1123d-Couch, Jose]; Waters, Julie [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=ac5e211686644eaea989c6218905444b-WATERS, JUL]; Padilla, Kenneth [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=0c03ef72365b4e81addbb6503e085952-272f5d07-22]; Layou, Thomas [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5e1465ebf2b34916965998df3363a822-6a35370b-ed]; Devine, Jarrett [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=abaea67ca61648de913ef85023594247-Devine, Jar]; Morea, Anthony [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=8d61add903104a4bac96f4b78ccf788e-MOREA, ANTH]; D'Amora, Andrew [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=85361782c05c4ca4a87e780324fdaa5e-D'Amora, An]; Toro, Manny J [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5b375e809a724d80a801c49049a16671-Toro, Manny]; Peterson, Mark J [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=2e798f69c0fe42abb22106fec424184a-Peterson, M]; Sanders, Catherine [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=4b832b17169a4febb3774a7b71795bc4-SANDERS, CA]; Lamb, Zachary [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=7b169771241847edaf285e1e7fc06afc-LAMB, ZACHA]; Littrell, Tammy [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b18e3320961f4db7aec1bf0d3204ac2e-Littrell, T]; Baquero, Jose [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=7841c32b80274d78acafa96cdca74be3-BAQUERO, JO]; Doucette, Fred [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=47466b8a2b4d43d3814c8b8dcf46fe61-0038d836-ec]; Maykovich, Vincent [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c69f323d0dc840a2a64446a98c6d0f09-Maykovich,]; Hartnett, Christopher

Evans 29
EXHIBIT
DATE: 3|31|26
SUSAN ASHE

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0004518

[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=6800ff6b29594b079d47f70f1d332b83-02755a98-b8];Hutchinson,Lilian
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=902e1b0190dc4fa2b2d69f4060e18dd9-Hutchinson,];Ashe, Robert (Rob)
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=047423dfe34344df83ab02c25acc98ec-ASHE, ROBER]; Chesney, Michael S
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=fc8e72c9a8d44b90993d7186f37998f0-Chesney,Mi];Van Der Werff, Jay
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=04cbe525a27746cdaa3144b5073cc8a6-VANDER WER]; Fox, Katherine B
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=18286c2569d245c1b75bc846f6310f77-Fox,Kather];Fenton, Bob
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=d7f9fd138d164a3a99ed9397cb17de0f-Fenton,Rob]; Guy, Peter
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=9e93d4655ba1461b9e9ea1c7fb99db9c-5f86cedd-3b];Samuel, Jessica
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=1fd9c083f0014f27b54de0eaddf4733d-SAMUEL, JES]; Higgins,Jennifer
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=fbb493a9b977495f939e45dca47fe706-22a642db-18]

**CC:**      Prieur,La'Toya [/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=d47853c52fb04e47aa9d0194ae59bbb5-0d4e1677-d6];Sanchez,Blanca
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=60453facb7f24219b8584785477c429d-7fc8c239-ad];Neurauter, Jeffrey
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=b8beaaac6b694cf1852839debe8c1292-Neurauter,];Khan, Puneet
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=1c2ce09ea8f34f429cb459624ed77b8c-002c703b-83];Clayton,Andrew
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=91ab663fd653453195bd72d3ebf9a7ab-dc3b7313-6b];Bilicic,William
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=0a8d35e355c24ff98d728931441d89d6-17597001-19]

**Subject:**   Request for Input: Workforce Capacity Planning Exercise

FEMA Leadership,

Consistent with Office of Management and Budget (OMB) and Office of Personnel Management (OPM) guidance implementing Executive Order 14356, FEMA is conducting an internal workforce capacity planning exercise to inform the Agency's Annual Staffing Plan and required quarterly updates.

As part of this effort, we are requesting that each component take a bottom-up, zero-based analytical approach to identify the positions you recommend retaining as essential to sustain FEMA's core mission delivery and minimum operating capabilities. For planning purposes, components should assess mission requirements as if starting from a baseline of zero and identify the positions necessary to perform statutory and operational functions.

This exercise applies across all workforce categories, including permanent full-time employees, CORE employees, Reservists, and any surge workforce, and is intended to provide leadership with a clear, component-level understanding of mission-critical capacity. **The exercise is pre-decisional in nature; no staffing actions or personnel decisions are being directed or implemented as part of this request**.

Consistent with FEMA's operational model, response and recovery functions remain a priority, and planning assumptions reflect a continued reliance on both the career and disaster workforces. Reference planning parameters for employee types and Mission Essential Tasks are included in the accompanying workforce planning tool.

Instructions

- Using the first tab, "Organizational Data for Review," filter by your component and identify the positions you recommend retaining (Column I) by organization and employee type, based on mission essentiality and operational requirements.
- The second tab, "Pivot Tables for Reference," provides workforce distribution data as of September 30, 2025, along with reference views to support your assessment.
- The third tab, "Employee Type for Reference," lists employee categories for consistency.

This exercise supports FEMA's compliance with OMB and OPM workforce planning requirements and is intended solely to inform leadership deliberations. It does not constitute a staffing action, reduction in force, or directive regarding personnel actions.

The planning document is restricted to program heads and senior advisors. Do not further disseminate this task or the associated materials.

Suspense for completion is December 31, 2025.

DRAFT Workforce Plan - December 2025.xlsx

**La' Toya Prieur, MBA**
Chief Human Capital Officer | Office of the Chief Human Capital Officer | Mission Support
Mobile Phone: (771) 219-5434
Latoya.Prieur@fema.dhs.gov

*Executive Assistant: Agnes.Gautier@fema.dhs.gov*

Federal Emergency Management Agency
fema.gov

 FEMA

Confidential - Subject to Protective Order     USA-AFGE-Exp.-0004520

**From:**  Prieur, La'Toya [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D47853C52FB04E47AA9D0194AE59BBB5-0D4E1677-D6]
**Sent:**  12/17/2025 6:46:18 PM
**To:**  Evans, Karen [/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=85bf5c69b59b407dbe7a70b634015dc0-771d1d66-f8]
**CC:**  Dobitsch, Stephanie [/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=330d2d04e3fd4974ab1d8bd4177bf2c7-333d7208-af]; Franklin, Tami
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=59741b007f374c9c97bb30e61a3607c2-FRANKLIN, T]; Sjoberg Radway,
Cynthia [/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=4717a18ecdf84fff921b4be4ca780428-21a74d8c-31]; Layou, Thomas
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=5e1465ebf2b34916965998df3363a822-6a35370b-ed]; Teets, Greg
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=d52f3f1936be4582ab77f4364b8c9a1b-Teets, Greg]; Allen, Jotham
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=9785bafc59904d52ae494def3ffad4be-ALLEN, JOTH]; Bilicic, William
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=0a8d35e355c24ff98d728931441d89d6-17597001-19]; Prieur, La'Toya
[/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=d47853c52fb04e47aa9d0194ae59bbb5-0d4e1677-d6]
**Subject:**  FEMA CORE Expiration Data - Q2 FY2026
**Attachments:**  CORE Expirations - Q2 FY 2026.pdf; CORE Expirations (Q2 FY 2026).xlsx; Disasters with salary and benefit charges in
FY26 with State Name.xlsx; CORE Pay-Period 23 Payrol Data (Q2 FY 2026).xlsx

Good evening Ms. Evans.

Between January 1 – March 31, 2026, FEMA will have 950 CORE appointments due for renewal or other personnel action
determined by leadership. Attached is an informational memo, breakout of whom expires and when, and financial
information linked to active disasters.

Of note:
- 950 CORE/FWS employees have Q2 FY 2026 expiration dates (January 1 – March 31, 2026)
  o  324 expire in January (down from 325 initially reported – 1 employee was converted to a different appointment type)
  o  314 expire in February
  o  312 expire in March
- CORE Pay Period Data
  o  Column 05 & OS: This column applies only to a few individuals who were on a training detail.
    ▪  Total charges $15,102(N/A)
  o  Column 06: Charges in this column are allocated to the majors and are tied to a specific disaster associated with
the pay.
    ▪  Total charges $4,926,382(Annualized: $128,085,932)
  o  Column 6M: These are BRIC CORES.
    ▪  Total charges $80,744(Annualized: $2,099,344)
  o  Column 6R: These CORES charge the Base – Disaster Readiness Support Account.
    ▪  Total charges $261,771(Annualized: $6,806,046)
  o  Column H3: This column lists Hermit's Peak CORES.
    ▪  Total charges $88,155(Annualized: $2,292,030)



Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0005054

**La' Toya Prieur, MBA**
Chief Human Capital Officer | Office of the Chief Human Capital Officer | Mission Support
Mobile Phone: (771) 219-5434
Latoya.Prieur@fema.dhs.gov

*Executive Assistant: Agnes.Gautier@fema.dhs.gov*

Federal Emergency Management Agency
fema.gov



                    USA-AFGE-Exp.-0005055

CONTROLLED — UNCLASSIFIED

U.S. Department of Homeland Security
Washington, DC 20472



FEMA

December 17, 2025

**INFORMATIONAL**

| FOR: | Karen S. Evans |
| | Senior Official Performing the Duties of the Administrator |
| FROM: | La' Toya Prieur    LA'TOYA    Digitally signed by LA'TOYA PRIEUR |
| | Chief Human Capital Officer  PRIEUR    Date: 2025.12.17 18:38:05 -05'00' |
| SUBJECT: | Expiring Term Appointments |

**Purpose:** To describe the mission effects of not renewing FEMA term appointments that expire during Q2 FY 2026.

**Background:** FEMA has 950 Cadre of On Call Response Employees (CORE) and local hires whose appointments will expire between January 1 – March 31, 2026. Of those 950 staff

- 324 expire in January (down from 325 initially reported – 1 employee was converted to a different appointment type)
- 314 expire in February
- 312 expire in March

Of the 950 staff expiring, 259 (27%) of them work in mission critical occupation positions (Security, Emergency Management Specialist, Human Resources, Contracting, Information Technology) previously designated by DHS. 256 of the 950 staff (27%) are currently deployed to disasters, and their roles and responsibilities would need to be transferred.

**Program Effects:** Based on program feedback, the following effects of not renewing these employees would include:

- Loss of logistics, warehouse, and telecommunications specialists would directly diminish FEMA's ability to move, track, and maintain lifesaving commodities, housing units, and IT assets, increasing response times, property losses, and costs.
- Loss of key IA and PA program staff (appeals, audits, insurance, monitoring, readiness, policy, training, caller services, quality assurance) would impair FEMA's ability to comply with Stafford Act requirements, prevent duplication of benefits, and provide accurate, timely assistance to survivors.
- Reducing cadre and training staff would erode the readiness and management of large deployable workforces (planning, logistics, PA), limiting FEMA's ability to staff disasters with qualified personnel.
- For the Hermit's Peak/Calf Canyon Claims Office, loss of operations, appeals, program analysis, financial management, and logistics positions would delay processing of a

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0005056

CONTROLLED – UNCLASSIFIED

Expiring Term Appointments Effects Memo
Page 2

congressionally mandated $5.45B claims program, directly impacting fire survivors and increasing legal and reputational risk.

- Loss of field-forward environmental, historic preservation, engineering, and HMGP program analyst roles would reduce FEMA's ability to comply with ESA/NHPA and streamline EHP reviews, causing delays in mitigation and recovery projects and increasing legal and regulatory risk.

- Loss of civil rights/disability experts would sharply reduce FEMA's ability to prevent and resolve civil rights complaints, ensure accessible programs, and avoid costly, high visibility litigation.

- Loss of critical regional positions would slow delivery of disaster assistance and project approvals across Public Assistance, Individual Assistance, Hazard Mitigation, and recovery programs, resulting in delayed funding to states, territories, tribes, local governments, and survivors.

- Regions would face gaps in low density technical specialties (e.g., environmental / historic preservation, biologists, engineers, mitigation planners, security specialists, logistics, appeals analysts), undermining compliance with statutes such as the Stafford Act, ESA, NEPA, NHPA, and grants management regulations and increasing the risk of audit findings and litigation.

- Loss of the Office of External Affairs positions would compromise FEMA's ability to meet statutory obligations under the Stafford Act, 21st Century IDEA, and other authorities to provide timely, accurate, and accessible public information before, during, and after disasters. FEMA's capacity to manage ESF 15 operations, Joint Information Centers, and social media/public affairs functions—including language services and cybersecurity for media systems—would be sharply reduced, increasing the risk of inconsistent messaging, reduced public trust, and slower information delivery to survivors and partners.

- Losing OCIO positions would weaken 24/7 monitoring and incident response for FEMA's enterprise IT (network circuits, servers, applications), increasing the likelihood and duration of outages that directly affect disaster response and survivor services.

- Loss of regional and enterprise wireless/voice support, workstation configuration management, and hosting services would impair reliable communications and IT services for staff, undermining operational continuity during disasters.

- Loss of OCSO training, fraud investigation, security specialist, and personnel security positions would degrade FEMA's ability to protect personnel, facilities, and communications infrastructure at HQ and in the field, especially during disasters. FEMA would face increased fraud, waste, and abuse risks, slower or incomplete personnel vetting, and potential gaps in physical and electronic security, exposing the agency to operational, financial, and reputational harm.

- Loss of OCFO positions would compromise FEMA's ability to manage and safeguard the Disaster Relief Fund, including accurate spend plans, projections, certifications, and disaster payment processing, directly risking Anti Deficiency Act and other statutory violations. OCFO would be unable to perform statutorily required Public Assistance improper payments testing and associated reporting to DHS, jeopardizing DHS and

2

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0005057

CONTROLLED – UNCLASSIFIED

Expiring Term Appointments Effects Memo
Page 3

FEMA annual reporting and exposing the agency to audit findings and loss of public trust.

- Loss of OCCPO contracting capacity would raise the risk of procurement delays and noncompliance with federal acquisition regulations, directly affecting FEMA's ability to respond quickly and effectively to changing operational demands.
- 20 are federal wage system positions (Carpenter, Materials Handler, Powered Support Systems Mechanic, and Automotive Mechanic) that are providing critical infrastructure and facility operations and maintenance roles.

**Funding**: The COREs and local hires are funded from various accounts depending on the nature of their work. The accounts include the Disaster Relief Fund (DRF), Building Resilient Infrastructure and Communities (BRIC), and Hermit's Peak/Calf Canyon Fire Assistance. The following details list a single pay period - Pay Period 23, and also the annualized cost assuming the same pay for 26 pay periods:

- **Fund 05 & OS:** This applies to only a few individuals who were on a training detail.
  - Pay Period 23 total charges: $15,102 (Annualized: N/A)
- **DRF - Fund 06:** Charges are allocated to the major disaster declarations and are tied to a specific disaster the employee is working on, and their pay.
  - Pay Period 23 total charges: $4,926,382 (Annualized: $128,085,932)
- **DRF- Fund 6M:** Building Resilient Infrastructure and Communities (BRIC) COREs.
  - Pay Period 23 total charges: $80,744 (Annualized: $2,099,344)
- **DRF -Fund 6R:** These CORES charge the Base – Disaster Readiness Support Account.
  - Pay Period 23 total charges: $261,771 (Annualized: $6,806,046)
- **Hermit's Peak- Fund H3:** Hermit's Peak CORES.
  - Pay Period 23 total charges: $88,155 (Annualized: $2,292,030)

This spreadsheet reflects pay data for the most recent Pay Period - 23.

**Legal requirements for extensions and releasing employees**: FEMA disaster (CORE) and surge (RSV and local hire) employees are hired under temporary (<1 year) or term (1-4 year) appointments as defined in 5 CFR Part 316. The Stafford Act allows these hires to be completed on a non-competitive basis in the excepted service. The excepted service is simply an exception to competition – if applicants meet minimum qualification requirements, they are not required to compete for positions which is a requirement for a permanent fulltime position. The Stafford Act does not provide FEMA with any additional flexibility with regard to termination.

FEMA developed the CORE Manual and a "rightsizing" approach to managing the workforce when a shortage of funding or lack of work presents. Based on current case law and 5 CRF Part 351 term (CORE) employees are almost certainly covered in RIF planning as they meet the definition of both a civilian employee and a competing employee holding tenure group III in the executive branch of the federal government. Therefore, FEMA is legally required to submit a plan to DHS and OMB that includes functional areas that will be paired down and retention

3

CONTROLLED -- UNCLASSIFIED

Expiring Term Appointments Effects Memo
Page 4

standing for each affected employee.  Each competing employee selected for release is entitled to a specific written notice of at least 60 days before the effective date of release.

It is important to note FEMAs Office of the Chief Counsel opined non-renewal of an expiring CORE appointment due to a lack of work **does not** constitute rightsizing or a RIF.  FEMAs CORE Manual suggests the agency will provide up to 60-days' notice of non-renewal to COREs who will not be renewed.  Advance notice is not required statutorily under 5 CFR or §306 of the Stafford Act.

**Recommendation:** Allow FEMA to review, based on mission requirements, and appropriately renew term-limited appointments.

4

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0005059

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
ROBERT BOMBARD
MARIANNE F. KIES
Trial Attorneys
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-7203
Robert.Bombard2@usdoj.gov

Counsel for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-03698-SI<br><br>**DECLARATION OF KAREN S. EVANS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Hearing Date: March 3, 2026<br>Time: 11:00 a.m.<br>Judge: Hon. Susan Illston<br>Place: San Francisco Courthouse<br>            Courtroom 1 |

Evans 34
EXHIBIT
DATE: 3\3\26
SUSAN ASHE

**Exhibit
34**
05/26/2026

Declaration of Karen S. Evans ISO Defendants' Opposition to Plaintiffs' Motion for Preliminary Inju[
3:25-cv-3698-SI

In accordance with the provisions of 28 U.S.C. § 1746, I, Karen S. Evans, state as follows, under penalty of perjury, pertinent to the above-styled and numbered cause:

1.      I am the Senior Official Performing the Duties of Administrator ("SOPDA") for the Federal Emergency Management Agency ("FEMA"), headquartered in Washington, D.C. In this position, I primarily, but not solely, exercise the authorities previously assigned to FEMA and the Director of FEMA within the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), Public Law 93-288 as amended, codified at 42 U.S.C. §§ 5121, *et seq.*; administer the National Flood Insurance program; and carry out several functions delegated to me by the Secretary of Homeland Security. I have held the SOPDA position since December 3, 2025.

2.      The statements set forth in this Declaration are based on my personal knowledge and review of documents and information provided to me in my official duties.

**Attachments to This Declaration**

3.      Attached hereto as **Exhibit 1** is a true and correct copy of Chapter 10 of FEMA's Disaster Operations Legal Reference, 4th ed. (Sept. 2020) ("DOLR 4.0").

4.      Attached hereto as **Exhibit 2** is a true and correct copy of FEMA Manual 252-11-1 (approved Aug. 25, 2015), also known as FEMA's CORE Manual. Although the CORE Manual provides important factual background and context for the CORE program, it is not binding. FEMA retains the discretion to update and implement new procedures not in violation of law, in between new versions of the policy, to address changing agency direction and needs.

5.      Attached hereto as **Exhibit 3** is a true and correct copy of COREs' Conditions of Employment.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of an August 8, 2025, Memorandum regarding termination of bargaining rights for COREs, among others.

7.      Attached hereto as **Exhibit 5** is a true and correct copy of a December 23, 2025, email communication from FEMA's Chief Human Capital Officer, regarding a "Workforce Capacity Planning Exercise."

Declaration of Karen S. Evans ISO Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

1

**FEMA's Responsibilities and Workforce**

8.     FEMA is responsible for, *inter alia*, administering and coordinating the Federal government's response to Presidentially declared disasters pursuant to the Stafford Act. In my role as the SOPDA, I am responsible for reducing the loss of life and property and protecting the nation from all hazards, by leading and supporting the nation in a risk-based, comprehensive emergency management system of preparedness, protection, response, recovery, and mitigation. I am also responsible for partnering with state and local governments, and other emergency providers, to build a national system of emergency management.

9.     As SOPDA, I am committed to ensuring the entire FEMA workforce is adequately staffed, trained, resourced, and equipped to fulfill our statutory obligations to the American people.

10.     As SOPDA, and by statute, I report directly to the Secretary of Homeland Security. 6 U.S.C. § 313(c)(3).

11.     The FEMA workforce covers ten geographic regions. Principally, its workforce includes permanent Title 5 employees; a Cadre of On-Call Response/Recovery Employees ("CORE"); and Reservists. Most FEMA program divisions and office locations utilize both Title 5 employees and CORE employees. A Title 5 employee may share the same title as a CORE employee and work on the same projects. Unlike Title 5 employees, however, CORE employees are limited to disaster and emergency-specific work, as discussed further below.

**FEMA's CORE Program, Generally**

12.     COREs work full-time, on temporary appointments, to directly support the response and recovery efforts of open disasters. Specifically, CORE employees perform disaster work, such as applicant processing services, and other recurring work, such as financial management of disaster operations, long-term recovery projects, and close-out activities.

