Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SUPPLEMENTAL COMPLAINT** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | Civil Local Rules 6-3 and 7-11 |
| Defendants. | |

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

BACKGROUND ...........................................................................................................................2

ARGUMENT ................................................................................................................................5

I.      Defendants' Rule 12 Motion Targeting Supplemental Factual Allegations in Support of Existing Claims Should Be Denied ...................................................................................5

        A.      Defendants' Rule 12 Motion Seeks to Dismiss Supplemental Factual Allegations, Not Claims...............................................................................................................6

        B.      Defendants' Arguments for Dismissal Lack Merit for Other Reasons as Well..............8

                1.      Standing...............................................................................................8

                2.      Ripeness and Final Agency Action. ...................................................13

II.     The Motion to Dismiss Plaintiffs' Supplemental Claims Against DHS and FEMA Also Should Be Denied............................................................................................................17

        A.      Defendants Provide No Basis to Revisit this Court's Prior Channeling Rulings.........17

        B.      Plaintiffs Have Standing to Assert Their Claims Against DHS and FEMA ................20

        C.      The Challenged DHS and FEMA Actions Are Final Agency Actions........................22

CONCLUSION ...........................................................................................................................23

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*In re Adobe Sys., Inc. Priv. Litig.,*
    66 F.Supp.3d 1197 (N.D. Cal. 2014)..................................................................................11

*AFGE v. OMB,*
    813 F.Supp.3d 944 (N.D. Cal. 2025)..................................................................................20

*AFGE v. OMB,*
    Case No. 25-cv-08302-SI ..............................................................................................4, 19

*AFGE v. Trump,*
    139 F.4th 1020 (9th Cir. 2025).................................................................................*passim*

*AFGE v. Trump,*
    155 F.4th 1082 (9th Cir. 2025)...........................................................................................3

*AFGE v. Trump,*
    163 F.4th 1226 (9th Cir. 2026)...........................................................................................3

*Axon Enter., Inc. v. Fed. Trade Comm'n,*
    598 U.S. 175 (2023) ..........................................................................................................19

*Bennett v. Spear,*
    520 U.S. 154 (1997) ..........................................................................................................13

*Biden v. Sierra Club*
    142 S.Ct. 46 (2021). ..........................................................................................................13

*Block v. Community Nutrition Institute,*
    467 U.S. 340 (1984) ..........................................................................................................18

*Cal. Pro-Life Council, Inc. v. Getman,*
    328 F.3d 1088 (9th Cir. 2003) ...........................................................................................13

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ..........................................................................................................12

*Doe v. Napa Valley Unified Sch. Dist.,*
    2018 WL 4859978 (N.D. Cal. Apr. 24, 2018)......................................................................6

*Dep't of Air Force v. Prutehi Guahan*
    224 L. Ed. 2d 174 (Mar. 9, 2026)......................................................................................14

*FDA v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ..........................................................................................................21

*Fund Democracy, LLC v. S.E.C.*,
    278 F.3d 21 (D.C. Cir. 2002) ................................................................................................ 20

*Jones v. City of Los Angeles*,
    2021 WL 6496719 (C.D. Cal. June 25, 2021) ........................................................................ 6

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) ............................................................................................................. 18

*Meland v. Weber*,
    2 F.4th 838 (9th Cir. 2021) .................................................................................................... 9

*Mi Familia Vota v. Fontes*,
    129 F.4th 691 (9th Cir. 2025) .............................................................................................. 20

*Northcoast Env't Ctr. v. Glickman*,
    136 F.3d 660 (9th Cir. 1998) ............................................................................................... 13

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,
    676 F.3d 829 (9th Cir. 2012) ............................................................................................... 21

*OPM v. AFGE*,
    145 S.Ct. 1914 (2025) .................................................................................................... 21, 22

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*,
    465 F.3d 977 (9th Cir. 2006) ............................................................................................... 13

*Pinnacle Ventures LLC v. Bertelsmann Educ. Servs. LLC*,
    2019 WL 4040070 (N.D. Cal. Aug. 26, 2019) ...................................................................... 6

*Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*,
    128 F.4th 1089 (9th Cir. 2025) ............................................................................................ 14

*Riganian v. LiveRamp Holdings, Inc.*,
    791 F.Supp.3d 1075 (N.D. Cal. 2025) ................................................................................... 7

*Sierra Club v. Trump*,
    929 F.3d 670 (9th Cir. 2019) ............................................................................................... 13

*Sierra Club v. Trump*,
    963 F.3d 874 (9th Cir. 2020) ............................................................................................... 13

*Soc Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
    753 F.Supp.3d 849 (N.D. Cal. 2024) ..................................................................................... 6

*Staley v. Gilead Scis., Inc.*,
    2020 WL 5507555 (N.D. Cal. July 29, 2020) ....................................................................... 6

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) ........................................................................................ 13, 14

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ...........................................................................................................11

*Trump v. AFGE*,
    No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025).......................................................2

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
    517 U.S. 544 (1996) .........................................................................................................21

*United States v. Fausto*,
    484 U.S. 439 (1988) .........................................................................................................18

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
    5 F.4th 997 (9th Cir. 2021) ..............................................................................................16

*Zhou v. Lyons*,
    813 F.Supp.3d 1052 (C.D. Cal. 2025) ..............................................................................15

**Federal Statutes**

5 U.S.C. §551 ...........................................................................................................................16

42 U.S.C. §5149 .......................................................................................................................19

Civil Service Reform Act (CSRA) .....................................................................................18, 19

Fed. R. Civ. P. 12 ...............................................................................................................*passim*

Fed. R. Civ. P. 37 .....................................................................................................................22

Fed. R. Civ. P. 56 ..................................................................................................................6, 22

**Other Authorities**

Executive Order No. 14210 .............................................................................................3, 7, 12, 13

Executive Order No. 14356 ..................................................................................................*passim*

**INTRODUCTION**

On April 28, 2025, in response to an "unprecedented attempted restructuring of the federal government and its operations," *AFGE v. Trump*, 139 F.4th 1020, 1028 (9th Cir. 2025), Plaintiffs—a coalition of unions, nonprofits, and local governments—filed their original complaint asserting *ultra vires* and Administrative Procedure Act ("APA") claims against Defendants President Donald J. Trump and the federal agencies that were implementing his orders. ECF 1; *see also* ECF 100 (Amended Complaint); ECF 270 (Second Amended Complaint). While this litigation proceeded, on October 15, 2025, the President issued a further Executive Order ("EO") pertaining to restructuring and workforce reduction, EO No. 14356, and agencies took further implementing action. As part of that implementation, Defendants Department Homeland Security ("DHS") and Federal Emergency Management Agency ("FEMA") began undertaking dramatic workforce reduction efforts at FEMA beginning in early January 2026. ECF 298 ¶¶456-568.

Accordingly, on January 20, 2026, Plaintiffs supplemented their existing claims with allegations regarding factual developments that had occurred after the filing of the then-operative complaint, including the EO, actions taken to implement the EO, and workforce reductions at FEMA. ECF 298 ¶¶441-445, 569-574. Plaintiffs' Supplemental Complaint added new parties, ECF 298 ¶¶438-440, made new allegations supporting existing claims, *id.* ¶¶569-574, and stated additional *ultra vires* and APA claims against DHS and FEMA, *id.* ¶¶575-604. Four months later, on May 22, 2026, Defendants moved "to dismiss the Supplemental Complaint." ECF 402 at 1. This motion has no more merit than Defendants' prior motion to dismiss (ECF 216) and should likewise be denied (ECF 259).

