CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
BRAD P. ROSENBERG
JEREMY S.B. NEWMAN
Chief Litigation Counsel
CHRISTOPHER HALL
MARIANNE F. KIES
Assistant Branch Directors
ROBERT C. BOMBARD
Trial Attorney
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-1819
Marianne.F.Kies@usdoj.gov

Counsel for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-03698-SI<br><br>**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: June 23, 2026<br>Time: 1:30 p.m. PT<br>Judge: Hon. Susan Illston<br>Place: San Francisco Courthouse<br>Courtroom 1 |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 3

    A.    Former FEMA SOPDA Karen Evans Decided Not to Reappoint Certain COREs in January 2026. ....................................................................................... 3

    B.    FEMA Prepared an Annual Staffing Plan for DHS, but DHS Never Submitted FEMA's Plan to OMB and OPM. ...................................................... 5

    C.    The FEMA Review Council Has Released Its Final Report, and It Did Not Recommend Cutting FEMA in Half. ...................................................................... 6

    D.    Noem and Evans No Longer Lead DHS or FEMA. ............................................. 7

    E.    FEMA Has Offered Reappointment to the COREs Released in January. ............. 8

STANDARD OF REVIEW ................................................................................................... 10

ARGUMENT ......................................................................................................................... 11

I.     Plaintiffs' Claims Are Unlikely to Succeed on the Merits Because There Is No Subject-Matter Jurisdiction. ......................................................................................... 13

    A.    Nothing About the "Additional Evidentiary Record" Changes the Fact that the CSRA Precludes Jurisdiction over FEMA's Personnel Decisions, Including Those Relating to COREs. ..................................................................... 13

    B.    Plaintiffs, Who Are Not COREs, Have Never Had Standing to Challenge Terminations of COREs, and the "Additional Evidentiary Record" Does Not Identify Any Basis to Hold Otherwise Now. ................................................. 14

    C.    Plaintiffs' Putative Need for Emergency Injunctive Relief No Longer Exists: The COREs Whose Terminations They Challenge Have Been Offered Reappointment. ....................................................................................... 17

II.    Plaintiffs, Who Are Not COREs, Also Cannot Establish Irreparable Harm. ................... 21

CONCLUSION ...................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. City of Salinas*,
2016 WL 778017 (N.D. Cal. Feb. 29, 2016) ................................................................ 18

*AFSCME v. SSA*,
172 F.4th 361 (4th Cir. 2026) (en banc) ...................................................................... 21

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
929 F.3d 748 (D.C. Cir. 2019) ..................................................................................... 14

*Am. Tunaboat Ass'n v. Brown*,
67 F.3d 1404 (9th Cir. 1995) ........................................................................................ 23

*B.P.C. v. Temple Univ.*,
2014 WL 4632462 (E.D. Pa. Sept. 16, 2014) ............................................................... 21

*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017) ........................................................................................ 18

*Block v. Cmty. Nutrition Inst.*,
467 U.S. 340 (1984)........................................................................................... 11, 12, 14

*Brach v. Newsom*,
38 F.4th 6 (9th Cir. 2022) ............................................................................................. 20

*Burns v. Unum Life Ins. Co. of Am.*,
2007 WL 1793779 (N.D. Cal. June 19, 2007)............................................................... 17

*C2 Educ. Sys., Inc. v. Lee*,
2018 WL 3328143 (N.D. Cal. July 6, 2018)............................................................ 21, 22

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983).......................................................................................................... 21

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).................................................................................................. 15, 16

*Def. of Animals v. U.S. Dep't of Interior*,
648 F.3d 1012 (9th Cir. 2011) ................................................................................. 19, 20

*DeFunis v. Odegaard*,
416 U.S. 312 (1974)........................................................................................................ 20

*Deutsche Bank Nat'l Tr. Co. v. FDIC*,
  744 F.3d 1124 (9th Cir. 2014) ........................................................................................ 17

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) .......................................................................................... 21

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012).................................................................................................... 13, 19

*Env't Prot. Info. Ctr. v. Carlson*,
  968 F.3d 985 (9th Cir. 2020) .......................................................................................... 13

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024).................................................................................................. 14, 16

*Flast v. Cohen*,
  392 U.S. 83 (1968)........................................................................................................... 17

*Friends of the Earth, Inc. v. Bergland*,
  576 F.2d 1377 (9th Cir. 1978) ........................................................................................ 20

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) .......................................................................................... 10

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)......................................................................................................... 16

*Hogue v. Yordy*,
  796 F. App'x 955 (9th Cir. 2020) ................................................................................... 18

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977)......................................................................................................... 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2008 WL 2219837 (N.D. Cal. May 27, 2008) ........................................................... 22, 23

*J.F. v. New Haven Unified Sch. Dist.*,
  2014 WL 6485643 (N.D. Cal. Nov. 19, 2024) ............................................................... 17

*J.T. v. District of Columbia*,
  983 F.3d 516 (D.C. Cir. 2020) ........................................................................................ 20

*Lake v. Fontes*,
  83 F.4th 1199 (9th Cir. 2023) ................................................................................... 14, 15

*Lewis v. Cont'l Bank Corp.*,
  494 U.S. 472 (1990)................................................................................................ 17

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ................................................................................. 10

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997)................................................................................................ 10

*Mitchell v. Dupnik*,
  75 F.3d 517 (9th Cir. 1996) .................................................................................... 18

*Murphy v. Hunt*,
  455 U.S. 478 (1982)................................................................................................ 20

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
  886 F.3d 803 (9th Cir. 2018) ................................................................................. 23

*Nken v. Holder*,
  556 U.S. 418 (2009)................................................................................................ 10

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
  762 F.2d 1374 (9th Cir. 1985) ................................................................................ 22

*Owens v. Schuette*,
  2024 WL 4469086 (E.D. Mich. Oct. 10, 2024) ...................................................... 20

*Pagtakhan v. Foulk*,
  2010 WL 4940022 (N.D. Cal. Nov. 30, 2010) .................................................. 17, 18

*Perfect 10, Inc. v. Google, Inc.*,
  653 F.3d 976 (9th Cir. 2011) ................................................................................. 23

*Pom Wonderful LLC v. Hubbard*,
  775 F.3d 1118 (9th Cir. 2014) ............................................................................... 22

*Rain Bird Corp. v. Hit Prods. Corp.*,
  2004 WL 2246176 (C.D. Cal. June 21, 2004) ............................................. 3, 21, 22

*Raines v. Byrd*,
  521 U.S. 811 (1997)................................................................................................ 14

*Reilly v. Medianews Grp., Inc.*,
  2006 WL 2419100 (N.D. Cal. July 28, 2006).......................................................... 23

*Sampson v. Murray*,
415 U.S. 61 (1974)..................................................................................................... 22

*SEC v. Mount Vernon Mem'l Park*,
664 F.2d 1358 (9th Cir. 1982) ................................................................................... 17

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
739 F.2d 1415 (9th Cir. 1984) ................................................................................... 10

*Spencer v. Kemna*,
523 U.S. 1 (1998)....................................................................................................... 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)............................................................................................. 14, 15

*Starbucks Corp. v. McKinney*,
602 U.S. 339 (2024) ................................................................................................... 10

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023) ................................................................................................... 16

*Taylor v. Resol. Tr. Corp.*,
56 F.3d 1497 (D.C. Cir. 1995) .................................................................................. 18

*Textile Unlimited, Inc. v. A..BMH & Co.*,
240 F.3d 781 (9th Cir. 2001) .................................................................................... 21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ................................................................................................... 14

*United States v. Fausto*,
484 U.S. 439 (1988)............................................................................................. 13, 14

