CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
BRAD P. ROSENBERG
JEREMY S.B. NEWMAN
Chief Litigation Counsel
CHRISTOPHER HALL
MARIANNE F. KIES
Assistant Branch Directors
ROBERT C. BOMBARD
Trial Attorney
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 598-9509
Robert.Bombard2@usdoj.gov

Counsel for Defendants

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al*.,<br><br>Defendants. | Case No. 3:25-cv-03698-SI<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS (ECF NO. 402)**<br><br>Hearing Date: June 23, 2026<br>Time: 1:30 PM<br>Judge: Hon. Susan Illston<br>Place: San Francisco Courthouse<br>　　　　Courtroom 1 |

Defendants' Reply ISO Motion to Dismiss Supplemental Complaint
3:25-cv-3698-SI

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 1

    I.      Plaintiffs' Procedural Objections Are Inapplicable To Motions Challenging Jurisdiction Pursuant To Rule 12(b)(1) ............................................. 1

    II.    Plaintiffs' Claims Regarding Annual Staffing Plans Lack Jurisdiction On Their Face, And Should Be Dismissed ..................................................................... 3

    III.   Plaintiffs' Claims Regarding FEMA COREs Lack Jurisdiction Both Facially And As A Factual Matter ........................................................................ 10

CONCLUSION ............................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*AFGE v. Trump*,
139 F.4th 1020 (9th Cir. 2025) ............................................................... 10, 11

*Block v. Cmty. Nutrition Inst.*,
467 U.S. 340 (1984) ..................................................................................... 11

*Chiang v. Gonzales*,
No. CV 05-03273, 2006 WL 8449284 (C.D. Cal. May 9, 2006) ......................... 11

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ....................................................................................... 3

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ..................................................................................... 5, 7

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ............................................................................ 4

*Doe v. Napa Valley Unified Sch. Dist.*,
No. 17-cv-03753-SK, 2018 WL 4859978 (N.D. Cal. Apr. 24, 2018) ..................... 2

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ................................................................................. 12, 13

*Fausto v. United States*,
484 U.S. 437 (1988) ..................................................................................... 11

*Fla. Off. of Att'y Gen. v. Meta Platforms Inc.*,
No. 24-7019, 2024 WL 5443167 (9th Cir. Dec. 16, 2024) ................................. 2

*Flaxman v. Ferguson*,
151 F.4th 1178 (9th Cir. 2025) ........................................................................ 8

*Fornaro v. James*,
416 U.S. 63 (D.C. Cir. 2005) ........................................................................... 11

*Havasupai Tribe v. Provencio*,
906 F.3d 1155 (9th Cir. 2018) ......................................................................... 7

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ..................................................................................... 12

*In re Social Media Adolescent Addiction / Personal Injury Prods. Liab. Litig.*,
753 F. Supp. 3d 849 (N.D. Cal. 2024)................................................................ 2

*Jones v. City of Los Angeles*,

No. 2:20-cv-11502-VAP-JCx, 2021 WL 6496719 (C.D. Cal. June 25, 2021) ......................... 2

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ....................................................................................... 9

*Mi Familia Vota v. Fontes*,
    129 F.4th 691 (9th Cir. 2025) ....................................................................... 12

*Mine Workers v. Gibbs*,
    383 U.S. 715 (1966) ....................................................................................... 5

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*,
    145 S. Ct. 1914 (2025) (mem.) ................................................................. 3, 13

*Personal Injury Products Liab. Litig.*,
    753 F. Supp. 3d 849 (N.D. Cal. 2024) ........................................................... 2

*Pinnacle Ventures LLC v. Bertelsmann Educ. Servs. LLC*,
    No. 18-cv-3412, 2019 WL 4040070 (N.D. Cal. Aug. 26, 2019) ...................... 2

*Riganian v. LiveRamp Holdings, Inc.*,
    791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......................................................... 2

*Russell v. U.S. Dep't of the Army*,
    191 F.3d 1016 (9th Cir. 1999) ...................................................................... 11

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ...................................................................... 10

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ..................................................................................... 12

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200–13 (1994) ............................................................................... 11

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ................................................................................... 4, 5

*Trump v. Am. Fed'n of Gov't Emps.*,
    145 S. Ct. 2635 (2025) ............................................................................... 3, 8

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016) ....................................................................................... 9

*Veit v. Heckler*,
    746 F.2d 508, 511 (9th Cir. 1984) ................................................................ 11

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
    5 F.4th 997 (9th Cir. 2021) ............................................................................ 8

