CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
BRAD P. ROSENBERG
JEREMY S.B. NEWMAN
Chief Litigation Counsel
CHRISTOPHER HALL
MARIANNE F. KIES
Assistant Branch Directors
ROBERT C. BOMBARD
Trial Attorney
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 598-9509
Robert.Bombard2@usdoj.gov

Counsel for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS' MOTION FOR RULE 37(E) REMEDIES** <br><br> Hearing Date: June 23, 2026 <br> Time: 1:30 p.m. <br> Judge: Hon. Susan Illston <br> Place: San Francisco Courthouse <br> Courtroom 1 |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

I.      DHS's Policy Is That All Messages Should Be Preserved ............................................... 2

II.     Discovery in This Expedited Litigation............................................................................. 2

STANDARD OF REVIEW ......................................................................................................... 12

ARGUMENT .............................................................................................................................. 13

I.      Though Some Information Was Likely Lost, Plaintiffs Have Not Demonstrated
        That It Was Relevant. ..................................................................................................... 13

II.     There Is No Evidence of Intent to Support a Sanction Under Rule 37(e)(2)................... 15

III.    Plaintiffs Have Not Demonstrated Much, if Any, Prejudice, so Any Sanction
        Under Rule 37(e)(1) Should Be Minimal. ...................................................................... 21

CONCLUSION............................................................................................................................ 22

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Burris v. JPMorgan Chase & Co.*,
2024 WL 1672263 (9th Cir. Apr. 18, 2024) ............................................................................ 21

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ................................................................................................................... 12

*Gregory v. State of Montana*,
118 F.4th 1069 (9th Cir. 2024) ........................................................................................ *passim*

*In re Google Play Store Antitrust Litig.*,
664 F. Supp. 3d 981 (N.D. Cal. 2023) .................................................................................... 20

*In re Vaxart, Inc. Sec. Litig.*,
2025 WL 1865848 (N.D. Cal. July 7, 2025) ........................................................................... 12

*Jones v. Riot Hosp. Grp. LLC*,
2022 WL 3682031 (D. Ariz. Aug. 25, 2022) .......................................................................... 21

*Kissinger v. Reps. Comm. for Freedom of the Press*,
445 U.S. 136 (1980) ................................................................................................................. 15

*Kuen Hwa Traffic Indus. Co. v. DNA Motor, Inc.*,
2019 WL 4266811 (C.D. Cal. July 10, 2019) ......................................................................... 21

*Logistics Guys Inc. v. Cuevas*,
2025 WL 1017659 (E.D. Cal. Apr. 4, 2025) ........................................................................... 12

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
605 F. Supp. 3d  (N.D. Cal. 2022) .......................................................................................... 16

*Metricolor LLC v. L'Oreal USA, Inc.*,
2025 WL 3281522 (9th Cir. Nov. 25, 2025) ........................................................................... 20

*Porter v. City & Cnty. of S.F.*,
2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) .......................................................................... 15

*Residential Funding Corp. v. DeGeorge Financial Corp.*,
306 F.3d 99 (2d Cir. 2002) ...................................................................................................... 15

*Through Kozar v. Cnty. of Sonoma*,
640 F. Supp. 3d 915 (N.D. Cal. 2022) .................................................................................... 15

**Rules**

Fed. R. Civ. P. 37 ................................................................................................................ *passim*

**INTRODUCTION**

While certain Signal messages were lost and should have been preserved, their relevance to the litigation is far from clear. Moreover, Plaintiffs' telling of the facts omits critical information about Defendants' evolving discovery obligations over the course of expedited discovery, as clarified by a series of Court orders; about the conduct of Defendants' counsel; and about the testimony adduced related to the Signal messages. That background makes clear that Plaintiffs cannot prove intentional loss or hiding of relevant information, even though that information should have been preserved.

Moreover, Plaintiffs' proposed relief goes beyond any harm suffered by Plaintiffs and the remedies that the Court should impose under Rule 37(e). Plaintiffs seek (1) preclusion of all "hindsight testimony" related to the merits of Defendants' defense that "denies Defendants' plan to substantially reduce [FEMA] staffing, denies [DHS's] direction over that plan, or denies implementation of that plan through indiscriminate separation of Cadre of On-Call Response/Recovery (CORE) employees"; (2) an adverse inference that "the lost Signal messages would have been unfavorable to Defendants because they would have been further evidence of Defendants' plan, DHS's control, and Defendants' implementing actions"; and (3) attorneys' fees. *See* ECF 412-3 (proposed order). The first two of those remedies are available only when the Court finds that there was specific intent to "to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2) (emphasis added). Although the facts likely demonstrate that the information was negligently lost, Plaintiffs have not satisfied their heavy burden of demonstrating the "demanding specific-intent standard" set out by Rule 37(e)(2). *Gregory v. State of Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024). The Court should therefore only "order measures no greater than necessary to cure the prejudice," Fed. R. Civ. P. 37(e)(1), such as attorneys' fees and costs associated with Plaintiffs' second depositions of Guy and Evans and with the filing of this motion.

## BACKGROUND

### I.  DHS's Policy Is That All Messages Should Be Preserved

DHS policy requires all electronic records to be retained. DHS Policy Directive 141-03 provides specific guidance for managing electronic records, such as those created through chat, text, and instant messaging platforms. Weissman Decl. ¶ 6 (attached hereto as Ex. 1). DHS employees are required to preserve all substantive communications relating to agency business, policies, and activities conducted through these platforms that qualify as federal records under the Federal Records Act ("FRA"), regardless of whether they are on government-issued phones or personal devices. *Id.*

DHS Form EM 210 provides step-by-step instructions for assessing, capturing, and preserving electronic messages that qualify as FRA federal records, and it includes a checklist to help employees determine whether a message qualifies as a federal record and provides detailed instructions for saving screenshots of messages, emailing them to a government account, and archiving them in a shared drive folder. *Id.* ¶¶ 9–12. DHS has also provided guidance on archiving WhatsApp conversations and work-related communications and records transmitted on Signal, which is a DHS-approved application on government devices. *Id.* ¶ 11. DHS policy requires that employees receive training regarding these requirements annually. *Id.* ¶ 13.

