Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RULE 37(E) REMEDIES (ECF 412)** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

STANDARD OF REVIEW ......................................................................................................2

ARGUMENT .........................................................................................................................2

    I.     Defendants failed to preserve relevant information. ...................................................2

    II.    The spoliation was intentional. ...............................................................................5

         A.     Defendants gloss over their affirmative actions to delete Signal messages. .............................................................................................................5

         B.     During this litigation, Defendants' officials misrepresented their Signal use and preservation efforts and took further actions that led to loss of information. ...........................................................................................9

         C.     The Department of Justice's attempt to distance itself from the spoliation fails to acknowledge its role in concealing its client agencies' conduct. ....................................................................................11

    III.   The remedies sought are appropriate. ......................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Benanav v. Healthy Paws Pet Ins. LLC*,
No. C20-00421-LK, 2022 WL 3587982 (W.D. Wash. Aug. 22, 2022) ....................................8

*Compass Bank v. Morris Cerullo World Evangelism*,
104 F. Supp. 3d 1040 (S.D. Cal. 2015) ...................................................................................2

*E.M.D. Sales, Inc. v. Carrera*,
604 U.S. 45 (2025) ...................................................................................................................2

*Est. of Bosco v. Cnty. of Sonoma*,
640 F. Supp. 3d 915 (N.D. Cal. 2022)................................................................................5, 6

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
No. 22-MD-03047-YGR (PHK), 2024 WL 4125618 (N.D. Cal. Sept. 6, 2024) ....................12

*Khan v. S.F. Dep't of Public Health*,
No. 24-CV-09289-LJC, 2026 WL 1433089 (N.D. Cal. May 21, 2026) ...................................4

*Kuen Hwa Traffic Indus. Co. v. DNA Motor, Inc.*,
2019 WL 4266811 (C.D. Cal. July 10, 2019) .......................................................................15

*Logistics Guys Inc. v. Cuevas*,
No. 2:23-CV-01592-DAD-CSK, 2025 WL 1017659 (E.D. Cal. Apr. 4, 2025).......................2

*Morehead v. City of Oxnard*,
No. 2:21-cv-07689, 2023 WL 8143973 (C.D. Cal. Oct. 4, 2023)............................................2

*Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union, Locs. 21 & 4*,
721 F.3d 1122 (9th Cir. 2013) .................................................................................................2

*OmniGen Rsch. v. Yongqiang Wang*,
321 F.R.D. 367 (D. Or. 2017).................................................................................................2

*Porter v. City & Cnty. of S.F.*,
No. 16-CV-03771-CW(DMR), 2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) ........................7

*Qualcomm Inc. v. Broadcom Corp.*,
No. 05CV1958-B (BLM), 2008 WL 66932 (S.D. Cal. Jan. 7, 2008), *vacated in
part on other grounds*, No. 05CV1958-RMB (BLM), 2008 WL 638108 (S.D.
Cal. Mar. 5, 2008)..............................................................................................................11, 12

*Ramirez v. T&H Lemont, Inc.*,
845 F.3d 772 (7th Cir. 2016)....................................................................................................2

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
306 F.3d 99 (2d Cir. 2002) ........................................................................................................6

*Ritchie v. United States*,
451 F.3d 1019 (9th Cir. 2006) ...................................................................................................4

**INTRODUCTION**

Defendants do not dispute that their high-level officials regularly used disappearing Signal messages on their personal phones for agency business, in violation of their responsibility to preserve federal records. That is a serious admission that top DHS and FEMA officials blatantly disregarded federal law and agency policy. But they downplay the significance of the loss to this litigation and argue that the loss was at most grossly negligent, but not intentional.

The evidence before this Court, including admissions obtained in discovery and the Signal messages that were not lost, shows that relevant messages—months of them—were lost. Throughout 2025 and 2026, DHS and FEMA officials regularly used Signal for substantive communications about FEMA, including about the FEMA workforce, and Signal messages from highly relevant time periods have not been preserved. Plaintiffs need not prove exactly what was in the lost messages, which would be an impossibility, to show that they were prejudiced by the spoliation.

The evidence also shows that the spoliation was intentional. It was not due to negligence that Defendants' high-level officials systematically relied on disappearing Signal messages. Signal messages do not auto-delete by default. Defendants chose to set messages to auto-delete to avoid having to disclose or take account for their actions. Then, throughout the course of discovery, Defendants' officials and counsel tried to conceal this practice and avoid producing the remaining Signal messages. That obstructive litigation conduct also bears on intentionality.

Defendants say that they "are prepared to take responsibility for this loss of information," ECF 420 at 13, but they try to get away without any real consequences. The Court should ensure a proper remedy by entering an evidentiary exclusion order, which contrary to Defendants' argument, is available under Rule 37(e)(1). In addition, the Court should presume under Rule 37(e)(2)(A) that the lost information would have been unfavorable to Defendants. Finally, the Court should find that Plaintiffs are entitled to fees incurred because of the spoliation, although an award of attorney fees only would be an inadequate remedy given the serious issues raised by Defendants' conduct. The requested remedies are well within the Court's authority under Rule 37 and are appropriate considering the seriousness of the discovery violations.

