Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br>     Plaintiffs, <br><br>   v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br>     Defendants. | Case No. 3:25-cv-03698-SI <br><br> **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTIVE RELIEF AND TO SET A PROMPT SCHEDULE ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

DISCUSSION................................................................................................................................3

I.     Defendants' Revisionist Narrative is Divorced from the Record and Does
       Not Undermine the Conclusive Showing that DHS and FEMA's Actions
       are Unlawful. .................................................................................................................3

II.    Defendants' Subject Matter Jurisdiction Arguments Are Contrary to
       Applicable Precedent and the Evidentiary Record.........................................................9

       A.     Defendants Have Not Demonstrated that Plaintiffs' Claims Are Moot..........9

              1.     Neither Plaintiffs' claims nor preliminary injunction motion
                     are moot..................................................................................................10

              2.     Defendants' voluntary actions do not meet their mootness
                     burden.....................................................................................................11

       B.     Plaintiffs Have Standing to Bring these Claims ............................................15

       C.     Plaintiffs' Claims Challenging DHS and FEMA's Actions
              Restructuring and Downsizing FEMA Were Not Impliedly Precluded
              by Congress ...................................................................................................18

III.   This Court Can Reasonably Conclude that Defendants' Actions
       Restructuring and Downsizing FEMA Without Congressional
       Authorization Are Likely to Resume, and if They Do, Will Continue to
       Cause Irreparable Harm.................................................................................................21

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*350 Mont. v. Haaland*,
  50 F.4th 1254 (9th Cir. 2022) ............................................................................................... 10

*A.O. v. Cuccinelli*,
  457 F.Supp.3d 777 (N.D. Cal. 2020) ........................................................................... 14, 22, 24

*AFGE v. OMB*,
  2025 WL 3654116 (N.D. Cal. Dec. 17, 2025) ........................................................................ 18

*AFGE v. OMB*,
  813 F.Supp.3d 944 (N.D. Cal. 2025) ...................................................................................... 17

*AFGE v. OPM*,
  799 F.Supp.3d 967 (N.D. Cal. 2025) ...................................................................................... 18

*AFGE v. OPM*,
  771 F.Supp.3d 1127 (N.D. Cal. 2025) .................................................................................... 18

*AFGE v. Trump*,
  139 F.4th 1020 (9th Cir. 2025) ........................................................................... 18, 19, 20, 24

*AFSCME v. OMB*,
  2025 WL 3018250 (N.D. Cal. Oct. 28, 2025) .................................................................... 18, 24

*Arizona Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ................................................................................................ 24

*Bayer v. Neiman Marcus Grp., Inc.*,
  861 F.3d 853 (9th Cir. 2017) .................................................................................................. 10

*Bell v. City of Boise*,
  709 F.3d 890 (9th Cir. 2013) .................................................................................................. 13

*Brach v. Newsom*,
  38 F.4th 6 (9th Cir. 2022) ....................................................................................................... 13

*Chiang v. Gonzales*,
  2006 WL 8449284 (C.D. Cal. May 9, 2006) .......................................................................... 21

*Cmty. Legal Servs. v. HHS*,
  137 F.4th 932 (9th Cir. 2025) ................................................................................................. 19

*Davis v. FEC*,
  554 U.S. 724 (2008) ................................................................................................................ 16

*DeFunis v. Odegaard*,
  416 U.S. 312 (1974) ...................................................................................................15

*Doe v. Trump*,
  784 F.Supp.3d 1297 (N.D. Cal. 2025).................................................................22, 25

*Du v. United States Dep't of Homeland Sec.*,
  2025 WL 1549098 (D. Conn. May 31, 2025) ...........................................................2

*Enyart v. Nat'l Conference of Bar Examiners, Inc.*,
  630 F.3d 1153 (9th Cir. 2011)..................................................................................24

*F.B.I. v. Fikre*,
  601 U.S. 234 (2024) ............................................................................................ 1, 11

*F.T.C. v. Affordable Media*,
  179 F.3d 1228 (9th Cir. 1999)..................................................................................12

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) .................................................................................................17

*Fed. Educ. Ass'n v. Trump*,
  795 F.Supp.3d 74 (D.D.C. 2025)..............................................................................13

*Fikre v. Fed. Bureau of Investigation*,
  904 F.3d 1033 (9th Cir. 2018)..................................................................................13

*Gilead Scis., Inc. v. Meritain Health, Inc.*,
  2025 WL 1745669 (D. Md. June 24, 2025) .............................................................23

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*,
  512 F.3d 1112 (9th Cir. 2008)..................................................................................24

*Harris v. Bd. of Supervisors*,
  366 F.3d 754 (9th Cir. 2004)....................................................................................17

*Health Freedom Def. Fund, Inc. v. Carvalho*,
  148 F.4th 1020 (9th Cir. 2025).................................................................................10

*Immigrant Defs. L. Ctr. v. Noem*,
  145 F.4th 972 (9th Cir. 2025)...................................................................................17

*In Def. of Animals v. U.S. Dep't of Interior*,
  648 F.3d 1012 (9th Cir. 2011)..................................................................................15

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
  567 U.S. 298 (2012) ...........................................................................................11, 13

*Lofton v. Verizon Wireless (VAW) LLC*,
  586 F. App'x 420 (9th Cir. 2014).......................................................................11, 21

*Los Angeles County v. Davis*,
440 U.S. 625 (1979) ................................................................................................ 1, 12, 14

*Maryland v. Mullin*,
2026 WL 1045503 (D. Md. Apr. 17, 2026).............................................................................23

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012) ...............................................................................................................21

*McCormack v. Herzog*,
788 F.3d 1017 (9th Cir. 2015) ...............................................................................................13

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) ...............................................................................................................21

*Mi Familia Vota v. Fontes*,
129 F.4th 691 (9th Cir. 2025)................................................................................................16

*Nat'l Council of La Raza v. Cegavske*,
800 F.3d 1032 (9th Cir. 2015)...............................................................................................16

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
775 F.Supp.3d 100 (D.D.C. 2025).........................................................................................23

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
145 S.Ct. 2558 (2025) ............................................................................................................21

*Nat'l TPS All. v. Noem*,
166 F.4th 739 (9th Cir. 2026)................................................................................................19

*NJOY, LLC v. iMiracle (HK) Ltd.*,
760 F.Supp.3d 1070 (S.D. Cal. 2024) ...................................................................................24

*Ortega Gonzalez v. Noem*,
2025 WL 1355272 (D. Or. May 9, 2025)................................................................... 13, 22, 24

*Owens v. Schuette*,
2024 WL 4469086 (E.D. Mich. Oct. 10, 2024).....................................................................15

*Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*,
122 F.4th 825 (9th Cir. 2024).......................................................................... 10, 11, 12, 13

*Roe v. Noem*,
2025 WL 1382930 (D. Mont. May 13, 2025) ........................................................................14

*Rosebrock v. Mathis*,
745 F.3d 963 (9th Cir. 2014)..................................................................................................14

*Russell v. U.S. Dep't of the Army*,
191 F.3d 1016 (9th Cir. 1999)................................................................................................21

*Sackett v. EPA,*
        566 U.S. 120 (2012) .................................................................................................... 21

*Sampson v. Murray,*
        415 U.S. 61 (1974) ...................................................................................................... 24

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union,*
        65 F.4th 1012 (9th Cir. 2023) ..................................................................................... 17

*Skaff v. Meridien N. Am. Beverly Hills, LLC,*
        506 F.3d 832 (9th Cir. 2007) (per curiam) ................................................................ 16

*Summers v. Earth Island Inst.,*
        555 U.S. 488 (2009) .................................................................................................... 16

*Suter v. Goedert,*
        504 F.3d 982 (9th Cir. 2007) ...................................................................................... 10

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
        578 U.S. 590 (2016) .................................................................................................... 21

*United States v. Brandau,*
        578 F.3d 1064 (9th Cir. 2009) ..................................................................................... 11

*United States v. Fausto,*
        484 U.S. 439 (1988) .............................................................................................. 19, 20

*United States v. Oregon,*
        2026 WL 318402 (D. Or. Feb. 5, 2026) ..................................................................... 13

*Veit v. Heckler,*
        746 F.2d 508 (9th Cir. 1984) ...................................................................................... 21

*Zhou v. Lyons,*
        813 F.Supp.3d 1052 (C.D. Cal. 2025) ........................................................................ 13

**Federal Statutes**

28 U.S.C.
        § 1331 .......................................................................................................................... 18

42 U.S.C.
        § 5149 .......................................................................................................................... 20

**INTRODUCTION**

Defendants Department of Homeland Security ("DHS") and Federal Emergency Management Agency ("FEMA") make no effort to defend the legality of their actions with respect to FEMA staffing in 2025 and 2026.  Instead, in opposition to Plaintiffs' request for injunctive relief, they primarily assert threshold jurisdictional arguments, none of which has merit.

