UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO (AFGE), et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, et al., <br><br> Defendants. | Case No. 25-cv-03698-SI <br><br> **ORDER DENYING MOTION TO DISMISS SUPPLEMENTAL COMPLAINT AND RESOLVING DISCOVERY DISPUTE RE: SUPPLEMENTAL COMPLAINT** <br><br> Re: Dkt. No. 402 |

Defendants have moved to dismiss the supplemental complaint in this action, which adds allegations regarding Executive Order 14356 and new claims against defendants Federal Emergency Management Agency ("FEMA") and Department of Homeland Security ("DHS") and their agency heads. The Court held a hearing on June 23, 2026. For the reasons set forth below, the Court denies the motion. This Order also resolves the pending dispute regarding discovery related to the supplemental complaint.

**BACKGROUND**

The Court recites the lengthy factual and procedural history of this case only as necessary to resolve the present motion. Plaintiffs originally filed suit on April 28, 2025, challenging the executive branch's authority to conduct large-scale reductions in force ("RIFs") and reorganizations of federal agencies without the participation of Congress. Dkt. No. 1. At the heart of plaintiffs' original complaint are allegations regarding the implementation of Executive Order 14210, "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative." 90 Fed. Reg. 9669 (Feb. 11, 2025) ("EO 14210"). On July 8, 2025, the Supreme Court

stayed this Court's preliminary injunction pausing further layoffs at the defendant federal agencies. *Trump v. Am. Fed'n of Gov't Emps.*, 606 U.S. ---, 145 S. Ct. 2635, 222 L. Ed. 2d 1159 (2025). On September 9, 2025, this Court denied defendants' motion to dismiss, with the exception that plaintiffs' claims against DOGE were dismissed with leave to amend. Dkt. No. 259. On September 29, 2025, plaintiffs filed the now operative Second Amended Complaint. Dkt. No. 270 ("SAC").

On January 27, 2026, plaintiffs filed an unopposed motion for leave to file a supplemental complaint. Dkt. No. 290. The Court granted the motion on January 30, 2026. Dkt. No. 295. That same day, plaintiffs filed the supplemental complaint at issue here. Dkt. No. 298 ("Suppl. Compl."). Plaintiffs added a new plaintiff, American Foreign Service Association, which represents employees at the Department of State. *Id*. ¶ 438. Plaintiffs also added new defendants FEMA and former Senior Official Performing the Duties of FEMA Administrator, Karen Evans. *Id.* ¶¶ 439-440.

Plaintiffs supplement existing claims in this suit by adding allegations related to President Trump's October 15, 2025 Executive Order 14356, "Ensuring Accountability in Federal Hiring," 90 Fed. Reg. 48387 (Oct. 15, 2025) ("EO 14356") and its requirement that agencies create, implement, and comply with "Annual Staffing Plans." *Id.* ¶¶ 435-437, 441-455, 569-574.

Of relevance here, at the outset, EO 14356 declares:

> In just 8 months, my Administration has dramatically reduced the size of the Federal workforce, . . . while prioritizing hiring in national security, immigration enforcement, public safety, and other roles that further my Administration's priorities and benefit American taxpayers. The results of this approach have surpassed the ratio of four departures for each new hire set forth in Executive Order 14210 of February 11, 2025 (Implementing the President's ''Department of Government Efficiency'' Workforce Optimization Initiative). To protect and expand upon these historic improvements, and to ensure that the Federal Government is optimally staffed to meet critical mission needs and implement the agenda that the American people elected me to pursue, Federal hiring shall be subject to the following policies and procedures going forward.

EO 14356 § 1; *see also* Suppl. Compl. ¶ 441.[1] EO 14356 directs agencies to create "Annual Staffing Plans" in which "agencies shall seek to improve operational efficiency; eliminate duplicative or

---

[1] The Court *sua sponte* incorporates by reference EO 14356, which plaintiffs refer to "extensively" in the supplemental complaint and which "form[] the basis of the plaintiff[s'] claim." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1022 (9th Cir. 2018) (citation omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

unnecessary functions and positions; reduce unnecessary or low-value contractor positions; [and] promote employee accountability . . . ." EO 14356 § 2(c)(1). EO 14356 also provides that agencies "shall" prepare these Annual Staffing Plans within sixty days of October 15, 2025; submit "final" plans to the Office of Personnel Management ("OPM") and the Office of Management and Budget ("OMB"); "shall comply with the Annual Staffing Plans throughout the fiscal year[;]" and "shall provide updates to OPM and OMB at the beginning of each quarter . . . showing progress in implementing their Annual Staffing Plans." *Id*. § (2)(c)(i)-(iii).

On November 5, 2025, OMB and OPM issued a memorandum ("11/5/25 OMB/OPM Memorandum") to all federal agencies implementing EO 14356, stating in part:

> The agency's Annual Staffing Plan shall additionally consider efficiencies that may be created by organizational restructuring, removal of unnecessary management layers, elimination of duplicative or unnecessary functions and positions, consolidation of administrative functions, reduction of unnecessary or low-value contractor positions, performance management of underperforming employees, effective and efficient distribution of workload across similar positions and shared skill sets, process streamlining and improvements, and new technologies.

OMB/OPM Memorandum, Guidance on Executive Order 14356, *Ensuring Continued Accountability in Federal Hiring*, at 3 (Nov. 5, 2025), *available at* https://www.opm.gov/chcoc/latest-memos/guidance-on-executive-order-14356-ensuring-continued-accountability-in-federal-hiring.pdf [https://perma.cc/2TGY-KNZH].

