Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
dleonard@altber.com
bchishom@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*
[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **DECLARATION OF MARYANN SALVATORE** |

DECLARATION OF MARYANN SALVATORE, CASE NO. 3:25-CV-03698-SI

**DECLARATION OF MARYANN SALVATORE**

I, Maryann Salvatore, declare as follows:

1.      I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2.      I am currently employed by the U.S. Department of Agriculture's ("USDA") Food and Nutrition Administration ("FNA"), though I will retire at the end of June. I have worked in the agency's Supplemental Nutrition Assistance Program ("SNAP") since 2002. I am a Lead Program Specialist/Quality Control Team Lead at FNA, which means I oversee the work of senior program specialists in quality control, provide technical assistance to states regarding SNAP regulatory compliance, and conduct management evaluations and quality control, among other tasks.

3.      I am also the President of American Federation of Government Employees Local 2735 ("AFGE Local 2735" or the "Union"). I have served as President since 2020, and before that I served as Vice President beginning in 2004.

4.      AFGE Local 2735 represents only employees of FNA at the Mid-Atlantic Regional Office. The bargaining unit consists of employees located at the agency's Robbinsville, New Jersey office, a satellite office in Puerto Rico, and some remote duty stations. There are also non-bargaining unit management employees across the Mid-Atlantic region's offices. AFGE Local 2735 members work jobs that are crucial to the continued functioning of FNA programs. For example, a nutritionist for Supplemental Food Programs provides technical assistance to state agencies on the implementation of FNA programs, including through holding office hours and technical assistance calls with states. A SNAP Team Lead assists states with implementing initiatives to increase payment accuracy, including through providing data analysis, policy recommendations, and assistance with interpreting federal laws and policies.

5.      The Robbinsville office is one of FNA's regional offices and serves the Mid-Atlantic region. The office's jurisdiction covers Washington, D.C., Delaware, Maryland, New Jersey, Pennsylvania, Virginia, West Virginia, and Puerto Rico.

6.      The work of the Robbinsville office involves overseeing 16 federal nutrition programs, the largest of which are SNAP, the Special Supplemental Nutrition Program for

Women, Infants, and Children ("WIC"), and the National School Lunch Program.[1] This work includes, among other things, conducting site visits, performing management evaluations, and overseeing program funding. The office also houses an integrity branch responsible for fraud detection and quality control within SNAP. Office staff oversee program administration at the state level and receive and resolve customer complaints.

7.    The states within the Robbinsville office's jurisdiction rely on FNA staff for substantial technical assistance, particularly on questions concerning how to administer these nutrition programs. For example, states often ask for assistance with ensuring that they follow federal regulations regarding quality control review and ask for help about how to conduct the review according to FNS Handbook 310, which contains the procedures for conducting quality control reviews. FNA employees provide assistance to help ensure the states are in compliance. FNA employees also conduct reviews of state agencies. In my experience, evaluations of the state agencies are most effective when conducted in person. In-person reviews will be more difficult to conduct if we are forced to move out of the Robbinsville, NJ office – which is at the heart of the region we oversee – to one of the "hub" locations further away.

8.    On April 30, 2026, the agency distributed a letter to employees announcing an intent to undertake a "sweeping restructuring" that would "move program and regional offices to state Hubs that will be established in Dallas, TX; Denver, CO; Indianapolis, IN; Kansas City, MO; and Raleigh, NC. Additionally, retailer operations and compliance will occur out of offices in Atlanta, GA; Los Angeles, CA; Dallas, TX; and New York, NY."

9.    Local 2735 has been informed that all of its bargaining unit members will be required to relocate to the "hub" cities, except for the five members who are based out of the

---

[1] The full list of programs is: SNAP, WIC, National School Lunch Program), School Breakfast Program (SBP), Summer Food Service Program (SFSP), Child and Adult Care Food Program (CACFP), Special Milk Program (SMP), Fresh Fruit and Vegetable Program (FFVP), Farmers' Market Nutrition Program (FMNP), Senior Farmers' Market Nutrition Program (SFMNP), Commodity Supplemental Food Program (CSFP), Food Distribution Program on Indian Reservations (FDPIR), The Emergency Food Assistance Program (TEFAP), Food Assistance for Disaster Relief (FADR), Nutrition Assistance for Puerto Rico and other Nutrition Assistance Block Grants, and Food Distribution Programs (general USDA Foods programs).

