CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
BRAD P. ROSENBERG
JEREMY S.B. NEWMAN (MA Bar No. 688968)
Chief Litigation Counsel
CHRISTOPHER HALL
MARIANNE F. KIES
Assistant Branch Directors
ROBERT C. BOMBARD
Trial Attorney
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 532-3114
jeremy.s.newman@usdoj.gov

Counsel for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON SUPPLEMENTAL CLAIMS VIII – XIII** <br><br> Hearing Date: August 28, 2026 <br> Time: 10:00 a.m. PT <br> Judge: Hon. Susan Illston <br> Place: San Francisco Courthouse <br>        Courtroom 1 |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

I.    Factual Background ............................................................................................. 3

      A.    Former FEMA SOPDA Karen Evans Decided Not to Reappoint Certain COREs in January 2026. ................................................................................. 3

      B.    FEMA Prepared an Annual Staffing Plan for DHS, but DHS Never Submitted FEMA's Plan to OMB and OPM. ....................................................... 5

      C.    The FEMA Review Council Has Released Its Final Report, and It Did Not Recommend Cutting FEMA in Half. ...................................................................... 7

      D.    Noem and Evans No Longer Lead DHS or FEMA. ............................................. 7

      E.    FEMA Has Offered Reappointment to the COREs Released in January. ............. 8

II.   Procedural History. ............................................................................................. 8

STANDARD OF REVIEW .......................................................................................... 9

ARGUMENT ............................................................................................................... 10

I.    This Court Lacks Subject-Matter Jurisdiction Over the Supplemental Claims. ............... 10

      A.    The CSRA Precludes Jurisdiction over FEMA's Personnel Decisions, Including Those Relating to COREs. ................................................................... 10

      B.    Plaintiffs Lack Standing to Challenge CORE Non-reappointments. .................... 11

      C.    Plaintiffs' Supplemental Claims Are Moot Because The COREs Whose Term Expirations They Challenge Have Been Offered New Appointments........ 14

II.   Plaintiffs, Who Are Not COREs, Also Cannot Establish Irreparable Harm. ................... 18

III.  The Relief Sought By Plaintiffs Is Overbroad In Multiple Respects............................. 21

      A.    Plaintiffs Ask This Court To Impose Legally Unjustified Restrictions On DHS's Oversight Of Its Component Agency, FEMA. ....................................... 21

      B.    Plaintiffs' Request For Back Pay Is Barred By Sovereign Immunity. ................. 23

CONCLUSION............................................................................................................. 24

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

i

# TABLE OF AUTHORITIES

**CASES**                                                                                         **PAGE(S)**

*AFSCME v. SSA,*
172 F.4th 361 (4th Cir. 2026) ............................................................................ 18

*Am. Fed. of Gov't Emps. v. Trump,*
178 F.4th 456 (9th Cir. 2026) ......................................................................... 4, 12

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump,*
929 F.3d 748 (D.C. Cir. 2019) ........................................................................... 11

*Am. Tunaboat Ass'n v. Brown,*
67 F.3d 1404 (9th Cir. 1995) ............................................................................. 20

*Beberman v. Blinken,*
61 F.4th 978 (D.C. Cir. 2023) ............................................................................ 24

*Block v. Cmty. Nutrition Inst.,*
467 U.S. 340 (1984) .......................................................................................... 11

*Brach v. Newsom,*
38 F.4th 6 (9th Cir. 2022) .................................................................................. 17

*Burns v. Unum Life Ins. Co. of Am.,*
2007 WL 1793779 (N.D. Cal. June 19, 2007) ............................................... 14-15

*C2 Educ. Sys., Inc. v. Lee,*
2018 WL 3328143 (N.D. Cal. July 6, 2018) .................................................. 18, 19

*Cheyenne Tribe v. Norton,*
503 F.3d 836 (9th Cir. 2007) ............................................................................. 10

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ............................................................................................ 18

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ...................................................................................... 12, 14

*Def. of Animals v. U.S. Dep't of Interior,*
648 F.3d 1012 (9th Cir. 2011) ...................................................................... 16, 18

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

ii

*DeFunis v. Odegaard*,

    416 U.S. 312 (1974)................................................................................................................ 18

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,

    601 U.S. 42 (2024).................................................................................................................. 24

*Deutsche Bank Nat'l Tr. Co. v. FDIC*,

    744 F.3d 1124 (9th Cir. 2014) ............................................................................................... 15

*Elgin v. Dep't of Treasury*,

    567 U.S. 1 (2012).................................................................................................................... 10

*FDA v. All. for Hippocratic Med.*,

    602 U.S. 367 (2024)......................................................................................................... 11, 13

*Flast v. Cohen*,

    392 U.S. 83 (1968).................................................................................................................. 15

*Friends of the Earth, Inc. v. Bergland*,

    576 F.2d 1377 (9th Cir. 1978) ............................................................................................... 17

*Fund Democracy, LLC v. SEC*,

    278 F.3d 21 (D.C. Cir. 2002) ................................................................................................. 13

*GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*,

    590 U.S. 432 (2020)............................................................................................................... 22

*Gill v. Whitford*,

    585 U.S. 48 (2018).................................................................................................................. 23

*Hubbard v. EPA*,

    982 F.2d 531 (D.C. Cir. 1992) ........................................................................................... 3, 24

*Hunt v. Wash. State Apple Advert. Comm'n*,

    432 U.S. 333 (1977)......................................................................................................... 12, 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,

    2008 WL 2219837 (N.D. Cal. May 27, 2008),

    *modification denied*, 2008 WL 5479358 (N.D. Cal. Nov. 19, 2008) ................................. 19, 20

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

*J.F. v. New Haven Unified Sch. Dist.*,

    2014 WL 6485643 (N.D. Cal. Nov. 19, 2024) .......................................................................... 15

*J.T. v. District of Columbia*,

    983 F.3d 516 (D.C. Cir. 2020) ................................................................................................. 17

*Kimel v. Fla. Bd. of Regents*,

    528 U.S. 62 (2000) .................................................................................................................. 24

*Lake v. Fontes*,

    83 F.4th 1199 (9th Cir. 2023) ........................................................................................... 11, 12

*Lewis v. Cont'l Bank Corp.*,

    494 U.S. 472 (1990) ................................................................................................................ 15

*Mitchell v. Dupnik*,

    75 F.3d 517 (9th Cir. 1996) .................................................................................................... 15

*Monsanto Co. v. Geertson Seed Farms*,

    561 U.S. 139 (2010) ............................................................................................................. 9, 18

*Murphy v. Hunt*,

    455 U.S. 478 (1982) ................................................................................................................ 17

*Murthy v. Missouri*,

    603 U.S. 43 (2024) .................................................................................................................. 14

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,

    886 F.3d 803 (9th Cir. 2018) .................................................................................................. 20

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,

    762 F.2d 1374 (9th Cir. 1985) ................................................................................................ 19

*O'Shea v. Littleton*,

    414 U.S. 488 (1974) ................................................................................................................ 18

*Owens v. Schuette*,

    2024 WL 4469086 (E.D. Mich. Oct. 10, 2024) ...................................................................... 18

*Pagtakhan v. Foulk*,

    2010 WL 4940022 (N.D. Cal. Nov. 30, 2010) ................................................................. 15, 16

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

iv

*Perfect 10, Inc. v. Google, Inc.*,

653 F.3d 976 (9th Cir. 2011) ................................................................................................ 20

*Pom Wonderful LLC v. Hubbard*,

775 F.3d 1118 (9th Cir. 2014) .............................................................................................. 19

*Rain Bird Corp. v. Hit Prods. Corp.*,

2004 WL 2246176 (C.D. Cal. June 21, 2004) ................................................................. 18, 19

*Raines v. Byrd*,

521 U.S. 811 (1997)............................................................................................................. 11

*Reilly v. Medianews Grp., Inc.*,

2006 WL 2419100 (N.D. Cal. July 28, 2006).......................................................................... 20

*Sampson v. Murray*,

415 U.S. 61 (1974)............................................................................................................... 19

