Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

DISCUSSION.....................................................................................................................2

    I.    Defendants' Revisionary Version of Events is Not Supported by the Summary Judgment Record. ............................................................................2

        A.    DHS directed FEMA to develop and implement an Annual Staffing Plan to eliminate half of FEMA's workforce, and to implement those cuts by eliminating CORE positions. ..............................................3

        B.    Defendants misstate the record to claim that DHS and FEMA have moved on from downsizing the FEMA workforce.........................................5

        C.    DHS still controls FEMA personnel decision-making. ..................................6

        D.    Defendants' documents establish OMB and OPM involvement in FEMA's Annual Staffing Plan. ........................................................7

    II.    Plaintiffs Are Entitled to Partial Summary Judgment Against DHS and FEMA. ........................................................................................................9

        A.    Defendants Do Not Contest the Merits of Plaintiffs' Claims.........................9

        B.    This Court Has Correctly Concluded that it Has Jurisdiction. ......................12

            1.    Plaintiffs' Claims Were Not Impliedly Precluded by Congress. ........................................................................12

            2.    Plaintiffs Have Standing to Bring these Claims. ..............................12

            3.    Defendants Have Not Demonstrated that Plaintiffs' Claims Are Moot. ......................................................................14

                 i.    Plaintiffs' claims are not moot ..............................................14

                 ii.    Defendants' voluntary actions do not meet their mootness burden................................................................16

    III.    Plaintiffs Should Be Awarded their Requested Relief. ............................................20

        A.    Vacatur of FEMA and DHS's Unlawful Actions is Warranted Under the APA. ........................................................................20

        B.    Plaintiffs Have Also Proven Irreparable Harm Supporting Permanent Injunctive Relief. ........................................................................21

        C.    Plaintiffs' APA Vacatur and Injunctive Relief Remedies are Warranted by Post-Katrina Act. ..............................................................22

        D.    Backpay Is Not Barred by Sovereign Immunity. ........................................24

CONCLUSION ................................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*350 Mont. v. Haaland*,
    50 F.4th 1254 (9th Cir. 2022) ........................................................................................ 15, 21

*A.O. v. Cuccinelli*,
    457 F.Supp.3d 777 (N.D. Cal. 2020) ..................................................................................... 19

*Am. Unites for Kids v. Rousseau*,
    985 F.3d 1075 (9th Cir. 2021) ................................................................................................ 13

*Bayer v. Neiman Marcus Grp., Inc.*,
    861 F.3d 853 (9th Cir. 2017) .................................................................................................. 15

*Bell v. City of Boise*,
    709 F.3d 890 (9th Cir. 2013) .................................................................................................. 18

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) .......................................................................................................... 24, 25

*Brach v. Newsom*,
    38 F.4th 6 (9th Cir. 2022) ....................................................................................................... 18

*In re Cervantes*,
    219 F.3d 955 (9th Cir. 2000) ............................................................................................ 10, 11

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*,
    494 U.S. 558 (1990) ................................................................................................................ 25

*DeFunis v. Odegaard*,
    416 U.S. 312 (1974) ................................................................................................................ 20

*Driftless Area Land Conservancy v. Valcq*,
    16 F.4th 508 (7th Cir. 2021) ................................................................................................... 21

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ................................................................................................................ 22

*F.T.C. v. Affordable Media*,
    179 F.3d 1228 (9th Cir. 1999) ................................................................................................ 17

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) ................................................................................................................ 13

*Fed. Bureau of Investigation v. Fikre*,
    601 U.S. 234 (2024) .......................................................................................................... 16, 17

*Fed. Educ. Ass'n v. Trump*,
    795 F.Supp.3d 74 (D.D.C. 2025) .................................................................................... 18

*Fikre v. Fed. Bureau of Investigation*,
    904 F.3d 1033 (9th Cir. 2018) ....................................................................................... 18

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
    503 U.S. 60 (1992) ........................................................................................................ 25

*Fund Democracy, LLC v. SEC*,
    278 F.3d 21 (D.C. Cir. 2002) ........................................................................................ 13

*Griffin v. HM Fla.-ORL, LLC*,
    144 S. Ct. 1 (2023) ........................................................................................................ 21

*Health Freedom Def. Fund, Inc. v. Carvalho*,
    148 F.4th 1020 (9th Cir. 2025) ...................................................................................... 15

*Hubbard v. EPA*,
    982 F.2d 531 (D.C. Cir. 1992) ...................................................................................... 25

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ...................................................................................................... 13

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ...................................................................................... 22

*In Def. of Animals v. U.S. Dep't of Interior*,
    648 F.3d 1012 (9th Cir. 2011) ...................................................................................... 20

*Int'l Bhd. of Elec. Workers AFL-CIO v. Citizens Telecommunications Co. of
    California*,
    2006 WL 1377102 (E.D. Cal. May 18, 2006) ............................................................. 13

*Jane Doe 1 v. Nielsen*,
    357 F.Supp.3d 972 (N.D. Cal. 2018) ............................................................................ 21

*Kenney v. United States*,
    458 F.3d 1025 (9th Cir. 2006) ...................................................................................... 24

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
    567 U.S. 298 (2012) ................................................................................................. 16, 18

*Lofton v. Verizon Wireless (VAW) LLC*,
    586 F. App'x 420 (9th Cir. 2014) .................................................................................. 16

*Los Angeles Cnty. v. Davis*,
    440 U.S. 625 (1979) ................................................................................................. 17, 19

*McCormack v. Herzog*,
   788 F.3d 1017 (9th Cir. 2015)........................................................................................18

*Md. Dep't of Hum. Res. v. HHS*,
   763 F.2d 1441 (D.C. Cir. 1985)......................................................................................24

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015)........................................................................................24

*Nat'l TPS All. v. Noem*,
   166 F.4th 739 (9th Cir. 2026).........................................................................................21

*Nw. Env't Def. Ctr. v. Bonneville Power Admin.*,
   477 F.3d 668 (9th Cir. 2007)....................................................................................21, 24

*Or. Advoc. Ctr. v. Mink*,
   322 F.3d 1101 (9th Cir. 2003)........................................................................................13

*Ortega Gonzalez v. Noem*,
   2025 WL 1355272 (D. Or. May 9, 2025)........................................................................18

*Owens v. Schuette*,
   2024 WL 4469086 (E.D. Mich. Oct. 10, 2024)................................................................20

*Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*,
   122 F.4th 825 (9th Cir. 2024).............................................................. 14, 16, 17, 18

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012) .......................................................................................................12

*Roe v. Noem*,
   2025 WL 1382930 (D. Mont. May 13, 2025) ..................................................................19

*Rosebrock v. Mathis*,
   745 F.3d 963 (9th Cir. 2014) ..........................................................................................19

*Suter v. Goedert*,
   504 F.3d 982 (9th Cir. 2007)..........................................................................................14

*United States v. Brandau*,
   578 F.3d 1064 (9th Cir. 2009).........................................................................................17

*United States v. Oregon*,
   828 F.Supp.3d 1092 (D. Or. 2026)..................................................................................18

*Zhou v. Lyons*,
   813 F.Supp.3d 1052 (C.D. Cal. 2025).............................................................................18

**Federal Statutes**

5 U.S.C.
§ 702 .................................................................................................................................24, 25
§ 706 ...................................................................................................................................2, 21

6 U.S.C.
§ 101 ........................................................................................................................................10
§ 313 ...........................................................................................................................10, 11, 12
§ 314 ........................................................................................................................................10
§ 315 .................................................................................................................................10, 23
§ 316 ...........................................................................................................................10, 11, 23

42 U.S.C.
§ 5149 ......................................................................................................................................10

Pub. L. No. 107-296
§ 503 (2002) .............................................................................................................................9

Pub. L. No. 119-37
§ 120 (2025) .............................................................................................................................9

**Other Authorities**

Executive Order 14251 ....................................................................................................................14

Executive Order 14356 ......................................................................................................................8

**INTRODUCTION**

Defendants concede the merits of Plaintiffs' Administrative Procedure Act ("APA") and ultra vires claims against the Department of Homeland Security ("DHS") and Federal Emergency Management Agency ("FEMA"), as well as the contents of the record and the absence of any material fact disputes. Defendants do not contest the record evidence establishing the events in late 2025 and early 2026, when DHS ordered FEMA to create an Annual Staffing Plan that called for the elimination of half of FEMA's staff, and when DHS and FEMA began to carry out that plan through the non-renewal of COREs by NTE date. Defendants also do not contest that this arbitrary plan to halve FEMA's staff and its initial implementation through non-renewal of COREs in January was undertaken in direct contradiction to the analyses completed by FEMA components regarding their staffing needs and agency mission. Nor do Defendants contest the record evidence that implementation of the staffing cuts was halted only because of this litigation, and that DHS continues to control FEMA's personnel decisions, including decisions about CORE renewals. And Defendants offer no defense of the legality of the challenged actions against Plaintiffs' ultra vires and APA claims, including that they are arbitrary and capricious as well as contrary to FEMA's broad statutory mandates, the Post-Katrina Act's limitations on DHS's authority, and Congress's mandatory reprieve from reductions of employee positions across the government.

