CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
BRAD P. ROSENBERG
JEREMY S.B. NEWMAN (MA Bar No. 688968)
Chief Litigation Counsel
CHRISTOPHER HALL
Assistant Branch Director
TAYLOR PITZ
ROBERT C. BOMBARD
Trial Attorneys
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Telephone: (202) 532-3114
jeremy.s.newman@usdoj.gov

Counsel for Defendants

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT ON SUPPLEMENTAL CLAIMS VIII – XIII** <br><br> Hearing Date: September 1, 2026 <br> Time: 11:00 a.m. PT <br> Judge: Hon. Susan Illston <br> Place: San Francisco Courthouse <br>         Courtroom 1 |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.    Plaintiffs' Disputes of Defendants' Factual Assertions Are Not Material to
      Resolution of the Supplemental Claims................................................................. 2

II.   The Court Lacks Subject-Matter Jurisdiction Over the Supplemental Claims.................. 3

      A.    The CSRA Precludes Jurisdiction Over the Supplemental Claims ........................ 3

      B.    The Lack of Standing of All Plaintiffs Other than AFGE Is Now
            Conceded, and AFGE Also Lacks Standing ............................................................ 3

      C.    Plaintiffs' Supplemental Claims Are Moot.............................................................. 5

III.  Plaintiffs Seek Overbroad Relief That Is Unjustified By Law ........................................ 7

      A.    Plaintiffs' Request for Vacatur of a Vaguely Described Set of Actions
            Goes Beyond Relief Authorized by the APA ........................................................... 7

      B.    Plaintiffs Cannot Demonstrate Irreparable Harm to Warrant an Injunction........... 9

      C.    PKEMRA Places Only Narrow Limits on DHS's Oversight of FEMA............... 10

      D.    The Court Should Reject Plaintiffs' Request to Bar FEMA From Ever
            Reducing Its Workforce......................................................................................... 13

      E.    Plaintiffs' Request for Back Pay for COREs Is Barred by Sovereign
            Immunity................................................................................................................. 14

CONCLUSION................................................................................................................. 15

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental
Claims VIII – XIII
3:25-cv-3698-SI

i

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242 (1986) ................................................................................................................ 3

*Ariz. All. For Retired Americans v. Mayes*,

--- F.4th ---, 2026 WL 2277101 (9th Cir. Aug. 7, 2026) (en banc) ........................................ 5

*Bowen v. Massachusetts*,

487 U.S. 879 (1988) .............................................................................................................. 15

*Brach v. Newsom*,

38 F.4th 6 (9th Cir. 2022) ....................................................................................................... 6

*DeFunis v. Odegaard*,

416 U.S. 312 (1974) ................................................................................................................ 6

*E. Bay Sanctuary Covenant v. Biden*,

993 F.3d 640 (9th Cir. 2021) .................................................................................................. 7

*FDA v. All. For Hippocratic Med.*,

602 U.S. 367 (2024) ................................................................................................................ 5

*Hubbard v. EPA*,

982 F.2d 531 (D.C. Cir. 1992) (en banc) ......................................................................... 14, 15

*Hunt v. Washington State Apple Advertising Commission*,

432 U.S. 333 (1977) ................................................................................................................ 4

*In re Excel Innovations, Inc.*,

502 F.3d 1086 (9th Cir. 2007) .............................................................................................. 10

*Lujan v. Defs. of Wildlife*,

504 U.S. 555 (1992) ................................................................................................................ 5

*Lujan v. Nat'l Wildlife Fed'n*,

497 U.S. 871 (1990) ....................................................................................................... 2, 8, 9

*Mariscal v. Graco, Inc.*,

52 F. Supp. 3d 973 (N.D. Cal. 2014) ..................................................................................... 3

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental
Claims VIII – XIII
3:25-cv-3698-SI

ii

*Monsanto Co. v. Geertson Seed Farms*,

    561 U.S. 139 (2010) ........................................................................................................ 9

*Nat'l TPS All. v. Noem*,

    166 F.4th 739 (9th Cir. 2026) ........................................................................................ 8

*Norton v. S. Utah Wilderness All.*,

    542 U.S. 55 (2004) .................................................................................................. 2, 8, 9

*Servicios, Inc. v. Fin. Crimes Enf't Network*,

    181 F.4th 961 (9th Cir. 2026) ........................................................................................ 8

*Trump v. CASA, Inc.*,

    606 U.S. 831 (2025) .................................................................................................... 7-8

*United States v. Texas*,

    599 U.S. 670 (2023) ........................................................................................................ 7

**STATUTES**

5 U.S.C. § 702 ................................................................................................................ 2, 8, 15

5 U.S.C. § 706(2) .................................................................................................................... 8

5 U.S.C. § 7103(b) .................................................................................................................. 4

5 U.S.C. §§ 7111-7115 ........................................................................................................... 4

Post-Katrina Emergency Management Reform Act of 2006 ("PKEMRA"),

    6 U.S.C. §§ 311, *et seq.*........................................................................................................ 1

6 U.S.C. § 313 .................................................................................................................. 11, 12

