Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RE: USDA** |

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................................1

I.      This Court Can and Should Enjoin USDA's Forced Relocation Actions ..................2

II.     Plaintiffs' Response to USDA's Factual Characterizations .......................................2

        A.      USDA only recently began implementing the 2025 Reorganization
                Plan. ...............................................................................................................2

        B.      USDA's reorganization will cause severe losses of highly
                experienced staff. ..........................................................................................5

        C.      USDA admits that Congress expressly prohibited USDA's
                reorganization. ...............................................................................................6

        D.      Impact bargaining cannot challenge the Reorganization Plan. .......................7

        E.      An early September injunction is not too late to prevent all
                challenged relocations  . ..................................................................................8

III.    Plaintiffs' Contrary to Law and Ultra Vires Claims are Likely to Succeed ...............9

        A.      Congress prohibited USDA from implementing this reorganization. .............9

        B.      USDA otherwise lacks statutory authority to force attrition. ........................11

        C.      USDA's mandatory relocations will interfere with statutory
                functions. ......................................................................................................12

IV.     USDA's Mandatory Relocation Plan is Arbitrary and Capricious............................13

        A.      The failure to consider the impacts of attrition on agency function is
                fatal...............................................................................................................14

        B.      USDA has not cured the pretext problem.......................................................15

        C.      USDA failed to consider reliance interests. ..................................................16

        D.      USDA's other justifications also fall short.....................................................16

V.      USDA's Reorganization Plan is Final and Reviewable Action Under the
        APA .................................................................................................................17

VI.     USDA Offers No Valid Basis to Revisit Previous Subject Matter
        Jurisdiction Decisions..........................................................................................21

VII.    Plaintiffs Are Facing Irreparable Harm from Mandatory Relocations and
        Attrition ................................................................................................................22

VIII.   The Balance of Equities Strongly Supports a Preliminary Injunction ....................24

IX.     Plaintiffs Request Targeted Relief to Prevent Harm to Plaintiffs ...........................25

CONCLUSION ...............................................................................................................................25

APPENDIX 1 ................................................................................................................................1a

APPENDIX 2 ................................................................................................................................9a

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*AFGE v. Trump*,
   139 F.4th 1020 (9th Cir. 2025) ........................................................................................ 18, 23

*Alaska Airlines v. Brock*,
   480 U.S. 678 (1987) ........................................................................................................ 9, 10

*Am. Mining Cong. v. EPA*,
   965 F.2d 759 (9th Cir. 1992) ................................................................................................. 15

*Appalachian Power Co. v. EPA*,
   208 F.3d 1015 (D.C. Cir. 2000) ............................................................................................. 18

*Arc of Cal. v. Douglas*,
   757 F.3d 975 (9th Cir. 2014) ................................................................................................. 24

*Axon Enterprise, Inc. v. FTC*,
   598 U.S. 175 (2023) ............................................................................................................... 22

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................................................... 19

*Block v. Cmty. Nutrition Inst.*,
   467 U.S. 340 (1984). .............................................................................................................. 11

*California v. Trump*,
   963 F.3d 926 (9th Cir. 2020) ........................................................................................... 11, 13

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ............................................................................................................... 20

*City of New Haven Conn. v. United States*,
   809 F.2d 900 (D.C. Cir. 1987) ............................................................................................... 10

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ............................................................................................................... 23

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001) ............................................................................................... 12

*DHS v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020) ....................................................................................................... 13, 14, 16

*Fed. Express Corp. v. Dep't of Com.*,
   39 F.4th 756 (D.C. Cir. 2022) ................................................................................................ 13

*Flathead-Lolo-Bitterroot Cit. Task Force v. Montana*,
    98 F.4th 1180 (9th Cir. 2024) ...................................................................................... 12

*Fleming v. Mohawk Wrecking & Lumber Co.*,
    331 U.S. 111 (1947) ...................................................................................................... 12

*FLRA v. DOJ*,
    994 F.2d 868 (D.C. Cir. 1993)...................................................................................... 22

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    618 F.3d 1025 (9th Cir. 2010) ...................................................................................... 13

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ...................................................................................................... 20

*INS v. Chadha*,
    462 U.S. 919 (1983) ................................................................................................... 9, 10

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009)...................................................................................... 25

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ................................................................................................ 20, 21

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024) ...................................................................................................... 21

*Lotus Vaping Techs., LLC v. FDA*,
    73 F.4th 657 (9th Cir. 2023) ........................................................................................ 13

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 891 (1990) ................................................................................................ 19, 20

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) ...................................................................................................... 22

*McMahon v. New York*,
    145 S. Ct. 2643 (2025).   ............................................................................................... 23

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .................................................................................................. 13, 14

*Mt. Diablo Hosp. v. Shalala*,
    3 F.3d 1226 (9th Cir. 1993) .......................................................................................... 14

*Nat'l Mining Ass'n v. Zinke*,
    877 F.3d 845 (9th Cir. 2017) ..................................................................................... 9, 10

*Nat'l TPS All. v. Noem*,
    150 F.4th 1000 (9th Cir. 2025) ..................................................................................... 25

*New York v. Trump*,
   133 F.4th 51 (1st Cir. 2025) ......................................................................................... 20

*NTEU v. FLRA*,
   414 F.3d 50 (D.C. Cir. 2005) ..................................................................................... 7, 22

*OPM v. AFGE*,
   145 S. Ct. 1914 (2025) ................................................................................................. 23

*Quechan Tribe of Fort Yuma Indian Rsrv. v. Dep't of Interior*,
   755 F.Supp.2d 1104 (S.D. Cal. 2010) ......................................................................... 24

*S.F. Herring Ass'n v. Dep't of the Interior*,
   946 F.3d 564 (9th Cir. 2019) ............................................................................ 17, 18, 19

*Sackett v. EPA*,
   566 U.S. 120 (2012) ..................................................................................................... 18

*Trump v. CASA,*
   606 U.S. 831 (2025) ..................................................................................................... 25

*Webster v. Doe*,
   486 U.S. 592 (1988) ..................................................................................................... 20

*Widakuswara v. Lake*,
   2025 WL 1521355 (D.C. Cir. May 28, 2025) ............................................................. 22

**Federal Statutes**

5 U.S.C.
   § 551 ............................................................................................................................. 18
   § 3502 ........................................................................................................................... 12
   § 7106 ........................................................................................................................ 7, 22
   § 7116 ........................................................................................................................... 22
   §§ 7119-7122 ................................................................................................................ 22

7 U.S.C.
   § 2201 ........................................................................................................................... 12

**Other Authorities**

Fed. R. Evid. 602, 701, 702 ................................................................................................ 13

H.R. 9770, §§ 101, 103, 104, 119th Cong., 2d Sess. (July 21, 2026) ................................. 9

Pub. L. No. 119-37 § 120 (Nov. 2025) ............................................................................ 3, 7

Senate Appropriations Committee, Division A—Continuing Appropriations Act, 2027
   §§ 101, 103-104 (2026) ................................................................................................. 9

**INTRODUCTION**

If USDA is permitted to proceed with the ongoing implementation of its Reorganization Plan and forced relocations across the country, it will lose thousands of experienced employees, interfering with statutory functions across the USDA component agencies and defying Congress's express prohibition of this reorganization.  The employees represented by Plaintiff unions will suffer irreparable harm through the loss of careers, income, and benefits; the Plaintiff organizations and local governments who rely on USDA services will be irreparably harmed as well.  USDA has now *admitted* that its intention all along was to use its Reorganization Plan to force workforce reductions and, remarkably, has also admitted that this Plan was approved and is being implemented without USDA having conducted *any analysis at all* of the impact of attrition on agency functions.  ECF 457 at 31-33.  USDA's actions directly contravene statutes prohibiting the reorganization of the department without further congressional approval, and even if USDA had the authority to take these reorganization actions, they are fundamentally arbitrary and capricious.

Notwithstanding its admissions, USDA argues that this Court should deny the injunction because, in USDA's view, Plaintiffs have moved both too early (because USDA says its actions are forever in the planning stage, despite implementation) and too late (because Plaintiffs purportedly delayed notwithstanding USDA's postponed implementation).  But USDA cannot deny that it has only recently begun to implement its Reorganization Plan, and that a stay or injunction issued by this Court following the September 1 hearing would fully halt all challenged forced relocations, including those set forth in recent management directed reassignment ("MDR") letters that require employees to relocate to distant locations in the coming weeks and months.

Plaintiffs respond further to USDA's arguments below, including setting the record straight regarding the scope of relief and timing; the relationship between USDA's Agency RIF and Reorganization Plans ("ARRPs"), congressional notifications, and recent implementing actions; the relevance of union effects bargaining; and USDA's overstated contentions regarding the impact on USDA of maintaining the status quo.  For the following reasons, all factors conclusively support a stay and/or preliminary injunction that prevents serious irreparable harm from USDA's mandatory relocations pending the resolution of Plaintiffs' claims.

## I.      This Court Can and Should Enjoin USDA's Forced Relocation Actions

Plaintiffs initially moved to stay or preliminarily enjoin USDA's entire Reorganization Plan, including but not limited to actions forcing employees to relocate, because the Plan is unlawful in its entirety.  ECF 440-1, 440-44 (Proposed Order).  Although Plaintiffs have established the need for that full scope of relief, with this reply, Plaintiffs also submit an alternative Revised Proposed Order that focuses the requested relief on the pending relocation actions of USDA's Reorganization Plan that are clearly causing imminent irreparable harm to Plaintiffs now. *See* Rev. Prop. Order (filed herewith).  As their opening brief established, Plaintiffs are facing imminent harm caused by office closures and forced employee relocations, and the attendant staff attrition and degradation of agency functions, at these specific USDA components: (1) Food and Nutrition Administration ("FNA"), (2) Research, Education, and Economics ("REE"); (3) U.S. Forest Service ("USFS"), (4) Foreign Agricultural Service ("FAS"), (5) Rural Development ("RD"), (6) Farm Production and Conservation ("FPAC"), (7) Office of the Assistant Secretary for Civil Rights ("OASCR"), and (8) Office of the General Counsel ("OGC").  *See* Appendix 1 (listing relocations for those components); Appendix 2 (listing Plaintiffs' harm evidence by component).  Plaintiffs' alternative requested preliminary relief is thus limited to enjoining the closure of offices and relocation of employees at those components (with the exception of the moves clarified by USDA to be solely within the National Capital Region ("NCR")).  *See* Rev. Prop. Order.

## II.      Plaintiffs' Response to USDA's Factual Characterizations

### A.      USDA only recently began implementing the 2025 Reorganization Plan.

Contrary to USDA's characterization, Plaintiffs did not delay in seeking preliminary relief, but instead moved promptly once USDA began implementing the Reorganization Plan in 2026.

Although USDA created and obtained approval from OMB/OPM of its ARRPs in spring 2025, implementation was postponed for almost a year.  ECF 440-1 at 9-27; ECF 457 at 5; *see* Schwarz Decl. Ex. 1 (USDA admitting in February 2026 that its "reorganization … implementation" was still delayed).[1]  Plaintiffs filed their initial complaint challenging the ARRPs

---

[1] Citations herein to previously filed briefs are to internal pagination.  Citations to previously filed record evidence, including exhibits without internal pagination, are to ECF page numbers.

