Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
dleonard@altber.com
bchishom@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*
[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | **DECLARATION OF TOM BEWICK** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

Docusign Envelope ID: 390B954B-FA73-8FBB-318C9833C925F8765

# DECLARATION OF TOM BEWICK

I, Tom Bewick, declare as follows:

1.      I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2.      I am a National Program Leader at the U.S. Department of Agriculture's ("USDA") National Institute of Food and Agriculture ("NIFA").  NIFA is the USDA agency responsible for administering almost all federally funded agricultural research, which includes more than 70 grant programs. NIFA directs federal funding to scientific work that meets the needs of farmers, ranchers, the forestry sector, and consumers. This includes not only research related to agricultural production but also related to nutrition and food safety.

3.      In my National Program Leader role, I manage a portfolio of competitive grant programs and also conduct non-competitive grant review and approval. I have worked at NIFA since August 8, 2000.

4.      I am also the Unit Vice President of American Federation of Government Employees ("AFGE") Local 3403, the union that represents NIFA employees. I have served in this position since 2019.

5.      Local 3403 represents employees at NIFA as well as employees at other USDA programs including the USDA Economic Research Service ("ERS"); each represented program has its own Unit Vice President in Local 3403. Local 3403 is the only union representing NIFA employees. As a result of my work at USDA and role at AFGE, I am very familiar with the functions performed by NIFA and the structure of this agency.

6.      On April 23, 2026, Local 3403 received a Bargaining Notice from USDA regarding NIFA that offered Impact and Implementation ("I&I") bargaining only.  Specifically, that Notice said:

> Management acknowledges that the proposed reorganization and duty station changes constitute a change in conditions of employment requiring Impact and Implementation (I&I) bargaining under Article 38 Mid-term bargaining. Consistent with the CBA, Management anticipates negotiations over:
>
> Procedures:

1

BEWICK DECLARATION, CASE NO. 3:25-CV-03698-SI

- Timeline and phasing of duty station changes
- Notification process and content of individual employee reassignment letters

Appropriate Arrangements:

- Reasonable reporting timelines and relocation periods
- Work schedule impacts
- Employee Assistance Program support

7. This was the same notice received by Local 3403 with respect to ERS. During negotiations, I was co-chief negotiator for Local 3403 along with Laura Dodson, Local 3403's Unit Vice President for ERS.

8. USDA only allowed the union to bargain over the impacts and implementation of the reorganization, not the fact or legality of the reorganization itself. USDA did not invite or permit bargaining regarding the decisions to relocate NIFA employees, or where employees or positions would be relocated.

9. Local 3403 would not have engaged in bargaining over the effects of the reorganization if the reorganization was not happening. USDA made clear that the reorganization was proceeding whether the union bargained or not. We bargained only to try to protect our members who are being relocated as much as possible from the harms that would be caused by the reorganization and relocation process. If the reorganization is enjoined by the court, that will not harm the union or interfere with the Union's interests in the MOU. The interests of the Union and its members are best preserved if the Reorganization itself is paused or stopped.

10. The current deadline for most members to report to Kansas City is October 5, 2026, meaning that NIFA employees have until October 3 to decline the relocation. All NIFA bargaining unit employees ("BUE's") have received Mandatory Directed Reassignment letters from USDA other than those already based in Kansas City and five BUE's whose positions are remaining in the Washington, D.C. area.

11. The vast majority of NIFA staff do not want to move. At least 70% of current staff were hired to remote positions after the 2019 move. Many specifically applied to the job because it was remote and they have obligations, such as operating ranches or caring for sick family members, that do not allow them to move for an in-person job. Other staff are veterans who rely

on care at Veterans Affairs hospitals that would be difficult to transfer. Some are unable to move due to court orders.

12. The survey sent by Local 3403 to NIFA members after the reorganization was announced illustrates how few want to move. In response to the question: "Management's stated goal is to have everyone report to KC by the end of August, 2026. If the Union could negotiate report date flexibility, would you be willing able to move to KC?" 54% responded no, 32% maybe, and 14% yes. In response to the question: "If the Union could negotiate a retention bonus of 1/12 of your annual salary, would you be willing/able to move to KC?" 54% responded no, 29% maybe, and 17% yes. Both questions received 100 responses.

13. The number of members who have so far accepted the relocation likely does not accurately indicate how many members will actually relocate. Workers were required to accept relocation before being allowed to apply for a reasonable accommodation or recognition of a hardship that would allow them to *avoid* being relocated. According to the MOU, employees who apply for these accommodations will be given 60 days after the final disposition of their application before being required to relocate, meaning that, depending on how long the applications take to process, many employees could have report dates later than October 5.

14. NIFA appears to be aware that the relocation is likely to cause a mass exodus of experienced staff because they have recently implemented new systems to attempt to preserve institutional knowledge. For example, they are requiring documentation of procedures such as the steps necessary to run particular grant programs. Such documentation was never previously required.

15. This documentation cannot substitute for the years of experience necessary to manage NIFA grant programs. For example, I have spent 10 years building personal relationships with people in the industries related to some of the grant programs I work on. That experience cannot be easily replaced.

16. Though the time necessary to train new hires varies by person, in my experience it often takes new hires at least three to four years before they are able to run a grant program

3

BEWICK DECLARATION, CASE NO. 3:25-CV-03698-SI

Docusign Envelope ID: 380B954B3-A73-8FBB-818C-283C925F8F6F

independently. Many of the employees hired in 2020 (to address the attrition from forced relocations in 2019) are just beginning to hit their stride.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed __August 7__, 2026, in __King George__, __Virginia__.

Signed by:

*Tom Bewick*
8FD05A83049E482...

Tom Bewick

---

4

BEWICK DECLARATION, CASE NO. 3:25-CV-03698-SI