Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
dleonard@altber.com
bchishom@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*
[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | **REPLY DECLARATION OF LAURA DODSON** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

## REPLY DECLARATION OF LAURA DODSON

I, Laura Dodson, declare as follows:

1. I am over 18 years old and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. This declaration supplements the prior declaration that I submitted in support of Plaintiffs' Motion for Preliminary Injunction regarding the U.S. Department of Agriculture ("USDA")'s Reorganization Plan.

3. I am an Agricultural Economist at the Economic Research Service ("ERS"), which is an agency within USDA. ERS is USDA's principal social science research agency.

4. I also serve as the Vice President of the American Federation of Government Employees Local 3403 ("AFGE Local 3403" or the "Union"). I served as the Co-Chief Negotiator in the bargaining between the Department and the Union about the effects of the USDA Reorganization on the bargaining unit members at ERS and NIFA.

5. On April 23, 2026, the Union received a Bargaining Notice from USDA regarding ERS that offered Impact and Implementation ("I&I") bargaining only. Specifically, that Notice said:

> Management acknowledges that the proposed reorganization and duty station changes constitute a change in conditions of employment requiring Impact and Implementation (I&I) bargaining under Article 38 Mid-term bargaining. Consistent with the CBA, Management anticipates negotiations over:
>
> Procedures:
>
> - Timeline and phasing of duty station changes
> - Notification process and content of individual employee reassignment letters
>
> Appropriate Arrangements:
>
> - Reasonable reporting timelines and relocation periods
> - Work schedule impacts
> - Employee Assistance Program support

6. USDA did not invite or permit bargaining regarding the Reorganization, the decisions to relocate ERA employees, or where employees or positions would be relocated. The

1

bargaining between the Union and the Department was expressly limited to narrow pieces of the implementation of the Reorganization as applied to bargaining unit members.

7. The Union's negotiating team was explicitly told by the Department's representatives that the Department would carry out the Reorganization regardless of whether the Union bargained over the effects of the Reorganization, and that if the Union did not complete bargaining as quickly as the Department wanted, the Department would go around the Union and implement the Reorganization without reaching any agreement with the Union over implementation and impacts. The Union only bargained because it had no choice on whether the Reorganization would happen.

8. During the negotiations, the Union's negotiating team was often told that the Department would not bargain over certain parts of these topics pertaining to the implementation of the Reorganization, further narrowing the permitted scope. For example, the Union was not able to bargain over the process by which USDA would evaluate hardship requests for extensions on reporting dates, whether there could be phased changes (e.g., to protect those who were retirement eligible within the year), the timing of VERA/VSIP offers, or the content of reassignment letters themselves.

9. I am aware that the Defendants in this case are claiming that halting the Reorganization will negatively impact the unions and members of unions who have completed bargaining agreements by purportedly jeopardizing the Department's ability to comply with their terms. That is incorrect for the Memorandum of Understanding that AFGE 3403 signed for ERS and NIFA.

10. The Union would not be adversely affected by the Court's issuance of a preliminary injunction that stopped the Reorganization, or at least stopped the required relocation of ERS and NIFA employees to Kansas City. The Union only negotiated and signed a Memorandum of Understanding about the effects of how the Reorganization would be implemented because the Union was expressly told the Reorganization would occur no matter what.

11. If the Reorganization was enjoined, that injunction would not interfere with the Union's interests in the MOU. As detailed in my prior declaration, the interests of the Union and its members are best preserved if the Reorganization itself is paused or stopped.

12. Moreover, the timeline for MDRs set forth in the MOU would be workable around any preliminary injunction. The timeline is set forth in terms of thirty or sixty days (to decide by, to report by) rather than by dates certain, which means that the deadlines can easily be paused, and if needed, later resumed, without problem.

13. I am further aware that Defendants claim that the ERS rates of attrition in moving to Kansas City will be lower than the Union predicts, and was evidenced by the 2019 Kansas City relocation, because of the job market in the D.C. area. This ignores that the Reorganization is requiring 44 ERS employees who are currently not residing in the D.C. area to move.

14. These assertions by USDA also appear to be based on news articles from January 2025 that no longer accurately describe the D.C. area job market. Other government agencies have ended their hiring freezes and started to rehire during 2026, and I know multiple people who have been recently hired by the federal government and many others who are actively interviewing for non-USDA government jobs in the D.C. area.

15. Based on my conversations with individuals in the bargaining unit and based on the survey responses the Union received, I am aware of many employees who were directed to relocate, but who will not be able to move based on personal factors (e.g., family care responsibilities, spouse's employment, access to specialized medical care) that do not depend on the job market conditions. The D.C. area is also a significantly larger job market than Kansas City, so I know of many employees who are unwilling to move to Kansas City because even if they keep their job, it would mean their partner would have to leave their job and would likely have more difficulty finding new employment in Kansas City than the ERS or NIFA employee would have finding new employment in the D.C. area.

16. The Union's survey, which I discussed in my prior declaration, asked employees: "If you were issued a directed reassignment letter requiring you to relocate, what would you most likely do?" The response options were: "Leave federal service (resign)," "Seek a transfer to

REPLY DECLARATION OF LAURA DODSON, NO. 3:25-CV-03698-SI

another federal agency," "Apply for a Voluntary Early Retirement (VERA) or separation incentive (VSIP) if offered," "Unsure — I am still weighing my options," "Relocate," and "I am already located in the hub city for my work area and would not need to relocate."  After removing responses from the employees who were already in the hub city, 6% answered "Relocate," 25% answered "Unsure — I am still weighing my options," and 69% responded that they would leave their ERS job, answering that they would "Leave federal service (resign)," "Seek a transfer to another federal agency," or "Apply for a Voluntary Early Retirement (VERA) or separation incentive (VSIP) if offered."

17.    I am also aware that the Department is claiming to have hired employees to start in the new hubs without specifying where or which subagencies there have been new hires.  I am not aware of anyone who has already been hired to start at ERS in Kansas City.  As of this week (the week of August 3, 2026), ERS added new job postings for Kansas City.  Prior to that, there was one job publicly posted for an ERS position in Kansas City, but that job posting expired and had to be reposted because ERS did not make offers to anyone when it was first posted.  The fact that ERS failed to find a qualified applicant to whom it wanted to make an offer for that posting reinforces the Union's concerns, as outlined in my prior declaration, that the forced relocations will cause severe harm to the agency with the attrition of the majority of employees required to move, the resulting loss of substantial expertise and institutional knowledge, and a very limited ability to counter that loss.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed August 7, 2026, in Bangor, Maine.

_____
Laura Dodson

REPLY DECLARATION OF LAURA DODSON, NO. 3:25-CV-03698-SI