Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **REPLY DECLARATION OF CHEARICE VAUGHN** |

Reply Declaration of Chearice Vaughn, No. 3:25-cv-03698-SI

**REPLY DECLARATION OF CHEARICE VAUGHN**

I, Chearice Vaughn, declare the following under penalties of perjury:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. This declaration supplements the declaration that I previously submitted in support of Plaintiffs' Motion for Preliminary Injunction with respect to the United States Department of Agriculture ("USDA") Reorganization Plan.

3. I am the President and a dues paying member of Local 3870 of the American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME Local 3870" or "the Union"), which represents employees at the USDA Rural Utilities Service; Rural Business Cooperative Service; Office of External Affairs; Office of the Chief Risk Officer (or the "Risk Office"); and Innovation Center. Each of these divisions is within the USDA's Rural Development mission area. I refer to these employing agencies throughout this declaration as "the Agency."

4. Both before and since becoming Union President I have been employed by USDA at the Rural Utilities Service as a Financial and Business Loan Specialist with the Rural Utilities Service's Telecommunications Program. I have been in this role for over thirty years.  For this entire time, I have lived and worked in the National Capital Region (NCR).

5. AFSCME Local 3870 and the Agency are parties to a collective bargaining agreement (CBA) that memorializes negotiated terms and conditions of employment, benefits, rules, a grievance procedure and other procedures of the workplace. The current CBA became effective on May 1, 2024, and will remain in effect until May 1, 2028.

6. Article 10 of the CBA is entitled "Reassignments and Details." This Article requires the Agency to provide as much notice as possible to employees who are reassigned to a new position or new duty station, with at least 30 days for directed reassignments out of an individual's commuting area. Article 29 of the CBA is entitled "Reorganizations." This article requires the Agency to provide official notice of reorganizations to the Union and provide the opportunity to negotiate over the impacts of a reorganization decision. Article 20 is entitled "Mid-Term and Impact and Implementation Bargaining." This Article provides that the Union may request to engage in Impact and Implementation

("I&I") bargaining over changes to the conditions of employment.

7. Under both federal law and this CBA, I&I bargaining does not permit the Union to challenge either the fact or legality of an underlying management action. Instead, the CBA requires notification of that action, and then the Union can bargain regarding the effects on bargaining unit employees. The Union's rights to bring issues pertaining to I&I bargaining before the Federal Labor Relations Authority ("FLRA"), either through an unfair labor practice charge or grievance and arbitration procedures, are all circumscribed by the subjects of bargaining.

8. On July 24, 2025, Secretary of Agriculture Brook Rollins issued Secretary Memorandum 1078-015 entitled "Department of Agriculture Reorganization Plan," (herein "Reorganization Memo"). The Reorganization Memo announced, among other measures, a plan to relocate over fifty percent of the USDA workforce within the National Capital Region (NCR) to one of five regional hub locations across the country. It also included a plan for specific facilities located within the NCR. Specifically, it noted that the Whitten Building and Yates Building would be retained, but that the South Building and Braddock Place would be vacated. USDA did not implement that Plan, or provide a timeline, at that time.

9. As discussed in my initial declaration, AFSCME provided comments opposing this Reorganization Plan, and in particular objected to the use of relocations to impose workforce reductions, and the related impacts on the functions of the employees and component agencies and mission areas that AFSCME represents, including Rural Development.

10. The Reorganization Memo refers generally to moving employees out of the NCR, but did not reveal USDA's plans with respect to the Rural Development mission area or any of its component agencies.

11. On February 25, 2026, the Secretary of Agriculture issued a press release announcing the disposal of the South Building and Braddock place. The Union had not received any further information, either prior to that announcement, or at the time, about relocation or information about where employees would be directed to work moving forward.

12. Given the stated plans to move employees from the NCR and to close the South Building, bargaining unit employees grew concerned over potential impacts to their working

Reply Declaration of Chearice Vaughn, No. 3:25-cv-03698-SI                    2

conditions. On April 16, 2026, the Union emailed Agency management to invoke I&I bargaining over the relocation of employees upon the closure of the South Building. The Union also submitted a request for information. The Agency responded, declining in multiple email communications during April 2026 and May 2026 to bargain or provide any additional information.

13.     Accordingly, the Union awaited further information from USDA regarding the decision to implement this Reorganization Plan, how it would impact the Rural Development mission area and bargaining unit employees, and any notice that would initiate I&I bargaining.  From July 2025 through June 16, 2026, the Union received no further information from USDA regarding the timing of the Reorganization Plan or the impact of the Plan on the subagencies that AFSCME Local 3870 represents.

