Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
dleonard@altber.com
bchishom@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*
[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **REPLY DECLARATION OF MATTHEW EHRMAN** |

**REPLY DECLARATION OF MATTHEW EHRMAN**

I, Matthew Ehrman, declare as follows:

1.     I am over 18 years old and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2.     This declaration supplements the prior declaration I submitted in this case in support of the Plaintiffs' Motion for Preliminary Injunction with respect to the U.S. Department of Agriculture ("USDA")'s reorganization.

3.     I work as a Regional Planner and Monitoring Coordinator in the Pacific Northwest Region (Region 6) of the United States Forest Service ("USFS").

4.     As I noted in my declaration filed on July 1, 2026, Forest Service regional offices serve as a crucial intermediary between the national headquarters and the forests and districts. Our employees provide additional support, expertise, and policy coordination that forests and districts lack the necessary staff or specialization to host in-house. Many regional office staff (like me) are also certified to serve on Incident Management Teams ("IMT") that coordinate wildfire response.

5.     I provide this supplemental declaration to emphasize that the specialized expertise of our regional office staff cannot be easily replaced if the reorganization of the Forest Service results in substantial attrition. In particular, many positions within the regional office require professional certifications that can only be secured after a year or more of classes, training, and field work. New hires are required to work with more senior employees in their specialty and have their work reviewed (and even graded) before they can attain their certifications and fully perform their job functions. As such, attrition will substantially undermine the capacity of the Forest Service if regional office workers depart, because it will take years to train new hires to replace departing staff.

6.     Based on conversations with my colleagues, I believe the most experienced and longest tenured staff will be the most likely to leave the agency. It will be impossible to substitute early career workers for employees with decades of experience and on-the-job training. Moreover, this will exacerbate the problems discussed above because the experienced staff are the ones who typically mentor and conduct trainings for new hires. With fewer people to mentor new hires and

1

review their work for certification, it will likely take longer to complete the training and certification process for roles across the agency. Losing both the expertise and mentorship of existing staff would be a huge loss for the Forest Service that cannot simply be remedied by hiring early career employees.

7. There are also tipping points, where particular teams and projects will lose their last remaining staff members making it substantially more difficult (or impossible) to continue ongoing programs. As an example, our Aquatic Riparian Effectiveness Monitoring Program has been in place since 2000, with datasets collected using consistent field survey techniques to ensure accuracy and stability of the longitudinal data. After departures last year, the team working on this program was reduced to just one remaining staff member. If they were to leave, there would be no one left at the agency with knowledge of how to train seasonal crews and ensure their safety, take measurements on the biophysical characteristics of northwest forests, and take samples to understand the downstream effects of forest management in these regions. New staff would not rectify the problem—they would not have anyone to train them and they would not have the experience necessary to ensure the surveys are performed correctly.

8. Similarly, there is one expert on the bioacoustics monitoring program for the Northern spotted owl range. Losing him would be devastating to our efforts to implement and monitor the Northwest Forest Plan. He has been working on this for more than 30 years, and has seen the monitoring program from its inception through to the current day. There is no one who can replicate his specialized expertise in this area, and any new hire would take years if not decades to reach his level of effectiveness in the role. These are just a few examples of specific workers with specialized expertise and experience, but the problems are present in other teams and projects as well.

9. These problems may be even more pronounced on the IMTs that provide coordination and support for wildfire response. Based on my experience, it is unlikely that new hires will be able to effectively serve on IMTs for at least a year, if not more, after joining the agency. To get "red card" certified to serve on these teams, you must take a course, specialize in a particular role, and complete the "task book" for the role you seek in fire response (e.g., helicopter

air support, directing earth-moving equipment, etc.). Many of the task books have dozens of assignments before certification, and require downtime between completion. And many IMT staff, like myself, attain certification on top of other ongoing duties at the Forest Service in our capacity as regional office workers, which further delays the process. If the reorganization results in the departure of "red card" certified regional office staff, the IMTs will be left shorthanded and the problem will take years to solve.

10.    This is particularly concerning because we are currently at the highest level of preparedness (Level 5) for this wildfire season. This requires anyone who is certified to make themselves available for fire duties, notwithstanding other obligations (such as regional office duties). That will leave even fewer people available to conduct trainings or certification activities with new hires, resulting in fewer certified IMT staff in the next emergency.

11.    In this posture, my assumption is that IMTs may try to address any shortages by pulling people off the fire line into the supervisory role of the IMTs. This, of course, will undermine readiness on the ground level, by pulling Type 1 or 2 firefighters away from their operational roles actually fighting fires. Once again, attrition at the agency resulting in fewer certified staff will not be easily or quickly solved by simply hiring new, early career employees.

12.    The reorganization of the Forest Service will generate attrition that will kick off a vicious cycle. The most experienced staff members will leave, depriving the agency of their decades of experience, mentorship, and specialized expertise. Even if the agency rehires, early career staff will take years to train (compounded by the loss of the people most likely to train them). Attempting to backfill key positions from within the Forest Service will only create new vacancies elsewhere in the agency, and particularly with respect to fire will undermine readiness. For these reasons, it is flatly wrong to assume that new hiring by the Forest Service can adequately replace the employees who will leave if the reorganization is allowed to move forward.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 5th day of August, in Portland, OR.

EHRMAN DECLARATION, CASE NO. 3:25-CV-03698-SI

Matthew Ehrman