Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
dleonard@altber.com
bchishom@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*
[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **REPLY DECLARATION OF GENNY KOTYK** |

**REPLY DECLARATION OF GENNY KOTYK**

I, Genny Kotyk, declare as follows:

1.      I am over 18 years old and competent to give this declaration.  This declaration is based on my personal knowledge, information, and belief.

2.      This declaration supplements the declaration I previously submitted in this case in support of Plaintiffs' Motion for Preliminary Injunction regarding the U.S. Department of Agriculture ("USDA")'s Reorganization Plan.

3.      I am employed by the U.S. Forest Service, which is a part of USDA, as a Forester at the George Washington and Jefferson National Forest in Virginia.

4.      I serve as the President of the Forest Service Council of the National Federation of Federal Employees ("NFFE" or the "Union").  I served on the committee that bargained with the Forest Service over the impacts and implementation of the Reorganization.

5.      On March 31, 2026, the Forest Service sent the Union two bargaining notices.

6.      The first notice informed the Union that, as part of the Forest Service's comprehensive reorganization, the Forest Service would be reassigning approximately 152 bargaining unit employees currently assigned to the National Capital Region ("NCR") to new duty stations, some outside the NCR and others within the NCR.  The notice limited the scope of anticipated negotiations to "Impact and Implementation (I&I) bargaining" only.

7.      The second notice informed the Union that the Forest Service would be eliminating all regional offices, consolidating research stations, repositioning Washington Office employees, changing the organizational structure, and separating employees who decline a directed reassignment.  The notice stated that the reorganization was "expected to affect approximately 2,733 bargaining unit employees across all regions, research stations, and the Washington Office/NCR."  The notice limited the scope of anticipated negotiations as over "implementation" only.

8.      The Forest Service and the Union bargained over the two notices together.

9.      NFFE was not able to bargain over whether there would be a reorganization or the decision to close offices or relocate employees.  The Forest Service told the Union that it could

REPLY DECLARATION OF GENNY KOTYK, NO. 3:25-CV-03698-SI

bargain over certain processes and procedures about the rollout of the reorganization, but it could not bargain over the occurrence or the legality of the reorganization itself.

10.     Additionally, when the Union sent the Forest Service a request for the production of certain documents and information that would inform the topics about which the Union would be able to bargain, the Forest Service refused to provide information on many topics.  For instance, the Forest Service refused to perform a civil rights analysis about the planned reorganization or provide the Union with any demographic data that could have allowed the Union to produce its own civil rights analysis and bargain over the Union's concern about the disproportionate impact on employees of color at the Forest Service.

11.     As detailed in my prior declaration, the Union maintains that the Reorganization as announced is unlawful and will make the Forest Service less able to function, which will, in turn, will make the national forests and grasslands less safe for the public.

12.     After engaging in I&I bargaining only, on June 12, 2026, NFFE signed a Memorandum of Understanding ("MOU") with the Forest Service regarding certain limited aspects of the implementation of the reorganization.  The Union signed the MOU because not having this reorganization or pausing the reorganization was not on the bargaining table.

13.     The Union signed the MOU regarding the implementation of the Reorganization in order to try to offer some procedural protections to employees who will be impacted by the Reorganization, if it goes forward.  The Union's interests in the MOU would not be harmed if there was a preliminary injunction that paused or stopped the Reorganization itself.  The MOU is only relevant if the Reorganization actually is implemented.  As set forth in my prior declaration, the Union's and its members' interests are best served if the Reorganization does not occur.

14.     I am aware that Defendants in this case have said that they plan to replace experienced staff who are forced by the Reorganization to leave the Forest Service with early career employees.

15.      I understand the Forest Service to have been under a federal hiring freeze since spring 2025.  To my knowledge, the Forest Service has not been "actively hiring" (as the Rice Declaration submitted in this case suggests).  Indeed, there are many crucial positions currently

2

REPLY DECLARATION OF GENNY KOTYK, NO. 3:25-CV-03698-SI

unfilled at the Forest Service because of the departure of employees through DRP, VERA, and VSIP, for which the Forest Service has been refusing to hire new employees. It is only as of this week (the week of August 3, 2026) that I have seen some Forest Service jobs get posted, but the Union has not received information as to whether the hiring freeze overall has been lifted and has not been told of any plans by the agency to rehire for positions that are vacated due to the reorganization.

16. Even if new early career employees are going to be hired eventually, the organizational capacity of the Forest Service will suffer greatly from the loss of experienced employees caused by this Reorganization. For instance, I am aware of someone in the Washington Office who received an initial relocation notice and who cannot move from the D.C. area because of his family's medical needs. This person has worked at the Forest Service for about three decades and is the last person in their specific department. Once this person leaves, an immense amount of institutional knowledge will be lost. That knowledge is not recoverable by the hiring of a new employee with little to no experience, and a new hire would have no one left to train them.

