Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 3:25-cv-03698-SI<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: MOTION FOR PRELIMINARY INJUNCTION RE: USDA** |

Plaintiffs provide the following responses to the three questions set forth in the Court's August 21, 2026 Order Directing Supplemental Briefing (ECF 473):

**1. Whether there is any case law addressing "notification and approval" clauses within the appropriations context, including whether approval clauses are binding and enforceable (and by whom).**

a. Approval clause case law and related severability analysis

First, Plaintiffs are not aware of any case that directly addresses a "notification and approval" clause in an appropriations statute. Plaintiffs have found one pre-*Chadha*, out-of-circuit case addressing a similar clause. *See AFGE, AFL-CIO v. Pierce*, 697 F.2d 303 (D.C. Cir. 1982). In *Pierce*, the D.C. Circuit addressed an appropriations statute that required further committee approval before use of funds for an otherwise prohibited agency reorganization, but the statute did not include any notification language. *Id.* As explained below, *Pierce* and subsequent cases addressing *Pierce* reinforce the conclusion that the severability analysis is specific to each statute, the statutory history, and context.

The statute at issue in *Pierce* was part of the 1982 Department of Housing and Urban Development (HUD) appropriations act and stated: "*Provided*, That none of the funds made available in this paragraph may be used prior to January 1, 1983, to plan, design, implement, or administer any reorganization of the Department without the prior approval of the Committees on Appropriations." *Id.* at 306 (quoting Pub. L. No. 97-272, 96 Stat. 1160, 1164 (1982)). The court first reasoned that while the statutory provision might arguably be "regarded as creating a power in either Appropriations Committee to prevent otherwise-authorized expenditures of funds," the provision "more naturally" could been seen (like the provisions applicable to USDA here) "as prohibiting HUD from using appropriated funds for certain purposes but empowering both Appropriations Committees, acting together, to lift the prohibition and authorize HUD to make such use of the funds." *Pierce*, 697 F.2d at 306. The court held that under either reading, the committee approval mechanism was unconstitutional because of the lack of "presentment" to the President. *Id.*[1]

[1] At the time of the decision, *Chadha* had not yet been decided, and there was some dispute as to

After addressing the constitutional question, *Pierce* turned to severability and concluded that the particular history of that statute reflected an intention *not* to totally prohibit the reorganization at issue. Specifically, "the legislative history reveal[ed] that neither House favored total foreclosure of HUD reorganization in 1982, indeed the Senate initially opposed any restraint on the Department." *Id.* at 307. The Senate had "deleted House bill language specifying that no funds may be used to plan or implement a reorganization of the Department without the prior approval of the Committees on Appropriation," because the Senate committee "believe[d] that such legislation is overly restrictive …." *Id.* (quoting S. Rep. No. 97-549, 97th Cong., 2d Sess. at 29 (1982)). The conference committee eventually agreed to include "the funding prohibition coupled with the committee approval clause, but set a December 31, 1982, termination date for the restriction." *Id.* The court rested its severability holding on the conclusion that this particular "legislative history casts grave doubt on any supposition that the Senate would have agreed to an absolute prohibition." *Id.* Thus, "[i]n the absence of indicators that Congress would have opted for an absolute prohibition on HUD reorganization" before January 1, 1983, the court concluded "that the proviso is not divisible." *Id.*

Cases discussing *Pierce* have consistently described its severability analysis as turning on the fact that the statute's history there unequivocally demonstrated that neither House would have supported a total prohibition of reorganization during the relevant fiscal year, and those cases reaffirm the critical point that the severability inquiry is an interpretive exercise that is specific to each statute. *See Helman v. Dep't of Veterans Affs.*, 856 F.3d 920, 935 (Fed. Cir. 2017) (explaining that in *Pierce* "it was undeniable that Congress would not have enacted the ban on funding for reorganizations absent the prior committee approval stipulation, and severability was not an option," and "[u]nlike in *Pierce*, in this case there is abundant statutory evidence that

---

the constitutional question. Members of the D.C. Circuit *sua sponte* suggested that *Pierce* be reheard en banc. *Id.* at 308. Although a majority did not vote for en banc review, two judges issued a statement warning that the "expedited opinion," addressed "vitally important issues of executive-legislative relations" and statute at issue was "easily distinguishable from the legislative vetoes previously found to be unconstitutional." *Id.* at 308 (Wald and Mikva, JJ., statement). The Court need not reach the direct constitutional question raised by the approval clauses in this case, because any constitutional concern is severable.