13.     COREs generally serve fixed two-year terms. CORE appointments end on the Not to Exceed Date of an appointment, unless the appointment is extended or renewed based on FEMA's evolving operational needs and workload.

14.     In recent years, FEMA's work—and therefore, its CORE program—has expanded

Declaration of Karen S. Evans ISO Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

2

beyond the Agency's statutorily mandated mission and traditional disaster responses, to non-disaster-related humanitarian aid. For example, from approximately 2021 to 2024, FEMA COREs assisted the federal government's efforts to provide shelters and supplies to unaccompanied alien children from the Southwest border of the United States. FEMA COREs also supported DHS in the resettling of Afghan refugees via Operation Allies Welcome from approximately 2021 to 2022.

15. The increase in CORE positions over time illustrates the program's rapid expansion. The CORE program, first developed in 1996, was initially comprised of 286 positions. By the end of 2015, well after the enactment of the Post-Katrina Emergency Reform Act of 2006, FEMA employed around 3,416 CORE employees. Five years later, by 2020, that number had more than doubled, to 6,958. By the end of 2024, it almost doubled again, to 11,244 employees. FEMA currently employs 10,168 CORE employees.

16. FEMA's growth and expansion over the years, such as to provide non-disaster-related humanitarian aid as described above, has led to concerns that FEMA has allowed "mission creep" and overstretched its finite resources.

17. There is also an ongoing review at FEMA of the Agency's disaster declaration practices. Specifically, there are concerns that the threshold for declaring a disaster has diminished over the years, allowing a greater number of "disasters" to be created, thereby opening the door to more Disaster Relief Funding. The criteria for these declarations (in particular, the per capita damage indicator), have not been fundamentally revised in over a decade. While FEMA adjusts the dollar threshold annually for inflation, the underlying methodology has remained largely unchanged since 1986 and has prompted reconsideration as to whether the disaster threshold should be elevated. If the standard for a natural disaster changes, FEMA's staffing needs could similarly change.

### Conditions of CORE Employment at FEMA

18. CORE employees are hired under the Stafford Act, funded by the Disaster Relief Fund, and are placed in the excepted service.

19. COREs generally do not have civil service protections under the Civil Service

Declaration of Karen S. Evans ISO Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

3

Reform Act ("CSRA"), such as appeal rights to the Merit Systems Protection Board ("MSPB"). In fact, by virtue of their term appointments, COREs are not entitled to seek review of "adverse employment actions" with the MSPB unless they have served over two years of an appointment that is over two years in length, or are a preference-eligible employee who has served over one year.[1]

20.    CORE employees also do not have collective bargaining representation. AFGE Local 4060, the sole union at FEMA, now represents only sixty, permanent police officers and fire officials hired pursuant to Title 5. *See also* **Exhibit 4.**

21.    Under the "Cadre of On-Call Response/Recovery Employee (CORE) Program," FEMA Manual 252-11-1 **(Exhibit 2)**, when accepting an offer of employment, all CORE employees must sign a Conditions of Employment document **(Exhibit 3)** affirming that: (i) the position is a "temporary civil service excepted service position that does not confer eligibility or priority consideration for permanent appointment"; (ii) the individual "may be released from an assignment at any time and with little or no notice based on the needs of the operation"); (iii) the individual also "be terminated at any time, with cause (e.g. poor performance or misconduct) or without cause (e.g. downsizing of workforce, change in program direction or operational needs)"; and (iv) "my appointment will end on the Not to Exceed (NTE) date of my appointment, unless it is extended based on the needs of the Agency."

22.    FEMA's Office of the Chief Human Capital Officer ("OCHCO") provides each FEMA Office and Directorate with a list of COREs and their expiration dates on a biweekly basis. The FEMA official who requests to renew a CORE is called a "Supervisor of Record." Supervisors of Record requests to renew are sent to me, as FEMA's SOPDA, for review and approval. I then forward the approved requests to DHS's OCHCO. As FEMA is a component of DHS, DHS has final authority over non-renewal decisions.

23.    Non-renewals are distinct from *removals* (also known as terminations). Non-

---

[1] A small proportion of CORE employees are hired for periods greater than two years, not to exceed four years.

Declaration of Karen S. Evans ISO Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

4

renewals are also distinct from agency "rightsizing," which is referenced in the CORE Manual. A "rightsizing" does not occur when FEMA declines to renew a CORE's appointment at the end of a CORE's appointment term.

### Agency Decisions Not to Renew Certain COREs in 2026

24.     Non-renewals of COREs are commonplace. For instance, in 2025, 349 COREs were released at the end of their terms.

25.     During January 2026, 303 CORE employees reached the end of their terms of employment. Pursuant to its lawful authority, DHS decided not to reappoint 192 of them. However, DHS rescinded non-renewals for 33 of those 192 COREs within one week.

26.     The 159 non-renewals of CORE employees in January 2026 do not jeopardize FEMA's mission, or impair specific response teams. The CORE program continues to exist, operate, and fulfill its mission, and FEMA's functions continue unaltered.

27.     The January 2026 non-renewals of COREs do not threaten FEMA's ability to perform its statutory mandate. FEMA routinely surges personnel (and equipment and other assistance), as needed.

28.     There is no plan under consideration which calls for the "blanket" or indiscriminate non-renewal of all COREs. Just the opposite. Rather, FEMA and DHS are considering non-renewals of COREs for whom there are performance or misconduct issues, or where a supervisor determines they are overstaffed.

### The Government-Wide Hiring Freeze

29.     On January 20, 2025, the President announced a government-wide hiring freeze. The same day, OMB and OPM issued guidance related to the Executive Order which implemented a hiring freeze across executive agencies.

30.     DHS thereafter implemented certain procedures for review of hiring decisions. On March 18, 2025, FEMA received DHS permission to approve CORE appointment extensions for COREs in mission-critical positions, for up to two years. CORE appointments in non-mission critical positions could receive 30-day incremental appointments while awaiting DHS approval.

Declaration of Karen S. Evans ISO Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

5

31.    On May 19, 2025, DHS reauthorized FEMA to re-appoint non-mission critical COREs, this time for 180-day periods. That reauthorization existed until its expiration on December 31, 2025. At that point, CORE reappointments started to use the same approval process as other hires throughout FEMA and DHS—including the requirement of final DHS approval.

32.    The posting on FEMA's human resources website, stating that, "FEMA's authority to extend CORE appointments ended on December 31, 2025" relates back to the May 2025 reauthorization—not a blanket policy not to renew COREs in the future.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: February 19, 2026

In Martinsburg, WV:

KAREN S
EVANS

Digitally signed by
KAREN S EVANS
Date: 2026.02.19
21:52:49 -05'00'

Karen S. Evans
Senior Official Performing the Duties of
Administrator ("SOPDA")
Federal Emergency Management Agency

Declaration of Karen S. Evans ISO Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

6



U.S Office of
Management and Budget

U.S Office of
Personnel Management



# MEMORANDUM

**TO:**       Heads of Executive Departments and Agencies

**FROM:**     Matthew J. Vaeth, Acting Director, Office of Management and Budget;
Charles Ezell, Acting Director, Office of Personnel Management

**DATE:**      January 20, 2025

**RE:**        Federal Civilian Hiring Freeze Guidance

---

1. <u>Purpose</u>. This memorandum provides additional guidance regarding the freeze on the hiring of federal civilian employees as directed by the President on January 20, 2025, via Presidential Memorandum (PM) entitled "Hiring Freeze." This guidance clarifies immediate actions to be taken by Heads of executive departments and agencies to implement the PM and provides information on the types of exemptions authorized under this hiring freeze as well as instructions on how departments and agencies can request exemptions from the Office of Personnel Management (OPM) for critical situations where additional exemptions may be warranted.

2. <u>Coverage</u>. This memorandum applies to all Executive departments and agencies regardless of the sources of their operational and programmatic funding and to all types of Federal civilian appointments, regardless of the length of the appointment, except as provided for below or otherwise provided in law. No vacant positions existing at 11:59 A.M. on January 20, 2025, may be filled and no new positions may be created, except in limited circumstances. For the purposes of this memorandum, a position is not considered vacant if an individual has been given an offer of employment prior to noon on January 20, 2025, has signed an offer letter in acceptance of the position, and has a designated start date on or before February 8, 2025. All positions that are not exempt from the hiring freeze must be unlisted from USAJOBS.gov and any other applicable websites no later than January 21. Any recruiters seeking to fill positions on behalf of the government must cease correspondence with candidates no later than January 21.

Contracting outside the Government to circumvent the intent of the PM shall not be permitted. For example, agencies shall not acquire by contract with a commercial vendor services that are substantially similar to those that would have been provided by a Federal civilian in a vacancy covered by the PM.

3. <u>Mandatory Exemptions</u>. For the following exemptions, hiring of veterans shall be prioritized in accordance with veterans' preference statutes. The following exemptions to the Federal civilian hiring freeze are required:

Plaintiffs 38
EXHIBIT
DATE: 4\2\2\6
SUSAN ASHE

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0000428

a. Military personnel in the armed forces and all Federal uniformed personnel, including the U.S. Coast Guard, the Commissioned Corps of the U.S. Public Health Service, and the Commissioned Officer Corps of the National Oceanic and Atmospheric Administration.

b. Positions related to immigration enforcement, national security, or public safety.

c. The nomination and appointment of officials to positions requiring Presidential appointment or Senate confirmation, the appointment of officials to non-career positions in the Senior Executive Service or to Schedule A or C positions in the Excepted Service, the appointment of officials through temporary organization hiring authority pursuant to 5 U.S.C. 3161, or the appointment of any other non-career employees or officials, if approved by agency leadership appointed by the President.

Agency heads shall consult with the OPM in determining the scope and extent of positions covered by these mandatory exemptions.

4. Other exemptions. For the following exemptions, hiring of veterans may be prioritized. In addition, the following exemptions to the Federal civilian hiring freeze are permitted:

a. Filling of positions under programs where limiting the hiring of personnel would conflict with applicable law.

b. Nomination and appointment of officials to positions requiring Presidential appointment, with or without Senate confirmation.

c. Appointment of seasonal employees and short-term temporary employees necessary to meet traditionally recurring seasonal workloads, provided that the agency informs its OMB Resource Management Office in writing in advance of its hiring plans.

d. Hiring by the U.S. Postal Service.

e. Appointments made prior to January 20, 2025, under the Pathways Internship and Presidential Management Fellows programs (this does not include the Recent Graduates program): Agencies shall review such appointments on a case by case basis. Agencies should ensure that such hires understand the provisional nature of these appointments and that retention is not guaranteed.

f. Conversions in the ordinary course to the competitive service of current agency employees serving in positions with conversion authority, such as the Veterans' Recruitment Act (VRA).

g. Appointments made under 5 C.F.R. § 213.3102(r) (time limited positions in support of fellowship or professional/industry exchange programs) provided that the total number of individuals employed under this authority does not exceed the number of employees onboard (hired under this authority) on January 20, 2025.

2

Confidential - Subject to Protective Order     USA-AFGE-Exp.-0000429

h.  Placement of persons with restoration rights accorded by law, such as restoration after absence with injury compensation and restoration after military duty.

i.  Job offers made prior to noon on January 20, 2025, for which the individual has accepted the position and has a designated start date on or before February 8, 2025. Those individuals should report to work according to their respective designated start date.

j.  Job offers made and accepted prior to January 20, 2025, but for which the individual has a confirmed start date that is later than February 8, 2025 (or does not have a confirmed start date), are revoked. If an agency head would like to renew an offer, the agency head should consider essential mission priorities, current agency resources, and funding levels when making determinations about whether to reinstate job offers. If the agency head decides to reinstate the offer, the agency head must seek written approval from OPM before proceeding to hire the employee.

k.  Internal career ladder promotions.

l.  Reallocations (i.e., noncompetitive reassignments and details) of current Federal civilian employees within an agency to meet the highest priority needs (including preservation of national security and other essential services) are not affected. Details (reimbursable and non-reimbursable) between agencies are also not affected; however, agency leadership should ensure that any reimbursable details between agencies are not being used to circumvent the intent of the hiring freeze.

m. Term and temporary appointments of existing Federal employees may be extended up to the maximum allowable time limit, consistent with the conditions/requirements of the legal authority originally used to appoint the employee.

n.  A limited number of voluntary transfers of current SES between agencies, as necessary to secure the leadership capacity of agencies, and where needs cannot be met by reallocation of resources within an agency's current workforce; however, filling of such vacancies is subject to OPM approval in accordance with section 5 below.

o.  The head of any agency may exempt any positions that it deems necessary to:

    i. Meet national security (including foreign relations) responsibilities, that are not covered by Section 3, or

    ii. Meet public safety responsibilities that are not covered by Section 3 (including essential activities to the extent that they protect life and property). Agencies may refer to longstanding guidance, which provides examples of such activities in OMB Memorandum. Agency Operations in the Absence of Appropriations dated 11/17/1981 [see examples 3(a) to 3(k)].

3

Agency heads should consult with appropriate personnel, including the agency Chief Human Capital Officer (CHCO) or equivalent and agency counsel when determining what positions to exempt from the hiring freeze. Agency heads are also required to obtain the approval of the OMB Resource Management Office before seeking the approval of OPM to exempt positions using their agency head authority before implementing these exemptions. This approval must be requested and received in writing before any exemption to the hiring freeze is permitted. Note that in the case of an Inspector General's (IG) office, the Inspector General is considered the agency head for the purposes of determining which positions in the IG office are exempt based on the definitions above, as well as for the purposes of the agency-head review of job offers in the IG office that either do not have a start date or have a designated start date beyond February 1, 2025.

5. Exemptions Granted by OPM. OPM may grant additional exemptions from the hiring freeze for critically important situations, such as ensuring the highest-quality possible provision of Social Security, Medicare, and veterans' benefits. Accordingly, if an agency head assesses that circumstances warrant additional exemptions to the hiring freeze other than those specified above, a request must be made in writing to OPM and signed by the agency head. OPM must approve the request in writing prior to moving forward. The request must:

- Explain the critical need and how it relates to essential services or critical mission requirements.

- Explain why reallocation (reassignment/detail) of existing staff within the agency is not possible to meet the needs outlined in the request.

- Explain the urgency of the need and the consequences of not filling the position within a 3 to 6 month timeline.

Agencies must also notify their respective OMB Resource Management Office of exemption requests to OPM under this provision. Agencies should submit exemption requests to OPM at employ@opm.gov for non-SES positions, with a copy to Amanda Scales at amanda.scales@opm.gov. For approval to reassign executives under Section 4(n), agencies should submit their request to SERS@opm.gov, with a copy to Amanda Scales at amanda.scales@opm.gov.

6. Effective Dates. The guidance in this memorandum is effective immediately. Within 90 days of the publication of the PM issued on January 20, 2025, the Director of the Office of Management and Budget (OMB), in consultation with the Director of OPM and the Administrator of the United States DOGE Service (USDS), shall submit a plan to reduce the size of the Federal Government's workforce through efficiency improvements and attrition. The hiring freeze will expire upon implementation of the OMB plan, with the exception of the Internal Revenue Service (IRS). The freeze shall remain in effect for the IRS until the Secretary of the Treasury, in consultation with the Director of OMB and the Administrator of USDS, determines that it is in the national interest to lift the freeze.

4

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0000431

7. <u>Reports.</u> On the last day of each month, the head of any agency subject to the hiring freeze shall send a report to OPM at employ@opm.gov with the following:

- Name, Job Title, Pay Plan, Series, Grade, Manager Name, Offered Date (date offer was extended), Intended Start Date, and Date of OPM Approval for all job candidates who were extended offers in that month
- Name, Job Title, Pay Plan, Series, Grade, Manager Name, Offered Date (date offer was extended), Intended Start Date, and Date of OPM Approval for all job candidates who accepted offers in that month
- Name, Job Title, Pay Plan, Series, Grade for all new employees who started that month
- Name, Job Title, Pay Plan, Series, and Grade for all employees who departed in that month
- Total employee headcount
- List of positions listed on USAJOBS and/or any other websites discoverable online

8. <u>Inquiries.</u> Questions from departments and agencies regarding the instructions and guidance in this memorandum should be addressed to agency OMB Resource Management Officers and the OPM Office of Workforce Policy and Innovation at employ@opm.gov, with a copy to Amanda Scales at amanda.scales@opm.gov.

5

Confidential - Subject to Protective Order    USA-AFGE-Exp.-0000432

Appendix: Summary of Required Actions by Agency Heads

Important: Please be advised that OPM will remove all postings on USAJOBS.gov that do not clearly meet exemption criteria as described in this memo. Agency head may request approval to reinstate any postings with Amanda Scales, Chief of Staff, OPM at amanda.scales@opm.gov.

ACTION: Agency head must send a summary email to the Chief of Staff, OPM confirming once all of the actions outlined below have been completed and no later than January 22, 2025. OMB shall be cc'd for awareness on this email.

- Offers signed prior to 12pm on January 20, 2025 with a start date ON OR BEFORE February 8, 2025
  - ACTION: Continue/proceed with hiring/onboarding process.
- Offers signed prior to 12pm on January 20, 2025 with (a) a start date AFTER February 8, 2025 OR (b) an unconfirmed start date
  - ACTION:
    - Agency head ensures all of these offers are revoked no later than 5:00 pm EST on January 21, 2025, unless the agency head specifically determines in writing that the offer should be reinstated.
    - If agency head determines that any of these offers should be reinstated, agency head must request and receive approval in writing (via email) from the Chief of Staff, OPM before moving forward with the offer(s). The request should cite the relevant exemption criteria and justifications as outlined in the memo before moving forward. OMB shall be cc'd for awareness on this request. The agency head shall perform this review in bulk and send one email request, with all offers and their justifications listed, for OPM review and approval.
- Vacant positions as of 12pm on January 20, 2025
  - ACTION:
    - Agency head ensures hiring managers, recruiters, and any other employees involved in the hiring process at any stage, instruct candidates that we are no longer hiring for the role and cease correspondence no later than 5:00 pm EST on Tuesday, January 21, 2025.
    - If agency head determines that any of these jobs are exempt from the hiring freeze per the criteria outlined in this memo, and therefore should continue to be posted, agency head must request and receive approval in writing (via email) from the Chief of Staff, OPM before implementing these exemptions. The request should cite the relevant exemption criteria and justifications outlined in the memo before moving forward. OMB shall be cc'd for awareness on this request.

6

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0000433

- Jobs posted to USAJOBS.gov and/or any other external website used to market jobs with the federal government
    - ACTION:
        - Agency head ensures that all jobs currently posted to USAJOBS, and any other external website concurrently in use to market jobs (for example, Monster or LinkedIn) with the federal government, are removed no later than 5:00 pm EST on Tuesday, January 21, 2025.
        - If agency head determines that any of these jobs are exempt from the hiring freeze per the criteria outlined in this memo, and therefore should continue to be posted and actively recruited for, agency head must request and receive approval in writing (via email) from the Chief of Staff, OPM before implementing these exemptions. The request should cite the relevant exemption criteria and justifications outlined in the memo. OMB shall be cc'd for awareness on this request.

Notification of Updates to Systems & Processes:

To ensure the hiring freeze is observed, (1) OPM may communicate updates to job posting and offer approval procedures, and (2) agency heads are required to provide OPM with a monthly report (details outlined in the Reports section below).

Required Reports:

On the last day of each month, the head of any agency subject to the hiring freeze shall send a report to the Chief of Staff, OPM and to employ@opm.gov, with OMB cc'd for awareness, with the below:

- Job candidates who were extended offers in that month:
    - (1) Name, (2) Job Title, (3) Manager Name, (4) Offered Date (date offer was extended), (5) Intended Start Date, and (6) Date of OPM Approval
- Job candidates who signed offers in that month:
    - (1) Name, (2) Job Title, (3) Manager Name, (4) Offered Date (date offer was extended), (5) Intended Start Date, and (6) Date of OPM Approval
- Employees who departed in that month:
    - (1) Name, (2) Job Title
- Total employee headcount
- List of positions on USAJOBS and/or any other websites discoverable online

7

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0000434

| | |
|---|---|
| **From:** | Scales, Amanda D. [Amanda.Scales@opm.gov] |
| **Sent:** | 1/21/2025 4:09:43 PM |
| **To:** | Edwards, Roland [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=45e430c1801d487ebaa145ab322c9140-Edwards, Ro]; Navarro, Mischell [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=f6f2bf5da0f442269459a4f69d784c76-814c02dc-fa] |
| **Subject:** | [Important] Clarification on Hiring Freeze for DHS |

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact your component SOC with questions or concerns.