Plaintiffs first address Defendants' arguments aimed at the Supplemental Complaint's allegations regarding EO 14356, the implementing Office of Management and Budget ("OMB") and Office of Personnel Management ("OPM") directives, and the required Annual Staffing Plans. *Infra*, Argument Section I. Defendants' motion improperly seeks to partially dismiss factual allegations stated in support of existing claims, not entire claims. Even if that were not the case, Defendants' jurisdictional arguments largely rest on a mischaracterization of EO 14356 and

the related implementing agency action as pertaining only to future hiring and therefore causing no potential injury to current federal employees.  The plain language of the Executive Order and OMB and OPM's memorandum directive belie this characterization, which is also refuted by extensive evidence that DHS and FEMA implemented EO 14356 and the related OMB/OPM directives by creating an Annual Staffing Plan at FEMA that would have *cut FEMA's existing workforce* in half.  ECF 411 at 15-19 (and evidence cited therein).

Plaintiffs next address the supplemental claims against DHS and FEMA.  *Infra*, Argument Section II.  Defendants' arguments for dismissal are largely copied from Defendants' February 19, 2026 opposition to Plaintiffs' original preliminary injunction brief (ECF 312), and were fully addressed in reply (ECF 314).[1]  Plaintiffs respond again below, and explain why Defendants' arguments regarding jurisdiction lack merit:  this Court's prior holdings on channeling apply with equal force; Plaintiffs have standing to bring these claims; and Plaintiffs challenge final agency actions.

For all of these reasons, Plaintiffs respectfully request that the Court deny this motion in its entirety and permit this litigation to proceed without delay.

BACKGROUND

Plaintiffs filed an initial complaint asserting seven *ultra vires* and APA claims against the President and implementing agencies on April 28, 2025.  ECF 1, 100.  This Court granted Plaintiffs' motions for a temporary restraining order (ECF 85) and then a preliminary injunction (ECF 124).  Both orders rejected Defendants' arguments challenging subject matter jurisdiction on standing and channeling grounds.  ECF 85 at 11-25; ECF 124 at 11-26.  On July 9, 2025, the Supreme Court stayed the preliminary injunction pending appeal with respect to the President's Executive Order and implementing OPM/OMB memorandum, without addressing Defendants' jurisdictional challenges, while permitting Plaintiffs' claims challenging agency implementation to proceed.  *Trump v. AFGE*, No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025).

---

[1] The exception is Defendants' final agency action argument, which was instead taken from their April 15 "Reply ISO Notice of Substantial Compliance."  *See* ECF 344 at 3, 10.

Defendants subsequently moved to dismiss the then-operative Amended Complaint pursuant to Rules 12(b)(1) and (b)(6). ECF 216. That motion, which included an implied preclusion/administrative channeling argument, failed to address the Ninth Circuit's binding decision in *AFGE v. Trump*, 139 F.4th 1020, 1030 (9th Cir. 2025). ECF 216 at 20-22. This Court denied Defendants' motion except with respect to the Department of Government Efficiency ("DOGE"), and granted Plaintiffs leave to amend to correct the name of that agency. ECF 259. Plaintiffs filed a Second Amended Complaint correcting the DOGE name on September 29, 2025. ECF 270. Defendants filed no pleadings motion with respect to the claims set forth in that Second Amended Complaint and instead answered on December 15, 2025. ECF 284.

During this same time period, the parties litigated Defendants' challenges to Plaintiffs' discovery, which were rejected by this Court and the Ninth Circuit. ECF 210, 214, 232; *AFGE v. Trump*, 155 F.4th 1082 (9th Cir. 2025); *AFGE v. Trump*, 163 F.4th 1226 (9th Cir. 2026).

Meanwhile, on October 15, 2025, the President issued Executive Order 14356 "to protect and expand upon the[] historic reductions in the Federal workforce" under Executive Order No. 14210 (the implementation of which was originally challenged in this case). Exec. Order No. 14356, 90 Fed. Reg. 48387, §1 (Oct. 15, 2025); ECF 298 at ¶¶441-444. As Defendants emphasize, this new order did address hiring. But it went beyond hiring, and directed agencies to create "Annual Staffing Plans" in which "agencies shall seek to improve operational efficiency; eliminate duplicative or unnecessary functions and positions; reduce unnecessary or low-value contractor positions; [and] promote employee accountability…" EO 14356, §2(c)(1). The President ordered that agencies "shall" prepare these plans within sixty days and submit "final" plans to OPM and OMB; "shall comply" with these plans throughout the fiscal year; and "shall" provide updates "showing progress in implementing their Annual Staffing Plans" to OMB and OPM. *Id*. §(2)(c)(i)-(iii).

OMB and OPM issued an implementing directive, requiring that "[t]he agency's Annual Staffing Plan *shall* additionally consider efficiencies that may be created by organizational restructuring, removal of unnecessary management layers, elimination of duplicative or unnecessary functions and positions, consolidation of administrative functions, reduction of

unnecessary or low-value contractor positions, performance management of underperforming employees, effective and efficient distribution of workload across similar positions and shared skill sets, process streamlining and improvements, and new technologies." ECF 298 ¶446 (emphasis added).

For the next several months, the President, OMB, OPM, and the federal agencies were largely prevented from further implementing or executing any workforce reduction directives by the federal government shutdown and this Court's injunctive relief preventing shutdown Reductions in Force ("RIFs") in related case *AFGE v. OMB*, Case No. 25-cv-08302-SI (ECF 56, 94), and then by Congress's enactment of the Continuing Resolution to end the shutdown and this Court's further orders enforcing that law, *AFGE v. OMB*, Case. No. 25-cv-08302-SI (ECF 125, 139). Notwithstanding the shutdown, Continuing Resolution, and related litigation, in December 2025, DHS and FEMA moved forward with plans to dramatically reshape and reduce FEMA. *See* ECF 298 ¶¶472-522; ECF 411 at 6-23 & accompanying evidence at 414-414-12. The FEMA Annual Staffing Plan for fiscal year 2026 implementing EO 14356 cut FEMA's staffing in half. ECF 298 ¶¶472-74, 502; *see also* ECF 414-2 at 117 (Depo. Ex. 17). DHS and FEMA began implementing those plans by eliminating a particular category of statutorily authorized positions (the Cadre of On-Call Response/Recovery or "CORE") in early January 2026. *See* ECF 298 ¶¶472-522; ECF 411 at 23.

Accordingly, Plaintiffs filed an unopposed motion for leave to file a Supplemental Complaint, which this Court granted on January 30, 2026. ECF 290, 295, 298. The Supplemental Complaint added allegations regarding factual developments that occurred after the filing of the operative Second Amended Complaint. ECF 298 ¶¶441-568. Based on those factual developments, Plaintiffs added parties that were involved in or affected by those developments, *id*. ¶¶438-440, as well as factual allegations in support of their existing claims against the President, OMB and OPM, and Federal Agency Defendants arising from EO 14356, the OMB/OPM directives, and agency Annual Staffing Plans. *Id.* ¶569 (adding allegation to existing Claim I), ¶570 (same, re Claim II), ¶571 (same, re Claim III), ¶572 (same, re Claim IV), ¶573 (same, re Claim VI), ¶574 (same, re Claim VII). Plaintiffs also added new *ultra vires* and APA

claims against DHS and FEMA specifically arising from the actions to reduce FEMA staffing and eliminate CORE employees. *Id.* ¶¶575-604 (asserting new Claims VIII-XIII).

Based on reports that implementation of the plan to halve the agency was soon to resume, Plaintiffs moved for a TRO, which this Court converted to a motion for preliminary injunction. ECF 301, 304, 312. At the preliminary injunction hearing, Defendants' counsel made representations that were inconsistent with their own evidence regarding DHS and FEMA's actions. ECF 321. This Court ordered expedited discovery and later established a further briefing schedule with respect to Plaintiffs' request for injunctive relief. *Id.*; ECF 328, 336, 339, 351, 355, 358, 362, 370, 377, 380, 381, 386, 393, 395, 410. A week before the deadline for Plaintiffs' further preliminary injunction briefing, and four months after the filing of Plaintiffs' Supplemental Complaint, Defendants moved to dismiss the Supplemental Complaint. ECF 402. Prior to and in conjunction with this motion, Defendants also urged this Court to delay further discovery, which Plaintiffs opposed. *See* ECF 351, 373, 400, 403, 409. This Court granted the parties' agreed upon request to set the motion to dismiss for hearing along with Plaintiffs' motion for further injunctive relief, scheduled for June 23, 2026. ECF 410.