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ................................................................................................... 21

*Varela v. Gomez*,
1997 WL 37562 (N.D. Cal. Jan. 21, 1997) ............................................................... 18

*Weinstein v. Bradford*,
423 U.S. 147 (1975).................................................................................................... 20

*Wild Equity Inst. v. City & Cnty. of San Francisco*,
2012 WL 6082665 (N.D. Cal. Dec. 6, 2012).............................................................. 17

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).................................................................................. 10, 22, 23

*Wunderwerks, Inc. v. Dual Beverage Co.*,
    2021 WL 5771138 (N.D. Cal. Dec. 6, 2021)...................................................... 10

**Statutes**

5 U.S.C. § 2302.......................................................................................... 13

5 U.S.C. § 7105.......................................................................................... 14

5 U.S.C. § 7123.......................................................................................... 14

5 U.S.C. §§ 7511–7515................................................................................. 14

5 U.S.C. §§ 7501–7504................................................................................. 14

5 U.S.C. § 7703.......................................................................................... 14

6 U.S.C. § 317............................................................................................. 3

42 U.S.C. § 5149...................................................................................... 3, 11

42 U.S.C. § 5121.......................................................................................... 3

**Other Authorities**

Exec. Order No. 12127, 44 Fed. Reg. 19367 (Apr. 3, 1979)....................................... 3

Exec. Order No. 14180, 90 Fed. Reg. 8743 (Jan. 24, 2025)........................................ 7

Exec. Order No. 14356, 90 Fed. Reg. 48387 (Oct. 15, 2025) .................................... 5, 6

*Hiring Freeze*, 90 Fed. Reg. 8247 (Jan. 28, 2025)................................................ 4

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

**<u>INTRODUCTION</u>**

Most of Plaintiffs' brief neglects the central issue before the Court: Is there subject-matter jurisdiction to grant the preliminary injunction they seek? Plaintiffs never grapple with this question, which defeats their Motion for Preliminary Injunction (ECF 301) and the Supplemental Complaint (ECF 298) on which it is based. Instead, they focus on issues surrounding certain witnesses' preservation of messages on personal phones, which they use to argue the merits of their claims. *See generally* ECF 411 (Pls.' Suppl. Br. ISO Preliminary Injunction) ("Pls.' Supp. Br."). Defendants will address those concerns in their forthcoming response to Plaintiffs' Motion for Rule 37(e) Remedies, ECF 412, which Defendants will file today.[1] But the Court should not conflate the *merits* of Plaintiffs' case with whether the Court has *jurisdiction* to reach the merits. It does not, and Plaintiffs' Motion for Rule 37(e) Remedies has no bearing on jurisdiction.

Plaintiffs' Motion fails at the threshold for at least three reasons. First, as their Motion (and Supplemental Complaint) underscore, Plaintiffs challenge federal agency personnel decisions, a subject matter governed by the Civil Service Reform Act of 1978 ("CSRA"), including its jurisdictional exhaustion requirements. Non-employee organizations like Plaintiffs are categorically excluded by the CSRA from pursuing claims through its statutory review scheme, and from bypassing that scheme entirely by raising such claims in district court. Plaintiffs' supplemental brief ignores the CSRA and its preclusive effect here.

Second, even if a plaintiff *could* in theory challenge CORE[2] non-reappointments in district court, Plaintiffs *here* cannot. Plaintiffs are not COREs, and do not represent any identified COREs. They are a consortium of unions that do not themselves represent Federal Emergency Management Agency ("FEMA") employees; other non-profit organizations; and municipalities and counties that have shown no concrete injury to their own interests that is redressable by the relief they seek.

---

[1] As will be discussed in Defendants' response to Plaintiffs' Rule 37(e) motion, although certain Signal messages were lost and should have been preserved, Defendants dispute Plaintiffs' theory that there was an intentional loss or hiding of relevant information, that their relevance to the litigation is clearly established, and that Department of Justice counsel "were aware all along of the existence of thousands of Signal chat communications in dozens of government-related chats conducted on personal phones." Pls.' Supp. Br. at 5.

[2] Cadre of On-Call Response/Recovery Employees.

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

Plaintiffs' supplemental brief fails to address standing at all, much less explain how they are injured by FEMA personnel decisions or alleged policies, or how the preliminary injunctive relief they seek would redress such injuries.

Third, beyond the CSRA's preclusive effect and Plaintiffs' lack of standing, FEMA itself has provided the relief that ostensibly might have redressed Plaintiffs' claimed harms: it offered appointments to the COREs whose January non-reappointments triggered Plaintiffs' efforts to obtain a preliminary injunction. At the same time, former Senior Official Performing the Duties of Administrator ("SOPDA") Karen Evans—who made the challenged decision not to reappoint those COREs in January—no longer leads FEMA. And former Secretary of Homeland Security Kristi Noem—who allegedly "steered" the policies underlying that decision—no longer leads DHS. Secretary of Homeland Security Markwayne Mullin has succeeded former Secretary Noem, and former SOPDA Cameron Hamilton has been nominated to serve as Ms. Evans's Senate-confirmed successor at FEMA, with temporary career leadership in place in the interim. There is no factual basis to presume that Secretary Mullin, FEMA Administrator nominee Hamilton, or FEMA's temporary leadership will support the alleged actions or policies Plaintiffs attribute to former SOPDA Evans. To the contrary, it has been reported that, if former SOPDA Evans supported downsizing FEMA, Mr. Hamilton does not, and he has publicly so stated.

Further, there is no evidence of any existing "plan" to "cut FEMA in half." Regardless of what deliberative, pre-decisional statements FEMA's draft annual staffing plan may have included for internal DHS and FEMA consideration, it is undisputed that DHS never submitted it to the Offices of Management and Budget ("OMB") and Personnel ("OPM"). And regardless of what may have been said in a leaked version of an early draft of a report prepared by FEMA Review Council—which is not part of FEMA or DHS, but a Federal Advisory Committee comprised of members within and outside of federal government—it is further undisputed that the Council's final report, published May 6, 2026, contains no such recommendation. Plaintiffs' Motion is therefore moot.

In sum, regardless of any preservation deficiencies as to some Signal chats conducted between former DHS and FEMA officials on their personal cell phones, there is no subject-matter

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

2

jurisdiction over the case, or over Plaintiffs' request for a preliminary injunction. Without jurisdiction, a preliminary injunction cannot issue.

Nor have Plaintiffs satisfied their independent obligation to show irreparable harm. Irreparable harm is assessed as of the time the injunction would issue. *E.g.*, *Rain Bird Corp. v. Hit Prods. Corp.*, 2004 WL 2246176, at *5 (C.D. Cal. June 21, 2004). At the present, Plaintiffs do not, and cannot, demonstrate that *they* (as opposed to, for instance, COREs who are not Plaintiffs) are *presently* suffering or imminently will suffer harm that monetary relief could not address. Indeed, Plaintiffs' 45-page supplemental brief ignores irreparable harm entirely. That factor would not have supported them in any event: the alleged harms of January 2026 have been remedied, and past injuries cannot suffice to establish prospective injunctive relief. Plaintiffs' supposed ongoing harms—concerns that DHS might at some point reduce FEMA's staffing in an undefined and unexplained manner that could affect COREs and, in some attenuated way they never explain, them—are not concrete enough to establish Article III standing, much less irreparable injury.

Plaintiffs' Motion for a Preliminary Injunction should be denied.