**Statutes**

5 U.S.C. § 551 ................................................................................................. 8, 9

5 U.S.C. § 704 .................................................................................................... 13

5 U.S.C. § 706 ...................................................................................................... 4

5 U.S.C. § 7512 .................................................................................................. 10

42 U.S.C. § 5149 ................................................................................................ 10

**Executive Order**

Exec. Order No. 14,210, 90 Fed. Reg. 9669 (2026) ............................................ *passim*

**Rules**

Fed. R. Civ. P. 10 ............................................................................................. 1, 2

Fed. R. Civ. P. 12 ............................................................................................. 2, 3

**Other Authorities**

OMB/OPM Memo. (Nov. 5, 2025), https://www.opm.gov/chcoc/latest-memos/guidance-on-executive-order-14356-ensuring-continued-accountability-in-federal-hiring.pdf ............... 6, 8

**INTRODUCTION**

Defendants' opening memorandum, ECF No. 402 ("MTD"), demonstrated that the Supplemental Complaint, ECF No. 298 ("Suppl. Compl."), raises new claims based on a new executive order directing the creation of new staffing plans that warrant a stand-alone motion to dismiss; that Plaintiffs' challenges to Executive Order No. 14,356 ("EO 14356") fail due to a lack of standing, ripeness, and final agency action; and that the Court also lacks jurisdiction over a dispute regarding temporary employees who were not reappointed by the Federal Emergency Management Agency ("FEMA")—a new Defendant joined via the Supplemental Complaint. Plaintiffs' opposition, ECF No. 417 ("MTD Opp."), cures none of the many defects of those new, distinct claims. The Court should grant Defendants' Motion.

**ARGUMENT**

**I.     Plaintiffs' Procedural Objections Are Inapplicable To Motions Challenging Jurisdiction Pursuant To Rule 12(b)(1)**

Plaintiffs' brief leads with the argument that Defendants have erred procedurally by moving to dismiss their supplemental allegations to claims I, II, III, IV, VI, and VII of the Second Amended Complaint. MTD Opp. at 6–8; *see* Suppl. Compl. ¶¶ 569–74; Second Am. Compl., ¶¶ 385–414, 423–29, ECF No. 270 ("Compl."). Citing authority that purports to limit motions to dismiss to a single discrete "claim," Plaintiffs argue that the supplemental allegations as to EO 14356 are not a distinct "claim," even though the Second Amended Complaint was trained exclusively on Executive Order No. 14,210 ("EO 14210") and efforts to implement it. The Court should reject that argument for two reasons.

First, Plaintiffs' argument occludes the distinction drawn in the Civil Rules between allegations and counts. In relevant part, Rule 10(b) requires that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). Plaintiffs' characterization of the Supplemental Complaint's new material would not "promote clarity[.]" *Id.* Nor would their complaint-drafting decision to obscure what are plainly new claims "founded on [] separate transaction[s] or occurrence[s]" (i.e., the promulgation and implementation of a new

Executive Order) from those pleaded in their Second Amended Complaint by interweaving them into preexisting allegations and claims. *Id.* The proper course of action would not be to disallow a procedurally proper Motion to Dismiss as to the Supplemental Complaint, as Plaintiffs urge, but to treat what Plaintiffs characterize as additional allegations as what they really are—new claims separate from those alleged in the Second Amended Complaint.

Second, even if the Court agrees that Plaintiffs have not added new "claims" through their Supplemental Complaint, the Civil Rules do not preclude motions raising partial defenses to claims on jurisdictional grounds. Plaintiffs identify no authority applying the "piecemeal motion" rule to motions under Rule 12(b)(1), like this one. (Defendants' motion invokes Rule 12(b)(6) only as an alternative basis for judgment in their favor as to EO 14356, *see* MTD at 12 n.7.) Of the seven types of defenses "a party may assert . . . by motion" under Rule 12, only motions under Rule 12(b)(6) are textually tied to a "claim upon which relief can be granted[.]" Unsurprisingly, each case cited by Plaintiffs discusses the partial-motion rule as to Rule 12(b)(6) motions.[1] MTD at 8–9; *but see id.* at 12 n.7 (noting alternative Rule 12(b)(6) theory as to EO 14356 and the Memorandum). But Rule 12 encompasses "[e]*very* defense to a claim for relief in any pleading," not just complete defenses. Fed. R. Civ. P. 12(b) (emphasis added). Rule 12(b)(1) allows motions raising the defense of "lack of subject-matter jurisdiction[,]" irrespective of whether it applies to all or part of a claim. And the Civil Rules generally give maximum flexibility to courts as to when, and how, to address a jurisdictional question, because courts have no authority to act absent