Previously, from September 29, 2023, until April 9, 2025, DHS deployed third-party TeleMessage software to archive SMS texts, Signal messages, and WhatsApp messages for select employees, including senior officials, on their government-issued devices. *Id.* ¶ 14. But employees whose communications were not covered had to manually archive those messages. *Id.* In April 2025, DHS returned to the manual archiving of messages because TeleMessage was susceptible to cybersecurity failures. *Id.* DHS continues to develop and explore new processes to capture and regularly archive electronic messages in a secure manner. *Id.* ¶ 15.

### II.  Discovery in This Expedited Litigation

On March 3, 2026, this Court ordered expedited discovery regarding the factual dispute of whether DHS or FEMA decided the terms of employment of CORE staff. ECF 321. Relevant here, the Court ordered Defendants to "produce documents related to the renewals/nonrenewals of

CORE employees" and to "produce communications from DHS and FEMA, including email communications, regarding the renewals/nonrenewals of CORE employees as well as 'target' reductions of FEMA and CORE employee staffing." *Id.* at 2. The Court's order did not mention collection of data from phones, work or otherwise.

Three days later, on March 6, the parties proposed dueling discovery plans. Plaintiffs proposed that Defendants must produce "all documents" of every person who worked in "the entire DHS Office of the Secretary and DHS Office of the Chief Human Capital Officer (OCHCO), as well as FEMA's leadership, FEMA OCHCO, and relevant program/office supervisors" pertaining to the renewals and nonrenewals of CORE employees within one week. ECF 327 at 3–4. Plaintiffs also stated that these searches "should encompass . . . email, electronic files, and electronic communications including through Signal and other messaging platforms," but their plan did not specify collection from *personal* electronic devices. *See id.* Defendants proposed examining the ESI "in the custodial records" of the five relevant decisionmakers with a relevant timeframe of December 23, 2025, to March 6, 2026. *Id.* at 9. Defendants also noted that this case involved expedited discovery, making Plaintiffs' requests to include up to 800 individual custodians with only a 6-day turnaround impossible. *Id.* at 9–10.

On March 9, the Court entered an order stating that Defendants would produce the relevant documents by March 17 with a discovery cut-off date of March 6 (with a corresponding start date of December 1, 2025) and that, for those productions, Defendants must search the entire offices requested by Plaintiffs as well as the documents of former Secretary Noem, Corey Lewandowski, and Kara Voorhies. ECF 328 at 2. The Court said that Defendants were to "search the custodial records" of those individuals but—despite Plaintiffs' earlier request for Signal communications—the Court did not direct searches of *phones*, work or personal. *Id.*

Separately and independent of this litigation, on March 10, the DHS OCIO sent a reminder to all DHS employees regarding preserving electronic messaging records that contained federal records under the FRA, "includ[ing] email and any tools used to communicate for work, such as text messages (SMS), iMessage, Teams and encrypted apps like Signal or WhatsApp." OCIO Reminder, Ex. 1 (Weissman Decl. at Ex. J). That reminder stated that "[a]ll work-related

communications and records are considered official government records and must be preserved, regardless of format." *Id.* That reminder also stated that "DHS policy requires employees to use work devices for all work-related activities" and that "[i]f work communications appear on a personal device, the employee must preserve them and transfer to a work device—for example, by taking screenshots and emailing them to a DHS email account, or forwarding the messages," which "must be completed within 20 days," and "the original messages must be deleted from the personal account once the employee has confirmed they are archived in a DHS system." *Id.*

In the early morning hours of March 11, in accordance with that policy, Karen Evans took pictures of FEMA-related work conversations in Signal chats on her phone, including the FEMA 2.0 Signal chat, that she believed were government records as defined by the FRA. March 31 Evans Dep. 156:5–6, ECF 414-1 (Leonard Decl. at Ex. A "March 31 Evans Dep."); *see also* March 11 Email from Evans to self, Ex. 2 (Bombard Decl. at Ex. AA). She "took pictures of what [she] determined were appropriate records. And [she] sent those pictures into [her] email account so that they would be saved as part of DHS records." March 31 Evans Dep. at 156:7–10. In response to a question about whether she "took a screenshot of every communication [she] had with Kara Voorhies regarding FEMA on your Signal chat," Evans testified that she "looked at those because [she was] familiar, and [she] made a determination of what were appropriate records [under the FRA]." *Id.* at 156:12–18. She then "took the pictures" and "sent the records in so that they would be captured as records." *Id.* at 156:19–21. She chose to send them to her "email account, because [her] email account is automatically backed up and, therefore, is part of the DHS records," which she did because she was "follow[ing] the guidance that was given out to us." *Id.* at 156:22–157:8; *see also* May 26 Evans Dep. 13:6–21, ECF 414-1 (Leonard Decl. at Ex. G "May 26 Evans Dep.") (describing the same process she followed at her second deposition). She also followed the same process for other FEMA-related but non-CORE related Signal chats by screenshotting those Signal chats, emailing them to her government account, and then deleting them "[b]ecause that's the policy." May 26 Evans Dep. at 16:16–17:6.

That same day, after she had copied the records and sent them to her government email account, Evans deleted the records from her phone in accordance with her understanding of the

guidance and also changed the settings so that any future Signal messages in the FEMA 2.0 Signal chat would auto-delete in one week instead of four weeks. *Id.* at 12:5–17, 15:1–15; *see also* Evans Decl. in Supp. Preservation of Recs. ¶ 4, ECF 356-1. She never used the FEMA 2.0 chat again "from March 11th going forward." May 26 Evans Dep. at 18:14–19.

On March 19, Defendants relayed to the Court that they did not understand the Court's order to require the collection of any cell phones, as the Court had ordered "custodial records" encompassing over 1,250 individuals at DHS and FEMA without mentioning cell phones (despite that the Plaintiffs had, prior to the Court order, asked for searches of Signal) and the case was in expedited discovery. ECF 333 at 6. Specifically, Defendants noted the "physical impossibility" of manually collecting, extracting data from, reviewing, and producing information from those cell phones in the extremely shortened time period Plaintiffs demanded. *Id.*

On March 20, the Court ordered Defendants to produce electronic phone communications for certain high-level decisionmakers by March 26, but the order did not specify whether it included communications from personal cell phones. ECF 336 at 1.

On March 26, Defendants filed a notice of substantial compliance with the Court's March 20 order and noted that Defendants had "largely completed self-reporting and/or self-searches of custodians' DHS- and FEMA-issued work phones" and undertaken "physical collection and forensic extraction efforts that Defendants anticipate completing by Monday, March 30 for DHS, with FEMA's parallel efforts taking substantially longer given its broader custodian sweep, technological limitations, and logistical constraint." ECF 337 at 1.