## STANDARD OF REVIEW

Plaintiffs prevail under either a clear and convincing evidence standard or a preponderance standard, but the correct standard is the latter.  Defendants state that one district court identified the burden as clear and convincing evidence.  ECF 420 at 11 (citing *Logistics Guys Inc. v. Cuevas*, No. 2:23-CV-01592-DAD-CSK, 2025 WL 1017659, at \*7 (E.D. Cal. Apr. 4, 2025)).  But they misread that case, which described the standard for civil contempt of a court order.  *Logistics Guys*, 2025 WL 1017659, at \*3 (citing *Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union, Locs. 21 & 4*, 721 F.3d 1122, 1129 (9th Cir. 2013)); *id.* at \*7.  Plaintiffs' motion is not for civil contempt.

District courts in this circuit that have considered Rule 37(e) have concluded that the applicable standard is preponderance of the evidence.  *E.g.*, *Morehead v. City of Oxnard*, No. 2:21-cv-07689, 2023 WL 8143973, at \*4 (C.D. Cal. Oct. 4, 2023); *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017); *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052–53 (S.D. Cal. 2015).  That approach is consistent with the general rule that unless a statute, rule, or the Constitution requires a higher standard, the typical standard in civil litigation, including for discovery matters, is preponderance.  *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 777 (7th Cir. 2016); *see also E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 47 (2025).

## ARGUMENT

Defendants admit that Signal messages "were lost and should have been preserved" and that the messages cannot be restored or replaced through additional discovery.  ECF 420 at 1, 14–15.  There is no dispute, then, about the threshold conditions for Rule 37(e) to apply.  All that remains to be resolved is whether Plaintiffs were prejudiced, Fed. R. Civ. P. 37(e)(1), whether the spoliation was intentional, Fed. R. Civ. P. 37(e)(2), and what the appropriate remedies should be.

**I.    Defendants failed to preserve relevant information.**

Defendants' high-level officials systematically used disappearing Signal messages on their personal phones to communicate with each other about DHS and FEMA business.  Defendants do not dispute that.  Nor could they, given the large number of FEMA-related Signal groups on former DHS Deputy Chief of Staff Joseph Guy's personal phone, former FEMA Senior Official Performing the Duties of Administrator Karen Evans' Signal backup from her personal phone, and

former DHS Senior Advisor Kara Voorhies' subpoena response from her personal phone. ECF 412-1 at 3–5. Those Signal chats involved other officials and employees, including DHS Secretary Kristi Noem, Chief Advisor to the DHS Secretary Corey Lewandowski, and even agency counsel. *Id.* at 4; *see infra* at 11–12 & n.7. The Signal messages that have not been lost also show that Defendants' officials regularly used Signal for substantive communications about agency business, including about the FEMA workforce. ECF 412-1 at 3–5. Defendants do not dispute that either. The clearest example is the "FEMA 2.0" chat. *Id.* at 6–7. The three members of the FEMA 2.0 chat—Guy, Voorhies, and Evans—were all significantly involved in FEMA staffing decisions. *Id.* Evans created the chat on November 15, 2025, ECF 397-1 at 11, as DHS was working on a plan to reduce FEMA staffing. ECF 411 at 14–15. The name of the chat is the exact phrase used in the draft FEMA Review Council report to refer to a radically reduced FEMA with half the number of staff. ECF 412-1 at 7. During this same timeframe, Guy instructed Evans to include the 50% cut in the FEMA Annual Staffing Plan, and Evans did so. ECF 411 at 15–16. Communications regarding implementation of this plan continued through December and into 2026 (as evidenced by the March 5 screenshot discussing the staffing plan). *Id.* at 17–25.. Only two "screenshots" remain from the months of communications on this chat. Both images confirm that DHS and FEMA officials used the chat for work-related communications, including specifically related to FEMA personnel and "the overall staffing plan," and that there were earlier messages in the chat that have never been produced. ECF 412-1 at 6–7; ECF 350-1 at 7.

Guy, Evans, and Voorhies were also in dozens of other group and individual Signal chats also used for FEMA-related business. ECF 412-1 at 3–5. The Signal messages that Plaintiffs were able to obtain show that Defendants' officials used those Signal groups and threads to discuss COREs, workforce reduction, and agency reorganization (and that those subjects were not cabined to any particular chats). *E.g.*, ECF 350-1 at 9; ECF 412-2 at 5, 8, 10; 5/26 Evans Dep. 36:23-37:9, 40:13-41:4, 55:1-12; 5/15 Guy Dep. 107:24-111:15. Defendants are thus wrong that Plaintiffs "provide no specific argument that these other chats contained relevant information that was not preserved." ECF 420 at 14.