As their main argument, Defendants contend their voluntary actions, taken after the filing of Plaintiffs' litigation (and, indeed, *because* of this litigation), moot Plaintiffs' claims and request for injunctive relief.  However, Defendants' recent actions do not meet their "formidable," *F.B.I. v. Fikre*, 601 U.S. 234, 241 (2024), burden of proving that "'there is no reasonable expectation…' that the alleged violation will recur," and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted).  Defendants rely on a change in agency leadership and job offers they made to a limited number of employees, while submitting no evidence at all pertaining to DHS's plans for FEMA staffing or addressing whether the plan to cut FEMA by 50% has been abandoned.  Instead, they ask this Court to accept counsel's representation that no further unlawful acts will occur—while simultaneously denying that there ever was a DHS plan to downsize FEMA at all and acknowledging that their clients' actions caused the loss of evidence in this case.  Counsel's denial is not evidence; nor is it credible in light of conclusive evidence that that DHS did have a plan to cut FEMA in half, which it began implementing into 2026, and which was suspended only upon the filing of this litigation.  And as discussed below, Defendants have not shown that DHS's current leadership has abandoned plans to downsize FEMA.  Indeed, new DHS Secretary Markwayne Mullin has affirmatively stated that FEMA should be "restructured" to push more responsibility for disaster relief onto state and local governments (such as the local government Plaintiffs). *Infra* at 7.  On the record before the Court, governing law easily dispenses with Defendants' arguments that Plaintiffs' claims and the relief requested by this Motion are moot.

Defendants' other two arguments that this Court lacks subject matter jurisdiction likewise defy governing law and the record evidence, and Plaintiffs explain below (again) why they have

standing and their claims challenging DHS and FEMA actions as ultra vires and unlawful under the Administrative Procedure Act ("APA") are not channeled.

Defendants further contend that, even if their recent actions do not moot Plaintiffs' preliminary injunction motion, Plaintiffs face no irreparable harm. ECF 418 at 3, 21-23. But in the context of voluntary efforts to moot preliminary relief, courts evaluate the likelihood that defendants will revert to their unlawful conduct. *Infra* at 21-25. Defendants' existing plan to downsize FEMA, their refusal to repudiate their prior unlawful actions, DHS's ongoing control over FEMA decision-making and employment actions, and DHS's continuing statements about "restructuring" and "reforming" FEMA all support the opposite conclusion: that DHS is likely to resume its unlawful conduct and so further irreparable harm is far from speculative.[1] Notably, DHS has *not* assured the Court, through the filing of sworn declarations, that CORE employees will not be subject to further workforce reduction efforts.

Courts have rejected similar Trump administration efforts to avoid judicial scrutiny by relying on their asserted voluntary cessation of unlawful behavior. *Infra* at 11-15, 21-25. As one court recently explained, "Forcing litigants and the court to play a figurative game of whack-a-mole is precisely what the voluntary cessation doctrine seeks to prevent, particularly with the stakes as high as Plaintiffs see them. Therefore, despite [defendants'] alleged policy change, Plaintiffs have a reasonable expectation that the alleged violation will recur." *Du v. United States Dep't of Homeland Sec.*, 2025 WL 1549098, at *6 (D. Conn. May 31, 2025) (citation omitted) (finding imminent harm and granting preliminary injunction). Preliminary relief remains equally appropriate here.

Finally, regardless of whether the Court agrees that the risk of ongoing harm is sufficient to support an injunction, Plaintiffs' conclusive showing regarding the illegality of DHS and FEMA's workforce reduction actions supports moving quickly to summary judgment and permanent relief. Defendants present no opposition to moving to this appropriate next step.

---

[1] Further, there is no question that some harm (like the loss of pay, benefits, and service credits) still has not yet been redressed.

## DISCUSSION

**I.     Defendants' Revisionist Narrative is Divorced from the Record and Does Not Undermine the Conclusive Showing that DHS and FEMA's Actions are Unlawful.**

Notwithstanding Defendants' failure to defend the legality of their actions, in arguing mootness, Defendants continue to assert a factual narrative that is contradicted by the record in this case. Defendants' arguments fail to undermine Plaintiffs' proof that DHS established a plan to cut FEMA in half while working in concert with OMB and OPM to implement the President's priorities; removed FEMA's employment authority; began implementing that plan in 2026 by eliminating CORE positions by NTE date; halted that implementation after this litigation commenced; and have not yet amended or rescinded that plan.

1.  *FEMA did not exercise independent decision-making to separate the CORE beginning in January 2026.*  Defendants argue that things have changed because as of late May 2026 DHS political appointee, former Senior Official Performing the Duties of Administrator ("SOPDA") Karen Evans is no longer running FEMA (having moved on to another DHS position addressing "fraud, waste, and abuse" that she admits will continue to involve FEMA, ECF 414-1, Ex. G (5/26 Evans Depo. at 9:18-10:11)).  ECF 418 at 2.  In service of this argument, Defendants continue to insist that Evans herself made the decision to separate the CORE employees, independent of DHS. *Id*. at 3-5.[2]  But in doing so, they rely solely on Evans' hindsight testimony that she operated independently of DHS orders—testimony that is not supported by a single document, which was impeached by her own emails and notes of meetings and other documents, and which should be disregarded for reasons discussed in greater detail in Plaintiffs' Rule 37 filing.  *Id*. at 5; *compare*

---

[2] Defendants ignore Evans' own testimony that she was a DHS political appointee, who answered to DHS leadership and was exercising the authorities *"previously assigned" to FEMA.* ECF 312-1 ¶1.  They also repudiate her prior sworn testimony that DHS made the decisions regarding the CORE separations.  *Id*. ¶25.  The evidence reveals that throughout her time purporting to run FEMA, Evans took direction from DHS, including her admissions that she intended to copy DHS on *every email pertaining to* FEMA (via DHS Senior Advisor Kara Voorhies) (ECF 414-1, Ex. A (3/31 Evans Depo. at 128:7-16)) and was in near constant Signal communication with DHS officials on numerous chats (ECF 414-1, Ex. G (5/26 Evans Depo. at 51:4-52:5) (listing Signal chats produced, including many with DHS officials)).  In light of this evidence, any decision by Evans cannot be attributed to FEMA independent of DHS direction. This is consistent with both her initial testimony to this Court that DHS made the relevant decisions (ECF 312-1 ¶25), and her later explanation of that statement, that she considered DHS and FEMA to be the same (ECF 414-1, Ex. A (3/31 Evans Depo. at 361:6-362:16, 363:25-364:13)).

ECF 411 at 17-24 (citing evidence submitted at ECF 414- 414.12).[3] Even if Evans' testimony were admitted, it would fail to refute Plaintiffs' showing of DHS control. Defendants describe Evans as testifying that she made the decision to separate CORE employees "voluntarily, for her own reasons" but fail to explain that the *reason she gave was that DHS had removed FEMA's authority to act.* ECF 418 at 5; *see* ECF 414-1, Ex. A (3/31 Evans Depo. at 365:2-9, 365:17-20).

     2. *OMB and OPM were involved in DHS's plan to cut FEMA in half.* Defendants also inaccurately portray DHS and FEMA's actions as independent of broader efforts to comply with the directives of the President, OMB and OPM (again, in service of their argument that things have changed) and FEMA's discrete actions as somehow divorced from the ongoing actions challenged by Plaintiffs' Supplemental Complaint. ECF 418 (arguing it is "undisputed" that DHS never gave its Annual Staffing Plan to OMB and OPM); *see also generally* ECF 402, 419. As an initial matter, Defendants' witnesses uniformly admitted that DHS and FEMA created the FEMA Annual Staffing Plan to comply with President's Executive Order 14356 and OMB/OPM's directives. ECF 414-1, Ex. A (3/31 Evans Depo. at 205:16-210:5, 219:21-220:24); *id.*, Ex. B (Edwards Depo. at 132:21-135:7, 142:20-143:3); *id.*, Ex. C (Prieur Depo. at 133:10-136:20, 155:5-156:2); ECF 417-

---

[3] Evans' hindsight testimony should be excluded in light of her confessed failure to preserve *months* of directly relevant communications (including but not limited to those on FEMA 2.0 and other Signal chats with DHS officials including former Deputy Chief of Staff ("DCOS") Joseph Guy and Voorhies), and her intentional deletion of communications by setting and using Signal's auto-delete functions. *See* accompanying Rule 37 Motion Reply. In addition, Evans has now refuted her own testimony more than once. *E.g.*, *compare* ECF 414-1, Ex. A (3/31 Evans Depo. at 111:9-11) ("I made sure, in particular, that Ms. Voorhies was not involved in any personnel decisions."), *with id.* at 130:18-131:2 ("Q. You communicated with Ms. Voorhies regarding FEMA's authority to extend CORE appointments, for example? … A. Yes, I would. Q. And you communicated with Ms. Voorhies about the non-renewals of COREs by NTE date. Correct? ... A. Yes, I did."); *compare* ECF 414-1, Ex. G (5/26 Evans Depo. at 23:2-5) (insisting she preserved all work-related communications), *with id.* 38:6-25 (no longer recalling), and *id.* at 42:16-43:7 (admitting failure to preserve Signal chat about CORE). When confronted by her own written communications, Evans admitted that she had testified incorrectly or failed to remember key details. *Compare* ECF 414-1, Ex. A (3/31 Evans Depo. at 215:22-217:5) (claiming no memory of a staffing plan to cut FEMA's 24,000 employees in half) *with id.* at 218:14-222:7 (admitting she had submitted a FEMA Annual Staffing Plan cutting FEMA from 23,000 to 11,500 employees to DHS based on guidance that came from OPM/OMB); *see also* ECF 414-1, Ex. G (5/26 Evans Depo. at 52:6-20) (admitting she incorrectly testified that there were only three FEMA-related signal chats on her personal phone). She submitted an inaccurate preservation declaration to this Court (ECF 356-1) that omitted mention of "backups" she created on her personal computer just days before. ECF 412-1 at 9. She demonstrably lied to Congress days after providing contrary testimony to this Court (ECF 411 at 32) and for many reasons is not a remotely credible witness.