According to the supplemental complaint, in December 2025, existing defendant DHS and new defendant FEMA implemented plans to effectuate EO 14356 and dramatically reduce the FEMA workforce by half. Suppl. Compl. ¶¶ 472-522. DHS and FEMA allegedly began to implement this plan by systematically not renewing a category of FEMA staff—the Cadre of On-Call Response/ Recovery ("CORE") positions—beginning January 1, 2026. *Id.* ¶ 480.

CORE staff are temporary personnel authorized by the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. §§ 5121 et seq. *Id.* ¶ 459; Dkt. No. 303-1 ("Coen Decl.") ¶ 5. The Stafford Act authorizes agencies to "appoint and fix the compensation of such temporary personnel as may be necessary, without regard to the provisions of Title 5 governing appointments in competitive service." 42 U.S.C. § 5149(b)(1); Suppl. Compl. ¶ 457. CORE staff

United States District Court
Northern District of California

comprise about forty percent of the FEMA workforce and historically serve renewable two- to four-year terms. *Id.* ¶ 459; Coen Decl. ¶ 5. CORE personnel receive "not-to-exceed" ("NTE") dates when hired. Suppl. Compl. ¶ 471. Beginning 90 days prior to the NTE date, "the employee and supervisor submit renewal paperwork that includes the supervisor's approval. Historically, CORE employee renewals have been routinely approved by FEMA with no DHS involvement." *Id.*

Plaintiffs allege that DHs has unlawfully ordered FEMA to reduce itself by half. *Id.* ¶ 437. They allege: "These DHS actions to transform and dismantle FEMA (which Congress intended to be independent of DHS control . . .) implement Defendants' continued scheme to downsize the federal government in contravention of Congress's directives and Article I of the U.S. Constitution." *Id.* According to the supplemental complaint, Congress "removed DHS authority over FEMA in the Post-Katrina Emergency Management Reform Act of 2006[,]"[2] which "transferred FEMA's functions (and personnel), previously transferred by statute to DHS and its Under-Secretary for Emergency Preparedness, back to FEMA[.]" *Id.* ¶¶ 538-539. They quote the statute as follows: "All functions of the Federal Emergency Management Agency, including existing responsibilities for emergency alert systems and continuity of operations and continuity of government plans and programs as constituted on June 1, 2006, including all of its personnel, assets, components, authorities, grant programs, and liabilities, and including the functions of the Under Secretary for Federal Emergency Management relating thereto" "are transferred to the Agency." *Id.* ¶ 539 (quoting 6 U.S.C. § 315(a)(1)).

Plaintiffs' supplemental complaint brings new claims against DHS and (now former) DHS Secretary Kristi Noem challenging DHS's alleged "orders" to FEMA to reduce its staff and not to renew CORE employees as: agency action not in accordance with law and exceeding statutory authority under the Administrative Procedure Act ("APA") (Claim VIII); *ultra vires* and unconstitutional government action (Claim IX); and arbitrary and capricious agency action under the APA (Claim X). *Id.* ¶¶ 575-589. Plaintiffs add similar claims against FEMA and (now former) Senior Official Performing the Duties of Administrator Karen Evans, alleging Evans and FEMA

___

[2] Pub. L. No. 109-295, 120 Stat. 1394.

have violated the law and exceeded statutory authority under the APA (Claims XI); that FEMA acted *ultra vires* in not renewing CORE employees (Claim XII); and that the non-renewals are arbitrary and capricious agency action under the APA (Claim XIII). *Id*. ¶¶ 596-604.

On February 10, 2026, plaintiffs filed a motion for temporary restraining order related to the alleged non-renewals of CORE employees taking place at FEMA beginning January 1, 2026. Dkt. No. 301. The Court converted plaintiffs' motion for temporary restraining order into a motion for preliminary injunction and set a briefing schedule. Dkt. No. 304. The Court received full briefing from both sides and heard argument on March 3, 2026. Dkt. Nos. 312, 314, 319. The Court then authorized certain expedited discovery related to whether or not DHS ordered or directed that FEMA make staffing cuts (and cut staffing to a certain level). Dkt. Nos. 321, 328, 336, 339, 351, 358, 362, 370, 381. Following discovery, the Court received supplemental briefing from both sides on the pending motion for preliminary injunction. Dkt. Nos. 411, 418, 423. That matter is resolved in a separate order.

On May 22, 2026, defendants moved to dismiss the supplemental complaint for lack of subject matter jurisdiction. Dkt. No. 298 ("Mot."). Plaintiffs oppose, Dkt. No. 417 ("Opp'n"), and defendants have filed a reply brief, Dkt. No. 419 ("Reply").

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either facially or factually. *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual.").

**DISCUSSION**

**I.    Supplemental Allegations Regarding Executive Order 14356 & Annual Staffing Plans**

Defendants forward three arguments in support of dismissing the supplemental complaint's added allegations regarding EO 14356 and the Annual Staffing Plans.  First, defendants argue that plaintiffs lack standing because they allege no particularized or concrete injury.  Mot. at 9-13. Second, they contend that plaintiffs' additional allegations are constitutionally and prudentially unripe.  *Id.* at 13-15.  Third, defendants argue that neither the 11/5/25 OMB/OPM Memorandum nor the Annual Staffing Plans are agency action, let alone final agency action that may be challenged through the APA.  *Id.* at 15-17.