DECLARATION Of MARYANN SALVATORE, CASE NO. 3:25-CV-03698-SI

Puerto Rico office. As of the date of this declaration, the Union has not been provided a specific timeline for issuance of the Management Directed Reassignment letters, but we expect them to be issued over the summer. The agency has told the Union that all FNA services will continue uninterrupted, but it has not explained how that will be possible, and I am very concerned about how these programs will continue to operate effectively. The reorganization will require me and my colleagues, including those AFGE represents, either to relocate hundreds of miles to a distant "hub" city or to leave the agency.

10. Based on my knowledge of our members, I expect that the great majority will not relocate. The employees in our unit face serious personal obstacles to relocating, which is why I expect most will leave the agency rather than move. Based on my communications with members, these obstacles include: members who are members of the National Guard or military reserves, or who are military spouses, and are unlikely to be able to move; members with medical conditions who are concerned about continuity of treatment; members caring for elderly parents; members who would have to sell their homes; single parents subject to shared-custody arrangements; and members whose spouses also work for the federal government. Workers are also finding it difficult to plan around obligations such as childcare, leases, and their children's schooling. It is no small thing to ask people to uproot their entire lives and move across the country. In my role at the Union and as a colleague I have talked to many of my fellow employees and I know many of them are going to leave USDA, despite many years and even decades of service to the federal government, giving up their careers, income, health and retirement benefits, because they are not able to relocate.

11. My expectation of severe attrition is consistent with a survey conducted by the National Treasury Employees Union ("NTEU") Chapter 226 of both NTEU and AFGE employees. The survey was offered to all FNA employees, both within and outside the NTEU bargaining units. 85% of respondents to the survey from the Robbinsville, New Jersey office answered that they would not relocate.

12. High attrition of this kind would drastically damage the agency's ability to provide services. Based on my experience, the loss of experienced staff who decline to relocate would

DECLARATION Of MARYANN SALVATORE, CASE NO. 3:25-CV-03698-SI

create significant issues with the integrity of the programs FNA administers.  This is work that requires knowledge, experience and relationships, and cannot be replicated simply by hiring someone new who lacks the years of experience and deep relationships with state programs represented among my colleagues.

13.    As an initial matter, the relocation will certainly disrupt services, because USDA will not be able to immediately hire sufficient staff to perform this work, if 85 percent of the staff currently performing the work leave.  For instance, without sufficient staff to review state quality-control work and error rates, the agency would likely be unable to meet its congressionally mandated obligation to calculate and publish the SNAP payment error rate as required by 7 U.S.C. §2025(c)(8)(C). Without that rate, the agency would not be able to successfully carry out other congressionally mandated obligations such as "establishing fiscal incentives that require State agencies with high payment error rates to share in the cost of payment error." 7 U.S.C. §2025(c)(1)(A)(i).

14.    This agency work is important because error rates track instances of overpayment or underpayment of benefits, as well as instances of payments of benefits to ineligible parties. The error rates calculated by FNA allow the federal government to assess the efficiency with which programs like SNAP are operating. States with higher error rates are required to share part of the costs of administering programs like SNAP with the federal government. The oversight that FNA provides is therefore a key part of the mechanism by which the federal government attempts to ensure that programs like SNAP are run efficiently, with appropriate contributions from the states. With the further loss of staff that will be caused by forced relocation, there will not be enough staff at the hubs to perform this work.

15.    The states also rely heavily on FNA for technical assistance on policy questions. We use our knowledge and experience built up over years of reviewing similar issues and our familiarity with these states' programs to help these states resolve their questions and successfully implement their programs. If the states do not receive that technical assistance, the federal nutrition programs they administer would likely become less efficient and could struggle to distribute benefits.

4

DECLARATION Of MARYANN SALVATORE, CASE NO. 3:25-CV-03698-SI

16.    The reductions in staffing caused by reorganization will also reduce oversight of SNAP. The impact of the reduction in staffing will be particularly acute because the agency is required to conduct reviews of state programs every two years rather than every five. With any further reduction in staffing it will simply become impossible to conduct these reviews at a level of acceptable quality to comply with our statutory mandate to ensure the programs are operating correctly.