*Spencer v. Kemna*,

523 U.S. 1 (1998)................................................................................................................. 17

*Spokeo, Inc. v. Robins*,

578 U.S. 330 (2016)............................................................................................................. 12

*TransUnion LLC v. Ramirez*,

594 U.S. 413 (2021)......................................................................................................... 11, 14

*United States v. Fausto*,

484 U.S. 439 (1988)......................................................................................................... 10, 11

*Varela v. Gomez*,

1997 WL 37562 (N.D. Cal. Jan. 21, 1997) ............................................................................ 15

*Weinstein v. Bradford*,

423 U.S. 147 (1975)............................................................................................................. 17

*Wild Equity Inst. v. City & Cnty. of San Francisco*,

2012 WL 6082665 (N.D. Cal. Dec. 6, 2012).......................................................................... 15

*Winter v. Natural Res. Def. Council*,

555 U.S. 7 (2008).................................................................................................... 10, 19, 20, 23

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

**STATUTES**

5 U.S.C. § 702 .................................................................................................................. 24

5 U.S.C. § 2302(a)(2)(A) ................................................................................................. 10

5 U.S.C. § 5596(b)(1)(A) ................................................................................................. 24

5 U.S.C. § 7105(a)(2) ....................................................................................................... 11

5 U.S.C. § 7123(a) ........................................................................................................... 11

5 U.S.C. §§ 7501–7504, 7511–7515 ............................................................................... 11

5 U.S.C. § 7512 ................................................................................................................ 11

5 U.S.C. §§ 7513(d) ......................................................................................................... 11

5 U.S.C. § 7703 ................................................................................................................ 11

Post-Katrina Emergency Management Reform Act of 2006,

   6 U.S.C. §§ 311, *et seq.* ............................................................................................. 21

6 U.S.C. § 313 ............................................................................................................ 22, 23

6 U.S.C. § 316 ........................................................................................................ 21, 22, 23

6 U.S.C. § 317(a) ............................................................................................................... 3

6 U.S.C. § 452(a) ............................................................................................................. 22

The Robert T. Stafford Disaster Relief and Emergency Assistance Act,

   42 U.S.C. §§ 5121, *et seq.* ............................................................................................ 3

42 U.S.C. § 5149(b) ........................................................................................................... 3

**FEDERAL RULES**

Fed. R. Civ. P. 54(b) .......................................................................................................... 9

Fed. R. Civ. P. 56(a) .......................................................................................................... 9

**OTHER AUTHORITIES**

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts 93* (2012) .... 23

*Ensuring Continued Accountability in Federal Hiring* ("Federal Hiring" or "EO 14356"),

   90 Fed. Reg. 48,387 (Oct. 15, 2025) .......................................................................... 5, 6

Exec. Order No. 14180,

   90 Fed. Reg. 8743 (Jan. 24, 2025) ................................................................................ 7

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

vi

Hiring Freeze,

  90 Fed. Reg. 8247 (Jan. 28, 2025) .......................................................................................... 4

*History of FEMA*, FEMA (Jan. 4, 2021),

  https://www.fema.gov/about/history; 44 Fed. Reg. 19,367 (Apr. 3, 1979) ................................ 3

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

vii

**<u>INTRODUCTION</u>**

Plaintiffs, a group of labor unions, nonprofits, and local governments, filed their Supplemental Claims (Counts VIII through XIII in the Supplemental Complaint, ECF 298) in this action to challenge personnel actions at the Federal Emergency Management Agency (FEMA), a component of the Department of Homeland Security (DHS). These claims relate to fewer than 200 temporary employees, known as COREs,[1] whose temporary contracts were not renewed upon expiration in January 2026. In the Supplemental Claims, Plaintiffs allege that DHS played an improper role in these personnel actions, and that these actions violated various provisions in FEMA's authorizing statutes.

During the litigation, FEMA offered new term appointments to the COREs at issue, and those who wished to return have now returned to work. For that reason, the Court denied Plaintiffs' Motion for Preliminary Injunction, recognizing that any supposed emergency that prompted the PI had subsided. *See* Order, ECF 433. However, with the parties' agreement, the Court has treated Plaintiffs' Supplemental Brief in support of their Motion for Preliminary Injunction, ECF 411, as their opening brief for a Motion for Partial Summary Judgment on the Supplemental Claims. Defendants hereby respond to and oppose that motion.[2]

The Court should deny Plaintiffs' Motion for Partial Summary Judgment. For several reasons, the Court lacks subject-matter jurisdiction over the Supplemental Claims. First, Plaintiffs challenge federal agency personnel decisions, a subject matter governed by the Civil Service Reform Act of 1978 ("CSRA"), including its jurisdictional exhaustion requirements. Non-employee organizations like Plaintiffs are categorically excluded by the CSRA from pursuing claims through its statutory review scheme, and from bypassing that scheme entirely by raising such claims in district court.[3]

---

[1] Cadre of On-Call Response/Recovery Employees.

[2] Because Defendants have already responded to Plaintiffs' Supplemental Brief, ECF 418, this brief raises some arguments that Defendants already raised in that response brief.

[3] Defendants respectfully disagree with the Court's reasoning rejecting this argument in denying Defendants' Motion to Dismiss the Supplemental Complaint. *See* Order, ECF 44, at 8-10. Defendants reiterate this argument to preserve it for appellate review.

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

Second, Plaintiffs lack standing. Plaintiffs are not COREs, and no Plaintiff counts the COREs at issue as a member (Plaintiff AFGE's assertion that AFGE Local 4060 represents COREs is incorrect, because it is undisputed that FEMA terminated AFGE Local 4060's collective bargaining agreement with the COREs last year). The Court's reasoning that AFGE has associational standing to represent *non-members* because AFGE provides services to those non-members is incorrect. *See* Order, ECF 434, at 12 & 13 n.6. No precedent holds that a membership organization has standing to represent non-members that it serves, a notion that would stretch associational standing past the breaking point. Local government Plaintiffs' theory that their access to FEMA's services in a future emergency could be impaired by staffing changes is too speculative to support standing. These Plaintiffs also cannot explain how their request for the COREs to receive benefits such as additional vacation time and back pay could redress their injuries.

Third, subsequent developments have mooted the Supplemental Claims. FEMA itself has provided the relief that ostensibly might have redressed Plaintiffs' claimed harms: it offered new term appointments to the COREs whose January contract non-renewals triggered Plaintiffs' efforts to obtain a preliminary injunction. At the same time, former Senior Official Performing the Duties of Administrator ("SOPDA") Karen Evans—who made the challenged decision to allow the CORE term contracts to expire in January—no longer leads FEMA. And former Secretary of Homeland Security Kristi Noem—who allegedly "steered" the policies underlying that decision— no longer leads DHS. Secretary of Homeland Security Markwayne Mullin has succeeded former Secretary Noem, and former SOPDA Cameron Hamilton has been nominated to serve as Ms. Evans's Senate-confirmed successor at FEMA, with temporary career leadership in place in the interim. There is no factual basis to presume that Secretary Mullin, FEMA Administrator nominee Hamilton, or FEMA's temporary leadership will support the alleged actions or policies Plaintiffs attribute to former SOPDA Evans.

Plaintiffs' request for permanent injunctive relief independently fails because they cannot show irreparable harm. Plaintiffs do not, and cannot, demonstrate that *they* (as opposed to, for instance, COREs who are not Plaintiffs) are *presently* suffering or imminently will suffer irreparable harm. The alleged harms of January 2026 have been remedied, and past injuries cannot

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

2

suffice to establish prospective injunctive relief. Plaintiffs' supposed ongoing harms—concerns that DHS might at some point reduce FEMA's staffing in an undefined and unexplained manner that could affect COREs and, in some attenuated way they never explain, them—are not concrete enough to establish Article III standing, much less irreparable injury.