Instead, Defendants re-argue threshold jurisdictional issues recently rejected by this Court, and contest some, but not all, aspects of Plaintiffs' requested relief. This Court has correctly rejected Defendants' jurisdictional arguments regarding channeling and standing with respect to the claims at issue (ECF 434), and Defendants give this Court no valid reason to revisit those determinations. As to mootness, Defendants once again fail to show that all the challenged actions have ceased, much less that the full effects of those actions have been stamped out. Nor do they show that there are any procedural safeguards, substantive repudiations, or other factors that would allow any supposed cessation of workforce reduction efforts to moot this dispute. Instead, they ask the Court to take it on faith that DHS has abandoned its plans to downsize the FEMA, contradicting direct evidence from decision-makers at DHS. This does not meet Defendants' burden, especially in light of contrary evidence including recently produced documents that show continued DHS

commitment to workforce reductions under its new leadership.

With respect to relief, Defendants do not contest the availability of a declaration that the DHS and FEMA actions were unlawful or of an order setting aside those actions under 5 U.S.C. §706. Defendants challenge two aspects of the requested relief: first, irreparable harm for purposes of permanent injunctive relief; and second, the Court's authority to order backpay to affected employees. Defendants are wrong on both counts. Plaintiffs' evidence proves irreparable injury from the non-renewal of the January COREs as well as from DHS's plan to eliminate broad swaths of FEMA's workforce, which it has yet to repudiate or revoke. The injunctive relief Plaintiffs seek is directly tailored to remedy those misdeeds and is well within the scope of the Post-Katrina Act's substantial limitations on DHS's control over FEMA, despite Defendants' atextual and overly narrow reading of that statute. Finally, sovereign immunity does not bar relief either under the APA or in the form of a permanent injunction that would require Defendants to provide backpay.

Accordingly, Plaintiffs respectfully request the Court grant partial summary judgment to Plaintiffs on their claims against DHS and FEMA (ECF 411) (converted to motion for partial summary judgment, ECF 433 at 6-7), enter the relief set forth in the accompanying revised proposed order, and deny Defendants' cross-motion for partial summary judgment (ECF 451).[1]

DISCUSSION

I.    **Defendants' Revisionary Version of Events is Not Supported by the Summary Judgment Record.**

Defendants concede both the content of the administrative record and that there are no material disputes of fact that preclude summary judgment. The Court gave Defendants the chance to identify documents cited by Plaintiffs that should be excluded from the administrative record, ECF 433 at 7, but Defendants chose not to do so. However, Defendants' brief mischaracterizes the record, and Plaintiffs respond to correct those mischaracterizations.[2]

---

[1] Plaintiffs have submitted with this brief a revised proposed order, modifying the original proposed order granting the motion for preliminary injunction in light of this Court's conversion of Plaintiffs motion into one for partial summary judgment. ECF 411; ECF 433 at 6-7.

[2] Defendants' brief repeats the same mischaracterizations of the record as in its supplemental opposition to Plaintiffs' motion for preliminary injunction (ECF 418), to which Plaintiffs have

2
PLFS' REPLY AND OPPOSITION TO CROSS-MOTION, No. 3:25-cv-03698-SI

### A.    DHS directed FEMA to develop and implement an Annual Staffing Plan to eliminate half of FEMA's workforce, and to implement those cuts by eliminating CORE positions.

Defendants claim that FEMA acted independently of DHS, but the uncontroverted record proves otherwise.  Plaintiffs submitted record evidence that DHS directed FEMA to include a 50% cut in its Annual Staffing Plan and that DHS and FEMA began to implement that plan through the non-renewal of COREs by NTE date.  ECF 411 at 6-23; ECF 423 at 3-6.  Defendants do not dispute DHS's role in formulating this plan or provide any contrary evidence.  The uncontroverted record evidence also establishes that (1) the plan to eliminate half of FEMA's staff was directly contrary to the multiple bottoms-up staffing analyses done by FEMA components that found that the agency needed to maintain existing staffing levels to preserve baseline functioning, and (2) the execution of this plan through indiscriminate non-renewal based on NTE date would prevent the agency from performing its statutory duties.[3]  *See* ECF 411 at 16-19, 23-24, 29-31.

Defendants continue to deny the role of DHS in ordering these actions, contending that Karen Evans herself made the decision to eliminate CORE positions in January 2026.  Again, the record evidence demonstrates otherwise, that FEMA did not exercise independent decision-making to separate the CORES.  Defendants ignore Evans' own testimony that she was a DHS political

previously thoroughly responded (ECF 423 at 3-9).  In the interest of a complete record with respect to Plaintiffs' motion for partial summary judgment, Plaintiffs respond again to explain why Defendants' characterizations misstate the uncontroverted record.

[3] Defendants have recently produced further communications from December 2025 that confirm that DHS directed FEMA's staff reduction plan.  *See* Eshleman Decl., Exs. A, B, C; *see also* Leonard Decl., Exs. A at USA-AFGE-Exp.-0439955 (email from Evans in November stating that she was "reach[ing] out to MGMT," referring to the Management Directorate of DHS, "to get their view" of the Annual Staffing Plan assignment), B at USA-AFGE-Exp.-0438581-82 ("I spent some time with Karen yesterday regarding the OPM staffing plan task and expectations for the Agency to continue reducing the overall size of our workforce.... Our first task will be focused on the Disaster Workforce, primarily our use of COREs across the Agency.").  And the evidence produced further confirms that Evans continued working with DHS officials like Guy and Voorhies to make decisions about FEMA staffing in the following months.  *See* Leonard Decl., Ex. C; *see also* Eshleman Decl., Ex. D.  Defendants produced these documents in July 2026 (including emails to and from Karen Evans and DHS officials) only in response to this Court's order requiring production of communications regarding Annual Staffing Plans (ECF 434), but these communications were responsive to this Court's prior discovery orders (ECF 321, 328), and were inexplicably never produced by Defendants before the depositions of the individuals involved in these communications.  Plaintiffs were therefore denied the ability to examine these witnesses (including Karen Evans) about these communications, providing further reason to exclude Ms. Evans' unsupported hindsight testimony. *See* ECF 412-1 at 20-22; ECF 421 at 14-15.

appointee who answered to DHS leadership and was exercising the authorities *"previously assigned" to FEMA*. ECF 312-1 ¶1. They also repudiate her prior sworn testimony that DHS made the decisions regarding the CORE separations. *Id*. ¶25. The evidence reveals that Evans took direction from DHS, including her admissions that she intended to copy DHS on *every email pertaining to* FEMA (via DHS Senior Advisor Kara Voorhies) (ECF 414-1, Ex. A (3/31 Evans Depo. at 128:7-16)) and was in close Signal communication with DHS officials on numerous chats (ECF 414-1, Ex. G (5/26 Evans Depo. at 51:4-52:5) (listing Signal chats produced, including many with DHS officials)). In light of this evidence, any decision by Evans cannot be attributed to FEMA independent of DHS direction. This is consistent with both her initial testimony to this Court that DHS made the relevant decisions (ECF 312-1 ¶25), and her later explanation of that statement, that she considered DHS and FEMA to be the same (ECF 414-1, Ex. A (3/31 Evans Depo. at 361:6-362:16, 363:25-364:12)).

It is no accident that less than a month after DHS and FEMA created a 2026 staffing plan with a 50% reduction in staff—which the record shows they planned to begin implementing through reducing COREs by NTE date—COREs with January NTE dates began universally receiving non-renewals. ECF 411 at 17-24. While Defendants rely solely on Evans' hindsight testimony that she operated independently of DHS orders, that testimony is not supported by a single document, is inconsistent with her own emails and notes of meetings and other documents, and should be excluded as a remedy for Defendants' spoliation of contemporaneous evidence, as Plaintiffs' Rule 37 motion explains. *Id*. at 5-6; *compare* ECF 411 at 17-24 (citing evidence submitted at ECF 414-1 to 414-12).[4] Even if the Court were to consider Evans' testimony, it

---

[4] Evans' hindsight testimony should be excluded in light of her confessed failure to preserve months of directly relevant communications (including those on the "FEMA 2.0" and other Signal chats with DHS officials including former DHS Deputy Chief of Staff Joseph Guy and Voorhies), and her intentional deletion of communications by setting Signal's auto-delete functions. *See* ECF 421 at 14-15; *see also* ECF 411 at 40 n.40 (explaining that testimony need not be credited on summary judgment when it is "compromised and contradicted" by the record). In addition, Evans has now refuted her own testimony more than once. *E.g.*, *compare* ECF 414-1, Ex. A (3/31 Evans Depo. at 111:9-11) ("I made sure, in particular, that Ms. Voorhies was not involved in any personnel decisions."), *with id.* at 130:18-131:2 ("Q. You communicated with Ms. Voorhies regarding FEMA's authority to extend CORE appointments, for example? … A. Yes, I would. Q. And you communicated with Ms. Voorhies about the non-renewals of COREs by NTE date.

would fail to refute Plaintiffs' showing of DHS control. Defendants describe Evans as testifying that she made the decision to separate CORE employees "voluntarily, for her own reasons" but fail to explain that the reason she gave was that DHS had removed FEMA's authority to act. ECF 418 at 5; *see* ECF 414-1, Ex. A (3/31 Evans Depo. at 365:2-9, 365:17-20).