6 U.S.C. § 315 ....................................................................................................................... 11

6 U.S.C. § 316 .................................................................................................................. 11, 12

42 U.S.C. § 5149 ................................................................................................................... 13

Independent Safety Board Act of 1974,

    Pub. L. No. 93-633, § 303, 88 Stat. 2156 (1975) ....................................................... 12

**OTHER AUTHORITIES**

Exclusions From Federal Labor-Management Relations Programs,

    Exec. Order No. 14,251, § 2(b), 90 Fed. Reg. 14,553 (Mar. 27, 2025).................................. 4

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

iii

**INTRODUCTION**

The longer this lawsuit has gone on, the more radical Plaintiffs' claims and requests for relief have gotten. With their latest opposition and reply brief, Pls.' Reply in Supp. of Mot. for Partial Summ. J. and Opp'n to Defs.' Cross-Mot. for Partial Summ. J., ECF 461 ("Pls.' Opp'n"), Plaintiffs have reached a new height: They now ask this Court to bar the Federal Emergency Management Agency (FEMA) permanently from reducing its own headcount by any amount, for any reason, no matter the legal or practical justification. That is, Plaintiffs ask this Court to permanently enjoin FEMA and the FEMA Administrator "[f]rom taking any action to reduce the size of FEMA . . . ." [Proposed] Order Granting Partial Summ. J. on Claims VIII to XIII to Pls. and Against Defs. 2 ¶ 2, ECF 461-3.

What is most striking about this new request is the total absence of any argument in their brief that this relief is justified by law. Plaintiffs argue (wrongly) that the Post-Katrina Emergency Management Reform Act of 2006 ("PKEMRA"), 6 U.S.C. §§ 311, *et seq.*, bars the Department of Homeland Security (DHS) from having any involvement in FEMA personnel decisions. Even if that were true, it would not justify barring FEMA from managing its own workforce.

Examining Plaintiffs' arguments more closely reveals further flaws that require rejecting the Supplemental Claims and granting summary judgment to the Department of Homeland Security (DHS) and FEMA. To begin, the Supplemental Claims are beyond this Court's subject-matter jurisdiction. Plaintiffs have now abandoned any argument that any Plaintiff other than AFGE has standing, and AFGE lacks standing because AFGE Local 4060 no longer serves as the collective bargaining representative for any FEMA COREs. The Court should reject any theory of associational standing that would allow labor organizations to represent federal employees in a manner that goes beyond the collective bargaining relationship set by federal employee labor law. The claims are also moot because Defendants have reappointed the COREs whose non-reappointment precipitated the Supplemental Claims. Defendants also maintain and preserve their position that this case never belonged in federal district court because the CSRA precludes jurisdiction over such federal employment disputes and channels them to other fora.

Defendants' Reply Memorandum in Support of Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

The relief sought by Plaintiffs is also overbroad and unjustified by law in many respects, further revealing substantive defects in their legal claims. Plaintiffs seek vacatur of a broad set of vaguely defined directives and actions, violating the requirement under the Administrative Procedure Act (APA) to "direct [their] attack against some particular 'agency action' that causes [them] harm." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). Instead, their APA claims are the type of "broad programmatic attack" that the Supreme Court has "rejected" as inconsistent with the APA. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Plaintiffs' request for injunctive relief, as set forth in their latest proposed order, fails on multiple levels. To start, they cannot establish the irreparable harm necessary to justify an injunction. The alleged past harm—the non-reappointment of COREs in January 2026—has already been remedied, and any claimed future harm is too speculative to support injunctive relief. Plaintiffs seek to enjoin DHS from having any involvement with FEMA personnel decisions, but this request rests on a misinterpretation of PKEMRA. Although PKEMRA places narrow limits on DHS's ability to reorganize FEMA or change its statutory responsibilities, it reaffirms DHS's general oversight of FEMA by placing FEMA within DHS and making the FEMA Administrator report to the Secretary of Homeland Security. Plaintiffs next ask the Court to enjoin Defendants, including FEMA, from ever reducing the size of FEMA, whether or not DHS has any involvement. That request is even further unmoored from any legal justification. Finally, Plaintiffs' request for back pay for the FEMA COREs is barred by sovereign immunity. The APA waives sovereign immunity for "relief other than money damages," 5 U.S.C. § 702, but back pay is a form of money damages.

For these reasons, as set forth in more detail in Defendants' prior briefing and below, the Court should grant summary judgment on the Supplemental Claims to DHS and FEMA.

## ARGUMENT

I.    **Plaintiffs' Disputes of Defendants' Factual Assertions Are Not Material to Resolution of the Supplemental Claims.**

In a lengthy section of their Opposition, Pls.' Opp'n 2-9, Plaintiffs take issue with the factual background section of Defendants' opening brief, Defs.' Mem. in Opp'n to Pl's Mot. for

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

2

Summ. J. on Supp'l Claims VIII-XIII 3-8, ECF 450 ("Defs.' Mem."), arguing that Defendants mischaracterize the record. To the contrary, each of Defendants' factual assertions is supported by citations to the record. Yet for the reasons explained below and in Defendants' opening brief, Defs.' Mem. 10-24, the defects in the Supplemental Claims are legal, rather than factual, in nature. Therefore, to resolve the cross-motions for summary judgment on the Supplemental Claims, the Court need not resolve any factual disputes presented by Plaintiffs' criticisms of Defendants' factual background section. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (for purposes of summary judgment, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" are material).