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

on April 28, 2025, soon after OMB/OPM's deadline for ARRP submissions.  ECF 1.  Just days before, USDA Secretary Rollins had announced that USDA's "reorganization" was imminent and USDA would reveal the "final plans" by "early to mid-May."  ECF 70-1 pp. 9-11.  This Court then enjoined implementation of Defendants' reorganization plans, including USDA's, on May 9, 2025.  ECF 85, 124.  Soon after the Supreme Court stayed the injunction in July 2025, USDA publicly announced its Reorganization Plan in the July 24, 2025 Secretary Memo.  ECF 440-3 p. 38.  USDA then collected public comments on the Plan.  ECF 440-1 at 9.

Before USDA began implementing this Plan, however, Congress enacted a Continuing Resolution ("CR") that prohibited USDA (and all other agencies) from reducing any employee positions.  Pub. L. No. 119-37 §120 (Nov. 2025).  That law, which was extended several times, forestalled implementation of the Reorganization Plan (which USDA concedes has always included downsizing, ECF 457 at 31).  ECF 440-1 at 4-5.  Only when the CR was on the cusp of expiring in April 2026 did USDA start congressional notifications and implementation.

USDA has rolled out the Plan in piecemeal fashion.  ECF 457 at 5.  USDA began with non-public congressional notifications for a subset of components in late March and April 2026, ECF 457-2 pp. 11-68, and shared only limited information about those reorganizations with the public and some federal unions over the next few months, ECF 440-1 at 9-24.  USDA did not announce or begin implementing the reorganization of other components, including FAS, Rural Development, and FPAC, until mid-June 2026.  ECF 440-1 at 24-27.  USDA issued congressional notifications and public and union announcements for those agencies for the first time on June 17, 2026—only *two weeks* before Plaintiffs filed their preliminary injunction motion.  *Id*.

USDA ignores this timeline to erroneously suggest that Plaintiffs have delayed in seeking relief.  USDA also incorrectly suggests that the time between approval and implementation means the Reorganization Plan was not approved or changed.  As established in Plaintiffs' opening brief, the record confirms that USDA is now implementing the very Reorganization Plan set forth in its ARRP and publicized in the July 2025 Secretary Memo.  ECF 440-1 at 6-8, 12, 16-17, 21, 24, 26.

USDA tries to run away from its ARRP, claiming the department's "reorganization plans"

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

are instead set forth in the 2026 congressional notifications. ECF 457 at 6; ECF 457-2 pp. 11-68.[2] But the contents of those notifications mirror the AARP: they identify employee relocations and other restructuring actions that are in the ARRP.[3] Moreover, the ARRP was required by Executive Order 14210, as was its approval by OMB/OPM, and USDA provides no evidence that the plan in the ARRP was not approved, or was modified, or replaced. *See* Schwarz Decl. Ex. 1 (USDA's reorganization facilitates the President's ARRP directives). The notifications also expressly state that USDA is implementing the Reorganization Plan announced in 2025 (which reflects the ARRP). ECF 457-2 p. 6 (Deputy Secretary Vaden: "The … reorganization process began with Secretary's Memorandum 1078-015, which authorized and directed the actions necessary to effectuate the … [Reorganization Plan]."); *id*. p. 49 ("These updates are part of USDA's broader modernization effort, first announced in July 2025[.]"); *id*. p. 67 ("This letter notifies you of planned organizational changes consistent with the Departmental plan announced in July 2025.").

To the extent those notifications include additional details about the relocations and restructuring, those details are consistent with the ARRP. USDA is unable to identify any significant differences between the Reorganization Plan and the agency's notifications. Instead, USDA references one real estate decision (retaining the Carver building for D.C. area moves) and less consolidation of support functions (grants, communications, and human resources) "at this time." ECF 457 at 6; ECF 457-1 ¶15. Those small adjustments are insubstantial compared to the overwhelming overlap between the Reorganization Plan and agency-specific notifications.

---

[2] USFS did not provide a written notification, thereby continuing to hide from the public the full scope and timing of its reorganization. ECF 457-1 ¶89. MDRs issued to date are already broader than USFS's public descriptions of its reorganization. Kotyk Reply Decl. ¶23.

[3] **FNA:** *Compare* ECF 457-2 pp. 45-46 (FNA notification: relocating regional staff to hubs) *with* ECF 440-3 p. 29 (relocating FNA regional staff to hubs). **REE:** *Compare* ECF 457-2 pp.18-19 (REE notification: closing BARC, restructuring ERS, NIFA, NASS) *with* ECF 440-3 p. 28 (closing BARC, restructuring ERS, NIFA, NASS). **USFS**: *Compare* ECF 457-1 ¶¶94-95 (USFS declaration: relocating D.C. workers to Salt Lake; closing regional and research offices) *with* ECF 440-3 pp. 28-29 (USFS relocating headquarters to Salt Lake; closing regional and research offices). **FAS:** *Compare* ECF 457-2 p. 49 (FAS notification: relocating staff to Kansas City) *with* ECF 440-3 p. 22 (relocating staff to Kansas City). **RD:** *Compare* ECF 457-2 pp. 54-58 (RD notification: restructuring and relocating workers to Dallas, Kansas City) *with* ECF 440-3 p. 29 (restructuring RD and relocating staff to hubs). **FPAC:** *Compare* ECF 457-2 pp. 51-53 (FPAC notification: relocating to hubs) *with* ECF 440-3 p. 27 (relocating FPAC staff to hubs). **OGC and OASCR:** *Compare* ECF 457-2 p. 28 (consolidating and relocating OGC staff), p. 67 (consolidating and relocating civil rights) *with* ECF 440-3 p. 26, 31 (consolidating support functions and civil rights).

At any rate, despite ignoring that the notifications are, for all essential purposes, the same as the Reorganization Plan announced in 2025 and included in the ARRP, USDA concedes that the notifications set forth the "most accurate and up to date reorganization plans" for each component agency, ECF 457 at 6 (quoting ECF 457-1 ¶4), thus dispensing with any claim that Plaintiffs are somehow too late to challenge their implementation.

**B.    USDA's reorganization will cause severe losses of highly experienced staff.**

USDA now admits that the forced relocations in its Reorganization Plan will cause staff attrition—as intended by the ARRP. ECF 457 at 31-32; ECF 440-3 p. 25. USDA attempts to buffer that concession by asserting that hiring may counterbalance attrition. ECF 457 at 28. But the record is clear that while USDA *may* hire, it will not fill *all* vacancies, will not fill the *same positions* as are being vacated, and will not hire *equally experienced and qualified* individuals.

Even setting aside the inevitable delays in hiring to backfill positions, USDA is not planning to replace workers (let alone all workers) at all component agencies. For example, USDA's staffing plan states that USDA does not intend to hire at FNA—thereby entrenching any staffing losses from the reorganization. *See* ECF 457-2 p. 139 ("FNS does not anticipate hiring in FY 2026"). USDA's brief relies on department-wide hiring numbers, obscuring the fact that USDA has no intention of backfilling the losses at certain agencies and for certain functions. ECF 457 at 28; ECF 457-2 p. 133. Beyond FNA, USDA also expressly "expects to reduce the number of onboard employees" at USFS in 2026. ECF 457-2 p. 142. Other components are slated for "nominal" hiring, which will not be sufficient to address attrition from the reorganization. *E.g.*, *id.* p. 138 (support functions), 139-40 (FPAC Business Center), 144 (ERS), 145 (NIFA).[4]

USDA is also planning to hire into different positions rather than replace the experienced staff who leave. For instance, USFS hiring "will be focused on" increasing logging and mineral production "to support the Administration's priorities," rather than replacing positions in research or environmental compliance. *Id*. pp. 142-43.[5] Rural Development hiring will focus on expanding

---

[4] The few agencies purportedly slated for increases in hiring are those USDA believes will advance "presidential priorities." *E.g.*, ECF 457-2 pp. 139-42 (Food Safety and Inspection Service, Animal, Plant Health Inspection Service ("APHIS"), which are not at issue in Plaintiffs' motion).

[5] USFS also may hire for seasonal firefighter and other jobs. ECF 457-2 pp. 142-43.

fossil fuel and mineral production and reducing energy costs, not replacing lost positions. *Id.* p. 143. FAS intends to hire to align with the Secretary's trade plan, while remaining "net neutral," thereby ensuring staffing reductions from reorganization are not filled. *Id.* pp. 145-46.

USDA is also planning to hire less qualified individuals. USDA admits it intends to fill vacated slots with early career staff—that is, new hires in the first to fifth years of their careers. ECF 457-1 ¶6 (discussing OMB/OPM direction that at least 31% of all new hires must be early career employees); ECF 457-2 p. 158 ("many … positions" vacated through reorganization will be filled through "early career" hiring). Early career employees will not have the experience, skills, expertise, or training to replace the highly experienced staff who are forced out by the relocation.[6]

USDA's (post hoc) contention that it is "hiring at the rate of … attrition" is highly suspect. ECF 457 at 28. The department suffered massive attrition in 2025, but excluded those losses from its baseline, and the staffing plan makes clear USDA has no intention of addressing the full attrition that occurred. ECF 457-2 p. 133 (excluding 14,000 losses); ECF 440-3 pp. 148-55 (confirming losses). Agencies in USDA are already operating at a severe staffing deficit, which new relocations will exacerbate. ECF 440-1 at 12-13, 16, 21, 23. USDA's declaration shows the agency is far behind meeting any hiring anticipated in the 2026 plan. ECF 457-1 ¶¶116, 118. And given USDA's admission that it failed to analyze attrition and impact on function (ECF 457 at 32-33), it is unclear how USDA can claim a plan to hire at the rate of attrition.

**C.    USDA admits that Congress expressly prohibited USDA's reorganization.**

Congress's 2026 appropriations statutes rejected USDA's Reorganization Plan. Congress was undeniably aware of the plan when it rejected USDA's proposed FY2026 budget and prohibited reorganization. ECF 440-1 at 4. For instance, the Senate Agriculture Committee held an emergency hearing on USDA's reorganization on July 30, 2025, after USDA announced its

---

[6] *See* ECF 440-9 ¶12, 440-32 ¶¶15-17, 440-38 ¶¶34-36, 440-41 ¶13; Mei Reply Decl. ¶13 (FNA: positions require specialized expertise, years of training, significant institutional knowledge, and deep relationships with stakeholders); ECF 440-40 ¶¶11, 22; Erhman Reply Decl. ¶¶4-7; Wormstead Reply Decl. ¶¶4-6 (USFS: regional office positions are highly specialized, with many years of experience, formal and on-the-job training, and professional certifications; experienced researchers' scientific expertise, long-term professional relationships, and institutional knowledge cannot be recreated); Bradley Reply Decl. ¶¶ 50-55 (FAS); Vaughn Reply Decl. ¶¶33-36 (RD); ECF 440-5 ¶¶25, 30 (ERS); Millner Reply Decl. ¶¶8-10, ECF 440-34 ¶17 (BARC).