14.     On June 17, 2026, the Union received notices from the Agency with the subject line "Initial Notice of the Reorganization of Rural Development" from the USDA's Office of Human Resources Management concerning each of the Rural Development agencies where we represent employees. The Rural Development, Rural Utilities Service and Rural Business Cooperative Service notice provided that "twenty-five (25) employees have been identified to relocate outside the local commuting area" but that "[t]hese numbers may be subject to change." The communications provide that "Management plans to begin implementation of the Rural Development reorganization and reassignments in the coming months."

15.     Immediately after the Undersecretary's email message on June 17, 2026, bargaining unit employees who work for Rural Development, Rural Utilities Service and Rural Business Cooperative Service began receiving relocation notices stating that their duty station was changing to Dallas/Fort Worth, Texas. At least 45 bargaining unit employees received a relocation notice on or around June 17. This was a surprise to the Union given that the notice to the Union stated that only 25 employees would be required to relocate. The discrepancy created significant stress for bargaining unit employees, many of whom have told me they are concerned that additional positions will be added to the relocation list. That stress and uncertainty continues to this day.

16.     On June 21, 2026, the Union sent a communication to Management invoking bargaining over the impact and implementation of relocations. The Union also renewed its previous information request.

17. The Agency has failed to provide full responses to the Union's information request. On July 16, 2026, the Agency finally emailed the Union that it intends to engage in I&I bargaining. As to the scope of bargaining, the Agency stated "[i]t is within management's rights to determine and develop organizational structure."

18. On July 30, 2026, the Union submitted a renewed information request. As of this writing, the Union has only received a list of impacted employees and a current and proposed organizational chart. The Union has not received any additional information about the Reorganization Plan, and I&I bargaining has not commenced.

19. Parallel to the Union's communications with Agency Management, the Union also engaged in outreach to bargaining unit employees. The Union had previously issued an anonymous survey to all bargaining unit employees to understand the impact of the relocation orders. As previously shared, from this survey, we learned that the majority of bargaining unit employees would opt to leave USDA rather than relocating.

20. After we later learned, as described above, that a number of bargaining unit employees had received letters informing them that their positions would be relocated to Texas, the Union administered another online survey to the bargaining unit employees that received relocation notices.

21. This second survey was open to responses from June 27 through July 13. Once again, the survey was anonymous in order to encourage honest feedback. It appears that all or almost all employees who received a relocation order responded to the survey.

22. Consistent with our original survey, we learned that the majority of respondents would rather leave USDA than relocate to Dallas/Fort Worth, Texas. Respondents were asked to indicate what they would do if the relocation orders proceed as planned. 64% indicated that they would prefer to leave USDA instead of relocating. Only 14% of respondents stated that they would relocate to Texas, with the remaining respondents being undecided.

23. The second survey also confirmed that relocation will generate financial strain for bargaining unit employees. Notably, 86% of survey respondents stated that they believe that relocation will increase their cost of living. Individuals expressed that they were concerned about moving expenses, increases to their mortgage payments, increased commuting costs, and costs associated with

Reply Declaration of Chearice Vaughn, No. 3:25-cv-03698-SI                    4

selling their homes. These survey results demonstrate that it is simply not true that the Dallas Fort Worth area will offer appreciable financial benefits to bargaining unit employees. This did not surprise me, especially given the fact that bargaining unit employees directed to relocate from the NCR will see a cut in their locality pay.

24.     The survey also confirms that for many, relocating out of the NCR would interfere with their personal and family obligations. 72% of respondents stated that medical care would be disrupted. 66% stated that elder or dependent care would be interrupted. And 56% stated that their spouse or partner's employment would be impacted by relocation. Given these commitments, it is unsurprising that 52% of survey respondents indicated that they have already begun looking for other employment.

25.     Individual comments from the survey demonstrate that for many bargaining unit employees, relocating is simply not an option. For example, a GS-13 Loan Specialist with 18 years of federal service shared that relocating would require living separately from their wife and children, breaking up their family. They also stated that relocating would likely end their marriage and prevent them from caring for their mother, who has cancer.

26.     A different GS-13 Loan/Grant Specialist with 14 years of federal service shared that their wife is pregnant, which would require them to find new health care providers during an already stressful time.  They also shared that knowing they will need to make a decision on such a tight timeline—30 days—without knowing when that decision will occur creates even more stress, during the already stressful experience of pregnancy.

27.     I have also discussed the impacts of the relocation with bargaining unit employees outside of the survey.

28.     For example, on July 30, a bargaining unit employee told me that she does not believe moving is feasible given her circumstances. She shared that she is the primary support for her 86-year old father and her 73-year old uncle, both of whom require ongoing medical care. Since the passing of her husband in 2019, caring for her family members has rested solely with her. She has lived in Maryland for over 20 years and relocating so far away would mean that she can no longer provide the daily support that her family members need. In addition, she shared that relocating would create substantial financial hardship because she would need to rent housing in Texas while continuing to pay

Reply Declaration of Chearice Vaughn, No. 3:25-cv-03698-SI                                                    5

the mortgage on her home in Maryland. At the same time, she would see a drop in her compensation due to the change to locality pay. If she is directed to move, she will need to leave her position—but if she has to support her parents without a job while paying her mortgage and her other expenses, she will experience severe hardship.