17. Many of the Washington Office and Regional Office employees who will be forced to relocate or leave their jobs work on specialized issues, have built substantial expertise in their job function, and have developed important relationships with inter- and intra-agency partners. For instance, the Washington Office employees in the Geospatial Office (who have received initial relocation notices and are awaiting their Mandatory Directed Reassignment ("MDR") letters) hold advanced degrees, work in a narrow field, and are trained on complex data structures. From conversations with a bargaining unit member, I am aware that it takes approximately three years for an employee in this office to get up to speed on the office's data governance, data structures, and workflows.

18. I am also aware that Defendants in this case have claimed that there will not be attrition from employees in the National Capital Region because of the current job market. Based on my conversations with Union leaders in the Washington Office, I understand that most of the employees who have spoken with the Union about their decision over whether to relocate are

REPLY DECLARATION OF GENNY KOTYK, NO. 3:25-CV-03698-SI

deciding based on personal circumstances tying themselves (and their families) to the D.C. area and not job market conditions.

19.     As discussed in my previous declaration, based on the Union's attrition survey and consistent with many conversations that Union leaders have had with bargaining unit members, the Union estimates that substantial numbers of employees will not relocate.  Accordingly, significant expertise and institutional knowledge will be lost from career employees not relocating if the Reorganization is implemented.  The hiring of a new employee, particularly an early career employee, will not replace the loss to the Forest Service's operational capacity of a current employee who is forced to leave the agency because they are not willing or able to move.

20.     I understand that USDA's lawyers have questioned the survey that I discussed in my previous declaration.  I am not aware of USDA or the Forest Service themselves conducting any survey of Forest Service employees to better understand the impacts of its planned closures and relocations.

21.     Our survey collected information from 1,476 Forest Service employees.  The survey was conducted after employees received initial relocation notices, and it asked whether the respondents expected to be required to relocate or were unsure if they would be required to relocate.  The survey then asked whether the respondent was willing to relocate if required, and respondents had the option of answering "Yes," "No," or "Other/Unsure."

22.     As stated in my prior declaration, only 7.4% of all respondents answered that they would be willing to relocate if required.  57.3% of all respondents answered that they would not be willing to relocate, and 35.3% were unsure.  Of the subset of respondents who expected to be ordered to relocate, 13% answered that they would be willing to relocate, 52% were unwilling, 33% were unsure.

23.     Since the submission of my prior declaration, the Forest Service has issued Management Directed Reassignments (MDRs) (or notices that are equivalent to an MDR) to employees.  For instance, during July 2026, the Forest Service issued MDRs to GS-14 and GS-15 level non-bargaining unit employees (i.e., supervisors) in the Washington, D.C. office, informing them they will have to relocate to Salt Lake City, Utah.  The Union does not know precisely how

REPLY DECLARATION OF GENNY KOTYK, NO. 3:25-CV-03698-SI

many notices the Forest Service issued, but from conversations with employees who received the notices, the Union believes the notices were sent to most D.C. area employees who hold titles of Director, Assistant Director, or Deputy Director.  These employees had *not* received the March 31 initial relocation notices discussed in my previous declaration and had *not* previously been informed that they would be required to relocate.

24.     The Forest Service shared in employee townhalls in July 2026 that GS-14 and GS-15 non-bargaining unit employees will be receiving MDRs from July 20, 2026, through August 20, 2026.  The Forest Service has also shared in employee townhalls that it plans to start issuing MDRs reassigning GS-14 and GS-15 bargaining unit employees and all employees who are GS-13 level or below (bargaining and non-bargaining unit) in September 2026.  Employees will have 10 business days to accept a reassignment outside their commuting area.  Employees accepting reassignments outside their commuting area will have at least 60 days to relocate after they accept. Employees will have 3 business days to accept voluntary reassignments within their commuting area.

25.     Additionally, in July 2026, the Forest Service sent out Voluntary Early Retirement Authority ("VERA") and Voluntary Separation Incentive Payment (VSIP) offers to all employees who had received a letter of intent on March 31, 2026, informing them that their position may be impacted by the Reorganization.  The Forest Service has told employees that it will off-board employees who take a VERA or VSIP offer by October 30, 2026, but employees may cancel their VERA or VSIP applications so long as they do so before close of business on their separation date.

26.     The timing and order of these notices, including issuing the request to employees to participate in the "voluntary" retirement, but prior to issuing further MDR letters, appears aimed to force employees to "voluntarily" leave in lieu of having to issue that MDR.  Either way, the employees are being forced to decide whether to relocate or keep their job.  I am concerned that a large number of impacted employees, faced with this impossible choice, will leave the Forest Service by that October deadline.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed August 7, 2026, in Lexington, Virginia.

Genny Kotyk

REPLY DECLARATION OF GENNY KOTYK, NO. 3:25-CV-03698-SI