Congress had in mind a piece of legislation that even when severed could work to achieve Congressional purpose"); *Alaska Airlines, Inc. v. Donovan*, 766 F.2d 1550 (D.C. Cir. 1985) ("Neither House, it was abundantly clear in *Pierce,* would have accepted a complete ban on reorganizing HUD—yet that is precisely the result severance would have brought about," *id.* at 1565, whereas the legislative history here "indicates that Congress would have preferred the employee protection plan with the veto provision severed out to a deregulatory statute stripped of any employee protection plan," *id.* at 1561), *aff'd sub nom.*, *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) ("The more relevant inquiry in evaluating severability is whether the statute will function in a *manner* consistent with the intent of Congress.") (emphasis in original); *City of New Haven v. United States*, 634 F.Supp. 1449 (D.D.C. 1986) (reasoning that in *Pierce*, the D.C. Circuit "found a one-House veto inseverable because severance would have left a legislative result the opposite of that Congress intended," *id.* at 1458, but the legislative history here made clear that "that the Houses were equally committed to confining a President's power to impound appropriations and to restore to Congress ultimate control over the budget process," *id.* at 1455, so *Pierce* supported rejecting severance that "would demolish the congressional control over a species of impoundment that was at its heart," *id.* at 1458), *aff'd*, 809 F.2d 900, 909 (D.C. Cir. 1987) (rejecting severance because it "would produce a result wholly contrary to that intended by Congress").[2]

---

[2] While not directly addressing an appropriations act, the D.C. Circuit's decision in *City of New Haven v. United States*, 809 F.2d 900 (D.C. Cir. 1987), considered a legislative veto provision in the context of Congressionally authorized appropriations, and its analysis similarly supports plaintiffs here. The court addressed a provision in the Impoundment Control Act of 1974 that required the President to send a message to Congress before deferring a congressional appropriation and that required the President must make the funds available for obligation if either House passed an "impoundment resolution" disapproving the proposed deferral. *Id.* at 901 (citing 2 U.S.C. §684 (1982), enacted by Pub. L. No. 93-344, Title X, §1013, July 12, 1974, 88 Stat. 334). The court held the legislative veto was unconstitutional under *Chadha* and that it was inseverable from the rest of the statute, which authorized Presidential deferrals, because "to the extent that section 1013 is 'operable' absent the legislative veto provision, it operates in a manner wholly inconsistent with the intent of Congress in enacting deferral legislation." *Id.* at 905. Congress's goal "was to assert *control* over presidential impoundments," yet severing the legislative veto while leaving the deferral authority in place would do the opposite. *Id.* at 907 (emphasis in original). As Plaintiffs have explained, the same logic requires that the notification and committee approval clause in its entirety be severed here. *See* Reply at 10 (citing *City of New Haven*).

In this case, both the text of the appropriations statutes and their history overwhelmingly demonstrate that both Houses intended to preclude the use of appropriated funds to reorganize USDA. After USDA publicly announced its plans to engage in large-scale reorganization in July 2025, Congress held an emergency hearing to question USDA about the reorganization and many congressmembers sent correspondence to USDA opposing the reorganization. Evers Decl. (ECF 466-3) Exs. A-D. USDA asked Congress to authorize its reorganization in the appropriations statutes for the coming Fiscal Year 2026, presenting a budget proposal designed to drastically reduce agency operations that expressly omitted the committee approval requirements for reorganizations in §716 and §421. ECF 440-1 ("Mot.") at 4-5; ECF 466 ("Reply") at 6-7, 10-11.[3] Congress specifically refused USDA's request, and instead passed appropriations acts that fully funded USDA. Mot. at 4-5, 30-31; Reply at 6-7, 10-11. The FY26 Agricultural Appropriation Act also expressly addressed certain actions in the announced plan, stating that the Act "rejects research terminations and laboratory closures proposed in the President's budget request" for the Agricultural Research Service and "supports the continued operation of [BARC]," Levy Decl. (ECF 440-3) Ex. E, pp. 94-95.