Hi Roland and Mischell,

I wanted to follow up here over email that given clear relevance to the exemption criteria, DHS is not impacted by the hiring freeze. You do not need to work with your agency head to remove job postings or cancel offers in flight. If the team wishes to take this opportunity to inventory your open roles and offers, feel free to do so, but not required. If the team ends up removing or canceling any, please let me know. Thank you!

Thanks,
Amanda



Confidential - Subject to Protective Order      USA-AFGE-Exp.-0000435

U.S. Department of Homeland Security
Washington, DC 20528



# Homeland Security

March 14, 2025

MEMORANDUM FOR:    Component and Office Heads

FROM:    R.D. Alles    RANDOLPH D ALLES    Digitally signed by RANDOLPH D ALLES    Date: 2025.03.14 17:45:59 -04'00'

Deputy Under Secretary for Management

SUBJECT:    DHS Hiring Verification Process

---

Effective immediately, the Department is instituting a new hiring verification process to ensure that all proposed hiring actions are thoroughly vetted and receive approval from the Office of the Secretary. This process prioritizes filling critical vacancies vital to securing our borders and safeguarding our nation, while also permitting strategic hiring in other mission-critical areas as needed.

**Key Provisions:**

- **No hiring without prior approval:** No Component or Office may hire any individual without prior authorization from the Office of the Secretary.

- **Exceptions:** The hiring verification process does not apply to the following categories:
  - Law enforcement professionals.
  - Immigration officers.
  - Uniformed members of the U.S. Coast Guard.
  - Attorneys in the Office of the General Counsel supporting the above roles.
  - Other positions listed in Attachment 1.

- **Additional exceptions:** Any additional exceptions must be approved by the Office of the Secretary. Requests for exceptions should include a completed DHS Hiring Verification Process Form (Attachment 2), with justification for the proposed hiring action and approval from the Component or Office Head.

If you have any questions or require additional guidance, please contact Roland Edwards, Chief Human Capital Officer at Roland.Edwards@hq.dhs.gov.

Attachments:
1. DHS Priority and Mission Critical Occupations
2. DHS Hiring Verification Process Form

cc: Human Capital Leadership Council



Plaintiffs
EXHIBIT
DATE: 4\2\2\6
SUSAN ASHE

Confidential - Subject to Protective Order    USA-AFGE-Exp.-0000408

Distribution List

Chief of Staff
Under Secretary for Management
Under Secretary for Science and Technology
Under Secretary for Intelligence and Analysis
Under Secretary for Strategy, Policy, and Plans
Commissioner, U.S. Customs and Border Protection
Commandant, United States Coast Guard
Director, United States Secret Service
Director, U.S. Citizenship and Immigration Services
Administrator, Federal Emergency Management Agency
Assistant Secretary (Administrator), Transportation Security Administration
Assistant Secretary (Director), U.S. Immigration and Customs Enforcement
General Counsel
Inspector General
Executive Secretary
Director, Federal Law Enforcement Training Centers
Director, Cybersecurity and Infrastructure Security Agency
Assistant Secretary for Countering Weapons of Mass Destruction
Assistant Secretary for Legislative Affairs
Assistant Secretary for Public Affairs
Assistant Secretary for Partnership and Engagement
Director, Office of Homeland Security Situational Awareness
Chief Medical Officer (Director, Office of Health Security)
Officer for Civil Rights and Civil Liberties
Office of the Immigration Detention Ombudsman
Chief Privacy Officer
U.S. Citizenship and Immigration Services Ombudsman
Law Enforcement Advisor to the Secretary
Military Advisor to the Secretary
Chief Financial Officer
Chief Human Capital Officer
Chief Information Officer
Chief Procurement Officer
Chief Readiness Support Officer
Chief Security Officer
Director, Federal Protective Service
Director, Office of Biometric Identity Management
Executive Director, Program Accountability and Risk Management

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0000409

1. **HS Priority Mission Critical Occupations (PMCO)**

| PMCOs | FY25 Target | FY25 PP3 Onboard | Vacant |
|---|---|---|---|
| CBP Air Interdiction Agents (1881) | 530 | 539 | -9 |
| CBP Air Operations (2181) | 11 | 13 | -2 |
| CBP Border Patrol Agents (1896) | 20,205 | 19,291 | 914 |
| CBP Marine Interdiction Agents (1801) | 445 | 429 | 16 |
| CBP Officers (1895) | 26,397 | 26,233 | 164 |
| FEMA Emergency Mgmt Specialists (0089) | 11,485 | 11,314 | 171 |
| FLETC Instruction (1801) | 642 | 549 | 93 |
| ICE Criminal Investigators (1811) | 6,393 | 6,122 | 271 |
| ICE Deportation Officers (1801) | 6,053 | 6,032 | 21 |
| TSA Trans. Security Officers (1802) Full-Time | 45,334 | 46,024 | -690 |
| TSA Trans. Security Officers (1802) Part-Time | 6,368 | 6,493 | -125 |
| USCIS Immigration Services (1801) | 10,583 | 9,022 | 1,561 |
| USSS Special Agents (1811) | 4,157 | 3,880 | 277 |
| USSS Uniformed Division (0083) | 1,693 | 1,573 | 120 |
| **Total PMCOs** | **140,296** | **137,514** | **2,782** |

2. **DHS Mission Critical Occupations (MCO)**

| DHS MCOs | FY25 Target [1] | FY25 PP3 Onboard | Vacant |
|---|---|---|---|
| CBP - 0401 General Natural Resource Mgmt. & Biological Sciences[1] | 2,812 | 2,874 | -62 |
| CBP - 0511 Auditing[1] | 342 | 353 | -11 |
| CBP - 0950 Paralegal Specialist[1] | 361 | 365 | -4 |
| CBP - 1889 Import Specialist[1] | 1,026 | 1,134 | -108 |
| CBP - 1894 Customs Entry and Liquidating[1] | 398 | 443 | -45 |
| CISA - 1801 General Inspection, Investigation & Compliance | 143 | 113 | 30 |
| ICE - 0132 Intelligence | 864 | 100 | 764 |
| ICE - 0905 General Attorney | 1,840 | 1,799 | 41 |
| USCIS - 1801 Adjudication Officer | 489 | 473 | 16 |
| USCIS - 1801 Immigration Officer | 1,579 | 1,337 | 242 |
| USCIS - 1801 Refugee Officer | 573 | 439 | 134 |
| USCIS - 0930 Hearings and Appeals | 1,654 | 1,443 | 211 |
| **Total MCOs** | **12,081** | **10,873** | **1,208** |

[1] FY24 Targets provided by CBP.

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0000410

3.  **Government-wide MCOs**

| Govt Wide MCOs | FY25 Target | FY25 PP3 Onboard | Vacant |
|---|---|---|---|
| 0201 – Human Resource Specialist | 2,491 | 2,416 | 75 |
| 1102 – Contracting Specialist | 1,952 | 1,561 | 391 |
| 2210 – Information Technology Specialist | 7,413 | 6,521 | 892 |
| Total Gov't wide MCOs | 13,037 | 12,179 | 858 |

4.  **Critical Occupations**

| Critical Occupations | FY25 Targets[2] | FY25 PP3 Onboard |
|---|---|---|
| 0080/1801/1811 - Polygraph | | 107 |
| 0701 - Veterinary Medical Science | | 6 |
| 0704 - Animal Health Technician | | 6 |
| Total Critical Occupations | | 119 |

[2] These job series are in a new categorization of functions essential to the ongoing mission of the Department. DHS is working to formulate FY25 targets for these positions.

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0000411

 **Homeland Security**

# DHS Hiring Verification Process

**Component Instructions:** Please submit the completed form, signed by your Component or Office Head, to hiringrequests@hq.dhs.gov. Approved forms will be sent back to your Component or Office Head with a copy to your Component and DHS CHCO. Disapproved forms will be returned to the Component or Office Head.

**Component:** `<select>`          **Sub Organization:**

**Series:** `[        ]`     **Grade:** `<select>`     **Title of Position:**

**Justification for Exemption:**

For series exemptions, please attach the following:

1. Organization charts
2. Mission impact statements
3. Budgetary, EO or other requirements that support the increase to an entire series.

_____
Component or Office Head Signature                    Date

---

## For the Office of the Secretary's Use Only

☐ Approved          ☐ Disapproved          ☐ Return (in case of questions)

**Comments:**

_____
Office of the Secretary's Signature                    Date

Confidential - Subject to Protective Order          USA-AFGE-Exp.-0000412

| | |
|---|---|
| **From:** | Brown, Roger [ROGER.BROWN@hq.dhs.gov] |
| **Sent:** | 3/18/2025 2:16:57 PM |
| **To:** | Prieur, La'Toya [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=7a1f9a2d46d441b48f01c528417f05c7-c845522b-f5] |
| **Subject:** | RE: INFO: DHS Hiring Verification Process |

Good question. If it is not in the realm of a PMCO or MCO, you would need to ask for a waiver to extend for 2 additional years.

**Roger E. Brown Jr.**
*Deputy Chief Human Capital Officer*
*Office of the Chief Human Capital Officer*
*Department of Homeland Security*
Phone: 202-381-8170

---

**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Tuesday, March 18, 2025 2:05 PM
**To:** Brown, Roger <ROGER.BROWN@hq.dhs.gov>
**Cc:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: INFO: DHS Hiring Verification Process
**Importance:** High

Good afternoon Roger.

I would like to confirm if extending the appointment of a FEMA Cadre of On-Call Response Employee (CORE) is considered a hiring action? For reference, CORE employees are generally placed on two-year appointments and extended in two-year increments based upon agency needs.

LP

**From:** Brown, Roger <ROGER.BROWN@hq.dhs.gov>
**Sent:** Friday, March 14, 2025 6:07 PM
**To:** HCLC-Principals <HCLC-Principals@hq.dhs.gov>; HCLC-Deputies <HCLC-Deputies@hq.dhs.gov>
**Subject:** INFO: DHS Hiring Verification Process

## MESSAGE FROM ROGER BROWN
## DEPUTY CHIEF HUMAN CAPITAL OFFICER, POLICY, PROGRAMS, AND OVERSIGHT
## OFFICE OF THE CHIEF HUMAN CAPITAL OFFICER

Effective immediately, the Department is implementing a new approval process for all hiring actions, as outlined in the attached guidance signed by DUSM Alles. This process prioritizes filling critical vacancies essential to securing our borders and safeguarding the nation, while allowing for strategic hiring in other mission-critical areas.

**Roger E. Brown Jr.**
*Deputy Chief Human Capital Officer*
*Office of the Chief Human Capital Officer*



Plaintiffs 41
**EXHIBIT**
DATE: 4\2\26
**SUSAN ASHE**

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0000403

*Department of Homeland Security*
Phone: 202-381-8170

| From: | Evans, Karen [karen.evans@fema.dhs.gov] |
|---|---|
| Sent: | 12/19/2025 11:20:20 AM |
| To: | Edwards, Roland [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=45e430c1801d487ebaa145ab322c9140-Edwards, Ro] |
| Subject: | FW: Weekly SES/GS15 Meeting (Summary) |
| Attachments: | RE: INFO: DHS Hiring Verification Process; 25-11621 S1-Signed Action Memo - Reauthorize FEMA to Renew Term Employees 05.19.2025.pdf; INFO: DHS Hiring Verification Process; FY25 PMCO MCO Listing.pdf |

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile: 202-255-4141

**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Thursday, December 18, 2025 4:09 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary)

Ms. Evans,

An update to taskers with requested attachments is provided.

Plaintiffs 45
EXHIBIT
DATE: 4/2/26
SUSAN ASHE

LP

| Task | Comments |
|---|---|
| # of COREs renewed between May 1 – November 30, 2025 | 2,590 – 1,253 (48%) were MCOs. |
| # of COREs offboarded between May 1 – November 30, 2025 | 1,135 – 493 (43%) were MCOs. |
| Delegation to renew COREs | The DHS DUSM issued guidance to components on March 14, 2025, stating the agency would prioritize hiring mission critical vacancies only. All other hiring required S1 approval. A list of MCOs by component and the first version of the DHS hiring verification and approval process were included in the email which is attached (INFO: DHS Hiring Verification and Approval Process).

On March 18, 2025, DHS OCHCO provided email approval for FEMA to extend appointments of primary MCO (Emergency Management Specialists for FEMA) and MCOs for up to 2 years (see RE:INFO: DHS Hiring Verification Process). |

| | |
|---|---|
| | Between March 14 – May 18, 2025, FEMA renewed non-MCO CORE appointments in 30-day increments while pending a decision by S1.  FEMA was granted approval by S1 to extend non-MCO CORE appointments in 180-day increments with performance reviews occurring at the 90-day mark on May 19, 2025 (see 25-11621 S1-Signed Action Memo – Reauthorize FEMA to Renew Term Employees). |
| Latest DHS MCO List | See FY25 PMCO MCO Listing<br>0080 – Security Specialist<br>0083 – Police (uniformed officer)<br>0089 – Emergency Management Specialist<br>0201 – HR Specialist<br>1102 – Contract Specialist<br>2210 – IT Specialist |
| Update CORE non-renewal letters to include an option allowing employees to transfer to the surge (reservist) workforce | Pending |
| Group hiring verification process requests for January (303 total) by Program/Regional office for review/approval | Pending |

**From:** Prieur, La'Toya
**Sent:** Thursday, December 18, 2025 2:21 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** Weekly SES/GS15 Meeting (Summary)

Ms. Evans,

Thank you for taking time to meet with me this afternoon.  Meeting due outs include:

- Data request for the number of Cadre of On Call Response Employees (CORE) renewed between May 2025 – present
- Data request for the number of CORE employees offboarded/not renewed between May 2025 – present
- S1 memo delegating authority to renew COREs assigned to mission critical occupations (MCO) for up to 2 years
- Latest MCO list from DHS
- Update CORE non-renewal letters to include an option allowing employees to transfer to the surge (reservist) workforce
- Group hiring verification process requests for January (303 total) by Program/Regional office for review/approval.  Program/Regional office heads are required to provide a signed justification for renewal prior to elevation to the SOPDA.

As always, please feel welcome to reach out for further discussion.


**La' Toya Prieur, MBA**
Chief Human Capital Officer | Office of the Chief Human Capital Officer | Mission Support
Mobile Phone: (771) 219-5434
Latoya.Prieur@fema.dhs.gov

Confidential - Subject to Protective Order        USA-AFGE-Exp.-0000401

*Executive Assistant:* Agnes.Gautier@fema.dhs.gov

Federal Emergency Management Agency
fema.gov



| From: | Evans, Karen [karen.evans@fema.dhs.gov] |
|---|---|
| Sent: | 12/19/2025 11:29:14 AM |
| To: | Edwards, Roland [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=45e430c1801d487ebaa145ab322c9140-Edwards, Ro] |
| Subject: | FW: Weekly SES/GS15 Meeting (Summary) |

Here is the other email

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile: 202-255-4141



**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 8:23 AM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** Re: Weekly SES/GS15 Meeting (Summary)

Ma'am,

1,253 P/MCOs have been renewed. I'll pull my archives for additional info as this was approved under FEMAs first Acting Administrator.

LP

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 12:38 AM
**To:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary)

Also, I think you may to re-read your notes below and the email you provided.
You did NOT receive approval as indicated in your chart on March 18
I read the email you attached...for your convenience here is the text:

Good question. If it is not in the realm of a PMCO or MCO, you would need to ask for a waiver to extend for 2 additional years.

It clearly states you need to ask for a waiver....given your chart, it appears you have NO authority to extend ANY MCO agreements for two years.

Now the question is: How many CORE agreements since March have you extended for two years?
As of 10/21 at 2:40pm you have the following breakout of COREs

Confidential - Subject to Protective Order    USA-AFGE-Exp.-0000415

## CORE Employees w/Expiring Appointments (<180 days)

- 2,363 total
- 801 mission critical occupations (MCO)
  - 1,562 non-MCO expiring appointments
- Series and number of employees
  - 0018 – Safety and Occupational Health: 5
  - 0020 – Community Planning: 13
  - 0028 – Environmental Protection: 128
  - 0080 – Security Administration (MCO): 32
  - 0089 – Emergency Management (MCO): 631
  - 0160 – Civil Rights Analyst: 10
  - 0193 – Archaeologist: 3
  - 0201 – Human Resources Management (MCO): 21
  - 0203 – Human Resources Assistant: 11
  - 0260 – EEO Specialist: 4
  - 0301 – General Administrative: 269
  - 0303 – Administrative Technician: 23
  - 0306 – Government Information Specialist: 4
  - 0308 – Record Information Specialist: 3
  - 0340 – Program Manager: 12
  - 0341 – Administrative Officer: 1
  - 0342 – Support Services Specialist: 3
  - 0343 – Management and Program Analyst: 429
  - 0346 – Logistics Management: 96
  - 0391 – Telecommunications Specialist: 13
  - 0501 – Financial Administrative Specialist: 106
  - 0503 – Financial Technician: 3
  - 0510 – Accountant: 4
  - 0525 – Accounting Technician: 22
  - 0560 – Budget Analyst: 1
  - 0801 – General Engineer: 9
  - 0808 – Architect: 6
  - 0810 – Civil Engineer: 18
  - 0828 – Construction Analyst: 16
  - 0850 – Electrical Engineer: 1
  - 0856 – Electronic Technician: 2
  - 0901 – Legal Administration Specialist: 1
  - 0905 – Attorney: 35
  - 0950 – Paralegal: 1
  - 1001 – General Arts and Information: 6
  - 1035 – Public Affairs Specialist: 55
  - 1060 – Videographer: 1
  - 1071 – Audio Visual Specialist: 2
  - 1084 – Visual Information Specialist: 1
  - 1101 – General Business and Industry: 24
  - 1102 – Contracting (MCO): 27
  - 1105 – Purchasing: 1
  - 1106 – Procurement Technician: 2
  - 1109 – Grants Management: 65
  - 1170 – Realty Specialist: 1
  - 1176 – Building Management: 2

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0000416

- 1530 – Statistician: 2
- 1550 – Computer Scientist: 1
- 1560 – Data Scientist: 1
- 1601 – Equipment, Facilities, and Services: 6
- 1640 – Facility Operations: 2
- 1712 – Training Specialist: 35
- 1750 – Instructional Systems Specialist: 2
- 1801 – General Inspection: 20
- 1805 – Investigative Analyst: 3
- 1810 – Investigator: 9
- 1910 – Quality Assurance Specialist: 9
- 2001 – General Supply: 14
- 2003 – Supply Management: 18
- 2010 – Inventory Management: 18
- 2101 – Transportation Specialist: 9
- 2150 – Air Operations Specialist: 1
- 2210 – IT Specialist (MCO): 90

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

---

**From:** Evans, Karen
**Sent:** Friday, December 19, 2025 12:29 AM
**To:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary)

LaToya
Thank you for the updates and this matches to the notes I have. However, in the meeting and the note you have S1...but the process outlined states there is an email from OCHO at HQ which was the deputy...
So, there is no memo from S1?

- S1 memo delegating authority to renew COREs assigned to mission critical occupations (MCO) for up to 2 years

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

Confidential - Subject to Protective Order    USA-AFGE-Exp.-0000417

**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Thursday, December 18, 2025 4:09 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary)

Ms. Evans,

An update to taskers with requested attachments is provided.

LP

| Task | Comments |
|---|---|
| # of COREs renewed between May 1 – November 30, 2025 | 2,590 – 1,253 (48%) were MCOs. |
| # of COREs offboarded between May 1 – November 30, 2025 | 1,135 – 493 (43%) were MCOs. |
| Delegation to renew COREs | The DHS DUSM issued guidance to components on March 14, 2025, stating the agency would prioritize hiring mission critical vacancies only. All other hiring required S1 approval. A list of MCOs by component and the first version of the DHS hiring verification and approval process were included in the email which is attached (INFO: DHS Hiring Verification and Approval Process).<br><br>On March 18, 2025, DHS OCHCO provided email approval for FEMA to extend appointments of primary MCO (Emergency Management Specialists for FEMA) and MCOs for up to 2 years (see RE:INFO: DHS Hiring Verification Process).<br><br>Between March 14 – May 18, 2025, FEMA renewed non-MCO CORE appointments in 30-day increments while pending a decision by S1. FEMA was granted approval by S1 to extend non-MCO CORE appointments in 180-day increments with performance reviews occurring at the 90-day mark on May 19, 2025 (see 25-11621 S1-Signed Action Memo – Reauthorize FEMA to Renew Term Employees). |
| Latest DHS MCO List | See FY25 PMCO MCO Listing<br>0080 – Security Specialist<br>0083 – Police (uniformed officer)<br>0089 – Emergency Management Specialist<br>0201 – HR Specialist<br>1102 – Contract Specialist<br>2210 – IT Specialist |
| Update CORE non-renewal letters to include an option allowing employees to transfer to the surge (reservist) workforce | Pending |

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0000418

| Group hiring verification process requests for January (303 total) by Program/Regional office for review/approval | Pending |
| --- | --- |

**From:** Prieur, La'Toya
**Sent:** Thursday, December 18, 2025 2:21 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** Weekly SES/GS15 Meeting (Summary)

Ms. Evans,

Thank you for taking time to meet with me this afternoon.  Meeting due outs include:
- Data request for the number of Cadre of On Call Response Employees (CORE) renewed between May 2025 – present
- Data request for the number of CORE employees offboarded/not renewed between May 2025 – present
- S1 memo delegating authority to renew COREs assigned to mission critical occupations (MCO) for up to 2 years
- Latest MCO list from DHS
- Update CORE non-renewal letters to include an option allowing employees to transfer to the surge (reservist) workforce
- Group hiring verification process requests for January (303 total) by Program/Regional office for review/approval.  Program/Regional office heads are required to provide a signed justification for renewal prior to elevation to the SOPDA.