## ARGUMENT

I.    **Defendants' Rule 12 Motion Targeting Supplemental Factual Allegations in Support of Existing Claims Should Be Denied**

Defendants' attempt to dismiss Plaintiffs' supplemental allegations regarding EO 14356, the November 5, 2025 OMB/OPM memorandum, and Annual Staffing Plans is both procedurally infirm and substantively meritless. First, Defendants' motion ignores that Plaintiffs did not bring separate claims targeting these actions, but rather added allegations about them to supplement Plaintiffs' existing claims concerning the Administration's workforce reduction efforts, and Rule 12 does not permit this type of piecemeal attack on existing claims. Second, even if partial dismissal of claims were appropriate, Defendants' facial challenges to jurisdiction fail, because Plaintiffs have pled sufficient facts to demonstrate that the challenged actions *do* injure Plaintiffs through workforce reduction efforts and are ripe for adjudication, including because the OMB/OPM implementing memorandum and the Annual Staffing Plans are final agency actions.

### A.    Defendants' Rule 12 Motion Seeks to Dismiss Supplemental Factual  Allegations, Not Claims

Plaintiffs' Supplemental Complaint pled no new claims related to EO 14356, the OMB/OPM implementing memorandum, or the Annual Staffing Plans required by those directives.  ECF 298 ¶¶569-74.  Rather, it added supplemental allegations about Defendants' ongoing actions to reduce the federal workforce to Plaintiffs' existing Separation of Powers, *ultra vires*, and APA claims challenging the federal government's directives to reduce the federal workforce and restructure the federal government.  *Id*.

Defendants purport to move to dismiss the claims in Plaintiffs' Supplemental Complaint.  But they actually do not move to dismiss the entirety of any of the non-FEMA/DHS-specific claims.  Instead, they target the Supplemental Complaint's additional allegations regarding EO 14356, the OMB/OPM implementing memorandum, and the Annual Staffing Plans, which support Plaintiffs' existing Claims I-IV and VI-VII.  ECF 402 at 9-20.  "Defendants have not pointed to any authority demonstrating that it may attack portions of a single claim on a motion to dismiss."  *Doe v. Napa Valley Unified Sch. Dist.*, 2018 WL 4859978, at *2 (N.D. Cal. Apr. 24, 2018).  Unlike Rule 56, which "expressly allow[s] a party to move for summary judgment of part of a claim," Rule 12 "does not contain similar language."  *Pinnacle Ventures LLC v. Bertelsmann Educ. Servs. LLC*, 2019 WL 4040070, at *3 (N.D. Cal. Aug. 26, 2019).  As a result, district courts in the Ninth Circuit generally reject "piecemeal" attempts to dismiss only part of a claim.  *Soc Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F.Supp.3d 849, 875 (N.D. Cal. 2024); *see also Jones v. City of Los Angeles*, 2021 WL 6496719, at *6 n.10 (C.D. Cal. June 25, 2021) ("The Court cannot dismiss part of a claim."); *Pinnacle*, 2019 WL 4040070, at *3 (collecting cases).

While courts have occasionally allowed partial dismissal of a claim, they have done so only where a plaintiff asserts "a single cause of action that is predicated on more than one liability theory." *See Staley v. Gilead Scis., Inc.*, 2020 WL 5507555, at *11 (N.D. Cal. July 29, 2020); *but see In re Soc. Media.*, 753 F.Supp.3d at 875 (denying motion to dismiss part of claim involving two distinct theories of liability).  Unlike in such cases, however, Plaintiffs' allegations regarding the Annual Staffing Plans and the related directives "cannot be cleanly separated out" from the Plaintiffs' claims

regarding the federal governments' earlier directives to reduce the size of the federal workforce. *Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075, 1085 (N.D. Cal. 2025).

As Plaintiffs have explained, EO 14356, the OMB/OPM memorandum, and the Annual Staffing Plans are a continuation of the Administration's reduction and reorganization efforts that began with EO 14210, the OMB/OPM memorandum implementing that EO, and the resulting Agency RIF and Reorganization Plans ("ARRPs"). ECF 404 at 4-5. EO 14356 is explicit in recognizing this, stating that the "Administration has dramatically reduced the size of the Federal workforce," directly referencing EO 14210, and that EO 14356 aims to "protect and expand upon" those efforts. EO 14356, §1. The OMB/OPM memorandum likewise recognizes that EO 14356 and the Annual Staffing Plans are a continuation of the Administration's reorganizing and reduction actions. Citing EO 14210, the memorandum asserts that the Administration has sought to "eliminate waste, bloat, and insularity" and has "achieved unprecedented reductions in the Federal workforce." ECF 298 ¶445 (citing November 5 Memorandum at 1).[2] It goes on to explain that the new directives, including those regarding the creation of Annual Staffing Plans, are aimed at "expand[ing] upon these historic reductions in the Federal workforce." November 5 Memorandum at 1; ECF 298 ¶445. And in explaining the analysis that agencies should conduct in their Annual Staffing Plans, it instructs that those plans should "implement[] the President's specific policy priorities." November 5 Memorandum at 1; ECF 298 ¶445. In short, as EO 14356 and the OMB/OPM implementing memorandum make clear, and as Plaintiffs unambiguously pled, the Annual Staffing Plans and the reductions contemplated therein are part of a continuing effort to implement the President's workforce reduction priorities. ECF 298 ¶¶436-37, 449-455.

While the original centerpiece of the President's agenda, as set forth in EO 14210, was planned mass terminations and restructuring of federal agencies without Congressional authorization, those efforts were largely disrupted during 2025 by a combination of litigation, the extended government shutdowns, and legislation. *Id*. The Administration has nonetheless reiterated its goals

---

[2] OMB/OPM Memorandum, Guidance on Executive Order 14356, *Ensuring Continued Accountability in Federal Hiring* (Nov. 5, 2025) available at https://www.opm.gov/chcoc/latest-memos/guidance-on-executive-order-14356-ensuring-continued-accountability-in-federal-hiring.pdf.

of reducing the workforce and eliminating disfavored programs in fiscal year 2026 and beyond, including through the plans required by EO 14356.  The President's Management Agenda, released December 8, 2025, sets forth as the first of three priorities to "Shrink the Government and Eliminate Waste" by "Downsiz[ing] the Federal Workforce."[3]  There is a continuous and direct through-line between the actions challenged at the time of the initial complaints and the new allegations in Plaintiffs' Supplemental Complaint.  These are not, as Defendants portray, "entirely" new Administration actions "unrelated to Plaintiffs' prior claims" (ECF 402 at 1, 6); rather, the supplemental allegations set forth, as Plaintiffs have pled, are further actions to implement the same Administration directives to restructure and reduce the federal workforce.  ECF 298 ¶436.

Because these directives are all of a piece, Defendants' attempt to obtain piecemeal dismissal of the additional allegations in Plaintiffs' Supplemental Complaint should be rejected.  That is dispositive of Defendants' challenge to Plaintiffs' supplemental allegations regarding EO 14356 and related implementing actions, ECF 402 at 9-17, and the Court need not reach the remainder of the issues briefed in Section I.B *infra*.