## BACKGROUND

I.    **Factual Background**

A.    Former FEMA SOPDA Karen Evans Decided Not to Reappoint Certain COREs in January 2026.

FEMA's workforce, covering ten geographic regions, comprises two categories: Title 5 employees and Stafford Act[3] employees. *See* ECF 312-2 (Ch. 10 of Disaster Operations Legal Reference, 4th ed. (Sep. 2020) ("DOLR 4.0")), § II.A.1; 6 U.S.C. § 317(a). Stafford Act Employees are subdivided into COREs, Reservists, and Local Hires. DOLR 4.0 § II.A.1; *see* 42 U.S.C. § 5149(b). FEMA's hiring authorities allow it "to scale its workforce as necessary and . . . staff multiple operations with minimal notice." DOLR 4.0 § I. COREs work full-time, on temporary appointments, to support response and recovery efforts for open disasters. *See* ECF 312-

---

[3] The Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. §§ 5121, *et seq.*, establishes the current statutory framework for disaster response and recovery through presidential disaster declarations. *History of FEMA*, FEMA (Jan. 4, 2021), https://www.fema.gov/about/history; 44 Fed. Reg. 19,367 (Apr. 3, 1979).

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

1 (Decl. of Karen Evans) ¶ 12 ("Evans Decl."). COREs have generally served fixed two-year terms ending on the Not to Exceed ("NTE") Date of their appointments, unless extended or renewed based on evolving operational needs and workload. *Id.* ¶ 13; *see also* ECF 383-1 (Decl. of Jeff Neurauter) ¶ 3 ("Neurauter Decl."). In 2025, 349 COREs were released when their terms expired. Evans Decl. ¶ 24. CORE employees do not have collective bargaining representation. *See* Evans Decl. ¶ 20 & Ex. 4 (ECF 312-5, Aug. 8, 2025, Memo.); *accord* ECF 303 (Jackson Decl.) ¶¶ 4–5. AFGE Local 4060, the sole union at FEMA, represents only sixty employees, all of whom are Title 5. Evans Decl. ¶ 20.[4]

On January 20, 2025, the President announced a government-wide hiring freeze. *Hiring Freeze*, 90 Fed. Reg. 8247 (Jan. 28, 2025). That same day, OMB and OPM issued implementing guidance extending the freeze across executive agencies. Evans Decl. ¶ 29. Although DHS and other agencies were partially exempt for hiring certain mission-critical positions in areas such as national security and law enforcement, DHS nonetheless decided to undertake a review of its hiring practices, ultimately establishing procedures for reviewing hiring decisions. *See id.* ¶ 30. On March 18, 2025, FEMA received DHS's permission to approve appointment extensions for COREs in mission-critical positions, for up to two years. *Id.* CORE appointments in non-mission critical positions could receive 30-day incremental appointments while awaiting DHS approval. *Id.* On May 19, 2025, because of the upcoming hurricane season, DHS reauthorized FEMA to reappoint non-mission critical COREs to new term appointments without DHS approval, this time for 180 days. *Id.* ¶ 31; *see* ECF 402-3 (May 14, 2025, Memo.). That reauthorization existed until it expired, by its terms, on December 31, 2025. Evans Decl. ¶ 31; May 14, 2025, Memo. In December, FEMA's then-SOPDA Karen Evans ("Evans") decided not to seek DHS's approval to extend this delegated authority further. *See* ECF 414-1 (Mar. 31, 2026, Evans Dep. Tr., at Exhibit A to Leonard Decl.) at 273:17–274:4, 274:25–275:9. Upon the expiration of FEMA's delegated authority under the May 14, 2025, Memorandum, beginning on January 1, 2026, future new CORE term appointments and term reappointments would require DHS headquarters' approval. *Id.* at 266:9–24, 267:8–25, 277:11–20; *see* ECF 402-2 (Mar. 14, 2025, Memo.).

---

[4] AFGE Local 4060 is not a Plaintiff in this case.

Between January 1 and 21, 2026, the appointment terms of 178 COREs were due to expire. Neurauter Decl. ¶ 4. In mid-to-late December, Evans had worked to ensure that FEMA had a process in place by which program heads and regional administrators could compile information regarding which COREs (by function) they wanted to recommend for reappointment. *E.g.*, Mar. 31, 2026, Evans Dep. Tr. at 346:20–347:24, 355:6–25. That process was not yet in place prior to December 31, when FEMA's delegated authority was to expire, so Evans decided not to seek DHS approval to reappoint COREs whose terms were ending between January 1 and January 21, 2026. *See id.* at 349:7–353:7, 356:1–15, 374:1–17. She testified: "I made the decision not to renew these appointments." *Id.* at 351:13–352:25; *accord, e.g.*, *id.* at 363:19–364:8, 365:2–11, 366:4–5.[5] Evans testified she made this decision voluntarily, for her own reasons—not under direction to do by then-Secretary Noem or by anyone else at DHS. *E.g.*, *id.* at 362:17–364:8. Because of Evans's decision, the terms of employment for 148 COREs were allowed to expire in January (30 others resigned or retired before their terms expired). Neurauter Decl. ¶ 4.

B.    FEMA Prepared an Annual Staffing Plan for DHS, but DHS Never Submitted FEMA's Plan to OMB and OPM.

On October 15, 2025, the President issued Executive Order 14356 to "ensure that the federal government is optimally staffed to meet critical mission needs." *Ensuring Continued Accountability in Federal Hiring*, 90 Fed. Reg. 48387, 48387 (Oct. 15, 2025) ("*Federal Hiring*" or "EO 14356"). The Order set forth policies and procedures governing "Federal *hiring . . .* going forward, *id.* (emphasis added), and it directed each agency to prepare an "Annual Staffing Plan"— a forward-looking workforce planning document predicting hiring needs for the coming year. *Id.* Agencies were directed to do so in coordination with OMB and OPM, to "ensure that new career appointments in the upcoming fiscal year are in the highest-need areas and aligned with the priorities of [the President's] Administration." *Id.*

On November 5, 2025, OMB and OPM issued a memorandum implementing EO 14356 ("November 5 OMB/OPM Memorandum" or "Nov. 5 Mem."), instructing agencies that:

---

[5] Once a policy for recommendations was in place, Evans testified that she further decided that any extension of COREs would be limited to 90 days. *Id.* at 356:16–357:20, 359:22–360:2.

(i) "[f]ederal hiring must comply with the Merit Hiring Plan"; (ii) "agency leadership must approve the opening of a new role"; (iii) "agency leadership should also function as a hiring committee in the candidate selection process"; and (iv) agency heads must "establish a Strategic Hiring Committee" to "approve the creation or filling, as applicable, of each vacancy within the agency." Nov. 5 Mem. 1–2 (citation modified).[6] The Memorandum also directed that Hiring Committees should "use . . . independent judgment" rather than "ministerially ratify[ing] or routinely defer[ring] to the recommendations of others in reviewing and approving new hires." *Id.* at 2. It directed agencies to "develop and submit" Annual Staffing Plans, to "ensure that new career appointments in the upcoming fiscal year are in the highest-need areas." *Id.*

FEMA, as a component of DHS, submitted a draft Annual Staffing Plan to DHS on December 4, 2025. *See, e.g.*, Mar. 31, 2026, Evans Dep. Tr. at 210:24–211:21. Evans testified that she did not know if that Annual Staffing Plan was ever transmitted to OMB and OPM, *id.* at 212:4–19, 225:4–226:8, and she recalled no discussions with DHS headquarters about it. *Id.* at 213:15–214:1. It is factually undisputed that DHS has never submitted the Annual Staffing Plan directed by EO 14356 (which would include FEMA's) to OMB and OPM. ECF 345-9 (O'Neill Decl., on behalf of OMB); ECF 345-10 (Peters Decl., on behalf of OPM); *see also* ECF 414 (2d Suppl. Jackson Decl.) ¶ 20 (discussing May 19, 2026, meeting where it was discussed that DHS "had yet to approve" FEMA's staffing plan). And there is no evidence that DHS is considering submitting an Annual Staffing Plan to OMB and OPM that would include a 50% cut to FEMA staffing levels. *E.g.*, Mar. 31, 2026, Evans Dep. Tr. at 227:5–228:9.