---

[1] *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1085 (N.D. Cal. 2025) (denying motion seeking partial dismissal of invasion of privacy claims under Rule 12(b)(6) because a product feature could not be "cleanly separated" from products using the feature); *In re Social Media Adolescent Addiction / Personal Injury Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 875 (N.D. Cal. 2024) (denying Civil Rule 12(b)(6) motion being "used for piecemeal purposes"), *appeal dismissed sub nom. Fla. Off. of Att'y Gen. v. Meta Platforms Inc.*, No. 24-7019, 2024 WL 5443167 (9th Cir. Dec. 16, 2024); *Jones v. City of Los Angeles*, No. 2:20-cv-11502-VAP-JCx, 2021 WL 6496719, at *6 n.10 (C.D. Cal. June 25, 2021) (responding to objections to "the sufficiency of the pleading" of certain claims that "[t]he Court cannot dismiss part of a claim"); *Pinnacle Ventures LLC v. Bertelsmann Educ. Servs. LLC*, No 18-cv-3412, 2019 WL 4040070, at *4 (N.D. Cal. Aug. 26, 2019) ("This Court is inclined to follow those decisions holding that Rule 12(b)(6) may not be used to seek partial dismissal of a claim."); *Doe v. Napa Valley Unified Sch. Dist.*, No. 17-cv-03753-SK, 2018 WL 4859978, at *2–3 (N.D. Cal. Apr. 24, 2018) (refusing to dismiss, pursuant to Civil Rule 12(b)(6), a subset of the plaintiff's negligence theories).

subject-matter jurisdiction. *See id.* 12(h)(3). And as discussed in greater detail below, the Supreme Court has rejected application of a "same transaction or occurrence" to standing questions, regardless of whether allegations are properly grouped together as a claim. Accordingly, the Court should reject Plaintiffs' effort to avoid jurisdictional scrutiny of their Supplemental Complaint.

## II.   Plaintiffs' Claims Regarding Annual Staffing Plans Lack Jurisdiction On Their Face, And Should Be Dismissed

Turning to substance, Defendants' opening brief explained that Plaintiffs have not demonstrated standing to challenge EO 14356; their challenge is unripe because it is too early to determine whether the Annual Staffing Plans will lead to removals of any employee represented by Plaintiff Unions; and they have not alleged a "final agency action" subject to APA review. MTD at 9–17. Plaintiffs continue to pay no heed to past warnings to avoid enjoining Executive Branch restructuring plans when "those plans are not before [the] Court" such that there is "no occasion to consider whether they can and will be carried out consistent with the constraints of law." *Trump v. Am. Fed. of Gov't Emps.*, 145 S. Ct. 2635, 2635 (2025) (Sotomayor, J., concurring in the grant of stay) (*"AFGE II"*). Similarly, they fail to account for the Supreme Court's admonition that similarly postured organizational plaintiffs could not show standing to seek to enjoin agency terminations of probationary employees. *Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 1914 (2025) (mem.) ("*AFGE 1*"). As the Supreme Court explained in *AFGE 1*, the district court injunction "was based solely on the allegations of the nine non-profit-organization plaintiffs in this case. But under established law, those allegations are presently insufficient to support the organizations' standing." *Id*. at 1914 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)). Thus, Plaintiffs fail to meet their burden to establish subject matter jurisdiction over claims related to EO 14356.

*Standing.* Plaintiffs do not appear to dispute that the Supplemental Complaint lacks allegations of any concrete, imminent, and non-speculative injury caused by actions taken to implement EO 14356 that can be redressed by this Court. They argue that they have nonetheless established standing for two reasons. First, they contend that their new allegations regarding EO 14356 did not add new "claims" to the case, and that "Article III does not . . . require parsing each

Defendants' Reply ISO Motion to Dismiss Supplemental Complaint
3:25-cv-3698-SI

of a plaintiff's individual allegations in support of a given claim to determine whether a plaintiff can independently establish standing for each." MTD Opp. at 11–12. Second, they argue in the alternative that an independent injury has been alleged because "EO 14356, the implementing OMB/OPM memorandum, and the Annual Staffing Plans harm Plaintiffs in much the same way as the Administration's previous workforce reduction efforts," even as they allege no specifics about those plans that would harm their members. *Id.* at 12. Neither argument is meritorious.