On March 31, the first deposition of Karen Evans took place. As discussed above, during that deposition, she testified regarding her screenshotting of Signal messages from her personal phone and sending those to her work email so that federal records could be preserved. March 31 Evans Dep. 156:5–157:8; *see also* May 26 Evans Dep. at 12:5–17, 15:1–15. Evans's March 31 deposition was the first time that Defendants' counsel at the Department of Justice learned that a witness implicated in expedited discovery was conducting official business on personal phones. Sometime after the deposition, Evans forwarded the emails in her FEMA account containing the screenshots of her Signal messages to FEMA attorneys. May 26 Evans Dep. at 16:4–5.

Defendants' Memorandum in Response to Plaintiffs' Motion for Rule 37(e) Remedies
3:25-cv-3698-SI

On April 1, Defendants sent Plaintiffs an email stating that in light of Evans's testimony, Defendants would "conduct a supplemental search of her custodian emails for the images of the Signal chats with Ms. Voorhies and produce any responsive, non-privileged emails that might not have been produced previously." April 1 Email from Defendants to Plaintiffs, Ex. 2 (Bombard Decl. at Ex. BB). On April 6, Plaintiffs responded that they believed a forensic search of Evans's personal phone should take place since it was now "established that federal employees have used personal phones for agency business." April 6 Letter from Plaintiffs to Defendants, Ex. 2 (Bombard Decl. at Ex. CC).

On April 10, and in light of Evans's testimony, Plaintiffs asked the Court to require the searches of personal phones used for government business by April 17. ECF 341 at 10–11. Defendants, in response, cited Evans's deposition testimony that she took pictures of any messages on her personal cell phone that are "records" within the meaning of the FRA, and sent them to her email account so they would be preserved and that Defendants would produce responsive, non-privileged screenshots. ECF 344 at 14. On April 15, Defendants produced 3 responsive, non-privileged, Signal chat screenshots from Ms. Evans's personal phone that she had emailed to her FEMA account. April 15 Email from Plaintiffs to Defendants, Ex. 2 (Bombard Decl. at Ex. DD). Plaintiffs reiterated their request to have personal phones searched on April 20. ECF 350.

On April 22, the Court issued an order pertaining to this discovery dispute. The Court noted that "Plaintiffs *now* request that defendants be ordered to produce communications on personal phones related to agency business and to order any custodian claiming not to have conducted such communications to attest to that fact under penalty of perjury." ECF 351 at 2 (emphasis added) (citation omitted). The Court stated there was evidence that they "used their personal cell phones for business purposes regarding FEMA," which was "sufficient to establish control under Rule 34(a)." *Id.* at 4. The Court then ordered Defendants to "search the personal phones of Evans, Guy, and Voorhies and to produce all responsive communications by April 29, 2026" and for "Evans, Guy, and Voorhies to attest to the preservation of FEMA-related communications on their personal phones in declarations filed under penalty of perjury" by April 29. *Id.*

Defendants' Memorandum in Response to Plaintiffs' Motion for Rule 37(e) Remedies
3:25-cv-3698-SI

On April 25, Evans created a back-up of her Signal chats and saved them to her personal desktop computer. May 26 Evans Dep. 34:2–35:2. On April 29, FEMA counsel conducted the Court-ordered search of Ms. Evans's personal phone in her office at FEMA Headquarters in Washington, D.C., with her personal counsel, Jason Greaves present. *See* Errata sheet signed by Evans, Ex. 2 (Bombard Decl. at Ex. GG). Later that day, Defendants notified the Court that Evans's phone had been searched and that 5 additional responsive communications were produced to Plaintiffs. ECF 356 at 2–3. Evans also signed a declaration relating to the preservation of FEMA-related communications on her personal phone. *See* ECF 356-1. Defendants also noted their efforts to receive a similar attestation from Guy but were unable to do so, ECF 356 at 1, 3, and flagged their understanding that Guy's post-DHS employment with the State Department would end on April 30. *Id.* at 2. Defendants further noted their efforts to search Voorhies's phone but stated that because Voorhies was not a federal employee, was still in the process of retaining personal counsel, and was located in Texas, there were significant legal hurdles to following the Court's order to search her phone. *Id.* at 1–2.

On April 30, at 12:47 p.m. ET, Plaintiffs sought emergency relief relating to searching Guy's phone and asking the Court to require Defendants to accept service for Guy's deposition. ECF 357. At 2:40 p.m. ET that same day, the Court ordered Defendants to search Guy's personal phone, to "provide a declaration from Guy attesting to the preservation of responsive documents," and to accept service for his deposition. ECF 358. Guy attested later that day at 10:00 p.m. ET, that he performed a self-search on April 29 but found no responsive documents. ECF 359-1 ¶ 4. Mr. Guy also explicitly acknowledged in that declaration that "Signal messages on my personal device *were not preserved*." *Id.* ¶ 5 (emphasis added). He also averred that he understood that Evans was preserving any work-related Signal messages. *Id.*

By filing at 8:26 p.m. ET on Friday, May 1, Defendants notified the Court that FEMA was in the process of "offer[ing] new appointments to CORE employees whose appointment expired during the first three weeks in January, which were the subject of Plaintiffs' Motion for a Preliminary Injunction." ECF 361.

Shortly after Defendants' filing, at 8:55 p.m. ET on Friday, May 1, the Court issued an order determining that Guy's self-search was inadequate and ordering counsel for Defendants to "search his phone again, using at minimum substantially the same search terms defendants applied to their searches of ESI from DHS custodians." ECF 362. The Court also ordered Defendants to produce all "***FEMA-related*** Signal chats" from Evans's phone—which was a significant expansion to the scope of pre-existing discovery and the Court's April 22 order requiring production of all responsive messages in the FEMA 2.0 Signal chat—and to produce unredacted pages of Evans's planner that reflected weekly meetings with Guy before the commencement of Guy's deposition scheduled for 9:00 a.m. ET Monday, May 4. *Id.* (emphasis added).

On Saturday, May 2, Department of Justice counsel contacted Guy, who by that time was no longer a federal employee, to inform him of the newest Court's order issued the night before and to discuss a plan for conducting the Court-ordered search of his personal phone. May 2 Email from Defendants to Joe Guy, Ex. 2 (Bombard Decl. at Ex. EE). Later that afternoon, Guy reached out by phone to Department of Justice counsel to advise that he had retained personal counsel. Following discussions with Guy's newly retained personal counsel that afternoon and early the following morning, Department of Justice counsel and staff traveled on the morning of Sunday, May 3, to Guy's home, where they searched his personal phone with his personal counsel present. ECF 364.