Defendants do not engage with all this evidence. Instead, they dismissively state that it is

PLS.' REPLY IN SUPPORT OF MOTION FOR RULE 37(E) REMEDIES, No. 3:25-cv-03698-SI

3

"far from clear" what Signal messages were lost because "nobody can determine the scope or relevance of the loss." ECF 420 at 14. It is true that nobody can determine the exact content of the messages that Defendants deleted. But that is exactly why Plaintiffs need not show exactly what would have been in the lost information. Instead, in circumstances like this, all that is necessary if for Plaintiffs to make "a very slight showing that the documents are relevant," *Ritchie v. United States*, 451 F.3d 1019, 1025 (9th Cir. 2006), or "plausible, concrete suggestions as to what the destroyed evidence might have been," *Khan v. S.F. Dep't of Public Health*, No. 24-CV-09289-LJC, 2026 WL 1433089, at *7 (N.D. Cal. May 21, 2026). Plaintiffs have more than met that standard.

There is no merit to Defendants' attempts to minimize the extent of the loss. Defendants ignore that their officials set their chats to auto-delete, and messages were thus in fact deleted, for months. They suggest that the loss of Signal messages was limited because Evans took three pictures containing a few Signal messages and sent them to her work email on March 11, 2026, and she later backed up her Signal chats on April 25, 2026. ECF 420 at 14.

First, it is an understatement for Defendants to say that "presumably, there were some messages lost between [FEMA 2.0's] creation and Evans' backup on March 11." *Id.* There was no doubt a loss of earlier communications on the FEMA 2.0 chat (and other chats) from time periods that are centrally relevant to this litigation. During the time period from the creation of the FEMA 2.0 chat in November 2025 through March 2026, Defendants made decisions about a downsized FEMA, including the following: in December 2025, creating the Annual Staffing Plan, eliminating FEMA's remaining authority to extend COREs, and creating the plan to separate COREs; in January 2026, implementing the CORE separations and continuing to implement the staffing plan; in mid to late January 2026, temporarily pausing the offboarding of COREs and pivoting to short-term renewals; and thereafter, continuing implementation of the staffing plan. ECF 411 at 12–26. The preservation efforts Evans took on March 11 were far too late.

Second, Evans' actions on March 11 were insufficient to stem the loss. On that date, she self-selected only a subset of Signal messages for preservation. ECF 420 at 16. There is no basis to believe that Evans' self-interested, unsupervised selection of Signal messages adequately ensured the preservation of all relevant communications that remained on her phone by that date.

Indeed, Defendants produced only three images capturing a few Signal communications from that self-selection process.  ECF 412-1 at 14.

This Court has further good reason to conclude that self-selection by Evans was woefully underinclusive based on its experience with Evans' self-redaction of her personal notes.  ECF 341 at 15–18; ECF 350 at 16–17; ECF 351 at 6; ECF 356-4 at 1.  Defendants initially produced partial and heavily redacted versions of Evans' meeting notes, which she had redacted herself based on her understanding of relevance.  *Id.*  The unredacted notes ultimately produced because of this Court's orders revealed that Evans had either failed to produce or redacted highly relevant information, including notes of meetings with DHS officials about staffing numbers and CORE extensions (including a December 3 meeting with Guy regarding the staffing plan, December 19 meetings with Voorhies, Guy, and the DHS Secretary, and a December 31 meeting with Guy about the decision to separate COREs).  ECF 411 at 16 & n.14, 18 & n.17, 20, 22–23.

Defendants have identified no other efforts, by Evans or anyone else involved in any of the dozens of these Signal chats, to preserve communications that were plainly related to DHS and FEMA business and, indeed, required to be preserved under both federal law and agency policy.

## II.    The spoliation was intentional.

The entire course of Defendants' conduct supports the conclusion that they intentionally concealed discoverable information from Plaintiffs.  Defendants affirmatively decided to ignore their own record-retention policies and use disappearing Signal messages on personal phones to avoid disclosure.  Conduct by Defendants' officials and counsel in this litigation, including making misrepresentations and misleading statements and taking further actions that resulted in data loss, supports a finding that they intended to conceal discoverable information from Plaintiffs.

### A.    Defendants gloss over their affirmative actions to delete Signal messages.

Defendants argue that, at most, they are guilty of gross negligence.  They attempt to characterize what happened as "a passive failure to halt an automatic deletion process."  ECF 420 at 15 (quoting *Est. of Bosco v. Cnty. of Sonoma*, 640 F. Supp. 3d 915, 929 (N.D. Cal. 2022)).  In Defendants' telling, spoliation was an unfortunate occurrence that befell them, not the result of their own deliberate choices.

But the issue is not merely that Defendants failed to intervene quickly enough to save communications from a routine agency record-deletion policy. Rather, the crux of the issue is that Defendants themselves (including named Defendant Evans) caused the spoliation by intentionally using disappearing Signal messages on personal phones to avoid creating discoverable communications on government devices. First, Defendants' officials chose to use personal phones, notwithstanding agency policy requiring the use of work devices and their awareness that there was no archiving software for such communications. Next, they affirmatively decided to set Signal deletion periods ranging from four weeks to one day on many FEMA-related group and individual chats. ECF 412-1 at 6 n.4. For example, when Evans created the FEMA 2.0 Signal chat, she made the affirmative decision to set the auto-delete timer to four weeks. *Id.* at 10.[1] Defendants can claim that their involvement in the spoliation is "passive" only by glossing over the actions the took to conceal their communications.