1, Ex. A (email soliciting DHS components' staffing plan submissions "[a]s required per the Executive Order 14356"). And when confronted with Signal chats, Guy admitted that he (and often Voorhies) met with high-ranking OMB officials *weekly*, including to discuss FEMA staffing. ECF 414-1, Ex. F (5/15 Guy Depo. at 78:8-81:4 ("Sometimes it would be Katie [Sullivan, OMB Chief of Staff] and two people that helped her or three. And then later on it turned into OMB wanting to have more calls with more people"); *id*. at 81:11-19, 91:12-25). Those Signal chats further demonstrated that DHS was providing information and plans to OMB and OPM regarding cutting FEMA staff. Second Leyton Decl., Ex. K (in camera). In particular, in late September and October 2025, DHS was working with OMB on a plan to cut FEMA during the shutdown (which did not occur due to litigation and Congressional action), which was soon transitioned into the FEMA Annual Staffing Plan. Second Leyton Decl., Ex. L (in camera); ECF 414-1, Ex. E (Voorhies Depo.) at 138:18-143:16; 169:22-25; *id*. Ex. F (5/15 Guy Depo. at 98:25-99:15, 101:24-103:19). The idea that OMB had no further involvement in this very plan to cut FEMA in half is not credible.[4] Further, Evans admitted not only that she adopted the 50% staffing cut plan at DHS at the direction of Guy (who was admittedly meeting weekly with OMB) but that those numbers *were* provided to OMB and OPM (and that DHS wanted to keep those numbers secret). ECF 414-2 at 121 (Depo. Ex. 18 at USA-AFGE-Exp.-0007336) ("The number of 11,500 is also what we have provided to OPM/OMB at a high level but we haven't made that public."). Nor does the OMB declaration on which Defendants rely actually state that the plan was never sent to or approved by OMB; it says only that DHS and FEMA did not submit anything through a particular portal or email. ECF 345-9. Because that declaration is from someone other than the high-ranking OMB individual (Sullivan) or other OMB officials who held weekly meetings with DCOS Guy and others, it fails to establish that the plan was not provided to OMB at all. ECF 414-1, Ex. F (5/15 Guy Depo. at 78:8-80:3).

Finally, in downplaying the import (and finality) of the FEMA Annual Staffing Plan,

---

[4] Guy, when pressed in deposition to reveal where the plan to cut FEMA by 50% came from, after first testifying that he did not remember and then admitting "I don't think that I would independently do that," indicated that it was possible that it came from "OPM or OMB" (or directly from the DHS Secretary). ECF 414-1, Ex. D (5/4 Guy Depo. at 251:25-252:11).

Defendants ignore uncontroverted testimony from DHS Chief Human Capital Officer ("CHCO") Roland Edwards (supported by documents) that he instructed DHS components to implement their Annual Staffing Plans and treat them as final regardless of whether they received specific feedback from OMB or OPM.  ECF 414-1, Ex. B (Edwards Depo. at 151:3-152:10).[5]

3.  *To date, DHS has not returned FEMA decision-making authority.*  Defendants ignore that FEMA's decision-making authority, removed by DHS in 2025, has never been returned.  In early 2025, DHS was granted a complete Department-level exemption from the President's hiring freeze.  ECF 414-2 at 191 (Depo. Ex. 39); ECF 414-1, Ex. B (Edwards Depo. at 90:16-92:13).  Nonetheless, in March 2025 DHS leadership decided to impose that freeze anyway and removed subcomponent authority over hiring, including FEMA's authority over CORE renewals.  ECF 414-2 at 197 (Depo. Ex. 41); ECF 414-1, Ex. C (Prieur Depo. at 104:4-106:4).  DHS leadership subsequently purported to restore limited authority back to FEMA, but only until the end of December 2025.  ECF 414-2 at 138 (Depo. Ex. 21).  It is undisputed that DHS did not extend this authority beyond December 31, 2025, and that DHS has never restored FEMA's authority over hiring or the CORE since.  Indeed, the recent actions under new DHS leadership establish that DHS continues to control FEMA decision-making including whether or for how long to renew CORE positions.  ECF 414 ¶16; *see also* Third Supp. Jackson Decl. ¶4.

4.  *DHS decision-makers have not abandoned plans to restructure and downsize FEMA.* Defendants rely heavily on the replacement of former DHS Secretary Noem, transfer of former SOPDA Evans, and removal from the FEMA Review Council report of the line recommending that

---

[5] Neither FEMA nor DHS acted in isolation in their efforts to comply with the President's workforce reduction directives, which began with Executive Order 14210 and the Agency RIF and Reorganization Plans and continued with Executive Order 14356 and the Annual Staffing Plans. The evidence regarding the FEMA plan reflects that agencies were not only creating the Annual Staffing Plans required by Executive Order 14356, but were implementing them.  As alleged in Plaintiffs' Supplemental Complaint, FEMA and DHS are not the only agencies implementing the President's directives: while Congress generally blocked agencies from engaging in the workforce reduction actions at the end of 2025 and into 2026, other agencies besides FEMA and DHS have created workforce reduction plans and are poised to again implement them.  ECF 298 ¶¶448-55, 573.  For example, the U.S. Department of Agriculture appears to be rolling out a large-scale restructuring plan in service of these directives.  Tsai Decl., Ex. F.  Plaintiffs' pending discovery requests, which are the subject of a dispute presently before this Court, seek important evidence regarding Defendants' plans and actions to implement those plans.  *See* ECF 400, 403, 404, 409.

FEMA staff be cut in half.  ECF 418 at 6-8, 18.  Defendants provide no further evidence that DHS has changed its plan, and ignore that both the new DHS leadership and the FEMA Review Council report continue to advocate for restructuring and downsizing FEMA.

First, DHS Secretary Mullin, who began in late March 2026, has publicly confirmed that he intends to "reform" and "restructure" FEMA.  Tsai Decl., Ex. B ("Asked if eliminating FEMA — which Trump has threatened to do — was still on the table, Mullin said 'reforming FEMA would be a better term.'"); *id.*, Ex. C ("He also said that FEMA should be 'restructured, not eliminated', responding to concerns about Noem floating the idea of eliminating the agency entirely").  At his March 2026 confirmation hearing, Mullin likewise stated FEMA should be restructured and its responsibilities further shifted to state and local governments, while deflecting specific questions about staffing cuts, calling the federal government "very bloated."  Tsai Decl., Ex. D.

Second, while the final FEMA Review Council report issued May 7, 2026 (signed by DHS Secretary Mullin as Co-Chair of the Review Council) deleted the sentence referring to the 50% cut, it continues to recommend restructuring and downsizing FEMA.  ECF 414, Ex. B.  Specifically, the report states it is time to "close the chapter on FEMA," and recommends a "transformed agency," including by further transferring responsibility for disaster relief and recovery to state, local, and tribal governments.  *Id*. at 13 (recommending "the agency should shift from a District of Columbia-centric bureaucracy and regulatory bottleneck to a new, lean coordination-focused workforce that empowers SLTT [States, Locals, Tribes, and Territories] officials to provide relief for their citizens."); *id*. at 13-14 ("the transformed agency should shift training execution to states, expand and leverage existing successful partnerships, continue support of Emergency Management Assistance Compact agreements, empower states with expedited funding, and limit federal on-the-ground response to only incidents that exceed the capabilities and capacities of SLTT stakeholders.").  Defendants also neglected to provide this Court with DHS's announcement of the report, in which DHS Secretary Mullin explains, "*We are driving ahead*, *transforming FEMA* into a *streamlined,* mission-focused agency that delivers results."  Tsai Decl., Ex. A (May 7, 2026 Press Release) (emphasis added).  DHS further brags about "reforms and improvements to FEMA" being implemented under Secretary Mullin, in furtherance of the President's priorities, including making

FEMA a "*leaner*" agency. *Id.* (emphasis added). In his remarks presenting the report on May 7, 2026, Mullin confirmed his view that the report provided "a clear direction and an oversight of an agency that is in need of reform." Tsai Decl., Ex. E.[6]

The evidence uncovered in discovery[7] regarding DHS's ongoing efforts to impose its "staffing plan" decisions on FEMA establishes that DHS was working on the details of how to implement the FEMA Annual Staffing Plan (for purposes of the quarterly updates to OMB/OPM) and intended to implement these plans by June 2026. ECF 414-1, Ex. C (Prieur Depo. at 333:8-24). This was true as of the time of both the Evans deposition (on March 31) and FEMA CHCO Prieur deposition (on April 3).[8] *Id.* (Prieur Depo. at 310:18-312:1, 320:19-322:25). This ongoing work was confirmed by one of the only screenshots of the "FEMA 2.0" Signal chat produced to Plaintiffs, which reflected communications between Evans and Voorhies about the staffing plans as of March 5 (a continuing conversation that was subsequently deleted). ECF 350-1, Ex. A; ECF 356-3 at 1; ECF 397-1, Exs. B, C.[9] FEMA CHCO Prieur confirmed that as of early April, the intention was to be ready to implement the staffing plans by June 2026. ECF 414-1, Ex. C (Prieur Depo. at 333:14-335:12); ECF 414-2 at 240 (Depo. Ex. 100). Consistent with this timeline, FEMA explained at the May 2025 "all hands" meeting that DHS continues to control decisions regarding whether and for how long FEMA CORE employees will be renewed, and COREs with NTE dates after June 2026 were given no reassurance as to whether they will be renewed. ECF 414 ¶¶19-20.