The Court agrees with plaintiffs that defendants misconstrue the additional factual allegations as separate claims when they argue that plaintiffs must make an independent showing of standing, ripeness, and final agency action as to all of these new allegations.  Plaintiffs pled no new claims in this portion of the complaint.  Instead, plaintiffs supplement *existing* claims with new factual developments regarding EO 14356, the 11/5/25 OMB/OPM Memorandum, and the Annual Staffing Plans.  *See* Suppl. Compl. ¶¶ 569-574.  Plaintiffs cite district court cases that stand for the proposition that a motion to dismiss shall not be used to dismiss only parts of claims, particularly where allegations "cannot be cleanly separated out" because they are "integral" to understanding a claim.  *See, e.g., Riganian v. LiveRamp Holdings, Inc.,* 791 F. Supp. 3d 1075, 1085 (N.D. Cal. 2025); *see also Jones v. City of Los Angeles*, No. 2:20-cv-11502-VAP-JCx, 2021 WL 6496719, at *6 n.10 (C.D. Cal. June 25, 2021) ("The Court cannot dismiss part of a claim.").  In reply, defendants argue that this "piecemeal motion" rule does not apply to Rule 12(b)(1) motions.  Reply at 2.  However, defendants identify no authority to support the position that a 12(b)(1) motion can be used to dismiss supplemental factual allegations rather than claims, nor did the Court identify any such cases.

The Court further rejects defendants' argument that plaintiffs' claims are unripe because an Annual Staffing Plan is merely a "forward-looking workforce planning document predicting hiring needs for the coming year."  *See* Mot. at 2, 11; *see also* Reply at 6.  The text of EO 14356 itself belies defendants' assertion that such a plan is only "aimed at the conditions under which a vacant position 'may be filled' or a new position 'may be created.'"  *See* Mot. at 11 (quoting EO 14356

§ 2). Defendants selectively ignore language in EO 14356 related to staffing reductions. *See* Suppl. Compl. ¶ 442 (citing EO 14356 § 2(c), that in the plans, "agencies shall seek to . . . *eliminate* duplicative or *unnecessary functions and positions* . . .") (emphasis in Suppl. Compl.). As alleged by plaintiffs, one such plan, which the EO says shall be "final," has begun to be implemented at FEMA with the non-renewals of COREs beginning January 1, 2026. *Id.* ¶¶ 443 (citing EO 14356 § 2(c)), 455, 477, 484-485.

The Court further rejects defendants' ripeness arguments because they rest on factual disputes ill-suited for resolution at this stage of the case. The doctrine of ripeness "is a means by which federal courts dispose of matters that are premature for review because the purported injuries are too speculative and may never occur." *Cummings v. Cenergy Int'l Servs., LLC*, 271 F. Supp. 3d 1182, 1187-88 (E.D. Cal. 2017). Defendants' ripeness arguments center on a version of the facts very different from what plaintiffs put forth in their supplemental complaint. At the hearing, for instance, defendants argued that plaintiffs "haven't *shown* anything that's flown from an Annual Staffing Plan . . . ." Hrg. Tr. (emphasis added). It is not plaintiffs' burden to make an evidentiary showing at this stage. Their supplemental complaint clearly alleges that DHS has created an Annual Staffing Plan that "includes the plan to cut FEMA staff in half" and that the plan has already begun taking effect, beginning with the non-renewals of CORE staff with NTE dates from January 1, 2026. *See* Suppl. Compl. ¶¶ 436-437, 477, 480-481. Whether or not the non-renewals of the COREs are simply "atmospherics," as defense counsel contended at the hearing, rather than actions taken pursuant to a final staffing plan, are factual questions best left for summary judgment.

In sum, plaintiffs' additional allegations are intertwined with the claims in plaintiffs' operative complaint because the actions challenged are a continuation of EO 14210 and the Agency RIF and Reorganization Plans ("ARRPs") created in response. Indeed, EO 14356 explicitly invokes EO 14210 and is expressly intended "[t]o protect and expand upon these historic improvements." EO 14356 § 1 ("In just 8 months, my Administration has dramatically reduced the size of the Federal workforce . . ."). Similarly, the 11/5/2025 OMB/OPM Memorandum invokes EO 14210 and the administration's "unprecedented reductions in the Federal workforce." 11/5/25 OMB/OPM Memorandum at 1 & n.1. Plaintiffs' supplemental complaint alleges that defendants are

7

implementing the same Executive Branch directives to reorganize and vastly reduce defendant agencies' workforce. For the same reasons that the Court found it has subject matter jurisdiction as to the operative complaint, the Court also maintains subject matter jurisdiction as to the additional allegations. *See* Dkt. No. 124 at 11-27, 42-43 ("Order Granting Preliminary Injunction"); Dkt. No. 259 ("Order Granting in Part and Denying in Part Motion to Dismiss").

## II.   Supplemental FEMA & DHS Claims

Defendants' motion next raises preclusion and standing arguments specific to the additional claims regarding DHS and FEMA. Defendants also argue that plaintiffs cannot establish final agency action to bring their APA claims because plaintiffs' theory that DHS issued directives to FEMA regarding CORE renewals "has been factually disproved" through expedited discovery. Mot. at 2, 24-25.