17.    The agency is already operating under a serious staffing shortage. I was informed by the FNA Acting Associate Administrator for Regional Operations that there were approximately 850 FNA employees across all regional offices before the deferred resignation program was implemented at the beginning of this administration, and now there are only approximately 440 total employees. According to a report by the USDA office of the Inspector General, between December 2024 and December 2025, FNA (then the Food and Nutrition Service) lost 579 employees.[2] In addition, most regions lost most of their top management to the deferred resignation program. USDA has not filled these existing positions, despite congressional authorization and funding.  The forced relocation appears to be a continuation of the attempt to reduce FNA far below the staffing levels needed to perform its functions, and thereby eliminate the services the federal government is providing to food program beneficiaries.

18.    The Robbinsville, NJ office lost approximately one-third of its staff during the deferred resignation program and other actions of the Administration, including the firing and rehiring of probationary employees (during which some did not come back). As a result of the reduced staffing starting in early 2025, workers in this office often have to work extra hours and on weekends to keep up with the workload, and to try to perform job functions outside their area of expertise or knowledge. Staffing is currently so low that we have a public affairs person taking customer complaints, a task that is outside of their normal job duties.

---

[2] Office of the Inspector General, U.S. Department of Agriculture Staffing Levels, at 4 (Dec. 17, 2025), https://www.oversight.gov/sites/default/files/documents/reports/2025-12/USDA%20Staffing%20Levels%20Final%20Report%20-%20Dec%2017_508-signed.pdf (last accessed June 25, 2026).

DECLARATION Of MARYANN SALVATORE, CASE NO. 3:25-CV-03698-SI

19.    These staffing losses cannot be quickly remedied. Based on my experience, it takes a new employee at least three years to fully understand this work and build the experience and relationships necessary to perform effectively, so even if the agency were able to hire replacements, there would be a substantial gap during which the work could not be performed at the necessary level.  There is no guarantee USDA will replace any of these positions.  But even if they do, it will be far harder for new employees to rebuild the needed relationships and institutional knowledge necessary to effectively carry out FNA's mission.

20.    Past experience illustrates the difficulty of transferring regional responsibilities. In 2019, oversight of the U.S. Virgin Islands was reassigned from Mid-Atlantic Regional Office to the Northeast Regional Office. Although that change affected only a small portion of our office's workload, the transition required years to fully transfer operational knowledge, establish working relationships, and achieve continuity in oversight. The proposed elimination of an entire regional office serving seven states would involve a far more complex transition and would significantly increase the likelihood of oversight gaps, delayed corrective actions, weakened technical assistance, and diminished program accountability, and could result in disruptions of service to program recipients and beneficiaries.

21.    The relocation requirement makes little operational sense in light of the stated reason of moving agencies closer to the communities they serve, because the "hub" cities are actually further away from the states we serve in the mid-Atlantic region, where our office is already located.

22.    In addition, USDA has not explained how the work will be allocated in these new "hubs."  Employees who do relocate may not keep the same job, because each state's nutrition programs are unique and learning a new state's programs takes considerable time.

23.    I believe that USDA is well aware that many if not most of the impacted employees are not going to move to these new "hubs," far from family, friends, and their entire lives.  I believe that is the point of these actions, and USDA is attempting to downsize this agency further by forcing people into this choice.  It is not only unfair and disingenuous, it is also a horrible idea for the SNAP program specifically and USDA in general.

DECLARATION Of MARYANN SALVATORE, CASE NO. 3:25-CV-03698-SI

24. Many of the employees I represent have worked in these programs for 15 or 20 years or longer and have dedicated their careers to them. The prospect of starting over in a new city is daunting. The loss of these employees and their skills and experience harms them, the union, the agency and our programs, the states we work with, and the communities we serve.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed June 28, 2026, in __Allentown__, __New Jersey__.

_____
Maryann Salvatore

DECLARATION Of MARYANN SALVATORE, CASE NO. 3:25-CV-03698-SI