Finally, much of the relief Plaintiffs seek is improper. Plaintiffs seek two forms of relief. First, Plaintiffs seek broad and permanent restrictions on DHS's ability to oversee FEMA. Plaintiffs seek this relief based on a misinterpretation of Post-Katrina Emergency Management Reform Act of 2006 (PKERMA), which Plaintiffs wrongly read to provide FEMA with total independence from DHS oversight. In reality, while restricting DHS's ability to reorganize FEMA or change its statutory authorities, PKERMA explicitly reaffirms FEMA's status as an agency within DHS, subject to DHS's oversight, whose leader reports to the Secretary. The Court should reject such radical relief that goes far beyond what is legally justified. Second, Plaintiffs seek a variety of collateral benefits for COREs who were not renewed and who have now been offered reappointment, including back pay. However, the request for back pay is barred by sovereign immunity, as the D.C. Circuit held in *Hubbard v. EPA*, 982 F.2d 531 (D.C. Cir. 1992) (en banc).

## **BACKGROUND**

**I.    Factual Background**

**A.    Former FEMA SOPDA Karen Evans Decided Not to Reappoint Certain COREs in January 2026.**

FEMA's workforce, covering ten geographic regions, comprises two categories: Title 5 employees and Stafford Act[4] employees. *See* ECF 312-2 (Ch. 10 of Disaster Operations Legal Reference, 4th ed. (Sep. 2020) ("DOLR 4.0")), § II.A.1; 6 U.S.C. § 317(a). Stafford Act Employees are subdivided into COREs, Reservists, and Local Hires. DOLR 4.0 § II.A.1; *see* 42 U.S.C. § 5149(b). FEMA's hiring authorities allow it "to scale its workforce as necessary and . . . staff multiple operations with minimal notice." DOLR 4.0 § I. COREs work full-time, on

---

[4] The Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. §§ 5121, *et seq.*, establishes the current statutory framework for disaster response and recovery through presidential disaster declarations. *History of FEMA*, FEMA (Jan. 4, 2021), https://www.fema.gov/about/history; 44 Fed. Reg. 19,367 (Apr. 3, 1979).

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

temporary appointments, to support response and recovery efforts for open disasters. *See* ECF 312-1 (Decl. of Karen Evans) ¶ 12 ("Evans Decl."). COREs generally served fixed two-year terms ending on the Not to Exceed ("NTE") Date of their appointments (though some appointments have been for shorter or longer terms), unless extended or renewed based on evolving operational needs and workload. *Id.* ¶ 13. They may also be appointed or renewed for shorter terms. *See* ECF 383-1 (Decl. of Jeff Neurauter) ¶ 3 ("Neurauter Decl."). In 2025, 349 COREs were released when their contract terms expired. Evans Decl. ¶ 24. CORE employees do not have collective bargaining representation. AFGE Local 4060 was formerly the collective bargaining representative for thousands of FEMA employees. ECF 303 (Jackson Decl.) ¶ 4. On August 28, 2025, FEMA terminated its collective bargaining agreement with AFGE Local 4060 pursuant to Executive Order 14,251, which applied to all FEMA employees except for police officers and firefighters who were Title 5 employees, not COREs. *See* Evans Decl. ¶ 20 & Ex. 4 (ECF 312-5, Aug. 8, 2025, Memo.); *accord* ECF 303 (Jackson Decl.) ¶¶ 4–5.[5]

On January 20, 2025, the President announced a government-wide hiring freeze. *Hiring Freeze*, 90 Fed. Reg. 8247 (Jan. 28, 2025). That same day, OMB and OPM issued implementing guidance extending the freeze across executive agencies. Evans Decl. ¶ 29. Although DHS and other agencies were partially exempt for hiring certain mission-critical positions in areas such as national security and law enforcement, DHS nonetheless decided to undertake a review of its hiring practices, ultimately establishing procedures for reviewing hiring decisions. *See id.* ¶ 30. On March 18, 2025, FEMA received DHS's permission to approve appointment extensions for COREs in mission-critical positions, for up to two years. *Id.* CORE appointments in non-mission critical positions could receive 30-day incremental appointments while awaiting DHS approval. *Id.* On May 19, 2025, because of the upcoming hurricane season, DHS reauthorized FEMA to reappoint non-mission critical COREs to new term appointments without DHS approval, this time for 180 days. *Id.* ¶ 31; *see* ECF 402-3 (May 14, 2025, Memo.). That reauthorization existed until it expired, by its terms, on December 31, 2025. Evans Decl. ¶ 31; May 14, 2025, Memo. In December,

---

[5] Although a district court preliminary enjoined application of EO 14,251, the Ninth Circuit stayed and ultimately vacated the preliminary injunction. *See Am. Fed. of Gov't Emps. v. Trump*, 178 F.4th 456 (9th Cir. 2026).

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

FEMA's then-SOPDA Karen Evans ("Evans") decided not to seek DHS's approval to extend this delegated authority further. *See* ECF 414-1 (Mar. 31, 2026, Evans Dep. Tr., at Exhibit A to Leonard Decl.) at 273:17–274:4, 274:25–275:9. Upon the expiration of FEMA's delegated authority under the May 14, 2025, Memorandum, beginning on January 1, 2026, future new CORE term appointments and term reappointments would require DHS headquarters' approval. *Id.* at 266:9–24, 267:8–25, 277:11–20; *see* ECF 402-2 (Mar. 14, 2025, Memo.).

Between January 1 and 21, 2026, the appointment terms of 178 COREs were due to expire. Neurauter Decl. ¶ 4. In mid-to-late December, Evans had worked to ensure that FEMA had a process in place by which program heads and regional administrators could compile information regarding which COREs (by function) they wanted to recommend for reappointment. *E.g.*, Mar. 31, 2026, Evans Dep. Tr. at 346:20–347:24, 355:6–25. That process was not yet in place prior to December 31, when FEMA's delegated authority was to expire, so Evans decided not to seek DHS approval to reappoint COREs whose terms were ending between January 1 and January 21, 2026. *See id.* at 349:7–353:7, 356:1–15, 374:1–17. She testified: "I made the decision not to renew these appointments." *Id.* at 351:13–352:25; *accord, e.g.*, *id.* at 363:19–364:8, 365:2–11, 366:4–5.[6] Evans testified she made this decision voluntarily, for her own reasons—not under direction to do by then-Secretary Noem or by anyone else at DHS. *E.g.*, *id.* at 362:17–364:8. Because of Evans's decision, the terms of employment for 148 COREs were allowed to expire in January (30 others resigned or retired before their terms expired). Neurauter Decl. ¶ 4.

**B.    FEMA Prepared an Annual Staffing Plan for DHS, but DHS Never Submitted FEMA's Plan to OMB and OPM.**

On October 15, 2025, the President issued Executive Order 14356 to "ensure that the federal government is optimally staffed to meet critical mission needs." *Ensuring Continued Accountability in Federal Hiring*, 90 Fed. Reg. 48,387, 48,387 (Oct. 15, 2025) ("Federal Hiring" or "EO 14356"). The Order set forth policies and procedures governing "Federal *hiring . . .* going forward, *id.* (emphasis added), and it directed each agency to prepare an "Annual Staffing Plan"—

---

[6] Once a policy for recommendations was in place, Evans testified that she further decided that any extension of COREs would be limited to 90 days. *Id.* at 356:16–357:20, 359:22–360:2.