### B.    Defendants misstate the record to claim that DHS and FEMA have moved on from downsizing the FEMA workforce.

Defendants imply that DHS and FEMA have moved on from any plan to eliminate staff, by pointing to changes in leadership at DHS and FEMA and the fact that the final FEMA Review Council Report replaced the draft recommendation for a 50% staffing cut with more general language about workforce reductions. ECF 450 at 7-8. Defendants ignore that both the new DHS leadership and the FEMA Review Council report continue to call for restructuring and downsizing FEMA. *See* ECF 423 at 6-9.

DHS Secretary Mullin has publicly confirmed that he intends to "reform" and "restructure" FEMA, as well as shift its responsibilities to state and local governments. ECF 423-2, Exs. B, C, D, E. The FEMA Review Council report likewise continues to recommend restructuring FEMA, transferring responsibility for disaster relief and recovery to state, local, and tribal governments, and downsizing FEMA by "reducing staff." ECF 414, Ex. B at 54.[5] As Secretary Mullin

---

Correct? ... A. Yes, I did."); *compare* ECF 414-1, Ex. G (5/26 Evans Depo. at 23:2-5) (insisting she preserved all work-related communications), *with id.* 38:6-25 (no longer recalling), and *id.* at 42:16-43:7 (admitting failure to preserve Signal chat about CORE). When confronted by her own written communications, Evans admitted that she had testified incorrectly or failed to remember key details. *Compare* ECF 414-1, Ex. A (3/31 Evans Depo. at 215:22-217:5) (claiming no memory of a staffing plan to cut FEMA's 24,000 employees in half) *with id.* at 218:14-222:9 (admitting she had submitted a FEMA Annual Staffing Plan cutting FEMA from 23,000 to 11,500 employees to DHS based on guidance that came from OPM/OMB); *see also* ECF 414-1, Ex. G (5/26 Evans Depo. at 52:6-20) (admitting she incorrectly testified that there were only three FEMA-related signal chats on her personal phone). She submitted an inaccurate preservation declaration to this Court (ECF 356-1) that omitted mention of "backups" she created on her personal computer just days before. ECF 412-1 at 8-9. She demonstrably lied to Congress days after providing contrary testimony to this Court (ECF 411 at 32) and her testimony thus cannot be considered.

[5] To be sure, the final report correctly recognizes that certain proposals such as "streamlin[ing]" FEMA's individual assistance program and "reform[ing]" FEMA's public assistance program, both of which are created by statute, will require legislation. ECF 450 at 7 (citing ECF 414, Ex. B at 15). This is hardly a concession that, absent legislation, DHS is prohibited from implementing the report's recommendation to reducing FEMA's staff. And, in fact, Defendants continue to argue that DHS *can* lawfully impose workforce reduction targets on FEMA under the current statutory framework. *See* ECF 450 at 21-23; *infra* at Section II.B.3.ii.

explained when announcing the release of the report,  "*We are driving ahead, transforming FEMA into a streamlined,* mission-focused agency."  ECF 423-2, Ex. A (emphasis added).

Defendants have recently produced further documents pertaining to FEMA's Annual Staffing Plan that confirm Secretary Mullin's plan is still to make FEMA into a "leaner" agency. *Id.*  In particular, following Mullin's confirmation in March 2026, DHS has continued to use FEMA's original Annual Staffing Plan submission in its internal planning.  *See* Eshleman Decl., Ex. F at USA-AFGE-Exp.-0430529; *see also id.*, Ex. E (email correspondence attaching Ex. F). Moreover, at the end of May, well into Secretary Mullin's tenure, DHS met with components regarding DHS and OPM's goals for the agency's workforce.  As summarized by the FEMA OCHCO official who attended that meeting, "DHS is … prioritizing: (1) reductions in total and contractor headcount …" and "DHS & OPM Staffing Goals" include "[r]educ[ing] overall headcount."  Leonard Decl., Ex. G at USA-AFGE-Exp.-0443156.  The presentation from that meeting confirms as much, listing "Reduce Overall Headcount" as the first item under "OPM and DHS Staffing Goals."  *Id.*, Ex. H at USA-AFGE-Exp.-0443567; *see also id.*, Ex. I; Eshleman Decl., Exs. E at USA-AFGE-Exp.-0430502, F at USA-AFGE-Exp.-0430528-29.

Defendants have provided no evidence—including any DHS declarations—that Mullin does *not* intend to use (unlawfully usurped) authority to downsize FEMA.  ECF 414 ¶16; *see also* ECF 423-1 ¶4.  Defendants submit no evidence on the new DHS leadership's current plans for FEMA (including no evidence that Secretary Mullin has revised or repudiated the former staffing plans), although such evidence would be within their possession and control.  Rather than submitting sworn declarations from their own officials, they cite inadmissible "[n]ews sources" that have reported on what this administration has "signaled."  ECF 450 at 7-8.  Plaintiffs' evidence on DHS's plans to downsize FEMA and DHS's continued control of FEMA personnel decisions is thus uncontroverted.

In sum, Defendants wish this Court to infer, based simply on the fact that DHS and FEMA leadership has changed, that Defendants have abandoned the goal of reducing FEMA staffing.  But such an inference is entirely unsupported by, and indeed, contrary to, the record evidence.

C.    **DHS still controls FEMA personnel decision-making.**

Defendant also wish this Court to infer that FEMA now makes its own decisions.  Again, this is contrary to the uncontroverted record.

Consistent with the evidence showing DHS continues to intend to reduce FEMA's staffing, even after the departure of former Secretary Noem, DHS still has not returned control over personnel decisions such as CORE renewals to FEMA.  Defendants ignore that DHS removed FEMA's decision-making authority regarding CORE renewals in 2025, and has never returned that authority to FEMA.  The record evidence of the removal of FEMA's authority is clear:  DHS adopted a hiring freeze of its own volition and applied it to prevent FEMA from independently deciding to renew COREs.  ECF 423 at 6; ECF 414-2 at 197 (Depo. Ex. 41); ECF 414-1, Ex. C (Prieur Depo. at 104:4-106:4); *see also* ECF 414-2 at 191 (Depo. Ex. 39) (DHS exempt from presidential hiring freeze); ECF 414-1, Ex. B (Edwards Depo. at 90:16-92:18) (same).  Although DHS revested FEMA with limited renewal authority in March 2025, DHS set a time limitation on that authority and subsequently allowed it to expire on December 31, 2025. ECF 423 at 6; ECF 414-2 at 138 (Depo. Ex. 21).

The record evidence that DHS has never returned authority for employment decisions to FEMA is also clear.  DHS continues to control decision-making regarding CORE renewals.  ECF 423 at 6; ECF 414 ¶16; *see also* ECF 423-1 ¶4.  FEMA explained at the May 2026 "all-employee" meeting that DHS continues to control decisions regarding whether and for how long FEMA CORE employees will be renewed, and COREs with NTE dates after June 2026 were given no reassurance as to whether they will be renewed.  ECF 414 ¶¶19-20.  The materials Defendants have recently produced confirm FEMA continues to require DHS approval for staffing decisions and that DHS continues to override FEMA's analysis of its staffing needs in making those decisions. *See* Eshleman Decl., Ex. G; *see also* Leonard Decl., Ex. D at USA-AFGE-Exp.-0432700 (requiring DHS approval for renewal of FEMA reservists); *id.*, Ex. I at USA-AFGE-Exp.-USA-AFGE-Exp.-0436828, 30.  Defendants make no representation that DHS has restored FEMA's authority over hiring and CORE renewals under this new leadership, because that would not be true.