## II. The Court Lacks Subject-Matter Jurisdiction Over the Supplemental Claims

### A. The CSRA Precludes Jurisdiction Over the Supplemental Claims

Defendants maintain that the CSRA precludes jurisdiction over the Supplemental Claims. *See* Defs.' Mem. 10-11. Plaintiffs offer no argument on this point other than to urge the Court to follow its conclusion in the Motion to Dismiss ruling that Plaintiffs' claims were not precluded. *See* Pls.' Opp'n 12. As Defendants have explained, Defendants respectfully disagree with that ruling; Defendants urge the Court to reconsider, and Defendants otherwise preserve this argument for appellate review. *See* Defs.' Mem. 10 n.11.

### B. The Lack of Standing of All Plaintiffs Other than AFGE Is Now Conceded, and AFGE Also Lacks Standing

Defendants explained in their opening brief that all Plaintiffs lack standing. *See* Defs.' Mem. 11-14. Plaintiffs' response addresses only AFGE's standing. *See* Pls.' Opp'n 12-14. Thus, at a minimum, the Court should treat the lack of standing of all Plaintiffs other than AFGE as conceded and enter judgment for Defendants on the claims of all non-AFGE Plaintiffs. *See Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 984 (N.D. Cal. 2014) (arguments that "Plaintiff failed to address . . . in his opposition brief" to defendant's motion for summary judgment are "conceded").

Plaintiff AFGE also lacks standing. AFGE does not dispute that "DHS has terminated collective bargaining with AFGE," Pls.' Opp'n 12, and thus AFGE Local 4060 no longer provides

collective bargaining representation to any FEMA COREs, *see* Defs.' Mem. 4, 12.  AFGE argues that it nonetheless has associational standing to represent the interest of FEMA COREs because some COREs are purportedly still dues-paying members of AFGE, and because COREs are purportedly the "functional equivalent" of members.  Opp'n 12.  The Court should reject these arguments.  In the specific context of federal employee labor law, collective bargaining representation is the mechanism through which labor organizations have the right to represent the interests of employees.  *See* 5 U.S.C. §§ 7111-7115.  One of the substantive limits that federal law places on the rights of labor organizations to represent employees is authorizing the President to suspend representation for certain agencies, *id.* § 7103(b), an authority that President Trump has exercised with respect to FEMA, *see* Exclusions From Federal Labor-Management Relations Programs, Executive Order No. 14,251, § 2(b), 90 Fed. Reg. 14,553, 14,554 (Mar. 27, 2025).  Where a carefully designed federal regulatory scheme limits the ability of an association to represent members, a court should not allow that association to exercise representation through the doctrine of associational standing in a manner that transgresses those limits.

Plaintiffs' reliance on the "indicia of membership" doctrine, Pls.' Opp'n 13, is misplaced for a further reason.  That doctrine permits an entity without traditional members—like the state commission in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977)—to sue on behalf of constituents who "alone elect" its leadership, "alone may serve" in it, and "alone finance its activities," *id.* at 344-45.  It does not permit a traditional membership organization like AFGE to manufacture standing on behalf of individuals who fall outside its membership structure and whom federal labor law no longer authorizes it to represent.  Plaintiffs also offer no evidence that the FEMA COREs to whom AFGE Local 4060 formerly provided collective bargaining representation satisfy the indicia of membership identified in *Hunt*.

AFGE also argues that it has organizational standing, because it claims that some former bargaining unit members still pay dues to AFGE, and it fears it could lose those dues.  Pls.' Opp'n 14.  But AFGE Local 4060 has submitted evidence that some former bargaining unit members have continued to pay dues even after their employment as FEMA COREs has ended.  *See* Schwarz Decl. ¶ 5, ECF 314-3.  If AFGE Local 4060 is harmed financially because those individuals decide

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

4

to stop paying dues, such harm could not support standing because it would result from the choices of those individuals, not Defendants' actions. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992).  In addition, the Ninth Circuit just today held that to establish organization standing, "an organizational plaintiff must show that the challenged provision 'directly affect[s] and interfere[s] with [its] core business activities' to establish an injury-in-fact." *Ariz. All. For Retired Americans v. Mayes*, --- F.4th ---, 2026 WL 2277101, at *2 (9th Cir. Aug. 7, 2026) (en banc) (quoting *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 395 (2024)).  Plaintiffs cannot meet this standard.

### C.    Plaintiffs' Supplemental Claims Are Moot

Plaintiffs' Supplemental Claims are moot because the controversy that precipitated those claims, the non-reappointment of FEMA COREs in January 2026, has been resolved by the reappointment of those COREs.  Defs.' Mem. 14-18.