Reorganization Plan on July 24, 2025.[7]  USDA, in its notifications to Congress, declaration, and brief, admits that its current actions trigger the appropriation acts' prohibition on reorganizing. *E.g.*, ECF 457-2 p. 18 (REE letter: "the reorganizations will establish offices …, result in office closures, relocate employees, and require reprogramming and transferring certain appropriations to do so.  Accordingly, this notice is provided pursuant to Sections 716 and 771 of … Pub. L. 119-37[.]"); *id*. pp. 26, 45; ECF 457-1 ¶26; ECF 457 at 22.

**D.      Impact bargaining cannot challenge the Reorganization Plan.**

USDA mischaracterizes the effects-only bargaining it has offered to the unions representing its employees.  ECF 457 at 6-7, 42.  In the federal context, agencies are statutorily obligated to bargain over the effects of certain management actions, but the fact and legality of those actions are removed from the obligation to bargain.  5 U.S.C. §§7106(a), (b)(2)-(3).  This type of bargaining, called impact and implementation ("I&I") bargaining, does not allow the unions to challenge the underlying agency action.  *See NTEU v. FLRA*, 414 F.3d 50, 52–53 (D.C. Cir. 2005) (addressing "[t]he distinction between an agency's exercise of management rights and its obligation to engage in impact and implementation bargaining"); *infra* at 22.

Here, USDA made its reorganization decisions, notified Congress of its actions, and then to the extent it offered bargaining, offered I&I bargaining *only*.  *See* ECF 457-2 pp. 11, 123.[8]  For example, the AFSCME bargaining notice USDA submitted provides:

> <u>Scope of Anticipated Negotiations</u>. USDA management acknowledges the proposed office moves and reorganization may constitute a change in conditions of employment which may result in Impact and Implementation (I&I) bargaining. USDA management anticipates negotiations over:
> - Timeline and phasing of office moves.
> - Communication and notification process of bargaining unit employees.

*Id.* p. 123.  AFSCME, like all other unions, was thus not permitted by USDA to challenge or negotiate over the fact or legality of the relocations, only the *timing* and *communications* about

---

[7] *See* Evers Decl. ¶5.  Congresspersons also sent numerous letters to USDA in the fall of 2025 regarding USDA's reorganization.  *See, e.g.*, Evers Decl. Exs. A-D.

[8] Bradley Reply Decl. ¶¶6-7, 34-36; Dodson Reply Decl. ¶¶5-12; Mitchell Reply Decl. ¶¶5-15; Kotyk Reply Decl. ¶¶6-13; Mei Reply Decl. ¶¶6-10; Rosenthal Reply Decl. ¶¶6-7, 9-12, 14-17; Salvatore Reply Decl. ¶¶6-11; Vaughn Reply Decl. ¶¶16-18.

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

them. *See supra*, n.8.   And because USDA and the unions were well aware of the limitations of I&I bargaining, many executed MOUs expressly reserve all rights to challenge the legality of USDA's decisions under any "applicable law." *E.g.*, ECF 457-2 p. 120.

The unions engaged in I&I bargaining because they had no choice but to protect their members in the limited way USDA made available, but that does not mean they have an interest in implementing the MOUs if the reorganization does not proceed, let alone that they *support* the reorganization.  ECF 457 at 42.  To the contrary, those unions uniformly oppose the reorganization, and attest they will not be injured by an injunction halting it.  *See supra*, n.8.

### E.    An early September injunction is not too late to prevent all challenged relocations.

Despite USDA's attempts to obscure the timeline, USDA is still in the early stages of implementing the Reorganization Plan.  As of this filing, USDA has only issued MDR letters to a subset of the workers whose relocations Plaintiffs challenge.  App. 1.  No letters impose reporting dates outside the NCR before September 21, 2026, and most workers are not required to report to new locations until October 5 or later.  *Id.*  Crucially, workers who do not relocate *are not separated from employment until the reporting date*.  ECF 440-5 ¶11; ECF 440-33 ¶23.  While more MDR letters are forthcoming, the letters generally provide 30 days for a decision and 60 days for relocation.  App. 1.  As of the September 1 hearing on this motion, no workers will have started their relocated job or been separated from employment due to relocations outside the NCR, and most will have weeks or more before those events occur.  A stay/injunction issued on or near September 1 would halt all such challenged relocations of which Plaintiffs are currently aware.

USDA overstates the evidence of actions it has taken and would purportedly need to unwind.  ECF 457-1 ¶¶113-18.  Plaintiffs do not seek to enjoin hiring—and given how short-staffed the agency is, there is no harm from any hiring that has occurred.  USDA's brief focuses on NCR-area impacts, but Plaintiffs do not seek to enjoin intra-D.C. area reassignments or the closure or allocation of NCR office spaces.  The steps USDA has taken towards releasing or acquiring leases are largely not final. *See id.* ¶114-15 (listing "requests" to terminate, "negotiations" for leases, and "expect[ations]" or "plans" for renovations).  The only final actions USDA identifies

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

are two leases signed in December 2025, before any congressional notifications. *Id.* ¶115(A), (B).

## III.    Plaintiffs' Contrary to Law and Ultra Vires Claims are Likely to Succeed

### A.    Congress prohibited USDA from implementing this reorganization.

Plaintiffs' opening brief demonstrates that USDA's actions violate the FY2026 appropriations acts. ECF 440-1 at 4-5, 30-33. As USDA acknowledged to Congress, §716 plainly applies to its reorganization actions. *Supra* at 7; ECF 457-2 p. 18. So does §421, as USDA does not dispute. USDA does dispute its violation of the statute requiring USFS to maintain staffing levels (ECF 440-1 at 5, 31), but the argument that its actions will not cause attrition that impacts USFS's mission, ECF 457 at 24-25, is wrong as explained in Section III.C, *infra*. USDA also argues that the statutory prohibitions will expire with the fiscal year. ECF 457 at 24. But those prohibitions apply and justify preliminary relief now. And USDA provides no reason to expect Congress to remove those prohibitions for FY2027. Indeed, the House passed, and the Senate has proposed, continuing resolutions appropriating funds into December 2026 under the same "authority and conditions provided" in the FY2026 appropriations acts, including §§716 & 421.[9]

USDA argues that its blatant violation of these Congressional prohibitions is permitted by *INS v. Chadha*, 462 U.S. 919 (1983) (ECF 457 at 23-24), but it fails to overcome Plaintiffs' showing that the challenged committee approval clauses are severable and the prohibitions remain in place notwithstanding *Chadha*. ECF 440-1 at 32-33.

USDA concedes that the severability standard requires this Court to determine whether an unconstitutional provision can be invalidated while leaving in place a statute that "will function in a *manner* consistent with the intent of Congress." *Alaska Airlines v. Brock*, 480 U.S. 678, 685 (1987) (emphasis in original); *see Nat'l Mining Ass'n v. Zinke*, 877 F.3d 845, 862 (9th Cir. 2017). Thus, when assessing Congress's objectives, the court must consider not only "the importance of the veto in the original legislative bargain, but also … the nature of the delegated authority that Congress made subject to a veto." *Alaska Airlines*, 480 U.S. at 685. Nonetheless, USDA argues that these statutes' conditional clauses should not be severed but rather rewritten, resulting in

---

[9] H.R. 9770, §§101, 103, 104, 119th Cong., 2d Sess. (July 21, 2026); Senate Appropriations Committee, Division A—Continuing Appropriations Act, 2027 §§101, 103-104 (2026).

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

statutes that would affirmatively authorize reorganization after notice to Congress.  ECF 457 at 25-27.  That interpretation is entirely inconsistent with Congress's fundamental objective to *restrain* executive actions to reorganize.  *See City of New Haven Conn. v. United States*, 809 F.2d 900, 903, 905-08 (D.C. Cir. 1987) (rejecting severability analysis "completely at odds with Congress' expressed intention to *control* rather than *authorize* presidential deferrals") (emphases in original).

Unlike in the typical "legislative veto" case, where Congress expressly grants the executive affirmative authorization to act and attempts to reserve the right to veto a specific exercise of that otherwise authorized power, *e.g.*, *Chadha*, 462 U.S. at 923; *Alaska Airlines*, 480 U.S. at 682; *Zinke*, 877 F.3d at 856, the statutory text here expressly limits executive authority by prohibiting the use of funds for specified purposes, then contemplates that Congress might later approve actions that are otherwise prohibited.  That the statutory language is structured as a prohibition rather than a delegation means it would completely invert the balance of power between the legislative and executive branches to follow USDA's view.  USDA has no response to this point.

The legislative history reinforces Congress's intent to constrain executive authority.  As USDA concedes, Congress repeatedly rejected USDA's view that notification without approval should be sufficient to authorize it to reprogram funds.  ECF 440-1 at 33 n.29; ECF 440-3 pp. 220, 239-250.  Congress was also well aware of USDA's proposal to reorganize.  *Supra* at 5-6.  Congress not only refused to appropriate funds for this reorganization, but expressly prohibited the use of other appropriated funds for reorganization purposes.  *See* ECF 440-3 pp. 90, 94; S. Rep. 119-46 at 13 (2025) ("remind[ing]" the agencies funded by the Act that "no reprogramming shall be implemented without the advance approval" of the committees).

USDA argues that Plaintiffs propose invalidating "more of the statute than necessary," because the references to "approval" could be removed while leaving the notification requirement in place.  ECF 457 at 26.  The question is not whether it is possible to excise fewer words from the statute, but rather, what portion of the statute must be severed to leave in place a statute that "will function in a *manner* consistent with the intent of Congress."  *Alaska Airlines*, 480 U.S. at 685 (emphasis in original).  USDA also notes that other statutes that expressly *authorize* executive action, subject to a legislative veto, have included a separate "report and wait" provision, and

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

keeping that requirement while severing the legislative veto would support the congressional objective of providing "oversight" of executive action. ECF 457 at 26. But in contrast to those statutes, the default rule that Congress adopted in §716 and §421 is an unambiguous *prohibition* on action by the executive branch, not a delegation of authority.[10] USDA also contends there is no evidence that Congress "contemplated refusing to fund the Department at all" without the approval requirement, ECF 457 at 26, but that aims at a strawman. The relevant "legislative bargain" is not the entire appropriations act funding several departments, but the specific prohibitions on use of funds for reorganization activities codified in §716 and §421, which USDA concedes are severable and should be preserved. USDA finally contends that if Congress wanted to limit the agency's authority, it could "preempt by statute any of the Department's reorganization plans." ECF 457 at 27. But that is precisely what Congress has already done in §716 and §421.[11]

Finally, USDA argues that any claims predicated on appropriations statutes are impliedly precluded by the Antideficiency Act. ECF 457 at 24. This Court has previously correctly rejected that argument, and USDA provides no reason for any different outcome here. *AFGE v. OMB*, No. 25-cv-08302-SI (N.D. Cal.), ECF 56 at 3-4, ECF 94 at 25-26; *see California v. Trump*, 963 F.3d 926, 944 (9th Cir. 2020) (APA suit challenging violation of transfer authority in appropriations act), *judgment vacated on mootness grounds*, *Biden v. Sierra Club*, 142 S.Ct. 46 (2021). Unlike the statute considered in *Block v. Cmty. Nutrition Inst.*, the Antideficiency Act does not contain any "detailed mechanism for judicial consideration of particular issues at the behest of particular persons" sufficient to preclude APA review. 467 U.S. 340, 349 (1984). USDA's further argument that appropriations statutes that lack a private right of action are not enforceable is contrary to applicable law. ECF 457 at 24; *California*, 963 F.3d at 944.