29.    As another example, on July 31, a different bargaining unit employee explained more about why relocation is not feasible for her family. She shared that if she relocated to Texas, she would need to find new providers for her oldest son, who has a disability. Her son currently gets care from Inova Children's Development Pediatrics, a specialized facility located in Virginia. It took nearly 2 years to get seen by that facility. She is concerned that if her family relocates, it could take years to see another specialist given the long wait times, and she is concerned that there would not be the same quality of care in the Texas area given the specialized nature of his care.  Any delay in care would impact her son's growth and development and cause significant stress. At the same time, she would be in a new geography without any family or community support.

30.    This same employee also shared that her husband is also a federal worker, but required to stay in Washington, DC. Therefore, the relocation notice has put strain on her marriage because her husband would not be able to relocate. She is also worried about added financial strain given that mortgage rates are very high. Ultimately, she concluded that although she loves her job, and despite the serious financial and emotional strain it would cause her family, she would be forced to quit if the relocation proceeds.

31.    Based on our survey and my conversations with bargaining unit members, I remain confident that the majority of employees who have received initial relocation notices will leave the Agency if they are required to relocate. As noted, the survey showed that over half of the employees who have received initial notices are starting to look for jobs elsewhere.

32.    There is no doubt in my mind that, if relocation orders are issued, there will be negative impacts on bargaining unit employees. Those that elect to relocate will need to navigate the host of family and financial issues detailed above. Those that are forced to leave will be risking an unknown period of unemployment, which will also cause significant financial hardship. And in the meantime, bargaining unit employees are enduring intense amounts of stress and uncertainty.

Reply Declaration of Chearice Vaughn, No. 3:25-cv-03698-SI                                                      6

33. There is also no doubt in my mind that, if the forced relocations move forward, the Rural Development mission area's work will suffer. Many programs within the Rural Development mission area are already stretched thin and any further attrition will necessarily have a negative impact on the services we provide. My team provides an example of this: I work in a unit that provides servicing to telecommunications grants administered by the Rural Utilities Service. Our team used to have five people, but three people left the Agency either through retirement or deferred resignation. For the two remaining people, our work tripled when we lost those three employees. Both remaining employees received relocation notices. If one of us chooses not to relocate, the other will see their work double, adding to an already overwhelming workload, until someone new is hired. And even when (and if) a new person is hired, they will need to divert significant time to onboarding and training that new hire. If both of us end up leaving the agency, the Agency would need to reassign this work to employees in other programs, who are also already stretched thin. This would delay the critical funding that we administer.

34. I am also very concerned about the loss of institutional knowledge and expertise that will occur if the forced relocations move forward. The programs that bargaining unit employees administer are complex and take years to learn. It will certainly not be easy, and it is most likely impossible, to find replacements that have the same degree of expertise as our existing bargaining unit employees. For example, I have been in my job for over 30 years and therefore am deeply knowledgeable about the grants I service. Many of my external contacts are individuals that I have worked with for two decades. These contacts know my name and will email me even if I am not their point of contact. I know the relationships I have built and my years of experience add significant value to the work of my division.

35. Thus, while it may literally be true that you can put a body in my seat if I am forced to leave my position, that person wouldn't have the same deep knowledge of what our constituents need. I am very skeptical that the Agency will be able to find replacements with the same skillset and knowledge, especially given their statements that they plan to focus on hiring entry level workers.

36. It also takes time for bargaining unit employees to learn about our programs. I am concerned that, even if the Agency could find replacements for employees that leave the agency, the

Reply Declaration of Chearice Vaughn, No. 3:25-cv-03698-SI                                                              7

new hires would take years to get up to the same level as their predecessor, putting our programs at risk in the interim. I am also concerned that the employees best positioned to train new recruits will have left the agency because of the relocation orders, making effective onboarding even more difficult. What is more, the existing employees that do stay will have to dedicate significant time to onboarding new hires, which takes away from their ability to do their day-to-day jobs. The increased workload will result in longer processing time of grants and loans that support small businesses and much needed water and waste, electric, and high-speed broadband infrastructure development in rural communities across the country.

37.    Ultimately, just as when the Reorganization Plan was first announced, I believe that the forced relocations will do nothing to improve the work of the Rural Development agencies. Instead, these relocations will force dedicated public servants to make an impossible choice between the jobs that they love and the lives they have built in the DC area. The resulting attrition will negatively impact the USDA's ability to fulfill the Rural Development mission.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on August 6, 2026 in Oxon Hill, MD.

Chearice Vaughn

Reply Declaration of Chearice Vaughn, No. 3:25-cv-03698-SI                                                    8