At the same time that Congress rejected the requested cuts that USDA wanted in support of its already-public reorganization plan, and prohibited USDA from taking actions like closing BARC, it also enacted multiple notice and approval provisions. First, both houses passed acts that included the §716 and §421 reorganization prohibitions. *Continuing Appropriations and Extensions Act,* 2027, H.R. 6550, §§101 & 103 (amended House Bill passed by Senate). As discussed below, those provisions have long been included in USDA's appropriations acts (over the Executive Branch's objections and requests to remove them), and the additional *approval* requirements were added years ago to exert greater congressional control over any use of the funds

[3] As with §716, USDA has repeatedly proposed removing the reprogramming approval requirements of §421, and Congress has rejected that proposal. *Compare United States Forest Service Fiscal Year 2024 Budget Justification*, p. 30a-201, https://www.usda.gov/sites/default/files/documents/30a-2024-NRE.pdf (proposing removal of Sec. 422, which required approval for reprogramming), *with* Pub. L. No. 118-42, 138 Stat. 290, §422 (including the provision); *compare United States Forest Service Fiscal Year 2026 Budget Justification*, pp. 29a-133-39, https://www.usda.gov/sites/default/files/documents/nre-fs-fy26-cj-final.pdf (proposing omission), *with* Pub. L. No. 119-74, 140 Stat. 163, §421 (including provision).

to reorganize. *Infra* at 9-10.[4]

The Act included numerous other prohibitions on reorganizing or downsizing without approval, including Section 771, which prohibits USDA from using funds "to close or consolidate the resources or locations of any existing Agricultural Research Service laboratories and facilities without prior notification and approval of the Committees on Appropriations of both Houses of Congress," and Section 716(b), which prohibits USDA from using funds to "reduce[] by 10 percent funding for any existing program, project, or activity, or numbers of personnel by 10 percent as approved by Congress" without prior notification and approval of the Appropriations Committees. Pub. L. No. 119-37, Div. B, 139 Stat. 495, 544-45, 555 (2025). The Senate Committee Report for the Forest Service appropriations act expressly "remind[ed agencies] that no reprogramming shall be implemented without [] advance approval." S. Rep. 119-46 at 13.

Given these clear and consistent indications of Congress's intent to prevent the use of funds for reorganization, Congress would not have included the "notification" provision without the committee approval provision. Doing so would have entirely transformed the statutes from express prohibitions on using funds for reorganization into express *authorizations* of funds for the very use that Congress expressly forbid. Mot. at 32-33; Reply at 9-11.

b. <u>Enforceability</u>

This Court's order also requested briefing regarding whether committee approval clauses in the appropriations context are enforceable and by whom. Plaintiffs do not seek to enforce the committee approval clauses here. They seek to enforce the statutes' express prohibitions on the use of appropriated funds for reorganization. Mot. at 30-31, 33-34; Reply at 11. Those prohibitions are enforceable. The Ninth Circuit has held that a plaintiff, like Plaintiffs here, harmed by the

---

[4] For Fiscal Year 2027, USDA again proposed eliminating §716 and §421, but Congress rejected that proposal and extended both provisions. *Compare 2027 USDA Budget Explanatory Notes - General Provisions*. p. 36-7, https://www.usda.gov/sites/default/files/documents/FY-2027-Chapter-36-General-Provisions.pdf (proposing deleting §716 to provide the Secretary greater flexibility), *and United States Forest Service Fiscal Year 2027 Budget Justification*, pp. 29a-133-40, https://www.fs.usda.gov/sites/default/files/fs-fy27-congressional-budget-justification.pdf (omitting §421 provision), *with Continuing Appropriations and Extensions Act, 2027*, H.R. 6550, §§101 & 103, https://www.congress.gov/bill/119th-congress/house-bill/6500/text (extending both provisions).