As always, please feel welcome to reach out for further discussion.


**La' Toya Prieur, MBA**
Chief Human Capital Officer | Office of the Chief Human Capital Officer | Mission Support
Mobile Phone: (771) 219-5434
Latoya.Prieur@fema.dhs.gov
*Executive Assistant: Agnes.Gautier@fema.dhs.gov*
Federal Emergency Management Agency
fema.gov



| From: | Evans, Karen [karen.evans@fema.dhs.gov] |
|---|---|
| Sent: | 12/19/2025 11:57:49 AM |
| To: | Edwards, Roland [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=45e430c1801d487ebaa145ab322c9140-Edwards, Ro] |
| CC: | Prieur, La'Toya [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=7a1f9a2d46d441b48f01c528417f05c7-c845522b-f5]; Khan, Puneet [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=4a89c72ce5fa4ae98a97f713981ed2ea-a88c572c-95]; Bilicic, William [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=167cfe1abf9f49b0a82f196ee70d9dab-de145c0a-38]; Voorhies, Kara [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=0bd75d92ec084841b6f69b4f3e2a270c-1ceec692-a4]; Allen, Jotham [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=7250c4c2bb4f4913a71535b933831407-jotham.alle] |
| Subject: | FW: Weekly SES/GS15 Meeting (Summary) NEED Additional Information |
| Attachments: | OMB OPM Hiring Freeze Memorandum 1-20-2025.pdf; [Important] Clarification on Hiring Freeze for DHS; RE: Cessation of Onboarding |

Roland

Here is additional information. As you know, we were both working this from the other side. And FEMA didn't "erroneously" report but rather reported correctly which highlighted the issue in the first place. COREs counted as Hires. As I recall, FEMA was "arguing" COREs did NOT count. However, they increase the roles and they were being paid from the DRF/DRS.

The memo was issued by DUSM to address "all" hiring variations especially the one at FEMA. Also, I have asked La'Toya to pull the SF50s which have been processed by FEMA for the DHS (089) series and the governmentwide series of MCOs...please if you could also pull the data that would be terrific.

Thanks in advance

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141



Plaintiffs 47
EXHIBIT
DATE: 4|2|26
SUSAN ASHE

**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 11:48 AM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary) NEED Additional Information

Ma'am,

**BLUF**: A timeline and background information are provided to explain the evolution of FEMAs CORE renewal process.

**Background**:

●  Prior to January 20, 2025, FEMA followed the CORE manual to appoint and reappoint term-limited employees. Terms were generally made in 2–4-year increments at the request of program/regional leadership.

- On January 20, 2025, OMB and OPM issued guidance related to the Executive Order which implemented a hiring freeze across executive agencies. DHS/FEMA were initially exempt due to the national security clause (see [Important] Clarification on Hiring Freeze for DHS).

- FEMA continued to extend CORE appointments based on the OMB OPM Hiring Freeze Memorandum issued 1-20-2025 (attached). The "Other Exemptions" category (paragraph 4m) states, "Term and temporary appointments of existing Federal employees may be extended up to the maximum allowable time limit, consistent with the conditions/requirements of the legal authority originally used to appoint the employee."

- In March 2025, CORE renewal data was erroneously reported to S1 as "new hires" v. "term renewals" based on a nature of action report generated within DHS.

  o     The team is currently generating a report with the data requested.

- The March 14, 2025, DHS Hiring Verification Process memo issued by the DUSM (not S1 as I mentioned during our meeting) excepted priority and mission critical occupations from the new verification process.

- On March 18, 2025, the SOPDA issued guidance to cease onboarding of any new employees (see RE: Cessation of Onboarding). Leadership's intent was to evaluate all employees who onboarded and develop an enterprise approach to hiring MCOs.

- FEMA guidance prompted me to contact DHS OCHCO requesting confirmation to extend CORE appointments. DHS responded with, "If it is not in the realm of a PMCO or MCO, you would need to ask for a waiver to extend for 2 additional years."

Based on the OMB/OPM memo and the DHS exception to onboarding PMCO and MCO series employees, FEMA moved forward with 2-year reappointments of MCOs. Non-MCO employees with appointment expirations occurring between March 18 – May 18, 2025, were extended in 30-day increments until S1 provided FEMA approval to extend appointments for up to 180-days through December 31, 2025.

The team is currently pulling data to provide CORE renewal and termination data for the timeframe requested. I will share data points this afternoon.


LP


---

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 11:43 AM
**To:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary) NEED Additional Information

I really need this information ASAP.
I need to know what has been done. I have also discussed this situation with Roland Edwards
He too is pulling the thread because he does NOT recall FEMA having the "authority" to process two year renewals.

In addition to the December information, I want to have the total of SF-50s which have occurred to place people into the following positions:

Series 089
Any HR positions
Any IT either 343/2210 or the program management (I can't recall off the top of my head 😊)
Any 1105
Any 0505

Confidential - Subject to Protective Order

Any 0560
Since March 18…to present

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 8:31 AM
**To:** Bilicic, William <william.bilicic@fema.dhs.gov>; Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** Re: Weekly SES/GS15 Meeting (Summary)

Will our HR processing systems run on MS DOS which was introduced in the 1980s. The lasted reporting data is from pay period 23 (end of November). 562 appointments expire in December; the team will have to manually pull the number that will be off boarded.

LP

**From:** Bilicic, William <william.bilicic@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 8:19 AM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary)

Good morning all,

In addition to Karen's points below, do we have the information regarding the number of COREs renewed/not renewed so far in December? I noticed the data below only goes to November.

Thanks!

Sincerely,
Will

Will Bilicic
Special Advisor to the Administrator
Federal Emergency Management Agency
U.S. Department of Homeland Security
Mobile: (202) 706-3095

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0000422

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 12:38 AM
**To:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary)

Also, I think you may to re-read your notes below and the email you provided.
You did NOT receive approval as indicated in your chart on March 18
I read the email you attached...for your convenience here is the text:

Good question. If it is not in the realm of a PMCO or MCO, you would need to ask for a waiver to extend for 2 additional years.

It clearly states you need to ask for a waiver....given your chart, it appears you have NO authority to extend ANY MCO agreements for two years.

Now the question is: How many CORE agreements since March have you extended for two years?
As of 10/21 at 2:40pm you have the following breakout of COREs

## CORE Employees w/Expiring Appointments (<180 days)

- 2,363 total
- 801 mission critical occupations (MCO)
  - 1,562 non-MCO expiring appointments
- Series and number of employees
  - 0018 – Safety and Occupational Health: 5
  - 0020 – Community Planning: 13
  - 0028 – Environmental Protection: 128
  - 0080 – Security Administration (MCO): 32
  - 0089 – Emergency Management (MCO): 631
  - 0160 – Civil Rights Analyst: 10
  - 0193 – Archaeologist: 3
  - 0201 – Human Resources Management (MCO): 21
  - 0203 – Human Resources Assistant: 11
  - 0260 – EEO Specialist: 4
  - 0301 – General Administrative: 269
  - 0303 – Administrative Technician: 23
  - 0306 – Government Information Specialist: 4
  - 0308 – Record Information Specialist: 3
  - 0340 – Program Manager: 12
  - 0341 – Administrative Officer: 1
  - 0342 – Support Services Specialist: 3
  - 0343 – Management and Program Analyst: 429
  - 0346 – Logistics Management: 96
  - 0391 – Telecommunications Specialist: 13
  - 0501 – Financial Administrative Specialist: 106
  - 0503 – Financial Technician: 3
  - 0510 – Accountant: 4
  - 0525 – Accounting Technician: 22
  - 0560 – Budget Analyst: 1
  - 0801 – General Engineer: 9

Confidential - Subject to Protective Order          USA-AFGE-Exp.-0000423

- 0808 – Architect: 6
- 0810 – Civil Engineer: 18
- 0828 – Construction Analyst: 16
- 0850 – Electrical Engineer: 1
- 0856 – Electronic Technician: 2
- 0901 – Legal Administration Specialist: 1
- 0905 – Attorney: 35
- 0950 – Paralegal: 1
- 1001 – General Arts and Information: 6
- 1035 – Public Affairs Specialist: 55
- 1060 – Videographer: 1
- 1071 – Audio Visual Specialist: 2
- 1084 – Visual Information Specialist: 1
- 1101 – General Business and Industry: 24
- 1102 – Contracting (MCO): 27
- 1105 – Purchasing: 1
- 1106 – Procurement Technician: 2
- 1109 – Grants Management: 65
- 1170 – Realty Specialist: 1
- 1176 – Building Management: 2
- 1530 – Statistician: 2
- 1550 – Computer Scientist: 1
- 1560 – Data Scientist: 1
- 1601 – Equipment, Facilities, and Services: 6
- 1640 – Facility Operations: 2
- 1712 – Training Specialist: 35
- 1750 – Instructional Systems Specialist: 2
- 1801 – General Inspection: 20
- 1805 – Investigative Analyst: 3
- 1810 – Investigator: 9
- 1910 – Quality Assurance Specialist: 9
- 2001 – General Supply: 14
- 2003 – Supply Management: 18
- 2010 – Inventory Management: 18
- 2101 – Transportation Specialist: 9
- 2150 – Air Operations Specialist: 1
- 2210 – IT Specialist (MCO): 90

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

---

**From:** Evans, Karen
**Sent:** Friday, December 19, 2025 12:29 AM
**To:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham

<jotham.allen@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary)

LaToya
Thank you for the updates and this matches to the notes I have. However, in the meeting and the note you have S1...but the process outlined states there is an email from OCHO at HQ which was the deputy...
So, there is no memo from S1?

• S1 memo delegating authority to renew COREs assigned to mission critical occupations (MCO) for up to 2 years

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

---

**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Thursday, December 18, 2025 4:09 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary)

Ms. Evans,

An update to taskers with requested attachments is provided.

LP

| Task | Comments |
|---|---|
| # of COREs renewed between May 1 – November 30, 2025 | 2,590 – 1,253 (48%) were MCOs. |
| # of COREs offboarded between May 1 – November 30, 2025 | 1,135 – 493 (43%) were MCOs. |
| Delegation to renew COREs | The DHS DUSM issued guidance to components on March 14, 2025, stating the agency would prioritize hiring mission critical vacancies only. All other hiring required S1 approval. A list of MCOs by component and the first version of the DHS hiring verification and approval process were included in the email which is attached (INFO: DHS Hiring Verification and Approval Process).<br><br>On March 18, 2025, DHS OCHCO provided email approval for FEMA to extend appointments of primary MCO (Emergency Management Specialists for FEMA) and MCOs for up to 2 years (see RE:INFO: DHS Hiring Verification Process). |

Confidential - Subject to Protective Order      USA-AFGE-Exp.-0000425

| | |
|---|---|
| | Between March 14 – May 18, 2025, FEMA renewed non-MCO CORE appointments in 30-day increments while pending a decision by S1. FEMA was granted approval by S1 to extend non-MCO CORE appointments in 180-day increments with performance reviews occurring at the 90-day mark on May 19, 2025 (see 25-11621 S1-Signed Action Memo – Reauthorize FEMA to Renew Term Employees). |
| Latest DHS MCO List | See FY25 PMCO MCO Listing<br>0080 – Security Specialist<br>0083 – Police (uniformed officer)<br>0089 – Emergency Management Specialist<br>0201 – HR Specialist<br>1102 – Contract Specialist<br>2210 – IT Specialist |
| Update CORE non-renewal letters to include an option allowing employees to transfer to the surge (reservist) workforce | Pending |
| Group hiring verification process requests for January (303 total) by Program/Regional office for review/approval | Pending |

**From:** Prieur, La'Toya
**Sent:** Thursday, December 18, 2025 2:21 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** Weekly SES/GS15 Meeting (Summary)

Ms. Evans,

Thank you for taking time to meet with me this afternoon. Meeting due outs include:

• Data request for the number of Cadre of On Call Response Employees (CORE) renewed between May 2025 – present
• Data request for the number of CORE employees offboarded/not renewed between May 2025 – present
• S1 memo delegating authority to renew COREs assigned to mission critical occupations (MCO) for up to 2 years
• Latest MCO list from DHS
• Update CORE non-renewal letters to include an option allowing employees to transfer to the surge (reservist) workforce
• Group hiring verification process requests for January (303 total) by Program/Regional office for review/approval. Program/Regional office heads are required to provide a signed justification for renewal prior to elevation to the SOPDA.

As always, please feel welcome to reach out for further discussion.

**La' Toya Prieur, MBA**
Chief Human Capital Officer | Office of the Chief Human Capital Officer | Mission Support
Mobile Phone: (771) 219-5434
Latoya.Prieur@fema.dhs.gov

Confidential - Subject to Protective Order   USA-AFGE-Exp.-0000426

*Executive Assistant:* Agnes.Gautier@fema.dhs.gov
Federal Emergency Management Agency
fema.gov



Confidential - Subject to Protective Order          USA-AFGE-Exp.-0000427

**From:**   Prieur, La'Toya [latoya.prieur@fema.dhs.gov]
**Sent:**   12/19/2025 4:49:22 PM
**To:**    Edwards, Roland [/o=ExchangeLabs/ou=Exchange Administrative Group
        (FYDIBOHF23SPDLT)/cn=Recipients/cn=45e430c1801d487ebaa145ab322c9140-Edwards, Ro]; Evans, Karen
        [/o=ExchangeLabs/ou=Exchange Administrative Group
        (FYDIBOHF23SPDLT)/cn=Recipients/cn=a16a4d39d35f406985868f5b1340d72c-8679e806-6e]
**CC:**    Khan, Puneet [/o=ExchangeLabs/ou=Exchange Administrative Group
        (FYDIBOHF23SPDLT)/cn=Recipients/cn=4a89c72ce5fa4ae98a97f713981ed2ea-a88c572c-95]; Bilicic, William
        [/o=ExchangeLabs/ou=Exchange Administrative Group
        (FYDIBOHF23SPDLT)/cn=Recipients/cn=167cfe1abf9f49b0a82f196ee70d9dab-de145c0a-38]; Voorhies, Kara
        [/o=ExchangeLabs/ou=Exchange Administrative Group
        (FYDIBOHF23SPDLT)/cn=Recipients/cn=0bd75d92ec084841b6f69b4f3e2a270c-1ceec692-a4]; Allen, Jotham
        [/o=ExchangeLabs/ou=Exchange Administrative Group
        (FYDIBOHF23SPDLT)/cn=Recipients/cn=7250c4c2bb4f4913a71535b933831407-jotham.alle]; Prieur, La'Toya
        [/o=ExchangeLabs/ou=Exchange Administrative Group
        (FYDIBOHF23SPDLT)/cn=Recipients/cn=7a1f9a2d46d441b48f01c528417f05c7-c845522b-f5]
**Subject:**  RE: Weekly SES/GS15 Meeting (Summary) NEED Additional Information


Sharing requested data regarding CORE appointments with a breakout of MCOs for CY 2025. The data team is generating a report to show the number of FEMA employees who were reassigned to a MCO January 20, 2025 – present.

- **CORE renewals between January 1 – November 30, 2025: 3,826**
  - Security (0080): 59
  - Police (0083): 0
  - Emergency Management Specialist (0089): 1,585
  - HR Specialist (201): 28
  - Attorney (0905): 56
  - Contract Specialist (1102): 29
  - IT Specialist (2210): 151

- **CORE renewals between January 20 – November 30, 2025: 3,579**
  - Security (0080): 52
  - Police (0083): 0
  - Emergency Management Specialist (0089): 1,494
  - HR Specialist (201): 26
  - Attorney (0905): 47
  - Contract Specialist (1102): 27
  - IT Specialist (2210): 138

- **Number of COREs offboarded between January 1 – November 30, 2025: 1,425**
  - Security (0080): 12
  - Police (0083): 0
  - Emergency Management Specialist (0089): 545
  - HR Specialist (201): 10
  - Attorney (0905): 32



Plaintiffs 49
EXHIBIT
DATE: 4|2|26
SUSAN ASHE

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0000446

- o    Contract Specialist (1102): 7
- o    IT Specialist (2210): 38

- **Number of COREs offboarded between January 20 – November 30, 2025: 1,391**
- o    Security (0080): 12
- o    Police (0083): 0
- o    Emergency Management Specialist (0089): 529
- o    HR Specialist (201): 10
- o    Attorney (0905): 32
- o    Contract Specialist (1102): 7
- o    IT Specialist (2210): 36


**From:** Edwards, Roland <roland.edwards@HQ.DHS.GOV>
**Sent:** Friday, December 19, 2025 12:26 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary) NEED Additional Information

Good afternoon!

La'Toya and I had a quick chat and will sync on the numbers to respond back to you.

Thanks!

-R

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 11:58 AM
**To:** Edwards, Roland <roland.edwards@HQ.DHS.GOV>
**Cc:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** FW: Weekly SES/GS15 Meeting (Summary) NEED Additional Information

Roland
Here is additional information.  As you know, we were both working this from the other side.  And FEMA didn't "erroneously" report but rather reported correctly which highlighted the issue in the first place.  COREs counted as Hires.  As I recall, FEMA was "arguing" COREs did NOT count.  However, they increase the roles and they were being paid from the DRF/DRS.

The memo was issued by DUSM to address "all" hiring variations especially the one at FEMA.
Also, I have asked La'Toya to pull the SF50s which have been processed by FEMA for the DHS (089) series and the governmentwide series of MCOs...please if you could also pull the data that would be terrific.

Thanks in advance

Confidential - Subject to Protective Order    USA-AFGE-Exp.-0000447

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141


**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 11:48 AM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary) NEED Additional Information

Ma'am,

**BLUF**: A timeline and background information are provided to explain the evolution of FEMAs CORE renewal process.

**Background**:

- Prior to January 20, 2025, FEMA followed the CORE manual to appoint and reappoint term-limited employees.  Terms were generally made in 2–4-year increments at the request of program/regional leadership.

- On January 20, 2025, OMB and OPM issued guidance related to the Executive Order which implemented a hiring freeze across executive agencies.  DHS/FEMA were initially exempt due to the national security clause (see [Important] Clarification on Hiring Freeze for DHS).

- FEMA continued to extend CORE appointments based on the OMB OPM Hiring Freeze Memorandum issued 1-20-2025 (attached).  The "Other Exemptions" category (paragraph 4m) states, "Term and temporary appointments of existing Federal employees may be extended up to the maximum allowable time limit, consistent with the conditions/requirements of the legal authority originally used to appoint the employee."

- In March 2025, CORE renewal data was erroneously reported to S1 as "new hires" v. "term renewals" based on a nature of action report generated within DHS.

  o   The team is currently generating a report with the data requested.

- The March 14, 2025, DHS Hiring Verification Process memo issued by the DUSM (not S1 as I mentioned during our meeting) excepted priority and mission critical occupations from the new verification process.

- On March 18, 2025, the SOPDA issued guidance to cease onboarding of any new employees (see RE: Cessation of Onboarding).  Leadership's intent was to evaluate all employees who onboarded and develop an enterprise approach to hiring MCOs.

- FEMA guidance prompted me to contact DHS OCHCO requesting confirmation to extend CORE appointments.  DHS responded with, "If it is not in the realm of a PMCO or MCO, you would need to ask for a waiver to extend for 2 additional years."

Based on the OMB/OPM memo and the DHS exception to onboarding PMCO and MCO series employees, FEMA moved forward with 2-year reappointments of MCOs.  Non-MCO employees with appointment expirations occurring between March 18 – May 18, 2025, were extended in 30-day increments until S1 provided FEMA approval to extend appointments for up to 180-days through December 31, 2025.

The team is currently pulling data to provide CORE renewal and termination data for the timeframe requested.  I will share data points this afternoon.

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0000448

LP

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 11:43 AM
**To:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary) NEED Additional Information

I really need this information ASAP.
I need to know what has been done. I have also discussed this situation with Roland Edwards
He too is pulling the thread because he does NOT recall FEMA having the "authority" to process two year
renewals.