**B.      Defendants' Arguments for Dismissal Lack Merit for Other Reasons as Well**

**1.      Standing**

As previously discussed, Defendants' standing arguments rest on the faulty premise that Plaintiffs' Supplemental Complaint brought standalone claims challenging EO 14356, the OMB/OPM implementing memorandum, and the Annual Staffing Plans, thereby requiring an independent showing of standing, rather than simply supplementing Plaintiffs' existing claims with additional allegations regarding the Administration's continued attempts to downsize the federal workforce.  In addition, Defendants' arguments depend on the faulty factual premise that EO 14356, the OMB/OPM implementing memorandum, and the Annual Staffing Plans created pursuant to those

---

[3] The President and OMB have linked the existing Executive Orders, which at the time of this Agenda included EO 14210 and 14356, with these goals.  *See* President Trump's Management Agenda, available at: https://www.performance.gov/trump47pma/; see also OMB Memorandum Re: President's Management Agenda, available at: https://www.whitehouse.gov/wp-content/uploads/2025/12/M-26-03-Presidents-Management-Agenda.pdf ("This Agenda articulates key management reform objectives as priority goals, established by the President's Executive Orders and directives…").

directives address only future hiring and so cannot "injure current federal employees, unions that claim to represent them, or non-union plaintiffs asserting RIF-related injuries."  ECF 402 at 11-13.

The face of the documents at issue resoundingly rebut Defendants' characterization that they are limited to future hiring.  The OMB/OPM implementing memorandum explains that the purpose of the EO is in part to "expand upon the[] historic reductions in the Federal workforce" already effectuated.  ECF 298 ¶445 (citing Nov. 5 Memorandum at 1).  Accordingly, it instructs each agency to prepare an Annual Staffing Plan that "evaluat[es] the agency's current workforce" and "consider[s] efficiencies that may be created by organizational restructuring, removal of unnecessary management layers, elimination of duplicative or unnecessary functions and positions, consolidation of administrative functions, … [and] performance management of underperforming employees."  ECF 298 ¶446 (Nov. 5 Memorandum at 2-3); *supra* n.3.  These directives implement similar language in the EO.  ECF 298 ¶442 (citing EO 14356 §2(c)(i)) ("In these [Annual Staffing Plans], agencies shall seek to … eliminate duplicative or unnecessary functions and positions.").

Defendants dismiss this language, asserting that the reference to reducing "unnecessary" positions is meant only to guide agencies in determining whether to fill vacant positions, not whether to eliminate positions currently occupied by employees.  But this strained reading ignores that EO 14356 and the OMB/OPM memorandum do not refer to piecemeal reductions only in situations where there are existing vacancies, but instead contemplate agencies undertaking broad restructuring efforts through, for example, reducing entire levels of management, eliminating certain agency functions, or engaging in organizational restructuring.  ECF 298 ¶¶442-46.  Contrary to Defendants' implausible interpretation, the type of broad restructuring that EO 14356 and the OMB/OPM memorandum instruct agencies to plan for in their Annual Staffing Plans can only be carried out through reductions in the existing workforce.  And insofar as Defendants assert only a facial challenge to Plaintiffs' standing related to these directives (ECF 402 at 9), Plaintiffs' allegations, including those regarding the nature of the directives at issue (ECF 298 at ¶¶436-37, 441-55), must be accepted as true.  *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021).

If the language of the EO and the OMB/OPM memorandum left any doubt that compliance with the EO and OMB/OPM memorandum involves reductions in the current federal workforce, the

manner in which these directives have been implemented resolves it.  ECF 298 ¶¶455-502.  Although the Annual Staffing Plans have not been made public, and Defendants have resisted producing them in discovery (ECF 400, 403, 404, 409), Plaintiffs alleged (ECF 298 at ¶¶455-502), and the evidence developed in discovery regarding FEMA and DHS's Annual Staffing Plan demonstrates, that the Annual Staffing Plans and the directives mandating their creation contemplate reductions in the existing federal workforce.  As already explained at length, FEMA's Annual Staffing Plan implementing the EO and the OMB/OPM directives contain a 50% reduction in its *existing* workforce.  ECF 411 at 15-17.

Further, DHS specifically instructed components that their Annual Staffing Plans should account for planned reductions through RIFs of existing employees.  In soliciting plans from components pursuant to EO 14356 and the OMB/OPM memorandum, DHS circulated an Annual Staffing Plan template "that aligns with OPM/OMB reporting requirements."  Eshleman Decl., Ex. A (USA-AFGE-Exp.-0133326); *id.*, Ex. B (USA-AFGE-Exp.-0133327).  That Staffing Plan template specifically required components to plan for reductions in the existing workforce, including providing projections for "[a]ttrition from RIF" and "[a]ttrition from DRP" (Deferred Resignation Program).  *Id.*, Ex. B (USA-AFGE-Exp.-0133327 (Employee Plan)).  Components were also required to answer a series of questions about how they could effectuate reductions or restructuring of their existing workforce based on the instructions in EO 14356 and the OMB/OPM memorandum.  *Id.*, Ex. B (USA-AFGE-Exp.-0133327 (Reduction-Restructure)).  And consistent with the obvious conclusion that such reductions and restructuring be carried out through eliminating existing employees rather than piecemeal through failing to fill vacancies, several of the examples DHS provided to show how the Annual Staffing Plan analysis should be conducted explicitly contemplated RIFs.  *Id.*, Ex. B (USA-AFGE-Exp.-0133327 (Workforce Planning Instructions)).  In keeping with these instructions (and the DHS plan to dramatically reduce the FEMA workforce to serve the President's view of "unnecessary functions and positions," EO 14356 §2(c)(1)) DHS officials directed FEMA to cut existing staff in half, and FEMA did just that.  ECF 411 at 15-24; 414-2, Depo. Ex. 17.  In short, the evidence regarding the implementation of the EO and OMB/OPM instructions confirms what those documents themselves state: the directives regarding the Annual Staffing Plans do not just address

new hires but instruct agencies to consider reductions and restructuring of the existing workforce. Defendants' assertion that no injury to existing employees, the unions that represent them, or the entities that rely on federal government services could result from the Annual Staffing Plans and the related directives is plainly false.

Defendants' subsidiary standing argument, that Plaintiffs have not identified a specific cognizable "injury from the documents" (ECF 402 at 10), likewise relies on an incorrect understanding of the nature of these directives and of Plaintiffs' claims.  That is, Defendants operate as if Plaintiffs bring new standalone claims premised solely on the new EO, the new OMB/OPM memorandum, and the resulting Annual Staffing Plans that require an independent showing of standing.

Because the Annual Staffing Plans and the related directives are part of the Administration's continuing efforts to reduce and remake the federal workforce, Plaintiffs' Supplemental Complaint added allegations regarding these new developments to its existing claims contesting the legality of Administration's directives to reduce the federal workforce.  As to these claims, the Court has already twice found Plaintiffs to have suffered an injury sufficient to confer standing.  ECF 85 at 11-18; ECF 124 at 11-18.  Defendants did not attempt to challenge the Court's conclusion in either their subsequent motion to dismiss Plaintiffs' amended complaint (ECF 216) or at any point following Plaintiffs' filing of a Second Amended Complaint.  Nor do Plaintiffs' supplemental allegations regarding Defendants' ongoing efforts to enact broad cuts to the federal workforce somehow undercut the Court's prior findings that Plaintiffs have been injured.  If anything, the existence of ongoing efforts to reduce the workforce amplify the harms to Plaintiffs that this Court has already recognized flow from the Administrations' workforce reduction plans.

Although Plaintiffs have already established standing for each of these claims, Defendants demand that Plaintiff make an additional showing of injury, causation, and redressability with respect to each of the specific allegations in support of Plaintiffs' claims.  But that is not what Article III requires.  "Article III standing is … claim- and relief- specific." *In re Adobe Sys., Inc. Priv. Litig.*, 66 F.Supp.3d 1197, 1218 (N.D. Cal. 2014).  That is, "plaintiffs must demonstrate standing for *each claim* that they press." *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (emphasis added);

*see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (same).  Article III does not, as Defendants implicitly assert, require parsing each of a plaintiff's individual allegations in support of a given claim to determine whether a plaintiff can independently establish standing for each.