C.    The FEMA Review Council Has Released Its Final Report, and It Did Not Recommend Cutting FEMA in Half.

Not only is there no evidence of any existing DHS recommendation, guidance, or directive to halve FEMA staffing levels, the evidence refutes any such theory. On May 6, 2026, the FEMA

---

[6] *Available here*: guidance-on-executive-order-14356-ensuring-continued-accountability-in-federal-hiring.pdf.

Review Council[7]—a Federal Advisory Committee co-chaired by current Homeland Security Secretary Markwayne Mullin—released its final report. *See* ECF 414 (FEMA Review Council Final Report, at Exhibit B to 2d Suppl. Jackson Decl.). Contrary to documents leaked six months ago referencing "FEMA 2.0," the final FEMA Review Council report contains no recommended 50% cut to FEMA staffing. *See, e.g.*, Justin Doubleday, *FEMA Review Council Backs Off on Staffing Cuts in Final Report*, Federal News Network (May 7, 2026, 5:44 PM), https://federalnewsnetwork.com/agency-oversight/2026/05/fema-review-council-backs-off-on-staffing-cuts-in-final-report/ ("A Trump-appointed council is urging sweeping overhauls at the Federal Emergency Management Agency, but it is no longer proposing deep staffing cuts to FEMA's workforce."); 2d Suppl. Jackson Decl. ¶¶ 12–13 (conceding that the FEMA Review Council "deleted" earlier draft language referring to "the 50 percent cut").

      D.      <u>Noem and Evans No Longer Lead DHS or FEMA.</u>

On March 3, 2026, President Trump announced that he was removing Kristi Noem as Secretary of Homeland Security, *see, e.g.*, 2d Suppl. Jackson Decl. ¶ 5; Markwayne Mullin has since been confirmed as Secretary. *Id.* ¶ 6. According to Plaintiffs, on May 12, FEMA staff were advised that Evans was being replaced as SOPDA. *Id.* ¶ 9.[8] President Trump has nominated Cameron Hamilton ("Hamilton") to serve as FEMA Administrator. *Id.* ¶ 8. News sources have reported that "Hamilton's nomination comes as the Trump administration has increasingly signaled it is backing away from promises to dismantle FEMA," insofar as Hamilton had previously argued against abolishing FEMA; his nomination signifies "the latest indication of that change." *E.g.*, Gabriela Aoun Anguiera, *Trump Nominates Cameron Hamilton, Fired After Defending FEMA, to Lead the Agency*, AP News (May 11, 2026, 6:12 PM EDT), https://apnews.com/article/fema-cameron-hamilton-trump-disasters-navy-seals-

---

[7] President Trump created the FEMA Review Council by Executive Order in January 2025. *See* Exec. Order No. 14180, 90 Fed. Reg. 8743 (Jan. 24, 2025).

[8] It has been reported that Evans is serving in a different role leading special projects at DHS. Thomas Frank, *FEMA's Acting Administrator Is Out, for the Third Time Under Trump*, (May 12, 2026, 4:14 p.m. ET), https://www.politico.com/news/2026/05/12/femas-acting-administrator-is-out-for-third-time-under-trump-00916239.

e1ef0f6c81f6ea992a2213714f6743b1. While Hamilton awaits Senate confirmation, FEMA is currently led by a new SOPDA, Robert J. Fenton, Jr., a career FEMA employee and former Regional Administrator with three decades of experience at the agency. *See* FEMA: Offices & Leadership, Robert J. Fenton, Jr., *https://www.fema.gov/about/organization/robert-j-fenton-jr* (last visited June 11, 2026).

      E.      FEMA Has Offered Reappointment to the COREs Released in January.

FEMA has offered reappointment to the COREs whose January 2026 releases precipitated Plaintiffs' Motion for Preliminary Injunction. *See* Neurauter Decl. ¶¶ 6–8;[9] 2d Suppl. Jackson Decl. ¶ 22 (acknowledging offers of reappointment to COREs "who had been released back in January").

**II.    Procedural History**

On February 4, 2026, Plaintiffs' counsel wrote to counsel for Defendants regarding the FEMA COREs whose terms expired and were released between January 1, 2026, and January 22, 2026. ECF 303-22 (Leonard Decl.) ¶ 4. Plaintiffs asked whether Defendants would agree to reinstate the COREs and thereby "*avoid the need to pursue injunctive relief*." *Id.* (emphasis added) & Ex. A thereto (correspondence). Defendants answered that they could not provide the information within the timeframe requested and would respond to a motion if filed. *Id.* ¶ 8 & Ex. A thereto.

On February 10, 2026, Plaintiffs moved for a temporary restraining order concerning the non-renewals of COREs in January 2026. ECF 301; *see* ECF 301-1 (Memo. ISO TRO) at 12–19, § II: "The Unlawful Directive to Reduce FEMA's Workforce." Plaintiffs' Motion mounted their theory that the CORE non-reappointments were all at the behest of DHS, and specifically, then-Secretary Noem. *E.g.*, *id.* at 12 (quoting Noem's statement that, "we're going to eliminate FEMA" (citation omitted)); *id.* at 13 (citing Noem's testimony to Congress that Plaintiffs characterized as showing "her intent to eliminate FEMA"). Plaintiffs' Motion further surmised that Secretary

---

[9] "Between January 1, 2026, and January 21, 2026, FEMA had 178 COREs whose terms of employment were set to end in that time period. Thirty of these COREs resigned or retired from employment before their term of employment expired, leaving a balance of 148 COREs whose terms of employment expired in January 2026." Neurauter Decl. ¶ 4.

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

Noem's view was being carried out by the FEMA Review Council (a Federal Advisory Committee comprised of members both within and outside the federal government), as reflected by a leaked early version of the Council's draft report from December 2025 which allegedly reflected the former Secretary's recommendation to "cut FEMA staff by half." *Id.* at 13–14. According to Plaintiffs, "FEMA began implementing Secretary Noem's blanket disapproval of CORE renewals on December 31, 2025." *Id.* at 16.

Defendants opposed Plaintiffs' motion, which the Court had by then converted to a motion for preliminary injunction, on two principal grounds. First, Defendants argued that the CSRA's comprehensive scheme for resolving federal employment disputes forecloses district court jurisdiction, precluding a clear showing by Plaintiffs of likelihood of success on the merits. Second, Defendants explained that none of the Plaintiffs—a collection of unions, advocacy organizations, and local governments—had themselves suffered a concrete, particularized injury sufficient to establish Article III standing. ECF 312.