Plaintiffs' first argument understates the burden they must carry to establish Article III standing. The Supreme Court's consistent formulation for a plaintiff's burden to show standing goes to "each claim that they press *and for each form of relief that they seek* (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *see also Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) ("A plaintiff must demonstrate constitutional standing separately for each form of relief requested."). Unless Plaintiffs are disclaiming an effort to obtain judicial relief against EO 14356 and Executive Branch efforts to implement it (which seems unlikely since they consistently aver that these actions are unlawful and filed an entirely new, 53-page pleading to say so), they are seeking new forms of relief not previously sought. They must show standing to seek that relief.

Plaintiffs' position appears to be that that they can put the label "claim" on any theory of liability in the "cause of action" section of the complaint (e.g., "Administrative Procedure Act, 5 U.S.C. § 706(2)(A)" or "Separation of Powers/Ultra Vires") and, after surviving an initial motion to dismiss on their initial allegations, add whatever new factual allegations might fit that theory as litigation runs its course through supplemental complaints. In this novel approach to pleading, jurisdictional challenges are not allowed as to these new allegations, even if they expand the scope of the case into areas where Plaintiffs' injuries fail to meet the Article III threshold (or where they have no injuries at all), because plaintiffs merely "supplemented" a preexisting "claim" over which the Court already found jurisdiction. The Court should reject this attempt at obtaining standing "in gross" through artful pleading. *TransUnion LLC*, 594 U.S. at 431.

Plaintiffs insist they can proceed in this manner because EO 14356 is "a continuation of the Administration's reduction and reorganization efforts that began with EO 14210" and efforts

to implement it. MTD Opp. at 7. That suggests a "common nucleus of operative fact" approach to jurisdiction the Supreme Court expressly rejected in *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted). In that case, taxpayers sued a municipal corporation and a state that had each offered tax benefits to encourage industrial development on a Commerce Clause theory. Under Article III, taxpayers have standing to sue a municipal corporation, but not a state government. Nonetheless, the taxpayers in *Cuno* argued that the district court could exercise supplemental jurisdiction, under *Mine Workers v. Gibbs*, 383 U.S. 715 (1966), over the claims against the state once it found jurisdiction over the municipality. *Cuno*, 547 U.S. at 351. The Supreme Court rejected this argument, and cautioned that to "allow standing as to one claim to suffice for all claims arising from the same 'nucleus of operative fact' would have remarkable implications" and "amount to a significant revision of our precedent interpreting Article III." *Id.* at 352–53.

Similarly, Plaintiffs' "standing as to one claim . . . suffice[s] for all claims" theory must be rejected. *Id.* at 352. Plaintiffs argue that "the Court has already twice found Plaintiffs to have suffered an injury sufficient to confer standing" and that the new allegations "[do not] undercut the Court's prior findings that Plaintiffs have been injured." MTD Opp. at 11. But that was in the context of EO 14210. The Second Amended Complaint makes clear what it seeks relief against: EO 14210; the February 26, 2025 OMB/OPM Memorandum regarding EO 14210; "approvals or exemptions awarded by OMB, OMP or USDS"; "any and all orders by OMB, OPM, or USDS with respect to [agency reduction in force and reorganization plans, as directed by the OMB/OPM Memorandum]; and [the plans themselves]." Compl. at 113 (prayers no. 4, 5, 6). Plaintiffs characterize the Supplemental Complaint as containing "developments to [their] existing claims," MTD Opp. at 11, but that is inaccurate. The Supplemental Complaint does not merely discuss EO 14356 as further evidence of EO 14210's alleged illegality; it asserts that EO 14356 itself violates the law. Suppl. Compl. ¶¶ 569–74. It strains credulity to maintain that Plaintiffs are ambivalent about obtaining relief against EO 14356 if EO 14210 is enjoined, or that they merely seek an improper "advisory opinion" from this Court regarding EO 14356. *TransUnion*, 594 U.S. at 424; *see also* MTD Opp. at 14 ("EO [14356], [the] OMB/OPM Memorandum, and Agency Staffing

Plans *are* final actions, and legal challenges to those actions are therefore ripe under both the Constitution and the APA.").

Plaintiffs bristle at being asked to make a new showing of standing as to this new Presidential directive given what they have shown to date about EO 14210. But even if EO 14356 is "part of a continuing effort to implement the President's workforce reduction priorities[,]" MTD Opp. at 7, standing as to challenges to EO 14356 and efforts to implement it does not follow from the allegations and findings regarding EO 14210. Plaintiffs were obligated to allege standing to challenge EO 14356 if they seek judicial redress to EO 14356 and efforts to implement it, and they all but concede they have failed to do so.