At 8:54 a.m. ET on Monday, May 4, Defendants' counsel informed the Court of their significant efforts to comply with the Court's May 1 order, including the manual search of Guy's phone and the fact that they could not gather materials from Evans because DOJ counsel learned late Saturday that she had left her residence in Martinsburg, West Virginia before 6:00 am ET Saturday, May 2 for a family trip to Idaho through May 6. ECF 364. That same day, Guy was deposed as ordered at 9:00 a.m. in Washington. In his deposition, he testified that his personal phone did not have any responsive Signal messages and that on May 1, he had "reinstalled Signal on [his] phone because [he] read that you can restore your messages" through that mechanism. May 4 Guy Dep. 91:1–7, ECF 414-1 (Leonard Decl. at Ex. D "May 4 Guy Dep."); *see also id.* at 101:8–10 ("I had read that you could -- there was a way to restore messages. And I thought I would

try, and it didn't end up working."). He testified that "in an effort to show that I had nothing to hide, because there were no responsive documents in my phone, I tried to restore Signal, and I reinstalled it," but that those efforts were unsuccessful because he "didn't have the 60-number key . . . to restore the Signal messages. And it just wiped out everything again." *Id.* at 91:8–15. He also testified that "it was [his] understanding that someone else would be archiving anything that came up work related on a Signal message." *Id.* at 91:16–19. Plaintiffs' counsel asked if Guy "wiped out the entire content of your personal phone and the Signal chats," and Guy responded that he "didn't have those messages that, anyways" and that he performed that attempted reinstallation before he learned about the Court's order. *Id.* at 92:5–18. Guy also stated that his "intent" was "to show that there was not things that were responsive, to show you that I did not communicate about CORE employees on my personal device, that it was done on my official devices." *Id.* at 103:2–5; *see also id.* at 116:7–9 ("As I've already stated, I would have liked to have been able to search and to show you that I did not discuss COREs on my personal device.").

Also on May 4, Defendants requested a status conference with the Court regarding Plaintiffs' request to produce materials from Evans's phone and planner that same day. ECF 367. Plaintiffs then asked the Court to order that production to occur on May 4 and simultaneously asked for the Court to issue a preservation order to Evans, Voorhies, and 16 other individuals relating to other FEMA-related group chats. ECF 368 at 1–6. Plaintiffs also asked for a continuation of Guy's deposition. *Id.* at 6–7. At 6:54 p.m. ET, the Court ordered a status conference for May 5, denied Plaintiffs' request to turn over Evans's materials by May 4, granted the continuation of Guy's deposition, and stated that it was "inclined to grant plaintiffs' requested preservation order." ECF 370. Mr. Guy's deposition ended at 7:29 p.m. ET. Finally, at 8:42 p.m. ET, Defendants produced all of the screenshot images from Karen Evans's Signal chat that she emailed to her FEMA work account in accordance with the Court's May 1 Order (ECF 362) requiring production of "all FEMA-related Signal chats." May 4 Email from Defendants to Plaintiffs, Ex. 2 (Bombard Decl. at Ex. FF).

By Minute Entry issued at 4:44 p.m. ET following the status conference held on Tuesday, May 5, the Court ordered Evans's documents to be produced by Thursday, May 7, at 7:00 p.m. ET

and indicated that a preservation order would follow. ECF 377. Later that evening at 7:53 p.m. ET, the Court issued that preservation order as to "Karen Evans; Kara Voorhies; David Richardson; Victoria Barton; Troup Hemenway; Andrew Whitiker; James Percival; Corey Lewandowski; Micah Bock; Tricia McLaughlin; Joshua Whitehouse; Clark Barrow; Dillon McGreggor; Paul Stackhouse; Greyson McGill; Will Bilicic; Kyle Shut; Jeff Harbough; Tim Kieser; Jason Killmeyer; Antoine McCord; and Kerianne Tobitsch." ECF 380. The Court ordered that those individuals "[s]hall turn off disappearing messages for any Signal chats related to FEMA and any Signal chat groups containing any communications related to FEMA, whether on personal or agency-issued phones," including those identified by Guy; that those individuals "[s]hall not delete any data pertaining to any FEMA Signal Communications"; that those individuals "[s]hall not take any action whatsoever that would result in the deletion or loss of any data pertaining to any FEMA Signal Communications," and that "[p]rior to repairing or replacing any device (work or personal) that has been used for FEMA Signal Communications or re-installing any communication application (including but not limited to Signal), [those individuals] shall notify agency counsel, who shall have an obligation to ensure that all files, messages, and other documents related to FEMA from the device(s) are preserved, whether the device(s) at issue are work or personal." *Id.* The order required agency counsel to submit a sworn statement to the Court by no later than two (2) days after issuance of this Preservation Order, detailing the steps taken to ensure compliance with this Order. *Id.*

Also on May 5, Defendants' counsel at the Department of Justice learned for the first time that Evans backed up or saved her Signal chats on a personal computer. Plaintiffs assert that "Defendants' counsel were aware of the Signal backup on her personal computer as of April 25." ECF 412-1 at 12. In fact, counsel at the Department of Justice did not become aware of that backup until May 5. *See* ECF 382 ("May 5 Hr'g Tr.") at 5:10–6:6, ECF 382 (reflecting Department of Justice counsel's "understanding as of a few minutes ago" that some of Ms. Evans's Signal messages were "stored on her personal computer, because she backed them up to her computer."). Plaintiffs cite to a portion of Ms. Evans's second deposition transcript where she refers to how "both FEMA chief counsel as well as the Justice lawyers and my personal lawyer came to my

office and searched my phone" in late April. ECF 412-1 at 12, May 26 Evans. Dep. 57:5–58:25. Ms. Evans has now acknowledged in her deposition errata that her testimony in this regard was mistaken, as DOJ counsel were not present during that April collection in her office. *See* Errata sheet signed by Evans, Ex. 2 (Bombard Decl. at Ex. GG). While Plaintiffs cast aspersions regarding Defendants' conduct in not producing messages from Ms. Evans's backups earlier, *see* ECF 412-1 at 12, Department of Justice counsel informed the Court of this development as soon as they became aware of it, and in any event this Court has already addressed that issue when it rejected Plaintiffs' assertion that these materials should have been produced "long ago," observing instead that "this whole thing has happened so quickly that there really isn't a 'long ago' involved, Ms. Leonard. So I think what we need to do is get produced what needs to be produced." May 5 Hr'g Tr. at 6:3–10.