Defendants' systematic disregard of their preservation obligations and their choice of short auto-delete periods for agency communications on their personal phones are a far cry from the cases that Defendants cite. ECF 420 at 15–16. Defendants cite *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 102 (2d Cir. 2002), in which the defendant company had made backup tapes of its emails and had retained an electronic discovery vendor to retrieve records from the backup; none of the emails were destroyed, and the question was only whether the failure to produce those emails quickly enough supported a discovery sanction, *id.* at 106. That is nothing like Defendants' practice of hiding agency communications on personal phones with short auto-delete periods to all but ensure the automatic destruction of those communications before discovery. That situation, of Defendants' own making, is nothing like a video surveillance system set to overwrite videos after a year, *Est. of Bosco*, 640 F. Supp. 3d at 920, or a routine "2-year ESI

---

[1] Signal allows any chat participant to change the auto-delete settings, which apply only prospectively. 5/26 Evans Dep. 18:1–7, 72:12–19; Signal, "Set and manage disappearing messages," https://perma.cc/H8Z4-AUFR. Thus, at any time over the months that they communicated through disappearing Signal messages, any of Defendants' officials could have disengaged auto-delete if they had intended that messages be preserved. Indeed, Evans and Guy each changed auto-delete settings on chats during this litigation. ECF 412-1 at 10–12. Nor are these settings hidden: every chat with auto-delete indicates the deletion period with a clock icon at the top, next to the chat name. *See, e.g.*, ECF 350-1 at 7.

retention policy" for audio recordings of a sheriff's department dispatch calls, *Porter v. City & Cnty. of S.F.*, No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at \*4 (N.D. Cal. Sept. 5, 2018).

Unlike in those cases, Defendants took affirmative actions in deliberate violation of their own written policies, which DHS had made clear to employees through a series of agency-wide communications. A DHS directive dating back to 2018 requires that federal records "created through chat, text, and instant messaging platforms" must be preserved. ECF 420-1 at 3.[2] These policies existed when Evans held the position of DHS Chief Information Officer and thus was the Senior Agency Official for Records Management—the very person responsible under federal law for creating and enforcing these DHS policies. 5/26 Evans Dep. 63:15–64:5. Further, a February 2025 DHS-wide email instructed employees to "[o]nly use DHS devices for official business." ECF 420-1 at 32.[3] An attachment to that email specifically stated that electronic messages that must be preserved include Signal and that "[y]ou are expected to exclusively use government equipment in the performance of your duties." *Id.* at 42. An April 2025 DHS-wide email about preservation of Signal messages stated that "[a]ll work-related communications and records are considered official government records and must be preserved, regardless of format." *Id.* at 56. That email specifically instructed employees to *"[e]nsure that any auto-delete features are disabled."* *Id.* (emphasis added). On March 10, 2026, during this litigation, a DHS-wide email specifically identified Signal messages as being within the scope of preservation requirements. *Id.* at 59.[4]

Defendants describe those preservation policies in depth in their opposition and supporting declaration, as if to suggest that the existence of those policies on paper absolves Defendants of any further responsibility. Precisely the opposite: those policies support the conclusion that Defendants' actions were intentional. This is not a situation where a small, isolated number of employees in a

---

[2] That the Federal Records Act has no private right of action, ECF 420 at 15 n.1, is beside the point because Plaintiffs are not bringing a cause of action under the Act.

[3] Evans and Guy were both DHS employees at the time of this email. 5/4 Guy Dep. 177:7–10; 3/31 Evans Dep. 34:18–21.

[4] Defendants also describe an archiving software for phone messages called TeleMessage that had to be disabled in April 2025 for cybersecurity reasons. ECF 420 at 6. But the discontinuation of the TeleMessage application does not explain the spoliation here because TeleMessage applied only to government-issued devices, *id.*, and the lost Signal messages here were on personal devices.

large government agency negligently failed to comply with agency policies by forgetting to turn off deletion settings.  Rather, Defendants' top officials systematically flouted those policies and those clear instructions not to use personal phones and to not use auto-delete.

Defendants try to portray Evans as attempting to comply in good faith with preservation requirements.  ECF 420 at 16.  They contend that after the DHS-wide preservation reminder on March 10, 2026, Evans "attempted to immediately comply."  *Id.*  But that characterization is implausible.  Evans knew about federal records laws and DHS policies: she held senior information-management roles at multiple agencies, including DHS.  ECF 412-1 at 12; *see also* 3/31 Evans Dep. 155:12–15 (admitting familiarity with records management requirements); 163:10–164:6 (describing training on DHS records policies); 5/26 Evans Dep. 24:3–8.  Yet she intentionally acted as if federal law and DHS policies did not apply to her.