---

[6] Defendants also mischaracterize the statements of former SOPDA Cameron Hamilton (who has been nominated but not yet confirmed as Administrator): He never stated that FEMA should not be *downsized* (ECF 418 at 2), but was fired for stating FEMA should not be *eliminated* (ECF 303-21 at 36, Ex. G). Defendants' citation to what "news sources" think the nomination of Hamilton portends for the agency (ECF 418 at 7) highlights their notable failure to provide the Court with direct evidence of information in their own possession, regarding their own actions.

[7] Defendants complain that "[t]he Court did not allow Defendants a reciprocal opportunity to take discovery of Plaintiffs regarding the bases for their Motion for Preliminary Injunction or originating Supplemental Complaint," but Defendants omit the fact that they never *requested* any such discovery – not to this Court nor from Plaintiffs. ECF 418 at 9.

[8] Secretary Mullin was nominated on March 9, 2026 and confirmed and began work at DHS prior to these depositions. *See, e.g.*, https://www.dhs.gov/news/2026/03/24/us-senate-confirms-markwayne-mullin-secretary-department-homeland-security.

[9] As discussed in Plaintiffs' Rule 37 Motion and Reply, Defendants' continued use of Signal chats on personal phones without preserving content and continued use of deletion settings resulted in the destruction of relevant evidence regarding the continued implementation of FEMA's staffing plans through Spring 2026.

While the DHS Secretary continues to control FEMA employment decisions, Defendants have provided no evidence—including any DHS declarations—that Mullin does *not* intend to use that (unlawfully usurped) authority to downsize FEMA.  ECF 414 ¶16; *see also* Third Supp. Jackson Decl. ¶4.  Defendants submit no evidence at all regarding the new DHS leadership's current plans for FEMA (including no evidence that Secretary Mullin has revised or repudiated the former staffing plans), although such evidence would be within their possession and control.

## II.    Defendants' Subject Matter Jurisdiction Arguments Are Contrary to Applicable Precedent and the Evidentiary Record

### A.    Defendants Have Not Demonstrated that Plaintiffs' Claims Are Moot

As previously demonstrated (ECF 301-1, 314) and addressed *infra* at II(B), Plaintiffs faced actual or imminent injuries at the outset of this case from the plan to eliminate half of FEMA's staff and the initial implementation of that plan, which was paused only because of this litigation.  Defendants now assert that they can escape judicial review because they have since mooted the need for relief by remediating those injuries.[10]  Defendants' invocation of mootness rests entirely on the notion that they have voluntarily ceased the challenged unlawful actions, pointing to (1) the new leadership at DHS and FEMA, who Defendants speculate may not wish to resume the large-scale reductions in FEMA's workforce, and (2) the reinstatement of some of the CORE employees who were separated in January 2026.[11]  This does not meet Defendants' burden of demonstrating the mootness of Plaintiffs' claims or preliminary injunction motion.

[10] Defendants now contend both that "Plaintiffs' claims challenging CORE non-renewals are moot" and that "the Motion for Preliminary Injunction is moot on its own terms."  ECF 418 at 18-19; *see also* ECF 419 at 12 (arguing "[t]his dispute is now moot" in Defendants' reply in support of their motion to dismiss).  Because the bases for Defendants' mootness arguments as to the claims and this motion are the same, Plaintiffs address them both here.

[11] Defendants argue that Plaintiffs' claims are both too early and too late.  Their new mootness arguments are thus in tension with the ripeness and final agency action arguments in their motion to dismiss:  Defendants simultaneously assert that any challenge to the EO, OMB/OPM memorandum, and the Annual Staffing Plans are too early and unripe because such plans have not been "implemented in any way that imposes an … injury" yet (ECF 419 at 7) while also claiming that Plaintiffs are too late to challenge FEMA's Annual Staffing Plan containing a 50% reduction in FEMA's workforce because they have already stopped its implementation and remedied any injury from the initial stages of carrying out those plans.  ECF 418 at 18-21.  As discussed in Plaintiffs' motion to dismiss opposition (ECF 417 at 13-17), these claims are not too early (including because FEMA's actions in 2025 and 2026 directly implement the challenged Presidential, OMB and OPM directives); as discussed herein, nor are they too late.

### 1.    Neither Plaintiffs' claims nor preliminary injunction motion are moot

Defendants ignore that they bear the burden of establishing mootness. *See Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir. 2007) ("The burden of establishing mootness is on the party advocating its application."); *see also Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 841 (9th Cir. 2024). "An action 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *350 Mont. v. Haaland*, 50 F.4th 1254, 1264 (9th Cir. 2022) (citation omitted).

Notably, Defendants do not purport to have ceased the full range of actions underlying Plaintiffs' claims. *See* ECF 298 ¶¶578, 583, 588, 593, 598, 603. For example, it is undisputed that DHS has not reversed its unlawful usurpation of FEMA's authority over CORE renewals. *Supra* at 6. Further, Plaintiffs' claims regarding the elimination of CORE positions are plainly not limited to the separations that occurred in January 2026. ECF 298 ¶578, 583, 588, 593, 598, 603. Defendants offer no evidence at all that DHS and FEMA have ceased their unlawful implementation of Executive Orders 14210 and 14356 and the associated OMB/OPM Memoranda, through their Annual FEMA Staffing Plan and related actions. Defendants cannot meet their burden to establish mootness when they fail to show that they have ceased the full breadth of the challenged actions giving rise to those claims and necessitating Plaintiffs' requested relief. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017).

Further, although Defendants assert that the January non-renewals are moot, Defendants have not actually ameliorated the effects of their unlawful actions. DHS and FEMA did not reinstate to their prior positions the COREs who were not renewed in January, but instead offered most of them entirely new positions, so they have not provided any remedy, backpay, or retroactive benefits for the time they were separated. ECF 414 ¶26. Offering new jobs rather than extending the prior positions also disrupts federal service because although the new positions offer the same grade and step, they do not offer credit for the "time in step" some employees had. *Id.* ¶27. The effect is that individuals have lost months of time worked towards the next step, as well as benefits that accrue with time worked such as vacation. *Id.* Thus, the controversy remains live with respect to those separations for which effective relief can still be granted. *See Health Freedom Def. Fund,*

*Inc. v. Carvalho*, 148 F.4th 1020, 1026 (9th Cir. 2025) ("In the context of injunctive relief, a case is not moot if the court is able to 'undo' the effects of the alleged illegal action.").

Finally, as to Plaintiffs' claims regarding DHS and FEMA's larger workforce reduction efforts, Defendants again fall short. Although Defendants hypothesize that Mullin and Hamilton might not wish to continue DHS's efforts to reduce FEMA's workforce, they: 1) conspicuously fail to provide any sworn evidence from DHS and FEMA decisionmakers to support this speculation; 2) provide no other evidence that there has been any revocation, repudiation, or revision to FEMA's Annual Staffing Plan; and 3) ignore the evidence that DHS and Mullin still intend to restructure FEMA through downsizing (*supra* at 6-9).[12] Counsel's unsupported speculation about what Mullin and Hamilton intend is plainly insufficient to meet their burden on mootness.