### A.   Preclusive Effect of the CSRA

Defendants first argue that the Civil Service Reform Act of 1978 ("CSRA") precludes judicial review of plaintiffs' challenge to the non-renewals of CORE staff. Mot. at 18-19. Although the Court has visited this argument numerous times over the course of this lawsuit and the related action,[3] the argument with regard to FEMA and the COREs is slightly different. It is undisputed that CORE employees are not covered by the civil service protections of Title 5 and have no rights to challenge their terminations before the Merit Systems Protection Board. *See id.* (citing 42 U.S.C. § 5149(b)(1)). Defendants argue that this case involves "a textbook, broad-scale personnel matter" and that "the exclusion of temporary Stafford Act employees from the CSRA's review scheme reflects Congress's considered judgment about which employees can challenge personnel decisions, and is not *carte blanche* to circumvent the CSRA entirely." *Id.* at 20 (citing *Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004) (Roberts, J.)).

In support, defendants rely on *Block v. Community Nutrition Institute,* 467 U.S. 340, 346-47

---

[3] *See Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Mgmt. & Budget*, No. 25-cv-8302-SI (N.D. Cal., filed Sept. 30, 2025).

(1984), and *United States v. Fausto*, 484 U.S. 439 (1988). *Block*'s application to this case is dubious. In *Block*, the Supreme Court "observed that, under the Agricultural Marketing Agreement Act of 1937, the omission of review procedures for consumers affected by milk market orders, coupled with the provision of such procedures for milk handlers so affected, was strong evidence that Congress intended to preclude consumers from obtaining judicial review." *Fausto*, 484 U.S. at 447-48 (citing *Block*, 467 U.S. at 345-48). In *Fausto*, a nonpreference excepted service employee sued in Claims Court under the Back Pay Act, 5 U.S.C. § 5596, to recover 30 days of backpay withheld when he was suspended for misconduct. *Id.* at 440-43. The Supreme Court found that the CSRA precluded judicial review of such claims brought by individuals of this employment class. The Court explained, "The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75, combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter." *Id.* at 448.

Here, the Court emphasizes that the claims plaintiffs bring regarding FEMA—like the claims brought earlier in this case—do not challenge individual personnel actions. Indeed, as defendants themselves note, no individual CORE member is a plaintiff here. *See* Mot. at 21. This case is thus unlike the individual backpay action brought in *Fausto*. According to plaintiffs, the act of not renewing the COREs beginning January 1 was the downstream effect of the broader structural problem that they challenge as contrary to law and *ultra vires*: that DHS unlawfully usurped FEMA's authority over FEMA personnel decisions and directed that FEMA include a fifty percent cut in its staffing plan. As this Court previously found, "[t]he heart of this case does not concern whether agencies followed established RIF regulations and procedures . . . but whether agencies were unlawfully instructed to initiate large-scale RIFs and reorganizations in the first place." *See AFGE I*, 784 F. Supp. 3d at 1342. The CORE employees "are simply the ones to suffer most immediately the collateral damage of the allegedly unlawful actions." *See id.*

The Court incorporates by reference its analysis from a preliminary injunction issued earlier in this case, where the Ninth Circuit likewise rejected defendants' argument regarding the preclusive

United States District Court
Northern District of California

effect of the CSRA. *See Am. Fed'n of Gov't Emps. v. Trump*, 784 F. Supp. 3d 1316, 1337-42 (N.D. Cal. 2025) [hereinafter *AFGE I*], *emergency motion for stay pending appeal denied*, 139 F.4th 1020 (9th Cir. 2025) [*AFGE II*], *stayed pending appeal*, 145 S. Ct. 2635, *vacated and remanded on other grounds*, 155 F.4th 1082 (9th Cir. 2025).  In denying the government's application for an emergency stay of the preliminary injunction, the Ninth Circuit found that all three factors under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994), favored plaintiffs.  *AFGE II*, 139 F.4th at 1030.  In sum, the Ninth Circuit found that "Plaintiffs' *ultra vires* and APA claims plainly fall outside the scope of the CSRA's review provisions[,]" that a constitutional challenge of the type the plaintiffs were raising would be "collateral" to the subject of an individual employment dispute before the administrative body, and that the relevant administrative bodies "lack the relevant expertise, as well as the jurisdiction," to decide the structural constitutional or statutory APA challenges.  *Id.* at 1030-32.  Finally, the Ninth Circuit found that "channeling Plaintiffs' claims would preclude meaningful judicial review."  *Id.* at 1032.  Although the Supreme Court later granted defendants an emergency stay of the injunction, the Supreme Court did not address the preclusion argument that the government raised in its stay application.  *See Trump v. Am. Fed'n of Gov't Emps.*, 606 U.S. ---, 145 S. Ct. 2635 (2025) (granting stay "because the other factors bearing on whether to grant a stay are satisfied").

The Court rejects defendants' argument that the CSRA precludes district court review of the claims at issue here.

### B.     Article III Standing

Defendants also argue that the Court may not adjudicate plaintiffs' claims because plaintiffs lack standing.  Mot. at 21-24.[4]  Federal courts may only hear a case if plaintiffs can show they have

---

[4] Three union plaintiffs and six local government plaintiffs moved for preliminary injunctive relief on the FEMA claims.  The three union plaintiffs are the American Federation of Government Employees, AFL-CIO ("AFGE"); the American Federation of State County and Municipal Employees ("AFSCME"); and Service Employees International Union ("SEIU").  The local government plaintiffs are the County of Santa Clara, California; City of Chicago, Illinois; Martin Luther King, Jr. County, Washington; Harris County, Texas; City of Baltimore, Maryland; and City and County of San Francisco, California.