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

5

a forward-looking workforce planning document predicting hiring needs for the coming year. *Id.* Agencies were directed to do so in coordination with OMB and OPM, to "ensure that new career appointments in the upcoming fiscal year are in the highest-need areas and aligned with the priorities of [the President's] Administration." *Id.*

On November 5, 2025, OMB and OPM issued a memorandum implementing EO 14356 ("November 5 OMB/OPM Memorandum" or "Nov. 5 Mem."), instructing agencies that: (i) "[f]ederal hiring must comply with the Merit Hiring Plan"; (ii) "agency leadership must approve the opening of a new role"; (iii) "agency leadership should also function as a hiring committee in the candidate selection process"; and (iv) agency heads must "establish a Strategic Hiring Committee" to "approve the creation or filling, as applicable, of each vacancy within the agency." Nov. 5 Mem. 1–2 (citation modified).[7] The Memorandum also directed that Hiring Committees should "use . . . independent judgment" rather than "ministerially ratify[ing] or routinely defer[ring] to the recommendations of others in reviewing and approving new hires." *Id.* at 2. It directed agencies to "develop and submit" Annual Staffing Plans, to "ensure that new career appointments in the upcoming fiscal year are in the highest-need areas." *Id.*

FEMA, as a component of DHS, submitted a draft Annual Staffing Plan to DHS on December 4, 2025. *See, e.g.*, Mar. 31, 2026, Evans Dep. Tr. at 210:24–211:21. Evans testified that she did not know if that Annual Staffing Plan was ever transmitted to OMB and OPM, *id.* at 212:4–19, 225:4–226:8, and she recalled no discussions with DHS headquarters about it. *Id.* at 213:15–214:1. It is factually undisputed that DHS has never submitted the Annual Staffing Plan directed by EO 14356 (which would include FEMA's) to OMB and OPM. ECF 345-9 (O'Neill Decl., on behalf of OMB); ECF 345-10 (Peters Decl., on behalf of OPM); *see also* ECF 414 (2d Suppl. Jackson Decl.) ¶ 20 (discussing May 19, 2026, meeting where it was discussed that DHS "had yet to approve" FEMA's staffing plan). And there is no evidence that DHS is considering submitting an Annual Staffing Plan to OMB and OPM that would include a 50% cut to FEMA staffing levels. *E.g.*, Mar. 31, 2026, Evans Dep. Tr. at 227:5–228:9.

---

[7] *Available here*: guidance-on-executive-order-14356-ensuring-continued-accountability-in-federal-hiring.pdf.

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

## C.  The FEMA Review Council Has Released Its Final Report, and It Did Not Recommend Cutting FEMA in Half.

Not only is there no evidence of any existing DHS recommendation, guidance, or directive to halve FEMA staffing levels, the evidence refutes any such theory. On May 6, 2026, the FEMA Review Council[8]—a Federal Advisory Committee co-chaired by current Homeland Security Secretary Markwayne Mullin—released its final report. *See* ECF 414 (FEMA Review Council Final Report, at Exhibit B to 2d Suppl. Jackson Decl.). Contrary to documents leaked six months ago referencing "FEMA 2.0," the final FEMA Review Council report contains no recommended 50% cut to FEMA staffing. *See, e.g.*, Justin Doubleday, *FEMA Review Council Backs Off on Staffing Cuts in Final Report*, Federal News Network (May 7, 2026, 5:44 PM), https://federalnewsnetwork.com/agency-oversight/2026/05/fema-review-council-backs-off-on-staffing-cuts-in-final-report/ ("A Trump-appointed council is urging sweeping overhauls at the Federal Emergency Management Agency, but it is no longer proposing deep staffing cuts to FEMA's workforce."); 2d Suppl. Jackson Decl. ¶¶ 12–13 (conceding that the FEMA Review Council "deleted" earlier draft language referring to "the 50 percent cut"). The report acknowledged that its proposals to "[s]treamline," "[r]eform," or "[t]ransform" FEMA would require "[l]egislation" to implement. ECF 414 at 37.

## D.  Noem and Evans No Longer Lead DHS or FEMA.

On March 3, 2026, President Trump announced that he was removing Kristi Noem as Secretary of Homeland Security, *see, e.g.*, 2d Suppl. Jackson Decl. ¶ 5; Markwayne Mullin has since been confirmed as Secretary. *Id.* ¶ 6. According to Plaintiffs, on May 12, FEMA staff were advised that Evans was being replaced as SOPDA. *Id.* ¶ 9.[9] President Trump has nominated Cameron Hamilton ("Hamilton") to serve as FEMA Administrator. *Id.* ¶ 8. News sources have

---

[8] President Trump created the FEMA Review Council by Executive Order in January 2025. *See* Exec. Order No. 14180, 90 Fed. Reg. 8743 (Jan. 24, 2025).

[9] It has been reported that Evans is serving in a different role leading special projects at DHS. Thomas Frank, *FEMA's Acting Administrator Is Out, for the Third Time Under Trump*, (May 12, 2026, 4:14 p.m. ET), https://www.politico.com/news/2026/05/12/femas-acting-administrator-is-out-for-third-time-under-trump-00916239.

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

reported that "Hamilton's nomination comes as the Trump administration has increasingly signaled it is backing away from promises to dismantle FEMA," insofar as Hamilton had previously argued against abolishing FEMA; his nomination signifies "the latest indication of that change." *E.g.*, Gabriela Aoun Anguiera, *Trump Nominates Cameron Hamilton, Fired After Defending FEMA, to Lead the Agency*, AP News (May 11, 2026, 6:12 PM EDT), https://apnews.com/article/fema-cameron-hamilton-trump-disasters-navy-seals-e1ef0f6c81f6ea992a2213714f6743b1. While Hamilton awaits Senate confirmation, FEMA is currently led by a new SOPDA, Robert J. Fenton, Jr., a career FEMA employee and former Regional Administrator with three decades of experience at the agency. *See* FEMA: Offices & Leadership, Robert J. Fenton, Jr., *https://www.fema.gov/about/organization/robert-j-fenton-jr* (last visited June 11, 2026).

### E.    FEMA Has Offered Reappointment to the COREs Released in January.

FEMA has offered new term appointments to the COREs whose January 2026 releases precipitated Plaintiffs' Motion for Preliminary Injunction. *See* Neurauter Decl. ¶¶ 6–8;[10] 2d Suppl. Jackson Decl. ¶ 22 (acknowledging offers of reappointment to COREs "who had been released back in January").

## II.    Procedural History

On January 30, 2026, Plaintiffs filed their Supplemental Complaint. ECF 298. They presented several supplemental claims relating to FEMA: that DHS had violated the APA through its alleged involvement of personnel decisions regarding COREs (Claim VIII), Suppl. Compl. ¶¶ 575–80, and that DHS's alleged "removal of FEMA's decision-making authority" with respect to COREs and personnel decisions regarding COREs were *ultra vires* (Claim IX) and were arbitrary and capricious (Claim X), *id.* ¶¶ 581–89. Claims XI through XIII were similar claims against FEMA and its then-SOPDA Evans for implementing the allegedly unlawful directives of DHS. *See id.* ¶¶ 590–604.

---

[10] "Between January 1, 2026, and January 21, 2026, FEMA had 178 COREs whose terms of employment were set to end in that time period. Thirty of these COREs resigned or retired from employment before their term of employment expired, leaving a balance of 148 COREs whose terms of employment expired in January 2026." Neurauter Decl. ¶ 4.

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

8

On February 10, 2026, Plaintiffs filed a Motion for Temporary Restraining Order concerning these claims. ECF 301. The Court converted the motion into a Motion for Preliminary Injunction, the parties briefed the motion, and the Court held a hearing. Minute Entry, ECF 319. After the hearing, the Court authorized a round of expedited discovery, followed by supplemental briefing. *See* Order, ECF 321; Order RE: Defendants' Emergency Request to Extend Deadlines, ECF 386. In their supplemental brief, Plaintiffs also requested authorization to file a motion for partial summary judgment on Claims VIII through XIII. ECF 404, at 39-40. Defendants also filed a Motion to Dismiss the Supplemental Complaint. ECF 402. On June 26, 2026, the Court entered two orders, denying Plaintiffs' Motion for Preliminary Injunction, Order, ECF 433, and denying Defendants' Motion to Dismiss, Order, ECF 434. In the preliminary injunction order, the Court "grant[ed] plaintiffs' request to move quickly and immediately to partial summary judgment on the DHS/FEMA claims," stating that it "will treat plaintiffs' supplemental preliminary injunction brief . . . as their opening partial summary judgment motion." ECF 433, at 6.

## STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the evidence and drawing all reasonable inferences most favorably to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, where Plaintiffs are seeking partial summary judgment, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." *See* Fed. R. Civ. P. 54(b).

"[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-58 (2010). Even if Plaintiffs were to prevail on the merits of their claims, permanent "injunctive relief is not automatic, and there is no rule requiring automatic issuance of a blanket injunction when a

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

9

violation is found." *See N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007). As the Supreme Court has emphasized, a permanent "injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 32 (2008).

## ARGUMENT

### I.     This Court Lacks Subject-Matter Jurisdiction Over the Supplemental Claims.

#### A.     The CSRA Precludes Jurisdiction over FEMA's Personnel Decisions, Including Those Relating to COREs.

Plaintiffs' supplemental claims fail at the threshold insofar as they challenge personnel decisions regarding COREs, who are federal employees, and are therefore precluded by the CSRA.[11] Defendants have raised this argument before, in opposition to Plaintiffs' Motion for Preliminary Injunction (*see* ECF 312 (Defs.' Opp'n to PI Mot.) at 10–13), and again in their motion to dismiss the Supplemental Complaint (*see* ECF 402 (Defs.' Mot. to Dismiss) at 18–20), and in their supplemental preliminary injunction brief (*see* ECF 418, at 13–14). Because CSRA preclusion remains dispositive of Plaintiffs' Motion, Defendants restate their argument in brief.

Through the CSRA, Congress has "established a comprehensive system for reviewing the personnel action[s] taken against federal employees," which provides the "exclusive means" for review. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5, 8 (2012) (citation omitted); *see also United States v. Fausto*, 484 U.S. 439, 445 (1988) (noting that the CSRA sets out an "integrated scheme of administrative and judicial review" for challenges to personnel actions taken against members of the civil service). Non-reappointments are personnel actions over which judicial review, if any, is exclusively channeled through that scheme. *See* 5 U.S.C. § 2302(a)(2)(A) (identifying personnel actions that can provide the factual basis for alleged "prohibited personnel practices").

Even if CORE non-reappointments could be analogized to removals from federal service instead of the conclusion of a temporary term contract, jurisdiction for such claims would be

---

[11] Defendants acknowledge that in its motion to dismiss opinion, the Court "reject[ed] defendants' argument that the CSRA precludes district court review" of the Supplemental Claims. ECF 434, at 10. Defendants respectfully submit that the Court's conclusion was incorrect and also reiterate this argument to preserve it for appellate review.

exclusively channeled through the CSRA. *See* 5 U.S.C. §§ 7501–7504, 7511–7515. In that scenario, employees must "litigat[e] their claims through the statutory scheme in the context of [a] concrete" dispute. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 757 (D.C. Cir. 2019); *see also* 5 U.S.C. §§ 7105(a)(2), 7123(a), 7703(b)(1). Most relevant here, the CSRA "governs adverse action taken against employees for the 'efficiency of the service,'" including removals from service. *Fausto*, 484 U.S. at 446–47; *see* 5 U.S.C. § 7512. Covered employees who have been removed may seek review of such adverse action before the MSPB, followed by review in the Federal Circuit. 5 U.S.C. §§ 7513(d), 7703. Plaintiffs here—unions, advocacy groups, and local governments—are likewise precluded from challenging CORE non-reappointments because where a comprehensive statutory scheme authorizes only certain plaintiffs' claims, it implicitly precludes review of all others. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 346–48 (1984); *see also Fausto*, 484 U.S. at 448. That is, the fact that end-users are excluded from the CSRA review scheme and that CORE employees themselves lack full rights under the CSRA does not allow them to head straight to district court to challenge personnel decisions. The "exclusion" of end-users of government services "from the provisions establishing administrative and judicial review for personnel action" of the type challenged here "*prevents* [them] from seeking review" under other provisions. *Fausto*, 484 U.S. at 455 (emphasis added).

### B.     Plaintiffs Lack Standing to Challenge CORE Non-reappointments.

Federal courts do not sit to adjudicate the public's views about how the government should be run, nor to "exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Instead, under Article III, they redress cognizable injuries to specific protected interests, thus requiring an injury that is both "legally and judicially cognizable." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). To show standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024); *Lake v. Fontes*, 83 F.4th 1199, 1202–03 (9th Cir. 2023). "The plaintiff, as the party invoking

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The standing inquiry is "especially rigorous when reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation omitted). Plaintiffs must thus allege a "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" injury that "affect[s] the plaintiff in a personal and individual way" and "actually exist[s]." *Spokeo*, 578 U.S. at 339–40 (citation omitted). "[A]n abstract, theoretical concern will not do." *Lake*, 83 F.4th at 1203 (citation omitted). An injury that has not yet occurred must be sufficiently "imminent" "to ensure that [it] is not too speculative for Article III purposes"—meaning it "must be *certainly impending*." *Clapper*, 568 U.S. at 409 (citation omitted). "Allegations of a *possible* future injury are not sufficient." *Id.* (citation modified).

This Court concluded in its motion to dismiss ruling that Plaintiff AFGE had associational standing, Order, ECF 434, at 12-14, but Defendants respectfully disagree. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiffs have asserted that Plaintiff AFGE's local member union, AFGE Local 4060, represents some FEMA CORE employees who were not renewed. *See* ECF 423, at 16. But this assertion ignores the undisputed fact that last year, FEMA terminated its collective bargaining agreement with AFGE Local 4060 pursuant to EO 14,251, terminating the union's representation of all FEMA CORE employees. *See supra*, p. 4; *see also AFGE v. Trump*, 178 F.4th at 462 (vacating preliminary injunction against implementation of EO 14,251, after previously staying injunction).

The Court concluded that even if the CORE employees are no longer members of AFGE Local 4060, AFGE would still have associational standing because it "continues to provide

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

12

representational services" to those non-members. Order, ECF 434, at 12. With respect, this conclusion is incorrect and unsupported by case law. The Court cited a D.C. Circuit case concluding in dicta that even when "an organization . . . has no members in the traditional sense," it "may nonetheless assert associational standing" if it "is the functional equivalent of a traditional membership organization." *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25 (D.C. Cir. 2002). It is one thing to hold that an association without formal members has "the functional equivalent" of members who "possess[] 'all of the indicia of membership in an organization.'" *Id.* at 26 (quoting *Hunt*, 432 U.S. at 344). But it is quite another to hold that a traditional membership organization, such as a union, can assert associational standing on behalf of non-members simply because it provides services to them. Such a holding stretches the concept of a case or controversy beyond the breaking point.

The Court also concluded that AFGE had organizational standing because Defendants' actions have "requir[ed] AFGE to expend resources addressing the non-renewals" and "the termination of members also harms AFGE through loss of dues." Order, 434 at 13. The first theory is foreclosed by *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), which rejected the argument that "standing exists when an organization diverts its resources in response to a defendant's actions," *id.* at 395. The second theory fails because the membership of COREs in AFGE Local 4060 was terminated in 2025 by the implementation of EO 14,251, which occurred well before the challenged non-renewals. *See supra*, p. 4.

The other Plaintiffs also lack standing. Several Plaintiffs are labor unions who do not even purport to represent any FEMA employees, let alone the COREs at issue here. *See* Am. Compl. ¶¶ 30-38, ECF No. 100. Their standing is even more tenuous than that of AFGE, which at least claims (incorrectly) to represent FEMA COREs. Others are nonprofit organizations, *see id.* ¶¶ 39-49, who cannot establish standing because they do not point to any evidence of members who have been harmed by the FEMA-related conduct at issue in the supplemental claims, or direct harm to their organizations.