**D.    Defendants' documents establish OMB and OPM involvement in FEMA's Annual Staffing Plan.**

Unable to deny DHS's involvement in the development of FEMA's Annual Staffing Plan, Defendants quibble about whether this plan was ever submitted to OMB and OPM and, by implication, never "final."  As an initial matter, regardless of whether the Annual Staffing Plan was submitted to OMB and OPM for approval, Defendants ignore uncontroverted testimony from DHS CHCO Edwards that he instructed DHS components to implement their Annual Staffing Plans and treat them as final regardless of whether they received specific feedback from OMB or OPM.  ECF 414-1, Ex. B (Edwards Depo. at 151:3-152:10).  As this Court has explained, "Annual Staffing Plans are not made less final because they have not been submitted to another agency for review."  ECF 434 at 15-16.  In fact, FEMA *did* begin carrying out its Annual Staffing Plan in January 2026.  ECF 411 at 17-24.  Although Defendants have paused their execution of the workforce reductions in that plan pending this litigation, DHS retains control over FEMA's personnel decisions and has reiterated its commitment to reducing FEMA's workforce. *See supra* Sections I.B, C.

Further, the documents Defendants have recently produced confirm DHS *has* communicated its Annual Staffing Plan to OMB and OPM.  *See* Leonard Decl., Ex. E; *see also id.*, Ex. F.  Defendants have again notably declined to provide any evidence from FEMA or DHS decisionmakers that the Annual Staffing Plan has been revoked or repudiated, nor have they provided evidence to show that the Annual Staffing Plan containing the 50% cut was ever replaced or modified in any subsequent submission for OMB/OPM approval.  To the contrary, the evidence recently produced shows that DHS has continued to use the FEMA Annual Staffing Plan in internal planning.  Eshleman Decl., Ex. F at USA-AFGE-Exp.-0430528-29.  This comports with the evidence of OMB and OPM's involvement that Plaintiffs previously submitted, including showing that DHS and FEMA created the FEMA Annual Staffing Plan to comply with Executive Order 14356 and OMB/OPM's directives; that the 11,500 number from FEMA's December Staffing Plan had been "provided to OPM/OMB at a high level but we haven't made that public," ECF 414-2 at 121 (Depo. Ex. 18); ECF 414-1, Ex. A (3/31 Evans Depo. at 229:4-231:6); that Joe Guy, who directed Evans to submit a staffing plan with a 50% cut, had been meeting weekly with high-level OMB officials regarding FEMA's staffing (along with Kara Voorhies); and that DHS had been providing information and plans to OMB and OPM regarding cutting FEMA's staff over Signal.

ECF 423 at 4-5.  Nor does the OMB declaration on which Defendants rely actually state that the FEMA plan was never sent to or approved by OMB; it says only that DHS and FEMA did not submit anything through a particular portal or email.  ECF 345-9.  Because that declaration is from someone other than the high-ranking OMB individual (Sullivan) or other OMB officials who held weekly meetings with DCOS Guy and others, it fails to establish that the plan was not provided to OMB at all.  ECF 414-1, Ex. F (5/15 Guy Depo. at 78:11-80:3).

## II. Plaintiffs Are Entitled to Partial Summary Judgment Against DHS and FEMA.

### A. Defendants Do Not Contest the Merits of Plaintiffs' Claims.

Defendants fail to dispute the merits of any of Plaintiffs' APA and ultra vires claims against DHS and FEMA.  They do not marshal any evidence to refute Plaintiffs' showing that the plan to halve FEMA's staff by non-renewing COREs by NTE date would prevent FEMA from performing its mandatory statutory functions, nor do they contest that the initial implementation of that plan had already begun to do so.  ECF 411 at 16-19, 23-24, 29-31; *see also* ECF 301-1 at 19-22, 27-31.  They similarly do not refute that these actions—which run counter to results of the multiple staffing analyses completed by FEMA components and which were based on when an individual's term happened to expire rather than any analysis of agency need—were arbitrary and capricious.  Nor do they refute that the non-renewals violated the prohibition on reductions in force under Section 120(a) of the Continuing Resolution. Pub. L. No. 119-37 §120 (2025).

Defendants do not directly respond to Plaintiffs' claims that they have violated the Post-Katrina Act.  In the context of disputing the appropriate scope of injunctive relief, Defendants argue that the Act contains no restriction on "DHS involvement in personnel decisions" aside from a couple of "narrow" exceptions.  ECF 450 at 22.  Fatally, Defendants disregard key provisions that remove any DHS's authority over FEMA's personnel, and, as to the provisions Defendants do address, they fundamentally misunderstand their scope.

First, Defendants ignore that the Post-Katrina Act transferred FEMA's personnel from DHS to FEMA.  When DHS was created in 2002, its organic statute "transferred to the Secretary the functions, personnel, assets, and liabilities of … [t]he Federal Emergency Management Agency." *See* Homeland Security Act of 2002, Pub. L. No. 107-296 §503, 116 Stat. 2135, 2213.  Following

the catastrophic response to Hurricane Katrina, Congress reversed course, "transferr[ing] to the Agency … [a]ll functions of the Federal Emergency Management Agency … including all of its *personnel*, assets, components, authorities, grant programs, and liabilities."  6 U.S.C. §315(a)(1) (emphasis added).  Stated differently, Congress emphatically did *not* give DHS "authority to oversee FEMA, just as any Cabinet Department oversees its component agencies," ECF 450 at 22, but instead sought to insulate FEMA from DHS decision-making by returning control over FEMA's functions and personnel to FEMA.  Defendants cannot will this provision out of existence by simply ignoring it, nor can they prevail based on an interpretation of the Act that would render this provision a nullity.  *In re Cervantes*, 219 F.3d 955, 961 (9th Cir. 2000).

Next, although Defendants concede that the Post-Katrina Act precludes substantially or significantly reducing FEMA's authorities, responsibilities, or functions or the capability of the FEMA to perform those missions, authorities, responsibilities (6 U.S.C. §316(c)(1)), they summarily discard this provision as inapplicable.  DHS's undisputed expropriation of FEMA's authority over its staffing falls squarely within the Post-Katrina Act's prohibition on "substantially or significantly reduc[ing]" FEMA's "*authorities*, responsibilities, or functions."[6]  6 U.S.C. §316(c)(1).  The uncontroverted evidence establishes that the elimination of half of FEMA's staff would significantly impair FEMA's capability to perform its missions, authorities or responsibilities,[7] if not eliminate that capacity entirely.  ECF 411 at 16-19, 23-24, 29-31, 34-35 n.30; *see also id.* at 31 (citing evidence from FEMA components stating that the non-renewal of employees in January significantly impaired their ability to function).  In the same vein, although

---

[6] That Congress gave FEMA authority over its own personnel is evidenced both by §315(a)(1)'s transfer of FEMA's personnel back to the agency as well as the Stafford Act, under which FEMA is authorized to hire temporary employees and take other actions regarding personnel like converting those temporary hires to full time employees after a certain timeframe.  42 U.S.C. §5149(b), (c).

[7] To the extent that Defendants suggest that this provision applies only to FEMA's mandatory "statutory functions," they again construe the statute too narrowly.  ECF 450 at 23.  Section 316(c)(1) addresses not only FEMA's ability to perform mandatory duties, but also its ability to execute actions that it is authorized, but not obligated, to perform. *See* 6 U.S.C. §316(c)(1); *see also* 6 U.S.C. §101(9) (defining "functions" to include "authorities, powers, rights, privileges, immunities, programs, projects, activities, duties, and responsibilities."); *see also id.* §313(b) (defining FEMA's "mission"); *id.* §314(a) (listing the FEMA Administrator's "[a]uthor[ities] and responsibilities").

Defendants now admit that the Post-Katrina Act exempts FEMA from the Secretary's general reorganization authority, they fail to contend with the record evidence that the Annual Staffing Plan and its initial execution would have and did "consolidate, alter, or discontinue organizational units within" FEMA.[8] ECF 411 at 16-19, 23-24, 29-31, 34-35 n.30; *see also* ECF 314 at 8.

None of the provisions that Defendants point to grant DHS supervisory authority over FEMA or override the above limitations on DHS's authority. Defendants make much of the fact that FEMA remains a "distinct entity within the Department." ECF 450 at 21 (quoting 6 U.S.C. §316(a)). Plaintiffs have never disputed that FEMA remains within DHS. *See, e.g.*, ECF 301-1 at 32; ECF 411 at 28. But this organizational provision does not give the Secretary carte blanche to disregard Congress's express restraints on DHS's authority elsewhere in the Act. And although Defendants make a multitude of assumptions about what powers are implicitly conferred upon the Secretary by virtue of FEMA being housed within DHS, no such conferral of authority can be found in the text of §316(a). Conversely, its designation of FEMA as "distinct" indicates a *limitation* on the Secretary's authority over it.[9]

The other general organizational provisions that Defendants identify are no more helpful to them. That the FEMA Administrator is "the principal advisor to the President, the Homeland Security Council, and the Secretary for all matters relating to emergency management in the United States," and, as such, shall provide advice when requested, 6 U.S.C. §313(c)(4)(A), (B)(ii), merely establishes FEMA's role in decision-making regarding emergency management, and does not grant

---

[8] Defendants emphasize the number of individuals who were not renewed in January to suggest, without evidence, that their removal could not have had an impact on the agency's functioning. ECF 450 at 23. But it is the indiscriminate and arbitrary nature of the non-renewals rather than simply their magnitude which, as the record shows, caused them to impair FEMA's functioning. ECF 411 at 31 (citing ECF 414-11, Exs. A, B, D).