Plaintiffs argue that the Supplemental Claims are not moot because the reappointed COREs would have earned more pay, accrued more vacation leave, and more "time in step" credit had they been reappointed in January.  Pls.' Opp'n 15 (citation omitted).  Yet as explained above, AFGE is not the collective bargaining representative for the COREs and has no right to assert these injuries on behalf of the COREs.  *See supra*, pp. 3-4.  And Plaintiffs do not argue that any Plaintiff is directly injured by these purported harms to the COREs.

Plaintiffs also argue that the Supplemental Claims are not moot because DHS and FEMA have not disavowed an alleged earlier DHS directive to reduce FEMA's workforce in half that was purportedly embodied in the FEMA's Fiscal Year 2026 Annual Staffing Plan that it submitted to DHS.  *See* Pls.' Opp'n 16.  Yet it is undisputed that while the draft FEMA Review Council report that leaked when Kristi Noem was Secretary of Homeland Security recommended "a 50% overall staff reduction," ECF 414-2 at 58, the final FEMA Review Council Report issued under the leadership of Secretary Mullin omitted any such recommendation, *see* ECF 414 at Exhibit B to 2d Supp'l Jackson Decl. (FEMA Review Council Final Report).

Any challenge to the Annual Staffing Plan is also moot.  As reflected by the term *Annual Staffing Plan*, FEMA's Annual Staffing Plan was explicitly designed to plan for Fiscal Year 2026, which ends on September 30, 2026; it listed a "9/30/26 Projected [Full Time Equivalent]"

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

employee count of 11,383.  ECF 414-2 at 117.  Yet FEMA has not taken any action since January 2026 to implement a 50% staff reduction in this fiscal year.  To the contrary, FEMA has *reappointed* the COREs that initially were not reappointed in January 2026.  *See* Neurauter Decl., ECF 383-1.  The fiscal year is almost over.  By the time the Court rules on this Motion, the fiscal year will either be over or set to end in a matter of days.  Thus, at this point, there can be no reasonable dispute that FEMA has not implemented the "9/30/26 Projected [Full Time Equivalent]" employee count in the Annual Staffing Plan.  That is not surprising, as Annual Staffing Plans are merely planning exercises, subject to change; for that reason, they are not final agency actions reviewable under the APA.  *See* Defs.' Notice of Mot. and Mot. to Dismiss Supp'l Compl.; Mem. P. & A. 15-17, ECF 402.  At the pleading stage, this Court disagreed because it accepted Plaintiffs' argument that "the DHS Annual Staffing Plan includes the plan to cut FEMA staff in half."  Order Den. Mot. to Dismiss Supp'l Compl. and Resolving Discov. Disp. RE: Supp'l Compl. 15, ECF 434.  But if the Annual Staffing Plan is reviewable because the Court construes it as a final plan to cut FEMA staffing in half in Fiscal Year 2026, then the challenge to the Annual Staffing Plan is moot.

Finally, Plaintiffs argue that the voluntary cessation exception to mootness applies.  Pls.' Opp'n 16-20.  This argument fails for two reasons.  First, the voluntary cessation exception does not apply because the alleged injury to the COREs is no longer redressable, since they have been reappointed.  *See DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) (holding that the "voluntary cessation" exception to mootness did not apply since mootness resulted from the fact the alleged injury was no longer redressable).  Second, even if the exception did apply, the Ninth Circuit "treat[s] the voluntary cessation of challenged conduct by government officials with more solicitude than similar action by private parties."  *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (citation modified).  Given this solicitude, the circumstances described above—the reappointment of the COREs, the release of the FEMA Review Council report without a recommended 50% staff reduction, and the fact that FEMA has not implemented a 50% staff reduction in Fiscal Year 2026—would suffice to overcome the voluntary cessation doctrine, if it applied.

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

### III.    Plaintiffs Seek Overbroad Relief That Is Unjustified By Law

Defendants pointed out that the relief Plaintiffs initially sought when they moved for summary judgment was overbroad and unjustified by law. *See* Defs.' Mem. 21-24. Now, Plaintiffs have radically expanded the scope of relief sought, including by asking this Court to permanently bar FEMA from reducing the size of its own workforce. *Compare* [Proposed] Order Granting Prelim. Inj. and Setting Schedule for Partial Summ. J., ECF 411-1 (proposed order accompanying Plaintiffs' preliminary injunction supplemental brief, which also served as their opening summary judgment brief), *with* Proposed Order, ECF 461-3 (proposed order accompanying Plaintiffs' summary judgment opposition and reply brief). As described below, Plaintiffs' expanded requested relief is overbroad in several respects, and this overbreadth reveals underlying defects in their substantive legal claims.

#### A.    **Plaintiffs' Request for Vacatur of a Vaguely Described Set of Actions Goes Beyond Relief Authorized by the APA**

Plaintiffs ask this Court to vacate a broad and vaguely described set of supposed actions:

> The Court HEREBY holds unlawful and sets aside, and thereby VACATES DHS's directives to FEMA that (1) remove FEMA's authority to make employment decisions and limit FEMA's authority to extend CORE positions, including with respect to the duration of any extension; and (2) impose any plan to reduce the size of the FEMA workforce, including by separating CORE employees.