### B.    USDA otherwise lacks statutory authority to force attrition.

Plaintiffs' proposed alternative relief focuses on addressing attrition through relocation. The statutory authority USDA invokes does not authorize downsizing staff in the name of

---

[10] USDA concedes that the appropriations acts do not delegate authority. ECF 457 at 27.

[11] Even USDA's rewriting of the statutes would not justify its actions here, because it failed to notify Congress before entering leases *in December 2025* to establish the new Salt Lake City and Kansas "hubs." ECF 457-1 ¶115(A)-(B); ECF 457-2 pp. 6, 8.

"workforce optimization" aligned with the President's "priorities."  In 1953, Congress delegated to the Secretary the general ability to organize work and functions among existing staff, not to reduce positions, downsize programs, or use mandatory relocations to force attrition.  7 U.S.C. §2201 (Note, 1953 Plan No.2, Sec. 4(a)).  USDA relies on Section 4(c) but that language clarifies rather than expands the authority in 4(a); USDA also relies on Section 5, but that provision is limited to actions effectuating the 1953 plan.  *Id*. §§4(c), 5.  USDA relies on the President's 1953 statement, but that adds nothing to the statutory text.  ECF 457 at 19.  The contrast between the authority granted in 1953 and the more specific *and expired* authority from 1994 remains stark and telling.  ECF 440-1 at 29-30.[12]  While USDA invokes the history of the Secretary's authority to reorganize by *creating* offices over the past decades, it noticeably omits the history of Congressional regulation of *downsizing*.  ECF 457 at 20-21; *see* ECF 120 at 6 (describing history of congressional authorization of workforce reduction).[13]  There can be no dispute that USDA *is* engaged in downsizing including through the mandatory relocations in its Reorganization Plan, ECF 457 at 31-33, and the 1953 authority does not authorize that.

### C. USDA's mandatory relocations will interfere with statutory functions.

USDA does not dispute that its components must perform the statutory functions identified by Plaintiffs, ECF 440-1 at 10-26; that prior relocations resulted in significant attrition that interfered with functions, *id.* at 18, 22 n.19; or that high attrition would again interfere with functions.  ECF 457 at 27-28.  USDA's only response is to challenge the admissibility of Plaintiffs' survey evidence, which polled hundreds of employees.  Rosenthal Reply Decl. ¶19; Kotyk Reply Decl. ¶21.  But evidence need not be admissible to be persuasive at the preliminary injunction stage.  *Flathead-Lolo-Bitterroot Cit. Task Force v. Montana*, 98 F.4th 1180, 1189 (9th Cir. 2024).[14]

---

[12] The caselaw USDA cites involves the Secretary's authority to delegate subpoena power or certain adjudicatory functions and is entirely inapposite.  ECF 457 at 20.  USDA also overstates a case involving the President's war-time authority to transfer functions between federal agencies, which addressed whether the President's authority was limited to agencies in existence at the time of the Act, and did not conclude that there were *no* limitations on that authority.  *Id*. (citing *Fleming v. Mohawk Wrecking & Lumber Co*., 331 U.S. 111, 117 (1947)).

[13] 5 U.S.C. §3502 creates only retention preferences, not independent authority to RIF.

[14] USDA's cases about *expert* testimony at the merits stage in trade secrets cases are inapposite. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001); *Fortune Dynamic,*

Moreover, claiming to have conducted *no analysis* of the effects of attrition on function, USDA is poorly positioned to rebut its concession that relocation will cause attrition. USDA provides only *inadmissible opinion evidence* (Fed. R. Evid. 602, 701, 702), that the attrition from relocations "will be less than prior reorganizations" by some unspecified amount. ECF 457-1 ¶119. This guess relies on speculation that the NCR job market is flooded with former federal employees. *Id.* But that assumption is outdated, Dodson Reply Decl. ¶¶13-14, and does not apply to USDA employees in other locations (e.g., FNA, USFS, and NIFA). Furthermore, even attrition below the very high survey rates would interfere with the understaffed agencies' functions. ECF 440-38 ¶¶27-39; 440-43 ¶¶9-15; 440-31 ¶¶11-15. Nor does USDA's speculation account for the many reasons employees need to remain in the NCR even if they cannot find an equivalent job, such as family and care responsibilities. *E.g.*, Bocian Decl. ¶¶14-21 (FAS employee unable to relocate due to custody agreement for daughter and need for ongoing specialized infant medical care); Mitchell Reply Decl. ¶20; Dodson Reply Decl. ¶15. USDA says it intends to hire, but its documents reveal that it is *not* hiring to fill many vacated positions and is hiring less-qualified replacements who cannot perform the same level of work. *Supra* at 5-6. USDA has not rebutted Plaintiffs' showing that the relocations are likely to interfere with agencies' statutory functions.[15]

## IV. USDA's Mandatory Relocation Plan is Arbitrary and Capricious

It is blackletter administrative law that agencies *must*, among other things, consider all "important aspect[s] of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). And agencies cannot rely on "post hoc rationalizations." *Lotus Vaping Techs., LLC v. FDA*, 73 F.4th 657, 668 (9th Cir. 2023); *see DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23 (2020) ("Considering only contemporaneous explanations for agency action also

---

*Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (relevant surveys should be admitted and disputes over methodology "go to weight, not admissibility").

[15] USDA cites D.C. Circuit cases to contest ultra vires relief. ECF 457 at 17. Ultra vires review is available because "[t]he responsibility of determining the limits of statutory grants of authority ... is a judicial function entrusted to the courts by Congress by the statutes establishing courts and marking their jurisdiction." *Sierra Club*, 963 F.3d at 887, *vacated on other grounds* 142 S. Ct. 46. USDA's own cases recognize ultra vires claims apply "where the agency has 'stepped so plainly beyond the bounds of [its authority], or acted so clearly in defiance of it, as to warrant … intervention[.]'" *Fed. Express Corp. v. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022).

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

instills confidence that the reasons given are not simply convenient litigating positions.") (quotation omitted).  Whether viewed at time the Reorganization Plan was announced, or as of the subsequent congressional notifications, USDA's contemporaneous stated rationales do not support the actions USDA has decided to take.  Nor do USDA's hindsight justifications withstand scrutiny.

### A.　　　The failure to consider the impacts of attrition on agency function is fatal.

USDA now embraces workforce reduction and claims that was the purpose of the Reorganization Plan all along.  ECF 457 at 31 ("USDA has consistently represented, in both its public-facing statements and its internal, deliberative materials, that its reorganization plans include workforce optimization measures, including downsizing.").  At the same time, USDA now also admits that it *has not conducted any analysis* of the impact of workforce attrition on agency functions, and indeed, argues that: "*USDA was not required to assess any impacts of attrition.*" ECF 457 at 32-33 (emphasis in original).  These admissions conclusively establish the failure to consider an "important aspect of the problem." *State Farm,* 463 U.S. at 43.  There can be no real dispute that where an agency reduces many positions held by experienced staff (whether by RIF, forced relocation, or otherwise), the impact of those reductions on the ability to perform statutory functions is an important aspect of the problem.  Indeed, even USDA recognizes this is a relevant consideration, having repeatedly claimed that the Reorganization will *not* cause such impacts.  ECF 457 at 4-5, 27-28; ECF 457-1 ¶¶6, 11.  USDA's admission that no analysis has been done renders those bald assertions of no impacts entirely unsupported.

USDA now provides two purported justifications for its failure to analyze the impact of attrition on agency functions: 1) such an analysis would have been too "speculative" and therefore not "relevant" as of the time of the ARRP; and 2) USDA plans to do this analysis *later*.  ECF 457 at 33.  But the APA requires reasoned analysis to be performed at the time the agency decision is made, not after the fact.  *Regents*, 591 U.S. at 23; *Mt. Diablo Hosp. v. Shalala*, 3 F.3d 1226, 1232 (9th Cir. 1993).  USDA's admission that it had not *yet* conducted any actual analysis of the impact of attrition caused by actions it is taking now is fatal under well-established law.

USDA's argument that it could not analyze the impact on function when creating the Reorganization Plan does not hold up either.  To create the ARRPs, USDA engaged in a detailed

analysis of its workforce "optimization" at the component level, identifying with OMB/OPM targets for workforce reduction. ECF 440-3 pp. 12-14, 24-25.[16] USDA was *planning* for specific staffing cuts at each subagency, including through attrition by relocation. *Id*. p. 25; *see also* Schwartz Decl. Ex. 1 (USDA estimating reorganization would reassign or separate at least 5,000 employees). There is no reason USDA could not have also analyzed the impacts of those cuts on agency functions.[17] Furthermore, USDA received many comments on the Plan raising the impact of attrition on agency functions. ECF 440-1 at 9, 36-39. USDA did not address those comments or alter its Plan in response. *Id.* at 36-39. The failure to respond further demonstrates the failure to consider relevant factors. *Am. Mining Cong. v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992).

Even if USDA were correct that there was no final agency action until USDA provided congressional notifications (which it is not, *infra* at 17-19), USDA certainly had plenty of time to analyze the effect of its actions in the interim. Almost nine months passed during which the Plan was halted due to court and congressional action. But USDA did not take advantage of that time to carefully consider the potential effects of its Plan before acting. "Act now, analyze later" is not permitted by the APA. Counsel's argument that USDA will assess attrition "closer in time to actual relocation" (ECF 457 at 33) appears to be impermissible hindsight argument and is not remotely supported by any evidence of any such analysis being conducted for the MDR letters or other relocation actions USDA has already implemented. USDA's speculation that attrition will be lower than in the past is also backed by no evidence or analysis and is wrong. *Supra* at 13.

**B.    USDA has not cured the pretext problem.**

USDA now argues that it told the public the purpose of its Plan was workforce reduction all along. ECF 457 at 31-32. But USDA cannot refute that it misrepresented its intentions to force

---

[16] *See* ECF 440-3 p. 12 ("USDA benchmarked the present workforce structure against its pre-pandemic workforce levels … and is restructuring its workforce to achieve the optimal structure and level needed to deliver on the President's priorities."), p. 14 ("USDA is assuming at least 15,000 voluntary departures …. USDA does not plan to backfill most of these positions."), p. 24 ("The table below depicts the anticipated reductions by Mission Area and Agency").