violation of a statutory restriction on the use of funds set forth in an appropriations act can bring suit under the Administrative Procedure Act ("APA"). *California v. Trump*, 963 F.3d 926, 944 (9th Cir. 2020), *judgment vacated on mootness grounds*, *Biden v. Sierra Club*, 142 S.Ct. 46 (2021). The Ninth Circuit has also held that injured plaintiffs can bring an *ultra vires* action to challenge the violation of these appropriations restrictions, because the Executive Branch has no authority to spend money inconsistent with appropriations by Congress. *Sierra Club v. Trump*, 963 F.3d 874, 887, 890-93 (9th Cir. 2020), *judgment vacated on mootness grounds*, *Biden v. Sierra Club*, 142 S.Ct. 46 (2021). Plaintiffs' APA and *ultra vires* claims fit comfortably within that analysis.[5]

**2. Whether "notification and approval" clauses are commonly or routinely included in appropriations bills, including specifically appropriations bills for USDA.**

"Notice and approval" provisions are situated within the larger context of how Congress controls the Executive Branch's spending of appropriated funds. As an initial matter, "[a]bsent congressional authorization, the Administration may not redistribute or withhold properly appropriated funds in order to effectuate its own policy goals." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1235 (9th Cir. 2018). An agency's authority to utilize appropriated funds for purposes other than those expressly specified by Congress depends on how the agency seeks to use the funds and what restrictions Congress has imposed. Congress typically grants lump-sum appropriations, with each lump-sum account provided for a specific purpose under which multiple programs, projects, and activities fall. *See* Cong. Rsch. Serv., *Transfer and Reprogramming of Appropriations: An Overview*, 1-2 (June 20, 2023). When an agency seeks to reallocate funds, it undertakes a *reprogramming* if it is "shifting of funds within an appropriations account," but for the same purpose, *id.* at 4, or a *transfer of funds* if it is "shifting [] budgetary resources from one

[5] Indeed, courts regularly adjudicate lawsuits to uphold congressional restrictions on or requirements for agency use of appropriations. *See, e.g.*, *Washington v. FEMA*, 818 F.Supp.3d 195 (D. Mass. 2025) (holding FEMA's termination of BRIC grant program violated the appropriations act's prohibition on reprogramming funds to increase or decrease grant program funding); *Oakley v. Devos*, 2020 WL 3268661, at *7-12 (N.D. Cal. June 17, 2020) (holding community college plaintiffs were likely to succeed on *ultra vires* and APA claims that Department of Education's imposition of eligibility conditions on CARES Act funds was contrary to the appropriations statute); *AIDS Vaccine Advocacy Coalition v. United States Department of State*, 803 F.Supp.3d 164 (D.D.C. 2025) (holding an APA cause of action is available to enforce appropriation statutes).

appropriations or fund account to another," *id.* at 6. Reprogramming "is generally permitted unless it is restricted by statute," *id.* at 4, whereas transfers "are prohibited unless an agency has specific statutory authorization to do so," *id.* at 6. Typically, reprogramming actions that fall below certain monetary thresholds "are handled internally and, in some cases, without any notification or prior approval required by Congress." *Id.* at 14. For more significant reorganizations or changes in the manner in which funding is being used, Congress frequently imposes requirements on reprogramming and transfers in appropriations acts, including through provisions that provide only for advance notice, and through notice and approval provisions. *Id.*

The Fiscal Year 2026 appropriations statues contain a number of these "notice and approval" provisions. Those statutes were enacted against the backdrop of the Trump Administration's attempts to transform the entire federal government, including through the appropriations process. ECF 1 at ¶¶5-12, 140-171; Mot. at 4. As this Court is aware, the debates and conflict over the proposed cuts resulted in an unprecedented shutdown of the federal government. To resolve those impasses, Congress enacted a series of appropriations statutes that cover the various federal agencies that largely reject this Administration's FY2026 budget cuts. Mot. at 4-5. Those acts included specific provisions restricting the reprogramming and transfers of funds at particular agencies or subagencies without prior Congressional committee approval. *See, e.g.*, Pub. L. No. 119-37,[6] 139 Stat. 539 (providing for the FDA "[t]hat funds may be transferred from one specified activity to another with the prior approval of the Committees on Appropriations of both Houses of Congress"); 139 Stat. 614, §230 (providing "[t]hat before a transfer may take place, the Secretary of Veterans Affairs shall request from the Committees on Appropriations of both Houses of Congress the authority to make the transfer and receive approval of that request."); 139 Stat. 618, §245 ("None of the funds appropriated or otherwise made available by this Act to the Veterans Health Administration may be used in fiscal year 2026 to convert any program which received specific purpose funds in fiscal year 2025 to a general purpose funded program unless the