In addition to the December information, I want to have the total of SF-50s which have occurred to place people
into the following positions:

Series 089
Any HR positions
Any IT either 343/2210 or the program management (I can't recall off the top of my head 😊)
Any 1105
Any 0505
Any 0560
Since March 18...to present

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 8:31 AM
**To:** Bilicic, William <william.bilicic@fema.dhs.gov>; Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** Re: Weekly SES/GS15 Meeting (Summary)

Will our HR processing systems run on MS DOS which was introduced in the 1980s. The lasted reporting data
is from pay period 23 (end of November). 562 appointments expire in December; the team will have to
manually pull the number that will be off boarded.

LP

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0000449

**From:** Bilicic, William <william.bilicic@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 8:19 AM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary)

Good morning all,

In addition to Karen's points below, do we have the information regarding the number of COREs renewed/not renewed so far in December? I noticed the data below only goes to November.

Thanks!

Sincerely,
Will

Will Bilicic
Special Advisor to the Administrator
Federal Emergency Management Agency
U.S. Department of Homeland Security
Mobile: (202) 706-3095

---

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Friday, December 19, 2025 12:38 AM
**To:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary)

Also, I think you may to re-read your notes below and the email you provided.
You did NOT receive approval as indicated in your chart on March 18
I read the email you attached…for your convenience here is the text:

Good question. If it is not in the realm of a PMCO or MCO, you would need to ask for a waiver to extend for 2 additional years.

It clearly states you need to ask for a waiver….given your chart, it appears you have NO authority to extend ANY MCO agreements for two years.

Now the question is: How many CORE agreements since March have you extended for two years?
As of 10/21 at 2:40pm you have the following breakout of COREs

### CORE Employees w/Expiring Appointments (<180 days)
- 2,363 total
- 801 mission critical occupations (MCO)
  - 1,562 non-MCO expiring appointments
- Series and number of employees
  - 0018 – Safety and Occupational Health: 5
  - 0020 – Community Planning: 13
  - 0028 – Environmental Protection: 128
  - 0080 – Security Administration (MCO): 32

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0000450

- 0089 – Emergency Management (MCO): 631
- 0160 – Civil Rights Analyst: 10
- 0193 – Archaeologist: 3
- 0201 – Human Resources Management (MCO): 21
- 0203 – Human Resources Assistant: 11
- 0260 – EEO Specialist: 4
- 0301 – General Administrative: 269
- 0303 – Administrative Technician: 23
- 0306 – Government Information Specialist: 4
- 0308 – Record Information Specialist: 3
- 0340 – Program Manager: 12
- 0341 – Administrative Officer: 1
- 0342 – Support Services Specialist: 3
- 0343 – Management and Program Analyst: 429
- 0346 – Logistics Management: 96
- 0391 – Telecommunications Specialist: 13
- 0501 – Financial Administrative Specialist: 106
- 0503 – Financial Technician: 3
- 0510 – Accountant: 4
- 0525 – Accounting Technician: 22
- 0560 – Budget Analyst: 1
- 0801 – General Engineer: 9
- 0808 – Architect: 6
- 0810 – Civil Engineer: 18
- 0828 – Construction Analyst: 16
- 0850 – Electrical Engineer: 1
- 0856 – Electronic Technician: 2
- 0901 – Legal Administration Specialist: 1
- 0905 – Attorney: 35
- 0950 – Paralegal: 1
- 1001 – General Arts and Information: 6
- 1035 – Public Affairs Specialist: 55
- 1060 – Videographer: 1
- 1071 – Audio Visual Specialist: 2
- 1084 – Visual Information Specialist: 1
- 1101 – General Business and Industry: 24
- 1102 – Contracting (MCO): 27
- 1105 – Purchasing: 1
- 1106 – Procurement Technician: 2
- 1109 – Grants Management: 65
- 1170 – Realty Specialist: 1
- 1176 – Building Management: 2
- 1530 – Statistician: 2
- 1550 – Computer Scientist: 1
- 1560 – Data Scientist: 1
- 1601 – Equipment, Facilities, and Services: 6
- 1640 – Facility Operations: 2
- 1712 – Training Specialist: 35
- 1750 – Instructional Systems Specialist: 2
- 1801 – General Inspection: 20
- 1805 – Investigative Analyst: 3
- 1810 – Investigator: 9

                USA-AFGE-Exp.-0000451

- o    1910 – Quality Assurance Specialist: 9
- o    2001 – General Supply: 14
- o    2003 – Supply Management: 18
- o    2010 – Inventory Management: 18
- o    2101 – Transportation Specialist: 9
- o    2150 – Air Operations Specialist: 1
- o    2210 – IT Specialist (MCO): 90

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

---

**From:** Evans, Karen
**Sent:** Friday, December 19, 2025 12:29 AM
**To:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary)

LaToya

Thank you for the updates and this matches to the notes I have. However, in the meeting and the note you have S1…but the process outlined states there is an email from OCHO at HQ which was the deputy…
So, there is no memo from S1?

- S1 memo delegating authority to renew COREs assigned to mission critical occupations (MCO) for up to 2 years

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

---

**From:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Sent:** Thursday, December 18, 2025 4:09 PM
**To:** Evans, Karen <karen.evans@fema.dhs.gov>
**Cc:** Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: Weekly SES/GS15 Meeting (Summary)

Ms. Evans,

An update to taskers with requested attachments is provided.

Confidential - Subject to Protective Order          USA-AFGE-Exp.-0000452

LP

| Task | Comments |
|------|----------|
| # of COREs renewed between May 1 – November 30, 2025 | 2,590 – 1,253 (48%) were MCOs. |
| # of COREs offboarded between May 1 – November 30, 2025 | 1,135 – 493 (43%) were MCOs. |
| Delegation to renew COREs | The DHS DUSM issued guidance to components on March 14, 2025, stating the agency would prioritize hiring mission critical vacancies only. All other hiring required S1 approval. A list of MCOs by component and the first version of the DHS hiring verification and approval process were included in the email which is attached (INFO: DHS Hiring Verification and Approval Process).

On March 18, 2025, DHS OCHCO provided email approval for FEMA to extend appointments of primary MCO (Emergency Management Specialists for FEMA) and MCOs for up to 2 years (see RE:INFO: DHS Hiring Verification Process).

Between March 14 – May 18, 2025, FEMA renewed non-MCO CORE appointments in 30-day increments while pending a decision by S1. FEMA was granted approval by S1 to extend non-MCO CORE appointments in 180-day increments with performance reviews occurring at the 90-day mark on May 19, 2025 (see 25-11621 S1-Signed Action Memo – Reauthorize FEMA to Renew Term Employees). |
| Latest DHS MCO List | See FY25 PMCO MCO Listing
0080 – Security Specialist
0083 – Police (uniformed officer)
0089 – Emergency Management Specialist
0201 – HR Specialist
1102 – Contract Specialist
2210 – IT Specialist |
| Update CORE non-renewal letters to include an option allowing employees to transfer to the surge (reservist) workforce | Pending |
| Group hiring verification process requests for January (303 total) by Program/Regional office for review/approval | Pending |

From: Prieur, La'Toya
Sent: Thursday, December 18, 2025 2:21 PM
To: Evans, Karen <karen.evans@fema.dhs.gov>
Cc: Khan, Puneet <puneet.khan@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
Subject: Weekly SES/GS15 Meeting (Summary)

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0000453

Ms. Evans,

Thank you for taking time to meet with me this afternoon.  Meeting due outs include:

- Data request for the number of Cadre of On Call Response Employees (CORE) renewed between May 2025 – present
- Data request for the number of CORE employees offboarded/not renewed between May 2025 – present
- S1 memo delegating authority to renew COREs assigned to mission critical occupations (MCO) for up to 2 years
- Latest MCO list from DHS
- Update CORE non-renewal letters to include an option allowing employees to transfer to the surge (reservist) workforce
- Group hiring verification process requests for January (303 total) by Program/Regional office for review/approval. Program/Regional office heads are required to provide a signed justification for renewal prior to elevation to the SOPDA.

As always, please feel welcome to reach out for further discussion.

**La' Toya Prieur, MBA**
Chief Human Capital Officer | Office of the Chief Human Capital Officer | Mission Support
Mobile Phone: (771) 219-5434
Latoya.Prieur@fema.dhs.gov
*Executive Assistant: Agnes.Gautier@fema.dhs.gov*
Federal Emergency Management Agency
fema.gov

 FEMA

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0000454

| | |
|---|---|
| **From:** | Edwards, Roland [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=45E430C1801D487EBAA145AB322C9140-EDWARDS, RO] |
| **Sent:** | 2/11/2026 12:38:20 AM |
| **To:** | McGill, Greyson [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=fec31a50c67746c98d12189482307d21-618c84e0-74]; Guy, Joseph [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=0c2986f88af140f8a99365c481775957-9ce76bbe-65] |
| **Subject:** | Re: CORE Renewal: 90 day Extensions |

Thanks, will let FEMA know.

---

**From:** McGill, Greyson <Greyson.McGill@hq.dhs.gov>
**Sent:** Tuesday, February 10, 2026 6:10:13 PM
**To:** Guy, Joseph <Joseph.Guy@hq.dhs.gov>; Edwards, Roland <roland.edwards@HQ.DHS.GOV>
**Subject:** Re: CORE Renewal: 90 day Extensions

@Edwards, Roland good to execute.

**Greyson McGill**
Chief of Staff
Under Secretary for Management
U.S. Department of Homeland Security
(202) 531-6356



Freedom 250

Confidentiality Notice
This email message and all documents that accompany it are intended only for the use of the individual or entity to which addressed and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If the reader is not the intended recipient, any disclosure, distribution or other use of this email is prohibited. If you have received this email message in error, please notify the sender immediately. Please consider the environment before printing this e-mail.

---

**From:** Guy, Joseph <Joseph.Guy@hq.dhs.gov>
**Sent:** Tuesday, February 10, 2026 6:09:31 PM
**To:** Edwards, Roland <roland.edwards@HQ.DHS.GOV>
**Cc:** McGill, Greyson <Greyson.McGill@hq.dhs.gov>
**Subject:** Re: CORE Renewal: 90 day Extensions

Good

---

**From:** Edwards, Roland <roland.edwards@HQ.DHS.GOV>
**Sent:** Tuesday, February 10, 2026 4:50:18 PM
**To:** Guy, Joseph <Joseph.Guy@hq.dhs.gov>
**Cc:** McGill, Greyson <Greyson.McGill@hq.dhs.gov>
**Subject:** FW: CORE Renewal: 90 day Extensions

Good afternoon!

Plaintiffs
EXHIBIT
DATE: 4/2/26
SUSAN ASHE

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0000160

Hope your week is going well. Just wanted to check to see if you are okay with the FEMA request for CORE renewals (attached)?

Thanks,

-R

**Roland Edwards**
Chief Human Capital Officer
Office of the Chief Human Capital Officer
U.S. Department of Homeland Security



Freedom 250

Confidentiality Notice
This email message and all documents that accompany it are intended only for the use of the individual or entity to which addressed and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If the reader is not the intended recipient, any disclosure, distribution or other use of this email is prohibited. If you have received this email message in error, please notify the sender immediately. Please consider the environment before printing.

**From:** Evans, Karen <karen.evans@fema.dhs.gov>
**Sent:** Friday, February 6, 2026 4:34 PM
**To:** Guy, Joseph <Joseph.Guy@hq.dhs.gov>
**Cc:** Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Barton, Victoria <victoria.barton@fema.dhs.gov>; Schulenburg, Christopher <CHRISTOPHER.SCHULENBURG@hq.dhs.gov>; McGill, Greyson <Greyson.McGill@hq.dhs.gov>; Edwards, Roland <roland.edwards@HQ.DHS.GOV>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Khan, Puneet <puneet.khan@fema.dhs.gov>
**Subject:** FW: CORE Renewal: 90 day Extensions

Good afternoon, DCOS Guy,
Per our discussion, please see below. La'Toya will work directly with Roland regarding securing HQ approval for these extensions.

Any planned terminations due to the regular order (i.e., no longer needed) will be processed as well. Please let me know if you have any questions.

**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile: 202-255-4141

**From:** Evans, Karen
**Sent:** Friday, February 6, 2026 4:31 PM
**To:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Cc:** Barton, Victoria <victoria.barton@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; Khan, Puneet <puneet.khan@fema.dhs.gov>; Cooch, Shila <shila.cooch@fema.dhs.gov>; Phillips, Gregg <gregg.phillips@fema.dhs.gov>; Hoffman, Erin <Erin.Hoffman@fema.dhs.gov>; Evans, James <james.evans@fema.dhs.gov>; Turi, Keith <Keith.Turi@fema.dhs.gov>; Edwards, Roland

<roland.edwards@HQ.DHS.GOV>; McGill, Greyson <Greyson.McGill@hq.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Sjoberg Radway, Cynthia <cynthia.sjobergradway@fema.dhs.gov>
**Subject:** CORE Renewal: 90 day Extensions

Hi La'Toya

Per our discussion, until further notice, please process CORE Renewals in accordance with HQ policy.   Their renewal dates should NTE 90 days for consistency
Let me know if you have any other questions.


**Karen S. Evans**
Administrator (SOPD)
Federal Emergency Management Agency
U.S. Department of Homeland Security
Karen.evans@fema.dhs.gov
Mobile:  202-255-4141

Confidential - Subject to Protective Order

| From: | Icardi, Michael [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=8EE6A251S1634EB4977326BD7BEE406F-ICARDI, MIC] |
| Sent: | 12/12/2025 8:01:50 AM |
| To: | Thomas, Claire [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=9ede6bb352c3441c9d2578554c3S9d30-Thomas, Cla]; Neurauter, Jeffrey |
| | [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=b8beaaac6b694cf1852839debe8c1292-Neurauter,]; Peterson, Daniel |
| | [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=6a7bdb98dafa403b8812bcbc4ea36db0-Peterson,D] |
| Subject: | RE: METs for Organizations |

Jeff and Daniel – I'm narrowing who is on this reply, given the topic. Jeff – I think you've been in these conversations. Daniel, I'm not sure how read in you are, but in understanding the full workforce, we're going to be working with component leadership on options to implement leadership direction on strategic opportunities for FEMA to become a smaller organization. La'Toya's been in these conversations, and one of the items we need to get a handle on is CORE expiration dates. Do you all have the ability to provide us a rundown of CORE NTEs by person, ideally at minimum, through end of 2026, though if it's easier to dump a file of all COREs and their NTEs, that's great also.

Let Claire or I know if you have any questions or if you need any more details to do this.

Thanks!

Mike Icardi
Senior Advisor (Acting) | Office of Policy and Program Analysis
Office/Mobile: (202) 957-4120
Michael.icardi@fema.dhs.gov

---

**From:** King, Sasteh <sasteh.king@fema.dhs.gov>
**Sent:** Friday, December 12, 2025 7:34 AM
**To:** Icardi, Michael <michael.icardi@fema.dhs.gov>; Thomas, Claire <claire.thomas@fema.dhs.gov>; Mallory, Gavriela <gavriela.mallory@fema.dhs.gov>; Cofer, Jazmine <jazmine.cofer@fema.dhs.gov>
**Cc:** Neurauter, Jeffrey <Jeff.Neurauter@fema.dhs.gov>; Peterson, Daniel <daniel.peterson@fema.dhs.gov>; Revelez, Valerie <valerie.revelez@fema.dhs.gov>; Waller, Tomekia <tomekia.waller@fema.dhs.gov>
**Subject:** RE: METs for Organizations

Hi Mike – Sure thing, we'll tackle adding in the 9/30/25 data this morning.

For future data collections, our team is developing a template that will be distributed to ensure consistency in the employee type information.

Regards,

Sasteh King
Program Analyst, Systems and Analytics Branch
Office of the Chief Human Capital Officer
Federal Emergency Management Agency
Department of Homeland Security
Mobile: 202-717-6814

*Own **your** personnel data and HR needs!*
Review | Edit | Ask



Confidential - Subject to Protective Order

USA-AFGE-Exp.-0001244

  

*Confidentiality Notice:* This communication, along with any attachments, is covered by Federal and State law governing electronic communications and may contain restricted and legally privileged information. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this in error, please reply immediately to the sender and delete this message.

**From:** Icardi, Michael <michael.icardi@fema.dhs.gov>
**Sent:** Thursday, December 11, 2025 1:42 PM
**To:** King, Sasteh <sasteh.king@fema.dhs.gov>; Thomas, Claire <claire.thomas@fema.dhs.gov>; Mallory, Gavriela <gavriela.mallory@fema.dhs.gov>; Cofer, Jazmine <jazmine.cofer@fema.dhs.gov>
**Cc:** Neurauter, Jeffrey <Jeff.Neurauter@fema.dhs.gov>; Peterson, Daniel <daniel.peterson@fema.dhs.gov>; Revelez, Valerie <valerie.revelez@fema.dhs.gov>
**Subject:** RE: METs for Organizations

Sasteh – can we add in a column of data that shows the data as of 9/30/25, that is consistent with what was submitted to DHS for the annual spending plan?

For future data collections, can we force selection from a list of the four CORE types so that we can have consistency in the responses?

Mike Icardi
Senior Advisor (Acting) | Office of Policy and Program Analysis
Office/Mobile: (202) 957-4120
Michael.icardi@fema.dhs.gov

**From:** King, Sasteh <sasteh.king@fema.dhs.gov>
**Sent:** Thursday, December 11, 2025 12:29 PM
**To:** Thomas, Claire <claire.thomas@fema.dhs.gov>; Mallory, Gavriela <gavriela.mallory@fema.dhs.gov>; Cofer, Jazmine <jazmine.cofer@fema.dhs.gov>
**Cc:** Neurauter, Jeffrey <Jeff.Neurauter@fema.dhs.gov>; Peterson, Daniel <daniel.peterson@fema.dhs.gov>; Icardi, Michael <michael.icardi@fema.dhs.gov>; Revelez, Valerie <valerie.revelez@fema.dhs.gov>
**Subject:** RE: METs for Organizations

Hi Claire,

Please see my answers to your questions below.

-    Are we anticipating 24,747 positions in FY26? Or is that current positions filled? Or something else?
o    This is the estimated number of FTEs for the end of FY26. A request from OCHCO went out to program offices, to break down the number they provided in the annual staffing plan for the "9/30/26 Projected FTEs" metric, and the spreadsheet we shared with you is a consolidation of each of the program office submissions.
-    What does TBD represent, and why is it -32?
o    In some situations, ORR did not break down their projected counts into different employee types in their submission and left the employee type as "TBD" instead. I informed ORR of the need to break this information down, but they did not provide an update breaking that number down into specific employee types.
-    It looks like employees are represented as both Perm FT and PFT – is there a difference?
o    There is no difference, program offices provided information in multiple different fashions, and we tried to clean it up where we could and must have missed this situation. This has been updated.
-    What's the difference between Schd C, SES, SES/C, and SES/NC?

                    USA-AFGE-Exp.-0001245

o       Including a breakdown below. Where you see SES, this was a situation where a program office did not specify which SES they were referring to, but I did include definitions for the other categories mentioned.

* SES/C – Senior Executive Service (Career) & Senior Leader
* SES/NC – Senior Executive Service (Non-Career)
* Schedule C – Non-SES political employees.

-       Is there any generalization about the TFT positions? I thought they were the IIJA positions, but they seem to be distributed across programs.

o       TFT positions would mean any employee that has an employment type of "full-time" and an appointment type indicating they are on a temporary or limited appointment. This is not limited to just IIJA positions.

-       Do we have a description of the different types of COREs? Also, do we know why IC CORE is showing as two separate employee types? Below are definitions of the different types of COREs, which I pulled from the 📑 CORE manual.

o       CORE – Unfortunately, we have noticed this could mean any type of CORE. Program offices had provided responses where they would just say "CORE" in the employee type field, which could indicate DC, IC, IM, or IMAT CORE employees.

o       DC CORE – Direct Charge CORE employees. These are CORE employees whose primary duty is to carry out Stafford Act functions in support of open, active declarations or pre-event surge activities to an event for which a declaration is reasonably likely and imminent

o       IC CORE – COREs whose salaries are partially or wholly funded by the DRS account within the DRF.

o       IM CORE – A CORE assigned to a two-year appointment and whose primary job duty is to perform an FQS incident management (IM) position.

o       IMAT CORE – A CORE assigned full-time to an Incident Management Assistance Team (IMAT) and to an IMAT position description.