But even if Plaintiffs were required to independently establish an injury related to supplemental allegations supporting existing claims, EO 14356, the implementing OMB/OPM memorandum, and the Annual Staffing Plans harm Plaintiffs in much the same way as the Administration's previous workforce reduction efforts.  That is, Plaintiff unions represent employees working at federal agencies subject to these directives whose jobs or working conditions are directly affected by restructuring and downsizing.  ECF 270 ¶¶29-35; ECF 298 ¶438.  Workforce reductions harm Plaintiff unions themselves in the form of loss of membership and dues resulting from such reductions.  ECF 270 ¶¶29-35; ECF 298 ¶438.  Other Plaintiff unions represent state and local government employees, as well as private sector employees, whose jobs or working conditions rely on maintenance of federal agency capacity.  ECF 270 ¶¶30, 31, 36-38.  And Plaintiff local governments and non-profit organizations themselves rely, or have members who rely, on the services of the agencies subject to these directives and would be impacted by the restructuring curtailing those services or workforce reductions eliminating employees who perform those services.  ECF 270 ¶¶39-56.  As noted, this Court has previously found these types of allegations to suffice to establish standing regarding workforce reduction efforts.  ECF 124 at 11-18; ECF 85 at 11-18.

As they did previously with respect to EO 14210 and the ARRPs, Defendants seek to benefit from their own concealment of the Administration's actions by arguing that Plaintiffs cannot establish standing to challenge them.  Nonetheless, although the Administration has largely hidden the contents of the Annual Staffing Plans, Plaintiffs have alleged and furnished evidence to substantiate injuries arising from the Annual Staffing Plan that Plaintiffs have uncovered—namely, FEMA's.  As explained, FEMA's Annual Staffing Plan submission, developed pursuant to EO 14356 and OMB/OPM's implementing instructions, contained a 50% reduction in FEMA's workforce, which it began carrying out through the indiscriminate non-renewal of CORE employees in January.  ECF 411 at 15-24.  As detailed *infra* at 20-22, such a reduction harms the employee members of Plaintiff unions, the unions themselves, Plaintiff local governments that rely on FEMA's disaster

response services and FEMA's steady state funding for disaster programs, and employee-members of other Plaintiff unions whose state and local government positions are funded through FEMA grants. *See also* ECF 314 at 15-19; ECF 298 ¶¶560-68. Each of these harms flow directly from the workforce reduction in FEMA's Annual Staffing Plan as well as the OMB/OPM memorandum and EO 14356 directing the creation of such a plan. *See* ECF 124 at 13-17 (finding similar evidence of injury sufficient to confer standing to challenge EO 14210, the OMB/OPM memorandum implementing that EO, and the resulting ARRPs). These types of harm would suffice to establish Plaintiffs' standing.

### 2. Ripeness and Final Agency Action

For an agency action to be final, and thus reviewable under the APA, the "action must (1) 'mark the consummation of the agency's decisionmaking process' and (2) 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). "[F]inality" is "interpreted in a pragmatic and flexible manner." *Id.* (citation omitted). Meanwhile, "the ripeness inquiry contains both a constitutional and a prudential component." *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). "[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003). The prudential component assesses "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Thomas*, 220 F.3d at 1141. "Prudential considerations of ripeness are discretionary." *Id.* at 1142.

In APA cases, the final agency action requirement is "inter-related" with ripeness.[4] *Northcoast Env't Ctr. v. Glickman*, 136 F.3d 660, 668 (9th Cir. 1998). With respect to challenges to agency action, these inquiries overlap and so arguments that agency action is non-final or that a

---

[4] Of course, Plaintiffs' *ultra vires* claims need not satisfy the final agency action requirement. This Court and the Ninth Circuit have repeatedly held that *ultra vires* claims may proceed alongside APA claims. *See, e.g.*, *Sierra Club v. Trump*, 963 F.3d 874, 888-93 (9th Cir. 2020), *judgment vacated on other grounds*, *sub nom. Biden v. Sierra Club*, 142 S.Ct. 46 (2021); *Sierra Club v. Trump*, 929 F.3d 670, 696-97 (9th Cir. 2020), *judgment vacated on other grounds, sub nom. Biden v. Sierra Club*, 142 S.Ct. 46 (2021).

challenge is unripe can be defeated, as here, by similar considerations.[5] *E.g.*, *Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*, 128 F.4th 1089, 1113 (9th Cir. 2025), *cert. granted sub nom. Dep't of Air Force v. Prutehi Guahan*, 224 L. Ed. 2d 174 (Mar. 9, 2026).

As with standing, Defendants' ripeness and final agency action arguments fail at the outset, because they challenge only factual allegations, not Plaintiffs' claims. The Supplemental Complaint's factual allegations support Plaintiffs' existing claims that the President, OMB, OPM and Federal Agency Defendants are engaged in unlawful actions. In any event, the EO, OMB/OPM Memorandum, and Agency Staffing Plans *are* final actions, and legal challenges to those actions are therefore ripe under both the Constitution and the APA—as this Court held with respect to the prior EO, memorandum, and ARRPs. ECF 124 at 42-43. Defendants' contrary arguments again largely rest on their misrepresentation that the EO and implementing directives are limited to future hiring rather than restructuring and workforce reduction. ECF 402 at 14-15 (ripeness), 16-17 (final agency action). That is wrong, for the reasons previously explained. *See supra* at 8-11.

These threshold legal arguments fail for several additional reasons as well:

1. With respect to the *ultra vires* claims against the President and the *ultra vires* and APA claims against OMB and OPM, the Executive Order and OPM/OMB Memorandum reflect final decisions and are final directives subject to legal review, for the same reasons that the earlier EO and OPM/OMB Memorandum were. *AFGE v. Trump*, 139 F.4th at 1038. The President ordered agencies to create final plans within sixty days, and the EO is plainly a final directive to agencies to act. Like the previous OMB and OPM instructions, the November 5, 2025 Memorandum implementing EO 14356 "set out a schedule of deadlines by which agencies were to submit" Annual Staffing Plans and quarterly updates (*id.* at 1039), mandating that agencies "shall" submit "Annual Staffing Plans for FY 2026 … to OMB and OPM no later than December 1, 2025" and that they "shall submit updates to OMB and OPM each quarter, beginning with the second quarter of Fiscal

---

[5] Defendants' argument on the first prudential ripeness prong focuses on the same issues underlying the final agency action analysis. ECF 402 at 15. As for the second prong regarding hardship, that issue "dovetails" with the analysis of constitutional injury (*Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1142 (9th Cir. 2000)), and Defendants' assertion that the challenged actions have not sufficiently affected Plaintiffs is answered by Plaintiffs' showing of injury. *See supra* at 8-13.

Year 2026, showing progress with respect to their Annual Staffing Plan." *See* Nov. 5 Memorandum at 3-4. And as with the earlier implementing Memorandum, Defendants do not identify anything in the record that "indicates that OMB/OPM's actions are 'of a merely tentative or interlocutory nature.'" *AFGE v. Trump*, 139 F.4th at 1038 (citation omitted). The OMB/OPM memorandum "was therefore a definitive statement of OMB/OPM's position that had a direct and immediate effect on the day-to-day operations of the agencies, and with which immediate compliance was expected."[6] *Id.* at 1039 (cleaned up).

2.      Defendants' argument that the Annual Staffing Plans required by these directives are not final fares no better: The plain language of the EO states that these are "final" plans that must be implemented and complied with. First, the President directed agencies to create "final" plans within sixty days of the October 15, 2025 EO. ECF 298 ¶443 (EO 14356 §2(c)(1)). The President then ordered that agencies "shall comply" with these Annual Staffing Plans throughout the fiscal year, and "shall" provide updates "showing progress in implementing their Annual Staffing Plans" to OMB and OPM." *Id*. (EO 14356, §(2)(c)(i)-(iii)). As was the case with the ARRPs, the fact that agencies can amend or alter these "final" plans, subject to apparent OMB/OPM approval (ECF 402 at 14-15), does not render them any less final. Just as an agency's ability to reverse a previous rule through new notice and comment rulemaking does not render all agency rules non-final, the existence of a process for revising otherwise final staffing plans does not change their finality. *See Zhou v. Lyons*, 813 F.Supp.3d 1052, 1060 (C.D. Cal. 2025) ("An action is either final or not, and the mere fact that the agency could—or actually does—reverse course in the future does not change that fact.").