At a hearing on March 3, 2026, the Court stated its initial inclination to deny Plaintiffs' Motion, noting—*inter alia*—that "Plaintiffs are seeking extraordinary relief that goes well beyond the injunction to preserve the status quo." ECF 345-1 (Mar. 3, 2026, Hr'g Tr.) at 4:7–15. However, relying on oral representations by Plaintiffs' counsel at the hearing, the Court subsequently authorized Plaintiffs to take "expedited discovery" of FEMA and DHS into whether DHS ordered or directed FEMA to make staffing cuts, and if so, to what level. ECF 321. The Court did not allow Defendants a reciprocal opportunity to take discovery of Plaintiffs regarding the bases for their Motion for Preliminary Injunction or originating Supplemental Complaint. *Id.*

Following the conclusion of three months of expedited discovery, this Court directed the Parties to provide supplemental briefing concerning Plaintiffs' Motion for Preliminary Injunction. ECF 386. Plaintiffs filed a 45-page supplemental brief on May 29, to which they tacked on a request to "set a prompt schedule on Plaintiffs' motion for partial summary judgment." Pls.' Suppl. Br. Plaintiffs' supplemental brief lodges various complaints about the conduct of expedited discovery, argues the merits of their claims, and seeks a Court order: (i) enjoining DHS and FEMA from taking any action to implement "DHS directives" that remove FEMA authority over

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

personnel decisions "with respect to FEMA employees," including but not limited to COREs; and (ii) rescinding all notices of non-renewal of CORE employees since January 1, 2026, to include requiring DHS and FEMA to provide a process to "return those employees to the position they would be in were it not for their unlawful terminations," through, *inter alia*, step credit and back pay. ECF 411-1 (Proposed Order); *see also* Pls.' Suppl. Br. at 39 (stating that "Plaintiffs have modified their proposed order to reflect Defendants' actions in response to this litigation, and the harms that have yet to be rescinded.").

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Thus, "[a] preliminary injunction 'should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Wunderwerks, Inc. v. Dual Beverage Co.*, 2021 WL 5771138, at *3 (N.D. Cal. Dec. 6, 2021) (Illston, J.) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)), *appeal dismissed*, 2022 WL 17547582 (9th Cir. Aug. 16, 2022). Specifically, to prevail, Plaintiffs must make a clear showing that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of the equities tips in [their] favor," and (4) "an injunction is in the public interest." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20). The final two factors merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Preliminary relief is meant to preserve the status quo pending final judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). When preliminary relief changes the status quo and "orders a responsible party to take action," it is "particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citations omitted). In such cases, the moving party "must establish that the law and facts *clearly favor* [its] position, not simply that [it] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

## ARGUMENT[10]

CORE employees serve on temporary appointments—appointments that, by design, expire on a "not to exceed" ("NTE") date, a condition accepted by every CORE employee upon his or her appointment. ECF 312-4 ("Conditions of Employment"). Congress built that workforce flexibility into the Stafford Act deliberately, structuring FEMA's ability to appoint temporary personnel "as may be necessary" to afford it the flexibility required to meet disaster response needs. 42 U.S.C. § 5149(b)(1).

This statutory personnel flexibility means two things for district court jurisdiction over Plaintiffs' Preliminary Injunction Motion. First, jurisdiction is precluded under the CSRA. The only way for a CORE who lacks appeal rights under the CSRA's Chapter 75 to challenge a non-reappointment decision is to file a prohibited personnel practice complaint with the Office of the Special Counsel, and from there to complete statutorily prescribed administrative exhaustion requirements, which are jurisdictional in nature. Non-employees are strangers to that process; for them, the CSRA precludes administrative or judicial review entirely. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 346–48 (1984). Plaintiffs are not COREs themselves, but unions, advocacy organizations, and local governments, and thus fall into the latter scenario. District court jurisdiction over their motion, by extension, is statutorily precluded.

Second, Plaintiffs cannot establish standing. Plaintiff advocacy organizations and local governments among them have no relationship with FEMA's COREs, and even the federal employee union Plaintiffs do not represent any FEMA employees, much less COREs.[11] Thus, they cannot show how decisions not to reappoint individual COREs might injure them, much less in a

---

[10] Plaintiffs criticize Defendants for making the same or similar arguments across multiple briefs. Defendants have cited and will continue to cite, as appropriate, the proper legal arguments and facts in support of them. If there is some duplication, that is a factor of the Court authorizing supplemental PI briefing that coincides with Defendants' motion to dismiss and Plaintiffs' contemporaneous motion under Rule 37(e)—all of which raise overlapping issues.

[11] AFGE Local 4060, which submitted various declarations in support of Plaintiffs' Motion for Preliminary Injunction, is not a Plaintiff in this case, does not represent any COREs in a collective bargaining capacity, and does not establish standing for the reasons Defendants explained in their original opposition, ECF 312.

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

11

manner that could be redressed by the preliminary relief they seek. Nor have they shown how contemplated plans to reduce FEMA staffing levels—which remain conceptual at best and may never come to fruition at all, or at the levels they speculate—represent the sort of concrete injury that would give them standing. Nothing about the evidentiary record compiled over the past three months of expedited discovery changes that conclusion.

Finally, aside from those jurisdictional obstacles, Plaintiffs' preliminary injunction request has been obviated, leaving no live dispute for the Court to adjudicate. On February 4, 2026, before filing their motion, Plaintiffs' counsel informed Defendants that they could avoid a motion for emergency injunctive relief if only FEMA reappointed the COREs whose terms expired without reappointment in January 2026. ECF 303-22 (Leonard Decl.) ¶ 4. In Plaintiffs' counsel's own words: "Plaintiffs asked whether Defendants would agree to reinstate these employees and thereby avoid the need to pursue injunctive relief." *Id.* As of May 6, 2026, the COREs whose January non-reappointments triggered Plaintiffs' Preliminary Injunction Motion had, in fact, overwhelmingly been offered reappointment, with 148 of 178 non-reappointments receiving such offers, thus providing the very relief Plaintiffs' counsel previously advised would have obviated the need for this motion. (The only COREs not extended reappointment offers are those who informed FEMA that they intended to retire or resigned.) Beyond that, the DHS and FEMA officials Plaintiffs allege to have been instrumental in those January non-reappointments, then-Secretary Noem and then-SOPDA Evans, no longer occupy those positions, and have been succeeded by different officials with no involvement in the challenged decisions. In short, the factual basis for Plaintiffs' demand for preliminary relief has been mooted out, and there is no live case or controversy for the Court to resolve on Plaintiffs' Motion.

Nothing in Plaintiffs' supplemental brief—which focuses on the supposed merits of their claims—corrects these jurisdictional defects, each of which is independently fatal.

## I.    Plaintiffs' Claims Are Unlikely to Succeed on the Merits Because There Is No Subject-Matter Jurisdiction.

Likelihood of success "is a threshold inquiry and is the most important factor." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). For the reasons that follow, the "additional evidentiary record" does not establish jurisdiction.

### A.    Nothing About the "Additional Evidentiary Record" Changes the Fact that the CSRA Precludes Jurisdiction over FEMA's Personnel Decisions, Including Those Relating to COREs.

Plaintiffs' Motion, as supplemented, fails at the threshold insofar as it challenges personnel decisions regarding COREs, who are federal employees, and is therefore precluded by the CSRA. Defendants have raised this argument before, in opposition to Plaintiffs' Motion for Preliminary Injunction (*see* ECF 312 (Defs.' Opp'n to PI Mot.) at 10–13) and again in their motion to dismiss the Supplemental Complaint (*see* ECF 402 (Defs.' Mot. to Dismiss) at 18–20). Nothing in Plaintiffs' 45-page supplemental brief changes this conclusion; indeed, Plaintiffs' supplemental brief does not address the CSRA at all. *See generally* Pls.' Suppl. Br.[12] Because CSRA preclusion remains dispositive of Plaintiffs' Motion, Defendants restate their argument in brief.

Through the CSRA, Congress has "established a comprehensive system for reviewing the personnel action[s] taken against federal employees," which provides the "exclusive means" for review. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5, 8 (2012) (citation omitted); *see also United States v. Fausto*, 484 U.S. 439, 445 (1988) (noting that the CSRA sets out an "integrated scheme of administrative and judicial review" for challenges to personnel actions taken against members of the civil service). Non-reappointments are personnel actions over which judicial review, if any, is exclusively channeled through that scheme. *See* 5 U.S.C. § 2302(a)(2)(A) (identifying personnel actions that can provide the factual basis for alleged "prohibited personnel practices").