Plaintiffs' fallback argument is that EO 14356 and efforts to implement it harm them "in much the same way as the Administration's previous workforce reduction efforts[,]" such that previous allegations of harm against EO 14210 suffice to establish standing for purposes of a Rule 12 motion. MTD Opp. at 12–13. But as the Motion to Dismiss details, MTD at 11–13, EO 14356, the November 5 OMB/OPM Memorandum, and the Annual Staffing Plans are not the source of an imminent, non-speculative injury to Plaintiffs' members. At most, the OMB/OPM Memorandum states that agencies "shall . . . consider efficiencies that may be created by organizational restructuring," OMB/OPM Memo. at 3 (Nov. 5, 2025), https://www.opm.gov/chcoc/latest-memos/guidance-on-executive-order-14356-ensuring-continued-accountability-in-federal-hiring.pdf, but it mandates no actual restructuring; a request to "consider" something is not the same as a directive to "do" it. *Compare id.*, *with* EO 14210 § 3 (plans "shall require that each agency hire no more than one employee for every four employees that depart, consistent with the plan and any applicable exemptions and details provided for in the Plan"). Although Defendants acknowledge the Court's prior holdings on these topics, the Court should mind the differences between EO 14356 and EO 14210 and not apply analysis of the latter to the former uncritically, as Plaintiffs now ask it to.

Plaintiffs also complain that Defendants "seek to benefit from their own concealment of the Administration's actions," including "the contents of the Annual Staffing Plans," by "arguing that Plaintiffs [do not] have standing to challenge them." MTD Opp. at 12. But the Court must

determine it has jurisdiction before it reaches the question of whether discovery of these materials is appropriate. Moreover, even assuming Plaintiffs' worst-case scenario occurs and other agencies take actions like those allegedly taken by FEMA here, there is no reason to believe that disputes over such theoretical actions will be rendered completely nonjusticiable if the Court waits for actual or imminent harm to Plaintiffs before taking them up. The law of standing, and not Plaintiffs' preferences, dictates when a case or controversy exists for the Court to adjudicate.

Plaintiffs may prefer to litigate issues raised by EO 14356 as if it is a simulacrum of EO 14210, before it has been implemented in any way that imposes an actual, concrete, and certainly impending injury on them (if it ever does, which remains conjecture). But Article III standing doctrine is designed to ensure that the Court has the jurisdiction to issue all of the relief Plaintiffs seek, and to stay its hand until such a dispute arises. Applying that doctrine, Plaintiffs fail to carry their burden to show injury-in-fact, and standing is absent as to claims against EO 14356.

*Ripeness and Final Agency Action*. Plaintiffs again raise their "allegations are not claims" argument as to ripeness and final agency action under § 704 of the APA. MTD Opp. at 14. But their theory of pendent jurisdiction over disputes that are a "continuation" of prior actions fares no better here than it does as to injury-in-fact. *Cuno*, 547 U.S. at 352 (plaintiff's "common nucleus of operative fact" standing test would have "remarkable" implications for ripeness doctrine (citation omitted)). Just as injury-in-fact should be separately considered for EO 14210 and EO 14356, so should ripeness and final agency action (which is a jurisdictional inquiry in the Ninth Circuit, *see Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1161 (9th Cir. 2018)). And Plaintiffs' arguments that disputes over EO 14356 are ripe for adjudication, MTD Opp. at 13–17, miss the mark for at least three reasons.

First, Plaintiffs assert that their *ultra vires* claims against the President and APA claims against OPM and OMB related to EO 14356 and the OMB Memorandum are ripe for review, just as EO 14210 was, because EO 14356 "is plainly a final directive to agencies to act." MTD Opp. at 14. But the "finality" of these documents is not enough, on its own, to establish ripeness; what drives the inquiry is the presence of actual or imminent concrete injury. As explained above, Plaintiffs have failed to allege such an injury arising from the workforce planning exercises

Defendants' Reply ISO Motion to Dismiss Supplemental Complaint
3:25-cv-3698-SI

dictated by EO and the OMB/OPM Memorandum, and thus cannot show ripeness as a constitutional matter. *Flaxman v. Ferguson*, 151 F.4th 1178, 1184–85 (9th Cir. 2025) (equating ripeness "with Article III's injury-in-fact requirement for standing").