On May 7, Department of Justice counsel, FEMA agency counsel, and Evans's personal counsel traveled to Evans's home in West Virginia; Evans's phone was searched after Signal messages were restored from her personal computer and her calendar entries in her planner pages were examined. ECF 383. On May 12, Defendants produced approximately 918 screenshots from that search of all FEMA-related chats preserved on her computer from December 1, 2025, to March 6, 2026. ECF 396.

Also on May 7, Defendants notified the Court that "FEMA has offered reappointment to all of the CORE employees whose terms expired from January 1, 2026, through January 21, 2026, and whose terms were not renewed, except for those who retired or resigned from employment before their terms expired." ECF 383; *see also* ECF 383-1 (declaration attaching compilation of 148 offer letters). That same day, Defendants notified the Court regarding their compliance with the preservation order. ECF 387.

Also on May 7, and as noted above, Evans reinstalled the Signal application on her phone. May 26 Evans Dep. At 77:17–19. She did so because the Signal files she had backed up could not initially be extracted by other means. *See id.* at 77:23–78:13. So, because it was "the only way to" access those messages, her phone was restored back to the April 25 backup date to access that data for the relevant time period of December 1 to March 6. *See id.* at 78:13–19, 79:19–80:4.

On Monday, May 11, Kara Voorhies was deposed in Houston, Texas. She produced approximately 500 hard-copy pages of documents at her deposition, including Signal messages.

On May 14, even though Defendants explained why they believed it was unnecessary, Defendants voluntarily offered to permit Plaintiffs to reopen Evans's deposition for two hours "regarding the substance of any FEMA 2.0 Signal Chat messages, efforts to locate additional responsive material on her personal devices, and related topics." ECF 396. Two hours later, Plaintiffs agreed to the offer. ECF 397.

On May 26, Evans's second deposition took place. In that deposition, she reiterated that after she received the reminder on March 10 regarding keeping electronic messages that are federal records, she screenshotted the documents she believed were federal records, sent those to her work email, and deleted the documents to comply with DHS's policy. *See* May 26 Evans Dep. at 12:5–12; 12:25–13:21; 15:6–20; 16:6–17:13. She based her decisions on which messages to keep based on the language of the policy and kept all communications that were "work-related." *Id.* at 21:2–14; 23:2–9. Evans testified that she believed she preserved all the relevant records and communications based on the emails and backing up her Signal. *Id.* at 24:6–20. She also testified that she never used the FEMA 2.0 Signal chat again after March 11. *Id.* at 18:14–19.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 37(e) applies if ESI that "should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). This Rule's procedures are mandatory. *Gregory*, 118 F.4th at 1076–77, 1080; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991) (stating that "a district court [cannot] rely on its supervisory power as a means of circumventing the clear mandate of a procedural rule"). The Ninth Circuit has not clarified what standard of proof applies. At least one court in this Circuit has stated that the burden of proof is clear and convincing evidence, *see Logistics Guys Inc. v. Cuevas*, 2025 WL 1017659, at *7 (E.D. Cal. Apr. 4, 2025) (citation omitted), while at least one other judge in this district stated that the standard is preponderance of the evidence, *see In re Vaxart, Inc. Sec. Litig.*, 2025 WL 1865848, at *6 (N.D. Cal. July 7, 2025).

Defendants' Memorandum in Response to Plaintiffs' Motion for Rule 37(e) Remedies
3:25-cv-3698-SI

The inquiry does not end, however, if ESI that should have been preserved is lost. Instead, the party seeking relief must demonstrate either that it was prejudiced, Fed. R. Civ. P. 37(e)(1), or that the party that lost the ESI "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

If the Court finds both that information was lost and that the party seeking relief was prejudiced, then the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Whether prejudice exists "necessarily includes an evaluation of the information's importance in the litigation," though the judge has "discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37 advisory committee's note. But the measures taken under (e)(1) must not "have the effect of measures that are permitted under subdivision (e)(2)" because those are appropriate "only on a finding of intent to deprive another party of the lost information's use in the litigation." *Id.*

Alternatively, once the Court has found that information has been lost, the Court can issue the more severe sanctions set forth in Rule 37(e)(2) only upon finding that the party acted with the "demanding specific-intent standard" that is "purposely" drafted to be difficult to meet. *See Gregory*, 118 F.4th at 1080 ("On its face, that is a demanding specific-intent standard, and purposely so."). Only then can a court order the drastic remedies of "presum[ing] that the lost information was unfavorable to the party"; "instruct[ing] the jury that it may or must presume the information was unfavorable to the party"; or "dismiss[ing] the action or enter[ring] a default judgment." Fed. R. Civ. P. 37(e)(2).

## **ARGUMENT**

**I.      Though Some Information Was Likely Lost, Plaintiffs Have Not Demonstrated That It Was Relevant.**

As Defendants have previously acknowledged, some Signal messages were lost. *See* Eshleman Decl. 4–5, ECF 397-1 at 4–5. That should not have happened, as work-related records should have been conducted on work phones or should have been preserved in compliance with DHS's preservation policy, as discussed above. Defendants are prepared to take responsibility for this loss of information.

Still, what messages were lost and their relevance to the litigation is far from clear. DHS OCIO sent a reminder to all DHS personnel regarding its government record retention policy, stating that an employee could preserve federal records "by taking screenshots and emailing them to a DHS email account, or forwarding the messages" and then "delet[ing]" the records "from the personal account once the employee has confirmed they are archived in a DHS system." Weissman Decl. ¶ 12; OCIO Reminder, Ex. 1 (Weissman Decl. at Ex. J). Evans testified that once she received the OCIO notification on March 10, she took pictures of the documents in Signal chats on her personal phone that she believed were government records and sent them to her work email. *See* Evans March 31 Tr. 156:5–157:8; *see also* March 11 Email from Evans to self, Ex. 2 (Bombard Decl. at Ex. AA). Evans also created a back-up of her Signal chats, May 26 Evans Dep. 34:2–35:2, resulting in further communications produced to Plaintiffs. ECF 356 at 2–3. And Voorhies produced approximately 500 hard-copy pages of documents before her deposition. *See* Voorhies Dep. 7:15–24, ECF 414-1 (Leonard Decl. at Ex. E). Because the FEMA 2.0 chat was set to delete after four weeks, May 26 Evans Dep. at 17:14–21, presumably, there were some messages lost between its creation and Evans' backup on March 11, but the number of documents and what information they would reveal relevant to this litigation is unclear given that the allegations that are the subject of the current iteration of this litigation were filed on January 26, 2026. *See* ECF 290-2.