Perhaps more fundamentally, in making this argument, Defendants entirely ignore Evans' failure to take any steps to preserve documents prior to March 11, 2026.  Defendants certainly cannot claim that any technical barrier prevented Evans from taking action to preserve Signal messages before March 11.  Her personal counsel has represented to this Court that "Ms. Evans knows far more about Signal than any of these plaintiffs' attorneys, far more than this Court or, frankly, than DOJ's tech people."  5/13/2026 Hearing Tr. 23:3–5.

In any case, Evans' March 11, 2026 attempt to self-select Signal messages for preservation does not show a good faith effort to comply with Defendants' discovery obligations.  Whatever the DHS record-preservation policy might have said, it was improper for a Defendant to self-select information to turn over in discovery—with no oversight or direction from legal counsel—and to then auto-delete all other information that she, in her sole judgment, did not select for preservation. *See* ECF 362 at 1 (agreeing with concerns about custodian self-search); *Benanav v. Healthy Paws Pet Ins. LLC*, No. C20-00421-LK, 2022 WL 3587982, at *4 (W.D. Wash. Aug. 22, 2022) (describing "risks of such self-search processes" in discovery).  Indeed, Defendants only ever produced three images of Signal messages from Evans' supposed practice of self-selecting Signal

messages from her personal phone and sending them to her work email. ECF 412-1 at 14.[5]

The DHS and FEMA communications at issue were lost as the result of Defendants' affirmative, intentional actions, not a passive failure. Defendants' attempt to rehabilitate Evans falls short of disproving her intentional actions. And Defendants notably do not represent, because they cannot, that any other DHS or FEMA official involved in any of the chats with auto-delete setting took any actions to preserve these records at all.

**B.    During this litigation, Defendants' officials misrepresented their Signal use and preservation efforts and took further actions that led to loss of information.**

Evans' behavior during this litigation further supports a finding that the spoliation of her Signal messages was intentional. First, she misrepresented her Signal use in sworn testimony at her first deposition. When asked to identify "all of" her Signal group chats involving FEMA business, she identified just three—but further discovery showed that she was involved in dozens more. ECF 412-1 at 4. Second, she continued to manipulate auto-delete settings even after this Court ordered expedited discovery. Defendants' opposition confirms that on March 11, 2026, Evans shortened the auto-delete setting on the "FEMA 2.0" chat from four weeks to one week. ECF 420 at 4–5. To try to downplay Evans' shortening of the auto-delete setting during this litigation, Defendants rely on her deposition testimony that she did not use the FEMA 2.0 chat again after that date. *Id.* at 5. But putting aside that her deposition testimony has already been shown to be unreliable because she misrepresented the extent of her Signal use, Defendants attempt no explanation for why Evans would shorten the auto-delete settings on the FEMA 2.0 Signal chat during litigation if she were no longer using the FEMA 2.0 chat after that point. ECF 412-1 at 10. She also admitted to shortening

---

[5] Defendants had never before provided evidence that those three images actually came from Evans' work email. ECF 412-1 at 9. Defendants condescendingly say that because of the expedited nature of discovery, "Plaintiffs may be forgiven for overlooking" Defendants' production email. ECF 420 at 17. But the production email they cite, ECF 420-2 at 31, does not actually say that Evans' Signal messages were collected from her work email. Plaintiffs previously pointed out that discrepancy. ECF 350-1 at 1 ("Defendants' counsel did not state whether they obtained the three 'screenshots' directly from the phone, from Evans, or from Evans' work email account, nor did they produce any accompanying emails that would reveal information about the timing of these communications or Evans' purported preservation practices"). Defendants now, for the first time, have produced a single example of an email in which Evans sent an image of a personal phone Signal message to her work email. ECF 420-2 at 5–6. Even so, there is no evidence that Evans ever preserved any Signal messages using this method until March 11, 2026. *See* ECF 420 at 4.

the auto-delete timer on other FEMA-related Signal chats on her personal phone, again after this Court started issuing discovery orders. *Id.* Defendants do not attempt any explanation for that conduct, either. All this conduct during the litigation supports a finding that Evans acted with the intention of hiding information from Plaintiffs.