### 2. Defendants' voluntary actions do not meet their mootness burden

Because Defendants invoke only their own conduct to establish mootness, *see supra* at 9, they face an even heavier burden. "[V]oluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012); *see also Lofton v. Verizon Wireless (VAW) LLC*, 586 F. App'x 420, 421 (9th Cir. 2014) ("Generally, a party may not moot a claim for injunctive relief simply by voluntarily ceasing the alleged misconduct, because it could then resume its activity after the claim is dismissed."). "[A] voluntary change in official stance or behavior moots an action only when it is absolutely clear to the court, considering the procedural safeguards insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur." *Planned Parenthood*, 122 F.4th at 841 (cleaned up); *see also United States v. Brandau*, 578 F.3d 1064, 1068 (9th Cir. 2009). Thus, Defendants bear the "formidable burden" (*Fikre*, 601 U.S. at 241), of proving both that "'there is no reasonable

---

[12] Defendants contest only whether there is evidence of any "existing 'plan' to 'cut FEMA in half,'" stopping short of making any representation that there is no such plan. ECF 418 at 2. But aside from the fact that Plaintiffs *have* shown that such a plan exists, ECF 411 at 12-24, it is *Defendants'* "formidable burden" to prove that they will not resume attempts to reduce FEMA's workforce. *Fikre*, 601 U.S. at 241.

expectation…' that the alleged violation will recur," and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631 (citation omitted).[13]

First, the limited facts Defendants have pointed to are insufficient to show that it is "absolutely clear" in light of "the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur." *Planned Parenthood*, 122 F.4th at 841. In fact, no "'procedural safeguards' insulat[e] the new state of affairs from arbitrary reversal." *Id.* The Ninth Circuit has explained that "an executive action that is not governed by any clear or codified procedure cannot moot a claim." *Id.* (citation omitted). Defendants point to no procedural mechanism that would prevent them from resuming their planned workforce reduction through terminating COREs, because there is none. Not only have Defendants failed to identify any such safeguards, but they argue that there are no such constraints on their ability to separate COREs, whom they contend are temporary, at-will employees who can be terminated for any reason at any time. ECF 312 at 1, 5-6; ECF 418 at 3, 11.

Nor can Defendants' unsupported suppositions about Mullin and Hamilton's intentions regarding FEMA staffing cure the lack of any procedural safeguards. *Supra* at 6-9. This analysis does not turn on the intent of the decisionmaker: "Even assuming Defendants have no intention" to terminate the recently reinstated employees or resume carrying out the Annual Staffing Plan, "the ease with which [FEMA and DHS] could do so counsels against a finding of mootness, as 'a case is not easily mooted where the government is otherwise unconstrained should it later desire'" to

---

[13] Defendants' suggestion that the voluntary cessation exception may not "even [be] relevant under these circumstances," is incorrect. Voluntary cessation applies when the purported basis for mootness arises from the Defendant's "own conduct." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1238 (9th Cir. 1999). Defendants' invocation of mootness because DHS and FEMA have reinstated some of the non-renewed COREs is a prototypical example of voluntary cessation. ECF 418 at 18-19; ECF 419 at 12. Their suggestion that Plaintiffs' claims arising from the Annual Staffing Plan are moot because the new DHS and FEMA leadership may not wish to continue implementing it is similarly predicated on Defendants' own conduct. ECF 418 at 18-19. And the Ninth Circuit applies the voluntary cessation framework not only to address whether an underlying case is moot, but also to reject assertions that the need for a preliminary injunction has been mooted. *See Affordable Media*, 179 F.3d at 1238; *infra* at 21-25.

reverse course. *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013) (citation omitted); *see also Zhou v. Lyons*, 813 F.Supp.3d 1052, 1061 (C.D. Cal. 2025) ("Although ICE may currently have 'no plans' to terminate Plaintiff's SEVIS record based on the same challenged basis it originally invoked, nothing is stopping ICE from resuming this practice in the future if it so chooses."); *Ortega Gonzalez v. Noem*, 2025 WL 1355272, at *4 (D. Or. May 9, 2025) (no mootness from voluntary cessation where "[n]othing in the [new] guidance prohibits the allegedly unlawful terminations"). Defendants have identified no procedural constraints that would preclude the government from "'return[ing] to [its] old ways' despite abandoning them in the ongoing litigation."[14] *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1039 (9th Cir. 2018).

Second, "the government's rationale for its changed practice(s)" similarly cuts against a finding of mootness. Where cessation is accompanied by an admission of substantive error, that can support the conclusion that the reversal is permanent and thus has the effect of mooting the controversy. *See, e.g.*, *Planned Parenthood*, 122 F.4th at 841 (concluding case was not moot where the changed action was justified "solely on procedural grounds" and the decisionmaker did not "repudiate[]" prior substantive analysis); *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) (case was not moot where prosecutor "never repudiated the statute as unconstitutional, and he did not cease McCormack's prosecution because he believed the prosecution was unlawful"); *Knox*, 567 U.S. at 307 ("[S]ince the union continues to defend the legality of the Political Fight–Back fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future."). But FEMA and DHS have done the opposite: they have refused to admit their unlawful

---

[14] Defendants contend that the Ninth Circuit's precedent on voluntary cessation precedent does not "appl[y]" to them because "the voluntary cessation of challenged conduct by government officials" is treated "with more solicitude than similar action by private parties." ECF 418 at 20 (quoting *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022)). However, the Ninth Circuit has been clear that "[t]he voluntary cessation rule 'holds for governmental defendants no less than for private ones.'" *Planned Parenthood*, 122 F.4th at 841 (citation omitted). And as other courts have concluded, this Administration has no longer earned the benefit of the doubt. *See, e.g.*, *Fed. Educ. Ass'n v. Trump*, 795 F.Supp.3d 74, 92 (D.D.C. 2025) ("In just six months, the President of the United States may have forfeited the right to such a presumption of regularity.") (collecting cases); *United States v. Oregon*, 2026 WL 318402, at *11 (D. Or. Feb. 5, 2026) ("The presumption of regularity that has been previously extended to Plaintiff [the federal government] that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds.").

13

PLS' REPLY BRIEF ISO PRELIMINARY INJUNCTION, No. 3:25-cv-03698-SI

actions and provided *no* justification for their reinstatement of the January COREs or for any supposed rejection of the Annual Staffing Plan, much less the type of substantive repudiation that could support a finding of mootness.  In fact, Defendants continue to assert that FEMA and DHS may terminate COREs at will, and that their actions with respect to these employees are unreviewable.  ECF 312 at 1, 5-6, 10-13; ECF 402 at 18-20; ECF 418 at 3, 11, 13-14.  Thus, the government's stated justification for reversal (or, in this case, lack of justification) counsels against finding that the challenged conduct cannot reasonably be expected to recur.

Other indicators also cut against a finding of mootness here.  Defendants have never issued a formal "policy change" with respect to the January non-renewals and the Annual Staffing Plan, much less one that is "broad in scope and unequivocal in tone."  *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014); *A.O. v. Cuccinelli*, 457 F.Supp.3d 777, 788–89 (N.D. Cal. 2020) ("The Court does not find that rescission of the reunification authority requirement was either broad in scope or unequivocal in tone. None of the documents identified by Defendants acknowledge why the reunification authority requirement was imposed in the first place or why it was rescinded.").  Indeed, Defendants fought to keep their policies and actions secret and continue to block that information from Plaintiffs and the Court.  *See Roe v. Noem*, 2025 WL 1382930, at *4 (D. Mont. May 13, 2025) (finding claims were not moot where the government did not "provide any information" about its alleged policy change).  Nor have either of the changed circumstances invoked by Defendants "been in place" for a period of time comparable to that of the three-year old policy in *Rosebrock*.  745 F.3d at 972.  Defendants' reinstatement of the January COREs is still being implemented (at least some have not resumed employment yet).  ECF 418-1 ¶9.  And although FEMA and DHS have never officially repudiated the Annual Staffing Plan, any change of tact reflected in these rehirings is less than two months old.  ECF 414 ¶22; ECF 383-1 ¶6.

Further, besides Defendants' failure to even attempt to marshal evidence that the challenged conduct will not recur, Defendants also have not shown that "interim relief or events have completely and irrevocably eradicated the effects" of DHS and FEMA's implementation of the Annual Staffing Plan.  *Davis*, 440 U.S. at 631; *supra* at 10-11.  Defendants admit they have not provided backpay or complete benefits retroactive to the unlawful separations; Defendants'

evidence of new job offers also does not even establish that everyone previously separated has been restored to employment; or that all the other FEMA COREs with subsequent NTE dates have been renewed. *Supra* at 10-11. And as to the Annual Staffing Plan containing a 50% reduction, Defendants can hardly show that its effects have been completely eradicated when Defendants do not even assert that the plan itself has been rescinded, revised, or otherwise repudiated.

Finally, Defendants make the circular argument that voluntary cessation law does not "apply" because "the only concrete injury (to anyone) alleged by Plaintiffs—termination of the COREs in January 2026—is no longer redressable." ECF 418 at 20. But the only actions they contend removes redressability are their own, which is why voluntary cessation doctrine applies in the first place. Defendants' cited authorities each involved instances, unlike here, where claims became moot for reasons independent from the Defendants' voluntary cessation. *See DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) (claim challenging admission practices moot where plaintiff's graduation was imminent); *In Def. of Animals v. U.S. Dep't of Interior*, 648 F.3d 1012, 1013 (9th Cir. 2011) (appeal was moot "where the action that the plaintiff sought to preliminarily enjoin had already occurred"); *Owens v. Schuette*, 2024 WL 4469086, at *4 (E.D. Mich. Oct. 10, 2024) (claim challenging prison policies moot following plaintiff's transfer to different facility).