United States District Court
Northern District of California

standing to sue. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016, revised May 24, 2016). "As a general rule, in an injunctive case this court need not address standing of each plaintiff if it concludes that one plaintiff has standing." *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009) (citing *Preminger v. Peake*, 552 F.3d 757, 764 (9th Cir. 2008)).

To establish standing to sue, plaintiffs must show an injury, trace that injury to the defendants' conduct, and prove that courts can provide adequate redress for the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The injury "must be concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and citation omitted). To be imminent, a threatened injury must be "certainly impending"— "allegations of possible future injury are not sufficient." *Id.* (internal quotation marks, brackets, and citations omitted).

Organizational plaintiffs such as trade unions or membership-based non-profit organizations have two paths to establish standing: standing where the organization has suffered injury in its own right, and representational/associational standing where the organization brings suit on behalf of its members. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023); *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 398 (2024) (Thomas, J., concurring). "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Organizations without formal members may achieve associational standing if they are "the functional equivalent of a membership organization." *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25 (D.C. Cir. 2002) (citing *Hunt*, 432 U.S. at 342-45).

Defendants challenge each plaintiff's standing, arguing that no plaintiff has suffered a concrete, particularized injury. Defendants first argue that none of the plaintiffs are themselves CORE employees who were non-renewed or who have been informed they will be non-renewed.

11

Mot. at 21. Defendants further argue that the plaintiff local governments cannot establish organizational standing based on their assertions that CORE non-renewals will inhibit FEMA's ability to carry out disaster relief response and strain the local governments' resources. *Id.* at 21-22. Defendants also argue that plaintiff unions AFSCME's and SEIU's alleged injuries are based on a "'highly attenuated' chain of inferences insufficient to establish an Article III injury that is certainly impending." *Id.* at 23. Defendants contend that plaintiff union AFGE lacks standing because plaintiffs provided no declarations from dues-paying members who are CORE employees and who have been or will be non-renewed. *Id*. at 23-24.

The Court finds that plaintiffs have sufficiently established standing at least as to plaintiff union AFGE. It is sufficient that AFGE continues to provide representational services to FEMA employees, "including advice, assistance and representation with respect to disciplinary actions and other employment-related issues." *See* Dkt. No. 303 ("Jackson Decl.") ¶ 6. Evidence of dues-paying membership is not required to establish a union's associational standing, as organizations without *any* formal members can establish associational standing if they are "the functional equivalent of a traditional membership organization." *See Fund Democracy*, 278 F.3d at 25. AFGE Local 4060 President Khaalis Jackson describes one bargaining unit member who was non-renewed and the injury caused by that non-renewal. *Id.* ¶ 46(a).[5] This member worried she would have to cancel specialized medical appointments and would not be able to afford her prescriptions, since her health insurance was to terminate on February 13, 2026, and her savings would only cover the cost of one month of rent. *Id.* AFGE also clarified that it does have current dues-paying members who are CORE employees who were non-renewed; whose NTE dates passed without renewal and who remained in limbo; and those with impending NTE dates. Dkt. No. 314-3 ("Schwarz Decl.") ¶¶ 5-6. Non-renewed members experienced "severe hardships, including the loss of health insurance requiring cancelation of critical appointments and procedures and financial uncertainty affecting

_____

[5] Defendants also suggest that because AFGE Local 4060 "is not a named Plaintiff" AFGE Local members cannot confer standing upon plaintiff national AFGE. Mot. at 24. However, plaintiffs have adequately explained that AFGE represents members of its affiliated local chapters. *See* Dkt. No. 423 at 16 n.17.

United States District Court
Northern District of California

their ability to afford housing and other basic necessities." *Id.* ¶ 5. The Court finds the types of harms plaintiff AFGE asserts are both concrete and imminent, and therefore sufficient to establish injury.[6]

The Court is also not persuaded by defendants' argument that the declarations are insufficient because they refer to "an unknown number of unnamed members" rather than an "*identified* member[.]" *See* Mot. at 24; Reply at 12. "As a general rule of representational standing, when it is clear and not speculative that a member of a group will be adversely affected by a challenged action and a defendant does not need to know the identity of a particular member to defend against an organization's claims, the organization does not have to identify particular injured members by name." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 708 (9th Cir. 2025).

The Court finds moreover that AFGE has standing both on behalf of its dues-paying members and in its own right for injury the union itself suffers by defendants' challenged actions. Through increasing workloads, non-renewals of CORE staff have affected AFGE-represented employees who are still employed at FEMA. *See* Dkt. No. 303-3 ("Burton Decl.") ¶ 10. Furthermore, AFGE has adequately demonstrated that the challenged actions harm AFGE's core organizational activities by requiring AFGE to expend resources addressing the non-renewals. Jackson Decl. ¶¶ 38, 48. Finally, the termination of members also harms AFGE through loss of dues. *Id.* ¶ 6. These harms are fairly traceable to defendants' actions and redressable by this Court. *See Lujan*, 504 U.S. at 560.