The remaining Plaintiffs are Local Governments—Santa Clara, King County, Baltimore, Harris County, Chicago, and San Francisco—who claim standing as end-users of FEMA services

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

13

who posit that the personnel actions at issue may hinder FEMA's responses to hypothetical future disasters. As Defendants have explained at length elsewhere (*see* ECF 303-12 and 303-14 to 303-18), they lack organizational standing because they have not proven and cannot prove that any future hypothetical CORE non-reappointments would injure *their* services in the event of a disaster that may or may not someday occur. *Clapper*, 568 U.S. at 409. As speculative as this theory always has been, it is rendered even more speculative by the fact that FEMA has now offered reappointment to the COREs at issue, *see* Neurauter Decl. ¶¶ 4, 6–8, so the past non-renewals cannot affect FEMA's disaster response going forward. Significantly, none of these Plaintiffs have shown that they are now in the midst of a Presidentially declared national disaster, much less one that requires particular levels of FEMA staffing (or the service of particular COREs) to provide them necessary federal assistance. And whether that might come to pass at some point in the future is inherently speculative at this point.

The reappointment of the COREs at issue further undermines Plaintiffs' standing to seek the relief sought in paragraph 2 of Plaintiffs' proposed order, ECF 411-1, regarding time in step credit, back pay, and restoration of benefits. *See Murthy v. Missouri*, 603 U.S. 43 (2024) ("standing is not dispensed in gross," and plaintiffs must demonstrate standing "for each form of relief that they seek") (quoting *TransUnion*, 594 U.S. at 431). The Local Governments' theory of standing, as speculative as it is, is that reduction in FEMA's staffing could lead to reductions in services FEMA provides to them in the future. *See* Suppl. Compl. ¶¶ 560-68. But those non-renewed employees have been offered reappointment, bringing them back to work (for those who chose to return). Plaintiffs can articulate no plausible basis that giving these CORE employees additional backpay, time in step credit, or vacation leave redresses any injury to the Local Governments.[12]

### C.    **Plaintiffs' Supplemental Claims Are Moot Because The COREs Whose Term Expirations They Challenge Have Been Offered New Appointments.**

"Federal courts do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before [them]." *Burns v. Unum Life Ins. Co. of Am.*,

---

[12]  As explained above, Plaintiff AFGE also lacks standing to seek this relief on behalf of the COREs because they are not members of AFGE. *See supra*, pp. 12-13.

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

14

2007 WL 1793779, at *2 (N.D. Cal. June 19, 2007) (Illston, J.) (citation omitted). "Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings." *Pagtakhan v. Foulk*, 2010 WL 4940022, at *1 (N.D. Cal. Nov. 30, 2010) (Illston, J.). This means that "throughout the litigation the party pursuing the action must have suffered, or be threatened with, an actual injury which is traceable to the responding party, and which is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). A case is moot if it "has lost its character as a present, live controversy, and if no effective relief can be granted." *Wild Equity Inst. v. City & Cnty. of San Francisco*, 2012 WL 6082665, at *2 (N.D. Cal. Dec. 6, 2012); *see also Flast v. Cohen*, 392 U.S. 83, 95 (1968) ("[Where] the question sought to be adjudicated has been mooted by subsequent developments" to filing of the complaint, "no justiciable controversy is presented."). A case also may be considered moot if "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Wild Equity Inst.*, 2012 WL 6082665, at *2. Moreover, "[i]n addition to constitutional mootness, the doctrine of prudential mootness permits a court to 'dismiss an appeal not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief.'" *J.F. v. New Haven Unified Sch. Dist.*, 2014 WL 6485643, at *4 (N.D. Cal. Nov. 19, 2024) (Illston, J.) (quoting *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 744 F.3d 1124, 1135 (9th Cir. 2014)).

The Supplemental Claims, and Plaintiffs' request for injunctive relief, have been mooted by the reappointment of the FEMA COREs at issue. Where, as here, injunctive relief is involved, "questions of mootness are determined in light of the present circumstances." *Varela v. Gomez*, 1997 WL 37562, at *1 (N.D. Cal. Jan. 21, 1997) (Illston, J.) (citing *Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996)). The "present circumstances" are as follows. Former Secretary Kristi Noem, who Plaintiffs allege had a plan to "eliminate" FEMA, is gone from DHS. 2d Suppl. Jackson Decl. ¶ 5. Karen Evans, who Plaintiffs allege was implementing Noem's alleged plan, is gone from FEMA. *Id.* ¶ 9. The FEMA Review Council report contains no recommendation for a "50 percent cut" to FEMA staffing levels. *Id.* ¶¶ 11–13; *see also generally* FEMA Review Council Final Report; Doubleday, *FEMA Review Council Backs Off on Staffing Cuts in Final Report.*

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

15

*FEMA has offered reappointment to all the COREs who were released in January 2026.* Neurauter Decl. ¶¶ 6–8. As for Plaintiffs' non-party CORE declarants, all but one (whose supervisor did not have work for him) were offered appointments. Suppl. Neurauter Decl. ¶¶ 3–11. Accordingly, there is no longer an "actual injury" (assuming arguendo there ever was) that is "traceable" to Defendants and that is "likely to be redressed by a favorable judicial decision." *Pagtakhan*, 2010 WL 4940022, at *1. Absent any such injury, Plaintiffs' claims challenging CORE non-renewals are moot. *See In Def. of Animals v. U.S. Dep't of Interior*, 648 F.3d 1012, 1013 (9th Cir. 2011) (per curiam) (holding preliminary injunction appeal moot where action to be enjoined had taken place).

If Plaintiffs argue that their broader claims for relief excuse them from the mootness doctrine, they would be mistaken. Plaintiffs' requested relief is two-fold. First, Plaintiffs ask the Court to enjoin DHS and FEMA from taking any action to implement "DHS directives" that remove FEMA authority over personnel decisions "with respect to FEMA employees," including but not limited to COREs. ECF 411-1 at 1. However, there have since been changes in leadership at both DHS and FEMA, rendering Plaintiffs' claims about what might happen in the future speculative.

Second, Plaintiffs ask the Court to "rescind[] all notices of non-renewal of CORE employees *since January 1, 2026,*" to include requiring DHS and FEMA to provide a process to "return those employees to the position they would be in were it not for their unlawful terminations," through, *inter alia*, step credit and back pay. *Id.* at 2 (emphasis added). As noted, FEMA has offered new contracts to the COREs whose January non-reappointments are at issue in the Supplemental Claims. Neurauter Decl. There is no basis, much less evidence to support, Plaintiffs' requested relief to bring back any CORE who did not receive a new term contract for any reason in February, March, April, May, or June.

Plaintiffs' argument for back pay and other credit to the COREs who have since been reappointed is unfounded for at least two reasons. First, as noted above, Plaintiffs lack standing to seek such relief: Plaintiffs are not themselves COREs, and they fail to explain how providing back pay to COREs would redress *Plaintiffs'* claimed harms. *See supra*, pp. 11-14. Second, an order

providing such relief to non-parties (even were it judicially available) would not remedy any irreparable harm to any Plaintiff, which under their theory is attributable to (conjectural) reduced staffing levels at FEMA, not whether or how much specific FEMA employees are retroactively paid for temporary periods. Simply put, back pay for employees who have been reappointed has nothing to do with whether Baltimore will be able to receive assistance from FEMA in response to a future disaster. At base, "[w]here the activities sought to be enjoined have already occurred, . . . the action is moot." *Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978).

To the extent the mootness exceptions are even relevant under these circumstances, neither applies. The "capable of repetition, yet evading review" exception is triggered only in "exceptional situations," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (citations omitted), when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, *and* (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again," *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (emphasis added). Plaintiffs fail at both steps. First, if future circumstances warrant emergency injunctive relief, Plaintiffs are fully capable of requesting it. Second, in any event, given that (i) Noem and Evans have left DHS and FEMA, respectively, (ii) Plaintiffs point to no statements by DHS's or FEMA's current leadership expressing interest in eliminating FEMA, (iii) the FEMA Review Council's final report (co-chaired by DHS's new leadership) does not propose a 50% cut in FEMA's staffing, and (iv) there is no other evidence of any existing plan to cut FEMA in half (much less a plan that would harm Plaintiffs), there is no "demonstrated probability that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (citation omitted); *see also, e.g.*, *J.T. v. District of Columbia*, 983 F.3d 516, 524 (D.C. Cir. 2020) (no reasonable expectation of a plaintiff facing the same action again when a dispute is "sharply focused on a unique factual context." (citation omitted)).