[9] Once again, Defendants employ an overly narrow interpretation that would render this provision mere surplusage. That is, §316(a) must do more than prevent FEMA from "being folded into DHS or another component agency," ECF 450 at 22, as this is already accomplished by multiple other statutory provisions. *See* 6 U.S.C. §316(c) (prohibiting DHS from diverting FEMA's assets, functions, or missions to "any other organization, unit, or entity of the Department"); *id.* §316(b) (exempting FEMA from the Secretary's reorganization authority, including disallowing establishing, consolidating, altering, or discontinuing organizational units within FEMA). "[S]tatutes should not be construed in a manner which robs specific provisions of independent effect." *See In re Cervantes*, 219 F.3d at 961 (citation omitted). Regardless of the scope of the limitation §316(a) imposes on the Secretary's powers, it certainly does not act as an affirmative grant of authority to the Secretary.

decision-making authority or contravene the other limitations on DHS decision-making authority for FEMA.  That the FEMA Administrator is authorized to "report to the Secretary, without being required to report through any other official of the Department," likewise does not grant authority or contravene the limitations discussed above.  The same is true of the provision stating that the Administrator should, "under the leadership of the Secretary" coordinate with DHS subdivisions "to take full advantage of the substantial range of resources in the Department."  6 U.S.C. §313(b)(2)(F).  None of these general provisions grant affirmative authority to DHS, but even if they did, any general provisions must accede to the explicit limitations found elsewhere in the Act. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

### B.    This Court Has Correctly Concluded that it Has Jurisdiction.

#### 1.    Plaintiffs' Claims Were Not Impliedly Precluded by Congress.

Defendants provide this Court with no basis to revisit its recent implied preclusion analysis, in which it rejected all the arguments Defendants repeat here.  ECF 434 at 8-10.

#### 2.    Plaintiffs Have Standing to Bring these Claims.

Although the Court has already recently determined that Plaintiffs have standing (ECF 434 at 10-14), Defendants disagree and present additional argument.  None of Defendants' new arguments provides any valid basis to revisit the Court's determination.

First, Defendants appear to misunderstand that even though DHS has terminated collective bargaining with AFGE, AFGE still has dues-paying *members* who work for FEMA, including CORE employees impacted by the challenged actions.  *See* ECF 434 at 12-13.  The Executive Order regarding bargaining rights cannot eliminate *membership* in a union.  AFGE's continued representation of affected members conclusively establishes associational standing.[10]

Next, Defendants dispute this Court's conclusion that Plaintiff AFGE can also establish associational standing on the grounds that it continues to provide representational services to former bargaining unit employees who are the "functional equivalent" of members.  ECF 434 at

---

[10] Because AFGE has associational standing, the Court should reject Defendants' argument that injunctive relief eliminating the ongoing effects of the January non-renewals would not remedy Plaintiffs' injuries.  ECF 450 at 14.

11-12 (quoting *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25 (D.C. Cir. 2002)).  Defendants fail to identify a persuasive basis for reconsidering this determination.

To the extent Defendants urge the Court to disregard *Fund Democracy* as out-of-circuit "dicta" (ECF 450 at 13), the Ninth Circuit has likewise held that an organization may establish associational standing when its injured "constituents are the functional equivalent of members." *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1112 (9th Cir. 2003); *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977) (finding organization had associational standing on behalf of its constituents that "are not 'members' of the Commission in the traditional trade association sense," but nonetheless "possess all of the indicia of membership in an organization").

Defendants assert that only a non-membership organization can assert associational standing on this theory, whereas "a traditional membership organization, such as a union" cannot. ECF 450 at 12-13.  Other courts have rejected this arbitrary line-drawing, holding an organization like a union with an official membership structure may still "sue on behalf of its members *and* those who 'possess all of the indicia of membership in [the] organization.'"  *Int'l Bhd. of Elec. Workers AFL-CIO v. Citizens Telecommunications Co. of California*, 2006 WL 1377102, at *2 (E.D. Cal. May 18, 2006) (emphasis added) (citation omitted).  Moreover, the formalistic distinction Defendants draw between organizations that do and do not have official membership structures ignores the rationale underlying *Mink* and analogous cases, which make clear that the fundamental question is whether "the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'"  *Mink*, 322 F.3d at 1111 (citation omitted); *see also Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097 (9th Cir. 2021) ("The ultimate consideration when determining whether an organization has associational standing is whether it has a 'personal stake in the outcome of the controversy.'" (citation omitted)).  That AFGE also has dues-paying members has no bearing on whether its relationship with former bargaining unit employees clears this threshold, which, as the Court correctly determined, it does.

Finally, as to AFGE's organizational standing—a third independent basis for standing—the Court has already rejected the overly broad interpretation of *FDA v. Alliance for Hippocratic*

*Medicine*, 602 U.S. 367 (2024), that Defendants once again invoke.  ECF 450 at 13.  And Defendants' argument that AFGE's organizational standing cannot be premised on the loss of dues because "the membership of COREs in AFGE Local 4060 was terminated in 2025 by the implementation of EO 14,251, which occurred well before the challenged non-renewals," again rests on the faulty premise that the EO's termination of the bargaining relationship somehow precludes AFGE from having dues-paying members within the former bargaining unit.  ECF 450 at 13, 14 n.12.  It does not, and, as the Court has held, AFGE faces an injury from the termination of those individuals and the subsequent loss of dues.[11]  ECF 434 at 13; *see also id.* at 13 n.6 ("[T]he status of AFGE under Executive Order 14251 does not change the standing analysis in this case.").

### 3.    Defendants Have Not Demonstrated that Plaintiffs' Claims Are Moot.

Defendants reprise almost word-for-word the mootness argument from their preliminary injunction opposition, but have not provided any additional evidence or reasoning that would remedy the myriad reasons why this dispute is not moot.  Defendants have failed to meet their burden to establish that Plaintiffs' claims are moot, for all the reasons Plaintiffs have previously explained, which Plaintiffs include again for the Court's convenience here, *see* ECF 423 at 9-15.

Defendants assert that they can avoid judicial review because they have since mooted the need for relief.  Defendants' invocation of mootness rests entirely on the notion that they have voluntarily ceased the challenged unlawful actions, pointing to (1) the new leadership at DHS and FEMA, who Defendants speculate may not wish to resume the large-scale reductions in FEMA's workforce, and (2) the reinstatement of some of the CORE employees who were separated in January 2026.  This does not meet Defendants' burden of proving mootness.

#### i.    Plaintiffs' claims are not moot

Defendants ignore that they bear the burden of establishing mootness.  *See Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir. 2007) ("The burden of establishing mootness is on the party advocating its application."); *see also Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v.*

---

[11] Further, despite Defendants' repeated insistence to the contrary, Plaintiff local governments rely on FEMA's services and Plaintiff unions represent state and local government employees whose work relies on FEMA grants, and both groups face concrete, imminent injury from the challenged reductions in FEMA's staff.  ECF 314 at 16-19; ECF 423 at 17; ECF 417 at 21-22.

*Labrador*, 122 F.4th 825, 841 (9th Cir. 2024). "An action 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *350 Mont. v. Haaland*, 50 F.4th 1254, 1264 (9th Cir. 2022) (citation omitted).

Defendants do not purport to have ceased the full range of actions underlying Plaintiffs' claims. For example, it is undisputed that DHS has not reversed its unlawful usurpation of FEMA's authority over CORE renewals, and recently produced evidence shows that DHS continues to exercise control over FEMA's staffing decisions. *Supra* at 7. Further, Plaintiffs' claims regarding the elimination of CORE positions are plainly not limited to the separations that occurred in January 2026. ECF 298 ¶¶578, 583, 588, 593, 598, 603. Defendants offer no evidence at all that DHS and FEMA have ceased their unlawful implementation of Executive Orders 14210 and 14356 and the associated OMB/OPM Memoranda, through their Annual FEMA Staffing Plan and related actions. Defendants cannot meet their burden to establish mootness when they fail to show that they have ceased the full breadth of the challenged actions giving rise to those claims and necessitating Plaintiffs' requested relief. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017).