> The Court HEREBY holds unlawful and sets aside, and thereby VACATES FEMA's actions to implement DHS's directives by (1) ceding decision-making authority to DHS with respect to FEMA personnel actions; and (2) reducing the size of its workforce, including by separating CORE employees by NTE dates.

Proposed Order 2, ECF 461-3.

Defendants do not dispute that the Ninth Circuit has held that vacatur of unlawful agency action is the default remedy under the APA. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 681 (9th Cir. 2021). Yet the vacatur Plaintiffs seek is improper in two respects.

*First*, Defendants' position is that universal vacatur is not authorized under the APA and equitable principles incorporated into the APA. *See United States v. Texas*, 599 U.S. 670, 693 (2023) (Gorsuch, J., concurring) (noting that the government's arguments that the APA does not authorize universal vacatur are "serious enough to warrant careful consideration"); *Trump v.*

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

7

*CASA, Inc.*, 606 U.S. 831, 841 (2025) (holding that federal courts lack equitable authority to issue universal injunctions); *Nat'l TPS All. v. Noem*, 166 F.4th 739, 767 (9th Cir. 2026) (declining to resolve whether universal vacatur is barred after *CASA*, and acknowledging that the questions were "difficult and unanswered").  Defendants acknowledge, however, that in a case involving a preliminary stay of agency action under the APA, rather than final vacatur, the Ninth Circuit recently suggested that Section 706 of the APA "grants federal courts the authority to 'hold unlawful and set aside agency action[s]' on a nationwide basis when the challenged action is held unlawful." *Novedades y Servicios, Inc. v. Fin. Crimes Enf't Network*, 181 F.4th 961, 981 (9th Cir. 2026) (alteration in original) (quoting 5 U.S.C. § 706(2) (other citations omitted)).

*Second*, Plaintiffs fail to specify the particular actions that they ask this Court to vacate. The APA provides that "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof."  5 U.S.C. § 702.  Thus, an APA plaintiff "must identify some 'agency action' that affects him in the specified fashion; it is judicial review 'thereof' to which he is entitled." *Lujan*, 497 U.S. at 882 (quoting 5 U.S.C. § 702).  But APA claims fail where a plaintiff fails to "direct its attack against some particular 'agency action' that causes it harm," and instead "seek[s] *wholesale* improvement of [a] program by court decree." *Id.* at 891; *see also Norton*, 542 U.S. at 64 ("The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan v. National Wildlife Federation* . . . .").

Defendants assumed that once Plaintiffs got to the point of articulating their proposed vacatur remedy, Plaintiffs would identify the specific agency actions at issue.  That assumption proved mistaken.  Instead, Plaintiffs' proposed order asks this Court to vacate two broadly defined categories of DHS directives and FEMA actions to implement those directives.  *See* Proposed Order 2, ECF 461-3.[1]   Plaintiffs do not specify the precise content of the agency actions, who made them, the date they were made, or whether they were reduced to writing.  If they were reduced to writing, Plaintiffs do not specify what documents in the record constitute the agency actions that they ask the Court to vacate.  If the supposed agency actions were not reduced to

---

[1] Plaintiffs' brief is no clearer, simply repeating the language of the proposed vacatur in the proposed order.  *See* Pls.' Opp'n 21.

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

writing, Plaintiffs do not identify the specific evidence in the record that points to the existence of an unwritten agency action. Indeed, the fact that the list of actions Plaintiffs ask this Court to vacate include "DHS's directives to . . . impose *any plan* to reduce the size of the FEMA workforce," *id.* (emphasis added), strongly suggests that Plaintiffs do not have a list of specific agency actions in mind.

It is striking that after Plaintiffs have had months of discovery, obtained tens of thousands of documents from DHS and FEMA, and taken depositions of high-level DHS and FEMA leaders, they still cannot identify the specific agency actions that they are challenging and asking this Court to vacate. Plaintiffs' new articulation of its proposed vacatur remedy reveals that Plaintiffs' APA claims are, and always have been, "the kind of broad programmatic attack" that the Supreme Court has "rejected" as inconsistent with the APA. *Norton*, 542 U.S. at 64. The Court should accordingly grant summary judgment to Defendants and reject Plaintiffs' unlawful programmatic attack.

To the extent that the Court issues any vacatur under the APA, the Court (unlike Plaintiffs in their proposed order) should specify precisely what agency action or agency actions it is vacating. Doing so is necessary both to satisfy the APA's requirement of focusing review on a "particular 'agency action,'" *Lujan*, 497 U.S. at 891, and to give Defendants fair notice of the scope of the Court's relief.