[17] The idea that USDA could not predict the number of employees who would not relocate, and the impact of losing them, is not credible. USDA could have *asked the employees.* Once the unions learned of USDA's plans, that is what they did, and many employees confirmed they would not relocate. Even conservative estimates of attrition would permit USDA to evaluate impacts.

attrition via relocation. ECF 440-1 at 3, 5-9. The Secretary publicly claimed that USDA was *not* engaged in large-scale workforce reductions; USDA repeatedly announced "there is a role" for every employee at USDA, and insisted it was a "myth" that it was using relocations to force employees out. ECF 440-3 pp. 252, 262. But forcing employees out is *exactly* what USDA planned. ECF 457 at 31-32. The agency's statements to the contrary, denying the intended effect of actions, were plainly pretextual, and USDA's actions thus violate the APA. ECF 440-1 at 35-37.

### C.      USDA failed to consider reliance interests.

USDA cannot contest that the APA requires an agency to assess reliance interests, *see Regents*, 591 U.S. at 29, and offers no evidence that it actually did so. ECF 457 at 36-38. USDA argues only that "there are no reliance interests here" because, it asserts, federal employees have no legal right to work in any particular location. *Id*. But the Supreme Court rejected that exact reasoning in *Regents*, holding that the government *was* required to consider DACA beneficiaries' reliance interests regardless of whether they had no "legally cognizable" right to the program. 591 U.S. at 30. Whether employees have a legally enforceable right to work at a specific site is not the point; they certainly have valid reliance interests in their positions, salaries, and benefits threatened by USDA's forced relocation. USDA's admission that it did not consider those interests is fatal.

### D.      USDA's other justifications also fall short.

*Hiring to backfill*. USDA now asserts that it intends to hire replacements for some employees who do not relocate. ECF 457 at 34. Not only must the Court ignore this as a post-hoc rationalization, but this explanation does not withstand factual scrutiny: USDA is not hiring to replace everyone who will be forced to leave, particularly with respect to FNA and the Forest Service; USDA is not hiring into the same positions; and USDA is not hiring people with the same experience or qualifications. *Supra* at 5-6. These actions guarantee the loss of relevant expertise, with demonstrable negative effects on the agency's ability to perform statutory functions. *Id.*

*Moving closer to customers*. USDA also justifies its relocation actions by claiming the relocations will "strengthen USDA's presence in key agricultural regions … and locate USDA employees closer to the public they serve." ECF 457 at 30. That justification falls apart for all the reasons explained in Plaintiffs' opening brief, which USDA makes no attempt to refute: FNA is

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

moving staff farther *away* from the states and local governments they currently assist; USFS researchers and employees farther *away* from the forests and communities they study and serve; and FAS staff *away* from the international relations community in the NCR. ECF 440-1 at 36-37.

*Real estate renovation costs.* USDA concedes it did not evaluate the costs of relocating research prior to making the relocation decision. ECF 457 at 35 ("[I]t is entirely reasonable that the agency has not yet analyzed the proposed sites' capacity, facilities, and equipment"). USDA's justification that the decision to decommission BARC is not "final" is specious: USDA announced that decision, informed Congress, and sent MDR letters to employees. ECF 457-2 pp. 18-19; Mitchell Reply Decl. ¶17. USDA now offers a new justification for closing BARC: the cost of renovating the facilities. ECF 457 at 36. But the cost to renovate existing facilities is only one half of the equation; the cost of scattering and rebuilding research capacity at facilities across the country is the other side. USDA again failed to address an important aspect of the problem.[18]

## V.    USDA's Reorganization Plan is Final and Reviewable Action Under the APA

*First*, USDA argues that *all* of the challenged actions remain iterative and pre-decisional, but Plaintiffs do challenge final agency action. Agency action is final if it marks the end of the agency's decisionmaking process and determines rights or obligations or has other legal effects. *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 568 (9th Cir. 2019). As Plaintiffs' opening brief explained, both the Reorganization Plan (as set forth in the ARRP and the July 2025 Memorandum) and the more recent component-level actions implementing that Plan are final agency action. ECF 440-1 at 40-41. This Court has previously recognized that the APA does not require plaintiffs to wait until every last implementing action has been completed before challenging the relevant agency decisions. ECF 124 at 42-43.

USDA's professed confusion as to what its own Reorganization Plan is (ECF 457 at 11) is not well taken: USDA's own documents repeatedly refer to the Plan. ECF 440-3 pp. 11-14, 20-31; ECF 440-3 p. 38 ("Subject: Department of Agriculture Reorganization Plan …. These actions constitute the USDA Department Reorganization Plan."); ECF 457-2 p. 7 (Vaden July 17, 2026

---

[18] USDA invokes renovation costs for other NCR buildings, ECF 457 at 31, but offers no evidence that it considered the contrasting costs of relocating workers in those offices *out of D.C.*

letter to Congress); ECF 457-2 p. 147 (staffing plan). This Reorganization Plan reflects USDA's decision to restructure, consolidate, and reduce agency positions and functions, including, as most relevant for this motion, through closure and relocation of offices, positions, and employees.

The Reorganization Plan itself is final agency action. This Court and the Ninth Circuit already held that approvals of the ARRPs are final agency action. ECF 124 at 42-43; *AFGE v. Trump*, 139 F.4th 1020, 1039 (9th Cir. 2025). The Reorganization Plan, both approved by OMB/OPM's final approval of the ARRP and authorized and directed by the Secretary's Memorandum, was the culmination of the agency's decision-making process with respect to the contents of the Plan. *See* ECF 440-3 p. 38 ("This Secretary Memorandum authorizes and directs the actions necessary to effectuate the consolidation, unification, and optimization of functions within the Department of Agriculture."). Indeed, Deputy Secretary Vaden's July 17, 2026 letter describing the reorganization to Congress effectively admits that Plan is final agency action, confirming that the current actions were "authorized and directed" by the Secretary in that Memorandum. ECF 457-2 p. 6. A few changes or delays during implementation do not make the Plan any less final. *See Sackett v. EPA*, 566 U.S. 120, 127 (2012) (the "possibility that an agency might reconsider … does not suffice to make an otherwise final agency action nonfinal").[19]

Were there any doubt with respect to the finality of the actions authorized in 2025, the more recent USDA decisions to proceed with the component-level implementation of the Plan now are also final agency action. USDA admits that its 2026 congressional notification letters "reflect the most accurate and current reorganization plans" for each component agency. ECF 457-1 ¶26. In those letters, USDA informed Congress of its final decision to move ahead with the agency-specific reorganizations set forth in the letters. USDA "does not suggest it is still in the middle of trying to figure out its position" in those letters. *S.F. Herring Ass'n*, 946 F.3d at 578.

USDA's attempts to portray the Reorganization Plan, and its actions to implement the Plan

---

[19] USDA cites no support for its contention that the Plan is not "equivalent" to a rule for purposes of the APA. 5 U.S.C. §551(13). The Ninth Circuit treated ARRPs as equivalent to a rule. The Memorandum's self-serving statement that it "do[es] not confer any right or benefit … to any party" cannot negate the fact that the Plan *does* impose legal consequences on affected workers and assign obligations to implementing agencies. *See Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000) (rejecting similar *ipse dixit* agency statement).

at component agencies, as not final (ECF 457 at 9-14) are contradicted by the facts.  It is indisputable that USDA is already executing the Plan.  USDA concedes that it is carrying out the component-level reorganizations set forth in the congressional notifications, including by issuing many MDR letters this summer.  ECF 457 at 5 ("Beginning in spring 2026, USDA commenced its phased, component-level implementation of the reorganization."); 457-1 ¶¶26-102, 110-12.  USDA even admits that it began acting on this Plan at least as early as *December 2025*, when it procured office space in Kansas City and Salt Lake City.  *Id.* ¶115(A)-(B).  Although its assertions are overstated, USDA claims to be "*mid-way through*" "*taking steps to implement its plans*" and that the "*reorganization ... is already well under way.*"  ECF 457 at 41, 43 (emphases added).  "[A]n agency engages in 'final' action … when it 'state[s] a definitive position in formal notices, confirm[s] that position orally, and then send[s] officers out into the field to execute on the directive.'"  *S.F. Herring Ass'n*, 946 F.3d at 579.  That is exactly what USDA is doing.  At a minimum, the Reorganization Plan for the components that are implementing it is final.[20]

*Second*, Plaintiffs do not bring an impermissible "programmatic attack," ECF 457 at 9, seeking "general judicial review of [USDA's] day-to-day operations."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 891, 899 (1990).  Plaintiffs' relief does not impose oversight of "continuing (and thus constantly changing) operations" or seek the "systemic improvement" in overall agency functions, as in *Lujan*. 497 U.S. at 890, 894.  Rather, Plaintiffs challenge "specific" and "discrete" agency actions: the Reorganization Plan and implementing actions that relocate offices and staff.  USDA's hyperbole notwithstanding, Plaintiffs are plainly not "asking the Court to turn over management of the entire agency."  ECF 457 at 9.  Plaintiffs seek to preliminarily halt the forced relocations of workers at specific agencies, which is narrowly tailored relief.[21]

----

[20] USDA concedes that Plaintiffs could challenge and vacate "individual implementing actions" that are final.  ECF 457 at 13-14.  But *Bennett v. Spear,* 520 U.S. 154 (1997), and its progeny make clear that Plaintiffs can also challenge the root source of the decision that later actions implement.  Regardless, the letters requiring workers to relocate or resign clearly reflect final agency decisions and actions from which legal consequences flow.  Those final implementing actions therefore can be challenged and preliminarily enjoined as Plaintiffs' relief requests.

[21] Even enjoining the entire Plan would only stop the specific reorganization actions called for by the Plan.  USDA does not cite a single case supporting its contention that programmatic action turns on whether an agency thinks it would be difficult to compile the administrative record.  ECF

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

The Reorganization Plan was created by USDA and is reflected in specific documents, including the ARRP and the Secretary's Memorandum, which set out the blueprint for a specific agency endeavor—restructuring and downsizing the department. *Supra* at 3-4. The fact that the Plan involves many components does not make challenging it improper. *Lujan* recognized that "[i]f there is … some specific order or regulation, applying some particular measure across the board to all individual [agency decisions], … it can of course be challenged under the APA"—even if the challenge will have broad effects. 497 U.S. at 890 n.2; *see id.* at 894 ("such an intervention may ultimately have the effect of requiring … even a whole 'program' to be revised by the agency in order to avoid the unlawful result that the court discerns"). The breadth of the challenge here is directly attributable to the breadth of the actions included in USDA's Reorganization Plan.

Even if a challenge to the Plan were problematic (it is not), USDA's decisions to proceed with implementing the Plan at eight component agencies this summer are certainly discrete and reviewable final agency action. USDA's congressional notifications each focus on an individual component and the specific and circumscribed restructuring and relocation actions to be taken by that component. *See* ECF 457-2 pp. 18, 28, 45, 49, 51, 54, 67; *New York v. Trump*, 133 F.4th 51, 68 (1st Cir. 2025) (nothing in the APA "bars a plaintiff from challenging a number of discrete final agency actions all at once").