[6] Pub. L. No. 119-37 is the Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026. Division B is the Agriculture, Rural Development, Food and Drug Administration, and Related Agency Appropriations Act, 2026.

Secretary of Veterans Affairs submits written notification of any such proposal to the Committees on Appropriations of both Houses of Congress at least 30 days prior to any such action and an approval is issued by the Committees."). In contrast to these notice and approval provisions, Congress authorized action though "report and wait" provisions where it intended agencies to be able to move forward unless it acted. *See, e.g.*, Pub. L. No. 119-37, 139 Stat. 620, §252 (prior to obligating funds for medical facilities, Secretary of Veterans Affairs must provide plan to appropriation committees and wait for "an approval, or absent a response, a period of 30 days has elapsed"); *see also id.* §257 (Secretary of Veteran Affairs may use available unobligated balances for facility construction if the Secretary first requests such authority from both houses' appropriation committees and "such Committees issue an approval, or absent a response, a period of 30 days has elapsed").

With respect to USDA, the FY26 Agricultural Appropriations Act (Pub. L. No. 119-37, Div. B) contains several provisions prohibiting the use of appropriated funds for specified reorganization action or other uses, without both written notification and prior approval of both appropriation committees. For instance, in addition to the general restriction in §716(a) on reprogramming or transferring funds for purposes of reorganizing, USDA must also obtain congressional approval before funds "may be used to close or consolidate the resources or locations of any existing Agricultural Research Service laboratories and facilities," §771; before funds may be used to "close Natural Resources Conservation Service or Rural Development mission area field offices or to permanently relocate any field-based employees of those agencies that would result in an office with two or fewer employees," §779; before funds may be used to permanently relocate Farm Service Agency county based employees resulting in an office with two or fewer employees, 139 Stat. 518; and before funds may be reprogrammed or transferred in a way that "reduces by 10 percent funding for any existing program, project, or activity, or numbers of personnel by 10 percent as approved by Congress" or that "results from any general savings from a reduction in personnel which would result in a change in existing programs, activities, or projects as approved

by Congress," §716(b)(2), (3).[7]

As Plaintiffs previously explained, the FY2026 appropriations act that funded the Forest Service also prohibited the use of funds for reorganization activities (by Forest Service or any of the other agencies funded by the act) without notice and approval by the appropriations committees. Mot. at 5 (citing Pub. L. No. 119-74, Div. C, §421, 140 Stat. 5, 163 (2026);[8] Levy Decl. (ECF 440-3) Ex. D at 8 (2026 Explanatory Statement)).

The particular history of the reorganization "notification and approval" clauses in §716 and §421 demonstrates that Congress specifically rejected a more permissive notification-based approach to USDA's intended reorganization. Identical statutory language as codified in §716(a) prohibiting use of funds to reorganize without further Congressional approval has been present in USDA's appropriation bills since Fiscal Year 2015.[9] For FY1998 through FY2014, USDA's appropriation bills contained a provision that required only notification before using funds for reorganization.[10] An Explanatory Statement for the FY2015 Agriculture Appropriations Act explicitly noted that agencies had taken actions that "violate long-standing notification requirements."[11] Congress added and annually reenacted the requirement of committee approval because it deemed that notification alone was insufficient to protect against reorganizations that Congress sought to prevent.