Regards,

Sasteh

---

**From:** Thomas, Claire <claire.thomas@fema.dhs.gov>
**Sent:** Wednesday, December 10, 2025 9:05 PM
**To:** King, Sasteh <sasteh.king@fema.dhs.gov>; Mallory, Gavriela <gavriela.mallory@fema.dhs.gov>; Cofer, Jazmine <jazmine.cofer@fema.dhs.gov>
**Cc:** Neurauter, Jeffrey <Jeff.Neurauter@fema.dhs.gov>; Peterson, Daniel <daniel.peterson@fema.dhs.gov>; Icardi, Michael <michael.icardi@fema.dhs.gov>; Revelez, Valerie <valerie.revelez@fema.dhs.gov>
**Subject:** RE: METs for Organizations

Thanks for updating! I made a pivot table in the second tab of the excel so we could quickly look at the data by MET alignment. I have a few follow up questions based on pivot table (some data related/some more HR questions):

-       Are we anticipating 24,747 positions in FY26? Or is that current positions filled? Or something else?
-       What does TBD represent, and why is it -32?
-       It looks like employees are represented as both Perm FT and PFT – is there a difference?
-       What's the difference between Schd C, SES, SES/C, and SES/NC?
-       Is there any generalization about the TFT positions? I thought they were the IIJA positions, but they seem to be distributed across programs.
-       Do we have a description of the different types of COREs? Also, do we know why IC CORE is showing as two separate employee types?
o       CORE
o       DC CORE
o       IC CORE
o       IM CORE
o       IMAT CORE

Thank you!

Confidential - Subject to Protective Order    USA-AFGE-Exp.-0001246

Claire Thomas
Director| Strategy Division | Office of Policy and Program Analysis
Mobile: (347) 610-1058
Claire.Thomas@fema.dhs.gov

Federal Emergency Management Agency
**fema.gov**



**From:** King, Sasteh <sasteh.king@fema.dhs.gov>
**Sent:** Wednesday, December 10, 2025 8:43 PM
**To:** Thomas, Claire <claire.thomas@fema.dhs.gov>; Mallory, Gavriela <gavriela.mallory@fema.dhs.gov>; Cofer, Jazmine <jazmine.cofer@fema.dhs.gov>
**Cc:** Neurauter, Jeffrey <Jeff.Neurauter@fema.dhs.gov>; Peterson, Daniel <daniel.peterson@fema.dhs.gov>
**Subject:** RE: METs for Organizations

Hi Claire,

Thanks for flagging this! It looks like there were a lot of records tied to Resilience that were not pulled into the consolidated file. I have updated this so you will now see all information from Resilience reflected. As of now, we just have one organization (please see below) that would need a MET tied to it.

| Org Code | Org Level 2 | Org Level 3 | Org Level 4 | Org Level 5 | MET |
|---|---|---|---|---|---|
| 6104000101000000 | RESILIENCE | NATIONAL PREPAREDNESS DIR | Assistant Administrator | HUMAN CAPITAL, ANALYTICS, RESOURCES AND TECH BR | N/A |

Regards,

Sasteh King
Program Analyst, Systems and Analytics Branch
Office of the Chief Human Capital Officer
Federal Emergency Management Agency
Department of Homeland Security
Mobile: 202-717-6814

*Own **your** personnel data and HR needs!*
Review    |    Edit    |    Ask
 
 
FedHR Navigator

**Confidentiality Notice:** This communication, along with any attachments, is covered by Federal and State law governing electronic communications and may contain restricted and legally privileged information. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this in error, please reply immediately to the sender and delete this message.

**From:** Thomas, Claire <claire.thomas@fema.dhs.gov>
**Sent:** Wednesday, December 10, 2025 2:45 PM
**To:** King, Sasteh <sasteh.king@fema.dhs.gov>; Mallory, Gavriela <gavriela.mallory@fema.dhs.gov>; Cofer, Jazmine <jazmine.cofer@fema.dhs.gov>
**Cc:** Neurauter, Jeffrey <Jeff.Neurauter@fema.dhs.gov>; Peterson, Daniel <daniel.peterson@fema.dhs.gov>
**Subject:** RE: METs for Organizations

Hi Sasteh,

I am looking at this excel, but it looks like there are a number of offices missing (i.e. flood insurance). Is this the full list of all organizations associated with position?

Thanks,


Claire Thomas
Director| Strategy Division  | Office of Policy and Program Analysis
Mobile: (347) 610-1058
Claire.Thomas@fema.dhs.gov

Federal Emergency Management Agency
**fema.gov**



---

**From:** King, Sasteh <sasteh.king@fema.dhs.gov>
**Sent:** Tuesday, December 9, 2025 3:08 PM
**To:** Mallory, Gavriela <gavriela.mallory@fema.dhs.gov>; Cofer, Jazmine <jazmine.cofer@fema.dhs.gov>
**Cc:** Thomas, Claire <claire.thomas@fema.dhs.gov>; Neurauter, Jeffrey <Jeff.Neurauter@fema.dhs.gov>; Peterson, Daniel <daniel.peterson@fema.dhs.gov>
**Subject:** METs for Organizations

Good afternoon Gavriela and Jazmine,

Our team has compiled the FY26 Projected Employee Counts (broken out by org, series, and emp type) submitted by the various program offices, and I am including a link to the consolidated file below. I have attempted to include the METs for all organizations based on the information you provided previously, but I was unable to identify the MET for 37 records.

Could your team assist with populating the MET for these records? The linked file is filtered to show only those entries missing a MET.

Link: Annual Staffing Projected FY26 numbers by Org, Series, & Emp Type.xlsx

Thanks!

Sasteh King
Program Analyst, Systems and Analytics Branch
Office of the Chief Human Capital Officer
Federal Emergency Management Agency

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0001248

Department of Homeland Security
Mobile: 202-717-6814

*Own **your** personnel data and HR needs!*

Review  |  Edit  |  Ask

  

**Confidentiality Notice:** This communication, along with any attachments, is covered by Federal and State law governing electronic communications and may contain restricted and legally privileged information. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this in error, please reply immediately to the sender and delete this message.

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0001249

| From: | Prieur, La'Toya [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D47853C52FB04E47AA9D0194AE59BBB5-0D4E1677-D6] |
| Sent: | 12/24/2025 10:17:12 AM |
| To: | Devine, Jarrett [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=abaea67ca61648de913ef85023594247-Devine, Jar] |
| CC: | Neurauter, Jeffrey [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=b8beaaac6b694cf1852839debe8c1292-Neurauter,]; Sanchez, Blanca |
| | [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=60453facb7f24219b8584785477c429d-7fc8c239-ad] |
| Subject: | Re: Request for Input: Workforce Capacity Planning Exercise |

Jarrett,

I do not recommend asking for any increases. The FY 26 budget is projected to be lower than FY 25. If IMAT is a statutorily required function, you may consider reducing other non mandatory functions to fill the need.

LP

---

**From:** Devine, Jarrett <Jarrett.Devine@fema.dhs.gov>
**Sent:** Wednesday, December 24, 2025 9:53 AM
**To:** Chief-Human-Capital-Officer <Chief-Human-Capital-Officer@fema.dhs.gov>; Prieur, La'Toya <latoya.prieur@fema.dhs.gov>
**Subject:** RE: Request for Input: Workforce Capacity Planning Exercise

Merry Christmas Eve La'Toya.

I have a question. Is retaining more than our count an option in this exercise. For example, IMAT vacancies currently show a count of zero in some areas, but we require those pins to meet statutory requirements. As such can we retain positions above our 25 count in those instances?

---

Jarrett W. Devine
Deputy Regional Administrator | FEMA Region 1 | Department of Homeland Security
Mobile: (617) 835-4880
Fax: (540) 504-2432
Jarrett.Devine@fema.dhs.gov

Federal Emergency Management Agency
fema.gov





Confidential - Subject to Protective Order                     USA-AFGE-Exp.-0004553

**From:** Chief-Human-Capital-Officer <Chief-Human-Capital-Officer@fema.dhs.gov>
**Sent:** Tuesday, December 23, 2025 5:45 PM
**To:** Black, Donna <donna.black@fema.dhs.gov>; Barton, Victoria <victoria.barton@fema.dhs.gov>; Breslin, Thomas <thomas.breslin@fema.dhs.gov>; Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>; Phillips, Gregg <gregg.phillips@fema.dhs.gov>; Hoffman, Erin <Erin.Hoffman@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Sjoberg Radway, Cynthia <cynthia.sjobergradway@fema.dhs.gov>; Arnold, David <david.arnold@fema.dhs.gov>; Gabliks, Eriks <eriks.gabliks@fema.dhs.gov>; Franklin, Tami <tami.franklin@fema.dhs.gov>; Wollenhaupt, Charles <charles.wollenhaupt@fema.dhs.gov>; Couch, Joseph <joseph.couch@fema.dhs.gov>; Waters, Julie <julie.waters@fema.dhs.gov>; Padilla, Kenneth <kenneth.padilla@fema.dhs.gov>; Layou, Thomas <thomas.layou@fema.dhs.gov>; Devine, Jarrett <Jarrett.Devine@fema.dhs.gov>; Morea, Anthony <anthony.morea@fema.dhs.gov>; D'Amora, Andrew <andrew.damora@fema.dhs.gov>; Toro, Manny J <Manny.Toro@fema.dhs.gov>; Peterson, Mark J <Mark.Peterson2@fema.dhs.gov>; Sanders, Catherine <catherine.sanders@fema.dhs.gov>; Lamb, Zachary <zachary.lamb@fema.dhs.gov>; Littrell, Tammy <Tammy.Littrell@fema.dhs.gov>; Baquero, Jose <jose.baquero@fema.dhs.gov>; Doucette, Fred <frederick.doucette@fema.dhs.gov>; Maykovich, Vincent <Vincent.Maykovich@fema.dhs.gov>; Hartnett, Christopher <christopher.hartnett@fema.dhs.gov>; Hutchinson, Lilian <Lilian.Hutchinson@fema.dhs.gov>; Ashe, Robert (Rob) <robert.ashe@fema.dhs.gov>; Chesney, Michael S <michael.chesney@fema.dhs.gov>; Van Der Werff, Jay <jay.vanderwerff@fema.dhs.gov>; Fox, Katherine B <Katherine.Fox5@fema.dhs.gov>; Fenton, Bob <Robert.Fenton@fema.dhs.gov>; Guy, Peter <peter.guy@fema.dhs.gov>; Samuel, Jessica <jessica.samuel@fema.dhs.gov>; Higgins, Jennifer <jennifer.higgins@fema.dhs.gov>
**Cc:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Sanchez, Blanca <blanca.sanchez@fema.dhs.gov>; Neurauter, Jeffrey <Jeff.Neurauter@fema.dhs.gov>; Khan, Puneet <puneet.khan@fema.dhs.gov>; Clayton, Andrew <andrew.clayton@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Subject:** RE: Request for Input: Workforce Capacity Planning Exercise

Password is sp26cy.

As always, please feel welcome to reach out with questions or concerns.

LP

**From:** Chief-Human-Capital-Officer
**Sent:** Tuesday, December 23, 2025 5:42 PM
**To:** Black, Donna <donna.black@fema.dhs.gov>; Barton, Victoria <victoria.barton@fema.dhs.gov>; Breslin, Thomas <thomas.breslin@fema.dhs.gov>; Dobitsch, Stephanie <stephanie.dobitsch@fema.dhs.gov>; Phillips, Gregg <gregg.phillips@fema.dhs.gov>; Hoffman, Erin <Erin.Hoffman@fema.dhs.gov>; Allen, Jotham <jotham.allen@fema.dhs.gov>; Sjoberg Radway, Cynthia <cynthia.sjobergradway@fema.dhs.gov>; Arnold, David <david.arnold@fema.dhs.gov>; Gabliks, Eriks <eriks.gabliks@fema.dhs.gov>; Franklin, Tami <tami.franklin@fema.dhs.gov>; Wollenhaupt, Charles <charles.wollenhaupt@fema.dhs.gov>; Couch, Joseph <joseph.couch@fema.dhs.gov>; Waters, Julie <julie.waters@fema.dhs.gov>; Padilla, Kenneth <kenneth.padilla@fema.dhs.gov>; Layou, Thomas <thomas.layou@fema.dhs.gov>; Devine, Jarrett <Jarrett.Devine@fema.dhs.gov>; Morea, Anthony <anthony.morea@fema.dhs.gov>; D'Amora, Andrew <andrew.damora@fema.dhs.gov>; Toro, Manny J <Manny.Toro@fema.dhs.gov>; Peterson, Mark J <Mark.Peterson2@fema.dhs.gov>; Sanders, Catherine <catherine.sanders@fema.dhs.gov>; Lamb, Zachary <zachary.lamb@fema.dhs.gov>; Littrell, Tammy <Tammy.Littrell@fema.dhs.gov>; Baquero, Jose <jose.baquero@fema.dhs.gov>; Doucette, Fred <frederick.doucette@fema.dhs.gov>; Maykovich, Vincent <Vincent.Maykovich@fema.dhs.gov>; Hartnett, Christopher <christopher.hartnett@fema.dhs.gov>; Hutchinson, Lilian <Lilian.Hutchinson@fema.dhs.gov>; Ashe, Robert (Rob) <robert.ashe@fema.dhs.gov>; Chesney, Michael S <michael.chesney@fema.dhs.gov>; Van Der Werff, Jay <jay.vanderwerff@fema.dhs.gov>; Fox, Katherine B <Katherine.Fox5@fema.dhs.gov>; Fenton, Bob <Robert.Fenton@fema.dhs.gov>; Guy, Peter <peter.guy@fema.dhs.gov>; Samuel, Jessica <jessica.samuel@fema.dhs.gov>; Higgins, Jennifer <jennifer.higgins@fema.dhs.gov>
**Cc:** Prieur, La'Toya <latoya.prieur@fema.dhs.gov>; Sanchez, Blanca <blanca.sanchez@fema.dhs.gov>; Neurauter, Jeffrey

Confidential - Subject to Protective Order

USA-AFGE-Exp.-0004554

<Jeff.Neurauter@fema.dhs.gov>; Khan, Puneet <puneet.khan@fema.dhs.gov>; Clayton, Andrew <andrew.clayton@fema.dhs.gov>; Bilicic, William <william.bilicic@fema.dhs.gov>
**Subject:** Request for Input: Workforce Capacity Planning Exercise

FEMA Leadership,

Consistent with Office of Management and Budget (OMB) and Office of Personnel Management (OPM) guidance implementing Executive Order 14356, FEMA is conducting an internal workforce capacity planning exercise to inform the Agency's Annual Staffing Plan and required quarterly updates.

As part of this effort, we are requesting that each component take a bottom-up, zero-based analytical approach to identify the positions you recommend retaining as essential to sustain FEMA's core mission delivery and minimum operating capabilities. For planning purposes, components should assess mission requirements as if starting from a baseline of zero and identify the positions necessary to perform statutory and operational functions.

This exercise applies across all workforce categories, including permanent full-time employees, CORE employees, Reservists, and any surge workforce, and is intended to provide leadership with a clear, component-level understanding of mission-critical capacity. **The exercise is pre-decisional in nature; no staffing actions or personnel decisions are being directed or implemented as part of this request.**

Consistent with FEMA's operational model, response and recovery functions remain a priority, and planning assumptions reflect a continued reliance on both the career and disaster workforces. Reference planning parameters for employee types and Mission Essential Tasks are included in the accompanying workforce planning tool.

Instructions
- Using the first tab, "Organizational Data for Review," filter by your component and identify the positions you recommend retaining (Column I) by organization and employee type, based on mission essentiality and operational requirements.
- The second tab, "Pivot Tables for Reference," provides workforce distribution data as of September 30, 2025, along with reference views to support your assessment.
- The third tab, "Employee Type for Reference," lists employee categories for consistency.

This exercise supports FEMA's compliance with OMB and OPM workforce planning requirements and is intended solely to inform leadership deliberations. It does not constitute a staffing action, reduction in force, or directive regarding personnel actions.

The planning document is restricted to program heads and senior advisors. Do not further disseminate this task or the associated materials.

DRAFT Workforce Plan - December 2025.xlsx

**La' Toya Prieur, MBA**
Chief Human Capital Officer | Office of the Chief Human Capital Officer | Mission Support
Mobile Phone: (771) 219-5434
Latoya.Prieur@fema.dhs.gov
*Executive Assistant: Agnes.Gautier@fema.dhs.gov*
Federal Emergency Management Agency
fema.gov



Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0004555

**From:**   Applebee, Brian [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=673AE327E33D4C89B778C8AA62BC87D2-APPLEBEE, B]

**Sent:**   1/2/2026 8:32:20 AM

**To:**   Sanchez, Blanca [/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=60453facb7f24219b8584785477c429d-7fc8c239-ad]

**Subject:**   Staffing Plan Modifications

**Attachments:**   DRAFT Workforce Plan - December 2025 12.31.xlsx

Blanca,

When I submitted our "no change" staffing plan numbers for the data call on Wednesday, Lilly came back and sad that wasn't going to be acceptable for MS leadership. We needed to get to 60%. I took a stab at modifying our overall numbers, taking 15%-20% cuts to many of our program areas, leaving Employee Svcs and Payroll/Processing pretty much alone since they are a huge part of our Mission Essential Function(s). I did zero-out the Cadre to take the preponderance of the 'reductions'. The attached is a copy I saved on my desktop, as the data-call was modifying a shared document. I am happy to go back and look at re-working the reductions to be more specific and drive toward a new set of requirements, but I don't think a reduction-to-all is going to get us to where they want us to be. We need to have a conversation as to what we're going to be removing from our plate altogether.

Happy to discuss.

Happy New Year!

-Brian

**Brian T. Applebee**
Director | Business and Program Management Division | Office of the Chief Human Capital Officer
Office: (202) 212-4273 | Mobile: (202) 365-9403
Brian.Applebee@fema.dhs.gov

Fedcral Emergency Management Agency
fema.gov





Plaintiffs
EXHIBIT
DATE: 4/3/24
SUSAN ASHE

| | |
|---|---|
| **From:** | Prieur, La'Toya [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D47853C52FB04E47AA9D0194AE59BBB5-0D4E1677-D6] |
| **Sent:** | 12/12/2025 4:25:31 PM |
| **To:** | Dobitsch, Stephanie [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=330d2d04e3fd4974ab1d8bd4177bf2c7-333d7208-af]; Franklin, Tami [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=59741b007f374c9c97bb30e61a3607c2-FRANKLIN, T] |
| **CC:** | Sanchez, Blanca [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=60453facb7f24219b8584785477c429d-7fc8c239-ad]; Prieur, La'Toya [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=d47853c52fb04e47aa9d0194ae59bbb5-0d4e1677-d6]; Icardi, Michael [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=8ee6a25151634eb4977326bd7bee406f-ICARDI, MIC]; Cope-Tilford, Lily [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=1b11e655c1db4cf2b7a982c11c91260c-Cope-tilfor]; Kandpal, Nikita [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=7f47c5a7efb04dd883eba31e2c06d434-Kandpal, Ni]; Ellis, Andrew [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c6be14e3154a46ddbda9de969bd2ebcd-HOCKER JR.,] |
| **Subject:** | FEMA CORE Expirations - January 2026 |
| **Attachments:** | CORE Expirations (January 2026).xlsx |

**Importance:**    High

Good afternoon Stephanie and Tami.

FEMA has 325 CORE and Federal Wage System positions with January 2026 expiration dates. Program and Regional Office Executives request 303 (93%) of positions be renewed. Non-renewals are highlighted in red text for ease of use.

- 89 positions are MCOs. Renewals are requested for 83 (97%) positions.
- 82 employees expiring are deployed in DTS. Renewals are requested for 78 (95%) of positions.

Request this data be shared with the SOPDA for a determination on next steps.

**La' Toya Prieur, MBA**
Chief Human Capital Officer | Office of the Chief Human Capital Officer | Mission Support
Mobile Phone: (771) 219-5434
Latoya.Prieur@fema.dhs.gov

*Executive Assistant: Agnes.Gautier@fema.dhs.gov*

Federal Emergency Management Agency
fema.gov





Confidential - Subject to Protective Order

USA-AFGE-Exp.-0004990

| | |
|---|---|
| **Sent:** | 12/18/2025 2:16:14 PM |
| **To:** | Evans, Karen [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=85bf5c69b59b407dbe7a70b634015dc0-771d1d66-f8] |
| **CC:** | Khan, Puneet [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=1c2ce09ea8f34f429cb459624ed77b8c-002c703b-83]; Bilicic, William [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=0a8d35e355c24ff98d728931441d89d6-17597001-19]; Allen, Jotham [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=9785bafc59904d52ae494def3ffad4be-ALLEN, JOTH]; Prieur, La'Toya [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=d47853c52fb04e47aa9d0194ae59bbb5-0d4e1677-d6] |
| **Subject:** | Weekly SES/GS15 Meeting (Summary) |

Ms. Evans,

Thank you for taking time to meet with me this afternoon. Meeting due outs include:

- Data request for the number of Cadre of On Call Response Employees (CORE) renewed between May 2025 – present
- Data request for the number of CORE employees offboarded/not renewed between May 2025 – present
- S1 memo delegating authority to renew COREs assigned to mission critical occupations (MCO) for up to 2 years
- Latest MCO list from DHS
- Update CORE non-renewal letters to include an option allowing employees to transfer to the surge (reservist) workforce
- Group hiring verification process requests for January (303 total) by Program/Regional office for review/approval. Program/Regional office heads are required to provide a signed justification for renewal prior to elevation to the SOPDA.