Moreover, to date, Defendants have blocked Plaintiffs' discovery (ECF 400, 403, 404, 409) and refuse to reveal the contents of any of these plans or amendments. As such, they certainly cannot represent as a matter of *fact* that they are not final. To the extent Defendants make a facial challenge, and rely only on the language of the EO and OMB/OPM memorandum, their arguments that the

---

[6] Defendants resist this conclusion by once again insisting that "the EO and Memorandum do not require agencies to take any action that could directly affect Plaintiffs, but to deliberate over hiring efforts." ECF 402 at 17. As explained, this argument conflicts with the language of the EO and Memorandum, which address reductions in the existing workforce, as well as the fact that the only annual staffing plan Defendants have turned over in discovery revealed a 50% cut to that agency's workforce. *See supra* at 8-13.

required plans are only interim fail for the same reasons that these arguments previously failed with respect to the ARRPs, both as a matter of ripeness or APA finality. ECF 124 at 42-43; *AFGE v. Trump*, 139 F.4th at 1038.

3. Defendants also make the confounding assertion that neither the OPM/OMB Memorandum nor the Agency Staffing Plans are "agency actions" at all for purposes of the APA, relying on *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1011 (9th Cir. 2021). ECF 402 at 16. *Whitewater*, however, involved plaintiffs that could not identify any specific "regulations, rules, orders, public notices, or policy statements," but instead attempted to litigate the whole of essentially every action DHS took pertaining to, among other things, "[p]arole," "[t]emporary [p]rotective [s]tatus," "[a]sylum," and "[r]efugees." *Whitewater*, 5 F.4th at 1010. By contrast, here Plaintiffs contest discrete actions: the OMB/OPM Memorandum and the resulting Annual Staffing Plans, which are prototypical "agency action[s]" cognizable under the APA. *See* 5 U.S.C. §551(13); *AFGE v. Trump*, 139 F.4th at 1038.[7]

4. Defendants' factual intimation that agencies have not yet implemented the EO and OMB/OPM directive is inconsistent with Plaintiffs' allegations (ECF 298 ¶¶450-455), and is also belied by the actions taken by DHS and FEMA (ECF 298 ¶¶456-502). Defendants made this same argument the last time around, arguing that Plaintiffs had not pled implementing action and could not challenge ARRPs but had to "await specific RIFs and reorganizations." ECF 216 at 1, 20. As then, this argument now is contrary to Plaintiffs' allegations, which identify agency action implementing these orders including specific actions with respect to employees at DHS and FEMA. ECF 298 ¶¶441-55, 472-502. This Court correctly rejected this argument previously and should reject it again. ECF 259 at 8.

Defendants again insist on presenting a view of the *facts* that ignores both Plaintiffs' allegations and the actual record evidence of Defendants' actions. They represent to the Court that Plaintiffs can "only speculate that a hiring plan considering whether positions are needlessly

---

[7] Defendants' misplaced assertions regarding Plaintiffs' supposed lack of harm from these agency actions (ECF 402 at 16) have no bearing on whether Plaintiffs challenge "agency action[s]" as defined by the APA and are addressed above in the context of standing.

duplicative must involve a removal affecting Plaintiffs or their members." ECF 402 at 15. In fact, Plaintiffs need not speculate because this is exactly what DHS and FEMA did before this lawsuit stopped them: implement the DHS-directed FEMA Annual Staffing Plan by cutting the CORE. Defendants insist on presenting an alternative factual narrative, which is contradicted by the evidence developed over Defendants' deliberate roadblocks (including sustained non-compliance and the actual destruction of evidence, *see* ECF 412).

In sum, Defendants attempt to convince this Court that Plaintiffs' Supplemental Complaint was premature because the President, OMB, OPM, and the Federal Agency Defendants have yet to do anything (so their claims are not ripe and the agency actions are not final), should be rejected for many reasons, just as these arguments were previously in this case with respect to the first EO and the ARRPs.

## II.    The Motion to Dismiss Plaintiffs' Supplemental Claims Against DHS and FEMA Also Should Be Denied

### A.    Defendants Provide No Basis to Revisit this Court's Prior Channeling Rulings

On September 9, 2025, this Court rejected Defendants' arguments that it lacks subject matter jurisdiction over Plaintiffs' *ultra vires* and APA claims challenging, inter alia, agency actions implementing the President's directives to reorganize and downsize government. ECF 259 at 10-11 (rejecting motion to dismiss Amended Complaint Claims I-VII). For the same reasons, the Court has jurisdiction over Plaintiffs' supplemental *ultra vires* and APA claims against DHS and FEMA arising from DHS and FEMA's unlawful actions implementing the President's directives to reorganize and downsize the government (ECF 298, Claims VIII-XIII). Nothing in Defendants' motion provides reason to reconsider this Court's prior conclusion or its applicability to these claims.[8]

Defendants' argument is predicated on the same incorrect premise that defeated this argument last time around: that Plaintiffs challenge only covered individual personnel actions, rather than the

_____

[8] Defendants' motion appears to copy verbatim the channeling argument in their preliminary injunction opposition, which was filed on February 19, 2026. ECF 312 at 10-13. Defendants' repeated representations that they lacked the "opportunity" to file this motion any earlier than four months after the Supplemental Complaint ring hollow given that large portions are simply copied and pasted from prior briefing. *See also infra* at 20 (discussing fact that standing argument is listed almost verbatim from prior briefing as well).

agency policies, decisions, and actions that resulted in those individual effects. ECF 402 at 18. Plaintiffs' original and further briefing on injunctive relief demonstrate the extent to which any implementation with respect to individual CORE employees stems from the unlawful acts of DHS and FEMA, including (but not limited to) DHS's unlawful removal of FEMA authority with respect to employment decisions, DHS's unlawful creation and implementation of a plan to cut FEMA in half, and DHS's unlawful decision to effectuate that plan by removing CORE positions by Not to Exceed ("NTE") date. ECF 301-1, 314, 411. As with the claims addressed earlier in this case by this Court and the Ninth Circuit, these supplemental claims against DHS and FEMA "are not challenging those employment decisions with respect to individual employees. Rather, they are challenging Defendants' constitutional and statutory authority to direct the federal agencies to take such actions in the first place." *AFGE v. Trump*, 139 F.4th at 1031; *see* ECF 298 (Claims VIII-XIII).

The Ninth Circuit's holding likewise answers Defendants' invocation of *United States v. Fausto*, 484 U.S. 439, 446 (1988), which addressed whether certain employees excluded from the jurisdiction of the Merits Systems Protection Board within the Civil Service Reform Act ("CSRA") could seek judicial review of "personnel action covered by [the CSRA]." *Id*. at 447. Plaintiffs challenge the agency decisions that are the precursor to any individual employment action (for employees who, as discussed further below, are also governed by *different* statute than the CSRA). Defendants again misinterpret *Block v. Community Nutrition Institute*, 467 U.S. 340, 346-67 (1984), which does not stand for the broad proposition that "[w]here a comprehensive statutory scheme authorizes only certain plaintiffs' claims, it implicitly precludes review of all others." ECF 402 at 19.[9] The Ninth Circuit also rejected this argument: "We find it unlikely that Congress intended for the CSRA to preclude review for parties not even covered by that statute who allege claims outside

---

[9] The consumer plaintiffs in *Block* sued to enforce the Agricultural Marketing Agreement Act of 1937, and the Court held that Congress had implicitly precluded consumers from challenging "milk market orders" under that statute because the Act "intended only producers and handlers, and not consumers, to ensure that the statutory objectives would be realized." 467 U.S. at 347. This is a far cry from the broad statement that if an adjudicatory scheme only authorizes certain parties to bring particular claims, *all others* are precluded from bringing *any other claims,* including under the APA. In particular, the Supreme Court has "never" endorsed implied preclusion of APA claims predicated on "some general similarity of subject matter" in a later-enacted statute. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 222–24 (2012).

the MSPB's and FLRA's jurisdiction." *AFGE v. Trump*, 139 F.4th at 1033 (9th Cir. 2025). Nonetheless, Defendants do not even acknowledge that both this Court and the Ninth Circuit have conclusively rejected the same arguments they repeat here. ECF 259 at 10-11; *AFGE v. Trump*, 139 F.4th at 1030-31 ; *compare* ECF 402 at 18-20. By Plaintiffs' count, this is at least Defendants' fourth brief in this case that argues administrative channeling without even acknowledging the prior binding Ninth Circuit decision in this case. *See* ECF 216, 252, 312.[10] This Court should not entertain Defendants' counsel's defiance of the prior holdings of this Court and the Ninth Circuit that directly govern these claims. ECF 402 at 18-20.