---

[12] In opposition to Defendants' Motion to Dismiss, Plaintiffs argue that the Ninth Circuit has foreclosed Defendants' argument. *See* ECF 417 (Pls.' Opp'n to Mot. to Dismiss) at 17–19. Defendants will respond to that argument in their forthcoming Reply in support of the Motion to Dismiss, and incorporate it by reference.

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

13

Where CORE non-reappointments can be analogized to removals from federal service, jurisdiction for such claims would be exclusively channeled through the CSRA. *See* 5 U.S.C. §§ 7501–7504, 7511–7515. In that scenario, employees must "litigat[e] their claims through the statutory scheme in the context of [a] concrete" dispute. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 757 (D.C. Cir. 2019); *see also* 5 U.S.C. §§ 7703(b)(1), 7105(a)(2), 7123(a). Most relevant here, the CSRA "governs adverse action taken against employees for the 'efficiency of the service,'" including removals from service. *Fausto*, 484 U.S. at 446–47; *see* 5 U.S.C. § 7512. Covered employees who have been removed may seek review of such adverse action before the MSPB, followed by review in the Federal Circuit. 5 U.S.C. §§ 7513(d), 7703. Plaintiffs here—unions, advocacy groups, and local governments—are likewise precluded from challenging CORE non-reappointments because where a comprehensive statutory scheme authorizes only certain plaintiffs' claims, it implicitly precludes review of all others. *Block*, 467 U.S. at 346–48; *see also Fausto*, 484 U.S. at 448.

      B.    <u>Plaintiffs, Who Are Not COREs, Have Never Had Standing to Challenge Terminations of COREs, and the "Additional Evidentiary Record" Does Not Identify Any Basis to Hold Otherwise Now</u>.

Federal courts do not sit to adjudicate the public's views about how the government should be run, nor to "exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Instead, under Article III, they redress cognizable injuries to specific protected interests, thus requiring an injury that is both "legally and judicially cognizable." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). To show standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024); *Lake v. Fontes*, 83 F.4th 1199, 1202–03 (9th Cir. 2023). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The standing inquiry is "especially rigorous when reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation omitted). Plaintiffs must thus allege a "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" injury that "affect[s] the plaintiff in a personal and individual way" and "actually exist[s]." *Spokeo*, 578 U.S. at 339–40 (citation omitted). "[A]n abstract, theoretical concern will not do." *Lake*, 83 F.4th at 1203 (citation omitted). An injury that has not yet occurred must be sufficiently "imminent" "to ensure that [it] is not too speculative for Article III purposes"—meaning it "must be *certainly impending*." *Clapper*, 568 U.S. at 409 (citation omitted). "Allegations of a *possible* future injury are not sufficient." *Id.* (citation modified).

Plaintiffs' supplemental brief does not address their standing to sue at all. *See generally* Pls.' Suppl. Br.[13] It remains true that Plaintiffs are unions, membership-based non-profit organizations, and local governments. It further remains true that Plaintiffs do not include a single CORE, much less a CORE who was not reappointed in January 2026. And the non-party declarant COREs who testified in support of Plaintiffs' original Motion for Preliminary Injunction have since been offered reappointment, except for one (Heath) whose supervisor did not have work for him to do (and who, in any event, has applied for retirement).[14] Neurauter Decl. ¶¶ 4, 6–8; *see also* **Ex. A** hereto (Suppl. Neurauter Decl.). Plaintiffs have not submitted any evidence with their 45-page supplemental brief to indicate that the harms Plaintiffs speculated about in their initial declarations (*see* ECF 303) have come to fruition in the intervening months, or to update prior declarations of non-party COREs or provide new ones.

_____

[13] Instead, Plaintiffs again reserve their standing theories for their opposition to Defendants' Motion to Dismiss. ECF 417 at 20–22. Defendants will respond to Plaintiffs' points in their Reply in support of the Motion to Dismiss and again incorporate their response by reference.

[14] *See* ECF 303-4 ¶ 2, 303-6 ¶¶ 10, 12; 303-7 ¶¶ 2, 14; ECF 303-8 ¶ 2; ECF 303-9 ¶ 2; ECF 303-10 ¶ 2; 303-11 ¶ 2 (Declarants (in order) Blanton, Heath, Nelson, Newton, Prell, Shell, and Young stating that they were not renewed); ECF 303-5 ¶ 2 (Declarant Fleming describing an upcoming NTE date).

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

Defendants briefly restate why Plaintiffs have never had standing to challenge CORE appointment expirations. An organization may establish standing by showing, *inter alia*, the standing of its members, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977), or by identifying "injuries [the organizations themselves] have sustained," and establishing "injury in fact, causation, and redressability" as to those injuries, *Alliance*, 602 U.S. at 393–94 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)); *see also Students for Fair Admissions*, *Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). *First*, and as Defendants have explained previously, Plaintiff Local Governments—Santa Clara, King County, Baltimore, Harris County, Chicago, and San Francisco (*see* ECF 303-12 and 303-14 to 303-18)—lack organizational standing because they have not proven and cannot prove that any future hypothetical CORE non-reappointments would injure *their* services in the event of a disaster that may or may not someday occur. *Clapper*, 568 U.S. at 409. Significantly, none of these Plaintiffs have shown that they are now in the midst of a Presidentially declared national disaster, much less one that requires particular levels of FEMA staffing (or the service of particular COREs) to provide them necessary federal assistance. And whether that might come to pass at some point in the future is inherently speculative at this point.

*Second*, the membership-based Plaintiffs in this case (unions and membership-based non-profit organizations) lack associational standing. To establish it, this group of Plaintiffs would have to show, at minimum, a member with standing to sue in their own right (*Hunt*, 432 U.S. at 343), meaning someone who (i) "has suffered or likely will suffer an injury in fact", which was (ii) "caused or will be caused by the defendant," and which (iii) "likely would be redressed by the requested judicial relief." *Alliance*, 602 U.S. at 380. Plaintiffs fail at the first prong, for the reasons discussed at length in Defendants' opposition to the original Motion for Preliminary Injunction, ECF 312. They also fail at the third (redressability), because the CSRA precludes this Court from granting judicial relief. Even if it did not, the COREs who did not receive new appointments in January, which Plaintiffs' Motion challenges, have been offered reappointment.

C.    Plaintiffs' Putative Need for Emergency Injunctive Relief No Longer Exists: The COREs Whose Terminations They Challenge Have Been Offered Reappointment.

"Federal courts do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before [them]." *Burns v. Unum Life Ins. Co. of Am.*, 2007 WL 1793779, at *2 (N.D. Cal. June 19, 2007) (Illston, J.) (citation omitted). "Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings." *Pagtakhan v. Foulk*, 2010 WL 4940022, at *1 (N.D. Cal. Nov. 30, 2010) (Illston, J.). This means that "throughout the litigation the party pursuing the action must have suffered, or be threatened with, an actual injury which is traceable to the responding party, and which is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). A case is moot if it "has lost its character as a present, live controversy, and if no effective relief can be granted." *Wild Equity Inst. v. City & Cnty. of San Francisco*, 2012 WL 6082665, at *2 (N.D. Cal. Dec. 6, 2012); *see also Flast v. Cohen*, 392 U.S. 83, 95 (1968) ("[Where] the question sought to be adjudicated has been mooted by subsequent developments" to filing of the complaint, "no justiciable controversy is presented."). A case also may be considered moot if "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Wild Equity Inst.*, 2012 WL 6082665, at *2. Moreover, "[i]n addition to constitutional mootness, the doctrine of prudential mootness permits a court to 'dismiss an appeal not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief.'" *J.F. v. New Haven Unified Sch. Dist.*, 2014 WL 6485643, at *4 (N.D. Cal. Nov. 19, 2024) (Illston, J.) (quoting *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 744 F.3d 1124, 1135 (9th Cir. 2014)).