Prudentially, the Court would be in a far better position to assess the legality of EO 14356 and the OMB/OPM Memorandum when agencies make final decisions as to their plans or take specific steps to reorganize their workforces that Plaintiffs have standing to challenge. Even were one to accept Plaintiffs' speculative assumption (itself contrary to the language of EO 14356) that all Agency Staffing Plans will necessarily encompass reductions in force that impact Plaintiffs' members, assessing the legality of such actions is impossible in the abstract. One need look no further than the current dispute over FEMA COREs, term-limited federal employees who do not enjoy the same employment protections as other federal civil servants, to appreciate this concern. Underscoring this point, the OMB/OPM Memorandum states that implementation of the November 5 OMB/OPM Memorandum must be "consistent with all applicable laws." OMB/OMP Memo at 1 n.2. Because the EO and Memorandum are to be implemented "consistent with applicable laws," and "the plans themselves are not before this Court, at this stage," the Court has "no occasion to consider whether they can and will be carried out consistent with the constraints of law." *AFGE II*, 145 S. Ct. at 2635 (Sotomayor, J., concurring in the grant of stay). The Court should refrain from exercising jurisdiction over disputes regarding EO 14356 at least until the agencies take more concrete steps pursuant to an Annual Staffing Plan.

Second, the Annual Staffing Plans are not final in the sense required by § 704 of the APA. "Final agency action" is a legal term of art; whether an alleged action fits that definition is not settled merely because the document uses the word "final," as Plaintiffs would have it. Initially, the alleged action must fit the APA's definition of an "action," which encompasses a "rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13). Plaintiffs fail to show that the OMB/OPM Memorandum and agencies' Annual Staffing Plans do so. Plaintiffs try to distance themselves from the Ninth Circuit's decision in *Whitewater Draw Natural Reservation Conservation District v. Mayorkas*, 5 F.4th 997 (9th Cir. 2021), but the key issue there was not, as Plaintiffs would have it, the absence or presence of particular policy

Defendants' Reply ISO Motion to Dismiss Supplemental Complaint
3:25-cv-3698-SI

documents, but the plaintiff's effort "to litigate the whole of essentially every action DHS took pertaining to" vast areas of immigration policy. MTD Opp. at 16. Plaintiffs' attempt to litigate personnel policy for the entire Executive Branch is even broader. They do not challenge discrete agency actions (tellingly, although they cite § 551(13), they do not even try to identify which of the specifically defined actions they believe they are challenging here). Instead, they seek "wholesale improvement . . . by court decree," of the government's personnel plans, sight unseen, before any steps have been taken to implement them. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (emphasis omitted). Until Plaintiffs identify those discrete actions, APA review is inappropriate.

Of course, even if the Court agrees that Plaintiffs are challenging "agency action," not all agency actions are "final agency actions." Final agency actions subject to APA review must (1) mark "the consummation of the agency's decisionmaking process" and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (citation omitted). Defendants' opening brief explained that the Annual Staffing Plans are both non-final (in that they are subject to amendment and contemplate significant variances between projections and implementation) and non-rights-fixing (in that they do not effect changes in Plaintiffs' rights or obligations, or impose legal consequences on Plaintiffs). MTD at 17. Plaintiffs barely try to argue that the second prong is satisfied; even if they could establish that the Annual Staffing Plans are "final" in some way, no legal consequences will befall them until, at minimum, the plans have led to concrete actions to reorganize the workforce. And while Plaintiffs are correct that some agency actions widely regarded as "final" can also be revised later, the Annual Staffing Plans are by their nature interlocutory, with significant variances between planning and implementation expected by OMB and OPM. That distinguishes the Annual Staffing Plans from, for instance, a final rule promulgated after notice and comment which could be repealed or amended in the future.

Finally, Plaintiffs take issue with "intimations" Defendants have made in other pleadings that they "have not yet implemented the EO" across the board, pointing to their allegations against DHS and FEMA for support. MTD Opp. at 16–17. Of course, Defendants have raised a facial

jurisdictional challenge to Plaintiffs' allegations concerning EO 14356 and Annual Staffing Plans, and so materials outside the pleadings are off the table. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (extra-pleading materials relevant only to factual jurisdictional challenges, not facial ones). Defendants' arguments here are not based on any factual "intimations," or an effort to dispute Plaintiffs' inference that what they allege occurred at DHS and FEMA is occurring at other agencies as well. It is simply that, as a legal matter, EO 14356, the OMB/OPM Memorandum, and Annual Staffing Plans are not proper topics for judicial review. As such, the Court should grant Defendants' motion as to the claims raised in ¶¶ 569–74 of the Supplemental Complaint against efforts to implement EO 14356.