Nevertheless, nobody can determine the scope or relevance of the loss of some of the messages in the FEMA 2.0 Signal chat, because it cannot be restored and replaced through additional discovery, even though Evans preserved the documents on her personal phone she believed were federal records leading up to her March 11 work email preservation efforts, a few days after the Court's order opening discovery on March 6. Moreover, although Plaintiffs invoke other Signal group chats that arose in Guy's deposition and Voorhies's production, *see* ECF 412-1 at 3, 5, they provide no specific argument that these other chats contained relevant information that was not preserved. *Id.* at 17–20. At this stage, it appears possible that ESI from other Signal chats was lost and unlikely that potentially lost information "can be restored or replaced through

additional discovery." Fed. R. Civ. P. 37 advisory committee's note.[1]

## II.    There Is No Evidence of Intent to Support a Sanction Under Rule 37(e)(2).

Plaintiffs argue that Rule 37(e)(2) applies and that the Court should adopt an adverse inference under Rule 37(e)(2) because of "Defendants' systematic disregard for preservation obligations, affirmative actions to delete evidence, and litigation conduct aimed at concealing their practices shows a level of intentionality that justifies the stronger remedy." ECF 412-1 at 22. Plaintiffs are incorrect both on the facts and the law.

Legally, Plaintiffs misunderstand the law by insinuating that evidence of "systematic disregard for preservation obligations," the "systematic use of disappearing Signal messages on personal phones," and the fact that auto-delete settings were used demonstrate that Rule 37(e)(2) applies. But that evidence demonstrates, at worst, negligence or perhaps gross negligence, and the Rules Committee specifically stated that the rule applies "only on a finding that a party that lost the information acted with the intent *to deprive* another party of the information's use in the litigation," and thus "reject[ed] cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." Fed. R. Civ. P. 37 advisory committee's note. Plaintiffs' argument here treads closely to *Residential Funding*—the case specifically rejected by the Rules Committee—in which the Second Circuit held that evidence of "purposeful sluggishness" and "grossly negligent acts that hinder discovery support" could support an adverse inference. 306 F.3d at 109–10. Many of the acts that Plaintiffs argue demonstrate intentionality merely imply that Defendants did not stop an automatic deletion process in time as to personal phones—even though, as this Court has already observed, "this whole thing has happened so quickly that there really isn't a 'long ago.'" May 5 Hr'g Tr. at 6:3–10. In any event, and as stated by another judge in this District, "a passive failure to halt an automatic deletion process, without more, often does not rise to a reasonable inference of intent." *Est. of Bosco by & Through Kozar v. Cnty. of Sonoma*, 640 F. Supp. 3d 915, 929 (N.D. Cal. 2022); *see also, e.g., Porter v. City &*

---

[1] Plaintiffs' invocation of the Federal Records Act is a red herring because the Federal Records Act has no private right of action. *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 149–50 (1980).

Defendants' Memorandum in Response to Plaintiffs' Motion for Rule 37(e) Remedies
3:25-cv-3698-SI

*Cnty. of S.F.*, 2018 WL 4215602, at *4 (N.D. Cal. Sept. 5, 2018) (finding that the erasure of a phone record pursuant to a two-year retention policy "amounts to gross negligence, not intentional malfeasance"); *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 218, 1237–39 (N.D. Cal. 2022) (finding that a failure to halt the automatic deletion process of relevant records was not intentional where the movant had not shown intent to be "the most likely explanation" when negligence was equally probable). And in *Gregory*, the Ninth Circuit held that an adverse inference was unavailable because there was at most gross negligence when a law enforcement agency lost a video from its surveillance system because it was not downloaded before an autodelete occurred. 118 F.4th at 1076–77.

Factually, Plaintiffs misstate the record in characterizing Defendants' conduct. *First*, regarding Evans, once reminded by OCIO of DHS's policy regarding saving federal records on personal devices, *within the next 24 hours* Evans collected numerous pictures she had taken of her Signal messages she determined were work-related records throughout early 2026 and emailed them to her FEMA work email in accordance with DHS policy. Exhibit 1 to Bombard Decl.; March 31 Evans Dep.156:5–157:8. Also in an attempt to comply with the policy, she deleted the messages from her personal phone. May 26 Evans Dep. at 16:16–17:6. To be sure, this effort imperfectly followed the policy because the FEMA 2.0 chat had a setting whereby the messages were deleted after four weeks. Nonetheless, Evans's actions demonstrate the opposite of what Plaintiffs insinuate: She attempted to immediately comply with DHS's policy and preserve those documents she believed were federal records once she was reminded of that policy and subsequently identified relevant ESI that was not in a DHS system. The only "affirmative action[] to delete evidence," *see* ECF 412-1 at 22, was Evans's attempt to comply with DHS policy. And Evans's later reinstallation of Signal on her phone on May 7 was completed because it was "the only way to" access the Signal files that she had previously backed up. May 26 Evans Dep. at 77:17–78:19, 79:19–80:4. Nor is there any evidence that any relevant Court-ordered information or data between December 1, 2025, and March 6, 2026, was deleted or lost as a result of this successful backup attempt. Plaintiffs' invocation of Evans shortening the auto-delete setting to one week after the Court ordered discovery, ECF 412-1 at 10, is a red herring because she testified that this setting would only apply

to the timing of deletion of future messages, and she never used the FEMA 2.0 chat again after that date. *See* May 26 Evans at Dep. 18:5–19.