Guy's behavior during this litigation supports a similar finding. He too misrepresented his Signal use in his deposition testimony, only to have his testimony undermined shortly thereafter. *Id.* at 3. He also provided false testimony about preservation. His declaration, which Defendants filed with the Court, stated that it was his understanding that Evans was preserving his work-related Signal messages. ECF 359-1 at 1. That statement could not have been truthful because, as he admitted at his deposition, Evans was not even part of all his work-related Signal messages, ECF 412-1 at 10, and he never actually talked to her about preservation, 5/4 Guy Dep. 121:12–16, 122:3–6. Guy then pivoted to claiming that he thought DHS staff were responsible for preserving his Signal messages, but he was forced to admit that there was no basis for that understanding either because DHS staff did not have access to the Signal messages on his personal phone. ECF 412-1 at 10. That shifting narrative cannot be characterized as him being merely "careless in believing that others would preserve the FEMA 2.0 chat." ECF 420 at 17. In addition, Guy's testimony that he accidentally deleted data from his personal phone's Signal application while ostensibly trying to reinstall the application "to show you that I did not discuss COREs on my personal device," 5/4 Guy Dep. 116:7–9, was implausible; he admitted he was not even trying to follow the straightforward Signal reinstallation instructions, ECF 412-1 at 11. Defendants claim that Guy's reinstallation of his Signal application caused no loss of data because no data had been preserved even before the reinstallation. ECF 420 at 18. But at a minimum, his most recent Signal messages that had not yet been auto-deleted would have still been on his phone, and in any case, Defendants are not helped by the fact that data was lost earlier because of Guy and his fellow agency officials' prior decisions to set the messages to auto-delete. Finally, Defendants attempt no explanation for Guy, while employed by Defendants on April 28, 2026, shortening the auto-delete settings on his

Signal chat with Voorhies to one day.  ECF 412-1 at 11–12.[6]

These are not the behaviors of people who are earnestly trying to comply with their record preservation obligations or discovery obligations.  Rather, these behaviors are consistent with intentional concealment of information.

### C.    The Department of Justice's attempt to distance itself from the spoliation fails to acknowledge its role in concealing its client agencies' conduct.

Defendants' recounting of the procedural history downplays the role of counsel in concealing the use of disappearing Signal messages by their client agencies' top officials.  Counsel cannot now disclaim the misrepresentations they made to the Court and to Plaintiffs.  Anyway, even though DOJ tries to avoid fault, that does not insulate Defendants from Rule 37(e) remedies.

Defendants should have disclosed the existence of responsive Signal messages at the outset of discovery because they plainly contain communications about the CORE and FEMA staffing.  ECF 321, 328.  They try to explain away their failure by arguing that the Court's initial discovery order "did not mention collection of data from phones, work or otherwise."  ECF 420 at 3.  But this Court's discovery order described only the categories of documents that Defendants had to produce, ECF 321 at 2; determining the the locations and systems containing those documents was Defendants' obligation, not the Court's.  After all, neither the Court nor Plaintiffs could have known where Defendants were keeping responsive documents.  As is standard in discovery, it was incumbent on Defendants' counsel to conduct a diligent inquiry to identify where responsive documents were being kept by their clients.  *See Qualcomm Inc. v. Broadcom Corp.*, No. 05CV1958-B (BLM), 2008 WL 66932, at *9 (S.D. Cal. Jan. 7, 2008), *vacated in part on other grounds*, No. 05CV1958-RMB (BLM), 2008 WL 638108 (S.D. Cal. Mar. 5, 2008).  Even a bare minimum investigation by Defendants' counsel would have revealed Signal messages that fell within the scope of the Court's discovery order.

Defendants' failure to disclose these communications is even more egregious because of

---

[6] Others at DHS likely took similar actions.  Notably, former DHS Principal Deputy Chief of Staff Troup Hemenway (one of the individuals identified by Defendants as involved in CORE decisions, *see* ECF 327-1 at 1), took action on his Signal account indicating deletion and reinstallation on exactly the same day that Guy did.  ECF 412-1 at 11.  Defendants do not try to explain this.

agency counsel's participation in Defendants' Signal chats regarding DHS and FEMA business, including by communicating with their clients' personal phones.  ECF 412-1 at 3 & n.2.[7]  There can be no question that agency counsel were aware of both agency officials' use of personal phones and the failure to preserve Signal messages on those personal phones.

The Department of Justice nonetheless adopts a head-in-the-sand approach and asserts that Evans' March 31 deposition was the first time it learned that one of the custodians was conducting official business on personal phones.  ECF 420 at 5.  Notably, that representation is made only in an uncited statement in Defendants' brief, *id.*, and is absent from the attached sworn declaration by a DOJ attorney, ECF 420-2.  In any case, if true, that would be a straightforward admission that DOJ abdicated its discovery responsibilities to the point of willful blindness.  This case does not involve one or two stray communications accidentally made on personal phones; it involved months of communications on dozens of chats, involving the top leadership of DHS and FEMA, with many thousands of individual messages.  It is well established that "[c]ounsel in a litigation has legal duties to take pro-active steps in supervising and searching for documents in discovery that go far beyond simply acceding to a client who fails to (or worse, refuses to) produce or provide documents."  *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-MD-03047-YGR (PHK), 2024 WL 4125618, at *31 (N.D. Cal. Sept. 6, 2024); *see also Qualcomm*, 2008 WL 66932, at *9 ("For the current 'good faith' discovery system to function in the electronic age, attorneys and clients must work together to ensure that both understand how and where electronic documents, records and emails are maintained….  Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search.").  Either DOJ attorneys were willfully blind to their clients' extensive use of disappearing Signal messages in disregard of their obligation to investigate, or they knowingly participated in the concealment.  Either supports a finding that Defendants intentionally deprived Plaintiffs of discovery.