\* \* \*

In sum, Defendants' recent actions do not approach the high bar they must meet to moot either Plaintiffs' claims or this motion. And as addressed *infra* at Section III, the same factors that help the Court measure whether a defendant has established the impossibility that unlawful behavior will recur also assist the Court's assessment of the likelihood that the irreparable harm caused by Defendants' unlawful conduct will continue.

### B.    Plaintiffs Have Standing to Bring these Claims

Throughout their brief, Defendants confuse standing and mootness by addressing their post-litigation conduct as a standing issue. ECF 418 at 15-16; ECF 419 at 12.[15] It is not: "[T]he

---

[15] Defendants have incorporated arguments made in their motion to dismiss reply (ECF 419) into their supplemental opposition to Plaintiffs Preliminary Injunction (ECF 418 at 15 n.13), and Plaintiffs respond here accordingly to both.

standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) (per curiam) (standing "turns on the facts as they existed at the time the plaintiff filed the complaint.").[16]

As to Defendants' actual standing arguments, Defendants tread familiar ground and repeat previous inaccurate descriptions of the record without accounting for Plaintiffs' prior responses (*see* ECF 314 at 15-19). Defendants say AFGE represents no COREs impacted by the January terminations. ECF 418 at 11; 419 at 12. That is plainly wrong: Plaintiff AFGE has "identified multiple current dues-paying members of AFGE who were employed as FEMA CORE employees, whose NTE dates fell on or after January 1, 2026, and who were non-renewed, resulting in their separation from employment." ECF 314-3 ¶5. Next, Defendants continue to contest AFGE's associational standing because the names of its members have not been put on the public record. ECF 419 at 12. This is irrelevant. It is "a general rule of representational standing" that an "organization does not have to identify particular injured members by name" so long as it is "clear and not speculative that a member of a group will be adversely affected by a challenged action." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 708 (9th Cir. 2025); *see also Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (explicitly rejecting Defendants' interpretation that *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009), requires identifying affected members by name). Plaintiffs have demonstrated not only that members will be injured, but that they *were*. Such evidence goes beyond that in either *Mi Familia Vota* or *Cegavske*, where standing was found based on the nature of the organizations' membership bases and the challenged actions alone.[17] *Mi Familia Vota*, 129 F.4th at 708; *Cegavske*, 800 F.3d at 1041.

Next, the (unlawful) cancellation by this Administration of AFGE's bargaining rights is immaterial to AFGE's ability to separately assert associational standing on behalf of former

---

[16] For the same reason, standing does not, as Defendants contend, require that Plaintiffs to continuously supplement earlier evidence establishing injury. ECF 418 at 15.

[17] Defendants also persist in arguing AFGE Local 4060 members cannot confer standing upon AFGE, even though Plaintiffs have explained several times that AFGE represents members of its affiliated locals. ECF 314 at 16 n.22; ECF 417 at 20 n.11; ECF 314-3 ¶4; ECF 37-23 ¶2.

bargaining unit employees. That the union "continue[s] to represent and provide services to federal employees in bargaining units that are no longer recognized by the Executive Order" is sufficient for associational standing. *AFGE v. OMB*, 813 F.Supp.3d 944, 959-60 (N.D. Cal. 2025); *see also* ECF 417 at 20 n.12; ECF 402 at 21 n.13. Plaintiffs have provided evidence both that AFGE continues to provide such services and that those employees have been harmed. ECF 303 ¶¶6, 46.

Further, AFGE's assertion of organizational standing based on its own injuries is not impaired by *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). ECF 418 at 12-13. The loss of dues from the termination of dues paying members (ECF 303 ¶6) is a direct monetary injury resulting from the fact that the challenged actions "affected and interfered with [AFGE's] core business activities," comparable to the monetary injury incurred by "a retailer" that is sold "defective goods." *Alliance*, 602 U.S. at 395. Likewise, the need to use additional resources to represent and assist employees who have been affected by the challenged actions (ECF 303 ¶¶38-40) is not a manufactured injury to create standing but rather flows from impairment of AFGE's performance of its "core business activities and longstanding mission of providing direct representation" to members and represented employees. *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 988 (9th Cir. 2025) (interpreting *Alliance*, 602 U.S. 367).

Finally, because Plaintiff local governments rely on FEMA's services and Plaintiff unions represent state and local government employees whose work relies on FEMA grants, both groups face concrete, imminent injury from the challenged reductions in FEMA's staff, as previously shown. ECF 314 at 16-19. Defendants again levy allegations of speculativeness, but fatally fail to contend with precedent finding analogous inferences sufficient. *Id.* (citing *Harris v. Bd. of Supervisors*, 366 F.3d 754, 762 (9th Cir. 2004) (it was "not speculative" that cuts to health system with "existing shortages and delays" would "further impede the County's ability to deliver medical treatment to plaintiffs in their times of need"); *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1025 (9th Cir. 2023) ("*Clapper* does not require plaintiffs … to demonstrate that it is literally certain that the harms they identify will come about. Rather, *Clapper* recognized that standing may exist when there is a substantial risk that the harm will occur….") (citation omitted)).

This showing of multiple concrete, particularized harms, which are mirrored in Plaintiffs' Supplemental Complaint allegations (ECF 298 ¶¶560-68), also rebuts Defendants' assertions that Plaintiffs lack injury sufficient to challenge EO 14356, the OMB/OPM implementing memorandum, or the Annual Staffing Plans.  Even if standing did need to be alleged for each individual allegation in support of a claim, which Plaintiffs contest, Plaintiffs *have* alleged facts sufficient for "standing to challenge EO 14356 … and efforts to implement it."  ECF 419 at 6.  As Plaintiffs have both pleaded and shown, FEMA's Annual Staffing Plan, which it began to implement in January through the indiscriminate non-renewal of COREs, was developed pursuant to Executive Order 14356 and the OMB/OPM memorandum.  ECF 298 ¶¶ 441-55, 472-77, 502; *supra* at 4-6.[18]  Although Defendants might wish it were otherwise, they cannot prevail on a facial challenge to Plaintiffs' standing while ignoring the series of concrete, particularized injuries Plaintiffs have pleaded are actual or imminent as a result of workforce reductions contemplated in EO 14356 and its implementing documents.

### C.     Plaintiffs' Claims Challenging DHS and FEMA's Actions Restructuring and Downsizing FEMA Were Not Impliedly Precluded by Congress

Defendants do not deny that this Court has express federal jurisdiction over Plaintiffs' APA claims, *see* 28 U.S.C. §1331, but recycle implied preclusion arguments based on the Civil Service Reform Act ("CSRA") that the Ninth Circuit and this Court have conclusively and repeatedly rejected.  *AFGE v. Trump*, 139 F.4th 1020, 1033 (9th Cir. 2025), *stayed pending appeal on other grounds*, 145 S. Ct. 2635 (2025).[19]  As this Court has observed, "The parties, and this Court, have been down this road before."  *AFGE v. OMB*, 2025 WL 3654116, at *6 (N.D. Cal. Dec. 17, 2025).  As was the case with the initial briefing on Plaintiffs' motion, Defendants' arguments rest on two faulty premises: 1) the mischaracterization of the DHS directives removing FEMA authority to

---

[18] Nor is FEMA alone among federal agencies in continuing to implement workforce reductions.  *Supra* at 6 n.5.  Plaintiffs again have pled as much (ECF 298 ¶573), and have also pled that Plaintiff unions have members and represent employees across such agencies and thus will be injured by reductions (ECF 298 ¶¶564-66).  *See also* ECF 417 at 12.

[19] *See also* ECF 259 at 10-11; ECF 124 at 18-27; *AFSCME v. OMB*, 2025 WL 3018250, at *10-11 (N.D. Cal. Oct. 28, 2025); *AFGE v. OPM*, 799 F.Supp.3d 967, 982 (N.D. Cal. 2025) and 771 F.Supp.3d 1127 (N.D. Cal. 2025).

make employment decisions, imposing large-scale plans to downsize FEMA, and ordering the elimination of CORE positions by NTE date irrespective of FEMA approval as run-of-the-mill personnel decisions; and 2) the leap from the type of covered actions Congress sent to the Merit Systems Protection Board ("MSPB") under the CSRA to an entirely different category of statutory employee (governed by the Stafford Disaster Relief Act, not the CSRA).  ECF 418 at 13-14.