To the extent that defendants also argue that plaintiffs lack standing because FEMA has offered new terms of appointment to CORE employees whose NTE dates lapsed in January, the Court finds that plaintiffs conflate the standing and mootness inquiries.[7] *See* Mot. at 17 n.11; Reply

---

[6] The Court has reviewed the Ninth Circuit's recent decision vacating a preliminary injunction that enjoined President Trump's Executive Order 14251, which excludes agencies including DHS from collective bargaining requirements under the Federal Service Labor-Management Relations (FSLMRS) based on national security concerns. *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, --- F.4th ---, No. 25-4014, 2026 WL 534591 (9th Cir. Feb. 26, 2026). However, the Court finds that the status of AFGE under Executive Order 14251 does not change the standing analysis in this case. *See Fund Democracy*, 278 F.3d at 25.

[7] In response to the pending motion for preliminary injunction, defendants submitted a declaration from Jeff M. Neurauter, Acting Chief Human Capital Officer at FEMA, that the CORE

13

at 12. At the time plaintiffs filed their supplemental complaint and preliminary injunction, the reinstatements had not occurred. *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) (per curiam) ("The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint."). Furthermore, according to plaintiffs, "the COREs who were separated in January have not been reinstated to the positions they previously held "nor provide[d] any remedy, backpay, or retroactive benefits for the time they were separated . . . ." Dkt. No. 411 at 26 (citing Dkt. No. 414-1, Ex. C ("Prieur Dep.") at 309:9-12). Thus, these injuries remain unredressed for even those CORE employees who may have now been rehired.

Having concluded that plaintiff AFGE has standing, the Court finds dismissal unwarranted on these grounds.

### C.    Final Agency Action

The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Because plaintiffs do not allege that any action here was made reviewable by statute, the threshold question is whether the challenged actions constitute "final agency action." If not, this Court is without subject matter jurisdiction to decide the APA claims. *See San Francisco Herring Ass'n v. U.S. Dep't of Interior*, 683 F. App'x 579, 580 (9th Cir. 2017). For an agency action to be reviewable under the APA, the "action must (1) 'mark the consummation of the agency's decisionmaking process' and (2) 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F. 3d 977, 982 (9th Cir. 2006) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). The Supreme Court has "long taken" a "pragmatic approach" to the question of what constitutes final agency action. *San Francisco Herring Ass'n v. Dep't of Interior*, 946 F.3d 564, 577-78 (9th Cir. 2019) (quoting *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 599 (2016)).

---

employees whose NTE dates lapsed in January have now either retired, resigned, or were offered new terms of employment for six months or one year. *See* Dkt. No. 383-1 ("Neurauter Decl.") ¶¶ 1, 4-6.

14

Defendants argue that "DHS's alleged 'order' to FEMA 'not to renew CORE employees' cannot provide the basis for 'final agency action' in this case because the evidence demonstrates that no such order ever issued."[8]  Mot. at 24.  The Court agrees with plaintiffs that defendants' argument shifts into Rule 56 territory by invoking what they claim the record developed during expedited discovery shows.  At this stage, plaintiffs have sufficiently alleged final agency action. The theory plaintiffs set out in the supplemental complaint is that "the DHS Annual Staffing Plan includes the plan to cut FEMA staff in half" and that the direction to do this unlawfully came as a directive from DHS.  *See* Suppl. Compl. ¶¶ 472-481.  Among other things, the supplemental complaint alleges that FEMA and DHS have engaged in final agency action by "implementing unlawful DHS directives to cede decision-making authority to DHS with respect to the reduction in FEMA positions and in particular the renewals of CORE positions."  *Id.* ¶¶ 578, 593.  These actions took effect through, among other things, DHS's directive to FEMA for a fifty percent cut to FEMA staffing, which was then included in the DHS Annual Staffing Plan and which began to be implemented on the ground when FEMA and DHS did not renew CORE employees whose NTE dates were up, beginning January 1, 2026.  Plaintiffs also note that the EO directs that federal agencies "shall comply" with their Annual Staffing Plans.  *See id.* ¶ 443; Opp'n at 15 (citing EO 14356 § 2(c)(i)-(iii)).  Taken together, the Court finds the supplemental complaint sufficiently alleges final agency action.[9]

Nor is the Court persuaded that the Annual Staffing Plans cannot be final agency action even if defendants are correct that DHS did not submit an Annual Staffing Plan to OMB or OPM.  *See* Mot. at 25.  Annual Staffing Plans are not made less final because they have not been submitted to

---

[8] Plaintiffs allege that DHS unlawfully usurped FEMA's authority regarding FEMA reappointments: "DHS, not FEMA, is making the decisions not to renew these employees."  Suppl. Compl. ¶¶ 484, 492.

[9] The Court also notes that the final agency actionargument applies only to plaintiffs' APA claims against DHS, not those against FEMA itself.  Further, this argument does not apply to plaintiffs' *ultra vires* claims against DHS and FEMA, as the *ultra vires* claims do not share the APA's final agency action requirement.  *See Sierra Club v. Trump*, 963 F.3d 874, 888-93 (9th Cir. 2020), *vacated and remanded sub nom. Biden v. Sierra Club*, 142 S. Ct. 46, 210 L. Ed. 2d 985 (2021).

United States District Court
Northern District of California

another agency for review: "a federal agency's assessment, plan, or decision qualifies as final agency action even if the ultimate impact of that action rests on some other occurrence—for instance, a future site-specific application, a decision by another administrative agency, or conduct by a regulated party." *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*, 128 F.4th 1089, 1110 (9th Cir. 2025). Based on the record presently before the Court, the Court rejects defendants' final agency action argument.