As for voluntary cessation, the Ninth Circuit "treat[s] the voluntary cessation of challenged conduct by government officials with more solicitude than similar action by private parties." *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (citation modified). Here, because the only concrete injury (to anyone) alleged by Plaintiffs—non-reappointments of the COREs in January 2026—is

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

no longer redressable, the "voluntary cessation" exception also does not apply. *See DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) (holding that the "voluntary cessation" exception to mootness did not apply since mootness resulted from the fact the alleged injury was no longer redressable, not because the defendant choose to stop the allegedly illegal conduct); *see also In Def. of Animals*, 648 F.3d at 1013; *Owens v. Schuette*, 2024 WL 4469086, at *4 (E.D. Mich. Oct. 10, 2024) ("Without a time machine, the Court cannot force Defendants to do anything or prohibit Defendants from doing anything that injured Plaintiff." (quotations omitted)), *appeal filed*, No. 24-2003 (6th Cir. Nov. 18, 2024).

## II.    Plaintiffs, Who Are Not COREs, Also Cannot Establish Irreparable Harm.

In opposing a preliminary injunction, Defendants explained why Plaintiffs failed to establish irreparable harm. *See* ECF 418, at 21-23. Showing irreparable harm is also required for a permanent injunction. *See Monsanto*, 561 U.S. at 156. Thus, for the same reasons, which Defendants reiterate here, Plaintiffs failure to establish irreparable harm dooms their request for a permanent injunction.

*Plaintiffs' Irreparable Injury Is Assessed at the Time the Injunction Is to Be Issued.* Injunctions are forward-looking, prospective remedies. An injunction, including a permanent injunction, "cannot reach back in time to prevent or undo irreparable harm that has already occurred." *AFSCME v. SSA*, 172 F.4th 361, 372 (4th Cir. 2026) (en banc). An injunction "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). Therefore, a court evaluating a request for a permanent injunction must address the present circumstances, to assess whether the injunction is necessary to prevent future irreparable harm. *Cf. Rain Bird Corp. v. Hit Prods., Corp.*, 2004 WL 2246176, at *5 ("[t]he relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued"); *see also, e.g.*, *C2 Educ. Sys., Inc. v. Lee*, 2018 WL 3328143, at *3–4 (N.D. Cal. July 6, 2018) (Illston, J.) (rejecting claimed irreparable harm because "it appears that any ongoing harm is a result of

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

defendants' *past* conduct rather than something that can be remedied with [preliminary injunctive relief]"; underscoring movant's failure to show "a likelihood of *future* irreparable harm" (emphases added)).

As this Court acknowledged in denying Plaintiffs' motion for preliminary injunction, that request "ha[d] in certain ways grown stale as the facts have changed," given that any alleged "blanket policy of not renewing CORE employees is not currently in effect." Order, ECF 433, at 6. Plaintiffs argue that "[t]he CORE employees who were terminated in January 2026 suffered ongoing irreparable injury during the time that they were separated from FEMA—which includes, at least, part of January; all of February, March, and April; and part of May 2026." Pls.' Supp. Br. at 36. They further argue that other COREs, who did retain their positions, nonetheless "faced ongoing uncertainty" during that timeframe. *Id.* at 36–37. First of all, as a matter of law, neither loss of employment nor generalized "uncertainty" by specific CORE employees is irreparable harm. *Sampson v. Murray*, 415 U.S. 61 (1974). But even if it were, it would not be Plaintiffs' to assert as a basis for injunctive relief, as Plaintiffs are neither COREs themselves nor have any affiliation with COREs. *See supra*, pp. 11-14. More to the point, any such alleged harms represent past harms that cannot give rise to irreparable harm sufficient to justify prospective injunctive relief. *See, e.g.*, *C2 Educ. Sys.*, 2018 WL 3328143, at *3–4; *Rain Bird*, 2004 WL 2246176, at *5. This Court has held as much, correctly, in denying injunctive relief in other cases. *C2 Educ. Sys.*, 2018 WL 3328143, at *3–4.

***Plaintiffs' Irreparable Injury Must Be Based on Evidence, Not Speculation About Future Events.*** In addition, Plaintiffs must establish a "likelihood of irreparable harm that is grounded in evidence, not in conclusory or speculative allegations of harm." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1133 (9th Cir. 2014). A "possibility" of irreparable harm is insufficient; "irreparable injury [must be] *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2008 WL 2219837, at *2 (N.D. Cal. May 27, 2008) (Illston, J.) ("[I]n any situation, the Court must find "that there exists a significant threat of irreparable injury." (quoting *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985)), *modification denied*, 2008 WL 5479358 (N.D. Cal. Nov. 19, 2008). Plaintiffs

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

argue that "[e]ven after the President announced the termination of DHS Secretary Noem, there was no public recission [sic] of this plan (because DHS still refused to admit that it existed), staffing planning exercises continued, and there was no announcement of any further change in plans with respect to the CORE." Pls.' Supp. Br. at 37. Further, they argue, "no promises were made to individuals after June." *See id.* at 38–39. If Plaintiffs base their claimed irreparable harm on the prospect of future hypothetical staffing changes to FEMA that could affect FEMA COREs in an undefined way and to an undetermined extent, the outcome of which could then somehow affect Plaintiffs themselves—this highly attenuated speculation is not a basis for Article III standing, let alone concrete irreparable harm that would justify injunctive relief. *Winter*, 555 U.S. at 22; *In re TFT-LCD*, 2008 WL 2219837, at *2.

*Plaintiffs' Irreparable Injury Must Be Causally Connected to the Activity to Be Enjoined.* To satisfy this element, Plaintiffs' claimed irreparable harm "must be causally connected to the activity to be enjoined." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018); *cf. also Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011) (explaining that a "sufficient causal connection" between the alleged irreparable harm and the activity to be enjoined is a "necessary requirement for obtaining preliminary injunctive relief"). Plaintiffs argue that reinstating the COREs who were not given new contracts in January is not sufficient because the employees were not offered back pay or retroactive benefits. Pls.' Supp. Br. at 38. But even if this "injury" could serve as the basis for irreparable harm,[13] Plaintiffs do not explain how providing back-pay and retroactive benefits to COREs would address *Plaintiffs'* claimed injury. *Nat'l Wildlife Fed'n*, 886 F.3d at 819.

---

[13] It is "well established" that "an injury that is solely financial and that is compensable by monetary damages cannot constitute irreparable injury." *Reilly v. Medianews Grp., Inc.*, 2006 WL 2419100, at *5 (N.D. Cal. July 28, 2006) (Illston, J.) (citing *Am. Tunaboat Ass'n v. Brown*, 67 F.3d 1404, 1411 (9th Cir. 1995)).

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

## III.     The Relief Sought By Plaintiffs Is Overbroad In Multiple Respects.

For the foregoing reasons, the Court should not award any relief by Plaintiffs. However, even if the Court grants summary judgment to Plaintiffs on the Supplemental Claims, the relief sought by Plaintiffs, *see* Proposed Order, ECF 411-1,[14] is overbroad and improper.

### A.     Plaintiffs Ask This Court To Impose Legally Unjustified Restrictions On DHS's Oversight Of Its Component Agency, FEMA.