Further, although Defendants assert that the January non-renewals are moot, Defendants have not actually ameliorated the effects of their unlawful actions. DHS and FEMA did not reinstate to their prior positions the COREs who were not renewed in January, but instead offered most of them entirely new positions, so they have not provided any remedy, backpay, or retroactive benefits for the time they were separated. ECF 414 ¶26. Offering new jobs rather than extending the prior positions also disrupts federal service because although the new positions offer the same grade and step, they do not offer credit for the "time in step" some employees had. *Id.* ¶27. The effect is that individuals have lost months of time worked towards the next step, as well as benefits that accrue with time worked such as vacation. *Id.* As this Court correctly identified, for "even those CORE employees who may have now been rehired," their "injuries remain unredressed." ECF 434 at 14. Thus, the controversy remains live with respect to those separations for which effective relief can still be granted. *See Health Freedom Def. Fund, Inc. v. Carvalho*, 148 F.4th 1020, 1026 (9th Cir. 2025) ("In the context of injunctive relief, a case is not moot if the court is

able to 'undo' the effects of the alleged illegal action.").

Finally, as to Plaintiffs' claims regarding DHS and FEMA's larger workforce reduction efforts, Defendants again fall short. Although Defendants hypothesize that Mullin and Hamilton might not wish to continue DHS's efforts to reduce FEMA's workforce, they: 1) conspicuously fail to provide any sworn evidence from DHS and FEMA decisionmakers to support this speculation; 2) provide no other evidence that there has been any revocation, repudiation, or revision to FEMA's Annual Staffing Plan; and 3) ignore the evidence that DHS and Mullin still intend to restructure FEMA through downsizing (*supra* at 5-6).[12] Counsel's unsupported speculation about what Mullin and Hamilton intend is plainly insufficient to meet their burden on mootness, especially in light of recently produced evidence showing that, in the months since Mullin has assumed the mantle, DHS remains committed to reducing staffing and has continued to use FEMA's December Annual Staffing Plan submission in its internal planning. *See supra* at 6.

### ii.    Defendants' voluntary actions do not meet their mootness burden

Because Defendants invoke only their own conduct to establish mootness, *see supra* at 14, they face an even heavier burden. "[V]oluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012); *see also Lofton v. Verizon Wireless (VAW) LLC*, 586 F. App'x 420, 421 (9th Cir. 2014) ("Generally, a party may not moot a claim for injunctive relief simply by voluntarily ceasing the alleged misconduct, because it could then resume its activity after the claim is dismissed."). "[A] voluntary change in official stance or behavior moots an action only when it is absolutely clear to the court, considering the procedural safeguards insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur." *Planned Parenthood*, 122 F.4th at 841 (cleaned up); *see*

---

[12] Defendants contest only whether there is evidence of any "existing plan to cut FEMA in half," stopping short of making any representation that there is no such plan. ECF 450 at 17. But aside from the fact that Plaintiffs *have* shown that such a plan exists, ECF 411 at 12-24, it is Defendants' "formidable burden" to prove that they will not resume attempts to reduce FEMA's workforce. *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024).

*also United States v. Brandau*, 578 F.3d 1064, 1068 (9th Cir. 2009).  Thus, Defendants bear the "formidable burden," *Fikre*, 601 U.S. at 241, of proving both that "'there is no reasonable expectation…' that the alleged violation will recur," and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted).[13]

First, the limited facts Defendants have pointed to are insufficient to show that it is "absolutely clear" in light of "the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur."  *Planned Parenthood*, 122 F.4th at 841.  In fact, no "'procedural safeguards' insulat[e] the new state of affairs from arbitrary reversal."  *Id.*  The Ninth Circuit has explained that "an executive action that is not governed by any clear or codified procedure cannot moot a claim."  *Id.* (citation omitted).  Defendants point to no procedural mechanism that would prevent them from resuming their planned workforce reduction through terminating COREs, because there is none.  Not only have Defendants failed to identify any such safeguards, but they argue that there are no such constraints on their ability to separate COREs, whom they contend are temporary, at-will employees who can be terminated for any reason at any time.  ECF 312 at 1, 5-6; ECF 418 at 3, 11; ECF 450 at 3-4, 10-11.

Nor can Defendants' unsupported suppositions about Mullin and Hamilton's intentions regarding FEMA staffing cure the lack of any procedural safeguards.  *Supra* at 5-6.  This analysis does not turn on the intent of the decisionmaker: "Even assuming Defendants have no intention" to terminate the recently reinstated employees or resume carrying out the Annual Staffing Plan, "the ease with which [FEMA and DHS] could do so counsels against a finding of mootness, as 'a case is not easily mooted where the government is otherwise unconstrained should it later desire'" to

---

[13] Defendants' suggestion that the voluntary cessation exception may not "even [be] relevant under these circumstances," is incorrect.  ECF 450 at 17.  Voluntary cessation applies when the purported basis for mootness arises from the Defendant's "own conduct."  *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1238 (9th Cir. 1999).  Defendants' invocation of mootness because DHS and FEMA have reinstated some of the non-renewed COREs is a prototypical example of voluntary cessation.  ECF 450 at 15-16.  Their suggestion that Plaintiffs' claims arising from the Annual Staffing Plan are moot because the new DHS and FEMA leadership may not wish to continue implementing it is similarly predicated on Defendants' own conduct.  ECF 450 at 15-16.

reverse course. *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013) (citation omitted); *see also Zhou v. Lyons*, 813 F.Supp.3d 1052, 1061 (C.D. Cal. 2025) ("Although ICE may currently have 'no plans' to terminate Plaintiff's SEVIS record based on the same challenged basis it originally invoked, nothing is stopping ICE from resuming this practice in the future if it so chooses."); *Ortega Gonzalez v. Noem*, 2025 WL 1355272, at *4 (D. Or. May 9, 2025) (no mootness from voluntary cessation where "[n]othing in the [new] guidance prohibits the allegedly unlawful terminations"). Defendants have identified no procedural constraints that would preclude the government from "'return[ing] to [its] old ways' despite abandoning them in the ongoing litigation."[14] *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1039 (9th Cir. 2018).

Second, "the government's rationale for its changed practice(s)" similarly cuts against a finding of mootness. Where cessation is accompanied by an admission of substantive error, that can support the conclusion that the reversal is permanent and thus has the effect of mooting the controversy. *See, e.g.*, *Planned Parenthood*, 122 F.4th at 841 (concluding case was not moot where the changed action was justified "solely on procedural grounds" and the decisionmaker did not "repudiate[]" prior substantive analysis); *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) (case was not moot where prosecutor "never repudiated the statute as unconstitutional, and he did not cease McCormack's prosecution because he believed the prosecution was unlawful"); *Knox*, 567 U.S. at 307 ("[S]ince the union continues to defend the legality of the Political Fight–Back fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future."). But FEMA and DHS have done the opposite: they have refused to admit their unlawful

---

[14] Defendants contend that the Ninth Circuit's voluntary cessation precedent does not "appl[y]" to them because "the voluntary cessation of challenged conduct by government officials" is treated "with more solicitude than similar action by private parties." ECF 450 at 17-18 (quoting *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022)). However, the Ninth Circuit has been clear that "[t]he voluntary cessation rule 'holds for governmental defendants no less than for private ones.'" *Planned Parenthood*, 122 F.4th at 841 (citation omitted). And as other courts have concluded, this Administration has no longer earned the benefit of the doubt. *See, e.g.*, *Fed. Educ. Ass'n v. Trump*, 795 F.Supp.3d 74, 92 (D.D.C. 2025) ("In just six months, the President of the United States may have forfeited the right to such a presumption of regularity.") (collecting cases); *United States v. Oregon*, 828 F.Supp.3d 1092, 1107 (D. Or. 2026) ("The presumption of regularity that has been previously extended to Plaintiff [the federal government] that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds.").

actions and provided *no* justification for their rehiring of the COREs or for any supposed rejection of the Annual Staffing Plan, much less the type of substantive repudiation that could support a finding of mootness.  In fact, Defendants continue to assert that FEMA and DHS may terminate COREs at will, and that their actions with respect to these employees are unreviewable.  ECF 312 at 1, 5-6, 10-13; ECF 402 at 18-20; ECF 418 at 3, 11, 13-14; ECF 450 at 3-4, 10-11.  Thus, the government's stated justification for reversal (or, in this case, lack of justification) counsels against finding that the challenged conduct cannot reasonably be expected to recur.