### B. Plaintiffs Cannot Demonstrate Irreparable Harm to Warrant an Injunction

Plaintiffs cannot demonstrate entitlement to the permanent injunction they seek in their new proposed order, *see* Proposed Order, ECF 461-3, because they cannot show that an injunction is necessary to remedy or prevent irreparable harm. Defs.' Mem. 18-20. Plaintiffs argue first that they need not show a likelihood of future irreparable harm because a court can consider past irreparable harm in issuing a permanent injunction. Pls.' Opp'n 22 (citation omitted). Yet while courts considering a permanent injunction can consider whether the plaintiff "has suffered an irreparable injury," the plaintiff also must show "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Past irreparable harm is sufficient only if it gives rise to an ongoing injury that can only be

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

9

remedied by an injunction.  Here, the only past harm alleged is non-reappointment of the COREs in January 2026.  But Defendants have already remedied that injury by reappointing the COREs.  Thus, Plaintiffs cannot rely on past harm to justify injunctive relief.

Plaintiffs also argue that there is an ongoing threat of irreparable harm caused by potential future FEMA staffing reductions.  Pls.' Opp'n 22.  That argument fails for two reasons.  First, it is speculative.  As explained above, to the extent that the Court construes the Fiscal Year 2026 Annual Staffing Plan as a final plan to reduce staffing by 50% in Fiscal Year 2026 (contrary to Defendants' arguments), then it is now clear that this plan has not been implemented.  Plaintiffs' claimed future harm rests on a fear that DHS or FEMA will devise and implement some new plan in the future, but such speculation is insufficient to justify injunctive relief.  *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm.").  Second, even if Plaintiffs could show a likelihood of a future staff reduction at FEMA, they cannot show how *they* would be irreparably harmed.  As explained above, *supra*, pp. 3-4, AFGE cannot assert harms to the COREs on a representative basis because AFGE Local 4060 is no longer their collective bargaining representative.  And Plaintiffs do not even attempt to argue that any other Plaintiff would be harmed by FEMA staff reductions.

## C.     PKEMRA Places Only Narrow Limits on DHS's Oversight of FEMA

Plaintiffs again ask this Court to enjoin DHS from asserting any authority over FEMA personnel decisions, and to enjoin FEMA from following any DHS directives regarding personnel.  *See* Proposed Order 2 ¶ 1, ECF 461-3.  As Defendants explained, Plaintiffs' request for this relief fails as a matter of law because PKEMRA does not bar DHS from involvement in FEMA personnel decisions.  To the contrary, it reaffirms FEMA's general subordination to DHS, while limiting DHS's ability to take a few narrow, discrete types of action with respect to FEMA.  *See* Defs.' Mem. 21-23.

Plaintiffs' contrary arguments are unpersuasive.  Plaintiffs argue that "key provisions" of PKEMRA "remove any DHS's [sic] authority over FEMA's personnel," Pls.' Opp'n 9, but none of the provisions they cite contains such language or accomplishes such a result.  Plaintiffs note that the statute "transferred to the Agency . . . [a]ll functions of the Federal Emergency

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

10

Management Agency . . . including all of its personnel, assets, components, authorities, grant programs, and liabilities." 6 U.S.C. § 315(a)(1). Plaintiffs argue that this provision "insulate[s] FEMA from DHS decision-making by returning control over FEMA's functions and personnel to FEMA." Pls.' Opp'n 10. But this provision simply locates FEMA's functions and employees within FEMA. It says nothing about insulating those personnel or functions from control or influence by FEMA's parent, DHS. *See* 6 U.S.C. § 316(a) (making FEMA "a distinct entity within [DHS]"). Contrary to Plaintiffs' criticism, Defendants are not "will[ing] this provision out of existence." Pls.' Opp'n 10. Rather, by asserting that all of FEMA's functions are totally insulated from DHS control, Plaintiffs attempt to will out of existence the provision that says that FEMA's leader, the FEMA Administrator, "shall report to the Secretary" of Homeland Security. 6 U.S.C. § 313(c)(3). In the context of employment, to "report" means "to work as a subordinate." Merriam-Webster's Collegiate Dictionary 1056 (11th ed. 2003); *see also id.* at 1244 (defining "subordinate" as "placed in or occupying a lower class, rank or position : INFERIOR," or "submissive to or controlled by authority"). The plain language of § 313(c)(3) thus provides that the FEMA Administrator is subordinate to the Secretary of Homeland Security and submissive to the Secretary's authority. Conversely, the Secretary has authority over the FEMA Administrator, and through him, FEMA, subject to the specific and narrow limits imposed by other provisions of PKEMRA.

Plaintiffs next point to the provision stating that FEMA "shall be maintained as a distinct entity within [DHS]," 6 U.S.C. § 316(a), arguing that this "designation of FEMA as 'distinct' indicates a *limitation* on the Secretary's authority over it." Pls.' Opp'n 11. But as Defendants explained, the ordinary meaning of "distinct" is simply discrete or separate. Defs.' Mem. 21 (quoting Merriam-Webster's Collegiate Dictionary 364 (11th ed. 2003). Plaintiffs cite no dictionary, case law, or any other authority for reading the word "distinct" to indicate a limitation on the DHS's authority over FEMA.[2] Indeed, by making FEMA "a distinct entity *within* [DHS]."