*Third*, the Court should reject USDA's cursory attempt to argue that the Reorganization Plan is not reviewable under the exception for action committed to agency discretion. ECF 457 at 16-17. That exception applies to an extremely "narrow" category of truly discretionary action such as the exercise of prosecutorial discretion, *Heckler v. Chaney*, 470 U.S. 821, 838 (1985), or national security determinations. *Webster v. Doe*, 486 U.S. 592 (1988). Those are the rare circumstance where "there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410-11 (1971); *see also Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (§701(a)(2) applies in "rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.") (quotation

---

475 at 10. That is not the test, and there is no reason why USDA could not compile the record from the files of the staff involved in making the Plan and component-level decisions.

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

20

omitted).[22]  But as the Supreme Court explained in *Loper Bright Enters. v. Raimondo*, Congress "often" delegates discretionary authority to agencies, and those discretionary actions *remain reviewable*.  603 U.S. 369, 394–96 (2024).  USDA argues that there is no law to apply here because Congress did not enact a specific statute directing USDA where to locate particular offices, but that is not the proper test.  USDA's actions can be measured against the appropriations statutes, 1953 delegation, and the agencies' myriad authorizing statutes.  As explained in *Loper Bright*: "When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits… By doing so, a court upholds the traditional conception of the judicial function that the APA adopts."  *Id*. at 395-96.

**VI.    USDA Offers No Valid Basis to Revisit Previous Subject Matter Jurisdiction Decisions**

This Court should reject USDA's renewed argument that the Civil Service Reform Act ("CSRA") impliedly precludes Plaintiffs' claims against USDA for the same reasons previously addressed by this Court.  *See* ECF 434 at 8-10; ECF 259 at 10-11.  As previously addressed, authority from this Court and the Ninth Circuit recognizing jurisdiction over these types of claims controls, and USDA is again wrong that the "weight of authority" is in its favor.  ECF 457 at 15.

USDA argues incorrectly that Plaintiffs' claims challenging the implementation of USDA's reorganization somehow present a new posture.  *Id.*  This Court's previous rulings were not, as USDA claims, exclusively addressing government-wide action; this Court has rejected channeling for agency-level claims in this and related cases.  *E.g*., ECF 434 at 8-10; ECF 259 at 10-11; *see also AFGE v. OMB*, No. 25-cv-8302-SI (N.D. Cal.), ECF 94 at 18-20.

USDA also points to its recent bargaining with unions regarding the *effects* of the Reorganization Plan to claim that "Plaintiffs' claims … should be resolved through these statutory

---

[22] *Lincoln v. Vigil* supports Plaintiffs.  ECF 457 at 17.  The Court addressed whether it could review the cancellation of a program paid for "out of annual lump-sum appropriations."  508 U.S. at 192.  The Court employed a long-standing presumption that where "Congress merely appropriates lump-sum amounts without statutorily restricting what can be done with those funds, a clear inference arises that it does not intend to impose legally binding restrictions."  *Id*.  The Court emphasized that the reviewability calculus changes where, *as here*, "Congress ... circumscribe[s] agency discretion to allocate resources by putting restrictions in the operative statutes."  *Id*. at 193.

schemes." ECF 457 at 15. As explained above, I&I bargaining does not permit unions to challenge the fact or legality of the reorganization itself, and accordingly, the Federal Labor Relations Authority ("FLRA") cannot resolve these issues either. *Supra* at 7; *see NTEU*, 414 F.3d at 52–53; *FLRA v. DOJ*, 994 F.2d 868, 872 (D.C. Cir. 1993) ("[A]n agency is not required to bargain with respect to its management rights ... it is required to negotiate about the 'impact and implementation' of those rights"). Unfair labor charges are limited to subjects for which there is a duty to bargain, and grievance and arbitrations provisions are equally limited. 5 U.S.C. §7106(a) (enumerating actions removed from duty to bargain), §§7106(b)(2)-(3) (requiring bargaining over impacts), §7116(a)(5) (limiting unfair labor practice charges to the refusal to bargain in good faith "as required by this chapter"); §§7119-7122 (grievance/arbitration and related review).

Notably, USDA does not argue that the FLRA *could* hear a claim challenging the legality of the underlying agency action here. It simply asserts that the subject matter "relate[s] closely" to "central concerns of the FLRA" and that these "federal labor management claims" are precluded *because* they are brought by a union. ECF 457 at 15-16. Implied preclusion does not turn on subject matter. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 222–24 (2012).[23] As the Supreme Court has repeatedly instructed (and this Court has now analyzed several times), the administrative channeling question asks whether the *claims* at issue are the type of claim that Congress sent to administrative agencies. *E.g.*, *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 185-86 (2023). Plaintiffs' claims are not covered claims, and nothing about the I&I bargaining changes the Court's prior analysis.

**VII.    Plaintiffs Are Facing Irreparable Harm from Mandatory Relocations and Attrition**

Plaintiffs' evidence shows the certain, impending irreparable harm that will happen to Plaintiffs' federal employee members, non-profit Plaintiffs, and local government Plaintiffs as a result of the challenged mandatory relocations at eight component agencies. *See* Apps. 1, 2.

Union Plaintiffs AFSCME and AFGE represent hundreds of employee members within FAS, REE, FPAC, USFS, RD, FNA, OGC, and OASCR who have either already received MDR

---

[23] The case USDA quotes for broader, subject-matter based preclusion is out of circuit and pending en banc review. *See Widakuswara v. Lake*, 2025 WL 1521355 (D.C. Cir. May 28, 2025).

letters to relocate or will receive those letters shortly. *See* App. 2.[24]  Plaintiffs have submitted direct evidence—including declarations and surveys *of the affected members*—showing many of those members cannot relocate and therefore will lose their jobs and longstanding federal careers. *Supra* at 12-13.  This Court and the Ninth Circuit have recognized that the loss of career, income, and healthcare irreparably harms employees and the unions that represent them.  ECF 85 at 37-38; ECF 124 at 44-46 (same); *AFGE*, 139 F.4th at 1040; *see also AFGE v. OMB*, No. 25-cv-08302-SI (N.D. Cal.), ECF 94 at 37-40.  The fact that, here, the loss of employment comes from mandatory relocation and resulting attrition does not change the irreparable nature of the harm.

The imminent harms to non-profit and local government Plaintiffs from degradation of agency services are not "speculative."  ECF 457 at 38.[25]  Plaintiffs submitted evidence showing likely staffing attrition at levels that USDA does not dispute would interfere with agency functions; USDA provides no evidence that attrition will be substantially lower, and its claims of hiring do not withstand scrutiny.  *Supra* at 5.  Plaintiffs further submitted detailed declarations from agency staff and alumni explaining how the loss of experienced staff due to the reorganization will impair their agencies' capabilities.  ECF 440-1 at 13-14, 18-19, 23.  And the non-profit and government Plaintiffs provided declarations specifying how they rely on those agency capabilities.  App. 2.  This specific, evidentiary showing is a far cry from the "highly attenuated chain of possibilities" that the plaintiff advanced in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

USDA fails to engage meaningfully with any of Plaintiffs' evidence.  Instead, USDA seeks to transform two brief Supreme Court stay orders into the breathtaking proposition that "agencies should be free to proceed with restructurings and reorganizations pending litigation (regardless of the potential impacts on consumers of government services)."  ECF 457 at 39.  But the orders say no such thing.  *OPM v. AFGE* contains no reasoning in support of its ruling and concerned vastly different factual circumstances and record than are present here.  145 S. Ct. 1914 (Mem.) (2025). *McMahon v. New York* does not mention harm to plaintiffs at all.  145 S. Ct. 2643 (Mem.) (2025).

Plaintiffs did not delay in seeking relief (indeed, notice to employees and unions of

---

[24] The Alliance and AGU have members employed at REE, NRCS, and USFS.  App. 2.
[25] USDA does not dispute the *types* of asserted harm are irreparable.  *See* ECF 457 at 38-39.

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

23

implementation at FAS, FPAC, and Rural Development came just two weeks prior to the motion). *See* Bradley Reply Decl. ¶¶10-14; Vaughn Reply Decl. ¶¶10-13; Hoekema Reply Decl. ¶¶10-15. Regardless, "delay is but a single factor to consider in evaluating irreparable injury; courts are loath to withhold relief solely on that ground." *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). Any alleged delay here is vastly outweighed by the showing of irreparable harm.

**VIII.    The Balance of Equities Strongly Supports a Preliminary Injunction**

The Reorganization's degradation of agency functions will cause severe public harm, including delaying food assistance for women and children, disrupting crucial research on fire-prevention and food-borne illnesses, and undermining rural utilities and agricultural programs on which farmers rely. ECF 440-1 at 14, 17-19, 23, 25 33, 44; Millner Reply Decl. ¶5.

USDA's assertions of harm are overblown. Plaintiffs' alternative requested relief would not enjoin USDA from closing or renovating NCR buildings, or from hiring or opening new offices in other locations. *Contra* ECF 457 at 41, 43. It would not prevent USDA from divesting from the South Building or require USDA to lease new space in D.C.[26] *Contra* ECF 457 at 41-42. It would only require USDA to allow employees to remain in their current locations.

Most of the real estate actions USDA claims it has taken are not final.[27] Regardless, extra office space for the federal government is common and not irreparable harm, nor are the costs "astronomical," ECF 457 at 41, compared to USDA's budget. ECF 440-3 p. 43; Evers Decl. ¶5, Ex. E. Courts regularly enjoin government decisions where the costs were likely incurred contrary to law. *Quechan Tribe of Fort Yuma Indian Rsrv. v. Dep't of Interior*, 755 F.Supp.2d 1104, 1121 (S.D. Cal. 2010) ("having invested … money is a problem of [government's] own making").

Remarkably, USDA contends that a purported inability to hire would cause "significant operational disruption"— despite insisting that losing staff from relocations will *not* impact agency

---

[26] Because the NCR has capacity for 10,300 USDA employees, and there are currently only 3,965, ECF 457-1 ¶¶17, 19, the Court can enjoin the relocation of employees out of the region without USDA needing to lease new space or retain the South Building.

[27] *See* ECF 457-1 ¶115(C) (*request* to GSA for Kansas City expansion); ¶115(F)-(G) (*request* to GSA for FNA offices); ¶115(I) (*request* to GSA for FSIS renovation); ¶115(J) (*planning* ARS work); ¶115(K) (*negotiations* for space); ¶115(M) (*estimate* to GSA for office); ¶116 (most positions in the hiring *process*); ¶114 (South Building disposal *announced*).

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

functions.  ECF 457 at 43.  But Plaintiffs' requested relief would leave USDA free to hire employees into whatever locations or positions it wishes (and certainly will not impact the 435 APHIS positions USDA identifies).  ECF 457-1 ¶116.  With respect to employees already hired, Plaintiffs' relief would not require separation; and USDA cannot explain why potential harm to a small number of new employees outweighs the harm to the many employees it intends to separate and other harms the Reorganization would wreak.  *See supra* at 22-23.