Similarly, in 2018 Congress specifically expanded §421's explanatory statement guidelines on reprogramming by USFS to add the limits (that remain in the FY2026 version, Levy Decl. (ECF 440-3) Ex. D p. 85) on "proposed reorganizations, workforce restructure, reshaping, transfer of

---

[7] *See also* §706 (committee notice and approval required before funds may be transferred to the Office of the Chief Information Officer), §725 (committee notice and approval required before credit card refunds or rebates transferred to the Working Capital Fund are available for obligation).

[8] Pub. L. No. 119-74 is the Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026. Division C is the Department of the Interior, Environment, and Related Agencies Appropriations Act, 2026.

[9] *See, e.g.*, Pub. L. No. 113-235, Div. A, §719(a), 128 Stat. 2130 (Dec. 16, 2014) (FY2015); Pub. L. No. 118-42, Div. B, §716(a), 138 Stat. 25 (Mar. 9, 2024) (FY2024).

[10] *See, e.g.*, Pub. L. No. 113-76, Div. A, §721(a), 128 Stat. 5 (Jan. 17, 2014) (FY2014); Pub. L. No. 105-86, §727, 111 Stat. 2107-08 (Nov. 18, 1997) (FY1998).

[11] Explanatory Statement for Consolidated and Further Continuing Appropriations Act, 2015, 160 Cong. Rec. H9307, H9308 (Dec. 11, 2014), 2014 WL 7005990.

functions presented in the budget justifications, or bureau-wide downsizing," and to "include closures, consolidations, and relocations of offices, facilities, and laboratories."[12] Congress acted directly in response to the first Trump Administration's efforts to "implement Executive Order 13781, a Comprehensive Plan for Reorganizing the Executive Branch," and the administration's presentation of several reorganization proposals to appropriation committees.[13] Before 2020, approval was automatically granted after 30 days if the committees posed no objection.[14] In 2020, however, Congress responded to the fact that "agencies funded by this Act are continuing to work to implement Executive Order 13781, a Comprehensive Plan for Reorganizing the Executive Branch, and have included in the fiscal year 2020 budget request funding for these activities" by removing the automatic approval provision. Starting for FY2020 and continuing through the FY2026 statement incorporated by reference in §421, Congress made clear that USFS reprogramming for purposes of reorganizing is prohibited absent affirmative committee approval.[15]

In short, Congress added the further approval language to both Acts specifically to prevent the kinds of unapproved reorganizations that Defendants seek to implement. This language all stands in direct contrast to the provisions where Congress decided to expressly permit USDA to

---

[12] *Compare* Explanatory Statement, Div. G, Department of the Interior, Environment, and Related Agencies Appropriations Act, 2018, at 5, https://docs.house.gov/billsthisweek/20180319/DIV%20G%20INTERIOR%20SOM%20FY18%20OMNI.OCR.pdf, *with* Explanatory Statement, Div. G, Department of the Interior, Environment, and Related Agencies Appropriations Act, 2017, at 5, https://docs.house.gov/billsthisweek/20170501/DIVISION%20G%20-%20INT%20SOM%20FY17%20OCR.pdf; Explanatory Statement, Div. G, Department of the Interior, Environment, and Related Agencies Appropriations Act, 2016, at 4, https://docs.house.gov/meetings/RU/RU00/20151216/104298/HMTG-114-RU00-20151216-SD008.pdf.

[13] Explanatory Statement, Div. G, Department of the Interior, Environment, and Related Agencies Appropriations Act, 2018, at 5, https://docs.house.gov/billsthisweek/20180319/DIV%20G%20INTERIOR%20SOM%20FY18%20OMNI.OCR.pdf.

[14] *See* Explanatory Statement, Div. E, Department of the Interior, Environment, and Related Agencies Appropriations Act, 2019, at 5, https://www.appropriations.senate.gov/imo/media/doc/FY%202019%20Explanatory%20Statement%20for%20Division%20E%20(Interior)%20(1.21.19).pdf.

[15] Explanatory Statement, Div. D, Department of the Interior, Environment, and Related Agencies Appropriations Act, 2020, at 6, https://docs.house.gov/billsthisweek/20191216/BILLS-116HR1865SA-JES-DIVISION-D.pdf; *accord* Levy Decl. (ECF 440-3) Ex. D, p.86 (2026 Explanatory Statement).

move forward, after notification and a waiting period.