As always, please feel welcome to

**La' Toya Prieur, MBA**
Chief Human Capital Officer | Office of the Chief Human Capital Officer | Mission Support
Mobile Phone: (771) 219-5434
Latoya.Prieur@fema.dhs.gov

*Executive Assistant: Agnes.Gautier@fema.dhs.gov*

Federal Emergency Management Agency
fema.gov


FEMA


Plaintiffs 90
EXHIBIT
DATE: 4|3|26
SUSAN ASHE

Confidential - Subject to Protective Order                    USA-AFGE-Exp.-0011644

## Short Message Report

| Conversations: 1 | Participants: 1 |
|---|---|
| Total Messages: 2 | Date Range: 1/13/2026 |

## Outline of Conversations

 **Chat: EA & MS Leadership** · 2 messages on 1/13/2026 · DeMuro, Corey
<Corey.DeMuro@fema.dhs.gov>



Confidential – Subject to Protective Order          USA-AFGE-Exp.-0020962

**Messages in chronological order** (times are shown in GMT +00:00)

💬 **Chat: EA & MS Leadership**

CD   **DeMuro, Corey <Corey.DeMuro@fema.dhs.gov>**                    1/13/2026, 1:28 PM
for the SOR Meeting- i am tracking a few topics for MS:

• Core Hiring (What we know)
• NTE Extension Process and Notification of Nonapproved/ approval

How we understand the process to work as of nowOffboarding/Preparing, talking with your staff

• Performance Management

CY25 IssuesRating of RecordTimingWhat you should be doing now

CD   **DeMuro, Corey <Corey.DeMuro@fema.dhs.gov>**                    1/13/2026, 9:46 PM
here are my sorta organized notes- we can add to for tomorrow's call
Renewal &amp; Review Process

• New Process 180 Days: Allowing for a 30-60 day notice.
• New letters will be sent out to Jan Non-Renewals
• Cores in Jan and Feb: Still under review. If not reviewed, will be classified as non-renewal.

Working on resolving this week and for the rest of the month.Renewals (Now to March 1): 90 days, then applies to staffing plan.Appeals to non-renewals will be to be addressed in the staffing plan

• Tasker: Reviewing March and April: 15 days to:

Complete the S1 form.Review employee (acceptable level).Justification is based on function.Review current availability of inventory?

Inventory: By function, location, level, expiration date.


Staffing Plan

• Staffing plan to run region: Due March 31, implemented by June 30.
• Renewal timeline: To be determined by need/staffing plan

Considerations on long-term staffing needs? Term limited.

• Function:

Is this a function that could be a contract?Is DRF the appropriate source or should be OS/PFT

Other items

• Pay adjustments (IMAT, IM Cores, Rvs).
• All reservations will expire in May- OCHCO is will be working that process
• Core pay: No raise approved.
• Flagged: &quot;Moving people around&quot; – all hiring approved by HQ- if it you think you have current approval-everything moving ahead will be based on the approved staffing plan



USA-AFGE-Exp.-0425306



NATIONAL SITREP
0300 01JAN26
5:53 AM

https://www.cnn.com/2026/01/23/politics/fema-halts-terminations-winter-storm
6:08 AM

Kara Voorhis
Why the hell was that sent out?
6:09 AM

James Percival
Karen are you waiting on me to review something? Emails came through way after due to the outage
Edited 7:40 AM

As far as I know no. Briefing memo was sent
7:44 AM

James Percival
Great    7:45 AM

Signal message

USA-AFGE-Exp.-0424414



EXHIBIT 113
DATE: 5/4/26
SUSAN ASHE

Topic: Kevin, OJ10 Date 10 16 25

NC PA (didn't agency the others) (1) Ask

* All emergency ony Categories —
Two weeks packages
pending and then 2 last weeks

Not affecting
DRF Categories) will get w/ CFO
CARES Break out options
contracts from DRF give consideration
Staff salaries) (2) Ask

Buckets [Greg Comes Pretty quick]

* End of Day tomorrow
More restricted than what we already
→ Spreadsheet they are "pending" (Now just w/ FEMA)

© Franklin Planner Corporation

USA-AFGE-Exp.-0425282

EXHIBIT 114
DATE: 5/4/26
SUSAN ASHE



USA-AFGE-Exp.-0425283

Find something you're passionate about,
and keep tremendously interested in it.
—Julia Child

**20**

Monday
October 2025

Daily Notes

© Franklin Planner Corporation • Original-Classic

USA-AFGE-Exp.-0425284

USA-AFGE-Exp.-0425285

Principals (Cont'd)
~federal care employees (may not
(work w/ ICE                be able to
DOJ releases)              patent)
~for Volunteers
→ Hill Briefing (Dark)  (Dark)
for the group    Arnold

USA-AFGE-Exp.-0425286

A society can be no better than
the men and women who compose it.
—Adlai E. Stevenson II

**29**
Wednesday
October 2025

Daily Notes

302nd Day 63 Left Week 44

[illegible] NSC Re. [illegible] ~~[illegible]~~ Richardson Commission (call M)

Will @ FEMA
Rehire - 9:30

[illegible] [illegible], Stephanie

Peter 12:[illegible]
[illegible] Not in charge — initially —
update policy
[illegible] [illegible] to bring it [illegible] why

Mandatory — qtrly report
— Annual (report?)

[illegible] w/ Victoria, Kara,

Delegate Authority
[illegible] the authority
Project Management

* Contract [illegible] resend Kara / Victoria
SOP → OGC — * resend the SOP
[illegible] call

* [illegible] * original *
[illegible] Kara Oregon email

[illegible] Personnel look like * Schedule
[illegible] 1:30 Meeting
[illegible] Friday Kara
[illegible] [illegible] w/ [illegible]

~~[illegible]~~ [illegible] talk w/ [illegible]
[illegible] — [illegible] in Nov — [illegible]
[illegible] [illegible] No [illegible]

→ [illegible] ~~[illegible]~~ [illegible] ←
— [illegible] to [illegible]

© Franklin Planner Corporation • Original-Classic

PA Discussion (Cont'd)    Date 11 4 22

Alerts? Monitoreed?

→ every Legan not the same

PA-CFO-turn into Next week-

Peter 3:30pm

GSA in a format that they have

↳ he went head to Kara sit me by the
Clubhouse Growth & Economist    that-

Mark in Draft of the decisionate

all the documentation attached
affects the declarations) → 5.2 Trillion in PA-
Lincolrad Covet    finally look@ this
included Tribal Declarations)
# On person # [ legitimate CIA ]
termit→    # Need ongoing to Peter
Working to Close Houston Recovery office)
    analyzed B    (\$83)  Go ICH
Cores integrated Designs go
    → LERE    respite to
        Gulkan
legisen De upon SA-    WSA 1160 655230

→ Nathalie-requesting list ( not approvals )

USA-AFGE-Exp.-0425288

Principals 12:15     Date 12 2 25

(Mission Support - National Saving)

→ Metrics for Above

Leaving - y/u Admins - Regional    (OB3 → CUAS FIFA) After Friday

Stephanie (Exec Services)

pay Steve Beane Dec 12
k Keith TVI

DRE Report → Monthly Report    11/12/41 Contracts
→ Senator Budd (Victoria)
Cynthia
RIF    Sponsors / Day    RIF?    RIF Staffing Plan SES

R Site personnel

interpret    7E    Majority Claims
   % Non-representative
non the period Office - Claimants    → not total lost
public    * quality performance
3-1 → back to Jane →
Draft Memo
to White 90 days!    * in the previous Admin
3 ME Virtual    * 9033 procedures
→ Atlanta
→ Pennsylvania    80 PM VOC?
→ Allocate -    taxes
→ Forensic Accident Prostate. IA
(3 day retention)    Tracy
ja Contract    (PP)    9/4 North

A Franklin Mason Corporation • Original-Cloud

USA-AFGE-Exp.-0425289

Brevity may be the soul of wit, but not
when someone's saying, "I love you."
—Judith Viorst



**Thursday**
**December 2025**

Daily Notes                338th Day   27 Left   Week 49

52 Stand up 8:30
52 going to Pittington

Jo Blow up Holly in Florida (Kevin Guthrie)
w/Greg on the GSA candidate

Important to them to be a good appoint

Somebody Stanley should take / we are just not short to
                                  talks to/ need short
Mark - will work on the          Vendor yader subscriptions
          Media

Strategy   present to 52 for third week for 15 minutes

Political Appointee Meeting 11:30
→ Covered officers ←              ChnS

    11,176                        Andrew Kenper
    —————                                CWD-

Stephanie

1. Looking @ all CORE Dates   1B proposed plan
   1A- Katrina CORE DATE              reductions
2. Meeting Delegation (FOIA Schedule) CORE
3. @ All Delegation →
4. OCC TITI @ status for CORE
5. Working on Numbers w/ Will (extensive)
6. Chronology on the NATO (Will come as email)

Talked to Kara Re the Numbers is 4,383
              and Tip Line   (Will call Ron)
Will send the BAE memo -

          Victor   ERIN, Dave, Andrew, Vicki
          550 out
          just   and the spreadsheet to 52
          Appraise
                   Value
                  Led to
                  Hydrates

© Franklin Planner Corporation • Original Classic

We should all do something to right the wrongs
that we see and not just complain about them.
—Jacqueline Kennedy Onassis

# 8

Monday
December 2025

342nd Day  23 Left  Week 50

OPR/CHCO **Daily Notes**

→ Antoine - Need the Information

NAMES          upto 4 years

[w/ Richardson  2 year Appt]

List (SD)
↳ what they are going to be working

Hiring Verification All hires

→ Mission Critical Occupations ←          | go through the / List

Across the Board → OCC                    updated List

Emergency dept. ~ perks  Procurement     in the CORE

~~Gen Execstn Statters~~
~~I - they we together to bring documents w/ DEA~~
~~OPR Spec wt w/ them that the Black~~

what do Passwords keepers as last by case (OCA - use case)

✗ the list the Disaster Recovery - crystal Signatures
will move

Experience is a hard teacher because she gives the test first, the lesson afterwards.
—Vernon Sanders Law

12
Friday
December 2025

Daily Notes

346th Day 19 Left Week 50

Peter Guy [illegible]

30 Day Items
Delegation of Authority → [illegible] (Claims for [illegible]) Sign off
→ Many categories in the contract
→ Their part organization ← delegation package

[illegible] expiring in January
10 - Steve going to let me go -
Can they keep up the surge?
Non Mission Critical - (IC - level / GS - level)

Joe Guy - [illegible] - Haggerty talking points
- the Governor [illegible] - Signal call

Keith Turi - Direct Federal Assistance
Limited (first step)
(Haley) Preliminary → [illegible] ready -
they did ask [illegible] reimbursement -

GS 15/SES La Toya, Skipmore, Will, Karen
(Waiver for State) Grantees going to get 3% -

With Staffing Plan   OIG - [illegible] -
[illegible] Sync [illegible] GS   Region 4 - Haley Peterson termination
3% - [illegible] 3 SES packages

Sync 4:00pm   Region 7 → Position [illegible] Duties

PM - due to Dept in Tuesday Noon
DEL - 30 year [illegible] rate OBA - Northwest
→ OPR Non-Career
→ Five Admin [illegible] → Northwest ← 15 [illegible] the Appeal
(Contract Renew @ [illegible])

© Franklin Planner Corporation • Original-Classic

USA-AFGE-Exp.-0425292

I doubt that the imagination can be suppressed.
If you truly eradicated it in a child, they would
grow up to be an eggplant.
—Ursula K. Le Guin



**17**

Wednesday
December 2025

## Daily Notes

351st Day   14 Left   Week 51

① the exercise
(Matt) —
checkmark notes

talked to Stefanie
Thursday in the spreadsheet

talked to veronica
for the email

talked to Fara
re Monday info
re checklist

© Franklin Planner Corporation • Original-Classic

USA-AFGE-Exp.-0425293

Goals are dreams with deadlines.
—Diana Scharf-Hunt

# 31
**Wednesday**
**December 2025**

## Daily Notes

365th Day 0 Left Week 1

[illegible] 10:45pm
1- Senator Kennedy
2- Pushback / [illegible] / historical [illegible] [illegible] St [illegible]
3. Not going to oppose the CBAs (Badly written)
4. Discussion in [illegible] and CBAs
5. [illegible] EO in general
6. my schedule

Get Agencies added information to [illegible]

© Franklin Planner Corporation • Original-Classic

Some adventures begin easily. It is not *hard*,
after all, to be sucked up by a tornado or pushed
through a particularly porous mirror.
—Seanan McGuire

**12**
Monday
January 2026

**Daily Notes**     12th Day   353 Left   Week 3

Non Disaster Grants for TX and Florida — Back to W/
Package to Non Profits questions in the W share of
note                                    Non profits

(Feb 228)

W/ Shila @ 10:00am (I was late)

LaToya / Blanca / Kara / Victoria / Puneet /
                                    Will / Shila
(Feb yes/no) Memo / hiring verification   Jotham

(Notification)

(Expiration?)

— Process failure / PIN /
                    → exists funded

(payroll) — hourly —
            rates

Cynthia         → CORE pay
    the 4/mth
  * the overtime *   regular pay

(LaToya) →         Pay for CORES for Next 2026

Second Meeting Feb →
    CORE —
1/12 through May → Principal → Tomorrow ←
↓ Cleared by the end of May Material

FASC W/ OMB 1:00                DAS S.T
                                 IDIQ          Working Group

2013

① →  → Identify the list
② CUAS →   DHS → Do Not procure

USA-AFGE-Exp.-0425295

If you are idle, be not solitary; if you are solitary, be not idle.
—Samuel Johnson

**13**
Tuesday
January 2026

Daily Notes

13th Day  352 Left  Week 3

→ NTE 90 days / Staffing Plan / Blanca
Calling    March 31    NDF from
Coast Guard

Reserves
Simonek  Inventory —
→ pay being the new pay plan

→ pay frequalwark policy for the pay
115% → 200%

Principals Noon    January
Feb List today
CHCO — the process Renew
→ Minimum of 30 days Notifications  → Not Tried Review

→ Reserves — May
* do group for Renewal *

Hold
Black Greats
what do you think → let's like 6/1/26
Watercom anything true - information

Regional
Thursday

PM Meeting

USA-AFGE-Exp.-0425296

© Franklin Planner Corporation • Original-Classic

I want to share the exhilaration of discovery and convey
a sense of urgency about the need for all of us to use our
talents and resources to continue to explore the nature
of this extraordinary ocean planet.
—Sylvia Earle

**3**

Tuesday

February 2026

**Daily Notes**    –    34th Day  331 Left  Week 6

Press - HPMG    Press Strategy    Victual

talked to Joe RE: the stepdown
and the BSG    the Breaker Situation
in North East

* → WH RFI Shila in IA system development
w/ Greg CIO - from NE

→ Memo for the staff ←    Jotham/Jon
ensure remind everyone policy

JH - Hoag 4

→ Double HQ 2/9 ←
- Shila tonight              called Roland
Latoya tomorrow
off Friday                    Core
Gun - Troy, Craig, Jackson
Jackson - Wick    retirement
→ One pay period    Jon (Shila)
EOD/80k              w/ pay    Mr Leather
contract    last by case
→ 6 months transport
Principals ←
Noon                          Reason 9
→ Donna Gregg ←    ✓ Core ← schedule
Stone Gordon    → Contracts 100k
Larrey    Reopen    → splitting requirement
son    *10 days    weekly
for DHS
CFO    period    Kara

USA-AFGE-Exp.-0425297

If people would only give, just once in their lives, the same amount of serious reflection to what they want to get out of life that they give to the question of what they want to get out of a two-week vacation.
—Dorothy Canfield Fisher

2/5 @ 10:10pm — **9**
Monday
February 2026

Daily Notes — 40th Day 325 Left Week 7

got late to get webex for 10 o'clock
talked to Joe re: CUMD transfer
if they come to FEMA - they need to move to FEMA
sent the document for DECs
(Jeff Lubin was present) arrived @ 10:30
pay certification
potentially more money? — Due Diligence (in the ground)
SBA Due - licenses
Secretary of State (5 Builders have Certified)
loan limits
Due Diligence Compliance
Homeowners
builders
* hold for 60 days * from their application
FEMA update Keep the Groups
SBA appraised
CUMD 11:30am
CFO - transfer
Tom's Hearing w/ Joe tomorrow
transfer in the clearance
* End of week lapse of appropriations)
* Cynthia We'll be the lead
OGC - they would have
* State of Union
* Mangi
they don't have any appropriations
to Jonathan Chen
(January # CBIGS)
Cynthia
CR for the full year
→ 25 levels ←
DRF *3B Catagory 8 Billion
DRF Carryover (4B) → 25 / 22.B / 26 / 26.B
8B Carry

©Franklin Planner Corporation • Original-Classic

USA-AFGE-Exp.-0425298

Curiosity is the wick in the candle of learning.
—William Arthur Ward

# 10

Tuesday
February 2026

## Daily Notes

41st Day  324 Left  Week 7

$540,032 payable amount

G 109 - investor

Principals        12:15 pm

Lapse funding

World Cup they printed from this) —

deplaya the pubcast — notify of status) to
Thursday
wuld on Tuesday Morning
they expluaise

Corte    gualay renewals —
the Autonous peters              → the NATO
if they deployed(?)                peter
                                   suggest
Vacancy in ofr — Corte
goung to the Hill — DOLs
Kava → (call Grey re Pilot)    → √!   get w/ Adam

[ PR — Inkerson (WH) Approach to the ]
                                    PR

*FITA- Cumms —              * Expected Kavan
  what would ES#15            Jr FL

Tunney

the Pseudonym

© Franklin Planner Corporation • Original-Classic

USA-AFGE-Exp.-0425299



USA-AFGE-Exp.-0425300

One of the most time-consuming things is to have an enemy.
—E. B. White

# 3
## Tuesday
### March 2026

**Daily Notes**                          62nd Day  303 Left  Week 10

© Franklin Planner Corporation • Original-Classic

Talent is a dreadfully cheap commodity, cheaper than table salt. What separates the talented individual from the successful one is a lot of hard work and study.
—Stephen King

FAAst – FEMA Accelerated Award Strategy

4
Wednesday
March 2026

Daily Notes

53rd Day 302 Left Week 10

Talked to Greg re: the comms
Talked w/ Victoria
Discussion w/ Gregg, Victoria, Karen, Will, Kara
1. CORE
regular non-renewals
2. Holding the email from la Torre
Talked to Sheila – core and the report re: renewal

Region 4 – Gisele [illegible]
Region 7 – Gay Van Der Werff
Region 10 – [illegible] Gordon
Region 8 – Kevin Helland
Ryan Hetzamali
Region 5 – Amanda Ratliff
Region 3 – Michael Senyfile

Region 1 – Vacant or [illegible] – Kathen Slaughter
Daniel Haite Region 2
Region 6 come later

Contracts Meeting 11:20am
Hype the impact of points of failure
@ Step 8 → in Store → and it will be part back to the program office (as normal)
Funds late (wrong allocation) Briefed Kara on EPA – Sharon
EPA wrap-up (check-in) 1:00
Conclusion of the Communication
program [illegible] – now holidays / [illegible] [illegible]

Political Meeting 2:00pm
CORE hearing → Victoria
→ Appropriations ←
Meeting requests → OPE ←
Block Grants
*Peter Gay* Need to call

*Add OPE → ~~Kevin~~ Kevin Guthrie

© Franklin Planner Corporation • Original-Classic

| From: | Voorhies, Kara [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=59e892831314435587de3f96b6d521fc-71690143-b5] |
| Sent: | 1/23/2026 10:22:10 AM |
| To: | s1milaide@hq.dhs.gov |
| CC: | Guy; Joseph [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=b1efa534924b4c66b1bffcf1b9238267-fbbf2d77-c6] |
| Subject: | Fw: Winter Weather Storm "Fern" - Social Listening |

Yesterday while touring the NRCC S1 requested she receive a copy of the daily social listening report. Please provide the below report to her when appropriate.

Best,
Kara

**From:** Barton, Victoria <victoria.barton@fema.dhs.gov>
**Sent:** Friday, January 23, 2026 10:12:18 AM
**To:** McLaughlin, Tricia <Tricia.McLaughlin@hq.dhs.gov>; BOCK, MICAH <MICAH.BOCK@hq.dhs.gov>
**Cc:** Evans, Karen <karen.evans@fema.dhs.gov>; Voorhies, Kara <kara.voorhies@fema.dhs.gov>; HEMENWAY, TROUP <TROUP.HEMENWAY@hq.dhs.gov>; Guy, Joseph <Joseph.Guy@hq.dhs.gov>; MCGREGOR, DILLON <DILLON.MCGREGOR@hq.dhs.gov>
**Subject:** Winter Weather Storm "Fern" - Social Listening

All –

Brief summary of the current online discussion trends we are seeing:

• There is increasing concern over significant ice in parts of the South, leading to major power outages. Overnight, new ice storm warnings and watches were issued for several areas. Messaging from meteorologists and local media is becoming increasingly dire, warning of a historic situation and the potential for long-term power outages.