Finally, Defendants' additional arguments regarding the Stafford Act, which authorizes FEMA to hire CORE employees without application of the Title V civil service statutes governing "appointments in competitive service" (42 U.S.C. §5149(b)(1)), also lack merit. ECF 402 at 19-20. The Stafford Act does not impliedly preclude the Court's jurisdiction to hear *ultra vires* and APA claims challenging unlawful agency actions just because it creates a *different* category of full-time federal employment that not bound by the civil service rules for hiring. The CSRA and Merit Systems Protection Board jurisdiction over Title V employees in no way channel or preclude claims by these Stafford Act employees, who are governed by a different set of statutes. Nor does the Stafford Act itself establish any sort of adjudicatory scheme through which these employees' claims could even be arguably channeled, so Defendants' administrative channeling argument does not even leave the starting gate. Congress established no "special statutory review scheme" as an alternative to judicial review for these Stafford Act employees at all. *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023). For this reason as well, Plaintiffs' supplemental claims against DHS and FEMA "plainly fall outside of the scope" of the administrative review scheme established by Congress in the CSRA, and are not channeled. *AFGE v. Trump,* 139 F.4th at 1030.

---

[10] Before Defendants filed this brief, Plaintiffs specifically pointed out that "Defendants do not acknowledge Ninth Circuit authority foreclosing their argument, instead citing out-of-circuit authority." ECF 314 at 13 n.18. Instead of fixing this, Defendants simply copied and pasted the same argument again. Counsel for the same Defendants in the related *AFGE v. OMB* case have likewise filed multiple briefs that argue implied preclusion/channeling, also without acknowledging these binding decisions. Case No. 25-cv-08302-SI, ECF 41 at 11; ECF 47 at 7; ECF 85 at 10; ECF 134 at 10-13.

**B.    Plaintiffs Have Standing to Assert Their Claims Against DHS and FEMA**

Defendants' argument that Plaintiffs lack standing is lifted almost word for word from their opposition to Plaintiffs' motion for preliminary injunction. *Compare* ECF 402 at 21-24 *with* ECF 312 at 13-17. These recycled arguments fail to contend with Plaintiffs' allegations and evidentiary showing of the concrete harms to union and local government Plaintiffs, and the members and employees represented by union Plaintiffs, resulting from the planned reductions in FEMA's staff (ECF 314 at 15-19) or the Court's prior determinations that similar injuries were sufficient to confer standing (ECF 124 at 11-18).[11]

As previously explained, Plaintiff AFGE has associational standing on behalf of the injured FEMA employees it represents and has as members as well as organizational standing based on the injury the union itself has incurred. ECF 314 at 15-16. With respect to associational standing, Defendants incorrectly contend that Plaintiffs have not shown an injury to AFGE's dues-paying members and so cannot establish standing. Even if such evidence were required for AFGE to have associational standing—it is not (*see* ECF 314 at 15-16)[12]—Plaintiffs *have* submitted evidence of injury to dues-paying members (ECF 314-3 ¶¶5-6), which Defendants cite but do not address (ECF 402 at 23-24). Defendants appear to take issue with the fact that Plaintiffs have not provided evidence identifying or stating the specific number of injured members or their names. ECF 402 at 23-24. But neither is required for standing. *See Mi Familia Vota v. Fontes*, 129 F.4th 691, 708 (9th

[11] As a result, Defendants also repeat many of the same erroneous representations from their preliminary injunction opposition, including that AFGE cannot assert associational standing on behalf of members of AFGE Local 4060 (ECF 402 at 23-24), which it can (ECF 314 at 16 n.22); that the local government Plaintiffs assert "organizational standing" (ECF 402 at 22), rather than standing as local governments contesting harms to their interests (ECF 314 at 16 n.23); and that the declaration of AFGE Local 4060 President Jackson does not describe whether a certain member "was actually non-renewed" (ECF 402 at 23), which it did (ECF 314 at 15 n.21).

[12] AFGE can (and does) asserts associational standing as the representative of former bargaining unit employees, notwithstanding the Executive Order purporting to revoke collective bargaining representation, and regardless of whether those employees remain as voluntary dues-paying members. As Plaintiffs have explained, the legal status of the Executive Order is unsettled, and regardless, organizations without formal members can still assert associational standing where, as is the case here, they are the "the functional equivalent of a traditional membership organization." *Fund Democracy, LLC v. S.E.C.*, 278 F.3d 21, 25 (D.C. Cir. 2002); *see also AFGE v. OMB*, 813 F.Supp.3d 944, 959-60 (N.D. Cal. 2025) (holding that union had associational standing where "they continue to represent and provide services to federal employees in bargaining units that are no longer recognized by the Executive Order").

Cir. 2025) (identifying member is not required "when it is clear and not speculative that a member of a group will be adversely affected by a challenged action and a defendant does not need to know the identity of a particular member to defend against an organization's claims") (cited by ECF 124 at 14); *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996) ("an organization suing as representative" need only have "one member with standing" in order to show associational standing). Nor does the fact that the Executive Order withdrew bargaining rights affect AFGE's ability to assert associational standing based on the injuries to its dues-paying members, as Defendants suggest. ECF 402 at 21 n.13. An organization's associational standing does not depend on whether it has bargaining rights, as evidenced by the myriad cases finding associational standing for organizations that are not labor unions. *See, e.g.*, *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 839 (9th Cir. 2012).

As to organizational standing, Defendants yet again fail to address it entirely. *See* ECF 402 at 22-24. To the extent that Defendants intended to rebut AFGE's organizational standing by arguing that standing cannot be based "on a theory of resource diversion to counteract the effects" of the challenged actions, Defendants miss the mark. ECF 402 at 21 (citing *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024)). To the contrary, the injury that AFGE asserts—monetary harm arising from the effect that the challenged actions have on its core organizational activities—is precisely the sort of injury that *Alliance* confirmed confers standing. *See* ECF 314 at 16; *All. for Hippocratic Med.*, 602 U.S. at 395.

Plaintiffs have also detailed the many ways that the challenged plans for reducing FEMA's workforce harm local government Plaintiffs, including through delaying processing of grants and impairing their ability to manage and respond to major disasters and emergencies. ECF 314 at 16-18. And Plaintiffs AFSCME and SEIU have associational standing as representatives of state employees whose work is contingent on FEMA staff processing the grants that provide funding for their jobs. ECF 314 at 18-19. Defendants' blanket assertion that these injuries are "speculative" ignores that this Court and others have repeatedly found similar injuries to be sufficient for standing. *See* ECF 124 at 13-17; ECF 314 at 16-19 (collecting cases). And to the extent Defendants argue standing is precluded by *OPM v. AFGE*, 145 S.Ct. 1914, 1914 (2025), the Supreme Court's stay decision in that

case did not, as Defendants assert, establish any rule that "an entity alleging that they (or their members) use government services cannot premise Article III standing on the theory that termination of employees could cause reduction in those services." ECF 402 at 21. Rather, the Court's two paragraph decision held only that the specific allegations of the plaintiffs *in that case* were insufficient to support the organizations' standing for reasons the Court did not articulate. *See OPM v. AFGE*, 145 S.Ct. at 1914.