As a threshold matter, Defendants have moved to dismiss, in its entirety, the Supplemental Complaint to which the Motion for Preliminary Injunction relates. The motion to dismiss should be granted, and if it is, the Preliminary Injunction motion should be denied as moot. *See, e.g.*, *SEC v. Mount Vernon Mem'l Park*, 664 F.2d 1358, 1361 (9th Cir. 1982) (finding that the district court's entry of final judgment rendered pending appeal from preliminary injunction moot).

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

17

In any case, the Motion for Preliminary Injunction is moot on its own terms. The constitutional and prudential mootness doctrines apply to motions for preliminary injunctions. *See, e.g.*, *Acosta v. City of Salinas*, 2016 WL 778017, at *5 (N.D. Cal. Feb. 29, 2016) (denying motion for preliminary injunction as moot). As such, "[a] request for injunctive relief remains live only so long as there is some present harm left to enjoin." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) (quoting *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995)). From this principle, it follows that a request for a preliminary injunction becomes moot once the plaintiff has "obtained the relief he sought." *Hogue v. Yordy*, 796 F. App'x 955, 955 (9th Cir. 2020) (citing *Bayer*, 861 F.3d at 864). Where, as here, injunctive relief is involved, "questions of mootness are determined in light of the present circumstances." *Varela v. Gomez*, 1997 WL 37562, at *1 (N.D. Cal. Jan. 21, 1997) (Illston, J.) (citing *Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996)).

The "present circumstances" are as follows. Former Secretary Kristi Noem, who Plaintiffs allege had a plan to "eliminate" FEMA, is gone from DHS. 2d Suppl. Jackson Decl. ¶ 5. Karen Evans, who Plaintiffs allege was implementing Noem's alleged plan, is gone from FEMA. *Id.* ¶ 9. Former Secretary Noem has been replaced by Secretary Mullin, who—as co-chair of the FEMA Review Council—oversaw the release of a report that, contrary to Plaintiffs' supposition, contains no recommendation for a "50 percent cut" to FEMA staffing levels. *Id.* ¶¶ 11–13; *see also generally* FEMA Review Council Final Report; Doubleday, *FEMA Review Council Backs Off on Staffing Cuts in Final Report*. Robert Fenton is FEMA's current SOPDA but will be replaced (assuming Senate confirmation) by Hamilton, who testified to Congress in 2025 that in his view, FEMA should not be eliminated. 2d Suppl. Jackson Decl. ¶ 8. Were that not enough, *FEMA has offered reappointment to all the COREs who were released in January 2026*. Neurauter Decl. ¶¶ 6–8. As for Plaintiffs' non-party CORE declarants, all but one (whose supervisor did not have work for him) were offered appointments. Suppl. Neurauter Decl. ¶¶ 3–11. Accordingly, there is no longer an "actual injury" (assuming arguendo there ever was) that is "traceable" to Defendants and that is "likely to be redressed by a favorable judicial decision." *Pagtakhan*, 2010 WL 4940022, at *1. Absent any such injury, Plaintiffs' claims challenging CORE non-renewals are moot. *See In*

*Def. of Animals v. U.S. Dep't of Interior*, 648 F.3d 1012, 1013 (9th Cir. 2011) (per curiam) (holding preliminary injunction appeal moot where action to be enjoined had taken place).

If Plaintiffs argue that their broader claims for relief excuse them from the mootness doctrine, they would be mistaken. Plaintiffs' requested relief is two-fold. First, Plaintiffs ask the Court to enjoin DHS and FEMA from taking any action to implement "DHS directives" that remove FEMA authority over personnel decisions "with respect to FEMA employees," including but not limited to COREs. ECF 411-1 at 1. However, whatever was discussed, considered, or even planned in the past has fundamentally changed in light of the changes in leadership at both DHS and FEMA, rendering Plaintiffs' claims about what might happen in the future speculative. Plaintiffs point to no evidence that Hamilton or Mullin share these intentions for FEMA.

Second, Plaintiffs ask the Court to "rescind[] all notices of non-renewal of CORE employees *since January 1, 2026*," to include requiring DHS and FEMA to provide a process to "return those employees to the position they would be in were it not for their unlawful terminations," through, *inter alia*, step credit and back pay. *Id.* at 2 (emphasis added). As noted, FEMA has offered reappointment to the COREs whose January non-reappointments Plaintiffs' Motion *actually* challenged, i.e., the COREs who were not renewed (putatively, at DHS's discretion) in January 2026. Neurauter Decl. There is no basis, much less evidence to support, Plaintiffs' requested relief to bring back any CORE who was terminated for any reason in February, March, April, May, or June. Second, Plaintiffs' argument for back pay and other credit to the COREs who have since been reappointed is unfounded for at least two reasons. First, Plaintiffs lack standing to seek such relief: Plaintiffs are not themselves COREs, and they fail to explain how providing back pay to COREs would redress *Plaintiffs'* claimed harms. Second, an order providing such relief to non-parties (even were it judicially available) would not remedy any irreparable harm to any Plaintiff, which under their theory is attributable to (conjectural) reduced staffing levels at FEMA, not whether or how much specific FEMA employees are retroactively paid for temporary periods. Simply put, back pay for employees who have been reappointed has nothing to do with whether Baltimore will be able to receive assistance from FEMA in response

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

19

to a future disaster. At base, "[w]here the activities sought to be enjoined have already occurred, . . . the action is moot." *Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978).

To the extent the mootness exceptions are even relevant under these circumstances, neither applies. The "capable of repetition, yet evading review" exception is triggered only in "exceptional situations," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (citations omitted), when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, *and* (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again," *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (emphasis added). Plaintiffs fail at both steps. First, if future circumstances warrant emergency injunctive relief, Plaintiffs are fully capable of requesting it. Second, in any event, given that (i) Noem and Evans have left DHS and FEMA, respectively, (ii) FEMA's new leadership has disavowed interest in eliminating FEMA, (iii) the FEMA Review Council's final report (co-chaired by DHS's new leadership) does not propose to cut FEMA in half, and (iv) there is no other evidence of any existing plan to cut FEMA in half (much less a plan that would harm Plaintiffs), there is no "demonstrated probability that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (citation omitted); *see also, e.g.*, *J.T. v. District of Columbia*, 983 F.3d 516, 524 (D.C. Cir. 2020) (no reasonable expectation of a plaintiff facing the same action again when a dispute is "sharply focused on a unique factual context." (citation omitted)).

As for voluntary cessation, the Ninth Circuit "treat[s] the voluntary cessation of challenged conduct by government officials with more solicitude than similar action by private parties." *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (citation modified). Here, because the only concrete injury (to anyone) alleged by Plaintiffs—termination of the COREs in January 2026—is no longer redressable, the "voluntary cessation" exception also does not apply. *See DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) (holding that the "voluntary cessation" exception to mootness did not apply since mootness resulted from the fact the alleged injury was no longer redressable, not because the defendant choose to stop the allegedly illegal conduct); *see also In Def. of Animals*, 648 F.3d at 1013; *Owens v. Schuette*, 2024 WL 4469086, at *4 (E.D. Mich. Oct. 10, 2024) ("Without a time machine, the Court cannot force Defendants to do anything or prohibit

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

20

Defendants from doing anything that injured Plaintiff." (quotations omitted)), *appeal filed*, No. 24-2003 (6th Cir. Nov. 18, 2024).