## III. Plaintiffs' Claims Regarding FEMA COREs Lack Jurisdiction Both Facially And As A Factual Matter

The motion to dismiss explained that Plaintiffs' claims relating to FEMA COREs are precluded by the Civil Service Reform Act ("CSRA") and cannot survive a factual jurisdictional challenge as to Article III standing and final agency action under the APA. MTD at 17–25. Plaintiffs' responses to these arguments fail to show otherwise.

*CSRA Channeling*. Plaintiffs rely on the Ninth Circuit's reasoning in its order denying Defendants' emergency motion for an administrative stay of this Court's order against implementation of EO 14210. *AFGE v. Trump*, 139 F.4th 1020, 1028 (9th Cir. 2025). But that reasoning does not lead ineluctably to the conclusion that the non-renewal of FEMA CORE employees is fair game for a district court lawsuit. In contrast to the planning documents developed in response to EO 14210 at issue in the Ninth Circuit's preliminary injunction decision, the issue before the Court now is the non-reappointment of a discrete group of federal employees. That is a covered action under the CSRA. 5 U.S.C. § 7512. Moreover, while the Ninth Circuit was addressing federal employees as a whole, FEMA COREs serve on temporary appointments, and federal law permits them to be appointed "without regard to the provisions of title 5 governing appointments in competitive service[.]" 42 U.S.C. § 5149(b)(1). Limited judicial review over decisions not to reappoint COREs is a feature, not a bug, of the Stafford Act, which gives FEMA the ability to quickly and flexibly ramp up (or pare down) its work force in response to disaster

response needs. Those nuances compel a different balancing of the factors the Supreme Court set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994), and it does not follow from the Ninth Circuit's ruling that CSRA preclusion of the claims regarding FEMA COREs is inapplicable. If this Court concludes otherwise, Defendants preserve this issue for future judicial review. *See AFGE*, 139 F.4th at 1040–43 (Callahan, J., dissenting).

Plaintiffs push back on § 5149(b)(1)'s implications, arguing that it "does not impliedly preclude the Court's jurisdiction to hear ultra vires and APA" claims, particularly since there is no forum "through which these employees' claims could even be arguably channeled." MTD Opp. at 19. While that may be the practical consequence of Defendants' preclusion argument, that consequence is consistent with the law. When a government employee is subjected to a personnel action within the CSRA's scope (as CORE non-reappointments are), including situations where that employee lacks recourse under the CSRA, non-constitutional "claims cannot be reviewed by this court," even if there is "no means by which [they] can challenge an improper personnel action[.]" *See Chiang v. Gonzales*, No. CV 05-03273, 2006 WL 8449284, at *7 (C.D. Cal. May 9, 2006) (finding CSRA channeling applied to claims brought by an employee of the FBI who was exempted from CSRA protections); *see also Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999) ("[T]he comprehensive nature of the procedures and remedies provided by the CSRA indicates a clear congressional intent to permit federal court review as provided in the CSRA or not at all." (quoting *Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir. 1984))). The CSRA's preclusive effect encompasses statutory claims like those Plaintiffs assert under the APA and the ultra vires doctrine. *See Fausto v. United States*, 484 U.S. 437, 447-55 (1988); *Block v. Cmty. Nutrition Inst*., 467 U.S. 340, 345–48 (1984); *see also Fornaro v. James*, 416 U.S. 63, 67-70 (D.C. Cir. 2005) (Roberts, J.) (CSRA precludes claims under APA). The Court should decline to exercise jurisdiction over these claims.

*Article III Standing*. Defendants' opening brief demonstrated that, as to the FEMA COREs, Plaintiffs lack both associational standing (as they have not established any of their members are among the employees FEMA decided not to renew) and organizational standing (as such standing cannot be premised on speculation about resource diversion resulting from the decision not to

Defendants' Reply ISO Motion to Dismiss Supplemental Complaint
3:25-cv-3698-SI

retain these individuals). MTD at 21–24; *see also AFGE 1*. Moreover, as explained in the supplemental declaration of Mr. Neurauter filed today (ECF No. 418-1), the COREs who submitted declarations in support of Plaintiffs' motion for preliminary injunction have been either reinstated to their position or offered reinstatement, save for one individual who was given 30 days' notice that he would not receive a new appointment based on his FEMA supervisor's determination that there was a lack of work (a circumstance irrelevant to Plaintiffs' claims). This dispute is now moot, and Plaintiffs' brief does not compel a different conclusion.