Plaintiffs nonetheless assert that Defendants did not produce emails regarding the screenshots Evans took on her phone to preserve federal records. *See* ECF No. 412-1 at 9 ("Defendants have never produced any such emails or any evidence that such emails existed."). Plaintiffs even argue that "there is no evidence that Evans ever did preserve FEMA-related Signal messages by sending them to her work email . . . ." *Id.* at 11. As Defendants have repeatedly noted, discovery in this case has been extremely expedited, so much so that Plaintiffs may be forgiven for overlooking that Defendants explicitly highlighted in their email accompanying their May 5 document production that they were producing "images from Ms. Evans's Signal application on her personal phone." May 4 Email from Defendants to Plaintiffs, Ex. 2 (Bombard Decl. at Ex. FF).[2]

*Second*, while Plaintiffs do not mention Guy when discussing intentionality, their brief repeatedly mischaracterizes his statements, which reveal that, at worst, he was careless in believing that others would preserve the FEMA 2.0 chat, May 4 Guy Dep. 91:16–19, and in reinstalling his Signal application to try to restore his messages, *which he testified were already lost*. May 4 Guy Dep. 91:1–7, 101:8–10. Specifically, the record reveals the following:

- Plaintiffs accuse Mr. Guy of providing "false statements about preservation." ECF 4512-1 at 13. This accusation is baseless. This Court directed Mr. Guy to "provide a declaration . . . attesting to the preservation of responsive documents." ECF 358 at 1. Mr. Guy responded to the Court's Order by squarely and directly stating that "Signal messages on my personal device were not preserved." *See* ECF 359-1 ¶ 5. He also described the self-searches that he had nonetheless conducted. *Id.* ¶ 4. Mr. Guy's

---

[2] Defendants have attached a sample which shows one of the March 11, 2026 emails Karen Evans sent from her personal account to her FEMA work account. *See* March 11 Email from Evans to self, Ex. 2 (Bombard Decl. at Ex. AA). The emails have no content containing only an attachment of a screenshot taken of what she determined to be a FEMA-related record at the time. If requested, Defendants will produce the entire collection of these emails to Plaintiffs, however, again, the emails have no content other than the attached images, all of which have been previously produced to Plaintiffs on April 15 and May 5, 2026.

Defendants' Memorandum in Response to Plaintiffs' Motion for Rule 37(e) Remedies
3:25-cv-3698-SI

17

deposition occurred just four days later (and was even continued to a second date), providing Plaintiffs' counsel with many hours to fully probe the non-preservation of Signal messages that Guy identified in his declaration.

- Plaintiffs argue that Guy "reinstalled the Signal application on [his] phone[] during this litigation, which resulted in the destruction of data." ECF 412-1 at 11. But nothing in the record supports the contention that this reinstallation resulted in the destruction of data. On May 1, Guy "reinstalled Signal on [his] phone because [he] read that you could restore your messages, and he stated that this was "an effort to show I had nothing to hide." May 4 Guy Dep. 91:4–15. The reinstallation did not work, and the messages were not restored. *Id.* But Guy stated that before he did that, "there was nothing already there" on his phone. *Id.* at 100:17–18. In other words, the reinstallation caused no loss of data.

- Plaintiffs also insinuate that Guy reinstalled the Signal application on May 1 as a means to circumvent this Court's May 1 order. *See* ECF 412-1 at 11 (arguing that Guy admitted to reinstalling his Signal application "despite the Court's May 1, 2026 order that his personal phone be searched before the deposition and that he bring his phone to that deposition"). But there is no evidence to support Plaintiffs' insinuation. Instead, the record reveals that Guy did not know about the Court's Order until the afternoon of Saturday, May 2, when Department of Justice counsel contacted Guy, who was by that time no longer a federal employee, to inform him of the Court's order and discuss a plan for conducting the Court-ordered search of his personal phone. May 2 Email from Defendants to Joe Guy, Ex. 2 (Bombard Decl. at Ex. EE).

- Regarding the FEMA 2.0 chats, considering that he attempted to restore the messages on May 1, *see* May 4 Guy Dep. 91:4–15, the FEMA 2.0 Signal messages were likely already gone because they were set to automatically delete after four weeks, *id.* at 298:18–22, and Evans testified that she never used the FEMA 2.0 chat again after March 11. May 26 Evans Dep. 18:14–19. Nothing in the record demonstrates that anyone else used it after March 11 either.

Defendants' Memorandum in Response to Plaintiffs' Motion for Rule 37(e) Remedies
3:25-cv-3698-SI

18

*Third*, Regarding Defendants' counsel, Plaintiffs insinuate that Defendants "took no steps to preserve disappearing data, and in fact made every effort to shield this destruction of evidence from the Court and from Plaintiffs." ECF 412-1 at 23. This serious accusation is unsupported by the record and ignores the extremely expedited and one-way discovery with which Defendants have had to comply. As evidenced in the background section discussed above, Defendants' counsel have followed or attempted to comply with this Court's orders every step of the way, affirmatively filing notices of compliance identifying aspects of this Court's Orders with which they have complied and those aspects of the Court's Orders with which they have been unable to comply due to time constraints or other logistical challenges, and providing clarification about their interpretation of the Court's orders as appropriate along the way. Initially, on March 6, Plaintiffs asked for "electronic files, and electronic communications including through Signal and other messaging platforms," ECF 327 at 3–4, but the Court ordered a "search [of] custodial records" of hundreds of individuals and did not mention searches of personal devices. ECF 328 at 2. It was not until April 6 that Plaintiffs sent a letter asking for a forensic search of any *personal* phones, April 6 Letter from Plaintiffs to Defendants, Ex. 2 (Bombard Decl. at Ex. CC), and it was not until three weeks later, on April 22 that the Court stated that "Plaintiffs **now** request that defendants be ordered to produce communications on personal phones related to agency business" and that Evans, Voorhies, and Guy's personal phones must be searched. ECF 351 at 2, 4 (emphasis added). Soon thereafter, Defendants notified the Court of their collection efforts regarding Evans's phone and their attempt to comply with the order relating to Guy and Voorhies. *See* ECF 356 at 1-3. Even after Guy left the employment of the government, Defendants endeavored over the weekend to ensure Guy's personal phone was searched. ECF 364. These facts do not demonstrate that Defendants "made effort to shield this destruction of evidence from the Court and from Plaintiffs." ECF 412-1 at 23. Just the opposite. Even if Defendants' discovery efforts were imperfect, Defendants' counsel worked diligently, around the clock, on an expedited schedule despite significant logistical hurdles to comply with *all* Court orders.