---

[7] *See also, e.g.*, ECF 414-2 at 242 (attorney Mazzara on "FEMA >< HQ chat" produced from Karen Evans' personal phone, redacted in full based on an assertion of attorney-client privilege); ECF 414-2 at 243 (DHS General Counsel Percival on Signal chat produced from Evans' personal phone); Hoshijima Decl. ¶ 2 (explaining that the following Signal chats from Evans' personal phone were identified in Defendants' privilege log as containing attorney-client communications: "CA EO," "Disaster Response Updates," "FEMA HQ," "Winter Storm Team"); Hoshijima Decl. Ex. B.

Defendants' read of the Court's follow-up discovery order is even more indefensible. The Court ordered Defendants "to search the custodial records" of certain offices and persons. ECF 328 at 2. Defendants argue that the order did not specifically direct searches of phones. ECF 420 at 3. Defendants suggest that they did not understand the term "custodial records" to include messages on custodians' phones, which is both contrary to the plain meaning of the term and Defendants' own policies that identify electronic messages like Signal messages as records. As the DHS Acting Deputy Chief Information Officer explains in his declaration, the "foundational" DHS directive on record preservation "defines records, broadly, including all recorded information made or received by DHS in connection with public business and preserved as evidence of the Department's activities," and that includes information "regardless of whether they are on government issued phones or personal devices." ECF 420-1 at 3. "Custodial records" must have included Signal messages under Defendants' own understanding of the term "record." Yet Defendants refused to even investigate whether their custodians had responsive Signal messages. Instead, they tried to flip the burden on Plaintiffs, arguing in a filing that Plaintiffs had not (yet) "provided evidence that any custodian engaged in messaging on Signal." ECF 333 at 5 & n.3.

Further, after Plaintiffs obtained deposition testimony from Evans confirming government officials' use of Signal messages on personal phones, Defendants' counsel made several statements, including to the Court, that have turned out to be misrepresentations or highly misleading. On April 1, 2026, the day after the first Evans deposition, the Department of Justice represented to Plaintiffs in an email that "Defendants are in full compliance with all applicable evidentiary preservation obligations." ECF 420-2 at 8. As Defendants now acknowledge in their opposition to this motion, that was simply false. Defendants also (falsely) said that Evans had "followed all Federal Records Act requirements by taking screenshots of any work-related Signal messages on her personal phone and emailing those screenshots to her work email address." *Id.* Defendants did not disclose at the time that the first time Evans did so was March 11, 2026, so there was no basis whatsoever for saying that Evans had followed Federal Records Act requirements before that date. ECF 420 at 14, 16. Defendants repeated that misleading statement to the Court a couple weeks later, stating that "[a]ny relevant communications… already exist in email form" because Evans

had taken pictures on her personal phone of federal records and sent them to her DHS email for preservation.  ECF 344 at 14.  That filing by Defendants also included a statement that has now shown to be false: "the custodians whose personal phones remain of interest to Plaintiffs did not communicate on their personal phones regarding COREs renewals or target staffing reductions." *Id.* at 15; *see supra* at 3 (examples of Signal messages discussing COREs and staffing reductions). Those misrepresentations and misleading statements by Defendants' counsel implicate counsel in the effort to conceal Defendants' use of disappearing Signal messages on personal phones.

As Plaintiffs' motion explained, Defendants' counsel also withheld from the Court information about Evans' April 25 Signal backup, including by filing a preservation declaration by Evans that failed to identify that backup.  ECF 412-1 at 9.  Plaintiffs' motion described Evans' deposition testimony—given in the presence of both DOJ attorneys and her personal counsel—that she had told DOJ attorneys about that backup before her April 29 declaration.  ECF 412-1 at 9; 5/26 Evans Dep. 58:2–59:22.  In response, Evans changed her testimony through an errata the same day that Defendants' counsel filed their opposition.  Hoshijima Decl. ¶ 3.  Relying on that altered testimony, Defendants now represent that DOJ did not learn of Evans' April 25 Signal backup until May 5, 2026.  ECF 420 at 10.[8]  But the DOJ lawyers attended Evans' deposition and heard her testimony that the DOJ knew about her Signal backup on April 25, yet made no attempt to correct that statement at that time or in the weeks since.  Hoshijima Decl. ¶ 4.

Putting aside those irregularities, it ultimately does not matter when DOJ first learned of Defendants' extensive use of disappearing Signal messages or of Evans' Signal backup.  Even though DOJ tries to wash their hands of these discovery issues, Rule 37(e)(2) remedies remain available based on their client agencies' intentional concealment.