For all the reasons previously explained, Plaintiffs challenge agency-level decisions and actions, not any particular personnel action taken as to any individual employee, so this case is directly governed by the Ninth Circuit and this Court's prior decisions on channeling in this case. *E.g.*, *AFGE v. Trump*, 139 F.4th at 1031 ("Whether or not the federal agencies' 'transformation[s]' and 'large-scale reductions in force' can be characterized as an 'agglomeration' of 'individual employment actions,' Plaintiffs are not challenging those employment decisions with respect to individual employees [but] … Defendants' constitutional and statutory authority to direct the federal agencies to take such actions in the first place.").  And while Defendants again rely on *United States v. Fausto*, 484 U.S. 439, 445 (1988), the Ninth Circuit and this Court have likewise rejected the extension of that argument in this case as well, "find[ing] it unlikely that Congress intended for the CSRA to preclude review for parties not even covered by that statute who allege claims outside the MSPB's and FLRA's jurisdiction."  *AFGE v. Trump*, 139 F.4th at 1032-33.[20]  In short, there is no indication in the CSRA, the Stafford Act, or any other statute governing DHS or FEMA (including Section 120 of the recent Continuing Resolution) that Congress intended to remove APA judicial review of claims challenging the legality of DHS and FEMA actions simply because they relate to the Stafford Act employees.  Nor is there any indication that Congress intended to preclude jurisdiction over claims by local government Plaintiffs, for all the reasons previously addressed by this Court and the Ninth Circuit.

Defendants incorporate by reference their arguments from the motion to dismiss briefing

---

[20] *See Nat'l TPS All. v. Noem*, 166 F.4th 739, 756 (9th Cir. 2026) ("The assertion that a statute bars substantial statutory and constitutional claims is 'an extreme position.'") (citation omitted); *Cmty. Legal Servs. v. HHS*, 137 F.4th 932, 939 (9th Cir. 2025) (conclusion that "no court has jurisdiction to hear plaintiffs' claims" would be "contrary to common sense" and "conflict[] with the 'strong presumption favoring judicial review of administrative action'").

(*see* ECF 418 at 13 n.12), and Plaintiffs accordingly respond.  In attempting to distinguish prior decisions in this case, Defendants mischaracterize both the prior injunctions *and* the DHS and FEMA actions at issue now:  "In contrast to the planning documents developed in response to EO 14210 at issue in the Ninth Circuit's preliminary injunction decision, the issue before the Court now is the non-reappointment of a discrete group of federal employees."  ECF 419 at 10.  To the contrary, as this Court is well aware (and has previously ruled), the May 22 injunction did not only involve "planning documents," but agency decisions that, like the agency actions now at issue, were being implemented by taking action with respect to many federal employees.  ECF 124 at 7-9; *AFGE v. Trump*, 139 F.4th at 1028-29.

Next, Defendants expand on their implied preclusion argument by invoking Congress's decision to exempt Stafford Act employees from the CSRA's appointment requirements.  ECF 319 at 11.  Here too Defendants overreach: that Congress created a category of federal employment through a different statute, to which civil service requirements for appointments do not apply, does not support the leap to the conclusion that Congress intended to foreclose all judicial review of agency decisions because those decisions impact Stafford Act employees.[21]  Neither *Fausto*, 484 U.S. at 447-55, nor any of the other cases cited by Defendants (all of which involve categories of employees and employment actions directly addressed by the CSRA) so hold.  ECF 419 at 11.[22]

---

[21] Defendants read into the Stafford Act language a carte blanche authority to "quickly and flexibly ramp up (*or pare down*) its work force in response to disaster needs," (ECF 319 at 10-11), but that is not what the statute actually says, as reflected in how FEMA treats the CORE as fixed-term employees.  Agencies are authorized, when performing Stafford Act functions, to "appoint and fix the compensation of such temporary personnel as may be necessary, without regard to the provisions of title 5 governing appointments in competitive service."  42 U.S.C. § 5149(b)(1).  Congress goes on to recognize the value of these temporary employees in performing functions at FEMA in particular, further authorizing FEMA to convert Stafford Act employees who serve "continuously for 3 years, to positions in the [FEMA] in the same manner that competitive service employees with competitive status are considered for transfer, reassignment, or promotion to such positions."  *Id*. at (c).  The statute says *nothing* about "quickly" "par[ing] down" temporary term employees.  As Defendants admit, FEMA hires CORE employees for fixed multi-year terms (ECF 418 at 4), which Plaintiffs' evidence established were almost always renewed per this agency's ongoing needs until this Administration.  ECF 301-1 at 10.

[22] *Fausto* affirmatively resolved the question whether the CSRA provisions that repeatedly gave certain protections to "nonpreference excepted service" employees like the plaintiff, but then expressly excluded that category of employee from MSPB remedies for certain personnel actions, precluded backpay remedies that predated the CRSA.  484 U.S. at 448.  There are no comparable provisions of the CSRA in which Defendants can ground an intent specific to the Stafford Act

Moreover, Defendants' position is inconsistent with Supreme Court law governing implied preclusion, particularly of APA claims. *E.g., McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 157, 162 (2025) ("When Congress wants to preclude judicial review … it can easily say so" and "ambiguity does not suffice" to preclude APA claims); *Sackett v. EPA*, 566 U.S. 120, 129 (2012) (APA claim not impliedly precluded even where a different statute does provide a mechanism for judicial review); *accord U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 601-02 (2016); *see also Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S.Ct. 2558, 2661 (2025) (Barrett, J., concurring) (district court could exercise jurisdiction over APA challenge to agency guidance even if related remedy claims were channeled to Court of Federal Claims); *id.* at 2662-63 (Roberts, C.J., concurring in part and dissenting in part) (district court properly exercised jurisdiction over APA challenge to agency guidance). As the Supreme Court has explained, it has "*never*" endorsed implied preclusion of APA claims predicated on "some general similarity of subject matter," which is the premise of Defendants' argument. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 222–24 (2012) (emphasis added).

**III.    This Court Can Reasonably Conclude that Defendants' Actions Restructuring and Downsizing FEMA Without Congressional Authorization Are Likely to Resume, and if They Do, Will Continue to Cause Irreparable Harm**

Where, as here, a defendant argues that its own voluntary actions have mooted a preliminary injunction, courts consider evidence regarding the defendant's post-litigation conduct in assessing a plaintiff's burden to demonstrate a likelihood of irreparable harm. *E.g.*, *Lofton*, 586 F. App'x at 421 ("Even where the defendant's voluntary cessation does not moot a claim for injunctive relief, however, we consider cessation of the alleged misconduct in determining whether the plaintiff has carried his burden of demonstrating a likelihood of irreparable harm."). And even when a defendant has ceased the challenged activity, this Court and others have concluded that

---

employees; they are not mentioned, and are governed by different statutory authority than the CSRA. Defendants' other cases are likewise inapposite. *Chiang v. Gonzales*, 2006 WL 8449284, at *7 (C.D. Cal. May 9, 2006) (FBI employee excluded by terms of CSRA challenged personnel actions otherwise covered by CSRA); *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1020 (9th Cir. 1999) (federal employee challenging personnel actions covered by CSRA); *Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir. 1984) (same).

plaintiffs have met their burden of demonstrating irreparable harm based on the risk of defendants recommencing the challenged conduct absent protective action from the court. *See, e.g.*, *Doe v. Trump*, 784 F.Supp.3d 1297, 1309-11 (N.D. Cal. 2025) (granting preliminary injunction and finding likelihood of irreparable harm notwithstanding DHS's reversal of challenged termination of immigration status); *A.O.*, 457 F.Supp.3d at 794-95 (granting preliminary injunction and finding likelihood of irreparable harm notwithstanding DHS's change to challenged policy); *see also Ortega Gonzalez v. Noem*, 2025 WL 1355272, *4-6 (D. Oregon May 9, 2025) (granting injunction and finding likelihood of irreparable harm notwithstanding defendants' restoration of records).[23]

In assessing whether defendant agencies' allegedly unlawful conduct is likely to resume absent a court order, courts look to factors similar to those that underly the voluntary cessation analysis for illumination. *A.O.*, 457 F.Supp.3d at 795; *Ortega Gonzalez*, 2025 WL 1355272, at *5; *Doe*, 784 F.Supp.3d at 1310. For example, in *Ortega Gonzalez*, although DHS had fully restored the challenged immigration records, the court concluded that the likelihood of irreparable harm requirement was satisfied where DHS had done so only in response to the litigation and had not "repudiated the prior decisions." *Ortega Gonzalez*, 2025 WL 1355272, at *5 ("Deafening silence has been the only response by the Defendants in explaining, let alone justifying, the actions taken here."). "Deafening silence" would be a generous description of Defendants' position in this case, where they continue to outright deny the existence of the challenged plan to dismantle FEMA, do not acknowledge their unlawful actions, and have fought discovery and judicial scrutiny into their actions at every turn. If the plaintiffs had good reason to be concerned that DHS would revert to unlawful activity in *Doe*, *A.O.*, and *Ortega Gonzalez*, so too is it "impossible to trust that, absent an injunction, Defendants will not" take the same unlawful action again. *Ortega Gonzalez*, 2025 WL 1355272, at *5. This Court in *Doe* agreed, concluding it was not "speculative" that Defendants would revert, on the record before it. 784 F.Supp.3d at 1310-11. Each of these courts found it significant that Defendants had not made structural changes or any real binding commitments that

---

[23] Defendants accuse Plaintiffs of failing to address harm (ECF 418 at 21), but Plaintiffs' did address harm in the original preliminary injunction briefing (ECF 303-1 at 19-27, 40; ECF 314 at 15-19), which Plaintiffs' subsequent briefing supplemented by addressing Defendants' ongoing actions (ECF 411 at 23-24, 26-27, 29-31, 36-39).

would prevent resumption of the challenged actions.  So too here: as discussed above, Defendants provide nothing but their own voluntary actions and certainly provide no binding assurance that the DHS leadership will not move forward with further FEMA reductions.