Having considered and rejected each of defendants' arguments for dismissal of the supplemental complaint under Rule 12(b)(1), the Court DENIES defendants' motion to dismiss in its entirety.[10]

### III.     Discovery Dispute

Also pending before the Court is the parties' discovery dispute regarding plaintiffs' March 20, 2026 requests for production of documents. The parties have extensively briefed this dispute.[11] *See* Dkt. Nos. 400, 403, 404, 409. In dispute are plaintiffs' requests for production of documents Nos. 4 through 9. Plaintiffs ask that defendants be ordered to produce the documents within ten days. *See* Dkt. No. 404-2.

Defendants first argue that the Court should wait to rule on the discovery dispute until after resolution of the motion to dismiss, arguing that discovery can then be tailored to whatever remains of the case at that stage. The Court deferred ruling on the discovery dispute and therefore defendants

---

[10] In a footnote, defendants also argue that plaintiffs fail to state a claim under Rule 12(b)(6). Mot. at 12 n.19. In defendants' reply brief, defendants clarify that their "motion invokes Rule 12(b)(6) only as an alternative basis for judgment in their favor as to EO 14356." Reply at 419. However, as discussed in Section I, *supra*, plaintiffs plead no new claims as to EO 14356. As defendants acknowledge in their reply brief, courts disfavor piecemeal dismissal of allegations under Rule 12(b)(6). *See* Reply at 2 & n.1; *see also, Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 875 (N.D. Cal. 2024) ("Motions to dismiss should not be used for piecemeal purposes."); *Little v. Pac. Seafood Procurement, LLC,* No. 23-CV-01098-AGT, 2025 WL 500893, at *3 (N.D. Cal. Jan. 17, 2025) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims …").

[11] In this instance, the Court will excuse the parties' failure to comply with the undersigned's Standing Order on discovery disputes. In the future, the parties must either strictly comply with the Standing Order or else seek advance permission for an exception.

United States District Court
Northern District of California

have effectively received this requested relief.  Defendants' objections regarding ripeness are overruled.  Second, defendants object that the discovery plaintiffs seek is overly broad and burdensome and seeks information "that is manifestly privileged."  Dkt. No. 403 at 1.

The requests at issue seek the following:

- Request No. 4 seeks: "All versions of ANNUAL STAFFING PLANs."

- Request No. 5 seeks: "All 'updates' required by Executive Order 14356 to be submitted "to OPM and OMB at the beginning of each quarter, beginning with the second quarter of the 2026 fiscal year, showing progress in implementing their Annual Staffing Plans."

- Request No. 6 seeks: "All DOCUMENTS referencing or reflecting any 'exemption' request made to, or granted or denied by OPM, with respect to ANNUAL STAFFING PLANS, in whole or part."

- Request No. 7 seeks: "All COMMUNICATIONS discussing any ANNUAL STAFFING PLAN (in whole or any part) from October 15, 2025 to the present, including but not limited to COMMUNICATIONS between any Federal Agency Defendant and OMB or OPM, within or between OMB and OPM, and within any Federal Agency Defendant."

- Request No. 8 seeks: "All DOCUMENTS, including but not limited to COMMUNICATIONS, from September 1, 2025 to the present, referring to or discussing reductions-in-force ('RIFs') including but not limited to communications within or among Federal Agency Defendants, between Federal Agency Defendants and OPM or OMB, and within or between OPM and OMB."

- Request No. 9 seeks: "All OMB or OPM DOCUMENTS, including but not limited to COMMUNICATIONS, from September 1, 2025 to the present, not already produced in this litigation, pertaining to: 1) 'workforce reduction' or 'downsize[ing] the federal workforce'; (2) the 'duplicative or unnecessary functions and positions' referenced in EO 14536; or 3) the 'unnecessary roles' referenced by OMB Director Russell Vought in the December 8, 2025 Memorandum regarding the 'President's Management Agenda.' ."

Dkt. No. 400-1, Ex. A at 5-10.

On the whole, the Court agrees with plaintiffs that the documents sought are relevant and should be produced.  Just as discovery on the original complaint centered around production of the ARRPs and the communications regarding ARRPs, plaintiffs now seek production of the Annual Staffing Plans and communications regarding those plans, pursuant to the newer Executive Order

17

(EO 14356) which by its own terms is a continuation of the Executive Order originally at issue in this case (EO 14210). In other words, just as EO 14210 ordered agencies to create and submit to OMB/OPM "Agency RIF and Reorganization Plans," now EO 14356 orders agencies to create and submit to OMB/OPM "Annual Staffing Plans."

Earlier in this litigation, the Court ordered the production of the defendant agencies' ARRPs[12] and of inter-agency communications regarding the ARRPs. Dkt. Nos. 214, 228. In so doing, the Court found that the agency plans were relevant to this litigation, and that—even assuming that some of the material in the ARRPs was covered by the deliberative process privilege—"the need for accurate fact-finding overr[ode] the government's interests in non-disclosure." Dkt. No. 214 at 8; *see also id.* at 7 (citing *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)). Defendants sought relief from the Ninth Circuit, which stayed production of the ARRPs pending resolution of the petition for writ of mandamus.