Paragraph 1 of Plaintiffs' Proposed Order asks this Court to impose restrictions on DHS's oversight of its component agency, FEMA, that are not justified by the Post-Katrina Emergency Management Reform Act of 2006, 6 U.S.C. §§ 311, *et seq.* ("PKEMRA"), or any other statute. Specifically, Plaintiffs ask this Court to enjoin FEMA from implementing "DHS directives that remove FEMA authority over personnel decisions with respect to FEMA employees," including "DHS's removal of FEMA decision-making authority over the extension or renewal of CORE positions," or "DHS's imposition of a workforce reduction plan to reduce the size of FEMA." Proposed Order ¶ 1, ECF 411-1. The premise of Plaintiffs' request for this relief is that PKEMRA prohibits DHS from having any involvement in or oversight of FEMA's staffing decisions. *See*, *e.g.*, ECF 301-1, at 31 ("the Post-Katrina Act restores FEMA's independence from DHS decision-making"). That premise is incorrect. PKEMRA guarantees that FEMA will remain a distinct agency; it narrowly restricts DHS from taking certain actions, such as reorganizing FEMA or adding to or removing FEMA's statutory responsibilities. But PKEMRA did not render FEMA wholly independent from DHS oversight. To the contrary, PKEMRA reaffirmed that FEMA remains part of DHS, the FEMA Administrator reports to the Secretary of DHS, and DHS, through the Secretary, retains authority to oversee its component agency.

PKEMRA clearly maintains FEMA as a component agency within DHS. It provides that FEMA "shall be maintained as a distinct entity *within the Department* [DHS]." 6 U.S.C. § 316(a). The ordinary meaning of "distinct" is "distinguishable to the eye or mind as being discrete: SEPARATE." Merriam-Webster's Collegiate Dictionary 364 (11th ed. 2003). This provision

---

[14] Plaintiffs filed that Proposed Order alongside their supplemental preliminary injunction brief. As Defendants understand, Plaintiffs seek the relief in that Proposed Order, but on a permanent basis.

guarantees that FEMA will remain a separate entity, rather than being folded into DHS or another component agency. Yet it does not deprive DHS of authority over FEMA. To the contrary, the statement that FEMA shall be maintained "within [DHS]" indicates that DHS has authority to oversee FEMA, just as any Cabinet Department oversees its component agencies.

Other provisions confirm DHS's oversight and authority over FEMA. The statute states that "[t]he Administrator shall report to the Secretary" and shall be "the principal advisor to . . . the Secretary for all matters relating to emergency management in the United States." 6 U.S.C. § 313(c)(3), (c)(4)(A). It further states that the Administrator shall coordinate with leaders of other DHS components "under the leadership of the Secretary." 6 U.S.C. § 313(b)(2)(F). It is simply impossible to read a statute that explicitly makes FEMA's leader a subordinate and advisor of the Secretary, who operates under the Secretary's leadership, as making FEMA "independen[t] from DHS decision-making," as Plaintiffs assert. ECF 301-1, at 31.

To be sure, PKEMRA forbids DHS from taking certain actions that would significantly restructure FEMA. But these enumerated restrictions are specific and narrow. They do not generally preclude DHS involvement in FEMA and do not prohibit DHS involvement in personnel decisions. For example, even though Congress has generally granted the Secretary authority to reorganize DHS by "allocat[ing] or reallocat[ing] functions among the officers of the Department" or "establish[ing], consolidat[ing], alter[ing], or discontinu[ing] organizational units within the Department," 6 U.S.C. § 452(a), PKEMRA provides that this reorganization authority "shall not apply to [FEMA], including any function or organizational unit of [FEMA]," *id.* § 316(b). PKREMA also prohibits the Secretary from "substantially or significantly reduc[ing] . . . the authorities, responsibilities, or functions of the Agency or the capability of the Agency to perform those missions, authorities, responsibilities . . . ." *Id.* § 316(c)(1). That the statute specifically prohibits DHS and the Secretary from taking these specific actions regarding an agency "within the Department," *id.* § 316(a), strongly suggests that apart from these restrictions, DHS and the Secretary are *not* prohibited from overseeing and instructing FEMA. *See GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 440 (2020) ("[I]n

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

general, 'a matter not covered is to be treated as not covered.'") (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012)).

The injunction sought by Plaintiffs would permanently restrict DHS's oversight of FEMA in a manner that goes far beyond PKEMRA. For example, PKEMRA does not preclude the Secretary from instructing his direct report, the FEMA Administrator, *see* 6 U.S.C. § 313(c)(3), to route hiring decisions to the Secretary for final approval. PKEMRA also does not preclude the Secretary from directing FEMA to reduce staffing in a manner that falls short of a statutory reorganization, and would not substantially or significantly reduce FEMA's ability to carry out its statutory functions, *see id.* § 316(b), (c)(1). Yet the permanent injunction sought by Plaintiffs would restrict DHS and the Secretary from taking these actions, as well as engaging in other lawful oversight and supervision of FEMA.

Furthermore, it would be inequitable for this Court to hamstring DHS so radically and permanently based on a claimed injury that, at this point, is minimal at best. An "injunction is a matter of equitable discretion." *Winter*, 555 U.S. at 32. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). Here, the purported crisis that prompted the Supplemental Claims was the non-renewal of CORE employees that constituted less than 1% of FEMA's total employees, and the COREs at issue have now been offered new terms. *See* Order, ECF 433, at 5; Neurauter Decl. ¶¶ 4-9. This has led Plaintiffs, in an effort to avoid mootness, to haggle over whether these employees, who are not parties here, should get some extra back pay, vacation time, or "other collateral benefits." *See* ECF 411, at 26. Even if the Court concludes that this request for collateral benefits saves the Supplemental Claims from mootness, the sweeping injunction Plaintiffs seek, which would effectively elevate FEMA from the status of a component agency to an independent department, is far out of proportion to the marginal remaining controversy over whether some employees who were let go and brought back should get some additional back pay and vacation time.

**B.    Plaintiffs' Request For Back Pay Is Barred By Sovereign Immunity.**

Plaintiffs' request that the Court direct FEMA to "provid[e] back pay" to the non-renewed COREs "for the time that such employees were separated from CORE employment," Proposed

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

23

Order ¶ 2.b, ECF No. 411-1, is barred by sovereign immunity. "[T]he United States, as sovereign, is generally immune from suits seeking money damages." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). Although Congress may waive sovereign immunity, "because the power to waive the federal government's immunity is Congress's prerogative, not [the Supreme Court's], [the Supreme] Court applies a 'clear statement' rule." *Id.* . Under this rule, "a waiver of sovereign immunity must be 'unmistakably clear in the language of the statute.'" *Id.* at 49 (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). Although the CSRA explicitly waives sovereign immunity to authorize the provision of back pay "by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement[]" to employees who are covered by its provisions, *see*, *e.g.*, 5 U.S.C. § 5596(b)(1)(A), it is undisputed that FEMA CORE employees are precluded from pursuing CSRA remedies for their non-renewals, and certainly cannot do so in federal district court.

Defendants are not aware of any waiver of sovereign immunity that would authorize payment of back pay to the FEMA COREs who were not renewed. The Administrative Procedure Act (APA) authorizes lawsuits challenging agency actions that "seek[] relief other than money damages." 5 U.S.C. § 702. But in *Hubbard v. EPA*, 982 F.2d 531 (D.C. Cir. 1992) (en banc), the en banc D.C. Circuit held that the APA does not waive sovereign immunity over employment-related claims for back pay, *id.* at 531-32. In concluding that the APA's "waiver does not include back pay," *id.* at 533, the court engaged in a lengthy analysis of text and precedent and held that a waiver of sovereign immunity for relief "other than money damages" does not clearly include back pay. *Id.* at 535-39; *see also Beberman v. Blinken*, 61 F.4th 978, 982 (D.C. Cir. 2023) (quoting *Hubbard*, 982 F.2d at 539) ("[B]ackpay is not an available remedy under the APA."). Although *Hubbard* is not binding here, its analysis is persuasive. The Court should follow *Hubbard* and hold that sovereign immunity bars Plaintiffs' request for back pay.

## CONCLUSION

The Court should deny Plaintiffs' request for partial summary judgment on the Supplemental Claims.

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

24

Dated: July 17, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

/s/ Jeremy S.B. Newman
BRAD P. ROSENBERG
JEREMY S.B. NEWMAN (Mass. Bar # 688968)
Chief Litigation Counsel

CHRISTOPHER HALL
MARIANNE F. KIES
Assistant Branch Directors

ROBERT C. BOMBARD
Trial Attorney
Civil Division, Federal Programs Branch

*Counsel for Defendants*

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

25