Other indicators also cut against a finding of mootness here.  Defendants have never issued a formal "policy change" with respect to the January non-renewals and the Annual Staffing Plan, much less one that is "broad in scope and unequivocal in tone." *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014); *A.O. v. Cuccinelli*, 457 F.Supp.3d 777, 788–89 (N.D. Cal. 2020) ("The Court does not find that rescission of the reunification authority requirement was either broad in scope or unequivocal in tone. None of the documents identified by Defendants acknowledge why the reunification authority requirement was imposed in the first place or why it was rescinded.").  Indeed, Defendants fought to keep their policies and actions secret and continue to block that information from Plaintiffs and the Court.  *See Roe v. Noem*, 2025 WL 1382930, at *4 (D. Mont. May 13, 2025) (finding claims were not moot where the government did not "provide any information" about its alleged policy change).  Nor have the changed circumstances invoked by Defendants "been in place" for a period of time comparable to that of the three years in *Rosebrock*. 745 F.3d at 972.  The reinstated January COREs have, in many cases, only been back at work for a month or two.  ECF 418-1 ¶¶7, 9-10.  And although FEMA and DHS have never officially repudiated the Annual Staffing Plan (and indeed, continue to use it, *supra* at 5-6), any change of tack reflected in these rehirings is at most several months old.  ECF 414 ¶22; ECF 383-1 ¶6.

Further, besides Defendants' failure to even attempt to marshal evidence that the challenged conduct will not recur, Defendants also have not shown that "interim relief or events have completely and irrevocably eradicated the effects" of DHS and FEMA's implementation of the Annual Staffing Plan.  *Davis*, 440 U.S. at 631; *supra* at 14-16.  Defendants admit they have not provided backpay or complete benefits retroactive to the unlawful separations; Defendants'

evidence of new job offers also does not even establish that everyone previously separated has been restored to employment; or that all the other FEMA COREs with subsequent NTE dates have been renewed. *Supra* at 14-16. And as to the Annual Staffing Plan containing a 50% reduction, Defendants can hardly show that its effects have been completely eradicated when Defendants do not even assert that the plan itself has been rescinded, revised, or otherwise repudiated. Finally, Defendants make the circular argument that voluntary cessation law does not "apply" because "the only concrete injury (to anyone) alleged by Plaintiffs—non-reappointments of the COREs in January 2026—is no longer redressable." ECF 450 at 17-18. But the only actions they contend removes redressability are their own, which is why voluntary cessation doctrine applies in the first place. Defendants' cited authorities each involved instances, unlike here, where claims became moot for reasons independent from the Defendants' voluntary cessation. *See DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) (claim challenging admission practices moot where plaintiff's graduation was imminent); *In Def. of Animals v. U.S. Dep't of Interior*, 648 F.3d 1012, 1013 (9th Cir. 2011) (appeal was moot "where the action that the plaintiff sought to preliminarily enjoin had already occurred"); *Owens v. Schuette*, 2024 WL 4469086, at *4 (E.D. Mich. Oct. 10, 2024) (claim challenging prison policies moot following plaintiff's transfer to different facility). In sum, Defendants' recent actions do not approach the high bar they must meet to moot Plaintiffs' claims.

**III.     Plaintiffs Should Be Awarded their Requested Relief.**

Defendants do not contest the availability or appropriateness of declaratory relief. Nor do they dispute that vacatur is the default remedy under the APA. They oppose only certain aspects of Plaintiffs' requested relief. Specifically, they challenge the request for permanent injunctive relief by denying the existence of irreparable injury—despite an evidentiary record that shows that absent an injunction, DHS will continue to pursue downsizing of FEMA. And they oppose particular components of the relief sought based on a misinterpretation of the Post-Katrina Act and an overly narrow understanding of the APA's sovereign immunity waiver. The Court should enter the relief reflected in the attached proposed order.

**A.     Vacatur of FEMA and DHS's Unlawful Actions is Warranted Under the APA.**

"[V]acatur is the presumptive remedy under the APA" when an agency's action is found to

20

be unlawful. *350 Montana v. Haaland*, 50 F.4th 1254, 1273 (9th Cir. 2022); *see also* 5 U.S.C. §706(2)(A), (C) ("The reviewing court shall ... set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law … [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."). The "set aside" remedy encompasses "the power to 'strike down' an agency's work," so that "the disapproved agency action is treated as though it had never happened." *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 n.1 (2023) (Kavanaugh, J., concurring); *see also Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021) ("[V]acatur unwinds the challenged agency action" and "retroactively undoes or expunges a past [agency] action.").

Unlike permanent injunctive relief, vacatur under the APA does not require a showing of irreparable harm and is an independent mechanism for granting Plaintiffs' requested relief. *See Nat'l TPS All. v. Noem*, 166 F.4th 739, 760 (9th Cir. 2026) ("[T]he vacatur or set aside of agency action under the APA is a distinct remedy from an injunction."). The APA authorizes vacatur of the unlawful DHS directives to FEMA that (i) remove FEMA's authority to make employment decisions and limit FEMA's authority to extend CORE positions, including with respect to the duration of any extension; and (ii) impose any plan to reduce the size of FEMA, including by separating CORE employees. *See Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 680–81 (9th Cir. 2007) ("[T]his court, as a court of equity conducting judicial review under the APA, has broad powers to order mandatory affirmative relief, if such relief is necessary to accomplish complete justice." (internal quotation marks and citations omitted)); *Jane Doe 1 v. Nielsen*, 357 F.Supp.3d 972, 1003–04 (N.D. Cal. 2018) (exercising equitable authority under the APA to unwind unlawful denials of refugee status by setting aside the unlawful notices of ineligibility, requiring that any future notices be corrected and re-issued, and reinstating the time within which potential refugees could seek review).

### B.   Plaintiffs Have Also Proven Irreparable Harm Supporting Permanent Injunctive Relief.

Permanent injunctive relief is appropriate when (1) a plaintiff has suffered an irreparable injury, (2) legal remedies are inadequate to compensate for the injury, (3) the balance of hardships

favors an equitable remedy, and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Defendants primarily dispute the irreparable-injury prong. ECF 450 at 18–20. They argue, based almost entirely on cases about preliminary injunctions, that Plaintiffs have failed to show the need for relief to prevent future irreparable harm. *Id.* But the Supreme Court's articulation of the permanent injunction test in *eBay* considers past irreparable harm, and "what has already occurred" is relevant to determining what permanent injunctive relief is warranted. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010), *aff'd,* 564 U.S. 91 (2011). Here, Plaintiffs and the employees they represent have suffered various harms that are not compensable through money damages and are thus irreparable—such as loss of employment and benefits from DHS's control of hiring decisions—that supports the entry of permanent injunctive relief.

In any case, permanent injunctive relief is warranted because otherwise Plaintiffs are likely to be harmed in the future in a way that cannot be remedied by damages. For many of the reasons that Plaintiffs' claims are not moot, *supra* Section II.B.3, there is an ongoing threat of irreparable harm absent permanent injunctive relief. As described above, the most recent documents produced in discovery suggest that Defendants have not abandoned their plans for workforce reduction at FEMA (including plans for "[r]educ[ing] overall headcount" and the continued use of the never-repudiated Annual Staffing Plan). *Supra* at 5-6. Defendants do not disclaim these plans, with evidence or otherwise; although their plans are fully within their knowledge, they cite only news reports to describe the plans of the current nominee for FEMA Administrator. ECF 450 at 7-8. Plaintiffs seek permanent injunctive relief not to address "future hypothetical staffing changes," as Defendants claim. ECF 450 at 20. Rather, all of the evidence discussed above shows that the threat of mass staff reductions that diminish FEMA capability remains real and ongoing. Enjoining DHS interference with FEMA decisionmaking, including over staffing and CORE renewals, remains necessary to provide full relief to Plaintiffs.

### C.    Plaintiffs' APA Vacatur and Injunctive Relief Remedies are Warranted by Post-Katrina Act.

Defendants aver that the requested injunctive relief would go beyond both the restrictions

of the Post-Katrina Act and the extent of the injuries Plaintiffs have suffered.  Not so.  First, as explained *supra* at 9-12, the Post-Katrina Act precludes DHS from "substantially or significantly reduc[ing]" FEMA's "authorities, responsibilities, or functions"—which includes FEMA's authority over personnel—or FEMA's "capability … to perform those missions, authorities, responsibilities."  6 U.S.C. §316(c)(1); *id.* §315(a)(1) (transferring FEMA's personnel, among other things, from DHS to FEMA).  Enjoining DHS's removal of FEMA decision-making authority over the extension or renewal of CORE positions, including with respect to the duration of any extension, fits squarely within that mandate.  Similarly, injunctive relief preventing DHS from dictating that FEMA undergo workforce reductions, such as the 50% reduction in FEMA's Annual Staffing Plan or more recently to "[r]educe overall headcount," comports with the Post-Katrina Act's transfer of FEMA's personnel from DHS to FEMA, its prohibition on DHS significantly or substantially reducing FEMA's authorities or capabilities, and its dictate that FEMA be exempt from the Secretary's other reorganization powers.  *See supra* Section II.A.