---

[2] Plaintiffs are wrong to argue that reading the word "distinct" in accordance with its plain meaning would render § 316(a) "mere surplusage." Pls.' Opp'n 11 n.9. Section 316(a) establishes that FEMA is an organizationally separate entity. Sections 316(b) and 316(c) limit DHS's ability

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

11

6 U.S.C. § 316(a) (emphasis added), this provision reinforces that DHS, through its Secretary, retains authority over FEMA.[3]

Plaintiffs also point to PKEMRA's provision prohibiting the Secretary from "substantially or significantly reduc[ing] . . . the authorities, responsibilities, or functions of the Agency." 6 U.S.C. § 316(c)(1). Plaintiffs argue that DHS's practice of requiring the Secretary to approve certain new hires at certain times violates this provision. Pls.' Opp'n 23. Not so. Rather, requiring the Secretary to sign off on certain decisions of the FEMA Administrator merely implements the provision stating that the FEMA Administrator reports to the Secretary. 6 U.S.C. § 313(c)(3).

Defendants acknowledge that PKEMRA places limits on the Secretary's control of FEMA. It exempts FEMA from the Secretary's exercise of the statutory reorganization authority he possesses for the rest of DHS. *Id.* § 316(b). And it prohibits the Secretary from substantially or significantly reducing FEMA's authorities, responsibilities, or functions. *Id.* § 316(c). But the fact that the statute articulates narrow and specific limits, while otherwise maintaining FEMA within DHS and providing that FEMA's leader reports to DHS's leader, belies any notion that Congress barred DHS from having any control or oversight over FEMA.

Accordingly, paragraph 1 of Plaintiffs' proposed injunction, which would bar DHS from exercising any authority over FEMA's personnel, Proposed Order 2 ¶ 1, ECF 461-3, cannot be squared with PKEMRA. Defendants disagree that any injunction is warranted here and, instead, judgment should be entered for DHS and FEMA. But if the Court enjoins DHS in any respect from exercising control over FEMA, such injunction should go no further than the narrow limits imposed by PKEMRA.

---

to reallocate authorities, responsibilities, or functions into or outside of FEMA. *See* 6 U.S.C. § 316(b), (c).

[3] By contrast, when Congress wanted to insulate the National Transportation Safety Board (NTSB) from control by the Department of Transportation (DOT), it provided that the NTSB, which was "previously established within the [DOT], shall be an independent agency of the United States." Independent Safety Board Act of 1974, Pub. L. No. 93-633, § 303, 88 Stat. 2156, 2167 (1975). Congress could have done the same with FEMA, but it chose instead to keep FEMA *within* DHS, the same status as NTSB vis-à-vis DOT when it was subject to DOT's control.

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

12

**D.** **The Court Should Reject Plaintiffs' Request to Bar FEMA From Ever Reducing Its Workforce**

Plaintiffs initially sought an injunction that would eliminate DHS's ability to make personnel directives to FEMA (and FEMA's ability to carry out DHS directives), *see* Proposed Order 2 ¶ 1, ECF 411-1, in addition to seeking specific relief for the FEMA COREs who were not reappointed in January 2026, *id.* 2 ¶ 2. Although that relief was overbroad in multiple respects, *see* Defs.' Mem. 21-24; *supra*, pp. 10-12, it at least did not seek to interfere with FEMA and its Administrator's authority to make personnel decisions at FEMA. Yet Plaintiffs now expand the scope of relief sought by asking the Court to permanently enjoin FEMA and the FEMA Administrator "[f]rom taking any action to reduce the size of FEMA . . . ." Proposed Order 2 ¶ 2, ECF 461-3.

Plaintiffs' expanded injunction would significantly interfere with FEMA's ability to manage its own workforce going forward. It would forever bar FEMA from taking any action to reduce FEMA's headcount, regardless of the circumstances or justifications. FEMA would even risk contempt if it fired a single employee engaged in misconduct without immediately hiring a replacement because such an action would arguably "reduce the size of FEMA" by one employee. This injunction would also operate as a one-way ratchet for FEMA's headcount: in perpetuity, the headcount could only increase and never decrease. For example, if FEMA hired thousands of COREs on a temporary basis to respond to an unprecedented set of disasters, FEMA would not be able to return its size to previous levels after the disasters subsided because doing so would "reduce the size of FEMA." Such a result would contravene the purpose of the CORE program, to give FEMA authority to hire temporary workers with no right to permanent employment so that FEMA has the flexibility to scale up and scale down as circumstances warrant. *See* 42 U.S.C. § 5149(b)(1) (authorizing hiring of "such temporary personnel as may be necessary, without regard to" statutes providing civil service protections).