**IX.     Plaintiffs Request Targeted Relief to Prevent Harm to Plaintiffs**

USDA's objections to the scope of Plaintiffs' relief, ECF 457 at 43-45, do not apply to Plaintiffs' proposed alternative relief, which imposes targeted preliminary relief necessary to prevent current irreparable harm to Plaintiffs and their members: staying and enjoining USDA from closing offices or relocating employees of FNA, FAS, USFS, REE, RD, FPAC, OGC, or OASCR (other than within the NCR).  *See* Rev. Prop. Order.  The union Plaintiffs represent those employees, and the non-profit and local government Plaintiffs will be harmed by disruptions to services at those agencies.  App. 2.  Plaintiffs' request is appropriate because it is necessary to "provide[] complete relief to the parties before the court."  *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1028 (9th Cir. 2025).[28]  This alternative relief also focuses narrowly on the imminent actions that will cause the most irreparable harm to Plaintiffs: the long distance forced relocations that are intended to and will drive massive attrition.  As explained above, this relief would not interfere with any I&I bargaining.  *Supra* at 8.  USDA agrees that if Plaintiffs are likely to succeed on their claim that a particular relocation is unlawful, that relocation can be enjoined.  ECF 457 at 45.  That is what Plaintiffs have shown, and that is the relief Plaintiffs request.[29]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion.[30]

---

[28] *Trump v. CASA* declined to address the proper scope of APA relief, 606 U.S. 831, 846 n.10 (2025), but the complete-relief principle nonetheless supports the relief Plaintiffs request.

[29] USDA does not dispute Plaintiffs seek a prohibitory injunction maintaining the status quo.

[30] Plaintiffs oppose a stay or bond.  USDA's actions are unlawful and this case implicates significant public interest.  *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

DATED: August 7, 2026

Respectfully submitted,

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Corinne F. Johnson
Robin S. Tholin
Elizabeth Eshleman
Jessica M. Levy
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com

By: */s/ Corinne F. Johnson*

*Attorneys for All Union and Non-Profit Organization Plaintiffs*

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
Andrea Matthews (pro hac vice)
Gregory M. Cumming (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org
amatthews@democracyforward.org
gcumming@democracyforward.org

By: */s/ Gregory M. Cumming*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

Jules Torti (pro hac vice)
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

26

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti*

*Attorneys for All Union and Non-Profit Organization
Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization
Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiffs American Federation of
Government Employees, AFL-CIO (AFGE) and AFGE
locals*

Teague Paterson (SBN 226659)
Matthew Blumin  (pro hac vice)
AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES, AFL-CIO

1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/ Teague Paterson*_____

*Attorneys for Plaintiff American Federation of State
County and Municipal Employees, AFL-CIO
(AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL
UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*_____

*Attorneys for Plaintiff Service Employees
International Union, AFL-CIO (SEIU)*

Simi Bhat
Katherine K. Desormeau
Gavin G. McCabe
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter St Fl 21,
San Francisco, CA 94104
Tel: (415) 875-6100
sbhat@nrdc.org
kdesormeau@nrdc.org
gmccabe@nrdc.org

By: */s/ Gavin G. McCabe*_____

*Attorneys for Plaintiff Natural Resources Defense
Council*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)

Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By:  */s/ David Chiu*

*Attorneys for Plaintiff City and County of San
Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By:  */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

Christopher Sanders (pro hac vice)
General Counsel
Erin King-Clancy (SBN 249197)
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
chrsanders@kingcounty.gov
eclancy@kingcounty.gov

By: */s/ Erin King-Clancy*

PLFS. REPLY ISO MOT. FOR PRELIM. INJUNCTION RE: USDA, No. 3:25-cv-03698-SI

29

*Attorneys for Plaintiff Martin Luther King, Jr. County*

Sharanya Mohan (SBN 350675)
Eliana Greenberg (SBN 366319)
Toby Merrill (pro hac vice)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
eliana@publicrightsproject.org
toby@publicrightsproject.org

By: */s/ Eliana Greenberg*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL,*
*Harris County, TX, Martin Luther King, Jr. County,*
*WA*

ABBIE KAMIN
Harris County Attorney
NEAL SARKAR
First Assistant County Attorney
SARAH J. UTLEY
Managing Counsel,
Affirmative and Special Litigation and Environmental
BETHANY DWYER
Deputy Division Director, Environmental
R. CHAN TYSOR (pro hac vice)
Senior Assistant County Attorney
Environmental Division
1010 Lamar, 11th Floor
Houston, Texas 77002
Tel: (713) 274 - 5150
chan.tysor@harriscountytx.gov

By: */s/ R. Chan Tysor*

*Attorneys for Plaintiff Harris County, Texas*

Ebony M. Thompson
Baltimore City Solicitor
Christopher Sousa (SBN 264874)
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (443) 610-8859
christopher.sousa@baltimorecity.gov

By: */s/ Christopher Sousa*

*Attorneys for Plaintiff City of Baltimore*

**Appendix 1: Challenged Actions and Implementation Dates**

Plaintiffs provide the following summary of the current information in the evidentiary record regarding USDA's actions implementing the Reorganization Plan via mandatory relocations and the relevant deadlines (as known to Plaintiffs as of the filing of Plaintiffs' Reply Brief in Support of Motion for Preliminary Injunction Re: USDA on August 7, 2026). This summary excludes office moves within the National Capital Region.

| USDA Component | Congressional Notification | Planned Relocations | Dates and Deadlines |
|---|---|---|---|
| **1. Food and Nutrition Administration (FNA)** | April 30, 2026<br><br><br><br><br><br><br><br><br><br>*Record Evidence:* ECF 457-1 ¶81 | **Closing** all Regional Offices (Northeast, Mid-Atlantic, Southeast, Midwest, Mountain Plains, Southwest, and Western)<br><br>**Relocating** Regional Office staff to one of five hub offices (Kansas City, Indianapolis, Raleigh, Denver, Dallas)<br><br>**Relocating** certain NCR staff to a hub city<br><br>**Relocating** Retail Operations and Compliance (ROC) staff to new Atlanta, Los Angeles, Dallas, or New York City program offices<br><br><br><br>*Record Evidence:* ECF 457-1 ¶¶81-88; ECF 440-9 ¶8; ECF 440-32 ¶9, ECF 440-38 ¶¶11-12; ECF 440-41; Rosenthal Reply Decl. ¶¶15 | **MDR\* Letters:** Forthcoming (no individual letters yet sent as of Aug. 7, 2026)<br><br>**Employee Acceptance/Relocation Deadlines:** TBD<br><br>**\*Management Directed Reassignment** letters refer to letters to individual employees (official personnel actions with reassignment locations)<br><br><br><br>*Record Evidence:* Mei Reply Decl. ¶11 |

| USDA Component | Congressional Notification | Planned Relocations | Dates and Deadlines |
|---|---|---|---|
| **2. Research, Education, and Economics (REE)** | April 23, 2026 (all REE)<br><br>ECF 457-1 ¶79 | | |
| a. Agricultural Research Service (ARS), including Beltsville Agricultural Research Center (BARC) | | **Closing** BARC<br><br>**Relocating** BARC research and employees to many locations around the country<br><br>**Closing** ARS area offices and consolidating into four new offices in Fort Collins, Stoneville, Peoria, and Albany<br><br>ECF 457-1 ¶79(B); ECF 440-8 ¶¶14-16; Mitchell Reply Decl. ¶¶16-17 | **MDR Letters:** Sent to BARC employees on June 8, 16, and 29, 2026<br><br>**Employee Acceptance Deadlines:** July 8, 17, 29, 2026<br><br>**Employee Relocation Deadlines:** Sept. 21 and Oct. 5, 2026<br><br>ECF 457-1 ¶110(B); ECF 440-8 ¶¶20-21; ECF 440-36 ¶¶13-14; ECF 440-39 ¶13; Mitchell Reply Decl. ¶¶17 |
| b. Economic Research Service (ERS) | | **Relocating** most ERS staff not already located in Kansas City to Kansas City | **MDR letters**: Sent to employees on June 8 and 29, 2026<br><br>**Employee Acceptance Deadlines:** July 8 and 29, 2026<br><br>**Employee Relocation Deadlines:** Sept. 21 and Oct. 5, 2026 |

| USDA Component | Congressional Notification | Planned Relocations | Dates and Deadlines |
|---|---|---|---|
| | | ECF 457-1 ¶79(C); ECF 440-5 ¶¶7-8 | ECF 457-1 ¶110(B); ECF 440-5 ¶¶10-13 |
| c. National Institute of Food and Agriculture (NIFA) | | **Relocating** almost all NIFA staff not already located in Kansas City to Kansas City.<br><br><br><br><br><br><br><br><br>ECF 457-1 ¶79(E); ECF 440-10 ¶¶11-14 | **MDR letters:** Sent to employees on June 8, 16, 29 and July 1, 2026<br><br>**Employee Acceptance Deadlines:** July 8, 17, 29, and 31, 2026<br><br>**Employee Relocation Deadlines:** Sept. 21 and Oct. 5, 2026<br><br>ECF 457-1 ¶110(B); ECF 440-10 ¶¶8-9, 15 |
| d. National Agricultural Statistics Service (NASS) | | **Relocating** NASS staff to the National Operations Center in St. Louis, or two new units in Georgia and Colorado<br><br><br><br><br><br><br><br><br><br>ECF 457-1 ¶79(D) | **MDR letters:** Sent to employees on June 8, 2026<br><br>**Employee Acceptance Deadlines:** July 8, 2026<br><br>**Employee Relocation Deadlines: Sept. 21, 2026**<br><br><br><br>ECF 457-1 ¶110(B); Evers Decl. Ex. F |