Most recently, faced with the ongoing controversy regarding USDA's Reorganization Plan and despite USDA's repeated requests that Congress authorize reorganization and remove the prohibitions in §§716 and 421, both the House and the Senate have now passed continuing resolutions appropriating funds into December 2026 under the same "authority and conditions provided" in the FY2026 appropriations acts, which includes §§421, and 771. Reply at 9 & n.9; *Continuing Appropriations and Extensions Act,* 2027, H.R. 6550, §§101 & 103 (amended House Bill passed by Senate).[16]

**3. Whether, aside from *Bread for the City, Inc. v. USDA*, USDA has taken the position in litigation that "approval" clauses are binding on the agency.**

As the USDA Office of Inspector General noted in a 2019 report, USDA asserted in prior litigation that the committee "approval" clause in Section 719 of its FY2015 Appropriations Act (which was substantively identical to §716 in the currently operative FY2026 Appropriations Act, *supra* at 9) was binding on the agency. *See* USDA Office of Inspector General, *USDA's Proposal to Reorganize and Relocate the Economic Research Service and National Institute of Food and Agriculture* (Inspection Report 91801-0001-23) at 9-10 (Aug. 1, 2019) ("OIG Report"). In its successful motion to dismiss in *Bread for the City, Inc. v. USDA*, No. 1:15-cv-01591 (RJL), USDA stated:

> Should the Court agree with Plaintiffs and remand to the agency for further proceedings consistent with its opinion, USDA will be obligated to seek approval from the Committees on Appropriations of both Houses of Congress before reprogramming the funds originally intended for other purposes, as is required by the 2015 Appropriations Act. *See* Pub. L. No. 113-235, Sec. 719. If the committees deny the request, USDA is barred from expending the funds. *Id.*

Memorandum in Support of Defendants' Motion to Dismiss, *Bread for the City, Inc. v. USDA*, 2015 WL 13158585, at * n.4 (D.D.C. Dec. 18, 2015).

In its reply brief on that same motion, USDA reiterated the point, asserting:

> As for the funds that are currently appropriated, both the 2015 and 2016 Appropriations Acts limit USDA's ability to use those funds for TEFAP. *See* Pub. L. No. 113-235, 128 Stat. 2164, Sec. 719 (2014) (requiring the Secretary of Agriculture to "notif[y] in writing and

[16] https://www.congress.gov/bill/119th-congress/house-bill/6500/text.

> receive[] approval from the Committees on Appropriations of both Houses of Congress at least 30 days in advance of the reprogramming or transfer" of funds to "augment[] existing programs," among other things); Pub. L. No. 114-113, Sec. 717 (2015) (same). Contrary to Plaintiff's assertion, these limits would apply to a reallocation of appropriated funds to TEFAP. Regardless of the reason for the reprogramming, such an alteration in spending would increase or "augment[]" the TEFAP program in its current state. Thus, should the Court agree with Plaintiff and remand to the agency for action consistent with such a decision, the agency will be obligated to first notify Congress of its intention to reprogram funds. Should Congress decline to approve the reprogramming, the appropriations acts forbid USDA from expending the funds. *Id.*

Reply Memorandum in Support of Defendants' Motion to Dismiss, *Bread for the City, Inc. v. USDA*, 2016 WL 8541401 (D.D.C. Feb. 1, 2016). And USDA repeated the point on appeal, noting that "Congress further required that any alterations to this schedule of spending be approved by both the House and Senate Appropriations Committees." Brief for Appellees, *Bread for the City, Inc. v. USDA*, 2017 WL 1406116, at *11 (D.C. Cir. Apr. 19, 2017); *see* OIG Report at 9. USDA's prior litigation position is thus directly contrary to its position here.

Plaintiffs do not have knowledge of all the litigation positions USDA has previously taken, but Plaintiffs are not currently aware of other litigation in which USDA has taken a position on the binding nature of such "approval" clauses.

## CONCLUSION

For the foregoing reasons, the caselaw regarding congressional conditions on appropriations and the history of the prohibitions on USDA's use of funds for reorganization without committee notice and approval both support Plaintiffs' position that the notice and approval provision should be severed here.