• Residents in southern states are growing more anxious about the ability of state and local infrastructure to handle the impacts from the storm.

• Many residents are sharing tips on how to stay warm during prolonged winter power outages, leading to an increase in generator safety messaging from state and local officials.

○ Texas residents are sharing lessons learned from the 2021 event.

• Overnight, there was national media coverage about FEMA halting the non-renewal of CORE employees. This has received a positive response. However, concerns remain about the agency's ability to tackle an event of this magnitude.

Respectfully,

Victoria L. Barton
Associate Administrator
Office of External Affairs
victoria.barton@fema.dhs.gov

Federal Emergency Management Agency
FEMA.gov





EXHIBIT 117
DATE: 5|4|26
SUSAN ASHE

Confidential - Subject to Protective Order    USA-AFGE-Exp.-0006291



USA-AFGE-Exp.-0425305

EXHIBIT ___132___
WIT: _____
DATE: _____
V. Hildebrandt, CSR

## Short Message Report

| Conversations: 1 | Participants: 4 |
|---|---|
| Total Messages: 11 | Date Range: 4/13/2025 - 4/14/2025 |

## Outline of Conversations

💬 **CHAT - KaraVoorhies_WhatsApp0000001 - 00007 - 2025/04/14** · 11 messages between 4/13/2025 - 4/14/2025 · 183236240142364@lid · Corey R Lewandowski <12025507839@s.whatsapp.net> · Kara Voorhies <18324438688@s.whatsapp.net> · System Message <System Message>

KLV_000001

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬 **CHAT - KaraVoorhies_WhatsApp0000001 - 00007 - 2025/04/14**

\#  **Kara Voorhies <18324438688@s.whatsapp.net>**                              4/13/2025, 8:17 PM
Just spoke with Steve, he hasn't heard anything yet. I've instructed him to move forward on the apartment in the meantime.
I'm leaving early tomorrow for Europe but will be available on WhatsApp if needed.
Laptop is stuck at FedEx in Houston, hopefully it will be delivered while I'm gone and I can get it setup next Saturday.

\#  **Corey R Lewandowski <12025507839@s.whatsapp.net>**                        4/13/2025, 8:18 PM
I really want you in before we on board Steve.

\#  **Kara Voorhies <18324438688@s.whatsapp.net>**                              4/13/2025, 8:18 PM
Can you speak?

\#  **Corey R Lewandowski <12025507839@s.whatsapp.net>**                        4/14/2025, 5:09 AM
What time do you leave today?

\#  **Kara Voorhies <18324438688@s.whatsapp.net>**                              4/14/2025, 6:04 AM
Flight departs at 9:45 am central

\#  **Corey R Lewandowski <12025507839@s.whatsapp.net>**                        4/14/2025, 6:16 AM
Can I call you when I finish this call?

\#  **Kara Voorhies <18324438688@s.whatsapp.net>**                              4/14/2025, 6:16 AM
Sure

SM  **System Message <System Message>**                                        4/14/2025, 6:36 AM
Corey R Lewandowski (12025507839@s.whatsapp.net) started a call.
status: Answered
type: audio call
duration: 00:11:14
2 joined:
Corey R Lewandowski (12025507839@s.whatsapp.net)
 (owner)

\#  **Kara Voorhies <18324438688@s.whatsapp.net>**                              4/14/2025, 1:15 PM
Thinking about this a bit more, please just have the staff contact him to get started, no need for you to reach out directly

\#  **Kara Voorhies <18324438688@s.whatsapp.net>**                              4/14/2025, 2:25 PM
Steve is not going to work out, let's not proceed with him. Please give Jamal a call whenever you have time as I'll be in the air for the next 8+ hours

\#  **Corey R Lewandowski <12025507839@s.whatsapp.net>**                        4/14/2025, 3:05 PM
Will do

KLV_000002

Docusign Envelope ID: FD95F5D6-5652-401E-91CE-1CA3DA6067F5



EXHIBIT *133*

WIT: _____

DATE: _____

V. Hildebrandt, CSR

## SUBCONTRACTOR AGREEMENT

This Subcontractor Agreement ("**Agreement**") is made effective as of **October 1, 2025**, by and between **AnchorCode Technologies, LLC** ("**Contractor**") of 8647 Richmond Highway, Suite 638, Alexandria, VA 22309 and **LV Consulting, LLC** ("**Subcontractor**") of 1763 Columbia Rd NW, Suite 175 #278675, Washington, DC 20009.

## RECITALS

Prime Contractor **IMGE LLC** has entered into a contract dated **July 23, 2025 (the "Prime Contract")** with the **Department of Homeland Security ("Client")**. Contractor has entered into a subcontract agreement dated **October 1, 2025** with Prime Contractor to perform a portion of the work under the Prime Contract. Contractor now wishes to subcontract a portion of its subcontract work to Subcontractor, and Subcontractor is willing to provide such services.

## AGREEMENT

Therefore, in consideration of the mutual promises contained in this Agreement, the parties agree as follows:

1. Description of Services. Beginning on **October 1, 2025**, Subcontractor will provide the following services and/or materials (collectively, the "Services"):
   - Compliance assessments
   - Stakeholder engagement
   - Enhancing operational efficiency
   - Ensuring federal regulatory compliance

2. Payment for Services. In exchange for the Services, Contractor shall pay Subcontractor **$325** per hour. Payments will be made upon completion of the Services and only after such Services have been accepted by Client or Client's designated agent.

Contractor shall not withhold any greater retention from Subcontractor than the amount withheld by Client from Contractor with respect to Subcontractor's work. Any retained amounts shall be released to Subcontractor within fifteen (15) days after Contractor receives corresponding payment from Client.

In the event that Contractor reasonably determines it necessary to make a claim under the Federal Prompt Payment Act due to Client non-payment of valid charges related to services performed by Subcontractor, the Subcontractor shall cooperate in the prosecution of such claim by providing relevant supporting documentation requested by Contractor.

Subcontractor may not perform Services resulting in more than forty (40) hours of work in any one (1) week without Contractor's prior written consent. Subcontractor shall not be entitled to payment for any hours worked in excess of forty (40) per week unless such hours were approved in writing in advance by Contractor.

3. Completion. All Service tasks shall be completed by Subcontractor by agreed upon deadlines between Subcontractor and Contractor and/or Client.

4. Permits and Compliance. Subcontractor shall be solely responsible for obtaining and paying for all necessary permits, licenses, and any other instruments required to perform the Services. In addition, Subcontractor shall comply with all security requirements, worksite rules, and project-specific work conditions as may be communicated or required by Client.

1

KLV_000507

Docusign Envelope ID: FD95F5D6-5652-401E-91CE-1CA3DA6067F5

5. <u>Liability Limitations</u>. Each party's total liability under this Agreement shall not exceed the lesser of (a) the total contract value, or (b) $10,000. Neither party shall be liable for consequential, indirect, or punitive damages.

6. <u>Non-Solicitation.</u> During the Term of this Agreement and for a period of twelve (12) months following its termination, Subcontractor shall not, directly or indirectly, for Subcontractor's own benefit or for the benefit of any other person or entity:

   a. Solicit, recruit, or hire any employee, contractor, or agent of Contractor, or otherwise induce or encourage any such person to leave their employment or engagement with Contractor; or
   b. Solicit or attempt to solicit the business of any person or entity who is, or was within the preceding twelve (12) months, a client or customer of Contractor, for the purpose of providing products or services that are competitive with those offered by Contractor.

7. <u>Change Orders</u>. Contractor agrees to provide Subcontractor with written notice of any change orders from the Client as soon as practical after Contractor receives such notice. Any resulting increase or decrease in the subcontract price provided for in Paragraph 2 must be in writing, mutually agreed to, and signed by both parties. If the parties are unable to reach an agreement regarding any price adjustment for a change order, Subcontractor will proceed with the change order work.

8. <u>Ownership.</u>

All work product, deliverables, materials, inventions, designs, documents, data and other items created, developed or produced by Subcontractor in the performance of or pursuant to this Agreement (collectively, the "Work Product") shall meet form, fit, and function requirements defined in Federal Acquisition Regulation (FAR) 52.227-14 – Rights in Data General, as necessary to facilitate Contractor's compliance with its obligations under the Prime Contract. Accordingly, Subcontractor agrees that the Client shall have unlimited rights in Work Product developed at the Client's expense to use, disclose, reproduce, prepare derivative works, distribute copies to the public, and perform publicly and display publicly, in any manner and for any purpose, and to have or permit others to do so.

To the extent any Work Product is developed solely at private expense, Subcontractor irrevocably assigns to Contractor all right, title and interest in and to such Work Product, including all related intellectual property rights, except to the extent required to make the Work Product available to the client in accordance with FAR 52.227-14. Subcontractor agrees to execute any documents, apply any markings, and take such actions as may be reasonably requested by Contractor to effectuate and confirm Contractor's and Client's respective rights in the Work Product.

9. <u>Federal Contract Compliance Obligations.</u>

   A. <u>Sensitive Information Security Disclosure</u>

   Subject to Contractor's reasonable determination that the Subcontractor will require access to sensitive information (including Sensitive But Unclassified Information, Protected Critical Infrastructure Information, or business proprietary and procurement information), in consultation with the Client, Subcontractor shall provide necessary documentation and execute any requirement agreement(s) required to comply with Prime Contract information security requirements. Such requirements may include non-disclosure agreements and called for by a position-sensitivity analysis background investigation.

   Subcontractor agrees to provide, if requested, and consents to the release of background investigation documents to DHS Office of the Chief Security Officer, Personnel Security Division, including

2

KLV_000508

Docusign Envelope ID: FD95F5D6-5652-401E-91CE-1CA3DA6067F5

Standard Form (SF) 85 Questionnaire and supporting certification and authorization, fingerprint card, DHS Form 11000-6, DHS Form 11000-9, and OF-306.

### B. Organizational Conflict of Interest

Services performed by the Subcontractor under the Prime Contract may put the Subcontractor in a position to evaluate competitors on prospective procurements or obtain access to competitively advantageous information. Subcontractor will take all reasonable steps to identify, report, and mitigate any organizational conflict of interest identified by the Contractor or Client Contracting Officer.

### C. Records Retention

In accordance with Section 6 of the Prime Contract Additional Terms and Guidance, Subcontractor shall retain documents related to Subcontractor's services rendered under this agreement, including but not limited to cost charging data, technical data Work Product, and ordinary course of business records. Subcontractor shall maintain record systems adequate to make documents reasonably available in response to a Contracting Officer or the Government Accountability Office request.

10. FAR Flow-down Clauses. The Federal Acquisition Regulation (FAR) clauses cited below are incorporated by reference, where applicable, as if set forth in full text. The full text of all clauses incorporated by reference is available at http://www.acquisition.gov/.

Contractor identification of applicable clause thresholds and further flow-down requirements is informational only and is not to be construed as determinative. Subcontractor remains responsible for determining and complying with all clause flow-down requirements.

| FAR Clause Reference Number | FAR Clause Title | Applicable Revision |
|---|---|---|
| 52.203-16 | Preventing Personal Conflicts of Interest | JUN 2020 |
| 52.203-17 | Contractor Employee Whistleblower Rights | NOV 2023 |
| 52.204-23 | Prohibition on Contracting for Hardware, Software, and Services Developed or Provided by Kaspersky Lab Covered Entities | DEC 2023 |
| 52.204-25 | Prohibition on Contracting for Certain Telecommunications and Video Surveillance Services or Equipment | NOV 2021 |
| 52.204-27 | Prohibition on a ByteDance Covered Application | JUN 2023 |
| 52.204-30 | Federal Acquisition Supply Chain Security Act Orders—Prohibition | DEC 2023 |

11. Force Majeure. This agreement is subject to Force Majeure.

12. Termination for Convenience. Either party may terminate all or part of this Contract for its sole convenience upon thirty (30) days written notice. Upon termination, Subcontractor shall immediately stop all work and may submit a claim within thirty (30) days for work performed prior to termination. Subcontractor shall not be paid for avoidable costs, lost profits, or unabsorbed overhead. Payment shall not exceed the Contract price. This provision does not limit the right to terminate for default. Subcontractor shall continue all work not terminated.

13. Default. The occurrence of any of the following shall constitute a material default under this Agreement:

a. The failure of Contractor to make a required payment when due.

3

AnchorCode Technologies, LLC Subcontractor Agreement

KLV_000509

Docusign Envelope ID: FD95F5D6-5652-401E-91CE-1CA3DA6067F5

b. The insolvency or bankruptcy of either party.

c. The subjection of any of either party's property to any levy, seizure, general assignment for the benefit of creditors, application or sale for or by any creditor or government agency.

d. The failure of Subcontractor to deliver the Services in the time and manner provided for in this Agreement.

14. Remedies on Default. In addition to any and all other rights available according to law, if either party defaults by failing to substantially perform any material provision, term or condition of this Agreement (including without limitation the failure to make a monetary payment when due), the other party may elect to terminate this Agreement if the default is not cured within 30 days after providing written notice to the defaulting party. The notice shall describe with sufficient detail the nature of the default.

15. Relationship of the Parties. The provisions of this Agreement are not intended to create, nor shall be deemed or construed to create, any joint venture, partnership or other relationship between Contractor and Subcontractor other than that of independent entities contracting with each other solely for the purpose of carrying out the provisions of this Agreement. Neither of the parties to this Agreement, nor any of their respective employees, agents, or other representatives, shall be construed to be the agent, employee or representative of the other party. Neither party shall have the authority to bind the other party nor shall a party be responsible for the acts or omissions of the other party, unless otherwise stated in this Agreement. Similarly, Subcontractor expressly acknowledges that Subcontractor is not an agent, employee or representative of Client and covenants to represent itself accordingly.

16. Notices. Any notice or communication required or permitted under this Agreement shall be sufficiently given if delivered in person or by certified mail, return receipt requested, to the addresses listed above or to such other address as one party may have furnished to the other in writing. The notice shall be deemed received when delivered or signed for, or on the third day after mailing if not signed for.

17. Entire Agreement. This Agreement contains the entire Agreement of the parties regarding the subject matter of this Agreement, and there are no other promises or conditions in any other agreement whether oral or written.

18. Waiver. No waiver by either party of any breach of this Agreement shall be deemed to waive any other breach. No acceptance of payment or performance after any breach shall be deemed a waiver of any breach. No failure or delay to exercise any right by a party upon another's default shall prevent that party from later exercising that right, nor shall such failure or delay operate as a waiver of any default.

19. Severability. If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

20. Amendment. This Agreement may be modified or amended only if made in writing and signed by both parties.

21. Applicable Law. This Agreement shall be governed by the laws of the Commonwealth of Virginia.

22. Assignment. Neither party may assign or transfer this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld.

23. Dispute Resolution. The parties will attempt to resolve any dispute arising out of or relating to this Agreement through friendly negotiations amongst the parties.

4

AnchorCode Technologies, LLC Subcontractor Agreement

KLV_000510

Docusign Envelope ID: FD95F5D6-5652-401E-91CE-1CA3DA6067F5

Any controversies or disputes arising out of or relating to this Agreement, other than those described in the Section entitled "Change Orders," will be submitted to mediation in accordance with any statutory rules of mediation in the Commonwealth of Virginia. If mediation does not successfully resolve the dispute, the parties may proceed to seek an alternative form of resolution in accordance with any other rights and remedies afforded to them by law.

24. <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to the benefit of, the parties and their respective heirs, representatives, successors and assigns.

[signature page to follow]

5

AnchorCode Technologies, LLC Subcontractor Agreement

KLV_000511

Docusign Envelope ID: FD95F5D6-5652-401E-91CE-1CA3DA6067F5

SUBCONTRACTOR:
LV Consulting, LLC

By: _kara Voorhies_____

Name:  Kara Voorhies

Title:  Owner

Date:  10/15/2025

CONTRACTOR:
AnchorCode Technologies, LLC

By: _KYLE SCHUTT_____

Name:  Kyle Schutt

Title:  Owner

Date:  10/15/2025

AnchorCode Technologies, LLC Subcontractor Agreement

KLV_000512

Docusign Envelope ID: B704B996-254F-4C64-99A3-DE902A83B435

EXHIBIT _____ 134
WIT: _____
DATE: _____
V. Hildebrandt, CSR

## SUBCONTRACTOR TERMINATION LETTER

**Date**: 3/12/2026

**To:** LV Consulting, LLC
1763 Columbia Rd NW, Suite 175 #278675, Washington, DC 20009

**Re:** Termination for Convenience – Subcontract Agreement dated **October 1, 2025**

Dear Kara,

Pursuant to the termination for convenience clause in the Subcontractor Agreement between **AnchorCode Technologies, LLC** ("Contractor") and **LV Consulting, LLC** ("Subcontractor"), Contractor hereby provides notice of immediate termination for convenience of the subcontract.

**Effective Date of Termination:** Immediately upon receipt of this notice

**Required Actions:**
- You shall immediately stop all work under the subcontract upon receipt of this notice
- You may submit a claim within thirty (30) days of the termination date for work performed prior to termination
- Any claim must reflect only the percentage of work actually performed and reasonable charges directly resulting from termination
- Claims shall not include avoidable costs, lost profits, or unabsorbed overhead

This termination is for convenience only and does not reflect any performance issues or breach of contract on your part.

Please acknowledge receipt of this notice and confirm your understanding of the termination requirements.

Thank you for your services during this engagement.

Sincerely,

Kyle Schutt
Owner
AnchorCode Technologies, LLC

I acknowledge receipt of this Termination for Convenience notice:

By: _____

Name: **Kara Voorhies**

Title: **Owner**

Subcontractor: **LV Consulting, LLC**

Date: 3/14/2026 _____

1

AnchorCode Technologies, LLC Subcontractor Termination Letter

KLV_000513



EXHIBIT 135
WIT: _____
DATE: _____
V. Hildebrandt, CSR

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 8 | Date Range: 4/24/2025 |

### Outline of Conversations

 **CHAT - KaraVoorhies_WhatsApp0000001 - 00007 - 2025/04/24** · 8 messages on 4/24/2025 ·
183236240142364@lid · Corey R Lewandowski <12025507839@s.whatsapp.net> · Kara Voorhies
<18324438688@s.whatsapp.net>

KLV_000003

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬     **CHAT - KaraVoorhies_WhatsApp0000001 - 00007 - 2025/04/24**

\#     **Kara Voorhies <18324438688@s.whatsapp.net>**        4/24/2025, 9:53 AM
      Peraton is now calling my family to reach me…

\#     **Corey R Lewandowski <12025507839@s.whatsapp.net>**        4/24/2025, 10:36 AM
      They are incredible.  I'll shut it down

\#     **Kara Voorhies <18324438688@s.whatsapp.net>**        4/24/2025, 10:54 AM
      Thank you

\#     **Kara Voorhies <18324438688@s.whatsapp.net>**        4/24/2025, 11:55 AM
      Joe Guy asked me to join a call with FEMA and DOGE to talk about some contrathat he and Kyle have been trying to
      adjudicate with them… again, not sure how I am supposed to introduce myself; what are your thoughts?

\#     **Kara Voorhies <18324438688@s.whatsapp.net>**        4/24/2025, 11:55 AM
      Also, correct financials have not yet arrived.

\#     **Corey R Lewandowski <12025507839@s.whatsapp.net>**        4/24/2025, 12:11 PM
      I'll call Joe

\#     **Kara Voorhies <18324438688@s.whatsapp.net>**        4/24/2025, 1:11 PM
      I'm here in the office if you have a few moments. In Kyle's room

\#     **Corey R Lewandowski <12025507839@s.whatsapp.net>**        4/24/2025, 2:01 PM
      I'm in the conference room in a meeting

KLV_000004

EXHIBIT ___13 6___
WIT: _____
DATE: _____
V. Hildebrandt, CSR



10:40

A K J

Joe Guy (Mobile)

Aug 25, 2025

**FEMA staff warn Trump officials' actions risk a Katrina...**
About 150 FEMA employees signed a
letter to Congress arguing that
current agency leadership has hind...
www.washingtonpost.com

https://
www.washingtonpost.com/
weather/2025/08/25/fema-
staff-protest-letter/

Let's find them   8:56 AM

Erin says the names she
recognizes are not here
anymore. I imagine those who
signed took the DRP   9:56 AM

Fri, May 1

+   Message

KLV_000169



KLV_000170