### C.    The Challenged DHS and FEMA Actions Are Final Agency Actions

Finally, Defendants shift from a Rule 12 motion to Rule 56 territory by trying to convince the Court that "DHS's alleged 'order' to FEMA 'not to renew CORE employees' cannot provide the basis for 'final agency action' in this case *because the evidence demonstrates that no such order ever issued*."[13] ECF 402 at 24 (emphasis added). But the record now before the Court, submitted with Plaintiffs' further preliminary injunction briefing, conclusively establishes the contrary. DHS directed FEMA's actions from start to finish, including by making a plan to cut FEMA in half; directing the DHS political appointee running FEMA (Special Officer Performing the Duties of the Administrator ("SOPDA") Karen Evans) to include a 50% cut in the FEMA Annual Staffing Plan; removing FEMA's employment decision authority; and, through DHS Deputy Chief of Staff Joseph Guy and DHS Senior Advisor Kara Voorhies (both of whom acted as conduits for DHS leadership Secretary Noem and "Chief" Advisor Corey Lewandowski), implementing a plan to cut CORE by NTE date beginning in January 2026. ECF 414-414.12. DHS's implementation of its plan for "FEMA 2.0"— a dramatically downsized FEMA—beginning in January 2026 was stopped only by this litigation. ECF 411 at 24-25. Defendants' argument to the contrary relies entirely on hindsight testimony from SOPDA Evans, who has admitted to destroying evidence, has repeatedly told untruths, and at a minimum is not a credible witness. ECF 402 at 24-25; *see also* ECF 412 (Rule 37 Motion requesting exclusion of this testimony).

Defendants also argue that the Annual Staffing Plans cannot be final because it is "undisputed" that DHS did not submit an Annual Staffing Plan for FEMA to OMB or OPM. ECF

---

[13] This argument notably does not address the finality of any of the *FEMA's* actions, which Plaintiffs also challenge. *See* ECF 298 ¶593.

402 at 25.  Initially, however, that plan can still be the culmination of DHS and FEMA's decision-making regardless of whether it was submitted to OPM/OMB.  And further, Defendants cite only self-serving hindsight testimony created for purposes of this litigation to support their assertion that no Annual Staffing Plan was sent to OMB and OPM. ECF 402 at 25 n.15; *see also* ECF 350 at 12 n.13.  In contrast, the contemporaneous documents obtained by Plaintiffs showed that the 50% cut plan had been shared with OMB and OPM, as SOPDA Evans admitted in a December 2025 email:

> I want to highlight the 50% is what has been used "internally" there is no document/guidance regarding the 50%.  That was in the leaked [FEMA Review Council] report.  **The number of 11,500 is also what we have provided to OPM/OMB at a high level but we haven't made that public.**

ECF 414-2 at 121 (Depo. Ex. 18 at USA-AFGE-Exp.-0007336).  11,500 is 50% of the then-current number of FEMA employees and is consistent with the contents of the DHS-directed FEMA Annual Staffing Plan cutting FEMA in half.  ECF 411 (describing FEMA Annual Staffing Plan and evidence cited therein); ECF 414-2 at 117 (Depo. Ex. 17).[14]  This also comports with the testimony of DHS CHCO Roland Edwards, who confirmed that DHS has instructed components to assume their Staffing Plans have been approved absent notice to the contrary, (ECF 414-11, Ex. B (Edwards Depo. Trans. at 151:3-152:10)), which both Evans and FEMA Chief Human Capital Officer La'Toya Prieur confirm they did not receive. ECF 414-11, Ex. C (Prieur Depo. Trans. at 168:20-169:1, 170:10-12); ECF 414-11, Ex. A (Evans Depo. Trans. at 213:9-14).  Defendants' head-in-the-sand approach to the record does not establish the absence of final agency action.  And finally, that FEMA in fact began carrying out reductions in COREs pursuant to this plan underscores the speciousness of Defendants' assertion that there is no "final agency action."

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' Rule 12(b)(1) and (b)(6) motion in its entirety.

---

[14] See also Deputy Chief of Staff Joseph Guys' admission that by this point in time, DHS was meeting with OMB weekly, discussions that included FEMA staffing.  ECF 411 at 14 (citing evidence).

DATED: June 5, 2026                    Respectfully submitted,

                                       Stacey M. Leyton
                                       Barbara J. Chisholm
                                       Danielle E. Leonard
                                       Robin S. Tholin
                                       Elizabeth Eshleman
                                       ALTSHULER BERZON LLP
                                       177 Post St., Suite 300
                                       San Francisco, CA 94108
                                       Tel: (415) 421-7151
                                       sleyton@altshulerberzon.com
                                       bchisholm@altshulerberzon.com
                                       dleonard@altshulerberzon.com

                                       By: */s/ Elizabeth Eshleman*

                                       *Attorneys for All Union and Non-Profit Organization Plaintiffs*

                                       Elena Goldstein (pro hac vice)
                                       Skye Perryman (pro hac vice)
                                       Tsuki Hoshijima (pro hac vice)
                                       DEMOCRACY FORWARD FOUNDATION
                                       P.O. Box 34553
                                       Washington, D.C. 20043
                                       Tel: (202) 448-9090
                                       Fax: (202) 796-4426
                                       egoldstein@democracyforward.org
                                       sperryman@democracyforward.org
                                       thoshijima@democracyforward.org

                                       By: */s/ Tsuki Hoshijima*

                                       *Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

                                       Jules Torti (pro hac vice)
                                       PROTECT DEMOCRACY PROJECT
                                       82 Nassau St., #601
                                       New York, NY 10038

                                       Erica J. Newland (pro hac vice)
                                       Jacek Pruski (pro hac vice)
                                       PROTECT DEMOCRACY PROJECT
                                       2020 Pennsylvania Ave., N.W., Suite 163
                                       Washington, D.C. 20006

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS, No. 3:25-cv-03698-SI                    24

Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti* _____

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen* _____

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi* _____

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)
Matthew Blumin  (pro hac vice)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/ Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorneys for Plaintiff Service Employees International Union, AFL-CIO (SEIU)*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By:  */s/ David Chiu*

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL

COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By: */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

Christopher Sanders (pro hac vice)
General Counsel
Erin King-Clancy (SBN 249197)
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
chrsanders@kingcounty.gov
eclancy@kingcounty.gov

By: */s/ Erin King-Clancy*

*Attorneys for Plaintiff Martin Luther King, Jr. County*

Sharanya Mohan (SBN 350675)
Eliana Greenberg (SBN 366319)
Toby Merrill (pro hac vice)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
eliana@publicrightsproject.org
toby@publicrightsproject.org

By: */s/ Eliana Greenberg*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL, Harris County, TX, and Martin Luther King, Jr. County, WA*

Jonathan G.C. Fombonne
Harris County Attorney

Sarah Utley (pro hac vice app. forthcoming)
Managing Counsel

Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel: (713) 274-5102
Fax: (713) 437-4211

jonathan.fombonne@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscoupntytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

By: */s/ Jonathan G.C. Fombonne*

*Attorneys for Plaintiff Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago

Rebecca A. Hirsch (IL ARDC 6279592) (pro hac vice)
City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Rebecca.Hirsch2@cityofchicago.org

By: */s/ Rebecca Hirsch*

*Attorneys for Plaintiff City of Chicago*

Ebony M. Thompson
Baltimore City Solicitor

Christopher Sousa (SBN 264874)
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (410) 396-3947
sara.gross@baltimorecity.gov

By: */s/ Christopher Sousa*

*Attorneys for Plaintiff City of Baltimore*

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS, No. 3:25-cv-03698-SI                28