## II. Plaintiffs, Who Are Not COREs, Also Cannot Establish Irreparable Harm.

If a movant fails to show a likelihood of success on the merits, a court "need not consider the other factors." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). But Plaintiffs' failure to show irreparable harm independently defeats their motion. Their supplemental brief does not argue, at all, whether and how Plaintiffs continue to suffer irreparable harm sufficient to entitle them to preliminary injunctive relief today. They cannot.

***Plaintiffs' Irreparable Injury Is Assessed at the Time the Injunction Is to Be Issued.*** "The role of a preliminary injunction is to protect the plaintiff from suffering new or additional irreparable harm between the time the preliminary injunction is entered and the case's final resolution." *AFSCME v. SSA*, 172 F.4th 361, 372 (4th Cir. 2026) (en banc) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.")); *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) ("A preliminary injunction is . . . a device for preserving the status quo and preventing the irreparable loss of rights before judgment."). Therefore, "it is not important whether the movant considers a preliminary injunction necessary at the time of filing the complaint." *Rain Bird Corp.*, 2004 WL 2246176, at *5 (citation modified). Rather, "[t]he relevant inquiry is whether the movant is in danger of suffering irreparable harm *at the time the preliminary injunction is to be issued*." *Id.* (emphasis added) (citation omitted); *accord, e.g.*, *B.P.C. v. Temple Univ.*, 2014 WL 4632462, at *4 (E.D. Pa. Sept. 16, 2014) ("The inquiry examines whether Plaintiff[s] will suffer irreparable harm at the time a preliminary injunction would issue."). This is because "like any other injunction, a preliminary injunction cannot reach back in time to prevent or undo irreparable harm that has already occurred." *AFSCME*, 172 F.4th at 372 (citing, *inter alia*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983)); *see also, e.g.*, *C2 Educ. Sys., Inc. v. Lee*, 2018 WL 3328143, at *3–4 (N.D. Cal. July 6, 2018) (Illston, J.) (rejecting claimed irreparable harm because "it appears that any ongoing harm is a result of defendants' *past* conduct rather than something that can be remedied

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

with [preliminary injunctive relief]"; underscoring movant's failure to show "a likelihood of *future* irreparable harm" (emphases added)).

Plaintiffs argue that "[t]he CORE employees who were terminated in January 2026 suffered ongoing irreparable injury during the time that they were separated from FEMA—which includes, at least, part of January; all of February, March, and April; and part of May 2026." Pls.' Supp. Br. at 36. They further argue that other COREs, who did retain their positions, nonetheless "faced ongoing uncertainty" during that timeframe. *Id.* at 36–37. First of all, as a matter of law, neither loss of employment nor generalized "uncertainty" by specific CORE employees is irreparable harm. *Sampson v. Murray*, 415 U.S. 61 (1974). But even if it were, it would not be Plaintiffs' to assert as a basis for preliminary injunctive relief, as Plaintiffs are neither COREs themselves nor have any affiliation with COREs. *See supra*. More to the point here, any such alleged harms represent past harms that cannot give rise to irreparable harm sufficient to justify prospective injunctive relief. *See, e.g.*, *C2 Educ. Sys.*, 2018 WL 3328143, at *3–4; *Rain Bird*, 2004 WL 2246176, at *5. This Court has held as much, correctly, in denying preliminary injunctive relief in other cases. *C2 Educ. Sys.*, 2018 WL 3328143, at *3–4.

***Plaintiffs' Irreparable Injury Must Be Based on Evidence, Not Speculation About Future Events.*** In addition, Plaintiffs must establish a "likelihood of irreparable harm that is grounded in evidence, not in conclusory or speculative allegations of harm." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1133 (9th Cir. 2014). A "possibility" of irreparable harm is insufficient; "irreparable injury [must be] *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2008 WL 2219837, at *2 (N.D. Cal. May 27, 2008) (Illston, J.) ("[I]n any situation, the Court must find "that there exists a significant threat of irreparable injury." (quoting *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985)), *modification denied*, 2008 WL 5479358 (N.D. Cal. Nov. 19, 2008). Plaintiffs argue that "[e]ven after the President announced the termination of DHS Secretary Noem, there was no public recission of this plan (because DHS still refused to admit that it existed), staffing planning exercises continued, and there was no announcement of any further change in plans with respect to the CORE." Pls.' Supp. Br. at 37. Further, they argue, "no promises were made to

individuals after June." *See id.* at 38–39. If Plaintiffs base their claimed irreparable harm on the prospect of future hypothetical staffing changes to FEMA that could affect FEMA COREs in an undefined way and to an undetermined extent, the outcome of which could then somehow affect Plaintiffs themselves—this highly attenuated speculation is not a basis for Article III standing, let alone concrete irreparable harm that would justify the extraordinary remedy of preliminary injunctive relief. *Winter*, 555 U.S. at 22; *In re TFT-LCD*, 2008 WL 2219837, at *2.

***Plaintiffs' Irreparable Injury Must Be Causally Connected to the Activity to Be Enjoined.*** To satisfy this element, Plaintiffs' claimed irreparable harm "must be causally connected to the activity to be enjoined." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018); *see also Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011) (explaining that a "sufficient causal connection" between the alleged irreparable harm and the activity to be enjoined is a "necessary requirement for obtaining preliminary injunctive relief"). Plaintiffs argue that reinstating the COREs who were terminated in January is not sufficient because the employees were not offered back pay or retroactive benefits. Pls.' Supp. Br. at 38. But even if this "injury" could serve as the basis for irreparable harm,[15] Plaintiffs do not explain how providing back-pay and retroactive benefits to COREs would address *Plaintiffs'* claimed injury. *Nat'l Wildlife Fed'n*, 886 F.3d at 819.[16]

---

[15] It is "well established" that "an injury that is solely financial and that is compensable by monetary damages cannot constitute irreparable injury." *Reilly v. Medianews Grp., Inc.*, 2006 WL 2419100, at *5 (N.D. Cal. July 28, 2006) (Illston, J.) (citing *Am. Tunaboat Ass'n v. Brown*, 67 F.3d 1404, 1411 (9th Cir. 1995)).

[16] Plaintiffs assert that this Court should proceed directly to summary judgment as to their FEMA-related claims in the Supplemental Complaint. Pls.' Supp. Br. at 39–45. Defendants have moved to dismiss, ECF 402, and oppose Plaintiffs' Motion for Preliminary Injunction. But should the Court rule in Plaintiffs' favor, Defendants do not disagree that a substantial record has been compiled regarding these claims, such that further proceedings related to them may be unnecessary or, if necessary, limited in scope. Accordingly, were the Court to grant preliminary relief regarding FEMA COREs, Defendants propose that the parties file a Joint Status Report within fourteen days of any such order to allow the parties to identify whether any further proceedings are necessary and, if so, what those proceedings should entail. Defendants also request that the Court stay any relief that it may enter for the duration of such period in order to allow the Solicitor General of the United States to determine whether to appeal any injunction this Court may issue and, if so, whether to authorize a motion for a stay pending appeal.

Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
3:25-cv-3698-SI

## CONCLUSION

The Court should deny Plaintiffs' Motion for Preliminary Injunction.

Dated: June 12, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

BRAD P. ROSENBERG
JEREMY S.B. NEWMAN
Chief Litigation Counsel

*/s/ Marianne F. Kies*
CHRISTOPHER HALL
MARIANNE F. KIES
Assistant Branch Directors

ROBERT C. BOMBARD
Trial Attorney
Civil Division, Federal Programs Branch

*Counsel for Defendants*