As to associational standing, Plaintiffs do not dispute their failure to identify any specific member of AFGE who was working as a FEMA CORE and whose employment was not renewed by FEMA. Plaintiffs state that identification of members is not required for standing, but that is wrong: the Supreme Court's cases in this context have "required plaintiff-organizations to make specific allegations establishing that at least one *identified* member had suffered or would suffer harm" to show standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added). Again, as the supplemental declaration of Mr. Neurauter explains, the only individuals actually identified who were affected by FEMA's decision not to renew the terms of the COREs have all now been offered reappointment, and many have returned to their work at FEMA. The Ninth Circuit has recognized a limited exception to this rule in cases like *Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025), but only if it is "clear and not speculative that a member of a group will be adversely affected by" the decision not to renew the terms of FEMA COREs. *Id.* at 708. A declarant's hearsay testimony about the results of a survey she conducted, Decl. of Pace Schwarz, ¶¶ 5–6, ECF No. 314-3, is not sufficient to make this showing.

Plaintiffs criticize Defendants for failing to address organizational standing at all. In fact, Defendants' opening brief did address it, MTD at 22, and Plaintiffs lack a strong response. Although *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024) did not completely discard the sort of organizational standing recognized in cases like *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), *Alliance* characterized *Havens* as "unusual" and noted the Court's hesitance to "extend the *Havens* holding beyond its context[,]" *Alliance*, 602 U.S. at 396. The facts of this case are not analogous to *Havens*, which was akin to a situation where "a retailer . . . sues

Defendants' Reply ISO Motion to Dismiss Supplemental Complaint
3:25-cv-3698-SI

a manufacturer for selling defective goods." *Id.* at 395. Plaintiffs, at most, point to time spent "attempting to represent and assist employees impacted by the" non-renewals, which has required "the union to expend additional resources." Decl. of Khaalis Jackson, ¶¶ 38, 48, ECF No. 303. It would be hard to find a clearer statement of an attempt by an organization to construct standing by diverting resources for litigation purposes than that. *Alliance*, 602 U.S. at 395. Finally, Plaintiffs reassert the organizational harms of AFSCME, SEIU, and local governments, but these diversion of resources arguments are even more attenuated than those of AFGE, and are highly speculative, to boot. Moreover, they are factually indistinguishable from the organizational-injury claims the Supreme Court rejected as a basis for standing in staying the district court's preliminary injunction in *AFGE 1*. *AFGE 1*, 145 S. Ct. at 1914. As such, the Court should dismiss these claims for a lack of Article III standing.

*Final Agency Action.* Defendants' motion to dismiss showed that Plaintiffs have again failed to allege a reviewable "final agency action." 5 U.S.C. § 704. First, the "order" Plaintiffs seek to challenge—an allegedly improper directive from DHS leadership not to re-appoint certain term personnel at the end of their terms—was never issued, and thus there is nothing to challenge pursuant to 5 U.S.C. § 704. MTD at 24. The planning activities Plaintiffs discuss in their brief, MTD Opp. at 22, are not inconsistent with testimony by Karen Evans, the former Senior Official Performing the Duties of the Administrator, which unambiguously states that she made the decision not to renew the COREs, rather than DHS. ECF No. 414-1 (Mar. 31, 2026, Evans Dep. Tr., at Ex. A to Leonard Decl.), 351:13–352:25; *accord, e.g.*, *id.* at 363:19–364:8, 365:2–11, 366:4–5. In a Rule 12 motion, of course, the Court is not called upon to make credibility determinations. So absent some evidence that contradicts the testimony of the Senior Official Performing the Duties of Administrator, there is no basis to deny the motion here.

Finally, the Annual Staffing Plans are not final agency actions to the extent they were not sent to OMB or OPM for review after the agencies developed them. It makes no sense to talk of plans that are "the culmination of DHS and FEMA's decisionmaking regardless of whether it was submitted to OMB/OPM." MTD Opp. at 23. The OMB/OPM Memorandum requires review of these plans, and requiring such a review would not make sense if they were operational before

those components of the EOP responsible for coordinating the government's policy and personnel agenda could weigh in. As such, claims respecting the FEMA and DHS Annual Staffing Plans should also be dismissed for lack of final agency action.

## CONCLUSION

The Court should grant Defendants' motion to dismiss.

Dated: June 12, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

BRAD P. ROSENBERG
JEREMY S.B. NEWMAN
Chief Litigation Counsel

CHRISTOPHER HALL
MARIANNE F. KIES
Assistant Branch Directors

*/s/ Robert C. Bombard*
ROBERT C. BOMBARD (COBN 45388)
Trial Attorney
Civil Division, Federal Programs Branch