Plaintiffs further argue that "when the Court ordered production of official agency communications on personal phones, Defendants failed to comply with multiple orders and forced

Plaintiffs to keep returning to the Court to obtain compliance." ECF 412-1 at 23. Plaintiffs ignore that their repeated requests to the Court were during the timespan of approximately two weeks (from April 22—the time of the Court's first order—until May 7). This is wholly unlike *In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981 (N.D. Cal. 2023), which Plaintiffs cite. There, a defendant failed to retain internal chat messages during litigation even though, "as an enterprise[, it] had the capacity of preserving all Chat communications systemwide once litigation had commenced but elected not do so, without any assessment of financial costs or other factors that might help to justify that decision." *Id.* at 993. The evidence also revealed that "individual users were conscious of litigation risks and valued the off the record functionality of Chat." *Id.* And the Court noted that years before, Defendants had assured "that it had taken appropriate steps to preserve all evidence relevant to the issues reasonably evident in this action, without saying a word about Chats or its decision not to pause the 24-hour default deletion." *Id.* at 992 (citation omitted). Unlike there, the evidence here reveals that Defendants repeatedly took steps to preserve relevant documents and to comply with the Court's orders.

The remainder of Plaintiffs' arguments are nothing more than *ipse dixit*. There is no evidence demonstrating that the use of Signal messages "can only be understood as an effort to avoid discovery." *See* ECF 412-1 at 23. And Plaintiffs argue that "Defendants' witnesses also presented misleading or untrue declarations and deposition testimony about preservation" but point to nothing in the record demonstrating a falsity and merely cite to "*Supra* Background Section II." *Id.* In any event, Defendants have addressed this issue above.

To be sure, not all Signal messages were preserved due to failure to comply with DHS's policies regarding storing messages. But that evidence amounts to at most negligence or gross negligence, not specific intent to prevent Plaintiffs from accessing discovery. Cases that have met such a finding involved clear evidence of party misconduct, such as when a plaintiff "fabricat[ed], with[eld], and destroy[ed] evidence" in a trade secret misappropriation case so that ESI was "permanently lost" due to intentional acts, *Metricolor LLC v. L'Oreal USA, Inc.*, 2025 WL 3281522, at *1 (9th Cir. Nov. 25, 2025), and when the evidence demonstrated that a plaintiff had made "systematic efforts to destroy ESI from an array of phones, laptops, email accounts, and

Defendants' Memorandum in Response to Plaintiffs' Motion for Rule 37(e) Remedies
3:25-cv-3698-SI

external storage devices." *Burris v. JPMorgan Chase & Co.*, 2024 WL 1672263, at *2 (9th Cir. Apr. 18, 2024) (citation omitted). That is not the case here.

### III.    Plaintiffs Have Not Demonstrated Much, if Any, Prejudice, so Any Sanction Under Rule 37(e)(1) Should Be Minimal.

Plaintiffs also argue that under Rule 37(e)(1), "the Court should exclude any testimony from Defendants' witnesses that denies Defendants' plan to substantially reduce FEMA staffing and to implement that plan by indiscriminately separating CORE employees, or denies that DHS directed the FEMA staffing decisions and actions at issue." ECF 412-1 at 20.

That type of sanction is not allowed by Rule 37(e)(1). Plaintiffs' proposed sanction is the equivalent of "presum[ing] that the lost information was unfavorable to the party," Fed. R. Civ. P. 37(e)(2)(A), as it asks the Court to prevent any testimony by Defendants relating to the substance of Plaintiffs' claims and for the Court to disallow any evidence that the lost information was favorable to Defendants. The Rules Committee notes are specific: courts must take care "to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation." Fed. R. Civ. P. 37 advisory committee's note. And the Committee said "[a]n example of an inappropriate (e)(1) measure might be an order . . . precluding a party from offering any evidence in support of[] the central or only claim or defense in the case." *Id.* That is exactly what Plaintiffs ask the Court to do here, so the Court should deny their request.

The cases Plaintiffs cite do not support their proposed sanction. In one case, a district court excluded evidence under Rule 37(e)(2) rather than 37(e)(1), and the court dismissed the case because the plaintiff "willfully violated the Court's orders for over two years, thwarting the discovery process and undermining the fairness of any trial on the merits." *Jones v. Riot Hosp. Grp. LLC*, 2022 WL 3682031, at *13 (D. Ariz. Aug. 25, 2022). And in the other, the defendant "deleted text messages on his phone . . . right after he had received Plaintiff's cease and desist letter," and the Court disallowed testimony about only the subject that was the contents of those messages. *See Kuen Hwa Traffic Indus. Co. v. DNA Motor, Inc.*, 2019 WL 4266811, at *2 (C.D. Cal. July 10, 2019).

Defendants' Memorandum in Response to Plaintiffs' Motion for Rule 37(e) Remedies
3:25-cv-3698-SI

Instead of Plaintiffs' proposed remedy, the Court should examine the prejudice to Plaintiffs from the lost information, which, at this stage, appears to be minimal according to their own filing. Plaintiffs argue that the evidence already supports the substance of their supplemental brief in support of their preliminary injunction motion, *see* ECF 412-1 at 21, and all the evidence has revealed at this stage is that Plaintiffs could conceivably be harmed by having to pursue extra depositions of Guy and Evans as a result of the discovered Signal messages. Defendants propose that the Court order the parties to confer regarding the payment of reasonable attorneys' fees and costs associated with those second, follow-up depositions and this motion rather than any sort of sanction that would have the same effect as an adverse inference.

## CONCLUSION

The Court should deny the relief requested in Plaintiffs' Motion for Rule 37(e) Remedies and should instead only order the parties to confer regarding the payment of attorneys' costs and fees associated with the second depositions of Guy and Evans and Plaintiffs' pursuit of this Motion.

Dated: June 12, 2026                    Respectfully submitted,

                                        CRAIG H. MISSAKIAN (CABN 125202)
                                        United States Attorney

                                        450 Golden Gate Avenue, Box 36055
                                        San Francisco, California 94102-3495
                                        Telephone: (415) 436-7200
                                        Fax: (415) 436-6748

                                        ERIC J. HAMILTON
                                        Deputy Assistant Attorney General

                                        DIANE KELLEHER
                                        Branch Director

                                        BRAD P. ROSENBERG
                                        JEREMY S.B. NEWMAN
                                        Chief Litigation Counsel

                                        CHRISTOPHER HALL
                                        MARIANNE F. KIES
                                        Assistant Branch Directors

                                        */s/ Robert C. Bombard*
                                        ROBERT C. BOMBARD (COBN 45388)
                                        Trial Attorney
                                        Civil Division, Federal Programs Branch

                                        *Counsel for Defendants*