III.    **The remedies sought are appropriate.**

To remedy these prejudicial and intentional actions, the Court should exclude hindsight

---

[8] This representation also is not fully supported in their filing.  Defendants cite a statement about Evans' Signal backup by DOJ attorney Christopher Hall at a status conference; but that statement, which described "my understanding as of a few minutes ago" as to the location of Evans' custodial records, was ambiguous as to when he first learned of the existence of Evans' Signal backup and entirely silent about when DOJ first learned of the backup.  5/5/2026 Hearing Transcript 5:18-6:1. The DOJ declaration supporting Defendants' opposition is notably silent on this issue.  ECF 420-2.

testimony from Defendants' witnesses that serves Defendants' narrative, and it should adopt a presumption that lost information would have been unfavorable to Defendants. Defendants suggest the Court should only award fees. ECF 420 at 22. Although the Court should also find Plaintiffs are entitled to attorney fees incurred because of this spoliation, a fee award alone would not be an adequate remedy. A monetary remedy out of the public fisc would not impose meaningful consequences for Defendants' systematic concealment of discoverable information.

Defendants object that exclusion is improper under Rule 37(e)(1) because it is equivalent to a Rule 37(e)(2)(A) remedy. But Defendants misunderstand the exclusion that Plaintiffs seek. Plaintiffs do not seek for the exclusion remedy to "preclude[e] [Defendants] from offering *any* evidence in support of, the central or only claim or defense in the case." Fed. R. Civ. P. 37 advisory committee's note (emphasis added). Rather, the remedy would be to exclude only testimony by Defendants' witnesses that seeks in hindsight to controvert what the lost communications likely would have shown. That would not preclude Defendants from relying on any documentary evidence from the relevant time periods to support their defenses. Because Defendants remain free to make their case using any other form of evidence, the exclusion remedy would be meaningfully different from an adverse inference. Both the Rule 37 commentary and case law support the remedy of excluding evidence under Rule 37(e)(1). ECF 412 at 21–22. As Defendants admit, *Kuen Hwa Traffic Indus. Co. v. DNA Motor, Inc.*, 2019 WL 4266811, at *2 (C.D. Cal. July 10, 2019), granted the same remedy that Plaintiffs seek under Rule 37(e)(1): excluding testimony "about only the subject that was the contents of those messages," ECF 420 at 21. Plaintiffs likewise seek to exclude hindsight witness testimony regarding the contents of the messages that Defendants actively deleted. Defendants should not be allowed to rely on self-serving testimony that is insulated against impeachment by Defendants' spoliation to support any factual narrative that is not supported by the remaining documentary evidence.

The systematic violation of federal records requirements and agency policy by Defendants' top officials, and Defendants' attempts in this litigation to hide the existence and deletion of relevant evidence from this Court, are serious matters. The significance of the evidentiary spoliation here warrants a meaningful remedy.

PLS.' REPLY IN SUPPORT OF MOTION FOR RULE 37(E) REMEDIES, No. 3:25-cv-03698-SI

15

DATED: June 17, 2026

Respectfully submitted,

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Robin S. Tholin
Elizabeth Eshleman
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com

By: */s/ Danielle Leonard*

*Attorneys for All Union and Non-Profit Organization Plaintiffs*

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

By: */s/ Tsuki Hoshijima*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

Jules Torti (pro hac vice)
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163

Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)
Matthew Blumin  (pro hac vice)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

PLS.' REPLY IN SUPPORT OF MOTION FOR RULE 37(E) REMEDIES, No. 3:25-cv-03698-SI

By: */s/ Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL
UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorneys for Plaintiff Service Employees International Union, AFL-CIO (SEIU)*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By:  */s/ David Chiu*

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)

PLS.' REPLY IN SUPPORT OF MOTION FOR RULE 37(E) REMEDIES, No. 3:25-cv-03698-SI
18

Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By: */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

Christopher Sanders (pro hac vice)
General Counsel
Erin King-Clancy (SBN 249197)
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
chrsanders@kingcounty.gov
eclancy@kingcounty.gov

By: */s/ Erin King-Clancy*

*Attorneys for Plaintiff Martin Luther King, Jr. County*

Sharanya Mohan (SBN 350675)
Eliana Greenberg (SBN 366319)
Toby Merrill (pro hac vice)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
eliana@publicrightsproject.org
toby@publicrightsproject.org

By: */s/ Eliana Greenberg*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL,*
*Harris County, TX, and Martin Luther King, Jr.*
*County, WA*

Jonathan G.C. Fombonne

Harris County Attorney

Sarah Utley (pro hac vice app. forthcoming)
Managing Counsel
Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel: (713) 274-5102
Fax: (713) 437-4211


sarah.utley@harriscountytx.gov
bethany.dwyer@harriscoupntytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

By: */s/ Jonathan G.C. Fombonne*

*Attorneys for Plaintiff Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago

Rebecca A. Hirsch (IL ARDC 6279592) (pro hac vice)
City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Rebecca.Hirsch2@cityofchicago.org

By: */s/ Rebecca Hirsch*

*Attorneys for Plaintiff City of Chicago*

Ebony M. Thompson
Baltimore City Solicitor

Christopher Sousa (SBN 264874)
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (410) 396-3947

PLS.' REPLY IN SUPPORT OF MOTION FOR RULE 37(E) REMEDIES, No. 3:25-cv-03698-SI

20

sara.gross@baltimorecity.gov

By: */s/ Christopher Sousa*

*Attorneys for Plaintiff City of Baltimore*