In fact, Defendants have not provided this Court with *any* assurance that they will not resume the challenged actions if this Court denies an injunction.  As discussed above, Defendants' current leadership has expressed support for restructuring and downsizing FEMA.  *Supra* at 6-9. DHS remains in control of FEMA employment decisions.  *Supra* at 6.  DHS has made no assurances to its CORE employees with NTE dates beyond June 2026 that they will remain in their positions.  *Supra* at 8.  DHS has been given every opportunity to provide evidence to this Court of a change in its plans, in the form of sworn declarations or otherwise, and has declined to do so. ECF 318.  DHS has not made any procedural or structural changes (such as handing authority back to FEMA) that would prevent it from taking further unlawful action.  *Supra* at 12-14.

The courts in the above-cited cases are not alone, nor are they outliers: in *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 775 F.Supp.3d 100 (D.D.C. 2025), a federal grants case, the court first held that recission of the challenged OMB Pause Memorandum did not moot the case because of the voluntary cessation doctrine, *id.* at 117-118, and then granted a preliminary injunction, reasoning in part that "[w]hile funds have resumed flowing to some recipients, that does not erase the imminence or irreparability of what another pause would entail," *id.* at 129.  Two months ago, a Maryland district court granted a preliminary injunction in a NEPA case challenging ICE's plans to convert a warehouse into a detention center.  *Maryland v. Mullin*, 2026 WL 1045503, at *1 (D. Md. Apr. 17, 2026).  DHS argued there that ICE was reconsidering the scope of the plans and would pause construction pending further NEPA analysis, which the Court held did not "negate the State's clear showing of irreparable harm absent issuance of preliminary injunctive relief."  *Id.* at *30; *see also Gilead Scis., Inc. v. Meritain Health, Inc.*, 2025 WL 1745669, at *30 (D. Md. June 24, 2025) ("The court is not persuaded that the parties' representations of voluntary cessation overcome Gilead's demonstration of irreparable harm absent issuance of preliminary injunctive relief. Specifically, the court is unpersuaded that there is no reasonable expectation that the alleged wrong will not be resumed or repeated absent an injunction. ... In this action, the very

nature of the record evidence offers the court cold comfort that attestations regarding voluntary cessation extinguish irreparable harm—which is to say, the evidence that Meritain says one thing and does another is deeply problematic insofar as crediting its assertions of voluntary cessation to avoid an injunction."); *NJOY, LLC v. iMiracle (HK) Ltd.*, 760 F.Supp.3d 1070, 1082 (S.D. Cal. 2024) (granting injunction against stores selling flavored vaping devices in UCL cases and holding that "[a]ssuming, *arguendo*, that Brick-and-Mortar Retailer Defendants have indeed ceased the sale of [the products at issue], the Court finds that voluntary cessation is insufficient to demonstrate a lack of irreparable harm in this instance").

This Court can and should conclude that, on the record before it, it is non-speculative and entirely reasonable to conclude that DHS will likely carry on with unlawful actions eliminating CORE positions in service of a plan to restructure and downsize FEMA, absent court order.  And if that were to occur, the actions would nearly certainly cause irreparable harm, for all the reasons explained in Plaintiffs' initial motion (ECF 301-1 at 19-27, 36-39; 314 at 15-19).  *E.g.*, *Ortega Gonzalez*, 2025 WL 1355272, at *5 (analyzing the impacts if defendants revert, and concluding that "[i]f their status were to be terminated again, Plaintiffs would absolutely face irreparable harm.").  There can be no real argument (notwithstanding Defendants' protestations) that those harms are non-speculative and irreparable under the law of this Circuit.  In particular, Defendants repeat the unavailing argument that losing a job cannot ever be irreparable, which ignores both their prior concession that the loss of health insurance *is* irreparable (ECF 314 at 15) *and* decisions from the Ninth Circuit and this Court rejecting this argument.  *AFGE v. Trump*, 139 F.4th at 1040; *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1125 (9th Cir. 2008); *AFSCME v. OMB*, 2025 WL 3018250, at *22 (N.D. Cal. Oct. 28, 2025); *A.O.*, 457 F.Supp.3d at 794.[24]  Indeed, the "loss of opportunity to pursue [a] chosen profession[s] constitutes irreparable harm." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (quoting *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011)) (quotation omitted).

---

[24] Defendants once again overread *Sampson v. Murray*, 415 U.S. 61 (1974), which does not hold that losing a job can never cause irreparable harm.  ECF 318 at 22.

It is also the case that Defendants have not fully remedied the harms to the individuals who were affected by their prior unlawful actions. As in *Doe*, these effects are not just "past" harm but are ongoing. *Doe*, 784 F.Supp.3d at 1311 ("Defendants also do not provide any meaningful argument to counter Plaintiffs' argument that they cannot get back the time they lost on their work and their education because of the SEVIS termination, which impacts their work and studies going forward."). If DHS resumes its downsizing of FEMA, the imposition of these same types of harm on the unions, the employees they represent, and local government Plaintiffs are a near certainty.

***

Thus, Plaintiffs have established an overwhelming likelihood that Defendants violated multiple provisions of law (including the APA, the Post-Katrina Act, and Section 120 of the CR). Plaintiffs have also shown that risk remains that DHS and FEMA will resume their plans if this Court denies this motion or dismisses Plaintiffs' claims. This warrants issuing injunctive relief, notwithstanding Defendants' voluntary efforts to avoid such an injunction.

If this Court concludes that Defendants' showing is sufficient to undermine the need for preliminary injunctive relief, Plaintiffs respectfully submit that the claims against FEMA should move to judgment. Defendants pose no real objection to this request except to suggest it would be appropriate only if this Court awards injunctive relief. ECF 418 at 23 n.16. But the reasons to do so apply whichever way this Court resolves this motion. There is also no reason, as Defendants also suggest (*id.*), to impose any delay or unnecessary steps in setting the schedule. Plaintiffs have already indicated that they are willing to have their further briefing considered the opening motion, and the Court can proceed to set opposition and reply deadlines.

DATED: June 17, 2026                    Respectfully submitted,

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Robin S. Tholin
Elizabeth Eshleman
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com

By: */s/ Danielle Leonard*

*Attorneys for All Union and Non-Profit Organization Plaintiffs*

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

By: */s/ Tsuki Hoshijima*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

Jules Torti (pro hac vice)
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163

26
PLS' REPLY BRIEF ISO PRELIMINARY INJUNCTION, No. 3:25-cv-03698-SI

Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)
Matthew Blumin  (pro hac vice)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: /s/ Teague Paterson

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL
UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: /s/ Steven K. Ury

*Attorneys for Plaintiff Service Employees International Union, AFL-CIO (SEIU)*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By:  /s/ David Chiu

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)

28
PLS' REPLY BRIEF ISO PRELIMINARY INJUNCTION, No. 3:25-cv-03698-SI

Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By: */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

Christopher Sanders (pro hac vice)
General Counsel
Erin King-Clancy (SBN 249197)
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
chrsanders@kingcounty.gov
eclancy@kingcounty.gov

By: */s/ Erin King-Clancy*

*Attorneys for Plaintiff Martin Luther King, Jr. County*

Sharanya Mohan (SBN 350675)
Eliana Greenberg (SBN 366319)
Toby Merrill (pro hac vice)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
eliana@publicrightsproject.org
toby@publicrightsproject.org

By: */s/ Eliana Greenberg*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL, Harris County, TX, and Martin Luther King, Jr. County, WA*

Jonathan G.C. Fombonne

Harris County Attorney

Sarah Utley (pro hac vice app. forthcoming)
Managing Counsel
Bethany Dwyer (pro hac vice app. forthcoming)
Deputy Division Director - Environmental Division
R. Chan Tysor (pro hac vice)
Senior Assistant County Attorney
Alexandra "Alex" Keiser (pro hac vice)
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel: (713) 274-5102
Fax: (713) 437-4211

jonathan.fombonne@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscoupntytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

By: */s/ Jonathan G.C. Fombonne*

*Attorneys for Plaintiff Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago

Rebecca A. Hirsch (IL ARDC 6279592) (pro hac vice)
City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Rebecca.Hirsch2@cityofchicago.org

By: */s/ Rebecca Hirsch*

*Attorneys for Plaintiff City of Chicago*

Ebony M. Thompson
Baltimore City Solicitor

Christopher Sousa (SBN 264874)
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (410) 396-3947

30
PLS' REPLY BRIEF ISO PRELIMINARY INJUNCTION, No. 3:25-cv-03698-SI

sara.gross@baltimorecity.gov

By: */s/ Christopher Sousa*

*Attorneys for Plaintiff City of Baltimore*

PLS' REPLY BRIEF ISO PRELIMINARY INJUNCTION, No. 3:25-cv-03698-SI