On September 19, 2025, the Ninth Circuit issued an Order denying defendants' petition for a writ of mandamus, vacating the preliminary injunction issued earlier in the case, and remanding the case to this Court. *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 155 F.4th 1082 (9th Cir. 2025). In denying mandamus, the Ninth Circuit agreed with this Court that it was unnecessary to decide whether the deliberative process privilege applied to the ARRPs because there was "no clear error in the district court's determination that the privilege, even if applicable, is overcome in the circumstances of this case." *Id.* at 1091. The appellate court rejected defendants' claim that the ARRPs were "predecisional" based on OMB's blanket statement that "[n]o ARRP is ever 'final.'" *Id.* "[O]ur circuit and others have long held [that] undifferentiated declarations of perpetual non-finality are an inadequate basis for a claim of privilege." *Id.* There was also "little evidence in the record to support the government's assertion that the ARRPs are deliberative[;]" instead, "all available evidence . . . indicates that the ARRPs represent the considered position of the agency submitted for approval by OMB, and not the personal opinions of an individual." *Id.* at 1091-92. Even assuming that some of the ARRPs were predecisional deliberative documents, the Ninth

---

[12] The ARRPs were to be produced to the Court *in camera* and to plaintiffs' counsel only. Dkt. No. 214 at 10-11.

18

Circuit agreed with this Court that the privilege had been overridden, based on the factors articulated in *Warner*: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.* at 1092 (quoting *Warner*, 742 F.2d at 1161).

Now, defendants raise roughly the same arguments against production of the Annual Staffing Plans that they raised in objecting to production of the ARRPs: that the discovery is overbroad, unduly burdensome, and protected by the deliberative process privilege. For the same reasons articulated in its prior order (Dkt. No. 214) and as affirmed by the Ninth Circuit, the Court finds that any deliberative process privilege is overridden by the circumstances of this case. Considering the *Warner* factors, the Court finds the Annual Staffing Plans are highly relevant to plaintiffs' claims. Plaintiffs' supplemental complaint alleges that the Annual Staffing Plans have been ordered through "a new round of directives to implement the workforce reduction directives initially set forth in the President's Executive Order 14210 . . . ." Suppl. Compl. ¶ 436. By EO 14356's own terms, agencies "shall submit final Annual Staffing Plans to OPM and OMB" that, among other things, "eliminate duplicative or unnecessary functions and positions[.]" *See* EO 14356 § 2(c)(i). This goes directly to plaintiffs' claims that the Executive is unlawfully seeking to implement large-scale reductions in force at the federal agency defendants. As to the availability of other evidence (the second *Warner* factor), there is little of this, if any. The Annual Staffing Plans have not been made public, despite the fact that EO 14356 orders that "Agencies shall comply with the Annual Staffing Plans throughout the fiscal year . . . ." *Id.* § 2(c)(ii). And in the case of FEMA and DHS, which have been the focus of the last several months of emergency litigation here, defendants have admitted that high-level officials deleted Signal communications on their personal phones that should have been preserved. *See* Dkt. No. 420. The third *Warner* factor, the government's role in the litigation, is unchanged: "the government—the Executive—is a party to and the focus of the litigation." *See Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019). Finally, there is no indication that "disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *See Warner*, 742 F.2d at 1161. Defendants make

no argument as such, and the Court finds none, particularly if the same protections are put in place here as were used for production of the ARRPs.[13]

Accordingly, the Court overrules defendants' objections based on the deliberative process privilege. Nevertheless, the Court will grant some of the relief defendants seek in their papers. As discussed, the Court has effectively granted defendants' request for a stay of any discovery order pending resolution of the motion to dismiss. The Court further agrees with defendants that ten days is an unreasonably short amount of time to respond to the production requests, given the number of federal agency defendants involved. The Court therefore **ORDERS the parties to meet and confer, within seven days of the date of this Order,** on a schedule for defendants' responses to the outstanding discovery. However, in light of the simultaneously pending litigation on staffing cuts at defendant FEMA, the Court further **ORDERS that production of documents related to FEMA and DHS be expedited and shall be produced within ten days of the date of this Order.**

As to Request No. 8 specifically, defendants ask the Court to issue an order shielding defendants from the request because defendants have recently or would soon "produce tens of thousands of responsive documents from two dozen Agencies" and plaintiffs should first review those documents before seeking further agency communications. Dkt. No. 403 at 2. The Court **ORDERS** further meet and confer on this topic, so that plaintiffs may evaluate the recently produced discovery and the parties may discuss what, if anything, remains outstanding.

As previously ordered with respect to the ARRPs, production of the Annual Staffing Plans shall, for the time being, be produced to plaintiffs' counsel but plaintiffs' counsel may not share the plans or their contents with their clients or any third parties unless or until the Court orders otherwise. The Court will not order broader disclosure without prior notice to defendants' counsel.

# CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants'

---

[13] Defendants appear to argue that further briefing is needed on the question of privilege, *see* Dkt. No. 403 at 1-2, but defendants have already filed two briefs on this discovery dispute, including a "reply" to plaintiffs' "reply" (Dkt. No. 409).

motion to dismiss plaintiffs' supplemental complaint.

The Court OVERRULES defendants' ripeness and deliberative process privilege objections to production of documents responsive to plaintiffs' RFP Nos. 4 through 9.   The parties shall meet and confer, within seven days of the date of this Order, on a schedule for defendants' responses to the outstanding discovery, except that the Court ORDERS that production of documents related to FEMA and DHS shall be produced within ten days of the date of this Order.

**IT IS SO ORDERED**.

Dated: June 26, 2026

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

21