Defendants' assertion that there is an imbalance between the relief sought and the "minimal" injury suffered fares no better.  ECF 450 at 23.  Plaintiffs' claims challenge not only the January separations, but the thousands of additional separations that DHS and FEMA had planned.  It is undisputed that DHS directed FEMA to include a 50% cut to its staff in its Annual Staffing Plan, that DHS instructed components to act in accordance with those staffing plans, and that FEMA's Annual Staffing Plan has not been revoked or otherwise repudiated.  Defendants have provided no sworn evidence from, for example, FEMA or DHS decision-makers stating that they are no longer contemplating workforce reductions or that there are safeguards in place to prevent such reductions.  And while DHS has paused implementing the Annual Staffing Plan since the instigation of this litigation, the evidence of DHS's workforce planning in recent months confirms that the threat of mass workforce reductions at FEMA continues to loom despite Defendants' speculation about Secretary Mullin's intentions for the agency.  DHS has made clear to FEMA that reducing FEMA's overall headcount remains a top priority for DHS and OPM/OMB.  *Supra* at Section I.B.  Moreover, DHS retains control over FEMA's staffing decisions and continues to prevent FEMA from making staffing decisions consistent with FEMA components' analysis of

agency need; DHS has continued using FEMA's Annual Staffing Plan for planning purposes; and the FEMA Review Council report continues to call for transforming the agency and undertaking workforce reductions. *Supra* at 5-7. Injunctive relief precluding DHS from carrying out its unlawful agenda of incapacitating FEMA through broad staffing reductions is "tailored to remedy the specific harm alleged" and falls well within the Court's "broad discretion in fashioning a remedy." *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015) (citation omitted).

### D.    Backpay Is Not Barred by Sovereign Immunity.

Plaintiffs seek relief that would stamp out the effects of Defendants' unlawful actions, which separated employees and unlawfully eliminated their income and benefits. Defendants are incorrect, ECF 450 at 23-24, that sovereign immunity shields them from an order that they provide back pay to unlawfully separated COREs. The APA waives sovereign immunity for equitable relief against the United States, 5 U.S.C. §702 (waiver of immunity for "relief other than money damages"), and the relief sought is within the Court's broad equitable discretion to fashion a remedy, including for APA violations. *Kenney v. United States*, 458 F.3d 1025, 1032 (9th Cir. 2006) ("[D]istrict court[s] enjoy[] broad powers in equity."); *see also Nw. Env't Def. Ctr.*, 477 F.3d at 680–81 ("This court, as a court of equity conducting judicial review under the APA, has broad powers to order mandatory affirmative relief, if such relief is necessary to accomplish complete justice." (cleaned up)).

The Supreme Court's decision in *Bowen v. Massachusetts*, 487 U.S. 879 (1988), resolves this issue. In interpreting the scope of "money damages" in APA §702, *Bowen* recognized the "distinction between an action at law for damages … and an equitable action for specific relief." *Id.* at 893. The Supreme Court specifically identified "an order providing for the reinstatement of an employee with backpay" as an example of the latter. *Id.* The Court explained that "money damages" refers to compensatory relief, as opposed to specific remedies, which "attempt to give the plaintiff the very thing to which he was entitled." *Id.* at 895 (quoting *Md. Dep't of Hum. Res. v. HHS*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)). Here, the requested remedy is equitable, and thus within §702's sovereign-immunity waiver, because it would provide the very thing that COREs would have been entitled to but for Defendants' unlawful actions. The portion of the remedy that

is monetary is also "incidental to or intertwined with" the primary remedy of reinstatement (the proper injunctive relief, if not for Defendants' voluntary rehiring of the COREs). *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 571 (1990); *see also Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992) (recognizing "backpay" as "equitable in nature"). As such, the relief sought is not "money damages" within the meaning of §702 and the relief falls within §702's sovereign-immunity waiver.

Defendants' reliance on *Hubbard v. EPA*, 982 F.2d 531 (D.C. Cir. 1992) (en banc), is unavailing. First, *Hubbard* involved an applicant for federal employment who was unlawfully denied employment, and the court concluded that back pay was not a specific remedy because "he had never worked for the EPA and thus was not entitled to any pay." *Id.* at 533. The COREs at issue were unlawfully separated from employment, and back pay is part of stamping out the effects of the Defendants' unlawful actions. Second, *Hubbard* improperly dismissed *Bowen*'s identification of back pay as equitable relief as "dicta," *id.* at 536, but as Defendants recognize, that court's failure to follow the Supreme Court's considered language is not binding on this Court. Instead, the Court should follow *Bowen* and conclude that section 702 of the APA waives sovereign immunity for a full equitable remedy.[15]

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request this Court grant summary judgment to Plaintiffs and against Defendants on Claims VIII-XIII and enter the relief set forth in the accompanying revised proposed order.

---

[15] Defendants do not dispute that other aspects of the relief sought, such as ensuring that COREs receive time in step credit and restoring benefits, are within the Court's equitable discretion.

DATED: July 31, 2026                              Respectfully submitted,

                                                  Stacey M. Leyton
                                                  Barbara J. Chisholm
                                                  Danielle E. Leonard
                                                  Robin S. Tholin
                                                  Elizabeth Eshleman
                                                  ALTSHULER BERZON LLP
                                                  177 Post St., Suite 300
                                                  San Francisco, CA 94108
                                                  Tel: (415) 421-7151
                                                  sleyton@altshulerberzon.com
                                                  bchisholm@altshulerberzon.com
                                                  dleonard@altshulerberzon.com

                                          By: */s/ Danielle Leonard*

                                                  *Attorneys for All Union and Non-Profit Organization Plaintiffs*

                                                  Elena Goldstein (pro hac vice)
                                                  Skye Perryman (pro hac vice)
                                                  Tsuki Hoshijima (pro hac vice)
                                                  DEMOCRACY FORWARD FOUNDATION
                                                  P.O. Box 34553
                                                  Washington, D.C. 20043
                                                  Tel: (202) 448-9090
                                                  Fax: (202) 796-4426
                                                  egoldstein@democracyforward.org
                                                  sperryman@democracyforward.org
                                                  thoshijima@democracyforward.org

                                          By: */s/ Tsuki Hoshijima*

                                                  *Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

                                                  Jules Torti (pro hac vice)
                                                  PROTECT DEMOCRACY PROJECT
                                                  82 Nassau St., #601
                                                  New York, NY 10038

                                                  Erica J. Newland (pro hac vice)
                                                  Jacek Pruski (pro hac vice)
                                                  PROTECT DEMOCRACY PROJECT
                                                  2020 Pennsylvania Ave., N.W., Suite 163

Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)
Matthew Blumin  (pro hac vice)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/ Teague Paterson*  _____

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*  _____

*Attorneys for Plaintiff Service Employees International Union, AFL-CIO (SEIU)*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By:  */s/ David Chiu*  _____

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)

PLFS' REPLY AND OPPOSITION TO CROSS-MOTION, No. 3:25-cv-03698-SI

Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By: */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

Christopher Sanders (pro hac vice)
General Counsel
Erin King-Clancy (SBN 249197)
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
chrsanders@kingcounty.gov
eclancy@kingcounty.gov

By: */s/ Erin King-Clancy*

*Attorneys for Plaintiff Martin Luther King, Jr. County*

Sharanya Mohan (SBN 350675)
Eliana Greenberg (SBN 366319)
Toby Merrill (pro hac vice)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
eliana@publicrightsproject.org
toby@publicrightsproject.org

By: */s/ Eliana Greenberg*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL,
Harris County, TX, and Martin Luther King, Jr.
County, WA*

ABBIE KAMIN

29
PLFS' REPLY AND OPPOSITION TO CROSS-MOTION, No. 3:25-cv-03698-SI

Harris County Attorney
NEAL SARKAR
First Assistant County Attorney
SARAH J. UTLEY
Managing Counsel,
Affirmative and Special Litigation and Environmental
BETHANY DWYER
Deputy Division Director, Environmental
R. CHAN TYSOR (pro hac vice)
Senior Assistant County Attorney
Environmental Division
1010 Lamar, 11th Floor
Houston, Texas 77002
Tel: (713) 274-5150
chan.tysor@harriscountytx.gov

By:    */s/ R. Chan Tysor*

*Attorneys for Plaintiff Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago

Rebecca A. Hirsch (IL ARDC 6279592) (pro hac vice)
City of Chicago Department of Law,
Affirmative Litigation Division
121 N LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel: (312) 744-6934
Rebecca.Hirsch2@cityofchicago.org

By: */s/ Rebecca Hirsch*

*Attorneys for Plaintiff City of Chicago*

Ebony M. Thompson
Baltimore City Solicitor

Christopher Sousa (SBN 264874)
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (410) 396-3947
sara.gross@baltimorecity.gov

By: */s/ Christopher Sousa*

*Attorneys for Plaintiff City of Baltimore*

PLFS' REPLY AND OPPOSITION TO CROSS-MOTION, No. 3:25-cv-03698-SI