Plaintiffs' claim for this relief is unmoored to any legal theory. Plaintiffs have argued that PKEMRA precludes DHS from involvement in FEMA personnel decisions and "return[ed] control over FEMA's . . . personnel to FEMA." Pls.' Opp'n 10. As explained above, that is wrong, as

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

13

PKEMRA makes the Secretary of Homeland Security the superior of the FEMA Administrator and generally allows DHS to exercise authority over its subagency, FEMA. *See supra*, pp. 10-11. But even if Plaintiffs' interpretation of PKEMRA were correct, that would not justify taking control over FEMA's personnel decisions *away from FEMA* and handing it to Plaintiffs by allowing Plaintiffs to wield the threat of contempt to prevent FEMA from ever reducing its headcount. Plaintiffs also argue that if FEMA eliminated half of its staff, that would significantly impair FEMA's capability to perform its statutory functions. *See* Pls.' Opp'n 10. But they ask this Court to enjoin FEMA "[f]rom taking *any action* to reduce the size of FEMA," Proposed Order 2 ¶ 2, ECF 461-3 (emphasis added), which would seemingly apply equally to a headcount reduction of 50%, 5%, 0.5%, or 0.05%. Yet Plaintiffs do not even attempt to argue that any staff reduction at any point in the future, no matter how small, would necessarily render FEMA unable to fulfill its statutory functions. Accordingly, the Court should reject paragraph 2 of Plaintiffs' proposed injunction.

**E.** **Plaintiffs' Request for Back Pay for COREs Is Barred by Sovereign Immunity**

This Court should follow the D.C. Circuit's persuasive analysis in *Hubbard v. EPA*, 982 F.2d 531 (D.C. Cir. 1992) (en banc), and hold that the APA does not waive sovereign immunity over employment-related claims for back pay. *See* Defs.' Mem. 23-24. Plaintiffs' arguments to distinguish *Hubbard* or to ask this Court to reject *Hubbard* are unpersuasive.

Plaintiffs first try to distinguish *Hubbard* because it involved wrongful failure to hire, rather than wrongful termination. Pls.' Opp'n 25. But this case also involves failure to hire: The COREs at issue were temporary employees with terms ending on a specific date. FEMA did not terminate them during their term, but rather declined to hire them for a new term upon the expiration of their existing terms. In any event, *Hubbard* did not turn on a distinction between termination and failure to hire. It turned on the distinction between "damages" and "specific relief." *Hubbard*, 982 F.2d at 533 (quoting Dan B. Dobbs, Handbook on the Law of Remedies 924-27 (1973)). As the court explained "[i]nstatement is the specific relief" for failure to hire, and "reinstatement" is "a form of specific relief" for termination. *Id.* at 533, 536. This

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

14

specific relief is a form of "relief other than money damages" for which review is available under the APA. 5 U.S.C. § 702. By contrast, "back pay [is] not a form of specific relief for § 702 purposes but, rather, a form of compensatory damages." *Hubbard*, 982 F.2d at 536.

Plaintiffs also ask the Court to view back pay as specific relief (rather than damages) based on dicta from *Bowen v. Massachusetts*, 487 U.S. 879 (1988), which discussed a "distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay." *Id.* at 893. As *Hubbard* explained, the language in *Bowen* regarding back pay is dicta because *Bowen* turned on a statutory entitlement to receive money, not an employment dispute. *See Hubbard*, 982 F.2d at 536. "[I]t is ambiguous" whether that dicta in *Bowen* "was labelling back pay itself as specific relief, or merely making the unremarkable point that back pay often accompanies an award of reinstatement, which itself is unquestionably a form of specific relief." *Hubbard*, 982 F.2d at 536. *Bowen* also relied on the Dobbs on Remedies treatise "for the distinction between specific and compensatory relief," and "[t]hat treatise is explicit in classifying back pay as money damages." *Hubbard*, 982 F.2d at 536. Thus, this dicta in *Bowen* does not justify disregarding *Hubbard*'s persuasive analysis concluding that back pay is a form of money damages for which the APA does not waive sovereign immunity.

## CONCLUSION

The Court should deny Plaintiffs' Motion for Partial Summary Judgment on the Supplemental Claims and grant Defendants' Cross-Motion for Partial Summary Judgment on the Supplemental Claims.

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental Claims VIII – XIII
3:25-cv-3698-SI

15

Dated: August 7, 2026                          Respectfully submitted,

                                               CRAIG H. MISSAKIAN (CABN 125202)
                                               United States Attorney

                                               450 Golden Gate Avenue, Box 36055
                                               San Francisco, California 94102-3495
                                               Telephone: (415) 436-7200
                                               Fax: (415) 436-6748

                                               ERIC J. HAMILTON
                                               Deputy Assistant Attorney General

                                               DIANE KELLEHER
                                               Branch Director

                                               */s/ Jeremy S.B. Newman*
                                               BRAD P. ROSENBERG
                                               JEREMY S.B. NEWMAN (Mass. Bar # 688968)
                                               Chief Litigation Counsel

                                               CHRISTOPHER HALL
                                               Assistant Branch Director

                                               TAYLOR PITZ
                                               ROBERT C. BOMBARD
                                               Trial Attorneys
                                               Civil Division, Federal Programs Branch

                                               *Counsel for Defendants*

Defendants' Reply Memorandum in Support to Defendants' Cross-Motion for Summary Judgment on Supplemental
Claims VIII – XIII
3:25-cv-3698-SI

16