3a

| USDA Component | Congressional Notification | Planned Relocations | Dates and Deadlines |
|---|---|---|---|
| **3. Forest Service (USFS)** | "Oral" notification to congressional staff on March 31 and April 2, 2026 | **Relocating** headquarters staff from NCR to Salt Lake City<br><br>**Closing** all 9 Regional Offices and replacing them with smaller state offices and "operations service centers"<br><br>**Relocating** Regional Office staff, including in at least Regions 6, 8, and 9, to new offices and centers<br><br>**Closing** up to 57 Research offices<br><br>**Relocating** Research staff to new headquarters in Fort Collins, CO | **Initial employee notification of impact of relocation on position:** March 31, 2026<br><br>**MDR letters:**<br>• Sent to some NCR non-bargaining unit employees in July 2026<br>• Forthcoming to bargaining unit employees (no individual letters yet sent as of Aug. 7, 2026)<br><br>**Employee Acceptance Deadlines:**<br>• 10 days after receive MDR outside commuting area; 3 days after receive MDR within commuting area<br><br>**Employee Relocation Deadlines:**<br>• Non-bargaining unit employees (outside commuting area): rolling starting late September<br>• Bargaining unit employees: at least 60 days after MDR<br><br>**Additional agency statements on timing:**<br>• Some non-bargaining unit employees to be sent MDR letters |

| USDA Component | Congressional Notification | Planned Relocations | Dates and Deadlines |
|---|---|---|---|
| | | | July 20, 2026 through Aug. 20, 2026<br>• Additional MDRs to be sent to bargaining and non-bargaining unit employees September 2026<br>• Employees who accept VERA/VSIP will be off-boarded by October 30, 2026 |
| | ECF 457-1 ¶89 | ECF 457-1 ¶¶94-96; ECF 440-33 ¶¶18-21; Kotyk Reply Decl. ¶¶6-7 | ECF 440-33 ¶¶14-18; Kotyk Reply Decl. ¶¶23-25 |
| **4. Foreign Agricultural Service (FAS)** | June 17, 2026 | **Relocating** "program support workforce" from NCR to Kansas City | **Initial employee notification of impact of relocation on position:** July 17, 2026<br><br>**MDR Letters:** Forthcoming (no individual letters yet sent as of Aug. 7, 2026)<br><br>**Employee Acceptance/Relocation Deadlines:** TBD<br><br>**Additional agency statements on timing:** MDR notices issuing Aug. 31, 2026 |
| | ECF 457-1 ¶28 | ECF 457-1 ¶¶29-33; ECF 440-4 ¶¶16-18; Bradley Reply Decl. ¶¶ 20, 26, 57 & Ex. A | Bradley Reply Decl. ¶¶25, 30, 57 & Ex. A |

5a

| USDA Component | Congressional Notification | Planned Relocations | Dates and Deadlines |
|---|---|---|---|
| **5. Rural Development (RD)** | June 17, 2026 | **Relocating** Rural Business and Cooperative Service employees from NCR to Dallas/Fort Worth<br><br>**Relocating** Rural Housing Service employees from NCR to St. Louis<br><br>**Relocating** Rural Utilities Service employees from NCR to Dallas/Fort Worth<br><br>**Relocating** staff, including at the Risk Office, Office of External Affairs, and Innovation Center, to St. Louis and Dallas/Fort Worth | **Initial employee notification of impact of relocation on position:** on or around June 17, 2026<br><br>**MDR Letters:** Forthcoming (no individual letters yet sent as of Aug. 7, 2026)<br><br>**Employee Acceptance/Relocation Deadlines:** TBD |
| | ECF 457-1 ¶49 | ECF 457-1 ¶¶49-59; ECF 440-11 ¶¶15, 17, 20-21; ECF 440-7 ¶¶14-15; Vaughn Reply Decl. ¶¶14-15 | ECF 440-7 ¶14-15; ECF 440-11 ¶17; Vaughn Reply Decl. ¶¶14-15, 18 |
| **6. Farm Production and Conservation (FPAC)** | June 17, 2026 | **Relocating** Natural Resources Conservation Service (NRCS) staff from NCR to Fort Collins, Indianapolis, Raleigh, Lincoln, and Fort Worth<br><br>**Relocating** FPAC civil rights office staff to Raleigh and Fort Collins | **Initial employee notification of impact of relocation on position:** July 10 and 15, 2026<br><br>**MDR Letters:** Forthcoming (no individual letters yet sent as of Aug. 7, 2026) |

| USDA Component | Congressional Notification | Planned Relocations | Dates and Deadlines |
|---|---|---|---|
| | | **Relocating** FPAC Business Center in D.C. to hubs in Raleigh, Kansas City, Indianapolis, Fort Collins, and Salt Lake City | **Employee Acceptance/Relocation Deadlines:** TBD<br><br>**Additional agency statements on timing:** FPAC Business Center employees accepting voluntary relocations must move by September 1, 2027 |
| | ECF 457-1 ¶35 | ECF 457-1 ¶35, ECF 440-6 ¶18-20; ECF 440-7 ¶17 | Hoekema Reply Decl. ¶¶18-19, 22-23 |
| **7. Office of the Assistant Secretary for Civil Rights (OASCR)** | June 17, 2026 | **Relocating** OASCR staff to new hubs in Raleigh and Fort Collins | **Initial employee notification of impact of relocation on position:** on or around June 16, 2026 and Aug. 4, 2026<br><br>**MDR Letters:** Forthcoming (no individual letters yet sent as of Aug. 7, 2026)<br><br>**Employee Acceptance/Relocation Deadlines:** TBD |
| | ECF 457-1 ¶61 | ECF 457-1 ¶¶67-68; ECF 440-7 ¶18 | Mitchell Reply Decl. ¶¶22 |
| **8. Office of the General Counsel (OGC)** | April 30, 2026 | **Closing** OGC offices in Albuquerque, Portland, San Francisco, Temple, and Little Rock | **MDR Letters:** Some individual letters sent June 15, 2026 |

7a

| USDA Component | Congressional Notification | Planned Relocations | Dates and Deadlines |
|---|---|---|---|
| | | **Relocating** OGC staff from those offices to a new office in Davis, CA or to Kansas City | **Employee Acceptance Deadlines:** July 24, 2026<br><br>**Employee Relocation Deadlines:** Not specified |
| | ECF 457-1 ¶ 80 | ECF 457-1 ¶80(C); ECF 440-7 ¶22 | ECF 457-1 ¶110(C) |

8a

**Appendix 2: Plaintiffs' Evidence of Harm**

| USDA Component | Declarations |
|---|---|
| **1. Food and Nutrition Administration (FNA)** | Salvatore Decl. (ECF 440-9) ¶¶10-11, 18, 23-24 (AFGE)<br>Machell Decl. (ECF 440-24) ¶¶27-53 (National WIC Alliance)<br>Brown Decl. (ECF 440-26) ¶¶10-15 (Harris County)<br>Leach Decl. (ECF 440-28) ¶¶16-24 (Baltimore)<br>Rubardt Decl. (ECF 440-29) ¶¶9-10, 21 (King County)<br>Williams Decl. (ECF 440-30) ¶15 (Santa Clara County) |
| **2. Research, Education, and Economics (REE):**<br><br>a. Agricultural Research Service (ARS), including Beltsville Agricultural Research Center (BARC) | Mitchell Decl. (ECF 440-8) ¶¶22-23, 33 (AFGE)<br>Cudahy Decl. (ECF 440-22) ¶¶8-11 (Alliance)<br>Funkhouser Decl. (ECF 440-12) ¶¶13-14 (NRDC)<br>Rath Decl. (ECF 440-17) ¶¶3, 8-10 (NRDC)<br>Shultz Decl. (ECF 440-18) ¶¶6-7, 11-12 (AGU)<br>Fair Decl. (ECF 440-23) ¶5, 7-17 (Prince George's County)<br>Leach Decl. (ECF 440-28) ¶39 (Baltimore)<br>Moki Decl. (ECF 440-25) ¶¶4-5, 8-14 (Prince George's County)<br>Rubardt Decl. (ECF 440-29) ¶¶13, 19, 21 (King County)<br>Williams Decl. (ECF 440-30) ¶12-13 (Santa Clara County) |
| b. Economic Research Service (ERS) | Dodson Decl. (ECF 440-5) ¶¶14-15, 31, 40-41 (AFGE)<br>Rath Decl. (ECF 440-17) ¶12 (NRDC)<br>Leach Decl. (ECF 440-28) ¶40 (Baltimore)<br>Rubardt Decl. (ECF 440-29) ¶¶14, 19, 21 (King County)<br>Dodson Reply Decl. ¶¶15-16 (AFGE) |
| c. National Institute of Food and Agriculture (NIFA) | Soriano Decl. (ECF 440-10) ¶¶16-18, 24-25 (AFGE)<br>Cudahy Decl. (ECF 440-22) ¶¶8-9 (Alliance)<br>Shultz Decl. (ECF 440-18) ¶¶6-7, 12 (AGU)<br>Rubardt Decl. (ECF 440-29) ¶¶11, 15, 19, 21 (King County) |
| d. National Agricultural Statistics Service (NASS) | Rath Decl. (ECF 440-17) ¶13 (NRDC) |

9a

| USDA Component | Declarations |
|---|---|
| **3. Forest Service (USFS)** | Cudahy Decl. (ECF 440-22) ¶8 (Alliance)<br>Iverson Decl. (ECF 440-13) ¶¶15-17 (Western Watersheds)<br>Lovitt Decl. (ECF 440-14) ¶¶8, 11, 15 (NRDC)<br>Molvar Decl. (ECF 440-15) ¶¶6-7, 9-28 (Western Watersheds)<br>Neubacher Decl. (ECF 440-16) ¶¶5-6, 9, 11-12, 21-26 (Coalition)<br>Shultz Decl. (ECF 440-18) ¶¶6-10, 12 (AGU)<br>Trujillo Decl. (ECF 440-19) ¶7 (NRDC)<br>Weatherly Decl. (ECF 440-20) ¶¶3, 8, 11 (NRDC)<br>Woodard Decl. (ECF 440-21) ¶¶24-25, 33-34 (NRDC)<br>Crispen Decl. (ECF 440-27) ¶¶2-3 (San Francisco)<br>Leach Decl. (ECF 440-28) ¶¶30, 32-33, 37-38 (Baltimore)<br>Rubardt Decl. (ECF 440-29) ¶¶16-18 (King County)<br>Williams Decl. (ECF 440-30) ¶¶4-10 (Santa Clara County) |
| **4. Foreign Agricultural Service (FAS)** | Bradley Decl. (ECF 440-4) ¶¶26-29, 31-36, 42 (AFSCME)<br>Cudahy Decl. (ECF 440-22) ¶10 (Alliance)<br>Bocian Decl. ¶¶14-23 (AFSCME)<br>Bradley Reply Decl. ¶¶44-49, 54, 56-59 (AFSCME) |
| **5. Rural Development (RD)** | Kelley Decl. (ECF 440-7) ¶¶15-16, 24-27 (AFGE)<br>Vaughn Decl. (ECF 440-11) ¶¶17-25, 29-30 (AFSCME)<br>Vaughn Reply Decl. ¶¶22-26, 28-32, 36-37 (AFSCME) |
| **6. Farm Production and Conservation (FPAC)** | Kelley Decl. (ECF 440-7) ¶¶17, 24-27 (AFGE)<br>Hoekema Decl. (ECF 440-6) ¶¶24-26, 28 (AFSCME)<br>Cudahy Decl. (ECF 440-22) ¶¶8-10, 12 (Alliance)<br>Shultz Decl. (ECF 440-18) ¶¶6-9, 12 (AGU)<br>Rubardt Decl. (ECF 440-29) ¶16 (King County)<br>Hoekema Reply Decl. ¶¶25-26 (AFSCME) |
| **7. Office of the Assistant Secretary for Civil Rights (OASCR)** | Kelley Decl. (ECF 440-7) ¶¶18-20, 24-27 (AFGE)<br>Mitchell Reply Decl. ¶22 (AFGE) |
| **8. Office of the General Counsel (OGC)** | Kelley Decl. (ECF 440-7) ¶¶21-27 (AFGE) |

10a