DATED: August 27, 2026

Respectfully submitted,

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Corinne F. Johnson
Robin S. Tholin
Elizabeth Eshleman
Jessica M. Levy
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151

sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com
dleonard@altshulerberzon.com

By: */s/ Corinne F. Johnson*

*Attorneys for All Union and Non-Profit Organization Plaintiffs*

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
Andrea Matthews (pro hac vice)
Gregory M. Cumming (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org
amatthews@democracyforward.org
gcumming@democracyforward.org

By: */s/ Andrea Matthews*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC) and for Plaintiffs City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

Jules Torti (pro hac vice)
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038

Erica J. Newland (pro hac vice)
Jacek Pruski (pro hac vice)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel: 202-579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

By: */s/ Jules Torti*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Norman L. Eisen (pro hac vice)
Spencer W. Klein (pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for All Union and Non-Profit Organization Plaintiffs (except NRDC)*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiffs American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson (SBN 226659)
Matthew Blumin (pro hac vice)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/ Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Steven K. Ury (SBN 199499)
SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorneys for Plaintiff Service Employees International Union, AFL-CIO (SEIU)*

Simi Bhat
Katherine K. Desormeau
Gavin G. McCabe
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter St Fl 21,
San Francisco, CA 94104
Tel: (415) 875-6100
sbhat@nrdc.org
kdesormeau@nrdc.org
gmccabe@nrdc.org

By: */s/ Gavin G. McCabe*

*Attorneys for Plaintiff Natural Resources Defense Council*

David Chiu (SBN 189542)
City Attorney
Yvonne R. Meré (SBN 175394)
Chief Deputy City Attorney
Mollie M. Lee (SBN 251404)
Chief of Strategic Advocacy
Sara J. Eisenberg (SBN 269303)
Chief of Complex and Affirmative Litigation
Molly J. Alarcon (SBN 315244)
Alexander J. Holtzman (SBN 311813)
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By: */s/ David Chiu*

*Attorneys for Plaintiff City and County of San Francisco*

Tony LoPresti (SBN 289269)
COUNTY COUNSEL
Kavita Narayan (SBN 264191)
Meredith A. Johnson (SBN 291018)
Raphael N. Rajendra (SBN 255096)
Hannah M. Godbey (SBN 334475)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San Jose, CA 95110
Tel: (408) 299-5900
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Raphael.Rajendra@cco.sccgov.org
Hannah.Godbey@cco.sccgov.org

By: */s/ Tony LoPresti*

*Attorneys for Plaintiff County of Santa Clara, Calif.*

Christopher Sanders (pro hac vice)
General Counsel
Erin King-Clancy (SBN 249197)
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
chrsanders@kingcounty.gov
eclancy@kingcounty.gov

By: */s/ Erin King-Clancy*

*Attorneys for Plaintiff Martin Luther King, Jr. County*

Sharanya Mohan (SBN 350675)
Toby Merrill (pro hac vice)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
eliana@publicrightsproject.org
toby@publicrightsproject.org

By: */s/ Sharanya Mohan*

*Attorney for Plaintiffs Baltimore, MD, Chicago, IL, Harris County, TX, Martin Luther King, Jr. County, WA*

ABBIE KAMIN
Harris County Attorney
NEAL SARKAR
First Assistant County Attorney
SARAH J. UTLEY
Managing Counsel,
Affirmative and Special Litigation and Environmental
BETHANY DWYER
Deputy Division Director, Environmental
R. CHAN TYSOR (pro hac vice)
Senior Assistant County Attorney
Environmental Division
1010 Lamar, 11th Floor
Houston, Texas 77002
Tel: (713) 274 - 5150
chan.tysor@harriscountytx.gov

By: */s/ R. Chan Tysor*

*Attorneys for Plaintiff Harris County, Texas*

Ebony M. Thompson
Baltimore City Solicitor
Christopher Sousa (SBN 264874)
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel: (443) 610-8859
christopher.sousa@baltimorecity.gov

By: */s/ Christopher Sousa*

*Attorneys for Plaintiff City of Baltimore*